Miscellaneous Docket No. _____

# United States Court of Appeals
# for the Federal Circuit

IN RE GOOGLE INC., SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC., AND
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

*Petitioners*.

*On Petition for a Writ of Mandamus to the U.S. District Court for the
Eastern District of Texas in Case Nos. 2:13-cv-894 and 2:13-cv-900
Judge Rodney Gilstrap*

## PETITION FOR WRIT OF MANDAMUS

Kathleen M. Sullivan
Patrick D. Curran
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

Charles K. Verhoeven
Sean S. Pak
Amy H. Candido
Matthew S. Warren
Kristin J. Madigan
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile

*Attorneys for Petitioner
Google Inc.*

Charles K. Verhoeven
Sean S. Pak
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
(650) 801-5100 facsimile

Joseph Milowic III
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

*Attorneys for Petitioners Samsung
Electronics Co., Ltd., Samsung
Electronics America, Inc., and Samsung
Telecommunications America, LLC*

August 14, 2014

**CERTIFICATE OF INTEREST FOR SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC**

Pursuant to Federal Circuit Rule 47.4(a) and Federal Rule of Appellate Procedure 26.1, counsel for Petitioner Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC ("Samsung") certifies the following:

1.    The full name of every party represented by the undersigned is Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, and Google Inc.

2.    No other real parties in interest are represented by the undersigned.

3.    Samsung Electronics Co., Ltd. has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.  Samsung Electronics America, Inc. is a wholly owned subsidiary of Samsung Electronics Co., Ltd.  No other publicly held corporation owns 10% or more of the stock of Samsung Electronics America, Inc.  Samsung Telecommunications America, LLC is a wholly owned subsidiary of Samsung Electronics America, Inc.  No other publicly held corporation owns 10% or more of the stock of Samsung Telecommunications America, LLC.

4.    The names of all law firms and the partners or associates that appeared for Samsung in the district court or are expected to appear in this Court

i

are:

Quinn Emanuel Urquhart & Sullivan, LLP:  Charles K. Verhoeven, Kevin P.B. Johnson, Sean S. Pak, Joseph Milowic III

DATED:  August 14, 2014

_____
Charles K. Verhoeven

## CERTIFICATE OF INTEREST FOR GOOGLE INC.

Pursuant to Federal Circuit Rule 47.4(a) and Federal Rule of Appellate

Procedure 26.1, counsel for Petitioner Google Inc. certifies the following:

1.    The full name of every party represented by the undersigned is

Google Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.,

and Samsung Telecommunications America, LLC.

2.    No other real parties in interest are represented by the undersigned.

3.    Google Inc. has no parent corporation and no publicly held company

owns 10 percent or more of the stock of Google Inc.

4.    The names of all law firms and the partners or associates that

appeared for Google Inc. in the district court or are expected to appear in this Court

are:

> Quinn Emanuel Urquhart & Sullivan, LLP:  Kathleen M. Sullivan, Charles
> K. Verhoeven, Sean S. Pak, Amy H. Candido, Matthew S. Warren, Patrick
> D. Curran, Kristin J. Madigan

DATED:  August 14, 2014

Charles K. Verhoeven

# TABLE OF CONTENTS

**Page**

RELIEF SOUGHT ................................................................................1

ISSUES PRESENTED ..........................................................................1

SUMMARY OF ARGUMENT ...............................................................2

STATEMENT OF RELEVANT FACTS .................................................6

    A.    Nortel Develops the Patents-in-Suit, But Not in Texas .......................6

    B.    Nortel Goes Bankrupt and Sells Patents to Rockstar ..........................6

    C.    Rockstar's Executives Live and Work Primarily in Canada—
        And Rockstar Admits That None of Them Are Anywhere in
        Texas .................................................................................................7

    D.    Rockstar Forms MobileStar, a Shell Subsidiary, and Transfers
        Patents Through a Transaction Executed in Canada ...........................7

    E.    Rockstar Files Actions in the Eastern District of Texas Against
        Google's Android Customers—But Not Google Itself .......................8

    F.    Google Files Suit to Protect Its Customers; Rockstar Responds ..........9

    G.    Rockstar Moves to Dismiss or Transfer Google's California
        Action, But Its Briefing Reveals Its True Canadian Roots ..................9

    H.    The Northern District of California Denies Rockstar's Motions
        to Dismiss and to Transfer to the Eastern District of Texas ..............10

    I.    Google, Samsung, and the Other Defendants to Rockstar's
        Halloween Actions Move to Transfer Their Actions to the
        Northern District of California, to Join Google's Action There .........13

    J.    Rockstar Again Seeks to Transfer Google's Action From the
        Northern District of California to the Eastern District of Texas .........13

    K.    The Texas District Court Denies Petitioners' Motion to Stay or
        Transfer Venue to the Northern District of California .......................13

STANDARD OF REVIEW .................................................................14

# TABLE OF CONTENTS

*(continued)*

**Page**

REASONS WHY THE WRIT SHOULD ISSUE ................................................15

I.   THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION
     BY FAILING TO DEFER TO THE FIRST-FILED CASE IN THE
     NORTHERN DISTRICT OF CALIFORNIA ...............................................15

II.  THE DISTRICT COURT ERRED BY CONSIDERING OTHER
     ACTIONS BEFORE IT ALSO SUBJECT TO MOTIONS TO
     TRANSFER, DEFEATING CONGRESS' PURPOSE IN THE AIA ..........20

III. THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION
     IN FINDING TEXAS TO BE THE MOST CONVENIENT FORUM .......22

     A.   The District Court Clearly Abused Its Discretion by Crediting
          Rockstar's Made-For-Litigation Office in Plano, Texas ...................22

     B.   The District Court Clearly Abused Its Discretion and Ignored
          Precedent, Including Its Own, in Ruling on the § 1404 Factors .........24

          1.   Cost of Attendance of Willing Witnesses .................................24

          2.   Local Interest.............................................................................25

          3.   Compulsory Process...................................................................27

          4.   Ease of Access to Sources of Proof .........................................28

CONCLUSION .......................................................................................................30

# TABLE OF AUTHORITIES

**Page**

## Cases

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
    968 F. Supp. 2d 852 (E.D. Tex. 2013)................................26

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) ...................................22

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ........................................26

*GeoTag, Inc. v. Starbucks Corp.*,
    No. 10-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ................................22

*Google Inc. v. Rockstar Consortium US LP, et al.*,
    No. 13-5933, Docket No. 88 (N.D. Cal. June 26, 2014) ................................7, 13

*Graham v. United States*,
    231 U.S. 474 (1913)........................................................18

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    134 S. Ct. 1744 (2014)...................................................17

*In re Hoffmann-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ........................................26

