Miscellaneous Docket No. _____

# United States Court of Appeals
# for the Federal Circuit

IN RE GOOGLE INC., SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC., AND
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

*Petitioners.*

*On Petition for a Writ of Mandamus to the U.S. District Court for the
Eastern District of Texas in Case Nos. 2:13-cv-894 and 2:13-cv-900
Judge Rodney Gilstrap*

## APPENDIX IN SUPPORT OF
## PETITION FOR WRIT OF MANDAMUS

Kathleen M. Sullivan
Patrick D. Curran
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

Charles K. Verhoeven
Sean S. Pak
Amy H. Candido
Matthew S. Warren
Kristin J. Madigan
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile

*Attorneys for Petitioner
Google Inc.*

Charles K. Verhoeven
Sean S. Pak
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
(650) 801-5100 facsimile

Joseph Milowic III
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

*Attorneys for Petitioners Samsung
Electronics Co., Ltd., Samsung
Electronics America, Inc., and Samsung
Telecommunications America, LLC*

August 14, 2014

# TABLE OF CONTENTS

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 07/01/2014 | 070 | Memorandum Opinion and Order Denying Motion to Stay or Transfer | A1 |
| 10/31/2013 | 001 | Plaintiffs Rockstar Consortium US LP and Mobile Star Technologies LLC's Original Complaint, *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A12 |
| 12/23/2013 | 001 | Complaint for Declaratory Judgment of Non-Infringement of U.S. Patent Nos. 5,838,551; 6,037,937; 6,128,298; 6,333,973; 6,463,131; 6,765,591; and 6,937,572, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A56 |
| 12/31/2013 | 019 | Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's First Amended Complaint, *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A69 |
| 03/10/2014 | 046 | Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Second Amended Complaint, *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A136 |
| 07/21/2014 | 126 | Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC's Answer, Affirmative Defenses and Counterclaims to Second Amended Complaint | A221 |
| 07/22/2014 | 127 | Answer and Affirmative Defenses of Defendant Google Inc. to Claims for Patent Infringement of Rockstar Consortium US LP and MobileStar Technologies LLC | A259 |
| 04/21/2014 | 071 | Google's Notice of Order Denying Motion to Dismiss or in the Alternative, to Transfer | A298 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/21/2014 | 071.1 | Exhibit A – Order Denying Motion to Dismiss or, in the Alternative, to Transfer, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A300 |
| 03/21/2014 | 052 | Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A329 |
| 03/21/2014 | 052.1 | Declaration of Kristin Madigan | A352 |
| 03/21/2014 | 052.2 | Exhibit 1 – Robert McMillan, *How Apple and Microsoft Armed 4,000 Patent Warheads*, Wired Enterprise, May 21, 2012 | A358 |
| 03/21/2014 | 052.3 | Exhibit 2 – Joff Wild, *Rockstar CEO says he would not bet against further suits to follow those issued last week*, IAM Magazine, November 4, 2013 | A370 |
| 03/21/2014 | 052.4 | Exhibit 3 – Order Authorizing and Approving (A) The Sale of Certain Patent and Related Assets Free And Clear of All Claims and Interests, (B) The Assumption and Assignment of Certain Executory Contracts, (C) The Rejection of Certain Patent Licenses and (D) The License Non-Assignment and Non-Renewal Protections, *In re Nortel Networks Inc., et al.*, No. 09-10138 (D. Del. July 11, 2011), Docket. No. 5935 | A374 |
| 03/21/2014 | 052.5 | Exhibit 4 – Apple Inc. Form 10-Q Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the quarterly period ended June 25, 2011 | A412 |
| 03/21/2014 | 052.6 | Exhibit 5 – Certificate of Limited Partnership of Rockstar Bidco, LP | A467 |
| 03/21/2014 | 052.7 | Exhibit 6 – Certificate of Formation of Rockstar Consortium, LLC | A469 |
| 03/21/2014 | 052.8 | Exhibit 7 – Certificate of Limited Partnership of Rockstar Consortium US LP | A471 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 03/21/2014 | 052.9 | Exhibit 8 – Certificate of Formation of MobileStar Technologies LLC | A473 |
| 03/21/2014 | 052.10 | Exhibit 9 – Robert McMillan, *Facebook Infringes My Patents Too, Says CEO Who Just Sued Google*, Wired Enterprise, November 1, 2013 | A475 |
| 03/21/2014 | 052.11 | Exhibit 10 – iprockstar.com website page titled "About Rockstar" | A483 |
| 03/21/2014 | 052.12 | Exhibit 11 – iprockstar.com website page titled "Innovation" | A485 |
| 03/21/2014 | 052.13 | Exhibit 12 – Patent assignment record Reel No. 031523, Frame No. 0182-90, from the United States Patent And Trademark Office | A489 |
| 03/21/2014 | 052.14 | Exhibit 13 – iprockstar.com website page titled "Grow together through innovation" | A499 |
| 03/21/2014 | 052.15 | Exhibit 14 – Rockstar Consortium LinkedIn Profile | A501 |
| 03/21/2014 | 052.16-17 | Exhibit 15 – LinkedIn Profiles | A503 |
| 03/21/2014 | 052.18 | Exhibit 16 – Joff Wild, *Star Man*, Intellectual Asset Management, July/August 2013 | A584 |
| 03/21/2014 | 052.19 | Exhibit 17 – Mark Wilson LinkedIn Profile I | A593 |
| 03/21/2014 | 052.20 | Exhibit 18 – Mark Wilson LinkedIn Profile II | A597 |
| 03/21/2014 | 052.21 | Exhibit 19 – Michael Dunleavy LinkedIn Profile | A601 |
| 03/21/2014 | 052.22 | Exhibit 20 – iprockstar.com website page titled "Corporate Leaders." | A604 |
| 03/21/2014 | 052.23 | Exhibit 21 Exhibits Q-U to Docket No. 1, *Charter Communications v. Rockstar et. al*., No. 14-0055 (D. Del. Jan. 17, 2014) | A612 |
| 03/21/2014 | 052.24 | Exhibit 22 – Don Lindsay LinkedIn Profile | A639 |
| 03/21/2014 | 052.25 | Exhibit 23 – Prosecuting Attorney Profiles | A644 |
| 03/21/2014 | 052.26 | Exhibit 24 – Joff Wild, *Rockstar getting ready to roll . . .*, Intellectual Asset | A657 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
|  |  | Management, February 19, 2012 |  |
| 03/21/2014 | 052.27 | Exhibit 25 – Chris Cianciolo LinkedIn Profile | A660 |
| 03/21/2014 | 052.28 | Exhibit 26 – Table C-5, "U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending June 30, 2013" | A664 |
| 03/21/2014 | 052.29 | Declaration of Abeer Dubey | A668 |
| 03/21/2014 | 052.30 | Declaration of B.J. Kang | A673 |
| 03/21/2014 | 052.31 | Declaration of Dale Jachlewski | A677 |
| 03/21/2014 | 052.32 | Proposed Order | A682 |
| 03/24/2014 | 053 | Certificate of Conference for Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A683 |
| 04/14/2014 | 061 | Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A686 |
| 04/14/2014 | 061.1 | Declaration of William Colvin | A710 |
| 04/14/2014 | 061.2 | Declaration of Brian Egan | A713 |
| 04/14/2014 | 061.3 | Declaration of Erik Fako | A715 |
| 04/14/2014 | 061.4 | Declaration of Mark Hearn | A718 |
| 04/14/2014 | 061.5 | Declaration of Gillian McColgan | A721 |
| 04/14/2014 | 061.6 | Declaration of Matthew Poisson | A724 |
| 04/14/2014 | 061.7 | Declaration of Donald Powers | A727 |
| 04/14/2014 | 061.8 | Declaration of Marilyn French-St. George | A735 |
| 04/14/2014 | 061.9 | Declaration of Bernard Tiegerman | A736 |
| 04/14/2014 | 061.10 | Declaration of John Veschi | A739 |
| 04/14/2014 | 061.11 | Declaration of Bruce Anthony Wootton | A741 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/14/2014 | 061.12 | Proposed Order | A744 |
| 04/14/2014 | 062 | Additional Attachments to Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A745 |
| 04/14/2014 | 062.1 | Declaration of Joshua Budwin | A748 |
| 04/14/2014 | 062.2 | Exhibit 1 | A759 |
| 04/14/2014 | 062.3 | Exhibit 2 | A761 |
| 04/14/2014 | 062.4 | Exhibit 3 | A775 |
| 04/14/2014 | 062.5 | Exhibit 4 | A777 |
| 04/14/2014 | 062.6 | Exhibit 5 | A780 |
| 04/14/2014 | 062.7 | Exhibit 6 | A783 |
| 04/14/2014 | 062.8 | Exhibit 7 | A785 |
| 04/14/2014 | 062.9 | Exhibit 8 | A787 |
| 04/14/2014 | 062.10 | Exhibit 9 | A789 |
| 04/14/2014 | 062.11 | Exhibit 10 | A795 |
| 04/14/2014 | 063 | Additional Attachments to Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A799 |
| 04/14/2014 | 063.1 | Exhibit 11 | A802 |
| 04/14/2014 | 063.2 | Exhibit 12 | A897 |
| 04/14/2014 | 063.3 | Exhibit 13 | A902 |
| 04/14/2014 | 063.4 | Exhibit 14 | A919 |
| 04/14/2014 | 063.5 | Exhibit 15 | A933 |
| 04/14/2014 | 063.6 | Exhibit 16 | A936 |
| 04/14/2014 | 063.7 | Exhibit 17 | A938 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/14/2014 | 063.8-9 | Exhibit 18 | A942 |
| 04/14/2014 | 063.10 | Exhibit 19 | A963 |
| 04/14/2014 | 063.11 | Exhibit 20 | A971 |
| 04/14/2014 | 063.12 | Exhibit 21 | A977 |
| 04/14/2014 | 063.13 | Exhibit 22 | A984 |
| 04/14/2014 | 063.14 | Exhibit 23 | A987 |
| 04/14/2014 | 063.15 | Exhibit 24 | A992 |
| 04/14/2014 | 063.16 | Exhibit 25 | A1004 |
| 04/14/2014 | 063.17 | Exhibit 26 | A1024 |
| 04/14/2014 | 063.18 | Exhibit 27 | A1027 |
| 04/14/2014 | 063.19 | Exhibit 28 | A1030 |
| 04/14/2014 | 063.20 | Exhibit 29 | A1033 |
| 04/14/2014 | 063.21 | Exhibit 30 | A1036 |
| 04/14/2014 | 064 | Additional Attachments to Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A1040 |
| 04/14/2014 | 064.1 | Exhibit 31 | A1043 |
| 04/14/2014 | 064.2 | Exhibit 32 | A1046 |
| 04/14/2014 | 064.3 | Exhibit 33 | A1050 |
| 04/14/2014 | 064.4 | Exhibit 34 | A1052 |
| 04/14/2014 | 064.5 | Exhibit 35 | A1056 |
| 04/14/2014 | 064.6 | Exhibit 36 | A1060 |
| 04/14/2014 | 064.7 | Exhibit 37 | A1062 |
| 04/14/2014 | 064.8 | Exhibit 38 | A1065 |
| 04/14/2014 | 064.9 | Exhibit 39 | A1067 |
| 04/14/2014 | 064.10 | Exhibit 40 | A1070 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/14/2014 | 064.11 | Exhibit 41 | A1073 |
| 04/14/2014 | 064.12 | Exhibit 42 | A1076 |
| 04/14/2014 | 064.13 | Exhibit 43 | A1080 |
| 04/14/2014 | 064.14 | Exhibit 44 | A1114 |
| 04/25/2014 | 066 | Defendants' Reply in Support of Motion to Transfer to the Northern District of California or, in the Alternative, to Stay | A1120 |
| 04/25/2014 | 066.1 | Declaration of Kristin Madigan | A1129 |
| 04/25/2014 | 066.2 | Exhibit 1 – Defendants' Motion to Dismiss, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A1132 |
| 04/25/2014 | 066.3 | Exhibit 2 – Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A1166 |
| 04/25/2014 | 066.4 | Exhibit 3 – January 9, 2014 Letter from Joseph Milowic III to David Sochia | A1187 |
| 04/25/2014 | 066.5 | Exhibit 4 – February 18, 2014 Letter from Jared Hoggan to Joseph Milowic III | A1190 |
| 04/25/2014 | 066.6-7 | Exhibit 5 – Excerpt from Plaintiffs' Infringement Contentions for U.S. Patent No. 6,937,572 | A1193 |
| 05/08/2014 | 067 | Plaintiffs' Rockstar Consortium UP LP and MobileStar Technologies LLC's Sur-Reply In Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer | A1283 |
| 05/08/2014 | 067.1 | Supplemental Declaration of Joshua Budwin | A1291 |
| 05/08/2014 | 067.2 | Exhibit A | A1294 |
| 05/08/2014 | 067.3 | Exhibit B | A1303 |
| 05/08/2014 | 067.4 | Exhibit C | A1310 |
| 05/08/2014 | 067.5 | Exhibit D | A1314 |
| 05/08/2014 | 067.6 | Exhibit E | A1328 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 05/08/2014 | 067.7 | Exhibit F | A1331 |
| 05/08/2014 | 067.8 | Exhibit G | A1334 |
| 05/08/2014 | 067.9 | Exhibit H | A1337 |
| 03/10/2014 | 045 | Rockstar Consortium US LP and MobileStar Technologies LLC's Motion for Leave to File a Second Amended Complaint | A1347 |
| 03/28/2014 | 056 | Google's Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint | A1365 |
| 04/09/2014 | 059 | Rockstar Consortium US LP and MobileStar Technologies LLC's Reply in Support of Their Motion for Leave to File a Second Amended Complaint | A1377 |
| 04/24/2014 | 074 | Google's Sur-Reply in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint | A1386 |
| 07/01/2014 | 069 | Order Granting Plaintiffs' Motion for Leave to File a Second Amended Complaint | A1396 |
| 10/31/2013 | 001 | Original Complaint, *Rockstar Consortium US LP v. ASUSTek, et al.*, No. 13-894 (E.D. Tex.) | A1398 |
| 03/25/2014 | 041 | ASUS Defendants' Motion to Transfer or, in the Alternative, to Stay | A1436 |
| 03/25/2014 | 041.7 | Exhibit 4 to the Declaration of Harold H. Davis In Support of ASUS Defendants' Motion to Transfer or, in the Alternative, to Stay | A1456 |
| 03/28/2014 | 034 | Defendants HTC Corporation's and HTC America, Inc.'s Motion to Transfer or, in the Alternative, to Stay | A1458 |
| 03/25/2014 | 035 | LG Defendants' Motion to Stay or, in the Alternative, to Transfer This Action to the Northern District of California | A1479 |
| 04/08/2014 | 027 | Pantech Defendants' Motion to Stay or, in the Alternative, to Transfer This Action to the Northern District of California | A1503 |
| 03/28/2014 | 044 | ZTE (USA) Inc.'s Motion to Stay or, Alternatively, to Transfer to The Northern District | A1521 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| | | of California | |
| 07/28/2014 | 129 | Memorandum Opinion and Order Denying ASUS' Motion to Transfer | A1538 |
| 07/30/2014 | 130 | Memorandum Opinion and Order Denying ZTE's Motion to Transfer | A1548 |
| 07/30/2014 | 131 | Memorandum Opinion and Order Denying LG's Motion to Transfer | A1554 |
| 07/29/2014 | 040 | Memorandum Opinion and Order Denying HTC's Motion to Transfer | A1564 |
| 08/01/2014 | 032 | Memorandum Opinion and Order Denying Pantech's Motion to Transfer | A1574 |
| | | Docket Sheet – *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A1580 |
| | | Docket Sheet – *Rockstar Consortium US LP v. ASUSTek et al.*, No. 13-894 (E.D. Tex.) | A1600 |
| | | Docket Sheet – *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A1642 |

# EXHIBIT 16

# Star man



John Veschi expected to create a world-class licensing programme at Nortel when he joined the company in 2008. Five years later, he is the CEO of Rockstar, a unique NPE that is in the early stages of monetising what is probably the most famous patent portfolio in the world

### By Joff Wild

When John Veschi was first approached by Nortel to head up its IP function and build a world-class licensing business at the company, he was not exactly enthusiastic; far from it, in fact. "My initial reaction was, 'Why would I want to go to Canada? It's cold and there are no golf courses!'" he recalls. But when he began looking more closely at what he would be taking charge of, the former chief IP officer (CIPO) of LSI and Agere very quickly began to change his mind.

"There were Bell Labs-quality patents and they were largely unencumbered," Veschi says. For someone used to investing considerable time and effort in the complicated process of dealing with encumbrances — something which he likens to "playing three-level chess" — this was a tantalising prospect. "The idea of having what was essentially a green field in order to build a licensing programme that would not only be successful and enriching, but also be critical to the company was immensely appealing," he says. It would, he believed, be a chance to create a legacy: "I saw Nortel as another Texas Instruments or Qualcomm. I was thinking that in the future, people would be writing stories about how important licensing was to turning the company around — I really

thought that would happen."

So in 2008 Veschi took the job and became Nortel's chief IP officer (CIPO), initially reporting to the company's general counsel and chief technology officer (CTO), but with a view to moving to become a direct report to the CEO (see box). Five weeks later, the credit crisis hit and in early 2009 Nortel filed for bankruptcy. Veschi was about to make his mark — but not in the way he had originally anticipated.

### A man with a plan

Today, John Veschi is CEO of Rockstar, the non-practising entity (NPE) established by five of the six companies that ended up submitting the winning US$4.5 billion bid for the Nortel patents which went under the hammer at a week-long auction held in New York in June 2011. The five — Apple, BlackBerry (Research In Motion as was), Ericsson, Microsoft and Sony — are currently the only shareholders in Rockstar; each has a minority stake (the sixth member of the bidding consortium, EMC, is not involved).

Veschi and the Nortel IP team played a key role in the events leading up to the auction, including helping to alert those overseeing the bankruptcy to the portfolio's potential; identifying the technologies; drawing up detailed claims charts; participating in road shows and meetings with potential buyers; and deciding how to offer the patents, even to the extent of evaluating whether the best option would be to spin out a licensing business from Nortel. These are all stories that have been told before. What has been less chronicled — at least from an accuracy perspective — is what has happened since that pivotal week two years ago and the outlook for Rockstar the business.

Principally based in Ottawa, just a few miles from the former centre of Nortel's

**The rock star**

---

R&D operations, and with a smaller office in Plano, Texas, Rockstar is home to a mix of IP attorneys, technologists and engineers, and transactions specialists. The job of Veschi and his 40-strong team of largely ex-Nortel employees is to generate a return for the NPE's owners from the 4,000 or so patents that remain under their control (approximately 2,000 other rights in the original portfolio having been transferred to one or other of the original consortium members).

Over the course of two detailed telephone interviews, Veschi explained how they arrived at their current position, the challenges that Rockstar faces and how he views the NPE's future, as well as the wider environment within which it is operating. He is excited by what lies ahead, but is conscious that a changing regulatory world could make his task harder — although far from impossible. Further down the line, do not be surprised to see Rockstar getting into acquisitions, or even undertaking privateering-style work for others. Veschi is a man with a lot of plans. And having achieved what he has so far, it would be a brave person to bet against him bringing them to fruition.

**The technology team**

What is remarkable about Rockstar, and what distinguishes it from almost every other NPE out there, is that it essentially remains the IP function of what was a fully fledged operating company. Indeed, Veschi refers to the firm as a "former practising entity". This gives some context, he explains: "Our patents are derived from a product-driven company that was a technology pioneer and invested significantly in R&D."

Of immense help since the dark days of the Nortel bankruptcy has been the presence of a team of engineers and technologists led by 25-year Nortel veteran Gillian McColgan, Rockstar's CTO. That they are still a part of the operation, however, is more the result of fortune than design. "Where we got lucky was that when Nortel was trying to avoid bankruptcy, the company decided it had to be reorganised in order to prepare for the sell-off of one or more business units. This meant that people had to be reallocated," says Veschi. Nortel's CTO understood what Veschi was trying to build — an operation capable of extracting the maximum value from the patents that Nortel owned — and shared his view that this required people who knew the technologies underpinning those patents backwards. "That's how I met Gillian and

the diverse set of folks who are now on her team," Veschi says. That he can call on their expertise is something that sets Rockstar apart from many other licensing-based businesses. "We are staffed by technology lifers: people who dedicated their careers to Nortel. As a result, we really know our IP and the backstory behind each patent. I have yet to come across a patent in our portfolio where someone on our team did not know or work with the original inventor."

But that is not only a powerful tool today — it was also vital during the bankruptcy process itself, as parts of Nortel were sold off. "Gillian and her team were critical in the patent discussions," explains Veschi. "Usually you find technology expertise in different business units, but we had it in the IP team: a group of some of the most respected and well-regarded technologists in Nortel. That meant we could make sure we were not going to get beaten up by the various business units trying to do a land grab on the patent portfolio as they moved on; we knew everything there was to know about the patents."

McColgan & Co were also keen to point out that some people were looking in the wrong places for the real treasure that Nortel possessed. "The world thought that our most valuable assets were LTE and wireless patents; Gillian and her team were offended by that," Veschi continues. They believed that wireless was not the heart and soul of the company; instead, it was areas such as data communications. "We made sure that everyone knew what was there and that we were not going to squander it."

This attachment to Nortel's intellectual property speaks to a wider affection



**John Veschi, Rockstar's CEO**
"There are a lot of people out there using former Nortel IP who aren't licensed yet. In terms of our progress in getting to them, we are probably in the third inning of a nine-inning game; but we are already generating returns for our investors"

---

### Establishing the appropriate reporting lines – business or law?

Before anyone takes a high-profile senior position which involves potentially company-transforming responsibilities, it is a good idea to negotiate carefully. When talking to Nortel about building its proposed IP licensing business, that's exactly what John Veschi did; and one of the areas that came up for discussion was reporting lines.

"Nortel's original plan was that I would be the VP of IP reporting to the general counsel," Veschi explains. It was something to which he could not agree: "I felt that would mean IP would be viewed as a cost centre. To do what I wanted to do, we could not be subordinate to other business units. We were going to need a free rein to assert patents against whoever it was necessary to take on – we could not

have people telling us that we could not because it might damage such and such a relationship."

His plan, Veschi continues, was to make intellectual property less of a legal function. "In the end, it was agreed that I would be appointed as chief IP officer (CIPO), initially reporting to both the general counsel and the chief technology officer, and then reporting directly to the CEO once the licensing business was established."

To have been reporting direct to the CEO in a company the size of Nortel would have made Veschi one of the world's highest-profile CIPOs. Whichever way the Nortel story was to have unfolded, it seems, Veschi was always destined to make a significant impression.

**– A586 –**



Figure 1. **Senior Rockstar management**

that these seasoned employees had for the company itself. "Once you were at a company like Nortel, you did not tend to move around, so we have a team of people who had spent 20 or 30 years there. They wanted to do the right thing by it," Veschi claims. And it soon became apparent to all those involved in the bankruptcy process that such loyalty and expertise made the team itself a significant asset in its own right. "The buying community got pretty comfortable with the fact that the portfolio would have substantially more value if the team came with it," he says.

Thus, even before the final deal was sealed, it was clear that whoever ended up buying the patents would take the Nortel IP team too. And that even applies to Google. "I can't imagine that they would not have wanted to keep everyone together," Veschi states. "They may not have been actively licensing the patents, but they would still have needed to know them, so it is likely that the team would have been moved to Mountain View. That could have been something of a culture clash, given the average ages of our team and Google employees."

**Commitments to the DoJ**
The sale of the Nortel patents closed on 29th July 2011, which also happens to be Veschi's birthday. But it took another few months — until Spring 2012 — for the acquisition to receive clearance from the US Department of Justice (DoJ). Although this approval may have taken some time to obtain, the only commitment that Rockstar itself gave to the DoJ (and the Federal Trade Commission) was that it would operate autonomously. This, explains Veschi, was so that the shareholders "as operating companies cannot pick and choose who we will target". Rockstar made no undertakings as to how it would license FRAND-encumbered patents, as the bankruptcy court had already dealt with this issue.

In some quarters, much store has been set by Veschi's comment in an earlier interview with another publication that Rockstar is not bound to promises made to the regulators by Apple and Microsoft. He is keen to clarify what he meant by this. "The commitments that they have given relate to the patents that they have taken ownership of from the Nortel portfolio. Our commitments relate to the patents we control — so there is absolutely no link and nothing that ties us to what they have agreed. We are a separate company," he says.

Some, Veschi continues, have taken his original remarks to mean that the NPE is being used in some way as a vehicle to wash away commitments made by a predecessor in title. That is not true, he insists: "I simply pointed out that the commitments those companies made about their future patents have no bearing on Rockstar. We are a separate company and were never asked to make any commitment. Interestingly, the folks who have written about this as if there was something unseemly going on — none of them has ever asked me about it. It's as if they have the sound bite and the interpretation that supports their cause, so why confuse it with facts?"

Rockstar has an ongoing dialogue with the DoJ, the last time they got together being in February this year. And Veschi says that the relationship is a good one: "They know we are not seeking to harm anyone else relative to their peers or competitors. They understand and are comfortable with what we are trying to do. I have been very impressed with the depth of their knowledge of the issues."

That said, the commitments that Rockstar has made do mean that Veschi must be careful about how he interacts with its owners. "We do not talk to the shareholders about potential licensing partners or any potential infringers that we may have targeted," he explains. "I have to show them progress and that real work

– A587 –

**The rock star**

--------------------------------------------------------------------------------

### Doing the deal

Once a potential infringer of Rockstar intellectual property has been identified, it is a matter of sitting down with them in order to hammer out a licensing deal. In many instances, 'fair, reasonable and non-discriminatory' (FRAND) obligations loom large – even if, strictly speaking, that did not have to be the case. Although around 90% of Rockstar patents in areas such as wireless and data networking have some standard or other associated with them, under Canadian law any FRAND commitments given by Nortel to standards bodies could have been repudiated during the bankruptcy. But, says John Veschi, it was decided not to do this. Instead, the company chose to make sticking to previously made FRAND commitments a condition of sale.

Even where FRAND is not involved, Veschi is keen to emphasise that Rockstar deal makers want to be seen to be treating licensees fairly. "We will ask the other party what it is they want to license and strive to negotiate a licence that is fair and reasonable for them," he states. The offer gets a mixed response: "Some appreciate our approach; others would prefer to simply call us a troll!"

The reaction often comes down to who is on the other side of the negotiating table. "Every company we engage with is different; some are more sophisticated than others, for example. In some cases we talk to the businesspeople; other times it might be the in-house IP team," Veschi says. "Sometimes we end up with outside litigation counsel. They usually come with the wrong perspective because they are already thinking about juries. But we believe we should get credit for not initially suing the company in question, as we prefer to sort things out in the boardroom rather than in the courtroom."



**Rockstar CTO Gillian McColgan leads a meeting**
Starting with the man in the red shirt and working clockwise – David Smith, director, patent sales and acquisitions; Bruce Schofield, technical expert; Chris Briggs, senior programme manager; Hamid Ould-Brahim, internet technology expert, distinguished member of technical staff; Derek de Laat, senior financial analyst; Ron Steeves, patent licensing adviser; Gillian McColgan, CTO; Liam Casey, IP technology consultant

is being done, but we tend not to go into details." Veschi schedules periodic calls and meetings with the owners — mainly with their respective heads of intellectual property — and, he says, they work well together. "But all of these guys have day jobs; how Rockstar performs is probably largely irrelevant to how most of them are judged," he acknowledges.

The sensitivities of this relationship also affect the way that Veschi interacts with senior staff inside the NPE. "I rely on my leadership team more than the typical CEO might. There are things that I cannot share with the board in the way that other CEOs might, so I probably spend more time speaking with my colleagues at Rockstar to get the appropriate amount of diversity of thought." Likewise, he continues, some of the other activities that another CEO would typically undertake, such as cultivating potential investors, are not matters that he needs to spend time on: "As a result, I probably spend more time as both a COO and a CEO."

**Mining and money**
It may be an arm's-length relationship, but Rockstar's shareholders still want to see their investment realised to the maximum possible extent; and Veschi knows that he will be judged on the success or otherwise of his strategies to monetise the portfolio.

First of all, though, he has to decide which parts of it to mine; and there are plenty of choices. "It turned out that those

companies like Nortel, which did 'find a better mousetrap'-type R&D, have been less successful over recent years than those companies whose R&D was much more consumer facing," Veschi says. "But Nortel made mobile phones before many of the companies that make them now did; and it was similarly investing significantly early on into looking at what could be done on the Internet. It was grappling with problems and finding solutions a long time ago — what is natural today just wasn't back then. The patents that we own are a representation of the investments that were made."

Although Veschi will not talk specifically about the technology areas he has chosen to prioritise, he does point to a diagram that has been distributed internally (see Figure 2), which provides certain clues. It is composed of a series of concentric circles. "The smallest circle contains the three classical scientific disciplines — biology, chemistry and physics — and the explosion out to the right is basically a description of the high-tech world," he explains. "The further out you get, the closer you get to the consumer. Right now, we are very active in about a half dozen of the areas named in the chart, while we are doing serious preparatory work for six to 10 more. Though I am not comfortable saying which ones precisely, I can say that most of them are in the upper-right quadrant."

The monetisation game, he continues, is still in its early stages: "There are a lot of people out there using former Nortel

**– A588 –**



**Deep analysis**
Starting with man at the projector screen and working clockwise – Liam Casey, IP technology consultant; Peter Lorenz, senior business analyst; Hamid Ould-Brahim, internet technology expert, distinguished member of technical staff; Ron Steeves, patent licensing adviser

IP who aren't licensed yet. In terms of our progress in getting to them, we are probably in the third inning of a nine-inning game; but we are already generating returns for our investors."

Given the number of potential infringers out there, one way to a series of quick wins might be to start calling in the litigators, but this is an approach that Veschi rejects. "You could say that if we were to truly maximise the value of the portfolio, we should be suing everybody. But although our job is to get a good return on the investment that the owners have made, we strive to bring in revenue in a balanced way that is fair and reasonable. The shareholders are comfortable with that," he states.

While Rockstar has yet to initiate a lawsuit, Veschi believes that this is bound to change: "I suspect we will need to resort to litigation in the near future, as some of the users of our patents feel no remorse or obligation to pay fair royalties." But it is not a prospect he relishes: "Personally, I think it's a shame that some users choose, as a matter of course, to treat you like a second-class citizen if you haven't sued them. Systemically, something seems wrong with that picture." Generally, Veschi continues, litigators hold too much sway currently: "If you look at the IP business market at the moment, it is too skewed towards the litigators being in charge. That is damaging. We have to take control back. If everything is run by them, you get sub-optimal results. We need to figure out better ways of recompensing the innovator."

Another dilemma vexing Veschi is how

deep to dig into the portfolio mine. "We have a very diverse portfolio and my job is to do the right thing by it. We could try to do everything and then run the risk of doing nothing well; while the reverse risk is that we focus closely on one or two areas and let everything else go by the wayside," he explains. "It's like yin and yang, and I admit that I struggle with it. Our engineers would go off in all directions if they were left to their own devices and that would be chaotic; but I don't want to confine them to too narrow a charter either. In the end, it comes down to how strong our patents are and the size of the markets that they can be applied to."

**More than licensing**
When it comes to monetisation, of course, licensing is not the only option. Of increasing importance over recent years are sales. They are part of the Rockstar offering too – although not, as yet, a big one. "With sales, we do a lot more thinking than doing. There are a lot of opportunities, but it is not our primary business. About 20% of my time is probably invested in talking about sales and partnerships, but it has to be a no-brainer for us to go ahead with a deal," Veschi states.

That said, his philosophy is never to say never: "There are no Rockstar assets that are not for sale. Does that mean they will be sold? No. But if an offer is made, we cannot refuse that they will go. That is business." Sometimes, Veschi states, patents are simply more valuable in someone else's hands. "We are often approached by other parties about sectors or sub-sets of our portfolio that they would like for either tactical or strategic needs. We need to explore those opportunities," he says.

But Rockstar is more proactive than that. Veschi believes that a healthy licensing business should keep a close eye on which assets are not being used and may be withering on the vine: "We have to make sure that they do generate some value, if possible — so we send out catalogues that detail patents which are for sale, while people contact us too. Also, our sales team is out in the market all the time, interacting with other parties and assessing where we might be able to place assets. We have to maintain a constant strategic overview on what we have."

There is also a licensing angle to being seen to be willing to contemplate sales, Veschi believes: "It may help to concentrate certain parties' minds when it comes to a negotiation. Maybe they should agree to a licence with us just in case we sell the relevant patents. We have a lot of very good

Figure 2. **The world according to Rockstar – 2013**



**The rock star**

--------------------------------------------------------------------------------------------------------------------------

assets and do not need them all." What it all boils down to, he says, is for him to be put "in a place where I have to make a difficult decision about whether we should let something go or not".

Given its ownership, though, is there a possibility that while Rockstar may be willing to sell off parts of its portfolio, there may be certain parties that it is not willing to do business with — especially as sales are not covered by any commitments that have been made to regulators? Veschi says absolutely not: "We work the deals within our charter. Just like in the context of licensing, the shareholders do not influence the decisions on who we deal with."

**The wider world**

Rockstar does not operate in a vacuum and it has not escaped Veschi's notice that the environment in the United States has become more hostile towards NPEs recently. What he would like to see, he explains, is a little more contextualised thinking about the issues.

"I don't want to defend all NPEs. What some of them do is troublesome and very litigation-centric, but they are part of the evolution of the corporate world in general," he says. The issue is by no means as clear-cut as 'operating company good, NPE bad', he claims: "When you go back to the good old days, you find companies that did everything in North America — from R&D through to manufacturing. Now a lot of this activity has been moved offshore. Why is a company that moves its factories to Asia considered more of a good guy than one which does not manufacture at all, but does much of its R&D work locally?"

And it's not as if big operating companies have a faultless record when it comes to intellectual property: "The classic NPE is the little guy working in his garage who comes up with an idea and gets a patent. If he then discusses his idea with a product company, which says, 'Thank you very much, now go away,' the only thing he has to protect himself is his patent."

Rockstar's own experiences have made Veschi — who has never previously worked inside an NPE — sympathetic to what many NPEs are up against when trying to deal with operating companies. "When we are negotiating deals, we find that companies which look similar from the outside behave very differently when we sit down with them," he states. "For the most part, we get respect, but some people get very emotional and quickly resort to name calling — that indicates to me they do not understand the situation they are in. You'd think that

**A US-centric organisation thanks to Nortel's money men**

Although many US-based NPEs believe there may be significant potential in developing business abroad, for Rockstar the focus will have to remain the United States, John Veschi explains: "We are more of a US-centric organisation. We cannot fix the fact that in the past, Nortel decided not file abroad as much as it did in North America."

In general, Veschi says, a lot of the decision makers at the company saw the US market as the one to concentrate on. "It was like a Picasso painting in some ways – things were out of proportion," he says. Although there was very strong R&D, there was not an equal commitment to protecting

it: "The finance people and accountants seemed to have led the decision making."

Given the circumstances, he continues, the IP department can only be praised for creating what it did: "The IP people – battling against a lot of headwind – did a great job and we have got the benefit from that. When you look at the portfolio you see cases where the patent committee likely had, say, 25 really good inventions, but budget to only file 10 patents; even so, if you look at the way those patents were prepared and prosecuted they got a lot into them. In the end, though, there was only so much they could do."

people would realise they need to pay for the IP they use, but some are almost hysterical when we point out they cannot have our stuff for free. If that is the way they treat us, you can only wonder what it is like for a typical small NPE." The truth is, he says, some potential licensees just do not want to be fair and reasonable: "It is important to know that just because a company is a practising entity, that fact does not make the company a good guy. There are some unscrupulous characters out there on all sides of these issues."

However, Veschi is not set against all reform. He opposes the proposed Saving High-tech Innovators from Egregious Legal Disputes (SHIELD) legislation in the United States, which would introduce a loser-pays regime specifically aimed at what its authors describe as "patent trolls", but he is not opposed to loser pays *per se*. In fact, the opposite is true: "I have always been a fan of loser pays, but in a way that treats everybody the same. What you see with SHIELD is an attempt to discriminate against certain types of businesses. That is misguided. There are plenty of practising entities that are very comfortable with infringing and not paying royalties; loser pays across the board would encourage everyone to act a little more like a good guy."

Likewise, Veschi supports recent moves spearheaded by the US Patent and Trademark Office (USPTO), as well as certain companies such as Microsoft, to introduce greater transparency into patent ownership. "Those with good portfolios should be very comfortable with transparency and more of it makes a lot of sense," he says. "We are not trying to play hide the ball with our portfolio, and if the law changed to make it a requirement to register every licensing deal I would be



**Reading the runes**
From left to right – Peter Lorenz, senior business analyst; John Veschi, CEO; and Ross Morgan, CFO

**– A590 –**

Figure 3. **Rockstar journey**

| 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| Nortel decides to build a P&L IP business<br>• Hires John Veschi to transform, build and lead IP team<br>• Augments the IP team with key technologists and inventors<br>• Begins initial licensing programmes | Nortel enters creditor protection and determines its assets must be sold<br>• Patent team remains intact<br>• Product businesses sold with ~30% of portfolio<br>• IP team actively manages remaining 70% | Patent portfolio valued and actively marketed<br>• Patent team remains intact<br>• Valuation models developed<br>• Portfolio maintained and enhanced<br>• Licensing engagements continue | Patent portfolio sold for US$4.5 billion<br>• Patent team transitions to Rockstar<br>• Portfolio maintained and enhanced (~1/3 pending)<br>• Corporate functions developed | Rockstar fully operational<br>• US DoJ clearance (March)<br>• Actively negotiating licences<br>• Actively negotiating strategic sales |
| NORTEL | NORTEL | NORTEL | NORTEL Rockstar | Rockstar |

fine with this — but I am not going to do it unilaterally and I wouldn't expect anyone else to do so."

Enhanced transparency, Veschi claims, would help to make the market more efficient. At the moment, sometimes the only way to get information is through litigation — for example, to use discovery to find out who the true owner of a patent is or what other deals are related to it. "Since I think the patent marketplace is already too litigation-centric," he continues, "I would be in favour of some changes here. However, for me, it is better to have this codified somehow, so that depositing information would be like registering a deed. It could be that for a licence to be enforceable, it has to be recorded. To me, this looks like a good area for reform, and maybe a place where the USPTO can play a leadership role."

Whatever happens, though, Veschi firmly believes that Rockstar will adapt and prosper: "I am not sure how the regulatory and legal environments will evolve. Reforms may make it a little harder for us to do deals or may raise our costs slightly, but we have a very strong portfolio and whatever measures may be in place, I am confident we will be able to deal with them."

**Into the future**
With 4,000 patents to exploit and plenty of deals still to be done, on the face of it the future looks like a long and bright one for Rockstar. But things are never that simple. The reality is that every single asset in the firm's portfolio has a shelf life, which gets shorter as each day passes. Therefore, unless acquisitions happen or new business models are developed, Rockstar will also have a finite existence. Veschi seems well aware of this.

"We have done some thinking about acquiring, but not a lot," he states. "It might

happen down the line, but we have so many toys already that we want to play with first." Right now, he continues, it is difficult to imagine spending much time focusing on what others have, given that Rockstar is mining its own portfolio and is still finding valuable assets; but the situation could well change. "It would not surprise me if a few years down the road, we had significant IP other than what we currently own," he concludes.

Likewise, there may be opportunities to roll out new types of business offering — among them privateering. Veschi states that he will leave it to others to decide whether Rockstar is already a privateer, but whatever definition of the term people may want to use, the consortium could well become one in the future. "We are often asked about whether we would be interested in getting involved in privateering by those we are doing licensing deals with — they look at the quality of our people and wonder whether we can help them with their patents," he says. "This may be something we look at more closely further down the road, because it can be an attractive proposition, but it is not a priority because we still have a lot of our own IP to work with first. That does not mean, though, that with the right economics we cannot be forced to change our minds. Five to 10 years down the line, I can certainly see us managing the Rockstar portfolio, plus other IP assets as well."

For either that or acquisitions to happen, though, Veschi will need to go back to the shareholders and make his case. But while it is one thing to be the co-owner of an NPE that is essentially managing a portfolio of patents acquired from a bankrupt company in an open auction primarily for operational reasons, it is quite another altogether to be seen to be the ongoing backer of an NPE which is going into the marketplace to acquire more rights solely for the purposes



**Discussing a prospect**
From left to right – John Garland, vice-president, patent licensing; Ross Morgan, CFO; Pam Yeh, controller; Afzal Dean, vice-president, patent licensing

**The rock star**

---

of monetisation — especially when, in the greater scheme of things, the revenues generated for owners with turnovers of tens of billions of dollars from their main business lines will never be that significant. Given the heat surrounding NPEs at the moment, diversification and continuation of the Rockstar business may not be in the game plans of Apple, Ericsson, Microsoft *et al*.

A possible scenario for Rockstar five or so years from now, therefore, is that it will not actually be owned by any of its current shareholders. Instead, Veschi and his team may be in complete control, having secured some kind of management buy-out and with it the ability to create an NPE with a long-term future and full operational flexibility. This, it should be added, is not something that Veschi has even hinted at. But it would be a scenario which may well work for all concerned. And no one who has spent any time with Veschi — and who has observed what he and his team have achieved over the last five years — would bet against it. *iam*

---

**Joff Wild** is editor of *IAM*



## Action plan  (A)

Rockstar was born following the auction of Nortel patent rights in New York in late June 2011, when a six-company consortium acquired the 6,000-strong portfolio for US$4.5 billion. Its current owners are five of those companies: Apple, BlackBerry, Ericsson, Microsoft and Sony. John Veschi, former chief IP officer of Nortel, is Rockstar's CEO:

- Rockstar, says Veschi, has made commitments to the US Department of Justice and Federal Trade Commission to operate autonomously.
- Although accountable to the five owners for Rockstar's performance, Veschi does not talk about potential licensing

targets with them; neither do they influence whom the firm sells patents to.
- All Rockstar patents are potentially up for sale if the offer is good enough.
- Many, though not all, Rockstar patents are offered on fair, reasonable and non-discriminatory terms.
- Veschi is a supporter of the introduction of a loser pays system in US litigation. He also supports greater transparency with regard to ownership.
- Although not currently under active consideration, acquisitions and privateering are realistic propositions for the longer term.



**DESTEK PATENT** 30th year

### Turkey's Leader in Intellectual Property Management & Protection

- **Turkey's first rank IP firm for 15 consecutive years**
  Annual filing rate of 8K trademarks, 1.3K patents and 1.4K design applications
- **Among the World's TOP10 IP firms of the last 5 years**
  According to the International Trademark Filing Statistics issued by WTR 1000 and Markenfacts
- **Largest IP team**
  Over 50 patent & trademark attorneys. Nearly 200 professionals.
- **Largest office network**
  Seven offices: Istanbul, Ankara, Bursa, Izmir, Konya, Gaziantep and Adana
- **Experience & expertise with thousands of IP files**
  Over 100K trademarks, 10K patents and 70K designs since 1995
- **First to implement total quality management**
  ISO 9001: 2008 Certificate in the Turkey's IP Business since 2001
- **High client satisfaction rate**
  Full understanding of clients' needs and satisfying expectations on expert counseling, fast response, clear communication and cost effective quality IP services, with brilliant and satisfied solutions over conventional wisdom through our commitment and involvement in diverse IP matters

Polaris Plaza Ahi Evran Cad. No: 21 Kat: 17  34398  Maslak - Sisli - Istanbul - TURKEY   +90 212 329 00 00   +90 212 346 02 64   www.destekpatent.com   destek@destekpatent.com

**– A592 –**

# EXHIBIT 17

▾ Search for people, jobs, companies, and more...          Advanced

Home     Profile     Network     Jobs     Interests                                                          Business Services     Upgrade

Are You Entry Level? - Apply Now to the National Association of Professional Women. | **Read More »**



### Mark Wilson
**Licensing Consultant for Rockstar**                                          3rd
San Francisco Bay Area | Information Technology and Services

Current     Licensing Consultant
Previous    Intellectual Ventures, IPotential LLC, Hewlett-Packard
Education   Boston University Graduate School of Management

| Connect | Send Mark InMail | ▼ |

**390**
connections

www.linkedin.com/pub/mark-wilson/1/aaa/880

Background

People Also Viewed

#### Summary

Senior executive experienced in high tech sector product management, marketing and general management. Most recently, 12 years experience in IP licensing and patent monetization, patent brokerage, IP management strategy, etc.

Specialties: IP monetization via licensing, patent sales, IP management consulting


**Lloyd Sadler**
Intellectual Property Transactions


**John Garland**
Vice President of Licensing at Rockstar Consortium US LP


**David Sasso**
Senior Licensing Counsel at Rockstar Consortium

#### Experience

**Licensing Executive**
Licensing Consultant
March 2013 – Present (10 months) | Rockstar Consortium


**Chad Hilyard**
Chief Intellectual Property Counsel at Rockstar Consortium US LP


**Gillian McColgan**
CTO at Rockstar

**Licensing Executive**
Intellectual Ventures
February 2010 – March 2013 (3 years 2 months) | SVO - Mountain View, CA


**Roy Maharaj**
VP, Licensing at Intellectual Ventures

**VP, Marketing and Business Development**
iPotential LLC
January 2008 – February 2010 (2 years 2 months)

IP monetization of clients' patent assets through consulting, patent assertion/licensing, patent sales.

**Joe Chernesky**
Senior Vice President at Kudelski Group

**Shival Virmani**
Patent/Licensing Attorney at Rockstar Consortium US LP

▾ 1 recommendation

   **Michael Pierantozzi**
   Entrepreneur. General Manager. IP Strategist.

   Mark is an effective senior executive, with in-depth knowledge of intellectual property management and licensing, business and product development, and general management. He is dependable, reliable and diligent with a keen focus on customer,... View

**Fas (Felasi) Mosleh**
SVP M&A at Kenzatec IP Group

**Don Merino**
Managing Director and Founder of Transpacific Advisors Limited

**Director, IP Licensing**
Hewlett-Packard
March 2004 – January 2008 (3 years 11 months)

How You're Connected

**VP, Intellectual Property Management**
PCTEL
June 2002 – August 2003 (1 year 3 months)

You

**REDACTED**

REDACTED

**VP Marketing**
PCTEL, Inc.
July 2000 – June 2002 (2 years)

▼ 1 recommendation

**Yoram Solomon**
Vice President, Corporate Strategy, and General Manager, penveu

Mark was initially my boss, and then my colleague. Most of all—he was my mentor at PCTEL. He is the best process-oriented VP of Marketing (or product marketing) I know. He is very pragmatic, and taught me how to use sound judgement and convince... View

**VP, Product Marketing**
Cirrus Logic
June 1994 – August 1996 (2 years 3 months)

**VP, OEM Marketing**
IBM
April 1993 – March 1994 (1 year)

**VP**
Quantum Corporation
April 1988 – December 1992 (4 years 9 months)

**Group Product Manager**
Prime Computer
1979 – 1983 (4 years)

Mark Wilson

**In Common with Mark**

REDACTED

**1**

Location

### Skills & Expertise

Most endorsed for...

| 44 | Licensing | ▷ |
| 40 | Patents | ▷ |
| 25 | Strategy | ▷ |
| 24 | Intellectual Property | ▷ |
| 14 | Product Management | ▷ |
| 9 | Product Marketing | ▷ |
| 8 | Competitive Analysis | ▷ |
| 8 | Innovation Management | ▷ |
| 7 | Strategic Partnerships | ▷ |
| 7 | International Business | ▷ |

Mark also knows about...

| 7 Professional Services | 6 Commercialization | 5 Semiconductors |
| 5 Product Development | 5 Cross-functional Team... | 5 Product Launch |
| 4 Executive Management | 4 Mobile Devices | 4 Partner Management |
| 3 Business Development | 3 Start-ups | 3 New Business Development |
| 3 Management | 3 Corporate Development | 3 Enterprise Software | See 21+ |

Education

**Boston University Graduate School of Management**
MBA, General management
1976 – 1978

Activities and Societies: Graduated with honors

**University of Massachusetts, Amherst**
BSEE, Electrical Engineering
1969 – 1973

Activities and Societies: Eta Kappa Nu

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | Upgrade Your Account

LinkedIn Corporation © 2013 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

**– A596 –**

# EXHIBIT 18

Search for people, jobs, companies, and more...   Advanced

Home    Profile    Network    Jobs    Interests                                    Business Services    Upgrade

Online MBA Program - Earn Your SUNY MBA Online. No GMAT Required. Learn More Now. | Read More »



## Mark Wilson
Licensing Consultant                                                2nd

San Francisco Bay Area | Information Technology and Services

Current     Licensing Consultant
Previous    Intellectual Ventures, IPotential LLC, Hewlett-Packard
Education   Boston University Graduate School of Management

Connect    Send Mark InMail ▾

www.linkedin.com/pub/mark-wilson/1/aaa/880

**399**
connections

**People Similar to Mark**



**Alan Leal** 2nd
WW Licensing Executive | Technology Licen...
Connect

**Ads You May Be Interested In**

 **Injury Law Leads (Local)**
Looking for New Clients? We'll
Connect You to Prospects. Get
10 Free Leads!

 **$8.2M For Your Company?**
Trying to buy companies today.
Connect with this investor and
5,000+ others

 **Are You A Partner?**
Apply to Worldwide Who's Who
and expand your online
networking.

**People Also Viewed**

 **Gillian McColgan**
CTO at Rockstar

 **Joe Chernesky**
Senior Vice President at Kudelski
Group

 **David Sasso**
Senior Licensing Counsel at Rockstar
Consortium

 **John Garland**
Vice President of Licensing at
Rockstar Consortium US LP

 **Lloyd Sadler**
Intellectual Property Transactions

 **Greg Kisor**
Chief Technologist at Intellectual
Ventures, Sommelier at SavorLife
Cellars

 **john veschi**
--

**Darius Sankey**
Sr. Portfolio Director, Industry Sector
Leader at Intellectual Ventures

**Victor Schubert**
Intellectual Property Management &
Licensing

**Michael Pierantozzi**
Entrepreneur. General Manager. IP
Strategist.

---

**Background**

### Summary

Senior executive experienced in high tech sector product management, marketing and general management. Most recently, 12 years experience in IP licensing and patent monetization, patent brokerage, IP management strategy, etc.

Specialties: IP monetization via licensing, patent sales, IP management consulting

---

### Experience

**Licensing Consultant**
Licensing Consultant
March 2013 – Present (1 year)

**Licensing Executive**                          
Intellectual Ventures
February 2010 – March 2013 (3 years 2 months) | SVO - Mountain View, CA

▾ 1 recommendation

 **Roy Maharaj**
VP, Licensing at Intellectual Ventures

I had the chance to work with Mark during his time at Intellectual Ventures. Mark is a seasoned Licensing Executive with significant account management and negotiation experience. He is also well versed at developing, managing and executing... View

**VP, Marketing and Business Development**          IPotential
IPotential LLC
January 2008 – February 2010 (2 years 2 months)

IP monetization of clients' patent assets through consulting, patent assertion/licensing, patent sales.

▾ 1 recommendation

**Michael Pierantozzi**
Entrepreneur. General Manager. IP Strategist.

Mark is an effective senior executive, with in-depth knowledge of intellectual property management and licensing, business and product development, and general management. He is dependable, reliable and diligent with a keen focus on customer,... View

**Director, IP Licensing**
Hewlett-Packard
March 2004 – January 2008 (3 years 11 months)



## VP, Intellectual Property Management
PCTEL
June 2002 – August 2003 (1 year 3 months)

Home      Profile      Network      Jobs      Interests

Search for people, jobs, companies, and more...      Advance      Upgrade

## VP Marketing
PCTEL, Inc.
July 2000 – June 2002 (2 years)

**How You're Connected**

**REDACTED**

Mark Wilson
Get introduced ›

▾ 1 recommendation

**Yoram Solomon**
Vice President, Corporate Strategy, and General Manager, penveu

Mark was initially my boss, and then my colleague. Most of all--he was my mentor at PCTEL. He is the best process-oriented VP of Marketing (or product marketing) I know. He is very pragmatic, and taught me how to use sound judgement and convince... View

**In Common with Mark**

You      Mark

2

Skills & Expertise

## VP, Product Marketing
Cirrus Logic
June 1994 – August 1996 (2 years 3 months)

## VP, OEM Marketing
IBM
April 1993 – March 1994 (1 year)

## VP
Quantum Corporation
April 1988 – December 1992 (4 years 9 months)

## Group Product Manager
Prime Computer
1979 – 1983 (4 years)

Skills & Endorsements

Top Skills

| | |
|---|---|
| 42 | Patents |
| 39 | Licensing |
| 27 | Strategy |
| 25 | Intellectual Property |
| 15 | Product Management |
| 10 | Product Marketing |
| 9 | Strategic Partnerships |
| 9 | Competitive Analysis |
| 8 | Innovation Management |
| 7 | International Business |

Mark also knows about...

| | | | | | |
|---|---|---|---|---|---|
| 7 | Commercialization | 6 | Semiconductors | 6 | Cross-functional Team... |
| 5 | Product Development | 5 | Product Launch | 4 | Executive Management |
| 4 | Mobile Devices | 4 | Partner Management | 4 | Start-ups |

**– A599 –**



Education

**Boston University Graduate School of Management**
MBA, General management
1976 – 1978

Activities and Societies: Graduated with honors

**University of Massachusetts, Amherst**
BSEE, Electrical Engineering
1969 – 1973

Activities and Societies: Eta Kappa Nu

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | Upgrade Your Account
LinkedIn Corporation © 2014 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

**– A600 –**

# EXHIBIT 19



Most Tax Problems Solved - Experience resolving liens, levies and most small business tax matters. | **Read More »**

# Michael Dunleavy  3rd

### Partner, LaBarge Weinstein - A Business Law Firm
Ottawa, Canada Area | Law Practice

| | |
|---|---|
| Current | LaBarge Weinstein LLP |
| Previous | McCarthy Tetrault |
| Education | University of Toronto |

Send Michael InMail ▾

**500+** connections

☆ | 📇 Contact Info | ca.linkedin.com/pub/michael-dunleavy/0/527/622

### How You're Connected

○ You

**REDACTED**

Michael  3rd
Send Michael InMail

**Ads You May Be Interested In**

**Spot the Next Angry Birds**
Identify the investment oportunities earlier than anyone, with our app data

**Legal Marketing Solutions**
Online Marketing for Lawyers, Proudly Serving Attorneys for over 10 Years!

**Evolutioni**
Follow Evolutioni on LinkedIn. Discover job openings, news, and more.

**People Also Viewed**

**Afzal Dean**
Vice President - Patent Licensing

**Chad Hilyard**
Chief Intellectual Property Counsel at Rockstar Consortium US LP

**Gillian McColgan**
CTO at Rockstar

**Trevor Allibon**
Managing Director, Subordinate Financing at Business Development Bank of Canada

**James Smith**
Partner at LaBarge Weinstein

**Maria Cuasay**
BDC Venture Capital

**Gerard Buckley, FICB, ICD.D**

## Background

### 🗄 Summary

I am a partner of LaBarge Weinstein, a boutique business law firm servicing clients across Canada. I have been working with technology companies and their investors for nearly 20 years. My past and current clients include small and large technology companies and their investors; I have represented purchasers and vendors in a variety of mergers and acquisitions; issuers and underwriters in public offerings; and investors and issuers in numerous private financing transactions. I also have an extensive background in technology contracting, including the drafting and negotiating of agreements for the licensing, development and distribution of technology and the outsourcing of technology services.

My more notable retainers include acting for:

Rockstar Consortium, buyer of the Nortel patent assets, as its outside Chief Corporate Counsel from 2012 to date;

Radian 6 Technologies and its shareholders in its $350M+ acquisition by Salesforce.com in 2011;

Protus IP Solutions and its Shareholders in its $213M acquisition by J2 Global Communications in 2010;

IMRIS Inc. in its IPOs in Canada in 2007 and in the US in 2010, and generally in its other M&A and financing activities;

Accelio Corporation (formerly JetForm), in its hostile takeover bid defence and successful $110 million sale to Adobe Systems Inc.;

Major shareholders of Broadband Networks, in its $600 million sale to Nortel Networks in 1998;

MetroPhotonics Inc., in its $50 million private financing;

Shareholders of Loran Technologies, in its $130 million sale to Peregrine Systems;

A major shareholder of ImagicTV, in its $45 million sale to Alcatel;

Various venture capital firms and angel investors in various investment activities.

Specialties: LaBarge Weinstein is a business law firm, specializing in providing practical, business-oriented legal advice to private and public companies, investors and investment banks. We have a particular emphasis on companies in the technology sector.

### 📄 Experience

**Partner**
LaBarge Weinstein LLP

2000 – Present (14 years)

**Lawyer**
McCarthy Tetrault

mccarthy tetrault

1996 – 2000 (4 years)

---

   Skills & Endorsements

**Top Skills**

| 25 | Mergers & Acquisitions |
| 21 | Venture Capital |
| 15 | Start-ups |
| 11 | Intellectual Property |
| 10 | Corporate Governance |
| 8 | Corporate Law |
| 8 | Commercial Litigation |
| 7 | Mergers |
| 7 | Legal Writing |
| 6 | Venture Financing |

**Michael also knows about...**

| 4 | Legal Advice |   | 4 | IPO |   | 3 | Corporate Finance |   | 2 | Software Licensing |
| 2 | Strategic Partnerships |   | 2 | Acquisitions |   | 2 | Licensing |   | 1 | Finance |

---

   Education

**University of Toronto**
LL.B., Law

UNIVERSITY OF TORONTO

1989 – 1992

---

Governance & Financial Advisor to Growth
Companies & Corporate Director

**Mark Longo**
Partner, Technology & Corporate
Finance Law at LaBarge Weinstein
LLP

**Darlene Laplante**
--

**Maureen Mitchell**
DISPATCHER at CAANEO

**In Common with Michael**

**2**

Skills & Expertise

---

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | Upgrade Your Account

LinkedIn Corporation © 2014 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

# EXHIBIT 20



HOME    ABOUT    INNOVATION    PRIVACY POLICY    SALES    PEOPLE    



> CORPORATE LEADERS

BUSINESS LEADERS

## Contact

**Canada**
515 Legget Drive, Suite 300
Ottawa, Ontario
K2K 3G4
613-576-1000

**US**
Legacy Town Center 1
7160 North Dallas Parkway
Suite No. 250
Plano, TX 75024
info@ip-rockstar.com

## Career opportunities

Have a passion for innovation and technology? There could be a place for you at Rockstar. Join our staff of engineering and legal professionals.

Contact us today at careers@ip-rockstar.com

# Corporate Leaders



## John Veschi, CEO

John has been Rockstar's CEO since its founding in 2011. His leadership, engineering and patent experience span more than three decades and cover all aspects of IP. John built and led the core of the Rockstar team while serving as Nortel Networks' Chief Intellectual Property Officer, where he was instrumental in the historic $4.5B sale.

## Gillian McColgan, CTO

Gillian McColgan is the CTO (Chief Technology Officer) of Rockstar. She possesses a deep understanding of how business can build and leverage a sustainable competitive advantage to create thriving revenue. In Gillian's 25 years of service at Nortel Networks, she performed skillfully at all levels of engineering management, including strategic direction, financial and project development.





## Hinta Chambers, CFO

Hinta Chambers is the CFO (Chief Financial Officer) of Rockstar. With more than 16 years of experience in finance and other corporate functions including Marketing and Compliance, Hinta drives operational excellence at Rockstar.

## Ross Morgan, Financial Consultant

Ross Morgan is a Financial Consultant to Rockstar. He is a CPA with more than 25 years of corporate accounting experience split between executive management in the technology industry and public accounting with Ernst & Young.





## Chad Hilyard, Chief IP Counsel

Chad Hilyard is the Chief IP Counsel of Rockstar. He has over 17 years of intellectual property law experience, with significant expertise in a range of intellectual property business areas, including licensing, litigation, sales, offensive patent assertions, portfolio development and management, and intellectual property counseling.

## Michael Dunleavy, Chief Corporate Counsel

Michael Dunleavy acts as the Chief Corporate Counsel to Rockstar. He is a partner of LaBarge Weinstein LLP, an Ottawa-based law firm specializing in work with technology companies and their investors.



# Rockstar

- Home
- About
- Innovation
- Privacy Policy
- Sales
- People

- LinkedIn

- Corporate Leaders
- Business Leaders

## Contact

**Canada**

515 Legget Drive, Suite 300

Ottawa, Ontario

K2K 3G4

613-576-1000

**US**

Legacy Town Center 1

7160 North Dallas Parkway

Suite No. 250

Plano, TX 75024

info@ip-rockstar.com

## Career opportunities

Have a passion for innovation and technology? There could be a place for you at Rockstar. Join our staff of engineering and legal professionals.

Contact us today at careers@ip-rockstar.com

## Corporate Leaders

John Veschi, CEO

## John Veschi, CEO

John has been Rockstar's CEO since its founding in 2011. His leadership, engineering and patent experience span more than three decades and cover all aspects of IP. John built and led the core of the Rockstar team while serving as Nortel Networks' Chief Intellectual Property Officer, where he was instrumental in the historic $4.5B sale.

Prior to Nortel, John was the General Manager of the Intellectual Property business at LSI Corporation, and had similar responsibilities at Agere Systems – the Lucent Microelectronics spinoff. He began his in-house Intellectual Property experience with the formation of Lucent, and was previously in private practice with Foley & Lardner.

Earlier in his career, John served as a Signal Corps Officer in the U.S. Army, and was an engineering manager in the defense industry. John holds a Bachelor of Science in Electrical Engineering from Lafayette College, an MBA from George Washington University, and a Juris Doctor, summa cum laude, from the University of Maryland.

More
Gillian McColgan, CTO

## Gillian McColgan, CTO

Gillian McColgan is the CTO (Chief Technology Officer) of Rockstar. She possesses a deep understanding of how business can build and leverage a sustainable competitive advantage to create thriving revenue. In Gillian's 25 years of service at Nortel Networks, she performed skillfully at all levels of engineering management, including strategic direction, financial and project development.

Prior to joining Rockstar, Gillian was the CTO, IP Business at Nortel Networks where her responsibilities included establishing and monitoring the operating budget for the entire IP Legal team and leading the Market Analysis, Technical Assertion and Reverse-Engineering teams. In addition, Gillian also supported technical due diligence and the resulting complex business negotiations for divestitures at the corporation.

Gillian has Bachelor and Post Graduate degrees in Engineering from the University of Ulster in Northern Ireland. She has also completed numerous training courses in the areas of Executive Management and Finance at universities including Harvard and MIT.

More
Hinta Chambers, CFO

# Hinta Chambers, CFO

Hinta Chambers is the CFO (Chief Financial Officer) of Rockstar. With more than 16 years of experience in Finance and other corporate functions including Marketing and Compliance, Hinta drives operational excellence at Rockstar.

She is responsible for the company's overall financial strategic direction, including all aspects of financial and management planning & reporting, tax,

and treasury operations. Hinta also oversees other corporate functions including Human Resources, Information Technology and Facilities.

Prior to joining Rockstar in July 2011, Hinta held increasingly senior global finance positions at Nortel Networks Corporation in Canada, England and France, including serving as the CFO of the IP business. She held key roles leading organizations, implementing business plans, and managing budgets in excess of $1B. Hinta led the design and implementation of Nortel's financial planning processes worldwide, as well as instituting Sarbanes Oxley compliance in over 50 legal entities.

Hinta is a Certified Management Accountant (CMA) and holds an Honours Bachelor of Business Administration degree from Wilfrid Laurier University.

More
Ross Morgan, Financial Consultant

## Ross Morgan, Financial Consultant

Ross Morgan is a Financial Consultant to Rockstar. He is a CPA with more than 25 years of corporate accounting experience split between executive management in the technology industry and public accounting with Ernst & Young.

Prior to joining Rockstar, Ross was CFO at Mobile Knowledge, Triacta Power Technologies. Objectworld Communications and Intelligent Photonics Control. He has also performed senior finance roles with Plaintree Systems, Loran Technologies and Peregrine Systems. Ross has successfully completed numerous angel, venture capital and debt financing agreements throughout his career. He has also completed several merger and acquisition transactions, including the $120M sale of Loran to Peregrine in 2000. He has also served as

Secretary, Treasurer and Director for several of his companies. A member of the Institute of Chartered Accountants of Ontario and the Canadian Institute of Chartered Accountants, Ross has a Bachelor of Arts and Masters of Accounting from the University of Waterloo.

More

Chad Hilyard, Chief IP Counsel

# Chad Hilyard, Chief IP Counsel

Chad Hilyard is the Chief IP Counsel of Rockstar. He has over 17 years of intellectual property law experience, with significant expertise in a range of intellectual property business areas, including licensing, litigation, sales, offensive patent assertions, portfolio development and management, and intellectual property counseling.

Chad has extensive experience with a wide range of technologies, including telecommunication systems and networks, satellite communication systems, semiconductors, storage systems, and consumer electronic devices.

Prior to joining Rockstar, Chad was Vice President and Associate General Counsel at DISH Network, where he was in charge of all intellectual property matters.  Prior to DISH, Chad was Managing IP Counsel at LSI Corporation and Senior IP Counsel at Agere Systems, Inc.  Prior to becoming in-house counsel, Chad spent ten years in private practice where he became a partner at a prestigious, west coast-based IP law firm.

Chad holds a Bachelor of Science in Electrical Engineering, *high distinction*, from the University of Nebraska, and a Juris Doctor, *cum laude*, from the Sandra Day O'Connor College of Law at Arizona State University.

More

Michael Dunleavy, Chief Corporate Counsel

# Michael Dunleavy, Chief Corporate Counsel

Michael Dunleavy acts as the Chief Corporate Counsel to Rockstar. He is a partner of LaBarge Weinstein LLP, an Ottawa-based law firm specializing in work with technology companies and their investors.

Michael has two decades of experience in advising clients on corporate, securities, licensing, financing and M&A matters and brings with him the services of numerous professionals from his firm with diverse areas of expertise.

More

Rockstar | Patent licensing and patent sales

- Home
- About
- Innovation
- Privacy Policy
- Sales
- People

- LinkedIn

# EXHIBIT 21

# EXHIBIT Q

# Rockstar

March 13, 2012

Thomas M. Rutledge
President & Chief Executive Officer
Charter Communications, Inc.
12405 Powerscourt Drive
St. Louis, Missouri 63131

RE: Request to Commence Licensing Discussions | Notice of Patent Infringement

Dear Mr. Rutledge,

Rockstar Consortium (hereinafter, "Rockstar") is a patent licensing company that currently has offices in Ottawa, Canada and Richardson, Texas. Rockstar owns thousands of patents and patent applications in several different technology areas, most notably in communications and networking. This intellectual property was originally created and patented by Nortel Networks Corporation and its subsidiaries. Rockstar now licenses it to other companies on a royalty-bearing basis. In this regard, please see the attached press release.

I am writing because Rockstar would like to commence patent licensing discussions with Charter Communications, Inc. and to more fully explain the reasons why we believe your company requires a license to our patents.

We are contacting you because our analysis reveals that Charter Communications, Inc. is currently offering certain products and services that infringe patents owned by Rockstar. The table below provides you with information concerning some exemplary patents that inform our opinion. Please keep in mind that the patents below are part of a much larger portfolio.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada

**– A614 –**

# Rockstar

Exemplary List of Rockstar Patents Infringed By Charter Communications, Inc.

| Rockstar U.S. Patent Number | Title | Technology, Product and/or Service |
|---|---|---|
| US 7,154,879 | Point to multipoint network | • Charter TV Multiroom DVR service<br>• MOCA |
| US RE40,999 | Vlan frame format | • Charter Business Optical Ethernet Service<br>• VLAN |
| US 5,959,990 | VLAN frame format | • Charter Business Optical Ethernet Service<br>• VLAN |
| US 6,192,397 | Method for establishing a master-slave relationship in a peer-to-peer network | • GigE<br>• Charter Business Fiber Internet<br>• 10GigE<br>• Charter Business Fiber Internet |
| US 5,471,474 | Communications highway network system | • Charter Internet Service<br>• DOCSIS 3.0 and 2.0 |
| US 5,761,197 | Communications in a distribution network | • Charter Internet Service<br>• DOCSIS 3.0 and 2.0 |

Charter Communications, Inc. has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services listed above, as well as others that might be infringing Rockstar's intellectual property. We look forward to having a near-term dialogue with Charter Communications, Inc. with the goal of answering any questions you may have, providing more details concerning the issues raised in this letter, and reaching an agreement on how we can have an amicable dialogue that advances both of our companies' goals.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2k 3G4 Canada

# Rockstar

To that end, I suggest that we set up a preliminary teleconference to discuss these issues at a high level, execute an NDA, which we can send to you for your consideration, and then follow up with a face-to-face meeting at your offices.

Upon receipt of this letter, please kindly contact me with a proposed date and time for a call. I can be reached at either svirmani@ip-rockstar.com or +1 610.306.9990. I look forward to your reply, and thank you in advance for your prompt attention to these matters.

Sincerely,

Shival Virmani, Esq.
VP, Patent Licensing

Enclosure

**From:** Mark Wilson [mailto:mwilson@ip-rockstar.com]
**Sent:** Friday, November 08, 2013 11:47 AM
**To:** Abramov, Kirill Y; Long, David
**Cc:** Chad Hilyard; Alfi Guindi; John Garland
**Subject:** Patent Discussion and Second Notice of Infringement

To: Kirill Abramov, VP and Senior Council
Cc: David Long, Kelley Drye LLP

**RE: Patent Infringement – Second Notice**

Thank you again for taking time to meet with Chad, Alfi and me this morning. Following up on our discussion, below please find 3 additional Rockstar patents that are used with the indicated Charter services and products:

| | | | |
|---|---|---|---|
| 5,583,862 Callon | Method And Apparatus For Routing For Virtual Networks | ■ | Charter Business Level 3 VPN Serv (BGP/MPLS) |
| 6,130,893 Whittaker | Method And Apparatus For Multiplexing Telephone Lines Over A Common Access Network | ■ | Charter Phone Service Charter supplied MTA's |
| 6,321,253 McKeen | Systems and Methods for Simultaneous Network Management Of Voice and Data Signals | ■ | Charter Phone Services Charter Internet Services (PacketCable 1.5 and E-MTAs) |

We believe that Charter Communications has affirmative responsibility to ensure that it has secured all necessary patent rights to sell its services and products that are infringing Rockstar's intellectual property, including those patents listed above and in the March 13, 2012 letter to Mr. Rutledge.

1

Please note that the 9 patents on notice to Charter Communications at this time is a sample. Rockstar cannot assure Charter that all patents of interest have been identified due to the size and changing composition of our portfolio.

As we reiterated today, in order for the negotiations to continue the parties have to enter into an NDA.  Charter's repeated refusal to enter into an NDA has prevented both parties from being able to share the information necessary to negotiate and enter into a licensing agreement.  We are pleased that Charter now appears willing to enter into an NDA; however, because Charter has now had our proposed draft for more than six months, we ask that you please return your comments in short order.

Regards,

Mark Wilson

Licensing Executive
Rockstar Consortium



M 408-800-8402
mwilson@ip-rockstar.com

This Communication is Confidential and is being sent in accordance with the terms set out at http://ip-rockstar.iv-design.ca/email_disclaimer/

Case 1:14-cv-09005-RSL-RD Document 52-23 Filed 03/27/14 Page 8 of 26 PageID #: 2262

# EXHIBIT R



October 29, 2012


Colleen Abdoulah,
Chief Executive Officer and Chairwoman of the Board
Wide Open West Networks, LLC
7887 E. Belleview Avenue; Suite 1000
Englewood, CO, 80111
TEL:  (720) 479-3500
FAX: (720) 479 3585


RE:   Request to Commence Licensing Discussions | Notice of Patent Infringement

Dear  Ms. Abdoulah,

Rockstar Consortium US LP (hereinafter, "Rockstar") is a patent licensing company that currently has offices in Richardson, Texas.  Rockstar owns approximately 4,000 patents and patent applications in several different technology areas, most notably in communications and networking.  This intellectual property was originally created and patented by Nortel Networks Corporation and its subsidiaries.  Rockstar licenses this portfolio to other companies on a royalty-bearing basis.  In this regard, please see the attached press release.

I am writing because Rockstar would like to commence patent licensing discussions with Wide Open West ("WOW!") and to more fully explain the reasons why we believe your company requires a license to our patent estate.

We are contacting you because our analysis reveals that WOW! and Knology, are currently offering certain products and services that infringe patents owned by Rockstar.  The table below provides you with specific information concerning certain of Rockstar's patents and the products and service that infringe those patents.  Please keep in mind that the patents below are part of a much larger portfolio of networking related inventions.

Exemplary List of Rockstar Patents Infringed By Wide Open West.

| US Patent # | Title | Technology | Impacted Service |
|---|---|---|---|
| 5,471,474 | Communications Highway Network System | • DOCSIS 2.0<br>• DOCSIS 3.0 | • WOW! Digital TV<br>• WOW! Ultra TV<br>• WOW! Internet Xcite, Xpress, Xtreme, Xtreme Turbo<br>• WOW! Essential Phone<br>• WOW! Advanced Phone |
| 5,761,197 | Communications In A Distribution Network | • DOCSIS 2.0<br>• DOCSIS 3.0 | • WOW! Digital TV<br>• WOW! Ultra TV<br>• WOW! Internet Xcite, Xpress, Xtreme, Xtreme Turbo<br>• WOW! Essential Phone<br>• WOW! Advanced Phone |
| 6,130,893 | Method And Apparatus For Multiplexing Telephone Lines Over A Common Access Network | • eMTA<br>• Packet Cable 1.5 | • WOW! Essential Phone<br>• WOW! Advanced Phone<br>• WOW! Business Voice |
| 6,321,253 | System And Method For Simultaneous Network Management Of Voice And Data | • eMTA<br>• Packet Cable 1.0 | • WOW! Internet Xcite, Xpress, Xtreme, Xtreme Turbo<br>• WOW! Essential Phone<br>• WOW! Advanced Phone<br>• WOW! Business Voice |

WOW! has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and provide the services listed above that are utilizing Rockstar's intellectual property. We look forward meeting with WOW! and proceeding with an amicable dialogue to put an appropriate patent license in place between our companies.

**– A621 –**

Ms. Abdoulah
October 29, 2012
Page 3 of 3

Also, we realize that in July, 2012 that WOW! closed on its acquisition of Knology.   As you may already know, Rockstar provided a notice of infringement letter to Knology in March, 2012 pertaining to two DOCSIS related inventions.  Attached for your reference is the letter we provided to Knology on March 13, 2012.

To that end, I suggest you have the appropriate point person at WOW! contact me in order that we can execute an NDA to cover our licensing discussions and arrange for an initial face-to-face meeting at your offices.

Upon receipt of this letter, please kindly contact me; I can be reached at either jgarland@ip-rockstar.com or 1+908.803.3741 or +1 613.576.1025.  I look forward to your working with WOW!, and thank you in advance for your prompt attention to this matter.

Sincerely,

John Garland
VP of Patent Licensing

Enclosure(s)
* Rockstar March, 2012 Press Release
* March 13, 2012 letter to Knology

# Exhibit S



March 13, 2012

Rodger L. Johnson
Chairman of the Board and Chief Executive Office
Knology Inc.
1241 O.G. Skinner Drive
West Point, Georgia 31833

RE:  Request to Commence Licensing Discussions | Notice of Patent Infringement

Dear Mr. Kent,

Rockstar Consortium (hereinafter, "Rockstar") is a patent licensing company that currently has offices in Ottawa, Canada and Richardson, Texas.  Rockstar owns thousands of patents and patent applications in several different technology areas, most notably in communications and networking.  This intellectual property was originally created and patented by Nortel Networks Corporation and its subsidiaries.  Rockstar now licenses it to other companies on a royalty-bearing basis. In this regard, please see the attached press release.

I am writing because Rockstar would like to commence patent licensing discussions with Knology Inc. and to more fully explain the reasons why we believe your company requires a license to our patents.

We are contacting you because our analysis reveals that Knology Inc. is currently offering certain products and services that infringe patents owned by Rockstar.  The table below provides you with information concerning some exemplary patents that inform our opinion.  Please keep in mind that the patents below are part of a much larger portfolio.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada

**– A624 –**



<u>Exemplary List of Rockstar Patents Infringed By Knology Inc.</u>

| Rockstar U.S. Patent Number | Title | Technology, Product and/or Service |
|---|---|---|
| US 5,471,474 | Communications highway network system | • Knology High Speed Internet<br>• DOCSIS 3.0 |
| US 5,761,197 | Communications in a distribution network | • Knology High Speed Internet<br>• DOCSIS 3.0 |

Knology Inc. has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services listed above, as well as others that might be infringing Rockstar's intellectual property. We look forward to having a near-term dialogue with Knology Inc. with the goal of answering any questions you may have, providing more details concerning the issues raised in this letter, and reaching an agreement on how we can have an amicable dialogue that advances both of our companies' goals.

To that end, I suggest that we set up a preliminary teleconference to discuss these issues at a high level, execute an NDA, which we can send to you for your consideration, and then follow up with a face-to-face meeting at your offices.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada

Attn: Mr. Johnson:
Page 3 of 3



Upon receipt of this letter, please kindly contact me with a proposed date and time for a call.   I can be reached at either svirmani@ip-rockstar.com or +1 610.306.9990.  I look forward to your reply, and thank you in advance for your prompt attention to these matters.

Sincerely,

Shival Virmani, Esq.
VP, Patent Licensing

Enclosure

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada

Rockstar Consortium



March 12, 2012 10:02 ET

## Rockstar Consortium Receives Green Light From Department of Justice

**Consortium forges ahead with plans to license intellectual property**

**OTTAWA, ONTARIO--(Marketwire - March 12, 2012) - Rockstar Consortium (Rockstar)** today announced that the US Department of Justice waiting period for review of Rockstar's acquisition of a substantial majority of the former Nortel Networks patent portfolio, has expired and the company is free to consummate the acquisition. The portfolio consists of approximately 4,000 patent assets related to a broad array of networking, communications, and internet technologies.

These patent assets were a substantial component in the record-breaking auction this past summer, when Rockstar Consortium, made up of Apple, Microsoft, RIM, Ericsson and Sony, invested $4.5 billion to acquire Nortel's portfolio from the bankruptcy estate. Nortel, a 100+ year-old telecom and networking pioneer, had developed the portfolio through tens of billions of dollars of R&D investment over the past few decades. Following the expiration of the waiting period, Rockstar is set to implement its plans to pursue licensing agreements with companies that are harnessing its intellectual property.

John Veschi, Chief Executive Officer of Rockstar, and formerly Chief IP Officer of Nortel, stated that, "We are pleased to emerge from this review process, and are looking forward to working with technology related companies to provide them with access to Rockstar's technology. The entire industry has benefitted from Nortel's groundbreaking innovations, and we are eager to work with them to establish licenses enabling the continued use of this technology."

<u>Rockstar</u>

Rockstar Consortium US LP, and Rockstar Consortium Inc. (the Rockstar Companies) are jointly owned by Apple, Microsoft, RIM, Ericsson and Sony, and are chartered with managing the Rockstar portfolio on behalf of these owners.

## Contact Information

- Rockstar Consortium
  Vicki Carver
  Head of Operations
  613-576-1020

**– A627 –**

info@ip-rockstar.com
www.ip-rockstar.com



View Release

# EXHIBIT T


Rockstar

March 13, 2012

Jerald L. Kent
Chairman and Chief Executive Officer
Cequel Communications, LLC
12444 Powerscourt Drive, Suite 450
St. Louis, Missouri 63131

RE:   Request to Commence Licensing Discussions | Notice of Patent Infringement

Dear Mr. Kent,

Rockstar Consortium (hereinafter, "Rockstar") is a patent licensing company that currently has
offices in Ottawa, Canada and Richardson, Texas.  Rockstar owns thousands of patents and
patent applications in several different technology areas, most notably in communications and
networking.  This intellectual property was originally created and patented by Nortel Networks
Corporation and its subsidiaries.  Rockstar now licenses it to other companies on a royalty-
bearing basis. In this regard, please see the attached press release.

I am writing because Rockstar would like to commence patent licensing discussions with Cequel
Communications, LLC and to more fully explain the reasons why we believe your company
requires a license to our patents.

We are contacting you because our analysis reveals that Cequel Communications, LLC is
currently offering certain products and services that infringe patents owned by Rockstar.  The
table below provides you with information concerning some exemplary patents that inform our
opinion.  Please keep in mind that the patents below are part of a much larger portfolio.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada

 Rockstar

### Exemplary List of Rockstar Patents Infringed By Cequel Communications, LLC

| Rockstar U.S. Patent Number | Title | Technology, Product and/or Service |
|---|---|---|
| US 5,471,474 | Communications highway network system | • Suddenlink High Speed Internet, Suddenlink Business Internet<br>• DOCSIS 3.0 |
| US 5,761,197 | Communications in a distribution network | • Suddenlink High Speed Internet, Suddenlink Business Internet<br>• DOCSIS 3.0 |

Cequel Communications, LLC has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services listed above, as well as others that might be infringing Rockstar's intellectual property. We look forward to having a near-term dialogue with Cequel Communications, LLC with the goal of answering any questions you may have, providing more details concerning the issues raised in this letter, and reaching an agreement on how we can have an amicable dialogue that advances both of our companies' goals.

To that end, I suggest that we set up a preliminary teleconference to discuss these issues at a high level, execute an NDA, which we can send to you for your consideration, and then follow up with a face-to-face meeting at your offices.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada

Attn: Mr. Kent:
Page 3 of 3



Upon receipt of this letter, please kindly contact me with a proposed date and time for a call. I can be reached at either svirmani@ip-rockstar.com or +1 610.306.9990. I look forward to your reply, and thank you in advance for your prompt attention to these matters.

Sincerely,

Shival Virmani, Esq.
VP, Patent Licensing

Enclosure

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada



**ROCKSTAR CONSORTIUM RECEIVES GREEN LIGHT FROM DEPARTMENT OF JUSTICE**

*Consortium forges ahead with plans to license intellectual property*

OTTAWA, ONTARIO--(MARCH 12, 2012) –
**Rockstar Consortium (Rockstar)** today announced that the US Department of Justice waiting period for review of Rockstar's acquisition of a substantial majority of the former Nortel Networks patent portfolio, has expired and the company is free to consummate the acquisition. The portfolio consists of approximately 4,000 patent assets related to a broad array of networking, communications, and internet technologies.

These patent assets were a substantial component in the record-breaking auction this past summer, when Rockstar Consortium, made up of Apple, Microsoft, RIM, Ericsson and Sony, invested $4.5 billion to acquire Nortel's portfolio from the bankruptcy estate. Nortel, a 100+ year-old telecom and networking pioneer, had developed the portfolio through tens of billions of dollars of R&D investment over the past few decades. Following the expiration of the waiting period, Rockstar is set to implement its plans to pursue licensing agreements with companies that are harnessing its intellectual property.

John Veschi, Chief Executive Officer of Rockstar, and formerly Chief IP Officer of Nortel, stated that, "We are pleased to emerge from this review process, and are looking forward to working with technology related companies to provide them with access to Rockstar's technology. The entire industry has benefitted from Nortel's groundbreaking innovations, and we are eager to work with them to establish licenses enabling the continued use of this technology."

For more information regarding the statements included in this release, please contact: Vicki Carver, Head of Operations, at info@ip-rockstar.com

<u>Rockstar</u>

Rockstar Consortium US LP, and Rockstar Consortium Inc. (the Rockstar Companies) are jointly owned by Apple, Microsoft, RIM, Ericsson and Sony, and are chartered with managing the Rockstar portfolio on behalf of these owners.

For more information, please visit www.ip-rockstar.com

# EXHIBIT U

# Rockstar

March 13, 2012

Thomas O. Might
President and Chief Executive Officer
Cable ONE, Inc.
1314 North 3rd Street
Phoenix, AZ 85004

RE:   Request to Commence Licensing Discussions | Notice of Patent Infringement

Dear Mr. Might,

Rockstar Consortium (hereinafter, "Rockstar") is a patent licensing company that currently has offices in Ottawa, Canada and Richardson, Texas.  Rockstar owns thousands of patents and patent applications in several different technology areas, most notably in communications and networking.  This intellectual property was originally created and patented by Nortel Networks Corporation and its subsidiaries.  Rockstar now licenses it to other companies on a royalty-bearing basis. In this regard, please see the attached press release.

I am writing because Rockstar would like to commence patent licensing discussions with Cable ONE, Inc. and to more fully explain the reasons why we believe your company requires a license to our patents.

We are contacting you because our analysis reveals that Cable ONE, Inc. is currently offering certain products and services that infringe patents owned by Rockstar.  The table below provides you with information concerning some exemplary patents that inform our opinion.  Please keep in mind that the patents below are part of a much larger portfolio.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada

**– A635 –**



## Rockstar

Exemplary List of Rockstar Patents Infringed By Cable ONE, Inc.

| Rockstar U.S. Patent Number | Title | Technology, Product and/or Service |
|---|---|---|
| US 5,471,474 | Communications highway network system | • Cable One High Speed Internet Service<br>• DOCSIS 2.0<br>• Cable One High Speed Internet with Elite and Preferred services<br>• DOCSIS 3.0 |
| US 5,761,197 | Communications in a distribution network | • Cable One High Speed Internet Service<br>• DOCSIS 2.0<br>• Cable One High Speed Internet with Elite and Preferred services<br>• DOCSIS 3.0 |

Cable ONE, Inc. has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services listed above, as well as others that might be infringing Rockstar's intellectual property. We look forward to having a near-term dialogue with Cable ONE, Inc. with the goal of answering any questions you may have, providing more details concerning the issues raised in this letter, and reaching an agreement on how we can have an amicable dialogue that advances both of our companies' goals.

To that end, I suggest that we set up a preliminary teleconference to discuss these issues at a high level, execute an NDA, which we can send to you for your consideration, and then follow up with a face-to-face meeting at your offices.

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada



# Rockstar

Upon receipt of this letter, please kindly contact me with a proposed date and time for a call.  I can be reached at either svirmani@ip-rockstar.com or +1 610.306.9990.  I look forward to your reply, and thank you in advance for your prompt attention to these matters.

Sincerely,

Shival Virmani, Esq.
VP, Patent Licensing

Enclosure

Rockstar Consortium Inc.
Rockstar Consortium US LP
300-515 Legget Drive

Kanata, Ontario
K2K 3G4 Canada



# Rockstar

## ROCKSTAR CONSORTIUM RECEIVES GREEN LIGHT FROM DEPARTMENT OF JUSTICE

*Consortium forges ahead with plans to license intellectual property*

**OTTAWA, ONTARIO--(MARCH 12, 2012) –**
**Rockstar Consortium (Rockstar)** today announced that the US Department of Justice waiting period for review of Rockstar's acquisition of a substantial majority of the former Nortel Networks patent portfolio, has expired and the company is free to consummate the acquisition. The portfolio consists of approximately 4,000 patent assets related to a broad array of networking, communications, and internet technologies.

These patent assets were a substantial component in the record-breaking auction this past summer, when Rockstar Consortium, made up of Apple, Microsoft, RIM, Ericsson and Sony, invested $4.5 billion to acquire Nortel's portfolio from the bankruptcy estate. Nortel, a 100+ year-old telecom and networking pioneer, had developed the portfolio through tens of billions of dollars of R&D investment over the past few decades. Following the expiration of the waiting period, Rockstar is set to implement its plans to pursue licensing agreements with companies that are harnessing its intellectual property.

John Veschi, Chief Executive Officer of Rockstar, and formerly Chief IP Officer of Nortel, stated that, "We are pleased to emerge from this review process, and are looking forward to working with technology related companies to provide them with access to Rockstar's technology. The entire industry has benefitted from Nortel's groundbreaking innovations, and we are eager to work with them to establish licenses enabling the continued use of this technology."

For more information regarding the statements included in this release, please contact: Vicki Carver, Head of Operations, at info@ip-rockstar.com

**Rockstar**

Rockstar Consortium US LP, and Rockstar Consortium Inc. (the Rockstar Companies) are jointly owned by Apple, Microsoft, RIM, Ericsson and Sony, and are chartered with managing the Rockstar portfolio on behalf of these owners.

For more information, please visit www.ip-rockstar.com

# EXHIBIT 22



## Don Lindsay

Executive Advisor, Product Experience Planning & Execution. Previously Vice President, Design at BlackBerry

Mountain View, California (San Francisco Bay Area) | Consumer Electronics

### Join LinkedIn and access Don Lindsay's full profile. It's free!

As a LinkedIn member, you'll join 250 million other professionals who are sharing connections, ideas, and opportunities.

- See who you and **Don Lindsay** know in common
- Get introduced to **Don Lindsay**
- Contact **Don Lindsay** directly

View Don's full profile

---

### Don Lindsay's Overview

| | |
|---|---|
| Current | **Vice President, User Experience** at **BlackBerry** |
| Past | Director, Design at Microsoft |
| | Design Director, Mac OS User Experience Group at Apple |
| | Design Manager, Corprorate Design Group at Bell-Northern Research |
| | see all |
| Connections | **500+ connections** |

### Don Lindsay's Summary

A veteran executive leader in a career that has spanned three decades with successful Fortune 500 technology companies. Don has delivered industry-defining desktop & mobile platform strategies & products while building and leading large scale, world-class product design organizations.

Engaged by the CEOs of Apple & BlackBerry to define and execute "bet the company" product evolutions, Don's experience and insight into organizational development, design culture, process, strategy and execution is the result of having shipped over fifteen major platform releases.

A recognized expert, innovator and contributor in product experience with over 120 granted or filed technology patents encompassing user interface design, gesture & speech interaction and UI implementation strategies for both desktop & mobile platforms.

### Don Lindsay's Experience

**Vice President, User Experience**
**BlackBerry**
Public Company; 10,001+ employees; RIMM; Telecommunications industry
March 2009 – Present (5 years 1 month)   Mountain View, California

Created and scaled a centralized User Experience organization with a global charter for the BlackBerry product & services product experience portfolio. Grew the organization to over 100 designers, researchers and developers, spanning 5 studio locations between North America & Europe. Served as executive member of the product planning council, responsible for the BlackBerry product roadmap planning and delivery.

Led the $150M acquisition of The Astonishing Tribe (TAT) in 2010 and drove the UX definition of BlackBerry 10 from concept to delivery. Engaged with internal and external partners, and media, in the definition, development and promotion of BlackBerry 10.

**Director, Design**
**Microsoft**
Public Company; 10,001+ employees; MSFT; Computer Software industry
October 2003 – February 2009 (5 years 5 months)   Seattle, Washington

Built the User Experience organization for Microsoft Live Labs, charted with exploring advanced product development for Internet services, search and data visualization. Joined Microsoft to lead the UX definition & conceptualization of 'Blackcomb' (post-Windows 7 planned release) while shipping innovative platform UX features for Windows Vista.

**Design Director, Mac OS User Experience Group**
**Apple**
Public Company; 10,001+ employees; AAPL; Consumer Electronics industry
June 1994 – May 2003 (9 years)   Cupertino, California

Directed the Mac OS User Experience group, partnering with Apple's senior executive leaders to define and deliver the first four releases of Mac OS X and media experiences including iTunes and iMovie. Initiated and led an effort to conceive and develop 'Aqua', the definitive Mac OS X experience. Shipped every release of Mac OS from 8.0 through 10.3.

**Design Manager, Corprorate Design Group**
**Bell-Northern Research**
Public Company; 10,001+ employees; NT; Telecommunications industry
July 1985 – June 1994 (9 years)   Ottawa, Ontario

Managed the product design team within the Corporate Design Group, responsible for interaction & visual interaction design, on-product graphics, branding, packaging and documentation. Designed & shipped the M3000 Touchphone, a revolutionary desktop phone with graphical UI and all-touch interface in 1986. Designed & prototyped advanced graphical, touch and speech user interfaces for desktop & mobile devices in 1990-94.

**Creative Designer**
**Norpak**
Privately Held; 51-200 employees; Telecommunications industry
September 1983 – May 1985 (1 year 9 months)   Ottawa, Canada

Led the user interface design of the Norpak NAPLPS Videotext authoring platform, a precursor to HTML and web authoring.

**Art Director**
**Banfield-Seguin**
Privately Held; 11-50 employees; Marketing and Advertising industry
January 1981 – August 1983 (2 years 8 months)   Ottawa, Canada Area

Don Lindsay's Patents

**Computer Interface Having a Single Window Mode of Operation**
United States Patent 8,504,937  |  Issued August 6, 2013
Inventors: Don Lindsay, Steven P. Jobs

**User interface for providing consolidation and access**
United States Patent 7,526,738  |  Issued April 28, 2009
Inventors: Don Lindsay, Steven P. Jobs, Bas Ording

**User interface for providing consolidation and access**
United States Patent 7,434,177  |  Issued October 7, 2008
Inventors: Don Lindsay, Steven P. Jobs, Bas Ording

**Method and system for providing an embedded application toolbar**
United States Patent 6,686,938  |  Issued February 3, 2004
Inventors: Don Lindsay, Steven P. Jobs, Tim Wasko

**User Interface for Providing Consolidation and Access**
United States Patent 8,032,843  |  Issued October 4, 2011
Inventors: Don Lindsay, Steven P. Jobs, Bas Ording

**Computer interface having a single window mode of operation**
United States Patent 6,957,395  |  Issued October 18, 2005
Inventors: Don Lindsay, Steven P. Jobs

**Method and apparatus for speech synthesis using paralinguistic variation**
United States Patent 8,103,505  |  Issued January 24, 2012
Inventors: Don Lindsay, Kim Silverman

**COMMUNICATION DEVICE**
United States Patent Application 20130012269  |  Filed January 10, 2013
Inventors: Don Lindsay, Mike Lazaridis, Dan Dodge

**MULTIPLE-STAGE INTERFACE CONTROL OF A MOBILE ELECTRONIC DEVICE**
United States Patent Application 20140040769  |  Filed February 6, 2014
Inventors: Don Lindsay, Mike Lazaridis, Dan Dodge, Jason Griffin, Todd Wood, Alistair Hamilton

**Graphical user interface for computers having variable size icons**
United States Patent 7,216,304  |  Issued May 8, 2007
Inventors: Don Lindsay, Arno Gourdol

**Graphics tiering strategy incorporating bitmaps and window geometries**
United States Patent 7,739,613  |  Issued June 15, 2010
Inventors: Don Lindsay

**Dynamic reflective highlighting of a glass appearance window frame**
United States Patent 7,412,663  |  Issued August 12, 2008
Inventors: Don Lindsay, Tjeerd Hoek, Greg Melander

**Glass appearance window frame colorization**
United States Patent 7,418,668  |  Issued August 26, 2008
Inventors: Don Lindsay, Tjeerd Hoek

**Visual expression of a state of an application window**
United States Patent 7,577,918  |  Issued August 18, 2009
Inventors: Don Lindsay

**Method and apparatus for application window grouping and management**
United States Patent 7,581,192  |  Issued August 25, 2009
Inventors: Don Lindsay, Charlie Stabb, Mark Ligameri

**Method and apparatus for application window grouping and management**
United States Patent 7,478,339  |  Issued January 13, 2009
Inventors: Don Lindsay, Charlie Stabb, Cees van Dok, Chuck Cummins, Hillel Cooperman, jeff Pettiross, Sarah Shrock

**System and method for selecting a tab within a tabbed browser**

2

United States Patent 7,596,760  |  Issued September 29, 2009
Inventors: Don Lindsay, Aaron Sauve, Cees van Dok, Tony Schreiner

**System and method for providing a window management mode**
United States Patent 7,681,143  |  Issued March 16, 2010
Inventors: Don Lindsay, Mark Ligameri

**System and method for visually expressing user interface elements**
United States Patent 7,661,069  |  Issued February 9, 2010
Inventors: Don Lindsay, Mark Ligameri

**System and method for controlling the opacity of multiple windows while browsing**
United States Patent 7,747,965  |  Issued June 29, 2010
Inventors: Don Lindsay, Charlie Stabb, Hillel Cooperman, Mark Ligameri, Ales Holecek

**User-created trade cards**
United States Patent 7,909,238  |  Issued March 22, 2011
Inventors: Don Lindsay, Gary Flake, Blaise Aguera y Arcas, Brett Brewer, Steven Drucker, Karim Farouki, Adam Sheppard, Stephen Lawler, Stephen Szeliski, Chistopher Weare

**System and Method for Visually Browsing of Open Windows**
United States Patent 8,341,541  |  Issued December 25, 2012
Inventors: Don Lindsay, Charlie Stabb, Tjeerd Hoek, Mark Ligameri

**SCROLLABLE AREA MULTI-SCALE VIEWING**
United States Patent 8,082,518  |  Issued December 20, 2011
Inventors: Don Lindsay, Jeff Weir, Gary Flake, Brett Brewer

**GRAPHICAL CONTEXT SHORT MENU**
United States Patent Application 20110202879  |  Filed August 18, 2011
Inventors: Don Lindsay

**USER INTERFACE FOR A TOUCHSCREEN DISPLAY**
United States Patent Application 20110087990  |  Filed April 14, 2011
Inventors: Don Lindsay

**COLLECTION REPRESENTS COMBINED INTENT**
United States Patent Application 20090319357  |  Filed December 24, 2009
Inventors: Don Lindsay

**SYSTEM AND METHOD FOR SELECTING A TAB WITHIN A TABBED BROWSER**
United States Patent Application 20100011313  |  Filed January 24, 2010
Inventors: Don Lindsay

**3D CONTENT AGGREGATION BUILT INTO DEVICES**
United States Patent Application 20090310851  |  Filed December 17, 2009
Inventors: Don Lindsay

**ANNOTATE AT MULTIPLE LEVELS**
United States Patent Application 20090307618  |  Filed December 10, 2009
Inventors: Don Lindsay

**MARK-UP EXTENSIONS FOR SEMANTICALLY MORE RELEVANT THUMBNAILS OF CONTENT**
United States Patent Application 20090300506  |  Filed December 3, 2009
Inventors: Don Lindsay

**MULTI-SCALE NAVIGATIONAL VISUALIZATION**
United States Patent Application 20090289937  |  Filed November 26, 2009
Inventors: Don Lindsay

**PROCEDURAL AUTHORING**
United States Patent Application 20090279784  |  Filed November 12, 2009
Inventors: Don Lindsay

**DYNAMIC MULTI-SCALE SCHEMA**
United States Patent Application 20090276445  |  Filed November 5, 2009
Inventors: Don Lindsay

**INTERMEDIATE POINT BETWEEN IMAGES TO INSERT/OVERLAY ADS**
United States Patent Application 20090274391  |  Filed November 5, 2009
Inventors: Don Lindsay

**ZOOM FOR ANNOTATABLE MARGINS**
United States Patent Application 20090254867  |  Filed October 8, 2009

Inventors: Don Lindsay

### CLIENT-SIDE COMPOSING/WEIGHTING OF ADS
United States Patent Application 20090254820  |  Filed October 8, 2009
Inventors: Don Lindsay

### DEVICE INTERACTION WITH COMBINATION OF RINGS
United States Patent Application 20090251407  |  Filed October 8, 2009
Inventors: Don Lindsay

### MULTISCALED TRADE CARDS
United States Patent Application 20090172570  |  Filed July 2, 2009
Inventors: Don Lindsay

### USER-CREATED TRADE CARDS
United States Patent Application 20090159656  |  Filed June 25, 2009
Inventors: Don Lindsay

### TRADE CARD SERVICES
United States Patent Application 20090152341  |  Filed June 18, 2009
Inventors: Don Lindsay

### Wireless Telephones
Canada Patent CA2107819  |  Issued October 10, 1993
Inventors: Don Lindsay, Tracy Roberts, Neal Cowan, Michael Brown, Jeff Fairless, Nancy Carboni

### MANAGEMENT OF DEVICE SETTINGS VIA A PLURALITY OF INTERFACES
United States Patent Application 20110265028  |  Filed October 27, 2011
Inventors: Don Lindsay

### APPARATUS, AND ASSOCIATED METHOD, FOR SELECTING MULTIPLE FILES AT A CONSUMER ELECTRONICS DEVICE
United States Patent Application 20110265033  |  Filed October 27, 2011
Inventors: Don Lindsay

## Don Lindsay's Honors and Awards

**Red Dot Award for Product Design, 2011**
Red Dot
April 2011
http://en.red-dot.org/2783.html?&cHash=912e8c5f2019d61c648761fa6cf612e3&detail=8427

**Red Dot Award for Product Design, 2013**
Red Dot
March 2013
http://press.blackberry.com/press/2013/the-blackberry-z10-is-awarded-for-high-design-quality-in-the-red.html

## Don Lindsay's Skills & Expertise

| | | | | | |
|---|---|---|---|---|---|
| User Experience | User-centered Design | Interaction Design | User Interface | User Interface Design | User Experience Design |
| Experience Design | Information Architecture | Usability Testing | Mobile Applications | Human Computer Interaction | Mobile Devices |
| User Research | Information Design | iPhone | Task Analysis | Accessibility | Usability Engineering | Rapid Prototyping |
| Contextual Inquiry | | | | | |

View All (42) Skills

## View Don Lindsay's full profile to...

- See who you and **Don Lindsay** know in common
- Get introduced to **Don Lindsay**
- Contact **Don Lindsay** directly

View Don's full profile

Not the Don Lindsay you were looking for? View more »

LinkedIn member directory - Browse members by country a b c d e f g h i j k l m n o p q r s t u v w x y z more

LinkedIn Corporation © 2014

# EXHIBIT 23

| **Massachusetts Board of Bar Overseers of the Supreme Judicial Court**<br><br>99 High Street<br>Boston, Ma. 02110<br><br>**Attorney Status Report** |  |
|---|---|
| Robert A. Greenberg<br><br>Intel Americas<br>978-760-3189<br>HD2-305<br>77 Reed Road<br>Hudson MA 01749<br><br>Admitted to the bar on 03/23/98<br>Board of Bar Overseers number: 637420<br>Current status is <span style="color:red">Active</span> | Full office addresses listed for Active, IHC, and 304 status attorneys only. |
| This attorney has certified that he or she does not carry malpractice insurance because the attorney is solely employed either as a government lawyer or by an organizational client (such as a corporation).<br><br>This attorney has no record of public discipline. | Data as of 03/20/14 |

**Click HERE to SEARCH AGAIN!**

**or HERE to return to the main page.**

FOLLOW US:



HOME     FIRM OVERVIEW     OUR PROFESSIONALS     PATENT SERVICES     INFOGRAPHIC     NEWS/EVENTS     CONTACT US     CAREERS



## Our Professionals



pharrity@harrityllp.com
phone: (571) 432-0800

**Paul Harrity** is a patent attorney with considerable experience in client counseling and preparing and prosecuting patent applications. Paul started his career in patent law 21 years ago as a Patent Examiner with the United States Patent and Trademark Office. Since leaving the Patent Office 17 years ago, Paul has prepared hundreds of patent applications and thousands of Patent Office responses. Paul has considerable experience in the areas of computer hardware and software systems, telecommunications systems and methods, business methods, Internet hardware and software systems, and optical systems. In addition to patent preparation and prosecution experience, Paul has provided opinions on infringement and validity of patents.

Prior to forming Harrity & Harrity, LLP, Paul worked as a patent agent and later as an associate at the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. While at Finnegan, Paul counseled clients, both domestic and foreign, and specialized in patent prosecution and preparation. Paul also worked in-house, on a temporary basis, for one of Finnegan's clients.

At the Patent Office, Paul examined patent applications in the areas of computer hardware and database systems.

Prior to joining the Patent Office, Paul gained valuable industry experience as a troubleshooter at IBM and a design engineer at General Dynamics.

## Education:

The George Washington University National Law Center (J.D.) - 1998
Pennsylvania State University (B.S.E.E.) - 1989

## Admitted:

District of Columbia – 1999 (inactive)

### TESTIMONIALS

"Harrity & Harrity, LLP goes above and beyond to make a happy, enjoyable work place and I feel lucky to be a part of such an awesome law firm."

- Ashley

### NEWS / EVENTS

**20**
june — Intellectual Property: A Key Driver of our Economy

**5**
june — USPTO and KIPO Announce Launch of Cooperative Patent Classification System Pilot

**7**
apr — Exclusive Interview with Asa Kling, Israel Patent Office Director

1

Commonwealth of Virginia - 1998

Registered to practice before the United States Patent and Trademark Office - 1995

## Affiliations:

American Bar Association

American Intellectual Property Law Association

Virginia Bar Association

Federal Circuit Bar Association

Penn State Alumni Association

Eta Kappa Nu Honor Society

Intellectual Property Owners Association

— Back to Our Professionals

Home     Firm Overview     Our Professionals     Patent Services     Infographic     News/Events     Contact Us     Careers



What is Law Firm 2.0?   Practice Areas   Attorneys   Clients   News   Careers   Offices

## ATTORNEYS:

Search:

ATTORNEY NAME / OFFICE / SPECIALTY, ETC.

| | |
|---|---|
| William J. Akins | W. Wayt King Jr. |
| José Javier Aparicio | Joseph A. Klein |
| Sara J. Bass | Michael P. Kuhn |
| Richard P. Blessen | Harvey A. Kurtz |
| Kimberly Dempsey Booher | Richard M. Lehrer |
| Lisa M. Brauner | Ari D. Levine |
| Lincoln W. Briggs | Carl Loeffler |
| Kevin E. Broyles | R. Bates Lovett |
| Todd Butler | Betsy B. McCall |
| Lisa A. Carroll | Michael E. Mermall |
| Melissa M. Choe | Dan J. Mette |
| Milo S. Cogan | Charles B. Meyer |
| Gregory A. Cole | Charles D. Miller |
| Jenna Colvin | Mark T. Mitchell |
| Michael T. Cone | Gideon C. Moore |
| Bradley L. Cooper | David J. Myers |
| Jocelyn R. Dabeau | Phi H. D. Nguyen |
| Jennifer H. Davidow | Christina Pak |
| Anthony J. DoVale | Steven C. Papkin |
| James J. Doyle Jr. | Panna P. Patel |
| Jeff Feldhahn | Mukti N. Patel |
| Joel M. Ferdinand | Thomas J. Peters IV |
| James M. Fisher II | Bryan D. Pollard |
| Deborah L. Fletcher | Newton G. Quantz III |
| Jana L. France | Elise A. Redmond |
| Eric A. French | Martin B. Robins |
| Stephen F. Fusco | Frank J. Scaturro |
| Edward J. Gildea | Margaret B. Scullin |
| Tyler Giles | Lemoine Skinner III |
| Damon P. Goode | Andrew W. Stone |
| John G. Graves | Steven D. Szuch |
| Armand "Bud" Grunberger | Gordon W. Thomas |
| Jeffrey M. Hersh | William Thomas Watts Jr. |
| Debra S. Hill | Paul Wehrmann |
| Robert W. Hoskyn | Alan S. Wernick |
| Rachel Healey Huffstetler | James C. Wheeler |
| Julie Innmon | Chris Wilson |
| Jill A. Jacobson | Bruce A. Wobeck |
| Carl R. Johnston | Alison S. Woodrow |
| Cammi R. Jones | Gerald W. Woods |

## Richard M. Lehrer

**Back to attorneys page**

Contact:

* T: 845.519.9525
* E: rlehrer@fisherbroyles.com
* vcard
* New York Office

Large Firm Experience:

* Baker Hostetler LLP
* Mintz Levin PC
* Gibbons PC

Bar Admissions:

* New York
-2nd Circuit
* New Jersey
-Supreme
* U.S. District Court
-Northern District, NY
-Eastern District, NY
-New Jersey
* U.S. Patent & Trademark Office

Education:

* Brooklyn Law School *J.D., 1993*
* The Cooper Union *B.E.E.E., 1991*

Biography:

Mr. Lehrer is a registered patent attorney with 18+ years of experience in all aspect of Intellectual Property law, with a focus on hi-tech patent litigation, prosecution, licensing and opinions. He routinely assists his clients, who have ranged from individual inventors to fortune 100 companies, with intellectual property portfolio management and enforcement programs.

Mr. Lehrer has litigated various patent, trademark and copyright matters in both state and federal courts throughout the United States. He has had multiple first chair jury trial experiences and has been counsel of record in many reported decisions. He has also prepared and negotiated numerous license agreements related to patents and technological know-how.

Mr. Lehrer has drafted and prosecuted over 150 original patent applications and supervised and/or taken over the prosecution of many others. He has also prosecuted numerous US and International trademark applications.

Mr. Lehrer's particular technical specialties are in the areas of computers (hardware, software, networks, virtual private networks, Internet), telephones (hardwired, wireless, cellular, remote access, Voice over Internet Protocol (VoIP)), telephone switches, call centers, base transceiver stations, optical switches, electrical circuits and devices, video broadcasting, video conferencing, video-on-demand, Lasers, micro-electronic mirrors, medical devices (Laser, catheters and electrical nerve stimulation devices), toys, novelty items, packaging, statues, Internet commerce, business methods and various mechanical devices.

### Publications

* Richard M. Lehrer assisted by Jody Schecter – Overuse of the Inequitable Conduct Defense –BNA Patent, Trademark & Copyright Journal (2009)
* 4811-6237-8769, v. 1

© 2009-2013 FisherBroyles. All Rights Reserved Worldwide. heystac | Sitemap
This communication may be considered attorney advertising. Previous results are not a guarantee of future outcome.



# Brian J. McNamara

*Retired Partner*

*bmcnamara@foley.com*



---

Brian J. McNamara is a retired partner in Foley's Washington, D.C. office. As a member of the firm's Sports Industry Team, his legal experience included patent, trademark, and copyright protection, licensing and litigation, and the protection of trade secrets. In the area of sports law, Mr. McNamara obtained several patents on sporting goods including portable lacrosse goals that meet NCAA standards. He also filed a patent application for an Internet virtual sports league.

Mr. McNamara's technical specialties included analog and digital electrical and electronic technologies, computer hardware and software, artificial intelligence systems, and telecommunications technologies. His litigation experience involved the representation of clients in the federal district courts and before the U.S. Patent and Trademark Office (patent interferences, trademark oppositions and cancellation proceedings, and ex parte appeals).

Mr. McNamara's technical knowledge included analog and digital electronics, computer hardware and software, artificial intelligence systems, and telecommunications. He was a senior design engineer at Westinghouse Electric for

## Locations

P 202.672.5416
3000 K Street, N.W.
Suite 600
Washington, D.C. 20007-5109

## Industry Teams

Sports

## Practice Areas

Electronics
IP Due Diligence
IP Litigation
Patent Litigation
Trademark, Copyright & Advertising Counseling
Trademark, Copyright & Advertising Litigation

1

**– A649 –**

eight years and was principal engineer in charge of
systems engineering and business development at
ARINC Research Corporation for six years.

Mr. McNamara has published in scientific journals and
symposium proceedings as well as in legal publications,
such as *Electronics & Computer Patent & Copyright*,
published by the Patent Resources Institute. He authored
a chapter titled, "Intellectual Property Due Diligence,"
which, until recently, was published in the treatise *Drafting
License Agreements* by Aspen Publishers. For many
years, he was also an adjunct professor of law at George
Mason University, where he taught Internet Law.

In recognition of his experience, Mr. McNamara has been
Peer Review Rated as AV® Preeminent™, the highest
performance rating in Martindale-Hubbell's peer review
rating system.

Mr. McNamara graduated from Manhattan College (B.S.,
electrical engineering); Johns Hopkins University (M.S.,
electrical engineering and M.A.S., administrative science);
and the University of Maryland (J.D., with honors, 1986),
where he was a member of the Moot Court Board. He is a
member of the Institute of Electrical and Electronics
Engineers, the American Intellectual Property Law
Association, the District of Columbia Bar Association, and
the Anne Arundel County, Maryland State and American
Bar Associations.

Publications and Presentations:

- "Patenting Computer Hardware and Software,"
  Japanese Intellectual Property Association,
  Washington, D.C., October 27, 2009
- "Charting The Course to a Service Provider Safe
  Harbor – The Veoh Cases Under The Digital
  Millennium Copyright Act," MD State Bar Convention,
  Intellectual Property Law Section Proceedings, June
  2009
- "Is MySpace Really Mine? Licensing, Ownership and
  Infringement In WEB 2.0 – Content Licensing
  Approaches," Pike & Fischer Seminar, Washington,
  D.C., November 2008

- "Developments in Copyright Law – Adapting to Changing Technologies and Business Models," published by *National Business Institute*, October 2008
- "Principles of Intellectual Property Protection – Patents, Trade Secrets, Trademarks and Copyrights," University of Maryland School of Engineering – Capstone lecture, 2007 and 2008
- "Protection of Intellectual Property in Computer Hardware and Software (Patents and Copyrights)," Japanese Intellectual Property Association, October 2007

© 2014 FOLEY & LARDNER LLP



# FINNEGAN

350 lawyers focused on IP



**James T. Wilson**
202.408.6070
jim.wilson@finnegan.com

901 New York Avenue, NW
Washington, DC
20001-4413
202.408.4000
Fax 202.408.4400

**Download vCard** 

## Bar and Court Admissions
District of Columbia
Virginia
U.S. Court of Appeals, Federal Circuit
U.S. Supreme Court
U.S. Patent and Trademark Office

## Education
American University, Washington College of Law
J.D., *magna cum laude*, 1999
Pennsylvania State University
B.S.E.E., with distinction, 1990

## James T. Wilson
Partner

**Profile** | Articles | News

James Wilson litigates complex intellectual property cases. He has participated in appeals to the Federal Circuit, claim construction (*Markman*) proceedings, and hearings. He has conducted direct and cross examinations in complex, multiple-patent litigations, obtained discovery from multinational corporations, and taken and defended numerous depositions.

Mr. Wilson's experience includes all aspects of patent law, including patentability opinions, patent prosecution, defensive and offensive patent portfolio assessment, patent infringement opinions, and patent and trade secret litigation in federal district courts, at the Federal Circuit, and at the U.S. International Trade Commission.

Mr. Wilson is skilled in a range of technical areas, including networking, ATM, SONET, digital and analog hardware, semiconductor devices, software, optics, and control systems technologies.

## Highlights

- Direct and cross-examination responsibilities during an eight-day jury trial for Telcordia Technologies, Inc., that resulted in findings that Cisco Systems, Inc., willfully infringed two of Telcordia's patents.

- Represented Nikon Corp. in an appeal to the Federal Circuit from a decision of the U.S. International Trade Commission.

- Represented a manufacturer of wireless networking cards regarding trade-secret misappropriation.

- Represented a manufacturer of oscilloscopes regarding patent infringement.

- Represented manufacturers of computer and networking equipment concerning Intel Corporation's charges of patent infringement.

- Represented manufacturer of alkaline batteries in

## Practice
Litigation
  Trial
  ITC Section 337 Patent Litigatio
  Appeals
  Trade Secret Litigation
Patent Office Practice
  Patent Prosecution
Patent Transactions and Strategic Counseling
  Opinions and Counseling

## Industry
Electrical and Computer Technolog

proceedings before the U.S. International Trade
Commission.

- Served as a patent examiner at the U.S. Patent and
  Trademark Office.

- Argued before the D.C. Court of Appeals in a pro bono
  appeal.

### Professional Activities

- American Bar Association

- Federal Circuit Bar Association

- American Intellectual Property Law Association

### Select Publications

- "5 Tips for a Winning Petition for Inter Partes Review,"
  *Corporate Counsel*, Oct. 15, 2013.

- Coauthor. "A Proposal to Remove Uncertainty from
  Claims of Small Entity Status before the USPTO by
  Correcting and Enhancing SBA and USPTO Regulations,"
  *Bloomberg Law Reports*, Jan. 19, 2010.





**E. Robert Yoches**
202.408.4039
bob.yoches@finnegan.com

901 New York Avenue, NW
Washington, DC
20001-4413
202.408.4000
Fax 202.408.4400

12D, 167 DunHua North
Road
Taipei 105
Taiwan
+ 886 2 2712 7001
Fax + 886 2 2712 7080

**Download vCard** 

**Listen to Podcasts** 🎧

### Bar and Court Admissions

District of Columbia
U.S. Court of Appeals,
Federal Circuit
U.S. Supreme Court
U.S. Patent and Trademark
Office

### Education

University of Pennsylvania
Law School
J.D., 1980
University of Colorado,
Boulder
B.S., Electrical Engineering
and Computer Science,
with highest honors, 1974

# E. Robert Yoches

Partner

**Profile** | Articles | Speaking Engagements | Podcasts |
IP Updates | News

Bob Yoches has extensive experience in patent infringement litigation, especially in the Northern District of California, the Eastern District of Texas, and the International Trade Commission. He also has a great deal of experience representing clients from Asia, particularly, Taiwan, China, and Japan, often in complex cases involving electronic and computer technologies.

Mr. Yoches also counsels clients in intellectual property matters including portfolio management, licensing, trade secret protection and copyright protection of software.

Mr. Yoches writes frequently on patent-related topics, and speaks before academic, business, and legal communities in the U.S. and Asia on intellectual property issues.

### Highlights

* Representative cases in the telecommunications area include *Moll v. Northern Telecom*, 1997 U.S. App. LEXIS 17607 (Fed. Cir. 1997) (for Northern Telecom); *Nortel Networks, Ltd v. Ciena Corp.* (settled in 2003 with a $25 million payment to client Nortel); *UTStarcom, Inc., v. Starent Networks Corp.*, 2007 U.S. App. LEXIS 8739 (Fed. Cir. 2007) (for Starent); *UTStarcom, Inc. v. Starent Networks Corp.* (for Starent, settled 2009); *Certain Audiovisual Components and Products Containing Same*, 337-TA-837 (ITC) (for Realtek).

* Representative cases in the computer area include *AccuScan, Inc. v. Xerox Corp.*, 2001 U.S. App. LEXIS 11534 (Fed. Cir. 2001) (for Xerox); *Insight Dev. Co. v. Hewlett-Packard Co.*, 2002 U.S. App. LEXIS 15634 (Fed. Cir. 2002) (for Hewlett-Packard); *In re Certain Digital Processors, Digital Processing Systems, Components Thereof, and Products Containing Same*. Investigation No. 337-TA-529 (for BIAX, settled in 2005); BIAX *Corp. v. Intel Corp.*, 2007 U.S. Dist. LEXIS 14250 (E.D. Tex. 2007) (for

### Practice

Litigation
   Pre-Trial Strategy
   Trial
   ITC Section 337 Patent Litigatic
Patent Transactions and Strategic
Counseling
   Opinions and Counseling
   Licensing, Pooling, and Other
   Transactions
Patent Office Practice
   Patent Prosecution

### Industry

Business Method Patents
Electrical and Computer Technolog

1

**– A654 –**

BIAX, settled in 2007); *Nuance v. ABBYY* (N.D. Cal. 2013) (for ABBYY).

- Serves on the editorial boards of *The Computer Law Reporter* (since 1992) and the *Internet Newsletter* (since 1996).

- Writes the chapter on litigation for *Software Patents*.

- Member of the board of editors of *Internet Law and Strategy*.

- Former adjunct professor at George Mason University Law School.

## Professional Recognition

- Recognized as an "IP Star" in Washington, DC and Taipei, by *Managing Intellectual Property*, 2013.

- Selected by his peers for inclusion in *The Best Lawyers in America,* 2005-2014.

- Recognized as a leading patent litigator in the D.C. area by *Intellectual Asset Management*, 2011-2012.

## Professional Activities

- Bar Association of the District of Columbia

- District of Columbia Bar (vice chair, Steering Committee, Computer Law Division, 1985-1986; chair, 1986-1987)

- D.C. Computer Law Forum (Board of Directors, 1992-1993)

- Licensing Executives Society (vice chair, Computer Industry Committee, 1993-1995; chair, Telecommunications Industry Committee, 1996-1998; chair, Information Technologies and Electronics Industries Section, 1998-2000; Board of Trustees, 2002-2004)

- Advanced Computer Law Institute (chair, 1992-2002)

## Select Publications

- Coauthor. "How to Determine a RAND Royalty," *Commercial Times*, March 11, 2014.

- Coauthor. "New Legal Maneuver Helps Companies Stymie Business-Method Patent Litigation," *Wired Innovation Insights*, Feb. 13, 2014.

- Coauthor. "Securing IP Rights in a 3D-Printing World," *American Intellectual Property Law Association*, Dec. 18, 2013.

- Coauthor. "Recent Federal Circuit Decisions on Patent Damages: Good News for Taiwan Companies," *Commercial Times*, Aug. 2013.

- Coauthor. "IP Laws Don't Easily Translate to 3D Printing, But Savvy Designers Can Work Around That," *Wired Innovation Insights*, Sept. 25, 2013.

- Coauthor. "With TianRui, the ITC Opens the Door to Scrutiny of Business Practices Beyond U.S. Borders," *Commercial Times*, May 28, 2013.

- Coauthor. "ITC's Extraterritorial Authority: *TianRui* 'Opens the Door to Scrutiny of All Business Practices' Outside the United States," *BNA's Patent, Trademark & Copyright Journal*, May 17, 2013.

- Coauthor. "Borrowing Patents: An Idea Whose Time Has Not Yet Come," *Commercial Times*, Jan. 8, 2013.

- "Lessons from the Smartphone Wars," *MIP Chinese edition*, Dec. 2012.

- "How the AIA May Affect United States Patent Litigation," *MIP Chinese edition*, March, 2012.

# EXHIBIT 24



# Intellectual Asset Management



### Rockstar getting ready to roll ...

Last week the US Department of Justice announced that it had closed down its antitrust investigation into the acquisition of Nortel patents by a consortium of companies at the auction which took place in New York last June. Along with the Motorola and Novell deals, it was given the green light, with the DoJ stating in a press release: "After a thorough review of the proposed transactions, the Antitrust Division has determined that each acquisition is unlikely to substantially lessen competition."

So now that clearance has been given, what happens next? As yet we do not know the answer to that question, but it is worth noting that since the auction many of the individuals who were once part of the Nortel IP team have become employees of an organisation called Rockstar Consortium Inc. Among them are John Veschi (who will be speaking at the IP Business Congress in June), previously CIPO at Nortel, now CEO of Rockstar; Gillian McColgan, previously Nortel IP's CTO, now Rockstar's CTO; and Chris Cianciolo, previously VP of IP law at Nortel, now holding the same position at Rockstar. One new face is CFO Ross Morgan, who looks to have joined last month.

There's no website as yet, but LinkedIn has a pretty helpful list of Rockstar employees. It's probably not complete, but it does indicate that Rockstar may already be a pretty sizeable organisation. It does not take a great leap of imagination to conclude that as the regulatory hurdles are cleared, the day when Rockstar Consortium Inc swings into action is drawing nearer. What kind of action that will be remains to be seen, especially given the undertakings that the DoJ says have been given regarding the portfolio's standards essential patents. However, one thing is certain - it makes sense to have the people that know the patents best still on the inside, making sure that their value is exploited to the maximum extent possible. The consortium's members will want to make their money back and then some more as soon as possible.

### Sectors

Competition/antitrust, Licensing, Patents, IP business

### ✕Register for more free content

- Read more *IAM* blogs and articles
- The Editor's weekly review by email

Register now





© Copyright 2003-2014 **Globe White Page Ltd**

# EXHIBIT 25





| 5 | Patent Litigation |
| 5 | Privacy Law |
| 4 | IP |
| 4 | Mergers & Acquisitions |
| 3 | Trademarks |
| 3 | Licensing |

**How You're Connected**

You

REDACTED

Chris Cianciolo

Chris also knows about...

| 3 | Corporate Law | | 3 | Joint Ventures | | 2 | Invention | | 2 | Due Diligence |
| 2 | Trade Secrets | | 1 | Mergers | | 1 | Contract Negotiation | | 1 | Software Patents |
| 1 | Client Counseling |

**In Common with Chris**

You      Chris

**3**

Skills & Expertise

🎓 **Education**

**Northeastern University**
Masters Electrical Engineering, Electrical Engineering

*Northeastern University*

**Northeastern University**
Bachelors Electrical Engineering, Electrical Engineering

*Northeastern University*

**Suffolk University Law School**
Juris Doctorate, Intellectual Property Law

**People Similar to Chris**

**James Baker** 3rd
Sr. Intellectual Property Counsel at 3M Com...

**Connect**

**Recommendations**                                   Received (1) ▾

**Vice President Intellectual Property Law**
Nortel Networks

Eric Jensen
Intellectual Property Lawyer

" Chris is an excellent lawyer, with superior analytical skills, excellent negotiation and
business judgment, who consistently over performed. Chris worked on high profile M&A
transactions, and worked well with senior management due to his ability to explain complex
legal issues and associated risks in a manner lay people can easily understand. Chris not
only excelled at... **more**

*October 13, 2009, Eric managed Chris at Nortel Networks*

**Groups**

Lexington Christian A...
➕ Join

**Following**

**NORTEL**

**Nortel Networks**
Telecommunications
✚ Follow

## Schools

Northeastern University

**Northeastern University**
Greater Boston Area
✚ Follow

**Suffolk University La…**
Greater Boston Area
✚ Follow

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | Upgrade Your Account

LinkedIn Corporation © 2014 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

# EXHIBIT 26

**Table C-5.**
**U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases**
**Terminated, by District and Method of Disposition,**
**During the 12-Month Period Ending June 30, 2013**

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| TOTAL | 199,639 | 8.5 | 43,581 | 5.0 | 129,022 | 8.6 | 24,261 | 12.6 | 2,775 | 23.7 |
| DC | 1,943 | 9.0 | 776 | 7.3 | 1,111 | 10.3 | 12 | 34.6 | 44 | 43.0 |
| 1ST | 5,385 | 10.5 | 1,100 | 3.7 | 2,927 | 11.4 | 1,257 | 15.2 | 101 | 30.1 |
| ME | 357 | 7.5 | 141 | 5.9 | 196 | 8.6 | 18 | 17.4 | 2 | . |
| MA | 2,472 | 8.4 | 646 | 3.0 | 791 | 7.2 | 974 | 15.1 | 61 | 31.1 |
| NH | 454 | 8.4 | 89 | 3.3 | 186 | 5.6 | 168 | 13.8 | 11 | 18.3 |
| RI | 1,121 | 27.9 | 80 | 6.7 | 998 | 31.1 | 32 | 14.3 | 11 | 40.4 |
| PR | 981 | 12.7 | 144 | 6.4 | 756 | 13.1 | 65 | 20.7 | 16 | 29.5 |
| 2ND | 18,348 | 8.8 | 3,806 | 5.2 | 10,594 | 8.5 | 3,615 | 12.2 | 333 | 32.2 |
| CT | 1,655 | 8.8 | 834 | 8.3 | 707 | 11.3 | 69 | 16.5 | 45 | 38.4 |
| NYN | 1,160 | 10.6 | 239 | 5.2 | 585 | 12.3 | 304 | 16.0 | 32 | 28.8 |
| NYE | 5,624 | 8.8 | 1,210 | 5.8 | 3,152 | 8.3 | 1,158 | 12.1 | 104 | 30.5 |
| NYS | 8,270 | 8.3 | 1,162 | 4.2 | 4,924 | 7.3 | 2,046 | 11.5 | 138 | 29.2 |
| NYW | 1,370 | 8.0 | 326 | 2.8 | 1,001 | 9.8 | 32 | 37.4 | 11 | 68.0 |
| VT | 269 | 8.8 | 35 | 4.0 | 225 | 9.2 | 6 | . | 3 | . |
| 3RD | 24,469 | 9.4 | 2,523 | 3.9 | 18,088 | 10.1 | 3,557 | 11.7 | 301 | 26.9 |
| DE | 1,264 | 8.0 | 452 | 4.7 | 686 | 9.0 | 82 | 11.6 | 44 | 33.0 |
| NJ | 5,953 | 6.1 | 528 | 3.8 | 3,368 | 3.5 | 1,994 | 13.0 | 63 | 35.6 |
| PAE | 13,614 | 15.1 | 583 | 3.2 | 11,598 | 18.0 | 1,318 | 9.4 | 115 | 17.5 |
| PAM | 1,483 | 7.1 | 459 | 4.4 | 924 | 7.1 | 61 | 18.6 | 39 | 28.7 |
| PAW | 1,918 | 6.2 | 360 | 2.8 | 1,502 | 7.1 | 37 | 24.3 | 19 | 27.0 |
| VI | 237 | 17.8 | 141 | 13.1 | 10 | 31.0 | 65 | 19.2 | 21 | 31.9 |
| 4TH | 12,387 | 7.5 | 2,331 | 5.5 | 8,367 | 7.2 | 1,505 | 10.2 | 184 | 19.2 |
| MD | 3,196 | 7.8 | 429 | 6.7 | 2,131 | 6.2 | 582 | 12.9 | 54 | 27.9 |
| NCE | 1,086 | 8.9 | 324 | 7.8 | 748 | 9.4 | 7 | . | 7 | . |
| NCM | 573 | 11.4 | 364 | 10.1 | 172 | 12.9 | 26 | 19.1 | 11 | 21.4 |
| NCW | 906 | 8.1 | 291 | 5.0 | 510 | 8.8 | 90 | 12.8 | 15 | 25.2 |
| SC | 2,359 | 8.9 | 252 | 3.9 | 1,949 | 9.0 | 128 | 12.0 | 30 | 21.5 |
| VAE | 2,354 | 5.2 | 332 | 3.2 | 1,387 | 4.3 | 588 | 7.8 | 47 | 11.9 |
| VAW | 682 | 7.1 | 183 | 3.0 | 436 | 8.5 | 54 | 7.8 | 9 | . |
| WVN | 394 | 8.3 | 99 | 6.1 | 285 | 9.0 | 7 | 9.6 | 3 | . |
| WVS | 837 | 7.5 | 57 | 2.9 | 749 | 7.6 | 23 | 19.0 | 8 | . |

Table C-5. (June 30, 2013—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **22,882** | **10.7** | **5,168** | **5.7** | **15,502** | **12.0** | **1,880** | **13.3** | **332** | **21.6** |
| LA,E | 6,273 | 26.0 | 176 | 1.1 | 5,147 | 31.1 | 894 | 14.5 | 56 | 19.9 |
| LA,M | 596 | 11.4 | 169 | 9.7 | 381 | 11.3 | 32 | 17.4 | 14 | 34.7 |
| LA,W | 1,366 | 12.6 | 496 | 8.8 | 781 | 11.3 | 51 | 20.5 | 38 | 26.2 |
| MS,N | 606 | 10.4 | 208 | 7.6 | 229 | 10.6 | 158 | 14.1 | 11 | 28.5 |
| MS,S | 1,442 | 10.1 | 723 | 5.9 | 668 | 11.4 | 28 | 20.1 | 23 | 18.4 |
| TX,N | 3,311 | 6.7 | 600 | 5.6 | 2,661 | 6.8 | 2 | - | 48 | 21.3 |
| TX,E | 2,523 | 8.3 | 622 | 5.6 | 1,830 | 8.0 | 30 | 20.5 | 41 | 25.5 |
| TX,S | 4,474 | 7.2 | 1,456 | 4.1 | 2,374 | 8.3 | 588 | 9.5 | 56 | 21.3 |
| TX,W | 2,291 | 7.3 | 718 | 6.2 | 1,431 | 6.9 | 97 | 17.0 | 45 | 19.5 |
| **6TH** | **16,534** | **8.9** | **5,017** | **4.7** | **7,646** | **8.9** | **3,682** | **25.5** | **189** | **25.5** |
| KY,E | 1,056 | 9.0 | 157 | 4.4 | 866 | 9.0 | 22 | 23.6 | 11 | 28.0 |
| KY,W | 1,124 | 8.1 | 310 | 4.3 | 761 | 8.9 | 43 | 13.7 | 10 | 36.2 |
| MI,E | 4,453 | 7.7 | 1,044 | 3.2 | 1,592 | 5.3 | 1,776 | 13.2 | 41 | 21.4 |
| MI,W | 1,134 | 7.3 | 211 | 2.0 | 652 | 7.3 | 256 | 12.3 | 15 | 21.8 |
| OH,N | 2,939 | 8.5 | 881 | 4.1 | 1,252 | 11.7 | 783 | 10.1 | 23 | 24.7 |
| OH,S | 2,228 | 9.8 | 858 | 5.2 | 687 | 11.0 | 653 | 12.9 | 30 | 33.6 |
| TN,E | 1,247 | 10.3 | 616 | 5.6 | 492 | 12.2 | 116 | 14.8 | 23 | 22.3 |
| TN,M | 1,249 | 10.7 | 241 | 14.6 | 978 | 10.0 | 10 | 19.3 | 20 | 25.9 |
| TN,W | 1,104 | 10.9 | 699 | 10.1 | 366 | 11.1 | 23 | 22.8 | 16 | 22.8 |
| **7TH** | **15,706** | **7.6** | **4,374** | **5.5** | **8,904** | **7.0** | **2,224** | **12.6** | **204** | **26.7** |
| IL,N | 8,791 | 6.7 | 2,450 | 5.8 | 5,539 | 6.3 | 694 | 11.2 | 108 | 28.6 |
| IL,C | 769 | 9.3 | 321 | 6.9 | 428 | 10.5 | 5 | - | 15 | 41.2 |
| IL,S | 1,106 | 10.7 | 482 | 6.9 | 590 | 10.5 | 12 | 26.3 | 22 | 24.5 |
| IN,N | 1,312 | 10.0 | 369 | 3.5 | 445 | 8.7 | 479 | 16.4 | 19 | 29.5 |
| IN,S | 2,038 | 8.8 | 305 | 3.4 | 933 | 6.7 | 790 | 12.4 | 10 | 32.1 |
| WI,E | 1,030 | 6.7 | 224 | 3.2 | 767 | 7.2 | 23 | 16.3 | 16 | 18.2 |
| WI,W | 660 | 6.1 | 223 | 2.6 | 202 | 6.4 | 221 | 11.0 | 14 | 14.5 |
| **8TH** | **13,885** | **12.2** | **4,853** | **7.4** | **7,943** | **13.6** | **915** | **13.3** | **174** | **21.9** |
| AR,E | 4,108 | 11.7 | 1,017 | 47.0 | 3,056 | 46.6 | 4 | - | 31 | 18.8 |
| AR,W | 877 | 11.7 | 126 | 10.3 | 733 | 11.3 | 2 | - | 16 | 19.8 |
| IA,N | 403 | 9.9 | 82 | 8.5 | 318 | 9.8 | 1 | - | 1 | 22.1 |
| IA,S | 503 | 8.2 | 84 | 4.3 | 304 | 7.1 | 102 | 14.6 | 11 | 22.2 |
| MN | 2,836 | 5.6 | 1,357 | 2.5 | 721 | 5.6 | 736 | 12.5 | 13 | 24.7 |
| MO,E | 2,269 | 10.6 | 1,076 | 9.4 | 1,150 | 11.1 | 40 | 19.8 | 33 | 22.4 |
| MO,W | 1,970 | 9.4 | 945 | 5.5 | 957 | 11.3 | 45 | 15.6 | 33 | 22.2 |
| NE | 507 | 9.7 | 40 | 2.4 | 438 | 6.7 | 11 | 16.3 | 18 | 20.3 |
| ND | 173 | 8.4 | 10 | 1.1 | 160 | 8.5 | 1 | 17.8 | 2 | 23.3 |
| SD | 229 | 12.4 | 116 | 11.8 | 106 | 12.7 | 2 | - | 5 | 23.3 |

– A666 –

Table C-5. (June 30, 2013—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **9TH** | **34,127** | **6.9** | **9,122** | **4.6** | **21,676** | **7.0** | **2,879** | **13.4** | **450** | **23.1** |
| AK | 256 | 9.0 | 49 | 5.2 | 198 | 9.2 | 2 | - | 7 | - |
| AZ | 2,380 | 7.2 | 105 | 2.4 | 2,090 | 7.1 | 156 | 14.6 | 29 | 25.4 |
| CA,N | 4,934 | 6.6 | 781 | 3.7 | 2,662 | 4.9 | 1,441 | 12.2 | 50 | 27.5 |
| CA,E | 2,906 | 8.8 | 1,068 | 6.0 | 1,754 | 10.3 | 62 | 17.4 | 22 | 31.5 |
| CA,C | 11,987 | 5.6 | 4,106 | 4.9 | 7,576 | 5.8 | 143 | 16.6 | 162 | 20.4 |
| CA,S | 2,321 | 6.6 | 343 | 3.4 | 1,223 | 5.2 | 724 | 13.2 | 31 | 26.5 |
| HI | 685 | 9.6 | 340 | 7.1 | 281 | 9.3 | 45 | 19.6 | 19 | 11.7 |
| ID | 493 | 9.9 | 42 | 1.6 | 366 | 9.8 | 74 | 13.2 | 11 | 28.1 |
| MT | 458 | 8.6 | 163 | 3.9 | 172 | 8.5 | 112 | 18.1 | 11 | 19.0 |
| NV | 2,159 | 8.8 | 348 | 7.3 | 1,703 | 9.2 | 81 | 14.0 | 27 | 39.9 |
| OR | 1,798 | 10.2 | 631 | 5.2 | 1,124 | 11.2 | 8 | 8.3 | 35 | 20.2 |
| WA,E | 742 | 10.0 | 298 | 2.4 | 426 | 13.0 | 9 | - | 9 | 20.1 |
| WA,W | 2,955 | 6.2 | 821 | 2.4 | 2,083 | 7.7 | 14 | 16.2 | 37 | - |
| GUAM | 26 | 16.8 | 6 | - | 14 | 18.4 | 6 | - | 0 | - |
| NMI | 27 | 32.1 | 21 | 21.1 | 4 | - | 2 | - | 0 | - |
| **10TH** | **8,535** | **8.5** | **2,314** | **5.4** | **5,038** | **8.5** | **1,015** | **13.8** | **168** | **23.1** |
| CO | 2,611 | 6.3 | 817 | 4.2 | 1,606 | 6.3 | 125 | 18.0 | 63 | 22.7 |
| KS | 1,272 | 7.8 | 378 | 5.0 | 772 | 6.3 | 102 | 18.5 | 20 | 25.8 |
| NM | 910 | 8.9 | 345 | 6.9 | 358 | 9.3 | 189 | 11.9 | 18 | 25.4 |
| OK,N | 739 | 11.9 | 56 | 3.3 | 656 | 12.2 | 18 | 21.8 | 9 | - |
| OK,E | 384 | 11.3 | 209 | 11.0 | 161 | 11.2 | 10 | 14.3 | 4 | - |
| OK,W | 1,178 | 8.9 | 280 | 3.9 | 470 | 8.5 | 406 | 12.1 | 22 | 14.3 |
| UT | 1,232 | 11.0 | 161 | 6.8 | 963 | 10.8 | 84 | 12.1 | 24 | 18.7 |
| WY | 209 | 10.8 | 68 | 5.9 | 52 | 6.8 | 81 | 12.6 | 8 | 39.1 |
| **11TH** | **25,438** | **7.3** | **2,197** | **3.9** | **21,226** | **7.2** | **1,720** | **12.7** | **295** | **19.3** |
| AL,N | 2,576 | 8.6 | 78 | 2.5 | 2,441 | 8.5 | 25 | 25.9 | 32 | 20.9 |
| AL,M | 650 | 9.9 | 59 | 2.8 | 536 | 8.5 | 43 | 16.9 | 12 | 20.8 |
| AL,S | 568 | 8.0 | 110 | 2.8 | 439 | 8.3 | 12 | 16.5 | 7 | - |
| FL,N | 1,378 | 6.7 | 43 | 2.3 | 1,315 | 6.9 | 8 | - | 12 | 22.9 |
| FL,M | 8,004 | 10.8 | 441 | 4.7 | 7,351 | 10.9 | 129 | 18.5 | 83 | 20.0 |
| FL,S | 6,772 | 6.7 | 586 | 3.7 | 5,997 | 5.0 | 82 | 12.0 | 107 | 16.3 |
| GA,N | 4,171 | 6.7 | 440 | 2.6 | 2,298 | 5.0 | 1,408 | 11.6 | 25 | 24.9 |
| GA,M | 753 | 9.3 | 239 | 6.1 | 503 | 10.8 | 1 | - | 10 | 20.8 |
| GA,S | 566 | 8.1 | 201 | 6.6 | 346 | 9.6 | 12 | 26.4 | 7 | - |

NOTE: Median time intervals are not computed when fewer than 10 cases reported. This table excludes land condemnations, prisoner petitions, deportation reviews, recovery of overpayments, and enforcement of judgments.
Includes cases filed in previous years as consolidated cases that thereafter were severed into individual cases. For fiscal years prior to 2001, this table included data on recovery of overpayments and enforcement of judgments.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC., | § § § § § | |
| Defendants. | § | |

## DECLARATION OF ABEER DUBEY
## IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

I, Abeer Dubey, declare under 28 U.S.C. § 1746:

1.      I am an employee of Google Inc. ("Google") and I work at Google's headquarters in Mountain View, California. I have been a Google employee since 2006.

2.      I provide this declaration in support of Google's motion to transfer venue to the United States District Court for the Northern District of California. I submit this declaration based upon my knowledge of the corporate structure of Google and my investigation of the location of witnesses and evidence relevant to Google's development of the Android platform.

3.      The Complaint accuses Google of directly and indirectly infringing certain claims of United States Patent Nos. 6,037,937, 6,463,131, and 6,765,591. I have made efforts to identify the location of persons with relevant technical knowledge about the accused instrumentalities, as well as the location of persons with relevant business and financial information. I have also made efforts to identify the location of documents and other evidence relevant to this action. As discussed below, the Northern District of California is a significantly more convenient forum than the Eastern District of Texas for most Google witnesses likely to testify in this action, and all relevant documents and evidence are accessible from Google's headquarters in the Northern District.

4.      Google has been headquartered in the Northern District of California since its founding in 1998. Since 2003, it has been headquartered in Mountain View, California, in the Northern District of California.

5.      Prior to its acquisition by Google in 2005, Android Inc. was headquartered in Palo Alto, California, in the Northern District of California. Since acquiring Android Inc., Google has principally developed the Android platform at Google's headquarters in Mountain View.

2

Google's ongoing development efforts, operations, and records regarding Google's Android platform are also predominantly based in Mountain View.

6.      Google's Mountain View headquarters is the strategic center of Google's business.  Google's Chief Executive Officer and Executive Chairman are based in Mountain View, California.  Decisions related to Google's overall business are made in Mountain View, California, including most significant engineering, sales, and marketing decisions related to Google's Android platform.

7.      Google engineers with relevant technical knowledge of the Android platform are also predominantly located in Mountain View, as are Google employees familiar with the business and financial aspects of the Android platform and Google's Nexus products.

8.      As of January, 2014, there are approximately 850 people in the group that develops the Android platform.  Of these, over 200 are outside of the United States.  Of the approximately 630 United States-based employees in this group, more than 85% work in the San Francisco Bay Area.  This group is led by Hiroshi Lockheimer, Vice President of Engineering, who works in Mountain View, California.

9.      Jon Gold, a Finance Manager with knowledge of financial information related to Google's Android platform, works in Mountain View, California.

10.     In April 2012, Google opened a small office to house temporarily a handful of employees in Frisco, Texas.  None of the employees at this location worked on the Android platform.  This temporary office has been vacant since November 2013.  All Google hardware was removed from the temporary office in December 2013.  Google now has no offices or facilities in the Eastern District of Texas.  Google does maintain a small office in Austin, Texas, in the Western District of Texas.  The Google employees in the Austin office are not involved

3

**– A670 –**

with the development or management of the work on any of the accused instrumentalities

identified in the Complaint, and are instead predominantly involved with Google's enterprise

sales group.

11.     I have investigated this issue, and am currently aware of no Google employees

with relevant knowledge regarding any of the accused instrumentalities identified in the

Complaint working in Google's facilities in Texas or in the Eastern District of Texas.  I am also

aware of no Google employees that work on Android in the Eastern District of Texas.

12.     All or nearly all of the documents related to Google's Android platform are

located in Mountain View, California, or are stored on Google's secure servers, which are

accessible and managed from Mountain View.  These documents include technical documents

related to Google's Android platform, as well as documents related to Google's operations,

marketing, financials, and customer-service concerning these products.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

March 20 , 2014, in Mountain View, California.

_____
Abeer Dubey

4

**– A671 –**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that all counsel of record have consented to electronic service and are

being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-

5(a)(3) on March 21, 2014.

/s/ *J. Mark Mann*
J. Mark Mann

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC., | § § § § § | |
| Defendants. | § § § | |

DECLARATION OF B. J. KANG
IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE,
TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

00134316

강병진00134316TELE|Global PP그룹(무선)••252123231  20140321131133

I, B. J. Kang, hereby declare as follows:

     1.     I am an employee of Samsung Electronics Co., Ltd. ("SEC").  More specifically, I am a Director of SEC's Smartphone Product Planning Group and am responsible for various aspects of product planning for SEC's GSM mobile phones.  I am familiar with certain aspects of the work of SEC's subsidiaries, Samsung Telecommunications America Inc. ("STA") and Samsung Electronics America, Inc. ("SEA") discussed herein (SEC, STA, and SEA, hereafter collectively referred to as Samsung).  I have personal knowledge of the following facts or access to information and records allowing me to confirm these facts.

     2.     SEC is a corporation organized and existing under the laws of South Korea.  SEC's principal place of business is at 416 Maetan-3dong, Yeongtong-gu, Suwon-City, Gyeonggi-do 443-742, Korea.

     3.     It is my understanding that Plaintiffs Rockstar Consortium and MobileStar accuse Samsung of patent infringement based on "certain mobile communication devices having a version (or an adaption thereof) of Android operating system," including "Samsung's Galaxy family of smart phones, including the Galaxy S III and Captivate (Galaxy S), and its Galaxy family of tablets, including the Galaxy Tab 8.9."  I will refer to the accused smart phones and tablets as the "accused devices."

     4.     SEC manufactures the accused devices outside the United States.  No Samsung cell phones or tablets are manufactured in the United States.  Neither STA nor SEA manufactures Samsung cell phones or tablets.

     5.     Samsung does not operate any retail stores in the United States and does not conduct any retail operations in the United States.  Samsung does not sell the accused devices directly to any consumer in the United States.  Samsung does not ship its phones directly to any individual retail store in the United States.  With limited exceptions, Samsung also does not ship

1

– A674 –

its tablets directly to any individual retail store in the United States.  Samsung cell phones and tablets are not available for direct purchase in the United States through Samsung's websites.

6.   The vast majority of Samsung's employees are located in Korea.

7.   The vast majority of planning, design, and development of the accused devices would be done by SEC engineers in Korea.

8.   The vast majority of Samsung's records relating to the design, manufacture, and operation of the accused devices would be located in Korea.

9.   Samsung works with defendant Google, which is located in Mountain View, California, on issues related to the accused devices.

10.  It is my understanding that the vast majority of the Samsung employees who possess knowledge likely relevant to the present case, including those knowledgeable about Samsung's phones and tablets with the Android Operating System, live and work in South Korea.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct based on my own personal knowledge.

Executed on March 21, 2014, in Suwon, South Korea.

_____

B. J. Kang

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 21, 2014.

/s/ *J. Mark Mann*
J. Mark Mann

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND<br>MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG TELECOMMUNICATIONS<br>AMERICA, LLC, GOOGLE INC., | § § § § § § | |
| Defendants. | § § | |

**DECLARATION OF DALE JACHLEWSKI
IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE,
TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

I, Dale Jachlewski, declare under 28 U.S.C. § 1746:

      1.     I am a librarian at Quinn Emanuel Urquhart & Sullivan, LLP, counsel to Google

Inc. ("Google") in this action.  I provide this declaration in support of Google's motion to

transfer venue to the United States District Court for the Northern District of California.

      2.     Using public records obtained through LexisNexis SmartLinx, I verified the

current home addresses of the following individuals:  Leslie J. Arrow, Prakash C. Banthia, Pete

Billington, Nicholas Michael Brailas, Stephen P. Capps, Srikumar N. Chari, Dean C. Cheng,

Patrick Chiu, Christopher D. Coley, Judy Dere, Ofer Doitel, Norman W. Finn, Mitchell D.

Forcier, Edward H. Frank, James Arthur Gosling, Ajay Gupta, John H. Hart, Nicolle Henneuse,

William Herman, Roberto Irribarren, Lynne Marie Izbicki, Bernard R. James, Scott A. Jenson,

Masoud M. Kamali, Snehal G. Karia, Leon Leong, John C. Liu, Quentin C. Liu, Ravi

Manghirmalani, Keith McCloghrie, Thomas P. Moran, Umesh Muniyappa, Alampoondi Eswaran

Natarajan, Ilan Raab, W. Paul Sherer, Daniel Simone, Kamran Sistanizadeh, Gregory D. Skinner,

Michael C. Tchao, Michael Terzich, Ashish Thanawala, Allan Thomson, Christopher Young,

and Tom Ziola.

      3.     According to the results returned by SmartLinx, each of these individuals

currently resides in California.  The complete results contain personally identifiable information

such as home addresses and phone numbers, so I have not included them here.  I will provide

copies of these results to the Court and to counsel for Plaintiffs upon request.  The city and state

of each individual I located is:

| | |
|---|---|
| Leslie J. Arrow | Rancho Mirage, CA |
| Prakash C. Banthia | Cupertino, CA |
| Pete Billington | San Rafael, CA |
| Nicholas Michael Brailas | San Jose, CA |
| Stephen P. Capps | San Carlos, CA |
| Srikumar N. Chari | Cupertino, CA |
| Dean C. Cheng | Fremont, CA |
| Patrick Chiu | Mountain View, CA |
| Christopher D. Coley | Morgan Hill, CA |
| Judy Dere | Saratoga, CA |
| Ofer Doitel | Woodside, CA |
| Norman W. Finn | Livermore, CA |
| Mitchell D. Forcier | Walnut Creek, CA |
| Edward H. Frank | San Francisco, CA |
| James Arthur Gosling | Redwood City, CA |
| Ajay Gupta | Mountain View, CA |
| John H. Hart | Saratoga, CA |
| Nicolle Henneuse | San Rafael, CA |
| William Herman | Berkeley, CA |
| Roberto Irribarren | Fremont, CA |
| Lynne Marie Izbicki | Los Altos, CA |
| Bernard R. James | Mountain View, CA |
| Scott A. Jenson | Palo Alto, CA |
| Masoud M. Kamali | San Francisco, CA |
| Snehal G. Karia | Fremont, CA |
| Leon Leong | Palo Alto, CA |
| John C. Liu | Cupertino, CA |
| Quentin C. Liu | San Jose, CA |
| Ravi Manghirmalani | Fremont, CA |
| Keith McCloghrie | Fortuna, CA |
| Thomas P. Moran | Portola Valley, CA |
| Umesh Muniyappa | Sunnyvale, CA |
| Alampoondi Eswaran Natarajan | Fremont, CA |
| Ilan Raab | Cupertino, CA |
| W. Paul Sherer | Danville, CA |
| Daniel Simone | Pleasanton, CA |
| Kamran Sistanizadeh | Los Altos, CA |
| Gregory D. Skinner | Mountain View, CA |
| Michael C. Tchao | San Francisco, CA |

2

| Michael Terzich | San Jose, CA |
| Ashish Thanawala | San Jose, CA |
| Allan Thomson | Pleasanton, CA |
| Christopher Young | Boulder Creek, CA |
| Tom Ziola | Menlo Park, CA |

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 20, 2014, in Los Angeles, California.

Dale Jachlewski

3

**– A680 –**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record have consented to electronic service and are

being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-

5(a)(3) on March 21, 2014.

/s/ *J. Mark Mann*
J. Mark Mann

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | §<br>§<br>§<br>§ | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | §<br>§ | **JURY TRIAL DEMANDED** |
| v. | §<br>§<br>§ | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC., | §<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§<br>§ | |

**[PROPOSED] ORDER
GRANTING DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE,
TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

Before the Court is Defendants' Motion to Stay or, In The Alternative, to Transfer to The Northern District of California (the "Motion"). Upon consideration of the Motion, the relief requested therein, and the relevant facts, evidence, and arguments of the parties, the Court finds that the Motion should be and hereby is GRANTED. This case is hereby stayed pending resolution of *Google Inc. v. Rockstar Consortium US LP*, No. 13-5833 (N.D. Cal.).

**– A682 –**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC.,<br><br>Defendants. | § § § § § § § § § § § § § § § | Civil Action No. 13-cv-0900-JRG<br><br>**JURY TRIAL DEMANDED** |

**CERTIFICATE OF CONFERENCE FOR
DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE,
TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

I hereby certify that on March 19, 2014, counsel for the parties conferred regarding

Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of

California (Docket No. 52), and thereby complied with the meet and confer requirement in Local

Rule CV-7(h).  Rockstar opposes this motion.

/s/ Kristin J. Madigan
**Kristin J. Madigan**

Dated:  March 24, 2014

Respectfully submitted,

/s/ *J. Mark Mann*

| | |
|---|---|
| J. Mark Mann (State Bar No. 12926150) | J. Mark Mann (State Bar No. 12926150) |
| mark@themannfirm.com | mark@themannfirm.com |
| G. Blake Thompson (State Bar No. 24042033) | G. Blake Thompson (State Bar No. 24042033) |
| blake@themannfirm.com | blake@themannfirm.com |
| MANN | TINDEL | THOMPSON | MANN | TINDEL | THOMPSON |
| 300 West Main Street | 300 West Main Street |
| Henderson, Texas  75652 | Henderson, Texas  75652 |
| (903) 657-8540 | (903) 657-8540 |
| (903) 657-6003 facsimile | (903) 657-6003 facsimile |

| | |
|---|---|
| Charles K. Verhoeven (Cal. Bar. No. 170151) | Charles K. Verhoeven (Cal. Bar. No. 170151) |
| Sean Pak (Cal. Bar. No. 2190323) | Sean Pak (Cal. Bar. No. 219032) |
| quinn-samsung-e.d.tex.-13-0900 | Amy H. Candido (Cal. Bar No. 237829) |
|     @quinnemanuel.com | Matthew S. Warren (Cal. Bar No. 230565) |
| QUINN EMANUEL URQUHART | quinn-google-e.d.tex.-13-00900 |
|    & SULLIVAN, LLP |     @quinnemanuel.com |
| 50 California Street, 22nd Floor | QUINN EMANUEL URQUHART |
| San Francisco, California 94111 |    & SULLIVAN, LLP |
| (415) 875-6600 | 50 California Street, 22nd Floor |
| (415) 875-6700 facsimile | San Francisco, California  94111 |
| | (415) 875-6600 |
| Kevin P.B. Johnson (Cal. Bar No. 177129) | (415) 875-6700 facsimile |
| QUINN EMANUEL URQUHART | |
|    & SULLIVAN, LLP | *Attorneys for Defendant Google Inc.* |
| 555 Twin Dolphin Dr., 5th Floor | |
| Redwood Shores, California  94065 | |
| (650) 801-5000 | |
| (650) 801-5100 facsimile | |

Joseph Milowic III (NY Bar. No. 4,622,221)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000
(212) 849-7100 facsimile

*Attorneys for Defendants Samsung Electronics, Co., Ltd.,*
*Samsung Electronics America, Inc., and Samsung*
*Telecommunications America, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record have consented to electronic service and are

being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-

5(a)(3) on March 24, 2014.

/s/ *J. Mark Mann*
**J. Mark Mann**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and | § | |
| MOBILESTAR TECHNOLOGIES LLC, | § | |
| | § | |
| PLAINTIFFS, | § | |
| v. | § | |
| | § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., SAMSUNG | § | JURY TRIAL REQUESTED |
| TELECOMMUNICATIONS AMERICA, | § | |
| LLC and GOOGLE INC., | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR
TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER TO
THE NORTHERN DISTRICT OF CALIFORNIA (DKT. NO. 52)**

## TABLE OF CONTENTS

I. .........INTRODUCTION ...............................................................................................1

II. ........LEGAL STANDARD...........................................................................................1

III........STATEMENT OF FACTS ....................................................................................1

      A.      Nortel, Rockstar, and Mobilestar's Longstanding Ties to the EDTX ...........................................................................................1

      B.      Google's Connections to the Eastern District of Texas ...........................................2

      C.      The EDTX is Samsung's Home Forum ................................................3

      D.      Rockstar Files this Action, Google Forum Shops to the NDCA ..................................................................................................4

IV. ......DEFENDANTS' REQUEST FOR A STAY SHOULD BE DENIED.................................................................................................4

      A.      This Action is Not a Manufacturer-Customer Suit ..................................................4

      B.      The NDCA Action Would Not Resolve the "Major Issues" in This Case.....................................................................................5

      C.      The Customer-Suit Exception Does Not Apply Because Google—the Purported "Manufacturer"—Is A Party to the First Filed Action ................................................................................6

      D.      The NDCA Lacks Personal Jurisdiction Over Rockstar and MobileStar.............................................................................................6

V.........DEFENDANTS' MOTION FOR TRANSFER SHOULD BE DENIED.................................................................................................6

      A.      Rockstar's Meaningful, Longstanding Connections to the EDTX ...........................................................................................6

      B.      Each Of The Private-Interest Factors Weigh Heavily Against Transfer.....................................................................................8

            1.      Google Cannot Show That Access to Sources of Proof Favors Transfer ....................................................................8

            2.      The Availability of Compulsory Process Favors Plaintiffs......................................................................................9

i

3.      The Cost of Attendance for Willing Witnesses
        Favors Plaintiffs ........................................................................................12

4.      The Judicial Economy Factor Favors Plaintiffs.........................................13

C.      The Public Interest Factors Favor Venue in the EDTX .........................................14

D.      The "Similar" Cases Relied on by Defendants Differ from
        this Case ..................................................................................................................15

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adrain v. Genetec Inc.*,
  2009 U.S. Dist. LEXIS 86855 (E.D. Tex. Sept. 22, 2009) .....................................13

*Blue Spike, LLC v. Texas Instruments, Inc.*,
  No. 12-558, Dkt. 16 at 5 (E.D. Tex. Mar. 13, 2014)............................................15

*Bright Response LLC v. SAS Institute, Inc.*,
  No. 2:12-cv-280-JRG, Dkt. 28 at 5-8 (E.D. Tex. March 26, 2013)..........................8

*Continental Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960).............................................................................................13

*Core Wireless Licensing v. Apple, Inc.*,
  2013 U.S. Dist. LEXIS (E.D. Tex. Feb. 22, 2013) .....................................................9

*Ctr. One v. Vonage Holdings Corp.*,
  2009 U.S. Dist. LEXIS 69683 (E.D. Tex. Aug. 10, 2009) .....................................13

*Drew Techs., Inc. v. Robert Bosch, LLC*,
  2012 U.S. Dist. LEXIS 11489 (E.D. Mich. Jan. 31, 2012)......................................6

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
  2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) .....................................7

*Ericsson Inc. v. Samsung Elecs. Co., LTD.*,
  Case 6:12-cv-00894-LED, Dkt. 72 ..........................................................................3

*Fractus, SA. v. Samsung Elecs. Co.*,
  2010 U.S. Dist. LEXIS 70443 (E.D. Tex. June 10, 2010).........................................8

*Geotag, Inc. v. Aromatique, Inc.*,
  2013 U.S. Dist. LEXIS 173481 (E.D. Tex. Jan. 14, 2013)....................................11

*Ho Keung TSE v. Google, Inc.*,
  2012 U.S. Dist. LEXIS 176509 (E.D. Tex. Dec. 13, 2012)....................................14

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)............................................................................11

*In re Apple Inc.*,
  456 F. App'x 907 (Fed. Cir. 2012) .......................................................................14

*In re Hoffman-La Roche*,
  587 F.3d 1333 (Fed. Cir. 2009)............................................................................14

iii

**– A689 –**

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ................................................................................................7

*In re Toyota Motor Corp.*,
  No. 2014-113, slip op. (Fed. Cir. April 3, 2014) .............................................................8, 10

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) ..............................................................................................13

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010) ............................................................................................8, 7

*Ingeniador, LLC v. Adobe Sys.*,
  2014 U.S. Dist. LEXIS 3308, at *4-5 ....................................................................................15

*InMotion Imagery Techs., LLC v. Imation Corp.*,
  2013 U.S. Dist. LEXIS 41830 (E.D. Tex. Mar. 26, 2013) (Gilstrap, J.) ..............................8, 9

*Internet Machs. LLC v. Alienware Corp.*,
  2011 U.S. Dist. LEXIS 66207 (E.D. Tex. Jun. 7, 2011) ...........................................................9

*Interwoven, Inc. v. Vertical Computer Sys.*,
  2011 U.S. Dist. LEXIS 49428 (N.D. Cal. May 2, 2011) ...............................................3, 11, 14

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) ................................................................................................5

*Lodsys v. Brother Int'l Corp.*,
  2013 U.S. Dist. LEXIS 51336 (E.D. Tex. Jan. 14, 2013) .........................................................5

*Microsoft Corp. v. Commonwealth Sci. & Indus. Res. Org.*,
  2007 U.S. Dist. LEXIS 91550 (E.D. Tex. Dec. 13, 2007) ........................................................5

*MobileMedia Ideas LLC v. HTC Corp.*,
  2012 U.S. Dist. LEXIS 62153 (E.D. Tex. May 3, 2012) ....................................................2, 14

*My Health, Inc. v. Click4Care, Inc.*,
  2014 U.S. Dist. LEXIS 36850 (E.D. Tex. Mar. 20, 2014) ........................................................8

*Personal Audio LLC v. CBS Corp.*,
  No. 2:13-CV-270-JRG-RSP, Dkt. 41 at 13 (E.D. Tex. Mar. 20, 2014) ...................................8

*PersonalWeb Techs., LLC v. NEC Corp.*,
  No. 6:11-cv-655, Dkt. 74 at 16 (E.D. Tex. Mar. 21, 2013) ....................................................10

*Pragmatus Telecom, LLC v. Neiman Marcus Group, Inc.*,
  2012 U.S. Dist. LEXIS 189149 (E.D. Tex. Nov. 20, 2012) ......................................................5

iv

**– A690 –**

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997)..................................................................................13

*RPost Holdings, Inc. v. StrongMail Sys.*,
   2013 U.S. Dist. LEXIS 116894 (E.D. Tex. Aug. 19, 2013) ...............................7, 10

*Samsung Elecs. Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd., et al*,
   2:05-CV-00440, Dkt. 4 at 2 (E.D. Tex. Nov. 11, 2005) ..........................................3

*Samsung Elecs. v. Sandisk Corp.*,
   9:02-CV-00058, Dkt. 20 at 2 (E.D. Tex. Apr. 3, 2002)............................................3

*Samsung Elecs. v. Sandisk Corp.*,
   9:02-CV-00058, Dkt. 36 (E.D. Tex. Apr. 24, 2002)..................................................3

*Secure Axcess, LLC v. Nintendo of Am., Inc.*,
   2014 U.S. Dist. LEXIS30115 (E.D. Tex. Mar. 7, 2014) (Gilstrap, J.) .....................6

*SimpleAir, Inc. v. Microsoft Corp.*,
   2:11-cv-416-JRG, Dkt. 416 at 15-16 (E.D. Tex. Aug. 9, 2013) (Gilstrap, J.) .........3

*Solid State Solutions, Inc. v. Stec, Inc.*,
   2:11-cv-391-JRG-RSP, at 115:3-6 (E.D. Tex. Jan. 18, 2013) ................................11

*Spread Spectrum Screening LLC v. Eastman Kodak*,
   657 F.3d 1349 (Fed. Cir. 2011)..................................................................................5

*Tex. Data Co., LLC v. Target Brands, Inc.*,
   771 F. Supp. 2d 630 (E.D. Tex. 2011) .....................................................................10

*Thomas Swan & Co. v. Finisar Corp.*,
   2014 U.S. Dist. LEXIS 773 (E.D. Tex. Jan. 6, 2014)...........................6, 11, 13, 14

*Touchscreen Gestures v. HTC*,
   EDTX. No. 12-0261, Dkt. 17 at 1, 6, 9 (E.D. Tex. Mar. 27, 2013).......................15

*U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*,
   2013 U.S. Dist. LEXIS 47384 (E.D. Tex. Apr. 2, 2013).........................................8

*Virtualagility, Inc. v. Salesforce.com, Inc.*,
   2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014) (Gilstrap, J.)......1, 5, 9, 14

*Wi-Lan Inc. v. HTC Corp.*,
   2013 U.S. Dist. LEXIS 99635 (E.D. Tex. July 17, 2013) (Gilstrap, J.) .................10

**STATUTES**

28 U.S.C. §§ 1391 and 1400 ........................................................................................3

v

28 U.S.C. §§ 1391(b)-(c) .............................................................................................................3

**– A692 –**

## I.       INTRODUCTION

Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC (collectively "Samsung") and Google, Inc. bear the burden of proof to show that this case should be transferred to the Northern District of California ("NDCA"), and they cannot make such a showing. Not only does Defendants' motion to stay or transfer to the NDCA (the "Motion") ignore Plaintiffs Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC's deep ties to the Eastern District of Texas ("EDTX"), it also omits any discussion of Samsung's longstanding ties to the EDTX. Moreover, this is not a manufacturer/customer suit. The EDTX is the most convenient venue for this suit.[1]

## II.       LEGAL STANDARD

This Court is well acquainted with the legal standards governing the transfer analysis. *See Virtualagility, Inc. v. Salesforce.com, Inc.*, 2014 U.S. Dist. LEXIS 12015, at *4-6 (E.D. Tex. Jan. 31, 2014) (Gilstrap, J.).

## III.       STATEMENT OF FACTS

### A.       Nortel, Rockstar, and Mobilestar's Longstanding Ties to the EDTX

*Nortel, Rockstar, and the Patents-in-Suit.* Plaintiffs are the assignees of intellectual property that resulted from research and development performed by Nortel. For twenty years, Nortel's U.S. headquarters was in Richardson, Texas and Nortel's licensing activities were conducted out of Richardson. Powers Decl. ¶ 8. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Google made an initial $900 million bid. Hearn Decl. ¶ 7. Google ultimately lost the auction to Rockstar Bidco LP, which paid $4.5 billion. *Id*. ¶ 7.

Rockstar[2] owns two of the patents-in-suit and previously owned the other five, before assigning them to MobileStar. Powers Decl. ¶ 5. Rockstar is MobileStar's parent entity and

---

[1] Should the Court be inclined to grant Samsung's and Google's Motions, Plaintiffs request that they be permitted discovery on the actual locations of Samsung's and Google's relevant employee witnesses and other venue facts.

[2] The equity owners of Rockstar include: Apple, BlackBerry, Ericsson, Microsoft, and Sony. Powers Decl. ¶ 10. Ericsson's U.S. headquarters are located within the EDTX; BlackBerry is in the Dallas-area, within just miles of the EDTX; Microsoft is in Seattle; Apple is in the NDCA; and Sony is in New Jersey. *See* Exs. 26-27.

1

**– A693 –**

maintains its principal place of business in Plano, Texas. Powers Decl. ¶¶ 7, 20. MobileStar owns five of the patents-in-suit and is the exclusive licensee (from Rockstar) of the other two patents. *Id.* ¶ 5. MobileStar maintains its place of business at the same Plano address. Ex. 1.

**Rockstar and MobileStar's Roots in the EDTX.** When Rockstar Bidco LP acquired the patents-in-suit from Nortel in 2011, the Rockstar entities also acquired many former Nortel employees responsible for licensing and prosecuting the Nortel patents. Powers Decl. at ¶ 19. Rockstar leased Nortel's Richardson office space where many of Nortel's patent files were already located, including files relevant to the patents-in-suit. *Id.* ¶¶ 20, 29. In August 2012, after Nortel sold its Richardson campus during its bankruptcy proceedings, Rockstar signed a seven-year lease for its current offices in nearby Plano, within the EDTX. *Id.* ¶ 20. Rockstar's Plano office is the company's only U.S. office, although some employees also work out of their homes. *Id.* ¶ 23. The office contains 8,125 square feet, with 10 assigned offices, 2 guest offices, 4 conference rooms, 7 work areas, and storage space. *Id.* ¶ 21. Rockstar has 15 full-time employees in the U.S., including five full-time employees in Plano and others who spend significant time there. *Id.* ¶ 22. No employees live or work in California. *Id.* ¶ 25. Eight of the U.S.-based employees likely have relevant information about the patents-in-suit; three of them work full-time out of the Plano office, one lives in Pennsylvania, one lives in Colorado, one lives in Massachusetts, one lives in North Carolina, and one lives in Florida.[3] *Id.* ¶ 26-28.

### B.   Google's Connections to the Eastern District of Texas

Although Google notes that it closed its office previously located in the EDTX, *see* Dkt. 52-29, Dubey Decl. ¶ 10, Google maintains at least two Texas offices, in Dallas (which Google fails to mention, approximately 20 miles from the EDTX) and Austin.[4] Exs. 2, 3. Google's

---

[3] Additionally, two Rockstar board members live and work in EDTX or nearby. Kasim Alfalahi, a Rockstar Board member and Chief IP officer at Ericsson, works in the EDTX, across the street from Rockstar's Plano office. Powers Decl. ¶ 27. Randy Mishler, another Rockstar Board member and Senior Director of IP Licensing at BlackBerry, works in nearby Irving, Texas. *Id.* ¶ 28. Mr. Mishler is also a former Nortel patent attorney. *Id.*

[4] In 2012, Google opened an office in Frisco, Texas (in the EDTX). Dkt. 52-29, Dubey Decl. ¶ 10. Just a year later, Google appears to have relocated that office to Dallas (in the NDTX). Ex. 2. Google offers no explanation for the move. *See MobileMedia Ideas LLC v. HTC Corp.*, 2012 U.S. Dist. LEXIS 62153, at *7-12 (E.D. Tex. May 3, 2012) (denying motion to transfer when alleged infringer closed facilities in EDTX and reincorporated in Washington state after receiving notice of infringement).

**– A694 –**

Austin office focuses on developer relations and technical solutions, among other issues. Ex. 4. Google's Dallas office contains departments for design and engineering, as well as sales. Ex. 5.

### C.    The EDTX is Samsung's Home Forum

*Samsung is Located in Richardson and Dallas.* Defendants' Motion focuses almost entirely on Google, with only one cursory reference to Samsung's U.S. operations. Dkt. 52 at 14. But Samsung Telecommunications America, LLC has its headquarters in Richardson—within the EDTX. Ex. 6. From the EDTX, Samsung "researches, develops and markets a variety of personal and business products throughout North America including handheld wireless phones, wireless communications infrastructure systems and enterprise communications systems." Ex. 7. Samsung also has an office in Dallas. The Dallas office appears to be heavily involved with the accused products: according to Samsung's website, the "Dallas Technology Labs (DTL) leads Samsung's standardization initiatives in the IEEE, ITU, 3GPP, WiMAX and other major forums." Ex. 8. Samsung's Dallas labs employ over 150 engineers, including Android software engineers. *Id.* Indeed, Samsung's Dallas Technology Labs is "highly regarded" by Samsung "as the thought leader and innovation engine for its wireless business units." *Id.*

*Samsung Regularly Avails Itself of the EDTX Forum.* Because the EDTX is Samsung's home forum, Samsung is no stranger to litigating here. Indeed, as a plaintiff Samsung frequently selects the EDTX as its preferred venue.[5] Samsung has even opposed motions to transfer from the EDTX to the NDCA.[6] Because Samsung has extensively availed itself of litigating in the EDTX, it cannot now claim that venue here is inconvenient. And, EDTX and NDCA courts have each recognized that the EDTX is a convenient forum for litigation against Samsung.[7]

---

[5] *See, e.g.,* Ex. 9, *Samsung Elecs. Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd., et al,* 2:05-CV-00440, Dkt. 4 at 2 (E.D. Tex. Nov. 11, 2005) ("[v]enue is proper in [the EDTX] under 28 U.S.C. §§ 1391 and 1400. . . ."); Ex. 10, *Samsung Elecs. v. Sandisk Corp.,* 9:02-CV-00058, Dkt. 20 at 2 (E.D. Tex. Apr. 3, 2002), ("venue over Samsung's claims is proper in [the EDTX] pursuant to 28 U.S.C. §§ 1391(b)-(c)"). Not only has Samsung filed suit in the EDTX on multiple occasions, it has not challenged venue in the EDTX in other litigation. *See, e.g.,* Ex. 11, *Ericsson Inc. v. Samsung Elecs. Co., LTD.,* Case 6:12-cv-00894-LED, Dkt. 72 ¶ 7 (E.D. Tex. Mar. 18, 2013).

[6] *See, e.g.,* Ex. 12, *Samsung Elecs. v. Sandisk Corp.,* 9:02-CV-00058, Dkt. 36 (E.D. Tex. Apr. 24, 2002) (Samsung motion to seal its opposition to Sandisk's motion to transfer venue to the NDCA).

[7] *See, e.g.,* Ex. 13, *SimpleAir, Inc. v. Microsoft Corp.,* 2:11-cv-416-JRG, Dkt. 416 at 15-16 (E.D. Tex. Aug. 9, 2013) (Gilstrap, J.) (denying motion to transfer defendants, including Samsung and Google, to the NDCA); *Interwoven,*

3

D.      **Rockstar Files this Action, Google Forum Shops to the NDCA**

On October 31, 2013, Plaintiffs filed patent infringement lawsuits in the EDTX against ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE. Ex. 14. Rather than intervene in this case, Google filed its action for declaratory judgment in the NDCA. Ex. 15. On December 31, 2013, Plaintiffs added Google as a defendant to this case. Case No. 2:13-cv-00900, Dkt. 19.

IV.     **DEFENDANTS' REQUEST FOR A STAY SHOULD BE DENIED.**

A.      **This Action is Not a Manufacturer-Customer Suit**

Defendants misleadingly assert that this case is about Android.[8] *See* Dkt. 52 at 1, 5. While the accused devices each run different versions of the Android operating system, this case is *not* about Android. Of the seven patents at-issue in this case, *none* is alleged by Plaintiffs to read solely on functions or features found in Android software. *See, e.g.,* Ex. 18. In fact, the '551 patent covers only the hardware implementation within Samsung's and Google's accused products—it has no tie to Android. *See, id.*; Ex. 19. As to the other six patents at-issue, each covers the combination of hardware (designed solely by the original equipment manufacturers, like Samsung) with software. These patents require "sending,"[9] "receiving,"[10] "displaying,"[11] and "storing"[12]—functionality that occurs within hardware.[13]

Even if Plaintiffs' infringement allegations were focused on Android, as Defendants assert, their invocation of the "customer suit exception" to the first-to-file rule is still misplaced. While, as a general matter, litigation against the manufacturer of infringing goods takes

---

*Inc. v. Vertical Computer Sys.*, 2011 U.S. Dist. LEXIS 49428, at *15-16 (N.D. Cal. May 2, 2011) (finding that "[a]s to Samsung . . . there is ample reason to believe litigation in Texas would actually be *more* convenient than it would be in [California]. Samsung, after all, has substantial ties to the Eastern District of Texas. . . .").

[8] Android is an open-source software project managed by Google, but contributed to by many other entities and individuals, including Samsung, the defendants in the other cases, and members of the public. *See* Exs. 16, 17.

[9] Claims 14, 15, 19, 23, 24, 27, 28, and 31 of the '298; claims 1, and 5 of the '131.

[10] Claims 1, 2, 13 and 14 of the '937; claims 11, 12, 14, 15, 16, 19, 23, 24, 25, 27, 28, 29, 31, and 32 of the '298; claims 1, 4, 8, 21, and 33 of the '973; claims 1 and 5 of the '131; claim 17 of the '572; claim 1 of the '591.

[11] Claims 1- 3, 8-11, 13-15, 19, and 20-23 of the '937; claims 1-6, 8-12, 21, and 24-26 of the '973; claim 1 of the '591; claim 17 of the '572.

[12] Claims 17, 19, 23, and 30 of the '298; claim 20 of the '572.

[13] *See Microsoft Corp. v. Commonwealth Sci. & Indus. Res. Org.*, 2007 U.S. Dist. LEXIS 91550, at *10 (E.D. Tex. Dec. 13, 2007).

precedence over a suit against that manufacturer's customers, *see Spread Spectrum Screening LLC v. Eastman Kodak*, 657 F.3d 1349, 1357 (Fed. Cir. 2011), a stay is inappropriate when co-defendants are more than ordinary end users or resellers of the accused products.[14] As in *Virtualagility*, here Samsung is "far more than just an 'ordinary user' of the accused products." *Id.* While Defendants argue that "Android originates with Google" (Dkt. 52 at 5), the reality is that Android is an open-source software project with many non-Google contributors and each of the defendants, including Samsung, develops and contributes to the source code to create its own, unique version of the Android platform. *See* Exs. 17-16, 20, 44; Dkt. 52-30, Kang Decl. ¶ 9. Rockstar's infringement contentions (without having received discovery on the issue) reflect that each defendant makes proprietary, extensive modifications to the Android code for implementation in its own mobile devices—and those changes are material to the claims of infringement in this case.[15] Additionally, Samsung's employment of many Android engineers suggests the scope and importance of its work on its own Android platform. *See* Ex. 22. Indeed, Samsung's extensive modifications to the Android code has been an ongoing source of contention between Google and Samsung. Ex. 23.

> **B.      The NDCA Action Would Not Resolve the "Major Issues" in This Case**

Defendants do not attempt to show how the NDCA Action (to which Samsung is not a party) would resolve the "major issues" in this case. *Spread Spectrum*, 657 F.3d at 1358; *see* Dkt. 52 at 4-5. Nor can they—Samsung has not agreed to be bound by the resolution of the NDCA Action (*i.e.* infringement and invalidity).[16] In any event, the NDCA Action cannot resolve the

---

[14] In *Virtualagility,* 2014 U.S. Dist. LEXIS 12015, at *6-8, this Court rejected the argument "that because [Defendant] is the sole maker of the accused . . . applications, [Defendant's] 'development, manufacturing and marketing' of these products are 'key evidence' in this litigation and should be the sole focus of this Court's venue analysis." Instead, this Court found that the co-defendant was "far more than just an 'ordinary user' of the accused products" based on the extent of the collaboration between the alleged customer and manufacturer. *See also Lodsys v. Brother Int'l Corp.*, 2013 U.S. Dist. LEXIS 51336, 43 (E.D. Tex. Jan. 14, 2013); *Pragmatus Telecom, LLC v. Neiman Marcus Group, Inc*., 2012 U.S. Dist. LEXIS 189149, at *7 (E.D. Tex. Nov. 20, 2012).

[15] Rockstar's infringement contentions reflect considerable differences between each defendants' implementation of the Android platform, suggesting that each defendant significantly customizes the Android platform for use in its own products. *See, e.g.*, Ex. 21.

[16] *See, e.g., Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1082 (Fed. Cir. 1989) (noting that GM had "not agreed to be bound by the Illinois decision or any injunction against Motorola"); *Pragmatus,* 2012 U.S. Dist. LEXIS 189149, at *8 (observing that "it appears there is still some indecision regarding agreements to be bound by the Defendants").

major, hardware-specific issues raised by Rockstar's infringement claims against Samsung.[17]

### C. The Customer-Suit Exception Does Not Apply Because Google—the Purported "Manufacturer"—Is A Party to the First Filed Action

Google relies heavily on one unreported case from Michigan. *See* Dkt. 52 at 5 (citing *Delphi Corp. v. Auto. Techs. Int'l, Inc.*, 2008 U.S. Dist. LEXIS 56463, at *5 (E.D. Mich. July 25, 2008)). But the same Michigan court has clarified that the customer-suit exception is inapplicable when, as is the case here, "the manufacturer not only can be, but is a party to the first-filed litigation[.]" *Drew Techs., Inc. v. Robert Bosch, LLC*, 2012 U.S. Dist. LEXIS 11489, at *12-16 (E.D. Mich. Jan. 31, 2012). Here a stay is inappropriate because Google is a party to the first-filed action and may "fully protect its interests" by defending in the EDTX. *Id.* at *12-16.

### D. The NDCA Lacks Personal Jurisdiction Over Rockstar and MobileStar

Finally, the Court should deny a stay because the NDCA lacks personal jurisdiction over Plaintiffs. Exs. 42, 43.

## V. DEFENDANTS' MOTION FOR TRANSFER SHOULD BE DENIED

Because Plaintiffs could have filed suit in the NDCA, the transfer analysis depends on the private and public interest factors with which this Court is familiar.[18]

### A. Rockstar's Meaningful, Longstanding Connections to the EDTX

Plaintiffs' principal place of business is in Plano. Contrary to Defendants' unsupported allegations, *see* Dkt. 52 at 7, the Plano office is not recent, ephemeral, or an artifact of litigation. It is a fully operational office with full-time employees doing substantial patent prosecution, licensing, and litigation support work. Powers Decl. at ¶ 23. For over a decade, Nortel prosecuted patents and ran programs to monetize patents (including the patents-in-suit) out of Richardson, less than a mile from the EDTX.[19] Today, Rockstar employs five full-time employees in the

---

[17] Even if resolution of the claims against Google would resolve the issues of infringement and invalidity against Samsung and the other hardware manufacturers (which it would not), it would not resolve the individualized questions of damages with respect to Samsung, ASUS, HTC, LG, ZTE, and Pantech. *See Secure Axcess, LLC v. Nintendo of Am., Inc.*, 2014 U.S. Dist. LEXIS30115, at *19-20 (E.D. Tex. Mar. 7, 2014) (Gilstrap, J.).

[18] *See, e.g., Thomas Swan & Co. v. Finisar Corp.*, 2014 U.S. Dist. LEXIS 773, at *4-6 (E.D. Tex. Jan. 6, 2014).

[19] Google attempts to make too much of the fact that Nortel's former office was not located in the EDTX—when it was located less than one mile from the EDTX. *See* Dkt. 52 at 8; Powers Decl. ¶ 8. But as the Court explained in

Plano office, including three patent attorneys and an office administrator. *Id.* ¶ 22. Rockstar's licensing and litigation activities conducted in the Plano office are within Rockstar's normal course of business. *Id.* Additionally, Rockstar's board meetings are held at the Plano office, as are its annual strategy sessions.[20] *Id.* ¶ 23.

Rockstar's meaningful ties to the EDTX are a far cry from the type of presence that courts consider ephemeral or an artifact of litigation.[21] Unlike the venue manipulation facts of *In re Zimmer* and *In re Microsoft*, here Rockstar has employees in the EDTX and it conducts its ordinary business in the EDTX.[22] *Id.* ¶ 22, 23; *see In re Microsoft Corp.,* 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer,* 609 F.3d at 1381. Rather, Rockstar's situation resembles cases where this Court has found that the plaintiff's ties to the EDTX to be part of a legitimate pursuit of business within the EDTX.[23] In *RPost Holdings*, the Court found that the Texas office of a Delaware company was not an artifact of litigation where a Vice President worked in the office, and the office had relevant documents related to sales. *RPost Holdings, Inc. v. StrongMail Sys.*, 2013 U.S. Dist. LEXIS 116894, at *8-9 (E.D. Tex. Aug. 19, 2013). Similarly, in *Eolas Technologies* the Court refused to consider a plaintiff's presence "recent and insubstantial" where its Chief Legal Officer lived and worked in the EDTX, most of the company's files were located in the EDTX, and the company conducted research in the EDTX. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 U.S. Dist. LEXIS 104125, at *20-21 (E.D. Tex. Sept. 28, 2010).

---

*Invensense, Inc. v. STMicroelectronics, Inc.*, it may consider "evidence extremely close by" the EDTX in the venue analysis. 2014 U.S. Dist. LEXIS 3311, at *6, 23 (E.D. Tex. Jan 1, 2010); *see also Thomas Swan*, 2014 U.S. Dist. LEXIS 773, at *9 (considering companies "within or immediately adjacent to EDTX").

[20] Defendants highlight the Canadian office, employees, and licensing letters for Rockstar Consortium Inc. *See* Dkt. 52 at 3-4. But Rockstar Consortium Inc.—which is not a party to this litigation—is a different (although affiliated) entity from Rockstar Consortium US LP, a plaintiff in this case. Powers Decl. ¶ 6.

[21] *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (suggesting that the record will reveal attempts at venue manipulation where a plaintiff's alleged place of business for purposes of the litigation "is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat . . .").

[22] This case also differs from the recent *In re Toyota* decision, where the plaintiff brought suit in the EDTX just five months after opening an office in the EDTX for venue purposes; here Rockstar moved to the EDTX from nearby Richardson after Nortel sold its office buildings as part of its bankruptcy proceedings. Powers Decl. ¶ 20; *see In re Toyota Motor Corp.*, No. 2014-113, slip op. at 2-3 (Fed. Cir. April 3, 2014).

[23] *See InMotion Imagery Techs., LLC v. Imation Corp.*, 2013 U.S. Dist. LEXIS 41830, at *5-14 (E.D. Tex. Mar. 26, 2013) (Gilstrap, J.); Ex. 24, *Bright Response LLC v. SAS Institute, Inc.*, No. 2:12-cv-280-JRG, Dkt. 28 at 5-8 (E.D. Tex. March 26, 2013).

7

**B.      Each Of The Private-Interest Factors Weigh Heavily Against Transfer**

      **1.      Google Cannot Show That Access to Sources of Proof Favors Transfer**

     *Google Fails to Describe its Sources of Proof with Specificity.* Google fails to meet its burden to "identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties." *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*, 2013 U.S. Dist. LEXIS 47384, at *7 (E.D. Tex. Apr. 2, 2013). Google argues that its documents are "*managed and maintained*" and are "*accessible*" from California. Dkt. 52 at 8; Dkt. 52-29 at ¶ 3 (emphasis added). The Dubey Declaration is likewise circumspect, stating that documents "are *available in* Mountain View . . . *or* are stored on Google's various secure servers, which *are accessible and ultimately managed from* Mountain View." Dubey Decl. ¶ 12 (emphasis added). Google never describes what those documents are, where it stores the documents, or whether other Google offices (including the ones in Texas) can "access" these documents. A casual reading of these statements "suggests more than is actually true."[24] Google uses "artful wording to avoid disclosing the actual location of relevant documents" and therefore fails to carry its burden with respect to the sources of proof.[25] As in *U.S. Ethernet Innovations*, "[p]roblematically, the Court is asked to presume the bulk of relevant evidence would come from the accused infringer, yet it has not been given the full picture as to the location of relevant sources of proof." 2013 U.S. Dist. LEXIS 47384, at *9.

     *Rockstar, Samsung, and Third-Parties' Sources of Proof Weigh Against Transfer.* Even wrongly assuming that almost all of Google's documents are in the NDCA, this factor still weighs against transfer. First, Defendants' Motion makes no mention of Samsung's sources of proof—which will be just as relevant as Google's documents. Samsung's sources of proof will likely be found at its Richardson headquarters in the EDTX.[26] Second, "significant sources of

---

[24] Ex. 25, *Personal Audio LLC v. CBS Corp.*, No. 2:13-CV-270-JRG-RSP, Dkt. 41 at 13 (E.D. Tex. Mar. 20, 2014).

[25] *My Health, Inc. v. Click4Care, Inc.*, 2014 U.S. Dist. LEXIS 36850, at *6 (E.D. Tex. Mar. 20, 2014) ("This Court routinely observes movants utilizing carefully worded statements to avoid disclosing key facts that disfavor their positions, especially in the context of a Motion to Transfer.").

[26] *See Fractus, SA. v. Samsung Elecs. Co*., 2010 U.S. Dist. LEXIS 70443, at *24 (E.D. Tex. June 10, 2010).

proof exist within EDTX at least as relates to the Plaintiff," because the documents related to the patents-in-suit are stored at Plaintiffs' Plano headquarters.[27] *InMotion Imagery Techs.,* 2013 U.S. Dist. LEXIS 41830, at *9. Third, courts also routinely look to third parties' documents. Here those may include documents from Rockstar equity owners BlackBerry and Ericsson, who reside in the Dallas area; the patents-in-suits' prosecuting attorneys who reside in Richardson and Irving; Samsung's customers, including Verizon and AT&T, with facilities in Dallas; and third parties related to the Nortel auction in New York. *See* Exs. 26, 27.

### 2.       The Availability of Compulsory Process Favors Plaintiffs

This factor examines the availability of compulsory process to secure the attendance of third-party witnesses. *Virtualagility,* 2014 U.S. Dist. LEXIS 12015, at *13. The third-party witnesses identified by Defendants should be accorded little weight because either they are likely within Defendants' control or not identified with adequate specificity, their testimony has little or no relevance to issues in the case, or their testimony will be available via deposition.[28] On the other hand, the most important third-party witnesses will likely be located in the EDTX, on the East Coast, or in Canada. On balance, the analysis cuts decisively in Plaintiffs' favor.

***Google Fails to Identify its Witnesses with Specificity***. Google's vague reference to unidentified "witnesses with knowledge" allegedly "concentrated" in California warrants no weight because it lacks the required level of specificity.[29] Dkt. 52 at 11. Defendants ask "the Court to attribute more weight based on this assertion of a potential likelihood that an un-named

---

[27] Relevant documents in Plano include historical Nortel files relating to patent licenses, patent licensing efforts, and payment of royalties. Powers Decl. ¶ 29. These documents concerning licensing and monetization of the patents-in-suit have resided in or near the EDTX since their time of creation in the Nortel era. Hearn Decl. ¶ 6.

[28] Defendants argue that it would be "highly prejudicial to Google" if it at trial it can present evidence regarding Apples' valuation of the Nortel patent portfolio only through video deposition. But this Court recently rejected a similar assertion. *Virtualagility,* 2014 U.S. Dist. LEXIS 12015, at *18-19. Moreover, to the extent Apple's testimony is relevant, it is just as relevant as the testimony of Dallas-area resident BlackBerry and EDTX resident Ericsson, who also bid on the Nortel portfolio as part of the Rockstar Bidco. *See* Exs. 26, 27.

[29] *See Internet Machs. LLC v. Alienware Corp.,* 2011 U.S. Dist. LEXIS 66207, at *22 (E.D. Tex. Jun. 7, 2011) (finding that a party must identify witnesses who would require compulsory process); *Core Wireless Licensing v. Apple, Inc.,* 2013 U.S. Dist. LEXIS, at *9-10 (E.D. Tex. Feb. 22, 2013) (finding assertion that "the alleged infringing products were … developed in Cupertino, CA and the employees responsible for that development are based in the Cupertino area" to be vague such that "weighing [them] … would be merely speculative").

and otherwise unidentified third-party witness may or may not be used for trial sometime in the future."[30] Regardless, Google likely has control over former employee witnesses.[31] Dkt. 52 at 11.

**Prior Artists.** At the outset, Google has again failed to meet its burden of proof: it offers no evidence that prior art witnesses would be unwilling to testify in the EDTX.[32] Additionally, Google implies that prior art authors are concentrated in the NDCA. *See* Dkt. 52 at 11 n.3. But of the *hundreds* of inventors on the prior art patents, only 39 reside in the NDCA. *See* Dkt. 52 at 11 n.3. The remainder are scattered throughout the world, including at least 12 in Texas, 91 on the East Coast, and 24 outside the U.S. Budwin Decl. ¶ 4. Of the prior art inventors residing in Texas, three appear to reside in the Dallas area—within the "absolute subpoena power" of the Court. *Id.* And importantly, "inventors of prior art rarely, if ever, actually testify at trial," and therefore it is more important to examine other categories of witnesses.[33]

**Rockstar Equity Owners and Nortel Bidders Will Be Irrelevant.** Defendants' focus on Apple is inapposite: the parties do not dispute the bids placed for the Nortel patent portfolio. Additionally, Rockstar's equity owners do not direct or control Rockstar's licensing efforts. Powers Decl. ¶ 15. However, to the extent that testimony from Apple is relevant, testimony from the other Nortel bidders and Rockstar equity investors would be equally relevant, including Blackberry, Ericsson, Sony, and Google.[34] Ericsson maintains its headquarters in the EDTX and Blackberry is headquartered in the Dallas area, just a few miles from the EDTX. Exs. 26-27.

**Inventors Across the Country.** The majority of the inventors of the patents-in-suit reside in Canada or the East Coast (New York, Massachusetts, New Hampshire, North Carolina). Budwin Decl. ¶ 4. Five named inventors on the patents-in-suit (two from Canada and subject to

---

[30] *Wi-Lan Inc. v. HTC Corp.*, 2013 U.S. Dist. LEXIS 99635, at *30 (E.D. Tex. July 17, 2013) (Gilstrap, J.); *see also In re Toyota*, No. 2014-113, slip op. at 4 n.1.

[31] *See Invensense,* 2014 U.S. Dist. LEXIS 3311, at *20 ("The Court does not significantly weight the availability of compulsory process for witnesses in the parties' control . . . ).

[32] *See Tex. Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011).

[33] *PersonalWeb Techs., LLC v. NEC Corp.*, No. 6:11-cv-655, Dkt. 74 at 16 n.13 (E.D. Tex. Mar. 21, 2013); *see also RPost Holdings,* 2013 U.S. Dist. LEXIS 116894, at *10-11.

[34] The former head of patent strategy for Google, who likely has relevant knowledge regarding Google's bidding for the patents-in-suit, now lives on the East Coast. Exs. 28, 29.

**– A702 –**

the Hague Convention) have agreed to travel to EDTX to provide testimony.[35] *See* Wooten Decl., Colvin Decl., Poisson Decl., St. George Decl., and Egan Decl.

***Prosecuting Attorneys.*** The attorneys who prosecuted the patents-in-suit are likely to have material information related to this case.[36] Two of the attorneys responsible for prosecuting the patents-in-suit live and work in Texas (one in Richardson, within the EDTX); three live in North Carolina; one lives in New Jersey, and none live in California. Budwin Decl. at 6.

***Former Nortel Employees.*** Several former Nortel employees who possess material information and are not employed by Plaintiffs reside in or near the EDTX. Art Fisher, Nortel's VP for IP Law 1998–2004, resides in the Dallas area. Powers Decl. ¶ 31. Rich Weiss served as Nortel's Deputy IP Counsel from 1997–2008 and works in McKinney, in the EDTX. *Id*. ¶ 31. Mr. Fisher and Mr. Weiss possess knowledge related to Nortel's licensing practices and policies during the years of their employment. *Id*.

***Former Samsung Employee.*** Samsung Mobile's former Chief Product & Technology Officer, Omar Kahn—known as the "Android evangelist"—left Samsung, but still resides in the Dallas area, within the subpoena power of the Court. Exs. 31, 32.

***Samsung's Customers in EDTX***. Samsung customers represent a key link in the supply chain for the infringing hardware, and will provide important evidence regarding damages. Budwin Decl. ¶ 2. Several of those providers have significant facilities in North Texas. For instance, AT&T Service, Inc. and AT&T Mobility are headquartered in Dallas, and Verizon has a Richardson facility with 2,250 employees.[37]

***Samsung's Acts of Importation Occur in EDTX***. Each of Samsung's acts of importing the accused devices to the U.S. occurs within Samsung's EDTX facility.[38]

---

[35] *See* Ex. 30, Tr. of Mot. to Transfer Hr'g, *Solid State Solutions, Inc. v. Stec, Inc.*, 2:11-cv-391-JRG-RSP, at 115:3-6 (E.D. Tex. Jan. 18, 2013).

[36] *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (prosecuting attorneys are likely witnesses).

[37] *See See Geotag, Inc. v. Aromatique, Inc.*, 2013 U.S. Dist. LEXIS 173481, at *20-21 (E.D. Tex. Jan. 14, 2013); *Thomas Swan & Co.*, 2014 U.S. Dist. LEXIS 773, at *9. Although evidence from these customers would likely be sought via Rule 30(b)(6) requests, individuals with this knowledge include: Brad Bridges, Kevin Jeffries, John Stephens, Joe Tesson, Mark Madere, Kelly Haltom, and David Pluss. *See* Exs. 33-39.

[38] *Interwoven, Inc. v. Vertical Computer Sys.*, 2011 U.S. Dist. LEXIS 49428, at *15-16.

### 3. The Cost of Attendance for Willing Witnesses Favors Plaintiffs

*Google Again Fails to Meet its Burden of Proof*. With respect to party witnesses, Google specifically identifies only two potential employee witnesses within the NDCA. Mostly Google uses vague assertions, such as stating that operations for the products are "predominantly based" at its headquarters, and "most employees" familiar with the business aspects of the products and "key engineers" on the products work from its headquarters. Dkt. 52-29 at ¶ 6. Although Google maintains that 85% of its U.S. employees in the Android group work in the NDCA area, it fails to address whether the other 15% work in its Texas offices. Contrary to Google's vague assertions, publicly available information suggests that Google's Texas employees work on the development of the Android platforms. Specifically, Jeff Hamilton, a software engineer on Google's Android team who specializes in "[o]perating systems development for mobile devices," lives in Austin, Texas. Ex. 40.

*Samsung Witnesses*. The majority of relevant Samsung witnesses will likely be in Richardson, where Samsung maintains its U.S. headquarters. *See, e.g.*, Ex. 41. For example, Jingjing Ye lives in the Dallas area and is "Samsung in-house patent counsel managing the entire patent portfolio of Samsung Telecommunications America and counseling on all intellectual property related legal issues." Ms. Ye's testimony will prove important for damages, willfulness, and indirect infringement issues. Samsung's job listings for its Texas facilities also suggest that it conducts much (if not all) of its Android development efforts in the EDTX. *See* Ex. 22.

*Rockstar Witnesses.* Rockstar has no ties to the NDCA. Rockstar employees with relevant knowledge live and work in the EDTX, and the EDTX is also more convenient for those employees who are home-based (primarily on the East Coast) and regularly commute to Plano. Rockstar employees with relevant knowledge include Donald Powers, who works full-time in the Plano headquarters and has material information related to this suit, including knowledge of Nortel and Rockstar's corporate organization and structure, documents investigated for purposes of this suit, and employees and other parties with knowledge about the patents-in-suit. Powers Decl. ¶¶ 1–2. Bernard Tiegerman, Rockstar's Senior Patent Counsel, possesses material

12

information related to Plaintiffs' licensing efforts and was involved in the prosecution of U.S. Patent No. 6,463,131. *Id.* ¶ 26; Tiegerman Decl. ¶¶ 3-4. Mr. Tiegerman works full-time out of Rockstar's Plano headquarters and he lives in Dallas. *Id.* Eric Fako, Rockstar's Lead Patent Counsel, was involved in the prosecution of U.S. Patent No. 6,128,298. Fako Decl. ¶¶ 3-4. Like Mr. Tiegerman, Mr. Fako routinely works out of Rockstar's Plano, Texas headquarters. *Id.* Mark Hearn is Senior Licensing Counsel for Rockstar, and previously worked for Nortel for over 13 years (in its Richardson office) as Senior Counsel. Hearn Decl. ¶ 1. He currently works full-time out of Rockstar's Plano office and lives in Dallas. *Id.*; *see also* McColgan Decl. and Veschi Decl. "Where a transfer will only shift the inconvenience from one district to another, the movant has not met its burden of persuasion." *See Thomas Swan & Co.*, 2014 U.S. Dist. LEXIS 773, at *13.

### 4.      The Judicial Economy Factor Favors Plaintiffs

The "Federal Circuit has emphatically instructed" that the "existence of duplicative suits involving the same or similar issues creates practical difficulties that will weigh heavily in favor or against transfer (in order to try duplicative suits in the same venue)."[39] Indeed, the Supreme Court has made clear that transferring an overlapping suit to another district "leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent."[40]

Defendants take the position that "there are no practical problems with transferring this case[.]" Dkt. 52 at 13. Yet this case is one of six filed by Rockstar in the EDTX involving the same patents and technologies, which this Court has already consolidated. Dkt. 51. At a minimum, the cases will call for common information regarding claim construction, the Nortel auction, as well as Nortel's and Rockstar's history and corporate structure. Powers Decl. ¶ 29. And the defendants will almost certainly file counterclaims with similar or identical invalidity counterclaims. If transfer were granted in this case, five other defendants would continue to

---

[39] *Ctr. One v. Vonage Holdings Corp.*, 2009 U.S. Dist. LEXIS 69683, at *22 (E.D. Tex. Aug. 10, 2009); *see In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (describing this issue as "a paramount consideration" in the transfer analysis); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (noting that considerations such as these "may be determinative to a particular transfer motion").
[40] *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960); *see also Adrain v. Genetec Inc.*, 2009 U.S. Dist. LEXIS 86855, at *9 (E.D. Tex. Sept. 22, 2009).

**– A705 –**

litigate duplicative claims in this Court.[41] The existence of overlapping suits "involving the same or similar issues creates practical difficulties that will weigh heavily … against" transferring one of those suits to another venue. *Virtualagility,* 2014 U.S. Dist. LEXIS 12015, at *22.[42]

Moreover, instead of intervening in this previously-pending case to protect the interests of its alleged customers—as Google asserts it is trying to do—Google instead chose to select its preferred forum by filing suit in the NDCA. Encouraging such gamesmanship by Google would set a disturbing precedent—conduct that has been "knowingly undertaken to manipulate venue in this case . . . should not be rewarded." *MobileMedia Ideas*, 2012 U.S. Dist. LEXIS 62153, at * 8.

## C.     The Public Interest Factors Favor Venue in the EDTX

Defendants argue that the EDTX has "no more or less of a meaningful connection to this case than any other venue" despite the location of both Samsung's and Nortel's headquarters in the EDTX.[43] *See* Dkt. 52 at 15. They are simply wrong. "Local interest arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community." *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Here that standard is met: from the EDTX, Samsung "researches, develops and markets" infringing devices. Ex. 7. It also imports the infringing devices to the EDTX. *See Interwoven*, 2011 U.S. Dist. LEXIS 49428, at *15-16. Plaintiffs run their business from the EDTX. Powers Decl. ¶ 20. In addition, the patents-in-suit are the result of Nortel's research, which maintained its U.S. location in Richardson. *Id.* Thus, this factor either favors Plaintiffs or is neutral.[44]

Plaintiffs agree that the remaining public interest factors—court congestion, familiarity of

---

[41] More of the Defendants are closer to the EDTX. *See* Budwin Decl. ¶ 2. Here, as in *In re Apple*, "[a]s compared to those cases in which this court granted mandamus, here there are fewer defendants in the [NDCA] and potential evidence identified in the [EDTX], along with defendants and witnesses that will find it easier and more convenient to try this case in the Eastern District of Texas." *In re Apple Inc*., 456 F. App'x 907, 909 (Fed. Cir. 2012).

[42] *See also Ho Keung TSE v. Google, Inc*., 2012 U.S. Dist. LEXIS 176509, at *10 (E.D. Tex. Dec. 13, 2012) (transferring case from EDTX to district where claims involving the same patent were already pending).

[43] Defendants' argument essentially "amounts to 'California has a localized interest in resolving this dispute because its jurors will be biased toward the defendant.'" *Ingeniador*, 2014 U.S. Dist. LEXIS 3308, at *10-11. But "[a] predisposition toward one party, independent of the merits of the case, cannot be the kind of 'local interest' cognized by the federal rules, and this Court gives this consideration no weight in its analysis." *Id*.

[44] *See Thomas Swan*, 2014 U.S. Dist. LEXIS 773, at *16; *Virtualagility*, 2014 U.S. Dist. LEXIS 12015, at *23.

the forum with the governing law, and the avoidance of conflicts of laws—are neutral.

> **D.    The "Similar" Cases Relied on by Defendants Differ from this Case**

Defendants attempt to twist this Court's precedent to suggest that transfer is appropriate. *See* Dkt. 52 at 13-14. First, in *Touchscreen Gestures v. HTC*, neither party had headquarters, documents, or witnesses located in the EDTX. No. 12-0261, Dkt. 17 at 1, 6, 9 (E.D. Tex. Mar. 27, 2013). In contrast, here Rockstar and Samsung's headquarters, documents, and witnesses are located in the EDTX. Second, in *Ingeniador, LLC v. Adobe Sys.*, "[n]o party contend[ed] that relevant evidence exists in the Eastern District." 2014 U.S. Dist. LEXIS 3308, at *4-5. But here, Rockstar, Samsung, and Google *all* have relevant evidence that exists within the EDTX. Moreover, in *Ingeniador*, "none of Plaintiff's witnesses reside or work in the Eastern District of Texas." 2014 U.S. Dist. LEXIS 3308, at *8. In contrast, Rockstar is headquartered here and many of its witnesses reside and work in the EDTX. Powers Decl. ¶ 22, 23. Finally, in *Blue Spike, LLC v. Texas Instruments, Inc.,* the plaintiff could point to "no third-party witnesses that this Court would have absolute subpoena power over." No. 12-558, Dkt. 16 at 5 (E.D. Tex. Mar. 13, 2014). Rockstar, however, has identified third-party witnesses within this Court's subpoena power. In *Blue Spike*, Defendants' "relevant documents are in its offices in the Northern District of California." Here, not only are *Plaintiffs'* relevant documents in the EDTX, so too are Samsung's documents.

Dated: April 14, 2014.

Respectfully submitted,

**McKOOL SMITH P.C.**

*/s/ Theodore Stevenson, III*
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
LEAD ATTORNEY
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
Ryan A. Hargrave
Texas State Bar No. 24071516
rhargrave@mckoolsmith.com
**McKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**McKOOL SMITH P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:    (512) 692-8700
Facsimile:    (512) 692-8744

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US LP and
MOBILESTAR TECHNOLOGIES LLC**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on April 14, 2014. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

<u>*/s/ Theodore Stevenson, III*</u>
Theodore Stevenson, III

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **ROCKSTAR CONSORTIUM US LP and** | § | |
| **MOBILESTAR TECHNOLOGIES LLC,** | § | |
| | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| **v.** | § | |
| | § | **Civil Action No. 2:13-cv-00900-JRG** |
| **SAMSUNG ELECTRONICS CO., LTD.,** | § | |
| **SAMSUNG ELECTRONICS AMERICA,** | § | |
| **INC., SAMSUNG** | § | **JURY TRIAL REQUESTED** |
| **TELECOMMUNICATIONS AMERICA,** | § | |
| **LLC and GOOGLE INC.,** | § | |
| | § | |
| | § | |
| **DEFENDANTS.** | § | |

**DECLARATION OF WILLIAM G. COLVIN IN SUPPORT OF PLAINTIFFS
ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR, IN THE
ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

I, William G. Colvin, declare:

1.    I am over eighteen years of age and in all respects fully competent to make this Declaration. I have personal knowledge of the facts, as stated herein, and all are true and correct.

1.    I am a named inventor of U.S. Patent No. 6,128,298. I understand this patent is at issue in litigation in the Eastern District of Texas.

2.    I am a resident of Milton, Ontario, Canada and do not travel regularly to California.

3.    I understand at least six of the parties accused of infringing the 5,838,551, 6,037,937, 6,128,298, 6,333,973, 6,463,131, 6,765,591, and 6,937,572 patents seek to transfer the case against them to the Northern District of California.

4.    It would be more convenient for me to attend trial in the Eastern District of Texas than to attend trial in the Northern District of California.

5.    I am willing to travel to Marshall, Texas to attend trial.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on  2014 - 04 - 08

William G. Colvin

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § | |

**DECLARATION OF BRIAN B. EGAN IN SUPPORT OF PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

I, Brian B. Egan, declare:

1.     I am over eighteen years of age and in all respects fully competent to make this Declaration.  I have personal knowledge of the facts, as stated herein, and all are true and correct.

2.     I was formerly a Senior Development Manager and Director of Product Development for Nortel Networks.

3.     I am a resident of Ottawa, Canada and do not travel regularly to the United States.

4.     I am a named inventor of U.S. Patent No. 6,937,572.  I understand this patent is at issue in litigation in the Eastern District of Texas.

5.     I understand at least six of the parties accused of infringing the 5,838,551, 6,037,937, 6,128,298, 6,333,973, 6,463,131, 6,765,591, and 6,937,572 patents seek to transfer the case against them to the Northern District of California.

6.     It would be more convenient for me to attend trial in the Eastern District of Texas than to attend trial in the Northern District of California.

7.     I am willing to travel to Marshall to attend trial.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  _April 7th 2014_

_Brian Egan_

Brian B. Egan

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § | |

**DECLARATION OF ERIK FAKO IN SUPPORT OF PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

**DECLARATION OF ERIK FAKO**

I, Erik Fako, declare as follows:

      1.      I am Senior Patent Counsel for Rockstar Consortium US LP ("Rockstar"). I am a member in good standing of the Massachusetts State Bar, to which I was admitted in 1997. I submit this declaration in support of Rockstar's Response in Opposition to Defendants' Motion to Transfer, which is filed herewith in the cases *Rockstar Consortium US LP, et al v. ASUSTek Computer, Inc., et al*, Case No. 2:13-cv-00894-JRG; *Rockstar Consortium US LP, et al v. HTC Corp., et* al, Case No. 2:13-cv-00895-JRG; *Rockstar Consortium US LP, et al v. LG Electronics Inc., et al*, Case No. 2:13-cv-00898-JRG; *Rockstar Consortium US LP, et al v. Pantech Co., Ltd., et al*, Case No. 2:13-cv-00899-JRG; *Rockstar Consortium US LP, et al v. Samsung Electronics Co., Ltd., et al*, Case No. 2:13-cv-00900-JRG; and *Rockstar Consortium US LP, et al v. ZTE Corp., et al*, Case No. 2:13-cv-00901-JRG. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, could and would testify competently to such facts under oath.

      2.      I was previously employed by Nortel Networks Inc. ("Nortel"), where one of my roles included patent prosecution. I have personal knowledge of the facts stated in this declaration through the execution of my current and past employment duties at Rockstar, and Nortel.

      3.      During my employment with Nortel, one of my job responsibilities included working with outside counsel to apply for and obtain patents on Nortel's inventions. I was involved in the prosecution of U.S. Patent No. 6,128,298, which is among the patents-in-suit in the cases named in Paragraph 1 above. I have personal knowledge related to the prosecution of that patent.

      4.      Although I work from home in North Carolina, I maintain a physical office in Rockstar's Plano, Texas headquarters. Should I be called to testify in the above-mentioned

lawsuit, it is therefore more convenient for me to do so in the Eastern District of Texas than it would in the Northern District of California

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 14 day of __APRIL__, 2014.

_____
Erik Fako

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § | |

**DECLARATION OF MARK HEARN IN SUPPORT OF PLAINTIFFS ROCKSTAR
CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

### DECLARATION OF MARK HEARN

I, Mark Hearn, declare as follows:

1.      I am Senior Licensing Counsel for Rockstar Consortium US LP ("Rockstar").
Prior to my employment with Rockstar, I was employed by Nortel for over 13 years as Senior
Counsel, and I worked at Nortel's Richardson, Texas office.  I submit this declaration in support
of Rockstar's Response in Opposition to Defendants' Motion to Transfer, which is filed herewith
in the cases *Rockstar Consortium US LP, et al v. ASUSTek Computer, Inc., et al*, Case No. 2:13-
cv-00894-JRG; *Rockstar Consortium US LP, et al v. HTC Corp., et* al, Case No. 2:13-cv-00895-
JRG; *Rockstar Consortium US LP, et al v. LG Electronics Inc., et al*, Case No. 2:13-cv-00898-
JRG; *Rockstar Consortium US LP, et al v. Pantech Co., Ltd., et al*, Case No. 2:13-cv-00899-
JRG; *Rockstar Consortium US LP, et al v. Samsung Electronics Co., Ltd., et al*, Case No. 2:13-
cv-00900-JRG; and *Rockstar Consortium US LP, et al v. ZTE Corp., et al*, Case No. 2:13-cv-
00901-JRG.  I make this declaration based upon my own personal knowledge unless otherwise
indicated herein, and if called as a witness, I could and would competently testify thereto.

2.      I lived in the Eastern District of Texas from 1989 to 2003, and I currently reside
in Dallas, Texas, in the Northern District of Texas.  I currently work out of Rockstar's Plano,
Texas, office.

3.      I have knowledge relevant to this lawsuit, including knowledge about the
licensing and monetization efforts regarding the patents-in-suit. Other former Nortel employees
with knowledge relevant to this lawsuit, including knowledge about the licensing and
monetization efforts regarding the patents-in-suit, also continue to work or reside in or near the
Eastern District of Texas.  These individuals include Art Fisher, the former Vice President of
Intellectual Property at Nortel, who works in the Dallas, Texas, area; and Richard Weiss, the

1

former Deputy Intellectual Property Counsel at Nortel, who works primarily in the Dallas, Texas, area and lives in the Eastern District of Texas.

4.     At various times dating back to at least 2000, including at the time of Nortel's bankruptcy, Nortel's Intellectual Property Law Group was run from the Lakeside campus at 2221 Lakeside Boulevard in Richardson, Texas.  For the majority of that time period, Nortel's licensing activities were handled exclusively by the IP Law Group.  Many members of that group lived and worked in the Dallas, Texas, area up to and including the time when Nortel declared bankruptcy.

5.     After the bankruptcy, Nortel accelerated the process of laying off its employees. Many of the employees who remained with the company, including many within the IP Law Group, focused on Nortel's patent assets.  This work included preparing the patents for auction and monetizing Nortel's patents, including the patents-in-suit.

6.     Many documents concerning patent monetization have resided in or near the Eastern District of Texas since the time of their creation in the Nortel era.

7.     At the 2011 auction of Nortel's patents, a group of companies operating as Rockstar Bidco LP ("Rockstar Bidco") outbid Google and acquired a number of patents, including the patents-in-suit, for $4.5 billion, following a $900 million "stalking horse" bid made by Google.  Rockstar Bidco, a Delaware LP, was formed as the acquisition vehicle for the patents.

8.     Rockstar Bidco later transferred the patents-in-suit to Rockstar.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed this 4 day of April, 2014.

_____
Mark Hearn

2

**— A720 —**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § § | |

**DECLARATION OF GILLIAN MCCOLGAN IN SUPPORT OF PLAINTIFFS
ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

## **DECLARATION OF GILLIAN MCCOLGAN**

I, Gillian McColgan, declare as follows:

      1.                I am Chief Technology Officer (CTO) of Rockstar Consortium US LP ("Rockstar").  I submit this declaration in support of Rockstar's Response in Opposition to Defendants' Motion to Transfer, which is filed herewith in the cases *Rockstar Consortium US LP, et al v. ASUSTek Computer, Inc., et al*, Case No. 2:13-cv-00894-JRG; *Rockstar Consortium US LP, et al v. HTC Corp., et* al, Case No. 2:13-cv-00895-JRG; *Rockstar Consortium US LP, et al v. LG Electronics Inc., et al*, Case No. 2:13-cv-00898-JRG; *Rockstar Consortium US LP, et al v. Pantech Co., Ltd., et al*, Case No. 2:13-cv-00899-JRG; *Rockstar Consortium US LP, et al v. Samsung Electronics Co., Ltd., et al*, Case No. 2:13-cv-00900-JRG; and *Rockstar Consortium US LP, et al v. ZTE Corp., et al*, Case No. 2:13-cv-00901-JRG.  I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, could and would testify competently to such facts under oath.

      2.          I supervise a team of 13 with professional degrees.  Because both I and many of the team that I supervise have detailed knowledge of Nortel's history and the technologies related to the patents-in-suit, we will have a substantial amount of knowledge relevant to the cases.

      3.          I reside in Florida, though my job responsibilities as CTO of Rockstar require that I spend much of my time traveling.  I travel to Rockstar's Plano, Texas, headquarters regularly and have access to office space and support facilities in that office whenever I am there.  Therefore, if required to testify in these lawsuits mentioned above, it would be much more convenient for me to provide testimony in the Eastern District of Texas than it would in the Northern District of California.  Moreover, because of their ability to work out of Rockstar's Plano Office, it is substantially more convenient for the team I manage to testify in the Eastern District of Texas than in the Northern District of California.

1

**– A722 –**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the __12__ day of __APRIL_____, 2014.

*Gillian McColgan*

Gillian McColgan

2

**– A723 –**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § | |
| | § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § | |

**DECLARATION OF MATTHEW W. POISSON IN SUPPORT OF PLAINTIFFS
ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR, IN THE
ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

I, Matthew W. Poisson, declare:

1.    I am over eighteen years of age and in all respects fully competent to make this Declaration.  I have personal knowledge of the facts, as stated herein, and all are true and correct.

2.    I was formerly a Software Development Manager and Software Engineer for Nortel Networks.

3.    I am a resident of Rochester, New York and do not travel regularly to California.

4.    I am a named inventor of U.S. Patent No. 6,765,591.  I understand this patent is at issue in litigation in the Eastern District of Texas.

5.    I understand at least six of the parties accused of infringing the 5,838,551, 6,037,937, 6,128,298, 6,333,973, 6,463,131, 6,765,591, and 6,937,572 patents seek to transfer the case against them to the Northern District of California.

6.    It would be more convenient for me to attend trial in the Eastern District of Texas than to attend trial in the Northern District of California.

7.    I am willing to travel to Marshall to attend trial.

IF "" = "1" "Error! Unknown document property name.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ____4/7/2014____

_____

Matthew W. Poisson

IF "" = "1" "Error! Unknown document property name."

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **ROCKSTAR CONSORTIUM US LP and** | § | |
| **MOBILESTAR TECHNOLOGIES LLC,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| **v.** | § | |
| | § | **Civil Action No. 2:13-cv-00900-JRG** |
| **SAMSUNG ELECTRONICS CO., LTD.,** | § | |
| **SAMSUNG ELECTRONICS AMERICA,** | § | |
| **INC., SAMSUNG** | § | **JURY TRIAL REQUESTED** |
| **TELECOMMUNICATIONS AMERICA,** | § | |
| **LLC, and GOOGLE, INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**DECLARATION OF DONALD POWERS IN SUPPORT OF PLAINTIFFS ROCKSTAR**
**CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN**
**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

## <u>DECLARATION OF DONALD POWERS</u>

I, Donald Powers, declare as follows:

1.      I have been a member in good standing of the State Bar of Texas since 1986 and am Litigation Counsel for Rockstar Consortium US LP ("Rockstar").  I submit this declaration in support of Rockstar's Response in Opposition to Defendants' Motion to Transfer, which is filed herewith in the cases *Rockstar Consortium US LP, et al v. ASUSTek Computer, Inc., et al*, Case No. 2:13-cv-00894-JRG; *Rockstar Consortium US LP, et al v. HTC Corp., et* al, Case No. 2:13-cv-00895-JRG; *Rockstar Consortium US LP, et al v. LG Electronics Inc., et al*, Case No. 2:13-cv-00898-JRG; *Rockstar Consortium US LP, et al v. Pantech Co., Ltd., et al*, Case No. 2:13-cv-00899-JRG; *Rockstar Consortium US LP, et al v. Samsung Electronics Co., Ltd., et al*, Case No. 2:13-cv-00900-JRG; and *Rockstar Consortium US LP, et al v. ZTE Corp., et al*, Case No. 2:13-cv-00901-JRG.

2.      Prior to my employment with Rockstar, I worked for Nortel for over 13 years as Senior Counsel in the Richardson, Texas, office.  I began my employment with Nortel on February 2, 1998, and left the company in April 2011.  I joined Rockstar in January 2012.

3.      Based on my previous employment with Nortel and present employment with Rockstar, I have relevant knowledge regarding the instant suits, including knowledge of Nortel's corporate organization and structure, Rockstar's corporate organization and structure, documents investigated for purposes of this suit and locations of relevant documents and witnesses, and parties with first-hand knowledge about the patents-in-suit and activities related to those patents. I make this declaration based upon my own personal knowledge unless otherwise indicated herein, and if called as a witness, I could and would competently testify thereto.

4.      I currently reside in Richardson, Texas, in the Eastern District of Texas, where I have lived for 17 years.

5.      Rockstar and MobileStar Technologies LLC ("MobileStar") are the assignee and the exclusive licensee, respectively, of the patents-in-suit, which were previously held by Nortel. Rockstar owns two of the patents-in-suit and previously owned the others, before assigning them to MobileStar.

6.      Rockstar is a Delaware limited partnership.  Rockstar Consortium Inc. is a British Columbia (Canadian) corporation with its office in Ottawa.  The two companies are separate legal entities.

7.      MobileStar is a subsidiary of Rockstar.  MobileStar is based in Plano, Texas.

8.      At the time Nortel filed for bankruptcy, its international headquarters was located in Ontario, Canada, and Nortel's United States headquarters was located at 2221 Lakeside Boulevard in Richardson, Texas—less than one mile from the border of the Eastern District of Texas.  This location was referred to as the Lakeside campus.  On information and belief, the Lakeside campus was built in 1991 and encompassed over 800,000 square feet of office space, including two office buildings.  At its peak around the year 2000, a little fewer than 10,000 employees worked for Nortel in the Dallas area, many of whom lived in the Eastern District of Texas.

9.      In January 2009, at the time Nortel declared bankruptcy, over 2,000 employees worked at Nortel's office in Richardson, Texas.

10.      The equity owners of Rockstar are Apple Incorporated ("Apple"), BlackBerry Corporation ("BlackBerry"), Ericsson Incorporated ("Ericsson"), Microsoft Corporation ("Microsoft") and Sony IPLA Holdings Inc. ("Sony").

11.     BlackBerry's United States headquarters is in Irving, Texas.  Ericsson's United States headquarters is in Plano, Texas, within the Eastern District of Texas.

12.     Microsoft is headquartered in Redmond, Washington.

13.     Apple is headquartered in Cupertino, California.

14.     Sony's United States headquarters is in New York City, New York.  Its intellectual property operations are run from offices in New Jersey.

15.     Rockstar's equity owners do not direct or control Rockstar's licensing efforts.

16.     I understand that Lazard in New York and Global IP Law Group in Chicago advised Nortel in the auction process.  The lead Lazard employee working on the Nortel intellectual property deal was David Descoteaux, who still works for Lazard in New York. Other advisory team members were Justin Lux, who now works for Portfolio Advisors in the New York City area; Colin Keenan, who now works for Brightwood Capital Advisors in New York City; Edouard Gueyffier, who now lives in the United Kingdom and works for Estin & Co.; and Kshitij Bhatia, who now lives in India and works for Warburg Pincus.

17.     The United States Nortel representative is now in New York and the Canadian Nortel representative is in Ontario.

18.     Rockstar Bidco LP, a separate entity from Rockstar, having separate management, is also based in New York.

19.     When the sale of the patents-in-suit closed in 2011, many of the former Nortel employees who worked in the IP group were hired by Rockstar.  Several of Nortel's Canadian employees involved in intellectual property were hired by a Canadian entity, Rockstar Consortium Inc., which was created as a vehicle to hire those former Nortel employees.  The

Canadian entity entered into a services agreement to provide various intellectual-property-support services to Rockstar.

20.     Rockstar originally conducted operations out of a portion of the former Nortel complex at the Lakeside campus that used to house the Nortel IP group.  The company upgraded its facilities in August 2012 when it signed a 7-year lease at its current offices at Legacy Town Center in Plano, Texas, a short drive away from the Lakeside campus.  In December 2012, Rockstar finished the build-out of the new Plano, Texas, office and completed its move to the new facilities, which are located in the Eastern District of Texas.

21.     Rockstar's current offices are far more attractive and suitable than the former location, and Rockstar selected them to serve as a fully functional headquarters facility that would attract high-quality employees.  The office contains 8,125 square feet with 10 assigned offices, two guest offices, seven work areas, and four conference rooms, in addition to storage space.

22.     Rockstar has 15 full-time employees; five employees work full-time from the Plano, Texas, office, while the others spend significant time there.

23.     Rockstar's Plano, Texas, office is the only office for the company, although some employees work out of their homes in addition to working from offices in the Plano, Texas, facilities.  From the Plano, Texas, office, Rockstar employees engage in substantial licensing and litigation support work.  Additionally, Rockstar's regular board meetings are held at the Plano, Texas, office. Rockstar's annual strategy sessions, requiring the attendance of many Rockstar employees, including all of Rockstar and Rockstar Consortium Inc.'s management, are also conducted in Plano, Texas.

24.     Rockstar routinely sends licensing correspondence and executes contracts, including Non-Disclosure Agreements, from its Plano, Texas, office.  When Rockstar initially formed, for a transitional period of time Rockstar would send licensing correspondence using Rockstar Consortium Inc.'s Ottawa address.  Since Rockstar re-located to its current Plano, Texas, location, it has sent licensing correspondence and entered into agreements from its Plano, Texas, office.  For example, since March 2012, Rockstar employees have signed non-disclosure and other agreements with a number of companies from its Plano, Texas, offices.

25.     No employees of Rockstar live in California.

26.     Of the eight Rockstar employees who likely have relevant information about this suit, three work full-time in the Plano office, one lives in Pennsylvania (John Veschi), one lives in Colorado (Chad Hilyard), one currently lives in North Carolina (Erik Fako), one lives in Massachusetts (Bruce Schofield), and one currently lives in Florida (Gillian McColgan).  The three full-time employees in Plano who likely have relevant knowledge about this suit are myself, Mark Hearn, and Bernard Tiegerman.  Mr. Tiegerman has lived in the Eastern District of Texas since 2000, when he started working for Nortel's Richardson, Texas office.  With the exception of Mr. Hilyard, all of us formerly were employed by Nortel.  I understand that Mr. Hearn has submitted his own declaration discussing his knowledge of facts and circumstances relevant to this suit.  The additional five employees (Ms. McColgan, Mr. Veschi, Mr. Hilyard, Mr. Schofield and Mr. Tiegerman) all have relevant information related to infringement, damages and monetization, including possible licensing or sale, of the patents-in-suit.  At least Messrs. Veschi and Hilyard also have relevant knowledge regarding Google's knowledge of the patents-in-suit.

27.     Kasim Alfalahi, a Rockstar Board member and Chief IP officer at Ericsson, works at Ericsson, very close to Rockstar's Plano, Texas, office.

28.     Randy Mishler, another Rockstar Board member and Senior Director of IP Licensing at BlackBerry, works in nearby Irving, Texas.  Mr. Mishler is also a former Nortel patent attorney.

29.     Rockstar's Plano, Texas, office contains hard drives from former Nortel and former Rockstar employees as well as boxes of hard copy documents pertaining to Nortel's licensing of the patents-in-suit, notes related to prior licensing meetings regarding the patents-in-suit, and internal patent prosecution files for the patents-in-suit.  Additionally, the Plano office is equipped to access all electronic records at Rockstar Consortium Inc.'s Canada location.

30.     Rockstar Consortium Inc. employs 21 employees in Canada – 19 in its office in Ottawa and two in Toronto.  Certain of these employees routinely travel for work to Plano.  Approximately four of these employees have relevant information about the lawsuit.  It is significantly easier for these employees to travel from Ontario to the Eastern District of Texas than it is for them to travel to the Northern District of California, because the employees have support facilities in Texas and they are familiar with the Eastern District of Texas region by virtue of their routine travel there.

31.     Willing third-party witnesses in this suit include former Nortel employees, and five named inventors of the patents-in-suit.  The former Nortel employees include: Art Fisher, who was Nortel's Vice President of Intellectual Property Law from 1998-2004 and who currently resides in the Dallas area; and Richard Weiss, former Deputy Intellectual Property Counsel for Nortel, who currently resides in the Eastern District of Texas. Mr. Fisher and Mr. Weiss possess knowledge related to Nortel's licensing practices and policies during the years of

their employment.  They can testify regarding what industries and technologies Nortel's patents, including the patents-in-suit, implicate.  In addition, I understand that five named inventors of the patents-in-suit, William Colvin, Bruce Anthony Wootton, Matthew W. Poisson, Brian B. Egan and Marilyn French-St.George, have agreed to travel to the Eastern District of Texas to provide testimony.

32.     Other cases filed by Rockstar in the Eastern District of Texas, including Case Nos. 2:13-cv-893, 894, 895, 896, 898, 899, and 901, as well as cases filed by Constellation Technologies and NetStar Technologies, other subsidiaries of Rockstar, including Case Nos. 2:13-cv- 1079 and 1080, will share certain facts with this case.  The other cases consolidated with this matter also involve the same patents-in-suit as in this case, all involve common facts related to the circumstances of the auction and the corporate structure of Rockstar and its subsidiaries and affiliated companies.

I declare under the penalty of perjury that the foregoing is true and correct.

Signed this 14th day of April, 2014.

Donald Powers

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP and<br>MOBILESTAR TECHNOLOGIES LLC,<br><br>PLAINTIFFS,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC., SAMSUNG<br>TELECOMMUNICATIONS AMERICA,<br>LLC and GOOGLE INC.,<br><br>DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§ Civil Action No. 2:13-cv-00900-JRG<br>§<br>§<br>§ JURY TRIAL REQUESTED<br>§<br>§<br>§<br>§<br>§ |

**DECLARATION OF MARILYN FRENCH-ST. GEORGE IN SUPPORT OF PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN <u>DISTRICT OF CALIFORNIA</u>**

1McKool 977327v1" "" McKool 977327v1

I, Marilyn French-St. George, declare:

1. I am over eighteen years of age and in all respects fully competent to make this Declaration. I have personal knowledge of the facts, as stated herein, and all are true and correct.
2. I was formerly an employee of Nortel Networks.
3. I am a resident of Ottawa, Canada and do not travel regularly to the United States.
4. I am a named inventor of U.S. Patent No. 6,463,131. I understand this patent is at issue in litigation in the Eastern District of Texas.
5. I understand at least six of the parties accused of infringing the 5,838,551, 6,037,937, 6,128,298, 6,333,973, 6,463,131, 6,765,591, and 6,937,572 patents seek to transfer the case against them to the Northern District of California.
6. It would be more convenient for me to attend trial in the Eastern District of Texas than to attend trial in the Northern District of California.
7. I am willing to travel to Marshall to attend trial.

1McKool 977327v1" "" McKool 977327v1

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on

*[signature]* April 8 2014

**– A735 –**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § § | |

DECLARATION OF BERNARD TIEGERMAN IN SUPPORT OF PLAINTIFFS
ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

## DECLARATION OF BERNARD TIEGERMAN

I, Bernard Tiegerman, declare as follows:

1.    I am Senior Patent Counsel for Rockstar Consortium US LP ("Rockstar"). I am a member in good standing of the Virginia State Bar, to which I was admitted in 1981. I submit this declaration in support of Rockstar's Response in Opposition to Defendants' Motion to Transfer, which is filed herewith in the cases *Rockstar Consortium US LP, et al v. ASUSTek Computer, Inc., et al*, Case No. 2:13-cv-00894-JRG; *Rockstar Consortium US LP, et al v. HTC Corp., et al*, Case No. 2:13-cv-00895-JRG; *Rockstar Consortium US LP, et al v. LG Electronics Inc., et al*, Case No. 2:13-cv-00898-JRG; *Rockstar Consortium US LP, et al v. Pantech Co., Ltd., et al*, Case No. 2:13-cv-00899-JRG; *Rockstar Consortium US LP, et al v. Samsung Electronics Co., Ltd., et al*, Case No. 2:13-cv-00900-JRG; and *Rockstar Consortium US LP, et al v. ZTE Corp., et al*, Case No. 2:13-cv-00901-JRG. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, could and would testify competently to such facts under oath.

2.    I was previously employed by Nortel Networks ("Nortel") as Senior Counsel. I have personal knowledge of the facts stated in this declaration through the execution of my current and past employment duties at Rockstar, and through the execution of my current and past employment duties at Nortel.

3.    During my employment with Nortel, I worked out of Nortel's Richardson, Texas, headquarters. My job responsibilities included working with outside counsel to apply for and obtain patents on Nortel's inventions. I was involved in the prosecution of U.S. Patent No. 6,463,131, which is among the patents-in-suit in the cases named in Paragraph 1 above. I have personal knowledge related to the prosecution of those patents.

4.    I work full-time at Rockstar's Plano, Texas, headquarters and reside in Dallas, Collin County, Texas. Should I be called to testify in the above-mentioned lawsuit, it is

1

therefore more convenient for me to do so in the Eastern District of Texas than it would in the Northern District of California

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

     Executed the *11th* day of ___*April*___, 2014.

*Bernard Tiegerman*

Bernard Tiegerman

2

**− A738 −**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and | § | |
| MOBILESTAR TECHNOLOGIES LLC, | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| v. | § | |
| | § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., SAMSUNG | § | JURY TRIAL REQUESTED |
| TELECOMMUNICATIONS AMERICA, | § | |
| LLC and GOOGLE INC., | § | |
| | § | |
| **DEFENDANTS.** | § | |

**DECLARATION OF JOHN VESCHI IN SUPPORT OF PLAINTIFFS ROCKSTAR
CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER</u>**

## DECLARATION OF JOHN VESCHI

I, John Veschi, declare as follows:

1.      I am Chief Executive Officer (CEO) of Rockstar Consortium US LP ("Rockstar"). I am a member in good standing of the Maryland State Bar, to which I was admitted in 1993. I submit this declaration in support of Rockstar's Response in Opposition to Defendants' Motion to Transfer, which is filed herewith in the cases *Rockstar Consortium US LP, et al v. ASUSTek Computer, Inc., et al*, Case No. 2:13-cv-00894-JRG; *Rockstar Consortium US LP, et al v. HTC Corp., et al*, Case No. 2:13-cv-00895-JRG; *Rockstar Consortium US LP, et al v. LG Electronics Inc., et al*, Case No. 2:13-cv-00898-JRG; *Rockstar Consortium US LP, et al v. Pantech Co., Ltd., et al*, Case No. 2:13-cv-00899-JRG; *Rockstar Consortium US LP, et al v. Samsung Electronics Co., Ltd., et al*, Case No. 2:13-cv-00900-JRG; and *Rockstar Consortium US LP, et al v. ZTE Corp., et al*, Case No. 2:13-cv-00901-JRG. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, could and would testify competently to such facts under oath.

2.      My job responsibilities as CEO of Rockstar require that I spend much of my time traveling. However, I have an assigned office at Rockstar's Plano, Texas, headquarters and work out of that office regularly. I work closely with the full-time staff based out of the Plano office and have support facilities to assist me in my work there. Therefore, if required to testify in the lawsuits mentioned above, it would be more convenient for me to provide testimony in the Eastern District of Texas than it would in the Northern District of California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 14th day of April, 2014.

John Veschi

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § § | |

DECLARATION OF BRUCE ANTHONY WOOTTON IN SUPPORT OF PLAINTIFFS
ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR, IN THE
ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

I, Bruce Anthony Wootton, declare:

1.      I am over eighteen years of age and in all respects fully competent to make this Declaration.  I have personal knowledge of the facts, as stated herein, and all are true and correct.

1.      I was formerly an employee of Nortel Networks.

2.      I am a named inventor of U.S. Patent No. 6,128,298. I understand this patent is at issue in litigation in the Eastern District of Texas.

3.      I am a resident of Raleigh-Durham, North Carolina and do not travel regularly to California.

4.      I understand at least six of the parties accused of infringing the 5,838,551, 6,037,937, 6,128,298, 6,333,973, 6,463,131, 6,765,591, and 6,937,572 patents seek to transfer the case against them to the Northern District of California.

5.      It would be more convenient for me to attend trial in the Eastern District of Texas than to attend trial in the Northern District of California.

6.      I am willing to travel to Marshall to attend trial.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___04___ / _10_ / _2014_

_Bruce Anthony Wootton_

Bruce Anthony Wootton

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

**ROCKSTAR CONSORTIUM US LP, AND
MOBILESTAR TECHNOLOGIES LLC,**

      **Plaintiffs,**

      **vs.**

**SAMSUNG ELECTRONICS CO., LTD,
SAMSUNG ELECTRONICS AMERICA, INC.,
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC,**

      **Defendants.**

**Civil Action No.  2:13-cv-00900-JRG**

**JURY TRIAL**

<u>**ORDER**</u>

Before the Court is Defendants Samsung Electronics Co., Ltd's, Samsung Electronics America, Inc.'s, Samsung Telecommunications America, LLC's and Google Inc.'s Motion to Stay or, in the Alternative, to Transfer to the Northern District of California (Dkt #52).  After consideration of same, the Court is of the opinion that it should be DENIED.

IT IS THEREFORE ORDERED that Defendants Samsung Electronics Co., Ltd, Samsung Electronics America, Inc., Samsung Telecommunications America, LLC and Google Inc.'s Motion be DENIED in its entirety.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **ROCKSTAR CONSORTIUM US LP and** | § | |
| **MOBILESTAR TECHNOLOGIES LLC,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| **v.** | § | |
| | § | **Civil Action No. 2:13-cv-00900-JRG** |
| **SAMSUNG ELECTRONICS CO., LTD.,** | § | |
| **SAMSUNG ELECTRONICS AMERICA,** | § | |
| **INC., SAMSUNG** | § | **JURY TRIAL REQUESTED** |
| **TELECOMMUNICATIONS AMERICA,** | § | |
| **LLC and GOOGLE INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**ADDITIONAL ATTACHMENTS TO PLAINTIFFS ROCKSTAR CONSORTIUM US LP
AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER TO
THE NORTHERN DISTRICT OF CALIFORNIA (DKT. NO. 52)**

**– A745 –**

Dated: April 14, 2014.

Respectfully submitted,

**McKOOL SMITH P.C.**

_/s/ Theodore Stevenson, III_
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
LEAD ATTORNEY
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
Ryan A. Hargrave
Texas State Bar No. 24071516
rhargrave@mckoolsmith.com
**McKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**McKOOL SMITH P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:     (512) 692-8700
Facsimile:     (512) 692-8744

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US LP and
MOBILESTAR TECHNOLOGIES LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on April 14, 2014. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, <br><br> PLAINTIFFS, <br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, and GOOGLE, INC., <br><br> DEFENDANTS. | § <br> § <br> § <br> § <br> § <br> § Civil Action No. 2:13-cv-00900-JRG <br> § <br> § <br> § JURY TRIAL REQUESTED <br> § <br> § <br> § <br> § |

**DECLARATION OF JOSHUA W. BUDWIN IN SUPPORT OF PLAINTIFFS
ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

I, Joshua W. Budwin, declare:

1.      I am an attorney with the law firm of McKool Smith P.C., counsel of record for Plaintiffs Rockstar Consortium US LP and Mobilestar Technologies LLC. (collectively "Rockstar") in the above-entitled action.  I am duly licensed to practice law in the State of Texas. I make this declaration based on my personal knowledge, the record in this action, and matters of public record, and if called upon as a witness, I could and would testify competently as to the matters set forth below.

2.      The EDTX is closer than the NDCA for the majority of defendants in the consolidated cases. The approximate distance from each of the consolidated defendants U.S. headquarters to the EDTX and NDCA is:

| Party | Location in U.S. | Approximate Distance from EDTX | Approximate Distance from NDCA |
|---|---|---|---|
| ASUSTek | Fremont, CA | 1,847 miles | 0 |
| Google | Mountain View, CA | 1,849 miles | 0 |
| HTC | Bellevue, WA | 2,199 miles | 811 miles |
| LGE | Englewood Cliffs, NJ | 1,521 miles | 2,079 miles |
| Pantech | Atlanta, GA | 694 miles | 2,477 miles |
| Rockstar | Plano, TX | 0 | 1,824 miles |
| Samsung | Richardson, TX | 0 | 1,824 miles |
| ZTE | Richardson, TX | 0 | 1,828 miles |

3.      The current addresses for the following individuals listed below have been verified using public records. These individuals are each authors of items listed on the face of one or more of the patents-in-suit as prior art. According to the public records, each of these individuals currently resides in Texas. The city and state of each individual is:

| | |
|---|---|
| Albert F. Nurick | Austin, TX |
| Brittain D. Fraley | Austin, TX |
| Daniel K. Engberg | Cedar Park, TX |
| Ellis K. Cave | Garland, TX |
| Gerald Francis Mcbrearty | Austin, TX |
| John Maddalozzo | Austin, TX |
| Johnny Meng-Han Shieh | Austin, TX |
| Krista Savage | Garland, TX |
| Richard Bach | Garland, TX |

2

4.      The current addresses for the individuals listed below have been verified using public records. These individuals are each authors of items listed on the face of one or more of the patents-in-suit as prior art. According to the public records, each of these individuals currently resides on the East Coast of the U.S. The city and state of each individual is:

| Bekir Serbetciouglu | Shelton, CT |
|---|---|
| Esref Ozulkulu | Monroe, CT |
| Iihan Bagoren | Beacon Falls, CT |
| Annemarie Lehmeier | Ursensollen, DE |
| Werner Olbrich | Amberg, DE |
| Wolfgang Schatz | Amberg, DE |
| Alanara Seppo | Oulu, FL |
| Ari Leman | Pertteli, FL |
| Arto Pussinen | Oulu, FL |
| Jaakko Vanttila | Oulu, FL |
| James L. Davis | Coral Springs, FL |
| Jari Olkkola | Salo, FL |
| Jorma Seppanen | Oulu, FL |
| Juha Vaihoja | Tupos, FL |
| Lasse Uronen | Salo, FL |
| Lonnie L. Bernardoni | Boca Raton, FL |
| Melanie Williams | Deerfield Beach, FL |
| Mikko Lietsalmi | Oulu, FL |
| Petri Hossi | Salo, FL |
| Raimo Kivari | Haukipudas, FL |
| Ruben Rivera | Sunrise, FL |
| Thomas J. Swirbel | Davie, FL |
| Timo Hirvonen | Salo, FL |
| Timo Kolehmainen | Oulu, FL |
| Timothy J. Dinwiddie | Plantation, FL |
| Veli-Matti Valimaa | Salo, FL |
| Brantley W. Coile | Athens, GA |
| Bret Harsham | Newton, MA |
| Carl G. Hayssen | Andover, MA |
| James Emken | Arlington, MA |
| Jefrey A. Kraemer | Northboro, MA |
| Jing Xiang | Westford, MA |
| Lalit Jain | Boston, MA |
| Peter J. Sulc | Pepperall, MA |
| Radia Joy Perlman | Acton, MA |
| Robert A. Ciampa | Andover, MA |

3

| | |
|---|---|
| Roger H. Levesque | Tewksbury, MA |
| William Nelson | Auburn, MA |
| David F. Wheeler | Silver Spring, MD |
| David Young | Silver Spring, MD |
| Dilip Gokhale | Gaithersburg, MD |
| Edward F. Balkovich | Potomac, MD |
| Michael J. Ahearn | Gorham, ME |
| Billy Gayle Moon | Apex, NC |
| Lester L White | Raleigh, NC |
| Peter A Fortman | Raleigh, NC |
| Darryl Black | Merrimack, NH |
| G. Paul Koning | Brookline, NH |
| Konstantinos Baryiames | Merrimack, NH |
| Arthur J. Moen | Clinton, NJ |
| Ashok K. Kuthyar | Holmdel, NJ |
| Bethany S. Robinson | Colts Neck, NJ |
| David L. Turock | Highland Park, NJ |
| David M. Pepe | Middletown, NJ |
| David S. Miller | Bedminster, NJ |
| Dawn D. Petr | Basking Ridge, NJ |
| Dwight O. Hakim | Matawan, NJ |
| Edward F. Balkovich | Freehold, NJ |
| Frederick Murray Burg | West Long Branch, NJ |
| Gerardo Ramirez | Bridgewater, NJ |
| Howard P. Katseff | Manalapan, NJ |
| James J. Brockman | Perrineville, NJ |
| Josefa Ramaroson | Freehold, NJ |
| Lisa B. Blitzer | Manalapan, NJ |
| Mark A. Jones | New Providence, NJ |
| Mark L. Meisel | Fair Lawn, NJ |
| Mon-Mei Chen | Marlboro, NJ |
| Ram S. Ramamurthy | Manalapan, NJ |
| Richard H. Janow | South Orange, NJ |
| Richard S. Wolff | West Caldwell, NJ |
| Robert E. Markowitz | Glen Rock, NJ |
| Robert F. | Mortensonchatham, NJ |
| Robert G. White | Morristown, NJ |
| Warren S. Gifford | Holmdel, NJ |
| William Cruz | Eatontown, NJ |
| Yang-Wei Wang | Howell, NJ |
| Alexander I. Poltorak | Monsey, NY |
| Jeoffrey Pooser | New York, NY |
| Michael Kramer | Bronx County, NY |
| T. V. Raman | Ithaca, NY |
| Thomas Kredo | Rochester, NY |

4

| Todd Pooser | New York, NY |
| Bruce Goldhagen | Newtown Square, PA |
| Edwin M. Elrod | Downingtown, PA |
| Frederick C. Kruesi | Exton, PA |
| Gary P. Russell | King Of Prussia, PA |
| John Homan | Ephrata, PA |
| Bruce W. Stalcup | Springfield, VA |
| Christopher Johnson | Oakton, VA |
| Jerry M. Feinberg | Arlington, VA |
| Raymond F. Albers | Vienna, VA |

5.     The current addresses for the individuals listed below have been verified using public records. These individuals are each authors of items listed on the face of one or more of the patents-in-suit as prior art. According to the public records, each of these individuals currently resides outside of the United States. The city and country of each individual is:

| Jasjit S. Saini | Rosenwiller, FR |
| Pierre Troian | Hoenheim, FR |
| Henry C.A. Hyde-Thomson | London, En (GB) |
| Dermot M. Tynan | Galway, IE |
| Haru Ando | Tokyo, JP |
| Hikoyuki Nakajima | Yokohama-Shi, JP |
| Hiroshi Nakao | Shiki-Gun, JP |
| Hiroshi Takahashi | Kanagawa, JP |
| Hiroyuki Nagasawa | Shiki-Gun, JP |
| Hiroyuki Shigematsu | Yamatokoriyama, JP |
| Jung-Kook Hong | Tokyo, JP |
| Kazuo Iwano | Yokohama-Shi, JP |
| Kouichi Nagai | Yokosuka-Shi, JP |
| Kunihiko Isoda | Yokosuka-Shi, JP |
| Masaaki Kurata | Nabari-Shi, JP |
| Munenori Sakamoto | Yamatokoriyama, JP |
| Ryoji Fukuda | Kawasaki-Shi, JP |
| Shigeaki Tanimoto | Tokyo, JP |
| Shinji Misono | Tokyo, JP |
| Takashi Harada | Yamato-Shi, JP |
| Takashi Masui | Yokosuka-Shi, JP |
| Yasuhiro Nakajima | Yao-Shi, JP |
| Yoshinori Kitahara | Tokyo, JP |
| Yutaka Nakamura | Soraku-Gun, JP |

5

6.    The current addresses for the individuals listed below have been verified using public records. These individuals prosecuted the patents-in-suit. The city and state of each individual is:

| Jean-Pierre Fortin | Kanata, Ontario, Canada |
|---|---|
| Angela C. deWilton | Ottawa, Ontario, Canada |
| Tom Gigliotti | Raleigh, NC |
| J. Erik Fako | Research Triangle Park, NC |
| Eric Halber | Research Triangle Park, NC |
| Bernard Tiegerman | Richardson, TX |
| Brianna Hinojosa-Flores | Irving, TX |
| Jaspreet Harit | Nepean, Ontario, Canada |
| Kevin Sembrat | Califon, NJ |

7.    Exhibit 1 is a true and correct copy of a Patent Assignment Cover Sheet for Mobilestar Technologies LLC, dated October 31, 2013.

8.    Exhibit 2 are true and correct copies of Collin and Dallas County Property Search results for Google.

9.    Exhibit 3 is a true and correct copy of Google Dallas web page at https://www.google.com/about/careers/locations/dallas/#tab=tab-map.

10.    Exhibit 4 is a true and correct copy of Austin – Google Careers web page at https://www.google.com/about/careers/locations/austin/.

11.    Exhibit 5 is a true and correct copy of Dallas – Google Careers web page at https://www.google.com/about/careers/locations/dallas/.

12.    Exhibit 6 is a true and correct copy of the Texas Secretary of State web page at https://direct.sos.state.tx.us/...t=1&:Spagefrom=&:Norder_item_type_id=10&:Ncorp_type_id=& :Nfiling_type_id=&:Nunder_lp_entity_type= showing incorporation information for Samsung Telecommunications America, LLC.

13.    Exhibit 7 is a true and correct copy of Samsung Mobile – Our Company web page at http://samsungtelecom.com/life-at-samsung/our-company.asp.

6

14.     Exhibit 8 is a true and correct copy of Samsung Mobile – Careers – Dallas Technology Labs web page at http://www.samsungtelecom.com/careers/dallas-technology-labs.asp.

15.     Exhibit 9 is a true and correct copy of the First Amended Complaint for Patent Infringement in *Samsung Elecs. Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd., et al,* 2:05-CV-00440, Dkt. 4 at 2 (E.D. Tex. Nov. 11, 2005).

16.     Exhibit 10 is a true and correct copy of the First Amended Complaint in *Samsung Elecs. v. Sandisk Corp.,* 9:02-CV-00058, Dkt. 20 at 2 (E.D. Tex. Apr. 3, 2002).

17.     Exhibit 11 is a true and correct copy of Defendant Samsung's Response to Ericsson's Answer, Affirmative Defenses, and Counterclaims to Samsung's Third Amended Answer, Affirmative Defendants and Counterclaims in *Ericsson Inc. v. Samsung Elecs. Co., LTD.*, Case 6:12-cv-00894-LED, Dkt. 72 ¶ 7 (E.D. Tex. Mar. 18, 2013).

18.     Exhibit 12 is a true and correct copy of Plaintiff's Unopposed Motion to File Samsung Electronics Company Limited's Response to Sandisk Corporation's Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) in *Samsung Elecs. v. Sandisk Corp.*, 9:02-CV-00058, Dkt. 36 (E.D. Tex. Apr. 24, 2002).

19.     Exhibit 13 is a true and correct copy of the Order and Opinion in *SimpleAir, Inc. v. Microsoft Corp.*, 2:11-cv-416-JRG, Dkt. 416 at 15-16 (E.D. Tex. Aug. 9, 2013).

20.     Exhibit 14 are true and correct copies of excerpts of the docket sheets in Case Nos. 2:13-cv-00894-JRG; 2:13-cv-00895; 2:13-cv-00898-JRG; 2:13-cv-00899-JRG; 2:13-cv-00900-JRG; and 2:13-cv-00901-JRG.

21.     Exhibit 15 is a true and correct copy of the NDCA Docket sheet showing Google's filing of its Complaint for Declaratory Judgment against Rockstar on December 23, 2013.

22.     Exhibit 16 is a true and correct copy of an article entitled, "The Android Source Code," and located at http://source.android.com/source/index.html.

23.     Exhibit 17 is a true and correct copy of an article from CNet entitled, "Google, Samsung strike patent cross-licensing deal," dated January 26, 2014, and located at http://www.cnet.com/news/google-samsung-strike-patent-cross-licensing-deal/.

24.     Exhibit 18 is a true and correct copy of Plaintiffs' Infringement Contentions claim chart for U.S. Patent No. 5,838,551 regarding the Samsung Ativ S Neo.

25.     Exhibit 19 is a true and correct copy of U.S. Patent No. 5,838,551.

26.     Exhibit 20 is a true and correct copy of an article from The Verge entitled, "Will Samsung own Android's future?" dated October 24, 2013, and located at http://www.theverge.com/2013/10/25/5028494/samsung-developer-conference-android-future.

27.     Exhibit 21 is a true and correct copy of screen shots showing the differences between each defendants' implementation of the Android platform shown by Rockstar's infringement contentions.

28.     Exhibit 22 is a true and correct copy of Samsung Careers web page at https://careers.us.samsung.com/careers/svc/app/viewSearchJob?keyword=Android&catego regarding Android.

29.     Exhibit 23 is a true and correct copy of a recode.net article entitled, "After Google Pressure, Samsung Will Dial Back Android Tweaks, Homegrown Apps," dated January 29, 2014, and located at http://recode.net/2014/01/29/after-google-pressure-samsung-will-dial-back-android-tweaks-homegrown-apps/.

30.     Exhibit 24 is a true and correct copy of a Memorandum Opinion and Order in *Bright Response, LLC v. SAS Institute Inc.*, 2:12-cv-280-JRG, Dkt. 28 (E.D. Tex. Mar. 26, 2013).

31.     Exhibit 25 is a true and correct copy of a Memorandum Order in *Personal Audio, LLC v. CBS Corporation*, 2:13-CV-270-JRG-RSP, Dkt. 41 (E.D. Tex. Mar. 20, 2014).

32.     Exhibit 26 is a true and correct copy of BlackBerry's contact information web page at http://us.blackberry.com/company/about-us/contact.html.

33.     Exhibit 27 is a true and correct copy of Ericsson's company information web page at http://www.ericsson.com/thecompany/company_facts/worldwide/na/us.

8

34.     Exhibit 28 is a true and correct copy of the uspto.gov Press Release entitled, "U.S. Secretary of Commerce Penny Pritzker Names Michelle K. Lee as Next Deputy Director of the U.S. Patent and Trademark Office," dated December 11, 2013, and located at http://www.uspto.gov/news/pr/2013/13-39.jsp.

35.     Exhibit 29 is a true and correct copy The IP Media Group article entitled, "The Players," dated December 2011.

36.     Exhibit 30 is a true and correct copy of excerpts from the Evidentiary Hearing transcript in *Solid State Storage Solutions, Inc. v. STEC, Inc., et al.*, 2:11-CV-391-JRG-RSP, (E.D. Tex. Jan. 18, 2013).

37.     Exhibit 31 is a true and correct copy of a Wireless Week article entitled, "Executive Shake-ups at Samsung, HP," dated July 12, 2011, located at http://www.wirelessweek.com/news/2011/07/executive-shake-ups-samsung-hp.

38.     Exhibit 32 is a true and correct copy of the LinkedIn web page of Omar Khan.

39.     Exhibit 33 is a true and correct copy of the LinkedIn web page of Brad Bridges.

40.     Exhibit 34 is a true and correct copy of the LinkedIn web page of David Pluss.

41.     Exhibit 35 is a true and correct copy of the LinkedIn web page of Kelly Haltom.

42.     Exhibit 36 is a true and correct copy of the LinkedIn web page of Kevin Jeffries.

43.     Exhibit 37 is a true and correct copy of the LinkedIn web page of Mark Madre.

44.     Exhibit 38 is a true and correct copy of the LinkedIn web page of John Stephens.

45.     Exhibit 39 is a true and correct copy of the LinkedIn web page of Joe Tesson.

46.     Exhibit 40 is a true and correct copy of the LinkedIn web page of Jeff Hamilton.

47.     Exhibit 41 is a true and correct copy of the LinkedIn web page of Jingjing Ye.

48.     Exhibit 42 is a true and correct copy of Defendants Rockstar Consortium U.S. LP and Mobilestar Technologies LLC's Statement of Recent Decision [N.D. Cal. L.R. 7-3(d)(2)] in *Google, Inc. v. Rockstar, et al.*, 4:13-cv-5933-CW, Dkt. 54 (N.D. Cal. Apr. 8, 2013).

9

49.     Exhibit 43 is a true and correct copy of the redacted Defendants' Motion to Dismiss in *Google, Inc. v. Rockstar, et al.*, 4:13-cv-5933-CW, Dkt. 19-3 (N.D. Cal. Jan. 23, 2013).

50.     Exhibit 44 is a true and correct copy of an article from OS News entitled, "Battle of the Androids:  Google Android vs. Samsung Android," dated February 1, 2013, located at http://www.osnews.com/story/26751/Battle_of_the_Androids_Google_Android_vs_Samsung_Android.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct, and that this declaration was executed on April 14, 2014, at Austin, Texas.


                                        */s/   Joshua W. Budwin*
                                        Joshua W. Budwin

10

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 14th day of April, 2014 with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3).

/s/      *Joshua W. Budwin*
Joshua W. Budwin

11

# EXHIBIT 1



# United States Patent and Trademark Office

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Assignments on the Web** > Patent Query

## Patent Assignment Assignee Details

**NOTE:Results display only for issued patents and published applications. For pending or abandoned applications please consult USPTO staff.**

**Assignee Name : MOBILESTAR TECHNOLOGIES LLC**

**Total Assignments: 1**

### Assignment: 1

Reel/Frame: 031523/0182      **Pages:** 9

**Recorded:** 10/31/2013

**Attorney Dkt #:** MOBILESTAR

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

### Assignor

1   ROCKSTAR CONSORTIUM US LP      **Exec Dt:** 10/31/2013

### Assignee

1   MOBILESTAR TECHNOLOGIES LLC

LEGACY TOWN CENTER 1

7160 NORTH DALLAS PARKWAY, SUITE 250

PLANO, TEXAS 75024

### Properties

| Pat # | Pub # | App # | Pat # | Pub # | App # | Pat # | Pub # | App # |
|-------|-------|-------|-------|-------|-------|-------|-------|-------|
| 6333973 | NONE | 08842020 | 6037937 | NONE | 08985265 | 6122348 | NONE | 08996034 |
| 6510452 | NONE | 09137687 | 6738809 | NONE | 09137688 | 6765591 | US20030030662 | 09285424 |
| 6463131 | NONE | 09477679 | 6937572 | NONE | 09751796 | NONE | US20130218863 | 13845955 |

### Correspondence name and address

AMIE KOSABEK

515 LEGGET DRIVE

SUITE 300

KANATA, K2K 3G4 CANADA

Search Results as of: 04/13/2014 09:27 PM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.3.4

Web interface last modified: Jul 8, 2013 v.2.3.4

| HOME | INDEX | SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

# EXHIBIT 2



# Property Search

## Property ID: 2681380 - Tax Year: 2014

### General Information

| | |
|---|---|
| Property ID | 2681380 |
| Property Status | Active |
| Geographic ID | P-9000-213-1602-1 |
| Property Type | Personal |
| Property Address | 6175 W Main St #00250<br>Frisco, TX  75034 |
| DBA Name | Google |
| Total Land Area | n/a |
| Total Improvement Main Area | n/a |
| Primary State Code | L1 (Tangible Commercial Personal) |
| Legal Description | BPP at 6175 W Main St |

### Owner Information

| | |
|---|---|
| Owner ID | 851116 |
| Owner Name(s) | 🔍 GOOGLE INC<br>ATTN: TAX DEPT |
| Exemptions | None |
| Percent Ownership | 100.00% |
| Mailing Address | 1600 Amphitheatre Pkwy Bldg 41<br>Mountain View, CA 94043-1351 |

**Site Navigation**

**Home**

**Property Search**

**Maps**

- Interactive Map

- Abstract & Plat Maps

**Downloads**

- Forms

- Reports

**Calendar**

**Annual Reports**

**Key Annual Cycles**

**How is your Property Appraised?**

**Exemptions and Rates**

**Press Releases**

**District Information**

**Informal Appraisal Reviews**

**Boards**

## 2014 Value Information

Value information for Property ID 2681380 in the 2014 tax year is unavailable. Value information for prior years may be available in the Value History section below.

## Documents and Forms

| Applications | Homestead, Over 65, or Disabled Person Exemption Application |
| --- | --- |
| | Agricultural (1D1) Application |
| Documents | 2014 Notice of Appraised Value (Unavailable) |
| | Formal (Appraised Value) Protest Form |
| Other documents and forms | Click here |

## Entities & Exemptions

| Taxing Entity | Exemptions | Amount | Taxable Value | Tax Rate | Tax Ceiling | Collected By |
| --- | --- | --- | --- | --- | --- | --- |
| CFR (Frisco City) | - | - | | 0.461910 (2013 Rate) | - | Collin County Tax Office |
| GCN (Collin County) | - | - | | 0.237500 (2013 Rate) | - | Collin County Tax Office |
| JCN (Collin College) | - | - | | 0.083643 (2013 Rate) | - | Collin County Tax Office |
| SFR (Frisco ISD) | - | - | | 1.460000 (2013 Rate) | - | Collin County Tax Office |

## Improvements

Our records don't show any improvement data for Property ID 2681380 in the year 2014.

## Land Segments

- Board of Directors
- Ag Advisory Board
- Appraisal Review Board

**Links**

- Other Appraisal Districts
- Texas Comptroller Resources
- Tax Offices

**Site Search**

**Help and FAQs**

Collin CAD - Property Search

Our records don't show any land data for Property ID 2681380 in the year 2014.

## Value History

| Year | Improvement | Land | Market | Ag Loss | Appraised | HS Cap Loss | Assessed |
|------|-------------|------|--------|---------|-----------|-------------|----------|
| 2013 | $0 | $0 | $255,000 | $0 | $255,000 | $0 | $255,000 |

## Deed History

| Deed Date | Seller | Buyer | Instr # | Volume/Page |
|-----------|--------|-------|---------|-------------|

## DALLAS CENTRAL APPRAISAL DISTRICT

003-0880

### NOTICE OF APPRAISED VALUE FOR YEAR 2013
### BUSINESS PERSONAL PROPERTY

Account No.: 99090216800000000

Ownership:

GOOGLE INC
% PROPERTY TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:
400 S AKARD ST LEV3
DALLAS
Route: TE

Legal Description:
PERSONAL PROPERTY
GOOGLE INC

Dear  Property Owner,

Your business personal property, described above, has been appraised according to state law for tax year 2013. The proposed value for this year is $116,760. Last year this property was appraised for $19,970.

According to our records, the following information is applicable to your property:

| Taxing Jurisdiction | 2012 Taxable Value | 2013 Taxable Value |
| --- | --- | --- |
| Dallas County | $19,970 | $116,760 |
| Dallas Co Community College | $19,970 | $116,760 |
| Parkland Hospital | $19,970 | $116,760 |
| City of Dallas | $19,970 | $116,760 |
| Dallas ISD | $19,970 | $116,760 |

Using the current year's proposed value and last year's tax rates, your estimated levy this year would be $ 3,188. Please understand that the DCAD does not control the tax rate nor the amount of levy as this is the responsibility of each taxing unit. We cannot assist you in questions about taxes, a taxing unit's budget or other activities unrelated to the Appraisal District. **THIS IS NOT A TAX BILL-DO NOT PAY.**

**How to Protest:** Please review the information provided on both the front and back of this correspondence. If you disagree with the value proposed or any other action of the Appraisal District, there are steps you are required to take. To protest, **you must do so in writing no later than June 13, 2013.** A protest form for this purpose is provided below. The Appraisal Review Board will begin hearings on May  15, 2013 and will complete deliberations no later than July 17, 2013. **If you agree with the proposed value, you are not required to file a protest.** If you wish to protest, you must mail the bottom of this form to the address below before the deadline date.

✂ ......**PROCEED PAST THIS POINT ONLY IF YOU WISH TO FILE A PROTEST. IF NOT, NO FURTHER ACTION IS NECESSARY.**......

### NOTICE OF PROTEST FOR YEAR 2013

Owner:  GOOGLE INC
% PROPERTY TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:
400 S AKARD ST LEV3
DALLAS

Account No.: 99090216800000000
Proposed Value: $116,760
Route: TE

Change of Address: _____

It is my desire to file a protest based on the issue(s) checked below. Also, I understand that the Appraisal Review Board (ARB) must notify me of any hearing not later than the 15th day before the date of the hearing pursuant to Section 41.46 of the Texas Property Tax Code. The Chief Appraiser is also required by Section 41.67 to inform me at least 14 days before the scheduled hearing of the availability of data, schedules, formulas and other information the Chief Appraiser plans to present at the hearing, and that I may inspect them and obtain copies of them at the offices of the Appraisal District. It is my desire to protest based on the following issue(s) and I have checked the applicable boxes:

☐ Value is over market value

☐ Value is unequal compared with other properties

☐ Property not located in district

☐ Rendition Penalty

☐ Exemption was denied or cancelled (Specify _____)

☐ Freeport Exemption denied

☐ Ag-Use: Change in use of land appraised as agricultural use, open-space, etc.

☐ Ag-Use: Open-Space or other special appraisal denied or cancelled

☐ Property should not be taxed in district or in one or more taxing units

☐ Ownership is incorrect (Specify _____)

If you wish a copy of the ARB Hearing Procedures, please check the following box: ☐

If you wish to expedite your hearing, waiving the required deadline date under Section 41.46 and 41.67 of the Texas Property Tax Code, please check the following box: ☐

_____        _____        _____
Signature of Owner (or Agent)                    Date Filed                                          (Agent Registration No., if applicable)

_____        _____        _____
Printed Name                                          Daytime/Cell Phone No.                         Fax No./E-Mail Address *

**Protest form must be returned to DCAD at address below no later than June 13, 2013 and must be postmarked by the U.S. Postal Service accordingly.**

Appraisal Review Board,  Business Personal Property Division
PO Box 560368 Dallas, TX 75356-0368  (214) 905-0908
(OVER)

10/12

**IMPORTANT INFORMATION**

**We are required by law to include the following statement:**

> *The Texas Legislature does not set the amount of your local taxes. Your property tax burden is decided by your locally elected officials,  and all inquiries concerning your taxes should be directed to those officials.*

**Informal Settlement of Issues**: If you wish to attempt to resolve any complaint or issue you may have, often this can be done in an informal manner by visiting our office. Also you may call the number listed at the bottom of the front side of this notice and speak to an appraiser about an individual property or you may schedule an appointment with one of our appraisers to discuss several properties. Please understand that we mail thousands of notices at this time. Initially our phone lines will be busy. Keep trying. You have several weeks to respond before the deadline noted on the front of this notice. You may also write, visit our office at 2949 N. Stemmons Freeway, Dallas, Texas 75247-6195, or inquire on our Website at **www.dallascad.org.**

**Receipt of Protest by Appraisal District**: Once the Appraisal Review Board receives your protest, you will be notified by mail with a form called a "Hearing Notification" of the date, time and place of your hearing before the Appraisal Review Board.

Hearings will typically be scheduled within 10 days of receipt of your protest. If you do not receive a hearing notification, please call the DCAD and inquire about your hearing or check the DCAD Website under your property account for hearing information. This will serve as your Hearing Notification. Note: Hearing Date and Time along with the date the protest was received will be on the Website if protested.

**IF PROTESTING MORE THAN ONE ACCOUNT, PLEASE STAPLE TOGETHER OR ACCOUNTS MAY BE SCHEDULED AT SEPARATE DATES AND TIMES. IF YOU FILE YOUR PROTEST MANUALLY, PLEASE ATTACH APPROPRIATE DOCUMENTS TO YOUR PROTEST TO SUPPORT YOUR VALUE.**

**Online Protest/Settlement Program:** You may access the Dallas Central Appraisal District Online Protest System, uFile, by searching your acount at **www.dallascad.org** and then clicking the Online Protest System. You may request your individual PIN No. (#) through this system for easy access. You may protest your property value by utilizing this system, and if your property is eligible under the settlement program, you may settle your protest online using this system. If you file your protest manually, please attach appropriate documentation to your protest to support your value. **If you file a protest online under the Online Protest System, uFile, please do not file a manual or duplicate protest on the property account.**

**About Your Taxes:** The Appraisal District does not control your tax amount. This is decided by each of the local agencies that set tax rates and operating budgets. Complaints about taxes and other governmental actions will not be responded to by either the Appraisal District or the Appraisal Review Board.

**Definition of Values:**

   **Taxable Value** means the market value estimate less any applicable exemptions.

   **Market Value**, simplified, means the price a willing buyer would pay to a willing seller, neither under any duress to consummate the transaction.



**The Appraisal Review Board's only goal is to ensure that each property owner is given a fair and impartial hearing in the most efficient and timely manner.** Members of the ARB are not employees of the Appraisal District. They serve as jurors to arbitrate issues brought before them. The Texas Property Tax Code outlines specific duties for the ARB to follow.

**Filing Deadlines:** While April 30 is the early deadline to file a residence homestead protest and May 31 usually is the last day to file other protests, a different deadline will apply to you if: 1) your notice of appraised value was mailed to you after May 2; 2) your protest concerns a change in use of agricultural, open-space, or timber land; 3) the ARB made a change to the appraisal records that adversely affects you and you received notice of the change; 4) the appraisal district or the ARB was required by law to send a notice about your property and did not; or 5) you had good cause for missing the May 31 protest filing deadline. Contact the ARB for your specific protest filing deadline.

**Weekends, Holidays:** If your deadline falls on a Saturday, Sunday, or legal holiday, it is postponed until midnight of the next business day. On a limited basis, the ARB will conduct formal ARB hearings during the protest period.

**Postponement:** You are entitled to one postponement of the hearing without showing good cause if you have not designated an agent to represent you at the hearing. You are also entitled to postpone your hearing if you or your agent shows reasonable cause for postponement. You must request this postponement to the ARB before the hearing date. The ARB will determine if good cause exists for missing a hearing.

**Useful Information.** If you have purchased your property within the last two years, please include a copy of your closing statement or other official record that will validate the purchase price. If your property is your residence homestead, you may be entitled to a homestead exemption. To qualify, you must have owned and resided on the property as of January 1 of the tax year.

**\* Your e-mail address is confidential according to Section 552.137, Texas Government Code; however, by indicating the e-mail address on this form, you are affirmatively consenting to release under the Public Information Act.**

**THE DALLAS CENTRAL APPRAISAL DISTRICT OFFICES ARE WHEELCHAIR ACCESSIBLE AND PARKING SPACES FOR THE DISABLED ARE PROVIDED. THE DISTRICT WILL PROVIDE SIGN INTERPRETATION SERVICES FOR THE HEARING IMPAIRED AT ANY SCHEDULED HEARING OR MEETING IF AT LEAST 72 HOURS ADVANCE NOTICE IS GIVEN. THE HEARING IMPAIRED CAN CALL TDD AT (214) 819-2368.**

**IF YOU DESIRE ANY SPECIAL ASSISTANCE DURING THE HEARING PROCESS TO ACCOMMODATE ANY DISABILITY THAT YOU HAVE, PLEASE CHECK THE BOX BELOW.**

☐  ADDITIONAL ACCOMMODATIONS NECESSARY. PLEASE SPECIFY: _____

**ADDITIONALLY, TO ARRANGE FOR ANY OTHER SPECIAL SERVICE TO ACCOMMODATE A DISABILITY YOU MAY CONTACT THE ASSISTANT DIRECTOR OF ADMINISTRATION AT (214) 631-0520, EXT. 1107.**

10/12

# – A766 –

## DALLAS CENTRAL APPRAISAL DISTRICT

004-2075

### NOTICE OF APPRAISED VALUE FOR YEAR 2013
### BUSINESS PERSONAL PROPERTY

Account No.: 99110310720000000

Ownership:

GOOGLE INC
ATTN TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:

2323 BRYAN ST TELX

DALLAS

Route: TE

Legal Description:

PERSONAL PROPERTY

GOOGLE INC

Dear  Property Owner,

Your business personal property, described above, has been appraised according to state law for tax year 2013. The proposed value for this year is $112,230. Last year this property was appraised for $19,970.

According to our records, the following information is applicable to your property:

| Taxing Jurisdiction | 2012 Taxable Value | 2013 Taxable Value |
| --- | --- | --- |
| Dallas County | $19,970 | $112,230 |
| Dallas Co Community College | $19,970 | $112,230 |
| Parkland Hospital | $19,970 | $112,230 |
| City of Dallas | $19,970 | $112,230 |
| Dallas ISD | $19,970 | $112,230 |

Using the current year's proposed value and last year's tax rates, your estimated levy this year would be $ 3,065. Please understand that the DCAD does not control the tax rate nor the amount of levy as this is the responsibility of each taxing unit. We cannot assist you in questions about taxes, a taxing unit's budget or other activities unrelated to the Appraisal District. **THIS IS NOT A TAX BILL-DO NOT PAY.**

**How to Protest:** Please review the information provided on both the front and back of this correspondence. If you disagree with the value proposed or any other action of the Appraisal District, there are steps you are required to take. To protest, **you must do so in writing no later than June 13, 2013.** A protest form for this purpose is provided below. The Appraisal Review Board will begin hearings on May  15, 2013 and will complete deliberations no later than July 17, 2013. **If you agree with the proposed value, you are not required to file a protest.** If you wish to protest, you must mail the bottom of this form to the address below before the deadline date.

✂ **PROCEED PAST THIS POINT ONLY IF YOU WISH TO FILE A PROTEST. IF NOT, NO FURTHER ACTION IS NECESSARY.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### NOTICE OF PROTEST FOR YEAR 2013

Owner:  GOOGLE INC
ATTN TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:

2323 BRYAN ST TELX

DALLAS

Account No.: 99110310720000000

Proposed Value: $112,230

Route: TE

Change of Address: _____

It is my desire to file a protest based on the issue(s) checked below. Also, I understand that the Appraisal Review Board (ARB) must notify me of any hearing not later than the 15th day before the date of the hearing pursuant to Section 41.46 of the Texas Property Tax Code. The Chief Appraiser is also required by Section 41.67 to inform me at least 14 days before the scheduled hearing of the availability of data, schedules, formulas and other information the Chief Appraiser plans to present at the hearing, and that I may inspect them and obtain copies of them at the offices of the Appraisal District. It is my desire to protest based on the following issue(s) and I have checked the applicable boxes:

☐ Value is over market value

☐ Value is unequal compared with other properties

☐ Property not located in district

☐ Rendition Penalty

☐ Exemption was denied or cancelled (Specify _____ )

☐ Freeport Exemption denied

☐ Ag-Use: Change in use of land appraised as agricultural use, open-space, etc.

☐ Ag-Use: Open-Space or other special appraisal denied or cancelled

☐ Property should not be taxed in district or in one or more taxing units

☐ Ownership is incorrect (Specify _____ )

If you wish a copy of the ARB Hearing Procedures, please check the following box:

If you wish to expedite your hearing, waiving the required deadline date under Section 41.46 and 41.67 of the Texas Property Tax Code, please check the following box: ☐

_____        _____        _____
Signature of Owner (or Agent)                Date Filed                                (Agent Registration No., if applicable)

_____        _____        _____
Printed Name                                Daytime/Cell Phone No.                        Fax No./E-Mail Address *

**Protest form must be returned to DCAD at address below no later than June 13, 2013 and must be postmarked by the U.S. Postal Service accordingly.**

Appraisal Review Board,  Business Personal Property Division
PO Box 560368 Dallas, TX 75356-0368  (214) 905-0908
(OVER)

10/12

**IMPORTANT INFORMATION**

**We are required by law to include the following statement:**

> *The Texas Legislature does not set the amount of your local taxes. Your property tax burden is decided by your locally elected officials,  and all inquiries concerning your taxes should be directed to those officials.*

**Informal Settlement of Issues**: If you wish to attempt to resolve any complaint or issue you may have, often this can be done in an informal manner by visiting our office. Also you may call the number listed at the bottom of the front side of this notice and speak to an appraiser about an individual property or you may schedule an appointment with one of our appraisers to discuss several properties. Please understand that we mail thousands of notices at this time. Initially our phone lines will be busy. Keep trying. You have several weeks to respond before the deadline noted on the front of this notice. You may also write, visit our office at 2949 N. Stemmons Freeway, Dallas, Texas 75247-6195, or inquire on our Website at **www.dallascad.org.**

**Receipt of Protest by Appraisal District**: Once the Appraisal Review Board receives your protest, you will be notified by mail with a form called a "Hearing Notification" of the date, time and place of your hearing before the Appraisal Review Board.

Hearings will typically be scheduled within 10 days of receipt of your protest. If you do not receive a hearing notification, please call the DCAD and inquire about your hearing or check the DCAD Website under your property account for hearing information. This will serve as your Hearing Notification. Note: Hearing Date and Time along with the date the protest was received will be on the Website if protested.

**IF PROTESTING MORE THAN ONE ACCOUNT, PLEASE STAPLE TOGETHER OR ACCOUNTS MAY BE SCHEDULED AT SEPARATE DATES AND TIMES. IF YOU FILE YOUR PROTEST MANUALLY, PLEASE ATTACH APPROPRIATE DOCUMENTS TO YOUR PROTEST TO SUPPORT YOUR VALUE.**

**Online Protest/Settlement Program:** You may access the Dallas Central Appraisal District Online Protest System, uFile, by searching your acount at **www.dallascad.org** and then clicking the Online Protest System. You may request your individual PIN No. (#) through this system for easy access. You may protest your property value by utilizing this system, and if your property is eligible under the settlement program, you may settle your protest online using this system. If you file your protest manually, please attach appropriate documentation to your protest to support your value. **If you file a protest online under the Online Protest System, uFile, please do not file a manual or duplicate protest on the property account.**

**About Your Taxes:** The Appraisal District does not control your tax amount. This is decided by each of the local agencies that set tax rates and operating budgets. Complaints about taxes and other governmental actions will not be responded to by either the Appraisal District or the Appraisal Review Board.

**Definition of Values:**

  **Taxable Value** means the market value estimate less any applicable exemptions.

  **Market Value**, simplified, means the price a willing buyer would pay to a willing seller, neither under any duress to consummate the transaction.



**The Appraisal Review Board's only goal is to ensure that each property owner is given a fair and impartial hearing in the most efficient and timely manner.** Members of the ARB are not employees of the Appraisal District. They serve as jurors to arbitrate issues brought before them. The Texas Property Tax Code outlines specific duties for the ARB to follow.

**Filing Deadlines:** While April 30 is the early deadline to file a residence homestead protest and May 31 usually is the last day to file other protests, a different deadline will apply to you if: 1) your notice of appraised value was mailed to you after May 2; 2) your protest concerns a change in use of agricultural, open-space, or timber land; 3) the ARB made a change to the appraisal records that adversely affects you and you received notice of the change; 4) the Appraisal district or the ARB was required by law to send a notice about your property and did not; or 5) you had good cause for missing the May 31 protest filing deadline. Contact the ARB for your protest filing deadline.

**Weekends, Holidays:** If your deadline falls on a Saturday, Sunday, or legal holiday, it is postponed until midnight of the next business day. On a limited basis, the ARB will conduct formal ARB hearings during the protest period.

**Postponement:** You are entitled to one postponement of the hearing without showing good cause if you have not designated an agent to represent you at the hearing. You are also entitled to postpone your hearing if you or your agent shows reasonable cause for postponement. You must request this postponement to the ARB before the hearing date. The ARB will determine if good cause exists for missing a hearing.

**Useful Information.** If you have purchased your property within the last two years, please include a copy of your closing statement or other official record that will validate the purchase price. If your property is your residence homestead, you may be entitled to a homestead exemption. To qualify, you must have owned and resided on the property as of January 1 of the tax year.

**\* Your e-mail address is confidential according to Section 552.137, Texas Government Code; however, by indicating the e-mail address on this form, you are affirmatively consenting to release under the Public Information Act.**

**THE DALLAS CENTRAL APPRAISAL DISTRICT OFFICES ARE WHEELCHAIR ACCESSIBLE AND PARKING SPACES FOR THE DISABLED ARE PROVIDED. THE DISTRICT WILL PROVIDE SIGN INTERPRETATION SERVICES FOR THE HEARING IMPAIRED AT ANY SCHEDULED HEARING OR MEETING IF AT LEAST 72 HOURS ADVANCE NOTICE IS GIVEN. THE HEARING IMPAIRED CAN CALL TDD AT (214) 819-2368.**

**IF YOU DESIRE ANY SPECIAL ASSISTANCE DURING THE HEARING PROCESS TO ACCOMMODATE ANY DISABILITY THAT YOU HAVE, PLEASE CHECK THE BOX BELOW.**

☐  ADDITIONAL ACCOMMODATIONS NECESSARY. PLEASE SPECIFY: _____

**ADDITIONALLY, TO ARRANGE FOR ANY OTHER SPECIAL SERVICE TO ACCOMMODATE A DISABILITY YOU MAY CONTACT THE ASSISTANT DIRECTOR OF ADMINISTRATION AT (214) 631-0520, EXT. 1107.**

10/12

## DALLAS CENTRAL APPRAISAL DISTRICT
### NOTICE OF APPRAISED VALUE FOR YEAR 2013
### BUSINESS PERSONAL PROPERTY

003-4962

Account No.: 99100302400000000

Ownership:

GOOGLE INC
% PROPERTY TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:
3180 IRVING BLVD LEV3
DALLAS
Route: TE

Legal Description:
PERSONAL PROPERTY
GOOGLE INC

Dear  Property Owner,

Your business personal property, described above, has been appraised according to state law for tax year 2013. The proposed value for this year is $123,930. Last year this property was appraised for $123,980.

According to our records, the following information is applicable to your property:

| Taxing Jurisdiction | 2012 Taxable Value | 2013 Taxable Value |
|---|---|---|
| Dallas County | $123,980 | $123,930 |
| Dallas Co Community College | $123,980 | $123,930 |
| Parkland Hospital | $123,980 | $123,930 |
| City of Dallas | $123,980 | $123,930 |
| Dallas ISD | $123,980 | $123,930 |

Using the current year's proposed value and last year's tax rates, your estimated levy this year would be $ 3,384. Please understand that the DCAD does not control the tax rate nor the amount of levy as this is the responsibility of each taxing unit. We cannot assist you in questions about taxes, a taxing unit's budget or other activities unrelated to the Appraisal District. **THIS IS NOT A TAX BILL-DO NOT PAY.**

**How to Protest:** Please review the information provided on both the front and back of this correspondence. If you disagree with the value proposed or any other action of the Appraisal District, there are steps you are required to take. To protest, **you must do so in writing no later than June 13, 2013.** A protest form for this purpose is provided below. The Appraisal Review Board will begin hearings on May  15, 2013 and will complete deliberations no later than July 17, 2013. **If you agree with the proposed value, you are not required to file a protest.** If you wish to protest, you must mail the bottom of this form to the address below before the deadline date.

✂ **PROCEED PAST THIS POINT ONLY IF YOU WISH TO FILE A PROTEST. IF NOT, NO FURTHER ACTION IS NECESSARY.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### NOTICE OF PROTEST FOR YEAR 2013

Owner:  GOOGLE INC
% PROPERTY TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:
3180 IRVING BLVD LEV3
DALLAS

Account No.: 99100302400000000
Proposed Value: $123,930
Route: TE

Change of Address: _____

It is my desire to file a protest based on the issue(s) checked below. Also, I understand that the Appraisal Review Board (ARB) must notify me of any hearing not later than the 15th day before the date of the hearing pursuant to Section 41.46 of the Texas Property Tax Code. The Chief Appraiser is also required by Section 41.67 to inform me at least 14 days before the scheduled hearing of the availability of data, schedules, formulas and other information the Chief Appraiser plans to present at the hearing, and that I may inspect them and obtain copies of them at the offices of the Appraisal District. It is my desire to protest based on the following issue(s) and I have checked the applicable boxes:

☐ Value is over market value

☐ Value is unequal compared with other properties

☐ Property not located in district

☐ Rendition Penalty

☐ Exemption was denied or cancelled (Specify _____)

☐ Freeport Exemption denied

☐ Ag-Use: Change in use of land appraised as agricultural use, open-space, etc.

☐ Ag-Use: Open-Space or other special appraisal denied or cancelled

☐ Property should not be taxed in district or in one or more taxing units

☐ Ownership is incorrect (Specify _____)

If you wish a copy of the ARB Hearing Procedures, please check the following box:

If you wish to expedite your hearing, waiving the required deadline date under Section 41.46 and 41.67 of the Texas Property Tax Code, please check the following box: ☐

_____     _____     _____
Signature of Owner (or Agent)              Date Filed                              (Agent Registration No., if applicable)

_____     _____     _____
Printed Name                               Daytime/Cell Phone No.                   Fax No./E-Mail Address *

**Protest form must be returned to DCAD at address below no later than June 13, 2013 and must be postmarked by the U.S. Postal Service accordingly.**

Appraisal Review Board,  Business Personal Property Division
PO Box 560368 Dallas, TX 75356-0368  (214) 905-0908
(OVER)

10/12

**IMPORTANT INFORMATION**

**We are required by law to include the following statement:**

> *The Texas Legislature does not set the amount of your local taxes. Your property tax burden is decided by your locally elected officials,  and all inquiries concerning your taxes should be directed to those officials.*

**Informal Settlement of Issues**: If you wish to attempt to resolve any complaint or issue you may have, often this can be done in an informal manner by visiting our office. Also you may call the number listed at the bottom of the front side of this notice and speak to an appraiser about an individual property or you may schedule an appointment with one of our appraisers to discuss several properties. Please understand that we mail thousands of notices at this time. Initially our phone lines will be busy. Keep trying. You have several weeks to respond before the deadline noted on the front of this notice. You may also write, visit our office at 2949 N. Stemmons Freeway, Dallas, Texas 75247-6195, or inquire on our Website at **www.dallascad.org.**

**Receipt of Protest by Appraisal District**: Once the Appraisal Review Board receives your protest, you will be notified by mail with a form called a "Hearing Notification" of the date, time and place of your hearing before the Appraisal Review Board.

Hearings will typically be scheduled within 10 days of receipt of your protest. If you do not receive a hearing notification, please call the DCAD and inquire about your hearing or check the DCAD Website under your property account for hearing information. This will serve as your Hearing Notification. Note: Hearing Date and Time along with the date the protest was received will be on the Website if protested.

**IF PROTESTING MORE THAN ONE ACCOUNT, PLEASE STAPLE TOGETHER OR ACCOUNTS MAY BE SCHEDULED AT SEPARATE DATES AND TIMES. IF YOU FILE YOUR PROTEST MANUALLY, PLEASE ATTACH APPROPRIATE DOCUMENTS TO YOUR PROTEST TO SUPPORT YOUR VALUE.**

**Online Protest/Settlement Program:** You may access the Dallas Central Appraisal District Online Protest System, uFile, by searching your acount at **www.dallascad.org** and then clicking the Online Protest System. You may request your individual PIN No. (#) through this system for easy access. You may protest your property value by utilizing this system, and if your property is eligible under the settlement program, you may settle your protest online using this system. If you file your protest manually, please attach appropriate documentation to your protest to support your value. **If you file a protest online under the Online Protest System, uFile, please do not file a manual or duplicate protest on the property account.**

**About Your Taxes:** The Appraisal District does not control your tax amount. This is decided by each of the local agencies that set tax rates and operating budgets. Complaints about taxes and other governmental actions will not be responded to by either the Appraisal District or the Appraisal Review Board.

**Definition of Values:**

> **Taxable Value** means the market value estimate less any applicable exemptions.

> **Market Value**, simplified, means the price a willing buyer would pay to a willing seller, neither under any duress to consummate the transaction.



**The Appraisal Review Board's only goal is to ensure that each property owner is given a fair and impartial hearing in the most efficient and timely manner.** Members of the ARB are not employees of the Appraisal District. They serve as jurors to arbitrate issues brought before them. The Texas Property Tax Code outlines specific duties for the ARB to follow.

**Filing Deadlines:** While April 30 is the early deadline to file a residence homestead protest and May 31 usually is the last day to file other protests, a different deadline will apply to you if: 1) your notice of appraised value was mailed to you after May 2; 2) your protest concerns a change in use of agricultural, open-space, or timber land; 3) the ARB made a change to the appraisal records that adversely affects you and you received notice of the change; 4) the appraisal district or the ARB was required by law to send a notice about your property and did not; or 5) you had good cause for missing the May 31 protest filing deadline. Contact the ARB for your specific protest filing deadline.

**Weekends, Holidays:** If your deadline falls on a Saturday, Sunday, or legal holiday, it is postponed until midnight of the next business day. On a limited basis, the ARB will conduct formal ARB hearings during the protest period.

**Postponement:** You are entitled to one postponement of the hearing without showing good cause if you have not designated an agent to represent you at the hearing. You are also entitled to postpone your hearing if you or your agent shows reasonable cause for postponement. You must request this postponement to the ARB before the hearing date. The ARB will determine if good cause exists for missing a hearing.

**Useful Information.** If you have purchased your property within the last two years, please include a copy of your closing statement or other official record that will validate the purchase price. If your property is your residence homestead, you may be entitled to a homestead exemption. To qualify, you must have owned and resided on the property as of January 1 of the tax year.

* **Your e-mail address is confidential according to Section 552.137, Texas Government Code; however, by indicating the e-mail address on this form, you are affirmatively consenting to release under the Public Information Act.**

**THE DALLAS CENTRAL APPRAISAL DISTRICT OFFICES ARE WHEELCHAIR ACCESSIBLE AND PARKING SPACES FOR THE DISABLED ARE PROVIDED. THE DISTRICT WILL PROVIDE SIGN INTERPRETATION SERVICES FOR THE HEARING IMPAIRED AT ANY SCHEDULED HEARING OR MEETING IF AT LEAST 72 HOURS ADVANCE NOTICE IS GIVEN. THE HEARING IMPAIRED CAN CALL TDD AT (214) 819-2368.**

**IF YOU DESIRE ANY SPECIAL ASSISTANCE DURING THE HEARING PROCESS TO ACCOMMODATE ANY DISABILITY THAT YOU HAVE, PLEASE CHECK THE BOX BELOW.**

☐ ADDITIONAL ACCOMMODATIONS NECESSARY. PLEASE SPECIFY: _____

**ADDITIONALLY, TO ARRANGE FOR ANY OTHER SPECIAL SERVICE TO ACCOMMODATE A DISABILITY YOU MAY CONTACT THE ASSISTANT DIRECTOR OF ADMINISTRATION AT (214) 631-0520, EXT. 1107.**

10/12

**DALLAS CENTRAL APPRAISAL DISTRICT**

**NOTICE OF APPRAISED VALUE FOR YEAR 2013**

**BUSINESS PERSONAL PROPERTY**

002-4313

Account No.: 99071217440000000

Ownership:

GOOGLE INC
ATTN TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:

3102 OAK LAWN AVE 202

DALLAS

Route: TE

Legal Description:

PERSONAL PROPERTY

GOOGLE

Dear  Property Owner,

Your business personal property, described above, has been appraised according to state law for tax year 2013. The proposed value for this year is $548,040. Last year this property was appraised for $949,490.

According to our records, the following information is applicable to your property:

| Taxing Jurisdiction | 2012 Taxable Value | 2013 Taxable Value |
|---|---|---|
| Dallas County | $949,490 | $548,040 |
| Dallas Co Community College | $949,490 | $548,040 |
| Parkland Hospital | $949,490 | $548,040 |
| City of Dallas | $949,490 | $548,040 |
| Dallas ISD | $949,490 | $548,040 |

Using the current year's proposed value and last year's tax rates, your estimated levy this year would be $ 14,966. Please understand that the DCAD does not control the tax rate nor the amount of levy as this is the responsibility of each taxing unit. We cannot assist you in questions about taxes, a taxing unit's budget or other activities unrelated to the Appraisal District. **THIS IS NOT A TAX BILL-DO NOT PAY.**

**How to Protest:** Please review the information provided on both the front and back of this correspondence. If you disagree with the value proposed or any other action of the Appraisal District, there are steps you are required to take. To protest, **you must do so in writing no later than June 13, 2013.** A protest form for this purpose is provided below. The Appraisal Review Board will begin hearings on May  15, 2013 and will complete deliberations no later than July 17, 2013. **If you agree with the proposed value, you are not required to file a protest.** If you wish to protest, you must mail the bottom of this form to the address below before the deadline date.

- - - - - ✂ **PROCEED PAST THIS POINT ONLY IF YOU WISH TO FILE A PROTEST. IF NOT, NO FURTHER ACTION IS NECESSARY.** - - - - - - - - - - -

**NOTICE OF PROTEST FOR YEAR 2013**

Owner:  GOOGLE INC
ATTN TAX DEPT
BLDG 41
1600 AMPHITHEATRE PKWY
MOUNTAIN VIEW, CA 94043-1351

Property Address:

3102 OAK LAWN AVE 202

DALLAS

Account No.: 99071217440000000

Proposed Value: $548,040

Route: TE

Change of Address: _____

It is my desire to file a protest based on the issue(s) checked below. Also, I understand that the Appraisal Review Board (ARB) must notify me of any hearing not later than the 15th day before the date of the hearing pursuant to Section 41.46 of the Texas Property Tax Code. The Chief Appraiser is also required by Section 41.67 to inform me at least 14 days before the scheduled hearing of the availability of data, schedules, formulas and other information the Chief Appraiser plans to present at the hearing, and that I may inspect them and obtain copies of them at the offices of the Appraisal District. It is my desire to protest based on the following issue(s) and I have checked the applicable boxes:

☐ Value is over market value

☐ Value is unequal compared with other properties

☐ Property not located in district

☐ Rendition Penalty

☐ Exemption was denied or cancelled (Specify _____)

☐ Freeport Exemption denied

☐ Ag-Use: Change in use of land appraised as agricultural use, open-space, etc.

☐ Ag-Use: Open-Space or other special appraisal denied or cancelled

☐ Property should not be taxed in district or in one or more taxing units

☐ Ownership is incorrect (Specify _____)

If you wish a copy of the ARB Hearing Procedures, please check the following box:

If you wish to expedite your hearing, waiving the required deadline date under Section 41.46 and 41.67 of the Texas Property Tax Code, please check the following box: ☐

_____         _____         _____
Signature of Owner (or Agent)                   Date Filed                                        (Agent Registration No., if applicable)

_____         _____         _____
Printed Name                                         Daytime/Cell Phone No.                         Fax No./E-Mail Address *

**Protest form must be returned to DCAD at address below no later than June 13, 2013 and must be postmarked by the U.S. Postal Service accordingly.**

Appraisal Review Board,  Business Personal Property Division
PO Box 560368 Dallas, TX 75356-0368  (214) 905-0908
(OVER)
10/12

**– A771 –**

**IMPORTANT INFORMATION**

**We are required by law to include the following statement:**

> *The Texas Legislature does not set the amount of your local taxes. Your property tax burden is decided by your locally elected officials,  and all inquiries concerning your taxes should be directed to those officials.*

**Informal Settlement of Issues**: If you wish to attempt to resolve any complaint or issue you may have, often this can be done in an informal manner by visiting our office. Also you may call the number listed at the bottom of the front side of this notice and speak to an appraiser about an individual property or you may schedule an appointment with one of our appraisers to discuss several properties. Please understand that we mail thousands of notices at this time. Initially our phone lines will be busy. Keep trying. You have several weeks to respond before the deadline noted on the front of this notice. You may also write, visit our office at 2949 N. Stemmons Freeway, Dallas, Texas 75247-6195, or inquire on our Website at **www.dallascad.org.**

**Receipt of Protest by Appraisal District**: Once the Appraisal Review Board receives your protest, you will be notified by mail with a form called a "Hearing Notification" of the date, time and place of your hearing before the Appraisal Review Board.

Hearings will typically be scheduled within 10 days of receipt of your protest. If you do not receive a hearing notification, please call the DCAD and inquire about your hearing or check the DCAD Website under your property account for hearing information. This will serve as your Hearing Notification. Note: Hearing Date and Time along with the date the protest was received will be on the Website if protested.

**IF PROTESTING MORE THAN ONE ACCOUNT, PLEASE STAPLE TOGETHER OR ACCOUNTS MAY BE SCHEDULED AT SEPARATE DATES AND TIMES. IF YOU FILE YOUR PROTEST MANUALLY, PLEASE ATTACH APPROPRIATE DOCUMENTS TO YOUR PROTEST TO SUPPORT YOUR VALUE.**

**Online Protest/Settlement Program:** You may access the Dallas Central Appraisal District Online Protest System, uFile, by searching your acount at **www.dallascad.org** and then clicking the Online Protest System. You may request your individual PIN No. (#) through this system for easy access. You may protest your property value by utilizing this system, and if your property is eligible under the settlement program, you may settle your protest online using this system. If you file your protest manually, please attach appropriate documentation to your protest to support your value. **If you file a protest online under the Online Protest System, uFile, please do not file a manual or duplicate protest on the property account.**

**About Your Taxes:** The Appraisal District does not control your tax amount. This is decided by each of the local agencies that set tax rates and operating budgets. Complaints about taxes and other governmental actions will not be responded to by either the Appraisal District or the Appraisal Review Board.

**Definition of Values:**

**Taxable Value** means the market value estimate less any applicable exemptions.

**Market Value**, simplified, means the price a willing buyer would pay to a willing seller, neither under any duress to consummate the transaction.



**The Appraisal Review Board's only goal is to ensure that each property owner is given a fair and impartial hearing in the most efficient and timely manner.** Members of the ARB are not employees of the Appraisal District. They serve as jurors to arbitrate issues brought before them. The Texas Property Tax Code outlines specific duties for the ARB to follow.

**Filing Deadlines:** While April 30 is the early deadline to file a residence homestead protest and May 31 usually is the last day to file other protests, a different deadline will apply to you if: 1) your notice of appraised value was mailed to you after May 2; 2) your protest concerns a change in use of agricultural, open-space, or timber land; 3) the ARB made a change to the appraisal records that adversely affects you and you received notice of the change; 4) the appraisal district or the ARB was required by law to send a notice about your property and did not; or 5) you had good cause for missing the May 31 protest filing deadline. Contact the ARB for your specific protest filing deadline.

**Weekends, Holidays:** If your deadline falls on a Saturday, Sunday, or legal holiday, it is postponed until midnight of the next business day. On a limited basis, the ARB will conduct formal ARB hearings during the protest period.

**Postponement:** You are entitled to one postponement of the hearing without showing good cause if you have not designated an agent to represent you at the hearing. You are also entitled to postpone your hearing if you or your agent shows reasonable cause for postponement. You must request this postponement to the ARB before the hearing date. The ARB will determine if good cause exists for missing a hearing.

**Useful Information.** If you have purchased your property within the last two years, please include a copy of your closing statement or other official record that will validate the purchase price. If your property is your residence homestead, you may be entitled to a homestead exemption. To qualify, you must have owned and resided on the property as of January 1 of the tax year.

* **Your e-mail address is confidential according to Section 552.137, Texas Government Code; however, by indicating the e-mail address on this form, you are affirmatively consenting to release under the Public Information Act.**

**THE DALLAS CENTRAL APPRAISAL DISTRICT OFFICES ARE WHEELCHAIR ACCESSIBLE AND PARKING SPACES FOR THE DISABLED ARE PROVIDED. THE DISTRICT WILL PROVIDE SIGN INTERPRETATION SERVICES FOR THE HEARING IMPAIRED AT ANY SCHEDULED HEARING OR MEETING IF AT LEAST 72 HOURS ADVANCE NOTICE IS GIVEN. THE HEARING IMPAIRED CAN CALL TDD AT (214) 819-2368.**

**IF YOU DESIRE ANY SPECIAL ASSISTANCE DURING THE HEARING PROCESS TO ACCOMMODATE ANY DISABILITY THAT YOU HAVE, PLEASE CHECK THE BOX BELOW.**

☐ ADDITIONAL ACCOMMODATIONS NECESSARY. PLEASE SPECIFY: _____

**ADDITIONALLY, TO ARRANGE FOR ANY OTHER SPECIAL SERVICE TO ACCOMMODATE A DISABILITY YOU MAY CONTACT THE ASSISTANT DIRECTOR OF ADMINISTRATION AT (214) 631-0520, EXT. 1107.**

10/12

# – A772 –

## DALLAS CENTRAL APPRAISAL DISTRICT
002-4798
### NOTICE OF APPRAISED VALUE FOR YEAR 2013
### BUSINESS PERSONAL PROPERTY

Account No.: 99080124730000000

Ownership:

    GOOGLE INC
    ATTN TAX DEPT
    BLDG 41
    1600 AMPHITHEATRE PKWY
    MOUNTAIN VIEW, CA 94043-1351

Property Address:
1950 N STEMMONS FWY EQUIN
DALLAS
Route: TE

Legal Description:
PERSONAL PROPERTY
YOUTUBE

Dear Property Owner,

Your business personal property, described above, has been appraised according to state law for tax year 2013. The proposed value for this year is $4,532,130. Last year this property was appraised for $3,994,470.

According to our records, the following information is applicable to your property:

| Taxing Jurisdiction | 2012 Taxable Value | 2013 Taxable Value |
|---|---|---|
| Dallas County | $3,994,470 | $4,532,130 |
| Dallas Co Community College | $3,994,470 | $4,532,130 |
| Parkland Hospital | $3,994,470 | $4,532,130 |
| City of Dallas | $3,994,470 | $4,532,130 |
| Dallas ISD | $3,994,470 | $4,532,130 |

Using the current year's proposed value and last year's tax rates, your estimated levy this year would be $ 123,762. Please understand that the DCAD does not control the tax rate nor the amount of levy as this is the responsibility of each taxing unit. We cannot assist you in questions about taxes, a taxing unit's budget or other activities unrelated to the Appraisal District. **THIS IS NOT A TAX BILL-DO NOT PAY.**

**How to Protest:** Please review the information provided on both the front and back of this correspondence. If you disagree with the value proposed or any other action of the Appraisal District, there are steps you are required to take. To protest, **you must do so in writing no later than June 13, 2013.** A protest form for this purpose is provided below. The Appraisal Review Board will begin hearings on May 15, 2013 and will complete deliberations no later than July 17, 2013. **If you agree with the proposed value, you are not required to file a protest.** If you wish to protest, you must mail the bottom of this form to the address below before the deadline date.

✂ **PROCEED PAST THIS POINT ONLY IF YOU WISH TO FILE A PROTEST. IF NOT, NO FURTHER ACTION IS NECESSARY.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### NOTICE OF PROTEST FOR YEAR 2013

Owner: GOOGLE INC
    ATTN TAX DEPT
    BLDG 41
    1600 AMPHITHEATRE PKWY
    MOUNTAIN VIEW, CA 94043-1351

Property Address:
1950 N STEMMONS FWY EQUIN
DALLAS

Account No.: 99080124730000000
Proposed Value: $4,532,130
Route: TE



Change of Address: _____

It is my desire to file a protest based on the issue(s) checked below. Also, I understand that the Appraisal Review Board (ARB) must notify me of any hearing not later than the 15th day before the date of the hearing pursuant to Section 41.46 of the Texas Property Tax Code. The Chief Appraiser is also required by Section 41.67 to inform me at least 14 days before the scheduled hearing of the availability of data, schedules, formulas and other information the Chief Appraiser plans to present at the hearing, and that I may inspect them and obtain copies of them at the offices of the Appraisal District. It is my desire to protest based on the following issue(s) and I have checked the applicable boxes:

☐ Value is over market value

☐ Value is unequal compared with other properties

☐ Property not located in district

☐ Rendition Penalty

☐ Exemption was denied or cancelled (Specify _____)

☐ Freeport Exemption denied

☐ Ag-Use: Change in use of land appraised as agricultural use, open-space, etc.

☐ Ag-Use: Open-Space or other special appraisal denied or cancelled

☐ Property should not be taxed in district or in one or more taxing units

☐ Ownership is incorrect (Specify _____)

If you wish a copy of the ARB Hearing Procedures, please check the following box:

If you wish to expedite your hearing, waiving the required deadline date under Section 41.46 and 41.67 of the Texas Property Tax Code, please check the following box: ☐

_____  _____  _____
Signature of Owner (or Agent)          Date Filed          (Agent Registration No., if applicable)

_____  _____  _____
Printed Name          Daytime/Cell Phone No.          Fax No./E-Mail Address *

**Protest form must be returned to DCAD at address below no later than June 13, 2013 and must be postmarked by the U.S. Postal Service accordingly.**

Appraisal Review Board, Business Personal Property Division
PO Box 560368 Dallas, TX 75356-0368 (214) 905-0908
(OVER)

10/12

**IMPORTANT INFORMATION**

**We are required by law to include the following statement:**

*The Texas Legislature does not set the amount of your local taxes. Your property tax burden is decided by your locally elected officials, and all inquiries concerning your taxes should be directed to those officials.*

**Informal Settlement of Issues**: If you wish to attempt to resolve any complaint or issue you may have, often this can be done in an informal manner by visiting our office. Also you may call the number listed at the bottom of the front side of this notice and speak to an appraiser about an individual property or you may schedule an appointment with one of our appraisers to discuss several properties. Please understand that we mail thousands of notices at this time. Initially our phone lines will be busy. Keep trying. You have several weeks to respond before the deadline noted on the front of this notice. You may also write, visit our office at 2949 N. Stemmons Freeway, Dallas, Texas 75247-6195, or inquire on our Website at **www.dallascad.org.**

**Receipt of Protest by Appraisal District**: Once the Appraisal Review Board receives your protest, you will be notified by mail with a form called a "Hearing Notification" of the date, time and place of your hearing before the Appraisal Review Board.

Hearings will typically be scheduled within 10 days of receipt of your protest. If you do not receive a hearing notification, please call the DCAD and inquire about your hearing or check the DCAD Website under your property account for hearing information. This will serve as your Hearing Notification. Note: Hearing Date and Time along with the date the protest was received will be on the Website if protested.

**IF PROTESTING MORE THAN ONE ACCOUNT, PLEASE STAPLE TOGETHER OR ACCOUNTS MAY BE SCHEDULED AT SEPARATE DATES AND TIMES. IF YOU FILE YOUR PROTEST MANUALLY, PLEASE ATTACH APPROPRIATE DOCUMENTS TO YOUR PROTEST TO SUPPORT YOUR VALUE.**

**Online Protest/Settlement Program:** You may access the Dallas Central Appraisal District Online Protest System, uFile, by searching your acount at **www.dallascad.org** and then clicking the Online Protest System. You may request your individual PIN No. (#) through this system for easy access. You may protest your property value by utilizing this system, and if your property is eligible under the settlement program, you may settle your protest online using this system. If you file your protest manually, please attach appropriate documentation to your protest to support your value. **If you file a protest online under the Online Protest System, uFile, please do not file a manual or duplicate protest on the property account.**

**About Your Taxes:** The Appraisal District does not control your tax amount. This is decided by each of the local agencies that set tax rates and operating budgets. Complaints about taxes and other governmental actions will not be responded to by either the Appraisal District or the Appraisal Review Board.

**Definition of Values:**

    **Taxable Value** means the market value estimate less any applicable exemptions.

    **Market Value**, simplified, means the price a willing buyer would pay to a willing seller, neither under any duress to consummate the transaction.



**The Appraisal Review Board's only goal is to ensure that each property owner is given a fair and impartial hearing in the most efficient and timely manner.** Members of the ARB are not employees of the Appraisal District. They serve as jurors to arbitrate issues brought before them. The Texas Property Tax Code outlines specific duties for the ARB to follow.

**Filing Deadlines:** While April 30 is the early deadline to file a residence homestead protest and May 31 usually is the last day to file other protests, a different deadline will apply to you if: 1) your notice of appraised value was mailed to you after May 2; 2) your protest concerns a change in use of agricultural, open-space, or timber land; 3) the ARB made a change to the appraisal records that adversely affects you and you received notice of the change; 4) the appraisal district or the ARB was required by law to send a notice about your property and did not; or 5) you had good cause for missing the May 31 protest filing deadline. Contact the ARB for your specific protest filing deadline.

**Weekends, Holidays:** If your deadline falls on a Saturday, Sunday, or legal holiday, it is postponed until midnight of the next business day. On a limited basis, the ARB will conduct formal ARB hearings during the protest period.

**Postponement:** You are entitled to one postponement of the hearing without showing good cause if you have not designated an agent to represent you at the hearing. You are also entitled to postpone your hearing if you or your agent shows reasonable cause for postponement. You must request this postponement to the ARB before the hearing date. The ARB will determine if good cause exists for missing a hearing.

**Useful Information.** If you have purchased your property within the last two years, please include a copy of your closing statement or other official record that will validate the purchase price. If your property is your residence homestead, you may be entitled to a homestead exemption. To qualify, you must have owned and resided on the property as of January 1 of the tax year.

***** Your e-mail address is confidential according to Section 552.137, Texas Government Code; however, by indicating the e-mail address on this form, you are affirmatively consenting to release under the Public Information Act.**

**THE DALLAS CENTRAL APPRAISAL DISTRICT OFFICES ARE WHEELCHAIR ACCESSIBLE AND PARKING SPACES FOR THE DISABLED ARE PROVIDED. THE DISTRICT WILL PROVIDE SIGN INTERPRETATION SERVICES FOR THE HEARING IMPAIRED AT ANY SCHEDULED HEARING OR MEETING IF AT LEAST 72 HOURS ADVANCE NOTICE IS GIVEN. THE HEARING IMPAIRED CAN CALL TDD AT (214) 819-2368.**

**IF YOU DESIRE ANY SPECIAL ASSISTANCE DURING THE HEARING PROCESS TO ACCOMMODATE ANY DISABILITY THAT YOU HAVE, PLEASE CHECK THE BOX BELOW.**

☐ ADDITIONAL ACCOMMODATIONS NECESSARY. PLEASE SPECIFY: _____

**ADDITIONALLY, TO ARRANGE FOR ANY OTHER SPECIAL SERVICE TO ACCOMMODATE A DISABILITY YOU MAY CONTACT THE ASSISTANT DIRECTOR OF ADMINISTRATION AT (214) 631-0520, EXT. 1107.**

10/12

**– A774 –**

# EXHIBIT 3



# EXHIBIT 4



## Careers

Skip to content

# Google Austin  <span>8+1</span> <span>0</span>

We mostly focus on sales, marketing and staffing, and like most of Google, we're growing fast, with new, Texan-sized opportunities opening up all the time.

- **Image**
- Map



## Accomplishments

We're focused mainly on sales, marketing and staffing.

## Stats

**– A778 –**

*Some of our conference rooms are named:* Stevie Ray Vaughan, La Zona Rosa, Pecan Street

## Address

Google Austin
9606 North MoPac Expressway
Suite 700
Austin, Texas 78759

# Inside Google Austin

Ever since we opened our office in the music capital of the world, we've been infusing a little bit of Austin in all we do - from the conference rooms named for musicians to the Airstream trailer that serves as our front lobby desk. We mostly focus on sales, marketing and staffing, and like most of Google, we're growing fast, with new, Texan-sized opportunities opening up all the time.

View jobs in Austin

## Teams in Austin

- Developer Relations & Technical Solutions
- Sales & Account Management
- Product & Customer Support
- Sales Operations
- People Operations

## Featured locations

- Mountain View (Global HQ)
- New York
- San Bruno (YouTube)
- Dublin (EU HQ)
- London

## Locations near Austin

- Dallas
- Mayes County
- Kansas City
- Council Bluffs

**– A779 –**

# EXHIBIT 5



## Careers

Skip to content

# Google Dallas  $g$+1  0

- **Image**
- Map



**View jobs in Dallas**

## Teams in Dallas

- Engineering & Design
- Sales & Account Management

## Featured locations

**– A781 –**

- Mountain View (Global HQ)
- New York
- San Bruno (YouTube)
- Dublin (EU HQ)
- London

## Locations near Dallas

- Austin
- Mayes County
- Kansas City
- Council Bluffs

**– A782 –**

# EXHIBIT 6

# TEXAS SECRETARY OF STATE

## NANDITA BERRY

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| Filing Number: | 14499611 | Entity Type: | Foreign Limited Liability Company (LLC) |
| Original Date of Filing: | January 2, 2001 | Entity Status: | In existence |
| Formation Date: | N/A | | |
| Tax ID: | 16503040418 | FEIN: | 650304041 |
| Name: | Samsung Telecommunications America, LLC | | |
| Address: | 1301 E LOOKOUT DR RICHARDSON, TX 75082-4124 USA | | |
| Fictitious Name: | N/A | | |
| Jurisdiction: | DE, USA | | |
| Foreign Formation Date: | January 1, 2007 | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| Corporation Service Company dba CSC - Lawyers Incorporating Service Company | 211 E. 7th Street, Suite 620 Austin, TX 78701-3218 USA | |

Instructions:

● To place an order for additional information about a filing press the 'Order' button.

# EXHIBIT 7



LIFE AT
SAMSUNG MOBILE      SAMSUNG MOBILE
PRODUCTS      CAREERS      CURRENT
OPPORTUNITIES

Samsung Mobile Recruiting » Life At Samsung Mobile » Our Company

## Our Company



Samsung Telecommunications America (STA) was established by Samsung Electronics Corporation in 1992. From its Dallas, Texas headquarters, STA researches, develops and markets a variety of personal and business communications products throughout North America including handheld wireless phones, wireless communications infrastructure systems and enterprise communication systems.

Today, STA's Mobile Handset division remains the fastest growing business segment in the history of its parent company, Samsung Electronics, Ltd. The division has been recognized as the number one mobile phone manufacturer in customer loyalty by Brand Keys, Inc. for five consecutive years and it is a driving force that has allowed Samsung Electronics to become the fastest growing brand in the world.

**History**

| | |
|---|---|
| 1992 | Purchased Prostar Telecom Inc. |
| 1996 | Est. Dallas HQ & Expanded Telecom Products |
| 1997 | Consolidated Telecom R&D (San Jose/Boston Maryland; Sprint Becomes First Customer) |
| 2001 | CDMA W/S 1st Biz in North America: Sprint; HHP Customer Expanded to T-Mobile & Verizon |
| 2002 | HHP Customer Expanded to AT&T |
| 2006 | Achieved over 100 Million HHP Units Shipped |
| 2008 | Achieved HHP M/S #1 in U.S. (since 08'3Q); '08 YTD HHP Sales over $5 Billion |
| 2009 | Achieved over 200 Million HHP Units Shipped; '09 Estimated HHP Sales over $6 Billion |

Samsung is dedicated to developing innovative technologies and efficient processes that create new markets, enrich people's lives and continue to make Samsung a digital leader.

At Samsung, it's our people that take our products across the line. We seek creative and bold minded individuals who can meet the exciting challenges of today's marketplace.

SAMSUNG.COM | Contact Us | Privacy | Legal | Site Map            Copyright © 2011 SAMSUNG. All rights reserved.


– A786 –

# EXHIBIT 8

LIFE AT
SAMSUNG MOBILE          SAMSUNG MOBILE
PRODUCTS                    CAREERS          CURRENT
OPPORTUNITIES

Samsung Mobile Recruiting » Careers » Dallas Technology Labs

# Careers

## Dallas Technology Labs

The Dallas Technology Labs (DTL) leads Samsung's standardization initiatives in the IEEE, ITU, 3GPP, WiMAX and other major forums. The Wireless Terminals Lab (WTL), the Standards RF Lab (SRL) and Open Innovation Lab (OI) make up the R&D arm of Samsung Telecommunications America (STA). The Lab is organizationally flat and nimble, and engineers are passionate, technology driven and ambitious, embracing Samsung's continuous "Be #1" adventure. DTL is highly regarded by Samsung's headquarters in Korea as the thought leader and innovation engine for its wireless business units. This recognition has been hard-earned over the last decade through continuous innovative and technological contributions to the Samsung handset portfolio. At DTL there is no limit for any individual's goals and aspirations.

## Who We Hire

The R&D labs (WTL, SRL, OI) employ over 150 engineers, many with advanced degrees (MS or Ph.D) in electrical engineering or computer science from top-rated schools around the country.

- Android Software Engineers
- Standards Engineers
- Enterprise Security Engineers
- RF Design Engineers

## What You Will Do

Wireless Terminals Lab (WTL) focuses on:

- Wireless handset software
- Solutions
- Platforms
- Commercialization

Standards RF Lab (SRL) engages in:

- Cutting-edge hardware
- Baseband
- RF research

Open Innovation Lab (OI) focuses on:

- Market sensing and sourcing
- Research on latest trends in technology
- Partnering opportunities

## Opportunities:

Click Here to find out more about current opportunities at Samsung Mobile!

SAMSUNG.COM  |  Contact Us  |  Privacy  |  Legal  |  Site Map                    Copyright © 2011 SAMSUNG. All rights reserved.          

– A788 –

# EXHIBIT 9

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO. LTD., | ) | |
| Plaintiff, | ) | Case No. 2:05-CV-440 (LED) |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MATSUSHITA ELECTRIC INDUSTRIAL | ) | |
| CO., LTD., AND PANASONIC | ) | |
| CORPORATION OF NORTH AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Samsung Electronics Co. Ltd. ("Samsung") for its complaint against Defendants Matsushita Electric Industrial Co., Ltd. ("MEI"), and Panasonic Corporation of North America ("PCNA") (collectively "Matsushita" or "the Matsushita defendants"), hereby demands a jury trial and alleges as follows:

## THE PARTIES

1.      Plaintiff Samsung is a corporation organized under the laws of Korea, having its principal place of business at Samsung Main Building, 250 2-ka, Taepyuung-Ro, Chung-Ku, Seoul, Korea.

2.      On information and belief, defendant MEI is a corporation organized under the laws of Japan, having an office and place of business at 1006 Kadoma, Kadoma City, Osaka 571-8501, Japan.

3.      On information and belief, defendant PCNA is a Delaware corporation with its principal place of business at 1 Panasonic Way, Secaucus, New Jersey 07094. Defendant PCNA may be served through its agent for service of process, CT Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.

{A07\6808\0003\W0294522.2 }

**JURISDICTION**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*  The Court has personal jurisdiction over the Matsushita defendants because the Matsushita defendants have established minimum contacts with the forum and the exercise of jurisdiction over Matsushita would not offend traditional notions of fair play and substantial justice.   On information and belief, Matsushita has conducted business, solicited customers, and maintained offices and employees in the State of Texas. On information and belief, Matsushita has committed acts of infringement in the Eastern District of Texas.

**VENUE**

5.      Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400 because Matsushita is subject to personal jurisdiction in this district.   On information and belief, Matsushita has conducted business and sold patented products or products made by patented processes in the Eastern District of Texas.  On information and belief, Matsushita has committed acts of infringement in the Eastern District of Texas.

**INFRINGEMENT OF U.S. PATENT NO. 5,173,442**

6.      United States Patent No. 5,173,442 ("the '442 patent"), entitled "Methods of Forming Channels and Vias in Insulating Layers," was duly and legally issued on December 22, 1992.  The '442 patent constitutes a valid and enforceable patent solely owned by Samsung, with the right to sue for past infringement.   A true and correct copy of the '442 patent is attached hereto as Exhibit A.

7.      On information and belief, Matsushita imports, makes, uses, sells and/or offers to sell products made by processes that infringe the '442 patent.  This allegation is based on information and belief because the precise nature of certain of Matsushita's accused processes cannot be determined solely by examining the related products; this allegation is likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery from defendants.

8.　　On information and belief, Matsushita also contributes to and/or induces the infringement of at least one claim of the '442 patent.

9.　　Samsung has been damaged by Matsushita's infringement of the '442 patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

## INFRINGEMENT OF U.S. PATENT NO. 5,091,339

10.　　United States Patent No. 5,091,339 ("the '339 patent"), entitled "Trenching Techniques for Forming Vias and Channels in Multilayer Electrical Interconnects," was duly and legally issued on February 25, 1992. The '339 patent constitutes a valid and enforceable patent solely owned by Samsung, with the right to sue for past infringement. A true and correct copy of the '339 patent is attached hereto as Exhibit B.

11.　　On information and belief, Matsushita imports, makes, uses, sells and/or offers to sell products made by processes that infringe the '339 patent. This allegation is based on information and belief because the precise nature of certain of Matsushita's accused processes cannot be determined solely by examining the related products; this allegation is likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery from defendants.

12.　　On information and belief, Matsushita also contributes to and/or induces the infringement of at least one claim of the '339 patent.

13.　　On information and belief, Matsushita's infringement of the '339 patent was, and continues to be, willful.

14.　　Samsung has been damaged by Matsushita's infringement of the '339 patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

## INFRINGEMENT OF U.S. PATENT NO. RE. 36,490

15.　　United States Patent No. Re. 36,490 ("the '490 patent"), entitled "Power and Signal Line Bussing Method for Memory Devices," was duly and legally reissued on January 11, 2000. The '490 patent constitutes a valid and enforceable patent solely owned by Samsung, with

the right to sue for past infringement.  A true and correct copy of the '490 patent is attached hereto as Exhibit C.

16.     Matsushita imports, makes, uses, sells and/or offers to sell products that infringe or products made by processes that infringe the '490 patent.

17.     Matsushita also contributes to and/or induces the infringement of at least one claim of the '490 patent.

18.     On information and belief, Matsushita's infringement of the '490 patent was, and continues to be, willful.

19.     Samsung has been damaged by Matsushita's infringement of the '490 patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

## JURY DEMAND

20.     Samsung hereby demands a jury trial on all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Samsung prays for judgment as follows:

(a)     That the '442, '339 and/or '490 patents have been and/or continue to be infringed by the defendants;

(b)     That Matsushita's infringement of the '339 and '490 patents was, and continues to be, willful;

(c)     That Matsushita, its officers, agents, and employees, and those persons in active concert or participation with any of them, and their successors and assigns be permanently enjoined from infringement, inducement of infringement, and contributory infringement of the '442, '339, and/or '490 patents, including but not limited to making, importing, using, offering for sale, or selling any devices or systems that infringe or are made by using processes that infringe the '442, '339, and/or '490 patents;

(d)     That Samsung be awarded all damages adequate to compensate it for Matsushita's infringement, such damages to be determined by a jury and, if necessary to adequately

compensate Samsung for the infringement, an accounting, and that such damages be trebled and awarded to Samsung with prejudgment interest;

(e)    That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that Samsung be awarded attorney fees, costs, and expenses that it incurs in prosecuting this action; and

(f)    That Samsung be awarded such other and further relief as this Court may deem just and proper.


Dated:  November 11, 2005                              Respectfully submitted,


                                                       By:  /s/ Michael E. Jones
                                                            Michael E. Jones
                                                            State Bar No. 10929400
                                                            mikejones@potterminton
                                                            POTTER MINTON
                                                            A Professional Corporation
                                                            110 N. College, Suite 500
                                                            Tyler, TX  75702
                                                            Telephone:    (903) 597-8311
                                                            Facsimile:    (903) 593-0846

                                                            Gregory S. Arovas
                                                            *(pro hac vice application pending)*
                                                            garovas@kirkland.com
                                                            KIRKLAND & ELLIS LLP
                                                            153 East 53rd Street
                                                            New York, NY 10022
                                                            Telephone:    (212) 446-4800
                                                            Facsimile:    (212) 446-4900

                                                            Attorneys for Plaintiff
                                                            SAMSUNG ELECTRONICS CO. LTD.

# EXHIBIT 10

FILED – CLERK
U.S. DISTRICT COURT

2002 APR -3 PM 2: 15

TX EASTERN – LUFKIN

BY_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS,
LUFKIN DIVISION**

SAMSUNG ELECTRONICS CO., LTD., §
                                 §
            Plaintiff,           §
                                 §   CIVIL ACTION NO. 9:02ev58
v.                               §   Judge Hannah
                                 §
SANDISK CORPORATION,             §
                                 §
            Defendant.           §

## FIRST AMENDED COMPLAINT

Samsung Electronics Co., Ltd., complains of SanDisk Corporation for violations of the United States patent laws. Samsung alleges as follows:

### PARTIES

1.      Samsung Electronics Co., Ltd., ("Samsung") is a company organized under the laws of South Korea with its principal place of business located at 416 Maetan-3 Dong, Paldal-Gu, Suwon City, Kyungki-Do, Korea.

2.      On information and belief, SanDisk Corporation ("SanDisk") is a company organized under the laws of Delaware with its principal place of business in Sunnyvale, California. SanDisk has appeared in this action and no further service of process is needed.

### JURISDICTION

3.      This is an action arising under the United States patent laws, 35 U.S.C. § 101 *et seq.* This Court has subject matter jurisdiction under 35 U.S.C. §§ 271, 281, and 28 U.S.C. § § 1331 and 1338 (a).



## VENUE

4.  ==Venue over Samsung's claims is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c), and 1400(b) because SanDisk resides in this judicial district, part of Samsung's causes of action arose in this judicial district, including acts of patent infringement.==

## BACKGROUND FACTS COMMON TO ALL CLAIMS

5.  Samsung is the world's leading manufacturer of semiconductor memory products. Samsung currently manufactures, distributes and sells dozens of memory products throughout the world, including the United States. One of these memory products is a NAND flash card, which is commonly referred to in the industry as a NAND flash memory product.

6.  NAND flash memory products are typically removable memory cards that are often found in digital cameras, digital music players, digital camcorders, handheld PCs, e-Books, and newer cellular phone technology, as well as other emerging products.

7.  SanDisk manufactures and supplies NAND flash memory products in consumer, OEM, and industrial markets. More specifically, SanDisk supplies, at least, the CompactFlash™ product line which comprises NAND flash memory products. With, at least, its CompactFlash™ products that include NAND flash memory products, SanDisk infringes Samsung's patents.

8.  SanDisk directly sells its NAND flash memory products around the world and through intermediaries, including wholesalers, distributors, value-added resellers, and retailers located throughout the United States and specifically in this judicial district. Retailers of SanDisk NAND flash memory products include Circuit City, K-Mart, Office Depot, Target, Sears, Office Max, Staples, Eckerd drug stores and Walgreens drug stores, among others.

9.  SanDisk also sells its NAND flash memory products to and through original equipment manufacturers ("OEMs"), including Cannon, Hewlett-Packard, Fujitsu, Motorola, Kodak, Panasonic,

and Polaroid, among others. SanDisk also sells NAND flash memory products to private label partners that re-brand the SanDisk products under a different trade name, which are then sold directly to consumers or installed into consumer products.

10.    As part of its sales of NAND flash memory products in the United States, SanDisk markets, promotes, sells and offers for sale a full range of its NAND flash memory products in Texas. SanDisk markets its NAND flash memory products in Texas by using a direct sales organization and numerous distributors and manufacturers' representatives. In fact, SanDisk even has a direct sales office in Texas to support its OEM customers and its distribution and manufacturer representatives.

11.    On information and belief, SanDisk NAND flash memory products, including the CompactFlash™ product line, have been sold and are currently being sold on Amazon.com's website, which is available to consumers residing in the Lufkin Division. On information and belief and according to information provided by Amazon.com, based on purchases made via the Amazon.com website, the SanDisk 128MB CompactFlash™ card ranks among the top selling electronic products purchased by consumers in Texas. SanDisk and Amazon.com do not restrict or otherwise prevent consumers residing in the Lufkin Division from purchasing SanDisk NAND flash memory products on the Amazon.com website.

12.    On information and belief, SanDisk directly markets, promotes, sells, offers for sale, or leases its NAND flash memory products, including the CompactFlash™ product line, in numerous locations throughout the Lufkin Division of the Eastern District of Texas ("Lufkin Division"). On information and belief, SanDisk also markets, promotes, sells, offers for sale, or leases its NAND flash memory products, including the CompactFlash™ product line, in numerous locations

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § <br> § <br> § |
| PLAINTIFFS, | § <br> § |
| v. | § <br> § **Civil Action No. 2:13-cv-00900-JRG** |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § <br> § <br> § **JURY TRIAL REQUESTED** <br> § <br> § |
| DEFENDANTS. | § <br> § |

**ADDITIONAL ATTACHMENTS TO PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. NO. 52)**

McKool 975535v12

**– A799 –**

Dated: April 14, 2014.

Respectfully submitted,

**McKOOL SMITH P.C.**


*/s/ Theodore Stevenson, III*
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
LEAD ATTORNEY
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
Ryan A. Hargrave
Texas State Bar No. 24071516
rhargrave@mckoolsmith.com
**McKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044


Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**McKOOL SMITH P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:     (512) 692-8700
Facsimile:     (512) 692-8744

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US LP and
MOBILESTAR TECHNOLOGIES LLC**

**– A800 –**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on April 14, 2014. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III

**– A801 –**

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| ERICSSON INC., and<br>TELEFONAKTIEBOLAGET LM ERICSSON,<br>　　　　　　Plaintiffs-Counterclaim<br>　　　　　　Defendants,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., *et al*,<br><br>　　　　　　Defendants-Counterclaim<br>　　　　　　Plaintiffs. | CIVIL ACTION NO. 6:12-cv-894<br><br>JURY TRIAL DEMANDED |

### DEFENDANT SAMSUNG'S RESPONSE TO ERICSSON'S
### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO SAMSUNG'S
### THIRD AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics

America, Inc., and Samsung Telecommunications America, LLC (individually and collectively

"Samsung"), by and through their attorneys, hereby answer Plaintiffs/Counterclaim Defendants

Ericsson Inc. and Telefonaktiebolaget LM Ericsson's (collectively "Ericsson" or "Plaintiff")

Answer, Affirmative Defenses and Counterclaims to Samsung's Third Amended Answer,

Affirmative Defenses and Counterclaims ("Ericsson's Counterclaims"), filed on November 22,

2013.

### GENERAL DENIAL

Samsung denies the allegations in Ericsson's Counterclaims unless expressly admitted in

the following paragraphs.

**BACKGROUND**

1.      Samsung repeats and incorporates by reference its responses to Ericsson's allegations as set forth in paragraphs 1-10 of Samsung's Third Amended Answer, Affirmative Defenses and Counterclaims to Ericsson's First Amended Complaint for Patent Infringement, dated November 5, 2013 ("Samsung's Third Amended Answer").

**ERICSSON**

2.      Samsung repeats and incorporates by reference its responses to Ericsson's allegations as set forth in paragraphs 11-14 of Samsung's Third Amended Answer.

**THE DEFENDANTS**

3.      Samsung repeats and incorporates by reference its responses to Ericsson's allegations as set forth in paragraphs 15-16 of Samsung's Third Amended Answer.

4.      Samsung admits that Samsung Telecommunications America, LLC is a limited liability corporation organized under the laws of the State of Delaware, with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082.  Samsung further admits that Samsung Telecommunications' business includes importing, marketing, selling, and/or offering for sale telephones, base stations and other devices in the United States, including within this District, but not necessarily directed purposefully or solely at this District.  Samsung denies that Samsung Telecommunications America, LLC manufactures telephones, base stations, televisions, computers, Blu-ray players, cameras, and other devices.  Samsung further admits that Samsung Telecommunications America, LLC has a registered agent in Texas, and that this agent is Corporation Service Company dba CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.  Samsung denies the remaining allegations of paragraph 4 of Ericsson's Counterclaims.

2

## JURISDICTION AND VENUE

5.    Samsung repeats and incorporates by reference its responses to Ericsson's allegations as set forth in paragraphs 18-20 of Samsung's Third Amended Answer.

6.    Samsung admits that Ericsson's allegations of patent infringement purport to arise under Title 35 of the United States Code, but denies that such allegations are meritorious.

7.    Samsung admits that, for the purposes of this action only, this Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and/or 2202. Samsung admits that venue is permissible, for purposes of this action only, under 28 U.S.C. §§ 1391 and 1400, but denies that venue is proper or convenient.

8.    For purposes of this action only, Samsung does not contest personal jurisdiction. Samsung denies the remaining allegations of paragraph 8 of Ericsson's Counterclaims.

## THE PATENTS

9.    Samsung repeats and incorporates by reference its responses to Ericsson's allegations as set forth in paragraphs 21-31 of Samsung's Third Amended Answer.

10.   Samsung admits that United States Patent No. 6,029,125 ("the '125 patent"), entitled "Reducing Sparseness In Coded Speech Signals," issued on February 22, 2000. Samsung further admits that, on its face, the '125 patent lists Roar Hagen, Björn Stig, Erik Johansson, Erik Ekudden, and Willem Baastian Kleijn as inventors. Samsung denies that the '125 patent was "duly and legally" issued. Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10 of Ericsson's Counterclaims, and therefore denies those allegations.

11.   Samsung admits that United States Patent No. 6,031,832 ("the '832 patent"), entitled "Method And Apparatus for Improving Performance Of A Packet Communications

3

System," issued on February 29, 2000. Samsung further admits that, on its face, the '832 patent lists Dalibor Turina as the inventor. Samsung denies that the '832 patent was "duly and legally" issued. Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 11 of Ericsson's Counterclaims, and therefore denies those allegations.

12.     Samsung admits that United States Patent No. 6,070,078 ("the '078 patent"), entitled "Reduced Global Positioning System Receiver Code Shift Search Space For A Cellular Telephone System," issued on May 30, 2000. Samsung further admits that, on its face, the '078 patent lists William O. Camp, Jr., Pambiz Zangi, and Rajaram Ramesh as inventors. Samsung denies that the '078 patent was "duly and legally" issued. Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12 of Ericsson's Counterclaims, and therefore denies those allegations.

13.     Samsung admits that United States Patent No. 6,418,130 ("the '130 patent"), entitled "Reuse of Security Associations For Improving Hand-Over Performance," issued on July 9, 2002. Samsung further admits that, on its face, the '130 patent lists Yi Cheng, Lars Björup, Martin Jakob Rinman, and Karl Dan Gustav Jerrestam as inventors. Samsung denies that the '130 patent was "duly and legally" issued. Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 13 of Ericsson's Counterclaims, and therefore denies those allegations.

14.     Samsung admits that United States Patent No. 7,149,510 ("the '510 patent"), entitled "Security Access Manager In Middleware," issued on December 12, 2006. Samsung further admits that, on its face, the '510 patent lists Jonas Hansson and Björn Bjäre as inventors. Samsung denies that the '510 patent was "duly and legally" issued. Samsung is without

4

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14 of Ericsson's Counterclaims, and therefore denies those allegations.

15.     Samsung admits that United States Patent No. 7,286,823 ("the '823 patent"), entitled "Mobile Multimedia Engine," issued on October 23, 2007.  Samsung further admits that, on its face, the '823 patent lists Mikael Reinholdsson, Erik Ledfelt, and Johan Svenér as inventors.  Samsung denies that the '823 patent was "duly and legally" issued.  Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 15 of Ericsson's Counterclaims, and therefore denies those allegations.

16.     Samsung admits that United States Patent No. 8,023,990 ("the '990 patent"), entitled "Uplink Scheduling In A Cellular System," issued on September 20, 2011.  Samsung further admits that, on its face, the '990 patent lists Stefan Parkvall as the inventor.  Samsung denies that the '990 patent was "duly and legally" issued.  Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16 of Ericsson's Counterclaims, and therefore denies those allegations.

17.     Samsung denies that United States Patent No. 8,214,710 ("the '710 patent"), is entitled "Uplink Scheduling In A Cellular System."  Samsung admits that the '710 patent bears an issue date of July 3, 2012.  Samsung further admits that, on its face, the '710 patent lists Mats Fredrik Sågfors and Per Johan Torsner as inventors.  Samsung denies that the '710 patent was "duly and legally" issued.  Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17 of Ericsson's Counterclaims, and therefore denies those allegations.

## FACTUAL BACKGROUND

18.     Samsung repeats and incorporates by reference its responses to Ericsson's allegations as set forth in paragraphs 32-34 of Samsung's Third Amended Answer.

19.     The allegations of paragraph 19 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the allegations and characterizations of paragraph 19 of Ericsson's Counterclaims.

20.     Samsung denies the allegations of paragraph 20 of Ericsson's Counterclaims.

21.     Samsung denies the allegations of paragraph 21 of Ericsson's Counterclaims.

## ANSWERS TO ERICSSON'S COUNTERCLAIMS

### Ericsson Counterclaim Counts 1-11:

22.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.  Samsung repeats and incorporates its responses to Ericsson's allegations as set forth in paragraphs 35-67 of Samsung's Third Amended Answer.

### Ericsson Counterclaim Count 12:
### Claim for Patent Infringement of U.S. Patent No. 6,029,125

23.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

24.     Samsung denies the allegations of paragraph 24 of Ericsson's Counterclaims.

25.     Samsung admits that it has been licensed under the '125 patent and has been the beneficiary of a covenant not to sue on the '125 patent.  Samsung further admits that Ericsson asserted the '125 patent against Samsung in Case No. 2:06-cv-0063, which was filed in 2006. Samsung denies any implication that it had the requisite knowledge or awareness of the '125 patent and/or any direct infringement of the '125 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.  Samsung denies any direct infringement,

6

indirect infringement, or willful infringement.  Samsung further denies all other allegations of paragraph 25 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 13:
### Claim for Patent Infringement of U.S. Patent No. 6,031,832

26.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

27.     Samsung denies the allegations of paragraph 27 of Ericsson's Counterclaims.

28.     Samsung admits that it is has been licensed under the '832 patent and has been the beneficiary of a covenant not to sue on the '832 patent.  Samsung denies any implication that it had the requisite knowledge or awareness of the '832 patent and/or any direct infringement of the '832 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.  Samsung further denies any direct infringement, indirect infringement, or willful infringement.  Samsung denies all other allegations of paragraph 28 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 14:
### Claim for Patent Infringement of U.S. Patent No. 6,070,078

29.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

30.     Samsung denies the allegations of paragraph 30 of Ericsson's Counterclaims.

31.     Samsung admits that it is has been licensed under the '078 patent and has been the beneficiary of a covenant not to sue on the '078 patent.  Samsung denies any implication that it had the requisite knowledge or awareness of the '078 patent and/or any direct infringement of the '078 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.  Samsung further denies any direct infringement, indirect infringement, or willful infringement.  Samsung denies all other allegations of paragraph 31 of Ericsson's Counterclaims.

7

**Ericsson Counterclaim Count 15:**
**Claim for Patent Infringement of U.S. Patent No. 6,418,130**

32.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

33.     Samsung denies the allegations of paragraph 33 of Ericsson's Counterclaims.

34.     Samsung admits that it is has been licensed under the '130 patent and has been the beneficiary of a covenant not to sue on the '130 patent.  Samsung denies any implication that it had the requisite knowledge or awareness of the '130 patent and/or any direct infringement of the '130 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.  Samsung further denies any direct infringement, indirect infringement, or willful infringement.  Samsung denies all other allegations of paragraph 34 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 16:**
**Claim for Patent Infringement of U.S. Patent No. 7,149,510**

35.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

36.     Samsung denies the allegations of paragraph 36 of Ericsson's Counterclaims.

37.     Samsung admits that it is has been licensed under the '510 patent and has been the beneficiary of a covenant not to sue on the '510 patent.  Samsung denies any implication that it had the requisite knowledge or awareness of the '510 patent and/or any direct infringement of the '510 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.  Samsung further denies any direct infringement, indirect infringement, or willful infringement.  Samsung denies all other allegations of paragraph 37 of Ericsson's Counterclaims.

## Ericsson Counterclaim Count 17:
## Claim for Patent Infringement of U.S. Patent No. 7,286,823

38.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

39.     Samsung denies the allegations of paragraph 39 of Ericsson's Counterclaims.

40.     Samsung admits that it is has been licensed under the '823 patent and has been the beneficiary of a covenant not to sue on the '823 patent.  Samsung denies any implication that it had the requisite knowledge or awareness of the '823 patent and/or any direct infringement of the '823 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.  Samsung further denies any direct infringement, indirect infringement, or willful infringement.  Samsung denies all other allegations of paragraph 40 of Ericsson's Counterclaims.

## Ericsson Counterclaim Count 18:
## Claim for Patent Infringement of U.S. Patent No. 8,023,990

41.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

42.     Samsung denies the allegations of paragraph 42 of Ericsson's Counterclaims.

43.     Samsung denies any implication that it had the requisite knowledge or awareness of the '990 patent and/or any direct infringement of the '990 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.  Samsung further denies any direct infringement, indirect infringement, or willful infringement.  Samsung denies all other allegations of paragraph 43 of Ericsson's Counterclaims.

## Ericsson Counterclaim Count 19:
## Claim for Patent Infringement of U.S. Patent No. 8,214,710

44.     Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.

9

45.     Samsung denies the allegations of paragraph 45 of Ericsson's Counterclaims.

46.     Samsung denies any implication that it had the requisite knowledge or awareness of the '710 patent and/or any direct infringement of the '710 patent to cause any alleged indirect infringement or to have allegedly infringed willfully.   Samsung further denies any direct infringement, indirect infringement, or willful infringement.   Samsung denies all other allegations of paragraph 46 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 20:
### Breach of Contract

47.     Samsung denies the allegations of Ericsson's affirmative defense paragraphs 256-269.  Further, in response to Ericsson repeating and realleging paragraphs 1-21 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-21 above as though fully set forth herein.   The remaining allegations of paragraph 47 are too generalized, vague, and ambiguous to admit or deny.   To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 47 of Ericsson's Counterclaims.

48.     Samsung admits that it has been a member of ETSI and 3GPP, and that ETSI and 3GPP are standards-setting organizations responsible for the standardization of information and communication technologies for the benefit of their members and third parties.   Samsung denies the remaining allegations of paragraph 48 of Ericsson's Counterclaims.

49.     The allegations of paragraph 49 are too generalized, vague, and ambiguous to admit or deny.   To the extent a response is necessary, Samsung denies the allegations in paragraph 49 of Ericsson's Counterclaims.

50.     Samsung denies the allegations of paragraph 50 of Ericsson's Counterclaims that are directed at Samsung.  The remaining allegations of paragraph 50 of Ericsson's Counterclaims

are too generalized, vague, and ambiguous to admit or deny, and therefore Samsung denies those allegations.

51.     Samsung denies the allegations of paragraph 51 of Ericsson's Counterclaims.

52.     Samsung denies the allegations of paragraph 52 of Ericsson's Counterclaims.

53.     Samsung denies the allegations of paragraph 53 of Ericsson's Counterclaims.

54.     Samsung denies the allegations of paragraph 54 of Ericsson's Counterclaims.

## Ericsson Counterclaim Count 21:
### Equitable Estoppel

55.     Samsung denies the allegations of Ericsson's affirmative defense paragraphs 256-269.  Further, in response to Ericsson repeating and realleging paragraphs 1-21 and 47-54 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-21 and 47-54 above as though fully set forth herein.  The remaining allegations of paragraph 55 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 55 of Ericsson's Counterclaims.

56.     Samsung denies the allegations of paragraph 56 of Ericsson's Counterclaims.

57.     Samsung denies the allegations of paragraph 57 of Ericsson's Counterclaims.

58.     Samsung denies the allegations of paragraph 58 of Ericsson's Counterclaims.

59.     Samsung denies the allegations of paragraph 59 of Ericsson's Counterclaims.

## Ericsson Counterclaim Count 22:
### Promissory Estoppel

60.     Samsung denies the allegations of Ericsson's affirmative defense paragraphs 256-269.  Further, in response to Ericsson repeating and realleging paragraphs 1-21 and 47-59 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-21 and 47-59 above as though fully set forth herein.  The remaining allegations of

paragraph 60 are too generalized, vague, and ambiguous to admit or deny. To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 60 of Ericsson's Counterclaims.

61.     Samsung denies the allegations of paragraph 61 of Ericsson's Counterclaims.

62.     Samsung denies the allegations of paragraph 62 of Ericsson's Counterclaims.

63.     Samsung denies the allegations of paragraph 63 of Ericsson's Counterclaims.

64.     Samsung denies the allegations of paragraph 64 of Ericsson's Counterclaims.

65.     Samsung denies the allegations of paragraph 65 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 23:**
**Declaratory Judgment that Ericsson is Licensed to Practice Samsung's Patents**

66.     Samsung denies the allegations of Ericsson's affirmative defense paragraphs 256-269. In response to Ericsson repeating and realleging paragraphs 1-21 and 47-65 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-21 and 47-65 above as though fully set forth herein. The remaining allegations of paragraph 66 are too generalized, vague, and ambiguous to admit or deny. To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 66 of Ericsson's Counterclaims.

67.     Samsung denies the allegations of paragraph 67 of Ericsson's Counterclaims.

68.     Samsung denies the allegation that its rights are exhausted as to the Asserted Patents referenced in paragraph 68 of Ericsson's Counterclaims. The remaining allegations of paragraph 68 of Ericsson's Counterclaims are too generalized, vague, and ambiguous to admit or deny, and therefore Samsung denies those allegations.

69.     Samsung denies the allegations of paragraph 69 of Ericsson's Counterclaims.

70.     Samsung denies the allegations of paragraph 70 of Ericsson's Counterclaims.

71.     Samsung denies the allegations directed at Samsung in paragraph 71 of Ericsson's Counterclaims.  Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 71 of Ericsson's Counterclaims, and therefore denies those allegations.

72.     Samsung denies the allegations of paragraph 72 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 24:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 5,742,595**

73.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 73 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 73 of Ericsson's Counterclaims.

74.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '595 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '595 patent.  Samsung denies the remainder of the allegations in paragraph 74 of Ericsson's Counterclaims.

75.     Samsung denies the allegations of paragraph 75 of Ericsson's Counterclaims.

76.     Samsung denies the allegations of paragraph 76 of Ericsson's Counterclaims.

77.     Samsung denies the allegations of paragraph 77 of Ericsson's Counterclaims.

78.     Samsung denies the allegations of paragraph 78 of Ericsson's Counterclaims.

13

**Ericsson Counterclaim Count 25:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 6,164,129**

79.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer,

and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats

and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth

herein.  The remaining allegations of paragraph 79 are too generalized, vague, and ambiguous to

admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations

in paragraph 79 of Ericsson's Counterclaims.

80.     Samsung admits that it is asserting a claim against Ericsson for infringement of

the '129 patent.  On information and belief, Samsung admits that a controversy exists between

Samsung and Ericsson regarding the '129 patent.   Samsung denies the remainder of the

allegations in paragraph 80 of Ericsson's Counterclaims.

81.     Samsung denies the allegations of paragraph 81 of Ericsson's Counterclaims.

82.     Samsung denies the allegations of paragraph 82 of Ericsson's Counterclaims.

83.     Samsung denies the allegations of paragraph 83 of Ericsson's Counterclaims.

84.     Samsung denies the allegations of paragraph 84 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 26:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 6,366,570**

85.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer,

and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats

and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth

herein.  The remaining allegations of paragraph 85 are too generalized, vague, and ambiguous to

admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations

in paragraph 85 of Ericsson's Counterclaims.

14

86.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '570 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '570 patent.  Samsung denies the remainder of the allegations in paragraph 86 of Ericsson's Counterclaims.

87.     Samsung denies the allegations of paragraph 87 of Ericsson's Counterclaims.

88.     Samsung denies the allegations of paragraph 88 of Ericsson's Counterclaims.

89.     Samsung denies the allegations of paragraph 89 of Ericsson's Counterclaims.

90.     Samsung denies the allegations of paragraph 90 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 27:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 6,411,825**

91.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 91 are too generalized, vague, and ambiguous to admit or deny. To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 91 of Ericsson's Counterclaims.

92.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '825 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '825 patent.  Samsung denies the remainder of the allegations in paragraph 92 of Ericsson's Counterclaims.

93.     Samsung denies the allegations of paragraph 93 of Ericsson's Counterclaims.

94.     Samsung denies the allegations of paragraph 94 of Ericsson's Counterclaims.

95.     Samsung denies the allegations of paragraph 95 of Ericsson's Counterclaims.

96.     Samsung denies the allegations of paragraph 96 of Ericsson's Counterclaims.

15

### Ericsson Counterclaim Count 28:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 6,801,788

97.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 97 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 97 of Ericsson's Counterclaims.

98.    Samsung admits that it is asserting a claim against Ericsson for infringement of the '788 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '788 patent.   Samsung denies the remainder of the allegations in paragraph 98 of Ericsson's Counterclaims.

99.    Samsung denies the allegations of paragraph 99 of Ericsson's Counterclaims.

100.    Samsung denies the allegations of paragraph 100 of Ericsson's Counterclaims.

101.    Samsung denies the allegations of paragraph 101 of Ericsson's Counterclaims.

102.    Samsung denies the allegations of paragraph 102 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 29:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 6,907,048

103.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 103 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 103 of Ericsson's Counterclaims.

16

104.    Samsung admits that it is asserting a claim against Ericsson for infringement of the '048 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '048 patent.  Samsung denies the remainder of the allegations in paragraph 104 of Ericsson's Counterclaims.

105.    Samsung denies the allegations of paragraph 105 of Ericsson's Counterclaims.

106.    Samsung denies the allegations of paragraph 106 of Ericsson's Counterclaims.

107.    Samsung denies the allegations of paragraph 107 of Ericsson's Counterclaims.

108.    Samsung denies the allegations of paragraph 108 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 30:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 6,941,338**

109.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 109 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 109 of Ericsson's Counterclaims.

110.    Samsung admits that it is asserting a claim against Ericsson for infringement of the '338 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '338 patent.  Samsung denies the remainder of the allegations in paragraph 110 of Ericsson's Counterclaims.

111.    Samsung denies the allegations of paragraph 111 of Ericsson's Counterclaims.

112.    Samsung denies the allegations of paragraph 112 of Ericsson's Counterclaims.

113.    Samsung denies the allegations of paragraph 113 of Ericsson's Counterclaims.

114.    Samsung denies the allegations of paragraph 114 of Ericsson's Counterclaims.

17

### Ericsson Counterclaim Count 31:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 6,999,471

115.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 115 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 115 of Ericsson's Counterclaims.

116.    Samsung admits that it is asserting a claim against Ericsson for infringement of the '471 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '471 patent.  Samsung denies the remainder of the allegations in paragraph 116 of Ericsson's Counterclaims.

117.    Samsung denies the allegations of paragraph 117 of Ericsson's Counterclaims.

118.    Samsung denies the allegations of paragraph 118 of Ericsson's Counterclaims.

119.    Samsung denies the allegations of paragraph 119 of Ericsson's Counterclaims.

120.    Samsung denies the allegations of paragraph 120 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 32:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 7,221,031

121.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 121 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 121 of Ericsson's Counterclaims.

18

122.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '031 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '031 patent.  Samsung denies the remainder of the allegations in paragraph 122 of Ericsson's Counterclaims.

123.     Samsung denies the allegations of paragraph 123 of Ericsson's Counterclaims.

124.     Samsung denies the allegations of paragraph 124 of Ericsson's Counterclaims.

125.     Samsung denies the allegations of paragraph 125 of Ericsson's Counterclaims.

126.     Samsung denies the allegations of paragraph 126 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 33:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 7,342,444**

127.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 127 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 127 of Ericsson's Counterclaims.

128.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '444 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '444 patent.  Samsung denies the remainder of the allegations in paragraph 128 of Ericsson's Counterclaims.

129.     Samsung denies the allegations of paragraph 129 of Ericsson's Counterclaims.

130.     Samsung denies the allegations of paragraph 130 of Ericsson's Counterclaims.

131.     Samsung denies the allegations of paragraph 131 of Ericsson's Counterclaims.

132.     Samsung denies the allegations of paragraph 132 of Ericsson's Counterclaims.

19

### Ericsson Counterclaim Count 34:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 7,379,478

133. In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein. The remaining allegations of paragraph 133 are too generalized, vague, and ambiguous to admit or deny. To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 133 of Ericsson's Counterclaims.

134. Samsung admits that it is asserting a claim against Ericsson for infringement of the '478 patent. On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '478 patent. Samsung denies the remainder of the allegations in paragraph 134 of Ericsson's Counterclaims.

135. Samsung denies the allegations of paragraph 135 of Ericsson's Counterclaims.

136. Samsung denies the allegations of paragraph 136 of Ericsson's Counterclaims.

137. Samsung denies the allegations of paragraph 137 of Ericsson's Counterclaims.

138. Samsung denies the allegations of paragraph 138 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 35:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 8,059,681

139. In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein. The remaining allegations of paragraph 139 are too generalized, vague, and ambiguous to admit or deny. To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 139 of Ericsson's Counterclaims.

20

140.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '681 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '681 patent.  Samsung denies the remainder of the allegations in paragraph 140 of Ericsson's Counterclaims.

141.     Samsung denies the allegations of paragraph 141 of Ericsson's Counterclaims.

142.     Samsung denies the allegations of paragraph 142 of Ericsson's Counterclaims.

143.     Samsung denies the allegations of paragraph 143 of Ericsson's Counterclaims.

144.     Samsung denies the allegations of paragraph 144 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 36:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 8,193,047**

145.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 145 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 145 of Ericsson's Counterclaims.

146.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '047 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '047 patent.  Samsung denies the remainder of the allegations in paragraph 146 of Ericsson's Counterclaims.

147.     Samsung denies the allegations of paragraph 147 of Ericsson's Counterclaims.

148.     Samsung denies the allegations of paragraph 148 of Ericsson's Counterclaims.

149.     Samsung denies the allegations of paragraph 149 of Ericsson's Counterclaims.

150.     Samsung denies the allegations of paragraph 150 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 37:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 8,315,195

151.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 151 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 151 of Ericsson's Counterclaims.

152.    Samsung admits that it is asserting a claim against Ericsson for infringement of the '195 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '195 patent.   Samsung denies the remainder of the allegations in paragraph 152 of Ericsson's Counterclaims.

153.    Samsung denies the allegations of paragraph 153 of Ericsson's Counterclaims.

154.    Samsung denies the allegations of paragraph 154 of Ericsson's Counterclaims.

155.    Samsung denies the allegations of paragraph 155 of Ericsson's Counterclaims.

156.    Samsung denies the allegations of paragraph 156 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 38:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 8,331,328

157.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 157 are too generalized, vague, and ambiguous to admit or deny.   To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 157 of Ericsson's Counterclaims.

22

158.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '328 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '328 patent.  Samsung denies the remainder of the allegations in paragraph 158 of Ericsson's Counterclaims.

159.     Samsung denies the allegations of paragraph 159 of Ericsson's Counterclaims.

160.     Samsung denies the allegations of paragraph 160 of Ericsson's Counterclaims.

161.     Samsung denies the allegations of paragraph 161 of Ericsson's Counterclaims.

162.     Samsung denies the allegations of paragraph 162 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 39:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 8,351,380

163.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 163 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 163 of Ericsson's Counterclaims.

164.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '380 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '380 patent.  Samsung denies the remainder of the allegations in paragraph 164 of Ericsson's Counterclaims.

165.     Samsung denies the allegations of paragraph 165 of Ericsson's Counterclaims.

166.     Samsung denies the allegations of paragraph 166 of Ericsson's Counterclaims.

167.     Samsung denies the allegations of paragraph 167 of Ericsson's Counterclaims.

168.     Samsung denies the allegations of paragraph 168 of Ericsson's Counterclaims.

23

### Ericsson Counterclaim Count 40:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 8,498,255

169.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 169 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 169 of Ericsson's Counterclaims.

170.    Samsung admits that it is asserting a claim against Ericsson for infringement of the '255 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '255 patent.  Samsung denies the remainder of the allegations in paragraph 170 of Ericsson's Counterclaims.

171.    Samsung denies the allegations of paragraph 171 of Ericsson's Counterclaims.

172.    Samsung denies the allegations of paragraph 172 of Ericsson's Counterclaims.

173.    Samsung denies the allegations of paragraph 173 of Ericsson's Counterclaims.

174.    Samsung denies the allegations of paragraph 174 of Ericsson's Counterclaims.

### Ericsson Counterclaim Count 41:
### Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of
### U.S. Patent No. 8,520,499

175.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 175 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 175 of Ericsson's Counterclaims.

24

176.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '499 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '499 patent.  Samsung denies the remainder of the allegations in paragraph 176 of Ericsson's Counterclaims.

177.     Samsung denies the allegations of paragraph 177 of Ericsson's Counterclaims.

178.     Samsung denies the allegations of paragraph 178 of Ericsson's Counterclaims.

179.     Samsung denies the allegations of paragraph 179 of Ericsson's Counterclaims.

180.     Samsung denies the allegations of paragraph 180 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 42:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. 8,520,656**

181.     In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 181 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 181 of Ericsson's Counterclaims.

182.     Samsung admits that it is asserting a claim against Ericsson for infringement of the '656 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the '656 patent.  Samsung denies the remainder of the allegations in paragraph 182 of Ericsson's Counterclaims.

183.     Samsung denies the allegations of paragraph 183 of Ericsson's Counterclaims.

184.     Samsung denies the allegations of paragraph 184 of Ericsson's Counterclaims.

185.     Samsung denies the allegations of paragraph 185 of Ericsson's Counterclaims.

186.     Samsung denies the allegations of paragraph 186 of Ericsson's Counterclaims.

**Ericsson Counterclaim Count 43:**
**Declaratory Judgment of Non-Infringement, Invalidity & Unenforceability of**
**U.S. Patent No. RE 44,105**

187.    In response to Ericsson repeating and realleging paragraphs 1-278 of its answer, and affirmative defenses, and paragraphs 1-72 of Ericsson's Counterclaims, Samsung repeats and incorporates by reference the responses in paragraphs 1-72 above as though fully set forth herein.  The remaining allegations of paragraph 187 are too generalized, vague, and ambiguous to admit or deny.  To the extent a response is necessary, Samsung denies the remaining allegations in paragraph 187 of Ericsson's Counterclaims.

188.    Samsung admits that it is asserting a claim against Ericsson for infringement of the RE '105 patent.  On information and belief, Samsung admits that a controversy exists between Samsung and Ericsson regarding the RE '105 patent.  Samsung denies the remainder of the allegations in paragraph 188 of Ericsson's Counterclaims.

189.    Samsung denies the allegations of paragraph 189 of Ericsson's Counterclaims.

190.    Samsung denies the allegations of paragraph 190 of Ericsson's Counterclaims.

191.    Samsung denies the allegations of paragraph 191 of Ericsson's Counterclaims.

192.    Samsung denies the allegations of paragraph 192 of Ericsson's Counterclaims.

**EXCEPTIONAL CASE**

193.    Samsung denies the allegations of paragraph 193 of Ericsson's Counterclaims.

**RESPONSE TO ERICSSON'S DEMAND FOR A JURY TRIAL**

Samsung hereby demands trial by jury for all issues so triable.

**RESPONSE TO ERICSSON'S PRAYER FOR RELIEF**

Samsung denies that Ericsson is entitled to any relief whatsoever from Samsung as prayed for by Ericsson, including in Plaintiff's Complaint, Amended Complaint, or in Ericsson's

Counterclaims, and Samsung denies that Plaintiff is entitled to an injunction, and denies that Plaintiff is entitled any other relief.

## SAMSUNG'S AFFIRMATIVE DEFENSES

Samsung incorporates by reference the Affirmative Defenses stated in Samsung's Third Amended Answer and in Samsung's Response to Ericsson's Answer, Affirmative Defenses, and Counterclaims to Samsung's First Amended Answer, Affirmative Defenses and Counterclaims, dated May 16, 2013, and in Samsung's Response to Ericsson's Answer, Affirmative Defenses, and Counterclaims to Samsung's Second Amended Answer, Affirmative Defenses and Counterclaims, dated October 25, 2013, as though separately alleged herein against each of Ericsson's counterclaims. Samsung also states the following additional affirmative defenses in response to Ericsson's Counterclaims. Samsung specifically reserves the right to assert additional defenses as they become known through the course of discovery.

### FIRST AFFIRMATIVE DEFENSE
### (Invalidity)

194. The claims of the '125, '832, '078, '130, '510, '823, '990, and '710 patents ("Ericsson Counterclaim Patents") are invalid because they fail to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### SECOND AFFIRMATIVE DEFENSE
### (Non-Infringement)

195. Samsung does not infringe and has not infringed under any theory (including directly, jointly, contributorily, or by inducement) any valid and enforceable claim of the Ericsson Counterclaim Patents, either literally or under the doctrine of equivalents.

27

### THIRD AFFIRMATIVE DEFENSE
### (Statutory Damages Limitations)

196.    Plaintiff's recovery for alleged infringement of the Ericsson Counterclaim Patents, if any, is limited by Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 286 and 287.

### FOURTH AFFIRMATIVE DEFENSE
### (Government Sales)

197.    Plaintiff's remedies as to the Ericsson Counterclaim Patents, if any, are limited under 28 U.S.C. § 1498(a).

### FIFTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

198.    Plaintiff is estopped, based on statements, representations, and admissions made during the prosecution of the patent applications resulting in the Ericsson Counterclaim Patents, as well as reissue and/or reexamination proceedings related to any of the Ericsson Counterclaim Patents, from asserting that Samsung has infringed, directly or indirectly, any claim of the Ericsson Counterclaim Patents, either literally or under the doctrine of equivalents.

### SIXTH AFFIRMATIVE DEFENSE
### (Covenant Not to Sue, License, and/or Patent Exhaustion)

199.    Plaintiff's claims are barred in whole or in part pursuant to a covenant not to sue, an express and/or implied license, and/or the doctrine of patent exhaustion.

200.    On information and belief, and by way of example without limitation, Samsung has rights arising from its use of Qualcomm Incorporated ("Qualcomm") components in certain Samsung products. On information and belief, Qualcomm entered into a license agreement with Plaintiff by which Qualcomm received, among other things, certain rights related to the Ericsson Counterclaim Patents. Samsung has an express or implied license to manufacture, use, import,

28

and sell electronic devices incorporating licensed Qualcomm components under the Ericsson Counterclaim Patents. Moreover, under the doctrine of patent exhaustion, the purchase by Samsung of the licensed components from Qualcomm exhausts Plaintiff's alleged rights under the Ericsson Counterclaim Patents.

201.    On information and belief, and by way of example without limitation, Samsung has rights arising from its use of ST-Ericsson components in certain Samsung products. On information and belief, ST-Ericsson has obtained rights to one or more of the Ericsson Counterclaim Patents from Plaintiff. Samsung has an express or implied license to manufacture, use, import, and sell electronic devices incorporating licensed ST-Ericsson components under the Ericsson Counterclaim Patents. Moreover, under the doctrine of patent exhaustion, the purchase by Samsung of the licensed components from ST-Ericsson exhausts Plaintiff's alleged rights under the Ericsson Counterclaim Patents.

## SEVENTH AFFIRMATIVE DEFENSE
### (Unenforceability)

202.    Plaintiff's claims as they relate to some or all of the Ericsson Counterclaim Patents are barred in whole or in part by reason of estoppel, unclean hands, waiver, and/or other equitable doctrines based on Plaintiff's failure to comply with its contractual obligations made to the European Telecommunications Standards Institute ("ETSI"), 3rd Generation Partnership Project ("3GPP"), and Institute of Electrical and Electronics Engineers ("IEEE"), as well as to third party beneficiaries of those obligations (including the members of those organizations and manufacturers of products compliant with ETSI, 3GPP, and IEEE standards).

203.    ETSI is a standards-setting organization ("SSO") that is responsible for the standardization of information and communication technologies for the benefit of its members and third parties. 3GPP is a collaborative activity through a group of recognized SSOs (its

29

"Organizational Partners"), including ETSI. 3GPP develops technical specifications subsequently presented to and adopted as standards by its Organizational Partners, such as ETSI.

204. IEEE, through IEEE-SA, is an SSO that is responsible for standardization for the benefit of its members and third parties. IEEE develops and adopts technical specifications, including the 802.11 series of standards.

205. Like other SSOs, ETSI, IEEE, and 3GPP have developed Intellectual Property Rights ("IPR") Policies designed to ensure that investment in standard-setting and standard-compliant equipment is not wasted as a result of essential IPR being unavailable or only available under unreasonable and/or discriminatory licensing terms. In addition, as a 3GPP "Individual Member," Ericsson was "bound by the IPR Policy" of ETSI, the Organizational Partner through which Ericsson participated in 3GPP. These policies generally require that SSO members disclose their ownership of patents that may be essential to practice the standard and commit to licensing these patents on fair, reasonable and non-discriminatory ("FRAND") terms. SSO IPR Policies are designed to obtain FRAND licensing obligations from patent owners to ensure that they will not use their IPR to extract unreasonable license fees or to exclude any market participant that is willing to accept a license for use of the IPR on FRAND terms and conditions.

206. ETSI's IPR Policy is set forth in Annex 6 of its Rules of Procedure. Clause 4.1 of the ETSI IPR Policy requires ETSI members to declare all essential IPR in a timely manner. Clause 15 of ETSI's IPR Policy defines IPR to mean "any intellectual property right conferred by statute law including applications therefor other than trademarks." Therefore, market participants have a reasonable expectation that all potentially essential patents or patent applications will be disclosed to ETSI. Clause 6 of ETSI's IPR Policy governs the availability of

licenses to essential IPR, stating that when essential IPRs are brought to the attention of ETSI, ETSI shall immediately request an undertaking in writing that the IPR owner is prepared to grant irrevocable licenses on fair, reasonable, and non-discriminatory terms. Clause 8 of ETSI's IPR Policy states that, if an IPR owner refuses to give a FRAND commitment in accordance with Clause 6.1 of the IPR Policy prior to the publication of a standard, ETSI will select an alternative technology to incorporate into the standard, or will stop work entirely on the standard if no alternative is available. Further, if an IPR owner refuses to give a FRAND commitment in accordance with Clause 6.1 after publication of a standard, ETSI shall try to modify the standard so that the IPR in question is no longer essential or failing that will involve the European Commission to see what further action is required.

207. The IEEE's IPR Policy is set forth in Section 6.2 of the IEEE-SA Standards Board Bylaws. This section requires that the IEEE "request licensing assurance" through a Letter of Assurance process. This Letter of Assurance must contain either (1) "[a] general disclaimer to the effect that the Submitter without conditions will not enforce any present or future Essential Patent Claims against any person … implementing … the standard," or (2) "[a] statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination."

208. The IEEE's IPR Policy further states that "In order for IEEE's patent policy to function efficiently, individuals participating in the standards development process: (a) shall inform the IEEE (or cause the IEEE to be informed) of the holder of any potential Essential Patent Claims of which they are personally aware and that are not already the subject of an

31

existing Letter of Assurance, owned or controlled by the participant or the entity the participant is from, employed by, or otherwise represents; and (b) should inform the IEEE (or cause the IEEE to be informed) of any other holders of such potential Essential Patent Claims that are not already the subject of an existing Letter of Assurance."

209.    Relying on the IPR Policies of these SSOs and on the accompanying patent owner obligations under these Policies, the SSOs and other third parties, including Samsung, adopted various technologies into the technical standards that were being developed.

210.    Ericsson is a member of the respective SSOs and an alleged contributor to these various standards.  As such, Ericsson has declared that the related patents must be licensed on FRAND terms.  For example, Ericsson has declared to ETSI that some or all of the Ericsson Counterclaim Patents are essential or potentially essential to one or more standard, and explicitly has undertaken "to grant irrevocable licenses under the IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy," i.e., on FRAND terms.  Also, in a Letter of Assurance directed to IEEE 802.11n, Ericsson also agreed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination."

211.    As a member and participant in these SSOs, Samsung relied on the IPR Policies of ETSI, 3GPP and IEEE to ensure that it will have the ability to obtain licenses to standard essential patents on FRAND terms before developing and investing in products and technologies that may practice the standard.  For example, Samsung has made substantial investments in the design, manufacture, launch and continued innovation of these products and technologies.

212.    Moreover, Samsung and Ericsson have previously entered into license agreements relating to technology at issue in this case.  In December 2001, after extensive arm's-length

negotiations, Samsung and Ericsson entered into a worldwide cross-license agreement that specified payment from Samsung to Ericsson for a four year cross license plus a release for the previous four years for the use of both parties' essential patents.

213.   When the 2001 License expired in 2005, Ericsson demanded an exorbitant renewal fee for the following five years.  Despite Samsung's attempts to reach an agreement with Ericsson, Ericsson refused to reduce its demand. Instead, Ericsson initiated litigations against Samsung in the middle of the renewal negotiations between the parties.  Contrary to Ericsson's FRAND obligations, Ericsson sought to exclude Samsung's products from the United States without ever offering a license on FRAND terms as required.

214.   The parties eventually resolved the pending litigations by entering into a new cross-license on June 29, 2007.  The 2007 Agreement expired in 2011.  Instead of proposing terms consistent with the two previous license agreements, Ericsson refused to acknowledge those agreements.  Instead, consistent with Ericsson's new business model, which no longer includes the manufacture of handsets, Ericsson demanded terms that were unfair, unreasonable, and discriminatory, particularly in comparison to the parties' previous agreements.  Ericsson has not complied with its obligation to offer to Samsung, and negotiate, a license on FRAND terms. In addition, upon information and belief, Ericsson failed to use reasonable endeavors to inform ETSI, IEEE, and 3GPP in a timely fashion of the existence of the purported IPR relating to one or more patents asserted herein thus constituting further breach of its obligations to the respective SSO and its members.

215.   Ericsson once again initiated litigations against Samsung in the middle of the renewal negotiations between the parties.  Ericsson again seeks to exclude Samsung's products from the United States, contrary to its earlier contractual obligations and promises.  Ericsson's

33

unreasonable and discriminatory license demands and associated litigation tactics are in violation of its FRAND obligations.  Ericsson is in breach of its obligations and promises and should be barred from seeking relief here, at the ITC, or any other forum for Samsung's alleged infringement of Ericsson's declared standards-essential patents, including some or all of the Ericsson Counterclaim Patents.

## EIGHTH AFFIRMATIVE DEFENSE
### (Patent Misuse)

216.    Samsung incorporates the allegations set forth in paragraphs 202-216, above.  In light of these facts, Plaintiff is barred from asserting the Ericsson Counterclaim Patents by the equitable doctrine of patent misuse.

## NINTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

217.    Samsung incorporates the allegations set forth in paragraphs 202-216, above.  In light of these facts, Ericsson lacks standing as to its claims relating to some or all of the Ericsson Counterclaim Patents.  Ericsson is precluded from obtaining injunctive or other exclusionary relief because it failed to comply with its commitments to ETSI and IEEE that it would license its declared-essential patents on FRAND terms to willing licensees, such as Samsung here. Ericsson lacks standing because it has not offered Samsung a license on FRAND terms or negotiated in good faith to offer Samsung such a FRAND license in violation of Ericsson's representations and obligations to ETSI and IEEE.

## TENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

218.    Samsung incorporates the allegations set forth in paragraphs 202-216, above.  In light of these facts, Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SAMSUNG'S RESPONSIVE COUNTERCLAIMS

219.     Samsung repeats and realleges the allegations of Counterclaim paragraphs 1-247 of Samsung's Third Amended Answer as though fully set forth herein.

220.     Samsung further repeats and realleges the allegations of Samsung's Responsive Counterclaim paragraphs 1-57 of Samsung's Response to Ericsson's Answer, Affirmative Defenses, and Counterclaims to Samsung's First Amended Answer, Affirmative Defenses and Counterclaims filed May 16, 2013, as though fully set forth herein.

## EXCEPTIONAL CASE

220.     This case is an exceptional case entitling Samsung to an award of its reasonable attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285, as a result of, *inter alia*, Ericsson's assertion of the Ericsson Counterclaim Patents against Samsung with the knowledge that the Ericsson Counterclaim Patents are invalid and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Samsung prays for judgment against Ericsson as follows:

a.   For dismissal of Ericsson's Complaint, First Amended Complaint, and Counterclaims in their entirety with prejudice;

b.   For judgment and a declaration that Ericsson has breached its legal obligations with respect to granting Samsung FRAND terms and conditions of licenses to any of its essential patents;

c.   For an order compelling specific performance of Ericsson's FRAND obligations;

d.   For a judgment declaring that Samsung has not and does not infringe, under any theory, any asserted claim of an Ericsson Asserted Patent or an Ericsson Counterclaim Patent;

e.   For a judgment declaring that Samsung is licensed to manufacture, use, import, and sell electronic devices incorporating licensed Qualcomm components, ST Ericsson components,

and/or components of other Ericsson licensed third parties and owes no royalties to Ericsson on account of such manufacture, use, import, or sale;

f. For a judgment declaring that each and every asserted claim of the Ericsson Asserted Patents and Ericsson Counterclaim Patents is invalid and unenforceable;

g. For an award of reasonable attorneys' fees and expenses against Ericsson pursuant to 35 U.S.C. § 285 or otherwise;

h. For damages together with prejudgment interest;

i. For Samsung's costs of suit against Ericsson; and

j. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Samsung hereby demands a trial by jury on all issues triable by a jury alleged or relating to this litigation pursuant to Rule 38 of the Federal Rules of Civil Procedure.

36

Dated:  December 16, 2013

Respectfully submitted,

By: */s/ Indranil Mukerji*

Kenneth R. Adamo
Texas Bar No. 00846960
E-mail:  kradamo@kirkland.com
David W. Higer
E-mail:  david.higer@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000 (Telephone)
(312) 862-2200 (Facsimile)

Gregory S. Arovas, P.C.
E-mail:  greg.arovas@kirkland.com
Jennifer M. Selendy
E-mail:  jennifer.selendy@kirkland.com
Todd M. Friedman
E-mail:  todd.friedman@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800 (Telephone)
(212) 446-4900 (Facsimile)

Edward C. Donovan
E-mail:  edward.donovan@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000 (Telephone)
(202) 879-5200 (Facsimile)

Bao Nguyen
E-mail:  bao.nguyen@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
(415) 439-1400 (Telephone)
(415) 439-1500 (Facsimile)

Michael E. Jones
E-mail:  mikejones@potterminton.com
POTTER MINTON
110 N College Avenue, Suite 500
Tyler, TX 75702
(903) 597-8311 (Telephone)
(903) 593-0846  (Facsimile)

Ruffin Cordell
Texas State Bar No. 04820550
E-mail:  Cordell@fr.com
Michael McKeon
D.C. Bar No. 459780
E-mail:  McKeon@fr.com
Indranil Mukerji
MA Bar No. 644059
E-mail:  Mukerji@fr.com
FISH & RICHARDSON P.C.
1425 K Street, NW, 11th Floor
Washington, DC 20005
Telephone:  (202) 783-5070
Facsimile:  (202) 783-2331

Thomas M. Melsheimer
Texas State Bar No. 1392250
E-mail:  melsheimer@fr.com
Thomas H. Reger II
Texas State Bar No. 24032992
E-mail:  reger@fr.com
Robert C. Earle
Texas State Bar No. 24002029
E-mail:  earle@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone:  (214) 747-5070
Facsimile:   (214) 747-22091

John S. Goetz
N.Y. State Bar No. 429566
E-mail:  Goetz@fr.com
FISH & RICHARDSON P.C.
601 Lexington Avenue, 52nd Floor
New York, NY 10022
Telephone:  (212) 641-2277
Facsimile:  (212) 258-2291

*Counsel for Samsung Electronics Co., Ltd., Samsung
Electronics America, Inc., and Samsung
Telecommunications America, LLC*

37

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on December 16, 2013, to all counsel of record pursuant to the

Court's CM/ECF system.

*/s/Indranil Mukerji*
Indranil Mukerji

CLOSED,JURY,LED1,MEDIATION,PATENT/TRADEMARK,PROTECTIVE-ORDER

**U.S. District Court [LIVE]**
**Eastern District of TEXAS (Tyler)**
**CIVIL DOCKET FOR CASE #: 6:12-cv-00894-LED**

| | |
|---|---|
| Ericsson Inc. et al v. Samsung Electronics Co., LTD., et al | Date Filed: 11/27/2012 |
| Assigned to: Judge Leonard Davis | Date Terminated: 01/29/2014 |
| Cause: 35:271 Patent Infringement | Jury Demand: Both |
| | Nature of Suit: 830 Patent |
| | Jurisdiction: Federal Question |

**Mediator**

**David Folsom**                    represented by    **David Folsom**
                                                      Jackson Walker LLP
                                                      6002-B Summerfeld Drive
                                                      Texarkana, TX 75503
                                                      903-255-3251
                                                      Fax: 903-255-3266
                                                      Email: dfolsom@jw.com
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ericsson Inc.**                    represented by    **Douglas A Cawley**
                                                      McKool Smith - Dallas
                                                      300 Crescent Court
                                                      Suite 1500
                                                      Dallas, TX 75201
                                                      214/978-4972
                                                      Fax: 12149784044
                                                      Email: dcawley@mckoolsmith.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kristina Scurry Baehr**
                                                      McKool Smith, PC - Austin
                                                      300 West 6th St
                                                      Suite 1700
                                                      Austin, TX 78701
                                                      512-692-8700
                                                      Fax: 512-692-8744
                                                      Email: kbaehr@mckoolsmith.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Laurie LaVigna Fitzgerald**
                                                      McKool Smith, PC - Austin
                                                      300 West 6th St
                                                      Suite 1700
                                                      Austin, TX 78701
                                                      512/692-8723

Email: lfitzgerald@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Pierre Jean Hubert**
McKool Smith, PC - Austin
300 West 6th St
Suite 1700
Austin, TX 78701
512/692-8709
Email: phubert@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Ramzi Ragheb Khazen**
McKool Smith, PC - Austin
300 West 6th St
Suite 1700
Austin, TX 78701
512-692-8743
Fax: 512-692-8744
Email: rkhazen@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Trent Edward Campione**
McKool Smith, PC - Austin
300 West 6th St
Suite 1700
Austin, TX 78701
512-692-8718
Fax: 512-692-8744
Email: tcampione@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
McKool Smith - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4000
Fax: 12149784044
Email: mmckool@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
McKool Smith - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4974
Fax: 12149784044
Email: tstevenson@mckoolsmith.com

                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Telefonaktiebolaget LM Ericsson**          represented by **Douglas A Cawley**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Kristina Scurry Baehr**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Laurie LaVigna Fitzgerald**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Pierre Jean Hubert**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Ramzi Ragheb Khazen**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Trent Edward Campione**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mike McKool , Jr**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Theodore Stevenson , III**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Samsung Electronics Co., LTD.,**          represented by **Thomas M Melsheimer**
                                                            Fish & Richardson - Dallas
                                                            1717 Main St
                                                            Suite 5000
                                                            Dallas, TX 75201
                                                            214/747-5070
                                                            Fax: 12147472091
                                                            Email: melsheimer@fr.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Allen Franklin Gardner**

Potter Minton, a Professional
Corporation
110 N College Avenue
Suite 500
Tyler, TX 75702
903/597-8311
Fax: 903-593-0846
Email: allengardner@potterminton.com

*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
Fish & Richardson PC - Washington
DC
1425 K St, NW
Suite 1100
Washington, DC 20005
202/783-5070
Fax: 202/783-2331
Email: kopsidas@fr.com
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
Kirkland & Ellis LLP - Chicago
300 North LaSalle Street
Suite 26.88
Chicago, IL 60654
312/862-3095
Fax: 312/862-2200
Email: archit.shah@kirkland.com
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
Kirkland & Ellis - San Francisco
555 California St
27th Floor
San Francisco, CA 94104
415/439-1425
Fax: 415/439-1500
Email: bao.nguyen@kirkland.com
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
Kirkland & Ellis, LLP - Palo Alto
3330 Hillview Avenue
Palo Alto, CA 94304
650-859-7035
Fax: 650-859-7500
Email: brian.lee@kirkland.com
*ATTORNEY TO BE NOTICED*

**Christopher Freeman**
Kirkland & Ellis - Chicago
300 N LaSalle Street
Suite 2500
Chicago, IL 60654
312-862-2000
Fax: 312-862-2200
Email: chris.freeman@kirkland.com
*ATTORNEY TO BE NOTICED*

**David W Higer**
Kirkland & Ellis - Chicago
300 N LaSalle Street
Suite 2500
Chicago, IL 60654
312/862-2000
Fax: 312/862-2200
Email: david.higer@kirkland.com
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
Kirkland & Ellis - Washington
655 15th St NW
Suite 1200
Washington, DC 20005
202/879-5000
Fax: 202/879-5200
Email: edward.donovan@kirkland.com
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
Kirkland & Ellis, LLP - NYC
601 Lexington Avenue
New York, NY 10022
212/446-4800
Fax: 212/446-4900
Email: greg.arovas@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
Kirkland & Ellis LLP - Chicago
300 North LaSalle Street
Suite 26.88
Chicago, IL 60654
312-862-2744
Fax: 312-862-2200
Email: gregory.sanford@kirkland.com
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
Fish & Richardson PC - Washington
DC
1425 K St, NW
Suite 1100
Washington, DC 20005
202/783-5070
Fax: 202/783-2331
Email: mukerji@fr.com
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
Fish & Richardson PC - Washington
DC
1425 K St, NW
Suite 1100
Washington, DC 20005
202/783-5070
Fax: 202/783-2331
Email: colaianni@fr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
Kirkland & Ellis LLP - Chicago
300 North LaSalle Street
Suite 26.88
Chicago, IL 60654
312-862-2671
Fax: 312-862-2200
Email: kradamo@kirkland.com
*ATTORNEY TO BE NOTICED*

**Kristina Hendricks**
Kirkland & Ellis - Chicago
300 N LaSalle Street
Suite 2500
Chicago, IL 60654
312/862-2000
Fax: 312/862-2200
Email:
kristina.hendricks@kirkland.com
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
Potter Minton, a Professional
Corporation
110 N College Avenue
Suite 500

Tyler, TX 75702
903-597-8311
Fax: 903-593-0846
Email: mikejones@potterminton.com
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
Fish & Richardson PC - Washington
DC
1425 K St, NW
Suite 1100
Washington, DC 20005
202-783-5070
Fax: 202-783-2331
Email: mckeon@fr.com
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
Fish & Richardson - Dallas
1717 Main St.
Suite 5000
Dallas, TX 75201
2147606117
Fax: 2147472091
Email: rce@fr.com
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
Fish & Richardson PC - Washington
DC
1425 K St, NW
Suite 1100
Washington, DC 20005
202/783-5070
Fax: 202-783-2331
Email: cordell@fr.com
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
Kirkland & Ellis, LLP - Palo Alto
3330 Hillview Avenue
Palo Alto, CA 94304
650-859-7011
Fax: 650-859-7500
Email:
sean.christofferson@kirkland.com
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
Fish & Richardson - Dallas

1717 Main St.
Suite 5000
Dallas, TX 75201
214/292-4084
Fax: 214/747-2091
Email: reger@fr.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Samsung Electronics America, Inc.**          represented by   **Thomas M Melsheimer**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Allen Franklin Gardner**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Andrew R Kopsidas**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Archit P Shah**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Bao Nguyen**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Brian W Lee**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Christopher Freeman**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **David W Higer**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Edward C Donovan**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Gregory S Arovas**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristina Hendricks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Samsung Telecommunications**              represented by   **Thomas M Melsheimer**
**America LLP**                                             (See above for address)
*TERMINATED: 05/20/2013*                                    *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Freeman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics America, Inc.**          represented by    **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics Co., LTD.,**          represented by  **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                                          **Thomas Howard Reger , II**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Telecommunications**        represented by    **Thomas M Melsheimer**
**America LLP**                                          (See above for address)
*TERMINATED: 05/20/2013*                                *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Andrew R Kopsidas**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Bao Nguyen**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


                                                        **David W Higer**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Edward C Donovan**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Gregory S Arovas**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Gregory B Sanford**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Indranil Mukerji**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Joseph V Colaianni , Jr**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Michael E Jones**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


                                                        **Michael J McKeon**
                                                        (See above for address)

*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Ericsson Inc.**                         represented by  **Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierre Jean Hubert**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Ragheb Khazen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Trent Edward Campione**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Telefonaktiebolaget LM Ericsson**       represented by  **Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierre Jean Hubert**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Ragheb Khazen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Trent Edward Campione**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics Co., LTD.,**          represented by **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics America, Inc.**       represented by **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Telecommunications**          represented by   **Thomas M Melsheimer**
**America LLP**                                         (See above for address)
*TERMINATED: 05/20/2013*                                *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Andrew R Kopsidas**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Archit P Shah**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Bao Nguyen**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Brian W Lee**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **David W Higer**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Edward C Donovan**
                                                        (See above for address)

*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Ericsson Inc.**                          represented by **Douglas A Cawley**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Pierre Jean Hubert**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ramzi Ragheb Khazen**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Trent Edward Campione**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mike McKool , Jr**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Theodore Stevenson , III**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Telefonaktiebolaget LM Ericsson**        represented by **Douglas A Cawley**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Pierre Jean Hubert**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ramzi Ragheb Khazen**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Trent Edward Campione**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mike McKool , Jr**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Theodore Stevenson , III**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Telefonaktiebolaget LM Ericsson**          represented by   **Douglas A Cawley**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Pierre Jean Hubert**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Ramzi Ragheb Khazen**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Trent Edward Campione**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Mike McKool , Jr**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Theodore Stevenson , III**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Ericsson Inc.**                            represented by   **Douglas A Cawley**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Pierre Jean Hubert**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Ramzi Ragheb Khazen**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Trent Edward Campione**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Mike McKool , Jr**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Theodore Stevenson , III**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Samsung Electronics America, Inc.**        represented by **Thomas M Melsheimer**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Andrew R Kopsidas**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Archit P Shah**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Bao Nguyen**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Brian W Lee**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **David W Higer**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Edward C Donovan**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Gregory S Arovas**
                                                            (See above for address)
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Gregory B Sanford**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Indranil Mukerji**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Joseph V Colaianni , Jr**
                                                            (See above for address)
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Samsung Electronics Co., LTD.,**          represented by   **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                                              **Thomas Howard Reger , II**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Samsung Telecommunications**          represented by   **Thomas M Melsheimer**
**America LLP**                                              (See above for address)
*TERMINATED: 05/20/2013*                                     *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Andrew R Kopsidas**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Archit P Shah**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Bao Nguyen**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian W Lee**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **David W Higer**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Edward C Donovan**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Gregory S Arovas**
                                                              (See above for address)
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Gregory B Sanford**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Indranil Mukerji**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Joseph V Colaianni , Jr**
                                                              (See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Telecommunications**                 represented by   **Thomas M Melsheimer**
**America LLP**                                                (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Andrew R Kopsidas**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Archit P Shah**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Bao Nguyen**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian W Lee**

(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics Co., LTD.,**              represented by   **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                                        **Michael J McKeon**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Robert Charles Earle**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Ruffin B Cordell**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Sean O Christofferson**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Thomas Howard Reger , II**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics America, Inc.**        represented by   **Thomas M Melsheimer**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Andrew R Kopsidas**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Archit P Shah**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Bao Nguyen**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Brian W Lee**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **David W Higer**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Edward C Donovan**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Ericsson Inc.**                          represented by   **Douglas A Cawley**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Pierre Jean Hubert**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Ramzi Ragheb Khazen**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Trent Edward Campione**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mike McKool , Jr**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Theodore Stevenson , III**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Telefonaktiebolaget LM Ericsson**        represented by   **Douglas A Cawley**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Pierre Jean Hubert**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Ramzi Ragheb Khazen**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Trent Edward Campione**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mike McKool , Jr**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Theodore Stevenson , III**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Ericsson Inc.**                          represented by **Douglas A Cawley**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Pierre Jean Hubert**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ramzi Ragheb Khazen**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Trent Edward Campione**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mike McKool , Jr**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Theodore Stevenson , III**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Samsung Electronics America, Inc.**      represented by **Thomas M Melsheimer**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Allen Franklin Gardner**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Andrew R Kopsidas**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Archit P Shah**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Bao Nguyen**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brian W Lee**
                                                          (See above for address)

*ATTORNEY TO BE NOTICED*

**Christopher Freeman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Samsung Electronics Co., LTD.,**          represented by   **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Freeman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Samsung Telecommunications**          represented by  **Thomas M Melsheimer**
**America LLP**                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**– A876 –**

CM/ECF LIVE - U.S. District Court:txed                                   Page 37 of 56

Case 2:13-cv-00900-JRG   Document 63-1   Filed 04/14/14   Page 76 of 95 PageID #:  3621

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

https://ecf.txed.uscourts.gov/cgi-bin/DktRpt.pl?104128842636975-L_1_0-1                4/14/2014

**– A877 –**

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics America, Inc.**          represented by **Thomas M Melsheimer**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Andrew R Kopsidas**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Archit P Shah**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Bao Nguyen**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Brian W Lee**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **David W Higer**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Edward C Donovan**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Samsung Telecommunications**          represented by **Thomas M Melsheimer**
**America LLP**                                         (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics Co., LTD.,**     represented by   **Thomas M Melsheimer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Ericsson Inc.**                          represented by **Douglas A Cawley**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Pierre Jean Hubert**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Ragheb Khazen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Trent Edward Campione**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Telefonaktiebolaget LM Ericsson**          represented by **Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierre Jean Hubert**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Ragheb Khazen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Trent Edward Campione**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Telefonaktiebolaget LM Ericsson**          represented by **Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierre Jean Hubert**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Ragheb Khazen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Trent Edward Campione**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Ericsson Inc.**                        represented by   **Douglas A Cawley**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Pierre Jean Hubert**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ramzi Ragheb Khazen**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Trent Edward Campione**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mike McKool , Jr**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Theodore Stevenson , III**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Samsung Electronics America, Inc.**    represented by   **Thomas M Melsheimer**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Freeman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**– A885 –**

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristina Hendricks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Samsung Electronics Co., LTD.,**          represented by   **Thomas M Melsheimer**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew R Kopsidas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Archit P Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bao Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian W Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Freeman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David W Higer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward C Donovan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory S Arovas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristina Hendricks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Defendant**</u>

**Samsung Telecommunications**      represented by   **Thomas M Melsheimer**
**America LLP**                                      (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Andrew R Kopsidas**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Archit P Shah**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Bao Nguyen**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Brian W Lee**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **David W Higer**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Edward C Donovan**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Gregory S Arovas**
                                                    (See above for address)

*ATTORNEY TO BE NOTICED*

**Gregory B Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Indranil Mukerji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph V Colaianni , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth Robert Adamo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J McKeon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Earle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruffin B Cordell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean O Christofferson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Reger , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/27/2012 | 1 | COMPLAINT *FOR PATENT INFRINGEMENT* against Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP ( Filing fee $ 350 receipt number 0540-3886875.), filed by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Attachments: # 1 Civil Cover Sheet)(Stevenson, Theodore) (Entered: 11/27/2012) |
|  |  |  |

| 11/27/2012 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Ericsson Inc., Telefonaktiebolaget LM Ericsson identifying Corporate Parent Telefonaktiebolaget LM Ericsson, Corporate Parent Ericsson Holding II Inc. for Ericsson Inc.; Corporate Parent None for Telefonaktiebolaget LM Ericsson. (Stevenson, Theodore) (Entered: 11/27/2012) |
|---|---|---|
| 11/27/2012 | 3 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 11/27/2012) |
| 11/27/2012 | 4 | SUMMONS Issued as to Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP and emailed to pltf for service. (Attachments: # 1 Summons(es), # 2 Summons(es)) (klb) (Entered: 11/27/2012) |
| 11/27/2012 | 5 | ***FILED IN ERROR. DUPLICATE ENTRY.*** SUMMONS Issued as to Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP emailed to pltf for service. (Attachments: # 1 Summons(es), # 2 Summons(es))(klb) Modified on 11/27/2012 (gsg). (Entered: 11/27/2012) |
| 11/27/2012 |  | Judge Leonard Davis added. (mll, ) (Entered: 11/27/2012) |
| 12/06/2012 | 6 | NOTICE of Attorney Appearance by Douglas A Cawley on behalf of Ericsson Inc., Telefonaktiebolaget LM Ericsson (Cawley, Douglas) (Entered: 12/06/2012) |
| 12/10/2012 | 7 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP. (Attachments: # 1 Text of Proposed Order)(Jones, Michael) (Entered: 12/10/2012) |
| 12/11/2012 | 8 | ORDER granting 7 Motion for Extension of Time to Answer re 1 Complaint. ORDERED that Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLP have until and through March 18, 2013 to answer, move, or otherwise respond to Plaintiffs Complaint. Signed by Judge Leonard Davis on 12/11/2012. (gsg) (Entered: 12/12/2012) |
| 01/11/2013 | 9 | NOTICE of Attorney Appearance by Thomas M Melsheimer on behalf of All Defendants (Melsheimer, Thomas) (Entered: 01/11/2013) |
| 01/11/2013 | 10 | NOTICE of Attorney Appearance by Michael J McKeon on behalf of All Defendants (McKeon, Michael) (Entered: 01/11/2013) |
| 01/11/2013 | 11 | NOTICE of Attorney Appearance by Ruffin B Cordell on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP (Cordell, Ruffin) (Entered: 01/11/2013) |
| 01/24/2013 | 12 | NOTICE of Attorney Appearance - Pro Hac Vice by Joseph V Colaianni, Jr on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP. Filing fee $ 100, receipt number 0540-3968729. (Colaianni, Joseph) (Entered: 01/24/2013) |

| 01/29/2013 | 13 | AMENDED COMPLAINT *FOR PATENT INFRINGEMENT (FIRST)* against Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP, filed by Ericsson Inc., Telefonaktiebolaget LM Ericsson.(McKool, Mike) (Entered: 01/29/2013) |
| --- | --- | --- |
| 02/01/2013 | 14 | NOTICE of Attorney Appearance by Trent Edward Campione on behalf of Ericsson Inc., Telefonaktiebolaget LM Ericsson (Campione, Trent) (Entered: 02/01/2013) |
| 02/01/2013 | 15 | NOTICE of Attorney Appearance by Pierre Jean Hubert on behalf of Ericsson Inc., Telefonaktiebolaget LM Ericsson (Hubert, Pierre) (Entered: 02/01/2013) |
| 02/07/2013 | 16 | NOTICE of Attorney Appearance by Ramzi Ragheb Khazen on behalf of Ericsson Inc., Telefonaktiebolaget LM Ericsson (Khazen, Ramzi) (Entered: 02/07/2013) |
| 03/14/2013 | 17 | NOTICE of Attorney Appearance by Thomas Howard Reger, II on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP (Reger, Thomas) (Entered: 03/14/2013) |
| 03/14/2013 | 18 | NOTICE of Attorney Appearance by Robert Charles Earle on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP (Earle, Robert) (Entered: 03/14/2013) |
| 03/18/2013 | 19 | NOTICE of Attorney Appearance - Pro Hac Vice by Bao Nguyen on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4048843. (Nguyen, Bao) (Entered: 03/18/2013) |
| 03/18/2013 | 20 | NOTICE of Attorney Appearance by Indranil Mukerji on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP (Mukerji, Indranil) (Entered: 03/18/2013) |
| 03/18/2013 | 21 | NOTICE of Attorney Appearance - Pro Hac Vice by Sean O Christofferson on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4050242. (Christofferson, Sean) (Entered: 03/18/2013) |
| 03/18/2013 | 22 | NOTICE of Attorney Appearance - Pro Hac Vice by Gregory S Arovas on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4050249. (Arovas, Gregory) (Entered: 03/18/2013) |
| 03/18/2013 | 23 | NOTICE of Attorney Appearance - Pro Hac Vice by Edward C Donovan on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4050251. (Donovan, Edward) (Entered: 03/18/2013) |
| 03/18/2013 | 24 | NOTICE of Attorney Appearance - Pro Hac Vice by David W Higer on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4050255. (Higer, David) (Entered: 03/18/2013) |
| 03/18/2013 | 25 | NOTICE of Attorney Appearance - Pro Hac Vice by Gregory B Sanford on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4050289. (Sanford, Gregory) (Entered: 03/18/2013) |
| 03/18/2013 | 26 | ANSWER to 13 Amended Complaint, COUNTERCLAIM against Ericsson Inc., Telefonaktiebolaget LM Ericsson by Samsung Electronics America, Inc., |

| | | |
|---|---|---|
| | | Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP. (Mukerji, Indranil) (Entered: 03/18/2013) |
| 03/18/2013 | 27 | CORPORATE DISCLOSURE STATEMENT filed by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP (Mukerji, Indranil) (Entered: 03/18/2013) |
| 03/19/2013 | 28 | NOTICE of Attorney Appearance - Pro Hac Vice by Archit P Shah on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4051815. (Shah, Archit) (Entered: 03/19/2013) |
| 03/19/2013 | 29 | NOTICE of Attorney Appearance - Pro Hac Vice by Brian W Lee on behalf of All Defendants. Filing fee $ 100, receipt number 0540-4052122. (Lee, Brian) (Entered: 03/19/2013) |
| 03/19/2013 | 30 | NOTICE of Attorney Appearance by Kenneth Robert Adamo on behalf of All Defendants (Adamo, Kenneth) (Entered: 03/19/2013) |
| 04/05/2013 | 31 | AMENDED ANSWER to 13 Amended Complaint, COUNTERCLAIM against Ericsson Inc., Telefonaktiebolaget LM Ericsson by Samsung Electronics Co., LTD.,, Samsung Electronics America, Inc., Samsung Telecommunications America LLP. (Mukerji, Indranil) (Entered: 04/05/2013) |
| 04/17/2013 | 32 | Unopposed MOTION to Stay *OF PROCEEDINGS PURSUANT TO 28 U.S.C. SECTION 1659 FOR CERTAIN SAMSUNG PATENTS ALSO BEING LITIGATED BEFORE THE INTERNATIONAL TRADE COMMISSION* by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Stevenson, Theodore) (Entered: 04/17/2013) |
| 04/22/2013 | 33 | ANSWER to 31 Amended Answer to Complaint, Counterclaim, COUNTERCLAIM against Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP by Telefonaktiebolaget LM Ericsson, Ericsson Inc..(Stevenson, Theodore) (Entered: 04/22/2013) |
| 04/22/2013 | 34 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 04/22/2013) |
| 04/30/2013 | 35 | ORDER granting 32 Motion to Stay. This Motion only affects some of the patents asserted in this case. **To avoid future complications arising from a partial stay, the Court SEVERS Samsung's counterclaims involving U.S. Patent Nos. 6,617,929, 6,767,813, 6,865,682, 7,782,749, 8,165,081, 8,208,438, and 8,228,827 into a separate cause of action.** The Court WAIVES any required filing fee for the new case. Signed by Judge Leonard Davis on 04/30/13. (mll, ) (Entered: 04/30/2013) |
| 04/30/2013 | | **U.S. Patents Nos. 6,617,929; 6,767,813; 6,865,682; 7,782,749; 8,165,081; 8,208,438, and 8,228,827 SEVERED from this cause and assigned to Civil Action 6:13cv364.** (mll, ) (Entered: 04/30/2013) |
| 05/16/2013 | 36 | ANSWER to 33 Answer to Counterclaim,,, by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP.(Mukerji, Indranil) (Entered: 05/16/2013) |

| 05/17/2013 | 37 | CORPORATE DISCLOSURE STATEMENT filed by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP (Mukerji, Indranil) (Entered: 05/17/2013) |
| 05/17/2013 | 38 | ***FILED IN ERROR PER ATTORNEY. SEE ENTRY 40 FOR CORRECTED FILING.*** Unopposed MOTION to Dismiss *ONLY SAMSUNG TELECOMMUNICATIONS AMERICA, LLP, WITHOUT PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 21* by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) Modified on 5/20/2013 (gsg). (Entered: 05/17/2013) |
| 05/17/2013 | 39 | NOTICE by Ericsson Inc., Telefonaktiebolaget LM Ericsson *NOTICE OF READINESS FOR STATUS CONFERENCE PURSUANT TO STANDING ORDER* (Stevenson, Theodore) (Entered: 05/17/2013) |
| 05/17/2013 | 40 | Unopposed MOTION to Dismiss *ONLY SAMSUNG TELECOMMUNICATIONS AMERICA, LLP, WITHOUT PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 21* by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 05/17/2013) |
| 05/20/2013 | 41 | ORDER GRANTING 40 Unopposed MOTION to Dismiss *ONLY SAMSUNG TELECOMMUNICATIONS AMERICA, LLP, WITHOUT PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 21* filed by Ericsson Inc., Telefonaktiebolaget LM Ericsson. Samsung Telecommunications America LLP, terminated. Signed by Judge Leonard Davis on 5/20/2013. (gsg) (Entered: 05/20/2013) |
| 05/30/2013 | 42 | ORDER setting Status Conference for 6/27/2013 01:30 PM before Judge Leonard Davis. Signed by Judge Leonard Davis on 05/30/13. (mll, ) (Entered: 05/30/2013) |
| 06/07/2013 | 43 | NOTICE of Attorney Appearance - Pro Hac Vice by Christopher Freeman on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP. Filing fee $ 100, receipt number 0540-4172637. (Freeman, Christopher) (Entered: 06/07/2013) |
| 06/10/2013 | 44 | RESPONSE to 36 Answer to Counterclaim *ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT SAMSUNG'S RESPONSE TO ERICSSON'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO SAMSUNG'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS* by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Stevenson, Theodore) (Entered: 06/10/2013) |
| 06/13/2013 | 45 | NOTICE of Attorney Appearance by Andrew R Kopsidas on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP (Kopsidas, Andrew) (Entered: 06/13/2013) |
| 06/25/2013 | 46 | NOTICE by Ericsson Inc., Telefonaktiebolaget LM Ericsson *NOTICE OF AGREEMENT* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Stevenson, Theodore) (Entered: 06/25/2013) |

| 06/26/2013 | | NOTICE **Status Conference set for 6/27/2013 01:30 PM is CANCELLED.** (cwk) (Entered: 06/26/2013) |
|---|---|---|
| 06/26/2013 | 47 | ORDER REGARDING E-DISCOVERY. Signed by Judge Leonard Davis on 06/26/13. (mll, ) (Entered: 06/26/2013) |
| 06/27/2013 | 48 | JOINT AGREED DISCOVERY ORDER. Signed by Judge Leonard Davis on 06/26/13. (mll, ) (Entered: 06/27/2013) |
| 06/27/2013 | 49 | JOINT AGREED PROTECTIVE ORDER. Signed by Judge Leonard Davis on 06/26/13. (mll, ) (Entered: 06/27/2013) |
| 06/27/2013 | 50 | DOCKET CONTROL ORDER. Mediation Completion due by 1/31/2014. Judge David Folsom is appointed as mediator in this cause. Jury Selection set for 2/1/2016 09:00AM before Judge Leonard Davis. Jury Trial set for 2/8/2016 09:00 AM before Judge Leonard Davis. Markman Hearing set for 7/31/2014 09:00 AM before Judge Leonard Davis. Pretrial Conference set for 1/21/2016 09:00 AM before Judge Leonard Davis. Signed by Judge Leonard Davis on 06/26/13. (mll, ) (Entered: 06/27/2013) |
| 06/27/2013 | | CASE REFERRED to Mediator. David Folsom is appointed as Mediator in this cause. (mll, ) (Entered: 06/27/2013) |
| 08/28/2013 | 51 | NOTICE of Discovery Disclosure by Samsung Electronics America, Inc., Samsung Electronics Co., LTD., *DEFENDANTS/COUNTERCLAIM PLAINTIFFS SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC'S NOTICE OF DISCLOSURE* (Higer, David) (Entered: 08/28/2013) |
| 08/28/2013 | 52 | NOTICE of Discovery Disclosure by Ericsson Inc., Telefonaktiebolaget LM Ericsson (Stevenson, Theodore) (Entered: 08/28/2013) |
| 09/13/2013 | 53 | AMENDED ANSWER to 13 Amended Complaint , COUNTERCLAIM against All Plaintiffs by Samsung Telecommunications America LLP, Samsung Electronics Co., LTD.,, Samsung Electronics America, Inc.. (Mukerji, Indranil) (Entered: 09/13/2013) |
| 09/14/2013 | 54 | NOTICE of Discovery Disclosure by Samsung Electronics America, Inc., Samsung Electronics Co., LTD., *(Patent Local Rule 3-1 and 3-2 Disclosures)* (Higer, David) (Entered: 09/14/2013) |
| 09/17/2013 | 55 | NOTICE by Ericsson Inc., Telefonaktiebolaget LM Ericsson *NOTICE REGARDING SERVICE OF PR 3-1 AND 3-2 DISCLOSURES* (Stevenson, Theodore) (Entered: 09/17/2013) |
| 09/19/2013 | 56 | NOTICE of Attorney Appearance by Allen Franklin Gardner on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD., (Gardner, Allen) (Entered: 09/19/2013) |
| 09/30/2013 | 57 | ANSWER to 53 Amended Answer to Complaint, Counterclaim , COUNTERCLAIM against Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP by Ericsson Inc..(Stevenson, Theodore) (Entered: 09/30/2013) |
| | | |

| 10/15/2013 | 58 | Joint MOTION to Amend/Correct 50 Order, Set Scheduling Order Deadlines, Set Hearings,,, by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 10/15/2013) |
|---|---|---|
| 10/16/2013 | 59 | NOTICE of Discovery Disclosure by Samsung Electronics America, Inc., Samsung Electronics Co., LTD., (Higer, David) (Entered: 10/16/2013) |
| 10/18/2013 | 60 | ORDER granting 58 Motion to Amend/Correct Docket Control Order. Signed by Judge Leonard Davis on 10/18/13. (mll, ) (Entered: 10/18/2013) |
| 10/25/2013 | 61 | RESPONSE to 57 Answer to Counterclaim,,, by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP. (Mukerji, Indranil) (Entered: 10/25/2013) |
| 10/30/2013 | 62 | MOTION for Leave to File *Defendant/Counterclaim Plaintiff Samsung's Unopposed Motion for Leave to File Its Third Amended Answer and Counterclaims and to Serve Amended Infringement Contentions* by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,. (Attachments: # 1 Exhibit A - Certificate of Correction for U.S. Patent No. 8,498,255, # 2 Text of Proposed Order)(Higer, David) (Entered: 10/30/2013) |
| 11/04/2013 | 63 | ORDER granting 62 Motion for Leave to File Third Amended Answer and Counterclaims. Signed by Judge Leonard Davis on 11/04/13. (mll, ) (Entered: 11/04/2013) |
| 11/05/2013 | 64 | *Third Amended* ANSWER to Complaint *First Amended*, COUNTERCLAIM against Ericsson Inc., Telefonaktiebolaget LM Ericsson by Samsung Electronics America, Inc., Samsung Telecommunications America LLP, Samsung Electronics Co., LTD.,.(Mukerji, Indranil) (Entered: 11/05/2013) |
| 11/15/2013 | 65 | NOTICE of Attorney Appearance - Pro Hac Vice by Kristina Hendricks on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,. Filing fee $ 100, receipt number 0540-4406650. (Hendricks, Kristina) (Entered: 11/15/2013) |
| 11/18/2013 | 66 | RESPONSE to 61 Response to Answer and Counterclaim by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Stevenson, Theodore) (Entered: 11/18/2013) |
| 11/22/2013 | 67 | ANSWER to 64 Answer to Complaint, Counterclaim,, , COUNTERCLAIM against Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP by Telefonaktiebolaget LM Ericsson, Ericsson Inc..(Stevenson, Theodore) (Entered: 11/22/2013) |
| 12/13/2013 | 68 | NOTICE of Attorney Appearance by Laurie LaVigna Fitzgerald on behalf of Ericsson Inc., Telefonaktiebolaget LM Ericsson (Fitzgerald, Laurie) (Entered: 12/13/2013) |
| 12/13/2013 | 69 | NOTICE of Discovery Disclosure by Samsung Electronics America, Inc., Samsung Electronics Co., LTD., *[Samsung's Damages Statement]* (Higer, David) (Entered: 12/13/2013) |
| 12/13/2013 | 70 | NOTICE of Attorney Appearance by Kristina Scurry Baehr on behalf of |

|  |  | Ericsson Inc., Telefonaktiebolaget LM Ericsson (Baehr, Kristina) (Entered: 12/13/2013) |
|---|---|---|
| 12/16/2013 | 71 | NOTICE of Discovery Disclosure by Ericsson Inc., Telefonaktiebolaget LM Ericsson (Stevenson, Theodore) (Entered: 12/16/2013) |
| 12/16/2013 | 72 | RESPONSE to 67 Answer to Counterclaim,,, by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP. (Mukerji, Indranil) (Entered: 12/16/2013) |
| 12/20/2013 | 73 | MOTION Issuance of a Letter of Request for Documents in France Pursuant to the Hague Evidence Convention by Samsung Electronics America, Inc., Samsung Electronics Co., LTD,,, Samsung Telecommunications America LLP. (Attachments: # 1 Exhibit A - ETSI Letter of Request, # 2 Text of Proposed Order Proposed Order)(Earle, Robert) (Entered: 12/20/2013) |
| 12/23/2013 | 74 | NOTICE by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung Telecommunications America LLP *of Compliance* (Mukerji, Indranil) (Entered: 12/23/2013) |
| 12/23/2013 | 75 | NOTICE by Ericsson Inc., Telefonaktiebolaget LM Ericsson *NTOICE REGARDING SERVICE OF PR 3-3 AND 3-4 DISCLOSURES* (Stevenson, Theodore) (Entered: 12/23/2013) |
| 01/09/2014 | 76 | RESPONSE to 72 Response to Non-Motion *(ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT SAMSUNG'S RESPONSE TO ERICSSON'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO SAMSUNG'S THIRD AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS)* by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Stevenson, Theodore) (Entered: 01/09/2014) |
| 01/28/2014 | 77 | Joint MOTION to Dismiss *WITHOUT PREJUDICE* by Ericsson Inc., Telefonaktiebolaget LM Ericsson. (Attachments: # 1 Text of Proposed Order) (Stevenson, Theodore) (Entered: 01/28/2014) |
| 01/29/2014 | 78 | ORDER granting 77 Motion to Dismiss Without Prejudice. All claims, counterclaims, and any other requests for relief asserted by any party in this action are dismissed without prejudice. Each party shall bear its own fees and costs. Signed by Judge Leonard Davis on 1/29/14. (mjc, ) (Entered: 01/29/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/14/2014 11:50:46 | | |
| **PACER Login:** | ms0085 | **Client Code:** | 01678.00005 |
| **Description:** | Docket Report | **Search Criteria:** | 6:12-cv-00894-LED |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# EXHIBIT 12

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., | § CIVIL ACTION NO. 9:02CV58 |
| | § JUDGE JOHN HANNAH, JR. |
| | § |
| | § ~~UNDER SEAL~~ |
| | § |
| Plaintiff, | § PLAINTIFF'S UNOPPOSED MOTION |
| | § TO FILE SAMSUNG ELECTRONICS |
| | § COMPANY LIMITED'S RESPONSE |
| | § TO SANDISK CORPORATION'S |
| VS. | § MOTION TO TRANSFER VENUE |
| | § TO THE NORTHERN DISTRICT OF |
| | § CALIFORNIA PURSUANT TO 28 |
| SANDISK CORPORATION, | § U.S.C. § 1404(a) |
| | § |
| Defendant, | § |

Samsung Electronics Company Limited moves the Court to file its Response to SanDisk Corporation's Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) Under Seal for the sole reason that the Motion to Transfer of SanDisk Corporation has been filed Under Seal and Samsung's Response thereto refers to matters which have been placed Under Seal as contained in the SanDisk Motion to Transfer Venue.

Simultaneously with the filing of this Motion, a Declaration of David J. Healey is filed in support of Samsung's Response outside of the Court's Sealing Order.



-1-

Respectfully submitted,

LAW OFFICE OF CLAYTON E. DARK, JR.
P. O. Box 2207
Lufkin, Texas 75902-2207
Phone: (936) 637-1733
Fax:    (936) 637-2897


By: _____
        Clayton E. Dark, Jr.
        State Bar No. 05384500
        Attorney for Plaintiff

WEIL, GOTSHALL & MANGES L.L.P.
David J. Healey
State Bar No. 09327980
Anita E. Kadala
State Bar No. 00786007
700 Louisiana, Suite 1600
Houston, Texas 77005
Phone:    (713) 546-5000
Fax:      (713) 224-9511

LAW OFFICE OF GEORGE E. CHANDLER
George E. Chandler
State Bar No. 0494000
P. O. Box 340
Lufkin, Texas 75902-0340
Phone:    (936) 632-7778
Fax:      (936) 632-1304

LAW OFFICE OF CLAUDE E. WELCH
Claude E. Welch
State Bar No. 21120500
P. O. Box 1574
Lufkin, Texas 75902-1574
Phone:    (936) 639-3311
Fax:      (936) 639-3049

-2-

THE RICHARDS LAW FIRM
R. W. "Ricky" Richards
State Bar No. 16854100
P. O. Box 1309
Jacksonville, Texas 75766
Phone:    (903) 586-2544
Fax:      (903) 586-6529

### CERTIFICATE OF CONFERENCE

    I have conferred with counsel for the Defendant in the above cause and I am informed that all parties are in agreement with the above and foregoing Motion.

Clayton E. Dark, Jr.

### CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing has been served on all counsel of record as follows in accordance with the Federal Rules of Civil Procedure by certified mail, return receipt requested, through the U.S. Postal Service on this the 24th day of April, 2002.

Clayton E. Dark, Jr.

-3-

— A900 —

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., | § § § | CIVIL ACTION NO. 9:02CV58 JUDGE JOHN HANNAH, JR. |
| Plaintiff, | § § § | ORDER SEALING SAMSUNG ELECTRONICS COMPANY LIMITED'S RESPONSE TO SANDISK |
| VS. | § § | CORPORATION'S MOTION TO TRANSFER VENUE TO THE |
| SANDISK CORPORATION, | § § | NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO |
| Defendant, | § | 28 U.S.C. § 1404(a) |

On this day came on to be considered the unopposed Motion of Plaintiff Samsung

Electronics Company, Ltd. to file its Response to SanDisk Corporation's Motion to Transfer

Venue Under Seal and the Court having found that said Motion is well taken and unopposed.

It is, therefore, ORDERED that Samsung Electronics Company Limited's Response to

SanDisk Corporation's Motion to Transfer Venue to the Northern District of California Pursuant

to 28 U.S.C. § 1404(a) shall be filed and remain Under Seal until further Order of the Court.

SIGNED this _____ day of _____, 2002.


_____
Judge John Hannah, Jr.

# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SIMPLEAIR, INC., | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:11-cv-416-JRG |
| v. | § § | |
| MICROSOFT CORP., *et al.*, | § § | |
| Defendants. | § § § § | |

## ORDER AND OPINION

### I.    INTRODUCTION

Pending before the Court is Microsoft Corporation's Motion to Transfer Venue (Dkt. No.

168), Microsoft Corporation's Motion to Sever Plaintiff's Claims Against Microsoft (Dkt. No.

170) and Defendants' Motion to Sever and Transfer Severed Claims to the United States District

Court for the Northern District of California (Dkt. No. 172). Microsoft Corporation ("Microsoft")

seeks to be severed from the other defendants in this case and then have its then severed claims

transferred to the Western District of Washington. Separately, the group of defendants including

Google, Inc. ("Google Defendants")[1] also seeks severance from the remaining defendants, and for

their then severed claims to be transferred to the Northern District of California. Defendants

Ericsson Inc. and Nokia Inc. do not join in these motions and have not otherwise moved the Court

---

[1]  The Google Defendants are collectively Google Inc., Motorola Mobility LLC, Futurewei Technologies, Inc., Huawei Technologies Co., Ltd., HTC America, Inc., HTC Corporation, LG Electronics Mobilecomm U.S.A., Sony Mobile Communications (USA) Inc.

1

for a severance or transfer.

## II.     BACKGROUND

SimpleAir filed suit on September 15, 2011, which was before the effective date of the Leahy-Smith America Invents Act. SimpleAir alleges infringement of two patents, U.S. Patent Nos. 6,021,433 ("the '433 patent) and 7,035,914 ("the '914 patent"), against sixteen separate Defendants, which are informally structured into nine Defendant groups: Microsoft, Nokia, Samsung, Sony Mobile, Ericsson, Huawei, Google, HTC, and LG. The accused technology relates to wireless messaging and notification services.

There are four accused notification services in this case: (1) Microsoft's Push Notification services (MPNS) on Windows Phone smartphones, (2) Google's Android Cloud to Device Messaging (C2DM) service on Android smartphones and tablets, (3) Nokia Notification Services on Symbian smartphones, and (4) Ericsson Mobile Push Service on Android smartphones and J2ME (Java) smartphones. Additionally, SimpleAir accuses Motorola, Samsung, Sony Mobile, Huawei, HTC, and LG of jointly infringing the asserted patents with Google because they each manufacture Android phones and tablets that are used in conjunction with Google's C2DM service. SimpleAir further alleges that Samsung, Huawei, HTC, and LG manufacture Windows Phones that are relevant to its allegations against Microsoft.[2]

## III.    MICROSOFT AND GOOGLE DEFENDANTS' MOTION TO SEVER

The Court first considers the two severance motions. Microsoft and the Google Defendants contend that they were improperly joined in this lawsuit under *In re EMC (In re EMC I)*, 677 F.3d 1351 (Fed. Cir. 2012) and Rule 20 because SimpleAir has accused four disparate products of

---

[2] Defendants contend that allegations of joint infringement between any mobile device company and Microsoft does not appear in the initial pleadings or infringement contentions, and is being alleged now for the first time by SimpleAir. However, the Court will presume these allegations to be proper for purposes of the joinder analysis.

2

infringement:

- Microsoft's MPNS

- Google's Android C2DM

- Nokia's Notifications API; and,

- Ericsson's Mobile Push API, DroidPush API, and Mobile Java Push.

Microsoft contends that SimpleAir alleges separate and distinct infringement contentions against it that are not related to claims against any other defendant because SimpleAir's infringement contentions make no mention of Microsoft in connection with any other defendant. The Google Defendants concede that SimpleAir sets forth contentions relating to Google's Android C2DM service and presents alternative joint infringement theories directed against Motorola, Samsung, Sony Mobile, Huawei, HTC, and LG. However, no theory of infringement is asserted between the Google Defendants and any of the other defendants. Both Microsoft and the Google Defendants also argue that the four accused products were independently developed by unrelated companies.

SimpleAir responds by analyzing various limitations of claim 1 of the '914 patent; purportedly, to show that the claims are being asserted against each of the four accused products in the same manner. As examples of evidentiary overlap between the defendants, SimpleAir points to (i) evidence that the same application providers, such as CNN, Facebook, etc., transmit data to the "central broadcast servers," (ii) the same software within the carrier networks (*e.g.* AT&T) and the ISP networks (*e.g.* Comcast) constitute the "information gateway" and "transmission gateway, (iii) the same Android smartphones and tablets (and their components) meet the "receivers" and "computing devices" limitations for both the Google Defendants and Ericsson, and (iv) the same

3

data channels provided by the application providers satisfy the "data channels" limitation for both Microsoft and the Google Defendants.

In the *In re EMC I* opinion, the Federal Circuit clarified the test for joinder by holding that "[c]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." 677 F.3d at 1359. In addition, "joinder is not appropriate where different products or processes are involved." *Id.* "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* Under Rule 20, joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." *Id.* at 1356. The parties do not appear to dispute that there is at least one common question of law between the defendants. Therefore, the Court's obligation is to determine whether the claims share an aggregate of operative facts.

Here, SimpleAir affirms it accuses four notification services provided by four independent companies:

- The MPNS is used to process and transmit notification data to applications on the Windows Phone smartphones;

- The C2DM service is used to process and transmit notification data to applications on the Android smartphones and tablets;

- The Nokia Notifications Service is used to process and transmit notification data

> to applications on the Symbian smartphones; and

- The Ericsson mobile Push Service is used to process and transmit notification data to applications on Android smartphones and J2ME (Java) smartphones.

(*See* Dkt. No. 285 at 5 and 8.) SimpleAir bases satisfaction of the joinder requirement on the general contention that "Defendants' accused notifications are very similar with respect to how they are alleged to infringe"; therefore, there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant to satisfy the same transaction-or-occurrence test. (*See* Dkt. No. 285-1, Eichman Decl. ¶ 2.)

While each of the four accused products may operate in a similar manner, the Court does not find each claim of infringement to share an aggregate of operative facts adequate to meet Rule 20's transaction-or-occurrence test. SimpleAir does not dispute that the four accused instrumentalities are different products and are independently manufactured by four unrelated companies. These defendants are, in fact, competitors in the smartphone marketplace. SimpleAir never alleges the presence of a contractual relationship adequate to bind Microsoft, Google, Nokia or Ericsson's accused products, within the context of its infringement allegations. Furthermore, SimpleAir makes no argument that the four accused products use commonly sourced components. In light of *In re EMC*, the fact that all of the accused products employ similar but independent notification services is insufficient to prevent severance.

On review of the evidence presented, it appears to the Court that SimpleAir's arguments may have been adequate to deny severance under the previous standard of "not dramatically different." *In re EMC*, 677 F.3d at 1359. However, the prior standard has been supplanted by the Federal Circuit and replaced by the "aggregate of operative facts" and "actual link" standard now

in place.

The Court does not find an actual link between the facts underlying each claim of infringement against Microsoft and the Google Defendants. Rather, independently developed products using differently sourced parts are alleged to infringe the same claims of the same patents. Even assuming as valid SimpleAir's joint infringement allegations against Samsung, Huawei, HTC, and LG with **both** Google and Microsoft, that overlap in prospective evidence is not sufficient to constitute an actual link between all the defendants in this case. Accordingly, the Court finds that Microsoft's MPNS and Google Defendants' C2DM are not part of the same transaction or occurrence.

## IV.   MICROSOFT'S MOTION TO TRANSFER

Since Microsoft has shown that severance is proper, the Court next turns to whether the severed action should be transferred to the Western District of Washington (WDWA). Under 28 U.S.C. § 1404 (a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.   *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008).

The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203. If the transferee district is a proper venue, then the court must weigh the relative public and private

factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors, none of which are given dispositive weight. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

SimpleAir has been a Texas corporation since 2009 with a principal place of business in Plano, Texas, which is within the Eastern District of Texas (EDTX). (Dkt. No. 285-4, Payne Decl. ¶ 9.) Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. The Court finds there to be no dispute that this suit could have originally been brought in the Western District of Washington. Accordingly, the Court next moves to consider the public and private interest factors as outlined above.

a.      **Private Interest Factors**

i.      *Relative Ease of Access to Sources of Proof*

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a valid private interest factor. *See Volkswagen II*,

7

**– A909 –**

545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

Microsoft states that the vast majority of its relevant documents and electronic files concerning the design and development of the MPNS are located in WDWA. (*See* Dkt. No. 168-6, Kuhn Decl.) The design and development of the accused MPNS took place in or around Redmond, Washington. (*Id.*) Also, it's not aware of any documents relevant to Microsoft's design and development of the MPNS that are maintained in EDTX. (*Id.*) On the other hand, SimpleAir stores relevant documentation and evidence within EDTX in its office in Plano, Texas. (Dkt. No. 285-4, Payne Decl. ¶ 8.) Such documents relate to the development of the asserted patents and the AirMedia Live Services (the commercial service that the inventions originated from), original prosecution and ownership documents, and physical units of the AirMedia Internet Antenna and software. (*Id.*)

Microsoft urges the Court to disregard the presence of SimpleAir's documents in EDTX as part of the transfer analysis because the documents were moved to EDTX in anticipation of litigation. (Dkt. No. 168 at 7.) From Microsoft's recount of SimpleAir's history of first incorporating in California in 2004 and then in Texas in 2009, it essentially asks this Court to conclude that SimpleAir was organized and structured in this District specifically to avail itself of the judicial system within EDTX and that its presence here is "recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). The Federal Circuit

has found that an entity is ephemeral if it does not have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum. *Novelpoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) (citing *In re Zimmer*, 609 F.3d at 1381). Additionally, "[t]his is certainly true where the formation of the entity could be characterized as recent." Here, the President of SimpleAir and lead inventor on the asserted patents, John Payne, states that he uses the Plano office to conduct business relating to SimpleAir. (Dkt. No. 285-4, Payne Decl. ¶ 10). Such business includes meetings with patent prosecution counsel and litigation counsel. (*Id.*) Additionally, SimpleAir has been a Texas corporation for approximately five years. Its formation cannot be fairly characterized as recent or ephemeral and Microsoft has not met its burden to show that SimpleAir was incorporated in EDTX only to manipulate venue.

Returning to the § 1404(a) analysis, the Court finds that SimpleAir has shown that significant sources of proof exist within EDTX at least as relates to the Plaintiff. Additionally, sources of proof relating to Microsoft also exist in Texas since the accused MPNS product utilizes servers in data centers located in San Antonio, Texas. (Dkt. No. 292 at 2.) On balance, the Court finds this factor is neutral.

*ii.    Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.   *Volkswagen II*, 545 F.3d at 316.   Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.* Based on its invalidity

contentions, Microsoft has identified five individuals with potentially relevant knowledge about prior art who are believed to reside within Washington and are subject to WDWA's absolute subpoena power. (Dkt. No. 168 at 8.) Microsoft also points out that Jeffrey Wang, a named inventor of both asserted patents, lives in Bellevue, Washington and is also subject to WDWA's absolute subpoena power.

On the other hand, SimpleAir identifies Samsung, Futurewei, and Nokia,[3] who all have locations within or close to EDTX, as possessing evidence relevant to the claims and defenses between SimpleAir and Microsoft. (Dkt. No. 285-1, Eichman Decl. ¶ 8.) Third parties AT&T Mobility, Verizon Wireless, and Metro PCS are alleged to have information concerning the servers in their data networks that may be relevant to SimpleAir's infringement allegations. (*Id.*)  Their relevant offices are located in Plano, Texas and Dallas, Texas. (*Id.*) In addition, the prosecuting attorneys of the asserted patents, Chris Rourk and John M. Cone, are both based in Dallas, Texas. (*Id.*) SimpleAir has also specifically identified and named former employees of AirMedia, numerous technical witnesses with knowledge of prior art (some identified by Defendants), and other relevant third parties who are subject to the absolute subpoena power of EDTX or, if outside such subpoena power, are otherwise located in the State of Texas. (*Id.* at ¶ 9.)

SimpleAir has identified numerous non-party witnesses that are within the absolute subpoena power of EDTX for depositions, and more within the subpoena power of EDTX for trial. Certainly, there may be many more relevant third parties outside of both Texas and Washington. However, based upon the evidence presented, Microsoft has not shown that WDWA is comparable to Texas in this regard. On balance, the Court finds that the availability of compulsory process

---

[3]  Once Microsoft is severed out from Cause No. 2:11-416, Samsung, Futurewei and Nokia will become third parties to the Microsoft action.

factor weighs against transfer.

  *iii.*  *Cost of Attendance for Willing Witnesses*

  The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

  The non-party witnesses identified by SimpleAir and Microsoft in the Court's discussion of the second factor show that they are spread across the entire country, including some in Washington and many in Texas. Regarding party witnesses, Microsoft identified five technical employees with knowledge of the design and development of aspects of the MPNS who work in its Redmond, Washington office: Scott Bragg, Abolade Gbadegesin, Reid Kuhn, Dan McBride, and Sameer Tejani. (Dkt. No. 168 at 9.) Additionally, Microsoft identified, and SimpleAir does not dispute, four current or former officers and/or directors of SimpleAir who reside in Southern California: John Payne, Tim von Kaenel, Seth Weisberg, and Michael Mirel. (*Id.* at 9-10.) For the Plaintiff's witnesses, the distance between their locations in Southern California and the Marshall

courthouse is on average 1,595 miles compared to the distance to the Seattle courthouse, which is on average 1,168 miles. Despite the extra distance of 427 miles, John Payne, the current President of SimpleAir, attests that he considers EDTX to be more convenient because he frequently travels to the Dallas area for other business meetings. (Dkt. No. 285-4, Payne Decl. at ¶ 12.) In contrast, he rarely travels to Seattle for any purpose. (*Id.*) As a result, this is a situation where the plaintiff claims one location is more convenient and the defendant urges another location is more convenient. On balance and taking into account the widespread and disparate locations of the non-party witnesses, the Court finds this factor to be neutral.

    *iv.*      *Other Practical Problems*

Microsoft submits that there are no other practical problems to prevent transfer while SimpleAir contends that there are. Practical problems include those that are rationally based on judicial economy. *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011); *see also Volkswagen II,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (quoting *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26 (1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice … [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

As severance is granted here, as previously discussed, for both Microsoft and the Google Defendants, this case will consequently be split into three parallel co-pending actions involving the same asserted patents and allegations of infringement. This Court will clearly be responsible

for what remains of this case because Nokia and Ericsson have not moved for a severance or transfer. To transfer the Microsoft Action to WDWA, and Google Defendants to NDCA while keeping the Nokia and Ericsson case in EDTX would unavoidably risk duplicative proceedings involving the same or similar issues between three different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions. Due to such real and practical dangers, the Court finds that the traditional notions of judicial economy lead the Court to find that the "Other Practical Problems" factor weighs against transfer in this case.

**b.**     **Public Interest Factors**

Having addressed the private interest factors in the § 1404(a) transfer analysis, the Court now turns to the public interest factors. The only two factors the parties dispute are court congestion and local interest. The parties concede that the other factors are neutral.

*i.*     *Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* Microsoft argues that WDWA is less congested because it has fewer total civil cases and fewer patent cases compared to EDTX. However, this case was filed in September 2011 and trial in EDTX is only five months away. Even if transfer was granted immediately when this motion first became ripe for consideration in December 2012, a trial set in WDWA would most likely be much later than the present trial date of January 2014. Accordingly, on balance, the Court finds that this factor weighs against transfer.

13

      *ii.*        *Local Interest*

      The Court must also consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

      Microsoft argues that it has a strong interest in having this dispute settled in WDWA because (i) it employs numerous employees in the Puget Sound area, (ii) relevant evidence is located in Redmond, Washington, and (iii) SimpleAir's connections to EDTX are inspired by litigation. (Dkt. No. 168 at 12-13.) SimpleAir responds that it has been a Texas corporation and a member of the local community in this district for several years. (Dkt. No. 285, at 23-4.) Additionally, the original commercialization of the asserted patents by AirMedia took place in Plano, Texas, which is within this District. (*Id.*) However, SimpleAir concedes that WDWA has a substantial local interest in this case due to Microsoft's significant presence in the Redmond, Washington. (*Id.* at 23.) On balance, this factor weighs in favor of transfer.

**c.**     **Conclusion**

      On weighing the evidence, one factor weighs in favor of transfer to WDWA, three factors weigh against transfer, and four are neutral. The balance of the private and public factors demonstrates that the Microsoft has fallen short of meeting its burden to show that transfer is clearly more convenient.

## V.     GOOGLE DEFENDANTS' MOTION TO TRANSFER

Based upon much the same arguments advanced by Microsoft, the Google Defendants move to transfer their severed case to the Northern District of California (NDCA). However, the Google Defendants include Futurewei Technologies, Inc., who is headquartered in Plano, Texas (within EDTX); Huawei Technologies Co., headquartered in China; Sony Mobile, headquartered in Atlanta, Georgia; HTC America, headquartered in Bellevue, Washington; HTC Corporation, headquartered in Taiwan; LG Electronics Mobilecomm, headquartered in San Diego, California; Motorola Mobility, headquartered in Libertyville, Illinois; Samsung Electronics America, headquartered in Ridgefield Park, New Jersey; and Samsung Telecommunications America, headquartered in Richardson, Texas. (*See generally* Dkt. No. 172, Exhibits 1-7.) Their sources of proof and relevant witnesses are likewise scattered across the country and the globe. (*Id.*) In fact, with the exception of Google itself, all of the other moving defendants are located elsewhere within the country (outside NDCA) or overseas. Futurewei Technologies, Inc. is located within EDTX and Samsung Telecommunications is located either within, or very close to (if not adjacent to) this district. None of the moving defendants are actually headquartered in NDCA except for Google. Therefore, the facts surrounding the Google Defendants' motion to transfer are significantly less persuasive to the Court in conducting the § 1404(a) analysis than the facts Microsoft set forth.

Accordingly, based on the same reasoning as discussed in Microsoft's transfer motion above, the Court finds that transfer of the Google Defendants to NDCA is not clearly more convenient.

## VI.    CONCLUSION

The Court **GRANTS** Microsoft's Motion to Sever Plaintiff's Claims Against Microsoft (Dkt. No. 170) and **GRANTS-IN-PART** Defendants' Motion to Sever and Transfer Severed Claims to the United States District Court for the Northern District of California (Dkt. No. 172) as to the matter of severance. Accordingly, the Court hereby **ORDERS** that the claims pertaining to Microsoft and the Google Defendants be severed into separate causes of action. SimpleAir shall pay the filing fee for those cases within ten (10) days of this order issuing to avoid having the severed cause of action dismissed with prejudice.

Further, the Court **ORDERS** the two (2) new cases to be **CONSOLIDATED** for all pretrial issues (except venue) with the lead case, 2:11-CV-416. The parties are instructed to file any future motions in the lead case until further Order of the Court.  The docket control, discovery, and protective orders entered in the lead case will govern the consolidated action, including the claims pertaining to Microsoft and the Google Defendants.

For the reasons discussed above, the Court **DENIES** Microsoft's Motion to Transfer Venue to the Western District of Washington (Dkt. No. 168) and **DENIES-IN-PART** Defendants' Motion to Sever and Transfer Severed Claims to the United States District Court for the Northern District of California (Dkt. No. 172), being specifically denied as to the transfer issue.

**So ORDERED and SIGNED this 9th day of August, 2013.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

16

# EXHIBIT 14

JURY,LEAD,PATENT/TRADEMARK

**U.S. District Court [LIVE]**
**Eastern District of TEXAS (Marshall)**
**CIVIL DOCKET FOR CASE #: 2:13-cv-00894-JRG**

Rockstar Consortium US LP et al v. ASUSTeK Computer,         Date Filed: 10/31/2013
Inc. et al                                                  Jury Demand: Plaintiff
Assigned to: Judge Rodney Gilstrap                          Nature of Suit: 830 Patent
Related Cases: 2:13-cv-00898-JRG                            Jurisdiction: Federal Question
               2:13-cv-00895-JRG
               2:13-cv-00899-JRG
               2:13-cv-00901-JRG
               2:13-cv-00900-JRG
Cause: 35:271 Patent Infringement

**Plaintiff**

**Rockstar Consortium US LP**                represented by **David Sochia**
                                                          McKool Smith
                                                          300 Crescent Court
                                                          Suite 1500
                                                          Dallas, TX 75201
                                                          214/978-4000
                                                          Email: dsochia@mckoolsmith.com
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Douglas A Cawley**
                                                          McKool Smith - Dallas
                                                          300 Crescent Court
                                                          Suite 1500
                                                          Dallas, TX 75201
                                                          214/978-4972
                                                          Fax: 12149784044
                                                          Email: dcawley@mckoolsmith.com
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jennifer Leigh Truelove**
                                                          McKool Smith - Marshall
                                                          P O Box O
                                                          104 East Houston St., Suite 300
                                                          Marshall, TX 75670
                                                          903-923-9000
                                                          Fax: 903-923-9099
                                                          Email: jtruelove@mckoolsmith.com
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Joshua Wright Budwin**
                                                          McKool Smith, PC - Austin

**– A920 –**

Fax: 704-503-2622
Email: ssnyder@kslaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2013 | 1 | COMPLAINT against ASUSTeK Computer, Inc., Asus Computer International, Inc. ( Filing fee $ 400 receipt number 0540-4385206.), filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet)(Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium LLC for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 3 | CORPORATE DISCLOSURE STATEMENT filed by Mobilestar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP for Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 11/01/2013 | | Judge Rodney Gilstrap added. (ehs, ) (Entered: 11/01/2013) |
| 11/02/2013 | 4 | NOTICE of Attorney Appearance by Mike McKool, Jr on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (McKool, Mike) (Entered: 11/02/2013) |
| 11/02/2013 | 5 | NOTICE of Attorney Appearance by David Sochia on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Sochia, David) (Entered: 11/02/2013) |
| 11/02/2013 | 6 | NOTICE of Attorney Appearance by Douglas A Cawley on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Cawley, Douglas) (Entered: 11/02/2013) |
| 11/05/2013 | 7 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 11/05/2013) |
| 11/06/2013 | 8 | SUMMONS Issued as to Asus Computer International, Inc.. (ch, ) (Entered: 11/06/2013) |
| 11/25/2013 | 9 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 11/25/2013) |
| 11/26/2013 | 10 | ORDER granting 9 Motion for Extension of Time to Answer. Dft ASUSTeK Computer Inc and ASUS Computer International Inc deadline is 2/10/2014. Signed by Judge Rodney Gilstrap on 11/26/2013. (ch, ) (Entered: 11/26/2013) |
| 11/26/2013 | | Answer Due Deadline Updated for ASUSTeK Computer, Inc. to 2/10/2014; Asus Computer International, Inc. to 2/10/2014. (ch, ) (Entered: 11/26/2013) |
| 12/04/2013 | 11 | SUMMONS Returned Executed by Rockstar Consortium US LP, Mobilestar |

CONSOL,JURY,PATENT/TRADEMARK

# U.S. District Court [LIVE]
## Eastern District of TEXAS (Marshall)
### CIVIL DOCKET FOR CASE #: 2:13-cv-00895-JRG

| | |
|---|---|
| Rockstar Consortium US LP et al v. HTC Corporation et al | Date Filed: 10/31/2013 |
| Assigned to: Judge Rodney Gilstrap | Jury Demand: Plaintiff |
| Lead case: 2:13-cv-00894-JRG | Nature of Suit: 830 Patent |
| Member case: (View Member Case) | Jurisdiction: Federal Question |
| Related Cases: 2:13-cv-00894-JRG | |
| 2:13-cv-00898-JRG | |
| 2:13-cv-00899-JRG | |
| 2:13-cv-00901-JRG | |
| 2:13-cv-00900-JRG | |
| Cause: 35:271 Patent Infringement | |

**Plaintiff**

**Rockstar Consortium US LP**                represented by    **David Sochia**
                                                               McKool Smith
                                                               300 Crescent Court
                                                               Suite 1500
                                                               Dallas, TX 75201
                                                               214/978-4000
                                                               Email: dsochia@mckoolsmith.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Douglas A Cawley**
                                                               McKool Smith - Dallas
                                                               300 Crescent Court
                                                               Suite 1500
                                                               Dallas, TX 75201
                                                               214/978-4972
                                                               Fax: 12149784044
                                                               Email: dcawley@mckoolsmith.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Joshua Wright Budwin**
                                                               McKool Smith, PC - Austin
                                                               300 West 6th St
                                                               Suite 1700
                                                               Austin, TX 78701
                                                               512-692-8700
                                                               Fax: 512-592-8744
                                                               Email: jbudwin@mckoolsmith.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Mike McKool , Jr**

**– A922 –**

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2013 | 1 | COMPLAINT against HTC America, Inc., HTC Corporation ( Filing fee $ 400 receipt number 0540-4385278.), filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet) (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | | Judge Rodney Gilstrap added. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice of Consent to Proceed Before Magistrate Judge*. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium LLC for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 3 | CORPORATE DISCLOSURE STATEMENT filed by Mobilestar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP for Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 11/02/2013 | 4 | NOTICE of Attorney Appearance by Mike McKool, Jr on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (McKool, Mike) (Entered: 11/02/2013) |
| 11/02/2013 | 5 | NOTICE of Attorney Appearance by David Sochia on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Sochia, David) (Entered: 11/02/2013) |
| 11/02/2013 | 6 | NOTICE of Attorney Appearance by Douglas A Cawley on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Cawley, Douglas) (Entered: 11/02/2013) |
| 11/05/2013 | 7 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 11/05/2013) |
| 11/05/2013 | 8 | SUMMONS Issued as to HTC America, Inc.. (ch, ) (Entered: 11/08/2013) |
| 11/15/2013 | 9 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Mobilestar Technologies LLC, Rockstar Consortium US LP (Plaintiff filed for HTC Defendants)( Stevenson, Theodore) (Entered: 11/15/2013) |
| 11/15/2013 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint is GRANTED pursuant to Local Rule CV-12 for HTC America, |

CONSOL,JURY,PATENT/TRADEMARK

**U.S. District Court [LIVE]**
**Eastern District of TEXAS (Marshall)**
**CIVIL DOCKET FOR CASE #: 2:13-cv-00898-JRG**


Rockstar Consortium US LP et al v. LG Electronics Inc. et al   Date Filed: 10/31/2013
Assigned to: Judge Rodney Gilstrap                            Jury Demand: Plaintiff
Lead case: 2:13-cv-00894-JRG                                  Nature of Suit: 830 Patent
Member case: (View Member Case)                               Jurisdiction: Federal Question
Related Cases:   2:13-cv-00894-JRG
                 2:13-cv-00895-JRG
                 2:13-cv-00899-JRG
                 2:13-cv-00901-JRG
                 2:13-cv-00900-JRG
Cause: 35:271 Patent Infringement

**Plaintiff**

**Rockstar Consortium US LP**          represented by   **David Sochia**
                                                        McKool Smith
                                                        300 Crescent Court
                                                        Suite 1500
                                                        Dallas, TX 75201
                                                        214/978-4000
                                                        Email: dsochia@mckoolsmith.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Douglas A Cawley**
                                                        McKool Smith - Dallas
                                                        300 Crescent Court
                                                        Suite 1500
                                                        Dallas, TX 75201
                                                        214/978-4972
                                                        Fax: 12149784044
                                                        Email: dcawley@mckoolsmith.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Joshua Wright Budwin**
                                                        McKool Smith, PC - Austin
                                                        300 West 6th St
                                                        Suite 1700
                                                        Austin, TX 78701
                                                        512-692-8700
                                                        Fax: 512-592-8744
                                                        Email: jbudwin@mckoolsmith.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Mike McKool , Jr**

**– A924 –**

**Laura Natalie Gleen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mary-Olga Lovett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LG Electronics Mobilecomm USA**          represented by   **Richard D Harris**
**Inc**                                                     (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Barry R Horwitz**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Eric Jason Maiers**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **James J Lukas , Jr**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jeffrey G Mote**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Laura Natalie Gleen**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mary-Olga Lovett**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2013 | 1 | COMPLAINT against LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc. ( Filing fee $ 400 receipt number 0540-4385439.), filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet)(Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | | Judge Rodney Gilstrap added. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to |

**– A925 –**

   Case 2:13-cv-00900-JRG   Document 63-4   Filed 04/14/14   Page 8 of 14 PageID #: 3670

<span style="color:green">CONSOL,JURY,PATENT/TRADEMARK</span>

**U.S. District Court [LIVE]**
**Eastern District of TEXAS (Marshall)**
**CIVIL DOCKET FOR CASE #: 2:13-cv-00899-JRG**

Rockstar Consortium US LP et al v. Pantech Co Ltd et al          Date Filed: 10/31/2013
Assigned to: Judge Rodney Gilstrap                               Jury Demand: Plaintiff
Lead case: 2:13-cv-00894-JRG                                     Nature of Suit: 830 Patent
Member case: (View Member Case)                                  Jurisdiction: Federal Question
Related Cases: 2:13-cv-00894-JRG
               2:13-cv-00895-JRG
               2:13-cv-00898-JRG
               2:13-cv-00901-JRG
               2:13-cv-00900-JRG
Cause: 35:271 Patent Infringement

**Plaintiff**

**Rockstar Consortium US LP**              represented by   **David Sochia**
                                                            McKool Smith
                                                            300 Crescent Court
                                                            Suite 1500
                                                            Dallas, TX 75201
                                                            214/978-4000
                                                            Email: dsochia@mckoolsmith.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Douglas A Cawley**
                                                            McKool Smith - Dallas
                                                            300 Crescent Court
                                                            Suite 1500
                                                            Dallas, TX 75201
                                                            214/978-4972
                                                            Fax: 12149784044
                                                            Email: dcawley@mckoolsmith.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Joshua Wright Budwin**
                                                            McKool Smith, PC - Austin
                                                            300 West 6th St
                                                            Suite 1700
                                                            Austin, TX 78701
                                                            512-692-8700
                                                            Fax: 512-592-8744
                                                            Email: jbudwin@mckoolsmith.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mike McKool , Jr**

**– A926 –**

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Pantech Co Ltd**                       represented by  **Weldon Barton Rankin**
                                                         Baker & McKenzie LLP - Dallas
                                                         2001 Ross Ave
                                                         Suite 2300
                                                         Dallas, TX 75201
                                                         214/978-3000
                                                         Fax: 214/9783088
                                                         Email:
                                                         bart.rankin@bakermckenzie.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Lance Lee**
                                                         Lance Lee
                                                         Attorney at Law
                                                         5511 Plaza Drive
                                                         Texarkana, TX 75503
                                                         903/223-0276
                                                         Fax: 903/223-0210
                                                         Email: wlancelee@aol.com
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Pantech Wireless Inc**                  represented by  **Lance Lee**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Weldon Barton Rankin**
                                                         Baker & McKenzie - Dallas
                                                         2001 Ross Ave
                                                         Suite 2300
                                                         Dallas, TX 75201
                                                         214/978-3000
                                                         Fax: 214/9783088
                                                         Email:
                                                         bart.rankin@bakermckenzie.com
                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 10/31/2013 | 1 | COMPLAINT against Pantech Co Ltd, Pantech Wireless Inc ( Filing fee $ 400 receipt number 0540-4385512.), filed by Rockstar Consortium US LP, |

| | | |
|---|---|---|
| | | Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet) (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | | Judge Rodney Gilstrap added. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice of Consent to Proceed Before Magistrate Judge*. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium LLC for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 3 | CORPORATE DISCLOSURE STATEMENT filed by Mobilestar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP for Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 11/02/2013 | 4 | NOTICE of Attorney Appearance by Mike McKool, Jr on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (McKool, Mike) (Entered: 11/02/2013) |
| 11/02/2013 | 5 | NOTICE of Attorney Appearance by David Sochia on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Sochia, David) (Entered: 11/02/2013) |
| 11/02/2013 | 6 | NOTICE of Attorney Appearance by Douglas A Cawley on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Cawley, Douglas) (Entered: 11/02/2013) |
| 11/05/2013 | 7 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 11/05/2013) |
| 11/08/2013 | 8 | SUMMONS Issued as to Pantech Wireless Inc. (ch, ) (Entered: 11/08/2013) |
| 11/13/2013 | 9 | AMENDED COMPLAINT against Pantech Co Ltd, Pantech Wireless Inc, filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 11/13/2013) |
| 11/13/2013 | 10 | SUMMONS REISSUED as to Pantech Wireless Inc. (ch, ) (Entered: 11/13/2013) |
| 11/25/2013 | 11 | SUMMONS Returned Executed by Rockstar Consortium US LP, Mobilestar Technologies LLC. Pantech Wireless Inc served by Process Server on 11/6/2013. (ch, ) (Entered: 12/02/2013) |
| 12/03/2013 | 12 | Unopposed MOTION for Extension of Time to File Answer re 9 Amended Complaint by Pantech Wireless Inc. (Attachments: # 1 Text of Proposed Order)(Rankin, Weldon) (Entered: 12/03/2013) |
| | | |

CONSOL,JURY,PATENT/TRADEMARK

**U.S. District Court [LIVE]**
**Eastern District of TEXAS (Marshall)**
**CIVIL DOCKET FOR CASE #: 2:13-cv-00900-JRG**

Rockstar Consortium US LP et al v. Samsung Electronics          Date Filed: 10/31/2013
Co., LTD., et al                                               Jury Demand: Plaintiff
Assigned to: Judge Rodney Gilstrap                             Nature of Suit: 830 Patent
Lead case: 2:13-cv-00894-JRG                                   Jurisdiction: Federal Question
Member case: (View Member Case)
Related Cases:   2:13-cv-00894-JRG
                 2:13-cv-00895-JRG
                 2:13-cv-00898-JRG
                 2:13-cv-00899-JRG
                 2:13-cv-00901-JRG
Cause: 35:271 Patent Infringement

**Plaintiff**

**Rockstar Consortium US LP**                represented by   **David Sochia**
                                                             McKool Smith
                                                             300 Crescent Court
                                                             Suite 1500
                                                             Dallas, TX 75201
                                                             214/978-4000
                                                             Email: dsochia@mckoolsmith.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Douglas A Cawley**
                                                             McKool Smith - Dallas
                                                             300 Crescent Court
                                                             Suite 1500
                                                             Dallas, TX 75201
                                                             214/978-4972
                                                             Fax: 12149784044
                                                             Email: dcawley@mckoolsmith.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Joshua Wright Budwin**
                                                             McKool Smith, PC - Austin
                                                             300 West 6th St
                                                             Suite 1700
                                                             Austin, TX 78701
                                                             512-692-8700
                                                             Fax: 512-592-8744
                                                             Email: jbudwin@mckoolsmith.com
                                                             *ATTORNEY TO BE NOTICED*

Fax: 415/875-6700
Email:
amycandido@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Andy Tindel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles K Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2013 | 1 | COMPLAINT against Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC ( Filing fee $ 400 receipt number 0540-4385542.), filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet) (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 |   | Judge Rodney Gilstrap added. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 |   | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice of Consent to Proceed Before Magistrate Judge*. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium LLC for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 3 | CORPORATE DISCLOSURE STATEMENT filed by Mobilestar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP for Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 10/31/2013) |

CONSOL,JURY,PATENT/TRADEMARK

**U.S. District Court [LIVE]**
**Eastern District of TEXAS (Marshall)**
**CIVIL DOCKET FOR CASE #: 2:13-cv-00901-JRG**

Rockstar Consortium US LP et al v. ZTE Corporation et al       Date Filed: 10/31/2013
Assigned to: Judge Rodney Gilstrap                              Jury Demand: Plaintiff
Lead case: 2:13-cv-00894-JRG                                    Nature of Suit: 830 Patent
Member case: (View Member Case)                                 Jurisdiction: Federal Question
Related Cases: 2:13-cv-00894-JRG
               2:13-cv-00895-JRG
               2:13-cv-00898-JRG
               2:13-cv-00899-JRG
               2:13-cv-00900-JRG
Cause: 35:271 Patent Infringement

**Plaintiff**

**Rockstar Consortium US LP**              represented by   **David Sochia**
                                                            McKool Smith
                                                            300 Crescent Court
                                                            Suite 1500
                                                            Dallas, TX 75201
                                                            214/978-4000
                                                            Email: dsochia@mckoolsmith.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Douglas A Cawley**
                                                            McKool Smith - Dallas
                                                            300 Crescent Court
                                                            Suite 1500
                                                            Dallas, TX 75201
                                                            214/978-4972
                                                            Fax: 12149784044
                                                            Email: dcawley@mckoolsmith.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Joshua Wright Budwin**
                                                            McKool Smith, PC - Austin
                                                            300 West 6th St
                                                            Suite 1700
                                                            Austin, TX 78701
                                                            512-692-8700
                                                            Fax: 512-592-8744
                                                            Email: jbudwin@mckoolsmith.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mike McKool , Jr**

*ATTORNEY TO BE NOTICED*

**Defendant**

**ZTE Solutions, Inc.**
*TERMINATED: 01/31/2014*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2013 | 1 | COMPLAINT against ZTE (USA) Inc., ZTE Corporation, ZTE Solutions, Inc. ( Filing fee $ 400 receipt number 0540-4385580.), filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet)(Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | | Judge Rodney Gilstrap added. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice of Consent to Proceed Before Magistrate Judge*. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium US LP for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 3 | CORPORATE DISCLOSURE STATEMENT filed by Mobilestar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP for Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 4 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium LLC for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 11/02/2013 | 5 | NOTICE of Attorney Appearance by Mike McKool, Jr on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (McKool, Mike) (Entered: 11/02/2013) |
| 11/02/2013 | 6 | NOTICE of Attorney Appearance by David Sochia on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Sochia, David) (Entered: 11/02/2013) |
| 11/02/2013 | 7 | NOTICE of Attorney Appearance by Douglas A Cawley on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Cawley, Douglas) (Entered: 11/02/2013) |
| 11/05/2013 | 8 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 11/05/2013) |
| 11/08/2013 | 9 | SUMMONS Issued as to ZTE (USA) Inc., ZTE Solutions, Inc.. (Attachments: |

# EXHIBIT 15

ADRMOP,AO279

# U.S. District Court
## California Northern District (Oakland)
### CIVIL DOCKET FOR CASE #: 4:13-cv-05933-CW

Google Inc. v. Rockstar Consortium US LP et al          Date Filed: 12/23/2013
Assigned to: Hon. Claudia Wilken                        Jury Demand: Plaintiff
Cause: 35:271 Patent Infringement                       Nature of Suit: 830 Patent
                                                        Jurisdiction: Federal Question

**Plaintiff**

**Google Inc.**                    represented by   **Matthew S. Warren**
                                                   Quinn Emanuel Urquhart & Sullivan,
                                                   LLP
                                                   50 California Street
                                                   22nd Floor
                                                   San Francisco, CA 94111
                                                   415-875-6600
                                                   Fax: 415-875-6700
                                                   Email:
                                                   matthewwarren@courtpapers.info
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Kristin J. Madigan**
                                                   Quinn Emanuel Urquhart & Sullivan
                                                   San Francisco Office
                                                   50 California Street
                                                   22nd Floor
                                                   San Francisco, CA 94104
                                                   (415) 875-6600
                                                   Fax: (415) 875-6700
                                                   Email:
                                                   kristinmadigan@quinnemanuel.com
                                                   *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rockstar Consortium US LP**      represented by   **Courtland Lewis Reichman**
                                                   McKool Smith Hennigan PC.
                                                   255 Shoreline Drive, Suite 510
                                                   Redwood Shores, CA 94065
                                                   650-394-1401
                                                   Fax: 650-394-1422
                                                   Email: creichman@mckoolsmith.com
                                                   *ATTORNEY TO BE NOTICED*

*ATTORNEY TO BE NOTICED*

**Defendant**

**MobileStar Technologies LLC**          represented by **Courtland Lewis Reichman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Douglas A. Cawley**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2013 | 1 | COMPLAINT *for Declaratory Judgment of Non-Infringement* against All Defendants ( Filing fee $ 400, receipt number 0971-8252154.). Filed byGoogle Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Civil Cover Sheet)(Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 2 | Proposed Summons. (Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 3 | Proposed Summons. (Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 4 | Certificate of Interested Entities by Google Inc. (Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 5 | Case assigned to Magistrate Judge Paul Singh Grewal. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing |

# EXHIBIT 16

# The Android Source Code

Android is an open-source software stack created for a wide array of devices with different form factors. The primary purposes of Android are to create an open software platform available for carriers, OEMs, and developers to make their innovative ideas a reality and to introduce a successful, real-world product that improves the mobile experience for users. We also wanted to make sure there was no central point of failure, where one industry player could restrict or control the innovations of any other. The result is a full, production-quality consumer product with source code open for customization and porting.

## Governance Philosophy

Android was originated by a group of companies known as the Open Handset Alliance, led by Google. Today, many companies -- both original members of the OHA and others -- have invested heavily in Android. These companies have allocated significant engineering resources to improve Android and bring Android devices to market.

The companies that have invested in Android have done so on its merits because we believe an open platform is necessary. Android is intentionally and explicitly an open-source -- as opposed to a free software -- effort; a group of organizations with shared needs has pooled resources to collaborate on a single implementation of a shared product. The Android philosophy is pragmatic, first and foremost. The objective is a shared product that each contributor can tailor and customize.

Uncontrolled customization can, of course, lead to incompatible implementations. To prevent this, the Android Open Source Project also maintains the <u>Android Compatibility Program</u> <u>(/compatibility/index.html)</u>, which spells out what it means to be "Android compatible" and what is required of device builders to achieve that status. Anyone can (and will!) use the Android source code for any purpose, and we welcome all legitimate uses. However, in order to take part in the shared ecosystem of applications we are building around Android, device builders must participate in the Android Compatibility Program.

The Android Open Source Project is led by Google, who maintains and further develops Android. Although Android consists of multiple subprojects, this is strictly a project management technique. We view and manage Android as a single, holistic software product, not a "distribution", specification, or collection of replaceable parts. Our intent is that device builders port Android to a device; they don't implement a specification or curate a distribution.

**– A937 –**

# EXHIBIT 17

**Ad:** HTC One (M8) Buy One, Get One FREE.     Tell us what you think of the new CNET  |  Connect with us

  **BUY 1 $199.99, GET 1 FREE** New 2-yr activation required per phone.  See The Device

CNET › Mobile › Google, Samsung strike patent cross-licensing deal

# Google, Samsung strike patent cross-licensing deal

The two companies are pretty vague about the terms but take veiled shots at Apple.

by **Shara Tibken**  **@sharatibken**  /  January 26, 2014 1:00 PM PST

147 /  /  0 /  /  0 /  /  0 /  /  /  more +










Samsung's Galaxy S4 and other popular handsets run Google's Android operating system.

Josh Miller/CNET

Google and Samsung on Sunday unveiled a broad, long-term cross-licensing deal that will cover their existing patents as well as those filed over the next 10 years. The two companies provided essentially no details about the terms of the deal or what patents and technologies its covers, only saying that it's "mutually beneficial." However, they did take veiled shots at Apple, stressing how two big companies can work together to avoid litigation.

**Related stories:**

**DON'T MISS** /

**Nokia at Build: Join us Wednesday (live blog)**
Mobile

**Don't blink! FireChat takes ephemeral messaging to whole new level**
Mobile Apps

**Rumor roundup: What to expect from Amazon's new streamer**
Media Streamers

**Ever wear a helmet? Stick this nifty Bluetooth system on it**
Bluetooth Headsets

**NASA's idea of a Mars 'reality show'**
Sci-Tech

**HOT PRODUCTS** /


**Nest Learning Thermostat**
What all the fuss is about  /  $229.49

**2014 Audi A7 3.0 TDI**
The best tech car  /  $66,900.00

**Google Chromecast**

 Search CNET

Reviews    News    Video    How To    Download    US Edition

CNET's take on the Galaxy Note 3

"Samsung and Google are showing the rest of the industry that there is more to gain from cooperating than engaging in unnecessary patent disputes," Seungho Ahn, the head of Samsung's Intellectual Property Center, said in a press release. Allen Lo, deputy general counsel for patents at Google, echoed Ahn's comments, saying that "by working together on agreements like this, companies can reduce the potential for litigation and focus instead on innovation."

Apple and Samsung have been embroiled in litigation for several years, and Apple also has sued other Android handset makers. In the case of Samsung, Apple accused the company of copying patents such as its technology for making a screen bounce back when you reach the bottom. Apple has been victorious over Samsung in US courts so far, and the next case, which covers gadgets such as the Galaxy S3 and iPhone 5, goes to trial March 31.

The two companies have been ordered to hold talks by February 19 to try to resolve their issues. However, a settlement has seemed unlikely. In November, before jury election began in a separate patent infringement lawsuit Apple filed against Samsung, US District Court Judge Lucy Koh told both parties that she would like them to try to reach a settlement and that she would prefer the companies' CEOs participate in the talks. She prefaced the request by saying to the attorneys for Apple and Samsung that "you don't have to laugh at me, but even my chambers laughs at me when I mention settlement."

Meanwhile, Google and Samsung have been close partners over the years. Samsung's smartphone success has come from using Google's Android open-source operating system. There have been reports of tension between the two companies, but both are reliant on each other to keep their mobile momentum going. It's likely that many of the patents involved in the cross-licensing deal relate to mobile technology.

Like [1.6m]    Follow @CNET    g+    CNET

   

1 - 4 of 9                    PREV    NEXT

Tags: Apple, Mobile

**ABOUT THE AUTHOR**

 **Shara Tibken** /

Shara Tibken is a senior writer for CNET focused on Samsung and Apple. She previously wrote for Dow Jones Newswires and the Wall Street Journal. She's a native Midwesterner who still prefers "pop" over "soda." See full bio

**YOU MAY ALSO LIKE**                    Recommended by


 SimpliSafe Home Security
The better way to secure your home

Sony PlayStation 4
Taking a second look at the PS4
/ $399.99

**TRENDING ON CNET** /

When parents limit screen time, kids behave, sleep, and test better
223   Facebook Likes

For the love of doge: Internet's greatest memes as 3D-printed toys
239   Tweets

This is how an engineer feels when he's surrounded by idiots
414   Google Plus Shares

US requiring back-up cameras in cars by 2018
110   Comments


Everything there is to know about iPhone 6
Here is all the information you should know about Apple's next phone.
CHECK IT OUT


iPhone 6 will offer a
4.8-inch screen,
predicts analyst
CNET


Best printers under
$100
CNET


New Device Prevents
Teens From Texting
and Driving
MyFox New York


10 SUVs to Steer
Clear Of in 2014
Wall St. Cheat Sheet

**Strategize your IP**

perceptionpartners.com

Don't just file a patent at a time
Build smart portfolios & your
value

**ARTICLE DISCUSSION**

## 147 Comments / 2 people following

Log In

Share        Post Comment As...

SORT BY:  NEWEST  |  OLDEST  |  TOP COMMENTS                    FAQs / Guidelines

---

**becool773**                                                    Jan 31, 2014

....SHITpple has been victorious over Samsung in US courts so far....You should have also
mentioned that SHITpple lost the same cases in Japan, UK, Australia and even in US
under the FTA. The idiot president vetoed and reversed the decision though. Moreover
you can never expect an American company to loose in America.

REPLY /     LIKE

---

**RazorEdge**                                                    Jan 27, 2014

Samsung sold 91 Million Smarterphones for Smarter People, celebrated blowing Apple's
sales completely out of the water by handing out $740 Billion Dollars to employees,
while increasing dividends to share holders and every iFanatic acting like Samsung is
going under! lol.... Now that's funny! 320 Million Samsung Smartphones vs 150 million!
hahaha.....

Next we have Google and Samsung signing a cross licensing deal for 10 yrs in an alliance
to keep Apple on the ropes. While they have them there, they plan on grabbing another
15% market share for Android to once again shove a total of 95% Market share this year
for Android down their Megalomaniac Elitist Throats! lol.... that means Apple is going to
be left with what.... 5% market share? :DDD

Love it when my fondest dreams come true! ......don't you? ;-P

REPLY /     LIKE

---

**BamBam1017**                                                   Jan 27, 2014

@RazorEdge Market share doesn't mean profits, it just means there are more
mobiles using there operating system. These will include 2nd hand phones, old
junk phones (which make up most of the market share).

Of all the 'smarter phones' sold for 'smarter people', how many of these were
high-end devices such as S4, etc. and how many were $200 dollar or less
crappy handsets? Seeing as many Manufacturers of smartphones and devices
running android make a loss, i would assume the latter, especially as Samsung
has just had their first decline, which they say is because of Apple (but that's ok,
you guys have the market share!).

Here are a few articles that addresses what most successful businesses REALLY

# EXHIBIT 18

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| 1.1 An electronic package comprising: | The Accused Products include an electronic package.<br><br>For example:<br><br>The Accused Products include an electronic package (e.g., electronic component(s) covered with an electronic shield). As an example, a teardown of Samsung Ativ S Neo smartphone reveals at least four electronic components covered with an EMI shield. For example only, two of these components are microphones located at the bottom and the top of the phone respectively. The disassembly of Samsung Ativ S Neo reveals two MEMS microphone packages: Mic-1 "S1110 8095" (at the bottom of the device) on a daughter board and Mic-2 "S1111 4918" (near the top of the device) on the main board. |

---

[1] The Accused Products include all of the devices listed in the Accused Products Spreadsheet attached to the '551 patent infringement contentions and any other product uncovered during discovery that includes an electronic component surrounded by an EMI shield/Faraday cage.

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---------|---------------------|
|         |  Front and back view of device [2] |

[2] All photographs herein are for the exemplary purpose of showing infringement by the Accused Products.

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---------|---------------------|



Optical image of the four electronic components covered with an EMI shield

Mic-1 "S1110 8095"

Mic-2 "S1111 4918"

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| |  Front view of device disassembly |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| |  |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| |  |

Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case,

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| | particularly once the defendant produces its technical documents and circuit schematics. |
| 1.2   a   rigid planar dielectric substrate carrying   a ground member extending across substantially the whole area within the confines of the edges of the substrate; | The Accused Products contain a rigid planar dielectric substrate carrying a ground member extending across substantially the whole area within the confines of the edges of the substrate.

For example, each of the four electronic components in Samsung Ativ S Neo comprises a rigid planar dielectric substrate carrying a ground member extending across substantially the whole area of the substrate. The perspective image of the electronic package, for example, show the rigid planar dielectric substrate and the ground member extending across the area of the substrate. |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
|  |  Rigid planar dielectric substrate / Ground member extending across substantially the whole area within the confines of the substrate

Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once the defendant produces its technical documents and circuit schematics. |
| 1.3 an electronic component mounted upon | The Accused Products contain an electronic component mounted upon a first side of the substrate and having terminals connected to a plurality of first level terminal interconnects provided upon the first side of the board.

For example, each of the four electronic components in Samsung Ativ S Neo identified is an electronic component mounted |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| a first side of the substrate and having terminals connected to a plurality of first level terminal interconnects provided upon the first side of the board; | upon the top side of the substrate. The external X-ray images for Mic-1, for example, show the ASIC and the MEMS die of Mic-1. <br><br>  <br><br> High resolution images of the decapsulated package also show terminals of Mic-1 that connect to first level interconnects provided on the substrate. Further delayering of the package reveals the first level interconnects on the top layer that are in turn also connected to circuit paths in the substrate. |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|

Terminals of Mic-1 are electrically connected to First Level Interconnects



PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---------|---------------------|



Delayered image of Mic-1 package

First Level Interconnects

Layer 1

Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case,

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| | particularly once the defendant produces its technical documents and circuit schematics. |
| 1.4 a covering EMI shield extending over the electronic component to locate the electronic component between the EMI shield and the ground member of the substrate, the EMI shield being electrically interconnected to the ground member of the substrate to form with the ground member, a Faraday cage around the electronic component; | The Accused Products contain a covering EMI shield extending over the electronic component to locate the electronic component between the EMI shield and the ground member of the substrate, the EMI shield being electrically interconnected to the ground member of the substrate to form with the ground member, a Faraday cage around the electronic component.<br><br>For example, each of the four electronic components in Samsung Ativ S Neo identified above is covered by an EMI shield that locates the electronic component between the EMI shield and the ground member of the substrate. The external X-ray images for Mic-1, for example, shows that the EMI shield extends over the electronic components, the ASIC and the MEMS die of Mic-1. |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| | External X-ray images of MEMS Mic-1  |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---------|---------------------|



Rigid planar dielectric substrate

Ground member extending across substantially the whole area within the confines of the substrate

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| | A resistance of 0.1 ohms measured between the top of the EMI shield and the bottom side of the substrate indicates that the EMI shield is electrically connected to the ground member.<br><br><br><br>Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---------|---------------------|
|         | particularly once the defendant produces its technical documents and circuit schematics. |
| 1.5 and a plurality of second level interconnects mounted upon a second side of the substrate and electrically interconnected through circuit paths in the substrate to the first level interconnects. | The Accused Products contain a plurality of second level interconnects mounted upon a second side of the substrate and electrically interconnected through circuit paths in the substrate to the first level interconnects.<br><br>For example, each of the four electronic components in Samsung Ativ S Neo identified above has a plurality of second level interconnects mounted upon the second side of the substrate and electrically interconnected through circuit paths in the substrate to the first level interconnects. For example, for Mic-1, the bond wires connect to the first level interconnects which in turn are connected to second level interconnect on layer 4 of the package on the second side of the substrate through circuit paths. |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---|---|
| |  Bond wire<br><br>Copper trace shorting ASIC and EMI ground plane<br><br>Package top internal cavity view (EMI shield removed)<br><br>Delayering of Mic-1 package, as an example, shows a plurality of second level interconnects mounted upon the second side of the substrate (Layer 4) and electrically interconnected through circuit paths in the substrate to the first level interconnects. The two layers between Layer 1 on the top side of the substrate and Layer 4 on the bottom side both contain at least two interconnects at the identical locations as Layer 1 and Layer 4 to enable the circuit paths. |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 1 | ACCUSED PRODUCTS[1] |
|---------|---------------------|



Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once the defendant produces its technical documents and circuit schematics.

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 2 | ACCUSED PRODUCTS |
|---|---|
| 2. A package according to claim 1 wherein the electronic component comprises an integrated circuit component. | The Accused Products comprise a package according to claim 1 wherein the electronic component comprises an integrated circuit component.<br><br>For example, the Accused Products, including Samsung Ativ S Neo identified above, contain one or more microphones that comprise an ASIC Die and a MEMS Die covered by an EMI shield. The ASIC Die is an integrated circuit component manufactured specifically for use in the microphone.<br><br><br><br>Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once the defendant produces its technical documents and circuit schematics. |

PRIVILEGED AND CONFIDENTIAL
U.S. Patent No. 5,838,551
McKool Smith, LLC

| Claim 3 | ACCUSED PRODUCTS |
|---|---|
| 3. A package according to claim 1 comprising two or more electronic components mounted upon the first side of the substrate and at least one of which is an integrated circuit component and all of the components are commonly shielded by the EMI shield. | The Accused Products include a package according to claim 1 comprising two or more electronic components mounted upon the first side of the substrate and at least one of which is an integrated circuit component and all of the components are commonly shielded by the EMI shield.<br><br>For example, the Accused Products, including Samsung Ativ S Neo identified above, contain one or more microphones that comprise an ASIC Die and a MEMS Die covered by an EMI shield. The ASIC Die is an integrated circuit component manufactured specifically for use in the microphone.<br><br><br><br>Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once the defendant produces its technical documents and circuit schematics. |

# EXHIBIT 19



US005838551A

# United States Patent [19]

## Chan

[11] Patent Number: **5,838,551**

[45] Date of Patent: **Nov. 17, 1998**

[54] **ELECTRONIC PACKAGE CARRYING AN ELECTRONIC COMPONENT AND ASSEMBLY OF MOTHER BOARD AND ELECTRONIC PACKAGE**

[75] Inventor: **Yee-Ning Chan**, Nepean, Canada

[73] Assignee: **Northern Telecom Limited**, Montreal, Canada

[21] Appl. No.: **691,056**

[22] Filed: **Aug. 1, 1996**

[51] Int. Cl.⁶ ........................................ **H05K 9/00**

[52] **U.S. Cl.** ........................ **361/818**; 361/760; 174/35 R; 174/35 GC; 257/699; 257/723; 257/728

[58] **Field of Search** ................................. 361/760, 767, 361/818; 174/35 R, 35 GC, 357 S, 51; 257/659, 660, 699, 723, 728, 738, 778; 437/221; 29/832, 840

[56] **References Cited**

U.S. PATENT DOCUMENTS

5,355,016  10/1994  Swirbel et al. ................ 174/35 GC X
5,400,949   3/1995  Hirvonen et al. ................... 361/818 X
5,422,433   6/1995  Rivera et al. .......................... 174/35 GC
5,530,202   6/1996  Dais et al. ............................. 174/35 R

*Primary Examiner*—Leo P. Picard
*Assistant Examiner*—Jayprakash N. Gandhi
*Attorney, Agent, or Firm*—R. J. Austin

[57] **ABSTRACT**

Electronic package with an electronic component mounted upon a PCB or ceramic substrate by first level interconnects and housing second level interconnects on the other side of the PCB. The component is protected by an EMI shield which is grounded to a ground plane of the PCB. Especially significant when there are a plurality of components protected by the shield and when at least one of the components is an integrated circuit component (I.C.C.). The package is thus prebuilt with the EMI shield and without a separate package required for each I.C.C., and is robust in construction for shipping. The shield and ground plane provide a Faraday cage which is especially complete when the shield extends around edges of the PCB and onto its other side. The package is ready for connection to a motherboard by use of the second level interconnects and process steps to place EMI shields individually onto mother boards are avoided.

**12 Claims, 2 Drawing Sheets**







**FIG. 1**



**FIG. 2**



**FIG. 3**



FIG. 4

FIG. 5

FIG. 6

FIG. 7

5,838,551

1

# ELECTRONIC PACKAGE CARRYING AN ELECTRONIC COMPONENT AND ASSEMBLY OF MOTHER BOARD AND ELECTRONIC PACKAGE

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates to electronic packages.

### 2. Related Prior Art

In the manufacture of electronic circuitry assemblies, printed circuit boards containing circuitry have electronic components mounted thereon and EMI shielding is then placed around certain sensitive components towards completion of the assemblies. Almost invariably, present day assemblies include integrated circuit components (i.e. chips) which need to be packaged to form electronic packages for storage and transportation purposes before incorporation into circuitry assemblies. The packaging process is an added expense to the cost of the chip. Methods of making assemblies also require additional electromagnetic interference shields (EMI shields) to be placed around sensitive components after the components have been incorporated onto the boards and this adds to the process steps required on the boards. In addition, each shield needs to be connected around its periphery to a solder trace on the board and this is connected to a ground member normally in the form of a ground plane of the board construction. The solder trace adds to complication of board design. Thus, where (as in most electronic circuitry assemblies) integrated circuit components are used, these particular components need to be prepackaged, stored and transported to the circuitry assembly locations, assembled onto printed circuit boards, and then provided with EMI shields.

## SUMMARY OF THE INVENTION

The present invention provides an electronic package which is of specific convenience in use and may simplify manufacture of electronic circuitry assemblies.

Accordingly, the invention provides an electronic package comprising: a rigid planar dielectric substrate; an electronic component mounted upon a first side of the substrate and having terminals connected to a plurality of first level terminal interconnects provided upon the first side of the board; a covering EMI shield extending over the electronic component and being electrically interconnected to a ground member of the substrate; and a plurality of second level interconnects mounted upon a second side of the substrate and electrically interconnected through the substrate to the first level interconnects.

The substrate can be, for example, a printed circuit board or a ceramic substrate.

The invention provides a package which includes its own individual EMI shield for the electronic components for assembly by the second level interconnects onto a further and larger substrate which also carries its own circuitry. The ground member preferably extends across substantially the whole area of the substrate and with this arrangement, a complete Faraday cage is provided for the electronic component, the Faraday cage comprising the ground member and the EMI shield which is electrically connected to it. Thus, in a package according to the invention, the rigid substrate of the package provides a daughter board for incorporation onto a motherboard i.e. the larger substrate.

The invention has particular advantages when the electronic component comprises an integrated circuit component

2

which conventionally is individually packaged and provided with an EMI shield. In the inventive concept however, when an integrated circuit component is included, this does not require its own individual packaging in addition to the EMI shield. The shield provides protection of the integrated circuit component and hence procedures involved in providing shields when assembling prepackaged integrated circuit components, onto substrates are not required. The preparation of the inventive package thus simplifies the final assembly process onto a larger substrate, and insofar as circuitry is included in the substrate of the package of the invention, circuitry of the larger substrate may be simplified. The package is thus a completed unit with the integrated circuit component protected against damage during storage or transportation to its assembly location onto a larger substrate.

The electronic package may include two or more electronic components, at least one of which is an integrated circuit component, and all of these components are shielded by the EMI shield.

The EMI shield preferably comprises a single metal sheet which is formed as required into the shape of the shield. This manufacture from a single metal sheet may be by punching-out a blank from the sheet and then bending the blank as required to form the shield, care being taken to bring edges of walls of the shield into close proximity thereby avoiding any gaps which could nullify the shielding effect. Alternatively, the shield may be formed from a single metal sheet by a forming and stamping operation which provides a top and side walls to the shield with side walls extending integrally into one another. Also preferably, the shield extends around and shields edges of the substrate so as to face the second side of the substrate. It is also preferred that the shield is interconnected on the second side with the ground member. When the ground member is situated within the substrate, the shield is connected by electrical pathways extending through the substrate to the ground member, the pathways advantageously being soldered to the shield. This is conveniently done by spot soldering. Alternatively, rivets make electrical contact between the shield and the ground member. Where however the ground member is provided upon either side of the substrate, then perforations must be provided in the ground member to provide insulating clearance between the ground member and the first or second level terminal interconnects as the case may be.

The invention also provides an assembly of a mother board and an electronic package incorporating a rigid planar daughter board substrate, the package further comprising an electronic component mounted upon a first side of the daughter board and having terminals connected to a plurality of first level terminal interconnects provided upon the first side of the board, a covering EMI shield extending over the electronic component and being electrically interconnected to a ground member of the daughter board; and a plurality of second level interconnects mounted upon a second side of the daughter board and electrically interconnecting through the daughter board to the first level interconnects, the second level interconnects serving to mount the electronic package onto the mother board.

The invention further includes a method of making an electronic package comprising: mounting an electronic component upon a rigid planar dielectric substrate with terminals of the component connected to first level terminal interconnects located on a first side of the substrate; and locating an EMI shield upon the substrate so as to cover the electronic component, and electrically connecting the shield to a ground member of the substrate, the first level terminal

5,838,551

3

interconnects being interconnected with second level interconnects located on a second side of the substrate.

BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention will now be described, by way of example, with reference to the accompanying drawings, in which:

FIG. 1 is a cross-sectional view through an electronic package according to a first embodiment;

FIG. 2 is an isometric view of an EMI shield forming part of the package of FIG. 1;

FIG. 3 is a view similar to FIG. 1 of the package mounted upon a mother board;

FIG. 4 is a view similar to FIG. 1 of an electronic package according to a second embodiment;

FIG. 5 is an isometric view of the package of FIG. 4;

FIG. 6 is a cross-sectional view similar to FIG. 4 showing the manufacture of the package of the second embodiment during one manufacturing stage; and

FIG. 7 is a view similar to FIG. 4 with the package of the second embodiment mounted upon a mother board.

DESCRIPTION OF THE PREFERRED
EMBODIMENTS

In a first embodiment as shown in FIG. 1, an electronic package 10 comprises a rigid planar dielectric substrate in the form of a printed circuit board 12. Carried upon an upper surface of the board are a plurality of electronic components comprising at least one (in this case three) integrated circuit component 14 and as shown, a capacitor or resistor 16. The electronic components are provided on the upper surface of the board with first level interconnects 18 by which the terminals of the components are connected by circuit paths in the board 12 with second level interconnects 20 on the lower surface of the board. Possibly the components 14 and 16 are also electrically interconnected together through the substrate 12. The second level interconnects 20 may be solder balls or columns as required for connection to circuitry of a mother board as will be described. The first level interconnects 18 may also be solder balls, but alternatively are bond fingers for use in conventional wire bonding techniques or for use in tape automated bonding (TAB).

The electronic components are covered on the upper side of the board by an EMI shield 22 which extends across them. The shield 22 has a closed top 24 and downwardly depending side walls 26 terminating in outwardly extending flanges 28. The structure of this shield is more clearly shown in FIG. 2. The shield may be formed from a single sheet of metal which is punched-out and then pressed into its desired shape. In this case the side walls 26 would be slightly spaced apart by the pressing operation at the vertical corners of the structure (this arrangement not being shown). In the embodiment, the structure 22 is formed by a forming and pressing operation from a flat blank sheet of metal so that all the side walls 26 interconnect at the corners with each other as well as with the top wall 24.

The shield 22 is interconnected with a ground plane 30 extending substantially throughout the printed circuit board 12, this interconnection being provided possibly by rivets but preferably by solder connections, at spaced intervals around the flanges 28, to electrical pathways 32 extending into holes around the edges of the board 12 and connecting with the ground plane.

As will be appreciated in the above structure, the second level interconnects 20 form an array of solder balls and may be referred to in common terminology of the electronic industry as "ball grid array". In addition, the shield 22 in

4

combination with the ground plane to which it is grounded provides a Faraday cage for all electronic and electrical components and circuitry within the cage. Hence, the electronic package 10 may be said to provide a "Faraday caged ball grid array" package.

The finished electronic package is pre-manufactured for later assembly onto a mother board. This pre-manufactured package 10 comprises its own EMI shield 22 for electronic components of the package which need EMI shielding so that subsequent shielding of these components after addition to the mother board is avoided. In addition, the package provides a structure which may be handled with physical protection offered by the shield to the components during storage, and for shipping purposes before being incorporated onto the mother board. Further, with the EMI shield connected to the ground plane of the substrate 12, the pre-built structure is provided with its own Faraday cage as indicated above for protection of the electronic components beneath the shield, the Faraday cage provided on one side by the shield 22 and on the other side by the plane 30 connected to the shield by the electrical pathways 32.

As shown by FIG. 3, the electronic package 10 is assembled onto a mother board 34 by the second level interconnects being connected to circuitry on the mother boards and holding the package 10 in position. The package 10, in this arrangement does, of course, provide only one of the structures carried upon the mother board which also includes other electronic components (not shown) and possibly together with other electronic packages 38 basically similar in construction to the device 10.

As may be seen therefore, and as indicated above, the assembly of the packages 10 and 38 onto the mother board 34 simplifies the final assembly process with the mother board in that the packages 10 and 36 have their Faraday cages already provided thereby eliminating the necessity for these to be added subsequently onto the mother board. This is a distinct advantage for the final manufacture of the total electronic structure.

The EMI shield need not necessarily be attached to the upper side of the board as shown in the first embodiment. For instance, as shown in a second embodiment from FIG. 4 onwards, and in which parts similar to those described in the first embodiment bear the same reference numerals, an electronic package 40 has an EMI shield 42 which is of slightly different structure from that shown in the first embodiment. As shown in the second embodiment in FIGS. 4 and 5, the shield 42 has a top wall 44 and depending side walls 46 which have outwardly extending flanges 48 similar to the flanges 28 of the first embodiment. However, in the second embodiment, the flanges 48 extend outwardly beyond edges of the board 12 and curve around the edges of the board to terminate in flange edge regions 50 which are disposed beneath and directly face the lower surface of the board. These edge regions 50 are connected to the ground plane by circuit paths 52 extending into the board. In the structure of the second embodiment, the flanges 48 in extending around edges of the board 12 provide EMI protection for circuitry within the board 12 itself and the overlap between the edge regions 50 of the flanges 48 and edge regions of the ground plane 12 substantially complete a closed Faraday cage around all of the electronic components and the board circuitry. This is particularly the case where the ground plane lies towards the lower surface of the board. As shown by FIG. 5, the EMI shield 42 which is pressed, and in this instance, from sheet metal has slight gaps 53 between edges of the downwardly extending walls 46. These gaps however are controlled so as to substantially eliminate any EMI leakage between the flanges. FIG. 5 also illustrates the curved portions of the flanges 48 extending around the board 12 to the undersurface of the board. The shield 42 is

5,838,551

**5**

preferably provided, as in the first embodiment, with apertures 54 disposed in appropriate locations for air flow through the structure for removing heat from within the shield. The location of such apertures is a matter of choice with the proviso that the top surface 44 may require a large unapertured space as shown by FIG. 5 in the event that it is required to lift the package 40 by vacuum lifting techniques for assembly purposes onto a mother board.

FIG. 6 shows part of the process of assembling the EMI shield 42 onto the board 12 in the second embodiment. The shield 42 is initially pressed from a planar sheet with opposite side walls 46 diverging outwardly from each other as they extend from the top wall 44. This provides a large space between the edge regions 50 of the flanges 46 sufficient to enable the shield to be disposed completely over the board 12 with the edge regions 50 passing down around the board towards the lower side as shown by FIG. 6. Pressure is then applied in the direction of the arrows in FIG. 6 to the side walls 46 to move opposing side walls towards each other with the result that the end regions 50 of the side walls pass beneath the printed circuit board 12 and into their final positions shown by FIG. 4. A soldering operation is then performed for connection of the edge regions 50 to the ground plane as discussed above.

As shown by FIG. 7, the package 40 may then be assembled onto a mother board 52 together with other electronic components (not shown) or other electronic packages 56 of similar construction to the package 40. Interconnection with the circuitry of the mother board is again performed through the second level interconnects. The advantages of the package 40 of the second embodiment and in its subsequent assembly onto the mother board are as described for the first embodiment.

What is claimed is:

1. An electronic package comprising:

a rigid planar dielectric substrate carrying a ground member extending across substantially the whole area within the confines of the edges of the substrate;

a covering EMI shield extending over the electronic component to locate the electronic component between the EMI shield and the around member of the substrate, the EMI shield being electrically interconnected to the ground member of the substrate to form with the ground member, a Faraday cage around the electronic component;

and a plurality of second level interconnects mounted upon a second side of the substrate and electrically interconnected through circuit paths in the substrate to the first level interconnects.

2. A package according to claim 1 wherein the electronic component comprises an integrated circuit component.

3. A package according to claim 1 comprising two or more electronic components mounted upon the first side of the substrate and at least one of which is an integrated circuit component and all of the components are commonly shielded by the EMI shield.

4. A package according to claim 3 wherein two or more of the electronic components are electrically interconnected by circuitry of the substrate.

5. A package according to claim 1 wherein the EMI shield comprises a single formed sheet of electrically conductive material, the sheet formed with a plurality of spaced apertures for cooling air circulation.

6. A package according to claim 1 wherein the shield is provided by a formed sheet of electrically conductive material and which extends around the shield edges of the substrate so as to face the second side of the substrate.

**6**

7. A package according to claim 6 wherein the shield is electrically interconnected with the ground member through the second side of the substrate.

8. A package according to claim 7 wherein the electrical pathways are connected to the ground member by soldering.

9. An assembly of a mother board and an electronic package incorporating a rigid planar daughter board, the package further comprising:

an electronic component mounted upon a first side of the daughter board and having terminals connected to a plurality of first level terminal interconnects provided upon the first side of the board;

a covering EMI shield extending over the electronic component and being electrically interconnected to a ground member of the daughter board;

and a plurality of second level interconnects mounted upon a second side of the daughter board and electrically interconnecting through the daughter board to the first level interconnects, the second level interconnects mounting the electronic package onto the mother board and electrically connecting the electronic component with circuitry in the mother board.

10. A method of making an electronic package comprising:

mounting an electronic component upon a rigid planar dielectric substrate with terminals of the component connected to first level terminal interconnects located on a first side of the substrate, the first level terminal interconnects being interconnected with second level interconnects located on a second side of the substrate;

and forming a Faraday cage around the electronic component by locating an EMI shield upon the substrate so as to cover the electronic component, and electrically interconnecting the shield to a ground member of the substrate, the around member extending across substantially the while area within the confines of the edges of the substrate.

11. A method according to claim 10 comprising locating the shield upon the substrate with an edge region of the shield extending outwardly beyond each edge of the substrate, moving the edge regions of the shield inwardly so that the edge regions extend around the edges of the substrate and face the second side of the substrate; and electrically interconnecting the edge regions on the second side of the substrate with the ground member.

12. A method of assembling an electronic package comprising a daughter board onto a mother board wherein the package further comprises an electronic component mounted upon a first side and of having terminals connected to a plurality of first level terminal interconnects located upon the first side of the daughter board;

a covering EMI shield extending over the electronic component and being electrically interconnected to a ground member of the daughter board;

and a plurality of second level interconnects mounted on a second side of the daughter board and electrically interconnecting through the daughter board to the first level interconnects;

the method comprising disposing the package with the second level interconnects in desired locations with respect to electrical terminals on one surface of the mother board and electrically interconnecting the second level interconnects with the electrical terminals of the mother board.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.         : 5,838,551                                              Page 1 of  1
APPLICATION NO. : 08/691056
DATED                  : November 17, 1998
INVENTOR(S)       : Yee-ning Chan

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:


Claim 1:
Column 5, between Lines 37 and 38: - insert missing claim element as follows:

--an electronic component mounted upon a first side of the substrate and having terminals connected to a plurality of first level terminal interconnects provided upon the first side of the board;--

Claim 1:
Column 5, Line 40: - change the sixth word "around" to "ground"

Claim 10:
Column 6, Line 35: - change the third word "around" to "ground"
Column 6, Line 36: - change the third word "while" to "whole"

Signed and Sealed this

Twenty-second Day of June, 2010

David J. Kappos
Director of the United States Patent and Trademark Office

# EXHIBIT 20



**TRENDING NOW**
David Letterman will retire from 'Late Show' in 2015

**14**
NEW ARTICLES

APPS   GOOGLE   MOBILE   TECH   REPORT

# Will Samsung own Android's future?

*At its first Developer Conference, Android's biggest player makes its move*

By Nathan Ingraham (http://www.theverge.com/users/NathanIngraham) on October 25, 2013 01:14 pm   Email (mailto:nathan@theverge.com)   @NateIngraham
(https://twitter.com/intent/user?screen_name=NateIngraham)

DON'T MISS STORIES *FOLLOW THE VERGE*



While Samsung might be the biggest manufacturer of Android hardware, the company has spent much of the last few years building a software experience for its devices that's uniquely its own. Samsung's user interface now covers up nearly every bit of Android with a custom design or replacement app, and the company has added a slew of unique (if sometimes unnecessary) features to the OS. If it wasn't already clear, Samsung's first annual Developers Conference (http://www.samsungdevcon.com/) , which kicks off next week in San Francisco, is the latest indication that the company is serious about software as a way to stand out. Instead of developing just for Android, Samsung wants developers building products specifically for its hardware, a move that could benefit Samsung's customers — but could also fragment the Android ecosystem even further.

In an open letter to developers (http://samsungdevcon.com/letter) , Samsung's senior VP of media solutions Curtis Sasaki said that his company is "committed to accelerating Android app development," and it's a notion he reinforced in a conversation with *The Verge*. "A lot of developers look at the app stores and see there's 800,000 applications, 1 million applications available — how do they stand above the crowd?" Sasaki asks. "How do they differentiate and get exposure?" The answer, he believes, is developing on top of what Samsung's building. "Part of the message is that Samsung has innovated so much on our products," he says. "If [developers] take advantage of that, they can obviously

## HEADLINES


Congress to probe secret 'Cuban Twitter' as lawmakers claim they were misled


'The first startup that mattered': an oral history of Netscape


FROM OUR SPONSOR 
The Future is Now


The story of how the barcode came to be


George W. Bush finally reveals his paintings: 'I'm not a great artist'


Pixar gives a closer look at how it animates big hairy monsters



our products."

Baby,' 'The Expendables 3,' and 'Godzilla'



Real-life Indiana Jones busted with thousands of cultural artifacts

Sasaki called out Twitter's new tablet-specific app

## THE BIGGEST ANDROID MANUFACTURER MAKES ITS CASE TO THE DEVELOPER COMMUNITY

### LATEST *MEDIA*

GALLERY

'Forge' by Luke Evans

about 4 hours ago

VIDEO

Mozilla CEO resigns amid anti-gay controversy: 90 Seconds on The Verge

about 18 hours ago    2 comments

(http://www.theverge.com/2013/10/10/4824692/twitter-announces-tablet-optimized-android-app-makes-it-a-samsung) for the Galaxy Note 10.1 as a good example of a developer building something special for the platform. "You can write tweets with the pen now, but it also supports multi-window," he says. "Because we have really good hardware underlying the platform now, we can do some amazing things that you don't see in other devices.That's one example of leveraging the multitasking, multi-window support to build a very meaningful experience." Of course, such an experience might be great for Samsung and its customers, but other Android tablet users are stuck with the same blown-up smartphone app. It's a good example of how much power Samsung wields in the Android space right now. Twitter could have built an Android tablet app that worked on any manufacturer's hardware (perhaps with Note-specific features for Samsung's customers), but instead the entire app is exclusive to Samsung.

GALLERY

'FTL' for iPad

1 day ago

VIDEO

A closer look at Nokia's Windows Phone 8.1 devices

1 day ago    1 comments

GALLERY

Nokia Lumia 930 and Lumia 630 hands-on photos

1 day ago

VIDEO

Cortana, Windows 8.1, and more from Microsoft Build 2014

1 day ago    1 comments

VIDEO

Microsoft Build 2014 keynote in seven minutes

2 days ago    1 comments

Building differentiated, unique experiences for its devices was a theme of our conversation with Sasaki — and it's a logical position to take, given Samsung's dominance in the Android space. That dominance is a main part of Sasaki's argument getting more attention from developers. "I think there's an expectation by users that they'll get the best possible experience for the investment they make," Sasaki says — he wants the best tablet experience to be on a Samsung device. "As the largest-volume Android seller, we think we're in a good position to leverage our capabilities in hardware and software to provide that experience."

Of course, Samsung makes far more hardware than just Android phones and tablets, and the company also wants to leverage that to differentiate itself. The growing popularity of the "multiscreen experience" (consumers augmenting their TV viewing with a tablet, for example) is another one that Sasaki thinks Samsung us uniquely suited to solving. "We don't want to just replicate or mirror a screen from your tablet to your TV," Sasaki says — perhaps taking a subtle dig at iPad mirroring on the Apple TV. "What are the kinds of services, if you have a tablet on your lap as you're watching TV… how do you create an augmented experience that is really unique and differentiated?" He says that Samsung was doing a lot of work in the space and that multiscreen functions would be a major theme at the conference — it's a logical place to go, with Samsung having a major stake in the smartphone, tablet, and TV markets. That's reflected in the content of the conference — Sasaki said Samsung wanted to offer "not just mobile, technical tracks, but might want to learn about developing for TVs, programming for enterprise, even gaming."

## SAMSUNG'S DEVELOPER CONFERENCE COULD MARK A FUNDAMENTAL SHIFT IN THE ANDROID MARKET

"First and foremost, we are in relentless pursuit of great software," Sasaki writes in his letter to developers. "The next big innovations — the ones that permanently and positively alter how we work and play — will be largely shaped by you." What's going unsaid — but is

to be built on top of its hardware and software. For now, that's primarily Android, but in five years maybe it'll be on a forked version of Android (like Amazon's Kindle Fire OS) that replaces Google services with Samsung's — or maybe Samsung's own operating system entirely (http://www.theverge.com/2013/2/27/4035040/tizen-2-0-is-three-parts-android-one-part-webos-hands-on) . We may look back at Samsung's Developer Conference as the beginning of a fundamental shift in the Android market — particularly if it leads to a future in which all of the best app and features are Samsung exclusives.

RELATED ITEMS    ANDROID    APPS    TABLET    DEVELOPERS    SOFTWARE    FRAGMENTATION
SAMSUNG DEVELOPERS CONFERENCE    CURTIS SASAKI    GALAXY S4    GALAXY NOTE 3    GALAXY NOTE 10.1 (2014)
SAMSUNG

## IN THE *ARTICLE*

8.0           8.2           6.4 

Samsung Galaxy S4          Samsung Galaxy Note 3          Samsung Galaxy Note 10.1
Available: Apr. 27, 2013     Available: Sep. 25, 2013                    (2014)
                                                      Available: Sep. 25, 2013

### NASA just turned global conflict into a ploy for more funding

By Arielle Duhaime-Ross                  101

### Amazon announces $99 Fire TV set-top box, available now

By Chris Welch                  350

### The story of Cortana, Microsoft's Siri killer

By Tom Warren                  496

FROM OUR SPONSOR

### The future is now: using Intel technology to build the future of connectivity

*Intel| Powered by Vox Creative*

## DISCUSSIONS

MICROSOFT TRIBE (HTTP://WWW.THEVERGE.COM/FORUMS/MICROSOFT-TRIBE)
Video - How to use Cortana outside US
33 minutes ago by Taube
(http://www.theverge.com/users/Taube)          1 comment

APPLE CORE (HTTP://WWW.THEVERGE.COM/FORUMS/APPLE-CORE)
Retina MacBook Pro 13' decision
about 1 hour ago by kisaac94
(http://www.theverge.com/users/kisaac94)          6 comments

MICROSOFT TRIBE (HTTP://WWW.THEVERGE.COM/FORUMS/MICROSOFT-TRIBE)
Windows/WP/Xbox Issues (Help!)
about 3 hours ago by latunza
(http://www.theverge.com/users/latunza)          6 comments

OFF-TOPIC / CHIT-CHAT (HTTP://WWW.THEVERGE.COM/FORUMS/OFF-TOPIC)
The Verge Daily Off-Topic: Getting Down on Friday (Fri April 4th)

Case 2:13-cv-00900-JRG   Document 63-11   Filed 04/14/14   Page 5 of 6 PageID #:  3719

THERE ARE 487 COMMENTS.

*SHOW SPEED READING TIPS AND SETTINGS↓*

(http://www.theverge.com/users/thervp)       3 comments

MICROSOFT TRIBE (HTTP://WWW.THEVERGE.COM/FORUMS/MICROSOFT-TRIBE)

**Microsoft Cloud Gaming Prototype. Demo of cloud based physics.**

about 4 hours ago by Lostaml

(http://www.theverge.com/users/Lostaml)       5 comments

MICROSOFT TRIBE (HTTP://WWW.THEVERGE.COM/FORUMS/MICROSOFT-TRIBE)

**ATTENTION: Please make two screen sizes for Surface Pro 3!**

about 4 hours ago by Coins

(http://www.theverge.com/users/Coins)       12 comments

GOOGLEPLEX (HTTP://WWW.THEVERGE.COM/FORUMS/GOOGLEPLEX)

**Concept for redesigned Twitch app**

about 8 hours ago by Vulk

(http://www.theverge.com/users/Vulk)       7 comments

APPLE CORE (HTTP://WWW.THEVERGE.COM/FORUMS/APPLE-CORE)

**New Macbook Air launching in WWDC?**

about 8 hours ago by madhavkinfinity

(http://www.theverge.com/users/madhavkinfinity)

3 comments

MICROSOFT TRIBE (HTTP://WWW.THEVERGE.COM/FORUMS/MICROSOFT-TRIBE)

**Any app can now plug into Bing Smart Search in Windows 8.1 and Windows Phone 8.1!**

about 8 hours ago by GrzegorzWidla

(http://www.theverge.com/users/GrzegorzWidla)

4 comments

MICROSOFT TRIBE (HTTP://WWW.THEVERGE.COM/FORUMS/MICROSOFT-TRIBE)

**WP 8.1 Backup**

about 9 hours ago by jhoff80

(http://www.theverge.com/users/jhoff80)

ALL

(/FORUMS/ALL)





X

# THE VERGE ◆ Polygon
## SB☆NATION

Log In Sign Up
T F G
Y O
OpenID
 Open ID Log in

Username

                                forgot?

☐ Remember me?  Log in
Log In Sign Up
T F G
Y O
OpenID
 Open ID Log in

 Username


 Email

 Continue

## Forgot password?

We'll email you a reset link.

If you signed up using a 3rd party account like Facebook or Twitter, please login () with it instead.

Email address
 Submit

## Forgot password?

Try another email?

## Almost done,

 Register


## Authenticating



## Great!

Choose an available username to complete sign up.

 Username

 Sign Up

In order to provide our users with a better overall experience, we ask for more information from Facebook when using it to login so that we can learn more about our audience and provide you with the best possible experience. We do not store specific user data and the sharing of it is not required to login with Facebook.

◉ Yes, share my data ○ Please don't share my data
 Submit

# EXHIBIT 21

Note: The illustrations below show one example of the considerable differences between each defendants' implementation of the Android platform shown by Rockstar's infringement contentions. As shown below, the notification drawer implemented by each defendant differs substantially (*e.g.*, different default settings at the top, different icons associated with the sender or type of message received).

Exemplary screenshot 8.1(7)

**Google:**



HTC:



LG:

**Pantech:**



Samsung:



**ZTE:**



# EXHIBIT 22

 **Samsung Careers**

Sign In

**Careers**

Search Jobs



## Search Jobs

Start your search for a new, exciting career with Samsung here

Register

| Keyword | Android | | Hide ▲ |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Job Category | Select | | |
| Region | Select | | |
| | North America | | |
| Country | Select | | |
| | United States | | |
| State | Select | | |
| | Texas | | |
| Job Type | ☐ Regular Full-Time   ☐ Intern/Coop/Apprentice   ☐ Temporary/Contract | | |
| Date Posted | ○ All   ○ 1 day   ○ 7 days   ○ 15 days   ○ 30 days | | |

Clear   Search

**17 Jobs**                                                                                          20 views

**QA Engineer (Device Quality Management) (Multiple) (204753)**                          Mar 17, 2014
Service, Regular Full-Time
Texas

**Sr. QA Engineer (107866)**                                                            Feb 18, 2014
R&D Support, Regular Full-Time, Travel Required None
Texas

**Director of Technology Planning- Software & Sensor (107831)**                         Feb 19, 2014
Management Support, Regular Full-Time
Texas

**Sr Engineer III (107776)**                                                            Feb 6, 2014
R&D Support, Regular Full-Time, Travel Required None
Texas

**Principal Engineer-Computer Vision (107775)**                                         Feb 6, 2014
R&D Management, Regular Full-Time, Travel Required None
Texas

**Engr Staff (107774)**                                              Feb 6, 2014
Regular Full-Time, Travel Required None
Texas

**Sr. Systems Design/ Architecture Engineer (107773)**             Feb 6, 2014
S/W Engineering, Regular Full-Time, Travel Required None
Texas

**Sr. Systems Design/ Architecture Engineer (107772)**             Feb 6, 2014
S/W Engineering, Regular Full-Time, Travel Required None
Texas

**SoC Hardware IP Architect (107627)**                             Dec 6, 2013
Circuit Engineering, Regular Full-Time, Travel Required None
Texas

**Sr Product Planning Manager (107613)**                           Dec 2, 2013
R&D Support, Regular Full-Time
Texas

**Staff Software Engineer (107515)**                               Oct 21, 2013
S/W Engineering, Regular Full-Time
Texas

**Software Staff Engineer (107478)**                               Oct 3, 2013
S/W Engineering, Regular Full-Time
Texas

**Senior Software Engineer (Android) (multiple) (107325)**         Aug 19, 2013
Sales, Regular Full-Time
Texas

**Director, Computer Vision- AP Lab (107272)**                     Aug 9, 2013
R&D Management, Regular Full-Time
Texas

**Senior Software Engineer (Multimedia) — multiple openings (106122)**   Dec 6, 2012
Regular Full-Time
Texas

**Sr SW Engineer (105841)**                                        Sep 4, 2012
Regular Full-Time
Texas

**Senior Software Engineer (mult. openings) (105275)**             Apr 15, 2012
Regular Full-Time
Texas

1

Copyright © 1995-2014 SAMSUNG All rights reserved.

# EXHIBIT 23

Case 2:13-cv-00900-JRG   Document 63-14   Filed 04/14/14   Page 2 of 5 PageID #:  3732



Mobile

# After Google Pressure, Samsung Will Dial Back Android Tweaks, Homegrown Apps

January 29, 2014, 10:50 AM PST

By Liz Gannes



EthicsBio

Articles

– A988 –

- 

By Ina Fried



[EthicsBio](#)

[Articles](#)

- 

In early January, while the rest of the consumer technology world at CES marveled at the sheer size of Samsung's upcoming Galaxy tablet, Google execs were dismayed by what they saw on the screen of the massive 12.1-inch slate — a fancy new user interface called Magazine UX.

As **Re/code**'s Bonnie Cha [wrote](#) at the time: "The Magazine UX looks like a mix of Flipboard and Microsoft's Metro user interface with its dynamic dashboard and app shortcuts." In other words, the interface was a dramatic departure from Google's vision for Android.

Multiple sources familiar with the companies' thinking say the two technology giants began hammering out a series of broad agreements at CES that would bring Samsung's view of Android in line with Google's own. The results of the talks, which have only just begun dribbling out to the public, also underscore the extent to which Google is exerting more of its influence to control its destiny in the Android open source world.

An agreement with Samsung comes as Google is facing a rise in Android devices that don't use its services, especially in China. A new report from ABI research finds 25 percent of Android devices shipped in the fourth quarter did not have Google's suite of services installed.

Google and Samsung representatives declined to comment on the discussions. Samsung added, "To continue our momentum of delivering great user experiences and bringing greater value to people's lives, Samsung will continue to identify and provide differentiated and innovative service and content offerings on our mobile devices."

This week, Samsung and Google announced a [wide-ranging deal](#) to cross-license patents that cover mobile devices and other undisclosed categories. But there's more.

Although the exact details of those meetings could not yet be learned, sources familiar with the discussions say not only will Samsung consider dumping or altering the Magazine UX interface in future devices, but, more importantly, new Samsung devices will spotlight Google's suite of apps to get movies, music and other content at the expense of its in-house-developed software, which was once a proud showcase of Samsung's evolution as a mobile industry leader.

**– A989 –**

It's unclear what concessions Google may have made on its part. The company could have, for example, agreed to work with Samsung on a Nexus device or offered other cooperation.

The relationship between Google and Samsung has gone through "a huge change, a sea change in the last few weeks," as one source described it.

**Sea Change**

Samsung is by far the largest Android device maker and controlled 32 percent of the global smartphone market in the third quarter of 2013, according to Gartner. Some 82 percent of the smartphone market operated on Android software. Samsung has maintained a delicate codependency with Google. Many in the industry have been studying the tea leaves for signs that the two are heading in opposite directions, especially after Google's purchase of Motorola, a rival handset maker.

Putting more emphasis on preloaded Google Play apps is clearly a concession for Samsung, which had been beefing up its media services efforts through its Samsung Media Solution Center group. Over the past two years, that group built out movie and TV offerings and acquired mobile music service mSpot.

Samsung's WatchON software is a mirroring and remote control app that ties into existing content services like Netflix and works best for people who have multiple Samsung devices, including a TV. Another app in the Samsung bunch is ChatON. It's a cross-platform messaging app that can work on non-Samsung Android devices as well as iPhones. Sources were unsure if ChatON would be included in the apps getting the ax.

But Samsung's apps were largely forgettable in the wider Android community and moving to Google Play apps is not seen as a major loss.

In his Galaxy S4 review, **Re/code**'s Walt Mossberg wrote, "I found Samsung's software often gimmicky, duplicative of standard Android apps, or, in some cases, only intermittently functional."

**GoogleFlex**

As the biggest Android app maker, Google has significantly stepped up its effort to get device makers to adopt its suite of services, separate from and in addition to the core Android operating system.

In recent months, an increasing amount of the innovation in the Android ecosystem coming from Google has landed not in the open-source operating system but in Google's proprietary Google Play services and its suite of apps. While seeing the benefits of keeping Android open source, this allows Google to ensure that some of its work is only used on devices that use its services as opposed to, say, the Kindle Fire, which uses the Android operating system but taps Amazon's services.

The Google Play apps are also made available to device makers, but under tighter conditions. Google no longer allows handset makers to pick and choose just one app to include on their phones, but wants them to include the whole shebang.

As one mobile executive who competes with Google's Android apps put it, "Google is really following the Apple playbook. It may be open source underneath, but not on top."

The fact that Apple wields such tight control over its own software-and-hardware combo seems to be the only thing separating Google from the M-word and competition scrutiny, considering its large and growing market share. But that's changing. Another app maker called Google's recent bundling moves reminiscent of the monopolistic heyday of Microsoft. "They're treading on very thin ice," he said.

**What's Worse Than Fragmentation?**

In fact, Google now makes 78 of its own Android apps, and in some cases pre-installs more than a dozen of them as a package deal on new phones.

This is especially significant because the Google apps bind tightly together. Google has apps for pretty much all the most important functions on a phone or tablet — email, messaging, maps, storage, browsing, reading the news, finding and consuming media — and they are interlocked so that tasks flow naturally from one app to the next.

Users generally welcome that kind of consistency across software — just ask an iPhone user — and Google sees this as an opportunity to improve the quality of the Android community that has been plagued by fragmentation. However, it's an awful lot of Google. It means Android is becoming more like an uber-Google experience than an underlying operating system topped with a selection of apps.

It could also be bad news for independent app makers. Samsung has given tremendous exposure to independent apps and services like Dropbox, Flipboard, SwiftKey and TripAdvisor by bundling and pre-installing them onto its devices. While a small group of beneficiaries has already reaped the benefits, Samsung could be less likely to cut deals to bundle more apps in the future, especially in cases where Google makes a competing app.

Without a strong advocate like Samsung, with all its market power and leverage, the barrier to success for smaller developers on the Android platform will be higher in this new era.

### RELATED POSTS

- It's Official: Lenovo Is Buying Motorola From Google for $2.91 Billion
- Would Selling Motorola to Lenovo Solve Some Big Problems for Google? Yes.
- Google and Lenovo Explain their $2.9 Billion Motorola Deal (Live Coverage)
- Buy High, Sell Low: Google's Losing Bet on Motorola
- After Google Pressure, Samsung Will Dial Back Android Tweaks, Homegrown Apps
- Lenovo Won't Get Regina Dugan's Advanced Research Group in Motorola Deal



---

**MORE FROM RE/CODE**

Amazon's Hard Sell: Gaining Developers for Its Coming Smartphones

Amazon Is (Not Very) Despondent After Fire TV Sells Out

Apps That Train You to Read Faster, One Word at a Time

# EXHIBIT 24

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | § | |
|---|---|---|
| BRIGHT RESPONSE, LLC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 2:12-cv-280-JRG |
| v. | § | |
| | § | |
| SAS INSTITUTE INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.     INTRODUCTION

Pending before the Court is Defendant SAS Institute Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 6.) SAS contends that the Eastern District of North Carolina (EDNC) is a more convenient forum than the Eastern District of Texas (EDTX). The Court, having considered the motion and related briefing, **DENIES** the Defendant's motion to transfer venue because the balance of the private and public factors fails to demonstrate that the transferee venue is clearly more convenient. *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F. 3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

### II.     FACTUAL AND PROCEDURAL BACKGROUND

Bright Response brought this patent infringement lawsuit against SAS for infringement of U.S. Patent No. 6,278,996. Bright Response contends it is a Texas Limited Liability Company

**– A993 –**

organized in Texas and it has maintained an office in EDTX since 2006. Further, Bright Response has at least one principal officer residing in Texas. In seeking transfer, SAS states that it is incorporated under the laws of North Carolina and is headquartered in Cary, North Carolina. Cary is within EDNC. SAS employs over 4800 people at its offices in Cary, and the accused products, Enterprise Miner and Text Miner, were developed at those offices. SAS also maintains three regional offices in Texas with approximately 150 employees across Austin, Dallas-Fort Worth, and Houston.

## III. LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses;

and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV.    ANALYSIS

### A.    Proper Venue

The Plaintiff does not dispute that this case could have been brought in the Eastern District of North Carolina, so the initial threshold in this case has been met. An analysis of the public and private interests cited above must next be considered and weighed.

### B.    Burden of Proof

Before the Court undertakes the public and private factor analysis, a discussion of the burden of proof to be applied in this motion to transfer venue is warranted. Defendant states that "Bright Response's presence in this district is ephemeral, and its choice of venue is entitled to no deference." (Dkt. No. 21, at 5.) The Court disagrees. In *Texas Data Co., L.L.C. v. Target Brands, Inc.*, this Court noted in a related context:

> The Fifth Circuit does not consider the plaintiff's choice of venue independently but instead as part of the burden. . . . But because the plaintiff's choice of venue is taken into account in the burden on the movant, the Court, in accordance with the Fifth Circuit, recognizes the significance of the burden and does not take it lightly. The Fifth Circuit announced:
>
>> Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it

3

places a significant burden on the movant to show good cause for the transfer. Thus, our analysis directly manifests the importance that we must give to the plaintiff's choice.

[*Volkswagen II*, 545 F.3d at 314 n.10.] The court's analysis in *Volkswagen II* reflected the importance to the plaintiff's choice of venue, as the court issued a writ of mandamus to transfer venue in that case only after it found that four of the eight *Gilbert* factors weighed in favor of transfer and no factors weighed against transfer.

771 F. Supp. 2d 630, 638-39 (E.D. Tex. 2011). Bright Response's decision to file in this District (i.e., plaintiff's choice of forum) "places a significant burden on [the Moving Defendants] to show good cause for the transfer." *Volkswagen II*, 545 F.3d at 314 n.10. The concern Defendant raises as to alleged venue manipulation, which the Court addresses below, is an issue separate and apart from the burden of proof. *Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc.*, 2:12-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 2, 2012). If Plaintiff is found to have manipulated venue, that would only go to the weight the Court should attribute to Plaintiff's presence in the District; it does not change the movant's burden to show that the transferee venue is clearly more convenient than the venue chosen by the Plaintiff. *Id.*

C.     **Private Interest Factors**

i.     *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first private interest factor to be considered. Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is significant to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the

bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

In this case, Bright Response is a Texas Limited Liability Company with its principal place of business in Marshall, Texas. Marshall is within the boundaries of EDTX. But, SAS contends that Bright Response's location should be entitled to no weight because its office in Marshall staffs no employees and is shared with at least five other entities. According to SAS, Bright Response has a manufactured presence in this District because its Marshall office is solely for use in connection with patent litigation. SAS asks this Court to conclude that Bright Response was incorporated in this District specifically to avail itself of the judicial system within EDTX and that its presence here is "recent, ephemeral, and an artifact of litigation." Bright Response responds that: (1) it was incorporated in the Eastern District in 2006, more than six years before this suit was filed; (2) it has maintained physical office suites in this District since 2006; and (3) the Interim/Acting Manager of Bright Response, Audrey Spangenberg, resides within close proximity in Dallas, Texas.[1]

Within this context, the Court must determine whether Bright Response is only an "ephemeral" entity created intentionally to manipulate venue. *See Novelpoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010). "[T]he Federal Circuit has concluded that an entity that does not have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum is an 'ephemeral' entity." *Id.* (citing *In re Zimmer*, 609 F.3d 1378, 1381 (Fed. Cir. 2010)). "This is certainly true where the formation of the entity could be characterized as recent." *Id.*

---

[1] While Dallas is outside EDTX, it adjoins this District immediately to the west and is clearly much closer to this District than EDNC.

Direct guidance from the Fifth Circuit and Federal Circuit on this issue is somewhat limited and neither has pronounced a bright-line rule. However, two recent Federal Circuit cases on point provide some guidance. The Court in *In re Zimmer* found venue manipulation when the plaintiff created an illusory office in the transferor district, and transferred over 75,000 pages of documents, in anticipation of litigation. *In re Zimmer*, 609 F.3d at 1381. The Court in *In re Microsoft* found the plaintiff to be an ephemeral entity when it was incorporated under the laws of the state in which the transferor district lies mere days before filing suit in that district. *In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011). In situations similar to these, the Court has an obligation to closely scrutinize the ephemeral entity allegation to determine whether any venue manipulation exists. *In re Zimmer*, 609 F.3d at 1381 ("MedIdea argues that, unlike *Hoffmann-LaRoche*, its decision to claim its principal place of business in Texas does not require close scrutiny. We disagree.").

Here, Bright Response was organized more than six years prior to filing suit and has maintained its Marshall office for about the same length of time. These being the facts, Bright Response's formation in EDTX cannot be considered "recent" under Federal Circuit precedent. *NovelPoint Learning LLC v. LeapFrog Enterprises*, 2010 WL 5068146 at *5 (E.D. Tex. 2010) (the party was not ephemeral when it incorporated four months before it filed suit but also had two principals that lived in Texas); *In re Zimmer*, 609 F.3d at 1381; *In re Microsoft*, 2010 WL 4630219 at *3-4. Bright Response also has a principal, Audrey Spangenberg, who resides in Dallas, Texas.[2] In contrast, the plaintiff in *In re Microsoft* was deemed to "exist for no other purpose than to manipulate venue" because it was incorporated in Texas a mere sixteen days before filing suit, and the plaintiff also

---

[2] While Dallas is outside EDTX, it adjoins this District immediately to the west and is clearly much closer to this District than EDNC.

operated from the United Kingdom by the patent's co-inventor and company's managing member, John Mitchell.  Although [plaintiff] now maintains an office in Tyler, Texas, it is not disputed that the entity does not employ individuals in those offices or anywhere in the United States.  [Plaintiff's] website directs requests and inquiries to its Texas office, and Mitchell then answers those requests and inquiries from the U.K.

*In re Microsoft*, 630 F.3d at 1362.

Though current case law provides guidance, each case has unique facts that must be decided on a case-to-case basis. Here, the Defendant has the burden of proof, and SAS has not met its burden to show that Bright Response was organized in EDTX only to manipulate venue. SAS's points that Bright Response's Marshall office is unstaffed and shares space are well taken. However, that alone is not sufficient to persuade the Court that Bright Response's presence in this District is merely ephemeral.

Even though this Court finds that Bright Response's presence in this District is not ephemeral, the Court will assume, simply for the sake of argument, that it did organize in Texas to manipulate venue and accordingly attach minimal weight to the location of Bright Response's principal place of business in EDTX. Even so, many sources of proof are located in Texas. For example, SAS operates three offices in Texas employing 150 people, maintains local sales representatives, and has generated revenue from the sale of accused products in this District. Non-party witnesses, such as SAS's Texas customers and Alliance Partners, are also located in Texas. Weighing in favor of transfer is SAS's headquarters in Cary, North Carolina, where the accused products were developed and most of the documents associated with development and marketing is maintained. Other sources of proof, like the inventors and patent prosecutors, are located outside of both Texas and North Carolina. SAS has also indicated some of its employees with knowledge are located in Michigan and Massachusetts.

On balance, even assuming that Bright Response's business location in Texas should be given no weight, the most SAS has shown is that this factor is neutral.

> ii.     *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.*

SAS has not identified any non-party witnesses in this case that are located within the Eastern District of North Carolina. However, SAS notes that at least some non-party witnesses in this case are located in California – the named inventors and the prosecuting attorneys of the patents-in-suit.

Bright Response has identified several non-party witnesses located in Texas: SAS's customers, including the University of North Texas and the University of Texas at Austin, and SAS's Alliance Partners, including Pinnacle Strategies, LLC, located in Plano (within EDTX), GOVantage, LLC, located in Austin, and Infovision Consultants, Inc., located in Richardson. Although most of the non-parties are outside of the Court's subpoena power, many of them are located in Texas and clearly, they are much closer to Marshall, Texas, than to North Carolina. Also, none of the non-party witnesses have been identified as within the subpoena power of EDNC. Accordingly, the Court finds this factor weighs slightly against transfer, or is, at most, neutral.

8

### iii. *Cost of Attendance for Willing Witnesses*

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

In this case, the evidence with respect to this factor is closely aligned with the first factor discussed above—the relative ease of access to sources of proof. As the Court found with respect to that factor, the most that the Defendants have shown is that this factor is neutral.

### iv. *Other Practical Problems*

Neither party has pointed to other practical problems that would weigh in this transfer analysis. Therefore, this factor is neutral.

### D. **Public Interest Factors**

Defendant contends the only public interest factor supporting transfer is the interest in having localized interests decided at home; the other public interest factors are neutral.

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

SAS argues EDNC has a local interest in this dispute. Specifically, SAS contends that: (1) it is headquartered in Cary, North Carolina; (2) it employs 4800 people in EDNC; and (3) its research and development, engineering, manufacturing, and marketing take place in EDNC. However, SAS acknowledges that it also operates three regional operations offices in Texas with 150 employees and maintains local sales representatives in those areas.

Bright Response argues that EDTX has a local interest because Bright Response has had its headquarters here for more than six years and that its principal is a long time resident of Dallas, near this District. But as noted above, the Court assumes for the sake of argument that Bright Response's presence in the Eastern District is minimal for purposes of the eight-factor test. On balance, this factor weighs slightly in favor of transfer.

## V.   CONCLUSION

Having considered the parties arguments, the Court does not find this to be a case where transfer is clearly more convenient. Although SAS has its main facilities in North Carolina, it also maintains regional offices in Texas, has customers and Affiliate Partners in Texas, including the Eastern District, and generates revenue from sales within the Eastern District of Texas. Even attributing minimal weight to Bright Response's office in Marshall, when considering these realities as well as analyzing the public and private interest factors, the result comes out to be

substantially neutral. The most SAS has proven is that one factor weighs slightly in favor of transfer while one factor weighs slightly against transfer.

Essential neutrality is simply not sufficient for SAS to show that the Eastern District of North Carolina is clearly more convenient than the Eastern District of Texas. As in baseball, where a "tie goes to the runner," in transfer disputes, a "tie goes to the respondent." For the reasons set forth above, the Defendant's motion to transfer is **DENIED**.

**So ORDERED and SIGNED this 26th day of March, 2013.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# EXHIBIT 25

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC | § | |
| | § | |
| v. | § | Case No. 2:13-CV-270-JRG-RSP |
| | § | |
| CBS CORPORATION | § | |

## MEMORANDUM ORDER

Before the Court is CBS Corporation's ("CBS") Motion to Transfer Venue to the Southern District of New York (Dkt. 11, filed June 28, 2012).[1] CBS argues that the Southern District of New York is a clearly more convenient forum for this case. Plaintiff Personal Audio opposes transfer. After considering all of the record evidence and weighing the various factors, the Court finds that CBS has failed to carry its burden of showing that the Southern District of New York is a clearly more convenient venue for this case.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the

---

[1] The Court is aware that CBS has filed a petition with the Federal Circuit Court of Appeals, seeking a writ of mandamus regarding this Motion. Considering the apparently premature nature of the petition, the Court considers it advisable to proceed with its consideration of the Motion.

case.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009).  The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.  The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*").  Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue.  *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319.  Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-

M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

DISCUSSION

**A.     Proper Venue**

Neither party disputes that venue is proper either in the Eastern District of Texas or the Southern District of New York as to Personal Audio and CBS.

**B.     Private Interest Factors**

**1.     Cost of Attendance for Willing Witnesses**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

**Defendant CBS's Witnesses**

CBS alleges that "CBS has thousands of employees in New York City." (Mot. at 9.) Of those thousands of employees, CBS identifies a single one in their brief – Dustin Gervais – as having "in-depth personal knowledge regarding the process CBS Radio News uses to distribute CBS News Podcasts." (Mot. at 2.) At the hearing on the Motion to Transfer, it became apparent to the Court that Mr. Gervais was simply relaying third-hand information he had gleaned from

- 3 -

– A1007 –

conversations with a number of CBS employees that possessed *actual* knowledge about the technology at issue in the case – the most notable (and likely most relevant) person being Jason Randell, CBS.com's Vice President of Engineering, who is located in the Northern District of California (at the headquarters of CBS Interactive in San Francisco) along with, according to Mr. Gervais, the "majority" of technical employees.[2] (Hrg. Trans. at 72-73, 75-76.) As best the Court can discern (over CBS's obfuscation, which is discussed further below), CBS Interactive in San Francisco is the site of most of CBS's technical operations and development, and houses a substantial number of potentially relevant employees.

The only other employee identified in CBS's brief is Matt Norlander, who resides outside (but near) the Southern District of New York. Mr. Norlander is identified as having responsibility for the "production and distribution" of a single CBS Sports College Basketball Podcast, and the Motion describes him as a "host." (Mot. at 9.) At the hearing on the Motion to Transfer, Mr. Norlander stated that he was a "writer" for the podcast, and that as a part of his job as a writer, he would upload completed audio recordings to CBS's servers.[3] (*See, e.g.*, Hrg. Trans. at 37.) It appears that despite CBS's extensive reliance on his location in support of their venue motion, Mr. Norlander does not possess much, if any, knowledge as to how the CBS's software or systems work beyond his role as a user of those systems. Far more troubling, however, is what became apparent to the Court via the testimony provided at the hearing – Mr. Norlander was yet another declarant used by CBS whose declaration and testimony did not result from "personal knowledge," as claimed in his declaration. Instead, like Mr. Gervais, Mr.

---

[2] It does not appear that CBS identified Mr. Randell – or any of the other California technical employees – as potential witnesses to the Court in conjunction with the briefing on the Motion to Transfer.

[3] Mr. Norlander was the responsible "writer" for one of approximately 60 podcasts available through CBS Sports alone. It appears that some of those 60 podcasts may now be defunct, but it is unclear from the record how many. (*See* Hrg. Trans. at 62-63.)

Norlander's testimony was based almost entirely on conversations between Mr. Norlander and another CBS employee (located far from the Southern District of New York) with actual knowledge of the technology. During his examination, Mr. Norlander noted that almost every fact he swore to in his declaration was obtained from discussions with Adam Aizer, CBS Interactive's Coordinator of Digital Subscriptions and Programming. Mr. Norlander acknowledged that Mr. Aizer "probably has more relevant knowledge" than Mr. Norlander regarding this litigation. (Hrg. Trans. at 55.) Mr. Aizer is located in the Southern District of Florida, at the headquarters of CBS Sports.[4]

It is worth taking a moment here to note that the Court is gravely concerned about the representations made by CBS's declarants and counsel. It appears to this Court that CBS and its counsel participated in a concerted effort to channel information through otherwise ordinary employees who were located near CBS's desired venue, rather than identifying the witnesses who possessed *actual* knowledge of the technology at issue.[5] The Court stops short of finding an affirmative intent to deceive, but it is clear from the record that CBS intentionally omitted highly relevant information in its briefing when that information did not support transfer to the Southern District of New York.

At the hearing on the Motion to Transfer, CBS provided an additional witness as to the Showtime shows listed in Personal Audio's infringement contentions. Ms. Seana Baruth is the Vice-President of Product Management for Showtime Anytime. At the hearing, Ms. Baruth

---

[4] It does not appear that CBS identified Mr. Aizer as a potential witness to the Court in conjunction with the briefing on the Motion to Transfer.

[5] CBS and its counsel clearly had knowledge of the omitted (but highly relevant) witnesses, as at least one declarant (Dustin Gervais) testified at the hearing that he spoke with one of those witnesses (Ed Randell) – in the presence of counsel – in an effort to gather the facts eventually sworn to in his declaration. Mr. Gervais also testified that he agreed that Mr. Randell was more knowledgeable about the operation of the cbs.com website, and that outside of the instant litigation he would ordinarily have no reason to speak with Mr. Randell. (*See* Hrg. Trans. at p. 79 ln. 20 – p. 80 ln. 15.)

testified that she and her team members were the most knowledgeable CBS witnesses with regard to the Showtime Anytime website. Ms. Baruth's team is primarily based in New York, with additional team members located in Florida and Halifax, Nova Scotia. It appears that most of the substantive development of the Showtime Anytime video technology was performed by Brightcove, a third party developer (discussed further with regard to third party witnesses below), and that Ms. Baruth and her team's work appears to be targeted primarily toward the customization of the appearance of Showtime's video player. In Ms. Baruth's words: "one way we might customize it is that it has to look and feel like the showtimeanytime.com site so we implement changes to it so that it looks and feels and matches the site." (Hrg. Trans. at 19.) Thus, the information possessed by Ms. Baruth and her team with regard to customizing the CBS website likely has some relevance, but that relevance is mitigated by the fact that it appears to be far less important than the information possessed by third party developers who possess information about the actual design and operation of the accused functionality.

In their briefing and testimony presented at the hearing on the motion to transfer, CBS does not identify a single witness with knowledge as to the CBS.com video technologies accused in this case. As discussed further below, these technologies likely make up a substantial portion of this case. The Court presumes that Mr. Randell, as the Vice President of Engineering of CBS.com, likely possesses information about CBS.com's streaming video capability.

What is clear from the testimony provided at the hearing is that the most relevant CBS witnesses as to the technologies CBS identifies in its Motion to Transfer are located in the Northern District of California and the Southern District of Florida – both of which are substantially closer to the Eastern District of Texas than to the Southern District of New York.

**Plaintiff Personal Audio's Witnesses**

At the time of filing, Personal Audio's only full-time employee was Brad Liddle.  Neither party appears to dispute the fact that Mr. Liddle possesses relevant knowledge as to the licensing practices of Personal Audio, and worked for Personal Audio as General Counsel in Houston at the time the lawsuit was filed.[6]

CBS spent a substantial portion of time, both in its briefing and at the hearing, probing the portion of Mr. Liddle's declaration pertaining to one of Personal Audio's Beaumont locations.  Specifically, CBS takes issue with the following address given by Mr. Liddle: "3827 Phelan Blvd, **Suite** 180, Beaumont, TX, 77707." (*See, e.g.*, Dkt. 12-2 at par. 3.)  CBS contends that the address should have read "3827 Phelan Blvd, **Box** 180, Beaumont, TX, 77707," because the location was actually a commercial mailbox.  Personal Audio stipulates to this fact and readily admitted at the hearing that their characterization of the Phelan Boulevard address was incorrect, and that it does not dispute CBS's contention that the address should have referred to as a "box" instead of a "suite."  The Court is not persuaded by Personal Audio's explanation of this "error" – which seems suspiciously strategic in nature – but observes that the Phelan Boulevard location, whether read as "box" or "suite," carries little weight in the §1404 analysis because no employees or documents exist at that location.[7]  It stands uncontroverted in the record that, at the time of filing of the suit, Personal Audio's documents were located in Beaumont, which is in the Eastern District of Texas, and that Personal Audio's only full-time employee

---

[6] Although it does not affect our transfer analysis because it occurred after the time of filing, it is worth noting that Personal Audio now employs six people within the Eastern District of Texas – some of which may possess knowledge relevant to this suit.

[7] While CBS detailed its investigation of the Phelan Boulevard location in great detail, it was silent on any investigation of Personal Audio's Houston location or the small Beaumont location where documents were stored and Mr. Skaggs was deposed. (*See* Hrg. Trans. at p. 89, ln. 23 – p. 94, ln. 19.)  It is unclear whether CBS chose not investigate those locations, or conducted some investigation and decided to not disclose the results in its briefing.

resided and worked in Houston, just outside the Eastern District of Texas.  Indeed, this fact was clearly set out in the same affidavit that contained the reference to suite instead of box.

**Third Party Witnesses**

There exists very little – if any – admissible evidence in the record about the materiality and location of the third party witnesses relied upon by CBS in support of their Motion to Transfer.

CBS relied on two sets of alleged third party witnesses in its briefing.  CBS's first claim is that two allegedly relevant potential witnesses, Paul Bronshteyn and Jacques Dupoux, reside near the Southern District of New York.  In its briefing, CBS relied primarily on unauthenticated and unverified listings from "Whitepages.com", at least one of which was contradictory on its face.  (*See, e.g.*, Dkt. 11-8 at 2, showing two different addresses for the same Paul Bronshteyn.)  At the hearing on the Motion to Transfer, CBS abandoned its reliance on the Whitepages.com listings, but instead attempted to solicit testimony from Mr. Norlander about the location of Mr. Bronshteyn's and Mr. Dupoux's prior positions at CBS and current residences.  Mr. Norlander's testimony was founded on two bases.  First, Mr. Norlander's knowledge about Mr. Bronshteyn's and Mr. Dupoux's alleged former positions and responsibilities at CBS was founded exclusively on information he was "told" by another CBS employee (whom CBS did not disclose to the Court in conjunction with briefing on the Motion to Transfer):

> Q. Do you have an understanding as to how the software tool that is used by CBS Sports for its podcasts was developed?
> A. Yes, a general understanding.
> Q. And what is that understanding?
> A. The understanding is that it was developed by two men, two former employees at CBSSports.com who are no longer there.
> Q. And did you -- do you have an understanding as to who specifically those former CBS employees are who worked on this particular software tool?
> A. Yes. Jacques Dupoux and Paul Bronshteyn.

> Q. And how did you attain that understanding as to the two former employees who worked on this podcasting tool used by CBS Sports?
> A. I was informed of this by my colleague at CBSSports.com, Adam Aizer, who is basically the connection between those men and me and that -- Adam was the one who also informed me and taught me how to use the tool.

(Hrg. Trans. at 42-43.) Thus, Mr. Norlander's testimony regarding Mr. Bronshteyn's and Mr. Dupoux's alleged role in developing the CBS podcasting upload tool was based solely on hearsay and is therefore inadmissible.

Mr. Norlander also testified that his knowledge as to Mr. Bronshteyn's and Mr. Dupoux's location was based on the location listed in their LinkedIn profile. After being faced with an objection, counsel for CBS attempted to lay a foundation for the exception set forth in Federal Rule of Evidence 803(17). This exception provides for the potential admission of "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." *See* FRE 803(17). As a foundation, CBS relies on Mr. Norlander's testimony that, in his position as a journalist, his typical practice was "to use various online resources to locate individuals." (Hrg. Trans. at 47.) The Court sustained the objection to this testimony at the hearing, and reiterates that ruling here. This is clearly not the type of evidence contemplated by FRE 803(17). Under CBS's interpretation of this exception, any online information is necessarily admissible if a journalist testifies that he or she uses that resource to gather information. The Court finds that the LinkedIn profile relied upon by CBS is simply not reliable enough to satisfy this exception, especially given the fact that CBS could have easily provided verifiable, admissible evidence as to the facts upon which they attempt to rely. As *Weinstein's Federal Evidence* tells us:

> As with other hearsay exceptions, the admissibility of market reports and commercial publications under Rule 803(17) is

> predicated on the two factors of necessity and reliability. <u>Necessity lies in the fact that if this evidence is to be obtained it must come from the compilation</u>, since the task of finding every person who had a hand in making the report or list would be impossible. <u>Reliability is assured because the compilers know that their work will be consulted</u>; if it is inaccurate, the public or the trade will cease consulting their product.

5 *Weinstein's Federal Evidence* § 803.19[1] (Matthew Bender 2002) (emphasis added). Neither reliability nor necessity is present here. Notably, CBS did not contend that LinkedIn (which would presumably be the "compiler" under CBS's argument), makes any effort to verify the accuracy of the information contained in its profiles. The failure of necessity is even clearer: the Court finds that CBS could have easily provided testimony or an affidavit of a person with actual knowledge (e.g. Mr. Aizer),[8] or – since they claim to know their location – attempt to obtain an affidavit from Mr. Bronshteyn and Mr. Dupoux.

The second alleged third party 'witness' is Harris Media, which "host[s], manage[s], and distribute[s] the CBS News Podcasts as well as the RSS feeds associated with the CBS Radio News Podcasts." It is not clear what – if any – relevant information Harris Media might possess regarding the technical aspects of the accused systems.[9] Notably, CBS did not identify a single Harris Media witness in conjunction with its disclosure of potential witnesses in this case. (*See* "CBS Corporation's Initial Disclosures Pursuant to Paragraph 1 of the Discovery Order," Hrg. Ex. P-1.)

---

[8] As noted above, CBS's failure to disclose Mr. Aizer (who they now allege possesses personal knowledge of Mr. Bronshteyn and Mr. Dupoux's whereabouts) to the Court in conjunction with its transfer briefing appears to be motivated solely by the fact that Mr. Aizer's location does not support its request to transfer to New York. Thus, the blame for the lack of admissible evidence as to these topics falls squarely on the shoulders of CBS and its counsel.

[9] CBS did not rely on Harris Media at the hearing on the Motion to Transfer, and its own witness downplayed the importance of "content distribution networks." (Hrg. Trans. at 19-20.)

At the hearing on the Motion to Transfer, CBS attempted to remedy the lack of evidence as to potential third-party witnesses with Ms. Baruth's testimony that Showtime utilizes the services of Brightcove Inc., a company headquartered in Boston, Massachusetts. Ms. Baruth testified that "[she] believe[d]" that the representatives that she "deal[s] with from Brightcove" were located in Boston, but the record contains no evidence to support this belief. (Hrg. Trans. at 19.) It was developed on cross examination that the "account rep" to which Ms. Baruth referred is named Pablo Silva.[10] (*Id*. at 30-31.) Ms. Baruth did not know, and it is unclear from the rest of the record, where the employees that actually develop and maintain the Brightcove software (and presumably possess information relevant to the case) are located.[11]

Finally, the Court observes a curious lack of information regarding the accused CBS video products. CBS provided a great deal of argument and testimony about the accused podcast and Showtime video functionality, but was silent as to the accused CBS video functionality (which is presumably highly relevant in this case). The Court is concerned that given CBS's apparent pattern of intentionally omitting highly relevant information and channeling the information it does provide through its desired locale, the lack of information about the CBS video products might be intentional. In conjunction with its research into NBC's Motion to Transfer Venue (handled by the Court in a separate order), the Court learned of an online video solution called "thePlatform." (*See, e.g.*, Hrg. Trans. at 152.) CBS did not mention thePlatform in its briefing or testimony, but it appears that thePlatform may "manage[] tens of millions of

_____

[10] If the Court *were* to allow the use of LinkedIn profiles as admissible evidence as CBS suggests, that website (as of 3/13/14) would show that Ms. Baruth may be incorrect in her belief regarding the location of CBS's Brightcove account representative – the Pablo Silva employed by Brightcove appears to be located in Miami, Florida – substantially closer to the Eastern District of Texas than the Southern District of New York. (http://www.linkedin.com/in/pablosilva)

[11] In addition to Boston, Brightcove also has US locations in Tempe, AZ; San Francisco, CA; New York, NY; and Seattle, WA; as well as a substantial number of international offices.

video[] views every month for CBS.com, CBSSports.com and the CBS Audience Network, the largest network of professional, premium video content online, which includes content from CNET, CBSNews.com, Gamespot, and more." ("CBSi Case Study," the Platform.)[12] Testimony was provided by an unrelated NBC witness that thePlatform is located in Seattle, WA. While not dispositive, this is yet another piece of information that suggests that CBS may have omitted information crucial to the Court's §1404 analysis.

After considering all the evidence relevant to the convenience factor, the Court observes that the majority of key CBS party witnesses are located closer to the Eastern District of Texas than to the Southern District of New York. Personal Audio's only party witness is located closer to the Eastern District of Texas than to the Southern District of New York. The record is unclear as to potential third party witnesses: it appears likely that some are located closer to the Southern District of New York and some are located closer to the Eastern District of Texas. Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor favors the Eastern District of Texas.

### 2. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

The briefing submitted by CBS on this point is scant. Dustin Gervais stated in his declaration that "CBS Radio News' principal technical marketing, sales documentation and personnel relating to the CBS News Podcasts are located in New York." (Dkt. 11-11 at par. 6.)

---

[12] The Case Study in question can be found at http://theplatform.com/cbsi_case_study/, last accessed 3/13/14.

A casual reading of this statement suggests more than is actually true.  When carefully parsed, Mr. Gervais does not actually say that CBS Radio News *has* relevant documents or employees in New York, just that any that might exist are located there.  Indeed, as noted above, this statement turned out to be misleading – although some statistical and financial records appear to exist in New York and New Jersey, it appears that the "majority" of CBS Interactive technical employees who might actually have technical information relevant to development and operation the accused systems are located in California (including the Vice President of Engineering, who Mr. Gervais consulted in preparation of his declaration).  (Hrg. Trans. at 72-73, 75-76, 68-69.) The Court is generally loathe to make this type of overly technical reading into the statements of a declarant, but it is necessitated here by CBS's clear and repeated attempts to use artful wording to avoid disclosing the actual location of relevant documents and witnesses.  Mr. Gervais also mentions Harris Media, which appears to have minimal relevance for the reasons set forth in Section 1 above.  The Court finds that there are likely documents relevant to this case at the headquarters of CBS Interactive in the Northern District of California, given that it houses the majority of relevant technical employees.

At the hearing, Ms. Baruth testified that the documents "related to the technology used at Showtime to make TV espisodes available online at showtimeanytime.com" were located "in our wiki" and "ticketing system."[13]  (Hrg. Trans. at 21.)  The Court finds that these documents appear to have some relevance, but short of saying that these documents are routinely accessed from New York, Florida, and Nova Scotia, neither party introduced any evidence indicating where the electronic documents are actually hosted – it seems likely that they may be hosted with

---

[13] Ms. Baruth also mentioned that some documents might be stored on hard drives and printed, but it appears that the documents contained in the "wiki" and "ticketing system" are the most relevant given her team's heavy reliance on those systems.

the rest of the Showtime Anytime website in Florida, but it is also possible that the documents reside with Showtime's customization source code "on development machines in New York." (Hrg. Trans. at 18.) Ms. Baruth also stated that "the customized source code lives in our source code depository." (*Id*. at 30.) It is not clear from the record whether the source code depository is also located on the New York development machines. When asked where the original source code was located, Ms. Baruth stated "I don't have access to Brightcove's operations; so, I don't know." (*Id*.) Although Ms. Baruth's testimony was uncertain on a number of points, what is clear from the record is that "the Web site is hosted on servers in Florida" before being distributed to content delivery networks, so a complete copy of the source code that is presented to users is located in Florida. (*Id*.)

Mr. Norlander's declaration stated "I am not aware of any documents relating to the CBS Sports Podcast." (Dkt. 11-12 at 2.) The Court finally notes that CBS did not introduce any evidence as to where any documents are located for the CBS video products. It seems likely – though not certain – that some documents related to these products likely exist at the headquarters of CBS Interactive in California, given that that location houses the "majority" of the technical employees, including the Vice President of Engineering for CBS.com. (*See, e.g.*, Hrg. Trans. at 72-73, 75-76, 68-69.)

Finally, it is undisputed that Personal Audio's relevant documents are housed within this district, and have been for nearly four years before the above-captioned suit was filed. (Mot. at 12; Hrg. Trans. at 92-94.)

The Court observes that the majority of the most relevant documents in this case – at least the ones as to which CBS chose to provide information – are likely located in California and Florida, which are both substantially closer to the Eastern District of Texas than to the Southern

District of New York. Although some printed documents may reside in Texas and New York, it appears that those documents have marginal relevance as they are either copies of documents that primarily reside elsewhere (*e.g.* depository copy of the live Showtime Anytime code in Florida; printed copies of wiki and ticketing system that resides in unidentified location) or carry less relevance than the technical documents (*e.g.* Personal Audio's documents; CBS's statistical reports regarding the number of CBS website hits). Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor favors the Eastern District of Texas.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

The most relevant CBS technical witnesses in this case appear to be located in Florida and California – outside the subpoena power of both this Court and the Southern District of New York. The New York area witnesses identified by CBS (aside from Ms. Baruth) appear to be marginally relevant only because of CBS's clear attempt to channel information through them for the purposes of manipulating venue (discussed further in Section 1 above). Ms. Baruth, on the other hand, appears to possess some relevant information (although the information possessed by the unidentified Brightcove developers is likely to be substantially more important) and is under the subpoena power of the Southern District of New York. The only admissible evidence as to third party witnesses pertains to Brightcove, but it is not clear where the Brightcove technical employees are housed (also discussed in more detail in Section 1 above).[14] Finally, this Court holds subpoena power over Brad Liddle, who was the only full-time employee

---

[14] Even if the Brightcove employees with relevant knowledge were located in Boston (a proposition for which there is no factual support in the record), they would reside outside the subpoena power of both Courts at issue.

of Personal Audio at the time the suit was filed.[15]  Neither Court at issue here carries subpoena power over the most relevant witnesses in the case, but each holds subpoena power over some number of less important witnesses.  Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor is neutral.

### 4.      All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

In its opening brief, CBS did not address the judicial economy impact of transferring only two cases outside of this District, essentially creating parallel proceedings.  When faced with this concern from Personal Audio, CBS argues that all the copending actions be transferred to the Southern District of New York.  (Dkt. 22 at 4.)  In support of this suggestion, CBS provides declarations from defendants HowStuffWorks.com and Togi Entertainment, and an email from defendant Lotzi Digital, stating that those defendants consent to transfer.  (*See* Dkts. 22-1; 22-2; 22-3.)  It is unclear how CBS proposes that this Court justify transferring all copending actions to the Southern District of New York simply by the consent of only one party at issue, without performing the requisite convenience analysis.  This proposal flies in the face of the statutory requirements imposed on this Court by §1404 and is not well taken.

In any event, the Court will address each declaration referred to by CBS in turn.  The first declaration attached is from Jason Lo, counsel for HowStuffWorks.com.  Mr. Lo "consents to a transfer of venue to the Southern District of New York" but also states that "the Northern District of Georgia is the most convenient forum for HowStuffWorks.com."  (Dkt. 22-1 at 2.)  HowStuffWorks.com has since moved to transfer to the Northern District of Georgia, or in the alternative, to the Southern District of New York.  The next declaration is from Steven Brewer,

---

[15] The Court also holds subpoena power over the six employees of Personal Audio who work within the Eastern District, but does not rely on this in its analysis because those employees were hired after the instant suit was filed.

the (now former) President and CEO for Togi Entertainment, which states that "the SDNY is a more convenient venue for Togi than the Eastern District of Texas" and that "Togi intends to move to transfer to transfer venue to the SDNY." (Dkt. 22-2 at 1-2.) In fact, Togi did not move to transfer, and it is not clear that venue would even be proper for the Togi action in the Southern District of New York. Finally, CBS cites to its own declaration attaching an e-mail from John Jackson, counsel for Lotzi Digital, stating that Lotzi "consents to transfer to the Southern District of New York." (Dkt. 22-3; 22-4.) Lotzi has not moved to transfer.

As noted above, CBS has provided absolutely no facts as to the other defendants, no legal analysis as to the appropriateness of transfer for these parties under §1404, and cites no authority for its suggestion that a transfer without an analysis of the relevant facts would be appropriate here.

It is in the interest of judicial economy to have one court decide all related patent issues. *In re Volkwagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). CBS characterizes Personal Audio's position as contending "that a single private interest factor – judicial economy – overrides all others." (Dkt. 22 at 2.) Personal Audio does not appear to have actually made that argument, and this Court certainly does not endorse such a proposition. Rather, as is well-established, judicial economy is one factor in the transfer analysis. Here, CBS has failed to show that this factor favors transfer, and the Court finds that this factor disfavors transfer.

## C.    Public Interest Factors

### 1.    Local Interest in Having Localized Interests Decided at Home

CBS argues that "New York has a particular interest in this dispute because it affects CBS's … operations there, and the development of CBS's … software accused of infringement has occurred there." (Mot. at 14.) The Court addresses each of these arguments in turn.

The Court notes that the first connection alleged by CBS is not a connection to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather arises from the fact that some residents of the Southern District of New York may have an interest, financial or otherwise, in CBS itself – a theory which raises troubling fairness implications. 545 F.3d at 318. If the Court endorsed this view, Personal Audio could make a similar argument that Texas has a localized interest in Personal Audio given its payment of Texas Franchise Taxes. (Dkt. 12-2 at 1-2.) However, the Court affords this line of argument no weight.

CBS's second connection appears, on its face, to be more substantive. The Court agrees that if the development of the CBS software accused of infringement took place in New York, that district would have some particularized local interest in this case. But there is virtually nothing in the record that suggests this is the case. In fact, as noted in great detail above, it appears that very little substantive development took place in the Southern District of New York, but instead in California and Florida by CBS, and various other (as yet unknown) locations by third parties. Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor is neutral.

> **2.      Familiarity of the Forum With the Law that Will Govern the Case, Administrative Difficulties Flowing From Court Congestion, and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The Court finds that the remaining public interest factors are neutral, but notes that the median time to trial for a civil case is nearly 8.5 months longer in the Southern District of New York than in the Eastern District of Texas. (*See* September 2013 National Judicial Caseload Profiles for District Courts, http://www.uscourts.gov.)

# CONCLUSION

After considering all of the relevant evidence and factors, the Court finds that CBS has failed to meet its burden of showing that the transferee venue is "clearly more convenient" than the transferor venue. Accordingly, the Motion is **DENIED**.

**SIGNED this 20th day of March, 2014.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 26



# BlackBerry

Devices   BBM   Apps & Media   Software   Support   Where to Buy   Business   Developers

**About Us**

  › **Contact Information**
  › Maps

BlackBerry Academic Program

BlackBerry Connect

Customer Success

Investors

BlackBerry - Newsroom

Careers

Home › Company › About Us

## Contact Information

### Contact information for general inquiries

**Investor inquiries:** to contact BlackBerry investor relations, email investor_relations@blackberry.com or call (519) 888-7465, ext. 75950. Learn how to obtain an investor kit

**Career inquiries:** for more information about career opportunities at BlackBerry, or to apply online, visit BlackBerry Careers.

### Contact information for BlackBerry headquarters

**Corporate Head Office**

BlackBerry B
2200 University Ave. E
Waterloo, ON, Canada
N2K 0A7

tel: (519) 888-7465
fax: (519) 888-7884

View map of Waterloo offices

**BlackBerry United States**

BlackBerry
5000 Riverside Drive,
Irving,
TX 75039

tel: (972) 373-1700
fax: (972) 650-2006

**BlackBerry Europe**

BlackBerry
200 Bath Road
Slough, Berkshire
United Kingdom SL1 3XE

tel: +44 (0)1753 667000
fax: +44 (0)1753 669970

### Contact information for other BlackBerry offices

**Manufacturing Facility**

BlackBerry
451 Phillip Street
Waterloo, Ontario
Canada N2L 3X2

tel: (519) 888-7465
fax: (519) 888-0021

**Ottawa**

BlackBerry
4000 Innovation Drive
Kanata, Ontario
Canada K2K 3K1

tel: (613) 599-7465
fax: (613) 599-1922

**Mississauga**

BlackBerry
4701 Tahoe Boulevard
Mississauga, Ontario
Canada L4W 0B5

tel: (905) 629-4746

fax: (905) 629-4869

View addresses for other BlackBerry locations

| FOLLOW US | COUNTRIES | CUSTOMER SERVICE | CORPORATE | SITES | LEGAL INFO |
|---|---|---|---|---|---|
| BlackBerry Communities | United States | Contact Us | Company | Mobile | Overview |
| Facebook | Canada (en) | Support | Investors | Developers | Accessibility |
| Twitter | Canada (fr) | | Careers | Beta | Trademarks |
| YouTube | United Kingdom | | News | Partners | Privacy Policy |
| Flickr | Select Country | | Customer Success | Blog | |
| BlackBerry Blog | | | Corporate Responsibility | | |

Copyright © 2014 BlackBerry. All rights reserved.   |   Site Map   Site Index

**– A1026 –**

# EXHIBIT 27



Ericsson United States - Ericsson

# EXHIBIT 28

# uspto.GOV

or patents | search for trademarks

Search our site [ Go ]

**The United States Patent and Trademark Office**
an agency of the Department of Commerce

PATENTS | TRADEMARKS | IP LAW & POLICY | PRODUCTS & SERVICES | INVENTORS | NEWS & NOTICES | FAQs | ABOUT US

Home Page » NEWS & NOTICES » Press Releases » 2013

| | |
|---|---|
| **Subscription Center** | CONTACT: (Media Only) Patrick Ross |
| **Press Releases** | or Paul Fucito (571) 272-8400 or |
| • 2013 | patrick.ross@uspto.gov or paul.fucito@uspto.gov |

December 11, 2013

## Press Release, 13-39

### U.S. Secretary of Commerce Penny Pritzker Names Michelle K. Lee as Next Deputy Director of the U.S. Patent and Trademark Office

*Leader of USPTO's Silicon Valley Satellite Office to Begin New Position in January 2014*

**WASHINGTON** — U.S. Secretary of Commerce Penny Pritzker today announced the appointment of Michelle K. Lee as the next Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the U.S. Patent and Trademark Office (USPTO). Lee currently serves as the Director of the USPTO's Silicon Valley satellite office and will begin her new role at USPTO headquarters in Alexandria, VA, on January 13, 2014.

While Director of the USPTO's Silicon Valley satellite office, Lee has served as the agency's primary liaison with the innovation community in the Silicon Valley and West Coast, leading the establishment of a temporary office in Menlo Park and working creatively with California's Congressional, state, and local leadership to successfully secure a permanent office location in San Jose. In that role, she has also been actively engaged in education and outreach initiatives, empowering the USPTO to more effectively develop programs, policies, and procedures to meet the needs of the West Coast innovation community. Beyond the Silicon Valley office, Lee has also played a broader role in helping shape key policy matters impacting the nation's intellectual property (IP) system, focusing closely on efforts to continually strengthen patent quality, as well as curbing abusive patent litigation. Prior to becoming Director of the Silicon Valley USPTO, Lee served two terms on the USPTO's Patent Public Advisory Committee, whose members are appointed by the U.S. Commerce Secretary and serve to advise the USPTO on its policies, goals, performance, budget and user fees.

"Michelle Lee has proven herself to be a tremendous asset to the USPTO and the Department of Commerce," said Secretary Penny Pritzker. "She has a great mix of skills and experiences to assume this leadership position during a time when the administration is deeply focused on strengthening the nation's intellectual property system. And her years of working in the IP community, both in the private and public sectors, will support the key focus on innovation and the digital economy in the Commerce Department's new 'Open for Business' policy agenda. I look forward to working with her in her new capacity."

An engineer and attorney by training, Lee has developed a distinguished career over the past 25 years focused on various key facets of patent law, technology, and innovation policy in private practice, industry, and the executive and judicial branches of the federal government. Prior to joining the USPTO, Lee served as Deputy General Counsel for Google and was the company's first Head of Patents and Patent Strategy. She also served as a partner at the Silicon Valley-based law firm of Fenwick & West, where she specialized in advising a wide range of high-technology clients from start-ups to Fortune 100 companies on all aspects of patent law, intellectual property, litigation and corporate matters. Prior to her career as a legal advisor to technology companies, Lee worked in the federal judiciary, serving as a law clerk for the Honorable Vaughn R. Walker on the U.S. District Court for the Northern District of California and the Honorable Paul R. Michel on the U.S. Court of Appeals for the Federal Circuit. Before building her legal career, Lee worked as a computer scientist at Hewlett-Packard Research Laboratories, as well as at the Massachusetts Institute of Technology (M.I.T.) Artificial Intelligence Laboratory. She holds a B.S. and an M.S. in electrical engineering and computer science from M.I.T., as well as a J.D. from Stanford Law School.

"I have truly valued my years working with the USPTO, both on the Patent Public Advisory Committee and more recently helping to build a robust USPTO office in the Silicon Valley," Lee said. "One of the best parts of my experience has been working with the talented and hard-working women and men at the USPTO. In my new role, I'm excited to further my service to the agency, the Commerce Department, and the American innovation community."

Upon assuming her role as USPTO Deputy Director, Lee will perform the functions and duties of the USPTO Director, a position that is currently vacant. In accordance with statutory law, she will assume the title of "Acting Director" once President Obama nominates a Director.

After Lee begins her new role in January, John Cabeca, a 25-year veteran of the USPTO, will serve as the Director of the Silicon Valley satellite office until the permanent office in San Jose City Hall becomes operational. Cabeca is currently the Senior Advisor to the Under Secretary for Intellectual Property and Director of the USPTO and a former Semiconductor Technology Center Director. In addition to seeing the office through its build-out and hiring, Cabeca will focus on continuing the strong education and outreach initiatives by assembling a public engagement team that will guide educational programs tailored to the Silicon Valley's unique ecosystem of industries and stakeholders.

Stay current with the USPTO by subscribing to receive e-mail updates. Visit our Subscription Center at www.uspto.gov/subscribe.

\# \# \#

*(sidebar listing)*

Subscription Center
Press Releases
• 2013
• 2012
• 2011
• 2010
• 2009
• 2008
• 2007
• 2006
• 2005
• 2004
• 2003
• 2002
• 2001
• 2000
• 1999
• 1998
• 1997
• 1996
• 1995
Testimony and Speeches
Director's Forum
Systems Status
Emergency Notices
USPTO Videos
Official Gazette
Federal Register Notices
Event Calendar

» Accessibility       » Federal Activities Inventory       » Department of Commerce       » Strategy Targeting Organized



Privacy Policy
Terms of Use
Security
Emergencies/Security Alerts
Information Quality Guidelines

Reform (FAIR) Act
Notification and Federal Employee Antidiscrimination and Retaliation (NoFEAR) Act
Budget & Performance
Freedom of Information Act (FOIA)

NoFEAR Act Report
Regulations.gov
STOP!Fakes.gov
Department of Commerce
USA.gov

Piracy (STOP!)
Careers
Site Index
Contact Us
USPTO Webmaster

This page is owned by Office of the Chief Communications Officer.                Last Modified: 12/11/2013 10:16:51 AM

# EXHIBIT 29

**Issue 50** November/December 2011

**Intellectual Asset Management** Magazine
www.iam-magazine.com

The IP Media Group



Reputation blunders that damaged HP and Yahoo!

How the Nortel auction changed everything

The obstacles on the path to IP's promised land

Why your business suffers when women walk out

Patent opportunities for savvy VCs identified



# The players

## As we hit 50, we name the individuals, companies and institutions that have framed the *IAM* years



*Intellectual Asset Management Magazine*
Maximising IP value for business | February/March 2008 Issue 28
www.iam-magazine.com

# iam

## Dutch power

*Ruud Peters on how Philips became an IP world leader*

Meet the trailblazers of the intermediary market
Why SFAS-141 has failed to shed light on intangible value
The IBM perspective on the Supreme Court's latest patent case
Winners and losers in the US litigation stakes 2007 revealed
How Intellectual Ventures kick-started an industry

**Ruud Peters, CEO of Philips IP & Standards, issue 28**

bottom line and how intellectual property can be used to enhance it. Although licensing is at the heart of what the society does, and licensing best practices are its major concern, its members have also led the way in discussing and promulgating other forms of value creation. *IAM* attended its first LES USA and Canada annual get-together in San Diego in 2003 and immediately felt at home. We'll be back in the southern Californian city again this October for 2011's meeting, and we will proudly be there as the LES's official strategic media partner.

### Life sciences industries

Patents and brands are at the very heart of what the pharmaceutical and biotechnology industries are all about. It's virtually impossible to get to the top in any company that operates in these sectors without a thorough understanding of intellectual property. In many ways, therefore, the life sciences were ahead of the IP curve. However, this is not to say that they have always got everything right. Controversies over access to medicine in the developing world and competition investigations in the developed world have often put businesses on the back foot. The expense of R&D, meanwhile, has led to the development of new collaborative models of discovery, development and roll-out. As patent cliffs grow higher and more dangerous to fall off, more IP-related creative thinking will be needed in the future.

### Richard Lutton

**Former chief patent counsel at Apple Computer Inc**
The 563 patents granted to Apple last year will undoubtedly fuel Cupertino's ambition to define 21st century technology while strengthening its litigation muscle to protect it. For the past decade its chief patent counsel, Richard Lutton, was pivotal to that key process by managing and protecting the portfolio of 15,000 patents that, among other things, underpin the iPod, iPhone and iPad; as well as helping to negotiate the deals providing Apple access to the patents that it does not control. Lutton was a central figure

### Michelle Lee

**Head of patents and patent strategy and deputy general counsel at Google**
As Google's head of patent strategy since 2006, Michelle Lee has often faced an uphill battle to convince senior management at the company to understand the importance of developing and then implementing a fully integrated, long-term patent plan. Now, it seems, reality has hit home in Mountain View, as the patent problems facing the Android platform across the world have become increasingly clear. As a result, Lee's team is growing in size and is getting busy. Although Google was unsuccessful in its attempts to buy the Nortel patent portfolio,

it made a string of acquisitions both before and after that auction took place. The proposed purchase of Motorola Mobility will see the portfolio of US patents available to Google rise to over 20,000. Just 12 months ago, that figure stood at under 1,000. Lee has done a great job of keeping Google in the game. Now she and her team may just have a few more tools at their disposal.

### Licensing Executives Society

While most other IP representative organisations have focused on the law, the Licensing Executives Society (LES) — and its USA and Canada operation in particular — has been much more concerned about the

**– A1035 –**

# EXHIBIT 30

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| SOLID STATE STORAGE | )( | |
| SOLUTIONS, INC. | )( | CIVIL DOCKET NO. |
| | )( | 2:11-CV-391-JRG-RSP |
| VS. | )( | MARSHALL, TEXAS |
| | )( | |
| STEC, INC., ET AL | )( | JANUARY 18, 2013 |
| | )( | 9:30 A.M. |

EVIDENTIARY HEARING

BEFORE THE HONORABLE JUDGE ROY S. PAYNE

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


FOR THE PLAINTIFF:   (See attached sign-in sheet.)


FOR THE DEFENDANTS:  (See attached sign-in sheet.)


COURT REPORTER:      MS. SHELLY HOLMES, CSR
                     Deputy Official Court Reporter
                     2593 Myrtle Road
                     Diana, Texas 75640
                     (903) 663-5082


(Proceedings recorded by mechanical stenography,
transcript produced on a CAT system.)

1    their testimony 8 to 10 possible witnesses, most of
2    whom are from Utah who could testify, but the evidence
3    is specific that Fusion-io is not representing that all
4    of those would be called to testify, and the actual
5    number is expected by the Court to be much less than the
6    8 to 10 possible witnesses identified, based on the
7    Court's experience from past patent trials in the
8    limited time, roughly 12 hours per side, that each side
9    will have to present their evidence.
10        For the Fusion-io witnesses, Utah would
11   clearly be a more convenient district for the trial.
12   However, even some of the Fusion-io witnesses are shown
13   to be from California and Colorado and Georgia, and they
14   would have to travel to either place.  For the S4
15   witnesses, Texas is clearly a more convenient forum for
16   the trial.  Perhaps the greatest amount of the trial
17   testimony will come from retained experts, and there's
18   no showing of where they will come from, but none are
19   shown to be from Utah.  They would have to travel to
20   either place.
21        Fusion's evidence regarding the former Intel
22   employees Kynett and Levy is quite vague as to whether
23   they would have relevant evidence regarding prior art
24   and would be helpful witnesses.  And I'll note that by
25   this time in this case, I would expect the Defendant to

1    be able to be more definitive if, in fact, their
2    testimony was needed.
3         S4's inventor witnesses, Kato and Katayama,
4    have agreed come to Marshall and not to Utah, which may
5    carry some weight since Japan is not a part of the Hague
6    Convention, but that's not dispositive either.
7         On the whole, because the flight times to
8    Utah are somewhat less than the flight times to Texas
9    for most of the non-party witnesses, this factor favors
10   transfer, but it favors it only slightly because there
11   are no non-party witnesses identified in Utah, and there
12   are some in Texas, and the difference in travel is not
13   overwhelming for any of them.
14        The fourth private factor is other practical
15   problems.  This factor encompasses the issue of judicial
16   economy which in this case clearly favors denial of
17   transfer because the trial is only five and a half
18   months -- months off.
19        Trial would clearly be delayed to 2014 if
20   the case is transferred.  The briefs talk about the U.S.
21   courts statistics regarding time to trial in both
22   districts.  I'll note that the 2011 statistics show the
23   average is 27.8 months from filing to trial in Utah and
24   26.1 months in the Eastern District of Texas, but I
25   don't find that those are the most important issues

1    under this factor.
2         A Utah court would have to prepare for claim
3    construction and repeat the same effort that I
4    already expended in getting ready for the Markman
5    hearing.  None of those are dispositive, but this factor
6    does favor denial of transfer.
7         The public interest factors, the first one
8    deals with administrative difficulties involved in the
9    dockets of the two courts.  Marshall clearly has a
10   relatively short time to trial in patent cases.  I
11   mentioned the overall statistics earlier.  I have no
12   reason to believe that the District of Utah would not
13   expeditiously resolve this case once it was transferred
14   there, so I find this factor to be neutral.  If
15   anything, it slightly favors denial of transfer.
16        The second public interest factor is the
17   local interest in the case and the interest in resolving
18   localized issues, locally.  There's no showing of any
19   greater interest in Utah than in the Eastern District of
20   Texas.  The Plaintiff is in the Eastern District of
21   Texas.  The Defendant is in Utah.  Infringement is
22   claimed in both districts.  Fusion-io is a much larger
23   company, but it's only a few years old.  There's no
24   showing that Utah has any special interest in Fusion-io
25   or that it has any particular impact on the Salt Lake

1    City area.  And the size of the company surely cannot be
2    dispositive under this factor.  Overall I find the local
3    interest factor to be neutral.
4         The last two public interest factors are
5    familiarity of the forum with the governing law and the
6    avoidance of unnecessarily problems dealing with
7    conflict of laws issues and foreign law questions.  In a
8    patent case such as this, those two factors are
9    undisputably neutral.
10        Based on the entire record, the evidence,
11   and testimony at this hearing and the briefs that have
12   been filed by both sides, I find that Fusion-io has
13   failed to establish that Utah is a clearly more
14   convenient forum, and accordingly, the motion to
15   transfer venue is denied.
16        The stay previously entered two weeks ago is
17   hereby lifted.  The docket control order remains in
18   place, and the Court will establish a new date for the
19   Markman hearing and any adjustments which may be
20   necessary to the calendar in view of the delay in
21   re-establishing that hearing.
22        Is there anything else that we need to put
23   on the record for the movant --
24        MR. PARTRIDGE:  Yes.
25        THE COURT:  -- Mr. Partridge?

9d90d280-ea3b-4e70-8999-d7e358f100ca

Page 118

1       MR. PARTRIDGE:  Your Honor, just a question.
2   So if we choose to file objections to Judge Gilstrap, if
3   we wish to move for a further stay until Judge Gilstrap
4   reviews this, I assume we need to take that up with
5   Judge Gilstrap?
6       THE COURT:  Absolutely.  If you -- you're
7   certainly free to appeal this ruling to Judge Gilstrap,
8   and -- and to request that he stay the matter at the
9   same time.  And -- and that would be addressed by Judge
10  Gilstrap.
11      MR. PARTRIDGE:  Okay.  Thank you, Your
12  Honor.
13      THE COURT:  Thank you.
14      MR. PARTRIDGE:  In terms of adjustments to
15  the docket control order, did you have in mind a time by
16  which we would get back to you with respect to the -- I
17  implied from your statement that you would like the
18  parties to discuss it and get back to you.
19      THE COURT:  What I think would probably be
20  most productive if we establish a new Markman date,
21  and then you meet and confer with your opposing counsel
22  about whether or not you think that that calls for any
23  adjustment in the schedule.
24      MR. PARTRIDGE:  Okay.  Thank you, Your
25  Honor.

Page 119

1       THE COURT:  And we'll take it up that way.
2       MR. PARTRIDGE:  Thank you, Your Honor.
3       THE COURT:  Thank you, Mr. Partridge.
4       Anything further for the Plaintiff?
5       MR. SOCHIA:  No, Your Honor.
6       THE COURT:  All right.  Thank you all, and
7   we're adjourned.
8       LAW CLERK:  All rise.
9       (Recess of proceedings.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 120

1               CERTIFICATION
2
3       I HEREBY CERTIFY that the foregoing is a
4   true and correct transcript from the stenographic notes
5   of the proceedings in the above-entitled matter to the
6   best of my ability.
7
8
9
    SHELLY HOLMES                    Date
10  Deputy Official Reporter
    State of Texas No.: 7804
11  Expiration Date: 12/31/14
12
13
14
15
16
17
18
19
20
21
22
23
24
25

31 (Pages 118 to 120)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC and GOOGLE INC., | § § § § § | JURY TRIAL REQUESTED |
| DEFENDANTS. | § § | |

**ADDITIONAL ATTACHMENTS TO PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. NO. 52)**

**– A1040 –**

Dated: April 14, 2014.                    Respectfully submitted,

                                          **McKOOL SMITH P.C.**


                                          */s/ Theodore Stevenson, III*
                                          Mike McKool, Jr.
                                          Texas Bar No. 13732100
                                          mmckool@mckoolsmith.com
                                          Douglas A. Cawley
                                          Texas Bar No. 0403550
                                          dcawley@mckoolsmith.com
                                          Theodore Stevenson, III
                                          LEAD ATTORNEY
                                          Texas State Bar No. 19196650
                                          tstevenson@mckoolsmith.com
                                          David Sochia
                                          Texas State Bar No. 00797470
                                          dsochia@mckoolsmith.com
                                          Ryan A. Hargrave
                                          Texas State Bar No. 24071516
                                          rhargrave@mckoolsmith.com
                                          **McKOOL SMITH P.C.**
                                          300 Crescent Court, Suite 1500
                                          Dallas, Texas 75201
                                          Telephone: (214) 978-4000
                                          Facsimile: (214) 978-4044

                                          Joshua W. Budwin
                                          Texas State Bar No. 24050347
                                          jbudwin@mckoolsmith.com
                                          **McKOOL SMITH P.C.**
                                          300 W. 6th Street, Suite 1700
                                          Austin, Texas 78701
                                          Telephone:    (512) 692-8700
                                          Facsimile:    (512) 692-8744

                                          **ATTORNEYS FOR PLAINTIFFS**
                                          **ROCKSTAR CONSORTIUM US LP and**
                                          **MOBILESTAR TECHNOLOGIES LLC**

**– A1041 –**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on April 14, 2014. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

<u>/s/ Theodore Stevenson, III</u>
Theodore Stevenson, III

# EXHIBIT 31

ADVERTISEMENT


Your Products and Services Deliver Critical Business Solutions
REACH THOUSANDS OF QUALIFIED BUYERS DAILY.
Start Now

**Wireless** WEEK.

| 🏠 | ARTICLES | BLOGS | MULTIMEDIA ▾ | E-REPORTS ▾ | RESOURCES ▾ | **FREE SUBSCRIPTIONS** |

FIND MY COMPANY      LOG IN    REGISTER

## News

# Executive Shake-Ups at Samsung, HP

🕐  Tue, 07/12/2011 - 8:32am

  by Andrew Berg

✉  Get today's wireless headlines and news - Sign up now!

HP and Samsung's mobile teams both saw major leadership changes over the past 48 hours.

According to Samsung, Omar Khan, the company's long-time chief technology officer and the man responsible for trotting out new products at events like the annual Consumer Electronics Show (CES), will be leaving the company.

Khan, a long-time Android evangelist at Samsung, will take the position as Citibank's mobile analyst leader. In a statement provided to Wireless Week, Samsung said it plans on having a continued relationship with Khan once he settles into his new role at Citibank.

Khan came to Samsung in 2008 from Motorola, where he was vice president of global supply chain & business operations for mobile devices. At Samsung, he is credited with the production of devices such as the Galaxy S II and the Galaxy Tab 10.1.

Samsung said Tim Rowden will be assuming Khan's previous duties, and Nick Dicarlo and Gavin Kim will be assuming most of the product and service spokesperson responsibilities for Samsung Mobile.

Meanwhile, HP's webOS team is also ushering in some changes. The company yesterday reported that Stephen DeWitt has been appointed to the post of senior vice president and general manager of its webOS global business unit.

**– A1044 –**

Jon Rubinstein, the visionary behind webOS who came to the company as part of its acquisition of Palm and who has been the main lead on webOS, will step aside, assuming a product innovation role within the Personal Systems Group at HP.

"With the successful debut of our first wave of webOS-based products, we are drawing on our deep executive bench to position the right leaders in the right roles to accelerate the long-term growth of webOS," said Todd Bradley, executive vice president, Personal Systems Group, and member of the executive board at HP, in a statement.

Specifically, Rubinstein was named senior vice president for product innovation in the Personal Systems Group. He will continue to report to Bradley in this role.

"With the launch of webOS 3.0, our team has delivered a world-class platform for HP to leverage going forward, and it is now time to take things to the next level," said Rubinstein in a statement.

TOPICS   BUSINESS    SAMSUNG

ADVERTISEMENT

SHARE THIS STORY



COMMENTS

**– A1045 –**

# EXHIBIT 32

▼  Search for people, jobs, companies, and more...          Advanced

Home    Profile    Connections    Jobs    Interests          Business Services    Upgrade

Lawyer Wanted - Are you a lawyer ready to take on new cases? If so, click here. | **Read More »**



# Omar Khan                                              3rd
co-CEO at NQ Mobile

Dallas/Fort Worth Area | Wireless

| | |
|---|---|
| Current | NQ Mobile Inc |
| Previous | Citi, Samsung Mobile, Motorola Mobile Devices |
| Education | Massachusetts Institute of Technology (MIT) |

[ Connect ]   [ Send Omar InMail ]  ▼              **500+** connections

www.linkedin.com/in/khanomar                    Contact Info

## Background

### Summary

Omar is a seasoned leader in the technology industry with extensive product, technology, supply chain, sales, strategy, IT and business development experience.

Specialties:Product Planning, Product Development, Mobile Content & Services, Supply Chain, International Operations, Global Sourcing, IS/IT, Business Development, Sales

### Experience

**co-CEO**  
NQ Mobile Inc
2012 – Present (2 years) | Dallas/Fort Worth Area

NQ Mobile is a leading global provider of mobile security, privacy and productivity solutions with approximately 172 million customers in over 150 countries. The company is listed on the NYSE under ticker symbol NQ.

**Managing Director, Global Head of Mobile Center of Excellence**
Citi
2011 – 2012 (1 year) | Dallas/Fort Worth Area

**Chief Product & Technology Officer**  
Samsung Mobile
2011 – 2011 (less than a year) | Dallas/Fort Worth Area

Omar maintains responsibility for the following functions: Product Planning, Product Marketing, Product Management, Systems Engineering, Content & Services. He supports these functions across telecommunications businesses which includes mobile devices, tablets and accessories.

**Chief Strategy Officer & Senior Vice President of Products and Services**  
Samsung Mobile
2008 – 2011 (3 years)

Omar maintains responsibility for the following functions: Business Strategy, Product Planning, Product Management, Systems Engineering, Content & Services. He supports these functions across telecommunications businesses which include Mobile Devices, Infrastructure, Set-top Boxes, Converged Devices, Enterprise Mobility & Accessories.

**People Similar to Omar**
  
Gavin Kim  3rd
President & Chief Commercial Officer
Connect

**Ads You May Be Interested In**
 **Study US Law Online** New online course from UC Berkeley for international lawyers. Register now.
 **Phoenix AZ Court Reporter** Med. malpractice specialist; Videotaping; Fast turnaround! Contact me!
 **Is Your Firm Listed?** List your law firm across the Internet. Enter law firm address to start now

**How You're Connected**
 You
 Mark Mathie
Mark can introduce you to someone who knows Omar
Get introduced ›

 Omar Khan

**People Similar to Omar**
 
Gavin Kim  3rd
President & Chief Commercial Officer
Connect

**– A1047 –**

### Vice President, Global Supply Chain & Business Operations



Motorola Mobile Devices

2007 – 2008 (1 year)

Omar had responsibility for the Global Supply Chain & Business Operations supporting the Mobile Devices business; this business accounted for $30B+ in revenue from sales of 217M handset units across 6 regions (2006). In this role, he held responsibility for sales & operations planning, product lifecycle management, all regional business operations, customer operations, value-added services, supply planning, inventory planning, excess & obscelesence, global order management, delivery, delivered quality, etc.

### Vice President, Global Business Planning & Operations



Motorola Inc.

2007 – 2007 (less than a year)

Omar had responsibility for Global Planning & Operations supporting the Worldwide Mobile Devices business; this business accounted for $30B+ in revenue from sales of 217M handset units across 6 regions. In this role, he had responsibility for developing, re-engineering, deploying, executing and optimizing end-to-end global processes related to sales & operations planning, supply planning, operational alignment (order to execution) and reporting/analytics. In addition, he maintained responsibility for global inventory and excess & obsolescence planning.

▾ 2 recommendations

 **Kevin Agatstein**
Owner, Agate Consulting, Inc.

Omar and I teamed on several strategy and business building projects while at Arthur Andersen. As Omar was more senior than... View

 **John Hewitt**
Senior Vice President & General Manag...

Omar is a seasoned leader who drives for results. He effecively manages the balance between strategic improvement and... View

### Senior Director, Global Planning & Operations



Motorola Inc.

2006 – 2007 (1 year)

Omar had responsibility for Global Planning & Operations supporting the Worldwide Mobile Devices business; this business accounted for $30B+ in revenue from sales of 217M handset units across 6 regions. In this role, he had responsibility for developing, re-engineering, deploying, executing and optimizing end-to-end global processes related to sales & operations planning, supply planning, operational alignment (order to execution) and reporting/analytics. In addition, he maintained responsibility for global inventory and excess & obsolescence planning.

### Director, Global Supply Chain, Sourcing & New Product Engineering



Motorola

2004 – 2006 (2 years)

Omar had responsibility for the Global Supply Chain supporting the iDEN Mobile Devices business; this business accounted for $3B in revenue from sales of 17M+ handset units across 200+ SKUs and 3M+ in accessory units across 700+ SKUs. He managed 450 personnel (190 IDL, 260 DL) worldwide and $2B+ in global spend across 4 EMS/ODM partners, 3 internal manufacturing sites, 5 distribution centers, 300+ suppliers and 2500+ parts. In addition, he managed a $58MM expense budget and a $13MM capital budget.

### Director, IT/IS, Technology Marketing & Value-Added Services



Motorola

2000 – 2004 (4 years)

### Manager, Strategy Practice



Andersen LLP, Business Consulting Division

1997 – 2000 (3 years)

Education

### Massachusetts Institute of Technology (MIT)

**– A1048 –**

SB, Electrical Engineering & Computer Science



### Massachusetts Institute of Technology (MIT)

Masters Degree, Electrical Engineering, Electrical Engineering, System
Dynamics (Management Science)



**Recommendations**

Received (2) ▾    Given (2)

### Vice President, Global Business Planning & Operations
Motorola Inc.



**Kevin Agatstein**
Owner, Agate Consulting, Inc.

❝ Omar and I teamed on several strategy and business building projects while at Arthur
Andersen. As Omar was more senior than I, he was responsible for maintaining client
relationships, guiding the process, as well as leading the problem solving. His ability to
synthesize and develop solutions to complex business problems in the context of the clients'
specific strategic and... **more**

November 30, 2007, Kevin worked indirectly for Omar at Motorola Inc.



**John Hewitt**
Senior Vice President & General Manager, Data Communications at TE Connectivity

❝ Omar is a seasoned leader who drives for results. He effecively manages the balance
between strategic improvement and delivering on tactical objectives, maximizing
organizational change while exceeding commitments.

September 13, 2007, John worked with Omar at Motorola Inc.

**Groups**



**Systems Thinking & …**
Join

**Following**



**NQ Mobile Inc**
Wireless
Follow

### Schools



**Massachusetts Instit…**
Greater Boston Area
Follow

**– A1049 –**

# EXHIBIT 33



# EXHIBIT 34



Search for people, jobs, companies, and more...        Advanced

Home    Profile    Connections    Jobs    Interests                    Business Services    Upgrade

Legal Nurse Consulting - Medical-Legal Solutions offers a variety of services. | **Read More »**



# David Pluss, CPA                                       3rd
Program Manager, Finance Transformation at Verizon
Dallas/Fort Worth Area | Telecommunications

Previous      Verizon Wireless, Verizon, KPMG
Education     Stanford University

Send David InMail                           **352**
                                            connections



www.linkedin.com/pub/david-pluss-cpa/11/307/630

**Background**

**Summary**

Positions
- Finance Transformation, Program Manager (Accounting)
- Internal Audit, Manager
- Cost Optimization, Consultant (IT)
- Sales Operations, Associate Director (Wireless Consumer Markets)

Other
- CPA (Texas and New Jersey)
- Big 4

Industries: Telecommunications, Aerospace & Defense Manufacturing, Utilities (Natural Gas) and
Residential Construction

**Experience**

## Program Manager, Finance Transformation
Verizon                                                    
2012 – Present (2 years)

Primary focus on asset management functions within accounting and reporting including PP&E, Software
and Leases. $200B+ in assets.

Core Areas
- Program and Project Management
- Process Engineering
- Change Management
- Policy Convergence (PP&E and Software)
- ERP System Convergence and Control
- Six Sigma

## Associate Director, Indirect Sales Operations
Verizon Wireless
2011 – 2012 (1 year) | Basking Ridge, New Jersey

- Go-To-Market Launches (Products, Price Plans and Devices)
- Strategic Partner Compensation
- Sales Force Training
- New Partner On-boarding and POS Solutions
- Reporting and Analysis

▾ 1 recommendation
            **Glenn Billand**

---

**People Similar to David**



**Christopher Fullam, PMP**
Program Manager - Verizon Project Manage...
**Connect**

Grow Your Career By Following

**Verizon**



You                    Verizon

McKool, get the latest on Verizon Jobs, News &
more!

+ Follow

**People Also Viewed**

     **Jim Jacobs**
                         Executive Director - Financial Planning
                         & Operations Support at Verizon
                         Wireless

     **Louis F. Ambio**
                         Director - Finance at Verizon Wireless

     **bernard gumbs**
                         Manager - Finance at Verizon Wireless

                         **Orr, Sara**
                         Finance Vice President, Verizon
                         Wireless

                         **Jose Piazza**
                         Vice President - Finance
                         Transformation at Verizon

                         **Glenn Billand**
                         Associate Director - National
                         Distribution at Verizon Wireless

                         **Karan Mehra**
                         Director Finance Transformation at
                         Verizon

                         **Robert Barish**
                         SVP & Corporate Controller

                         **Devin Scott**
                         Retail Compliance Manager at Verizon
                         Wireless

                         **Lauren Adelson**
                         Executive Director - Financial Systems
                         Operations at Verizon



Associate Director - National Distribution at Verizon Wireless

David is an extremely strong and versatile manager who is able to successfully transition between functional groups at Verizon Wireless. David is able to leverage best practices from any core application and leverage them with jobs... View

Home    Profile    Connections    Jobs    Interests

Search for people, jobs, companies, and more...    Advanced

**How You're Connected**

You    Business Services    Upgrade

## Manager, Internal Audit

Verizon

2010 – 2011 (1 year) | Basking Ridge, NJ

- Internal Transformation Lead
- Operation/Strategic/Financial Audits
- Development of Annual Audit Plan
- New Hire Training

▾ 4 recommendations, including:

**John Hassett**
Director of Finance at Verizon Wireless

David is a focused individual who brings a high level of passion to his work. His enthusiasm raises the engagement of the... View

**Shruti Shah**
Managing Director at KPMG

David was a highly motivated focused Manager who was able to see the big picture objectives of the Internal Audit Group and... View

2 more recommendations

Michael Donley

Michael can introduce you to someone who knows David
Get introduced ▸



David Pluss, CPA

## Senior Associate

KPMG

2007 – 2010 (3 years)

- Project Management
- Internal Audits
- Detailed Process Mapping & Design
- IT Cost Optimization Initiatives

Client / Project Experience: Telecommunications, Utilities (Natural Gas), DFW Defense Contractor (Material Management and Accounting System regulation (MMAS))

▾ 5 recommendations, including:

**Wayne Weaver**
Director, KPMG LLP

David is a result oriented person who just gets things done. He is intelligent, researches well and can pull together... View

**Nishant Anand**
Manager, The Strategy Group at KPMG

David's grit, determination and willingness to help has constantly set him apart from the rest of the team. His good humor... View

3 more recommendations

## Specialist - Lead Auditor

Verizon

2005 – 2007 (2 years)

- Team lead
- Financial (Sarbanes-Oxley), Operational, and Regulatory audits
- IT Integrated Audits

Business Process Exposure: Post-Implementation Billing Systems; Revenue Assurance; Purchasing; Accounts Payable; SOX; Capital Budget Programs; DSL Customer Provisioning; and Contract Administration

▾ 1 recommendation

**Michael Heraty**
Senior Director - Internal Audit at Whirlpool Corporation

I worked with David for approximately two years and he is a professional that is focused on achieving objectives in an efficient and effective manner. It was a pleasure to have David as part of the team as he is always a person you can rely on. I... View

## Staff Auditor

DR Horton

2004 – 2005 (1 year)

SOX documentation & compliance

▾ 1 recommendation

**Ben Clark**
Division CFO at D.R. Horton

I worked with David in Internal Audit and directly supervised him. David full of drive to learn as much as he
could in everything he did. He was a great... Search for people, jobs, companies, and more signed and was
always willing to go the extra... View

Home        Profile      Connections       Jobs      Interests                                    Business Services      Upgrade

### Skills & Endorsements

#### Top Skills

| 10 | Sarbanes-Oxley Act | |
| 7 | Business Process | |
| 6 | Program Management | |
| 6 | Internal Audit | |
| 5 | Strategy | |
| 5 | Leadership | |
| 4 | Process Improvement | |
| 3 | Management | |
| 2 | Auditing | |
| 2 | Internal Controls | |

#### David also knows about...

| 2 | Sarbanes-Oxley | 2 | Finance | 1 | Business Analysis | 1 | Vendor Management |
| 1 | Risk Management | 1 | Project Management | 1 | Telecommunications | 1 | ERP |
| 1 | Business Process... | 1 | Six Sigma | 1 | Financial Analysis | | |

### Education

**Stanford University**
Advanced Project Management, Graduate and Professional Education
2013 – 2014 (expected)

Standford professional curriculum that provides advanced skills on the processes, organizational
structure, and tools to strategically execute projects, programs, and portfolios.

**The University of Texas at Arlington**
Master of Professional Accounting, Accounting
1998 – 2004

Activities and Societies: Division 1 Track & Field Letter Winner

### Honors & Awards

**Additional Honors & Awards**

Academics
• Dean's List
• Alpha Lamda Delta honors fraternity
• High school student council

Sports
• Above and Beyond the Call of Duty, Sam Houston State University

**– A1055 –**

# EXHIBIT 35



Talent Concierge - Call today for next Band, DJ, Musicians, corp Magicians & Caricaturists. | **Read More »**



# Kelly Haltom                                                     3rd

Finance Consultant - Global Product Hierarchy at Verizon

Dallas/Fort Worth Area | Telecommunications

| | |
|---|---|
| Previous | MCI and Verizon Communications, Kinko's, Incorporated, JCPenney Direct Marketing Services/Aegon Direct Marketing Services |
| Education | University of Southern Mississippi |

**Send Kelly InMail** ▼

**127**
connections



www.linkedin.com/pub/kelly-haltom/1/64a/6a7                                 Contact Info

**Background**

### Summary

- Highly analytical professional with strong interpersonal and communication skills
- Proactive individual with over 20 years data mining and analyst experience.
- Dynamically adaptable and excellent working under minimal supervision with a vast array of priorities
- Extensive firsthand knowledge of data mining and analysis via Essbase, Hyperion Essbase, Business Objects, SQL, SAS and various proprietary data warehouse environments.
- In depth experience using Microsoft Excel, Access, PowerPoint, Outlook and Visio.

### Experience

#### Finance Consultant - Global Product Hierarchy

Verizon

December 2011 – Present (2 years 5 months) | Richardson, Texas



Perform numerous product mappings for various systems, websites, projects, acquisitions, SLA's, SOWs, amendments, manual billing efforts and internal organizations in support of accurate revenue reporting, profitability, planning and capital activities. Provide subject matter expert (SME) representation of global product hierarchy in all system integrations, transformations, alignment and departmental initiatives by providing support including: participating in multiple discussions, writing of requirements (BREQ/SREQ, A&D), analyzing all relevant documentation and providing assistance with strategy, implementation, testing and production. Provide support for annual and periodic Global Product Hierarchy structure changes including any necessary remapping of various codes, shift analysis and revenue restatements. Ad-hoc research & analysis and project management activities, including assembling and summarizing data, preparing reports, making presentations of findings, analyses and recommendations to management.

#### Finance Consultant -Expense Modeling and Profitability Analysis

MCI and Verizon Communications

January 2004 – November 2011 (7 years 11 months) | Richardson, Texas

Over 30 Access databases developed for efficiently sorting, creating scenarios, implementing strategies, applying various levels of calculation and formatting data for Information Technology, Real Estate, Human Resources and Network Operational data for Activity Based Management (ABM) model input. Managed annual effort to collect expense driver updates globally for over 1,500 applications across multiple owners and various organizations which included: developing training format and manual, hosting and scheduling training and question/answer sessions with over 100 application owners and recording live training to provide 24 hour training access for allocation of labor, software, hardware, maintenance, project, and business support for information technology expenses. Provided various reporting including trends, cost by location, cost by headcount, integration impact, expense by application, expense by products, segments (line of business), networks for various internal organizations. Compiled and analyzed modeling results, developed presentations and presented results. Provided training and essential summaries of modeling process efforts to various executives and

**People Similar to Kelly**



**Donald D. Lee, CPA**
Consultant - Financial Planning & Analysis a...
Connect

Grow Your Career By Following
**Verizon**



You                    Verizon

McKool, get the latest on Verizon Jobs, News & more!

+ Follow

**People Also Viewed**


**Kevin Vinson**
Technology Consultant Level 4 / State and Local Healthcare at HP Enterprise Services

**Tony Bennett**
Senior Channel Manager - GA, AL, TN and MS at Juniper Networks


**Karl Schmidt**
Owner at KNET Wireless Consulting


**Gus Bottazzi**
Chief Instructor & Owner at Israeli Krav Maga-CT, LLC

**Danielle Hays, PMP**
Project Management Professional

**Edward Walton**
Microsoft Collaboration / Unified Communication Consultant

**Chris Schnell**
Executive Recruiter / Principal at CT Schnell & Associates

**Beth Ngo**
Voice Engineer, Systems Design Specialist & Trainer

**Greg Lay**
Telecommunications Professional

**Jerrell Cotton**
Co-Owner at Times Past

departments. Assisted in ad hoc projects and research for bench marking, product cost model
development and system integrations. Set up and formulated possible scenarios and final output
as well as compiling various data results. Completed ABM and PLM courses at SAS Institute.

Home      Profile      Connections      Jobs      Interests

**How You're Connected**

You      Business Services      Upgrade



John Tyson

John can introduce you to
someone who knows Kelly
Get introduced ›

Kelly Haltom

### Analyst - Corporate Strategy
Kinko's, Incorporated
June 2003 – December 2003 (7 months) | Dallas, Texas

Built and implemented forecasting model for monthly budget of 1,054 retail branches. Developed process
for predicting savings on over 4,500 annual end-of-lease copiers. Gathered, organized, and analyzed
data from various sources using Hyperion Essbase, SAS, and Business Objects for forecasting,
budgeting and calculating actual results for company assets. Built various models for forecasting and
budgeting. Developed decks and presented findings to executive management.

### Project Manager / Financial Analyst – Financial Institutions
JCPenney Direct Marketing Services/Aegon Direct Marketing Services
September 1999 – May 2003 (3 years 9 months) | Plano, Texas

Increased by 80% the efficiency of creating performance reports by streamlining current methods and
developing new processes to mine and collect data. Enriched relationships with clients in maintaining
consistent reporting during software platform changes and mainframe conversions by building alternate
processes prior to system modifications. Annual company cost-savings of $100,000 for idea and
collaborative effort with other operational areas in management and development of Access database to
automate monthly reporting. Monitored and analyzed in journal entries to balance and explain variances
for eight cost centers on a monthly, quarterly and annual basis. Produced over 70 monthly financials
including marketing results, compensation, policies and membership in-force, and persistency.
Developed SAS programs for mining, collecting and calculating data for various types of reporting.
Created Platinum Report queries and forms for manipulating data for ad-hoc reporting and later
converted to QMF. Formulated financial projections of business partner revenue. Completed various ad-
hoc analytical projects and presented results to assist in planning and forecasting of future revenue.
Partnered with Account Managers to build and develop external business partner relations. Internal
liaison between marketing and operational departments within the company for set-up, tests and
implementation of business partner and product marketing. Traveled to and participated in product fairs
to introduce and teach business training for various business partners and their customer service
divisions. Developed product proposals and implementation manuals for various business partners.
Handled complaints and formed resolutions to escalated business partner concerns. Monitored
telemarketing calls with many contracted agencies.

### Marketing Analyst – Target Marketing
JCPenney Direct Marketing Services
August 1997 – August 1999 (2 years 1 month) | Plano, Texas

Increased performance and profitability of various card files by installing and monitoring models for
various products. Built department integrity by heading project to secure limited access drive for
department's development and deliverables. Increased department efficiency of building models through
model documentation. Built various SAS programs for multiple data mining processes. Structured,
organized, scored, sliced, and reported telemarketing data using SAS in a mainframe. Installed models
and monitored their performance. Reconciled monthly telemarketing campaigns for United States and
Canadian business partners. Reported monthly and quarterly campaign scorings for various business
partners. Used proprietary software (Fast Count Easy Access Database Software) to score, report, and
organize data from a database in a Unix environment. Sent and received data files through electronic
transmission. Transferred data among various environments. Used complex Excel spreadsheets to report
and verify data results as well as to create overheads for meeting presentations. Inventoried,
summarized, reconciled, and returned telemarketing data for various partners. Completed SAS
programming courses at SAS Institute.

### Statistical Research Assistant - Benefits
JCPenny Direct Marketing Services
April 1996 – July 1997 (1 year 4 months) | Plano, Texas

Improved customer relations and satisfaction by developing a tracking process for loans and monthly
savings payments to ensure customer delivery. Researched and resolved errors in payment of
customers' savings accounts. Coordinated with vendors for printing and mailing of payments and plan
information. Input manual transactions and EDD information. Legal contact for all officer transfers, loans,
withdrawals, or other transactions involving Penney Common and Preferred Stock. Processed
repurchases of stock and annuities.

### Certifications

### Registered Yoga Teacher

Case 2:13-cv-00900-JRG   Document 64-5   Filed 04/14/14   Page 4 of 4 PageID #:  3803



# EXHIBIT 36



**– A1061 –**

# EXHIBIT 37





5   Solution Selling   5   B2B   5   Salesforce.com   5   Start-ups   4   Call Centers   Adv  **How You're Connected**

See 17+

Home   Profile   Connections   Jobs   Interests                          You   Business Services   Upgrade

### Education

**University of Arkansas at Little Rock**
Master of Business Administration (M.B.A.), Finance, General
1991 – 1993

**Nicholls State University**
Bachelor of Applied Science (B.A.Sc.), Accounting
1980 – 1984

John Tyson

John can introduce you to
someone who knows Mark
Get introduced ›

Mark Madere

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | Upgrade Your Account

LinkedIn Corporation © 2014 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

**– A1064 –**

# EXHIBIT 38



# EXHIBIT 39



| 6 | Process Improvement | 5 | Vendor Management | 4 | Strategic Planning |
| 4 | Strategic Financial... | 4 | Strategic Partnerships | 3 | Managed Services |
| 3 | Managerial Finance | 3 | Pricing | 3 | Business Process... | 2 | Financial Reporting |
| 2 | Variance Analysis | 2 | Budgets | 2 | Wireless | 2 | Accounting |
| 2 | Team Leadership | See 19+ ❯ |

✏️ **Education**

**Washington University in St. Louis - Olin Business School**

1991 – 1993

---

Director - Accounting/AT&T Mobility

**Scott Lane**
Director, Financial Analysis at AT&T
Mobility

---

**How You're Connected**

You

Gavin Hill

Steve Davis

Heather Box

2 more connections can
introduce you to someone who
knows Joe
Get introduced ❯

Joe Tesson

---

**In Common with Joe**

Created with Raphaël 2.1.0

1 Location

---

Help Center   About   Press   Blog   Careers   Advertising   Talent Solutions   Small Business   Mobile   Developers   Publishers   Language

Upgrade Your Account

LinkedIn Corporation © 2014   User Agreement   Privacy Policy   Community Guidelines   Cookie Policy   Copyright Policy   Send Feedback

# EXHIBIT 40

Search for people, jobs, companies, and more...  Advanced

Home   Profile   Connections   Jobs   Interests                Business Services   Upgrade

Are You an Attorney? - We need more attorneys in your area. Apply now for membership. | **Read More »**

## Jeff Hamilton
Software Engineer
Austin, Texas Area | Computer Software

Current      Google, Inc.
Previous     Motorola, PalmSource, inc, Be, inc.
Education    University of Rochester

Send Jeff InMail

**244**
connections

www.linkedin.com/pub/jeff-hamilton/1/99/467

### People Similar to Jeff

**Mark Tamura**
Software Engineer at Lab126
**Connect**

### Grow Your Career By Following
### Google

You      Google

McKool, get the latest on Google Jobs, News & more!

Follow

Background

### Summary

Specialties:Operating systems development for mobile devices.

### Experience

**Software Engineer**                            Google
Google, Inc.
January 2006 – Present (8 years 3 months)
Member of the Android team working on the data storage framework and applications.

**Software Engineer**
Motorola
August 2005 – January 2006 (6 months)

**Software Engineer**
PalmSource, inc                                         ×     PalmSource
November 2001 – August 2005 (3 y
Worked on Palm OS Cobalt and Palm OS for Linux, primarily on data storage frameworks.

**Kernel Engineer**
Be, inc.
May 2001 – November 2001 (7 months)
Worked in a small group to implement USB host support for BeOS.

### Skills & Endorsements

13   Android
4    Software Engineering
2    Linux
2    Mobile Devices

### People Also Viewed

**Dave Burke**
Engineering Director at Google (Android)

**Nick Pelly**
Staff Software Engineer

**Joe Onorato**
Software Engineer at Google

**Rachel Garb**
Staff User Experience Designer, Android/Google

**Jeremy Ellington**
Software Engineer at Google

**Tom Chase**
Lead Technical Recruiter at Google

**Martijn Coenen**
Software engineer at Google

**Mathias Agopian**
Googler

**Adam Powell**
SEO, Analytics, SEM, User Experience Professional

**Rebecca Zavin**
Staff Software Engineer

**– A1071 –**



– A1072 –

# EXHIBIT 41

Case 2:13-cv-00900-JRG   Document 64-11   Filed 04/14/14   Page 2 of 3 PageID #: 3818



## Jingjing Ye
Patent Attorney at Samsung
Dallas/Fort Worth Area | Legal Services

### Join LinkedIn and access Jingjing Ye's full profile. It's free!

As a LinkedIn member, you'll join 250 million other professionals who are sharing connections, ideas, and opportunities.

- See who you and **Jingjing Ye** know in common
- Get introduced to **Jingjing Ye**
- Contact **Jingjing Ye** directly

**View Jingjing's full profile**

---

Jingjing Ye's Overview

| | |
|---|---|
| Current | **Patent Attorney** at **Samsung Telecommunications America** |
| Education | State University of New York at Buffalo |
| | Tsinghua University |
| Connections | **364** connections |

Jingjing Ye's Summary

Samsung in-house patent counsel managing the entire patent portfolio of Samsung Telecommunications America and counseling on all intellectual property related legal issues

- Admitted to the New York Bar
- Registered to practice before the USPTO
- Bachelor of Law, China

Specialties
Intellectual Property Law

Jingjing Ye's Experience

**Patent Attorney**
**Samsung Telecommunications America**
Public Company; 1001-5000 employees; Telecommunications industry
2009– Present (5 years)

Jingjing Ye's Skills & Expertise

Patents     Intellectual Property     Licensing     Patent Prosecution     Patent Litigation

Jingjing Ye's Education

**State University of New York at Buffalo**
J.D./MS in CS

**Tsinghua University**
BSEE/LL.B.
*Activities and Societies:* Piano soloist/accompanist at Tsinghua Student Performing Arts Center

Jingjing Ye's Additional Information

Groups and
Associations:

 Asia House Business & Policy

 HAPPY LAWYERs 8.000+

 IP Lawyers

 Samsung Global

 Shale Gas & Unconventional Gas Innovators

Tsinghua Alumni Association of Dallas-Ft. Worth

Tsinghua University Alumni Group

**– A1074 –**

Case 2:13-cv-00900-JRG   Document 64-11   Filed 04/14/14   Page 3 of 3 PageID #:  3819



Tsinghua University Overseas Alumni

US Patent Attorneys/Agents

University at Buffalo Alumni

Venture Capital Patent and IP Strategy Group

Contact Jingjing for:

- career opportunities
- new ventures
- expertise requests
- reference requests

- consulting offers
- job inquiries
- business deals
- getting back in touch

View Jingjing Ye's full profile to...

- See who you and **Jingjing Ye** know in common
- Get introduced to **Jingjing Ye**
- Contact **Jingjing Ye** directly

**View Jingjing's full profile**

Not the Jingjing Ye you were looking for? View more »

LinkedIn member directory - Browse members by countryabcdefghijklmnopqrstuvwxyzmore

LinkedIn Corporation © 2014

**– A1075 –**

# EXHIBIT 42

1    **Courtland L. Reichman (SBN 268873)**
     **creichman@mckoolsmithhennigan.com**
2    **McKool Smith Hennigan, P.C.**
     **255 Shoreline Drive Suite 510**
3    **Redwood Shores, CA 94065**
     **(650) 394-1400**
4    **(650) 394-1422 (facsimile)**

5    **ADDITIONAL COUNSEL LISTED**
     **ON SIGNATURE PAGE**
6

7    **Attorneys for Defendants**
     **Rockstar Consortium U.S. LP and**
8    **MobileStar Technologies LLC**

9                          **UNITED STATES DISTRICT COURT**

10                         **NORTHERN DISTRICT OF CALIFORNIA**

11                                        **OAKLAND**

12   Google, Inc.                          )
13                  Plaintiff,             )          Case No. 4:13-cv-5933-CW
                                           )
14          vs.                            )          DEFENDANTS ROCKSTAR
                                           )          CONSORTIUM U.S. LP AND
15   Rockstar Consortium U.S. LP and MobileStar )    MOBILESTAR TECHNOLOGIES LLC'S
     Technologies LLC                      )
16                                         )          STATEMENT OF RECENT DECISION
                   Defendants.             )          [N.D. Cal. L.R. 7-3(d)(2)]
17                                         )
18                                         )
                                           )
19                                         )          HON. CLAUDIA WILKEN
                                           )
20                                         )
                                           )
21   _____)

22

23

24

25

26

27

28

     STATEMENT OF RECENT DECISION [N.D. Cal. L.R. 7-3(d)(2)]
     13-CV-5933

1    Pursuant to Local Rule 7-3(d)(2), Defendants Rockstar Consortium U.S. LP and MobileStar

2  Technologies LLC respectfully submit this Statement of Recent Decision calling the Court's

3  attention to the Federal Circuit's recent decision in *Microsoft Corp. v. DataTern, Inc.*, No. 2013-

4  1184, and *SAP AG, et. al. v. DataTern, Inc.*, No. 2013-1185, 2014 U.S. App. LEXIS 6219 (Fed. Cir.

5  Apr. 4, 2014) (op. attached).  *DataTern* is directly relevant to multiple issues in the pending motion

6  to dismiss.

7    If it would assist the Court, Defendants would be pleased to file a short, supplemental brief

8  explaining *DataTern*'s effect on Defendants' motion to dismiss.

9

10                                             Respectfully submitted,

11

   Dated this 8th day of April, 2014.

12                                   By:    */s/ Joshua W. Budwin*
                                            Courtland L. Reichman (SBN 268873)
13                                          MCKOOL SMITH HENNIGAN, P.C.
                                            255 Shoreline Drive Suite 510
14                                          Redwood Shores, CA 94065
                                            (650) 394-1400
15                                          (650) 394-1422 (facsimile)

16
                                            Mike McKool (Admitted Pro Hac Vice)
17                                          mmckool@McKoolSmith.com
                                            Douglas A. Cawley (Admitted Pro Hac
18                                          Vice)
                                            dcawley@McKoolSmith.com
19                                          Ted Stevenson III (Admitted Pro Hac Vice)
                                            tstevenson@McKoolSmith.com
20                                          David Sochia (Admitted Pro Hac Vice)
                                            dsochia@McKoolSmith.com
21                                          McKool Smith, P.C.
                                            300 Crescent Court, Suite 1500
22                                          Dallas, TX 75201
                                            (214) 978-4000
23                                          (214) 978-4044 (facsimile)
24

25                                          Joshua W. Budwin (Admitted Pro Hac Vice)
                                            jbudwin@McKoolSmith.com
26                                          McKool Smith, P.C.
                                            300 W. 6th Street, Suite 1700
27                                          Austin, TX 78701

28  STATEMENT OF RECENT DECISION [N.D. Cal. L.R. 7-3(d)(2)]
   13-CV-5933
                                    -1-

1

(512) 692-8700
(512) 692-8744 (facsimile)

2

3

**ATTORNEYS FOR Defendants**
**Rockstar Consortium U.S. LP and**
**MobileStar Technologies LLC**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATEMENT OF RECENT DECISION [N.D. Cal. L.R. 7-3(d)(2)]
13-CV-5933

-2-

# EXHIBIT 43

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  Courtland L. Reichman (SBN 268873)
   creichman@mckoolsmithhennigan.com
2  MCKOOL SMITH HENNIGAN P.C.
   255 Shoreline Drive, Suite 510
3  Redwood Shores, CA 94065
   Telephone: (650) 394-1400
4  Fax: (650) 394-1422

5  ADDITIONAL COUNSEL LISTED ON
   SIGNATURE PAGE
6
7  Attorneys for Defendants Rockstar
   Consortium US LP and MobileStar
   Technologies LLC
8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                    **OAKLAND DIVISION**

| 12 | Google, Inc. | ) | Case No. 13-cv-5933 CW |
| 13 | Plaintiff, | ) | |
| 14 | vs. | ) | **DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P.** |
| 15 | Rockstar Consortium U.S. LP and MobileStar Technologies LLC | ) | **12(b)(2) AND 12(b)(3) FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO** |
| 16 | Defendants. | ) | **DECLINE EXERCISING** |
| 17 | | ) | **JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT** |
| 18 | | ) | |
| 19 | | ) | Date: March 13, 2014 |
| 20 | | ) | Time: 2:00 p.m. Courtroom: TBD |
| 21 | | ) | Judge: Hon. Claudia Wilken |
| 22 | | ) | |

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE
EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT—Case No. 3:13-cv-5933-CW

McKool 960087v1

**– A1081 –**

TO PLAINTIFF GOOGLE INC. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, March 13, 2014, at 2:00 p.m., or as soon thereafter as it may be heard, Defendants Rockstar Consortium U.S. LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar) respectfully will move, and hereby do move, to dismiss Plaintiff Google Inc.'s Complaint for Declaratory Judgment of Non-Infringement (D.I. 1) filed on December 23, 2013. Defendants Rockstar and MobileStar respectfully bring this motion pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure upon the grounds that this Court lacks personal jurisdiction over Defendants and this forum is an improper venue; Defendants also maintain that this Court should decline exercising jurisdiction under the Declaratory Judgment Act. This motion is supported by the attached Memorandum of Points and Authorities, the accompanying Declaration of Afzal Dean, the record in this matter, and any other argument that the Court may accept at the hearing.

**RELIEF REQUESTED**

Defendants Rockstar and MobileStar seek an order granting their motion to dismiss Plaintiff Google Inc.'s Complaint for lack of personal jurisdiction and improper venue and to decline exercising jurisdiction under the Declaratory Judgment Act.

Respectfully submitted,

Dated January 23, 2014.

By: */s/ Courtland Reichman*
Courtland L. Reichman (SBN 268873)
McKool Smith Hennigan, P.C.
255 Shoreline Drive Suite 510
Redwood Shores, CA 94065
(650) 394-1400
(650) 394-1422 (facsimile)

Mike McKool (Pro Hac Vice Application to be filed)
mmckool@mckoolsmith.com
Douglas A. Cawley (Pro Hac Vice Application to be filed)

-ii-

McKool 960087v1

**– A1082 –**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

dcawley@mckoolsmith.com
Ted Stevenson III (Pro Hac Vice Application to be filed)
tstevenson@mckoolsmith.com
David Sochia (Pro Hac Vice Application filed)
dsochia@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
(214) 978-4000
(214) 978-4044 (facsimile)

Attorneys For Defendants
Rockstar Consortium U.S. LP and
MobileStar Technologies LLC

-iii-

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**TABLE OF CONTENTS**

I. Introduction And Summary Of The Argument ........................................................- 1 -

    A.    Google's Theory Of Personal Jurisdiction Conflicts With Controlling
           Precedent................................................................................................- 1 -

    B.    This Suit Was Filed In An Improper Venue .............................................- 3 -

    C.    The Court Should Exercise Its Discretion And Refuse Jurisdiction.........- 3 -

II. Statement of Facts ...............................................................................................- 5 -

    A.    Rockstar And MobileStar's First-Filed Suit In the Eastern District of Texas ..........- 5 -

    B.    MobileStar and Rockstar Are Texas Companies With Few California Contacts .....- 5 -

III. This Court Lacks Personal Jurisdiction Over MobileStar ...................................- 6 -

    A.    This Court Has Neither General Nor Specific Personal Jurisdiction Over
           Mobilestar .............................................................................................- 7 -

    B.    Lacking Jurisdiction Over MobileStar, Google's Complaint Must Be
           Dismissed ..............................................................................................- 8 -

IV. This Court Lacks Personal Jurisdiction Over Rockstar ....................................- 10 -

    A.    Rockstar's Limited Patent Discussions Do Not Subject It To Specific
           Jurisdiction In California .......................................................................- 10 -

    B.    Rockstar's Minimal Contacts With California Are Permissible Patent
           Licensing Discussions That Do Not Subject Rockstar To Specific Jurisdiction ....- 11 -

    C.    Rockstar's Sporadic And Insubstantial Contacts With California Do Not Give
           Rise To General Jurisdiction.................................................................- 13 -

        1.    Rockstar's is a Texas entity and does not have contacts with California
               that "approximate a physical presence".....................................- 13 -

        2.    Rockstar's lone, part-time, independent contractor in California does
               not subject Rockstar to general jurisdiction................................- 14 -

        3.    Revenue generated from non-exclusive licensees located in California
               is insufficient to justify general jurisdiction ...............................- 15 -

        4.    The contacts of Rockstar's shareholders may not be imputed to
               Rockstar .....................................................................................- 15 -

V. This District Is Not The Proper Venue For This Suit .........................................- 16 -

VI. The Court Should Decline to Exercise Jurisdiction Over Google's Claims...........- 17 -

    A.    The Court Has Discretion To Decline Jurisdiction Over Declaratory Claims........- 17 -

    B.    The Court Should Decline Jurisdiction Because Google's Claims Do Not
           Meet The Purpose Of The Declaratory Judgment Act..........................- 18 -

-iv-

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1.   The Court should decline jurisdiction because Google's complaint is an attempt at forum shopping ...............................................................- 18 -

2.   Google's claims are an inefficient use of judicial resources.......................- 19 -

C.   The Court Should Decline to Assert Jurisdiction Under the First-Filed Rule ........- 20 -

1.   The Texas Actions are first-filed and should be favored............................- 20 -

2.   Judicial efficiency and interests of justice favor the Texas Actions...........- 22 -

VII. Conclusion...................................................................................................- 24 -

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

## TABLE OF AUTHORITIES

3D Sys. Inc. v. Aarotech Labs., Inc., 160 F.3d 1373(Fed. Cir. 1998)……………….…..15, 20

A123 Sys. v. Hydro-Quebec, 626 F.3d 1213 (Fed. Cir. 2010)……………………………..9, 13

Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419 (4th Cir. 1998). ………….…..5,9

Arrowhead Indus. Water, Inc., 846 F.2d ……………………………………………….. 23

Autogenomics Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012 (Fed. Cir. 2009)..3, 7, 11,12,15,17

Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324 (Fed. Cir. 2008) …......1,6,8,10,15,16

Campbell Pet Co. v. Miale, 542 F.3d 879 (Fed. Cir. 2008)……….…………………………12, 16

Catalyst Assets LLC v. Life Techs. Corp., 2012 U.S. Dist. LEXIS 84347, *7-8

   (N.D. Cal. June 17, 2012) ……………………………………………………….....22, 23

Cf. Continental Grain Co. v. The FBL-585, 364 U.S. 19 (1960) ……………………………...4, 8

Daimler AG v. Bauman, No. 11-965, slip op. 14 n.11 (U.S. Jan. 14, 2014)…………..... 6,7,17,19

E.E.O.C. v. Peabody Western Coal Co., 400 F.3d 774 (9th Cir. 2005)…………….... …….6, 9, 13

Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341 (Fed. Cir. 2005)

   (quoting Wilton v. Seven Falls Co., 515 U.S. 277 (1995)……………….…………3, 8,21,22

EMC Corp. v. Norand Corp., 89 F.3d 807 (Fed. Cir. 1996)…………….……………………21

Futurewei Techs., Inc. v. Acacia Research Corp., 737 F.3d 704 (Fed. Cir. 2013) …………….25

Gen. Tire & Rubber Co. v. Watkins, 373 F.2d 361 (4th Cir. 1967)……………………….….4, 9

Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931 (Fed. Cir. 1993)……………………….…… 24

Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408 (1984)………………7, 12, 18

Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800 (9th Cir. 2002)…………………...4, 8, 23

IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008,

   (N.D. Cal. 2000) (citing CP Nat'l. Corp. v. Bonneville Power Admin., 928 F.2d 905

   (9thCir.1991))…………………………………………………….……………....…8,13

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)………………………………...7,8,11,12

Intersearch Worldwide, Ltd. v. Intersearch Group, Inc., 544 F.Supp.2d 949, 959

   (N.D. Cal.2008)…………………………………………………………………… 25

Juniper Networks, Inc. v. SSL Servs., LLC, Case No. 08-cv-5758, 2009 U.S. Dist. LEXIS

   112399, *11-12 (N.D. Cal. Nov. 16, 2009)…………………………………………11,16

Kescoli v. Babbitt, 101 F.3d 1304 (9th Cir. 1996)……………………………………...… 14

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

Kyocera Communs., Inc. v. ESS Techs. Int'l, Inc., 2012 U.S. Dist. LEXIS 89267, *7-8 (N.D. Cal. June 27, 2012)……………………………………………………...……..18, 22, 24

Merial Ltd. v. Cipla Ltd., 681 F.3d 1283………………………………………………4,9,24,26

Microchip Tech., Inc. v. United Module Corp., CV-10-04241-LHK, 2011 U.S. Dist. LEXIS 73276, 2011 WL 2669627 (N.D. Cal. July 7, 2011 …………………………….…….. 25, 26

Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir.1982)……………………25

Proofpoint, Inc. v. InNova Patent Licensing, LLC, 2011 U.S. Dist. LEXIS 120343, (N.D. Cal. Oct. 17, 2011)………………………………………………………………………..25, 26

Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237(1952)………………….……….. 21

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (U.S. 1996)…………………………...…..21

Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785 (Fed. Cir. 2011)…………………..8,10, 12,15

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355
(Fed. Cir. 1988) ……………………………………………………..……..…...7, 8, 10, 12,14

Serco Servs. Co., L.P. v. Kelley Co., 51 F.3d 1037(Fed. Cir. 1995)……………...…………..23

Smugmug, Inc. v. Virtual Photo Store LLC, Case No. 09-cv-2255 CW, 2009 U.S. Dist. LEXIS 112400, *11 (N.D. Cal. Nov. 16, 2009)……………………………………….....10,15, 17

Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271 (Fed. Cir. 2007)) …………...21

Teva Pharms. USA, Inc. v. Eisai Co., 620 F.3d 1341 (Fed. Cir. 2010)……………………..4, 8, 23

Vanguard Prods. Group, Inc. v. Protex Int'l Corp., No. 05 C 6310, 2006 WL 695700 ……….4, 9

**Other Authorities**

28 U.S.C. §§ 1391(b) and (c) …………………………………………………...…….3,16, 20

Cal. Civ. Proc. Code § 410.10…………………………………………...……………………7, 11

Fed. R. Civ. P. 12(b)(2) …………………………………………………………………..6, 11

Fed. R. Civ. P. 19(b)…………..……………………………………………………………9,13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    Introduction And Summary Of The Argument

Google filed this suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, to determine whether its "Android platform" and related products infringe the patents-in-suit. But Google has sued two parties with no material California ties, and invites the Court to resolve a dispute that was already pending—and will *remain* pending—in a proper forum in Texas. Google is the "natural" defendant, and its *second*-filed declaratory action cannot trump the "natural" plaintiffs' *first*-filed action in Texas. Google could have asserted its claims as *defenses* in the preexisting Eastern District of Texas action, and there was no legitimate reason for Google to file its own duplicative action here.

### A.    Google's Theory Of Personal Jurisdiction Conflicts With Controlling Precedent

According to Google, "Rockstar" (defined as including MobileStar) engages in certain business activities in California, including meetings, providing notice of patent rights and discussing licensing opportunities. Compl. 3-4. Even if true, as a matter of law, such limited contacts cannot establish general or specific jurisdiction over either Rockstar or MobileStar. While Google's complaint defines "Rockstar" as including MobileStar, each are separate legal entities, whose contacts with California must be separately examined. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) ("[e]ach defendant's contacts with the forum State must be assessed individually"). ████████████████████████████████████████
████████████████████████████████████████████ Yet, MobileStar is an indispensable party to this litigation—it is the owner of five of the seven patents-in-suit and the exclusive licensee of the other two patents. In the absence of jurisdiction as to MobileStar, this action must be dismissed. *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005) (If an indispensable party cannot be joined, the action must be dismissed).

DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT—Case No. 3:13-cv-5933-CW

McKool 960087v1

– A1088 –

Moreover, general jurisdiction requires "affiliations 'so "continuous and systematic" as to render [the foreign corporation] *essentially at home in the forum State*,' *i.e.*, comparable to a *domestic enterprise in that State*." *Daimler AG v. Bauman*, No. 11-965, slip op. 14 n.11 (U.S. Jan. 14, 2014) (emphases added); *see also id.* at 20 (specifically rejecting Google's lead theory that it is sufficient to assert "continuous and systematic" contacts (Compl. 3)—instead, the proper inquiry is whether those contacts are "*so* 'continuous and systematic' *as to render [the corporation] at home in the forum State*") (emphasis added). In only "exceptional case[s]" will this standard sweep in corporations like Rockstar and MobileStar from outside their "formal place of incorporation or principal place of business" (*id.* at 20 n.19), and this is no such "exceptional" case. Rockstar and MobileStar do not bear a single hallmark of a California enterprise, and there is no good-faith basis for asserting they are effectively *California corporations*. Rockstar's and MobileStar's limited in-state contacts are the same kind of contacts that arise in routine business dealings. If a handful of meetings, visits, and engagements qualify for "all-purpose" jurisdiction, it is difficult to imagine any business with a nationwide practice avoiding "general jurisdiction" in every State. That is directly contrary to general jurisdiction's "less dominant" role in "the contemporary scheme." *Id.* at 14.[1]

Nor does Rockstar's and MobileStar's so-called "enforcement campaign" establish specific jurisdiction. Compl. 3. A patentee is afforded "sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe,* 148 F.3d at 1360-61. The ordinary activities of "offer[ing]…a license," sending "cease-and-desist letter[s]," and "initiat[ing] settlement negotiations" are per se insufficient under the controlling framework. *Id.* Google's allegations are limited to exactly the kind of "efforts" that are *not* "to be considered for

---

[1] Google's allegation that "Rockstar's licensing and enforcement efforts in California have generated substantial revenues" is also incompatible with circuit law: the in-state contacts of *licensees* are not "'constitutionally cognizable' for purposes of jurisdiction," and thus "any financial benefits accruing to [Rockstar and MobileStar] from [their] licensees' relations with [California] are irrelevant." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998).

-- 2 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  establishing specific personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d
2  1012, 1020 (Fed. Cir. 2009).[2]

3  **B.   This Suit Was Filed In An Improper Venue**

4  Contrary to Google's contention, this is *not* a "judicial district in which any defendant
5  resides," since Rockstar and MobileStar each reside *in Texas*. 28 U.S.C. § 1391(b)(1). Nor did a
6  "substantial part" of any act underlying "the claim" occur in California (*id.* § 1391(b)(2)), since "the
7  claim" is *patent infringement*—and Rockstar and MobileStar's effort to "enforce[]" these patent
8  claims is ongoing *in Texas*. *Autogenomics*, 566 F.3d at 1020 (distinguishing patent litigation from
9
10 pre-enforcement efforts to "commercialize" a patent). Finally, the Eastern District of Texas is *both* a
11 "district in which [this] action may otherwise be brought" and a "judicial district," unlike this one,
12 "in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b)(3). The
13 only reason this action was filed in this venue was because it was Google's preferred forum—
14 Google's preference, however, is not a relevant consideration under the statutory scheme.

15 **C.   The Court Should Exercise Its Discretion And Refuse Jurisdiction**

16 This Court has "unique and substantial discretion" to refuse jurisdiction under the
17 Declaratory Judgment Act. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir.
18 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Congress authorized
19 declaratory relief so that "natural" defendants (like Google here) would not be forced into the
20 intolerable position of endlessly awaiting a suit that could establish their rights. *See, e.g.*, *Electronics
21 for Imaging*, 394 F.3d at 1345. Here, however, there is no need for § 2201 relief because Google is
22 not "'await[ing] the commencement of legal action by the other side.'" *Id.* Google, the "natural"
23
24

[2] Google also asserts that "Rockstar's shareholders" have substantial California contacts (Compl. 3), which might be relevant if this suit were against—*Rockstar's shareholders*. Rockstar and MobileStar are separate corporate entities with their own corporate identities. Unless Google wishes to pierce the corporate veil—a theory unmentioned anywhere in its complaint—there is no rule of law or logic that subjects a corporation to jurisdiction anywhere its shareholders can be sued.

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

defendant, has attempted to *avoid* the preexisting "legal actions" in Texas in favor of filing a redundant suit in this Court.

This case thus accomplishes exactly *none* of the Act's objectives: by favoring Google's second-filed declaratory action over the first-filed action in the Eastern District of Texas, the court would (i) embrace duplicative litigation in multiple forums; (ii) create an unnecessary risk of inconsistent verdicts; and (iii) reward Google, the "natural" defendant, for its explicit act of forum-shopping (while imposing undue burdens on Rockstar and MobileStar, the "natural" plaintiffs, for electing a Texas forum where all seven actions could be litigated in a single district). *See, e.g.*, *Teva Pharms. USA, Inc. v. Eisai Co.*, 620 F.3d 1341, 1349 (Fed. Cir. 2010); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002).

This type of duplicative, two-track litigation is not an acceptable use of judicial or party resources. Rockstar and MobileStar, the "natural" plaintiffs, chose Texas as an appropriate forum for the pending litigation; it is a forum that all parties can access fairly, and it is one in which an open court will fully resolve the very dispute Google wishes to relitigate here. *Cf. Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967) (rejecting "extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues"). Once Rockstar and MobileStar filed their actions in Texas, there was no legitimate reason for Google to file its own duplicative action here. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). "The Declaratory Judgment Act is not a tool to be used by potential litigants for the purpose of securing the forum." *Vanguard Prods. Group, Inc. v. Protex Int'l Corp.*, No. 05 C 6310, 2006 WL 695700, at

-- 4 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

*5 (N.D. Ill. Mar. 14, 2006); *accord Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998).

\*     \*   \*

For any of these independent reasons, there is no basis for invoking the Court's jurisdiction over this duplicative, second-filed, declaratory action. The Court should dismiss Google's complaint and permit the dispute to be resolved in the ordinary course—the "seven lawsuits" Google itself recognizes (Compl. 1) have already been filed in the Eastern District of Texas.

**II.      Statement of Facts**

**A.      Rockstar And MobileStar's First-Filed Suit In the Eastern District of Texas**

On October 31, 2013, Rockstar and MobileStar filed a series of actions in the Eastern District of Texas alleging that several companies—ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE—infringed seven patents. ("Texas Actions"); *see* Exh. A-G. MobileStar owns five of the seven patents and is the exclusive licensee (from Rockstar) of the other two patents. Declaration of Afzal Dean ("Dean Decl.") at ¶¶ 5, 15, 24. The same seven patents are at-issue in Google's complaint. Compl. 2.

Google did not seek to intervene in the Texas Actions.  Instead, it filed this declaratory-judgment suit on December 23, 2013, nearly two months after the Texas Actions were filed. On December 31, 2013, Rockstar and MobileStar added Google as a defendant in their already-pending suit against Samsung. Exh. H. Google's answer is due in Texas on February 17, 2014.

**B.      MobileStar and Rockstar Are Texas Companies With Few California Contacts**

Rockstar and MobileStar are both Delaware entities with principal places of business in Plano, Texas. Dean Decl. at ¶¶ 5, 15. Rockstar is MobileStar's parent. *Id.* at ¶ 15.

Rockstar and MobileStar's Texas roots are long-standing and substantial. Rockstar and MobileStar acquired the patents-in-suit from Nortel Networks, a company that went bankrupt in 2011. Nortel's U.S. headquarters was in Richardson, Texas. *Id.* at ¶ 27. As explained in more detail

-- 5 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   in the attendant declaration, Nortel had a substantial presence in Texas prior to its bankruptcy, and

2   many of Rockstar's and MobileStar's current employees are former Nortel employees. *Id.*

3       Neither Rockstar nor MobileStar is licensed to do business in California. *Id.* at ¶¶ 6-9, 16, 22-

4   24, 29-33. They have no agent for service of process in California, have never signed any contracts

5   in California, have never owned real or personal property in California, have never maintained

6   offices in California, and have never maintained any records in California. *Id.* They pay no

7   California taxes and do not have any employees, officers, or board members who live in California.

8   *Id.* They have not filed any lawsuits in California, have not engaged in extra-judicial enforcement

9   activities in California, ████████████████████████████

10

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████

15

16      Rockstar's California contacts are limited to the following:

17      • ███████████████████████████████

18      • ████████████████████████████████████████████

19  ████████████████████████████████

20      • A single part-time independent contractor who lives in California. *Id.* at ¶ 34.
    ████████████████████████████████████████████
21  ████████████████████████

22      • The presence of at least one shareholder (Apple Inc.) in California. *Id.* at ¶ 35.
    However, Rockstar's shareholders do not direct or control Rockstar's licensing efforts—
23  these activities are directed and controlled by Rockstar's management team. *Id.*

24      • ████████████████████████████████████████████
25  ████████████████████████████████

26  **III.  This Court Lacks Personal Jurisdiction Over MobileStar**

27      Fed. R. Civ. P. 12(b)(2) requires that a court dismiss a defendant when it lacks personal

28  jurisdiction over that defendant. Jurisdiction, whether general or specific, is a question of Federal

-- 6 --

McKool 960087v1

1  Circuit law. *Autogenomics*, 566 F.3d at 1016 (the "jurisdiction issue is intimately involved with the
2  substance of the patent laws.")

3  Determining whether jurisdiction exists over a foreign defendant involves two inquiries:
4  whether a forum state's long-arm statute permits service of process and whether assertion of
5  personal jurisdiction violates due process. *Id.* at 1017. Here, because California's long-arm statue is
6  co-extensive with the limits of due process, the only inquiry is whether the exercise of personal
7  jurisdiction comports with due process. *Cal. Civ. Proc. Code § 410.10*. Due process requires that the
8  defendant have "certain minimum contacts with the [forum] such that the maintenance of the suit
9  does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,*
10 326 U.S. 310, 316 (1945).

11 There are two bases for personal jurisdiction, general and specific. General jurisdiction
12 requires that the defendant have "continuous and systematic contacts with the forum state and
13 confers personal jurisdiction even when the cause of action has no relationship with those contacts."
14 *Autogenomics,* 566 F.3d at 1017. Specific jurisdiction may be exercised subject to a three-part test
15 where (1) the defendant "purposefully directed" activities at residents of the forum, (2) the claim
16 "arises out of" or "relates to" those activities, provided that (3) personal jurisdiction is both
17 reasonable and fair. *Id.* at 1018.

18 **A.    This Court Has Neither General Nor Specific Personal Jurisdiction Over
          Mobilestar**

19 As for general jurisdiction, there is no good-faith basis for alleging that MobileStar is
20 equivalent to a "domestic enterprise" in California. *Daimler*, slip op. 14 n.11. MobileStar is a Texas
21 enterprise with has no meaningful connection to California. *See* Statement of Facts, *supra*. There is
22 no general jurisdiction over MobileStar in California. *Helicopteros Nacionales De Colombia, S.A. v.
23 Hall*, 466 U.S. 408, 411 (1984).

-- 7 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1

2

3    ▆▆▆ fails to establish the type of "minimum contacts" required for specific jurisdiction over

4    MobileStar in California. *Int'l Shoe,* 326 U.S. at 316; *Red Wing Shoe*, 148 F.3d at 1360-61 ("A

5    patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who

6    happens to be located there of suspected infringement.").

7

8

9    ▆▆▆▆ Dean Decl. at ¶ 13. This type of discussion is *per se* inadequate under *Red*

10   *Wing Shoe* to establish the "minimum contacts" necessary to find specific jurisdiction. Moreover, a

11   single act of travel to the forum state cannot create specific jurisdiction in that state. *Radio Sys.*

12   *Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (multiple licensing meetings in forum

13   state insufficient to establish specific jurisdiction); *Autogenomics,* 566 F.3d at 1021 (travel to forum

14   state to negotiate patent license insufficient to establish specific jurisdiction).

15       Nor may Google impute Rockstar's alleged California contacts to MobileStar in order to

16   establish specific jurisdiction. *Avocent*, 552 F.3d at 1338 (rejecting complaint as "fatally deficient"

17   and refusing jurisdiction where plaintiff failed to include any allegations for imputing defendants'

18   contacts to related corporate entities). MobileStar and Rockstar are separate corporate entities and

19   there is no basis for attributing one entity's contacts to the other. *Id*. at 1329 ("[e]ach defendant's

20   contacts with the forum State must be assessed individually").

21

22       **B.    Lacking Jurisdiction Over MobileStar, Google's Complaint Must Be Dismissed**

23       A necessary party is one "having an interest in the controversy, and who ought to be made [a]

24   party, in order that the court may act on that rule which requires it to decide and finally determine

25   the entire controversy, and do complete justice, by adjusting all the rights involved in it." *IBC*

26   *Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D.

27   Cal. 2000) (citing *CP Nat'l. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991)).

28

-- 8 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

"In general, . . . an accused infringer must likewise join both the exclusive licensee and the patentee in a declaratory action" because both are likely to be necessary parties. *See, e.g., A123 Sys. v. Hydro-Quebec*, 626 F.3d 1213, 1217, (Fed. Cir. 2010). MobileStar owns five of the seven patents-in-suit, and is the exclusive licensee of the other two patents. Dean Decl. at ¶¶ 5, 15, 24. MobileStar undoubtedly has an interest in the controversy and ought to be made a party—MobileStar is therefore a necessary party to Google's complaint.

Lacking jurisdiction over MobileStar, a necessary party, the Court must thus determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b); *see also Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998) (applying Rule 19 to a declaratory judgment action and holding "[w]hether a party is indispensable under Rule 19(b) is a matter of regional circuit law"). If a party is indispensable but cannot be joined, the action must be dismissed. *See E.E.O.C. v. Peabody Western Coal Co*., 400 F.3d 774, 779-80 (9th Cir. 2005).

Rule 19(b) establishes the factors courts can examine to determine whether a case should be dismissed for the inability to join a necessary party:

> (1) prejudice to any party or to any absent party; (2) whether the relief can be shaped to lessen the prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternate forum.

*Kescoli v. Babbitt*, 101 F.3d 1304, 1310-11 (9th Cir. 1996). Without a doubt, (1) MobileStar would be prejudiced if the patents it owns (or is the exclusive licensee of) are declared invalid or non-infringed without its presence; (2) no relief can be shaped to lessen this prejudice; (3) no adequate remedy for Google could be awarded as to any of the seven patents-at-issue without the owner and exclusive licensee as a party; and (4) an alternate forum exists in the already-filed Texas Actions.

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**IV.**  **This Court Lacks Personal Jurisdiction Over Rockstar**

    **A.**  **Rockstar's Limited Patent Discussions Do Not Subject It To Specific Jurisdiction In California**

Google alleges that Rockstar should be subject to specific jurisdiction in California because it engages in certain business activities in California, including discussions regarding its patents. Compl. 3-4. But Rockstar has minimal California contacts related to discussions of its patents. *See* Statement of Facts, *supra.*

These limited patent discussions do not give rise to specific jurisdiction in California. *Red Wing Shoe.,* 148 F.3d at 1361 ("Standards of fairness demand that [the patentee] be insulated from personal jurisdiction when its only contacts with that forum were efforts to give proper notice of its patent rights."). The Federal Circuit has made clear that, for purposes of specific jurisdiction, "enforcement activities" do not include warning others located in the forum state of suspected infringement, offering licenses to the patent, or sending cease-and-desist letters. *Radio Sys.,* 638 F.3d at 789 (patentee's numerous letters, phone calls, and meetings with plaintiff in forum state relating to licensing insufficient for specific jurisdiction); *Avocent,* 552 F.3d at 1340 (infringement letters sent to forum state insufficient for specific jurisdiction); *Autogenomics,* 566 F.3d at 1021 (traveling to forum state to negotiate a patent license and having ten licensees in the forum insufficient for specific jurisdiction); *Smugmug, Inc. v. Virtual Photo Store LLC,* Case No. 09-cv-2255 CW, 2009

_____

*See Red Wing Shoe,* 148 F.3d at 1361 (holding no specific jurisdiction even if patentee had 34 licensees doing business in the forum state because seeking licenses does not confer jurisdiction and licensees' contacts with forum may not be attributed to patentee).

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  U.S. Dist. LEXIS 112400, *11 (N.D. Cal. Nov. 16, 2009) (J. Wilken) (letters sent by patentee to

2  California companies seeking to discuss potential licensing terms "are not the type of enforcement

3  activity envisioned in *Autogenomics,* but rather Defendant's efforts at commercialization; they

4  cannot be used to support specific jurisdiction").

5      **B.**    **Rockstar's Minimal Contacts With California Are Permissible Patent Licensing**

6          **Discussions That Do Not Subject Rockstar To Specific Jurisdiction**

7        Google's allegations regarding Rockstar's "enforcement activities" pertain only to

8  permissible licensing activity (*i.e.,* notifying others of Rockstar's patent rights) and nothing more.

9  Compl. 3-4. Without evidence of impermissible "other activities" beyond licensing or generic

10  discussions related to the enforcement (or defense of the validity) of the patents-in-suit, the Federal

11  Circuit has refused to find specific jurisdiction over a declaratory judgment defendant. *Avocent,* 552

12  F.3d at 1334. Examples of "other activities" that would subject a party to specific jurisdiction

13  include initiating judicial or extrajudicial patent enforcement within the forum, or entering into an

14  exclusive license agreement in the forum, or entering into any other undertaking which imposes

15  obligations with a party residing in or regularly doing business in the forum. *Id.*

16        None of these "other activities" are present here. Rockstar has not filed any lawsuits in

17  California asserting the patents-in-suit. Dean Decl. at ¶ 22. The fact that Rockstar previously

18  enforced the patents-in-suit by filing suit in the Eastern District of Texas has no relevance here.

19  *Avocent,* 552 F.3d at 1339 ("We are aware of no precedent that holds that the filing of a suit in a

20  particular state subjects that party to specific personal jurisdiction everywhere else"); *Juniper*

21  *Networks, Inc. v. SSL Servs., LLC,* Case No. 08-cv-5758, 2009 U.S. Dist. LEXIS 112399, *11-12

22  (N.D. Cal. Nov. 16, 2009), *aff'd* 2010 U.S. App. LEXIS 25498 (Fed. Cir. Dec. 13, 2010) (suing a

23  California entity in Texas is insufficient to confer specific jurisdiction in California).

24        Rockstar does not engage in the types of extra-judicial enforcement activity contemplated by

25  the Federal Circuit as giving rise to specific jurisdiction, nor does Google make any such allegation.

-- 11 --

McKool 960087v1

Rockstar has not engaged any third-parties in attempting to remove allegedly infringing products from a trade show in the forum state, as was the case in *Campbell Pet Co. v. Miale,* 542 F.3d 879, 888 (Fed. Cir. 2008); Dean Decl. at ¶ 23. Contrary to Google's assertions, █████████ █████████████████████ and in filing the Texas Actions against several third-parties was not to "discourage" unnamed companies "from continuing to use Google's Android platform in their devices, and to interfere with Google's business relationships." Compl. 4. But, even if this was Rockstar's intent, it would be irrelevant to specific jurisdiction. *See Avocent,* 552 F.3d at 1340 (rejecting plaintiff's argument that patentees' infringement letters sent to a third-party retailer provided specific jurisdiction because "the intended effect was to slow the sale of plaintiff's allegedly infringing products").

████████████████████████████████████████████ Dean Decl. at ¶ 24. This is another example of the "other activities" beyond licensing that would support specific jurisdiction. *See Avocent,* 552 F.3d at 1334-34 (collecting cases finding specific jurisdiction based on presence in the forum of an exclusive licensee or exclusive distributor). ██████████████ ██████████████████████████████████ ████████████████ ████████████████ ████████████████████████████████ █████████████████████████████████ █████████████████████████████████ ██████████████████████████ *See Smugmug,* 2009 U.S. Dist. LEXIS 112400 (J. Wilken) ("non-exclusive licenses, without any showing of enforcement efforts are insufficient to justify specific jurisdiction. And revenue from licensing is irrelevant unless the contact with the licensees is itself 'constitutionally cognizable'") (citing *Red Wing Shoe,* 148 F.3d at 1361-62).

-- 12 --

**C.     Rockstar's Sporadic And Insubstantial Contacts With California Do Not Give Rise To General Jurisdiction**

Google's bare allegations regarding Rockstar's alleged "continuous and systematic" contacts with California can be summarized as follows: (1) Rockstar is alleged to engage in general licensing activities with other companies, some of which may be located in California, and allegedly has personnel in California to conduct such licensing activities, Compl. 3; and (2) one of Rockstar's shareholders is headquartered in California, Compl. 3. Such insubstantial allegations, even if true, do not confer general jurisdiction.

The Supreme Court has recognized that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler,* slip op at 14.  Thus, general jurisdiction applies only where a defendant's contacts with a forum are "so continuous and systematic as to render the [foreign corporation] essentially at home in the forum state, *i.e.,* comparable to a domestic enterprise in that State. *Id.* at 14 n. 11. For general jurisdiction, a defendant's contacts must "approximate[] a physical presence within the state." *See, e.g., Autogenomics,* 566 F.3d at 1018. The standard for general jurisdiction is high because it confers personal jurisdiction for *any cause of action,* even one that has no relationship with the defendant's contacts to the forum.

**1.     Rockstar's is a Texas entity and does not have contacts with California that "approximate a physical presence"**

"With respect to a corporation, the place of incorporation and the principal place of business are paradigm bases for general jurisdiction." *Daimler,* slip op. at 19. Rockstar has no contacts with California approximating physical presence, and Google cannot allege that such contacts exist. As set forth in the Statement of Facts *supra* and the attached declaration, Rockstar is and always has been a Delaware limited partnership and with its principal place of business in Plano, Texas. Like the foreign defendant in *Helicopteros* found not to be subject to general jurisdiction, Rockstar is not authorized to do business in California; has no agent for service of process in California; has never signed any contract in California; has never owned property in California; has never maintained an

-- 13 --

McKool 960087v1

**– A1100 –**

1  office in California; and has never maintained records in California. *See Helicopteros,* 466 U.S. at

2  411; Dean Decl. at ¶¶ 16, 29-33.

3  Moreover, Rockstar has no contacts that make it essentially "at home" in California and has

4  no contacts that would make Rockstar comparable to a domestic California enterprise. None of

5  Rockstar's employees live in California; Rockstar pays no California taxes; Rockstar has not held

6  any board meetings in California; Rockstar has not signed any license agreements in California; and

7  Rockstar has not sold any patents to any California entities. Dean Decl. at ¶¶ 29-33. Rockstar and

8  MobileStar acquired the patents-in-suit from Nortel Networks, a company that went bankrupt in

9
10  2011. Nortel's U.S. headquarters was in Richardson, Texas. *Id.* at ¶ 27. Nortel had a substantial

11  presence in Texas prior to its bankruptcy, and many of Rockstar's and MobileStar's current

12  employees are former Nortel employees. *Id.*

13              **2.    Rockstar's lone, part-time, independent contractor in California does not
14                      subject Rockstar to general jurisdiction**

15  Google's allegation that Rockstar has employees in California responsible for licensing

16  activities related to the patents-in-suit is incorrect. Compl. 3. As explained in the Statement of Facts,

17  *supra* and the attached declaration, Rockstar employed a single part-time independent contractor

18  who lives in California. Dean Decl. at ¶ 34. ████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████ This

22  single contact is too isolated and insubstantial to justify exercising general jurisdiction over

23  Rockstar. *See Daimler,* slip op. at 4, 21 (rejecting general jurisdiction over a foreign defendant based

24  on the California presence of the defendant's independent contractor who had no authority to make

25  binding obligations on behalf of the defendant).

26
27
28

-- 14 --

McKool 960087v1

**– A1101 –**

**3.    Revenue generated from non-exclusive licensees located in California is insufficient to justify general jurisdiction**

Google alleges that Rockstar's licensing efforts have generated substantial revenue in California. Compl. 3. Even if true, mere licensing revenue generated in the forum is irrelevant to a general jurisdiction analysis. In *Helicopteros,* the Supreme Court rejected general jurisdiction over a foreign defendant, even though the foreign defendant purchased $4 million of helicopters and repair parts in the forum state, constituting 80% of its helicopter fleet (its primary business). *Helicopteros* held that "mere purchases, even if occurring at regular intervals, are not enough to warrant" general jurisdiction. 466 U.S. at 418. The Supreme Court has extended the holding of *Helicopteros* to include mere sales or revenue in the forum state. *Goodyear Dunlop Tire Ops., S.A. v. Brown,* 564 U.S. __, slip op. at 12 (2011). Rockstar's mere revenue from California is not enough to justify general jurisdiction. *Id*. And contrary to Google's allegation, Rockstar and MobileStar have generated no licensing revenue in California, as here, all of Rockstar's licensees are non-exclusive, and Rockstar has no control over any such licensee. Dean Decl. at ¶¶ 25-26.

**4.    The contacts of Rockstar's shareholders may not be imputed to Rockstar**

Google incorrectly asserts that Rockstar's shareholders, including Apple, are somehow relevant to its claim of declaratory judgment jurisdiction. Compl. 3-4. While it is true that Rockstar has limited partners (including Apple), and these limited partners do not direct or control Rockstar's licensing efforts in California, or anywhere else. Dean Decl. at ¶ 35.  Only Rockstar's Texas-based management directs Rockstar's licensing efforts. *Id*.  Rockstar also takes measures to ensure that information about prospective licensees and negotiations does not flow to the limited partners. *Id*.

Moreover, none of Apple's California contacts may be imputed to Rockstar. The Federal Circuit has cautioned that "the corporate form is not to be lightly cast aside" when rejecting arguments by plaintiffs seeking to establish jurisdiction by piercing the corporate veil or via an alter ego theory. *3D Sys. Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1380-81 (Fed. Cir. 1998) (declining

-- 15 --

1 to assert jurisdiction over subsidiary defendants and rejecting plaintiff's arguments to impute parent

2 defendant's contacts with forum by piercing corporate veil or under alter ego theory). Here, too,

3 Rockstar and Apple are distinct corporate entities and there is no justification for imputing one's

4 contacts to the other.

5 **V. This District Is Not The Proper Venue For This Suit**

6 The Court should dismiss Google's complaint because venue is not proper in this District

7 under 28 U.S.C. §§ 1391(b) and (c). As set forth in the Statement of Facts, *supra,* neither Rockstar

8 nor MobileStar are residents of California. Proper venue cannot exist under § 1391(b)(1).[4]

9

10 The events "giving rise to the claim"—Google's claim that Rockstar and MobileStar

11 improperly threatened Google or its customers with a lawsuit involving the seven patents—did not

12 occur in California. Rather, the events, e.g., filing suit against Google's customers, occurred in

13 Texas). And, as discussed previously, the types of general patent discussion and licensing activities

14 with various unidentified parties as alleged by Google do not give rise to the claim at issue. Proper

15 venue cannot exist under § 1391(b)(2).

16

17 Venue in this District is also not proper under § 1391(b)(3). Section 1391(b)(3) does not

18 apply here because the Eastern District of Texas is a suitable forum, as Rockstar and MobileStar

19 both reside there. And as demonstrated above, Rockstar and MobileStar are not subject to personal

20 jurisdiction in this forum.

21

22

23

24 _____

[4] The general venue statute provides that: (b) Venue in General.— A civil action may be brought
25 in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State
in which the district is located; (2) a judicial district in which a substantial part of the events or
26 omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the
action is situated; or (3) if there is no district in which an action may otherwise be brought as
27 provided in this section, any judicial district in which any defendant is subject to the court's personal
28 jurisdiction with respect to such action

-- 16 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**VI.     The Court Should Decline to Exercise Jurisdiction Over Google's Claims**

Even if the Court finds that it has personal jurisdiction over Rockstar or MobileStar, the Court should not entertain Google's declaratory action. Google's complaint is inconsistent with the purpose of the Declaratory Judgment Act and it is effectively duplicative of the first-filed Texas Actions. By declining to exercise jurisdiction over Google's complaint, the Court would promote judicial efficiency and eliminate the risk of inconsistent judgments. The purpose of the Declaratory Judgment Act is not—as is the case here—to promote forum shopping by the complainant.

**A.     The Court Has Discretion To Decline Jurisdiction Over Declaratory Claims**

"[The] authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 718-719 (U.S. 1996). This holds particularly true for declaratory judgment actions, characterized "as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton,* 515 U.S. at 286-287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). Accordingly, a "district court is not required to exercise declaratory judgment jurisdiction, but has 'unique and substantial discretion' to decline that jurisdiction." *Elecs. for Imaging,* 394 F.3d at 1345-1346 (citing *Wilton*, 515 U.S. at 286). In exercising that "unique and substantial discretion," a court "must act 'in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration' when declining jurisdiction in declaratory suits." *Id.* (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996), *overruled on other grounds, Sony Elecs., Inc. v. Guardian Media Techs., Ltd.,* 497 F.3d 1271 (Fed. Cir. 2007)).

In patent cases, the purpose of the Declaratory Judgment Act is as follows:

[A] patent owner …attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. …Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and

-- 17 --

abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*Elecs. for Imaging*, 394 F.3d at 1346 (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)). "Permitting multiple lawsuits to adjudicate the same issues would serve no purpose of judicial administration and would risk inconsistent rulings on the patents' validity, enforceability, and ownership." *Kyocera Communs., Inc. v. ESS Techs. Int'l, Inc.*, 2012 U.S. Dist. LEXIS 89267, *7-8 (N.D. Cal. June 27, 2012).

**B.      The Court Should Decline Jurisdiction Because Google's Claims Do Not Meet The Purpose Of The Declaratory Judgment Act**

None of the purposes of the Declaratory Judgment Act are met by Google's claims. As noted above, in the context of a patent dispute, the purpose of the Declaratory Judgment Act is to provide a party the ability to settle a controversy where "the patent owner refused to grasp the nettle and sue." *Elecs. for Imaging,* 394 F.3d at 1346 (Fed. Cir. 2005). That is not the case here—nearly two months before Google brought its declaratory judgment action, Rockstar and MobileStar brought the Texas Actions on the <u>identical</u> patents Google asserts here. As this shows, Rockstar and MobileStar *did* "grasp the nettle and sue." *Id*. Indeed, shortly after Google filed its complaint here, Google was added as a defendant in the first-filed Texas Actions.

**1.      The Court should decline jurisdiction because Google's complaint is an attempt at forum shopping**

An attempt to forum shop runs counter to the purposes of the Declaratory Judgment Act. *Catalyst Assets LLC v. Life Techs. Corp.*, 2012 U.S. Dist. LEXIS 84347, 7-8 (N.D. Cal. June 17, 2012) (noting that a court should decline to hear declaratory judgments actions where a litigant files a declaratory action as a means of forum shopping). In light of the fact that the Texas Actions were filed nearly two months before Google filed its action in this District, Google's declaratory judgment action can only be viewed as an attempt at forum shopping. Instead of intervening in the Texas Actions, Google invited Rockstar and MobileStar to a meeting in California, then *six days later* filed

-- 18 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

this case. Rather than file its declaratory judgment action, Google could have moved to intervene in Texas (or simply filed counterclaims). This would have made sure that Google had the opportunity to be heard on the very same issues raised in its complaint.[5]

### 2. Google's claims are an inefficient use of judicial resources

In deciding whether to decline to assert jurisdiction over a declaratory judgment action, "[t]he court must make a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995). Entertaining Google's action would be a waste of judicial resources given the existence of the parallel, earlier-filed Texas Actions and the overlap in patents between those actions and this one. When determining if to exercise jurisdiction over a declaratory judgment action, "[a] district court . . . should avoid duplicative litigation." *Catalyst Assets LLC v. Life Techs. Corp.*, 2012 U.S. Dist. LEXIS 84347, *7-8 (N.D. Cal. June 17, 2012) (citing *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) (dismissing declaratory judgment action where it would "would result in duplicative litigation and a waste of judicial resources."); *see also Teva Pharms. USA, Inc. v. Eisai Co.*, 620 F.3d 1341, 1349 (Fed. Cir. 2010) (recognizing that the Federal Circuit has "upheld discretionary decisions declining jurisdiction when the declaratory judgment action was duplicative of other proceedings . . . ."). This principle is consistent with the purpose of the Declaratory Judgment Act: giving a party a forum to sue only when a patent holder has refused to sue the party despite creating a palpable threat of suit. *See Arrowhead Indus. Water, Inc.*, 846 F.2d at 735.

Entertaining duplicative suits here "would serve no purpose of judicial administration and would risk inconsistent rulings on the patents' validity, enforceability, and ownership." *Kyocera*

---

[5] The only other possible reason Google would have to file its declaratory judgment would be to attempt to adjust its bargaining position as to the patents-in-suit ███████████████████████████. *See* Statement of Facts, *supra*. But using a declaratory judgment action as a bargaining tool runs contrary to the purpose of the Declaratory Judgment Act. *See Teva Pharmaceuticals USA, Inc. ex rel. Gate Pharmaceuticals Div. v. EISAI Co., Ltd.*, 426 F. App'x 904 (Fed. Cir. 2011) (recognizing that the Federal Circuit has "upheld discretionary decisions declining jurisdiction when. . . . the party instituted an [declaratory judgment action solely to enhance its bargaining power in negotiations . . . .").

-- 19 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

*Communs., Inc. v. ESS Techs. Int'l, Inc.,* 2012 U.S. Dist. LEXIS 89267, 7-8 (N.D. Cal. June 27, 2012) (declining to exercise jurisdiction over declaratory judgment claims duplicative of an earlier-filed action). Because Google is now a party to one of the Texas Actions, Google can have its infringement and validity concerns raised as a counterclaim there. *See Proofpoint, Inc. v. InNova Patent Licensing, LLC,* 2011 U.S. Dist. LEXIS 120343, *22-23 (N.D. Cal. Oct. 17, 2011) (encouraging the declaratory judgment plaintiff "to move to intervene in the Texas Action or bring a separate action for declaratory judgment in the Eastern District of Texas and seek to relate that claim to the Texas Action").

**C.     The Court Should Decline to Assert Jurisdiction Under the First-Filed Rule**

The first-filed rule, which favors an earlier filed action, also dictates that the Court should decline jurisdiction over Google's Action. "When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

In patent cases, the "general rule favors the forum of the first-filed action, whether or not it is a declaratory action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) *abrogated on other grounds* by *Wilton,* 515 U.S. 277. "The general rule that the first-filed case is favored over the second-filed action may be even stronger where the second-filed action is [for] a declaratory judgment." *Id.* The purpose of the first-to-file rule is "avoid conflicting decisions and promote judicial efficiency." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

**1.     The Texas Actions are first-filed and should be favored**

The Texas Actions are the first-filed actions under the first-to-file rule. The first-filed rule "permits a district court to decline jurisdiction when a complaint involving *substantially similar parties and issues* has already been filed in another district court." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704 (Fed. Cir. 2013) (affirming district court's dismissal of later-filed

-- 20 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  declaratory judgment action) (emphasis added); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678

2  F.2d 93, 94-95 (9th Cir.1982) (recognizing the same principle). In other words, for an action to be

3  considered "first-filed," the parties and issues need only be substantially the same—not be identical.

4  *E.g., Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 959 (N.D.

5  Cal.2008) (stating that "exact identity [of parties] is not required to satisfy the first-to-file rule");

6  *Microchip Tech., Inc. v. United Module Corp*., CV-10-04241-LHK, 2011 U.S. Dist. LEXIS 73276,

7  2011 WL 2669627 (N.D. Cal. July 7, 2011) (noting that application of the rule requires

8  consideration of (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the

9
10  similarity of the issues).

11        This principle is illustrated by *Proofpoint, Inc. v. InNova Patent Licensing*, LLC, 2011 U.S.

12  Dist. LEXIS 120343, (N.D. Cal. Oct. 17, 2011). In *Proofpoint,* the court determined that an earlier-

13  filed infringement action in the Eastern District of Texas was the "first filed" for purposes of

14  applying the first to file rule, despite the fact that the party asserting the later declaratory judgment

15  action in the Northern District of California was not a party to the first-filed action. In doing so, the

16  court focused on the fact that the same patent was asserted in the earlier-filed and later-filed suits. *Id.*

17
18  at * 19. The court also noted that many of the defendants to the first-filed patent infringement suit

19  "have asserted claims of non-infringement and invalidity similar to those advanced by Proofpoint."

20  *Id.* The court concluded that "this Court's assertion of jurisdiction would risk a conflicting

21  determination of the scope of the [patent]," and "[g]iven the substantial similarity of the issues and

22
23  the considerable energy already invested by the District Court for the Eastern District of Texas, it

24  would not be in the interest of justice or judicial economy for this Court to entertain Proofpoint's

25  claim."

26        The reasoning set forth in *Proofpoint* applies here. Although Google was not a party to the

27  Texas Actions when it filed its declaratory judgment action in this District, the issues between the

28  two actions are substantially similar such that the Texas actions are "first-filed" for purposes of the

-- 21 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

first-to-file rule. The patents asserted in the two actions are identical, and it is almost a certainty that each defendant in the Texas Actions will file non-infringement and invalidity declaratory judgment counterclaims substantially similar to those brought in Google's Action.

### 2. Judicial efficiency and interests of justice favor the Texas Actions

When considering factors of judicial efficiency and interests of justice, it is clear that the first-to-file rule mandates that Google's action should be dismissed, or in the alternative, transferred to the Eastern District of Texas. These factors, similar to those applied to a motion to transfer under Section 1404, include "the convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice." *Proofpoint,* LLC, 2011 U.S. Dist. LEXIS 120343 at *19 (citing *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904-05 (Fed. Cir. 2008)).[6] Each of these factors weighs in favor of the Texas Actions, or at best is neutral. If the Court applies the first-to-file rule it should dismiss or transfer Google's Action to the Eastern District of Texas.[7]

### a. Convenience of the Witnesses is Neutral

Both Rockstar and MobileStar are located in Texas. *See* Statement of Facts, *supra.* The majority of the inventors of the patents-in-suit are listed on the patents as being from Canada, or otherwise residing in places other than California. *See* Google Compl., D.I. 1, Exs. A-G. Thus, even taking into account that some of Google's witnesses may be located in this District, Google cannot

---

[6] Although the Federal Circuit in *Micron Tech.* said a court "must" apply these factors, its holding was limited to the situation in which the court presiding over a first-filed declaratory judgment action is performing a first-to-file analysis. *Micron Tech.,* 518 F. 3d at 904; *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 129 (D. Mass. 2012) (explaining that *Micron* makes application of the factors mandatory only to a first-filed action analyzed by the court presiding over the first-filed action). Thus, the Court here may, but is not required, to take these factors into account, as it is not presiding over the first-filed action. *See Proofpoint,* 2011 U.S. Dist. LEXIS 120343 at *18-19; *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 96-97 (9th Cir. Cal. 1982).

[7] As noted above, a later filed declaratory judgment action, "generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). Accordingly, the Court can transfer the Google Action to the Eastern District of Texas pursuant to this motion under the first-to-file rule.

-- 22 --

show that the balance tips in favor of this District with regard to convenience of the witnesses. This factor is neutral with regard to judicial efficiency and the interests of justice.

### b. This Court Lacks Jurisdiction Over at Least Some Necessary Parties

As Google admits, it brought its declaratory judgment action because of a perceived threat to its relationships with its customers who are defendants in the Texas Actions. It follows, then, that its customers necessarily would be indispensable parties to this litigation, as their rights vis-à-vis Google's infringement of the patents-in-suit and the validity of the patents in suit are at play. But a number of the Defendants in the Texas Actions are not subject to jurisdiction in this District, as they lack any substantial presence with California. Indeed, a number of these Defendants including Samsung and others are foreign-based entities with offices in Texas. *See* Ex. A-G. This reality also underscores that the convenience of witnesses is neutral at best, as most of the Google customer witnesses are either overseas or in Texas. The interest of judicial efficiency, then, dictates that Google's Action is properly heard in the Eastern District of Texas, as both Google and its customers are subject to jurisdiction there.

### c. The Google Action Can Be Consolidated with the Texas Actions

As stated, the defendants in the Texas Actions almost certainly will file answers containing counterclaims mirroring Google's Action seeking declarations of invalidity. These actions, then, can at the very least be consolidated with one or more of the current Texas Actions for the purposes of invalidity and for purposes of the pre-trial scheduling order. Such consolidation will promote an efficient use of judicial resources and uniformity among suits dealing with substantially the same issues. Accordingly, this factor favors dismissing or transferring Google's Action.

### d. Considerations for the interests of justice are in favor of the Texas Actions

As explained earlier, the interests of justice would be harmed if the Google Action was entertained further in this district. Specifically, the risk of inconsistent claim constructions and

-- 23 --

McKool 960087v1

**– A1110 –**

1  rulings on invalidity run counter to the interests of fair and efficient justice. Accordingly, this factor

2  weighs in favor of the Texas Actions.

3  **VII.  Conclusion**

4       Google cannot show that this Court has personal jurisdiction over either Rockstar or

5  MobileStar. Moreover, even if such a showing could be made, the Court should decline to assert

6  jurisdiction over Google's declaratory judgment claims because they fail to meet any of the purposes

7  of the Declaratory Judgment Act. For these reasons, the Court should dismiss Google's complain, or

8  in the alternative transfer Google's claims to the Eastern District of Texas.

9

10

11  Dated January 23, 2014.               Respectfully submitted,

12

13                                  By:*/s/ Courtland Reichman*

14                                    Courtland L. Reichman (SBN 268873)
    McKool Smith Hennigan, P.C.

15      255 Shoreline Drive Suite 510
    Redwood Shores, CA 94065

16      (650) 394-1400
    (650) 394-1422 (facsimile)

17

18      Mike McKool (Pro Hac Vice Application to be filed)

19      mmckool@mckoolsmith.com
    Douglas A. Cawley (Pro Hac Vice Application

20      to be filed)
    dcawley@mckoolsmith.com

21      Ted Stevenson III (Pro Hac Vice Application to

22      be filed)
    tstevenson@mckoolsmith.com

23      David Sochia (Pro Hac Vice Application filed)
    dsochia@mckoolsmith.com

24      McKool Smith, P.C.
    300 Crescent Court Suite 1500

25      Dallas, TX 75201

26      (214) 978-4000
    (214) 978-4044 (facsimile)

27

28      Attorneys For Defendants

-- 24 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

Rockstar Consortium U.S. LP and
MobileStar Technologies LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-- 25 --

McKool 960087v1

**– A1112 –**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED



DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE
EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT—Case No. 3:13-cv-5933-CW

McKool 960087v1