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986) ........................................19

*MHL Tek, LLC v. Nissan Motor Co.*,
    No. 07-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009) ................................20

*John Allan Co. v. Craig Allen Co. L.L.C.*,
    540 F.3d 1133 (10th Cir. 2008) ........................................19

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ........................................16, 19

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200 (1952)............................................18

# TABLE OF AUTHORITIES

*(continued)*

**Page**

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
No. 10-216, 2012 WL 462956 (E.D. Tex. Feb. 13, 2012) ................................23

*Mendiola v. United States*,
994 F.2d 409 (7th Cir. 1993) ..............................................................................19

*Micron Techs., Inc. v. Mosaid Techs., Inc.*,
518 F.3d 897 (Fed. Cir. 2008) ...........................................................................17

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011) ......................................................................4, 22

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ........................................................................14

*In re Nintendo of Am.*,
No. 14-132, 2014 WL 2889911 (Fed. Cir. June 25, 2014)....................15, 16, 19

*Norman IP Holdings, LLC v. Lexmark Int'l., Inc.*,
No. 11-495, 2012 WL 3307942 (E.D. Tex. Aug. 10, 2012)........................ 20-21

*On Semiconductor Corp v. Hynix Semiconductor, Inc.*,
No. 09-0390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) ...........................28

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) .........................................................................17, 18

*In re Radmax*,
720 F.3d 285 (5th Cir. 2013) ............................................................................15

*Rockstar v. Samsung*,
No. 13-0900 (E.D. Tex.) .....................................................................................9

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1349 (Fed. Cir. 2011) ........................................................................16

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ........................................................................28

# TABLE OF AUTHORITIES

*(continued)*

**Page**

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
   815 F. Supp. 994 (E.D. Tex. 1993) .................................................... 18

*In re TOA Techs, Inc.*,
   543 F. App'x 1006 (Fed. Cir. 2013) ........................................... 26, 30

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014) ........................................... 15

*Troy v. Samson Mfg. Corp.*,
   No. 13-1565, 2014 WL 3377125 (Fed. Cir. July 11, 2014) .............................. 26

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ................................................................. 15

*Vertical Computer Sys., Inc. v. LG Elecs. MobileComm U.S.A., Inc.*,
   No. 10-490, 2013 WL 2241947 (E.D. Tex. May 21, 2013) .............................. 29

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .................................... 14, 15, 26, 28, 30

*In re WMS Gaming*,
   No. 14-107, 2014 WL 1614530 (Fed. Cir. Apr. 23, 2014) .......................... 14-15

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ........................................... 22, 23, 25

## Statutes

35 U.S.C. § 299 .................................................................... 20

28 U.S.C. § 1404(a) ......................................................... 14, 28

H.R. Rep. 113-279 ................................................................. 20

# TABLE OF AUTHORITIES

*(continued)*

**Page**

### Miscellaneous

David O. Taylor, *Patent Misjoinder*,
  88 N.Y.U. L. Rev. 652 (2013) ..............................................................20

Tracie L. Bryant, *The America Invents Act: Slaying Trolls, Limiting Joinder*,
  25 HARV. J.L. & TECH. 687 (2012) .................................................20

**RELIEF SOUGHT**

Google Inc. ("Google") and Samsung Electronics Co., Ltd., Samsung

Electronics America, Inc., and Samsung Telecommunications America, LLC

(collectively "Samsung"; with Google, "Petitioners") respectfully petition for a

writ of mandamus directing the United States District Court for the Eastern District

of Texas to vacate its order denying stay or transfer of this action, and to stay this

action until resolution of the related action in the United States District Court for

the Northern District of California, or to transfer this action to that court.

**ISSUES PRESENTED**

Did the district court clearly abuse its discretion by denying Petitioners'

motion to stay or transfer this action to the Northern District?  Specifically:

1.      Did the district court clearly abuse its discretion by failing to honor

the decision, by the court hearing the first-filed case in the Northern District of

California, to retain its case concerning the same seven patents?

2.      Did the district court clearly abuse its discretion by considering other

actions before it also subject to motions to transfer, thus avoiding a full and fair

consideration of any individual motion?

3.      Did the district court clearly abuse its discretion in finding Texas to be

the most convenient forum where (a) it credited Rockstar's made-for-litigation

satellite office in Plano, Texas and (b) the complaint accuses only Android

products, and the bulk of the relevant documents and witnesses will come from

Google, located in the Northern District of California?

## SUMMARY OF ARGUMENT

Nothing about this case has anything to do with the Eastern District of

Texas, and the district court abused its discretion by keeping it there, and by

refusing a stay pending resolution of the first-filed action in the Northern District

of California—which addresses precisely the same patents, and will resolve most if

not all of the major issues in these actions. Here and in the Northern District,

Rockstar asserts that devices running Google's Android platform (designed and

developed primarily in Mountain View, California) manufactured by ASUS, HTC,

LG, Pantech, Samsung and ZTE (in Asia) and sold by Google (in Mountain View)

infringe patents developed by Nortel (formerly Canada's largest phone company)

and now owned by Rockstar Consortium US LP and MobileStar Technologies

LLC (both in Ottawa, Canada). The only sensible forum for this action is the

Northern District of California—where Google built Android, where the lion's

share of witnesses and documents reside, where the Northern District can compel

critical third-party testimony, where there is unique local interest in this action, and

where there is already a case involving the same patents and the same issues.

Unable to rebut these compelling circumstances, Rockstar sought to keep its

cases in Texas based on asserted "facts" concocted entirely for litigation. Rockstar

alleged that its two plaintiff companies have "deep ties" to the Eastern District of Texas—even though it formed one of these companies the day before filing its suits, in a transaction consummated at Rockstar's true headquarters in Ottawa, Canada. Rockstar further argued that its "deep ties" to the Eastern District came not from its own conduct, but from Nortel's prior facility in Texas—even though that facility was not even in the Eastern District. Rockstar did not even contend that Nortel developed these patents in the Eastern District—nor could it, because none of their inventors were even based in Texas. And Rockstar ignored Google's first-filed action in California, assuming that it would be transferred to Texas, although the Northern District had already once denied Rockstar's transfer motion.

The district court found it "likely that the bulk of the relevant evidence in this action will come from Google," that "Google's headquarters is in Mountain View, California," and that "Google employees who work on the Android operating system are located in or near the Northern District of California"—but ignored these findings and clearly abused its discretion by finding that access to sources of proof and cost of attendance for willing witnesses both weighed *against* transfer. The district court clearly erred by crediting, and indeed according great weight, Rockstar's made-for-litigation satellite office in Plano, Texas. Rockstar itself admitted that none of its senior management live or work in the Eastern District; that only three of its employees there have any relevant knowledge; and

that its assertedly relevant documents come from Nortel's old facility in the *Northern* District of Texas. Rockstar's arguments depend entirely on "facts" made for litigation: Rockstar opened a small satellite office in the Eastern District, hired three allegedly relevant witnesses, and moved supposedly relevant documents there. The district court clearly abused its discretion by honoring "connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011). "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation"—but, unless corrected by this Court, the district court's ruling would do the opposite, giving any party total freedom to manipulate venue. *Id.*

The district court also clearly abused its discretion by ruling that judicial economy weighs "heavily against transfer," even though the Northern District of California has an action on the same patents, and all the Texas defendants moved to transfer their cases there. The district court clearly erred by finding that its pending cases against ASUS, HTC, LG, Pantech and ZTE "will present common issues of claim construction and damages, and (most likely) validity" because they concern common patents, while simultaneously finding that Google's Northern District action is unlikely to "dispose of key issues" in any other cases—even though that action also concerns the same patents, and even though the Northern

4

District found the opposite. The district court also clearly erred by finding that "the suits' accused products are importantly different," even though Rockstar's own infringement contentions against each "importantly different" product explicitly depend on citations to Google's open-source Android code, which Rockstar itself alleges is sufficient to show infringement. The district court thus ignored the best possible evidence of commonalities across Rockstar's allegations: commonalities appearing on the face of Rockstar's infringement allegations.

Finally, the district court clearly erred by finding that the other actions before it weighed "heavily against transfer," even though the defendants in those action all moved to transfer to California. In making this ruling, the district court found Rockstar's California claims against Google were *quite different* from its Texas claims against the other defendants (thus weighing against transfer), but simultaneously found that Rockstar's *Texas* claims against Google were *quite similar* to its Texas claims against the other defendants, thus *also* weighing against transfer—even though Rockstar's assertions against Google are identical in Texas and California. This ruling spurned Congress' command in the America Invents Act that filings in one district should not root other actions there, and disregarded this Court's command to exclude from judicial economy consideration other actions subject to a transfer motion. Rockstar thus accomplished what Congress meant to curtail: anchoring actions in its preferred district by suing many

defendants. This Court should correct the district court's clear and significant errors through a writ ordering a stay pending resolution of the first-filed action in the Northern District of California or, in the alternative, ordering transfer to the Northern District of California.

## STATEMENT OF RELEVANT FACTS

### A.    Nortel Develops the Patents-in-Suit, But Not in Texas

Nortel Networks ("Nortel") was a "prominent Canadian telecommunications provider headquartered in Ottawa, Canada." A302. Although based in Canada, Nortel had offices across the United States, including in Santa Clara, California, in the Northern District of California; and in Richardson, Texas, in the Northern District of Texas. *Id*. Nortel's Richardson facility, in the Dallas suburbs, was more than 160 miles from the courthouse in Marshall, Texas. A729 ¶ 8. Nortel developed the patents-in-suit outside Texas; as of filing, 12 of 16 inventors resided in Canada, one in North Carolina, and three in New Hampshire. A15, 702-03.

### B.    Nortel Goes Bankrupt and Sells Patents to Rockstar

Nortel filed for bankruptcy on January 14, 2009. A302. The bankruptcy court ordered an auction of Nortel's patent licensing operation, which occurred in July 2011. A411. The auction included approximately 6,000 U.S. and foreign patents and patent applications as well as Nortel's patent licensing team, led by then-Nortel executive and current Rockstar CEO John Veschi. A591-92. Five of the world's largest technology companies—including Apple and Microsoft—won

6

the auction by forming an entity called "Rockstar Bidco LP," which placed the

winning bid of $4.5 billion.  A585.  Apple gave "approximately $2.6 billion" to

Rockstar Bidco, or 58% of the total.  A447.  After the auction, Rockstar Bidco

reorganized itself into Rockstar Consortium US LP ("Rockstar Consortium"), a

Delaware limited partnership.  A472.  Rockstar Consortium describes itself as a

"patent licensing business" that exists solely to assert its patents.  A484.

## C.    Rockstar's Executives Live and Work Primarily in Canada—And Rockstar Admits That None of Them Are Anywhere in Texas

Rockstar acknowledges its home base in Canada.  Its website has only a

Canadian phone number, and its LinkedIn page shows its "headquarters" at its

Canadian address.  A484, 502.  Rockstar lists 33 employees, but only five in

Texas.  A504-603.  Even Rockstar's filings with the Texas state government use an

address in Ontario, Canada.  A1457.  Rockstar's management is mostly in Canada,

and all outside Texas.  An article in *Intellectual Asset Management*, which

Rockstar considers its "press release," lists ten "senior management"—five live in

Canada, and the others live in California, Colorado, Massachusetts, New York, and

Pennsylvania; none in Texas.  A504-603, 587; *Google Inc. v. Rockstar Consortium

US LP, et al.*, No. 13-5933 (N.D. Cal. May 9, 2014), Dkt. No. 67-1 ¶ 21.

## D.    Rockstar Forms MobileStar, a Shell Subsidiary, and Transfers Patents Through a Transaction Executed in Canada

On October 30, 2013, Rockstar Consortium US LP created a wholly owned

subsidiary, MobileStar Technologies LLC ("MobileStar"; collectively with

7

Rockstar Consortium, "Rockstar").  MobileStar, a Delaware corporation, has no

employees; its officers and directors all work for Rockstar Consortium US LP.

A310 (citing Rockstar declaration), 474.  Rockstar has identified four people with

any role at MobileStar, none of whom live or work in the Eastern District of Texas.

A310, 504, 515, 602, 732 ¶ 26.  One day after Rockstar formed MobileStar, on

October 31, 2013, Rockstar transferred five of the seven patents-in-suit from

Rockstar Consortium to MobileStar—through documents signed at Rockstar's

offices in Ottawa, Canada.  A492-98.

### E.    Rockstar Files Actions in the Eastern District of Texas Against Google's Android Customers—But Not Google Itself

Later that same day, October 31, 2013, Rockstar filed seven separate suits in

the Eastern District of Texas, alleging infringement of the patents-in-suit by ASUS,

Huawei, HTC, LG, Pantech, Samsung and ZTE (the "Halloween actions").  A335.

The Halloween actions alleged infringement by "certain mobile communication

devices having a version (or an adaption thereof) of [the] Android operating

system" developed by Google.  A335 n.1.  Even on its patent claiming only

hardware, Rockstar limited its complaints to Android products, although each of

the Halloween defendants also made other devices.  A319 (citing complaints).

Industry observers immediately viewed these actions as an attack, by

Microsoft and Apple, on Android and Google.  *Id*. n.8.  But Rockstar did not sue

Google directly; instead it moved to attack Google's *customers*—makers of

devices using Google's Android software.  A321-22.  Rockstar could have sued

Google on Halloween:  in its complaint against ASUS, Rockstar expressly accused

the Nexus 7, one of the Nexus products that Google advertises widely and sells to

customers on its website.  A1402 ¶ 15.  Rockstar could have asserted that Google

infringed the same patents by selling the same product, but opted not to.

### F.    Google Files Suit to Protect Its Customers; Rockstar Responds

Even though Google was not a named defendant, Rockstar's actions accused

Android.  Thus, on December 23, 2013, Google filed suit in the Northern District

of California asserting that its Android platform and Nexus devices do not infringe

the patents Rockstar asserted in the Halloween actions.  A56-68.  On December 31,

2013, Rockstar responded by amending one of the Halloween actions, *Rockstar v.*

*Samsung*, No. 13-0900 (E.D. Tex.), to allege that Google infringes three of the

asserted patents.  A69-134.  On March 10, 2014, Rockstar sought leave to allege

that Google infringed the remaining four patents.  A1347-63.  The district court

granted this motion.  A1396-97.  Thus, in both California and Texas, Rockstar now

asserts that Google infringes the same patents by making the same products.

### G.    Rockstar Moves to Dismiss or Transfer Google's California Action, But Its Briefing Reveals Its True Canadian Roots

On January 23, 2014, Rockstar moved to dismiss Google's California action,

"or in the alternative transfer Google's claims to the Eastern District of Texas."

A1133-63.  Rockstar argued that the Northern District lacked personal jurisdiction

9

over its litigation subsidiary, MobileStar, which was an "an indispensable party" without which the "action must be dismissed." A1147-48. Second, Rockstar argued that the court should dismiss Google's action against Rockstar as second-filed. A1159-61. Third, Rockstar argued that the § 1404 convenience factors favored transferring Google's action to Marshall, Texas. A1161-63.

### H. The Northern District of California Denies Rockstar's Motions to Dismiss and to Transfer to the Eastern District of Texas

On April 17, the Northern District of California denied Rockstar's motion to dismiss (A301), and its motion to transfer. A328. In so ruling, the court found:

**Google's action, not Rockstar's, was first filed and in any event must take priority as a manufacturer case.** The Northern District noted this Court's rule that the "court of the actual first-filed case should rule on motions to dismiss or transfer based on exceptions to the first-to-file rule or on the convenience factors." A323. The Northern District ruled that Google's action was first-filed, not Rockstar's (A324), that "the relationship between Google and the Halloween defendants is one of manufacturer and customer," and that "the determination of the infringement issues here would likely be dispositive of the other cases." *Id*. For these reasons, and because "manufacturer [Google] presumably has a greater interest in defending against charges of patent infringement than the customers [the Halloween defendants], the present suit takes precedence" over those actions. *Id*.

10

Under this rule, even if Rockstar's action were filed before Google's, "the customer-suit exception to the first-to-file rule would apply." *Id*.

**Rockstar is in Canada.** The Northern District found that Rockstar's "primary operations and headquarters are in Canada," and that "Rockstar's 'nerve center,' or the place where its 'officers direct, control, and coordinate the corporation's activities,' thus appears to be in Ottawa, Canada." A303 n.1.

**MobileStar is a sham.** The Northern District found that "the circumstances here strongly suggest that Rockstar formed MobileStar as a sham entity for the sole purpose of avoiding jurisdiction" outside Texas. A309. Although "Rockstar asserts that 'there is no hint whatsoever of *any* manipulation' and that 'MobileStar was created for legitimate reasons having nothing to do with personal jurisdiction,' Rockstar does not actually provide any evidence supporting this point." A310.

**Apple's Witnesses have unique and critical knowledge.** The Northern District recognized the importance of Apple witnesses, whom only the Northern District can compel to appear at trial. The court noted that "Google and Apple's rivalry in the smartphone industry is well-documented," and Rockstar's "litigation strategy of suing Google's customers in the Halloween actions is consistent with Apple's particular business interests," especially when Rockstar limited its "infringement claims to Android-operating devices only, even where they asserted

11

a hardware-based patent." A318-19. "This 'scare the customer and run' tactic advances Apple's interest in interfering with Google's Android business." A319.

**The remaining factors favor the Northern District of California.** The Northern District found the § 1404 factors favored the Northern District, not East Texas. A324-28. Noting that the "convenience and availability of witnesses is 'probably the single most important factor' in the transfer analysis," the Northern District found this "factor favors California because Google's Android products, the target of this infringement action, were designed and created here" and because "[m]any of the witnesses who can testify to the design and development of the accused Android platform's features reside near Google's headquarters in Mountain View, California"—and, finally, that "[o]ther witnesses, such as the inventors of the patents-in-suit, are likely to be in Canada." A325. The Northern District noted that "much of the evidence is here. Some of the evidence may be in Canada or other states; however, that does not make Texas the more convenient forum." A328. The Northern District also found it "has the greater interest in this litigation because the claims here will 'call into question the work and reputation of several individuals residing in or conducting business in this community.'" A327. Considering the § 1404 factors, the Northern District found the action before it should proceed before it, not the Eastern District of Texas. A328.

12

**I.  Google, Samsung, and the Other Defendants to Rockstar's Halloween Actions Move to Transfer Their Actions to the Northern District of California, to Join Google's Action There**

Each defendant to the Halloween actions moved to transfer or stay those actions from the Eastern District of Texas to the Northern District of California. A1436-1537.  These motions explained that because Google is the ultimate author of Android, the case should be heard in the Northern District of California, which holds Google's documents and witnesses.  *E.g.*, A1440, A1463.

**J.  Rockstar Again Seeks to Transfer Google's Action From the Northern District of California to the Eastern District of Texas**

On May 9, 2014, Rockstar filed a second motion to transfer Google's action to the Eastern District of Texas.  Google opposed.  A1654-65.  On June 26, the Northern District heard this motion; the same day, it issued a minute order noting it was inclined to deny transfer.  *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933, Docket No. 87 (N.D. Cal. June 26, 2014).

**K.  The Texas District Court Denies Petitioners' Motion to Stay or Transfer Venue to the Northern District of California**

Five days later, on July 1, the Eastern District of Texas denied Petitioners' long-pending motion to stay or transfer.  A1-11.  The court found it "likely that the bulk of the relevant evidence in this action will come from Google," and that many Google employees "who work on the Android operating system are located in or near the Northern District of California," but still found these actions should remain in Marshall, Texas.  A5, 7.  The court also found that "considerations of

judicial economy bear heavily upon the court's transfer analysis," and found

economy in keeping Petitioners before the Eastern District, with the Halloween

defendants—but did not consider the economy gained by transferring these actions

to join the action in California, which addresses the same products and patents.

## STANDARD OF REVIEW

"The Fifth Circuit has approved the use of mandamus to correct a patently

erroneous denial of transfer pursuant to 28 U.S.C. § 1404(a) in appropriate

circumstances." *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).[1]  "If

the district court clearly abused its discretion" in denying the transfer motion, the

moving party's "right to issuance of the writ is necessarily clear and indisputable."

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc).

"Section 1404(a) serves to prevent the waste of time, energy and money and to

protect litigants, witnesses and the public against unnecessary inconvenience and

expense.  Consistent with that purpose, both this Court and the Fifth Circuit have

made clear that a motion to transfer venue pursuant to § 1404(a) should be granted

if the movant demonstrates that the transferee venue is clearly more convenient."

*In re WMS Gaming*, No. 14-107, 2014 WL 1614530, at *2 (Fed. Cir. Apr. 23,

---

[1] Because a dispute over venue "does not involve substantive issues of patent law, this Court applies the laws of the regional circuit in which the district court sits, in this case the United States Court of Appeals for the Fifth Circuit." *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).

2014) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) and *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013)) (internal citations and quotation marks omitted).  A district court need not find "that the transferee forum is *far* more convenient," but only that "the transferee forum is *clearly* more convenient."  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) (emphasis in original).  The Fifth Circuit does not consider plaintiff's choice of venue a factor in the transfer analysis.  *Volkswagen*, 545 F.3d at 315.  Mandamus is appropriate where "there is a 'stark contrast in relevance, convenience, and fairness between the two venues.'"  *In re Nintendo of Am.*, No. 14-132, 2014 WL 2889911, at *2 (Fed. Cir. June 25, 2014).

## REASONS WHY THE WRIT SHOULD ISSUE

**I.    THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION BY FAILING TO DEFER TO THE FIRST-FILED CASE IN THE NORTHERN DISTRICT OF CALIFORNIA**

The district court clearly erred by declining to defer to the first-filed action regarding the same patents in the Northern District, and compounded this error by proceeding to evaluate the convenience factors without first finding that its case was first filed.  Each of these errors requires reversal by this Court.

"When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence."  *Nintendo of*

*Am.*, 2014 WL 2889911, at *2; *see also Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) ("Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum."); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). As the Northern District found, its action was first filed and, in any event, "the relationship between Google and the Halloween defendants is one of manufacturer and customer," so "the determination of the infringement issues here would likely be dispositive of the other cases." A324. Under this Court's law, Google's suit in California thus takes precedence: " the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464).

As the Northern District noted, Rockstar asserts six of the seven patents-in-suit against Android, which Google designed and developed—and, even on its hardware patent, Rockstar limited its "infringement claims to Android-operating devices only." A319. Finally, Rockstar's infringement contentions assert only source code that comes from Google's Android Open Source Project or the open-

source Linux kernel. A1126. These contentions explicitly claim that Google's open-source code is exemplary of, and can show infringement by, all accused devices from all defendants. *See, e.g.*, A1194. This commonality mandates consolidation. *See, e.g.*, *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) ("multiple litigation of these identical claims could serve no purpose of judicial administration").

The district court made several clear errors in declining to transfer or stay this action in favor of the Northern District's first-filed, manufacturer action. First, the court failed to credit, or even consider, the Northern District's findings that its case was both first filed and subject to the customer-suit doctrine. A8-9, 323-24. Second, the court found that it "need not resolve the formalistic question of whether Rockstar's October complaint makes this suit the first-filed case," but could still proceed to consider the § 1404 convenience factors. A8. This was legal error, and thus an abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014). The Northern District correctly found that the "court of the actual first-filed case should rule on motions to dismiss or transfer based on exceptions to the first-to-file rule or on the convenience factors." A323. Even Rockstar acknowledged this rule, citing this Court's ruling in *Micron Technologies, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008), and arguing that "[a]lthough the Federal Circuit in *Micron Tech*. said a

17

court 'must' apply these factors, its holding was limited to the situation in which the court presiding over a first-filed declaratory judgment action is performing a first-to-file analysis." A1161 n.6. The district court here, however, found it "need not resolve" which action was first filed before considering the convenience factors. A8. This was clear error, and clearly defeated the purpose of this rule: avoiding conflicting rulings and duplicative litigation. As the Eastern District has previously acknowledged, the first-filed court must make this decision:

> the first-to-file rule gives the first-filed court the responsibility to determine which case should proceed. *See, e.g.*, *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982). Apprehension that the first-filed court will fail to appropriately consider the convenience of the parties and the witnesses is not a proper matter for the Court's consideration. *See Kerotest*, 342 U.S. at 185 (quoting *Graham v. United States*, 231 U.S. 474, 480 (1913)). This Court simply may not, consistent with the principles of comity and conservation of judicial resources, usurp the first-filed court's role.

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 999 (E.D. Tex. 1993); *see also, e.g.*, *Pacesetter*, 678 F.2d at 96 ("the *forum non conveniens* argument should be addressed to the court in the first-filed action").

Third and finally, the district court erred by finding that Rockstar's cases before it "will present common issues of claim construction and damages, and (most likely) validity," while simultaneously finding that Rockstar's claims against Google in California will *not* "dispose of key issues in this case and the related Rockstar cases." A8-9. These findings are at war with each other: according to the district court, Rockstar's claims against ASUS, HTC, LG, Pantech and ZTE are

*so similar* to its claims against Google (in Texas) that they present significant common issues, but Rockstar's claims against Google (in California) are *so different* from its claims against Google (in Texas) that they will not resolve "major issues." A8-9. If the first statement is true, the second cannot be, requiring a stay pending resolution of Google's California action. *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) (reversing ruling by district court depending on "internally inconsistent" findings); *John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1139 (10th Cir. 2008) ("Although this court will not set aside findings of fact unless clearly erroneous, internally inconsistent findings constitute clear error."); *see also Mendiola v. United States*, 994 F.2d 409, 410 (7th Cir. 1993) ("Findings are clearly erroneous if the trial court's interpretation of the facts is implausible, illogical, internally inconsistent, or contradicted by documentary or other extrinsic evidence."). This Court has repeatedly held that a manufacturer suit takes precedence: "although there may be additional issues involving the defendants in the customer action, their prosecution will be advanced if the plaintiff is successful on the major premises being litigated in the manufacturer litigation, and may well be mooted if the plaintiff is unsuccessful." *Nintendo of Am.*, 2014 WL 2889911, at *2; s*ee also Katz*, 909 F.2d at 1464 (enjoining a customer suit that involved "additional issues" because the declaratory action would resolve "major issues"). The district court should have followed the law, and the Northern District, to apply the customer-suit rule here.

19

## II.    THE DISTRICT COURT ERRED BY CONSIDERING OTHER ACTIONS BEFORE IT ALSO SUBJECT TO MOTIONS TO TRANSFER, DEFEATING CONGRESS' PURPOSE IN THE AIA

The district court clearly erred by considering in its discussion of judicial economy the Halloween actions against other defendants, each of which had sought transfer to the Northern District of California. A8-9, 1436-1537. Congress meant to prohibit precisely this in passing the America Invents Act, Pub. L. No. 112-29, Sept. 16, 2011. One of the AIA's core purposes was to curtail litigation tactics Congress found abusive. H.R. REP. 113-279, 18. One such mechanism was the bulk filing of actions in one district, a tactic employed most often in the Eastern District of Texas. David O. Taylor, *Patent Misjoinder*, 88 N.Y.U. L. REV. 652, 690 (2013). These actions were often "anchored" in the plaintiff's chosen venue, as multiple defendants' documents were spread around the country, causing the plaintiff's chosen court to conclude it was as good a venue as any and deny transfer for that reason. *Id.*; *see, e.g.*, *MHL Tek, LLC v. Nissan Motor Co.*, No. 07-289, 2009 WL 440627, at *4 (E.D. Tex. Feb. 23, 2009) (denying transfer with "many defendants" where "party witnesses will come from all over the globe"). To address this concern, Congress in the AIA mandated more stringent joinder rules. 35 U.S.C. § 299. This rule stopped plaintiffs from filing multi-defendant cases in a chosen district. *See* Tracie L. Bryant, *The America Invents Act: Slaying Trolls, Limiting Joinder*, 25 HARV. J.L. & TECH. 687, 703 (2012); *see also, e.g.*, *Norman*

*IP Holdings, LLC v. Lexmark Int'l., Inc.*, No. 11-495, 2012 WL 3307942, at *4 (E.D. Tex. Aug. 10, 2012) (transfer motion "considered only as to the defendants in the severed case, not as to all defendants in the pretrial consolidated case").

The district court clearly erred by allowing precisely the result Congress sought to prohibit. In considering Petitioners' motion to transfer, the district court noted "there are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents," and found that, because of these actions, "[c]onsiderations of judicial economy weigh strongly in favor of consolidating all cases on these patents in the Eastern District of Texas." A8-9. Although defendants in these actions had already filed motions to transfer, the court ignored these motions, simply assuming that all actions would remain before it. A8-9. Since then, the district court has denied the remaining motions to transfer; in considering them, it stated that "judicial economy weighs heavily in the Court's transfer analysis," noted the "six Rockstar litigations currently proceeding in the Eastern District of Texas," and found that "[t]hese considerations weigh against a transfer." A1544-45, 1552, 1561-62, 1570-71, 1578.

This was grave error. The district court created a self-fulfilling prophecy, denying transfer of each action because of the others pending before it, and thus never fairly considering any motion. The district court's bootstrapping denials violated not only the AIA, but also this Court's rule that courts cannot "properly

rely on judicial economy involved in retaining the very cases that were the subject

of the transfer motion." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir.

2013). The district court let Rockstar do what Congress meant the AIA to stop—

litigate in its preferred district simply by suing many defendants. As the Eastern

District has previously acknowledged, the law does not allow this:

> The Court will not permit the existence of separately filed cases to sway its
> transfer analysis. Otherwise, a plaintiff could manipulate venue by serially
> filing cases within a single district. Allowing a plaintiff to manufacture
> venue based on this alone would undermine the principles underpinning
> transfer law and the recently enacted America Invents Act.

*GeoTag, Inc. v. Starbucks Corp.*, No. 10-572, 2013 WL 890484, at *6 (E.D. Tex.

Jan. 14, 2013). The district court made precisely this mistake, requiring reversal.

## III.    THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN FINDING TEXAS TO BE THE MOST CONVENIENT FORUM

### A.    The District Court Clearly Abused Its Discretion by Crediting Rockstar's Made-For-Litigation Office in Plano, Texas

The district court's order denying transfer relied heavily on Rockstar's

satellite office in Plano, Texas. *E.g.*, A5. But it was clear error to credit this office

at all, which Rockstar established solely to bolster its venue claims, because courts

cannot credit "connections to a preferred forum made in anticipation of litigation

and for the likely purpose of making that forum appear convenient." *Microsoft*,

630 F.3d at 1364; *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed.

Cir. 2010). Rockstar's presence in Plano, Texas is entirely an artifact of litigation.

(*See supra* at C-D.) The district court did not address the facts Petitioners

submitted on this point, dismissing them with a brief statement that "such a conclusion is unwarranted." A5. When examined, however, Rockstar's rationale for its satellite office in Plano quickly collapses. Pressed to provide non-litigation reasons for this office, Rockstar mustered only platitudes:

> Rockstar's current offices are far more attractive and suitable than the former location, and Rockstar selected them to serve as a fully functional headquarters facility that would attract high-quality employees.

A731 ¶ 21. Rockstar did not explain why its new offices in the Eastern District were more "attractive" or "suitable," or how they would attract "high-quality employees" in comparison to its headquarters in Canada or its previous satellite office in the Northern District of Texas, especially considering the latter was only "a short drive away." A731 ¶¶ 20-21. If Rockstar's surpassingly vague explanation can overcome this Court's rule against considering "connections to a preferred forum made in anticipation of litigation," then that rule has no meaning, because parties could always avoid it by parroting similar pablum. That cannot be the law, and indeed is not: as the Eastern District has previously acknowledged, following *Zimmer* and *Microsoft* "it is the Court's duty to carefully scrutinize" party assertions supporting venue claims, "to determine whether the party is trying to manipulate venue through its place of incorporation or principal place of business." *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 10-216, 2012 WL 462956, at *3 (E.D. Tex. Feb. 13, 2012). The district court here

failed to "carefully scrutinize" Rockstar's claim, accepting without question its

unsupported and unspecific assertions, and ignoring the Northern District's finding

that Rockstar's actual headquarters is in Ottawa, Canada.  A5, 303 n.1.  The court's

ruling depends on the Plano facility, so this error requires reversal.  *E.g.*, A7.

### B.    The District Court Clearly Abused Its Discretion and Ignored Precedent, Including Its Own, in Ruling on the § 1404 Factors

Even crediting Rockstar's office in Plano—which it should not have—the

district court still committed clear error in evaluating the convenience factors and

denying transfer.  These errors too require correction by this Court.

### 1.    Cost of Attendance of Willing Witnesses

The district court found that "Google employees from northern California

would face substantial costs in traveling to the Eastern District of Texas for trial,"

and noted that this was a "critical factor in this Court's analysis of this case."  A7.

Despite these findings, the court found this factor "weighs slightly against transfer"

because "Rockstar has identified several potential witnesses who work at its Plano

office," and Samsung "maintains a Dallas office that appears to do substantial

work on its Android-based products."  A7.  To reach this conclusion, however, the

district court made several clear errors.  First, the court noted that "Rockstar has

identified several potential witnesses who work at its Plano office"—in fact,

exactly three—but did *not* note that Google had identified *several hundred*

Android engineers who work in the San Francisco Bay Area.[2]  A7, 670 ¶¶ 6-8.

And Google did more than that:  its unchallenged declaration established that

Mountain View is the "strategic center of Google's business," housing not only

Hiroshi Lockheimer, Vice President of Engineering for Android, but also the vast

majority of Android employees in his group.  A670 ¶¶ 6-8.  It was thus clear error

to conclude that "if the court were to transfer this case, roughly equivalent costs

would be imposed on Rockstar's witnesses"—because, on the record before it,

substantially more witnesses would travel from Google than from Rockstar.  A7.

Elsewhere, indeed, the court acknowledged that "the bulk of the relevant evidence

in this action will come from Google"—but, erroneously, not while discussing this

factor.  A5.  The court also erred by considering equally the attorneys in Plano and

the engineers in Mountain View, even though Google's engineers will suffer

greater disruption than Rockstar's attorneys.  *Cf. Zimmer*, 609 F.3d at 1381.

## 2.    Local Interest

The district court further erred by ignoring binding precedent finding strong

local interest where an accused product was designed "because the cause of action

calls into question the work and reputation of several individuals residing in or

---

[2]  Rockstar claims the existence of "employees with relevant knowledge" favors the Eastern District:  Donald Powers, Bernard Tiegerman, Mark Hearn and Eric Fako.  A704-05.  Only three of these employees reside anywhere in Texas— Eric Fako admits he works from his home in North Carolina.  A716 ¶ 4.  Each of these employees is a Rockstar attorney.  A716 ¶ 1, 719 ¶ 1, 728 ¶ 1, 737 ¶ 1.

near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *see also, e.g.*, *In re TOA Techs, Inc.*, 543 F. App'x 1006, 1010 (Fed. Cir. 2013) ("significant interest in trying this case in a venue in which the accused product was designed"). As this Court found in *Hoffmann-La Roche*, ignoring this interest is an abuse of discretion:

> The district court also disregarded *Volkswagen* and *Genentech* in holding that the [transferee district] had no more of a local interest in deciding this matter than the Eastern District of Texas. While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.

587 F.3d at 1338 (citations omitted). Indeed, the Eastern District itself has noted that the "Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley." *Affinity Labs of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013). But the district court ignored these cases, finding instead "a predisposition toward one party" to which it accorded "no weight in its analysis." A10. This was clear legal error: if this Court felt that the local interests it identified were in fact mere jury bias, it would have ruled differently in *Hoffmann-La Roche* and *TOA*. The district court thus improperly overrode this Court's decisions, clear error mandating reversal. *E.g.*, *Troy v. Samson Mfg. Corp.*, No. 13-1565, 2014 WL 3377125, at *3 (Fed. Cir. July 11, 2014) ("Indeed, lower courts are bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.'").

### 3.    Compulsory Process

As the district court found, this factor primarily concerns "witnesses for whom compulsory process to attend trial might be necessary." A6. Petitioners listed four types of witnesses in the Northern District and subject to process there, but not in the Eastern District: Apple employees, at least one named inventor, prior artists, and former Android employees. A344-45. Of these, Apple witnesses are the most important; as the Northern District of California found, "Google demonstrates a direct link between Apple's unique business interests, separate and apart from mere profitmaking, and Defendants' actions against Google and its customers." A318. The district court did not address any of these points, noting only that "the Court views Google's asserted interest in Apple's testimony with some skepticism" and, in any event, "other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas." A6. Again, this was error; as the Northern District noted, "Google and Apple's rivalry in the smartphone industry is well-documented," and Rockstar's "litigation strategy of suing Google's customers in the Halloween actions is consistent with Apple's particular business interests." A318-19. Petitioners presented evidence showing Apple's importance to this action, and Rockstar presented no contrary evidence; it was clear error for the district court to dismiss Apple's unique and uniquely important role, as well as the Northern District's findings on this point.

### 4.    Ease of Access to Sources of Proof

Despite acknowledging it "likely that the bulk of the relevant evidence in this action will come from Google," based in Mountain View, California, the district court found this factor to weigh against transfer.  A5.  This too was clear error, resting on an abrogation of the district court's prior cases.  This factor turns on "which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues."  *On Semiconductor Corp v. Hynix Semiconductor, Inc.*, No. 09-0390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (citing *Volkswagen*, 545 F.3d at 314-15); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (reversing and finding "the district court erred by reading out of the § 1404(a) analysis the factor regarding the relative ease of access to sources of proof" when, as "acknowledged in the district court's order, the vast majority of physical and documentary evidence relevant to this case will be found" outside Texas).  Even if relevant documents are "spread throughout the country and world," including in Texas, this factor still favors transfer to the Northern District of California when it is closer to most of defendants' documents because, "typically in a patent case, the defendant has the majority of relevant documents." *Hynix*, 2010 WL 3855520, at *4.  The district court here, however, refused to conclude that Google's relevant documents were in Mountain View—but assumed

28

without evidence that Samsung's relevant documents were stored in Dallas.  A5.

The court erred by inconsistently presuming Samsung's relevant documents were

in Dallas, but *not* presuming Google's relevant documents were in California.  A5.[3]

The court compounded its error by failing to credit Google's declaration

stating that "Google's ongoing development efforts, operations, *and records*

*regarding Google's Android platform* are also predominantly based in Mountain

View."  A5, 669-70 ¶ 5 (emphasis added).  Instead the court focused on another

statement in the same declaration, that "[a]ll or nearly all of the documents related

to Google's Android platform are located in Mountain View, California, or are

stored on Google's secure servers, which are accessible and managed from

Mountain View."  A5, 671 ¶ 12.  From this statement the court concluded that "it is

unclear whether and how much information actually exists within" the Northern

District (A5), but erroneously failed to credit the separate, unchallenged statement

that "records regarding Google's Android platform are also predominantly based in

Mountain View."  A5, 669-70 ¶ 5.  The court compounded this error by fully

---

[3]   The district court's ruling regarding Samsung also failed to follow its own prior precedent.  In *Vertical Computer Sys., Inc. v. LG Elecs. MobileComm U.S.A., Inc.*, No. 10-490, 2013 WL 2241947, at *3, n.2 (E.D. Tex. May 21, 2013), LG argued for transfer to New Jersey, headquarters of its United States subsidiary.  *Id.* The district court refused to consider the New Jersey location at all, but also ruled that even if it were to consider that location, its decision against transfer "would not change because LG," like Samsung, "is a multinational corporation based in Seoul, Korea, with offices across the United States."  *Id.*

crediting Rockstar's declaration, which stated only that unspecified and unnumbered "hard drives" and "boxes of hard copy documents" were in Plano. A5, 733 ¶ 29. It was clear error for the district court to credit Rockstar's statement that some unquantified amount of its documents were in Plano, while refusing to credit Google's much clearer statement that its Android records are "predominantly based in Mountain View." A5, 669-70 ¶ 5.[4]

## CONCLUSION

For the foregoing reasons, Petitioners request that this Court issue a writ of mandamus directing the district court to vacate its order denying stay or transfer, and to stay this action until resolution of the related action in the Northern District of California, or to transfer this action to that court.

Dated: August 14, 2014    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:_____

Charles K. Verhoeven
*Attorneys for Petitioners Google Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC*

---

[4] Finally, the district court again compounded its error by ruling that, "given the ease in the modern era of transferring electronic data from one place to another, this factor is not dominant." A5. This ruling ignores law from this Court and the Fifth Circuit stating that, even when some electronic evidence is widely accessible, "this does not negate the significance of having trial closer to where [moving party] TOA's physical documents and employee notebooks are located." *TOA*, 543 F. App'x at 1010; *see also Volkswagen*, 545 F.3d at 316.

# CERTIFICATE OF SERVICE

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
Misc. No. _____
-----------------------------------------------------------------------------
IN RE GOOGLE INC., SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC., AND
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC
                               Petitioners.
-----------------------------------------------------------------------------

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by QUINN EMANUEL URQUHART & SULLIVAN, LLP, attorneys for Petitioners to print this document. I am an employee of Counsel Press.

On the **14th Day of August, 2014**, I served the within **Petition for Writ of Mandamus** upon:

Mike McKool *(via FedEx)*
mmckool@McKoolSmith.com
Douglas A. Cawley
dcawley@McKoolSmith.com
Ted Stevenson III
tstevenson@mckoolsmith.com
David Sochia
dsochia@McKoolSmith.com
Ryan Hargrave
rhargrave@McKoolSmith.com
Nicholas M. Mathews
nmathews@McKoolSmith.com
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Jennifer Leigh Truelove
jtruelove@McKoolSmith.com
Samuel Franklin Baxter
sbaxter@McKoolSmith.com
MCKOOL SMITH, P.C.
P.O. Box O
104 East Houston St., Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Joshua W. Budwin
jbudwin@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Attorneys for Rockstar Consortium US LP and MobileStar Techs. LLC

31

Harold H. Davis, Jr. *(via FedEx)*
harold.davis@klgates.com
Irene I Yang
irene.yang@klgates.com
K&L GATES LLP
Four Embarcadero, Suite 1200
San Francisco, California  94111
(415) 882-8200
(415) 882-8220 facsimile

Jeffrey M. Ratinoff
jeffrey.ratinoff@klgates.com
K&L GATES LLP
630 Hansen Way
Palo Alto, California  94304
(650) 798-6700
(650) 798-6701 facsimile

Jennifer Klein Ayers
jennifer.ayers@klgates.com
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas  75201
(214) 939-5500
(214) 939-5849 facsimile

            Attorneys for Defendants ASUStek Computer, Inc.
                and ASUS Computer International

Richard D. Harris  *(via FedEx)*
harrisr@gtlaw.com
Jeffrey G. Mote
motej@gtlaw.com
Eric J. Maiers
maierse@gtlaw.com
James J. Lukas, Jr.
lukasj@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
(312) 456-8400
(312) 456-8435 facsimile

Mary-Olga Lovett
lovettm@gtlaw.com
GREENBERG TRAURIG LLP
1000 Louisana, Suite 1800
Houston, Texas  77002
(713) 374-3500
(713) 374-3501

    Attorneys for Defendants LG Electronics, Inc., LG Electronics U.S.A.,
        Inc., and LG Electronics MobileComm USA Inc.

Michael J. Bettinger *(via FedEx)*
mike.bettinger@klgates.com
Curt Holbreich
curt.holbreich@klgates.com
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California  94111
(415) 882-8200
(415) 882-8220 facsimile

<u>Attorneys for Defendants HTC Corporation and HTC America, Inc.</u>

Alexas D. Skucas (*via FedEx*)
askucas@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
(212) 556-2100
(212) 556-2222 facsimile

Steven T. Snyder
ssnyder@kslaw.com
Anup M. Shah
ashah@kslaw.com
KING & SPALDING LLP
100 North Tryon Street, Ste. 3900
Charlotte, North Carolina 28202
(704) 503-2600
(704) 503-2622 facsimile

Everett Upshaw
everettupshaw@everettupshaw.com
David A. Bailey
davidbailey@everettupshaw.com
LAW OFFICE OF EVERETT
UPSHAW, PLLC
811 South Central Expressway
Suite 307
Richardson, Texas 75080
(972) 372-4235
(214) 865-6086 facsimile

<u>Attorneys for Defendants ZTE (USA) Inc. and ZTE Corp.</u>

W. Barton Rankin  *(via FedEx)*
bart.rankin@bakermckenzie.com
BAKER & MCKENZIE LLP
2300 Trammel Crow Center
2001 Ross Avenue, Suite 2300
Dallas, Texas  75201
(214) 978-3000
(214) 978-9099 facsimile

D. James Pak
d.james.pak@bakermckenzie.com
BAKER & MCKENZIE LLP
Two Embarcadero Center, 11th Floor
San Francisco, California  94111
(415) 576-3000
(415) 576-3099 facsimile

<u>Attorneys for Defendants Pantech Co., Ltd., and Pantech Wireless, Inc</u>

via E-mail and also via Overnight Delivery to the lead counsel indicated above.

Additionally, a copy will be sent to these U.S. District Judges:

    The Honorable Rodney Gilstrap
    U.S. District Court, District Judge
    Sam B. Hall, Jr. Federal Building
    and United States Courthouse
    100 East Houston Street
    Marshall, Texas 75670
    Tel: (903) 935-3868
    Fax: (903) 935-2295

**via Express Mail**.

    Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been hand-delivered to the Court on the same date as above.

August 14, 2014

                             John C. Kruesi, Jr.
                             Counsel Press