**Volume III of III, Pages A1114 to A1659**

Miscellaneous Docket No. _____

# United States Court of Appeals
# for the Federal Circuit

IN RE GOOGLE INC., SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC., AND
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

*Petitioners.*

*On Petition for a Writ of Mandamus to the U.S. District Court for the*
*Eastern District of Texas in Case Nos. 2:13-cv-894 and 2:13-cv-900*
*Judge Rodney Gilstrap*

## APPENDIX IN SUPPORT OF
## PETITION FOR WRIT OF MANDAMUS

Kathleen M. Sullivan
Patrick D. Curran
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

Charles K. Verhoeven
Sean S. Pak
Amy H. Candido
Matthew S. Warren
Kristin J. Madigan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile

*Attorneys for Petitioner*
*Google Inc.*

Charles K. Verhoeven
Sean S. Pak
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
(650) 801-5100 facsimile

Joseph Milowic III
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

*Attorneys for Petitioners Samsung*
*Electronics Co., Ltd., Samsung*
*Electronics America, Inc., and Samsung*
*Telecommunications America, LLC*

August 14, 2014

## TABLE OF CONTENTS

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 07/01/2014 | 070 | Memorandum Opinion and Order Denying Motion to Stay or Transfer | A1 |
| 10/31/2013 | 001 | Plaintiffs Rockstar Consortium US LP and Mobile Star Technologies LLC's Original Complaint, *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A12 |
| 12/23/2013 | 001 | Complaint for Declaratory Judgment of Non-Infringement of U.S. Patent Nos. 5,838,551; 6,037,937; 6,128,298; 6,333,973; 6,463,131; 6,765,591; and 6,937,572, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A56 |
| 12/31/2013 | 019 | Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's First Amended Complaint, *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A69 |
| 03/10/2014 | 046 | Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Second Amended Complaint, *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A136 |
| 07/21/2014 | 126 | Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC's Answer, Affirmative Defenses and Counterclaims to Second Amended Complaint | A221 |
| 07/22/2014 | 127 | Answer and Affirmative Defenses of Defendant Google Inc. to Claims for Patent Infringement of Rockstar Consortium US LP and MobileStar Technologies LLC | A259 |
| 04/21/2014 | 071 | Google's Notice of Order Denying Motion to Dismiss or in the Alternative, to Transfer | A298 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/21/2014 | 071.1 | Exhibit A – Order Denying Motion to Dismiss or, in the Alternative, to Transfer, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A300 |
| 03/21/2014 | 052 | Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A329 |
| 03/21/2014 | 052.1 | Declaration of Kristin Madigan | A352 |
| 03/21/2014 | 052.2 | Exhibit 1 – Robert McMillan, *How Apple and Microsoft Armed 4,000 Patent Warheads*, Wired Enterprise, May 21, 2012 | A358 |
| 03/21/2014 | 052.3 | Exhibit 2 – Joff Wild, *Rockstar CEO says he would not bet against further suits to follow those issued last week*, IAM Magazine, November 4, 2013 | A370 |
| 03/21/2014 | 052.4 | Exhibit 3 – Order Authorizing and Approving (A) The Sale of Certain Patent and Related Assets Free And Clear of All Claims and Interests, (B) The Assumption and Assignment of Certain Executory Contracts, (C) The Rejection of Certain Patent Licenses and (D) The License Non-Assignment and Non-Renewal Protections, *In re Nortel Networks Inc., et al.*, No. 09-10138 (D. Del. July 11, 2011), Docket. No. 5935 | A374 |
| 03/21/2014 | 052.5 | Exhibit 4 – Apple Inc. Form 10-Q Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the quarterly period ended June 25, 2011 | A412 |
| 03/21/2014 | 052.6 | Exhibit 5 – Certificate of Limited Partnership of Rockstar Bidco, LP | A467 |
| 03/21/2014 | 052.7 | Exhibit 6 – Certificate of Formation of Rockstar Consortium, LLC | A469 |
| 03/21/2014 | 052.8 | Exhibit 7 – Certificate of Limited Partnership of Rockstar Consortium US LP | A471 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 03/21/2014 | 052.9 | Exhibit 8 – Certificate of Formation of MobileStar Technologies LLC | A473 |
| 03/21/2014 | 052.10 | Exhibit 9 – Robert McMillan, *Facebook Infringes My Patents Too, Says CEO Who Just Sued Google*, Wired Enterprise, November 1, 2013 | A475 |
| 03/21/2014 | 052.11 | Exhibit 10 – iprockstar.com website page titled "About Rockstar" | A483 |
| 03/21/2014 | 052.12 | Exhibit 11 – iprockstar.com website page titled "Innovation" | A485 |
| 03/21/2014 | 052.13 | Exhibit 12 – Patent assignment record Reel No. 031523, Frame No. 0182-90, from the United States Patent And Trademark Office | A489 |
| 03/21/2014 | 052.14 | Exhibit 13 – iprockstar.com website page titled "Grow together through innovation" | A499 |
| 03/21/2014 | 052.15 | Exhibit 14 – Rockstar Consortium LinkedIn Profile | A501 |
| 03/21/2014 | 052.16-17 | Exhibit 15 – LinkedIn Profiles | A503 |
| 03/21/2014 | 052.18 | Exhibit 16 – Joff Wild, *Star Man*, Intellectual Asset Management, July/August 2013 | A584 |
| 03/21/2014 | 052.19 | Exhibit 17 – Mark Wilson LinkedIn Profile I | A593 |
| 03/21/2014 | 052.20 | Exhibit 18 – Mark Wilson LinkedIn Profile II | A597 |
| 03/21/2014 | 052.21 | Exhibit 19 – Michael Dunleavy LinkedIn Profile | A601 |
| 03/21/2014 | 052.22 | Exhibit 20 – iprockstar.com website page titled "Corporate Leaders." | A604 |
| 03/21/2014 | 052.23 | Exhibit 21 Exhibits Q-U to Docket No. 1, *Charter Communications v. Rockstar et. al.*, No. 14-0055 (D. Del. Jan. 17, 2014) | A612 |
| 03/21/2014 | 052.24 | Exhibit 22 – Don Lindsay LinkedIn Profile | A639 |
| 03/21/2014 | 052.25 | Exhibit 23 – Prosecuting Attorney Profiles | A644 |
| 03/21/2014 | 052.26 | Exhibit 24 – Joff Wild, *Rockstar getting ready to roll . . .*, Intellectual Asset | A657 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| | | Management, February 19, 2012 | |
| 03/21/2014 | 052.27 | Exhibit 25 – Chris Cianciolo LinkedIn Profile | A660 |
| 03/21/2014 | 052.28 | Exhibit 26 – Table C-5, "U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending June 30, 2013" | A664 |
| 03/21/2014 | 052.29 | Declaration of Abeer Dubey | A668 |
| 03/21/2014 | 052.30 | Declaration of B.J. Kang | A673 |
| 03/21/2014 | 052.31 | Declaration of Dale Jachlewski | A677 |
| 03/21/2014 | 052.32 | Proposed Order | A682 |
| 03/24/2014 | 053 | Certificate of Conference for Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A683 |
| 04/14/2014 | 061 | Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A686 |
| 04/14/2014 | 061.1 | Declaration of William Colvin | A710 |
| 04/14/2014 | 061.2 | Declaration of Brian Egan | A713 |
| 04/14/2014 | 061.3 | Declaration of Erik Fako | A715 |
| 04/14/2014 | 061.4 | Declaration of Mark Hearn | A718 |
| 04/14/2014 | 061.5 | Declaration of Gillian McColgan | A721 |
| 04/14/2014 | 061.6 | Declaration of Matthew Poisson | A724 |
| 04/14/2014 | 061.7 | Declaration of Donald Powers | A727 |
| 04/14/2014 | 061.8 | Declaration of Marilyn French-St. George | A735 |
| 04/14/2014 | 061.9 | Declaration of Bernard Tiegerman | A736 |
| 04/14/2014 | 061.10 | Declaration of John Veschi | A739 |
| 04/14/2014 | 061.11 | Declaration of Bruce Anthony Wootton | A741 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/14/2014 | 061.12 | Proposed Order | A744 |
| 04/14/2014 | 062 | Additional Attachments to Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A745 |
| 04/14/2014 | 062.1 | Declaration of Joshua Budwin | A748 |
| 04/14/2014 | 062.2 | Exhibit 1 | A759 |
| 04/14/2014 | 062.3 | Exhibit 2 | A761 |
| 04/14/2014 | 062.4 | Exhibit 3 | A775 |
| 04/14/2014 | 062.5 | Exhibit 4 | A777 |
| 04/14/2014 | 062.6 | Exhibit 5 | A780 |
| 04/14/2014 | 062.7 | Exhibit 6 | A783 |
| 04/14/2014 | 062.8 | Exhibit 7 | A785 |
| 04/14/2014 | 062.9 | Exhibit 8 | A787 |
| 04/14/2014 | 062.10 | Exhibit 9 | A789 |
| 04/14/2014 | 062.11 | Exhibit 10 | A795 |
| 04/14/2014 | 063 | Additional Attachments to Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A799 |
| 04/14/2014 | 063.1 | Exhibit 11 | A802 |
| 04/14/2014 | 063.2 | Exhibit 12 | A897 |
| 04/14/2014 | 063.3 | Exhibit 13 | A902 |
| 04/14/2014 | 063.4 | Exhibit 14 | A919 |
| 04/14/2014 | 063.5 | Exhibit 15 | A933 |
| 04/14/2014 | 063.6 | Exhibit 16 | A936 |
| 04/14/2014 | 063.7 | Exhibit 17 | A938 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/14/2014 | 063.8-9 | Exhibit 18 | A942 |
| 04/14/2014 | 063.10 | Exhibit 19 | A963 |
| 04/14/2014 | 063.11 | Exhibit 20 | A971 |
| 04/14/2014 | 063.12 | Exhibit 21 | A977 |
| 04/14/2014 | 063.13 | Exhibit 22 | A984 |
| 04/14/2014 | 063.14 | Exhibit 23 | A987 |
| 04/14/2014 | 063.15 | Exhibit 24 | A992 |
| 04/14/2014 | 063.16 | Exhibit 25 | A1004 |
| 04/14/2014 | 063.17 | Exhibit 26 | A1024 |
| 04/14/2014 | 063.18 | Exhibit 27 | A1027 |
| 04/14/2014 | 063.19 | Exhibit 28 | A1030 |
| 04/14/2014 | 063.20 | Exhibit 29 | A1033 |
| 04/14/2014 | 063.21 | Exhibit 30 | A1036 |
| 04/14/2014 | 064 | Additional Attachments to Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California | A1040 |
| 04/14/2014 | 064.1 | Exhibit 31 | A1043 |
| 04/14/2014 | 064.2 | Exhibit 32 | A1046 |
| 04/14/2014 | 064.3 | Exhibit 33 | A1050 |
| 04/14/2014 | 064.4 | Exhibit 34 | A1052 |
| 04/14/2014 | 064.5 | Exhibit 35 | A1056 |
| 04/14/2014 | 064.6 | Exhibit 36 | A1060 |
| 04/14/2014 | 064.7 | Exhibit 37 | A1062 |
| 04/14/2014 | 064.8 | Exhibit 38 | A1065 |
| 04/14/2014 | 064.9 | Exhibit 39 | A1067 |
| 04/14/2014 | 064.10 | Exhibit 40 | A1070 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 04/14/2014 | 064.11 | Exhibit 41 | A1073 |
| 04/14/2014 | 064.12 | Exhibit 42 | A1076 |
| 04/14/2014 | 064.13 | Exhibit 43 | A1080 |
| 04/14/2014 | 064.14 | Exhibit 44 | A1114 |
| 04/25/2014 | 066 | Defendants' Reply in Support of Motion to Transfer to the Northern District of California or, in the Alternative, to Stay | A1120 |
| 04/25/2014 | 066.1 | Declaration of Kristin Madigan | A1129 |
| 04/25/2014 | 066.2 | Exhibit 1 – Defendants' Motion to Dismiss, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A1132 |
| 04/25/2014 | 066.3 | Exhibit 2 – Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A1166 |
| 04/25/2014 | 066.4 | Exhibit 3 – January 9, 2014 Letter from Joseph Milowic III to David Sochia | A1187 |
| 04/25/2014 | 066.5 | Exhibit 4 – February 18, 2014 Letter from Jared Hoggan to Joseph Milowic III | A1190 |
| 04/25/2014 | 066.6-7 | Exhibit 5 – Excerpt from Plaintiffs' Infringement Contentions for U.S. Patent No. 6,937,572 | A1193 |
| 05/08/2014 | 067 | Plaintiffs' Rockstar Consortium UP LP and MobileStar Technologies LLC's Sur-Reply In Opposition to Defendants' Motion to Stay or, in the Alternative, to Transfer | A1283 |
| 05/08/2014 | 067.1 | Supplemental Declaration of Joshua Budwin | A1291 |
| 05/08/2014 | 067.2 | Exhibit A | A1294 |
| 05/08/2014 | 067.3 | Exhibit B | A1303 |
| 05/08/2014 | 067.4 | Exhibit C | A1310 |
| 05/08/2014 | 067.5 | Exhibit D | A1314 |
| 05/08/2014 | 067.6 | Exhibit E | A1328 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| 05/08/2014 | 067.7 | Exhibit F | A1331 |
| 05/08/2014 | 067.8 | Exhibit G | A1334 |
| 05/08/2014 | 067.9 | Exhibit H | A1337 |
| 03/10/2014 | 045 | Rockstar Consortium US LP and MobileStar Technologies LLC's Motion for Leave to File a Second Amended Complaint | A1347 |
| 03/28/2014 | 056 | Google's Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint | A1365 |
| 04/09/2014 | 059 | Rockstar Consortium US LP and MobileStar Technologies LLC's Reply in Support of Their Motion for Leave to File a Second Amended Complaint | A1377 |
| 04/24/2014 | 074 | Google's Sur-Reply in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint | A1386 |
| 07/01/2014 | 069 | Order Granting Plaintiffs' Motion for Leave to File a Second Amended Complaint | A1396 |
| 10/31/2013 | 001 | Original Complaint, *Rockstar Consortium US LP v. ASUSTek, et al.*, No. 13-894 (E.D. Tex.) | A1398 |
| 03/25/2014 | 041 | ASUS Defendants' Motion to Transfer or, in the Alternative, to Stay | A1436 |
| 03/25/2014 | 041.7 | Exhibit 4 to the Declaration of Harold H. Davis In Support of ASUS Defendants' Motion to Transfer or, in the Alternative, to Stay | A1456 |
| 03/28/2014 | 034 | Defendants HTC Corporation's and HTC America, Inc.'s Motion to Transfer or, in the Alternative, to Stay | A1458 |
| 03/25/2014 | 035 | LG Defendants' Motion to Stay or, in the Alternative, to Transfer This Action to the Northern District of California | A1479 |
| 04/08/2014 | 027 | Pantech Defendants' Motion to Stay or, in the Alternative, to Transfer This Action to the Northern District of California | A1503 |
| 03/28/2014 | 044 | ZTE (USA) Inc.'s Motion to Stay or, Alternatively, to Transfer to The Northern District | A1521 |

| Date Filed | Docket No. | Description | Apx. No. |
|---|---|---|---|
| | | of California | |
| 07/28/2014 | 129 | Memorandum Opinion and Order Denying ASUS' Motion to Transfer | A1538 |
| 07/30/2014 | 130 | Memorandum Opinion and Order Denying ZTE's Motion to Transfer | A1548 |
| 07/30/2014 | 131 | Memorandum Opinion and Order Denying LG's Motion to Transfer | A1554 |
| 07/29/2014 | 040 | Memorandum Opinion and Order Denying HTC's Motion to Transfer | A1564 |
| 08/01/2014 | 032 | Memorandum Opinion and Order Denying Pantech's Motion to Transfer | A1574 |
| | | Docket Sheet – *Rockstar Consortium US LP v. Samsung Electronics Co., et al.*, No, 13-0900 (E.D. Tex.) | A1580 |
| | | Docket Sheet – *Rockstar Consortium US LP v. ASUSTek et al.*, No. 13-894 (E.D. Tex.) | A1600 |
| | | Docket Sheet – *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) | A1642 |

Case 2:13-cv-00900-JRG   Document 64-14   Filed 04/14/14   Page 1 of 6 PageID #:  3858

# EXHIBIT 44

Battle of the Androids: Google Android vs. Samsung Android



Battle of the Androids: Google Android vs. Samsung Android

Case 2:13-cv-00900-JRG   Document 64-14   Filed 04/14/14   Page 3 of 6 PageID #:  3860

[+5]

...and a long-long list of smaller "nice-to-have" software features:

Each feature by itself doesn't change the picture, but combined together, they significantly increase the value of Samsung Android products.

- Shortcut to screen brightness in 2 clicks (this is simple to implement, very small, yet super-useful feature, as I tend to change screen brightness very often, and this is super-easy with the S III)vWhy hasn't Google done it? Because Samsung UI team does a better job of human User eXperience (UX) testing. This is why I value it so highly, and can easily justify another $20 or so on this feature alone. [+4]
- Better icons (TouchWiz UI theme) [+3]
- Launcher: Samsung clearly divides between applications and widgets. Much easier to navigate and start applications (than vanilla Google Android 4.0). [+3]
- Samsung gestures (screen-shot, double tap, ...) [+3]
- I can swipe my hand over Galaxy S III screen, like a scanner, and it will take a screenshot. This is very cool!
- Extra codecs : *. wma, *. wmv (Microsoft Windows Media Audio/Video; I'm surprised, that Samsung intervened so deeply in the OS. Sadly none of the Androids support the older MPEG2 format, *.mpeg ) [+3]

Why doesn't Google include every codec imaginable?

This is simple: Google tries to avoid patent payments, especially to Microsoft. Each codec costs about $1 per device, so for high-end devices it's not a hardship for Samsung, but encumbering the freely-distributed OS with royalties would be unworkable for Google.

(Same patent reason probably applies to their avoidance of the exFAT patent and MicroSD slot on any recent Nexus series.)

It makes sense for Google to lower the overall "patent tax" on the Android ecosystem, but for hardware vendors, it makes sense to differentiate by adding value.

Surely advanced users can re-code audio/video into any format, but this is not an option for the majority, or on the go.

I do recode the majority of my personal media collection to free codecs at home, such as Ogg Vorbis audio and WebM video, which Android happily plays, but I still stumble across wma/wmv often-times, and am grateful to Samsung for providing me this extra option. I really don't want to recode anything when travelling.

Note, that Google still pays patent royalties for other non-free codecs, including MP3, AAC, MPEG4, H.264 (AVC), etc...

Camera: Burst shot -- this is super-useful for shaky hands... the phone makes 8 shots quickly in one second and selects the best-focused shot automatically, based on clever math and Signal-to-noise ratio (SNR), then asks user for confirmation and saves the choice, after which it deletes the other 7 candidates. This is the "smart" part of the smart-phone. With shaky hands, what would result in blurry pictures on other phones magically becomes laser-focused and crystal-clear image on the S III. [+2]

(There are more camera niceties in the S III, but this one is my favorite)

S Beam - I call it "The Kiss of the Galaxy!" It allows transferring pictures, videos and music between Galaxy S III phones simply by touching them, in several seconds. It starts sync via NFC, then transfers the actual data over WiFi direct (peer-to-peer). I would value this feature much higher, if it were an open-standard and would work with non-Samsung phones, but sadly it is not. I personally believe that software ecosystems and networking protocols should be open. For most Androids (including the S III), you can use standards-based Bluetooth File Transfer to achieve the same goal, but the S Beam is so much easier to use and a lot faster. This idea is so useful and revolutionary that I value it positively until an open standard emerges to replace it. [+2]

Long-term, for Samsung it is beneficial to use open network protocols, because if it does not, an open alternative will be developed (either by Google or by the Open-Source community) and the whole ecosystem will migrate to it. Better to develop an open protocol and sell the first implementation of it. Either way, Samsung wins time vs. the competition. Better to create user value, than user lock-in. Freedom and Open-platform is the primary reason for many users choosing Android vs. the competition.

Better Music Player app - can list all music, or take music from directory/folder filesystem. [+1]

Assistive Flashlight widget -- this is much easier to use as than other flashlight applications, via single-click. Typical flashlight applications may require 3 or 4 clicks. I often use it at night when returning home. [+1]

Battle of the Androids: Google Android vs. Samsung Android

Case 2:13-cv-00900-JRG   Document 64-14   Filed 04/14/14   Page 4 of 6 PageID #:  3861

Much improved lock-screen with water effects, and ability to slide-unlock in any direction [+1]

(Stock Google Android 4.0 and some other OSes unlock only across)

Better Clock app: has smart alarm, which slowly increasing volume in the morning, so I don't need a hammer to silence my phone, plus has timer, stopper, and world clock (multi-timezone). Everything integrated with one GUI. [+1]

S-Voice (cloud service) Similar to the iPhone's "Siri," this allows the user to speak to the phone itself. "Hi Galaxy!". Because of voice recognition accuracy is not always top and limited "intelligence," this is just a "nice to have" feature now, but as the technology improves it will surely become a necessity. [+1]

Dropbox 50 GB for free for 2 years (cloud service; Note: this is carrier dependent.) [+1]

Android Updates - All of the Nexus series have an advantage here: faster Android updates, which account for maybe +5 value for me. And -5 for the S III. [-5]

Samsung does update its flagship Androids, with a few months of delay from the Nexus, which is necessary to port its massive patch-set and test it. Samsung also provides security, bugfix and feature updates in minor releases, without changing the Android version.

By comparison, many vendors lack Android updates at all, so I would value them at -20 on this test. (Meaning, that most Chinese hardware starts at substantial deficit for me vs compared to Google's offering. Basically I would pay less for their phones, due to lack of support.)

[Not yet valued features:]

- S Memo/S Note
- S Planner
- -ChatON

AllShare Cast/AllShare Play (remote desktop/video streaming) - with Samsung Smart TV. (Note to those of us, who chosen Android because it is open, that the Galaxy S III also supports standards-based DLNA, but I haven't tried either. Samsung adds some proprietary features, but also keeps open foundations of Google)

Security: Samsung anti-theft protection

Printing - unlike vanilla Android 4.0, that lacks a printing API, Samsung Android allows printing from the Android browser and from image gallery, but only to Samsung Printers.

The weak point in software (in both Google and Samsung is the Android keyboard; I had to buy the "SwiftKey" keyboard to hugely improve my input experience)

After adding up all the points, I believe, that Samsung Android is worth a substantial premium vs. vanilla Google Android on the same hardware. By my own measurement, that would mean that I'd be willing to pay 40-50% more for a Samsung device over stock Android, and even more over an Android handset from another vendor. You can judge the value of the added functionality for yourself.

My recommendation: If you don't believe me, just use the Samsung Galaxy S III for a month, then try the vanilla Google Android for a few days. You will understand the difference very quickly. You will not want to go vanilla.

Now that we've looked at the software, let's take a look at the hardware:
(Keep in mind that I'm referencing the Galaxy Nexus here, and not the newer Nexus 4, which still isn't widely available)

MicroSD slot +20 (I put 64 GB of extra storage, used for full-length HD videos -- my use case is to convert the S III into an HDTV in my pocket and watch it in bus or parks). A secondary use case for MicroSD is to transfer files between phones.

If the Nexus had 64 GB of internal memory, my use case of MicroSD would reduce to a small advantage, like +5 for the S III.

Bigger Battery +5 (2100 vs 1750 mAh) (again, for traveling reasons, I take 3 batteries when on long travels. Would have to take 4, if I were using a Nexus.

Replacing the battery is just a 1 min inconvenience on my Galaxy S III. For normal workdays the S III battery is good enough, and I still have ~20% at the end of the day.) When actively browsing the Internet over 3G, it lasts about 6 to 7 hours, depending on screen brightness.

Note that the Galaxy S III has 3rd party replaceable batteries, such as Hyperion-4200 and Mugen-4600, that doubles your work time and replaces the back cover, but also doubles the thickness of the smartphone and adds some weight. It adds up to about 12 hours of active usage or 2 days of normal usage with a single battery charge. Also make sure to check for NFC, because some

cheaper 3rd party batteries do not support NFC, so no S-Beam for you.

CPU Quad-core +1 (potential of HEVC/WebM2 decoding, future-proof)

Both Nexus and the Galaxy S III are fast in day to day tasks.

Camera (8 mp vs. 5 mp) +0 (I don't care too much, because 5 MP is "good enough" for me, and sensor quality matters more than pixel density anyway. Do any camera experts care to weigh in on the relative quality of the camera hardware?)

Screen:

The screen is amazing at 4.8" with Super AMOLED technology at 306 PPI and HD 720p quality, and easily one of the killer features of the Galaxy S III. G-Nexus sports a similar screen at 4.65" also at 720p so I won't add points here. My eyes absolutely cannot distinguish between individual pixels at that pixel density, making for ideal picture quality.

Screen Glass:

One thing to mention is that Galaxy S III screen uses Corning Gorilla Glass which makes it *hugely* better than cheap Chinese plastic screens. The feeling is much more sleek and very touch-friendly and it is (mostly) scratch resistant. After 6 months of heavy use, I have only 3 scratches on my Galaxy S III (unprotected) Corning Gorilla Glass screen vs. 100+ scratches in two-weeks time during my use of Chinese phones. Chinese phone screens are not nice to touch. And I can tell a cheap plastic screen even during a blind test.

I won't add points for it vs the Galaxy Nexus, because the Nexus has pretty good glass too (not Gorilla), but it is a killer feature compared to cheap phones that easily justifies another +20 premium of the total handset costs vs. cheap Chinese plastic screens.

Here is a great video on the Corning Gorilla Glass, explaining it's manufacturing process: Why Glass Breaks? (by Corning)

Ideas for hardware vendors:

Which other hardware features might users be interested in paying for?

- For me, being a water traveler in a hot country, a waterproof phone will definitely add value. I wish I could buy a waterproof Galaxy S III, but it doesn't exist. So I bought a water-proof case for the S III. But I would gladly pay for +20% more for a water-proof version of the S III or another high-end Android, because a case is sort of a compromise.
- For others (in cold countries) a gloves-friendly touch-oriented smart-phone may prove to be a killer feature in winter (like the Nokia Lumia 920 with its super-sensitive touch screen, that works with normal, non-touch-capacitive gloves, according to their marketing).
- Alternative for the Android users would be buying "capacitive gloves" (aka "gloves for smartphone").
- Dual SIM phones are popular in some countries (like China), but not here.
- Some people want a vandal-proof phone, with extra strength, so you can throw it on walls or drop it with no effects. "Extra durable".
- Other possible differentiating factor would be a physical QWERTY keyboard, like on BlackBerry and older Nokia phones, as some users seems to prefer it (Not me. I type very quickly on a quality virtual keyboard, such as the latest "SwiftKey Flow" and I love it).

Software alone, as mentioned earlier, worth a substantial premium for the S III. Total S III value (hardware + software combined) is worth even more.

A word to Google: Please please please - either allow MicroSD on your Nexus series (4, 7, 10) -or- offer 64 GB variants for heavy multimedia users.

### Economics:

The actual hardware costs, material usage, bill-of-materials (BOM), and manufacturing complexity is probably close.

Producing the Galaxy S III hardware costs Samsung a little more over producing the Galaxy Nexus (my rough estimate is around $220 vs $210 per handset), plus a few bucks more for MS patents, such as the exFAT filesystem (required for the MicroSD slot), Windows Media Video (VC-1) codec, etc, that Samsung buys for the S III. But they can easily charge +50% extra for it. Easy profit.

Nearly every component of the S III is made by Samsung itself, ranging from the CPU (Samsung Exynos) to display to flash memory to battery to headset (earphones). This enables Samsung to keep manufacturing costs down.

Battle of the Androids: Google Android vs. Samsung Android

How much does the actual development of Samsung Android cost (above the Google Android code, that they get for free)? I don't really know, but anything from tens of millions of dollars to hundreds of millions would be my wild guess. Good engineers aren't cheap.

**Bottom line:**

Google is pricing the Nexus 4 very aggressively, at $299 for the 8GB and $349 for the 16GB (if you can get one, since supply isn't keeping up with demand) but they've set a very difficult threshold for handset vendors who aren't subsidized by a search advertising business model. So the big question is, how can Samsung compete with that? I think that Samsung has a superior product, and I expect Samsung to keep on improving software in Galaxy S4 into the future, and keep charging a premium over the other Android vendors.

The Galaxy S3 (Unlocked) has a street value of $560-600, a 55-60% premium over the cost of a Nexus 4 in the US. However, the Samsung Galaxy S III is one of those rare gems, that even after huge marketing spending, still delivers a great bang-for-the-buck, and I can easily justify the premium. And I rarely buy marketed computers. (and yes, the Galaxy S III feels like a pocket laptop with regards to its feature set, not like a phone.)

The other vendors will have a hard time competing with Samsung, unless they start working on the *software* part, improving Android too, because 40-50% price difference is bigger than the typical profit margin of the average hardware vendor.

The verdict is:

Google Android (Nexus) is good, but Samsung Android (S III) is excellent.

P.S.: Arguably Samsung Android 4.0 is better not only than Google Android 4.0, but also wins vs. Google Android 4.2 in most areas, and on tablets Samsung's advantage is even greater, due to the introduction of world's first window manager for Android, allowing you to have multiple windows floating around, just like on MS Windows desktops. Just look at Samsung Galaxy Tabs and you will understand what I mean.

 (0)   65 Comment(s)

---

**Related Articles**

- Sailfish OS 1.0.5.16 released
- Stock Android ported to Nokia X
- The HTC One M8 Google Play edition

**Technology White Papers**

- 2013 Application & Service Delivery Handbook
- Forrester Report: The 10 Most Important Technology Trends in Business Application Architecture Today
- Windows 7 - The Pocket Guide

See More

OSNews Privacy Statement  |  Notice to Bulk Emailers

© 1997-2014 OSNews Inc. All Rights Reserved. OSNews and the OSNews logo are trademarks of OSNews.

Source Code © 2007-2014, Adam Scheinberg, except where noted

Reader comments are owned by the poster. We are not responsible for them in any way.

All trademarks, icons, and logos shown or mentioned in this web site are the property of their respective owners.

OSNews.com uses icons from the Tango Project and FamFamFam. jQuery © 2008 John Resig

Reproduction of OSNews stories is permitted only with explicit authorization from OSNews. Reproductions must be properly credited.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC., | § § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA OR, IN THE ALTERNATIVE, TO STAY

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................1

I.      The Court Should Transfer This Case to the Northern District of California ....................1

        A.      Rockstar Has No Meaningful Connection to This Forum ......................................1

        B.      The Private Interest Factors Strongly Favor Transfer................................................2

        C.      The Public Interest Factors Also Favor Transfer or Are Neutral............................4

II.     In the Alternative, the Court Should Stay This Case ........................................................4

        A.      The Google Action Will Resolve Major Issues in Dispute......................................4

        B.      The Customer-Suit Exception Applies to Google's Customers ............................5

Conclusion ..................................................................................................................5

## INTRODUCTION

Rockstar's patents in this action will be tested and, if necessary, tried to a jury in *Google Inc. v. Rockstar Consortium US LP*, No. 13-5933 (N.D. Cal.) (the "Google Action").  The Court in the Google Action has already ruled that (1) the Google Action was the first-filed action between Rockstar and Google; (2) all of Rockstar's actions in this District are "customer suits" that should be stayed or transferred to the venue of the manufacturer, Google; (3) the § 1404 venue factors favor hearing this dispute in the Northern District of California; and (4) the Google Action should proceed in that Court.  Despite this ruling, Rockstar has not withdrawn its opposition to Defendants' motion to transfer, and now evidently seeks wasteful, duplicative litigation in both this Court and the Northern District.  Rockstar's arguments against transfer cannot withstand scrutiny, and the Northern District already considered and rejected them.  This Court should prevent wasteful and overlapping parallel actions by transferring this case to the Northern District of California or, in the alternative, staying it until that action is resolved.

## ARGUMENT

### I.    The Court Should Transfer This Case to the Northern District of California

#### A.    Rockstar Has No Meaningful Connection to This Forum

Rockstar claims "meaningful, longstanding connections" to this District (Opp. at 6-7), but cannot dispute that it created MobileStar only one day before filing this action (Dkt. 52-9), in circumstances the Northern District found "strongly suggest that Rockstar formed MobileStar as a sham entity" that was "created solely for litigation purposes."  (894 Dkt. 71-1 at 9 and 17.)  Rockstar's brief does not address or even mention MobileStar's creation, and Rockstar no longer trumpets MobileStar's "separate" corporate form as anchoring this case in this District.  (Declaration of Kristin Madigan ("Madigan Decl.") Exs. 1 at 6-9; 2 at 2-5.)  Instead, Rockstar focuses on its small office of five people in Plano, Texas.  (Opp. at 6-7.)  But this office is

irrelevant for at least three reasons.  First, it only opened in December 2012, just ten months before Rockstar filed this suit.  (Dkt. 61-7 ¶ 20.)  To avoid just this kind of manipulation, "the recent opening of an office" by a plaintiff cannot affect the venue analysis.  *In re Toyota Motor Corp.*, — F.3d —, 2014 WL 1316595, at *2 (Fed. Cir. Apr. 3, 2014).  Second, despite Rockstar's contrary claim (Dkt. 1 ¶¶ 1-2), "Rockstar's 'nerve center,' or the place where its 'officers direct, control, and coordinate the corporation's activities,'" is not here but in Ottawa, Canada.  (894 Dkt. 71-1 at 3.)  Third, even if the Plano office *were* important to Rockstar (and it is not), it *cannot* be important to this litigation or even part of it, because it is conflicted from participation.  One of its three attorneys is Alfi Guindi, now Senior IP Counsel at Rockstar but a former attorney at Samsung.  (Madigan Decl. Ex. 3.)  Rockstar has confirmed that Mr. Guindi "will not be involved now or in the future in the litigation."  (*Id.* Ex. 4.)  The two other attorneys in Rockstar's tiny Plano office are similarly conflicted.  Texas Disc. Rule 1.09(b) & Preamble.

### B.    The Private Interest Factors Strongly Favor Transfer

In their motion to transfer, Google and Samsung explained in detail why the private interest factors favor the Northern District.  (Mot. at 7-15.)  Rockstar's response assembles cherry-picked facts, often in a conflicting manner.  For example, in its latest attempt to argue there are relevant documents in this District, Rockstar now directs the Court toward "documents from Rockstar equity owners BlackBerry and Ericsson, who reside in the Dallas area" (Opp. at 9), but only one page later argues that "Rockstar equity owners and Nortel bidders will be irrelevant" to this action.  (Opp. at 10.)  And Rockstar seeks to avoid transfer using documents in its conflicted Plano office (*id.* at 9 n.1), but neglects to mention that it moved those documents there *itself*, ten months before filing its complaint, an action this Court should "closely scrutinize" to determine "whether any venue manipulation exists."  *InMotion Imagery Techs., LLC v. Imation Corp.*, 2013 U.S. Dist. LEXIS 41830, at *7-8 n.1 (E.D. Tex. Mar. 25, 2013).

Most importantly, however, Rockstar entirely ignores its majority equity owner, Apple, which resides in the Northern District of California.  (Dkt. 52-5.)  As the Northern District has recognized, there is a "direct link between Apple's unique business interests, separate and apart from mere profitmaking, and Defendants' actions against Google and its customers."  (894 Dkt. 71-1 at 18.)  As Defendants have already explained, Rockstar will likely argue that Google's bids for the Nortel portfolio show value of the patents-in-suit; to combat this argument, Defendants must obtain discovery from Apple showing its motivations and reasoning behind its own bids as well as the creation of Rockstar itself.  (Mot. at 12.)  Rockstar says nothing against this point, except to note that other equity owners may be equally relevant.  (Opp. at 10.)  This argument ignores Rockstar's telling focus on Android, ignores Apple's status as its majority owner, and ignores the Northern District's finding of a "direct link" between them.  (894 Dkt. 71-1 at 18.)

Defendants showed that dozens of prior artists for the asserted patents reside in the Northern District.  (Dkt. 52 at 11 n.3.)  In response, Rockstar identifies *two* non-party witnesses in this District, and relies primarily on affidavits from potential witnesses, residing *in Canada*, who aver that trial here would be convenient for them.  (Dkt. Nos. 61-2 ¶¶ 6-7; 61-6 ¶¶ 6-7; 61-8 ¶¶ 6-7.)  The Court should ignore these dubious declarations, which provide no rationale for their statements that this Court would be more convenient than the Northern District—where Rockstar's witnesses carefully do not say that they would be *unwilling* to attend trial.  Rockstar identifies a few former Nortel employees and a single former Samsung employee (Opp. at 11), but none are in this District and none have strong connections to the action.  Availability of compulsory process and cost of attendance of trial thus strongly favor transfer.  (Mot. at 11-13.)

Finally, this Court should transfer this action to avoid the "existence of duplicative suits involving the same or similar issues" and "practical difficulties" presented here.  *Ctr. One v. Vonage Holdings Corp.*, 2009 WL 2461003, at *22 (E.D. Tex. Aug. 10, 2009).  Rockstar itself

stressed this point in its opposition brief (Opp. at 13-14) and before the Northern District

(Madigan Decl. Ex. 1 at 4-5, 19). Now that the Google Action will proceed, Rockstar cannot

suddenly demand *two* sets of actions supervised by *two* courts in *two* districts.

### C.    The Public Interest Factors Also Favor Transfer or Are Neutral

As the Northern District of California has already found, that Court "has the greater

interest in this litigation because the claims here will 'call into question the work and reputation

of several individuals residing in or conducting business in this community.'" (894 Dkt. 71-1 at

27 (citing *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).)  This District has

much less interest:  although Rockstar claims "to have substantial ties to Texas, their

headquarters appear to be in Canada." (*Id.*)  Rejecting the arguments Rockstar makes here, the

Northern District found the remaining public interest factors "are either neutral or favor Google"

because both "cases are in early stages," much evidence is in California, and each "forum is

familiar with patent law, and both have similar court congestion and time to trial." (*Id.* at 28.)

## II.    In the Alternative, the Court Should Stay This Case

Should the Court decline to transfer venue to the Northern District of California, the

Court should stay this action pending final resolution of the Google Action.  Rockstar argues that

it is not subject to personal jurisdiction in the Northern District (Opp. at 6), but the Northern

District itself has already resolved that issue, against Rockstar. (894 Dkt. 71-1 at 19-20.)

Rockstar's remaining objections to a stay are similarly meritless.

### A.    The Google Action Will Resolve Major Issues in Dispute

As the Northern District already found, the Google Action will resolve major issues in

this case. (*Id.* at 26.)  Rockstar only briefly argues otherwise, and those arguments fall flat.

Rockstar first contends that "Samsung has not agreed to be bound" by resolution of the Google

action, but that is irrelevant if the Google Action itself would resolve major issues here, which

the Northern District has already found.  (Opp. at 5; 894 Dkt. 71-1 at 26.)  Rockstar also suggests

that "individualized questions of damages" might remain (Opp. at 6), but this is *always* true in

*every* customer suit; if damages issues were sufficient to avoid consolidating duplicative

litigation under the customer-suit exception, no litigation could ever fall under the customer-suit

exception.  *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358

(Fed. Cir. 2011).  Finally, Rockstar briefly mentions "major, hardware-specific issues raised by

Rockstar's infringement claims against Samsung"—but fails to describe them.  (Opp. at 6.)

### B.      The Customer-Suit Exception Applies to Google's Customers

After targeting only Android OEMs and asserting infringement only by Android devices,

Rockstar now tries to run from its prior allegations, stating that "this case is *not* about

Android."  (Opp. at 4.)  But this case *is* about Android:  Rockstar sued only Android OEMs,

accused only Android devices (Mot. at 2), and Rockstar's infringement contentions cite directly

to code excerpts from Google's Android website.  (Madigan Decl. Ex. 5.)  As a result, the

"relationship between Google and the [Texas] defendants is one of manufacturer and customer"

and "the customer-suit exception to the first-to-file rule would apply."  (894 Dkt. 71-1 at 24.)  If

the Court declines transfer, it should stay this action pending resolution of the Google Action.[1]

### CONCLUSION

For the forgoing reasons, this Court should transfer this matter to the Northern District of

California or, in the alternative, stay this case pending the resolution of that action.

---

[1]  Rockstar claims that *Spread Spectrum* limits the exception to "mere resellers." (Opp. at 4.)  But "the guiding principles in the customer suit exception cases are efficiency and judicial economy."  *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).  *Spread Spectrum* clarified that the manufacturer suit "need only  have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits."  *Id.* at 1358.  Courts routinely find stay appropriate where the manufacturer's technology is the focal point of the litigation, as in where the manufacturer "has primary and final control of any design and manufacturing process that might infringe upon [plaintiff]'s patents."  *Delphi Corp. v. Auto. Techs. Int'l, Inc.*, 2008 WL 2941116, at *4 (E.D. Mich. July 25, 2008).

Dated:  April 25, 2014          Respectfully submitted,


|  | /s/ J. Mark Mann |
|---|---|
| J. Mark Mann (State Bar No. 12926150) | J. Mark Mann (State Bar No. 12926150) |
| mark@themannfirm.com | mark@themannfirm.com |
| G. Blake Thompson (State Bar No. 24042033) | G. Blake Thompson (State Bar No. 24042033) |
| blake@themannfirm.com | blake@themannfirm.com |
| MANN \| TINDEL \| THOMPSON | MANN \| TINDEL \| THOMPSON |
| 300 West Main Street | 300 West Main Street |
| Henderson, Texas  75652 | Henderson, Texas  75652 |
| (903) 657-8540 | (903) 657-8540 |
| (903) 657-6003 facsimile | (903) 657-6003 facsimile |

| Charles K. Verhoeven (Cal. Bar. No. 170151) | Charles K. Verhoeven (Cal. Bar. No. 170151) |
|---|---|
| Sean Pak (Cal. Bar. No. 2190323) | Sean Pak (Cal. Bar No. 219032) |
| quinn-samsung-e.d.tex.-13-0900 | Amy H. Candido (Cal. Bar No. 237829) |
|    @quinnemanuel.com | Matthew S. Warren (Cal. Bar No. 230565) |
| QUINN EMANUEL URQUHART | quinn-google-e.d.tex.-13-00900 |
|    & SULLIVAN, LLP |    @quinnemanuel.com |
| 50 California Street, 22nd Floor | QUINN EMANUEL URQUHART |
| San Francisco, California 94111 |    & SULLIVAN, LLP |
| (415) 875-6600 | 50 California Street, 22nd Floor |
| (415) 875-6700 facsimile | San Francisco, California  94111 |
|  | (415) 875-6600 |
| Kevin P.B. Johnson (Cal. Bar No. 177129) | (415) 875-6700 facsimile |
| QUINN EMANUEL URQUHART |  |
|    & SULLIVAN, LLP | *Attorneys for Defendant Google Inc.* |
| 555 Twin Dolphin Dr., 5th Floor |  |
| Redwood Shores, California  94065 |  |
| (650) 801-5000 |  |
| (650) 801-5100 facsimile |  |

Joseph Milowic III (NY Bar. No. 4,622,221)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000
(212) 849-7100 facsimile

*Attorneys for Defendants Samsung Electronics, Co., Ltd.,*
*Samsung Electronics America, Inc., and Samsung*
*Telecommunications America, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 25, 2014.

/s/ J. Mark Mann
J. Mark Mann

ZIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC., | § § § § § | |
| Defendants. | § § | |

**DECLARATION OF KRISTIN J. MADIGAN
IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA OR, IN THE ALTERNATIVE, TO
STAY**

I, Kristin J. Madigan, hereby declare as follows:

1.        I am Of Counsel at Quinn Emanuel Urquhart & Sullivan, LLP, counsel for defendants.  I submit this declaration in support of Defendants' Reply in Support of Motion To Transfer To The Northern District Of California Or, In The Alternative, To Stay.  I have personal knowledge of the following facts, and would competently testify to them if called upon to do so.

2.        Attached hereto as Exhibit 1 is a true and correct copy of Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for Lack of Personal Jurisdiction and Improper Venue And To Decline Exercising Jurisdiction Under The Declaratory Judgment Act, No. 13-5933 (N.D. Cal. Jan. 23, 2014), Docket No. 20.

3.        Attached hereto as Exhibit 2 is a true and correct copy of Defendants' Reply to Google Inc.'s Opposition to Defendants' Motion to Dismiss And To Decline Exercising Jurisdiction Under The Declaratory Judgment Act, No. 13-5933 (N.D. Cal. Feb. 13, 2014), Docket No. 40.

4.        Attached hereto as Exhibit 3 is a true and correct copy of a letter from Joseph Milowic III to David Sochia, dated January 9, 2014.

5.        Attached hereto as Exhibit 4 is a true and correct of a letter from Jared M. Hoggan to Joseph Milowic III, dated February 18, 2014.

6.        Attached hereto as Exhibit 5 is a true and correct copy of Rockstar's Infringement Contention claim chart for  U.S. Patent No. 6,937,572.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 25, 2014, at San Jose, California.

/s/ *Kristin J. Madigan*
_____
Kristin J. Madigan

1

**– A1130 –**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record have consented to electronic service and are

being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-

5(a)(3) on April 25, 2014.

<div align="right">

*/s/ J. Mark Mann*    
J. Mark Mann

</div>

Case 2:13-cv-00900-JRG   Document 66-2   Filed 04/25/14   Page 1 of 34 PageID #:  4007

# EXHIBIT 1

Case 2:13-cv-00900-JRG-RSP  Document 66-2  Filed 04/25/14  Page 2 of 34 PageID #:  4008

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

Courtland L. Reichman (SBN 268873)
creichman@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065
Telephone: (650) 394-1400
Fax: (650) 394-1422

ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE

Attorneys for Defendants Rockstar
Consortium US LP and MobileStar
Technologies LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| Google, Inc. | Case No. 13-cv-5933 CW |
| Plaintiff, | |
| vs. | **DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) AND 12(b)(3) FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT** |
| Rockstar Consortium U.S. LP and MobileStar Technologies LLC | |
| Defendants. | |
| | Date: March 13, 2014 |
| | Time: 2:00 p.m. |
| | Courtroom: TBD |
| | Judge: Hon. Claudia Wilken |

DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE
EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT—Case No. 3:13-cv-5933-CW

McKool 960087v1

– A1133 –

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

TO PLAINTIFF GOOGLE INC. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, March 13, 2014, at 2:00 p.m., or as soon thereafter as it may be heard, Defendants Rockstar Consortium U.S. LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar) respectfully will move, and hereby do move, to dismiss Plaintiff Google Inc.'s Complaint for Declaratory Judgment of Non-Infringement (D.I. 1) filed on December 23, 2013. Defendants Rockstar and MobileStar respectfully bring this motion pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure upon the grounds that this Court lacks personal jurisdiction over Defendants and this forum is an improper venue; Defendants also maintain that this Court should decline exercising jurisdiction under the Declaratory Judgment Act. This motion is supported by the attached Memorandum of Points and Authorities, the accompanying Declaration of Afzal Dean, the record in this matter, and any other argument that the Court may accept at the hearing.

**RELIEF REQUESTED**

Defendants Rockstar and MobileStar seek an order granting their motion to dismiss Plaintiff Google Inc.'s Complaint for lack of personal jurisdiction and improper venue and to decline exercising jurisdiction under the Declaratory Judgment Act.

Dated January 23, 2014.

Respectfully submitted,

By:/s/ Courtland Reichman
    Courtland L. Reichman (SBN 268873)
    McKool Smith Hennigan, P.C.
    255 Shoreline Drive Suite 510
    Redwood Shores, CA 94065
    (650) 394-1400
    (650) 394-1422 (facsimile)

    Mike McKool (Pro Hac Vice Application to be
    filed)
    mmckool@mckoolsmith.com
    Douglas A. Cawley (Pro Hac Vice Application
    to be filed)

-ii-

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

| | |
|---|---|
| 1 | dcawley@mckoolsmith.com |
| | Ted Stevenson III (Pro Hac Vice Application to |
| 2 | be filed) |
| | tstevenson@mckoolsmith.com |
| 3 | David Sochia (Pro Hac Vice Application filed) |
| | dsochia@mckoolsmith.com |
| 4 | McKool Smith, P.C. |
| | 300 Crescent Court Suite 1500 |
| 5 | Dallas, TX 75201 |
| | (214) 978-4000 |
| 6 | (214) 978-4044 (facsimile) |
| 7 | |
| | Attorneys For Defendants |
| 8 | Rockstar Consortium U.S. LP and |
| | MobileStar Technologies LLC |
| 9 | |

-iii-

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**TABLE OF CONTENTS**

I. Introduction And Summary Of The Argument ....................................................... - 1 -

    A.    Google's Theory Of Personal Jurisdiction Conflicts With Controlling Precedent ............................................................................................... - 1 -

    B.    This Suit Was Filed In An Improper Venue ............................................. - 3 -

    C.    The Court Should Exercise Its Discretion And Refuse Jurisdiction ........ - 3 -

II. Statement of Facts ............................................................................................... - 5 -

    A.    Rockstar And MobileStar's First-Filed Suit In the Eastern District of Texas .......... - 5 -

    B.    MobileStar and Rockstar Are Texas Companies With Few California Contacts ..... - 5 -

III. This Court Lacks Personal Jurisdiction Over MobileStar ..................................... - 6 -

    A.    This Court Has Neither General Nor Specific Personal Jurisdiction Over Mobilestar ........................................................................................ - 7 -

    B.    Lacking Jurisdiction Over MobileStar, Google's Complaint Must Be Dismissed ........................................................................................... - 8 -

IV. This Court Lacks Personal Jurisdiction Over  Rockstar ...................................... - 10 -

    A.    Rockstar's Limited Patent Discussions Do Not Subject It To Specific Jurisdiction In California ........................................................................ - 10 -

    B.    Rockstar's Minimal Contacts With California Are Permissible Patent Licensing Discussions That Do Not Subject Rockstar To Specific Jurisdiction .... - 11 -

    C.    Rockstar's Sporadic And Insubstantial Contacts With California Do Not Give Rise To General Jurisdiction ......................................................... - 13 -

        1.    Rockstar's is a Texas entity and does not have contacts with California that "approximate a physical presence" .................................... - 13 -

        2.    Rockstar's lone, part-time, independent contractor in California does not subject Rockstar to general jurisdiction ........................... - 14 -

        3.    Revenue generated from non-exclusive licensees located in California is insufficient to justify general jurisdiction ........................ - 15 -

        4.    The contacts of Rockstar's shareholders may not be imputed to Rockstar ........................................................................................... - 15 -

V. This District Is Not The Proper Venue For This Suit ........................................... - 16 -

VI. The Court Should Decline to Exercise Jurisdiction Over Google's Claims .......... - 17 -

    A.    The Court Has Discretion To Decline Jurisdiction Over Declaratory Claims ........ - 17 -

    B.    The Court Should Decline Jurisdiction Because Google's Claims Do Not Meet The Purpose Of The Declaratory Judgment Act ........................... - 18 -

-iv-

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1.    The Court should decline jurisdiction because Google's complaint is an attempt at forum shopping ................................................................- 18 -

2.    Google's claims are an inefficient use of judicial resources......................- 19 -

C.    The Court Should Decline to Assert Jurisdiction Under the First-Filed Rule ........- 20 -

1.    The Texas Actions are first-filed and should be favored...........................- 20 -

2.    Judicial efficiency and interests of justice favor the Texas Actions...........- 22 -

VII. Conclusion.........................................................................................- 24 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-v-

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**TABLE OF AUTHORITIES**

3D Sys. Inc. v. Aarotech Labs., Inc., 160 F.3d 1373(Fed. Cir. 1998)…………………….…15, 20

A123 Sys. v. Hydro-Quebec, 626 F.3d 1213 (Fed. Cir. 2010)……………………………..9, 13

Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419 (4th Cir. 1998). ………………..5,9

Arrowhead Indus. Water, Inc., 846 F.2d ………………………………………………………… 23

Autogenomics Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012 (Fed. Cir. 2009)..3, 7, 11,12,15,17

Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324 (Fed. Cir. 2008) …......1,6,8,10,15,16

Campbell Pet Co. v. Miale, 542 F.3d 879 (Fed. Cir. 2008)…………..………………….12, 16

Catalyst Assets LLC v. Life Techs. Corp., 2012 U.S. Dist. LEXIS 84347, *7-8

  (N.D. Cal. June 17, 2012) …………………………………………………………......22, 23

Cf. Continental Grain Co. v. The FBL-585, 364 U.S. 19 (1960) …………………………...4, 8

Daimler AG v. Bauman, No. 11-965, slip op. 14 n.11 (U.S. Jan. 14, 2014)…………....... 6,7,17,19

E.E.O.C. v. Peabody Western Coal Co., 400 F.3d 774 (9th Cir. 2005)……………... …….6, 9, 13

Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341 (Fed. Cir. 2005)

  (quoting Wilton v. Seven Falls Co., 515 U.S. 277 (1995)……………….………….3, 8,21,22

EMC Corp. v. Norand Corp., 89 F.3d 807 (Fed. Cir. 1996)…………………………………21

Futurewei Techs., Inc. v. Acacia Research Corp., 737 F.3d 704 (Fed. Cir. 2013) …………..25

Gen. Tire & Rubber Co. v. Watkins, 373 F.2d 361 (4th Cir. 1967)…………………………..4, 9

Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931 (Fed. Cir. 1993)……………………………… 24

Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408 (1984)………………7, 12, 18

Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800 (9th Cir. 2002)…………………..4, 8, 23

IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008,

  (N.D. Cal. 2000) (citing CP Nat'l. Corp. v. Bonneville Power Admin., 928 F.2d 905

  (9thCir.1991))……………………………………………………………………….....8,13

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)……………………………...7,8,11,12

Intersearch Worldwide, Ltd. v. Intersearch Group, Inc., 544 F.Supp.2d 949, 959

  (N.D. Cal.2008)…………………………………………………………………………… 25

Juniper Networks, Inc. v. SSL Servs., LLC, Case No. 08-cv-5758, 2009 U.S. Dist. LEXIS

  112399, *11-12 (N.D. Cal. Nov. 16, 2009)……………………………………………11,16

Kescoli v. Babbitt, 101 F.3d 1304 (9th Cir. 1996)……………………………………...… 14

Case 2:13-cv-00903-JRG-RSP Document 66-2 Filed 04/25/14 Page 8 of 37 PageID #: 4014

Kyocera Communs., Inc. v. ESS Techs. Int'l, Inc., 2012 U.S. Dist. LEXIS 89267, *7-8 (N.D. Cal. June 27, 2012)…………………………………………………………...…………18, 22, 24

Merial Ltd. v. Cipla Ltd., 681 F.3d 1283………………………………………………………4,9,24,26

Microchip Tech., Inc. v. United Module Corp., CV-10-04241-LHK, 2011 U.S. Dist. LEXIS 73276, 2011 WL 2669627 (N.D. Cal. July 7, 2011 ………………………………….…….. 25, 26

Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir.1982)……………………25

Proofpoint, Inc. v. InNova Patent Licensing, LLC, 2011 U.S. Dist. LEXIS 120343, (N.D. Cal. Oct. 17, 2011)………………………………………………………………………………25, 26

Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237(1952)………………….…………. 21

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (U.S. 1996)…………………………….....…21

Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785 (Fed. Cir. 2011)…………………..8,10, 12,15

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355
(Fed. Cir. 1988) ………………………………………………………..……….....7, 8, 10, 12,14

Serco Servs. Co., L.P. v. Kelley Co., 51 F.3d 1037(Fed. Cir. 1995)……………...…………..23

Smugmug, Inc. v. Virtual Photo Store LLC, Case No. 09-cv-2255 CW, 2009 U.S. Dist. LEXIS 112400, *11 (N.D. Cal. Nov. 16, 2009)……………………………………….....10,15, 17

Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271 (Fed. Cir. 2007))…………...21

Teva Pharms. USA, Inc. v. Eisai Co., 620 F.3d 1341 (Fed. Cir. 2010)……………………4, 8, 23

Vanguard Prods. Group, Inc. v. Protex Int'l Corp., No. 05 C 6310, 2006 WL 695700 ……….4, 9

**Other Authorities**

28 U.S.C. §§ 1391(b) and (c) ……………………………………………………...……3,16, 20

Cal. Civ. Proc. Code § 410.10……………………………………………...………………7, 11

Fed. R. Civ. P. 12(b)(2) …………………………………………………………………6, 11

Fed. R. Civ. P. 19(b)…………..…………………………………………………………9,13

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    Introduction And Summary Of The Argument**

3        Google filed this suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, to determine

4    whether its "Android platform" and related products infringe the patents-in-suit. But Google has

5    sued two parties with no material California ties, and invites the Court to resolve a dispute that was

6    already pending—and will *remain* pending—in a proper forum in Texas. Google is the "natural"

7    defendant, and its *second*-filed declaratory action cannot trump the "natural" plaintiffs' *first*-filed

8    action in Texas. Google could have asserted its claims as *defenses* in the preexisting Eastern District

9    of Texas action, and there was no legitimate reason for Google to file its own duplicative action

10   here.

11

12       **A.    Google's Theory Of Personal Jurisdiction Conflicts With Controlling Precedent**

13       According to Google, "Rockstar" (defined as including MobileStar) engages in certain

14   business activities in California, including meetings, providing notice of patent rights and discussing

15   licensing opportunities. Compl. 3-4. Even if true, as a matter of law, such limited contacts cannot

16   establish general or specific jurisdiction over either Rockstar or MobileStar. While Google's

17   complaint defines "Rockstar" as including MobileStar, each are separate legal entities, whose

18   contacts with California must be separately examined. *Avocent Huntsville Corp. v. Aten Int'l Co.*,

19   552 F.3d 1324, 1329 (Fed. Cir. 2008) ("[e]ach defendant's contacts with the forum State must be

20   assessed individually"). ████████████████████████████████

21

22   ████████████████████████████████████████████████ Yet, MobileStar is an indispensable party to

23   this litigation—it is the owner of five of the seven patents-in-suit and the exclusive licensee of the

24   other two patents. In the absence of jurisdiction as to MobileStar, this action must be dismissed.

25   *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005) (If an indispensable

26   party cannot be joined, the action must be dismissed).

27

28

DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE
EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT—Case No. 3:13-cv-5933-CW

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

Moreover, general jurisdiction requires "affiliations 'so "continuous and systematic" as to render [the foreign corporation] *essentially at home in the forum State*,' *i.e.*, comparable to a *domestic enterprise in that State*." *Daimler AG v. Bauman*, No. 11-965, slip op. 14 n.11 (U.S. Jan. 14, 2014) (emphases added); *see also id.* at 20 (specifically rejecting Google's lead theory that it is sufficient to assert "continuous and systematic" contacts (Compl. 3)—instead, the proper inquiry is whether those contacts are "*so* 'continuous and systematic' *as to render [the corporation] at home in the forum State*") (emphasis added). In only "exceptional case[s]" will this standard sweep in corporations like Rockstar and MobileStar from outside their "formal place of incorporation or principal place of business" (*id.* at 20 n.19), and this is no such "exceptional" case. Rockstar and MobileStar do not bear a single hallmark of a California enterprise, and there is no good-faith basis for asserting they are effectively *California corporations*. Rockstar's and MobileStar's limited in-state contacts are the same kind of contacts that arise in routine business dealings. If a handful of meetings, visits, and engagements qualify for "all-purpose" jurisdiction, it is difficult to imagine any business with a nationwide practice avoiding "general jurisdiction" in every State. That is directly contrary to general jurisdiction's "less dominant" role in "the contemporary scheme." *Id.* at 14.[1]

Nor does Rockstar's and MobileStar's so-called "enforcement campaign" establish specific jurisdiction. Compl. 3. A patentee is afforded "sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe,* 148 F.3d at 1360-61. The ordinary activities of "offer[ing]…a license," sending "cease-and-desist letter[s]," and "initiat[ing] settlement negotiations" are per se insufficient under the controlling framework. *Id.* Google's allegations are limited to exactly the kind of "efforts" that are *not* "to be considered for

---

[1] Google's allegation that "Rockstar's licensing and enforcement efforts in California have generated substantial revenues" is also incompatible with circuit law: the in-state contacts of *licensees* are not "'constitutionally cognizable' for purposes of jurisdiction," and thus "any financial benefits accruing to [Rockstar and MobileStar] from [their] licensees' relations with [California] are irrelevant." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998).

-- 2 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

establishing specific personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009).[2]

### B.    This Suit Was Filed In An Improper Venue

Contrary to Google's contention, this is *not* a "judicial district in which any defendant resides," since Rockstar and MobileStar each reside *in Texas*. 28 U.S.C. § 1391(b)(1). Nor did a "substantial part" of any act underlying "the claim" occur in California (*id.* § 1391(b)(2)), since "the claim" is *patent infringement*—and Rockstar and MobileStar's effort to "enforce[]" these patent claims is ongoing *in Texas*. *Autogenomics*, 566 F.3d at 1020 (distinguishing patent litigation from pre-enforcement efforts to "commercialize" a patent). Finally, the Eastern District of Texas is *both* a "district in which [this] action may otherwise be brought" and a "judicial district," unlike this one, "in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b)(3). The only reason this action was filed in this venue was because it was Google's preferred forum— Google's preference, however, is not a relevant consideration under the statutory scheme.

### C.    The Court Should Exercise Its Discretion And Refuse Jurisdiction

This Court has "unique and substantial discretion" to refuse jurisdiction under the Declaratory Judgment Act. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Congress authorized declaratory relief so that "natural" defendants (like Google here) would not be forced into the intolerable position of endlessly awaiting a suit that could establish their rights. *See, e.g.*, *Electronics for Imaging*, 394 F.3d at 1345. Here, however, there is no need for § 2201 relief because Google is not "'await[ing] the commencement of legal action by the other side.'" *Id.* Google, the "natural"

---

[2] Google also asserts that "Rockstar's shareholders" have substantial California contacts (Compl. 3), which might be relevant if this suit were against—*Rockstar's shareholders*. Rockstar and MobileStar are separate corporate entities with their own corporate identities. Unless Google wishes to pierce the corporate veil—a theory unmentioned anywhere in its complaint—there is no rule of law or logic that subjects a corporation to jurisdiction anywhere its shareholders can be sued.

-- 3 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    defendant, has attempted to *avoid* the preexisting "legal actions" in Texas in favor of filing a

2    redundant suit in this Court.

3         This case thus accomplishes exactly *none* of the Act's objectives: by favoring Google's

4    second-filed declaratory action over the first-filed action in the Eastern District of Texas, the court

5    would (i) embrace duplicative litigation in multiple forums; (ii) create an unnecessary risk of

6    inconsistent verdicts; and (iii) reward Google, the "natural" defendant, for its explicit act of forum-

7    shopping (while imposing undue burdens on Rockstar and MobileStar, the "natural" plaintiffs, for

8    electing a Texas forum where all seven actions could be litigated in a single district). *See, e.g.*, *Teva*

9    *Pharms. USA, Inc. v. Eisai Co.*, 620 F.3d 1341, 1349 (Fed. Cir. 2010); *Huth v. Hartford Ins. Co. of*

10   *the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002).

11        This type of duplicative, two-track litigation is not an acceptable use of judicial or party

12   resources. Rockstar and MobileStar, the "natural" plaintiffs, chose Texas as an appropriate forum for

13   the pending litigation; it is a forum that all parties can access fairly, and it is one in which an open

14   court will fully resolve the very dispute Google wishes to relitigate here. *Cf. Continental Grain Co.*

15   *v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving

16   precisely the same issues are simultaneously pending in different District Courts leads to the

17   wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Gen. Tire &*

18   *Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967) (rejecting "extravagantly wasteful and

19   useless duplication of the time and effort of the federal courts by the simultaneous trial of two

20   complex and elaborate cases involving substantially the same factual issues"). Once Rockstar and

21   MobileStar filed their actions in Texas, there was no legitimate reason for Google to file its own

22   duplicative action here. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). "The

23   Declaratory Judgment Act is not a tool to be used by potential litigants for the purpose of securing

24   the forum." *Vanguard Prods. Group, Inc. v. Protex Int'l Corp.*, No. 05 C 6310, 2006 WL 695700, at

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

*5 (N.D. Ill. Mar. 14, 2006); *accord Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998).

\*      \*  \*

For any of these independent reasons, there is no basis for invoking the Court's jurisdiction over this duplicative, second-filed, declaratory action. The Court should dismiss Google's complaint and permit the dispute to be resolved in the ordinary course—the "seven lawsuits" Google itself recognizes (Compl. 1) have already been filed in the Eastern District of Texas.

## II.    Statement of Facts

### A.    Rockstar And MobileStar's First-Filed Suit In the Eastern District of Texas

On October 31, 2013, Rockstar and MobileStar filed a series of actions in the Eastern District of Texas alleging that several companies—ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE—infringed seven patents. ("Texas Actions"); *see* Exh. A-G. MobileStar owns five of the seven patents and is the exclusive licensee (from Rockstar) of the other two patents. Declaration of Afzal Dean ("Dean Decl.") at ¶¶ 5, 15, 24. The same seven patents are at-issue in Google's complaint. Compl. 2.

Google did not seek to intervene in the Texas Actions.  Instead, it filed this declaratory-judgment suit on December 23, 2013, nearly two months after the Texas Actions were filed. On December 31, 2013, Rockstar and MobileStar added Google as a defendant in their already-pending suit against Samsung. Exh. H. Google's answer is due in Texas on February 17, 2014.

### B.    MobileStar and Rockstar Are Texas Companies With Few California Contacts

Rockstar and MobileStar are both Delaware entities with principal places of business in Plano, Texas. Dean Decl. at ¶¶ 5, 15. Rockstar is MobileStar's parent. *Id.* at ¶ 15.

Rockstar and MobileStar's Texas roots are long-standing and substantial. Rockstar and MobileStar acquired the patents-in-suit from Nortel Networks, a company that went bankrupt in 2011. Nortel's U.S. headquarters was in Richardson, Texas. *Id.* at ¶ 27. As explained in more detail

-- 5 --

Case 2:13-cv-00900-JRG-RSP Document 66-2 Filed 04/25/14 Page 12 of 34 PageID #: 4020

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

in the attendant declaration, Nortel had a substantial presence in Texas prior to its bankruptcy, and many of Rockstar's and MobileStar's current employees are former Nortel employees. *Id.*

Neither Rockstar nor MobileStar is licensed to do business in California. *Id.* at ¶¶ 6-9, 16, 22-24, 29-33. They have no agent for service of process in California, have never signed any contracts in California, have never owned real or personal property in California, have never maintained offices in California, and have never maintained any records in California. *Id.* They pay no California taxes and do not have any employees, officers, or board members who live in California. *Id.* They have not filed any lawsuits in California, have not engaged in extra-judicial enforcement activities in California,

Rockstar's California contacts are limited to the following:

- 

- 

- A single part-time independent contractor who lives in California. *Id.* at ¶ 34.

- The presence of at least one shareholder (Apple Inc.) in California. *Id.* at ¶ 35. However, Rockstar's shareholders do not direct or control Rockstar's licensing efforts—these activities are directed and controlled by Rockstar's management team. *Id.*

- 

**III. This Court Lacks Personal Jurisdiction Over MobileStar**

Fed. R. Civ. P. 12(b)(2) requires that a court dismiss a defendant when it lacks personal jurisdiction over that defendant. Jurisdiction, whether general or specific, is a question of Federal

-- 6 --

McKool 960087v1

**– A1145 –**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    Circuit law. *Autogenomics*, 566 F.3d at 1016 (the "jurisdiction issue is intimately involved with the

2    substance of the patent laws.")

3    Determining whether jurisdiction exists over a foreign defendant involves two inquiries:

4    whether a forum state's long-arm statute permits service of process and whether assertion of

5    personal jurisdiction violates due process. *Id.* at 1017. Here, because California's long-arm statue is

6    co-extensive with the limits of due process, the only inquiry is whether the exercise of personal

7    jurisdiction comports with due process. *Cal. Civ. Proc. Code § 410.10.* Due process requires that the

8    defendant have "certain minimum contacts with the [forum] such that the maintenance of the suit

9    does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,*

10   326 U.S. 310, 316 (1945).

11   

12   There are two bases for personal jurisdiction, general and specific. General jurisdiction

13   requires that the defendant have "continuous and systematic contacts with the forum state and

14   confers personal jurisdiction even when the cause of action has no relationship with those contacts."

15   *Autogenomics,* 566 F.3d at 1017. Specific jurisdiction may be exercised subject to a three-part test

16   where (1) the defendant "purposefully directed" activities at residents of the forum, (2) the claim

17   "arises out of" or "relates to" those activities, provided that (3) personal jurisdiction is both

18   reasonable and fair. *Id.* at 1018.

19   

20   **A.    This Court Has Neither General Nor Specific Personal Jurisdiction Over**
     **Mobilestar**

21   

22   As for general jurisdiction, there is no good-faith basis for alleging that MobileStar is

23   equivalent to a "domestic enterprise" in California. *Daimler*, slip op. 14 n.11. MobileStar is a Texas

24   enterprise with has no meaningful connection to California. *See* Statement of Facts, *supra*. There is

25   no general jurisdiction over MobileStar in California. *Helicopteros Nacionales De Colombia, S.A. v.*

26   *Hall*, 466 U.S. 408, 411 (1984).

27   

28   ████████████████████████████████████

-- 7 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  ███████████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████████

3  ████ fails to establish the type of "minimum contacts" required for specific jurisdiction over

4  MobileStar in California. *Int'l Shoe*, 326 U.S. at 316; *Red Wing Shoe*, 148 F.3d at 1360-61 ("A

5  patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who

6  happens to be located there of suspected infringement."). ███████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ██████████████████████. Dean Decl. at ¶ 13. This type of discussion is *per se* inadequate under *Red*

9

10 *Wing Shoe* to establish the "minimum contacts" necessary to find specific jurisdiction. Moreover, a

11 single act of travel to the forum state cannot create specific jurisdiction in that state. *Radio Sys.*

12 *Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (multiple licensing meetings in forum

13 state insufficient to establish specific jurisdiction); *Autogenomics*, 566 F.3d at 1021 (travel to forum

14 state to negotiate patent license insufficient to establish specific jurisdiction).

15 Nor may Google impute Rockstar's alleged California contacts to MobileStar in order to

16 establish specific jurisdiction. *Avocent*, 552 F.3d at 1338 (rejecting complaint as "fatally deficient"

17

18 and refusing jurisdiction where plaintiff failed to include any allegations for imputing defendants'

19 contacts to related corporate entities). MobileStar and Rockstar are separate corporate entities and

20 there is no basis for attributing one entity's contacts to the other. *Id.* at 1329 ("[e]ach defendant's

21 contacts with the forum State must be assessed individually").

22
   **B.    Lacking Jurisdiction Over MobileStar, Google's Complaint Must Be Dismissed**
23
   A necessary party is one "having an interest in the controversy, and who ought to be made [a]
24
25 party, in order that the court may act on that rule which requires it to decide and finally determine

26 the entire controversy, and do complete justice, by adjusting all the rights involved in it." *IBC*

27 *Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D.

28 Cal. 2000) (citing *CP Nat'l. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991)).

-- 8 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"In general, . . . an accused infringer must likewise join both the exclusive licensee and the patentee in a declaratory action" because both are likely to be necessary parties. *See, e.g., A123 Sys. v. Hydro-Quebec*, 626 F.3d 1213, 1217, (Fed. Cir. 2010).  MobileStar owns five of the seven patents-in-suit, and is the exclusive licensee of the other two patents. Dean Decl. at ¶¶ 5, 15, 24. MobileStar undoubtedly has an interest in the controversy and ought to be made a party—MobileStar is therefore a necessary party to Google's complaint.

Lacking jurisdiction over MobileStar, a necessary party, the Court must thus determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b); *see also Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998) (applying Rule 19 to a declaratory judgment action and holding "[w]hether a party is indispensable under Rule 19(b) is a matter of regional circuit law"). If a party is indispensable but cannot be joined, the action must be dismissed. *See E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005).

Rule 19(b) establishes the factors courts can examine to determine whether a case should be dismissed for the inability to join a necessary party:

(1) prejudice to any party or to any absent party; (2) whether the relief can be shaped to lessen the prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternate forum.

*Kescoli v. Babbitt*, 101 F.3d 1304, 1310-11 (9th Cir. 1996). Without a doubt, (1) MobileStar would be prejudiced if the patents it owns (or is the exclusive licensee of) are declared invalid or non-infringed without its presence; (2) no relief can be shaped to lessen this prejudice; (3) no adequate remedy for Google could be awarded as to any of the seven patents-at-issue without the owner and exclusive licensee as a party; and (4) an alternate forum exists in the already-filed Texas Actions.

McKool 960087v1

Case: 14-147   Document: 2-4   Page: 46   Filed: 08/14/2014

Case 2:13-cv-00900-JRG-RSP Document 66-2 Filed 04/25/14 Page 18 of 34 PageID #:  4024
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**IV.    This Court Lacks Personal Jurisdiction Over  Rockstar**

    **A.    Rockstar's Limited Patent Discussions Do Not Subject It To Specific Jurisdiction In California**

Google alleges that Rockstar should be subject to specific jurisdiction in California because it engages in certain business activities in California, including discussions regarding its patents. Compl. 3-4. But Rockstar has minimal California contacts related to discussions of its patents. *See* Statement of Facts, *supra.*

These limited patent discussions do not give rise to specific jurisdiction in California. *Red Wing Shoe.,* 148 F.3d at 1361 ("Standards of fairness demand that [the patentee] be insulated from personal jurisdiction when its only contacts with that forum were efforts to give proper notice of its patent rights."). The Federal Circuit has made clear that, for purposes of specific jurisdiction, "enforcement activities" do not include warning others located in the forum state of suspected infringement, offering licenses to the patent, or sending cease-and-desist letters. *Radio Sys.,* 638 F.3d at 789 (patentee's numerous letters, phone calls, and meetings with plaintiff in forum state relating to licensing insufficient for specific jurisdiction); *Avocent,* 552 F.3d at 1340 (infringement letters sent to forum state insufficient for specific jurisdiction); *Autogenomics,* 566 F.3d at 1021 (traveling to forum state to negotiate a patent license and having ten licensees in the forum insufficient for specific jurisdiction); *Smugmug, Inc. v. Virtual Photo Store LLC,* Case No. 09-cv-2255 CW, 2009

_____

     ████████████████████████████████████████████  *See Red Wing Shoe,* 148 F.3d at 1361 (holding no specific jurisdiction even if patentee had 34 licensees doing business in the forum state because seeking licenses does not confer jurisdiction and licensees' contacts with forum may not be attributed to patentee).

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   U.S. Dist. LEXIS 112400, *11 (N.D. Cal. Nov. 16, 2009) (J. Wilken) (letters sent by patentee to

2   California companies seeking to discuss potential licensing terms "are not the type of enforcement

3   activity envisioned in *Autogenomics,* but rather Defendant's efforts at commercialization; they

4   cannot be used to support specific jurisdiction").

5         **B.    Rockstar's Minimal Contacts With California Are Permissible Patent Licensing**
6              **Discussions That Do Not Subject Rockstar To Specific Jurisdiction**

7         Google's allegations regarding Rockstar's "enforcement activities" pertain only to

8   permissible licensing activity (*i.e.,* notifying others of Rockstar's patent rights) and nothing more.

9   Compl. 3-4. Without evidence of impermissible "other activities" beyond licensing or generic

10  discussions related to the enforcement (or defense of the validity) of the patents-in-suit, the Federal

11  Circuit has refused to find specific jurisdiction over a declaratory judgment defendant. *Avocent,* 552

12  F.3d at 1334. Examples of "other activities" that would subject a party to specific jurisdiction

13  include initiating judicial or extrajudicial patent enforcement within the forum, or entering into an

14  exclusive license agreement in the forum, or entering into any other undertaking which imposes

15  obligations with a party residing in or regularly doing business in the forum. *Id.*

16

17        None of these "other activities" are present here. Rockstar has not filed any lawsuits in

18  California asserting the patents-in-suit. Dean Decl. at ¶ 22. The fact that Rockstar previously

19  enforced the patents-in-suit by filing suit in the Eastern District of Texas has no relevance here.

20  *Avocent,* 552 F.3d at 1339 ("We are aware of no precedent that holds that the filing of a suit in a

21  particular state subjects that party to specific personal jurisdiction everywhere else"); *Juniper*

22  *Networks, Inc. v. SSL Servs., LLC,* Case No. 08-cv-5758, 2009 U.S. Dist. LEXIS 112399, *11-12

23  (N.D. Cal. Nov. 16, 2009), *aff'd* 2010 U.S. App. LEXIS 25498 (Fed. Cir. Dec. 13, 2010) (suing a

24  California entity in Texas is insufficient to confer specific jurisdiction in California).

25

26        Rockstar does not engage in the types of extra-judicial enforcement activity contemplated by

27  the Federal Circuit as giving rise to specific jurisdiction, nor does Google make any such allegation.

28

-- 11 --

McKool 960087v1

1  Rockstar has not engaged any third-parties in attempting to remove allegedly infringing products

2  from a trade show in the forum state, as was the case in *Campbell Pet Co. v. Miale,* 542 F.3d 879,

3  888 (Fed. Cir. 2008); Dean Decl. at ¶ 23. Contrary to Google's assertions, ███████████

4  ██████████████████ and in filing the Texas Actions against several third-parties was

5  not to "discourage" unnamed companies "from continuing to use Google's Android platform in their

6  devices, and to interfere with Google's business relationships." Compl. 4. But, even if this was

7  Rockstar's intent, it would be irrelevant to specific jurisdiction. *See Avocent,* 552 F.3d at 1340

8  (rejecting plaintiff's argument that patentees' infringement letters sent to a third-party retailer

9  provided specific jurisdiction because "the intended effect was to slow the sale of plaintiff's

10  allegedly infringing products").

11

12  ███████████████████████████████████ Dean Decl. at ¶ 24.

13  This is another example of the "other activities" beyond licensing that would support specific

14  jurisdiction. *See Avocent,* 552 F.3d at 1334-34 (collecting cases finding specific jurisdiction based on

15  presence in the forum of an exclusive licensee or exclusive distributor). ██████████████

16  ████████████████████████████████████████████████

17  ███████████████████████████████

18  ███████████████████████████████████████████

19  ████████████████████████████████

20  █████████████████████████████████

21  █████████████████████████████████████

22  ███████████████████████████████

23  ████████████████████████ *See Smugmug,* 2009 U.S. Dist.

24  LEXIS 112400 (J. Wilken) ("non-exclusive licenses, without any showing of enforcement efforts are

25  insufficient to justify specific jurisdiction. And revenue from licensing is irrelevant unless the

26  contact with the licensees is itself 'constitutionally cognizable'") (citing *Red Wing Shoe,* 148 F.3d at

27  1361-62).

28                                             -- 12 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**C.    Rockstar's Sporadic And Insubstantial Contacts With California Do Not Give Rise To General Jurisdiction**

Google's bare allegations regarding Rockstar's alleged "continuous and systematic" contacts with California can be summarized as follows: (1) Rockstar is alleged to engage in general licensing activities with other companies, some of which may be located in California, and allegedly has personnel in California to conduct such licensing activities, Compl. 3; and (2) one of Rockstar's shareholders is headquartered in California, Compl. 3. Such insubstantial allegations, even if true, do not confer general jurisdiction.

The Supreme Court has recognized that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler,* slip op at 14.  Thus, general jurisdiction applies only where a defendant's contacts with a forum are "so continuous and systematic as to render the [foreign corporation] essentially at home in the forum state, *i.e.,* comparable to a domestic enterprise in that State. *Id.* at 14 n. 11. For general jurisdiction, a defendant's contacts must "approximate[] a physical presence within the state." *See, e.g., Autogenomics,* 566 F.3d at 1018. The standard for general jurisdiction is high because it confers personal jurisdiction for *any cause of action,* even one that has no relationship with the defendant's contacts to the forum.

**1.    Rockstar's is a Texas entity and does not have contacts with California that "approximate a physical presence"**

"With respect to a corporation, the place of incorporation and the principal place of business are paradigm bases for general jurisdiction." *Daimler,* slip op. at 19. Rockstar has no contacts with California approximating physical presence, and Google cannot allege that such contacts exist. As set forth in the Statement of Facts *supra* and the attached declaration, Rockstar is and always has been a Delaware limited partnership and with its principal place of business in Plano, Texas. Like the foreign defendant in *Helicopteros* found not to be subject to general jurisdiction, Rockstar is not authorized to do business in California; has no agent for service of process in California; has never signed any contract in California; has never owned property in California; has never maintained an

-- 13 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  office in California; and has never maintained records in California. *See Helicopteros,* 466 U.S. at
2  411; Dean Decl. at ¶¶ 16, 29-33.

3      Moreover, Rockstar has no contacts that make it essentially "at home" in California and has
4  no contacts that would make Rockstar comparable to a domestic California enterprise. None of
5  Rockstar's employees live in California; Rockstar pays no California taxes; Rockstar has not held
6  any board meetings in California; Rockstar has not signed any license agreements in California; and
7  Rockstar has not sold any patents to any California entities. Dean Decl. at ¶¶ 29-33. Rockstar and
8  MobileStar acquired the patents-in-suit from Nortel Networks, a company that went bankrupt in
9
10  2011. Nortel's U.S. headquarters was in Richardson, Texas. *Id.* at ¶ 27. Nortel had a substantial
11  presence in Texas prior to its bankruptcy, and many of Rockstar's and MobileStar's current
12  employees are former Nortel employees. *Id.*

13          **2.    Rockstar's lone, part-time, independent contractor in California does not**
14                   **subject Rockstar to general jurisdiction**

15      Google's allegation that Rockstar has employees in California responsible for licensing
16  activities related to the patents-in-suit is incorrect. Compl. 3. As explained in the Statement of Facts,
17  *supra* and the attached declaration, Rockstar employed a single part-time independent contractor
18  who lives in California. Dean Decl. at ¶ 34. ██████████████████████████████
19
20  ████████████████████████████████████████████████████████████████
21  ██████████████████████████████████████████████████ This
22  single contact is too isolated and insubstantial to justify exercising general jurisdiction over
23  Rockstar. *See Daimler,* slip op. at 4, 21 (rejecting general jurisdiction over a foreign defendant based
24  on the California presence of the defendant's independent contractor who had no authority to make
25  binding obligations on behalf of the defendant).

26
27
28

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

### 3. Revenue generated from non-exclusive licensees located in California is insufficient to justify general jurisdiction

Google alleges that Rockstar's licensing efforts have generated substantial revenue in California. Compl. 3. Even if true, mere licensing revenue generated in the forum is irrelevant to a general jurisdiction analysis. In *Helicopteros,* the Supreme Court rejected general jurisdiction over a foreign defendant, even though the foreign defendant purchased $4 million of helicopters and repair parts in the forum state, constituting 80% of its helicopter fleet (its primary business). *Helicopteros* held that "mere purchases, even if occurring at regular intervals, are not enough to warrant" general jurisdiction. 466 U.S. at 418. The Supreme Court has extended the holding of *Helicopteros* to include mere sales or revenue in the forum state. *Goodyear Dunlop Tire Ops., S.A. v. Brown,* 564 U.S. __, slip op. at 12 (2011). Rockstar's mere revenue from California is not enough to justify general jurisdiction. *Id.* And contrary to Google's allegation, Rockstar and MobileStar have generated no licensing revenue in California, as here, all of Rockstar's licensees are non-exclusive, and Rockstar has no control over any such licensee. Dean Decl. at ¶¶ 25-26.

### 4. The contacts of Rockstar's shareholders may not be imputed to Rockstar

Google incorrectly asserts that Rockstar's shareholders, including Apple, are somehow relevant to its claim of declaratory judgment jurisdiction. Compl. 3-4. While it is true that Rockstar has limited partners (including Apple), and these limited partners do not direct or control Rockstar's licensing efforts in California, or anywhere else. Dean Decl. at ¶ 35.  Only Rockstar's Texas-based management directs Rockstar's licensing efforts. *Id.*  Rockstar also takes measures to ensure that information about prospective licensees and negotiations does not flow to the limited partners. *Id.*

Moreover, none of Apple's California contacts may be imputed to Rockstar. The Federal Circuit has cautioned that "the corporate form is not to be lightly cast aside" when rejecting arguments by plaintiffs seeking to establish jurisdiction by piercing the corporate veil or via an alter ego theory.  *3D Sys. Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1380-81 (Fed. Cir. 1998) (declining

-- 15 --

McKool 960087v1

**– A1154 –**

Case 2:13-cv-00900-JRG-RSP Document 66-2 Filed 04/25/14 Page 24 of 34 PageID #: 4030

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  to assert jurisdiction over subsidiary defendants and rejecting plaintiff's arguments to impute parent

2  defendant's contacts with forum by piercing corporate veil or under alter ego theory).  Here, too,

3  Rockstar and Apple are distinct corporate entities and there is no justification for imputing one's

4  contacts to the other.

5  **V.      This District Is Not The Proper Venue For This Suit**

6      The Court should dismiss Google's complaint because venue is not proper in this District

7  under 28 U.S.C. §§ 1391(b) and (c). As set forth in the Statement of Facts, *supra,* neither Rockstar

8  nor MobileStar are residents of California. Proper venue cannot exist under § 1391(b)(1).[4]

9

10      The events "giving rise to the claim"—Google's claim that Rockstar and MobileStar

11  improperly threatened Google or its customers with a lawsuit involving the seven patents—did not

12  occur in California. Rather, the events, e.g., filing suit against Google's customers, occurred in

13  Texas). And, as discussed previously, the types of general patent discussion and licensing activities

14  with various unidentified parties as alleged by Google do not give rise to the claim at issue. Proper

15  venue cannot exist under § 1391(b)(2).

16

17      Venue in this District is also not proper under § 1391(b)(3). Section 1391(b)(3) does not

18  apply here because the Eastern District of Texas is a suitable forum, as Rockstar and MobileStar

19  both reside there. And as demonstrated above, Rockstar and MobileStar are not subject to personal

20  jurisdiction in this forum.

21

22

23

24  _____

25  [4] The general venue statute provides that: (b) Venue in General.— A civil action may be brought
    in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State
26  in which the district is located; (2) a judicial district in which a substantial part of the events or
    omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the
27  action is situated; or (3) if there is no district in which an action may otherwise be brought as
    provided in this section, any judicial district in which any defendant is subject to the court's personal
28  jurisdiction with respect to such action

-- 16 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**VI.    The Court Should Decline to Exercise Jurisdiction Over Google's Claims**

Even if the Court finds that it has personal jurisdiction over Rockstar or MobileStar, the Court should not entertain Google's declaratory action. Google's complaint is inconsistent with the purpose of the Declaratory Judgment Act and it is effectively duplicative of the first-filed Texas Actions. By declining to exercise jurisdiction over Google's complaint, the Court would promote judicial efficiency and eliminate the risk of inconsistent judgments. The purpose of the Declaratory Judgment Act is not—as is the case here—to promote forum shopping by the complainant.

**A.    The Court Has Discretion To Decline Jurisdiction Over Declaratory Claims**

"[The] authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 718-719 (U.S. 1996). This holds particularly true for declaratory judgment actions, characterized "as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton,* 515 U.S. at 286-287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). Accordingly, a "district court is not required to exercise declaratory judgment jurisdiction, but has 'unique and substantial discretion' to decline that jurisdiction." *Elecs. for Imaging,* 394 F.3d at 1345-1346 (citing *Wilton*, 515 U.S. at 286). In exercising that "unique and substantial discretion," a court "must act 'in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration' when declining jurisdiction in declaratory suits." *Id.* (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996), *overruled on other grounds, Sony Elecs., Inc. v. Guardian Media Techs., Ltd.,* 497 F.3d 1271 (Fed. Cir. 2007)).

In patent cases, the purpose of the Declaratory Judgment Act is as follows:

[A] patent owner …attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. …Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and

-- 17 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   abandonment of their enterprises; they could clear the air by suing for a judgment that would
    settle the conflict of interests.

2   *Elecs. for Imaging*, 394 F.3d at 1346 (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846

3   F.2d 731, 735 (Fed. Cir. 1988)). "Permitting multiple lawsuits to adjudicate the same issues would

4   serve no purpose of judicial administration and would risk inconsistent rulings on the patents'

5   validity, enforceability, and ownership." *Kyocera Communs., Inc. v. ESS Techs. Int'l, Inc.*, 2012 U.S.

6   Dist. LEXIS 89267, *7-8 (N.D. Cal. June 27, 2012).

7

8   **B.    The Court Should Decline Jurisdiction Because Google's Claims Do Not Meet
          The Purpose Of The Declaratory Judgment Act**

9

10          None of the purposes of the Declaratory Judgment Act are met by Google's claims. As noted

11  above, in the context of a patent dispute, the purpose of the Declaratory Judgment Act is to provide a

12  party the ability to settle a controversy where "the patent owner refused to grasp the nettle and sue."

13  *Elecs. for Imaging,* 394 F.3d at 1346 (Fed. Cir. 2005). That is not the case here—nearly two months

14  before Google brought its declaratory judgment action, Rockstar and MobileStar brought the Texas

15  Actions on the <u>identical</u> patents Google asserts here. As this shows, Rockstar and MobileStar *did*

16  "grasp the nettle and sue." *Id.* Indeed, shortly after Google filed its complaint here, Google was

17  added as a defendant in the first-filed Texas Actions.

18

19          **1.    The Court should decline jurisdiction because Google's complaint is an
                  attempt at forum shopping**

20          An attempt to forum shop runs counter to the purposes of the Declaratory Judgment Act.

21  *Catalyst Assets LLC v. Life Techs. Corp.*, 2012 U.S. Dist. LEXIS 84347, 7-8 (N.D. Cal. June 17,

22  2012) (noting that a court should decline to hear declaratory judgments actions where a litigant files

23  a declaratory action as a means of forum shopping). In light of the fact that the Texas Actions were

24  filed nearly two months before Google filed its action in this District, Google's declaratory judgment

25  action can only be viewed as an attempt at forum shopping. Instead of intervening in the Texas

26  Actions, Google invited Rockstar and MobileStar to a meeting in California, then *six days later* filed

27

28                                          -- 18 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

this case. Rather than file its declaratory judgment action, Google could have moved to intervene in Texas (or simply filed counterclaims). This would have made sure that Google had the opportunity to be heard on the very same issues raised in its complaint.[5]

### 2. Google's claims are an inefficient use of judicial resources

In deciding whether to decline to assert jurisdiction over a declaratory judgment action, "[t]he court must make a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995). Entertaining Google's action would be a waste of judicial resources given the existence of the parallel, earlier-filed Texas Actions and the overlap in patents between those actions and this one. When determining if to exercise jurisdiction over a declaratory judgment action, "[a] district court . . . should avoid duplicative litigation." *Catalyst Assets LLC v. Life Techs. Corp.*, 2012 U.S. Dist. LEXIS 84347, *7-8 (N.D. Cal. June 17, 2012) (citing *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) (dismissing declaratory judgment action where it would "would result in duplicative litigation and a waste of judicial resources."); *see also Teva Pharms. USA, Inc. v. Eisai Co.*, 620 F.3d 1341, 1349 (Fed. Cir. 2010) (recognizing that the Federal Circuit has "upheld discretionary decisions declining jurisdiction when the declaratory judgment action was duplicative of other proceedings . . . ."). This principle is consistent with the purpose of the Declaratory Judgment Act: giving a party a forum to sue only when a patent holder has refused to sue the party despite creating a palpable threat of suit. *See Arrowhead Indus. Water, Inc.*, 846 F.2d at 735.

Entertaining duplicative suits here "would serve no purpose of judicial administration and would risk inconsistent rulings on the patents' validity, enforceability, and ownership." *Kyocera*

---

[5] The only other possible reason Google would have to file its declaratory judgment would be to attempt to adjust its bargaining position as to the patents-in-suit ███████████████████████████ ███████████ *See* Statement of Facts, *supra*. But using a declaratory judgment action as a bargaining tool runs contrary to the purpose of the Declaratory Judgment Act. *See Teva Pharmaceuticals USA, Inc. ex rel. Gate Pharmaceutical Div. v. EISAI Co., Ltd.*, 426 F. App'x 904 (Fed. Cir. 2011) (recognizing that the Federal Circuit has "upheld discretionary decisions declining jurisdiction when . . . the party instituted an [declaratory judgment action solely to enhance its bargaining power in negotiations . . . .").

-- 19 --

*Communs., Inc. v. ESS Techs. Int'l, Inc.,* 2012 U.S. Dist. LEXIS 89267, 7-8 (N.D. Cal. June 27, 2012) (declining to exercise jurisdiction over declaratory judgment claims duplicative of an earlier-filed action). Because Google is now a party to one of the Texas Actions, Google can have its infringement and validity concerns raised as a counterclaim there. *See Proofpoint, Inc. v. InNova Patent Licensing, LLC,* 2011 U.S. Dist. LEXIS 120343, *22-23 (N.D. Cal. Oct. 17, 2011) (encouraging the declaratory judgment plaintiff "to move to intervene in the Texas Action or bring a separate action for declaratory judgment in the Eastern District of Texas and seek to relate that claim to the Texas Action").

**C.     The Court Should Decline to Assert Jurisdiction Under the First-Filed Rule**

The first-filed rule, which favors an earlier filed action, also dictates that the Court should decline jurisdiction over Google's Action. "When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

In patent cases, the "general rule favors the forum of the first-filed action, whether or not it is a declaratory action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) *abrogated on other grounds* by *Wilton,* 515 U.S. 277. "The general rule that the first-filed case is favored over the second-filed action may be even stronger where the second-filed action is [for] a declaratory judgment." *Id.* The purpose of the first-to-file rule is "avoid conflicting decisions and promote judicial efficiency." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

**1.     The Texas Actions are first-filed and should be favored**

The Texas Actions are the first-filed actions under the first-to-file rule. The first-filed rule "permits a district court to decline jurisdiction when a complaint involving *substantially similar parties and issues* has already been filed in another district court." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704 (Fed. Cir. 2013) (affirming district court's dismissal of later-filed

-- 20 --

McKool 960087v1

**– A1159 –**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  declaratory judgment action) (emphasis added); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678

2  F.2d 93, 94-95 (9th Cir.1982) (recognizing the same principle). In other words, for an action to be

3  considered "first-filed," the parties and issues need only be substantially the same—not be identical.

4  *E.g., Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 959 (N.D.

5  Cal.2008) (stating that "exact identity [of parties] is not required to satisfy the first-to-file rule");

6  *Microchip Tech., Inc. v. United Module Corp.*, CV-10-04241-LHK, 2011 U.S. Dist. LEXIS 73276,

7  2011 WL 2669627 (N.D. Cal. July 7, 2011) (noting that application of the rule requires

8  consideration of (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the

9
10  similarity of the issues).

11         This principle is illustrated by *Proofpoint, Inc. v. InNova Patent Licensing*, LLC, 2011 U.S.

12  Dist. LEXIS 120343, (N.D. Cal. Oct. 17, 2011). In *Proofpoint,* the court determined that an earlier-

13  filed infringement action in the Eastern District of Texas was the "first filed" for purposes of

14  applying the first to file rule, despite the fact that the party asserting the later declaratory judgment

15  action in the Northern District of California was not a party to the first-filed action. In doing so, the

16  court focused on the fact that the same patent was asserted in the earlier-filed and later-filed suits. *Id.*

17  at * 19. The court also noted that many of the defendants to the first-filed patent infringement suit

18  "have asserted claims of non-infringement and invalidity similar to those advanced by Proofpoint."

19  *Id.* The court concluded that "this Court's assertion of jurisdiction would risk a conflicting

20  determination of the scope of the [patent]," and "[g]iven the substantial similarity of the issues and

21
22  the considerable energy already invested by the District Court for the Eastern District of Texas, it

23  would not be in the interest of justice or judicial economy for this Court to entertain Proofpoint's

24  claim."

25
26         The reasoning set forth in *Proofpoint* applies here. Although Google was not a party to the

27  Texas Actions when it filed its declaratory judgment action in this District, the issues between the

28  two actions are substantially similar such that the Texas actions are "first-filed" for purposes of the

-- 21 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

first-to-file rule. The patents asserted in the two actions are identical, and it is almost a certainty that

each defendant in the Texas Actions will file non-infringement and invalidity declaratory judgment

counterclaims substantially similar to those brought in Google's Action.

### 2.    Judicial efficiency and interests of justice favor the Texas Actions

When considering factors of judicial efficiency and interests of justice, it is clear that the

first-to-file rule mandates that Google's action should be dismissed, or in the alternative, transferred

to the Eastern District of Texas. These factors, similar to those applied to a motion to transfer under

Section 1404, include "the convenience and availability of witnesses, absence of jurisdiction over all

necessary or desirable parties, possibility of consolidation with related litigation, or considerations

relating to the interest of justice." *Proofpoint,* LLC, 2011 U.S. Dist. LEXIS 120343 at *19 (citing

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904-05 (Fed. Cir. 2008)).[6] Each of these

factors weighs in favor of the Texas Actions, or at best is neutral. If the Court applies the first-to-file

rule it should dismiss or transfer Google's Action to the Eastern District of Texas.[7]

### a.    Convenience of the Witnesses is Neutral

Both Rockstar and MobileStar are located in Texas. *See* Statement of Facts, *supra.* The

majority of the inventors of the patents-in-suit are listed on the patents as being from Canada, or

otherwise residing in places other than California. *See* Google Compl., D.I. 1, Exs. A-G. Thus, even

taking into account that some of Google's witnesses may be located in this District, Google cannot

---

[6] Although the Federal Circuit in *Micron Tech.* said a court "must" apply these factors, its holding
was limited to the situation in which the court presiding over a first-filed declaratory judgment
action is performing a first-to-file analysis. *Micron Tech.,* 518 F. 3d at 904; *EMC Corp. v. Parallel
Iron, LLC*, 914 F. Supp. 2d 125, 129 (D. Mass. 2012) (explaining that *Micron* makes application of
the factors mandatory only to a first-filed action analyzed by the court presiding over the first-filed
action). Thus, the Court here may, but is not required, to take these factors into account, as it is not
presiding over the first-filed action. *See Proofpoint,* 2011 U.S. Dist. LEXIS 120343 at *18-19;
*Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 96-97 (9th Cir. Cal. 1982).

[7] As noted above, a later filed declaratory judgment action, "generally is to be stayed, dismissed, or
transferred to the forum of the infringement action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299
(Fed. Cir. 2012). Accordingly, the Court can transfer the Google Action to the Eastern District of
Texas pursuant to this motion under the first-to-file rule.

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   show that the balance tips in favor of this District with regard to convenience of the witnesses. This

2   factor is neutral with regard to judicial efficiency and the interests of justice.

### b.   This Court Lacks Jurisdiction Over at Least Some Necessary Parties

As Google admits, it brought its declaratory judgment action because of a perceived threat to

its relationships with its customers who are defendants in the Texas Actions. It follows, then, that its

customers necessarily would be indispensable parties to this litigation, as their rights vis-à-vis

Google's infringement of the patents-in-suit and the validity of the patents in suit are at play. But a

number of the Defendants in the Texas Actions are not subject to jurisdiction in this District, as they

lack any substantial presence with California. Indeed, a number of these Defendants including

Samsung and others are foreign-based entities with offices in Texas. *See* Ex. A-G. This reality also

underscores that the convenience of witnesses is neutral at best, as most of the Google customer

witnesses are either overseas or in Texas. The interest of judicial efficiency, then, dictates that

Google's Action is properly heard in the Eastern District of Texas, as both Google and its customers

are subject to jurisdiction there.

### c.   The Google Action Can Be Consolidated with the Texas Actions

As stated, the defendants in the Texas Actions almost certainly will file answers containing

counterclaims mirroring Google's Action seeking declarations of invalidity. These actions, then, can

at the very least be consolidated with one or more of the current Texas Actions for the purposes of

invalidity and for purposes of the pre-trial scheduling order. Such consolidation will promote an

efficient use of judicial resources and uniformity among suits dealing with substantially the same

issues. Accordingly, this factor favors dismissing or transferring Google's Action.

### d.   Considerations for the interests of justice are in favor of the Texas Actions

As explained earlier, the interests of justice would be harmed if the Google Action was

entertained further in this district. Specifically, the risk of inconsistent claim constructions and

-- 23 --

McKool 960087v1

**– A1162 –**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  rulings on invalidity run counter to the interests of fair and efficient justice. Accordingly, this factor

2  weighs in favor of the Texas Actions.

3  **VII.  Conclusion**

4      Google cannot show that this Court has personal jurisdiction over either Rockstar or

5  MobileStar. Moreover, even if such a showing could be made, the Court should decline to assert

6  jurisdiction over Google's declaratory judgment claims because they fail to meet any of the purposes

7  of the Declaratory Judgment Act. For these reasons, the Court should dismiss Google's complain, or

8  in the alternative transfer Google's claims to the Eastern District of Texas.

9

10

11  Dated January 23, 2014.                          Respectfully submitted,

12

13                                    By:/s/ Courtland Reichman
                                          Courtland L. Reichman (SBN 268873)
14                                        McKool Smith Hennigan, P.C.
                                          255 Shoreline Drive Suite 510
15                                        Redwood Shores, CA 94065
                                          (650) 394-1400
16                                        (650) 394-1422 (facsimile)

17
                                          Mike McKool (Pro Hac Vice Application to be
18                                        filed)
                                          mmckool@mckoolsmith.com
19                                        Douglas A. Cawley (Pro Hac Vice Application
20                                        to be filed)
                                          dcawley@mckoolsmith.com
21                                        Ted Stevenson III (Pro Hac Vice Application to
22                                        be filed)
                                          tstevenson@mckoolsmith.com
23                                        David Sochia (Pro Hac Vice Application filed)
                                          dsochia@mckoolsmith.com
24                                        McKool Smith, P.C.
                                          300 Crescent Court Suite 1500
25                                        Dallas, TX 75201
                                          (214) 978-4000
26                                        (214) 978-4044 (facsimile)

27
                                          Attorneys For Defendants
28

-- 24 --

McKool 960087v1

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

Rockstar Consortium U.S. LP and
MobileStar Technologies LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKool 960087v1

-- 25 --

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE
EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT—Case No. 3:13-cv-5933-CW

McKool 960087v1

# EXHIBIT 2

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   **Courtland L. Reichman (SBN 268873)**
    **creichman@mckoolsmithhennigan.com**
2   **McKool Smith Hennigan, P.C.**
    **255 Shoreline Drive Suite 510**
3   **Redwood Shores, CA 94065**
    **(650) 394-1400**
4   **(650) 394-1422 (facsimile)**

5   **ADDITIONAL COUNSEL LISTED ON**
    **SIGNATURE PAGE**
6
    **Attorneys for Defendants**
7   **Rockstar Consortium U.S. LP and**
    **MobileStar Technologies LLC**
8

9                   **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11                              **OAKLAND**

12  Google, Inc.                          )   Case No. 13-cv-5933
                                          )
13                      Plaintiff,        )   **DEFENDANTS' REPLY TO**
                                          )   **GOOGLE INC.'S OPPOSITION TO**
14      vs.                               )   **DEFENDANTS' MOTION TO**
                                          )   **DISMISS AND TO DECLINE**
15  Rockstar Consortium U.S. LP and       )   **EXERCISING JURISDICTION**
    Technologies LLC                      )   **UNDER THE DECLARATORY**
16                                        )   **JUDGMENT ACT**
                        Defendants.       )
17                                        )
                                          )   Date: March 13, 2014
18                                        )   Time: 2:00 p.m.
                                          )   Courtroom: TBD
19                                        )   Judge: Hon. Claudia Wilken
                                          )
20  _____ )

21

22          **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

23

24

25

26

27

28

Case 2:13-cv-00900-JRG-RSP   Document 66-3   Filed 04/25/14   Page 3 of 22 PageID #:  4043
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

## **TABLE OF CONTENTS**

I. Google Has Failed To Establish Personal Jurisdiction Over Either Defendant .............................. 2

    A.    Google Does Not Even Attempt To Show Personal Jurisdiction Over MobileStar Without Impermissibly Ignoring The Corporate Form............................ 2

    B.    Google Has Failed To Establish Specific Jurisdiction Over Rockstar ........................ 5

    C.    Google's Attempt To Subject Rockstar To General Jurisdiction Is Frivolous Under *Daimler*'s Controlling Standard.......................................................... 8

    D.    Google Cannot Impute Third-Party Contacts To Rockstar........................................ 10

        1.    Rockstar Did Not Assume All Of Nortel's Minimum Contacts By Obtaining Nortel Patents After A Bankruptcy Auction Or Hiring Ex-Nortel Employees.................................................................. 10

        2.    Apple's Status As A Rockstar Shareholder Does Not Impute Apple's Contacts To Rockstar ............................................................. 11

        3.    Google's Request For Jurisdictional Discovery Is A Request For A Fishing Expedition That Will Not Improve Google's Thin Jurisdictional Allegations.................................................. 12

II. The Court Should Decline To Exercise Discretionary Jurisdiction Over Google's Declaratory Judgment Action ................................................................................. 12

    A.    Google's Action Is Not In The Interest Of Justice And Would Frustrate Judicial Efficiency ................................................................................ 12

    B.    Google's Action Undermines The Purposes Of The Declaratory Judgment Act ....... 13

    C.    Google Is Incorrect That Rockstar's Claims Concern Only Android........................ 14

    D.    Defendants Have Not Yet Filed Any Motion To Transfer Venue............................. 15

i

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*123 Sys. v. Hydro-Quebec,*
626 F.3d 1213 (Fed. Cir. 2010)...........................................................................2

*3D Sys. Inc. v. Aarotech Labs, Inc.,*
160 F.3d 1373 (Fed. Cir. 1998).....................................................................3, 4, 9

*Akro Corp. v. Luker,*
45 F.3d 1541 (Fed. Cir. 1995).............................................................................7

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.,*
566 F.3d 1012 (Fed. Cir. 2009).......................................................................5, 6

*Avocent Huntsville Corp. v. Aten Int'l Co.,*
552 F.3d 1324 (Fed. Cir. 2008)................................................................ *passim*

*Campbell Pet Co. v. Miale,*
542 F.3d 879 (Fed. Cir. 2008).............................................................................6

*Catalyst Assets LLC v. Life Techs. Corp.,*
2012 U.S. Dist. LEXIS 84347 (N.D. Cal. June 17, 2012) .....................................12

*Daimler AG v. Bauman,*
134 S. Ct. 746 (2014) ....................................................................................8, 9

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,*
142 F.3d 1266 (Fed. Cir. 1998).......................................................................3, 4

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) ......................................................................10, 11

*Elecs. for Imaging, Inc. v. Coyle,*
394 F.3d 1341 (Fed. Cir. 2005).........................................................................12

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,*
328 F.3d 1122 (9th Cir. 2003) ............................................................................4

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC,*
No. 12-5847, 2013 U.S. Dist. LEXIS 28439 (E.D.N.Y. Feb. 28, 2013) ...................9

*Juniper Networks, Inc. v. SSL Servs., LLC,*
No. 08-cv-5758, 2009 U.S. Dist. LEXIS 112399 (N.D. Cal. Nov. 16, 2009), *aff'd*, 2010
U.S. App. LEXIS 25498 (Fed. Cir. Dec. 13, 2010) ...............................................6

-ii-

**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

*Katzir's Floor Home and Design, Inc. v. M-MLS.COM,*
   394 F.3d 1143 (9th Cir. 2004) ................................................................10

*Manville Sales Corp. v. Paramount Sys., Inc.,*
   917 F.2d 544 (Fed. Cir. 1990) ................................................................4

*Micron Tech., Inc. v. MOSAID Techs., Inc.,*
   518 F.3d 897 (Fed. Cir. 2008) ................................................................12

*Proofpoint, Inc. v. InNova Patent Licensing, LLC,*
   2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct. 17, 2011) ................................12, 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.,*
   338 F.3d 773 (7th Cir. 2003) ................................................................9

*Radio Sys. Corp. v. Accession, Inc.,*
   638 F.3d 785 (Fed. Cir. 2011) ................................................................5, 6, 7

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
   148 F.3d 1355 (Fed. Cir. 1998) ................................................................4, 5, 7

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ................................................................2

*Silent Drive, Inc. v. Strong Indus., Inc.,*
   326 F.3d 1194 (Fed. Cir. 2003) ................................................................5, 7

*Silver Valley Partners, LLC v. De Motte,*
   400 F. Supp. 2d 1262 (W.D. Wash. 2005) ................................................................10

*Smugmug, Inc. v. Virtual Photo Store LLC,*
   No. 09-cv-2255, 2009 U.S. Dist. LEXIS 112400 (N.D. Cal. Nov. 16, 2009) ..........................6

*Smugmug, Inc. v. Virtual Photo Store LLC,*
   No. 09-cv-2255, 2009 U.S. Dist. LEXIS 71305 (N.D. Cal. Aug. 13, 2009) ..........................11

**STATUTES**

28 U.S.C. § 1404(a) ................................................................14

28 U.S.C. § 2201 ................................................................ *passim*

**OTHER AUTHORITIES**

Rest. (2d) Conflict of Laws § 40, cmt. ................................................................10

-iii-

**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1
2
### INTRODUCTION AND SUMMARY OF THE ARGUMENT

3    According to Google, the only "reasonable" place to conduct this litigation is California. Yet

4  California is not even an *option* for this litigation, and Google's contrary view squarely conflicts

5  with controlling law. This Court should dismiss this second-filed, duplicative suit for at least three

6  reasons.

7    First, this Court lacks personal jurisdiction over MobileStar, an indispensable party. It makes

8  little sense to adjudicate patent claims when the party that owns (or is the exclusive licensee) of

9  *every* patent-in-suit is beyond the Court's jurisdiction. Google never suggests that MobileStar has

10  any meaningful California ties, which it does not. Instead, Google argues that MobileStar is bound

11  where Rockstar is bound. But Google never attempts to pierce the corporate veil, and Google has no

12  basis for doubting MobileStar's legitimate corporate form. There is no such "personal-jurisdiction-

13  is-different" exception in corporate law. If Google wishes to hale MobileStar into court, it has to

14  establish jurisdiction using MobileStar's contacts. Its failure to do so is dispositive.

15    Second, Google says Rockstar is subject to jurisdiction in California. But Google cannot

16  reconcile its jurisdictional allegations with the Supreme Court's decision in *Daimler* or the Federal

17  Circuit's longstanding rule that a patentee's "commercialization activity" does *not* give rise to

18  jurisdiction. Google simply brushes aside these controlling doctrines, and instead tries to establish

19  jurisdiction—over *other* parties. But Google cannot sue Rockstar in California by saying it could

20  have sued Apple or Nortel in California. Personal jurisdiction is *personal*, and Google has not shown

21  Rockstar itself is subject to suit in this Court.

22    Third, even if Defendants could be sued in California, this suit has no business in this Court.

23  According to Google, the "natural" defendant's second-filed suit under the Declaratory Judgment

24  Act should determine the forum where the "natural" plaintiff may enforce its rights. Indeed,

25  according to Google, that same second-filed suit should also trump the "natural" plaintiff's choice

26  for *six* first-filed suits, against other parties, all pending in a proper venue where this entire dispute

27  can be fully and fairly litigated. Google's effort to invoke the Declaratory Judgment Act invites

28
-1-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
No. 3:13-cv-5933-CW**

1   precisely the kind of inefficient, duplicative litigation (and risk of inconsistent results) that the Act

2   will not tolerate. Google cannot avoid these impermissible costs without insisting that the Texas

3   courts transfer six pending suits (including against foreign defendants) to California—rather than

4   relocate this single suit to Texas. The Texas litigation was first-filed and it reflects the proper vehicle

5   for adjudicating Google's defenses.

6          Finally, Google's request for jurisdictional discovery is futile. A fishing expedition into

7   Rockstar and MobileStar will not change the fact that neither Defendant is "at home" in California,

8   neither Defendant has any meaningful contacts with the State, neither Defendant has engaged in

9   anything besides (irrelevant) commercialization activity here, and neither Defendant has done

10  anything to justify piercing the corporate veil—a request that Google, smartly, has not made. Further

11  discovery is pointless and would only postpone the inevitable. This case is defective and should be

12  dismissed.

13

14                                      **ARGUMENT**

15  **I.     Google Has Failed To Establish Personal Jurisdiction Over Either Defendant**

16          **A.     Google Does Not Even Attempt To Show Personal Jurisdiction Over MobileStar
                     Without Impermissibly Ignoring The Corporate Form**

17          As previously established, "each defendant's contacts with the forum State must be assessed

18  individually" (*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008)), and

19  MobileStar has no qualifying contacts with California. *See, e.g.*, Mot. 7-8; Dean Decl. ¶¶ 5-9, 13-14.

20  This shortcoming undercuts Google's entire complaint: the suit cannot be maintained against

21  MobileStar without personal jurisdiction, and MobileStar is indispensable to the suit. There is no

22  point in entertaining a declaratory-judgment action without the party that owns (or is the exclusive

23  licensee) of all seven patents-in-suit. *See* Mot. 8-9; *see also 123 Sys. v. Hydro-Quebec*, 626 F.3d

24  1213, 1217 (Fed. Cir. 2010).

25          In response, Google does not identify a single fact supporting jurisdiction or controverting

26  MobileStar's evidence. Instead, Google asserts that this Court may freely disregard the corporate

27                                          -2-

28  **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    form. According to Google, even without any attempt to pierce the corporate veil, Rockstar's

2    contacts are attributable to MobileStar as its "litigation subsidiary." Opp. 6-7. MobileStar is

3    undeniably a separate entity, but it cannot ask Google to show that MobileStar, individually, has

4    contacts with California—at least not without an "awfully neat trick" (Opp. 7). *See Schwarzenegger*

5    *v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("the plaintiff bears the burden of

6    demonstrating that [personal] jurisdiction is appropriate"). Reduced to its logical conclusion,

7    according to Google, the corporate form is *irrelevant* in the personal-jurisdiction context.

8          Google is wrong. Corporate identity matters, and the corporate form (unless properly set

9    aside) has consequences. *3D Sys. Inc. v. Aarotech Labs, Inc.,* 160 F.3d 1373, 1380-81 (Fed. Cir.

10    1998). Google may wish to sweep aside MobileStar's identity and focus exclusively on Rockstar.

11    But the proper vehicle for asserting such a challenge is piercing the corporate veil or establishing any

12    other valid ground for looking past the corporate structure. *Ibid.* Here, however, it is indisputable

13    that MobileStar is a legitimate separate entity. It was properly created under Delaware law, and it

14    follows all applicable corporate formalities. As a separate "person," it is protected, individually,

15    under the Due Process Clause. If a litigant wishes to hale MobileStar into court, it must establish

16    MobileStar's own jurisdictional contacts with the chosen venue.

17          Google refuses even to acknowledge these settled principles. Instead, as its sole support,

18    Google latches onto dicta from a single decision—*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*,

19    142 F.3d 1266 (Fed. Cir. 1998)—and construes it in a way that is irreconcilable with circuit law.

20    *Dainippon* did not announce some unbounded rule that all litigation subsidiaries assume the

21    jurisdictional contacts of all parent companies. On the contrary, *Dainippon* determined, first and

22    foremost, that the *subsidiary itself* had minimum contacts with the forum, and those contacts (not the

23    parent's contacts) "justif[ied] the imposition of personal jurisdiction." 142 F.3d at 1271. That was

24    the panel's holding, and, unlike *Dianippon*, MobileStar has *no* requisite contacts with Google's

25    chosen forum.

26

27

-3-

28  **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

Case: 14-147    Document: 2-4    Page: 71    Filed: 08/14/2014

Case 2:13-cv-05933-JRG-RSP Document 66-3 Filed 04/25/14 Page 7 of 29 PageID #:  4049
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    After reaching that conclusion, the *Dianippon* panel also noted that, on those particular facts,

2    "the parent-subsidiary relationship between CFM and CFMT" rendered "the imposition of personal

3    jurisdiction over CFMT…'reasonable and fair.'" *Id.* at 1271. The panel's finding, however, was

4    motivated by an apparent effort to manipulate jurisdiction: the subsidiary was incorporated in

5    "another state," and the parent sought to "insulate" itself from "defending declaratory judgment

6    actions in those fora where [the parent]…operates under the patent." *Ibid.* Here, by contrast, there is

7    no hint whatsoever of *any* manipulation. Rockstar and MobileStar are incorporated in the *same* State

8    and have adopted the *same* principal place of business—a particularly odd strategy for a company

9    supposedly seeking "immunity by subsidiary." Opp. 7. Rockstar does not "operate" in California

10   under the patent; nor does it attempt to avoid suits in California based on MobileStar's lack of

11   California contacts. This is thus nothing like the panel's narrow concerns in *Dainippon*, where a

12   parent may try to artificially usher any suits to "the state of incorporation of the holding company."

13   142 F.3d at 1271. MobileStar was created for legitimate reasons having nothing to do with personal

14   jurisdiction. Rockstar certainly did not act out of concern that, in the future, Google may elect to

15   forum-shop and file a feeble suit under the Declaratory Judgment Act in a court where *Rockstar*

16   *itself* plainly is not subject to jurisdiction.

17       *Dainippon* is simply too thin a reed to support Google's aggressive reworking of personal

18   jurisdiction and corporate law. This is why the Federal Circuit has continued, after *Dainippon*, to

19   recognize the importance of adhering to corporate formalities absent valid grounds for setting aside

20   the corporate form. *See, e.g.*, *3D Sys.*, 160 F.3d at 1380-81. One such valid ground—focusing on

21   jurisdictional concerns of "fair play and substantial justice"—may be a deliberate attempt to

22   manipulate jurisdiction (as in *Dainippon*). *See, e.g.*, *Manville Sales Corp. v. Paramount Sys., Inc.*,

23   917 F.2d 544, 552 (Fed. Cir. 1990). But there is no such thing as a "personal-jurisdiction-doesn't-

24   count" exception to corporate law. Google's complaint flunks the ordinary rule that each corporate

25   entity is a separate person with its own identity. *See Harris Rutsky & Co. Ins. Servs. v. Bell &*

26

27                                                    -4-

28   **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
     AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
     No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  *Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). It cannot establish personal jurisdiction over

2  MobileStar, and that is sufficient reason alone for dismissing this suit.

3       Nor, finally, should this Court postpone the inevitable by authorizing jurisdictional

4  discovery. Indeed, Google does not even *request* such discovery as to MobileStar, and any discovery

5  would be futile. MobileStar has no legal contacts with California, and no amount of discovery can

6  resuscitate Google's misreading of controlling law.

7       **B.    Google Has Failed To Establish Specific Jurisdiction Over Rockstar**

8       As previously established (Mot. 10-12), there is no specific jurisdiction over Rockstar, and

9  Google's contrary theories are strictly at odds with controlling law. Google readily admits that

10  "Rockstar's licensing business" is its only hook for specific jurisdiction. Opp. 15. Yet the Federal

11  Circuit has unequivocally held that efforts to "commercializ[e]" patent rights are *not* grounds for

12  jurisdiction. *Avocent*, 552 F.3d at 1335. Parties have every right to "give proper notice of [their]

13  patent rights." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir.

14  1998). "The patent system has national application. If infringement letters created jurisdiction, the

15  patentee could be haled into court anywhere the letters were sent." *Silent Drive, Inc. v. Strong Indus.,*

16  *Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003). This is why ordinary activities of "offer[ing]…a

17  license," sending "cease-and-desist letter[s]," and "initiat[ing] settling negotiations" are *per se*

18  insufficient to subject a patentee to the *infringer's* home forum. *Red Wing Shoe*, 148 F.3d at 1360-

19  61.

20       Yet Google barely pays lip service to these binding principles. In fact, its main response is to

21  target—even *more* commercialization efforts. It accuses Rockstar of "cast[ing] a broad net" to

22  enforce its patent rights, "negotiat[ing]" with infringers, and sending "letters" to protect its interests,

23  including to "companies in California." Opp. 12-13, 15, 17. Google never disputes ▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮ Dean Decl. ¶ 17. These are all classic

26  "commercialization activit[ies]" (*Avocent*, 552 F.3d at 1335), and the Federal Circuit has declared

27

-5-

28  **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   them off-limits "for establishing specific personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene*

2   *Tech., Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009).[1]

3       Google reluctantly admits that it must identify "other activities"[2] above and beyond

4   Defendants' ordinary licensing efforts. Opp. 15. But just *any* "other activities" will not do. "For the

5   exercise of personal jurisdiction to comport with fair play and substantial justice, there must be

6   'other activities' directed at the forum *and related to the cause of action* besides the letters

7   threatening an infringement suit." *Silent Drive*, 326 F.3d at 1202 (emphasis added). None of the

8   "activities" identified by Google satisfy these conditions.

9       First, Google alleges that Rockstar ▮▮▮▮▮▮▮▮▮▮▮▮, as if that

10  were some "activity" *separate* from "commercialization." But that only means that ▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Google does not dispute that

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮ Dean Decl. ¶ 17; *see also* Mot. 11 ("Rockstar's

14  enforcement activities pertain only to permissible licensing activities (*i.e.*, notifying others of

15  Rockstar's patent rights) and nothing more."). As a matter of law, those limited activities cannot

16  support specific jurisdiction. *See Avocent*, 552 F.3d at 1336; *Smugmug, Inc. v. Virtual Photo Store*

17  *LLC*, No. 09-cv-2255, 2009 U.S. Dist. LEXIS 112400, at *11 (N.D. Cal. Nov. 16, 2009) (Wilken,

18  J.). Moreover, Google's allegations are wrongly limited to Rockstar's general media statements

19  regarding licensing its portfolio *as a whole*, not any specific patents involved in these suits. Opp. 15-

20  16. "Only enforcement or defense efforts *related to the patent*, rather than the patentee's own

21  commercialization efforts, are to be considered for specific personal jurisdiction." *Radio Sys.*, 638

22  F.3d at 790 (emphasis added).

---

23  [1] Google also faults Rockstar for failing to delineate ▮▮▮▮▮▮▮▮▮▮▮▮ Opp.

24  13. This is again incompatible with circuit law: the in-state contacts of Defendants' *licensees* are not "'constitutionally
    cognizable' for purposes of jurisdiction," and thus "any financial benefits accruing to [Defendants] from [their]

25  licensees' relations with [California] are irrelevant." *Red Wing Shoe*, 148 F.3d at 1362.
    [2] Contrary to Google's contention (Opp. 15), "the plaintiff must satisfy the court that the assertion of personal

26  jurisdiction under the circumstances is reasonable and fair," *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed.
    Cir. 2011), and must identify "other activities" beyond ordinary commercialization efforts to establish personal

27  jurisdiction. *See, e.g.*, *Autogenomics*, 566 F.3d at 1020.

-6-

28  **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
    AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
    No. 3:13-cv-5933-CW**

Case: 14-147    Document: 2-4    Page: 74    Filed: 08/14/2014

Case 2:13-cv-00900-JRG-RSP Document 66-3 Filed 04/25/14 Page 12 of 21 PageID #:  4052
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    Second, Google is incorrect that Rockstar's pending litigation *in Texas* constitutes "other

2    activities" sufficient to assert specific jurisdiction *in California*. Opp. 17. This assertion disregards

3    controlling law and common sense. The Federal Circuit has made clear that judicial enforcement of

4    the patents-in-suit in *another forum* does not constitute "other activities." *Avocent*, 552 F.3d at 1339;

5    *see also Juniper Networks, Inc. v. SSL Servs., LLC*, No. 08-cv-5758, 2009 U.S. Dist. LEXIS 112399,

6    at *11-12 (N.D. Cal. Nov. 16, 2009), *aff'd*, 2010 U.S. App. LEXIS 25498 (Fed. Cir. Dec. 13, 2010)

7    (suing a California entity in Texas is insufficient to confer specific jurisdiction in California).

8    Google's reliance on *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008), is misplaced. Opp.

9    17 (citing *Campbell* for the notion that attempts to interfere with "customer relationships" qualify as

10   "other activities"). In *Campbell*, a patentee directly attacked the plaintiff's business by venturing

11   outside the judicial system and enlisting a third-party to *remove* the infringer's products from an *in-*

12   *state* convention. 542 F.3d at 886; *see also Autogenomics*, 566 F.3d at 1020 (likewise distinguishing

13   *Cambell*). That is contrary to the situation here, as Rockstar's *Texas* litigation, by definition, does

14   not constitute *extra*-judicial efforts to enforce the patents in *California*. A lawsuit is the

15   quintessential *judicial* effort to enforce a patent. Defendants are entitled to enforce their rights in

16   another State without being subject to specific jurisdiction in *every* State based on those same

17   patents. Any legitimate fallout for Google's "customer relationships" is irrelevant.

18        Third, Google is incorrect that Rockstar's use of a part-time consultant, Mark Wilson,

19   qualifies as "other activities." Google never alleges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮, and never disputes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮ Dean Decl. ¶ 34. Again, Google simply ignores the lack of any nexus between Google's suit

22   and Wilson's conduct. The Federal Circuit, however, has "consistently required" these "other

23   activities" to "relate to the enforcement or the defense of the validity *of the relevant patents*."

24   *Avocent*, 552 F.3d at 1334 (emphasis added). Google also incorrectly invokes *Radio Sys.* as broadly

25   supporting the proposition that a patentee's retention of in-state agents subjects the patentee to

26   specific jurisdiction. Opp. 16. In *Radio Sys.*, the court found it relevant that an out-of-state patentee

27

-7-

28   **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  hired an in-state attorney to enforce the patents-in-suit *in that same forum*. 638 F.3d at 791. Here,

2  however, ███████████████████████████████████████████████

3  ██████████████████████████████████. The material facts undergirding *Radio Sys.* are absent.

4       Finally, Google is mistaken that Rockstar's "relationship" with Apple gives rise to specific

5  jurisdiction. Opp. 16; *see also* § I.D.2, *infra*. Again, Google fails to allege how these supposed

6  "continuing obligations" concern the *relevant* patents-in-suit. General allegations about generic

7  "obligations" are insufficient. *Silent Drive*, 326 F.3d at 1202. Additionally, Google acknowledges

8  that Apple is a "non-exclusive" licensee, but wrongly insists that "does not matter." Opp. 10. In

9  analyzing jurisdiction, however, the Federal Circuit (including in cases Google misconstrues) has

10  "emphasized the *exclusive* nature of [a] license" for a reason. *Red Wing Shoe*, 148 F.3d at 1362

11  (emphasis added). Exclusive arrangements often require patentees to assume *enforcement efforts* in

12  the subject forum, a critical factor missing from non-exclusive licenses. *See, e.g.*, *Avocent*, 552 F.3d

13  at 1334, 1336 (describing "entering into an exclusive license agreement or other undertaking which

14  imposes enforcement obligations with a party residing or regularly doing business in the forum");

15  *Akro Corp. v. Luker*, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995). Thus it *does* matter that Apple's

16  license is non-exclusive; Google has not explained how Rockstar is subject to *any* such

17  "enforcement" obligations *in California*.

18       Jurisdictional discovery cannot cure Google's deficiencies. Google simply invites a conflict

19  with settled law. Its theories suffer from legal *and* factual defects; no amount of discovery will cure

20  the former, and the factual record (including the scope and nature of Rockstar's activities) is

21  uncontroverted. Google cannot evade dismissal with pointless, burdensome discovery from a party

22  not properly before the Court.

    **C.**    **Google's Attempt To Subject Rockstar To General Jurisdiction Is Frivolous Under *Daimler*'s Controlling Standard**

25       Contrary to Google's contention, it cannot wish away the Supreme Court's definitive ruling

26  in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), by casting it as Rockstar's "preferred standard."

27  Opp. 13. That case eviscerates the entirety of Google's argument, which can be easily dismissed.

-8-

28  **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1      Google begins by framing the standard in exactly the terms that *Daimler rejected*: "[g]eneral

2 jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum

3 state." Opp. 5 (internal quotation marks omitted). According to the Supreme Court, however, the

4 proper inquiry is "not whether a foreign corporation's in-forum contacts can be said to be in some

5 sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so

6 'continuous and systematic' as to render [it] *essentially at home in the forum State.*'" *Daimler*, 134

7 S. Ct. at 761 (emphasis added). It is no longer sufficient (if it ever were) to ground general

8 jurisdiction in allegations that a defendant ███████████████████████████████████

9 ███████████████████████████ Opp. 14. Such allegations are "unacceptably grasping."

10 *Daimler*, 134 S. Ct. at 761. General jurisdiction permits a defendant to be sued on *any* cause of

11 action, accruing anywhere, no matter how unrelated to the forum. *Id.* at 754 n.5. That unlimited

12 power is properly restricted to situations where the defendant is "comparable to a domestic

13 enterprise in that State." *Id.* at 758 n.11. Google's allegations would subject virtually *every*

14 nationwide business to general jurisdiction in every State. That is strictly inconsistent with *Daimler*'s

15 command. *Id.* at 761-62.

16      Google suggests that if Rockstar is "essentially at home" in Texas, it must also be

17 "essentially at home" in California, where it purportedly does "all the same things." Opp. 13-14.

18 Leaving aside the little oversights—such as Google's downplaying of Rockstar's permanent office in

19 Texas, its permanent employees in Texas, its Texas roots, *etc.*, all things that are *not* the "same" in

20 California—Google also overlooks one undeniable fact: Rockstar's principal place of business is *in*

21 *Texas*, not California. After *Daimler*, only "exceptional" cases will permit general jurisdiction in a

22 forum "other than [a corporation's] formal place of incorporation or principal place of business," a

23 standard that *excludes* subjecting Rockstar to general jurisdiction here. *Id.* at 761 n.19.[3]

24

---

25 [3] Rather than grapple with *Daimler*, Google favors a single unreported decision from the Eastern District of New York,

26 which of course *pre-dated Daimler*. Opp. 14 (citing *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 12-5847, 2013 U.S. Dist. LEXIS 28439 (E.D.N.Y. Feb. 28, 2013)). Rockstar has no "long-term business relationship" in

27 California (Opp. 14), but even the facts at issue in *Jet Blue* would hardly qualify for general jurisdiction under today's standard.

28 **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

Case: 14-147    Document: 2-4    Page: 77    Filed: 08/14/2014

Case 2:13-cv-05933-JRG-RSP Document 66-3 Filed 04/25/14 Page 15 of 21 PageID #: 4055
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    Google, again, requests jurisdictional discovery, and, again, Google's request is deficient. No

2  amount of discovery will alter Rockstar's "home"—its place of incorporation or principal place of

3  business are known quantities that will not change. *Daimler* resolves this issue, and it does so today.

4    **D.    Google Cannot Impute Third-Party Contacts To Rockstar**

5    **1.    Rockstar Did Not Assume All Of Nortel's Minimum Contacts By Obtaining
           Nortel Patents After A Bankruptcy Auction Or Hiring Ex-Nortel Employees**
6
7    According to Google, because Rockstar purportedly holds itself out as standing in Nortel's

8  shoes, all of Nortel's jurisdictional contacts are automatically imputed to Rockstar. Opp. 7-9. This is

9  perplexing. Rockstar is not Nortel and it never assumed Nortel's identity or its contacts. It simply

10  obtained Nortel's patent portfolio during Nortel's chapter 11 bankruptcy.[4] There is no rule of law or

11  logic suggesting that any party who acquires any patent suddenly assumes every jurisdictional

12  contact of the patent's prior owner. (Due process, after all, asks whether the *party*, not the *patent*, has

13  contacts with the forum. Google's contrary view would transform patent law in an unprincipled way:

14  the fact that a patent was asserted somewhere in the past does not mean that a *subsequent* owner

15  availed itself of any rights in that forum. *See, e.g.*, *Purdue Research Found. v. Sanofi-Synthelabo,
     S.A.*, 338 F.3d 773, 784-85 (7th Cir. 2003).)
16
17    In addition, the general rule is that the "corporate form is not to be lightly cast aside." *3D

18  Sys.*, 160 F.3d at 1380-81. Here, Google effectively asserts (without argument or proof) that

19  Rockstar is Nortel's alter ego for jurisdictional purposes. Google starts with statements (plucked

20  mostly from random interviews) that Rockstar is built upon Nortel's *licensing* operation (a part of

21  Nortel that was based in Texas) and leaps to the conclusion that Rockstar essentially *is* Nortel, a

22  substantial entity with multiple operations worldwide aside from licensing.

23    The law is clear that a successor generally does not step into the predecessor's shoes. *Katzir's

24  Floor Home and Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1150-51 (9th Cir. 2004) ("The

25  general rule of successor liability is that a corporation that purchases *all* of the assets of another

---

26  [4] Rockstar Bidco, LP purchased the patents, which were later distributed to Microsoft, Apple, Blackberry, and Rockstar.
27  While Rockstar Bidco is a separate entity from Rockstar, that has no effect on the jurisdictional analysis.

                                        -10-
28  **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
     AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
     No. 3:13-cv-5933-CW**

corporation is not liable for the former corporation's liabilities unless, among other theories, the

purchasing corporation is a mere continuation of the selling corporation.") (emphasis added). Google

fails to identify any law supporting its contrary theory.  Here, Rockstar purchased only a small

portion of Nortel's assets; in no sense is Rockstar a mere continuation of the corporate entity. There

is no basis for Google's novel view that Rockstar is suddenly bound by all of "Nortel's jurisdictional

contacts."

> **2.    Apple's Status As A Rockstar Shareholder Does Not Impute Apple's Contacts To Rockstar**

Google contends that Rockstar is subject to Apple's jurisdictional contacts, because Apple is

a Rockstar shareholder and partial owner. Opp. 9-11. Google is mistaken.

Corporations are not automatically subject to suit wherever any shareholder is subject to

jurisdiction. *See, e.g.*, *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W.D.

Wash. 2005); *cf.* Rest. (2d) Conflict of Laws § 40, cmt. In support of the contrary proposition,

Google cites—nothing. Opp. 9-10. If Google wished to set aside the corporate form via alter ego or

agency theories, it had every opportunity to prove its case. *See Doe v. Unocal Corp.*, 248 F.3d 915,

926 (9th Cir. 2001). But Google made no such attempt for a reason. Under the alter-ego test, the

"plaintiff must make out a prima facie case that there is such unity of interest and ownership that the

separate personalities [of the two entities] no longer exist." *Id.* at 926. Here, however, it is clear that

Apple and Rockstar are not the same entity, a fact Google might have discovered from Rockstar's

*other* shareholders.

And Rockstar is clearly not Apple's agent. "At an irreducible minimum, the general agency

test requires that the agent perform some service or engage in some meaningful activity in the forum

state on behalf of its principal such that its 'presence substitutes for presence of the principal.'" *Id.* at

930. Rockstar performs services and engages in activity *on behalf of Rockstar*. The fact that these

benefits may inure to its shareholders is hardly surprising or extraordinary. It is common for

shareholders or investors to communicate with a corporate board or provide direction or influence.

-11-

**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    *See, e.g.*, *id.* at 926 (describing "appropriate parental involvement"). If those ordinary actions were

2    sufficient to pierce the corporate veil, there would be few corporations left.

3      In support of its argument, Google also cites ambiguous statements made by an outside *third-*

4    *party* (the CEO of an unrelated company) stating that Rockstar is "Apple, Sony, Microsoft" and "the

5    biggest tech giants in the industry." Opp. 10. Google, however, offers no statements *by Rockstar*

6    indicating that Rockstar "holds itself out as Apple's representative." A third party's statement is not

7    sufficient to set aside Rockstar's corporate structure or presume an agency relationship. And that

8    same statement does not magically transform Rockstar into a California entity. There is no

9    principled basis for assuming that Rockstar is subject to suit wherever any of its shareholders happen

10   to reside.

11     **3. Google's Request For Jurisdictional Discovery Is A Request For A Fishing
12      Expedition That Will Not Improve Google's Thin Jurisdictional Allegations**

13     This Court is familiar with weak allegations regarding analogous alter-ego theories, and it

14   has previously rejected jurisdictional discovery because such theories would fail. *Smugmug, Inc. v.*

15   *Virtual Photo Store LLC*, No. 09-cv-2255, 2009 U.S. Dist. LEXIS 71305 (N.D. Cal. Aug. 13, 2009)

16   (Wilken, J.) (denying jurisdictional discovery). Google's theories will fail now or later, and there is

17   no reason to entertain futile jurisdictional discovery.

18   **II. The Court Should Decline To Exercise Discretionary Jurisdiction Over Google's
       Declaratory Judgment Action**

19     **A. Google's Action Is Not In The Interest Of Justice And Would Frustrate Judicial
20      Efficiency**

21     Because Google cannot prove that this Court has personal jurisdiction over MobileStar, there

22   is particularly no reason to permit this duplicative lawsuit to proceed. MobileStar is the owner of *five*

23   of the seven patents-in-suit (and the exclusive licensee of the remaining two). MobileStar is an

24   indispensable party, and it is at least suboptimal (if *permissible*) to engage in litigation without it.

25   That holds especially true given the open and available venue in Texas for adjudicating these

26

27            -12-

28   **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
     AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
     No. 3:13-cv-5933-CW**

Case: 14-147    Document: 2-4    Page: 80    Filed: 08/14/2014

Case 2:13-cv-00900-JRG-RSP Document 66-3 Filed 04/25/14 Page 13 of 27 PageID #: 4058
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   identical claims. *See* Mot. 18-21. (In fact, the Texas court assuredly *will* adjudicate these claims

2   whether this suit retreads the same ground or not.)

3        It is not in the interest of justice to bifurcate Google's action into two suits—one here against

4   Rockstar (if personal jurisdiction is somehow satisfied), and the other in Texas against MobileStar—

5   when a single suit in Texas, combined with six *existing* suits in Texas, can fully safeguard Google's

6   interest. It is also not in the interest of justice to continue litigation without MobileStar, especially in

7   the face of such an obvious alternative (read: the Texas litigation).

8        Google had every opportunity to intervene in Texas or file its declaratory-judgment suit

9   there. Either option would have been consistent with the purpose of the Declaratory Judgment Act.

10   *See Proofpoint, Inc. v. InNova Patent Licensing, LLC*, 2011 U.S. Dist. LEXIS 120343, at \*22-23

11   (N.D. Cal. Oct. 17, 2011) (encouraging the declaratory-judgment plaintiff to move to intervene in

12   the Texas Action or bring a separate action for declaratory relief in Texas and seek to relate that to

13   the Texas Action). Instead, Google opted for forum-shopping. It brought a second-filed duplicative

14   action in this Court without any explanation for not pursuing relief in Texas. *Catalyst Assets LLC v.*

15   *Life Techs. Corp.*, 2012 U.S. Dist. LEXIS 84347, at \*7-8 (N.D. Cal. June 17, 2012) (noting that a

16   court should decline to entertain declaratory-judgment suits where litigants file the action as a means

17   of forum-shopping). Moreover, Google is already a defendant in Texas, and can add its declaratory-

18   judgment claims to any answer or counterclaims. Google's suit, filed nearly two months after the

19   Texas litigation was initiated, may satisfy Google's own preferences, but it invites an unacceptably

20   inefficient use of judicial resources. *See, e.g.*, *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d

21   897, 904-05 (Fed. Cir. 2008).

22      **B.**     **Google's Action Undermines The Purposes Of The Declaratory Judgment Act**

23        For similar reasons, Google is incorrect that its suit satisfies the purposes of the Declaratory

24   Judgment Act. The entire point of offering declaratory relief is to avoid the unfairness where "the

25   patent owner refused to grasp the nettle and sue." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341,

26   1346 (Fed. Cir. 2005). The Act provides a vehicle for seeking certainty if no other vehicle exists.

27

28   **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   Here, however, a *better* vehicle exists. Rockstar and MobileStar sued on the same patents at

2   issue here nearly two months before Google filed suit. Google cannot explain the efficiencies in

3   pursuing this separate action or why the Texas action is inadequate for establishing Google's rights.

4   Indeed, if Google is so convinced that all six Texas actions are destined to be transferred to this

5   Court, there is no reason Google could not have intervened in those actions and filed a motion to

6   transfer venue. (In the same light, Google could have included all six patents in any suit in Texas.)

7   Nor is it any answer to blame Defendants—the "natural" plaintiffs—for forum-shopping. In

8   ordinary circumstances, the plaintiff is *entitled* to choose the venue, and that choice is typically

9   respected. That is not impermissible "forum shopping," but simply exercising the prerogative of the

10  injured party seeking judicial redress. Defendants, who are based in Texas, brought seven actions in

11  Texas that are indisputably proper in Texas. (One has since settled.) The natural response of a

12  litigant wishing to establish its rights is to *participate* in that litigation—just as Google is now doing.

13  This repetitive filing complicates matters unnecessarily and offers nothing to gain.

14  **C.    Google Is Incorrect That Rockstar's Claims Concern Only Android**

15  Throughout its opposition, Google argues that the asserted patents in this action and the

16  Texas litigation concern solely the Android operating system. *E.g.*, Opp. 17. This is misleading and

17  mistaken. Rockstar and MobileStar are accusing various *mobile devices* that, while including the

18  Android operating system, also include hardware and software components that infringe Rockstar

19  and MobileStar patents, not the Android operating system alone. *See* Exs. A-H, Defendants' Mot. to

20  Dismiss. For example, at least one patent (U.S. Patent No. 5,838,551) asserted against these mobile

21  devices in the Texas actions has nothing to do with their operating system, but is directed solely to a

22  type of component contained in those devices.

23  For this reason, Google is mistaken in invoking the customer-suit exception to the first-to-file

24  rule. That exception applies only "where the first suit is filed against a customer who is simply a

25  reseller of the accused goods, while the second suit is a declaratory action brought by the

26  manufacturer of the accused goods." *Proofpoint*, 2011 U.S. Dist. LEXIS 120343, at *17 (quoting

27

28
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1    *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)).[5]  Here, the Texas defendants are

2    not resellers of devices or Android operating systems obtained from Google, but rather design,

3    manufacture, and sell the devices themselves (which use the Android operating system). *See* Exs. A-

4    H, Defendants' Mot. to Dismiss. This is hardly the situation of a patentee taking advantage of a

5    customer who unknowingly purchased an infringing product from a manufacturer.

6    In any event, Google cannot have it both ways. If Google wishes to paint the Texas litigation

7    as a direct assault on Google itself, then Google cannot plausibly hold out this suit as the "first-filed"

8    case. It is undoubtedly the second-filed case under any logical view of the substance of each suit.

9    ### D.    Defendants Have Not Yet Filed Any Motion To Transfer Venue

10   Contrary to Google's contention, Defendants have not yet filed a motion to transfer venue

11   under 28 U.S.C. § 1404(a). Opp. 22-23. While Defendants discussed certain factors that also apply

12   to transfer motions, Defendants did so in the context of the Court's decision to exercise (or not) its

13   discretionary power to entertain this declaratory action. Mot. 22 & n.7 ("*the first-to-file rule*

14

15   *mandates* that Google's action should be dismissed, or in the alternative, transferred to the Eastern

16   District of Texas"; "*[i]f the Court applies the first-to-file* rule it should dismiss or transfer Google's

17   Action to the Eastern District of Texas"; "the Court can transfer the Google Action to the Eastern

18   District of Texas pursuant to this motion *under the first-to-file rule*") (emphases added). Google may

19   be anxious to resolve a transfer motion because it assuredly realizes that is the predictable next step

20   should this case survive a motion to dismiss. (Defendants, of course, reserve the right to file such a

21   motion, if necessary, at an appropriate time.) That is yet another reason to decline to exercise

22   jurisdiction: there is little basis for inviting endless procedural disputes over an improper lawsuit

23   when the merits can be swiftly resolved in an open and available suit in the "natural" plaintiffs' first-

24   filed choice of venue.

25

26   _____

27   [5] Under such circumstances, the first-filed rule may give way to the "manufacturer's presumed greater interest in defending its actions against charges of patent infringement." *Ibid.*

-15-

28   **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

Respectfully submitted,

Dated this 13th day of February, 2014.

By:     /s Courtland Reichman _____
        Courtland L. Reichman (SBN 268873)
        MCKOOL SMITH HENNIGAN, P.C.
        255 Shoreline Drive Suite 510
        Redwood Shores, CA 94065
        (650) 394-1400
        (650) 394-1422 (facsimile)

        Mike McKool (Pro Hac Vice Application
        Forthcoming)
        Douglas A. Cawley (Admitted Pro Hac
        Vice)
        Ted Stevenson III (Admitted Pro Hac Vice)
        David Sochia (Admitted Pro Hac Vice)

        **ATTORNEYS FOR Defendants
        Rockstar Consortium U.S. LP and
        MobileStar Technologies LLC**

-16-

**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
No. 3:13-cv-5933-CW**

Case 2:13-cv-00900-JRG   Document 66-4   Filed 04/25/14   Page 1 of 3 PageID #:  4062

# EXHIBIT 3

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7225**

WRITER'S INTERNET ADDRESS
**josephmilowic@quinnemanuel.com**

January 9, 2014

**VIA ELECTRONIC MAIL**

David Sochia, Esq.
McKool Smith
300 Crescent Court
Suite 1500
Dallas, TX 75201

Re:     Rockstar v Samsung et al (ED Tex. Civ No. 13-cv-900)

Dear David:

We are writing about Mr. Alfi S. Guindi, Senior IP Counsel at Rockstar.  Mr. Guindi worked as Senior Counsel in the IP Legal Team at Samsung for almost two (2) years.  During that time, his duties included active participation in patent litigations involving Samsung substantially related to this case and as a result he was exposed to relevant Samsung confidential information and/or litigation strategy.

Please confirm that Mr. Guindi has been walled off from all aspects of the litigation currently pending between Rockstar and Samsung.  The wall should restrict Mr. Guindi's access to files regarding Samsung as well as to other Rockstar and McKool personnel, including attorneys and support staff, who are in any way affiliated with the pending litigation.  Similarly, the wall should restrict Rockstar and McKool personnel, including attorneys and support staff, from attempting to access Mr. Guindi's files related in any way to Samsung, or from engaging in any type of communication with Mr. Guindi regarding Samsung.  Finally, Mr. Guindi should have been instructed not to discuss any Samsung related matters with any personnel, including any attorney or support staff, at Rockstar and McKool.

Please confirm that Rockstar has taken these steps, and let us know specifically what measures Rockstar and your firm has taken, if any, to prevent Samsung's confidences from being shared with other Rockstar and McKool personnel and when those measures were first implemented.

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

**– A1188 –**

Mr. David Sochia
January 9, 2014

Sincerely,

Joseph Milowic III

cc:    Mark Mann, Esq.

# EXHIBIT 4

# MCKOOL SMITH

Jared M. Hoggan
Direct Dial: (214) 978-4923
jhoggan@McKoolSmith.com

300 Crescent Court
Suite 1500
Dallas, TX 75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

February 18, 2014

**VIA EFILE**

Joseph Milowich III
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601

     RE:    Rockstar v. Samsung et al. (ED Tex. Civ. No. 13-cv-0900)

Dear Joseph:

     This letter is in response to your letter to David Sochia dated February 11, 2014, regarding Mr. Alfi S. Guindi.

     First, in my February 4, 2014 letter to you, I told you that we don't believe Mr. Guindi's employment at Rockstar creates a potential conflict. Nevertheless, because McKool Smith and Rockstar take their ethical obligations seriously, both parties instituted prophylactic measures after we received your first letter to avoid even the appearance of impropriety. Specifically, in my previous letter we confirmed to you that Mr. Guindi has had no involvement in the above-captioned litigation. We also informed you that Mr. Guindi has been instructed not to discuss or otherwise have any communications regarding the litigation with other personnel, either at Rockstar or McKool Smith. We further informed you that Rockstar personnel involved with the case have similarly been instructed not to discuss or otherwise have communications regarding the litigation with Mr. Guindi. We also informed you that McKool Smith has taken steps internally to make sure that the relevant McKool Smith attorneys and staff know not to communicate with Mr. Guindi regarding this litigation.

     Second, in your letter, you ask for two items of confirmation, namely that "(1) Mr. Guindi was not involved in the pre-litigation case development, and (2) he will not be involved in the litigation going forward." As discussed above, both of the confirmations you request were provided in my first response letter dated February 4, 2014. To be clear, Mr. Guindi was not involved in the pre-litigation analysis in any way with respect to Samsung (or any other Defendant for that matter). Also, as stated in my original letter, and to be clear and unequivocal, Mr. Guindi has been walled off the Samsung litigation matter and will not be involved now or in the future in the litigation against Samsung.

     Once again, I trust this letter resolves any questions or concerns you may have.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin | Dallas | Houston | Los Angeles | Marshall | New York | Silicon Valley | Washington, DC**

February 18, 2014
Page 2


Regards,

Jared M. Hoggan

cc:    David Sochia

Case 2:13-cv-00900-JRG   Document 66-6   Filed 04/25/14   Page 1 of 41 PageID #:  4068

# EXHIBIT 5

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| 17.1 | A method that obtains call trace information, comprising: | The Accused Products operate a method that obtains call trace information. |
| | | For example, to the extent the preamble is limiting, the Accused Products obtain call trace information (including, for example, geographical location information) about the Accused Products.  As further example, the Accused Products use a location API to display on the screen the geographical location of the devices as shown in the public documentation citations 17.1(1) and 17.1(2), and open source code citation 17.1(4).  One such example is the Maps application pre-installed on the Accused Products, as shown in screenshot citation 17.1(3). |
| | | In addition to the above, open source code citation 17.1(5) and public documentation citation 17.1(6) illustrate further that this limitation is present on all Accused Products running Android versions 1.0 or above. |
| | | **Exemplary Public Documentation Citation 17.1(1)** |
| | |  |

---

[1] The Accused Products include Samsung's phones and tablets as listed in Attachment A, and any other product uncovered during discovery that is capable of communicating over a packet-switched network with a network-compatible device and dynamically displaying call trace information.

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|-----------|----------|---------------------|
| | | Source: https://developer.android.com/google/play-services/location.html<br><br>**Exemplary Public Documentation Citation 17.1(2)**<br><br>Location<br>extends Object<br>implements Parcelable<br><br>java.lang.Object<br>└ android.location.Location<br><br>Added in API level 1<br><br>**Class Overview**<br><br>A data class representing a geographic location<br><br>A location can consist of a latitude, longitude, timestamp, and other information such as bearing, altitude and velocity<br><br>All locations generated by the LocationManager are guaranteed to have a valid latitude, longitude, and timestamp (both UTC time and elapsed real-time since boot), all other parameters are optional<br><br>Source: http://developer.android.com/reference/android/location/Location.html |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Screenshot Citation 17.1(3)**  Source: Exemplary testing performed on Samsung Galaxy S III and Samsung Galaxy Tab 8.9 |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Open Source Code Citation 17.1(4)**<br><br>/**<br>* A data class representing a geographic location.<br>*<br>* <p>A location can consist of a latitude, longitude, timestamp,<br>* and other information such as bearing, altitude and velocity.<br>*<br>* <p>All locations generated by the {@link LocationManager} are<br>* guaranteed to have a valid latitude, longitude, and timestamp<br>* (both UTC time and elapsed real-time since boot), all other<br>* parameters are optional.<br>*/<br><br>public class Location implements Parcelable {<br><br>...<br><br>/**<br>* Bundle key for a version of the location containing no GPS data.<br>* Allows location providers to flag locations as being safe to<br>* feed to LocationFudger.<br>*<br>* @hide<br>*/<br>public static final String EXTRA_NO_GPS_LOCATION = "noGPSLocation";<br><br>private String mProvider;<br>private long mTime = 0;<br>private long mElapsedRealtimeNanos = 0;<br>private double mLatitude = 0.0;<br>private double mLongitude = 0.0; |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | private boolean mHasAltitude = false;<br>private double mAltitude = 0.0f;<br>private boolean mHasSpeed = false;<br>private float mSpeed = 0.0f;<br>private boolean mHasBearing = false;<br>private float mBearing = 0.0f;<br>private boolean mHasAccuracy = false;<br>private float mAccuracy = 0.0f;<br>private Bundle mExtras = null;<br>private boolean mIsFromMockProvider = false;<br><br>…<br><br>/**<br>* Construct a new Location with a named provider.<br>*<br>* <p>By default time, latitude and longitude are 0, and the location<br>* has no bearing, altitude, speed, accuracy or extras.<br>*<br>* @param provider the name of the provider that generated this location<br>*/<br>public Location(String provider) {<br>mProvider = provider;<br>}<br><br>…<br><br>/**<br>* Get the latitude, in degrees.<br>* <p>All locations generated by the {@link LocationManager}<br>* will have a valid latitude. |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | `*/`<br>`public double getLatitude() {`<br>`    return mLatitude;`<br>`}`<br>`...`<br>`* Get the longitude, in degrees.`<br>`*`<br>`* <p>All locations generated by the {@link LocationManager}`<br>`* will have a valid longitude.`<br>`*/`<br>`public double getLongitude() {`<br>`    return mLongitude;`<br>`}`<br>`...`<br>`/**`<br>`* Get the altitude if available, in meters above sea level.`<br>`*`<br>`* <p>If this location does not have an altitude then 0.0 is returned.`<br>`*/`<br>`public double getAltitude() {`<br>`    return mAltitude;`<br>`...`<br><br>Source : \android-4.4.2_r1\frameworks\base\location\java\android\location\Location.java<br><br>**Exemplary Open Source Code Citation 17.1(5)**<br><br>`package android.location;` |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | import android.os.Bundle;<br>import android.os.Parcel;<br>import android.os.Parcelable;<br>import android.util.Printer;<br><br>import java.text.DecimalFormat;<br>import java.util.StringTokenizer;<br><br>/**<br> * A class representing a geographic location sensed at a particular<br> * time (a "fix"). A location consists of a latitude and longitude, a<br> * UTC timestamp. and optionally information on altitude, speed, and<br> * bearing.<br> *<br> * \<p\> Information specific to a particular provider or class of<br> * providers may be communicated to the application using getExtras,<br> * which returns a Bundle of key/value pairs. Each provider will only<br> * provide those entries for which information is available.<br> */<br>public class Location implements Parcelable {<br><br>...<br><br>    /**<br>     * Constant used to specify formatting of a latitude or longitude<br>     * in the form "DDD:MM:SS.SSSSS" where D indicates degrees, M<br>     * indicates minutes of arc, and S indicates seconds of arc (1<br>     * minute = 1/60th of a degree, 1 second = 1/3600th of a degree).<br>     */<br>    public static final int FORMAT_SECONDS = 2; |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | private String mProvider;<br>private long mTime = 0;<br>private double mLatitude = 0.0;<br>private double mLongitude = 0.0;<br>private boolean mHasAltitude = false;<br>private double mAltitude = 0.0f;<br>private boolean mHasSpeed = false;<br>private float mSpeed = 0.0f;<br>private boolean mHasBearing = false;<br>private float mBearing = 0.0f;<br>private boolean mHasAccuracy = false;<br>private float mAccuracy = 0.0f;<br>private Bundle mExtras = null;<br>...<br>/**<br> * Returns the name of the provider that generated this fix,<br> * or null if it is not associated with a provider.<br> */<br>public String getProvider() {<br>    return mProvider;<br>}<br>/**<br> * Sets the name of the provider that generated this fix.<br> */<br>public void setProvider(String provider) {<br>    mProvider = provider;<br>} |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | ```
/**
 * Returns the UTC time of this fix, in milliseconds since January 1,
 * 1970.
 */
public long getTime() {
    return mTime;
}

/**
 * Sets the UTC time of this fix, in milliseconds since January 1,
 * 1970.
 */
public void setTime(long time) {
    mTime = time;
}

/**
 * Returns the latitude of this fix.
 */
public double getLatitude() {
    return mLatitude;
}
...

public static final Parcelable.Creator<Location> CREATOR =
    new Parcelable.Creator<Location>() {
    public Location createFromParcel(Parcel in) {
        String provider = in.readString();
        Location l = new Location(provider);
        l.mTime = in.readLong();
``` |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | l.mLatitude = in.readDouble();<br>l.mLongitude = in.readDouble();<br>l.mHasAltitude = in.readInt() != 0;<br>l.mAltitude = in.readDouble();<br>l.mHasSpeed = in.readInt() != 0;<br>l.mSpeed = in.readFloat();<br>l.mHasBearing = in.readInt() != 0;<br>l.mBearing = in.readFloat();<br>l.mHasAccuracy = in.readInt() != 0;<br>l.mAccuracy = in.readFloat();<br>l.mExtras = in.readBundle();<br>return l;<br>}<br><br>public Location[] newArray(int size) {<br>    return new Location[size];<br>}<br>};<br><br>public int describeContents() {<br>    return 0;<br>}<br>...<br><br>Source : \android-1.6_r1.1\frameworks\base\location\java\android\location\Location.java |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Documentation Citation 17.1(c)** |

**Fields**

public static final Creator<Location> CREATOR

**Public Constructors**

public **Location** (String provider)

Construct a new Location with a named provider.

By default time, latitude and longitude are 0, and the location has no bearing, altitude, speed, accuracy or extras.

**Parameters**

provider    the name of the provider that generated this location

public **Location** (Location l)

Construct a new Location object that is copied from an existing one.

public double **getLatitude** ()

Get the latitude, in degrees.

All locations generated by the LocationManager will have a valid latitude.

public double **getLongitude** ()

Get the longitude, in degrees.

All locations generated by the LocationManager will have a valid longitude.

public String **getProvider** ()

Returns the name of the provider that generated this fix.

**Returns**

the provider, or null if it has not been set.

Source:http://developer.android.com/reference/android/location/Location.html

Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents.

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| 17.2 | communicating over a packet switched network between a network compatible device and an end-point device, | The Accused Products operate a method of communicating over a packet switched network between a network compatible device and an end-point device.

For example, the Accused Products (i.e. end-point device) communicate over a packet-switched network with a network compatible device (including but not limited to a location server or a Wi-Fi station) as shown in public document citations 17.2(1), 17.2(2), 17.2(3) and 17.2(4), and open source code citations 17.2(8) and 17.2(9). One example is shown in the Maps application pre-installed on the Accused Products, in which the Accused Product communicates over a packet-switched network (i.e., a Wi-Fi connection) with a network compatible device, as shown in product testing citations 17.2(5), 17.2(6) and 17.2(7). These citations exemplify that when Wi-Fi based location services are used, a request is sent to "https://www.google.com/loc/m/api" for updating the current location of the Accused Product, which on information and belief, corresponds to a network compatible device such as a location server.

In addition to the above, open source code citations 17.2(10) and 17.2(11) and public documentation citations 17.2(12) and 17.2(13) illustrate further that this limitation is present on all Accused Products running Android versions 1.0 or above. |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 |
|---|---|
| | **ACCUSED PRODUCTS[1]**<br><br>**Exemplary Public Document Citation 17.2(l):**<br><br><br><br>Source: http://developer.android.com/guide/topics/location/strategies.html |
| | |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.2(2):**<br><br>**LocationProvider**<br>extends Object<br>└ android.location.LocationProvider<br><br>*Added in API level 1*<br><br>**Class Overview**<br><br>An abstract superclass for location providers. A location provider provides periodic reports on the geographical location of the device.<br><br>Each provider has a set of criteria under which it may be used; for example, some providers require GPS hardware and visibility to a number of satellites; others require the use of the cellular radio, or access to a specific carrier's network or to the internet. They may also have different battery consumption characteristics or monetary costs to the user. The Criteria class allows providers to be selected based on user-specified criteria.<br><br>Source: http://developer.android.com/reference/android/location/LocationProvider.html<br><br>**Exemplary Public Document Citation 17.2(3):**<br><br>The LocationClient is the main entry point for location related APIs, such as location and geofence.<br><br>Use the LocationClient to:<br><br>• Connect and disconnect to Google Location Services.<br>• Request/remove location update callbacks.<br>• Request/remove geofences.<br><br>Source: https://developer.android.com/reference/com/google/android/gms/location/LocationClient.html |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.2(4):** |

**Retrieving the Current Location**

Location Services automatically maintains the user's current location, so all your app has to do is retrieve it as needed. The location's accuracy is based on the location permissions you've requested and location sensors that are currently active for the device.

Location Services sends the current location to your app through a location client, which is an instance of the Location Services class LocationClient. All requests for location information go through this client.

Source: https://developer.android.com/training/location/retrieve-current.html

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Product Testing Citation 17.2(5)** |



Source: Exemplary testing performed on Samsung Galaxy S III and Samsung Galaxy Tab 8.9

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Product Testing Citation 17.2(6)**  Source: Exemplary testing performed on Samsung Galaxy S III and Samsung Galaxy Tab 8.9 |
| | | |

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|-----------|----------|---------------------|
|           |          | **Exemplary Product Testing Citation 17.2(7)**<br><br> |

U.S. Patent No. 6,937,572

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Open Source Code Citation 17.2(8):**<br><br>**package android.location;**<br><br>**...**<br>**/\*\***<br>**\* An abstract superclass for location providers.  A location provider**<br>**\* provides periodic reports on the geographical location of the**<br>**\* device.**<br>**\***<br>**\* <p> Each provider has a set of criteria under which it may be used;**<br>**\* for example, some providers require GPS hardware and visibility to**<br>**\* a number of satellites; others require the use of the cellular**<br>**\* radio, or access to a specific carrier's network, or to the**<br>**\* internet. They may also have different battery consumption**<br>**\* characteristics or monetary costs to the user.  The {@link**<br>**\* Criteria} class allows providers to be selected based on**<br>**\* user-specified criteria.**<br>**\*/**<br>**public class LocationProvider {**<br><br>**...**<br>**/\*\***<br>**\* Constructs a LocationProvider with the given name.   Provider names must**<br>**\* consist only of the characters [a-zA-Z0-9].**<br>**\***<br>**\* @throws IllegalArgumentException if name contains an illegal character**<br>**\***<br>**\* @hide**<br>**\*/** |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | public LocationProvider(String name, ProviderProperties properties) { if (name.matches(BAD_CHARS_REGEX)) { throw new IllegalArgumentException("provider name contains illegal character: " + name); } mName = name; mProperties = properties; } ... /** * Returns true if the provider requires access to a * data network (e.g., the Internet), false otherwise. */ public boolean requiresNetwork() { return mProperties.mRequiresNetwork; } /** * Returns true if the provider requires access to a * satellite-based positioning system (e.g., GPS), false * otherwise. */ public boolean requiresSatellite() { return mProperties.mRequiresSatellite; } ... Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationProvider.java |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Open Source Code Citation 17.2(9):**<br><br>**package android.location;**<br><br>**...**<br><br>**import com.android.internal.location.ProviderProperties;**<br><br>/**<br> * **This class provides access to the system location services. These**<br> * **services allow applications to obtain periodic updates of the**<br> * **device's geographical location, or to fire an application-specified**<br> * **{@link Intent} when the device enters the proximity of a given**<br> * **geographical location.**<br> *<br> ...<br>*/<br>**public class LocationManager {**<br><br>**...**<br><br>/**<br> * **Name of the network location provider.**<br> * **<p>This provider determines location based on**<br> * **availability of cell tower and WiFi access points. Results are retrieved**<br> * **by means of a network lookup.**<br>*/<br>**public static final String NETWORK_PROVIDER = "network";**<br><br>/**<br> * **Name of the GPS location provider.**<br> * |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * <p>This provider determines location using |
| | | * satellites. Depending on conditions, this provider may take a while to return |
| | | * a location fix. Requires the permission |
| | | * {@link android.Manifest.permission#ACCESS_FINE_LOCATION}. |
| | | * |
| | | * <p> The extras Bundle for the GPS location provider can contain the |
| | | * following key/value pairs: |
| | | * <ul> |
| | | * <li> satellites - the number of satellites used to derive the fix |
| | | * </ul> |
| | | */ |
| | | public static final String GPS_PROVIDER = "gps"; |
| | | ... |
| | | private class ListenerTransport extends ILocationListener.Stub { |
| | | ... |
| | | public void onProviderEnabled(String provider) { |
| | |     Message msg = Message.obtain(); |
| | |     msg.what = TYPE_PROVIDER_ENABLED; |
| | |     msg.obj = provider; |
| | |     mListenerHandler.sendMessage(msg); |
| | | } |
| | | private void _handleMessage(Message msg) { |
| | |     switch (msg.what) { |
| | |     case TYPE_LOCATION_CHANGED: |
| | |         Location location = new Location((Location) msg.obj); |
| | |         mListener.onLocationChanged(location); |
| | |         break; |
| | |     case TYPE_STATUS_CHANGED: |
| | |         Bundle b = (Bundle) msg.obj; |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | String provider = b.getString("provider");<br>int status = b.getInt("status");<br>Bundle extras = b.getBundle("extras");<br>mListener.onStatusChanged(provider, status, extras);<br>break;<br>case TYPE_PROVIDER_ENABLED:<br>mListener.onProviderEnabled((String) msg.obj);<br>break;<br>case TYPE_PROVIDER_DISABLED:<br>mListener.onProviderDisabled((String) msg.obj);<br>break;<br>}<br>try {<br>mService.locationCallbackFinished(this);<br>} catch (RemoteException e) {<br>Log.e(TAG, "locationCallbackFinished: RemoteException", e);<br>}<br>}<br>}<br>…<br>private LocationProvider createProvider(String name, ProviderProperties properties) {<br>return new LocationProvider(name, properties);<br>}<br>/**<br>* Returns a list of the names of all known location providers.<br>* &lt;p&gt;All providers are returned, including ones that are not permitted to<br>* be accessed by the calling activity or are currently disabled.<br>* |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | `* @return list of Strings containing names of the provider`<br>`*/`<br>`public List<String> getAllProviders() {`<br>`  try {`<br>`    return mService.getAllProviders();`<br>`  } catch (RemoteException e) {`<br>`    Log.e(TAG, "RemoteException", e);`<br>`  }`<br>`  return null;`<br>`}`<br>`...`<br>`/**`<br>`* Returns the information associated with the location provider of the`<br>`* given name, or null if no provider exists by that name.`<br>`*`<br>`* @param name the provider name`<br>`* @return a LocationProvider, or null`<br>`*`<br>`* @throws IllegalArgumentException if name is null or does not exist`<br>`* @throws SecurityException if the caller is not permitted to access the`<br>`* given provider.`<br>`*/`<br>`public LocationProvider getProvider(String name) {`<br>`  checkProvider(name);`<br>`  try {`<br>`    ProviderProperties properties = mService.getProviderProperties(name);`<br>`    if (properties == null) {`<br>`      return null;`<br>`    }` |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | return createProvider(name, properties); <br> } catch (RemoteException e) { <br>   Log.e(TAG, "RemoteException", e); <br> } <br> return null; <br> } <br> } <br> Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationManager.java <br><br> **Exemplary Open Source Code Citation 17.2(10):** <br><br> ... <br> **package android.location;** <br><br> /** <br> * **An abstract superclass for location providers. A location provider** <br> * **provides periodic reports on the geographical location of the** <br> * **device.** <br> * <br> * **<p> Each provider has a set of criteria under which it may be used;** <br> * **for example, some providers require GPS hardware and visibility to** <br> * **a number of satellites; others require the use of the cellular** <br> * **radio, or access to a specific carrier's network, or to the** <br> * **internet. They may also have different battery consumption** <br> * **characteristics or monetary costs to the user. The {@link** <br> * **Criteria} class allows providers to be selected based on** <br> * **user-specified criteria.** |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|-----------|----------|---------------------|
|           |          | */<br><br>public abstract class LocationProvider {<br>private static final String TAG = "LocationProvider";<br>// A regular expression matching characters that may not appear<br>// in the name of a LocationProvider.<br>static final String BAD_CHARS_REGEX = "[^a-zA-Z0-9]";<br><br>private String mName;<br><br>public static final int OUT_OF_SERVICE = 0;<br>public static final int TEMPORARILY_UNAVAILABLE = 1;<br>public static final int AVAILABLE = 2;<br><br>/**<br>* Constructs a LocationProvider with the given name.  Provider names must<br>* consist only of the characters [a-zA-Z0-9].<br>*<br>* @throws IllegalArgumentException if name contains an illegal character<br>*<br>* {@hide}<br>*/<br>public LocationProvider(String name) {<br>if (name.matches(BAD_CHARS_REGEX)) {<br>throw new IllegalArgumentException("name '" + name +<br>" ' contains an illegal character");<br>}<br>// Log.d(TAG, "Constructor: name = " + name);<br>mName = name;<br>} |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | /** <br> * Returns the name of this provider. <br> */ <br> public String getName() { <br>    return mName; <br> } <br> ... <br> /** <br> * Returns true if the provider requires access to a <br> * data network (e.g., the Internet), false otherwise. <br> */ <br> public abstract boolean requiresNetwork(); <br> /** <br> * Returns true if the provider requires access to a <br> * satellite-based positioning system (e.g., GPS), false <br> * otherwise. <br> */ <br> ... <br> public abstract boolean requiresCell(); <br> /** <br> * Returns true if the use of this provider may result in a <br> * monetary charge to the user, false if use is free.  It is up to <br> * each provider to give accurate information. |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | \*/<br>…<br>Source: \android-1.6_r1.1\frameworks\base\location\java\android\location\LocationProvider.java<br><br>**Exemplary Open Source Code Citation 17.2(11):**<br><br>**package android.location;**<br><br>…<br><br>/\*\*<br>\* **This class provides access to the system location services.  These**<br>\* **services allow applications to obtain periodic updates of the**<br>\* **device's geographical location, or to fire an application-specified**<br>\* **{@link Intent} when the device enters the proximity of a given**<br>\* **geographical location.**<br>\*<br>\*<br>\*<br>\*/<br>**public class LocationManager {**<br>    **private static final String TAG = "'LocationManager'';**<br>    **private ILocationManager mService;**<br>    **private final HashMap<GpsStatusListener, GpsStatusListener.Transport> mGpsStatusListeners =**<br>    **new HashMap<GpsStatus.Listener, GpsStatusListener.Transport>();**<br>    **private final GpsStatus mGpsStatus = new GpsStatus();**<br><br>    /\*\*<br>    \* **Name of the network location provider.  This provider determines location based on** |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * availability of cell tower and WiFi access points. Results are retrieved<br>* by means of a network lookup.<br>*<br>* Requires either of the permissions android.permission.ACCESS_COARSE_LOCATION<br>* or android.permission.ACCESS_FINE_LOCATION.<br>*/<br>public static final String NETWORK_PROVIDER = "network";<br>…<br>public static final String KEY_PROVIDER_ENABLED = "providerEnabled";<br><br>/**<br>* Key used for a Bundle extra holding a Location value<br>* when a location change is broadcast using a PendingIntent.<br>*/<br>public static final String KEY_LOCATION_CHANGED = "location";<br><br>…<br>private class Listener Transport extends ILocationListener.Stub {<br>    private static final int TYPE_LOCATION_CHANGED = 1;<br>    private static final int TYPE_STATUS_CHANGED = 2;<br>    private static final int TYPE_PROVIDER_ENABLED = 3;<br>    private static final int TYPE_PROVIDER_DISABLED = 4;<br><br>    private LocationListener mListener;<br>    private final Handler mListenerHandler;<br><br>    …<br><br>    public void onLocationChanged(Location location) { |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | Message msg = Message.obtain(); <br> msg.what = TYPE_LOCATION_CHANGED; <br> msg.obj = location; <br> mListenerHandler.sendMessage(msg); <br> } <br><br> public void onStatusChanged(String provider, int status, Bundle extras) { <br> Message msg = Message.obtain(); <br> msg.what = TYPE_STATUS_CHANGED; <br> Bundle b = new Bundle(); <br> b.putString("provider", provider); <br> b.putInt("status", status); <br> if (extras != null) { <br> b.putBundle("extras", extras); <br> } <br> msg.obj = b; <br> mListenerHandler.sendMessage(msg); <br> } <br><br> ... <br><br> /** <br> * Registers the current activity to be notified periodically by <br> * the named provider.  Periodically, the supplied LocationListener will <br> * be called with the current Location or with status updates. <br> * <br> * \<p> It may take a while to receive the most recent location. If <br> * an immediate location is required, applications may use the |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * {@link #getLastKnownLocation(String)} method.<br>*<br>* <p> In case the provider is disabled by the user, updates will stop,<br>* and the {@link LocationListener#onProviderDisabled(String)}<br>* method will be called. As soon as the provider is enabled again,<br>* the {@link LocationListener#onProviderEnabled(String)} method will<br>* be called and location updates will start again.<br>*<br>* <p> The frequency of notification may be controlled using the<br>* minTime and minDistance parameters. If minTime is greater than 0,<br>* the LocationManager could potentially rest for minTime milliseconds<br>* between location updates to conserve power. If minDistance is greater than 0,<br>* a location will only be broadcasted if the device moves by minDistance meters.<br>* To obtain notifications as frequently as possible, set both parameters to 0.<br>*<br>* <p> Background services should be careful about setting a sufficiently high<br>* minTime so that the device doesn't consume too much power by keeping the<br>* GPS or wireless radios on all the time. In particular, values under 60000ms<br>* are not recommended.<br>*<br>*<br>*/<br>public void requestLocationUpdates(String provider,<br>    long minTime, float minDistance, LocationListener listener) {<br>    if (provider == null) {<br>        throw new IllegalArgumentException("provider==null");<br>    }<br>    if (listener == null) {<br>        throw new IllegalArgumentException("listener==null"); |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | `}` <br> `_requestLocationUpdates(provider, minTime, minDistance, listener, null);` <br> `~` <br><br> `/**` <br> `* Registers the current activity to be notified periodically by` <br> `* the named provider.  Periodically, the supplied LocationListener will` <br> `* be called with the current Location or with status updates.` <br> `*` <br> `* <p> It may take a while to receive the most recent location. If` <br> `* an immediate location is required, applications may use the` <br> `* {@link #getLastKnownLocation(String)} method.` <br> `*` <br> `* <p> In case the provider is disabled by the user, updates will stop,` <br> `* and the {@link LocationListener#onProviderDisabled(String)}` <br> `* method will be called. As soon as the provider is enabled again,` <br> `* the {@link LocationListener#onProviderEnabled(String)} method will` <br> `* be called and location updates will start again.` <br> `*` <br> `* <p> The frequency of notification may be controlled using the` <br> `* minTime and minDistance parameters. If minTime is greater than 0,` <br> `...` <br> `/**` <br> `* Returns a Location indicating the data from the last known` <br> `* location fix obtained from the given provider.  This can be done` <br> `* without starting the provider.  Note that this location could` <br> `* be out-of-date, for example if the device was turned off and` <br> `* moved to another location.` <br> `*` |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * <p> If the provider is currently disabled, null is returned. <br> * <br> * @param provider the name of the provider <br> * @return the last known location for the provider, or null <br> * <br> * @throws SecurityException if no suitable permission is present for the provider. <br> * @throws IllegalArgumentException if provider is null or doesn't exist <br> */ <br> public Location getLastKnownLocation(String provider) { <br> if (provider == null) { <br> throw new IllegalArgumentException("provider==null"); <br> } <br> try { <br> return mService.getLastKnownLocation(provider); <br> } catch (RemoteException ex) { <br> Log.e(TAG, "getLastKnowLocation: RemoteException", ex); <br> return null; <br> } <br> } <br> ... <br><br> Source: \ android-1.6_r1.1\frameworks\base\location\java\android\location\LocationManager.java |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.2(12):**<br><br>public String getName ()<br>Returns the name of this provider<br><br>public int getPowerRequirement ()<br>Returns the power requirement for this provider<br>**Returns**<br>The power requirement for this provider as one of the constants Criteria.POWER_REQUIREMENT_*<br><br>public boolean hasMonetaryCost ()<br>Returns true if the use of this provider may result in a monetary charge to the user, false if use is free. It is up to each provider to give accurate information.<br><br>public boolean meetsCriteria (Criteria criteria)<br>Returns true if this provider meets the given criteria, false otherwise<br><br>public boolean requiresCell ()<br>Returns true if the provider requires access to an appropriate cellular network (e.g. to make use of cell tower IDs), false otherwise<br><br>public boolean requiresNetwork ()<br>Returns true if the provider requires access to a data network (e.g. the Internet), false otherwise<br><br>public boolean requiresSatellite ()<br>Returns true if the provider requires access to a satellite-based positioning system (e.g. GPS), false of service<br><br>Source: http://developer.android.com/reference/android/location/LocationProvider.html |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
| --- | --- | --- |

**Exemplary Public Document Citation 17.2(13):**

public Location getLastKnownLocation (String provider)

Returns a Location indicating the data from the last known location for obtained from the given provider.

This can be done without starting the provider. Note that this location could be out-of-date, for example, if the device was turned off and moved to another location.

If the provider is currently disabled, null is returned.

**Parameters**

provider    the name of the provider

**Returns**

the last known location for the provider, or null

**Throws**

SecurityException    if no suitable permission is present

IllegalArgumentException    if provider is null or doesn't exist

public void requestLocationUpdates (String provider, long minTime, float minDistance, LocationListener listener)

Register for location updates using the named provider, and a pending intent

See requestLocationUpdates(long, float, Criteria, PendingIntent) for more detail on how to use this method

**Parameters**

provider    the name of the provider with which to register

minTime    minimum time interval between location updates, in milliseconds

minDistance    minimum distance between location updates, in meters

listener    a LocationListener whose onLocationChanged(Location) method will be called for each location update

**Throws**

IllegalArgumentException    if provider is null or doesn't exist on this device

IllegalArgumentException    if listener is null

RuntimeException    if the calling thread has no Looper

SecurityException    if no suitable permission is present

public void requestLocationUpdates (String provider, long minTime, float minDistance, LocationListener listener, Looper looper)

Register for location updates using the named provider, and a callback on the specified looper thread.

See requestLocationUpdates(long, float, Criteria, PendingIntent) for more detail on how to use this method

**Parameters**

provider    the name of the provider with which to register

minTime    minimum time interval between location updates, in milliseconds

minDistance    minimum distance between location updates, in meters

listener    a LocationListener whose onLocationChanged(Location) method will be called for each location update

looper    a Looper object whose message queue will be used to implement the callback mechanism, or null to make callbacks on the calling thread

**Throws**

IllegalArgumentException    if provider is null or doesn't exist

IllegalArgumentException    if listener is null

SecurityException    if no suitable permission is present.

Source: http://developer.android.com/reference/android/location/LocationManager.html

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents. |
| 17.3 | generating a request for call trace information that pertains to the end-point device, | The Accused Products operate a method of generating a request for call trace information that pertains to the end-point device. |
| | | For example, the Accused Products can generate a request that pertains to call trace information (including, for example, geographical location information) about an end-point device, i.e. the Accused Product, by communicating that request over a packet switched network to a network compatible device.  In one example, an Accused Product running the Maps application pre-installed on the Accused Products is able to generate a request for information about its geographic location and communicate it over a packet-switched network to a location server in order to retrieve location information about the Accused Product, as shown in product testing citations 17.3(5)–17.3(7) and public documentation citations 17.3(1) - 17.3(4).  As a further example, when Wi-Fi based location services are used, the Accused Devices sends a request pertaining to geographical location information about the devices to "https://www.google.com/loc/m/api", which on information and belief, corresponds to a network compatible device such as a location server, as shown in product testing citations 17.3(5)–17.3(7) and open source code citations 17.3(8) and 17.3(9). |
| | | In addition to the above, open source code citations 17.3(10) and public documentation citation 17.3(11) show that this limitation is present on all Accused Products running Android versions 1.0 or above. |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.3(1)** |
| | | ## Requesting Location Updates |
| | | Before addressing some of the location errors described above, here is an introduction to how you can obtain user location on Android. |
| | | Getting user location in Android works by means of callback. You indicate that you'd like to receive location updates from the `LocationManager` ("Location Manager") by calling `requestLocationUpdates()`, passing it a `LocationListener`. Your `LocationListener` must implement several callback methods that the Location Manager calls when the user location changes or when the status of the service changes. |
| | | Source: http://developer.android.com/guide/topics/location/strategies.html |
| | | **Exemplary Public Document Citation 17.3(2)** |
| | | LocationManager      Added in API level 1 |
| | | extends Object |
| | | java.lang.Object |
| | |    ↳ android.location.LocationManager |
| | | **Class Overview** |
| | | This class provides access to the system location services. These services allow applications to obtain periodic updates of the device's geographical location, or to fire an application-specified Intent when the device enters the proximity of a given geographical location. |
| | | Source: http://developer.android.com/reference/android/location/LocationManager.html |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.3(3)** |
| | | public void **requestLocationUpdates** (long minTime, float minDistance, Criteria criteria, PendingIntent intent) |
| | | Register for location updates using a Criteria and pending intent. |
| | | The requestLocationUpdates() and requestSingleUpdate() register the current activity to be updated periodically by the named provider, or by the provider matching the specified Criteria, with location and status updates |
| | | It may take a while to receive the first location update. If an immediate location is required, applications may use the getLastKnownLocation(String) method. |
| | | Location updates are received either by LocationListener callbacks, or by broadcast intents to a supplied PendingIntent. |
| | | Source: http://developer.android.com/reference/android/location/LocationManager.html |
| | | **Exemplary Public Document Citation 17.3(4):** |
| | | **Retrieving the Current Location** |
| | | Location Services automatically maintains the user's current location, so all your app has to do is retrieve it as needed. The location's accuracy is based on the location permissions you've requested and location sensors that are currently active for the device. |
| | | Location Services sends the current location to your app through a location client, which is an instance of the Location Services class LocationClient. All requests for location information go through this client. |
| | | Source: https://developer.android.com/training/location/retrieve-current.html |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|-----------|----------|---------------------|
| | | **Exemplary Product Testing Citation 17.3(5)** <br><br>  <br><br> Source: Exemplary testing performed on Samsung Galaxy S III and Samsung Galaxy Tab 8.9 |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|-----------|----------|---------------------|
| | | **Exemplary Product Testing Citation 17.23(6)**<br><br><br><br>Source: Exemplary testing performed on Samsung Galaxy S III and Samsung Galaxy Tab 8.9 |
| | | |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Product Testing Citation 17.3(7)**<br><br> |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Open Source Citation 17.3(8)** |
| | | package android.location; |
| | | ... |
| | | /** |
| | | * A data object that contains quality of service parameters for requests |
| | | * to the {@link LocationManager}. |
| | | * |
| | | * <p>LocationRequest objects are used to request a quality of service |
| | | * for location updates from the Location Manager. |
| | | * |
| | | * <p>For example, if your application wants high accuracy location |
| | | * it should create a location request with {@link #setQuality} set to |
| | | * {@link #ACCURACY_FINE} or {@link #POWER_HIGH}, and it should set |
| | | * {@link #setInterval} to less than one second. This would be |
| | | * appropriate for mapping applications that are showing your location |
| | | * in real-time. |
| | | ... |
| | | public final class LocationRequest implements Parcelable { |
| | | ... |
| | | /** |
| | | * Create a location request with default parameters. |
| | | * |
| | | * <p>Default parameters are for a low power, slowly updated location. |
| | | * It can then be adjusted as required by the applications before passing |
| | | * to the {@link LocationManager} |
| | | * |
| | | * @return a new location request |
| | | */ |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | ```
public static LocationRequest create() {
    LocationRequest request = new LocationRequest();
    return request;
}

...
/** @hide */
public static LocationRequest createFromDeprecatedProvider(String provider, long minTime,
        float minDistance, boolean singleShot) {
    if (minTime < 0) minTime = 0;
    if (minDistance < 0) minDistance = 0;

    int quality;
    if (LocationManager.PASSIVE_PROVIDER.equals(provider)) {
        quality = POWER_NONE;
    } else if (LocationManager.GPS_PROVIDER.equals(provider)) {
        quality = ACCURACY_FINE;
    } else {
        quality = POWER_LOW;
    }

    LocationRequest request = new LocationRequest()
        .setProvider(provider)
        .setQuality(quality)
        .setInterval(minTime)
        .setFastestInterval(minTime)
        .setSmallestDisplacement(minDistance);
    if (singleShot) request.setNumUpdates(1);
    return request;
}
``` |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | ...<br><br>/** @hide */<br>public LocationRequest() {}<br><br>...<br>}<br><br>Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationRequest.java<br><br>**Exemplary Open Source Citation 17.3(9)**<br><br>**package android.location;**<br><br>...<br><br>**import com.android.internal.location.ProviderProperties;**<br><br>/**<br>* **This class provides access to the system location services. These**<br>* **services allow applications to obtain periodic updates of the**<br>* **device's geographical location, or to fire an application-specified**<br>* **{@link Intent} when the device enters the proximity of a given**<br>* **geographical location.**<br>*<br>...<br>*/<br>**public class LocationManager {**<br><br>...<br><br>**private final ILocationManager mService;**<br><br>/**<br>* **Name of the GPS location provider.** |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | \* \* <p>This provider determines location using <br> \* satellites. Depending on conditions, this provider may take a while to return <br> \* a location fix. Requires the permission <br> \* {@link android.Manifest.permission#ACCESS_FINE_LOCATION}. <br> \* <br> \* <p> The extras Bundle for the GPS location provider can contain the <br> \* following key/value pairs: <br> \* <ul> <br> \* <li> satellites - the number of satellites used to derive the fix <br> \* </ul> <br> \*/ <br> public static final String GPS_PROVIDER = "gps"; <br> … <br> public LocationManager(Context context, ILocationManager service) { <br> mService = service; <br> mContext = context; <br> … <br> /** <br> \* Register for location updates using the named provider, and a <br> \* pending intent. <br> \* <br> \* <p>See {@link #requestLocationUpdates(long, float, Criteria, PendingIntent)} <br> \* for more detail on how to use this method. <br> \* <br> \* @param provider the name of the provider with which to register <br> \* @param minTime minimum time interval between location updates, in milliseconds <br> \* @param minDistance minimum distance between location updates, in meters <br> \* @param listener a {@link LocationListener} whose |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * {@link LocationListener#onLocationChanged} method will be called for <br> * each location update <br> * <br> * @throws IllegalArgumentException if provider is null or doesn't exist <br> * on this device <br> * @throws IllegalArgumentException if listener is null <br> * @throws RuntimeException if the calling thread has no Looper <br> * @throws SecurityException if no suitable permission is present <br> */ <br> public void requestLocationUpdates(String provider, long minTime, float minDistance, <br>     LocationListener listener) { <br>     checkProvider(provider); <br>     checkListener(listener); <br><br>     LocationRequest request = LocationRequest.createFromDeprecatedProvider( <br>         provider, minTime, minDistance, false); <br>     requestLocationUpdates(request, listener, null, null); <br> } <br> ... <br><br> Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationManager.java <br><br> <u>Exemplary Open Source Code Citation 17.3(10):</u> <br><br> package android.location; <br><br> ... <br><br> /** <br> * This class provides access to the system location services.  These |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * services allow applications to obtain periodic updates of the<br>* device's geographical location, or to fire an application-specified<br>* {@link Intent} when the device enters the proximity of a given<br>* geographical location.<br>*<br>*<br>*/<br>public class LocationManager {<br>private static final String TAG = "LocationManager";<br>private ILocationManager mService;<br>private final HashMap<GpsStatus.Listener, GpsStatusListenerTransport> mGpsStatusListeners =<br>    new HashMap<GpsStatus.Listener, GpsStatusListenerTransport>();<br>private final GpsStatus mGpsStatus = new GpsStatus();<br><br>/**<br>* Name of the network location provider.  This provider determines location based on<br>* availability of cell tower and WiFi access points. Results are retrieved<br>* by means of a network lookup.<br>*<br>* Requires either of the permissions android.permission.ACCESS_COARSE_LOCATION<br>* or android.permission.ACCESS_FINE_LOCATION.<br>*/<br>public static final String NETWORK_PROVIDER = "network";<br>...<br>public static final String KEY_PROVIDER_ENABLED = "providerEnabled";<br><br>/**<br>* Key used for a Bundle extra holding a Location value |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * when a location change is broadcast using a PendingIntent.<br>*/<br>public static final String KEY_LOCATION_CHANGED = "location";<br><br>...<br><br>private class ListenerTransport extends ILocationListener.Stub {<br>private static final int TYPE_LOCATION_CHANGED = 1;<br>private static final int TYPE_STATUS_CHANGED = 2;<br>private static final int TYPE_PROVIDER_ENABLED = 3;<br>private static final int TYPE_PROVIDER_DISABLED = 4;<br><br>private LocationListener mListener;<br>private final Handler mListenerHandler;<br><br>...<br><br>public void onLocationChanged(Location location) {<br>Message msg = Message.obtain();<br>msg.what = TYPE_LOCATION_CHANGED;<br>msg.obj = location;<br>mListenerHandler.sendMessage(msg);<br>}<br><br>public void onStatusChanged(String provider, int status, Bundle extras) {<br>Message msg = Message.obtain();<br>msg.what = TYPE_STATUS_CHANGED;<br>Bundle b = new Bundle();<br>b.putString("provider", provider);<br>b.putInt("status", status); |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | `if (extras != null) {`<br>`    b.putBundle("extras", extras);`<br>`}`<br>`msg.obj = b;`<br>`mListenerHandler.sendMessage(msg);`<br>`}`<br>...<br><br>`/**`<br>` * Registers the current activity to be notified periodically by`<br>` * the named provider.  Periodically, the supplied LocationListener will`<br>` * be called with the current Location or with status updates.`<br>` *`<br>` * <p> It may take a while to receive the most recent location. If`<br>` * an immediate location is required, applications may use the`<br>` * {@link #getLastKnownLocation(String)} method.`<br>` *`<br>` * <p> In case the provider is disabled by the user, updates will stop,`<br>` * and the {@link LocationListener#onProviderDisabled(String)}`<br>` * method will be called. As soon as the provider is enabled again,`<br>` * the {@link LocationListener#onProviderEnabled(String)} method will`<br>` * be called and location updates will start again.`<br>` *`<br>` * <p> The frequency of notification may be controlled using the`<br>` * minTime and minDistance parameters. If minTime is greater than 0,`<br>` * the LocationManager could potentially rest for minTime milliseconds`<br>` * between location updates to conserve power. If minDistance is greater than 0,` |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * a location will only be broadcasted if the device moves by minDistance meters.<br>* To obtain notifications as frequently as possible, set both parameters to 0.<br>*<br>* <p> Background services should be careful about setting a sufficiently high<br>* minTime so that the device doesn't consume too much power by keeping the<br>* GPS or wireless radios on all the time. In particular, values under 60000ms<br>* are not recommended.<br>*<br>*/<br>public void requestLocationUpdate(String provider,<br>  long minTime, float minDistance, LocationListener listener) {<br>if (provider == null) {<br>    throw new IllegalArgumentException("provider==null"); <br>}<br>if (listener == null) {<br>    throw new IllegalArgumentException("listener==null");<br>}<br>_requestLocationUpdates(provider, minTime, minDistance, listener, null);<br>}<br>/**<br>* Registers the current activity to be notified periodically by<br>* the named provider. Periodically, the supplied LocationListener will<br>* be called with the current Location or with status updates.<br>*<br>* <p> It may take a while to receive the most recent location. If<br>* an immediate location is required, applications may use the<br>* {@link #getLastKnownLocation(String)} method. |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * <br> * <p> In case the provider is disabled by the user, updates will stop, <br> * and the {@link LocationListener#onProviderDisabled(String)} <br> * method will be called. As soon as the provider is enabled again, <br> * the {@link LocationListener#onProviderEnabled(String)} method will <br> * be called and location updates will start again. <br> * <br> * <p> The frequency of notification may be controlled using the <br> * minTime and minDistance parameters. If minTime is greater than 0, <br> * <br> ... <br> /** <br> * Returns a Location indicating the data from the last known <br> * location fix obtained from the given provider.  This can be done <br> * without starting the provider.  Note that this location could <br> * be out-of-date, for example if the device was turned off and <br> * moved to another location. <br> * <br> * <p> If the provider is currently disabled, null is returned. <br> * <br> * @param provider the name of the provider <br> * @return the last known location for the provider, or null <br> * <br> * @throws SecurityException if no suitable permission is present for the provider. <br> * @throws IllegalArgumentException if provider is null or doesn't exist <br> */ <br> public Location getLastKnownLocation(String provider) { <br> if (provider == null) { <br> throw new IllegalArgumentException("provider==null"); <br> } |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
|  |  | ```
try {
    return mService.getLastKnownLocation(provider);
} catch (RemoteException ex) {
    Log.e(TAG, "getLastKnowLocation: RemoteException", ex);
    return null;
}
}
...
```

Source: \ android-1.6_r1.1\frameworks\base\location\java\android\location\LocationManager.java |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|-----------|----------|---------------------|
|           |          | **Exemplary Public Document Citation 17.3(1):** |

public Location **getLastKnownLocation** (String provider)

Returns a Location indicating the data from the last known location for obtained from the given provider.

This can be done without starting the provider. Note that this Location could be out-of-date. For example, if the device was turned off and moved to another location.

If the provider is currently disabled, null is returned.

Parameters

provider   the name of the provider

Returns

the last known location for the provider, or null

Throws

SecurityException   if no suitable permission is present

IllegalArgumentException   if provider is null or doesn't exist

public void **requestLocationUpdates** (String provider, long minTime, float minDistance, LocationListener listener)

Register for location updates using the named provider, and a pending intent.

See requestLocationUpdates(long, float, Criteria, PendingIntent) for more detail on how to use this method

Parameters

provider   the name of the provider with which to register

minTime   minimum time interval between location updates, in milliseconds

minDistance   minimum distance between location updates, in meters

listener   a LocationListener whose onLocationChanged(Location) method will be called for each location update

Throws

IllegalArgumentException   if provider is null or doesn't exist on this device

IllegalArgumentException   if listener is null

RuntimeException   if the calling thread has no Looper

SecurityException   if no suitable permission is present

public void **requestLocationUpdates** (String provider, long minTime, float minDistance, LocationListener listener, Looper looper)

Register for location updates using the named provider, and a callback on the specified looper thread.

See requestLocationUpdates(long, float, Criteria, PendingIntent) for more detail on how to use this method

Parameters

provider   the name of the provider with which to register

minTime   minimum time interval between location updates, in milliseconds

minDistance   minimum distance between location updates, in meters

listener   a LocationListener whose onLocationChanged(Location) method will be called for each location update

looper   a Looper object whose message queue will be used to implement the callback mechanism, or null to make callbacks on the calling thread

Throws

IllegalArgumentException   if provider is null or doesn't exist

IllegalArgumentException   if listener is null

SecurityException   if no suitable permission is present

Source: http://developer.android.com/reference/android/location/LocationManager.html

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents. |
| 17.4 | subsequently receiving the call trace information that was requested, and | The Accused Products operate a method of subsequently receiving the call trace information that was requested.

For example, the Accused Products receive the requested call trace information (including, for example, geographical location information) as shown in public documentation citations 17.4(1), 17.4(2) and open source code citations 17.4(5) and 17.4(6). As one example, an Accused Product running the pre-installed Maps application is able to receive geographical data related to its location from a location server as shown in product testing citation 17.4(3) and public documentation citation 17.4(7). As a further example, product testing citation 17.4(4) shows the pre-installed Maps application on the Accused Product device receiving location information, indicated by the blue triangle on the map representing the device's current location. The citation shows that once responses from the location server are blocked (i.e. https://www.google.com/loc/m/api) the devices no longer receive their current geographical location from the location server, as shown by the grey dot on the map in product testing citation 17.4(4).

In addition to the above, open source code citations 17.4(8), 17.4(9) and public documentation citation 17.4(10), 17.4(11) show that this limitation is present on all Accused Products running Android versions 1.0 or above. |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.4(1)** |
| | | LocationListener |
| | | android.location.LocationListener |
| | | **Class Overview** |
| | | Used for receiving notifications from the LocationManager when the location has changed. These methods are called if the LocationListener has been registered with the location manager service using the requestLocationUpdates(String, long, float, LocationListener) method. |
| | | Source: http://developer.android.com/reference/android/location/LocationListener.html |
| | | **Exemplary Public Document Citation 17.4(2)** |
| | | **Receiving Location Updates** |
| | | If your app does navigation or tracking you probably want to get the user's location at regular intervals. While you can do this with LocationClient.getLastLocation(), a more direct approach is to request periodic updates from Location Services. In response, Location Services automatically updates your app with the best available location, based on the currently available location providers such as WiFi and GPS. |
| | | To get periodic location updates from Location Services, you send a request using a location client. Depending on the form of the request, Location Services either invokes a callback method and passes in a Location object, or issues an Intent that contains the location in its extended data. The accuracy and frequency of the updates are affected by the location permissions you've requested and the parameters you pass to Location Services with the request. |
| | | Source: https://developer.android.com/training/location/receive-location-updates.html |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Product Testing Citation 17.4(3)** |
| | |  |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Product Testing Citation 17.4(4)**<br><br><br><br>Source: Exemplary testing performed on Samsung Galaxy S III |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | Source: Exemplary testing performed on Samsung Galaxy Tab 8.9 |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Open Code Source Citation 17.4(5)**<br><br>package android.location;<br><br>import android.os.Bundle;<br><br>/**<br> * Used for receiving notifications from the LocationManager when<br> * the location has changed. These methods are called if the<br> * LocationListener has been registered with the location manager service<br> * using the {@link LocationManager#requestLocationUpdates(String, long, float, LocationListener)}<br> * method.<br> */<br>public interface LocationListener {<br> /**<br> * Called when the location has changed.<br> *<br> * \<p\> There are no restrictions on the use of the supplied Location object.<br> *<br> * @param location The new location, as a Location object.<br> */<br> void onLocationChanged(Location location);<br> ...<br>}<br><br>Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationListener.java |

**– A1252 –**

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Open Code Source Citation 17.4(6)**<br><br>**package android.location;**<br><br>…<br><br>**import com.android.internal.location.ProviderProperties;**<br><br>/**<br>* This class provides access to the system location services. These<br>* services allow applications to obtain periodic updates of the<br>* device's geographical location, or to fire an application-specified<br>* {@link Intent} when the device enters the proximity of a given<br>* geographical location.<br>*<br>…<br>*/<br>**public class LocationManager {**<br><br>…<br><br>   **private final ILocationManager mService;**<br><br>…<br><br>   **private class ListenerTransport extends ILocationListener.Stub {**<br>      **private static final int TYPE_LOCATION_CHANGED = 1;**<br>      **private static final int TYPE_STATUS_CHANGED = 2;**<br>      **private static final int TYPE_PROVIDER_ENABLED = 3;**<br>      **private static final int TYPE_PROVIDER_DISABLED = 4;**<br><br>      **private LocationListener mListener;** |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | public void onLocationChanged(Location location) {<br>Message msg = Message.obtain();<br>msg.what = TYPE_LOCATION_CHANGED;<br>msg.obj = location;<br>mListenerHandler.sendMessage(msg);<br>}<br>private void _handleMessage(Message msg) {<br>switch (msg.what) {<br>case TYPE_LOCATION_CHANGED:<br>Location location = new Location((Location) msg.obj);<br>mListener.onLocationChanged(location);<br>break;<br>case TYPE_STATUS_CHANGED:<br>Bundle b = (Bundle) msg.obj;<br>String provider = b.getString("provider");<br>int status = b.getInt("status");<br>Bundle extras = b.getBundle("extras");<br>mListener.onStatusChanged(provider, status, extras);<br>break;<br>case TYPE_PROVIDER_ENABLED:<br>mListener.onProviderEnabled((String) msg.obj);<br>break;<br>case TYPE_PROVIDER_DISABLED:<br>mListener.onProviderDisabled((String) msg.obj);<br>break;<br>}<br>} |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|-----------|----------|---------------------|
| | | Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationManager.java |
| | | **Exemplary Public Document Citation 17.4(7):** |
| | | **Retrieving the Current Location** |
| | | Location Services automatically maintains the user's current location, so all your app has to do is retrieve it as needed. The location's accuracy is based on the location permissions you've requested and location sensors that are currently active for the device. |
| | | Location Services sends the current location to your app through a location client, which is an instance of the Location Services class LocationClient. All requests for location information go through this client. |
| | | Source: https://developer.android.com/training/location/retrieve-current.html |
| | | **Exemplary Open Code Source Citation 17.4(8)** |
| | | package android.location; |
| | | import android.os.Bundle; |
| | | /** |
| | | * Used for receiving notifications from the LocationManager when |
| | | * the location has changed. These methods are called if the |
| | | * LocationListener has been registered with the location manager service |
| | | * using the {@link LocationManager#requestLocationUpdates(String, long, float, LocationListener)} |
| | | * method. |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | */<br>public interface LocationListener {<br><br>/**<br> * Called when the location has changed.<br> *<br> * <p> There are no restrictions on the use of the supplied Location object.<br> *<br> * @param location The new location, as a Location object.<br> */<br>void onLocationChanged(Location location);<br><br>/**<br> * Called when the provider status changes. This method is called when<br> * a provider is unable to fetch a location or if the provider has recently<br> * become available after a period of unavailability.<br> *<br> * @param provider the name of the location provider associated with this<br> * update.<br> * @param status {@link LocationProvider#OUT_OF_SERVICE} if the<br> * provider is out of service, and this is not expected to change in the<br> * near future; {@link LocationProvider#TEMPORARILY_UNAVAILABLE} if<br> * the provider is temporarily unavailable but is expected to be available<br> * shortly; and {@link LocationProvider#AVAILABLE} if the<br> * provider is currently available.<br> * @param extras an optional Bundle which will contain provider specific<br> * status variables.<br> *<br> * <p> A number of common key/value pairs for the extras Bundle are listed |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | \* below. Providers that use any of the keys on this list must<br>\* provide the corresponding value as described below.<br>\*<br>\* <ul><br>\* <li> satellites - the number of satellites used to derive the fix<br>\* </ul><br>\*/<br>void onStatusChanged(String provider, int status, Bundle extras);<br><br>/\*\*<br>\* Called when the provider is enabled by the user.<br>\*<br>\* @param provider the name of the location provider associated with this<br>\* update.<br>\*/<br>void onProviderEnabled(String provider);<br>/\*\*<br>\* Called when the provider is disabled by the user. If requestLocationUpdates<br>\* is called on an already disabled provider, this method is called<br>\* immediately.<br>\*<br>\* @param provider the name of the location provider associated with this<br>\* update.<br>\*/<br>void onProviderDisabled(String provider);<br>...<br><br>Source: \android-1.6_r1.1\frameworks\base\location\java\android\location\LocationListener.java |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Open Code Source Citation 17.4(9)** |
| | | package android.location; |
| | | ... |
| | | /** |
| | | * This class provides access to the system location services. These |
| | | * services allow applications to obtain periodic updates of the |
| | | * device's geographical location, or to fire an application-specified |
| | | * {@link Intent} when the device enters the proximity of a given |
| | | * geographical location. |
| | | * |
| | | * |
| | | */ |
| | | public class LocationManager { |
| | | private static final String TAG = "LocationManager"; |
| | | private ILocationManager mService; |
| | | private final HashMap<GpsStatus.Listener, GpsStatusListenerTransport> mGpsStatusListeners = |
| | | new HashMap<GpsStatus.Listener, GpsStatusListenerTransport>(); |
| | | private final GpsStatus mGpsStatus = new GpsStatus(); |
| | | |
| | | /** |
| | | * Name of the network location provider. This provider determines location based on |
| | | * availability of cell tower and WiFi access points. Results are retrieved |
| | | * by means of a network lookup. |
| | | * |
| | | * Requires either of the permissions android.permission.ACCESS_COARSE_LOCATION |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * or android.permission.ACCESS_FINE_LOCATION.<br>*/<br>public static final String NETWORK_PROVIDER = "network";<br>…<br>public static final String KEY_PROVIDER_ENABLED = "providerEnabled";<br><br>/**<br>* Key used for a Bundle extra holding a Location value<br>* when a location change is broadcast using a PendingIntent.<br>*/<br>public static final String KEY_LOCATION_CHANGED = "location";<br><br>…<br><br>private class ListenerTransport extends ILocationListener.Stub {<br>private static final int TYPE_LOCATION_CHANGED = 1;<br>private static final int TYPE_STATUS_CHANGED = 2;<br>private static final int TYPE_PROVIDER_ENABLED = 3;<br>private static final int TYPE_PROVIDER_DISABLED = 4;<br><br>private LocationListener mListener;<br>private final Handler mListenerHandler;<br><br>…<br><br>public void onLocationChanged(Location location) {<br>Message msg = Message.obtain();<br>msg.what = TYPE_LOCATION_CHANGED;<br>msg.obj = location;<br>mListenerHandler.sendMessage(msg); |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | `}`<br><br>`public void onStatusChanged(String provider, int status, Bundle extras) {`<br>`    Message msg = Message.obtain();`<br>`    msg.what = TYPE_STATUS_CHANGED;`<br>`    Bundle b = new Bundle();`<br>`    b.putString("provider", provider);`<br>`    b.putInt("status", status);`<br>`    if (extras != null) {`<br>`        b.putBundle("extras", extras);`<br>`    }`<br>`    msg.obj = b;`<br>`    mListenerHandler.sendMessage(msg);`<br>`}`<br><br>…<br><br>`/**`<br>` * Registers the current activity to be notified periodically by`<br>` * the named provider.  Periodically, the supplied LocationListener will`<br>` * be called with the current Location or with status updates.`<br>` *`<br>` * <p> It may take a while to receive the most recent location. If`<br>` * an immediate location is required, applications may use the`<br>` * {@link #getLastKnownLocation(String)} method.`<br>` *`<br>` * <p> In case the provider is disabled by the user, updates will stop,`<br>` * and the {@link LocationListener#onProviderDisabled(String)}` |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | * method will be called. As soon as the provider is enabled again, |
| | | * the {@link LocationListener#onProviderEnabled(String)} method will |
| | | * be called and location updates will start again. |
| | | * |
| | | * <p> The frequency of notification may be controlled using the |
| | | * minTime and minDistance parameters. If minTime is greater than 0, |
| | | * the LocationManager could potentially rest for minTime milliseconds |
| | | * between location updates to conserve power. If minDistance is greater than 0, |
| | | * a location will only be broadcasted if the device moves by minDistance meters. |
| | | * To obtain notifications as frequently as possible, set both parameters to 0. |
| | | * |
| | | * <p> Background services should be careful about setting a sufficiently high |
| | | * minTime so that the device doesn't consume too much power by keeping the |
| | | * GPS or wireless radios on all the time. In particular, values under 60000ms |
| | | * are not recommended. |
| | | * |
| | | * |
| | | */ |
| | | public void requestLocationUpdates(String provider, |
| | | long minTime, float minDistance, LocationListener listener) { |
| | | if (provider == null) { |
| | | throw new IllegalArgumentException("provider==null"); |
| | | } |
| | | if (listener == null) { |
| | | throw new IllegalArgumentException("listener==null"); |
| | | } |
| | | _requestLocationUpdates(provider, minTime, minDistance, listener, null); |
| | | } |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | /**<br>* **Registers the current activity to be notified periodically by**<br>* **the named provider. Periodically, the supplied LocationListener will**<br>* **be called with the current Location or with status updates.**<br>*<br>* **<p> It may take a while to receive the most recent location. If**<br>* **an immediate location is required, applications may use the**<br>* **{@link #getLastKnownLocation(String)} method.**<br>*<br>* **<p> In case the provider is disabled by the user, updates will stop,**<br>* **and the {@link LocationListener#onProviderDisabled(String)}**<br>* **method will be called. As soon as the provider is enabled again,**<br>* **the {@link LocationListener#onProviderEnabled(String)} method will**<br>* **be called and location updates will start again.**<br>*<br>* **<p> The frequency of notification may be controlled using the**<br>* **minTime and minDistance parameters. If minTime is greater than 0,**<br>*<br>...<br>/**<br>* **Returns a Location indicating the data from the last known**<br>* **location fix obtained from the given provider. This can be done**<br>* **without starting the provider. Note that this location could**<br>* **be out-of-date, for example if the device was turned off and**<br>* **moved to another location.**<br>*<br>* **<p> If the provider is currently disabled, null is returned.**<br>*<br>* **@param provider the name of the provider**<br>* **@return the last known location for the provider, or null** |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | `*`<br>`* @throws SecurityException if no suitable permission is present for the provider.`<br>`* @throws IllegalArgumentException if provider is null or doesn't exist`<br>`*/`<br>`public Location getLastKnownLocation(String provider) {`<br>`if (provider == null) {`<br>`    throw new IllegalArgumentException("provider==null");`<br>`}`<br>`try {`<br>`    return mService.getLastKnownLocation(provider);`<br>`} catch (RemoteException ex) {`<br>`    Log.e(TAG, "getLastKnowLocation: RemoteException", ex);`<br>`    return null;`<br>`}`<br>`}`<br>`...`<br><br>Source: \android-1.6_r1.1\frameworks\base\location\java\android\location\LocationManager.java |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.4(10):** |

**Public Methods**

public abstract void **onLocationChanged** (Location location)

Called when the location has changed

There are no restrictions on the use of the supplied Location object.

**Parameters**

location    The new location, as a Location object

public abstract void **onProviderDisabled** (String provider)

Called when the provider is disabled by the user. If requestLocationUpdates is called on an already disabled provider, this method is called immediately

**Parameters**

provider    the name of the location provider associated with this update.

public abstract void **onProviderEnabled** (String provider)

Called when the provider is enabled by the user.

**Parameters**

provider    the name of the location provider associated with this update.

public abstract void **onStatusChanged** (String provider, int status, Bundle extras)

Called when the provider status changes. This method is called when a provider is unable to fetch a location or if the provider has recently become available after a period of unavailability

**Parameters**

provider    the name of the location provider associated with this update.

status    OUT_OF_SERVICE if the provider is out of service, and this is not expected to change in the near future; TEMPORARILY_UNAVAILABLE if the provider is temporarily unavailable but is expected to be available shortly; and AVAILABLE if the provider is currently available.

extras    an optional Bundle which will contain provider specific status variables.

A number of common key/value pairs for the extras Bundle are listed below. Providers that use any of the keys on this list must provide the corresponding value as described below:

• satellites - the number of satellites used to derive the fix.

Source: http://developer.android.com/reference/android/location/LocationListener.html

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Public Document Citation 17.4(11):** |

public void **requestLocationUpdates** (String provider, long minTime, float minDistance, LocationListener listener)

Register for location updates using the named provider, and a pending intent.

See requestLocationUpdates(long, float, Criteria, PendingIntent) for more detail on how to use this method

Parameters
provider    the name of the provider with which to register
minTime     minimum time interval between location updates, in milliseconds.
minDistance minimum distance between location updates, in meters
listener    a LocationListener whose onLocationChanged(Location) method will be called for each location update

Throws
IllegalArgumentException    if provider is null or doesn't exist on this device
IllegalArgumentException    if listener is null
RuntimeException            if the calling thread has no Looper
SecurityException           if no suitable permission is present

public void **requestLocationUpdates** (String provider, long minTime, float minDistance, LocationListener listener, Looper looper)

Register for location updates using the named provider, and a callback on the specified looper thread.

See requestLocationUpdates(long, float, Criteria, PendingIntent) for more detail on how to use this method

Parameters
provider    the name of the provider with which to register
minTime     minimum time interval between location updates, in milliseconds.
minDistance minimum distance between location updates, in meters
listener    a LocationListener whose onLocationChanged(Location) method will be called for each location update
looper      a Looper object whose message queue will be used to implement the callback mechanism, or null to make callbacks on the calling thread

Throws
IllegalArgumentException    if provider is null or doesn't exist
IllegalArgumentException    if listener is null
SecurityException           if no suitable permission is present

Source: http://developer.android.com/reference/android/location/LocationManager.html

Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents.

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| 17.5 | dynamically displaying at least a portion of the call trace information that was received. | The Accused Products operate a method of dynamically displaying at least a portion of the call trace information that was received.<br><br>For example, the pre-installed Maps application on the Accused Products dynamically displays (without any further action by a user) at least a portion of the received call trace information (geographical location information) related to the Accused Product device as shown in product testing citation 17.5(1). *See also*, for example without limitation, Section 17.4 |

U.S. Patent No. 6,937,572

| Claim No. | Claim 17 | ACCUSED PRODUCTS[1] |
|---|---|---|
| | | **Exemplary Product Testing Citation 17.5(1)**  Source: Exemplary testing performed on Samsung Galaxy S III and Samsung Galaxy Tab 8.9 Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents |

U.S. Patent No. 6,937,572

| S. No. | Claim 18 | ACCUSED PRODUCTS |
|---|---|---|
| 18 | A method as in claim 17, wherein the call trace information is selected from a group consisting of an Internet Protocol (IP) address, a geographical location of the end-point device, a type or class of the end-point device, a call route, a topology of the route, a domain name server of the IP address and route, a directory number and name, a call back number, an advisement as to whether the IP address for the end-point device is mobile and an advisement as to what redirection may have occurred before the call was completed | The Accused Products include operation of a method as in claim 17, wherein the call trace information is selected from a group consisting of an Internet Protocol (IP) address, a geographical location of the end-point device, a type or class of the end-point device, a call route, a topology of the route, a domain name server of the IP address and route, a directory number and name, a call back number, an advisement as to whether the IP address for the end-point device is mobile and an advisement as to what redirection may have occurred before the call was completed.

The call-trace information pertaining to the Accused Products includes, for example, a geographical location of the end-point device, i.e. the Accused Product. *See*, for example and without limitation, chart sections 17.1, 17.3, and 17.5.

Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents. |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
| 19.1 | A method as in claim 18, further comprising logging the call trace information | The Accused Products include operation of a method as in claim 18, further comprising logging the call trace information. |
| | | On information and belief, the Accused Products running the Maps application will log on the Accused Product the geographical location information of the Accused Product. In one example, when the current location is not available (for example, when a location provider is unavailable) the geographic location information logged on the device can be utilized as shown in the public documentation citations 19.1(1) and 19.1(2) and exemplary open source code citations19(3) and 19.1(4). |
| | | In addition to the above, open source code citations 19.1(5) and 19.1(6) and public documentation citation 19.1(7) show that this limitation is present on all Accused Products running Android versions 1.0 or above. |
| | | **Exemplary Public Documentation Citation 19.1(1)** |
| | | **Getting a fast fix with the last known location** |
| | | The time it takes for your location listener to receive the first location fix is often too long for users wait. Until a more accurate location is provided to your location listener, you should utilize a cached location by calling `getLastKnownLocation(String)`: |
| | | ```
String locationProvider = LocationManager.NETWORK_PROVIDER;
// Or use LocationManager.GPS_PROVIDER

Location lastKnownLocation = locationManager.getLastKnownLocation(locationProvider);
``` |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|

Source: http://developer.android.com/guide/topics/location/strategies.html

**Exemplary Public Documentation Citation 19.1(2)**

### Defining a Model for the Best Performance

Location-based applications are now commonplace, but due to the less than optimal accuracy, user movement, the multitude of methods to obtain the location, and the desire to conserve battery, getting user location is complicated. To overcome the obstacles of obtaining a good user location while preserving battery power, you must define a consistent model that specific to how your application obtains the user location. This model includes when you start and stop listening for updates and when to use cached location data.

**Flow for obtaining user location**

Here's the typical flow of procedures for obtaining the user location.

1. Start application.
2. Sometime later, start listening for updates from desired location providers.
3. Maintain a "current best estimate" of location by filtering out new, but less accurate fixes.
4. Stop listening for location updates.
5. Take advantage of the last best location estimate.

Figure 1 demonstrates this model in a timeline that visualizes the period in which an application is listening for location updates and the events that occur during that time:



**Figure 1.** A timeline representing the window in which an application listens for location updates.

This model of a window—during which location updates are received—frames many of the decisions you need to make when adding location-based services to your application.

Source: http://developer.android.com/guide/topics/location/strategies.html

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
| | | **Exemplary Open Source Code Citation 19.1(3)** |
| | | package android.location; |
| | | ... |
| | | import com.android.internal.location.ProviderProperties; |
| | | ... |
| | | /** |
| | | * This class provides access to the system location services.  These |
| | | * services allow applications to obtain periodic updates of the |
| | | * device's geographical location, or to fire an application-specified |
| | | * {@link Intent} when the device enters the proximity of a given |
| | | * geographical location. |
| | | * |
| | | ... |
| | | */ |
| | | |
| | | /** |
| | | * Get the last known location. |
| | | * |
| | | * <p>This location could be very old so use |
| | | * {@link Location#getElapsedRealtimeNanos} to calculate its age. It can |
| | | * also return null if no previous location is available. |
| | | * |
| | | * <p>Always returns immediately. |
| | | * |
| | | * @return The last known location, or null if not available |
| | | * @throws SecurityException if no suitable permission is present |
| | | * |
| | | * @hide |

**– A1271 –**

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
| | | */<br>public Location getLastLocation() {<br>String packageName = mContext.getPackageName();<br><br>try {<br>return mService.getLastLocation(null, packageName);<br>} catch (RemoteException e) {<br>Log.e(TAG, "RemoteException", e);<br>return null;<br>}<br>}<br><br>/**<br>* Returns a Location indicating the data from the last known<br>* location fix obtained from the given provider.<br>*<br>* <p> This can be done<br>* without starting the provider.  Note that this location could<br>* be out-of-date, for example if the device was turned off and<br>* moved to another location.<br>*<br>* <p> If the provider is currently disabled, null is returned.<br>*<br>* @param provider the name of the provider<br>* @return the last known location for the provider, or null<br>*<br>* @throws SecurityException if no suitable permission is present<br>* @throws IllegalArgumentException if provider is null or doesn't exist<br>*/<br>public Location getLastKnownLocation(String provider) { |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
| | | checkProvider(provider);<br>String packageName = mContext.getPackageName();<br>LocationRequest request = LocationRequest.createFromDeprecatedProvider(<br>    provider, 0, 0, true);<br><br>try {<br>    return mService.getLastLocation(request, packageName);<br>} catch (RemoteException e) {<br>    Log.e(TAG, "RemoteException", e);<br>    return null;<br>}<br>}<br><br>Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationManager.java<br><br>**Exemplary Open Source Code Citation 19.1(4)**<br>package android.location;<br><br>import android.os.Bundle;<br><br>/**<br> * Used for receiving notifications from the LocationManager when<br> * the location has changed. These methods are called if the<br> * LocationListener has been registered with the location manager service<br> * using the {@link LocationManager#requestLocationUpdates(String, long, float,<br> * LocationListener)}<br> * method.<br> */<br>public interface LocationListener {<br>    /**<br>     * Called when the location has changed. |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|---|---|---|
| | | * <br> * <p> There are no restrictions on the use of the supplied Location object. <br> * <br> * @param location The new location, as a Location object. <br> */ <br> void onLocationChanged(Location location); <br> /** <br> * Called when the provider status changes. This method is called when <br> * a provider is unable to fetch a location or if the provider has recently <br> * become available after a period of unavailability. <br> * <br> * @param provider the name of the location provider associated with this <br> * update. <br> * @param status {@link LocationProvider#OUT_OF_SERVICE} if the <br> * provider is out of service, and this is not expected to change in the <br> * near future; {@link LocationProvider#TEMPORARILY_UNAVAILABLE} if <br> * the provider is temporarily unavailable but is expected to be available <br> * shortly; and {@link LocationProvider#AVAILABLE} if the <br> * provider is currently available. <br> * @param extras an optional Bundle which will contain provider specific <br> * status variables. <br> * <br> * <p> A number of common key/value pairs for the extras Bundle are listed <br> * below. Providers that use any of the keys on this list must <br> * provide the corresponding value as described below. <br> * <br> * <ul> <br> * <li> satellites - the number of satellites used to derive the fix <br> * </ul> <br> */ |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|---|---|---|
| | | void onStatusChanged(String provider, int status, Bundle extras); |
| | | /** |
| | | * Called when the provider is enabled by the user. |
| | | * |
| | | * @param provider the name of the location provider associated with this |
| | | * update. |
| | | */ |
| | | void onProviderEnabled(String provider); |
| | | /** |
| | | * Called when the provider is disabled by the user. If requestLocationUpdates |
| | | * is called on an already disabled provider, this method is called |
| | | * immediately. |
| | | * |
| | | * @param provider the name of the location provider associated with this |
| | | * update. |
| | | */ |
| | | void onProviderDisabled(String provider); |
| | | } |
| | | Source: \android-4.4.2_r1\frameworks\base\location\java\android\location\LocationListener.java |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|---|---|---|
| | | **Exemplary Open Source Code Citation 19.1(5)** |
| | | package android.location; |
| | | … |
| | | import com.android.internal.location.DummyLocationProvider; |
| | | import java.util.ArrayList;<br>import java.util.Collections;<br>import java.util.Comparator;<br>import java.util.HashMap;<br>import java.util.List; |
| | | /**<br> * This class provides access to the system location services.  These<br> * services allow applications to obtain periodic updates of the<br> * device's geographical location, or to fire an application-specified<br> * {@link Intent} when the device enters the proximity of a given<br> * geographical location.<br> *<br> * <p>You do not<br> * instantiate this class directly; instead, retrieve it through<br> * {@link android.content.Context#getSystemService<br> * Context.getSystemService(Context.LOCATION_SERVICE)}.<br> */<br>public class LocationManager {<br>    private static final String TAG = "LocationManager";<br>    private ILocationManager mService; |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
|        |          | private final HashMap<GpsStatus.Listener, GpsStatusListenerTransport> mGpsStatusListeners = new HashMap<GpsStatus.Listener, GpsStatusListenerTransport>(); private final GpsStatus mGpsStatus = new GpsStatus(); /** * Name of the network location provider.  This provider determines location based on * availability of cell tower and WiFi access points. Results are retrieved * by means of a network lookup. * * Requires either of the permissions android.permission.ACCESS_COARSE_LOCATION * or android.permission.ACCESS_FINE_LOCATION. */ public static final String NETWORK_PROVIDER = "network"; ... /** * Returns a Location indicating the data from the last known * location fix obtained from the given provider.  This can be done * without starting the provider.  Note that this location could * be out-of-date, for example if the device was turned off and * moved to another location. * * <p> If the provider is currently disabled, null is returned. * * @param provider the name of the provider * @return the last known location for the provider, or null * |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
| | | ```
* @throws SecurityException if no suitable permission is present for the provider.
* @throws IllegalArgumentException if provider is null or doesn't exist
*/
public Location getLastKnownLocation(String provider) {
if (provider == null) {
throw new IllegalArgumentException("provider==null");
}
try {
return mService.getLastKnownLocation(provider);
} catch (RemoteException ex) {
Log.e(TAG, "getLastKnowLocation: RemoteException", ex);
return null;
}
}

public void reportLocation(Location location) {
try {
mService.reportLocation(location);
} catch (RemoteException e) {
Log.e(TAG, "RemoteException in reportLocation: ", e);
}
}
...

Source: \android-1.6_r1.1\frameworks\base\location\java\android\location\LocationManager.java
``` |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|---|---|---|
| | | **Exemplary Open Source Code Citation 19.1(6)**<br><br>package android.location;<br><br>import android.os.Bundle;<br><br>/**<br> * Used for receiving notifications from the LocationManager when<br> * the location has changed. These methods are called if the<br> * LocationListener has been registered with the location manager service<br> * using the {@link LocationManager#requestLocationUpdates(String, long, float,<br>LocationListener)}<br> * method.<br> */<br>public interface LocationListener {<br><br>/**<br> * Called when the location has changed.<br> *<br> * <p> There are no restrictions on the use of the supplied Location object.<br> *<br> * @param location The new location, as a Location object.<br> */<br>void onLocationChanged(Location location);<br><br>/**<br> * Called when the provider status changes. This method is called when<br> * a provider is unable to fetch a location or if the provider has recently<br> * become available after a period of unavailability.<br> * |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
| | | * @param provider the name of the location provider associated with this<br> * update.<br> * @param status {@link LocationProvider#OUT_OF_SERVICE} if the<br> * provider is out of service, and this is not expected to change in the<br> * near future; {@link LocationProvider#TEMPORARILY_UNAVAILABLE} if<br> * the provider is temporarily unavailable but is expected to be available<br> * shortly; and {@link LocationProvider#AVAILABLE} if the<br> * provider is currently available.<br> * @param extras an optional Bundle which will contain provider specific<br> * status variables.<br> *<br> * \<p\> A number of common key/value pairs for the extras Bundle are listed<br> * below. Providers that use any of the keys on this list must<br> * provide the corresponding value as described below.<br> *<br> * \<ul\><br> * \<li\> satellites - the number of satellites used to derive the fix<br> * \</ul\><br> */<br>void onStatusChanged(String provider, int status, Bundle extras);<br><br>/**<br> * Called when the provider is enabled by the user.<br> *<br> * @param provider the name of the location provider associated with this<br> * update.<br> */<br>void onProviderEnabled(String provider);<br><br>/** |

U.S. Patent No. 6,937,572

| S. No. | Claim 19 | ACCUSED PRODUCTS |
|--------|----------|------------------|
| | | * Called when the provider is disabled by the user. If requestLocationUpdates<br>* is called on an already disabled provider, this method is called<br>* immediately.<br>*<br>* @param provider the name of the location provider associated with this<br>* update.<br>*/<br>void onProviderDisabled(String provider);<br>…<br>Source: \android-1.6_r1.1\frameworks\base\location\java\android\location\LocationListener.java<br><br>**Exemplary Public Documentation Citation 19.1(7)**<br><br><br><br>Source: http://developer.android.com/reference/android/location/LocationManager.html<br><br>Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents. |

U.S. Patent No. 6,937,572

| S. No. | Claim 20 | ACCUSED PRODUCTS |
|---|---|---|
| 20.1 | A method as in claim 18, further comprising storing the call trace information | The Accused Products include operation of a method as in claim 18, further comprising storing the call trace information<br><br>On information and belief, the Accused Products running the Maps application will store on the Accused Product the geographical location information of the Accused Product. *See*, for example and without limitation, chart sections 18.1 and 19.1.<br><br>Rockstar reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once Samsung produces its source code and technical documents. |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC,** | |
| **Plaintiffs,** | **Civil Action No.  2:13-cv-00900-JRG** |
| **vs.** | |
| **SAMSUNG ELECTRONICS CO., LTD, SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,** | **JURY TRIAL** |
| **Defendants.** | |

**PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR
TECHNOLOGIES LLC'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION
TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER**

Samsung and Google's (collectively, "Defendants") Reply ignores the many facts and relevant authorities that Rockstar and MobileStar (collectively, "Rockstar") discuss in their Response and fails to cure Defendants' evidentiary deficiencies. Instead, Defendants downplay the substantial connections that both Plaintiffs and third parties have to the EDTX and focus on the "findings" of the NDCA (the "NDCA Order")[1] in a different case—to which Samsung is not a party. Defendants neglect that these "findings" rest on accepting Google's pled allegations as true and did not consider the factual record that is before this Court. Moreover the NDCA suit cannot resolve *any* of the major issues against Samsung.

**The NDCA Order.** Defendants argue that the NDCA's personal jurisdiction decision should impact this Court's transfer analysis. Dkt. 66 at 1-2. It does not. The NDCA Order was decided in the context of a motion to dismiss or transfer venue under 28 U.S.C. § 1391. The § 1391 legal standard required that the NDCA base its decision on the allegations pled in *Google's complaint* and resolve any "conflicts in the allegations and evidence . . . in [*Google's*] favor." *Google Inc.*, 2014 U.S. Dist. LEXIS 53757, at *26.[2]  As a result, the NDCA Order rests on an incomplete view of the facts and the acceptance of pled allegations that are false. No such legal standard is applicable here, and as such, unlike the NDCA, this Court has the benefit of weighing the evidence and facts before it.[3] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

**Defendants Fail to Show That The NDCA Action Would Resolve Issues of Infringement, Invalidity, or Damages.** Defendants cannot show the NDCA action would resolve any of the "major issues" of this action (infringement, invalidity, or damages) as to Samsung or that this is a customer-manufacturer suit. First and foremost, Defendants do not dispute that Samsung has not agreed to be bound by *any* determination in the NDCA action. And Google has unambiguously stated that the decision of whether the NDCA action will bind any of the EDTX

---

[1] *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 U.S. Dist. LEXIS 53757 (N.D. Cal. Apr. 17, 2014).

[2] *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 1997) ("In this case, because the parties have not conducted discovery, [the plaintiff] needed only to make a prima facie showing that [the defendant] was subject to personal jurisdiction. As such, the pleadings and affidavits are to be construed in the light most favorable to [the plaintiff].").

[3] Rockstar plans to challenge the NDCA's court's ruling and to promptly file a motion to transfer the NDCA action to the EDTX under §1404, or in the alternative to stay the NDCA action pending resolution of this case.

1

Defendants (other than Google) is not before the NDCA. Ex. C. Absent Samsung's agreement to be bound by the NDCA court's infringement determination as to Google, there is no reason to believe that the NDCA action will resolve *any* issues as to Samsung. *See Pragmatus Telecom, LLC v. Neiman Marcus Grp., Inc.*, 2012 U.S. Dist. LEXIS 189149, at *8 (E.D. Tex. Nov. 20, 2012); *see also In re Microsoft Corp.*, No. 2014-123, slip op. at 3-4 (Fed. Cir. May 5, 2014) (emphasizing the role of judicial economy in the transfer analysis).[4]

Second, Defendants argue that the NDCA action "will resolve major issues" here. Dkt. 66 at 4. But as shown in Rockstar's response (Dkt. 61 at 5-6) and Rockstar's infringement contentions (which were not before the NDCA court), each Defendant (including Samsung) modifies the "Android platform" for use in its infringing products—and those changes are material to the infringement allegations in this case, as EDTX defendants such as LG have already asserted. *See* Ex. B. Additionally, Google has refused to ask the NDCA court to set dates for the production of source code and schematics that describe the operation of the EDTX defendants' accused products—reflecting that each Defendant has unique source code and schematics not supplied by Google. Case 2:13-cv-899, Dkt. 28-1 ¶ 7. If this were a true "customer" suit, Google would have access to these materials.

Third, the NDCA action cannot resolve the major, hardware-specific issues raised by Rockstar's infringement claims—particularly as to the '551 Patent, which *only* relates to hardware and has no tie to any operating system, including Android. In *ContentGuard Holdings, Inc. v. Google, Inc.*, the Court rejected the applicability of the customer-suit exception in a case involving Google and its purported "customers" where "resolution of the NDCA action would not address the hardware component of the patented technology." 2014 U.S. Dist. LEXIS 51676, at *13 n.2 (E.D. Tex. Apr. 15, 2014) (Gilstrap, J.); Ex. E. Here, contrary to Defendants' contentions, at least the '551 Patent is hardware specific with no tie to Android. *See Google*,

---

[4] Like Yahoo! in *In re Microsoft*, here Google has not moved to sever itself from Samsung in conjunction with its motion to transfer. No. 14-123 at 3. Thus, Google has tied itself to Samsung's substantial and far-reaching contacts with the EDTX. *Id.* (refusing to consider the impact of Yahoo!'s motion to sever itself from Microsoft because that argument "was not raised to the district court with regard to transfer").

2014 U.S. Dist. LEXIS 53757, at *30 n.10; Dkt. 61 at 4 (explaining that the other six patents-in-suit also have hardware-specific limitations).

Fourth, Google has not pled invalidity in the NDCA action. Ex. D. Even if Google were to add invalidity claims in the NDCA action, Samsung has not agreed to be bound by the validity determination in the NDCA nor has it agreed to be estopped from making invalidity arguments that could have been made before the NDCA court.

Fifth, even if resolution of the claims against Google would resolve the issues of infringement and invalidity (it would not), it still would not resolve the defendant-specific damages issues. *See* Dkt. 61 at 6 n.17 (citing *Secure Axcess, LLC v. Nintendo of Am., Inc.*, 2014 U.S. Dist. LEXIS 30115, at *21 (E.D. Tex. Mar. 7, 2014) (Gilstrap, J.)). Google has refused to provide damages information related to the accused products in the EDTX—confirming that it lacks access to such information. Ex. H, Case 2:13-cv-899, Dkt. 28-1 ¶ 8. Were this a "customer" suit, Google should be able to supply the relevant damages information as well.

Finally, there is no dispute that Google, Samsung and each EDTX defendant are subject to jurisdiction before this Court. Rockstar contests the NDCA Order regarding its motion to dismiss and plans to ask the NDCA court to certify the issue for appeal. Should the NDCA court decline to authorize an interlocutory appeal, then the issue of jurisdiction will cloud the legitimacy of the NDCA action and potentially result in months or years of meaningless litigation. Should the Federal Circuit conclude that jurisdiction is improper in the NDCA, the work done by the NDCA court will be wasted. *Microsoft Corp. v. DataTern, Inc.*, 2014 U.S. App. LEXIS 6219, at *18 (Fed. Cir. Apr. 4, 2014) (holding that the district court erred in part by denying the declaratory defendant's motion to dismiss and nullifying a non-infringement determination). There is no similar jurisdictional risk posed in the EDTX.

**This Court's Decisions in Contentguard Illustrate the Proper Resolution of this Action.**

This case presents materially similar facts as *Contentguard*.[5] Like *Contentguard*, here "the patented technology includes a hardware component, the infringement of which may depend on the different devices supplied by the individual Manufacturer Defendants." *Contentguard Holdings*, 2014 U.S. Dist. LEXIS 51676, at *10. As the Court reasoned in refusing to apply the customer-suit exception, "the issues of infringement . . . could vary depending on each [manufacturer's] accused use of Google's technology on the [manufacturer's] various accused devices." *Id.* at *12-13.

***Apple's Location Warrants No Special Weight—The Location of Unwilling Third Party Witnesses Favors Retaining the Case in the EDTX.*** Contrary to Defendants' assertions, Apple is not a majority shareholder of Rockstar or MobileStar. *See* Ex. A at 2 (article cited by Google and the NDCA court referring to Apple as having a "minority" stake). The actual facts show that Rockstar has five minority limited partners of which Apple is only one, along with Texas-based Ericsson and BlackBerry. Ex. H, Case 2:13-cv-899, Dkt. 28-43 ¶ 33. The locale of Apple's headquarters warrants no more weight than consideration of other third parties—indeed, it warrants no weight whatsoever because Defendants failed to identify purportedly relevant Apple witnesses or the location of documents with any specificity.[6]

***Rockstar and MobileStar Are EDTX-Based Entities.*** Defendants rely on the allegations in the NDCA action—hotly-disputed issues that the NDCA court was forced to accept as true—to argue that Rockstar is actually headquartered in Canada. But the actual evidence and sworn testimony before this Court firmly establishes that Rockstar's principal place of business in the United States is in the EDTX.  Powers Dec. ¶ 20. As explained in the Powers Declaration, Rockstar Consortium, Inc.—a different entity, not a party to this case—is headquartered in Canada. Dkt. 35-41, *Id.* ¶ 6. Donald Powers, Bernard Tiegerman and Mark Hearn live in Texas,

---

[5] In both *Contentguard* and this case, there is a first-filed suit involving Google's alleged "customers" in the EDTX, a later-filed action for a declaratory judgment of non-infringement filed by Google in the NDCA, the addition of Google to the first-filed EDTX case, and a dispute over which action is first-filed.

[6] While Defendants insist on the importance of unidentified Apple witnesses, Judge Bryson recently confirmed that Defendants' conclusory allegations are insufficient. *Astute Tech., LLC v. Learners Digest Int'l*, Case 2:12-cv-00689-WCB, Dkt. 74, 20 (E.D. Tex. Apr. 28, 2014) (Bryson, J.). Here, like in *Astute*, Defendants rely on "vague assertions" regarding potential Apple witnesses. *Id.* at 21.

4

and are persons with relevant knowledge that Rockstar may call to testify at trial. Nor is MobileStar a "sham" entity as Defendants allege. The sworn facts, contrary to Google's unsupported pleadings in the NDCA, show that MobileStar (an EDTX entity) was created as Rockstar's (also an EDTX entity) mobile device licensing entity. Ex. H, Case 2:13-cv-899, Dkt. 28-43 ¶ 34. As this Court knows, Rockstar creates different, legitimate entities to license its intellectual property in different technology areas, including NetStar Technologies, Bockstar Technologies, and Constellation Technologies. *Id.*

**Rockstar's Plano Headquarters Is Not "Conflicted From Participation."** Contrary to Defendants' hyperbole, Rockstar's U.S. headquarters is not "conflicted from participation" in this suit. Dkt. 66 at 2. At the outset, no conflict exists and there is no evidence to the contrary. Tellingly, neither Samsung nor any other entity has filed a motion raising any alleged conflict before the Court. Exs. F, G. Instead, Samsung's arguments are smear tactics designed to denigrate the integrity of members of the bar without a shred of evidentiary support in the hopes that this Court will discount the relevance of Rockstar's headquarters. *See NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989) (condemning the invocation of ethical rules when done as a "dilatory tactic"). Mr. Alfi Guindi has not done any work on this matter. Regardless, even if Mr. Guindi's employment presented a conflict, Defendants cite no authority for the proposition that the ethical wall Rockstar has proactively put in place is insufficient. *Evolutionary Intelligence, Inc. v. Facebook, Inc.*, Case 6:12-cv-00784-MHS-CMC, Dkt. 108 at 36 (E.D. Tex. July 3, 2013) (dismissing conflict concerns "[c]onsidering walls have been erected . . . to preclude any possible confidential information from being shared").

Rockstar respectfully submits that Defendants' Motion to Transfer should be denied. Defendants' alleged proof of "inconvenience" is razor-thin and, given its conclusory nature, entitled to no weight. On the other hand, Rockstar has submitted ample, unrefuted evidence that this case has numerous, compelling connections to Texas and the EDTX in particular, and that the Court is uniquely situated to efficiently and conclusively resolve Rockstar's claims against Google, Samsung, and the EDTX defendants in the related actions.

Dated: May 8, 2014.

**MCKOOL SMITH, P.C.**

/s/  *Ted Stevenson III*
Mike McKool
Texas State Bar No. 13732100
mmckool@McKoolSmith.com
Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@McKoolSmith.com
Ted Stevenson III
LEAD ATTORNEY
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@McKoolSmith.com
Ryan A. Hargrave
Texas State Bar No. 24071516
rhargrave@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**ATTORNEYS FOR PLAINTIFF
ROCKSTAR CONSORTIUM US LP,
AND MOBILESTAR TECHNOLOGIES
LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on May 8, 2014.

/s/ Ted Stevenson III
Ted Stevenson III

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC**<br><br>       **Plaintiffs,**<br><br>    **vs.**<br><br>**SAMSUNG ELECTRONICS CO., LTD, SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC**<br><br>       **Defendants.** | **Civil Action No.  2:13-cv-00900-JRG**<br><br><br>**JURY TRIAL** |

**SUPPLEMENTAL DECLARATION OF JOSHUA W. BUDWIN IN SUPPORT OF PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

I, Joshua W. Budwin, declare:

1.      I am an attorney with the law firm of McKool Smith P.C., counsel of record for Plaintiffs Rockstar Consortium US LP and Mobilestar Technologies LLC. (collectively "Rockstar") in the above-entitled action.  I am duly licensed to practice law in the State of Texas. I make this declaration based on my personal knowledge, the record in this action, and matters of public record, and if called upon as a witness, I could and would testify competently as to the matters set forth below.

2.      Attached hereto as Exhibit A is a true and correct copy of Joff Wild, Star Man, Intellectual   Asset   Management,   July/August   2013,   available   at   http://www.ip-rockstar.com/Press_Releases/IAM%20Rockstar%20Article%20JulyAugust%202013.pdf.

3.      Attached hereto as Exhibit B is a true and correct copy of a letter from James Lukas, counsel for the LG Defendants, to David Sochia, counsel for Plaintiffs, dated April 17, 2014.

4.      Attached hereto as Exhibit C is a true and correct copy of an email chain between Matthew Warren, counsel for Google Inc., and Josh Budwin, counsel for Plaintiffs, regarding *Google v. Rockstar*, No. 13-cv-5933 (N.D. California) dated April 22, 2014.

5.      Attached hereto as Exhibit D is a true and correct copy of *Google Inc. v. Rockstar Consortium US L.P., et al.*; 5:13-cv-05933-PSG (N.D. California), Dkt #1 dated December 23, 2013.

6.      Attached hereto as Exhibit E is a true and correct copy of *Google Inc. v. ContentGuard Holdings, Inc.*, 3:14-cv-00498-WHA (N.D. California), Dkt #42 dated April 15, 2014.

1

7.      Attached hereto as Exhibit F is a true and correct copy of a letter from Jared M. Hoggan, counsel for Plaintiffs, to Joseph Milowich III, counsel for Defendants, regarding Mr. Alfi S. Guindi and dated February 18, 2014.

8.      Attached hereto as Exhibit G is a true and correct copy of a letter from Jared M. Hoggan, counsel for Plaintiffs, to Joseph Milowich III, counsel for Defendants, regarding Mr. Alfi S. Guindi and dated February 4, 2014.

9.      Attached hereto as Exhibit H is a true and correct copy of *Rockstar Consortium US L.P., et al. v. Pantech Co., Ltd., et al.*; 2:13-cv-00899-JRG (E.D. Texas), Dkt #28-1 dated April 25, 2014.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct, and that this declaration was executed on May 8, 2014, at Austin, Texas.

*/s/  Joshua W. Budwin*
Joshua W. Budwin

Case 2:13-cv-00900-JRG   Document 67-2   Filed 05/08/14   Page 1 of 9 PageID #:  4169

# EXHIBIT A

# Star man



John Veschi expected to create a world-class licensing programme at Nortel when he joined the company in 2008. Five years later, he is the CEO of Rockstar, a unique NPE that is in the early stages of monetising what is probably the most famous patent portfolio in the world

**By Joff Wild**

When John Veschi was first approached by Nortel to head up its IP function and build a world-class licensing business at the company, he was not exactly enthusiastic; far from it, in fact. "My initial reaction was, 'Why would I want to go to Canada? It's cold and there are no golf courses!'" he recalls. But when he began looking more closely at what he would be taking charge of, the former chief IP officer (CIPO) of LSI and Agere very quickly began to change his mind.

"There were Bell Labs-quality patents and they were largely unencumbered," Veschi says. For someone used to investing considerable time and effort in the complicated process of dealing with encumbrances — something which he likens to "playing three-level chess" — this was a tantalising prospect. "The idea of having what was essentially a green field in order to build a licensing programme that would not only be successful and enriching, but also be critical to the company was immensely appealing," he says. It would, he believed, be a chance to create a legacy: "I saw Nortel as another Texas Instruments or Qualcomm. I was thinking that in the future, people would be writing stories about how important licensing was to turning the company around — I really

thought that would happen."

So in 2008 Veschi took the job and became Nortel's chief IP officer (CIPO), initially reporting to the company's general counsel and chief technology officer (CTO), but with a view to moving to become a direct report to the CEO (see box). Five weeks later, the credit crisis hit and in early 2009 Nortel filed for bankruptcy. Veschi was about to make his mark — but not in the way he had originally anticipated.

**A man with a plan**

Today, John Veschi is CEO of Rockstar, the non-practising entity (NPE) established by five of the six companies that ended up submitting the winning US$4.5 billion bid for the Nortel patents which went under the hammer at a week-long auction held in New York in June 2011. The five — Apple, BlackBerry (Research In Motion as was), Ericsson, Microsoft and Sony — are currently the only shareholders in Rockstar; each has a minority stake (the sixth member of the bidding consortium, EMC, is not involved).

Veschi and the Nortel IP team played a key role in the events leading up to the auction, including helping to alert those overseeing the bankruptcy to the portfolio's potential; identifying the technologies; drawing up detailed claims charts; participating in road shows and meetings with potential buyers; and deciding how to offer the patents, even to the extent of evaluating whether the best option would be to spin out a licensing business from Nortel. These are all stories that have been told before. What has been less chronicled — at least from an accuracy perspective — is what has happened since that pivotal week two years ago and the outlook for Rockstar business.

Principally based in Ottawa, just a few miles from the former centre of Nortel's

The rock star

---

R&D operations, and with a smaller office in Plano, Texas, Rockstar is home to a mix of IP attorneys, technologists and engineers, and transactions specialists. The job of Veschi and his 40-strong team of largely ex-Nortel employees is to generate a return for the NPE's owners from the 4,000 or so patents that remain under their control (approximately 2,000 other rights in the original portfolio having been transferred to one or other of the original consortium members).

Over the course of two detailed telephone interviews, Veschi explained how they arrived at their current position, the challenges that Rockstar faces and how he views the NPE's future, as well as the wider environment within which it is operating. He is excited by what lies ahead, but is conscious that a changing regulatory world could make his task harder – although far from impossible. Further down the line, do not be surprised to see Rockstar getting into acquisitions, or even undertaking privateering-style work for others. Veschi is a man with a lot of plans. And having achieved what he has so far, it would be a brave person to bet against him bringing them to fruition.

**The technology team**
What is remarkable about Rockstar, and what distinguishes it from almost every other NPE out there, is that it essentially remains the IP function of what was a fully fledged operating company. Indeed, Veschi refers to the firm as a "former practising entity". This gives some context, he explains: "Our patents are derived from a product-driven company that was a technology pioneer and invested significantly in R&D."

Of immense help since the dark days of the Nortel bankruptcy has been the presence of a team of engineers and technologists led by 25-year Nortel veteran Gillian McColgan, Rockstar's CTO. That they are still a part of the operation, however, is more the result of fortune than design. "Where we got lucky was that when Nortel was trying to avoid bankruptcy, the company decided it had to be reorganised in order to prepare for the sell-off of one or more business units. This meant that people had to be reallocated," says Veschi. Nortel's CTO understood what Veschi was trying to build – an operation capable of extracting the maximum value from the patents that Nortel owned – and shared his view that this required people who knew the technologies underpinning those patents backwards. "That's how I met Gillian and

the diverse set of folks who are now on her team," Veschi says. That he can call on their expertise is something that sets Rockstar apart from many other licensing-based businesses. "We are staffed by technology lifers: people who dedicated their careers to Nortel. As a result, we really know our IP and the backstory behind each patent. I have yet to come across a patent in our portfolio where someone on our team did not know or work with the original inventor."

But that is not only a powerful tool today – it was also vital during the bankruptcy process itself, as parts of Nortel were sold off. "Gillian and her team were critical in the patent discussions," explains Veschi. "Usually you find technology expertise in different business units, but we had it in the IP team: a group of some of the most respected and well-regarded technologists in Nortel. That meant we could make sure we were not going to get beaten up by the various business units trying to do a land grab on the patent portfolio as they moved on; we knew everything there was to know about the patents."

McColgan & Co were also keen to point out that some people were looking in the wrong places for the real treasure that Nortel possessed. "The world thought that our most valuable assets were LTE and wireless patents; Gillian and her team were offended by that," Veschi continues. They believed that wireless was not the heart and soul of the company; instead, it was areas such as data communications. "We made sure that everyone knew what was there and that we were not going to squander it."

This attachment to Nortel's intellectual property speaks to a wider affection



**John Veschi, Rockstar's CEO**
"There are a lot of people out there using former Nortel IP who aren't licensed yet. In terms of our progress in getting to them, we are probably in the third inning of a nine-inning game; but we are already generating returns for our investors"

---

**Establishing the appropriate reporting lines – business or law?**

Before anyone takes a high-profile senior position which involves potentially company-transforming responsibilities, it is a good idea to negotiate carefully. When talking to Nortel about building its proposed IP licensing business, that's exactly what John Veschi did; and one of the areas that came up for discussion was reporting lines.

"Nortel's original plan was that I would be the VP of IP reporting to the general counsel," Veschi explains. It was something to which he could not agree: "I felt that would mean IP would be viewed as a cost centre. To do what I wanted to do, we could not be subordinate to other business units. We were going to need a free rein to assert patents against whoever it was necessary to take on – we could not

have people telling us that we could not because it might damage such and such a relationship."

His plan, Veschi continues, was to make intellectual property less of a legal function. "In the end, it was agreed that I would be appointed as chief IP officer (CIPO), initially reporting to both the general counsel and the chief technology officer, and then reporting directly to the CEO once the licensing business was established."

To have been reporting direct to the CEO in a company the size of Nortel would have made Veschi one of the world's highest-profile CIPOs. Whichever way the Nortel story was to have unfolded, it seems, Veschi was always destined to make a significant impression.

---

**– A1296 –**

The rock star



Figure 1. **Senior Rockstar management**

that these seasoned employees had for the company itself. "Once you were at a company like Nortel, you did not tend to move around, so we have a team of people who had spent 20 or 30 years there. They wanted to do the right thing by it," Veschi claims. And it soon became apparent to all those involved in the bankruptcy process that such loyalty and expertise made the team itself a significant asset in its own right. "The buying community got pretty comfortable with the fact that the portfolio would have substantially more value if the team came with it," he says.

Thus, even before the final deal was sealed, it was clear that whoever ended up buying the patents would take the Nortel IP team too. And that even applies to Google. "I can't imagine that they would not have wanted to keep everyone together," Veschi states. "They may not have been actively licensing the patents, but they would still have needed to know them, so it is likely that the team would have been moved to Mountain View. That could have been something of a culture clash, given the average ages of our team and Google employees."

**Commitments to the DoJ**
The sale of the Nortel patents closed on 29th July 2011, which also happens to be Veschi's birthday. But it took another few months — until Spring 2012 — for the acquisition to receive clearance from the US Department of Justice (DoJ). Although this approval may have taken some time to obtain, the only commitment that Rockstar itself gave to the DoJ (and the Federal Trade Commission) was that it would operate autonomously. This, explains Veschi, was so that the shareholders "as operating companies cannot pick and choose who we will target". Rockstar made no undertakings as to how it would license FRAND-encumbered patents, as the bankruptcy court had already dealt with this issue.

In some quarters, much store has been set by Veschi's comment in an earlier interview with another publication that Rockstar is not bound to promises made to the regulators by Apple and Microsoft. He is keen to clarify what he meant by this. "The commitments that they have given relate to the patents that they have taken ownership of from the Nortel portfolio. Our commitments relate to the patents we control — so there is absolutely no link and nothing that ties us to what they have agreed. We are a separate company," he says.

Some, Veschi continues, have taken his original remarks to mean that the NPE is being used in some way as a vehicle to wash away commitments made by a predecessor in title. That is not true, he insists: "I simply pointed out that the commitments those companies made about their future patents have no bearing on Rockstar. We are a separate company and were never asked to make any commitment. Interestingly, the folks who have written about this as if there was something unseemly going on — none of them has ever asked me about it. It's as if they have the sound bite and the interpretation that supports their cause, so why confuse it with facts?"

Rockstar has an ongoing dialogue with the DoJ, the last time they got together being in February this year. And Veschi says that the relationship is a good one: "They know we are not seeking to harm anyone else relative to their peers or competitors. They understand and are comfortable with what we are trying to do. I have been very impressed with the depth of their knowledge of the issues."

That said, the commitments that Rockstar has made do mean that Veschi must be careful about how he interacts with its owners. "We do not talk to the shareholders about potential licensing partners or any potential infringers that we may have targeted," he explains. "I have to show them progress and that real work

*The rock star*

--------------------------------------------------------------------------------------------------------

## Doing the deal

Once a potential infringer of Rockstar intellectual property has been identified, it is a matter of sitting down with them in order to hammer out a licensing deal. In many instances, 'fair, reasonable and non-discriminatory' (FRAND) obligations loom large – even if, strictly speaking, that did not have to be the case. Although around 90% of Rockstar patents in areas such as wireless and data networking have some standard or other associated with them, under Canadian law any FRAND commitments given by Nortel to standards bodies could have been repudiated during the bankruptcy. But, says John Veschi, it was decided not to do this. Instead, the company chose to make sticking to previously made FRAND commitments a condition of sale.

Even where FRAND is not involved, Veschi is keen to emphasise that Rockstar deal makers want to be seen to be treating licensees fairly. "We will ask the other party what it is they want to license and strive to negotiate a licence that is fair and reasonable for them," he states. The offer gets a mixed response: "Some appreciate our approach; others would prefer to simply call us a troll!"

The reaction often comes down to who is on the other side of the negotiating table. "Every company we engage with is different; some are more sophisticated than others, for example. In some cases we talk to the businesspeople; other times it might be the in-house IP team," Veschi says. "Sometimes we end up with outside litigation counsel. They usually come with the wrong perspective because they are already thinking about juries. But we believe we should get credit for not initially suing the company in question, as we prefer to sort things out in the boardroom rather than in the courtroom."



**Rockstar CTO Gillian McColgan leads a meeting**
Starting with the man in the red shirt and working clockwise – David Smith, director, patent sales and acquisitions; Bruce Schofield, technical expert; Chris Briggs, senior programme manager; Hamid Ould-Brahim, internet technology expert, distinguished member of technical staff; Derek de Laat, senior financial analyst; Ron Steeves, patent licensing adviser; Gillian McColgan, CTO; Liam Casey, IP technology consultant

is being done, but we tend not to go into details." Veschi schedules periodic calls and meetings with the owners — mainly with their respective heads of intellectual property — and, he says, they work well together. "But all of these guys have day jobs; how Rockstar performs is probably largely irrelevant to how most of them are judged," he acknowledges.

The sensitivities of this relationship also affect the way that Veschi interacts with senior staff inside the NPE. "I rely on my leadership team more than the typical CEO might. There are things that I cannot share with the board in the way that other CEOs might, so I probably spend more time speaking with my colleagues at Rockstar to get the appropriate amount of diversity of thought." Likewise, he continues, some of the other activities that another CEO would typically undertake, such as cultivating potential investors, are not matters that he needs to spend time on: "As a result, I probably spend more time as both a COO and a CEO."

**Mining and money**
It may be an arm's-length relationship, but Rockstar's shareholders still want to see their investment realised to the maximum possible extent; and Veschi knows that he will be judged on the success or otherwise of his strategies to monetise the portfolio.

First of all, though, he has to decide which parts of it to mine; and there are plenty of choices. "It turned out that those companies like Nortel, which did 'find a better mousetrap'-type R&D, have been less successful over recent years than those companies whose R&D was much more consumer facing," Veschi says. "But Nortel made mobile phones before many of the companies that make them now did; and it was similarly investing significantly early on into looking at what could be done on the Internet. It was grappling with problems and finding solutions a long time ago — what is natural today just wasn't back then. The patents that we own are a representation of the investments that were made."

Although Veschi will not talk specifically about the technology areas he has chosen to prioritise, he does point to a diagram that has been distributed internally (see Figure 2), which provides certain clues. It is composed of a series of concentric circles. "The smallest circle contains the three classical scientific disciplines – biology, chemistry and physics — and the explosion out to the right is basically a description of the high-tech world," he explains. "The further out you get, the closer you get to the consumer. Right now, we are very active in about a half dozen of the areas named in the chart, while we are doing serious preparatory work for six to 10 more. Though I am not comfortable saying which ones precisely, I can say that most of them are in the upper-right quadrant."

The monetisation game, he continues, is still in its early stages: "There are a lot of people out there using former Nortel

**– A1298 –**

The rock star



**Deep analysis**
Starting with man at the projector screen and working clockwise – Liam Casey, IP technology consultant; Peter Lorenz, senior business analyst; Hamid Ould-Brahim, internet technology expert, distinguished member of technical staff; Ron Steeves, patent licensing adviser

IP who aren't licensed yet. In terms of our progress in getting to them, we are probably in the third inning of a nine-inning game; but we are already generating returns for our investors."

Given the number of potential infringers out there, one way to a series of quick wins might be to start calling in the litigators, but this is an approach that Veschi rejects. "You could say that if we were to truly maximise the value of the portfolio, we should be suing everybody. But although our job is to get a good return on the investment that the owners have made, we strive to bring in revenue in a balanced way that is fair and reasonable. The shareholders are comfortable with that," he states.

While Rockstar has yet to initiate a lawsuit, Veschi believes that this is bound to change: "I suspect we will need to resort to litigation in the near future, as some of the users of our patents feel no remorse or obligation to pay fair royalties." But it is not a prospect he relishes: "Personally, I think it's a shame that some users choose, as a matter of course, to treat you like a second-class citizen if you haven't sued them. Systemically, something seems wrong with that picture." Generally, Veschi continues, litigators hold too much sway currently: "If you look at the IP business market at the moment, it is too skewed towards the litigators being in charge. That is damaging. We have to take control back. If everything is run by them, you get sub-optimal results. We need to figure out better ways of recompensing the innovator."

Another dilemma vexing Veschi is how

deep to dig into the portfolio mine. "We have a very diverse portfolio and my job is to do the right thing by it. We could try to do everything and then run the risk of doing nothing well; while the reverse risk is that we focus closely on one or two areas and let everything else go by the wayside," he explains. "It's like yin and yang, and I admit that I struggle with it. Our engineers would go off in all directions if they were left to their own devices and that would be chaotic; but I don't want to confine them to too narrow a charter either. In the end, it comes down to how strong our patents are and the size of the markets that they can be applied to."

**More than licensing**
When it comes to monetisation, of course, licensing is not the only option. Of increasing importance over recent years are sales. They are part of the Rockstar offering too – although not, as yet, a big one. "With sales, we do a lot more thinking than doing. There are a lot of opportunities, but it is not our primary business. About 20% of my time is probably invested in talking about sales and partnerships, but it has to be a no-brainer for us to go ahead with a deal," Veschi states.

That said, his philosophy is never to say never: "There are no Rockstar assets that are not for sale. Does that mean they will be sold? No. But if an offer is made, we cannot refuse that they will go. That is business." Sometimes, Veschi states, patents are simply more valuable in someone else's hands. "We are often approached by other parties about sectors or sub-sets of our portfolio that they would like for either tactical or strategic needs. We need to explore those opportunities," he says.

But Rockstar is more proactive than that. Veschi believes that a healthy licensing business should keep a close eye on which assets are not being used and may be withering on the vine: "We have to make sure that they do generate some value, if possible — so we send out catalogues that detail patents which are for sale, while people contact us too. Also, our sales team is out in the market all the time, interacting with other parties and assessing where we might be able to place assets. We have to maintain a constant strategic overview on what we have."

There is also a licensing angle to being seen to be willing to contemplate sales, Veschi believes: "It may help to concentrate certain parties' minds when it comes to a negotiation. Maybe they should agree to a licence with us just in case we sell the relevant patents. We have a lot of very good

Figure 2. **The world according to Rockstar – 2013**



**– A1299 –**

The rock star

------------------------------------------------------------------------------------------------------------------------------

assets and do not need them all." What it all boils down to, he says, is for him to be put "in a place where I have to make a difficult decision about whether we should let something go or not".

Given its ownership, though, is there a possibility that while Rockstar may be willing to sell off parts of its portfolio, there may be certain parties that it is not willing to do business with — especially as sales are not covered by any commitments that have been made to regulators? Veschi says absolutely not: "We work the deals within our charter. Just like in the context of licensing, the shareholders do not influence the decisions on who we deal with."

**The wider world**

Rockstar does not operate in a vacuum and it has not escaped Veschi's notice that the environment in the United States has become more hostile towards NPEs recently. What he would like to see, he explains, is a little more contextualised thinking about the issues.

"I don't want to defend all NPEs. What some of them do is troublesome and very litigation-centric, but they are part of the evolution of the corporate world in general," he says. The issue is by no means as clear-cut as 'operating company good, NPE bad', he claims: "When you go back to the good old days, you find companies that did everything in North America — from R&D through to manufacturing. Now a lot of this activity has been moved offshore. Why is a company that moves its factories to Asia considered more of a good guy than one which does not manufacture at all, but does much of its R&D work locally?"

And it's not as if big operating companies have a faultless record when it comes to intellectual property: "The classic NPE is the little guy working in his garage who comes up with an idea and gets a patent. If he then discusses his idea with a product company, which says, 'Thank you very much, now go away,' the only thing he has to protect himself is his patent."

Rockstar's own experiences have made Veschi — who has never previously worked inside an NPE — sympathetic to what many NPEs are up against when trying to deal with operating companies. "When we are negotiating deals, we find that companies which look similar from the outside behave very differently when we sit down with them," he states. "For the most part, we get respect, but some people get very emotional and quickly resort to name calling — that indicates to me they do not understand the situation they are in. You'd think that

**A US-centric organisation thanks to Nortel's money men**

Although many US-based NPEs believe there may be significant potential in developing business abroad, for Rockstar the focus will have to remain the United States, John Veschi explains: "We are more of a US-centric organisation. We cannot fix the fact that in the past, Nortel decided not file abroad as much as it did in North America."

In general, Veschi says, a lot of the decision makers at the company saw the US market as the one to concentrate on. "It was like a Picasso painting in some ways – things were out of proportion," he says. Although there was very strong R&D, there was not an equal commitment to protecting

it: "The finance people and accountants seemed to have led the decision making."

Given the circumstances, he continues, the IP department can only be praised for creating what it did: "The IP people – battling against a lot of headwind – did a great job and we have got the benefit from that. When you look at the portfolio you see cases where the patent committee likely had, say, 25 really good inventions, but budget to only file 10 patents; even so, if you look at the way those patents were prepared and prosecuted they got a lot into them. In the end, though, there was only so much they could do."

people would realise they need to pay for the IP they use, but some are almost hysterical when we point out they cannot have our stuff for free. If that is the way they treat us, you can only wonder what it is like for a typical small NPE." The truth is, he says, some potential licensees just do not want to be fair and reasonable: "It is important to know that just because a company is a practising entity, that fact does not make the company a good guy. There are some unscrupulous characters out there on all sides of these issues."

However, Veschi is not set against all reform. He opposes the proposed Saving High-tech Innovators from Egregious Legal Disputes (SHIELD) legislation in the United States, which would introduce a loser-pays regime specifically aimed at what its authors describe as "patent trolls", but he is not opposed to loser pays *per se*. In fact, the opposite is true: "I have always been a fan of loser pays, but in a way that treats everybody the same. What you see with SHIELD is an attempt to discriminate against certain types of businesses. That is misguided. There are plenty of practising entities that are very comfortable with infringing and not paying royalties; loser pays across the board would encourage everyone to act a little more like a good guy."

Likewise, Veschi supports recent moves spearheaded by the US Patent and Trademark Office (USPTO), as well as certain companies such as Microsoft, to introduce greater transparency into patent ownership. "Those with good portfolios should be very comfortable with transparency and more of it makes a lot of sense," he says. "We are not trying to play hide the ball with our portfolio, and if the law changed to make it a requirement to register every licensing deal I would be



**Reading the runes**
From left to right – Peter Lorenz, senior business analyst; John Veschi, CEO; and Ross Morgan, CFO

**– A1300 –**

The rock star

---

Figure 3. **Rockstar journey**

| 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| Nortel decides to build a P&L IP business<br>• Hires John Veschi to transform, build and lead IP team<br>• Augments the IP team with key technologists and inventors<br>• Begins initial licensing programmes | Nortel enters creditor protection and determines its assets must be sold<br>• Patent team remains intact<br>• Product businesses sold with ~30% of portfolio<br>• IP team actively manages remaining 70% | Patent portfolio valued and actively marketed<br>• Patent team remains intact<br>• Valuation models developed<br>• Portfolio maintained and enhanced<br>• Licensing engagements continue | Patent portfolio sold for US$4.5 billion<br>• Patent team transitions to Rockstar<br>• Portfolio maintained and enhanced (~1/3 pending)<br>• Corporate functions developed | Rockstar fully operational<br>• US DoJ clearance (March)<br>• Actively negotiating licences<br>• Actively negotiating strategic sales |
| NORTEL | NORTEL | NORTEL | NORTEL  Rockstar | Rockstar |

---

fine with this — but I am not going to do it unilaterally and I wouldn't expect anyone else to do so."

Enhanced transparency, Veschi claims, would help to make the market more efficient. At the moment, sometimes the only way to get information is through litigation — for example, to use discovery to find out who the true owner of a patent is or what other deals are related to it. "Since I think the patent marketplace is already too litigation-centric," he continues, "I would be in favour of some changes here. However, for me, it is better to have this codified somehow, so that depositing information would be like registering a deed. It could be that for a licence to be enforceable, it has to be recorded. To me, this looks like a good area for reform, and maybe a place where the USPTO can play a leadership role."

Whatever happens, though, Veschi firmly believes that Rockstar will adapt and prosper. "I am not sure how the regulatory and legal environments will evolve. Reforms may make it a little harder for us to do deals or may raise our costs slightly, but we have a very strong portfolio and whatever measures may be in place, I am confident we will be able to deal with them."

**Into the future**
With 4,000 patents to exploit and plenty of deals still to be done, on the face of it the future looks like a long and bright one for Rockstar. But things are never that simple. The reality is that every single asset in the firm's portfolio has a shelf life, which gets shorter as each day passes. Therefore, unless acquisitions happen or new business models are developed, Rockstar will have a finite existence. Veschi seems well aware of this.

"We have done some thinking about acquiring, but not a lot," he states. "It might

happen down the line, but we have so many toys already that we want to play with first." Right now, he continues, it is difficult to imagine spending much time focusing on what others have, given that Rockstar is mining its own portfolio and is still finding valuable assets; but the situation could well change. "It would not surprise me if a few years down the road, we had significant IP other than what we currently own," he concludes.

Likewise, there may be opportunities to roll out new types of business offering — among them privateering. Veschi states that he will leave it to others to decide whether Rockstar is already a privateer, but whatever definition of the term people may want to use, the consortium could well become one in the future. "We are often asked about whether we would be interested in getting involved in privateering by those we are doing licensing deals with — they look at the quality of our people and wonder whether we can help them with their patents," he says. "This may be something we look at more closely further down the road, because it can be an attractive proposition, but it is not a priority because we still have a lot of our own IP to work with first. That does not mean, though, that with the right economics we cannot be forced to change our minds. Five to 10 years down the line, I can certainly see us managing the Rockstar portfolio, plus other IP assets as well."

For either that or acquisitions to happen, though, Veschi will need to go back to the shareholders and make his case. But while it is one thing to be the co-owner of an NPE that is essentially managing a portfolio of patents acquired from a bankrupt company in an open auction primarily for operational reasons, it is quite another altogether to be seen to be the ongoing backer of an NPE which is going into the marketplace to acquire more rights solely for the purposes



**Discussing a prospect**
From left to right – John Garland, vice-president, patent licensing; Ross Morgan, CFO; Pam Yeh, controller; Afzal Dean, vice-president, patent licensing

The rock star

-------------------------------------------------------------------------------------------------

of monetisation — especially when, in the greater scheme of things, the revenues generated for owners with turnovers of tens of billions of dollars from their main business lines will never be that significant. Given the heat surrounding NPEs at the moment, diversification and continuation of the Rockstar business may not be in the game plans of Apple, Ericsson, Microsoft et al.

A possible scenario for Rockstar five or so years from now, therefore, is that it will not actually be owned by any of its current shareholders. Instead, Veschi and his team may be in complete control, having secured some kind of management buy-out and with it the ability to create an NPE with a long-term future and full operational flexibility. This, it should be added, is not something that Veschi has even hinted at. But it would be a scenario which may well work for all concerned. And no one who has spent any time with Veschi — and who has observed what he and his team have achieved over the last five years — would bet against it. *iam*

-------------------------------------------------------------------------------------------------

**Joff Wild** is editor of *IAM*

## Action plan  A

Rockstar was born following the auction of Nortel patent rights in New York in late June 2011, when a six-company consortium acquired the 6,000-strong portfolio for US$4.5 billion. Its current owners are five of those companies: Apple, BlackBerry, Ericsson, Microsoft and Sony. John Veschi, former chief IP officer of Nortel, is Rockstar's CEO:

- Rockstar, says Veschi, has made commitments to the US Department of Justice and Federal Trade Commission to operate autonomously.
- Although accountable to the five owners for Rockstar's performance, Veschi does not talk about potential licensing

targets with them; neither do they influence whom the firm sells patents to.
- All Rockstar patents are potentially up for sale if the offer is good enough.
- Many, though not all, Rockstar patents are offered on fair, reasonable and non-discriminatory terms.
- Veschi is a supporter of the introduction of a loser pays system in US litigation. He also supports greater transparency with regard to ownership.
- Although not currently under active consideration, acquisitions and privateering are realistic propositions for the longer term.



**Turkey's Leader in Intellectual Property Management & Protection**

- **Turkey's first rank IP firm for 15 consecutive years**
  Annual filing rate of 8K trademarks, 1.3K patents and 1.4K design applications

- **Among the World's TOP10 IP firms of the last 5 years**
  According to the International Trademark Filing Statistics issued by WTR 1000 and Markenfacts

- **Largest IP team**
  Over 50 patent & trademark attorneys. Nearly 200 professionals.

- **Largest office network**
  Seven offices: Istanbul, Ankara, Bursa, Izmir, Konya, Gaziantep and Adana

- **Experience & expertise with thousands of IP files**
  Over 100K trademarks, 10K patents and 70K designs since 1995

- **First to implement total quality management**
  ISO 9001: 2008 Certificate in the Turkey's IP Business since 2001

- **High client satisfaction rate**
  Full understanding of clients' needs and satisfying expectations on expert counseling, fast response, clear communication and cost effective quality IP services, with brilliant and satisfied solutions over conventional wisdom through our commitment and involvement in diverse IP matters

Polaris Plaza Ahi Evran Cad. No: 21 Kat: 17  34398  Maslak - Sisli - Istanbul - TURKEY  ☎ +90 212 329 00 00  🖷 +90 212 346 02 64   www.destekpatent.com   destek@destekpatent.com

**– A1302 –**

# EXHIBIT B



James J. Lukas, Jr.
Tel. 312.456.1038
Fax 312.456.8435
lukasj@gtlaw.com

April 17, 2014

*VIA E-MAIL*
David Sochia
MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Email: dsochia@mckoolsmith.com

ALBANY

AMSTERDAM

ATLANTA

AUSTIN

BOSTON

CHICAGO

DALLAS

DELAWARE

DENVER

FORT LAUDERDALE

HOUSTON

LAS VEGAS

LONDON∗

LOS ANGELES

MEXICO CITY+

MIAMI

MILAN∗∗

NEW JERSEY

NEW YORK

ORANGE COUNTY

ORLANDO

PALM BEACH COUNTY

PHILADELPHIA

PHOENIX

ROME∗∗

SACRAMENTO

SAN FRANCISCO

SEOUL∞

SHANGHAI

SILICON VALLEY

TALLAHASSEE

TAMPA

TEL AVIV^

TYSONS CORNER

WARSAW~

WASHINGTON, D.C.

WHITE PLAINS

Re:    *Rockstar Consortium US LP, et al. v. LG Electronics Inc.,*
       Case No. 2:13-cv-898-JRG (Consolidated Lead Case No. 2:13-cv-894)

Dear David:

We write on behalf of LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm USA, Inc. (collectively "LG") concerning a number of issues relating to the Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") served by Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (collectively "Rockstar") pursuant to Patent Rule 3-1, on March 24, 2014, and Rockstar's amended infringement contentions, served on April 7, 2014. More specifically, as discussed below, we have now had a chance to review Rockstar's Infringement Contentions and have determined that not only do they fail to comply with the Court's Local Patent Rules, they also fail as a matter of law.

### Rockstar Has Not Provided A Chart For Each Accused Instrumentality

This Court's "Patent Rules demonstrate high expectations as to [a] plaintiff's preparedness before bringing suit," and require the early and complete disclosure of plaintiff's assertions of infringement. *American Video Graphics, L.P. v. Electronic Arts, Inc.*, Case No. 6:04-cv-398-LED (Mar. 11, 2005, E.D.Tex.). Specifically, P.R. 3-1(b) requires Rockstar to identify "each accused . . . product . . . or other instrumentality ('Accused Instrumentality') . . . of which [it] is aware" and further requires that this identification "be as specific as possible." P.R. 3-1(c) further requires Rockstar to provide "[a] chart identifying **specifically** where each element of each asserted claim is found within **each Accused Instrumentality**." (emphases added).[1]

---

[1] P.R. 3-4(a) then requires LG to produce certain documents regarding each "Accused Instrumentality  identified by the patent claimant **in its P.R. 3-1(c) chart**." (emphasis added).

∗ OPERATES AS GREENBERG
TRAURIG MAHER LLP

+ OPERATES AS
GREENBERG TRAURIG, S.C.

^ A BRANCH OF
GREENBERG TRAURIG, P.A.
FLORIDA, USA

∞ OPERATES AS
GREENBERG TRAURIG GRZESIAK sp.k

∗∗ OPERATES AS
GREENBERG TRAURIG LLP
FOREIGN LEGAL CONSULTANT
OFFICE

~ STRATEGIC ALLIANCE

David Sochia
April 17, 2014
Page 2

_____

Instead of providing a chart for each accused instrumentality under P.R. 3-1(c), Rockstar provided only a ***single claim chart identifying one LG product*** operating the Android OS ("LG Accused Product") for each of the '973, '572, '591, '131, and '298 patents. Then, with respect to Rockstar's contentions directed to a single LG Accused Product, Rockstar states that "the accused products include LG's phones and tablets as listed in attachment A"—but Rockstar fails to provide specific claim charts for those listed products. *See, e.g.,* Infringement Contentions, '131 Patent Chart for LG Optimus Black at 1 n.1; *See also* 3/24/14 Ltr. from J. Budwin to R. Harris at 2 ("Rockstar has identified each accused instrumentality in the attached 'Attachment A.'"). For the '937 patent, Rockstar provided five claim charts each directed to different software applications (browser, email, gallery, maps, and contacts) running on a single LG Accused Product.[2] Accordingly, the only LG products presently put at issue by Rockstar's Infringement Contentions for the '973, '572, '591, '131, '298, '937 and '551 patents are those for which Rockstar has provided claim charts.

### Certain LG Accused Products Are Not Distributed In The United States

Rockstar's Infringement Contentions provide charts for certain LG Accused Products which are not distributed in the United States ("Foreign LG Accused Products"). For example, the LG Optimus Black was launched in Canada, Mexico, and South America, and is not offered for sale in the United States. Similarly, the Optimus Vu, Optimus L9, Optimus Pad, and Optimus Pad LTE are not distributed in the United States. Because those products are not available in the United States (and not made here) and extraterritorial application of the United States patent laws is prohibited, such Foreign LG Accused Products cannot and do not infringe the asserted claims of the Patents-in-Suit. *See* 35 U.S.C. § 154; 35 U.S.C. § 271 (providing that the Patent Laws are limited in application to conduct occurring within the geographical boundaries of the United States); *see also Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law"). Accordingly, we request that Rockstar immediately withdraw its infringement claims that are premised on claim charts of Foreign LG Accused Products.

### Certain LG Accused Products Do Not Appear To Be Genuine, Authorized LG Products

Rockstar's infringement charts for U.S. Patent No. 5,838,551 ("the '551 patent") rely upon an analysis of products that LG does not believe are genuine. The charts for the LG Escape and LG Lucid 2 include images of alleged products with label information that is inconsistent with the original label format for genuine LG products. We request that Rockstar

_____

[2] For the '551 patent, Rockstar has provided claim charts for the following LG products: Escape, G Flex Sprint, G Pad 8.3, G2 Verizon, Intuition, Lucid, Lucid 2, Motion 4G, Nexus 4, Nexus 5, Nitro, Optimus Elite, Optimus G Pro, Optimus G, Optimus L9, Optimus Net, Spectrum 2, Spectrum, Splendor, Venice, and Viper 4G LTE.

David Sochia
April 17, 2014
Page 3

_____

provide us with information on the source of all products used for testing, analysis, and preparation of Rockstar's Infringement Contentions as they do not appear to be based on an analysis of genuine LG products.

### **Rockstar Has Failed To Identify The Allegedly Infringing Features Of The LG Accused Products**

P.R. 3-1(c) requires that Rockstar disclose "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." Rockstar's claim charts reveal several deficiencies in Rockstar's infringement theories and supporting evidence.  While our discussion here does not identify all of the problems with Rockstar's infringement arguments, the deficiencies discussed below are representative and require that Rockstar withdraw its current infringement contentions with respect to each of the patents-in-suit.   Furthermore, it is clear that Rockstar has samples of the LG Accused Products and access to enough publicly available information about those products to conclusively show that the accused products do not and cannot meet the limitations of the asserted claims.  *See Raytheon Co. v. Brocade Comms. Sys., Inc*., Case No. 2:03-cv-13-TJW (July 29, 2003 E.D. Tex.) (The Court's Patent Rules "contemplate that a party serving its infringement contentions provide all of the facts then known to the party.").

### *The '298 Patent*

Rockstar's infringement chart for U.S. Patent No. 6,238,298 ("the '298 patent") relies upon voluminous exemplary Android OS open source code citations yet Rockstar does not disclose any basis for its belief that this source code is actually implemented in the LG Accused Product.  Please confirm that, to date, Rockstar has not conducted operational testing of the LG Accused Product to determine whether it incorporates similar source code or otherwise meets all of the limitations.

Even if the open source code identified in Rockstar's charts *is* reflective of the code implemented in the LG Accused Product, Rockstar fails to provide any explanation as to where the various limitations of the claims are found within the source code.  In general, Rockstar appears to have cut and pasted large portions of source code into the charts without any documentation or explanation as to what is going on, at even a high level, or where particular elements of the limitations are found within the source code or the screenshots.

For example, limitation 11.2 requires "receiving at the filter node, from the private network, a data packet having a destination address corresponding to a node in the public network and a source address corresponding to a node in the private network."  Citation 11.2(1) is a wireshark capture when one or more source devices communicate with a destination address. Citation 11.2(2) shows a trace of a destination address.  Portions of these screenshots are highlighted with a red box—notably without any explanation as to the significance of these portions.  No explanation is given for which parts of these screenshots correspond to the various elements in the limitation.  The remaining citations in this section

David Sochia
April 17, 2014
Page 4

_____

merely copy and paste pages and pages of Open Source Code—again without explaining the significance of the code.  The chart fails to mention what the filter node is, what the private network is, and what the public network is.

In similar fashion, limitation 11.3 requires "maintaining, by the filter node, the source address taken from the data packet." Various wireshark captures are cited showing a source device communicating with a destination node, and large source code reproductions are also provided.  Portions of these screenshots are highlighted with a red box, again without any explanation as to the significance of these portions.  No explanation is given as to what the filter node is or how the "maintaining" takes place.

Limitation 11.7 requires "waiting for a return packet from a public network, responsive to the data packet having the replaced source information." Citation 11.6(1) shows a hotspot receiving a data packet from a server and citations 11.6(2) – 11.6(7) are voluminous excerpts of source code.  However, nowhere is it demonstrated how or where the waiting takes place, or what the relevance of these citations is to the limitation.

These are only representative examples of Rockstar's failure to provide any explanation or discussion as to how the reproduced code purportedly meets the various claim limitations.  These charts simply fail to particularly point out *where* the limitations are found in the volumes of source code and screenshots provided, leaving LG with the formidable task of attempting to find and then speculate as to what portion of the pasted Google Android OS corresponds to what Rockstar believes meets the particular limitation.

In light of these deficiencies, there appears no good faith basis for Rockstar's contention that the '298 patent has been infringed by the LG Accused Product.  Please confirm that Rockstar will withdraw its infringement contentions with respect to the '298 patent.

### The '591 Patent

Rockstar's claim charts for U.S. Patent No. 6,765,591 ("the '591 patent") again rely upon exemplary open source Android OS code, without confirmation that this source code is actually implemented in LG Accused Product.  Even if the open source Android OS code *is* reflective of the code implemented in the accused product, Rockstar fails to provide any discussion or explanation as to where or how the various claim limitations are met by the reproduced source code.  In general, Rockstar has merely cut and pasted portions of the open source Android OS code—without any documentation or explanation as to what is going on at a high level, and without any analysis of how particular claim elements are found within the source code.

For example, limitation 1.4 requires "a collection of properties dialogs that receive user input configuring the virtual private network elements and/or sub-elements, the properties dialog displayed being controlled by user's selection of an element from the display

David Sochia
April 17, 2014
Page 5

_____

of virtual private network elements." The chart provides various screenshots of network settings and voluminous citations of Open Source code.  Portions of these screenshots are highlighted with a red box without any explanation as to the significance of these portions. The chart fails to show a properties dialog display being controlled by a user selection of an element from the display of virtual private network elements.  In fact, nowhere is there shown a selection from a display of virtual private elements.  Instead the screenshots all refer to setting screens for adding a new VPN network.   No explanation is given for how these screenshots and citations match up to the limitation, leaving mere vague assumptions to the reader.

As another example, section 1.5 requires "a wizard that enables the user to configure one or more of the virtual private network elements by interacting with a preprogrammed series of dialogs which query the user for different sets of virtual private network element characteristics." The chart provides a series of screenshots and open source code citations. However, nowhere is it mentioned which portions of the screenshots or source code refer to a wizard.  In fact, the screenshots relate to various network settings screens, but fail to disclose any sort of wizard.  If Rockstar is making assumptions, such as equating a portion of the cited materials with the wizard, it should articulate this explicitly. These are only representative examples of Rockstar's failure to provide any, let alone a detailed explanation, as required by the Local Patent Rules.

In light of these deficiencies, there appears to be no good faith basis for Rockstar's contention that any of the asserted claims of the '591 patent have been infringed by LG's accused products.  Please confirm that Rockstar will withdraw its infringement contentions with respect to the '591 patent.

### The '131 Patent

Rockstar's infringement contentions regarding U.S. Patent No. 6,463,131 ("the '131 patent") are also deficient.  Rockstar again relies upon exemplary Android OS open source code citations without any basis for its belief that this source code is actually implemented in the LG Accused Product.  Even if the open source code *is* reflective of the code implemented in the LG Accused Product, Rockstar fails to provide any explanation as to where the various claim limitations are found within the source code.   In general, the source code is merely reproduced without any documentation or explanation as to what is going on at a high level, or how or where the particular claim elements are found within the source code.

For example, section 1.5 requires "means for receiving a selection from the user indicating a format for delivery of further information regarding the communication event." Various screenshots of text message notifications are given, as well as incoming call screenshots, and email screenshots. Portions of these screenshots are highlighted with a red box, again, without explanation as to the significance of these portions. Nowhere do these screenshots indicate where the "format for delivery of further information" or the

David Sochia
April 17, 2014
Page 6

_____

"communication event" is disclosed.  Similarly, the open source code citations give no explanation or guidance at all as to how they meet elements of the limitation.

As another example, section 1.6 requires "means for allowing the further information regarding the communication event to be sent to the user in the specified format." Various screenshots of email and text message inbox notifications are given, together with incoming call screenshots. Portions of these screenshots are highlighted with a red box without explanation as to the significance of these portions.  Nowhere do these screenshots indicate what the "selected format" to which they purportedly refer to. Similarly, the open source code citations give no explanation or guidance as to how they meet elements of the limitation.  These are not the only examples where Rockstar fails to provide any explanation or discussion as to how the examples meet the limitation, this occurs throughout the claim chart.

In light of these deficiencies, there appears to be no good faith basis for Rockstar's contention that any of the asserted claims of the '131 patent have been infringed by the LG Accused Product.  Please confirm that Rockstar will withdraw its infringement contentions with respect to the '131 patent.

_The '572, '937, '973 Patents_

Rockstar's infringement contentions regarding U.S. Patent Nos. 6,937,572 ("the '572 patent"), 6,037.937 ("the '937 patent"), and 6,333,973 (the '973 patent) are also deficient.  In all of the charts associated with these patents, Rockstar again relies upon exemplary Android OS open source code citations.  Yet, Rockstar does not disclose any basis for its belief that this source code is actually implemented in each of the LG Accused Products.   Again, even if the open source code *is* reflective of the code implemented in the LG Accused Products, Rockstar fails to provide explanation as to where the various limitations are found within the source code.  In general, the source code is merely displayed without any documentation or explanation as to what is going on at a high level, or where particular elements of the limitations are purportedly found within the source code.  Please confirm that Rockstar will withdraw its infringement contentions with respect to the '572  patent, the '937 patent, and the '973 patent.

Given the upcoming case deadlines, please confirm by **April 23, 2014**, that Rockstar will withdraw its infringement claims.

Very truly yours,

James J. Lukas, Jr.

# EXHIBIT C

| | |
|---|---|
| **From:** | Matthew Warren |
| **To:** | Rockstar_NDCA |
| **Cc:** | Quinn-Google-N.D. Cal.-13-05933 |
| **Subject:** | RE: Google v. Rockstar, No. 13-cv-5933 (N.D. California) |
| **Date:** | Tuesday, April 22, 2014 3:52:08 PM |

4.  "Google believes this issue is not currently before this Court."

-----Original Message-----
From: Josh Budwin [mailto:jbudwin@McKoolSmith.com]
Sent: Tuesday, April 22, 2014 1:49 PM
To: Matthew Warren; Rockstar_NDCA
Cc: Quinn-Google-N.D. Cal.-13-05933
Subject: RE: Google v. Rockstar, No. 13-cv-5933 (N.D. California)

Matt -

On 1 thanks.  On 2, we'll take a shot at some language.  On 3, ok.  On 4, can you send us the
language you propose be included this afternoon, so that we can review, and respond as appropriate?
We're trying to return a red-line to you tonight, in advance of tomorrow's call, as that'll help frame the
discussion.

Thanks.

-----Original Message-----
From: Matthew Warren [mailto:matthewwarren@quinnemanuel.com]
Sent: Tuesday, April 22, 2014 3:40 PM
To: Rockstar_NDCA
Cc: Quinn-Google-N.D. Cal.-13-05933
Subject: RE: Google v. Rockstar, No. 13-cv-5933 (N.D. California)

Josh:

Thanks for the email.  I agree that whenever we edit a document, we should always send back a clean
copy and redline against the prior draft from the other side.  In this case, unfortunately, I was running
to Court and could either send the document then without a redline, or send it several hours later with
a redline.  I expected you would prefer the former, and I appreciate your courtesy in receiving it that
way.  In the future, however, we will use redlines as I describe above.

Regarding your points below:

1.  That time works.  I will send a dial-in.

2.  We obviously have a substantive disagreement which we won't resolve in our CMC statement.
Procedurally, we should work out a way for us both to express our views on this point.  I suggest a
footnote the first time we mention the motion, but I am open to any suggestion that allows us both to
state our positions.

3.  Let's do them tomorrow.

4.  We believe this issue is not currently before Chief Judge Wilken.  I meant to say that in the draft I
sent, and we will say that in the next official draft.

Thanks again for your time and courtesy in this matter.

Best Regards,
Matt Warren

--
Matt Warren    matthewwarren@quinnemanuel.com    +1 (415) 895-2928

-----Original Message-----
From: Josh Budwin [mailto:jbudwin@McKoolSmith.com]
Sent: Tuesday, April 22, 2014 12:33 PM
To: Matthew Warren; Rockstar_NDCA
Cc: Quinn-Google-N.D. Cal.-13-05933
Subject: RE: Google v. Rockstar, No. 13-cv-5933 (N.D. California)

Thanks Matt -

We'll look and get back to you.  There's no tracked changes, which makes reviewing your edits difficult.  We'll prepare a red-line from this version to what we send back to you, but in the future, we'd appreciate receiving a version with tracked changes.

(1) On the meet and confer point -- we can discuss at 10am Texas; 8am Pacific tomorrow morning.  Will you send a dial-in?

(2) On the "prior motion" point, we have not yet moved to transfer under Section 1404.  Obviously, a motion to dismiss is decided on the pleadings (with the Court accepting your plead facts as true -- even where they are in dispute).  In contrast, a 1404 motion requires substantive fact-finding (and weighing of those facts).  While the Court's order mentions Section 1404, since we have not filed a 1404 motion, we feel it is important to file such a motion (even if only to preserve the issue for appeal), allow the Court to weigh the evidence, and issue an order under the 1404 framework.

(3) On 26(a)(1), if you want to do the disclosures tomorrow, we can do that.  We just figured an extra week would be beneficial to all parties.

(4) Finally, it looks like you have a hanging paragraph at the end of section 3, can you send us the full text this afternoon so we can figure out how to substantively address it, if needed?  Currently it says:

Google believes that the first issue, "[w]hether Rockstar Consortium and MobileStar are subject to personal jurisdiction in this district," is resolved by the Court's Order Denying Motion to Dismiss or, in the Alternative, to Transfer, Docket No. 58.  Google further believes that the second issue,  "[w]hether or not resolution of Google's declaratory complaints of non-infringement and validity will have any bearing on or be binding on any of the defendants (other than Google) in Rockstar's Texas cases," [XXX hanging ....]

-----Original Message-----
From: Matthew Warren [mailto:matthewwarren@quinnemanuel.com]
Sent: Tuesday, April 22, 2014 1:06 PM
To: Rockstar_NDCA
Cc: Quinn-Google-N.D. Cal.-13-05933
Subject: Google v. Rockstar, No. 13-cv-5933 (N.D. California)

Josh and Rockstar team:

Attached please find a revised CMC.  We tried to integrate the draft in sections 1-7, reflecting your perspective.  Where we have failed to do so, we invite correction.

Sections 8 and up represent our proposals.  Before integrating or showing separate statements, I thought it would be useful to meet and confer to see where we could agree.  I am in Court today, but can do that early tomorrow morning, any time between, 7:00 a.m. and 9:00 a.m. PDT.  Please let me know what times work for you.

One issue that isn't resolved by this draft is the scope of Rockstar's prior motion.  As we said in our opposition brief, we believe Rockstar moved to dismiss or transfer.  The Court agreed with us, but this draft seems to include language in which you guys want to characterize your papers as only including a motion to dismiss.  You can do that if you want, of course, but we don't want to adopt that

characterization just as you evidently don't want to adopt ours.  To be fair to everyone, I suggest dropping a footnote the first time we mention this motion that explains our differing views, so we don't have to keep stating two positions every time in the document it comes up.  Let me know if this works for you.

Finally, your draft says 26(a)(1) disclosures are due April 30.  We have this calendared for April 23.  We should obviously agree on this date, so:  where are we wrong?

Thanks for your continued time and courtesy in this matter.

Best Regards,
Matt Warren

--
Matt Warren      matthewwarren@quinnemanuel.com      +1 (415) 895-2928

Case 2:13-cv-00900-JRG   Document 67-5   Filed 05/08/14   Page 1 of 14 PageID #:  4189

# EXHIBIT D

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Sean Pak (Cal. Bar No. 219032)
2    seanpak@quinnemanuel.com
   Amy H. Candido (Cal. Bar No. 237829)
3    amycandido@quinnemanuel.com
   Matthew S. Warren (Cal. Bar No. 230565)
4    matthewwarren@quinnemanuel.com
   50 California Street, 22nd Floor
5  San Francisco, California  94111
   (415) 875-6600
6  (415) 875-6700 (facsimile)

7  Attorneys for Plaintiff GOOGLE INC.

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  GOOGLE INC.,                          CASE NO.  3:13-cv-5933

12           Plaintiff,                   **COMPLAINT FOR DECLARATORY
                                          JUDGMENT OF NON-INFRINGEMENT
13      v.                                OF U.S. PATENT NOS. 5,838,551;
                                          6,037,937; 6,128,298; 6,333,973; 6,463,131;
14  ROCKSTAR CONSORTIUM US LP and         6,765,591; AND 6,937,572**
    MOBILESTAR TECHNOLOGIES LLC,
15                                        **DEMAND FOR JURY TRIAL**
             Defendants.
16

17

18          Plaintiff Google Inc. ("Google") seeks a declaration that Google does not directly or

19  indirectly infringe United States Patent Nos. 5,838,551, 6,037,937, 6,128,298, 6,333,973,

20  6,463,131, 6,765,591, and 6,937,572, as follows:

21

22

23

24

25

26

27

28

**– A1315 –**

**NATURE OF THE ACTION**

1.     This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Google requests this relief because Defendants Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Rockstar") have filed seven lawsuits claiming that Google's customers infringe some or all of United States Patent Nos. 5,838,551, 6,037,937, 6,128,298, 6,333,973, 6,463,131, 6,765,591, and 6,937,572 (the "patents in suit") by making, using, selling, offering for sale, importing, exporting, supplying, or distributing "certain mobile communication devices having a version (or an adaption thereof) of [the] Android operating system" developed by Google.  Rockstar's litigation campaign has placed a cloud on Google's Android platform; threatened Google's business and relationships with its customers and partners, as well as its sales of Nexus-branded Android devices; and created a justiciable controversy between Google and Rockstar.

**THE PARTIES**

2.     Plaintiff Google Inc. ("Google") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.  Google's mission is to organize the world's information and make it universally accessible and useful.  As part of that mission, Google produces Android, an open-source mobile platform that has been adopted by original equipment manufacturers ("OEMs") worldwide.

3.     Defendant Rockstar Consortium US LP ("Rockstar Consortium") is a limited partnership organized and existing under the laws of the state of Delaware.  Rockstar Consortium claims that its principal place of business is at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, Texas, 75024, but the substantial majority of its employees, including senior management, are based in Ontario, Canada.  Rockstar Consortium is admittedly a "patent licensing business" that produces no products, and instead exists solely to assert its patents.  (http://www.ip-rockstar.com/about.)

4.     Defendant MobileStar Technologies LLC ("MobileStar") is a limited liability corporation organized and existing under the laws of the state of Delaware, and also claims that its

principal place of business is at Legacy Town Center 1, 7160 North Dallas Parkway,

Suite No. 250, Plano, Texas, 75024.  MobileStar claims to be a subsidiary of Rockstar.

MobileStar was formed for litigation one day before Rockstar filed its lawsuits against Google's

customers.

**JURISDICTIONAL STATEMENT**

5.    This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and

under the patent laws of the United States, 35 U.S.C. §§ 1-390.

6.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331,

1338(a), and 2201(a).

7.    This Court has personal jurisdiction over Rockstar.  Among other things, Rockstar

has continuous and systematic business contacts with California.  As Rockstar executives have

explained to the media, once Rockstar identifies commercially successful products, it approaches

the companies behind those products in person and through other means to seek licenses to

Rockstar's patents.  Rockstar conducts this business extensively throughout California, including

through personnel located in the San Francisco Bay Area.  Rockstar's CEO has publicly stated that

Facebook (based in Menlo Park) and LinkedIn (based in Mountain View) infringe Rockstar's

patents.  (http://www.wired.com/wiredenterprise/2013/11/veschi/.)  In fact, Rockstar's CEO has

stated that it would be difficult to imagine that any tech companies—legions of which call

California home—do not infringe Rockstar's patents.  On information and belief, Rockstar's

licensing and enforcement efforts in California have generated substantial revenues.

8.    On information and belief, Rockstar's shareholders direct and participate in

Rockstar's licensing and enforcement efforts against companies in California.  For example, Apple

Inc. ("Apple") is a large shareholder in closely-held Rockstar, and maintains a seat on Rockstar's

board of directors.  Rockstar's CEO has publicly stated that Rockstar maintains regular contact

with its shareholders.  Apple's headquarters are in Cupertino, California.

9.    In addition, this Court has personal jurisdiction over Rockstar for another reason:

Rockstar has purposefully directed into California its enforcement activities regarding the patents

in suit.  As part of this enforcement campaign, Rockstar contacted and met with a series of

1   California-based companies, accusing their devices that use Google's Android platform.  On

2   information and belief, Rockstar contacted and met with these California-based companies in

3   order to discourage them from continuing to use Google's Android platform in their devices, and

4   to interfere with Google's business relationships.

5        10.    Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), because a

6   substantial part of the events giving rise to Google's claim occurred in this district, and because

7   Rockstar Consortium and MobileStar are subject to personal jurisdiction here.

8        11.    An immediate, real, and justiciable controversy exists between Google and

9   Rockstar as to whether Google is infringing or has infringed United States Patent Nos. 5,838,551

10   (the "'551 patent"), 6,037,937 (the "'937 patent"), 6,128,298 (the "'298 patent"), 6,333,973 (the

11   "'973 patent"), 6,463,131 (the "'131 patent"), 6,765,591 (the "'591 patent"), and 6,937,572 (the

12   "'572 patent").

13                     **INTRADISTRICT ASSIGNMENT**

14        12.    For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b),

15   this Intellectual Property Action will be assigned on a district-wide basis.

16                 **ROCKSTAR'S HISTORY AND BUSINESS**

17        13.    In June 2011, five of the world's largest technology companies—including Google

18   competitors Apple, Research In Motion, and Microsoft—joined forces to obtain a portfolio of

19   patents auctioned during the bankruptcy of Nortel Networks.  Bankrolled by these companies, a

20   manufactured entity called "Rockstar Bidco" placed the winning bid of $4.5 billion.  According to

21   Apple's June 2011 Form 10-Q filed with the Securities and Exchange Commission, Apple

22   contributed "approximately $2.6 billion" of that sum.

23        14.    Following its acquisition of Nortel's portfolio, Rockstar Bidco transferred

24   ownership of thousands of patents to its owners, whom it calls the "founding licensees."  Rockstar

25   Bidco transferred ownership of over 1,000 patents to Apple alone.  On information and belief,

26   Rockstar Bidco was then reorganized into Rockstar Consortium.

27        15.    Rockstar produces no products and practices no patents.  Instead, Rockstar employs

28   a staff of engineers in Ontario, Canada, who examine other companies' successful products to find

1  anything that Rockstar might use to demand and extract licenses to its patents under threat of

2  litigation.

3      16.     Public reports confirm that in the first two months following its purchase of

4  Nortel's portfolio, Rockstar sought licenses from as many as 100 companies.  On information and

5  belief, Rockstar has since sought licenses from many additional companies.

6                  **ROCKSTAR'S CAMPAIGN AGAINST ANDROID**

7      17.     Among the myriad companies ensnared in Rockstar's patent dragnet are customers

8  and partners of Google who use the Android platform in their devices, including ASUS, HTC,

9  Huawei, LG, Pantech, Samsung, and ZTE.

10     18.     On October 31, 2013, Rockstar brought patent infringement actions against ASUS,

11 HTC, Huawei, LG, Pantech, Samsung, and ZTE in the Marshall Division of the United States

12 District Court for the Eastern District of Texas.  *Rockstar Consortium US LP v. ASUSTek*

13 *Computer, Inc.*, No. 2:13-cv-894; *Rockstar Consortium US LP v. HTC Corp.*, No. 2:13-cv-895;

14 *Rockstar Consortium US LP v. Huawei Investment & Holding Co.*, No. 2:13-cv-896; *Rockstar*

15 *Consortium US LP v. LG Electronics Inc.*, No. 2:13-cv-898; *Rockstar Consortium US LP v.*

16 *Pantech Co.*, No. 2:13-cv-899; *Rockstar Consortium US LP v. Samsung Electronics Co.*,

17 No. 2:13-cv-900; and *Rockstar Consortium US LP v. ZTE Corp.*, No. 2:13-cv-901 (collectively,

18 the "Android OEM Actions" against the "Android OEM Defendants").

19     19.     In the Android OEM Actions, Rockstar alleges that each Android OEM Defendant

20 infringes some or all of the '551, '937, '298, '973, '131, '591, and '572 patents by making, using,

21 selling, offering for sale, importing, exporting, supplying, or distributing "certain mobile

22 communication devices having a version (or an adaption thereof) of [the] Android operating

23 system" developed by Google.

24     20.     In the Android OEM Actions, Rockstar accuses Android features including

25 "Mobile Hotspot functionality" which is "designed to route data packets between wireless devices

26 tethered to the Mobile Hotspot to nodes on a public network such as the Internet," allegedly

27 infringing the '298 patent; "VPN management functionality," allegedly infringing the '591 patent;

28 "Messaging and Notification functionality," allegedly infringing the '131 patent; a "navigable

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

1  graphical user interface ('navigable GUI') that permits a user to manipulate and control the

2  contents of the display to maximize the use of display real estate," allegedly infringing the '937

3  patent; "integrated notification message center," allegedly infringing the '973 patent; and

4  "Location Services functionality," allegedly infringing the '572 patent.

5      21.    Rockstar further accuses devices incorporating Android of infringing the '551

6  patent by "includ[ing] at least one electronic package comprising a component that is located

7  between an EMI shield and a ground member for performing shielding operations" where "[t]he

8  EMI shield is incorporated into the electronic package, which is then mounted to a circuit board"

9  in the accused devices.

10     22.    As Rockstar's complaints admit, in the Android OEM Actions Rockstar has

11 asserted its patents only against "certain mobile communication devices having a version (or an

12 adaption thereof) of [the] Android operating system" developed by Google—although each of the

13 Android OEM Defendants also makes other products that do not use Google's Android platform.

14 Rockstar has further asserted patent infringement by the Nexus 7, a device offered for sale by

15 Google and built by ASUS, one of the Android OEM Defendants.

16     23.    On information and belief, Rockstar intends the Android OEM Actions to harm

17 Google's Android platform and disrupt Google's relationships with the Android OEM Defendants.

18 This is an open secret:  industry media immediately observed that in filing the Android OEM

19 Actions, Rockstar "launch[ed] an all-out patent attack on Google and Android."

20 (http://arstechnica.com/tech-policy/2013/10/patent-war-goes-nuclear-microsoft-apple-owned-

21 rockstar-sues-google/.)

22     24.    For all these reasons, an actual controversy exists between Google and Rockstar

23 regarding the alleged infringement of any claim of the '551, '937, '298, '973, '131, '591, and

24 '572 patents.

25                    **GOOGLE DOES NOT INFRINGE THE PATENTS IN SUIT**

26     25.    Neither any version of Google's Android platform nor any of the Nexus 5,

27 Nexus 7, or Nexus 10 devices sold by Google directly or indirectly infringe any claim of the '551,

28 '937, '298, '973, '131, '591, and '572 patents.

- 6 -

26.     To the best of Google's knowledge, no third party infringes any claim of the '551, '937, '298, '973, '131, '591, or '572 patents by using Nexus devices or Google's Android platform in other devices.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Neither the Nexus devices nor Google's Android platform are designed for use in any combination which infringes any claim of the '551, '937, '298, '973, '131, '591, or '572 patents.  To the contrary, each is a product with substantial uses that do not infringe any claim of these patents.

## FIRST COUNT

### (Declaration of Non-Infringement of the '551 Patent)

27.     Google restates and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.     Rockstar Consortium claims to own all rights, title, and interest in United States Patent No. 5,838,551 (the "'551 patent").  MobileStar claims to be the exclusive licensee of the '551 patent.  A true and correct copy of the '551 patent is attached hereto as Exhibit A.

29.     In the Android OEM Actions, Rockstar accuses Android OEM defendants ASUS, HTC, Huawei, LG, Pantech, and Samsung of infringing the '551 patent in that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices incorporating Google's Android platform, which devices allegedly include "at least one electronic package comprising a component that is located between an EMI shield and a ground member for performing shielding operations" where "[t]he EMI shield is incorporated into the electronic package, which is then mounted to a circuit board" in the accused devices.  In its complaint against ASUS, which manufactures the Nexus 7, Rockstar specifically accuses the Nexus 7, a device offered for sale by Google.

30.     A substantial, immediate, and real controversy therefore exists between Google and Rockstar regarding whether the Android platform or any of these Nexus devices infringe or have infringed the '551 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '551 patent.

31.     Google seeks a judgment declaring that Google's Android platform and the Nexus 5, Nexus 7, and Nexus 10 devices do not directly or indirectly infringe any claim of the '551 patent.

### SECOND COUNT

### (Declaration of Non-Infringement of the '937 Patent)

32.     Google restates and incorporates by reference the allegations in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.     MobileStar claims to own all rights, title, and interest in United States Patent No. 6,037,937 (the "'937 patent").  Rockstar Consortium claims no interest in the '937 patent, yet seeks a judgment of infringement against the Android OEM Defendants in the Android OEM Actions.  A true and correct copy of the '937 patent is attached hereto as Exhibit B.

34.     In the Android OEM Actions, Rockstar accuses Android OEM Defendants ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '937 patent in that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices incorporating a version of Google's Android platform that supports a "navigable graphical user interface ('navigable GUI') that permits a user to manipulate and control the contents of the display to maximize the use of display real estate."  In its complaint against ASUS, which manufactures the Nexus 7, Rockstar specifically accuses the Nexus 7, a device offered for sale by Google.

35.     The Nexus 5, Nexus 7, and Nexus 10 devices use Google's Android platform.

36.     A substantial, immediate, and real controversy therefore exists between Google and Rockstar regarding whether the Android platform or any of these Nexus devices infringe or have infringed the '937 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '937 patent.

37.     Google seeks a judgment declaring that Google's Android platform and the Nexus 5, Nexus 7, and Nexus 10 devices do not directly or indirectly infringe any claim of the '937 patent.

## THIRD COUNT

### (Declaration of Non-Infringement of the '298 Patent)

38.    Google restates and incorporates by reference the allegations in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39.    Rockstar Consortium claims to own all rights, title, and interest in United States Patent No. 6,128,298 (the "'298 patent"). MobileStar claims to be the exclusive licensee of '298 patent. A true and correct copy of the '298 patent is attached hereto as Exhibit C.

40.    In the Android OEM Actions, Rockstar accuses Android OEM Defendants ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '298 patent in that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices incorporating a version of Google's Android platform that supports "Mobile Hotspot functionality [which] is designed to route data packets between wireless devices tethered to the Mobile Hotspot to nodes on a public network such as the Internet." In its complaint against ASUS, which manufactures the Nexus 7, Rockstar specifically accuses the Nexus 7, a device offered for sale by Google.

41.    The Nexus 5, Nexus 7, and Nexus 10 devices use Google's Android platform.

42.    A substantial, immediate, and real controversy therefore exists between Google and Rockstar regarding whether the Android platform or any of these Nexus devices infringe or have infringed the '298 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '298 patent.

43.    Google seeks a judgment declaring that Google's Android platform and the Nexus 5, Nexus 7, and Nexus 10 devices do not directly or indirectly infringe any claim of the '298 patent.

## FOURTH COUNT

### (Declaration of Non-Infringement of the '973 Patent)

44.    Google restates and incorporates by reference the allegations in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     MobileStar claims to own all rights, title, and interest in United States Patent No. 6,333,973 (the "'973 patent").  Rockstar Consortium claims no interest in the '973 patent, yet seeks a judgment of infringement against the Android OEM Defendants in the Android OEM Actions.  A true and correct copy of the '973 patent is attached hereto as Exhibit D.

46.     In the Android OEM Actions, Rockstar accuses Android OEM Defendants ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '973 patent in that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices incorporating a version of Google's Android platform that supports an "integrated notification message center."  In its complaint against ASUS, which manufactures the Nexus 7, Rockstar specifically accuses the Nexus 7, a device offered for sale by Google.

47.     The Nexus 5, Nexus 7, and Nexus 10 devices use Google's Android platform.

48.     A substantial, immediate, and real controversy therefore exists between Google and Rockstar regarding whether the Android platform or any of these Nexus devices infringe or have infringed the '973 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '973 patent.

49.     Google seeks a judgment declaring that Google's Android platform and the Nexus 5, Nexus 7, and Nexus 10 devices do not directly or indirectly infringe any claim of the '973 patent.

**FIFTH COUNT**

**(Declaration of Non-Infringement of the '131 Patent)**

50.     Google restates and incorporates by reference the allegations in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     MobileStar claims to own all rights, title, and interest in United States Patent No. 6,463,131 (the "'131 patent").  Rockstar Consortium claims no interest in the '131 patent, yet seeks a judgment of infringement against the Android OEM Defendants in the Android OEM Actions.  A true and correct copy of the '131 patent is attached hereto as Exhibit E.

52.     In the Android OEM Actions, Rockstar accuses Android OEM Defendants ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '131 patent in that each "makes,

1  uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States"

2  devices incorporating a version of Google's Android platform that supports "Messaging and

3  Notification functionality." In its complaint against ASUS, which manufactures the Nexus 7,

4  Rockstar specifically accuses the Nexus 7, a device offered for sale by Google.

5       53.    The Nexus 5, Nexus 7, and Nexus 10 devices use Google's Android platform.

6       54.    A substantial, immediate, and real controversy therefore exists between Google and

7  Rockstar regarding whether the Android platform or any of these Nexus devices infringe or have

8  infringed the '131 patent. A judicial declaration is necessary to determine the parties' respective

9  rights regarding the '131 patent.

10      55.    Google seeks a judgment declaring that Google's Android platform and the

11 Nexus 5, Nexus 7, and Nexus 10 devices do not directly or indirectly infringe any claim of the

12 '131 patent.

13                          **SIXTH COUNT**

14              **(Declaration of Non-Infringement of the '591 Patent)**

15      56.    Google restates and incorporates by reference the allegations in paragraphs 1

16 through 55 of this Complaint as if fully set forth herein.

17      57.    MobileStar claims to own all rights, title, and interest in United States Patent

18 No. 6,765,591 (the "'591 patent"). Rockstar Consortium claims no interest in the '591 patent, yet

19 seeks a judgment of infringement against the Android OEM Defendants in the Android OEM

20 Actions. A true and correct copy of the '591 patent is attached hereto as Exhibit F.

21      58.    In the Android OEM Actions, Rockstar accuses Android OEM Defendants ASUS,

22 HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '591 patent in that each "makes,

23 uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States"

24 devices incorporating a version of Google's Android platform that supports "VPN management

25 functionality." In its complaint against ASUS, which manufactures the Nexus 7, Rockstar

26 specifically accuses the Nexus 7, a device offered for sale by Google.

27      59.    The Nexus 5, Nexus 7, and Nexus 10 devices use Google's Android platform.

28

60.     A substantial, immediate, and real controversy therefore exists between Google and Rockstar regarding whether the Android platform or any of these Nexus devices infringe or have infringed the '591 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '591 patent.

61.     Google seeks a judgment declaring that Google's Android platform and the Nexus 5, Nexus 7, and Nexus 10 devices do not directly or indirectly infringe any claim of the '591 patent.

## SEVENTH COUNT

### (Declaration of Non-Infringement of the '572 Patent)

62.     Google restates and incorporates by reference the allegations in paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     Rockstar Consortium claims to own all rights, title, and interest in United States Patent No. 6,937,572 (the "'572 patent").  MobileStar claims no interest in the '572 patent, yet seeks a judgment of infringement against the Android OEM Defendants in the Android OEM Actions.  A true and correct copy of the '572 patent is attached hereto as Exhibit G.

64.     In the Android OEM Actions, Rockstar accuses Android OEM Defendants ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '572 patent in that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices incorporating a version of Google's Android platform that supports "Location Services functionality."  In its complaint against ASUS, which manufactures the Nexus 7, Rockstar specifically accuses the Nexus 7, a device offered for sale by Google.

65.     The Nexus 5, Nexus 7, and Nexus 10 devices use Google's Android platform.

66.     A substantial, immediate, and real controversy therefore exists between Google and Rockstar regarding whether the Android platform or any of these Nexus devices infringe or have infringed the '572 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '572 patent.

1  67.    Google seeks a judgment declaring that Google's Android platform and the

2  Nexus 5, Nexus 7, and Nexus 10 devices do not directly or indirectly infringe any claim of the

3  '572 patent.

4  **<u>PRAYER FOR RELIEF</u>**

5  WHEREFORE, Google prays for judgment and relief as follows:

6  A.    Declaring that Google's Android platform and the Nexus 5, Nexus 7, and Nexus 10

7  do not infringe any of the '551, '937, '298, '973, '131, '591, or '572 patents;

8  B.    Declaring that judgment be entered in favor of Google and against Rockstar

9  Consortium and MobileStar on each of Google's claims;

10  C.    Finding that this an exceptional case under 35 U.S.C. § 285;

11  D.    Awarding Google its costs and attorneys' fees in connection with this action; and

12  E.    Such further and additional relief as the Court deems just and proper.

13  **<u>JURY DEMAND</u>**

14  Google demands a jury trial on all issues and claims so triable.

15  DATED: December 23, 2013        Respectfully submitted,

16  QUINN EMANUEL URQUHART & SULLIVAN, LLP

17  By  /s Matthew S. Warren

18  Matthew S. Warren
   *Attorneys for Google Inc.*

19

20

21

22

23

24

25

26

27

28

- 13 -

**– A1327 –**

# EXHIBIT E

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GOOGLE, INC.,                                          No. C 14-00498 WHA

        Plaintiff,

    v.

CONTENTGUARD HOLDINGS, INC.,                          **ORDER GRANTING MOTION
                                                      TO STAY**

        Defendant.

———————————————————————————/

    Three pending actions are relevant to this order:  (1) *Contentguard Holdings, Inc. v. Amazon.com, Inc., et al.*, No. 2:13-cv-01112-JRG (E.D. Tex. Dec. 18, 2013) (Judge Rodney Gilstrap) ("*Amazon* action"); (2) *Google, Inc. v. ContentGuard Holdings, Inc.*, No. 3:14-cv-00498-WHA (N.D. Cal. Jan. 31, 2014) (Judge William Alsup) (this action); and (3) *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-00061-JRG-RSP (E.D. Tex. Feb. 5, 2014) (Judge Rodney Gilstrap) ("*Google* Texas action").

    In this action, in March 2014, defendant ContentGuard Holdings, Inc. moved to stay, transfer, or dismiss this action in light of the actions pending in the Eastern District of Texas. Google opposed, arguing, *inter alia*, that this action was the first-filed action and the customer-suit exception applied.  A March 2014 order held in abeyance ContentGuard's fully-briefed motion to allow our sister district to rule on the motions pending there.

    On April 15, Judge Gilstrap denied Google's motion to stay, denied ContentGuard's motion to consolidate the *Amazon* action and the *Google* Texas action, and held in abeyance Motorola Mobility, LLC's motion to sever (Dkt. No. 109).  Judge Gilstrap deemed the *Amazon* action first-filed and found that the customer-suit exception did not apply.

United States District Court

For the Northern District of California

1    Having considered Judge Gilstrap's twelve-page order, the interests of comity and

2    judicial efficiency, and ContentGuard's motion herein, this action is **STAYED**.  The case

3    management conference set for May 1 is **VACATED**.  If anything changes materially, either side

4    may seek relief from the stay.

5

6        **IT IS SO ORDERED.**

7

8    Dated:   April 15, 2014.

9                                    WILLIAM ALSUP

                                     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**– A1330 –**

# EXHIBIT F

# MCKOOL SMITH

Jared M. Hoggan
Direct Dial: (214) 978-4923
jhoggan@McKoolSmith.com

300 Crescent Court
Suite 1500
Dallas, TX 75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

February 18, 2014

**VIA EFILE**

Joseph Milowich III
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601

      RE:     Rockstar v. Samsung et al. (ED Tex. Civ. No. 13-cv-0900)

Dear Joseph:

     This letter is in response to your letter to David Sochia dated February 11, 2014, regarding Mr. Alfi S. Guindi.

     First, in my February 4, 2014 letter to you, I told you that we don't believe Mr. Guindi's employment at Rockstar creates a potential conflict. Nevertheless, because McKool Smith and Rockstar take their ethical obligations seriously, both parties instituted prophylactic measures after we received your first letter to avoid even the appearance of impropriety. Specifically, in my previous letter we confirmed to you that Mr. Guindi has had _no_ involvement in the above-captioned litigation. We also informed you that Mr. Guindi has been instructed not to discuss or otherwise have any communications regarding the litigation with other personnel, either at Rockstar or McKool Smith. We further informed you that Rockstar personnel involved with the case have similarly been instructed not to discuss or otherwise have communications regarding the litigation with Mr. Guindi. We also informed you that McKool Smith has taken steps internally to make sure that the relevant McKool Smith attorneys and staff know not to communicate with Mr. Guindi regarding this litigation.

     Second, in your letter, you ask for two items of confirmation, namely that "(1) Mr. Guindi was not involved in the pre-litigation case development, and (2) he will not be involved in the litigation going forward." As discussed above, both of the confirmations you request were provided in my first response letter dated February 4, 2014. To be clear, Mr. Guindi was _not_ involved in the pre-litigation analysis in _any_ way with respect to Samsung (or any other Defendant for that matter). Also, as stated in my original letter, and to be clear and unequivocal, Mr. Guindi has been walled off the Samsung litigation matter and will not be involved now or in the future in the litigation against Samsung.

     Once again, I trust this letter resolves any questions or concerns you may have.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin | Dallas | Houston | Los Angeles | Marshall | New York | Silicon Valley | Washington, DC**

February 18, 2014
Page 2

Regards,

Jared M. Hoggan

cc:    David Sochia

# EXHIBIT G

# McKool Smith

Jared M. Hoggan
Direct Dial: (214) 978-4923
jhoggan@McKoolSmith.com

300 Crescent Court
Suite 1500
Dallas, TX 75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

February 4, 2014

**Via Electronic Mail**

Joseph Milowic III
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601

      RE:    Rockstar v. Samsung et al (ED Tex. Civ. No. 13-cv-0900)

Dear Joseph:

This letter is in response to your January 9, 2014 letter to David Sochia regarding Mr. Alfi S. Guindi, Senior IP Counsel at Rockstar. In that letter, you request that McKool Smith institute an ethical wall related to the above captioned matter for Mr. Guindi on the basis of Mr. Guindi's former employment at Samsung.

McKool Smith takes its ethical obligations seriously, and with respect to its own employees, McKool Smith does its utmost to ensure that it complies with the ethical rules for all jurisdictions in which it practices.

To date, Mr. Guindi has had no involvement in the above captioned litigation and to the best of our knowledge, Rockstar does not intend to involve him in the litigation in the future. As far as McKool Smith is concerned, we have had no communication with Mr. Guindi regarding the litigation and do not intend to have any communications with him in the future regarding this case. While we do not believe there is a potential conflict, we have nevertheless taken steps internally to make sure that the relevant McKool Smith attorneys and staff know not to communicate with Mr. Guindi regarding this litigation.

Mr. Guindi has also been instructed not to discuss or otherwise have any communications regarding the litigation with other personnel, either at Rockstar or McKool Smith. Rockstar personnel involved with the case have similarly been instructed not to discuss or otherwise have communications regarding the litigation with Mr. Guindi.

I trust that this letter resolves the issue.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin  |  Dallas  |  Houston  |  Los Angeles  |  Marshall  |  New York  |  Silicon Valley  |  Washington, DC**

McKool 964950v2

February 4, 2014
Page 2

Regards,

Jared M. Hoggan

JMH:

cc:    David Sochia

IF "1" = "1" "McKool 964950v2
McKool 964950v2

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC,** | |
| **Plaintiffs,** | Civil Action No. 2:13-cv-00899-JRG |
| **vs.** | |
| **PANTECH CO., LTD. AND PANTECH WIRELESS, INC.,** | **JURY TRIAL REQUESTED** |
| **Defendants.** | |

**DECLARATION OF JOSHUA W. BUDWIN IN SUPPORT OF PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

I, Joshua W. Budwin, declare:

1.      I am an attorney with the law firm of McKool Smith P.C., counsel of record for Plaintiffs Rockstar Consortium US LP and Mobilestar Technologies LLC. (collectively "Rockstar") in the above-entitled action.  I am duly licensed to practice law in the State of Texas. I make this declaration based on my personal knowledge, the record in this action, and matters of public record, and if called upon as a witness, I could and would testify competently as to the matters set forth below.

2.      The EDTX is closer than the NDCA for the majority of defendants in the consolidated cases. The approximate distance from each of the consolidated defendants U.S. headquarters to the EDTX and NDCA is:

| Party | Location in U.S. | Approximate Distance from EDTX | Approximate Distance from NDCA |
|-------|------------------|-------------------------------|-------------------------------|
| ASUSTek | Fremont, CA | 1,847 miles | 0 |
| Google | Mountain View, CA | 1,849 miles | 0 |
| HTC | Bellevue, WA | 2,199 miles | 811 miles |
| LGE | Englewood Cliffs, NJ | 1,521 miles | 2,079 miles |
| Pantech | Atlanta, GA | 694 miles | 2,477 miles |
| Rockstar | Plano, TX | 0 | 1,824 miles |
| Samsung | Richardson, TX | 0 | 1,824 miles |
| ZTE | Richardson, TX | 0 | 1,828 miles |

3.      The current addresses for the following individuals listed below have been verified using public records. These individuals are each authors of items listed on the face of one or more of the patents-in-suit as prior art. According to the public records, each of these individuals currently resides in Texas. The city and state of each individual is:

| | |
|---|---|
| Albert F. Nurick | Austin, TX |
| Brittain D. Fraley | Austin, TX |
| Daniel K. Engberg | Cedar Park, TX |
| Ellis K. Cave | Garland, TX |
| Gerald Francis Mcbrearty | Austin, TX |
| John Maddalozzo | Austin, TX |
| Johnny Meng-Han Shieh | Austin, TX |
| Krista Savage | Garland, TX |

| Richard Bach | Garland, TX |

4.      The current addresses for the individuals listed below have been verified using public records. These individuals are each authors of items listed on the face of one or more of the patents-in-suit as prior art. According to the public records, each of these individuals currently resides on the East Coast of the U.S. The city and state of each individual is:

| Bekir Serbetciouglu | Shelton, CT |
| Esref Ozulkulu | Monroe, CT |
| Iihan Bagoren | Beacon Falls, CT |
| Annemarie Lehmeier | Ursensollen, DE |
| Werner Olbrich | Amberg, DE |
| Wolfgang Schatz | Amberg, DE |
| Alanara Seppo | Oulu, FL |
| Ari Leman | Pertteli, FL |
| Arto Pussinen | Oulu, FL |
| Jaakko Vanttila | Oulu, FL |
| James L. Davis | Coral Springs, FL |
| Jari Olkkola | Salo, FL |
| Jorma Seppanen | Oulu, FL |
| Juha Vaihoja | Tupos, FL |
| Lasse Uronen | Salo, FL |
| Lonnie L. Bernardoni | Boca Raton, FL |
| Melanie Williams | Deerfield Beach, FL |
| Mikko Lietsalmi | Oulu, FL |
| Petri Hossi | Salo, FL |
| Raimo Kivari | Haukipudas, FL |
| Ruben Rivera | Sunrise, FL |
| Thomas J. Swirbel | Davie, FL |
| Timo Hirvonen | Salo, FL |
| Timo Kolehmainen | Oulu, FL |
| Timothy J. Dinwiddie | Plantation, FL |
| Veli-Matti Valimaa | Salo, FL |
| Brantley W. Coile | Athens, GA |
| Bret Harsham | Newton, MA |
| Carl G. Hayssen | Andover, MA |
| James Emken | Arlington, MA |
| Jefrey A. Kraemer | Northboro, MA |
| Jing Xiang | Westford, MA |
| Lalit Jain | Boston, MA |
| Peter J. Sulc | Pepperall, MA |
| Radia Joy Perlman | Acton, MA |

| Robert A. Ciampa | Andover, MA |
|---|---|
| Roger H. Levesque | Tewksbury, MA |
| William Nelson | Auburn, MA |
| David F. Wheeler | Silver Spring, MD |
| David Young | Silver Spring, MD |
| Dilip Gokhale | Gaithersburg, MD |
| Edward F. Balkovich | Potomac, MD |
| Michael J. Ahearn | Gorham, ME |
| Billy Gayle Moon | Apex, NC |
| Lester L White | Raleigh, NC |
| Peter A Fortman | Raleigh, NC |
| Darryl Black | Merrimack, NH |
| G. Paul Koning | Brookline, NH |
| Konstantinos Baryiames | Merrimack, NH |
| Arthur J. Moen | Clinton, NJ |
| Ashok K. Kuthyar | Holmdel, NJ |
| Bethany S. Robinson | Colts Neck, NJ |
| David L. Turock | Highland Park, NJ |
| David M. Pepe | Middletown, NJ |
| David S. Miller | Bedminster, NJ |
| Dawn D. Petr | Basking Ridge, NJ |
| Dwight O. Hakim | Matawan, NJ |
| Edward F. Balkovich | Freehold, NJ |
| Frederick Murray Burg | West Long Branch, NJ |
| Gerardo Ramirez | Bridgewater, NJ |
| Howard P. Katseff | Manalapan, NJ |
| James J. Brockman | Perrineville, NJ |
| Josefa Ramaroson | Freehold, NJ |
| Lisa B. Blitzer | Manalapan, NJ |
| Mark A. Jones | New Providence, NJ |
| Mark L. Meisel | Fair Lawn, NJ |
| Mon-Mei Chen | Marlboro, NJ |
| Ram S. Ramamurthy | Manalapan, NJ |
| Richard H. Janow | South Orange, NJ |
| Richard S. Wolff | West Caldwell, NJ |
| Robert E. Markowitz | Glen Rock, NJ |
| Robert F. | Mortensonchatham, NJ |
| Robert G. White | Morristown, NJ |
| Warren S. Gifford | Holmdel, NJ |
| William Cruz | Eatontown, NJ |
| Yang-Wei Wang | Howell, NJ |
| Alexander I. Poltorak | Monsey, NY |
| Jeoffrey Pooser | New York, NY |
| Michael Kramer | Bronx County, NY |
| T. V. Raman | Ithaca, NY |

McKool 983132v1

| Thomas Kredo | Rochester, NY |
| Todd Pooser | New York, NY |
| Bruce Goldhagen | Newtown Square, PA |
| Edwin M. Elrod | Downingtown, PA |
| Frederick C. Kruesi | Exton, PA |
| Gary P. Russell | King Of Prussia, PA |
| John Homan | Ephrata, PA |
| Bruce W. Stalcup | Springfield, VA |
| Christopher Johnson | Oakton, VA |
| Jerry M. Feinberg | Arlington, VA |
| Raymond F. Albers | Vienna, VA |

5.    The current addresses for the individuals listed below have been verified using public records. These individuals are each authors of items listed on the face of one or more of the patents-in-suit as prior art. According to the public records, each of these individuals currently resides outside of the United States. The city and country of each individual is:

| Jasjit S. Saini | Rosenwiller, FR |
| Pierre Troian | Hoenheim, FR |
| Henry C.A. Hyde-Thomson | London, En (GB) |
| Dermot M. Tynan | Galway, IE |
| Haru Ando | Tokyo, JP |
| Hikoyuki Nakajima | Yokohama-Shi, JP |
| Hiroshi Nakao | Shiki-Gun, JP |
| Hiroshi Takahashi | Kanagawa, JP |
| Hiroyuki Nagasawa | Shiki-Gun, JP |
| Hiroyuki Shigematsu | Yamatokoriyama, JP |
| Jung-Kook Hong | Tokyo, JP |
| Kazuo Iwano | Yokohama-Shi, JP |
| Kouichi Nagai | Yokosuka-Shi, JP |
| Kunihiko Isoda | Yokosuka-Shi, JP |
| Masaaki Kurata | Nabari-Shi, JP |
| Munenori Sakamoto | Yamatokoriyama, JP |
| Ryoji Fukuda | Kawasaki-Shi, JP |
| Shigeaki Tanimoto | Tokyo, JP |
| Shinji Misono | Tokyo, JP |
| Takashi Harada | Yamato-Shi, JP |
| Takashi Masui | Yokosuka-Shi, JP |
| Yasuhiro Nakajima | Yao-Shi, JP |
| Yoshinori Kitahara | Tokyo, JP |
| Yutaka Nakamura | Soraku-Gun, JP |

6.    The current addresses for the individuals listed below have been verified using public records. These individuals prosecuted the patents-in-suit. The city and state of each individual is:

| | |
|---|---|
| Jean-Pierre Fortin | Kanata, Ontario, Canada |
| Angela C. deWilton | Ottawa, Ontario, Canada |
| Tom Gigliotti | Raleigh, NC |
| J. Erik Fako | Research Triangle Park, NC |
| Eric Halber | Research Triangle Park, NC |
| Bernard Tiegerman | Richardson, TX |
| Brianna Hinojosa-Flores | Irving, TX |
| Jaspreet Harit | Nepean, Ontario, Canada |
| Kevin Sembrat | Califon, NJ |

7.    On April 22, 2014, I met and conferred with Google's counsel, Matthew Warren in furtherance of negotiating a case management statement for Google's declaratory judgment action in the NDCA. Mr. Warren indicated that Google was unwilling to include dates in the case management statement that would have required Google to produce the source code and hardware schematics for the accused products of the EDTX Defendants.

8.    Additionally, and as part of the April 22, 2014 meet and confer, Mr. Warren indicated that Google was unwilling to include dates in the case management statement that would have required Google to provide damages information related to the products accused of infringement in the EDTX.

9.    Exhibit 1 is a true and correct copy of the NDCA Docket sheet showing Google's filing of its Complaint for Declaratory Judgment against Rockstar on December 23, 2013.

10.    Exhibit 2 is a true and correct copy of an opinion in *Google Inc. v. Contentguard Holdings, Inc.*, 3:14-cv-00498, Dkt No. 42 (N.D. Cal. Apr. 15, 2014).

11.    Exhibit 3 is a true and correct copy of an article from OS News entitled, "Battle of the Androids:  Google Android vs. Samsung Android," dated February 1, 2013, located at

http://www.osnews.com/story/26751/Battle_of_the_Androids_Google_Android_vs_Samsung_A ndroid.

12.     Exhibit 4 is a true and correct copy of an article entitled, "The Android Source Code," and located at http://source.android.com/source/index.html.

13.     Exhibit 5 is a true and correct copy of an article from The Verge entitled, "Will Samsung own Android's future?" dated October 24, 2013, and located at http://www.theverge.com/2013/10/25/5028494/samsung-developer-conference-android-future.

14.     Exhibit 6 is a true and correct copy of an article from Phys.org entitled, "Many Android vulnerabilities can be traced to manufacturer modifications," dated November 5, 2013, located at http://phys.org/news/2013-11-android-vulnerabilities-modifications.html.

15.      Exhibit 7 is a true and correct copy of a letter from James J. Lukas, Jr., counsel for LG, to David Sochia, counsel for Plaintiffs, dated April 27, 2014, regarding "Android platform" code.

16.     Exhibit 8 is a true and correct copy of Plaintiffs' Infringement Contentions claim chart for U.S. Patent No. 5,838,551 regarding the Pantech Discover.

17.     Exhibit 9 is a true and correct copy of a page from Pantech's website at http://pantech.finetw.com/doc/faq.jsp .

18.     Exhibit 10 is a true and correct copy of *Adaptix, Inc. v. Pantech Wireless, Inc., et al.*, Case No. 6:11-cv-0078, Dkt #28 (E.D. Tex. February 14, 2014).

19.     Exhibit 11 is a true and correct copy of the EDTX Docket Sheet in *Adaptix, Inc. v. Pantech Wireless, Inc. et al.*, Case No. 6:13-cv-0078.

20.     Exhibit 12 is a true and correct copy of *Novelpoint Tracking, LLC v. Pantech Wireless, Inc.*, No. 2:12-cv-00782, Dkt #6 (E.D. Tex. February 19, 2013).

21.     Exhibit 13 is a true and correct copy of the EDTX Docket Sheet in *Novelpoint Tracking, LLC v. Pantech Wireless, Inc.*, 2:12-cv-00782.

22.     Exhibit 14 is a true and correct copy of screen shots showing the differences between each defendants' implementation of the Android platform shown by Rockstar's infringement contentions.

23.     Exhibit 15 is a true and correct copy of an email string between Matthew Warren, counsel for Google, and counsel for Rockstar dated April 22, 2014 regarding *Google v. Rockstar*, No. 13-cv-593 (N.D. California).

24.     Exhibit 16 is a true and correct copy of *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 3:13-cv-5933, Dkt #1 (N.D. California, December 23, 2013).

25.     Exhibit 17 is a true and correct copy of *Contenguard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-00061, Dkt #38 (E.D. Texas, April 16, 2014).

26.     Exhibit 18 is a true and correct copy of the LinkedIn web page of Mark Kim.

27.     Exhibit 19 is a true and correct copy of the LinkedIn web page of Susan Krouse.

28.     Exhibit 20 is a true and correct copy of an article from Intellectual Asset Management entitled, "Star man" dated July/August, 2013, and located at www.iam-magazine.com.

29.     Exhibit 21 is a true and correct copy of *Google Inc. v. Rockstar Consortium US LP, et al.,* No. 13:cv-05933, Dkt #21 (N.D. California, January 23, 2014).

30.     Exhibit 22 is a true and correct copy of *Google Inc. v. Rockstar Consortium US LP, et al.,* No. 13:cv-05933, Dkt #22 (N.D. California, January 23, 2014).

31.     Exhibit 23 is a true and correct copy of BlackBerry's contact information web page at http://us.blackberry.com/company/about-us/contact.html.

McKool 983132v1

32.     Exhibit 24 is a true and correct copy of Ericsson's company information web page at http://www.ericsson.com/thecompany/company_facts/worldwide/na/us.

33.     Exhibit 25 is a true and correct copy of the uspto.gov Press Release entitled, "U.S. Secretary of Commerce Penny Pritzker Names Michelle K. Lee as Next Deputy Director of the U.S. Patent and Trademark Office," dated December 11, 2013, and located at http://www.uspto.gov/news/pr/2013/13-39.jsp.

34.     Exhibit 26 is a true and correct copy The IP Media Group article entitled, "The Players," dated December 2011.

35.     Exhibit 27 is a true and correct copy of excerpts from the Evidentiary Hearing transcript in *Solid State Storage Solutions, Inc. v. STEC, Inc., et al.*, 2:11-CV-391-JRG-RSP, (E.D. Tex. Jan. 18, 2013).

36.     Exhibit 28 is a true and correct copy of the LinkedIn web page of Brad Bridges.

37.     Exhibit 29 is a true and correct copy of the LinkedIn web page of David Pluss.

38.     Exhibit 30 is a true and correct copy of the LinkedIn web page of Kelly Haltom.

39.     Exhibit 31 is a true and correct copy of the LinkedIn web page of Kevin Jeffries.

40.     Exhibit 32 is a true and correct copy of the LinkedIn web page of Mark Madre.

41.     Exhibit 33 is a true and correct copy of the LinkedIn web page of John Stephens.

42.     Exhibit 34 is a true and correct copy of the LinkedIn web page of Joe Tesson.

43.     Exhibit 35 is a true and correct copy of U.S. Patent No. 5,838,551.

I declare under the penalty of perjury under the laws of the State of Texas that the foregoing is true and correct, and that this Declaration was executed on April 25, 2014, at Austin, Texas.

*/s/ Joshua W. Budwin*_____
Joshua W. Budwin

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC,** | |
| **Plaintiffs,** | **Civil Action No. 2:13-cv-00900-JRG** |
| **vs.** | |
| **SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,** | **JURY TRIAL** |
| **Defendants.** | |

**ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC'S
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.      Introduction ..................................................................................................1

II.     PROCEDURAL HISTORY ..........................................................................2

III.    Legal Standard .............................................................................................2

IV.     Argument .....................................................................................................3

        A.      Plaintiffs Moved For Leave To Amend Promptly And
                Without Undue Delay. ........................................................................3

        B.      Plaintiffs Promptly Moved To Amend Based On Their
                Good-Faith Belief That Google Infringes The Newly-
                Asserted Patents. ................................................................................5

        C.      There Has Been No "Repeated" Failure To "Cure" By
                Previous Amendment—Plaintiffs Have Not Previously
                Moved For Leave To Amend. ..............................................................6

        D.      Plaintiffs' Amended Complaint Is Not Futile. ....................................6

        E.      Google Will Suffer No Undue Prejudice Due To Plaintiffs'
                Amendment. .......................................................................................7

                1.      No undue prejudice will result from granting
                        Plaintiffs leave to amend because this case is in its
                        infancy. ...................................................................................8

                2.      The addition of the newly-asserted patents will not
                        unduly expand the scope of discovery, and will
                        allow the parties to resolve all issues in a single
                        proceeding. ..............................................................................9

                3.      The Second Amended Complaint causes no
                        additional undertakings for Google that would not
                        also be necessary in a separately filed action or in
                        the Declaratory Judgment complaint Google
                        instigated against Plaintiffs; in addition, the
                        amendment fosters judicial economy. ....................................10

V.      Conclusion ..................................................................................................12

i

**– A1348 –**

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Neuromodulation Sys. v. Advanced Bionics Corp.*,
     4:04cv131, 2005 U.S. Dist. LEXIS 47693 (E.D. Tex. Jan. 28, 2005) ...................................4, 5

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) ..........................................................................................................7

*Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*,
     No. 10-502-LPS, 2012 U.S. Dist. LEXIS 104982 (D. Del. July 27, 2012) ............................11

*Dussouy v. Gulf Coast Inv. Corp.*,
     660 F.2d 594 (5th Cir. 1981) ...........................................................................................3

*Foman v. Davis*,
     371 U.S. 178 (1962) ...................................................................................................1, 3, 5

*Greatbatch Ltd. v. AVX Corp.*,
     C.A. No. 13-723-LPS, 2014 U.S. Dist. LEXIS 13473 (D. Del. Feb. 4, 2014) ............4, 6, 9, 10

*Larocca v. Larocca*,
     No. 13-4748, 2013 U.S. Dist. LEXIS 172738 (E.D. La. Dec. 9, 2013)...................................6

*Lowrey v. Tex. A & M Univ. Sys.*,
     117 F.3d 242 (5th Cir. 1997) ...........................................................................................7

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*,
     195 F.3d 765 (5th Cir. 1999) ...........................................................................................3

*Mata v. United States*,
     No. SA:13-CV-220-DAE, 2014 U.S. Dist. LEXIS 703 (W.D. Tex. Jan. 3, 2014)...................7

*Moore v. Dallas Indep. Sch. Dist.*,
     557 F. Supp. 2d 755 (N.D. Tex. 2008) ..............................................................................7

*MP Vista, Inc. v. Motiva Enters.*,
     10-0158-B, 2010 U.S. Dist. LEXIS 120828 (E.D. La. Oct. 20, 2010) ...................................8

*Murphy v. Suffolk Cnty. Cmty. College*,
     10-CV-0251, 2011 U.S. Dist. LEXIS 136983 (E.D.N.Y. Nov. 29, 2011) ..............................6

*Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*,
     992 F.2d 1398 (5th Cir. 1993) ......................................................................................4, 5

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
    620 F.3d 465 (5th Cir. 2010) ............................................................................7

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
    315 F.3d 533 (5th Cir. 2003) ............................................................................3

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) ............................................................................8

*Tendler Cellular of Texas, LLC v. Mercedes-Benz USA, LLC*,
    No. 6:11-cv-00178-LED-JDL, Dkt. 96 (E.D. Tex. Apr. 3, 2012) ...........................4

*TruePosition, Inc. v. Allen Telecom, Inc.*,
    No. 01-823 GMS, 2002 U.S. Dist. LEXIS 12848 (D. Del. July 16, 2002)..............10

*Visto Corp. v. Research in Motion LTD.*,
    2:07-cv-375, Dkt. 77, at *1 (E.D. Tex. Feb. 24, 2009)........................................8, 9

*Williams v. Global Payments Check Servs., Inc.*,
    No. 3:10-CV-698-L, 2011 U.S. Dist. LEXIS 34568 (N.D. Tex. Mar. 30, 2011) .....................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b) ...........................................................................................2, 7

Federal Rule of Civil Procedure 15(a) ...............................................................1, 3, 7

Federal Rule of Civil Procedure 16(b)................................................................3

Rule 15 .................................................................................................................2

Rule 15(a)(2) .......................................................................................................2

Rule 16 .................................................................................................................3

Rule 16(b)(4).......................................................................................................3

## I.    INTRODUCTION

Plaintiffs Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar") (collectively "Plaintiffs") respectfully seek leave to file a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a) to add four patents against Defendant Google, Inc.  This Second Amended Complaint does not add any new allegations against the Samsung Defendants.  Under Rule 15(a), and especially because no schedule has been issued, the Court should "freely give leave [to amend] when justice so requires."

The four patents that Plaintiffs seek leave to add through their proposed Second Amended Complaint each generally relate to the same technology area, are already being asserted in a declaratory judgment action filed by Google against Plaintiffs in the Northern District of California and are already being asserted in this case against Defendant Samsung. Further, under prevailing law, particularly the test articulated by the U.S. Supreme Court's in *Foman v. Davis*, 371 U.S. 178 (1962), Plaintiffs' proposed amendment should be permitted because:  (1) Plaintiffs make this motion based on a good-faith belief that Google's products infringe the five patents they seek leave to add; (2) Plaintiffs make this motion without undue delay, before a schedule has issued and before the beginning of fact discovery; (3) granting this motion will not prejudice Google because discovery has not yet begun and no schedule is in place, Google has already asserted declaratory judgment claims of infringement as to these patents against Plaintiffs in the Northern District of California and any analysis with respect to these patents would necessarily be duplicated if filed as a separate action or pursued in Google's declaratory judgment action; and (4) Plaintiffs' proposed amended complaint is based on additional counts of patent infringement and does not set out any futile claims.

Plaintiffs' proposed Second Amended Complaint is attached as Exhibit "A".

## II.    PROCEDURAL HISTORY

This case is in its infancy.  Plaintiffs filed their original complaint on October 31, 2013 to assert the '551, '937, '298, '973, '131, '591 and '572 patents (the "patents-in-suit") against the Samsung Defendants.  Dkt. 1.  On December 23, 2013, Google filed a declaratory judgment action in the Northern District of California against Plaintiffs alleging noninfringement of the patents-in-suit, including those that Plaintiffs seek leave to add here. Exhibit "B".  Upon receiving notice of Google's declaratory judgment action, Plaintiffs promptly began a Rule 11 investigation into Google's possible infringement of the patents-in-suit.  Shortly thereafter, on December 31, 2013, Plaintiffs amended their complaint as a matter of right to add Google as a party.  Dkt. 19.  In their First Amended Complaint, Plaintiffs asserted the '937, '591 and '131 patents against Google.  To date, neither Google nor Samsung have answered the First Amended Complaint.  Instead, in February of 2014, both parties moved to dismiss under Fed. R. Civ. P. 12(b).  Dkts. 26, 33.  Plaintiffs now seek to amend in order to assert the '551, '298, '973 and '572 patents (the "newly-asserted patents") against Google.  The newly-asserted patents are already being asserted in this action against the Samsung Defendants.

The Court has yet to rule on the pending motions to dismiss.  The scheduling conference has not yet been held.  No date has been set for trial.  No discovery has been conducted. Infringement contentions have not yet been served.  The parties have not yet filed their joint claim construction statement or proposed claim terms for construction.  No claim construction briefing, argument or rulings have taken place.

## III.    LEGAL STANDARD

Plaintiffs move for leave to file their Second Amended Complaint under Rule 15(a)(2). Because it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities," leave to amend under Rule

15 "shall be freely given when justice so requires." *Foman*, 371 U.S. at 182. Rule 15(a), thus, "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999).[1]

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182. "It is [also] appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182.

## IV.    ARGUMENT

### A.    Plaintiffs Moved For Leave To Amend Promptly And Without Undue Delay.

Plaintiffs bring the instant motion without undue delay and before the beginning of fact discovery, before the scheduling conference, before any schedule has been entered and before

---

[1] Because a scheduling order has not yet been entered in this case, Rule 15(a) rather than Rule 16 guides the analysis. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). Rockstar and MobileStar note that one Eastern District of Texas opinion provides that "[w]hen a party moves to amend after the deadline set by the scheduling order *or seeks to add a new patent*, the more stringent 'good cause' standard of Federal Rule of Civil Procedure 16(b) applies." *Blue Calypso, Inc.*, 6:12-cv-00486-MHS, Dkt. 86, at *2 (E.D. Tex. July 19, 2013) (emphasis added). However, Rockstar and MobileStar respectfully submit that under *S&W Enterprises* and Rule 16(b)(4), the more stringent "good cause" standard does not apply unless a schedule needs to be modified—which is not the case here. Nonetheless, and for the reasons stated herein, Rockstar and MobileStar also satisfy the Rule 16 "good cause" standard.

3

Google has answered the original complaint.  This Court routinely grants leave to amend in such circumstances.  *See, e.g.*, *Advanced Neuromodulation Sys. v. Advanced Bionics Corp.*, 4:04cv131, 2005 U.S. Dist. LEXIS 47693, at *7-9 (E.D. Tex. Jan. 28, 2005) (finding no undue delay where patentee sought to amend complaint to add two patents four months after previously amending complaint and prior to the beginning of fact discovery).

Even when the delay far surpasses that found here, this Court has concluded that the delay is not undue.  *See, e.g.*, *Tendler Cellular of Texas, LLC v. Mercedes-Benz USA, LLC*, No. 6:11-cv-00178-LED-JDL, Dkt. 96 (E.D. Tex. Apr. 3, 2012) (granting patentee leave to assert an additional patent a year after the original complaint was filed, after the Docket Control Order and Discovery Orders had been entered, and with the claim construction hearing only months away because "ample time" remained).  This conclusion has been echoed by courts around the country. *See, e.g.*, *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2014 U.S. Dist. LEXIS 13473, at *3 (D. Del. Feb. 4, 2014) (finding that motion for leave to amend to add five additional patents "was not unduly delayed" even though fact discovery had already begun because the request was made "at a relatively early stage of the case.").  Moreover, "delay in proposing amendment, even after extensive pretrial proceedings, is normally insufficient by itself to constitute prejudice to adverse party that would justify denial of leave to amend."  *Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1403 n.8 (5th Cir. 1993) (citation omitted).

This Court, in *Tendler*, granted a patentee's motion for leave to amend to assert additional patents, concluding that "ample time" remained for the defendant to develop its case with respect to the new patents after a schedule had been entered and even though the claim construction hearing was only a few months away.  *Tendler Cellular*, No. 6:11-cv-00178-LED-JDL, Dkt. 96, at *3.  But here the pretrial proceedings have barely begun:  (1) neither Google nor

Samsung has answered the complaint; (2) the Court has not ruled on the motions to dismiss; (3) there has been no Scheduling Conference and no schedule is in place; (4) no discovery has been conducted; (5) no infringement or invalidity contentions have been served; and (6) no claim construction briefing, argument or rulings have occurred.  Google, therefore, has *more* than "ample time to respond to allegations of infringement based on the [new] patent[s]." *Id.*  Under such circumstances, leave should be "freely given."  *Foman*, 371 U.S. at 182.

### B. Plaintiffs Promptly Moved To Amend Based On Their Good-Faith Belief That Google Infringes The Newly-Asserted Patents.

Plaintiffs filed this motion for leave to amend promptly after developing a good-faith belief that Google infringes the newly-asserted patents.  Only after Google filed its declaratory judgment complaint against Plaintiffs in the Northern District of California on December 23, 2013 did Plaintiffs begin investigating Google's infringement of the patents-in-suit.  Shortly thereafter, on December 31, 2013, having formed a good faith belief of Google's infringement of '937, '591  and '131 patents, Plaintiffs filed their First Amended Complaint to add Google as a Defendant accused of infringing the '937, '591  and '131 patents.  Between December 31, 2013 and today—a period of just longer than two months—Plaintiffs have been diligently investigating Google's infringement of the newly-asserted patents.  Now, having formed a good faith belief of Google's infringement, Plaintiffs promptly filed this motion for leave to amend. On similar facts, this Court has allowed a patentee to add patents against a defendant in an existing action in response to that defendant filing a declaratory judgment action on those patents in another district.  *Advanced Neuromodulation Sys.*, 2005 U.S. Dist. LEXIS 47693, at *4 (granting leave to amend and finding an absence of bad faith where patentee sought leave to add new patents after defendant filed for declaratory judgment in the Central District of California on the same patents the patentee sought leave to add in the Eastern District of Texas).

Moreover, the very early procedural stage in the case at which this motion for leave is brought further evidences that Plaintiffs seek leave to amend without a dilatory motive. In *Greatbatch*, the court concluded that there was no evidence of bad faith or dilatory motive because patentee sought to amend the complaint while "[t]here has been no *Markman* hearing, no expert disclosures, [and] no depositions . . . yet in this case." *Greatbatch*, 2014 U.S. Dist. LEXIS 13473, at *3 (internal quotation marks omitted). Similarly, in this case there has been no *Markman* hearing, no expert disclosures, no discovery and no depositions taken. These facts underscore the complete absence of bad faith or dilatory motive in Plaintiffs motion for leave.

### C.     There Has Been No "Repeated" Failure To "Cure" By Previous Amendment—Plaintiffs Have Not Previously Moved For Leave To Amend.

If the Plaintiffs have never before moved for leave to amend theircomplaint, it is axiomatic that there has been no "repeated" failure to cure by previous amendment. *See, e.g.*, *Larocca v. Larocca*, No. 13-4748, 2013 U.S. Dist. LEXIS 172738, at *8 (E.D. La. Dec. 9, 2013) ("This is Plaintiffs's first motion for leave to amend its complaint. There has not be been a 'repeated' failure of the Plaintiffs to amend or 'cure' alleged defects in its pleading, therefore, this factor weighs heavily in favor of granting the proposed amendments."); *Murphy v. Suffolk Cnty. Cmty. College*, 10-CV-0251, 2011 U.S. Dist. LEXIS 136983, at *12 (E.D.N.Y. Nov. 29, 2011) ("Plaintiff correctly notes that this is his first request to amend the complaint and that he has not repeatedly failed to cure pleading deficiencies. . . . This factor weighs in favor of granting leave to amend."). Plaintiffs have never previously sought leave from this Court to "cure deficiencies by amendments"—there has been no "repeated failure" to properly amend.

### D.     Plaintiffs' Amended Complaint Is Not Futile.

Plaintiffs have a strong basis for claiming that Google infringes the newly-asserted patents. Leave to amend may be denied for futility only if the proposed amended complaint

6

could not survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b). *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Frequently, a determination of whether a proposed amended complaint would be subject to dismissal would require "a detailed analysis of the proposed pleading" in relation to the causes of action asserted. *Moore v. Dallas Indep. Sch. Dist.*, 557 F. Supp. 2d 755, 759 (N.D. Tex. 2008). "To avoid this premature determination of the merits, the standard for denying an amendment based on futility is that '[i]f a proposed amendment is not <u>clearly</u> futile, then denial of leave to amend is improper.'" *Mata v. United States*, No. SA:13-CV-220-DAE, 2014 U.S. Dist. LEXIS 703, at *11 (W.D. Tex. Jan. 3, 2014) (citation omitted) (emphasis in original).

Plaintiffs' proposed amendment is far from futile.  As set forth fully in Plaintiffs' responses to Google and Samsung's respective motions to dismiss (Dkts. 40 and 41), the defendants Rule 12(b) motions to dismiss are without merit.  The First Amended Complaint pleads with far greater specificity than required by the U.S. Supreme Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that the Court "do[e]s not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  Likewise, Plaintiffs' Second Amended Complaint sets out a well-plead basis for relief that surpasses the pleading standards required by the U.S. Supreme Court and this District.

## E.    Google Will Suffer No Undue Prejudice Due To Plaintiffs' Amendment.

Google cannot articulate any credible grounds on which to argue that it will be unduly prejudiced by Plaintiffs' requested amendment.  "The touchstone of the inquiry under Rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint." *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997).  Generally courts do not find undue prejudice when there is an adequate opportunity to address the amended complaint and complete discovery when needed. *See e.g.,*

*Williams v. Global Payments Check Servs., Inc.*, No. 3:10-CV-698-L, 2011 U.S. Dist. LEXIS 34568, at *3 (N.D. Tex. Mar. 30, 2011); *MP Vista, Inc. v. Motiva Enters.*, 10-0158-B, 2010 U.S. Dist. LEXIS 120828, at *4 (E.D. La. Oct. 20, 2010). Contrarily, "[a] defendant is prejudiced if an added claim would require the defendant to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (citation omitted).

Google cannot plausibly assert that amending the Complaint at this stage would be unduly prejudicial given: (1) that discovery has not even begun; (2) the newly-asserted patents will not unduly expand the scope of discovery as Google is likely to produce the same or similar documents and source code for the already-asserted patents; (3) any additional undertakings relating to the newly-asserted patents would also need to be undertaken in a separately-filed action in this district if leave is denied; and, (4) in any event, Google has asserted non-infringement and invalidity counterclaims as to the newly-asserted patents in a declaratory judgment action filed by Google in the Northern District of California, meaning that Google has expressly instigated the litigation on these patents. In these circumstances, Google cannot legitimately claim prejudice

      **1.**      **No undue prejudice will result from granting Plaintiffs leave to amend because this case is in its infancy.**

Since this case is in its earliest procedural stages, amendment of the complaint will not deprive Google of the opportunity to present facts or evidence or otherwise prepare and present its case. Fact discovery has not yet begun and no schedule is in place. But even in cases in which fact discovery is well underway, this Court has concluded that no prejudice would result to defendants by adding additional patents, where sufficient time for discovery remained. *Visto Corp. v. Research in Motion LTD.*, 2:07-cv-375, Dkt. 77, at *1 (E.D. Tex. Feb. 24, 2009)

(finding that "defendants will suffer no prejudice as a result of the plaintiff's [second] amended complaint" because "discovery deadline and jury selection are both over one year away."); *Tendler Cellular,* No. 6:11-cv-00178-LED-JDL, Dkt. 96, at *2-3 (rejecting defendants argument that undue prejudice would result from adding additional patent when fact discovery had already begun); *see also Greatbatch*, 2014 U.S. Dist. LEXIS 13473, at *4 (granting leave for patentee to amend complaint to add five new patents and finding no undue prejudice even though discovery had begun months earlier).

Because this case is in its very early stages and Google has not even answered the First Amended Complaint, there will be no prejudice to Google by the Court's granting Plaintiffs leave to file a Second Amended Complaint. Unlike the defendants in *Visto* and *Tendler*, Google will have the entirety of the discovery period to develop any applicable theories of noninfringement or invalidity. *Visto*, 2:07-cv-375, Dkt. 77, at *1; *Tendler Cellular,* No. 6:11-cv-00178-LED-JDL, Dkt. 96, at *2-3. Google, thus, will suffer no prejudice. *Greatbatch*, 2014 U.S. Dist. LEXIS 13473, at *4. To borrow from the *Tendler* Court, "there is ample time to adequately respond to allegations of infringement based on the [new] patent[s]."

> **2.** **The addition of the newly-asserted patents will not unduly expand the scope of discovery, and will allow the parties to resolve all issues in a single proceeding.**

The amendment will not cause duplication of work or effort. Because the present case is in its very early procedural stages, Google will be able to fully develop its defenses related to the newly-asserted patents in parallel with its case against the patents already asserted. Further, the addition of the newly-asserted patents against Google will not unduly expand the scope of discovery, as they relate to similar technology and there is significant overlap between the products accused of infringing the patents already in-suit and the newly-asserted patents. *See Visto*, 2:07-cv-375, Dkt. 77, at *1 (finding no undue prejudice where "the patents sought to be

9

included in the complaint have similar subject matter as the currently asserted patents."). The newly-asserted patents, like the patents originally asserted against Google, all relate to mobile communication technology. *See* Dkt. 19 and Ex. "A". "Since the patents which [Plaintiffs seek] to add are substantially similar to the patents contained in the original complaint, it would be economically beneficial to the parties to resolve all the issues in a single proceeding." *TruePosition, Inc. v. Allen Telecom, Inc.,* No. 01-823 GMS, 2002 U.S. Dist. LEXIS 12848, at *6 (D. Del. July 16, 2002).

>        **3.    The Second Amended Complaint causes no additional undertakings for Google that would not also be necessary in a separately filed action or in the Declaratory Judgment complaint Google instigated against Plaintiffs; in addition, the amendment fosters judicial economy.**

Because Plaintiffs will be forced to initiate a new action in this district to allege infringement of the newly-asserted patents if the instant motion is not granted, or to litigate the very same issues in the Declaratory Judgment complaint filed by Google in the Northern District of California, there is no undue prejudice to Google in including those same patents in the case at bar. By filing its Declaratory Judgment complaint, Google has already expressly bargained for litigation with Plaintiffs on the newly-asserted patents.

The inclusion of the newly-asserted patents in this action will not cause Google to undertake any work that would not be necessary in a separately-filed action asserting those same patents in this district or in the Declaratory Judgment complaint filed by Google in the Northern District of California. In *Greatbatch*, the court rejected the defendants' argument they would be unduly prejudiced by the patentee's request to add new patents that would lead to new document requests. *Greatbatch*, 2014 U.S. Dist. LEXIS 13473, at *4 n.1. The court reasoned that "[i]t is difficult to understand how these additional efforts would not be just as necessary were [Plaintiffs] required to institute a new lawsuit." *Id.* The cost that Google will incur in analyzing

10

the validity and noninfringement of the newly-asserted patents cannot be additional because that cost would be incurred in a separate lawsuit in this district and Google has already bargained for the incurrence of any such cost when it filed its Declaratory Judgment complaint against Plaintiffs in the Northern District of California.  Because the newly-asserted patents will cause no additional work for Google beyond the work it has already bargained for or would incur in a new action, the inclusion of the newly-asserted patents causes no undue prejudice to Google.

In addition, the inclusion of the newly-asserted patents in this action will foster judicial economy.  In *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, No. 10-502-LPS, 2012 U.S. Dist. LEXIS 104982, *18 (D. Del. July 27, 2012), the court granted the patentee leave to assert two additional patents even though "the parties have engaged in substantial discovery" and a *Markman* hearing had already been held.  The court reasoned that if it "were to deny leave to amend, the likely result would be that Plaintiff would assert the claims it attempts to add to this lawsuit in a new lawsuit against Defendants—which will require completely new discovery, another *Markman* hearing, and a separate trial—likely resulting in even higher increased costs for Defendants and further delay in resolution of the parties' disputes.  In these circumstances, the Court does not find undue prejudice." *Id.* at *18-19.

The reasoning of the *Cloud* court is equally applicable here:  if Plaintiffs are forced to pursue the newly-asserted patents in another action in this district or to pursue those patents in Google's Declaratory Judgment action in the Northern District of California, it will "likely result[] in even higher increased costs for [Google and Plaintiffs] and further delay in resolution of the parties' disputes." *Id.*  Thus, Plaintiffs' Second Amended Complaint is the more efficient course of action for the parties and the Court. Under these circumstances, no cognizable prejudice will result to Google from granting Plaintiffs leave to add the newly-asserted patents.

McKool 969264v4

V.     **CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion and permit them leave to

file their Second Amended Complaint, which is attached as Exhibit "A".

Dated: March 10, 2014.                    **McKool Smith, P.C.**

                                          */s/ Theodore Stevenson, III*
                                          Mike McKool
                                          Texas State Bar No. 13732100
                                          mmckool@McKoolSmith.com
                                          Douglas A. Cawley
                                          Texas State Bar No. 04035500
                                          dcawley@McKoolSmith.com
                                          Theodore Stevenson, III
                                          Texas State Bar No. 19196650
                                          tstevenson@mckoolsmith.com
                                          David Sochia
                                          Texas State Bar No. 00797470
                                          dsochia@McKoolSmith.com
                                          **McKool Smith, P.C.**
                                          300 Crescent Court Suite 1500
                                          Dallas, TX 75201
                                          Telephone: (214) 978-4000
                                          Telecopier: (214) 978-4044

                                          Joshua W. Budwin
                                          Texas State Bar No. 24050347
                                          jbudwin@mckoolsmith.com
                                          **McKool Smith, P.C.**
                                          300 W. 6th Street, Suite 1700
                                          Austin, TX 78701
                                          Telephone: (512) 692-8700
                                          Telecopier: (512) 692-8744

                                          **ATTORNEYS FOR PLAINTIFFS
                                          ROCKSTAR CONSORTIUM US LP and
                                          MOBILESTAR TECHNOLOGIES LLC**

McKool 969264v4

**– A1363 –**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on March 10, 2014.

*/s/ Josh Budwin*
Joshua W. Budwin

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties' counsel met and conferred regarding the relief sought in this Motion on March 6, 2014.  Counsel for Google, Inc. indicated that Google, Inc. is opposed to the relief requested in this Motion.  Counsel for Google, Inc. indicated that it was opposed because "Rockstar was aware of the facts giving rise to its proposed amended complaint when it filed its first complaint against Google.  Under these circumstances, Rockstar should not later amend to add these allegations.  In addition, Rockstar should have brought these claims in the Northern District of California, where these patents are already at issue between Google and Rockstar."

*/s/ Josh Budwin*
Joshua W. Budwin

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC., | § § § § § | |
| Defendants. | § § | |

## <u>GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction ...........................................................................................................................1

Background ...........................................................................................................................1

    A.     Google Sells Its Own Brand of Android Devices, Called "Nexus" ........................1

    B.     Rockstar Sues Google's Customers in this Court—But Not Google ......................2

    C.     Google Files First Against Rockstar ........................................................................2

    D.     Rockstar Seeks Leave to File a Second Amended Complaint .................................3

ARGUMENT ........................................................................................................................3

I.     The Court Should Deny Rockstar Leave to File a Second Amended Complaint ...............3

    A.     Rockstar Knew the Facts Underlying its Proposed Second Amended
          Complaint at Least as Early as its Filing of the Original Complaint ......................4

    B.     Rockstar Unduly Delayed in Seeking to Amend Its Complaint .............................6

    C.     Google Would Be Prejudiced By Rockstar's Proposed Amendment ......................7

Conclusion ...........................................................................................................................8

# TABLE OF AUTHORITIES

**Page**

## Cases

*Advanced Neuromodulation Sys. v. Advanced Bionics Corp.*,
   2005 U.S. Dist. LEXIS 47693 (E.D. Tex. Jan. 28, 2005) .......................................................5

*Agar Corp., Inc. v. Multi-Fluids Inc.*,
   No. 95-5105, 1998 WL 425474 (S.D. Tex. Apr. 17, 1998),
   *aff'd sub nom. Agar Corp., Inc. v. Multi-Fluid, Inc.*,
   215 F.3d 1340 (Fed. Cir. 1999).............................................................................................4, 5

*Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*,
   690 F.2d 1157 (5th Cir. 1982) ...................................................................................................6

*Enzo APA & Son, Inc. v. Geapag A.G.*,
   134 F.3d 1090 (Fed. Cir. 1998)..................................................................................................7

*Foman v. Davis*,
   371 U.S. 178 (1962).....................................................................................................................3

*Google Inc. v. Rockstar Consortium US LP*,
   No. 13-5833 (N.D. Cal.) ..............................................................................................................2

*Jones v. Robinson Prop. Grp. L.P.*,
   427 F.3d 987 (5th Cir. 2005) ......................................................................................................6

*Layfield v. Bill Heard Chevrolet Co.*,
   607 F.2d 1097 (5th Cir. 1979) .................................................................................................3, 6

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*,
   620 F.3d 465 (5th Cir. 2010) ......................................................................................................7

*Matter of Southmark Corp.*,
   88 F.3d 311 (5th Cir. 1996) .....................................................................................................4, 6

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
   336 F.3d 375 (5th Cir. 2003) ...................................................................................................3, 4

*Wimm v. Jack Eckerd Corp.*,
   3 F.3d 137 (5th Cir. 1993) ...........................................................................................................4

## Statutes

Fed. R. Civ. P. 15(a)(2)....................................................................................................................3

## INTRODUCTION

Rockstar could have sued Google on October 31, 2013, when it brought this and six other actions.  Rockstar made a choice:  it decided to sue only Google's customers, Android device makers, as the defendants to Rockstar's original claims in this Court.  Google responded by suing Rockstar in the Northern District of California, the court closest to its headquarters, making Google's suit in California the first-filed action between Rockstar and Google.  In response, on December 31, Rockstar amended its complaint in this action to allege that Google infringed three patents.  Much later, on March 10, 2014, Rockstar sought leave to file a second amended complaint, adding allegations of infringement of the remaining four patents.  But Rockstar's motion has a fatal flaw:  Rockstar could have sued Google when it filed its original Halloween complaints.  It simply chose not to do so, which cannot suffice to justify its delay.  In addition, any amendment would be futile, as Google's first-filed action must take priority over Rockstar's later-filed complaint.  The Court should deny Rockstar's motion in its entirety.

## BACKGROUND

### A.      Google Sells Its Own Brand of Android Devices, Called "Nexus"

"Google Nexus" is a line of Android devices designed, developed, marketed, and sold by Google Inc. ("Google").  (Declaration of Kristin J. Madigan in Support of Google's Opposition ("Madigan Decl.") Ex. 1.)  Google sold its first Nexus devices in 2010.  (*Id*. Ex. 2.)  Google's Nexus devices are branded with Google's "Nexus" logo, display a Google logo while booting up, and feature many other references to Google and its services.  (*Id*. Ex. 3.)  Google features the Nexus devices on its website, from which consumers can purchase these devices directly from Google.  (*Id*. Exs. 4-6.)

1

### B.    Rockstar Sues Google's Customers in this Court—But Not Google

On Halloween 2013, Rockstar filed this action and six others accusing Google's customers of infringement by "making, using, selling and offering to sell . . . certain mobile communication devices having a version (or an adaption thereof) of Android operating system" developed by Google.  (Docket No. 1 ¶ 16.)  The defendants included ASUS, HTC, LG and Samsung, all makers of various Nexus devices.[1]  (Madigan Decl. Ex. 1.)  In its Halloween complaint against ASUS, Rockstar expressly accused the Nexus 7, one of Google's Nexus products developed by Google and sold on Google's website.  (*ASUSTek*, No. 13-894, Docket No. 1 ¶ 15.)  Although Google is well-known as the author of Android, and sells Nexus devices including the Nexus 7 directly to consumers, Rockstar chose not to sue Google itself.  (*Id.* ¶ 16.)

### C.    Google Files First Against Rockstar

On December 23, 2013, Google filed a declaratory action in the Northern District of California, seeking a judgment that Android does not infringe all seven of the patents Rockstar asserted against Google's customers.  *Google Inc. v. Rockstar Consortium US LP*, No. 13-5833 (N.D. Cal.), Docket No. 1; the "Google Action."

Eight days later, on December 31, 2013, Rockstar amended its complaint in this action to accuse Google of infringing three of the seven patents.  (Docket No. 19 ("First Am. Compl.") ¶ 27.)  Rockstar's First Amended Complaint accuses Google of infringement by "making, using, selling and offering to sell . . . certain mobile communications devices having a version (or an adaptation thereof) of Android operating system, including Google's Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus Devices."  (*Id.*)  Although Rockstar accused Google of infringing by

---

[1]    *Rockstar v. ASUSTek*, No. 13-894 (E.D. Tex.), Docket No 1; *Rockstar v. HTC*, No. 13-895 (E.D. Tex.), Docket No. 1; *Rockstar v. Huawei*, No. 13-896 (E.D. Tex.), Docket No. 1; *Rockstar v. LG*, No. 13-898 (E.D. Tex.), Docket No. 1; *Rockstar v. Pantech*, No. 13-899, (E.D. Tex.), Docket No. 1; *Rockstar v. ZTE*, No. 13-901 (E.D. Tex.), Docket No. 1.

selling the Nexus 7, it still failed to assert against Google the other patents it accused ASUS of infringing by selling the same product.  (*ASUSTek*, No. 13-894, Docket No. 1 ¶ 15.)

### D.    Rockstar Seeks Leave to File a Second Amended Complaint

Over four months after filing its original complaint, on March 10, 2014, Rockstar sought leave to add allegations that Google infringed the final four patents.  (Docket No. 45.)  During that four-month delay, Rockstar filed a motion to dismiss Google's California complaint. (Google Action, Docket No. 20.)  There, Rockstar repeatedly argued that its Halloween complaints were first filed, even against Google, even though it sued Google only after Google filed the Google action.  (*Id.* at 1-2, 5, 17-18, 21.)  The Google Action in California remains the first-filed action between Rockstar and Google, and the only action between them to include all patents-in-suit.

<u>**ARGUMENT**</u>

### I.    The Court Should Deny Rockstar Leave to File a Second Amended Complaint

Rockstar amended its Complaint once as a matter of course under Rule 15(a)(1).  (Docket No. 19.)  Its motion for leave to file a Second Amended Complaint is governed by Fed. R. Civ. P. 15(a)(2), which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "Under Rule 15(a) leave to amend shall be freely given when justice so requires and should be granted absent some justification for refusal."  *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).  "However, leave to amend is by no means automatic."  *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979).  The Court has discretion to deny a motion for leave, and should consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of

allowance of the amendment" *Willard*, 336 F.3d at 386.  Specifically, the Court should consider: "(1) an unexplained delay following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996)  In *Southmark*, the Fifth Circuit affirmed denial of a motion for leave to amend two months after the complaint was answered, and before any dispositive motions were filed. *Id.* at 315.  The court found the plaintiff "sought leave to add both a fact of which it had been aware since before it filed its original complaint and a cause of action based on the identical, known facts that underlie its original complaint," and offered "no reasonable explanation for its delay." *Id.* at 316.  The court further noted that "allowing [the plaintiff] to amend its complaint would not further the purpose of Rule 15, but to the contrary would serve only to reward [the plaintiff] for its unreasonable delay." *Id.*

### A.    Rockstar Knew the Facts Underlying its Proposed Second Amended Complaint at Least as Early as its Filing of the Original Complaint

This Court can and should deny Rockstar's motion for a simple but sufficient reason: Rockstar could have brought these claims when it filed the Halloween complaints.  Absent special circumstances, a party's awareness of facts and failure to include them in the complaint warrants denial of leave to amend. *See, e.g.*, *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993).  "Bad faith and dilatory motive may be inferred when the plaintiff or defendant was aware of the underlying facts at the outset of the action but delayed inexplicably in bringing the claim or defense, making amendment improper even if leave to amend was sought in advance of the deadline for amending the pleadings." *Agar Corp., Inc. v. Multi-Fluids Inc.*, No. 95-5105, 1998 WL 425474, at *3 (S.D. Tex. Apr. 17, 1998), *aff'd sub nom. Agar Corp., Inc. v. Multi-Fluid, Inc.*, 215 F.3d 1340 (Fed. Cir. 1999).  In *Agar Corp.*, the court denied leave to amend an answer to add counterclaims because "many of the proposed counterclaims are based on

previously asserted affirmative defenses" and the "defendants give no viable explanation, however, for failing to raise these counterclaims at an earlier date." *Id*., at *3-4.

Rockstar argues that it "filed this motion for leave to amend promptly after developing a good-faith belief that Google infringes the newly-asserted patents." (Motion at 5.)  Specifically:

> Only after Google filed its declaratory judgment complaint against Plaintiffs in the Northern District of California on December 23, 2013, did plaintiffs begin investigating Google's infringement of the patents-in-suit.  Shortly thereafter, on December 31, 2013, having formed a good-faith belief of Google's infringement of '937, '591, and '131 patents, Plaintiffs filed their First Amended Complaint to add Google as a Defendant accused of infringing the '937, '591, and '131 patents.  Between December 31, 2013 and today—a period of just longer than two months—Plaintiffs have been diligently investigating Google's infringement of the newly-asserted patents.

(*Id*.)  Rockstar's position makes no sense.  It alleges, without any evidentiary support, that it took only eight days to develop a good-faith belief that Google allegedly infringes the '937, '591, and '131 patents, but took more than eight weeks to develop the same belief regarding the '551, '298, '973 and '572 patents.  And Rockstar's assertion cannot square with the fact that it sued ASUS on Halloween asserting infringement by the Nexus 7, and yet now claims that it needed all that time to determine whether Google infringes the same patents by selling the same product.

Rockstar points to *Advanced Neuromodulation Sys. v. Advanced Bionics Corp*., 2005 U.S. Dist. LEXIS 47693 (E.D. Tex. Jan. 28, 2005), where a District court granted leave to amend to add new patents, suggesting that *Advanced Neuromodulation* was decided on "similar facts." (Motion at 5.)  Not so.  In *Advanced Neuromodulation*, the court did not consider whether the facts were known to the plaintiff before it sought to amend, let alone when it filed its original complaint.  There is no question that the patents Rockstar now seeks to assert against Google are not "new" to this action.  By its own allegations, these same patents were at issue at the time of Rockstar's original complaint—including against the Nexus 7, developed and sold by Google.  Rockstar simply failed to assert them against Google.

5

### B.    Rockstar Unduly Delayed in Seeking to Amend Its Complaint

When there is delay, the party seeking amendment "bears the burden of showing that a delay was due to oversight, inadvertence, or excusable neglect." *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (applying Rule 15(a)).  The Court first considers the length of the delay.  "Mere passage of time need not result in a denial of leave to amend, but delay becomes fatal at some period of time." *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982).  "That many cases in which a denial of leave to amend a complaint has been affirmed involved proposed amendments closer to the eve of trial does not preclude a district court from properly exercising its discretion to deny leave to amend under particular facts like those present in the instant case." *Southmark*, 88 F.3d at 316 (where the plaintiff "sought leave to add both a fact of which it had been aware since before it filed its original complaint and a cause of action based on the identical, known facts that underlie its original complaint").  Thus an *unexplained* delay, even if short, is enough to warrant denial of leave.  *Id.* at 315-16.

Although Rockstar makes much of the early stage of this action, it cannot meet its burden of showing oversight, inadvertence, or excusable neglect by simply stating that insufficient time has passed.  (Motion at 4-5, 6.)  Were it otherwise, Rockstar would receive the "automatic" leave to amend the Federal Circuit has long rejected.  *Layfield*, 607 F.2d at 1099.  Nor does an arbitrary threshold of elapsed time constitute the appropriate legal test for questions of prejudice, as Rockstar argues.  (Motion at 4.)  Instead, delay is undue and prejudicial where, as here, a plaintiff offers "no reasonable explanation for its delay." *Southmark*, 88 F.3d at 316.  In addition, although Halloween was only five months ago, key motion practice has ensued since Rockstar's original complaints:  Rockstar filed a motion to dismiss the Google Action, relying primarily on its claimed 'first-filed' status, and that motion was fully briefed and submitted to

Chief Judge Wilken (Google Action, Docket Nos. 20, 30-3, 39-3 44); the defendants here have moved to dismiss Rockstar's various complaints,[2] and each of those motions has been fully briefed in light of Rockstar's original and First Amended complaints;[3] and the defendants here have moved to stay or transfer the actions in this District to the Northern District of California. Because Rockstar provides no viable explanation for its delay, it cannot meet its burden.

### C.     Google Would Be Prejudiced By Rockstar's Proposed Amendment

Again Rockstar argues that the early stage of the case must resolve the question of prejudice.  Again Rockstar is wrong.  Google would be highly prejudiced in the Google Action, the first filed suit between these parties, if Rockstar can now allege it has obtained first-filed status on all patents, even those for which it claims it had no basis to sue when it filed its First Amended Complaint.  Rockstar argues that "any additional undertakings relating to the newly-asserted patents would also need to be undertaken in a separately-filed action in this district if leave is denied."  (Motion at 8.)  But that is exactly the point:  Google has filed a pending action, regarding *all of the patents* here, in the Northern District of California, in order to avoid duplicative and piecemeal adjudication of Google's claims against Rockstar.  Rockstar's belated

---

[2]   Rockstar's motion should also be denied on the basis of futility.  A trial court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss."  *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners*, L.P., 620 F.3d 465, 468 (5th Cir. 2010).  As set forth in Samsung's pending motion to dismiss (Docket No. 26), which Google joins (Docket No. 39-1), MobileStar lacked standing at the time of the original complaint.  The Federal Circuit has repeatedly held that standing must exist at the time of the original complaint and cannot be cured retroactively.  *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998).)  Because Rockstar's proposed amendment does not—and cannot—address this fatal deficiency, its motion should be denied.

[3]   *Rockstar v. ASUSTek*, No. 13-894 (E.D. Tex.) Docket Nos. 15, 21, 30, and 39; *Rockstar v. HTC*, No. 13-895 (E.D. Tex.), Docket Nos. 20, 22, 31, and 33; *Rockstar v. LG*, No. 13-898 (E.D. Tex.), Docket Nos. 24, 27, 31, and 33; *Rockstar v. Pantech*, No. 13-899, (E.D. Tex.), Docket Nos. 15, 19, 23, and 25; *Rockstar v. ZTE*, No. 13-901 (E.D. Tex.), Docket Nos. 23, 34, 41, and 43).

infringement allegations against Google can and should be added as counterclaims in Rockstar's answer to the first-filed Google Action.[4]

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Rockstar's motion for leave to file a second amended complaint.

Dated:  March 28, 2014           Respectfully submitted,

                                 /s/ *J. Mark Mann*
                                 J. Mark Mann (State Bar No. 12926150)
                                 mark@themannfirm.com
                                 G. Blake Thompson (State Bar No. 24042033)
                                 blake@themannfirm.com
                                 MANN | TINDEL | THOMPSON
                                 300 West Main Street
                                 Henderson, Texas  75652
                                 (903) 657-8540
                                 (903) 657-6003 facsimile

                                 Charles K. Verhoeven (Cal. Bar. No. 170151)
                                 Sean Pak (Cal. Bar No. 219032)
                                 Amy H. Candido (Cal. Bar No. 237829)
                                 Matthew S. Warren (Cal. Bar No. 230565)
                                 quinn-google-e.d.tex.-13-00900@quinnemanuel.com
                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                 50 California Street, 22nd Floor
                                 San Francisco, California  94111
                                 (415) 875-6600
                                 (415) 875-6700 facsimile

                                 *Attorneys for Defendant Google Inc.*

---

[4]   Rockstar misleads the Court regarding the status of the Google Action.  Google has not asserted "counterclaims as to the newly-asserted patents" in that action.  (Motion at 8.)  Google could not have counterclaimed had it wanted to do, because Google filed its action *first*, before Rockstar sued Google.  (Google Action, Docket No. 1.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record have consented to electronic service and are

being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-

5(a)(3) on March 28, 2014.

<div align="right">

/s/ *J. Mark Mann*
J. Mark Mann

</div>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | |
| Plaintiffs, | Civil Action No. 2:13-cv-00900-JRG |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | JURY TRIAL |
| Defendants. | |

**ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC'S REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A SECOND <u>AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I.    Introduction.................................................................................................................1

II.   Argument ....................................................................................................................2

      A.    Plaintiffs Promptly Sought Leave to Amend Their
            Complaint After Forming a Good-Faith Belief that Google
            Infringed The Four Additional Patents. ...................................................2

      B.    Plaintiffs' Proposed Amendment Is Not Prejudicial................................4

III.  Conclusion ..................................................................................................................5

**– A1378 –**

I.    **INTRODUCTION**[1]

Google failed to identify any legitimate prejudice. This case is in its infancy: no scheduling order has been entered, no discovery has taken place, and the scheduling conference was just held on April 7, 2014—after the filing of Plaintiffs Motion for Leave to File a Second Amended Complaint ("Motion"). Plaintiffs' Motion seeks to add infringement claims regarding four additional patents *identified as relevant by Google* in the declaratory judgment action it filed against Plaintiffs in California. These same patents are being asserted by Plaintiffs against Samsung in this case and the other defendants in the consolidated cases. Having instigated the adversity between the parties itself, Google's claim of prejudice rings hollow.

Google has also failed to identify any undue delay on Plaintiffs' part. As explained in Plaintiffs' Motion, the purported "delay" between the December 31, 2013 filing of Plaintiffs' first amended complaint (which added Google as a defendant accused of infringing three patents) and the March 10, 2014 filing of the instant Motion (to add four additional patents) was necessary to conduct a Rule 11 investigation as to Google's infringement of the four additional patents. Rather than intervene in this case to protect the purported interest of its so-called "customers," Google instead chose to file a declaratory judgment suit in California on the *very same* patents Plaintiffs seek leave to add here. After Google filed its suit in California, Plaintiffs promptly began investigating Google's infringement. Plaintiffs initially confirmed Google's infringement of three patents, and added those to its first amended complaint. Thereafter, Plaintiffs continued to investigate Google's infringement of the other four patents, and after confirming Google's infringement, Plaintiffs promptly filed the instant Motion.

---

[1] Google limits its argument in opposition to undue delay and prejudice. *See generally* Response; *see also Foman v. Davis*, 371 U.S. 178 (1962). Therefore, in an attempt to join issue, Plaintiffs limit their instant discussion to the undue delay and prejudice factors; however, Plaintiffs still maintain, as in their Motion, that none of the other factors relevant to motions for leave to amend are satisfied here.

1

## II.    ARGUMENT

### A.    Plaintiffs Promptly Sought Leave to Amend Their Complaint After Forming a Good-Faith Belief that Google Infringed The Four Additional Patents.

In its attempt to establish that Plaintiffs' Motion was unduly delayed, Google relies heavily on *Matter of Southmark*, in which the Fifth Circuit affirmed the denial of a plaintiff's motion for leave to amend its complaint. *Matter of Southmark Corp.*, 88 F.3d 311 (5th Cir. 1996). *Southmark* has no relationship whatsoever to the facts presented here. In *Southmark*, the plaintiff did not file its motion for leave to amend until "(1) thirty-eight months after the transfer at issue was made; (2) twenty-four months after the Examiner's Report was filed, describing the details and legal implications of this transfer; (3) thirteen months after the original complaint was filed; and (4) eleven months after the first amended complaint was filed." *Id.* at 316. Moreover, the plaintiff offered no justification for its delay in amending its complaint. *Id.*

Unlike *Southmark*, Plaintiffs have promptly moved for leave and explained that their investigation of Google's infringement of the '551, '298, '973, and '572 patents ("the additional patents") did not begin until after Google filed its declaratory judgment suit against Plaintiffs in the Northern District of California on December 23, 2013. Motion at 5; *see also Google Inc. v. Rockstar Consortium US LP*, NO. 13-5833 (N.D. Cal.) (Dkt. No. 1 at 20–24) ("Declaratory Judgment Action"). From that time until Plaintiffs filed their Motion—a period of less than three months—Plaintiffs diligently investigated Google's infringement of the additional patents. Motion at 5. Given the early stage of this case, the nature of the additional patents, the need for reverse engineering, and the need for conducting an analysis of source code, less than three months was a reasonable amount of time to investigate Google's infringement. *Id. See e.g.,* Exs. 1–4 (infringement contention claim charts for the additional patents, showing reverse engineering for the '551 patent and source code for the '298, '973, and '572 patents).

2

In contrast to Plaintiffs' evidence of good faith, Google has failed to present this court with any credible evidence that Plaintiffs' less than three month "delay" in seeking leave to assert the additional patents was in bad faith or because of some dilatory motive. *See, e.g.*, *Larocca v. Larocca*, No. 13-4748, 2013 U.S. Dist. LEXIS 172738, at *7 (E.D. La. Dec. 9, 2013) ("At the time of Plaintiff's filing of the instant motion, no scheduling order has been issued in this matter, therefore no deadlines have been set. As such, Plaintiff's motion is timely filed. Because no deadlines are set, there is not likely any undue delay or bad faith on Plaintiff's part in filing her amended complaint."). To the contrary, Plaintiffs' conduct is the essence of good-faith: promptly investigating Google's infringement upon the filing of Google's Declaratory Judgment Action. Under circumstances such as these, courts around the country, including this Court, have repeatedly and "freely" granted leave to amend. *See* FED. R. CIV. P. 15(a).

Furthermore, the purported "delay" was less than three months after Google instigated the adversity between the parties by filing its Declaratory Judgment Action, and Plaintiffs' Motion was filed before the Court had issued a scheduling order, before any discovery has taken place, and before Google has even answered the original complaint. Such "delay" is indisputably not in bad faith or dilatory in nature. *See, e.g.*, *Tendler Cellular of Texas, LLC v. Mercedes-Benz USA, LLC*, No. 6:11-cv-00178-LED-JDL, Dkt. 96 (E.D. Tex. Apr. 3, 2012) (granting patentee leave to assert an additional patent a year after the original complaint was filed, after the Docket Control Order and Discovery Orders had been entered, and with the claim construction hearing only months away because "ample time" remained); *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2014 U.S. Dist. LEXIS 13473, at *4 (D. Del. Feb. 4, 2014) (finding motion for leave to amend to add five additional patents "was not unduly delayed" even though fact discovery had already begun because the request was made "at a relatively early stage of the case.").

3

Google suggests that Plaintiffs' could have—and should have—developed their Rule 11 basis of Google's infringement of the additional patents by virtue of Plaintiffs' assertion of those patents against ASUS. Response at 4–5. Yet, it is axiomatic that before asserting a claim of patent infringement, a plaintiff must "at a bare minimum, apply the claims . . . to an accused device and conclude that there is a reasonable basis for a finding of infringement. . . . Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Meeting this standard required Plaintiffs to obtain infringing Google devices, reverse engineer them (for the '551 patent) and examine their source code for the other three additional patents. *See* Exs. 2–4. While it is true that ASUS makes *some* of Google's Nexus-branded products, it does not make all of them. And, in order to make sure that there was no Rule 11 issue related to Google's infringement, it was important for Plaintiffs to obtain and conduct their Rule 11 analysis on Google's own Nexus-branded products, without using ASUS's products as a proxy.[2]

## B.    Plaintiffs' Proposed Amendment Is Not Prejudicial.

Google failed to identify any legitimate basis that it would be prejudiced if the Court grants Plaintiffs' motion for leave. Google itself put the additional patents at-issue by filing its Declaratory Judgment Action. If Google were truly prejudiced it would not have instigated the adversity between itself and Plaintiffs on the additional patents.

Instead of identifying any real prejudice, Google attempts to manufacture prejudice by arguing that its litigation position would be prejudiced if Rockstar can now allege that it has obtained first-filed status on all seven patents at-issue, as opposed to just the three patents that were already added in Plaintiffs' first amended complaint. *See* Response at 7. Which party is

---

[2] As will be explained in Plaintiffs' opposition to Google and Samsung's Motion to Transfer to be filed on April 14, 2014, Android is an open source software collaboration and each party may make modifications to the Android code. *See* http://developer.android.com/about/index.html.

afforded "first-filed" status is relevant only to the pending motions to transfer in this Court and motions to dismiss in the California Court—it is not the type of prejudice that Courts typically consider in determining whether or not leave to amend should be granted under Rule 15. And, even assuming that "first-filed" status or the reduction in strength of a litigation position is relevant to Plaintiffs' Motion, because Plaintiffs' filed each of the consolidated cases in this district months before Google filed its Declaratory Judgment Action, each of the consolidated cases has "first-filed" status as compared to Google's later-filed Declaratory Judgment Action. *See* Ex. 5 (Plaintiffs' Motion to Dismiss Google's Declaratory Judgment Action, Dkt. No. 20).

Google does not endeavor to make any other claim of prejudice and cannot cite to even a single case in which a court found prejudice where, as here, there is a more than ample time and opportunity to address the additional patents and complete discovery. In fact, Plaintiffs' Motion makes clear that this Court has categorically rejected claims of prejudice in circumstances such as these; Google does not address the substance of any of Plaintiffs' arguments or authorities.[3] *See* Motion at 8–11; *see also Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) ("The touchstone of the inquiry under Rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint."). Indeed, because Google *cannot* establish prejudice, Plaintiffs' Motion should be granted.

## III.    CONCLUSION

For the reasons outlined above, as well as those in Plaintiffs' Motion, Plaintiffs respectfully request that the Court grant their Motion and permit them leave to file their Second Amended Complaint to assert the additional patents against Google. *See* Dkt. No. 45, Ex. A.

---

[3] *See, e.g.*, *Visto Corp. v. Research in Motion LTD.*, 2:07-cv-375, Dkt. 77 at 1 (E.D. Tex**.** Feb. 24, 2009) (finding that "defendants will suffer no prejudice as a result of the plaintiff's [second] amended complaint" because "discovery deadline and jury selection are both over one year away."); *Greatbatch Ltd.*, 2014 U.S. Dist. LEXIS 13473, at *4 (granting leave to add five new patents and finding no undue prejudice even though discovery had begun months earlier).

Dated: April 9, 2014.                          MCKOOL SMITH, P.C.

                                               /s/Ted Stevenson III
                                               Mike McKool
                                               Texas State Bar No. 13732100
                                               mmckool@McKoolSmith.com
                                               Douglas A. Cawley
                                               Texas State Bar No. 04035500
                                               dcawley@McKoolSmith.com
                                               Ted Stevenson III
                                               Texas State Bar No. 19196650
                                               tstevenson@mckoolsmith.com
                                               David Sochia
                                               Texas State Bar No. 00797470
                                               dsochia@McKoolSmith.com
                                               Ryan Hargrave
                                               Texas State Bar No. 24071516
                                               rhargrave@McKoolSmith.com
                                               MCKOOL SMITH, P.C.
                                               300 Crescent Court Suite 1500
                                               Dallas, TX 75201
                                               Telephone: (214) 978-4000
                                               Telecopier: (214) 978-4044

                                               Joshua W. Budwin
                                               Texas State Bar No. 24050347
                                               jbudwin@mckoolsmith.com
                                               MCKOOL SMITH, P.C.
                                               300 W. 6th Street, Suite 1700
                                               Austin, TX 78701
                                               Telephone: (512) 692-8700
                                               Telecopier: (512) 692-8744

                                               **ATTORNEYS FOR PLAINTIFFS
                                               ROCKSTAR CONSORTIUM US LP and
                                               MOBILESTAR TECHNOLOGIES LLC**

6

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 9, 2014.

*/s/ Ryan Hargrave*
Ryan Hargrave

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0900-JRG |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, GOOGLE INC., | § § § § § | |
| Defendants. | § § | |

<u>**GOOGLE'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE
TO FILE A SECOND AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................1

I.     Rockstar Submits No Justification For Its Delay in Asserting Claims Against
       Google ..............................................................................................................1

       A.     Rockstar Cannot Shift Its Burden Onto Google ......................................2

       B.     Rockstar Cannot Explain Its Delay .........................................................2

II.    Rockstar's Motion Is Futile And Would Result Only in Prejudice to Google ...................5

Conclusion ................................................................................................................5

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Agar Corp., Inc. v. Multi-Fluids Inc.*,
   No. 95-5105, 1998 WL 425474 (S.D. Tex. Apr. 17, 1998),
   *aff'd sub nom. Agar Corp., Inc. v. Multi-Fluid, Inc.*,
   215 F.3d 1340 (Fed. Cir. 1999)...................................................................2

*Google Inc. v. Rockstar Consortium US LP*,
   No. 13-5933 (N.D. Cal. Apr. 17, 2014) .....................................................5

*Greatbatch Ltd. v. AVX Corp.*,
   No. 13-723 (D. Del. Feb. 4, 2014) .............................................................3

*Jones v. Robinson Prop. Grp. L.P.*,
   427 F.3d 987 (5th Cir. 2005) .....................................................................2

*Larocca v. Larocca*,
   No. 13-4748, 2013 U.S. Dist. LEXIS 172738 (E.D. La. Dec. 9, 2013)................2, 3

*Matter of Southmark Corp.*,
   88 F.3d 311 (5th Cir. 1996) .......................................................................3

*Tendler Cellular of Texas, LLC v. Mercedes-Benz USA, LLC*,
   No. 11-178 (E.D. Tex. Apr. 3, 2012), .......................................................3

*Wimm v. Jack Eckerd Corp.*,
   3 F.3d 137 (5th Cir. 1993) .........................................................................1

## <u>Statutes</u>

Rule 11 .........................................................................................................4, 5

Rule 15 ...........................................................................................................2

## INTRODUCTION

Opposing Rockstar's motion for leave to amend, Google made a single, simple argument: because Rockstar could have sued Google last October but chose not to do so, Rockstar's litigation decision to delay bringing claims against Google cannot justify its dilatory amendment. Because Rockstar accused ASUS of infringing by "making" and "selling" the Nexus 7, and Google sold the same Nexus 7 directly to consumers on its website, Rockstar could not justify its strategic delay by claiming it needed time to investigate Google's infringement. Rockstar's reply did not address Google's argument or even engage it, but instead repeated its claim that it could not bring its claims earlier because it needed time to investigate Google's infringement. The Court should deny Rockstar's motion for this reason alone. In addition, Rockstar's motion is futile, because the Northern District of California has ruled that Google's case there was first-filed and should proceed on all seven patents, including the four Rockstar now seeks to add here.

## ARGUMENT

**I.     Rockstar Submits No Justification For Its Delay in Asserting Claims Against Google**

As Google's Opposition established, Rockstar could have sued Google on October 31, 2013, when it filed six actions against Google's customers for "making, using, selling and offering to sell . . . certain mobile communications devices having a version (or an adaption thereof) of Android operating system" developed by Google. (Docket No. 56 ("Opp.") at 2.) Absent "special circumstances," if a party knows of facts and fails to use them in its complaint, Courts can and do deny leave to amend. (Opp. at 4; *see, e.g.*, *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993).) Rockstar's original complaint against ASUSTek Computer, Inc. and ASUS Computer International, Inc. (collectively "ASUS") asserted infringement by the Nexus 7 (Opp. at 2-3, 5), and Rockstar's reply does not deny that Google provides the software for the Nexus 7 and that Google also sells the Nexus 7 on its website. (Docket No. 59 ("Reply")

1

at 4.)  Under the law governing Rule 15, Rockstar must therefore explain why its delay was not dilatory and in good faith.  (Opp. at 4-6.)  Because Rockstar has failed to do so, the Court should deny its motion.

### A.    Rockstar Cannot Shift Its Burden Onto Google

Rockstar's reply first tries to shift the burden of its explanation, arguing that *Google* has failed to show that Rockstar's delay "in seeking leave to assert the additional patents was in bad faith or because of some dilatory motive."  (Reply at 3.)  This misstates the law:  Rockstar must explain its delay, not Google.  Without any explanation from Rockstar, "[b]ad faith and dilatory motive may be inferred when the plaintiff or defendant was aware of the underlying facts at the outset of the action but delayed inexplicably in bringing the claim or defense."  *Agar Corp., Inc. v. Multi-Fluids Inc.*, No. 95-5105, 1998 WL 425474, at *3 (S.D. Tex. Apr. 17, 1998), *aff'd sub nom. Agar Corp., Inc. v. Multi-Fluid, Inc.*, 215 F.3d 1340 (Fed. Cir. 1999); *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 994-95 (5th Cir. 2005); *see* Opp. at 4-6.  Rockstar submits no contrary authority, and there is none; to allow amendment, Rockstar must explain its delay as reasonable and in good faith.  It cannot, and the Court should deny its motion for that reason.

### B.    Rockstar Cannot Explain Its Delay

Rockstar next argues that its delay is irrelevant, because this case is insufficiently far advanced.  (Reply at 3.)  This argument too misunderstands the law governing Rule 15 motions, which considers prejudice to the non-moving party separately from the movant's timeliness, and allows an *unexplained* delay such as this one, even if short, to justify denial of leave.  (Opp. at 6.)  Rockstar submits three cases, but none support its arguments.  Rockstar argues that *Larocca v. Larocca* supports the view that, "[b]ecause no deadlines are set, there is not likely any undue delay or bad faith."  (Reply at 3 (citing No. 13-4748, 2013 U.S. Dist. LEXIS 172738, at *7 (E.D. La. Dec. 9, 2013)).)  Plaintiff in *Larocca*, however, sought to amend based on "recently

discovered facts" resulting in a newly discovered defendant. *Larocca*, U.S. Dist. LEXIS 172738, at *1. *Larocca* cannot help Rockstar here, where Rockstar knew all the facts it needed to sue Google at least as early as October 31, 2013. Rockstar's other authorities also help Google, not Rockstar. In *Tendler Cellular of Texas, LLC v. Mercedes-Benz USA, LLC*, No. 11-178 (E.D. Tex. Apr. 3, 2012), Docket No. 96 at 1-2, plaintiff sought to add a patent that issued *after* the filing of the complaint, and in *Greatbatch Ltd. v. AVX Corp.*, No. 13-723 (D. Del. Feb. 4, 2014), Docket No. 55 at 1-2, the plaintiff sought to add patents based on information obtained through discovery. *Tendler* and *Greatbatch* thus show how plaintiffs can explain and therefore justify a delay—which Rockstar has not done here, and thus should not be allowed to amend its complaint. *Matter of Southmark*, 88 F.3d 311 (5th Cir. 1996).[1]

Having failed to shift its burden of explanation onto Google, and having further failed to excuse its delay based on the age of this action, Rockstar ultimately returns to its original argument: that under Rule 11, Rockstar could not assert these claims against Google until March 10, 2014—even though on October 31, 2013, Rockstar *could* assert the same claims against ASUS, which manufactures and sells the same Nexus 7 for which Google provides the software,

---

[1] Rockstar argues that *Southmark* "has no relationship whatsoever to the facts presented here" because a longer period of time elapsed between the complaint and the motion for leave. (Reply at 2.) But the *Southmark* plaintiff made exactly this argument, and the court rejected it:

> We are unpersuaded by Southmark's arguments. That many cases in which a denial of leave to amend a complaint has been affirmed involved proposed amendments closer to the eve of trial does not preclude a district court from properly exercising its discretion to deny leave to amend under particular facts like those present in the instant case.

*Southmark*, 88 F.3d at 315. In *Southmark*, the court denied leave to amend because "the transactions on which the proposed amendments were based were known to Southmark both at the time its plan was confirmed and at the time its original and first amended complaints were filed," even though "(1) no trial date had been set, (2) the only party that had commenced discovery was Southmark, (3) SR & Z had filed its answer only about two months earlier, in April 1992, following a nine month 'hiatus' during which the parties discussed settlement, and (4) no dispositive motions had been filed by any party." *Id*. *Southmark* thus supports Google's argument, not Rockstar's.

and which Google sells on its website.  (Opp. at 1-2, 5.)  Rockstar cannot explain this over four-month delay, and its failure to do so dooms its motion.  (*Id*. at 4-6.)  In its reply, Rockstar attempts to avoid this issue by arguing that it had to "obtain and conduct" its "Rule 11 analysis on Google's own Nexus-branded products, without using ASUS's products as a proxy."  (Reply at 4.)  But there is *only one* Nexus 7, whether Rockstar calls it an "ASUS product" or a "Google product"; if Rockstar could allege infringement on October 31 from ASUS' sales of that device, it could simultaneously allege infringement from Google's sales of the same device.  (Opp. at 5.)

Nor can Rockstar argue that it needed more time to investigate Google products beyond the Nexus 7.  First, that argument could apply only if Rockstar brought timely allegations against the Nexus 7, and later sought to add other products; but Rockstar did not do this, and thus cannot shield itself with this argument.  (Opp. at 5.)  Rockstar's own infringement contentions confirm this point.  (Reply Exs. 1-4.)  They refer to Nexus products as exemplary, and state Rockstar's intent to add to the definition of Accused Products any additional products "uncovered during discovery."  (Reply Ex. 1 at 1 n.1, 2 n.2; Ex. 2 at 1 n.1, 2 n.2; Ex. 3 at 1 n.1, 2; Ex. 4 at 1 n.1.)  If Rule 11 allowed Rockstar to bring these claims on March 10, 2014 and later add more, it also allowed Rockstar to bring claims regarding just the Nexus 7 on October 31, 2013; Rockstar did not—for its own strategic reasons—and has not explained the delay.  Finally, Rockstar's infringement contentions belie any idea that different Nexus products required extensive different analysis, which could account for Rockstar's delay.  Rockstar seeks to accuse Google of infringing its patents based on publicly available Android source code obtained from Google's Android Open Source Project website.  Rockstar's infringement allegations against ASUS include the same code excerpts, also obtained from Google's Android website.  (*See, e.g*., Reply Ex. 4; Declaration of Kristin J. Madigan ("Madigan Decl.") Ex. A.)  Rockstar cannot argue (on

one hand) that its Rule 11 analysis took more than four months, while maintaining (on the other hand) that it can accuse products of infringement based solely on Google's open-source code—which is, by its nature, not specific to any product.  Having relied upon that publicly available open-source code to support its infringement allegations, Rockstar cannot excuse its failure to sue Google on October 31, 2013.

## II.    Rockstar's Motion Is Futile And Would Result Only in Prejudice to Google

The Court should also deny Rockstar's motion as futile, and because it would result in prejudice to Google.  The patents Rockstar seeks to add to this action are already at issue in *Google Inc. v. Rockstar Consortium US LP*, No. 13-5933 (N.D. Cal.) (the "Google Action"), where the Court ruled that the Google Action was first-filed and will proceed.  (Madigan Decl. Ex. B.)  Should this Court allow Rockstar to add additional patents to this case, the only result would be a transfer of these claims to the Google Action, or else duplicative parallel litigation. The former would be futile, as Rockstar can bring the same claims in the Google Action, while the latter would cause prejudice to Google by requiring it to litigate not only the first-filed Google Action but also this second-filed, duplicative action.  Rockstar will suffer no prejudice from a denial, as it can bring its infringement claims as counterclaims in the Google Action.

## CONCLUSION

For the foregoing reasons, the Court should deny Rockstar's motion for leave to file a second amended complaint.

Dated:  April 21, 2014                Respectfully submitted,

                                      /s/ *J. Mark Mann*
                                      J. Mark Mann (State Bar No. 12926150)
                                      mark@themannfirm.com
                                      G. Blake Thompson (State Bar No. 24042033)
                                      blake@themannfirm.com
                                      MANN | TINDEL | THOMPSON
                                      300 West Main Street
                                      Henderson, Texas  75652
                                      (903) 657-8540
                                      (903) 657-6003 facsimile

                                      Charles K. Verhoeven (Cal. Bar. No. 170151)
                                      Sean Pak (Cal. Bar No. 219032)
                                      Amy H. Candido (Cal. Bar No. 237829)
                                      Matthew S. Warren (Cal. Bar No. 230565)
                                      quinn-google-e.d.tex.-13-00900@quinnemanuel.com
                                      QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                      50 California Street, 22nd Floor
                                      San Francisco, California  94111
                                      (415) 875-6600
                                      (415) 875-6700 facsimile

                                      *Attorneys for Defendant Google Inc.*

6

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record have consented to electronic service and are

being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-

5(a)(3) on April 21, 2014.

/s/ *J. Mark Mann*
J. Mark Mann

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| | § | |
| ROCKSTAR CONSORTIUM US LP, AND | § | |
| MOBILESTAR TECHOLOGIES, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CASE NO. 2:13-CV-00894-JRG** |
| *v.* | § | |
| | § | **LEAD CASE** |
| SAMSUNG ELECTRONICS CO., LTD.,  *et al.*, | § | |
| | § | **CASE NO. 2:13-CV-00900-JRG** |
| | § | |
| *Defendants*. | § | **MEMBER CASE** |
| | § | |

## ORDER

Before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. No. 45), filed March 10, 2014. Plaintiff seek to amend their First Amended Complaint (Dkt. No. 19) to reflect additional claims against Defendant Google, Inc. ("Google"). In their first amendment, Plaintiffs added allegations that Google infringed three of seven of the patents-in-suit. Plaintiffs now seek to add claims alleging infringement of all seven patents.

Federal Rule of Civil Procedure 15(a)(2) states that the Court "should freely give leave [to amend a complaint] when justice so requires." The Rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. Nov. 1981)). "'[U]nless there is a substantial reason,' such as an undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'" *Id.* (quoting *Dussuoy*, 660 F.2d at 597).

1

No such substantial reason appears here. Plaintiffs sought leave to amend their complaint early, before the scheduling conference in this case. Such timely amendment does not ordinarily qualify as undue delay. *See, e.g.*, *Advanced Neuromodulation Sys., Inc. v. Advanced Bionics Corp.*, No. 4:04-cv-131-RAS, Dkt. No. 48 (E.D. Tex. Jan 28, 2005); *Tender Cellular of Tex., LLC v. Mercedes-Benz USA, LLC*, No. 6:11-cv-178-LED-JDL, Dkt. No. 96 (E.D. Tex. Apr. 3, 2012). Google argues that Plaintiffs knew of the facts and circumstances alleged in its proposed amendment at the time that it filed its original complaint (Dkt. No. 56, at 4-5). This is pure speculation, however; Plaintiffs assert to the contrary that the timing of its amendments proceeds from their diligent investigation of the accused products. No undue delay, bad faith, or dilatory motive is evident.

Neither is there undue prejudice to the defendants in allowing Plaintiffs leave to amend. Discovery in this case has barely begun, and Google has long been on notice that this suit involves seven patents. Indeed, Google has filed a related action in California addressing all seven of the patents-in-suit, so Google's litigation team is *already* preparing for action on these patents.

In these circumstances, the Court finds that Plaintiffs' motion for leave to amend (Dkt. No. 45) should be and hereby is **GRANTED**.

**So ORDERED and SIGNED this 1st day of July, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC** | § § § | |
| | § | |
| **PLAINTIFFS** | § | |
| **v.** | § | **Civil Action No. 2:13-cv-894** |
| | § | |
| **ASUSTEK COMPUTER, INC. AND** | § | |
| **ASUS COMPUTER INTERNATIONAL, INC.** | § | **JURY TRIAL REQUESTED** |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S ORIGINAL COMPLAINT

Plaintiffs Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar") file this Original Complaint for patent infringement under 35 U.S.C. § 271 and in support thereof would respectfully show the Court the following:

## PARTIES

1.     Plaintiff Rockstar Consortium US LP ("Rockstar") is a limited partnership organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

2.     Plaintiff MobileStar Technologies LLC ("MobileStar") is a subsidiary of Rockstar and is a limited liability corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

McKool 940072v1

3.      Upon information and belief, Defendant ASUSTeK Computer, Inc. is a corporation organized and existing under the laws of Taiwan with its principal place of business at 15 Li-Te Rd., Peitou District, Taipei 112, Taiwan.

4.      Upon information and belief, Defendant ASUS Computer International, Inc. is a subsidiary of ASUSTeK and is a corporation organized and existing under the laws of California with its principal place of business at 800 Corporate Way, Fremont, California 94536.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. § 1338.

6.      Venue is proper in this Court pursuant to 28 U S.C. §§ 1391 and 1400(b).

7.      This Court has personal jurisdiction over Defendants ASUSTeK Computer, Inc. and ASUS Computer International, Inc. (collectively, "ASUS").  ASUS has conducted and does conduct business within the State of Texas.  ASUS, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its infringing products) and/or services in the United States, the State of Texas, and the Eastern District of Texas.  ASUS, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These

2

infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.   ASUS has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## ASSERTED PATENTS

8.     On November 17, 1998, U.S. Patent No. 5,838,551 ("the '551 Patent") entitled "Electronic Package Carrying an Electronic Component and Assembly of Mother Board and Electronic Package" was duly and legally issued with Yee-Ning Chan as the named inventor after full and fair examination.   Rockstar owns all rights, title, and interest in and to the '551 Patent and possesses all rights of recovery under the '551 Patent.   MobileStar is the exclusive licensee of the '551 patent.

9.     On March 14, 2000, U.S. Patent No. 6,037,937 ("the '937 Patent") entitled "Navigation Tool for Graphical User Interface" was duly and legally issued with Brian Finlay Beaton, Colin Donald Smith, and Bruce Dale Stalkie as the named inventors after full and fair examination.   MobileStar owns all rights, title, and interest in and to the '937 Patent and possesses all rights of recovery under the '937 Patent.

10.     On October 3, 2000, U.S. Patent No. 6,128,298 ("the '298 Patent") entitled "Internet Protocol Filter" was duly and legally issued with Bruce Anthony Wootton and William G. Colvin as the named inventors after full and fair examination.   Rockstar owns all rights, title, and interest in and to the '298 Patent and possesses all rights of recovery under the '298 Patent.   MobileStar is the exclusive licensee of the '298 patent.

McKool 940072v1

**– A1400 –**

11.     On October 8, 2002, U.S. Patent No. 6,463,131 ("the '131 Patent") entitled "System and Method for Notifying a User of an Incoming Communication Event" was duly and legally issued with Marilyn French-St. George, Mitch A. Brisebois and Laura A. Mahan as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '131 Patent and possesses all rights of recovery under the '131 Patent.

12.     On July 20, 2004, U.S. Patent No. 6,765,591 ("the '591 Patent") entitled "Managing a Virtual Private Network" was duly and legally issued with Matthew W. Poisson, Melissa L. Desroches, and James M. Milillo as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '591 Patent and possesses all rights of recovery under the '591 Patent.

13.     On August 30, 2005, U.S. Patent No. 6,937,572 ("the '572 Patent") entitled "Call Trace on a Packet Switched Network" was duly and legally issued with Brian B. Egan and Milos Vodsedalek as the named inventors after full and fair examination.  Rockstar owns all rights, title, and interest in and to the '572 Patent and possesses all rights of recovery under the '572 Patent.

### GENERAL ALLEGATIONS

14.     ASUS has directly and indirectly infringed and continues to direction and indirectly infringe each of the '551, '937, '298, '131, '591, and '572 Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain mobile communication devices having a version

4

(or an adaption thereof) of Android operating system ("ASUS Mobile Communication Devices").

15.     ASUS is doing business in the United States and, more particularly, in the Eastern District of Texas by making, using, selling, importing, and/or offering for sale ASUS Mobile Communication Devices, including but not limited to ASUS family of smartphones, including, but not limited to the ASUS FonePad and PadFone product families, and ASUS family of tablets, including, but not limited to the ASUS Transformer and /or Transformer Pad (including the Transformer TF201), MeMo Pad, and Nexus 7 product families, and other products that infringe the patent claims involved in this action or by transacting other business in this District.

## COUNT ONE
## PATENT INFRINGEMENT BY ASUS

16.     Plaintiffs incorporate by reference paragraphs 1-15 as if fully set forth herein.  As described below, ASUS has infringed and/or continues to infringe the '551, '937, '298, '131, '591, and '572 Patents.

17.     At least the ASUS Mobile Communication Devices infringe at least claim 1 of the '551 Patent.  ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these products and thus directly infringes one or more claims of the '551 Patent, including at least claim 1.

18.     ASUS indirectly infringes the '551 patent by inducing infringement by others, such as resellers, of at least claim 1 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of the ASUS Mobile

5

Communication Devices.  ASUS had actual notice of the '551 Patent at least as of the date this lawsuit was filed.

19.     ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured and distributed, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use ASUS Mobile Communication Devices in their normal and customary way to infringe the '551 patent. Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '551 patent; further, ASUS was aware that these normal and customary activities would infringe the '551 patent.  ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '551 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

20.     Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '551 Patent in the United States because ASUS has knowledge of the '551 Patent and ASUS actually induces others, such as resellers and end-use customers, to directly infringe the '551 patent, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Mobile Communication Devices for resale to others, such as resellers and end-use customers.  ASUS knew or should have known that such actions would induce actual infringement.

21.     ASUS indirectly infringes the '551 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c)

6

in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices.  ASUS had actual notice of the '551 Patent at least as of the date this lawsuit was filed.

22.     ASUS Mobile Communication Devices include at least one electronic package comprising a component that is located between an EMI shield and a ground member for performing shielding operations.  The EMI shield is incorporated into the electronic package, which is then mounted to a circuit board in ASUS Mobile Communication Devices, and on information and belief, the electronic component does not function in an acceptable manner absent the EMI shielding.  Furthermore, the electronic package incorporating the EMI shield does not operate in isolation, but is designed to operate within the Mobile Communication Device, and absent the EMI shielding of the electronic component, ASUS Mobile Communication Devices would not function in an acceptable manner.

23.     A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package in ASUS Mobile Communication Devices is especially made or especially adapted to operate in an ASUS Mobile Communication Device as an EMI shield.

24.     A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package is not a staple article or commodity of commerce and that the use of the EMI shielded electronic package is required for operation of ASUS Mobile Communication Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

7

25.     The EMI shielded electronic package in ASUS Mobile Communication Devices are each a material part of the invention of the '551 patent and are especially made for the infringing manufacture, sale, and use of ASUS Mobile Communication Devices.  ASUS Mobile Communication Devices, including the EMI shielded electronic package, are especially made or adapted as an electronic package that infringes the '551 patent.  Because the sales and manufacture of ASUS Mobile Communication Devices including the EMI shielded electronic package infringe the '551 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

26.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others ASUS Mobile Communication Devices with distinct and separate components, including hardware components, which have no substantial non-infringing use.

27.     At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps and Browser functionality, infringe at least claim 13 of the '937 Patent.  ASUS makes, uses, tests, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 13 of the '937 Patent.

28.     ASUS indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this

8

District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices.  ASUS received actual notice of the '937 Patent at least by May 14, 2012 from a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

29.     ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '937 patent.  Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '937 patent; further, ASUS was aware that these normal and customary activities would infringe the '937 patent.  ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

30.     Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 patent in the United States because ASUS has knowledge of the '937 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

9

31.    The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps and Browser functionality as intended by ASUS infringes at least method claim 1 of the '937 Patent.  ASUS uses these products and thus directly infringes at least method claim 1 of the '937 Patent.

32.    In addition, ASUS provides at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps, and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 1 of the '937 Patent.

33.    ASUS indirectly infringes the '937 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of the ASUS Mobile Communication Devices.  ASUS received actual notice of the '937 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

34.    ASUS provides at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe the '937 Patent.  Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '937 patent.

McKool 940072v1

35.    ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 Patent in the United States. For example, ASUS provides instructions to resellers and end-use customers regarding the use and operation of ASUS's products in an infringing way.  Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf . When resellers and end-use customers follow such instructions, they directly infringe the '937 Patent.  ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '937 Patent.  ASUS thus knows that its actions induce the infringement.

36.    ASUS performed the acts that constitute induced infringement, and would induce actual infringement with the knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

37.    ASUS indirectly infringes the '937 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices.  ASUS received actual notice of the '937 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

38.    ASUS Mobile Communication Devices include functionality that, inter alia, displays a navigable graphical user interface ("navigable GUI") that permits a user to manipulate and control the contents of the display to maximize the use of display real

11

estate.  This navigable GUI is included in ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support at least the Gallery, Email, Maps, and Browser functionalities.   On information and belief, these functionalities cannot operate in an acceptable manner absent the navigable GUI, as it is included in every ASUS Mobile Communication Device.

39.   A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in ASUS Mobile Communication Devices is especially made or especially adapted to operate on an ASUS Mobile Communication Device as a navigable GUI that permits a user to manipulate or control the contents of the display to maximize the use of display real estate on the user's ASUS Mobile Communication Devices.

40.   A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the navigable GUI in ASUS Mobile Communication Devices is required for the operation of ASUS Mobile Communication Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

41.   ASUS Mobile Communication Devices with the navigable GUI are each a material part of the invention of the '937 patent and are especially made for the infringing manufacture, sale, and use of ASUS Mobile Communication Devices.  ASUS Mobile Communication Devices with the navigable GUI are especially made or adapted as a navigable GUI that infringes the '937 patent.  Because the sales and manufacture of

12

ASUS Mobile Communication Devices with a navigable GUI infringes the '937 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

42.    Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '937 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others, ASUS Mobile Communication Devices with distinct and separate components, including software components, which have no substantial non-infringing use.

43.    At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support the Mobile Hotspot functionality infringe at least claims 27 and 31 of the '298 Patent.  ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 27 and 31 of the '298 Patent.

44.    ASUS indirectly infringes the '298 patent by inducing infringement by others of at least claim 27 and 31, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices.  ASUS had actual notice of the '298 Patent at least by September 27, 2013 from a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

McKool 940072v1

45.     ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '298 patent.  Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '298 patent; further, ASUS was aware that these normal and customary activities would infringe the '298 patent.  ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

46.     Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 patent in the United States because ASUS has knowledge of the '298 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

47.     The use of at least ASUS Mobile Communication Devices that support the Mobile Hotspot functionality as intended by ASUS infringes at least method claims 14 and 24 of the '298 Patent.  ASUS uses these products and thus directly infringes at least method claims 14 and 24 of the '298 Patent.

14

48.    In addition, ASUS provides at least ASUS Mobile Communication Devices that support the Mobile Hotspot functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claims 14 and 24 of the '298 Patent.

49.    ASUS indirectly infringes the '298 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Mobile Hotspot functionality.   ASUS received actual notice of the '298 Patent at least by September 27, 2013, in view of a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

50.    ASUS's affirmative acts of selling its ASUS Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '298 patent at least through using Mobile Hotspot functionality.   ASUS also provides instructions, including at least "Transformer User Manual     TF201"     available     on     ASUS's     web     site     at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf for using the Mobile Hotspot functionality.   Through its sales of ASUS Mobile Communication Devices with Mobile Hotspot functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '298 patent; further, ASUS was aware that the normal and customary use of Mobile Hotspot

15

functionality would infringe the '298 patent.  ASUS also enticed its end-users to use the Mobile Hotspot functionality by providing instruction manuals and also providing Mobile Hotspot functionality.  ASUS performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

51.     Accordingly, a reasonable inference is that ASUS actively induces infringement of the '298 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 Patent in the United States because ASUS had knowledge of the '298 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS Mobile Communication Devices in an infringing way.  Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf . When resellers and end-use customers follow such instructions, they directly infringe the '298 Patent.  ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '298 Patent.  ASUS thus knows that its actions induce the infringement.

52.     ASUS indirectly infringes the '298 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Mobile

16

Hotspot functionality.  ASUS received actual notice of the '298 Patent at least by September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

53.     ASUS Mobile Communication Devices with the Mobile Hotspot functionality allow wireless devices from a first, or private, network to connect to a second, or public, network such as the Internet.  The Mobile Hotspot functionality is designed to route data packets between wireless devices tethered to the Mobile Hotspot to nodes on a public network such as the Internet, and cannot function in a manner that does not utilize the Mobile Hotspot functionality available to ASUS Mobile Communication Devices.  Upon information and belief, the Mobile Hotspot functionality is designed to entice a user to access nodes in a second, or public, network such as the Internet.

54.     A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is especially made or especially adapted to operate on a mobile communication device for providing access for wireless devices in a first, or private, network to nodes in a second, or public, network.

55.     A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is not a staple article or commodity of commerce and that the use of the Mobile Hotspot functionality of ASUS Mobile Communication Devices is for interfacing first and second data communications networks, e.g., a private network and a public network such as the Internet.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

56.     ASUS Mobile Communication Devices with Mobile Hotspot functionality are each a material part of the '298 patent and especially made for the infringing use of

the Mobile Hotspot functionality for interfacing private and public data communication networks.  ASUS Mobile Communication Devices with the Mobile Hotspot functionality are especially made or adapted to provide access for wireless devices in a first, or private, network through the Mobile Communication Device, to nodes in a second, or public, network that perform or facilitate performance of the steps that infringe the '298 patent.  Furthermore, ASUS provides user manuals describing the uses of ASUS Mobile Communication Devices that infringe the '298 patent.   Because the sales and manufacture of ASUS Mobile Communication Devices with Mobile Hotspot functionality infringes the '298 patent, ASUS's sales of its infringement products have no substantial non-infringing uses.

57.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others, ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Mobile Hotspot functionality.   ASUS installs and configures ASUS Mobile Communication Devices with distinct and separate components, including software components, which are used only to perform the infringing method claims.

58.     At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Message and Notification functionality

18

infringe at least claim 1 of the '131 Patent.  ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 1 of the '131 Patent.

59.    ASUS indirectly infringes the '131 patent by inducing infringement by others of at least claim 1, such as resellers, in accordance with 35 U.S.C. § 271(b) in this

District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices.  ASUS had actual notice of the '131 Patent at least by September 27, 2013 from a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

60.    ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '131 patent.  Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '131 patent; further, ASUS was aware that these normal and customary activities would infringe the '131 patent.  ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

61.    Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of

19

the '131 patent in the United States because ASUS has knowledge of the '131 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

62.    The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Message and Notification functionality as intended by ASUS infringes at least method claim 5 of the '131 Patent. ASUS uses these products and thus directly infringes at least method claim 5 of the '131 Patent.

63.    In addition, ASUS provides at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Message functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 5 of the '131 Patent.

64.    ASUS indirectly infringes the '131 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Message and Notifications functionality.  ASUS received actual notice of the '131 Patent at least by September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

20

65.    ASUS's affirmative acts of selling ASUS Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '131 patent at least through using Message and Notifications functionality.    ASUS also provides instructions, including at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf , for using the Messaging and Notifications functionality.  Through its sales of Mobile Communication Devices with Messaging and Notifications functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '131 patent; further, ASUS was aware that the normal and customary use of the Message and Notifications functionality would infringe the '131 patent.  ASUS also enticed its end-users to use the Messaging and Notifications functionality by providing instruction manuals.  ASUS performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

66.    Accordingly, a reasonable inference is that ASUS actively induces infringement of the '131 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 Patent in the United States because ASUS had knowledge of the '131 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS Mobile Communication Devices in an infringing way.  Such instructions include at least

21

"Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf . When resellers and end-use customers follow such instructions, they directly infringe the '131 Patent. ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '131 Patent. ASUS thus knows that its actions induce the infringement.

67.    ASUS indirectly infringes the '131 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Messaging and Notification functionality. ASUS received actual notice of the '131 Patent at least by September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

68.    ASUS's Message and Notification functionality receives and displays message of different types, such as a phone call, voice mail, text message, or email. The Message and Notification Services functionality is designed to notify the user of an incoming communication and to select the format of the message received and cannot function in a manner that does not utilize the messaging functionality available to ASUS Mobile Communication Devices. Upon information and belief, the Message and Notifications functionality is designed to entice a user to receive notifications of an incoming communication.

22

69.    A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality especially made or especially adapted to operate on ASUS Mobile Communication Devices for notifying a user of an incoming communication.

70.    A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality is not a staple article or commodity of commerce and that the use of the Messaging and Notifications functionality of the ASUS Mobile Communication Devices is for notifying a user of an incoming communication.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

71.    ASUS Mobile Communication Devices with Messaging and Notifications functionality are each a material part of the '131 patent and especially made for the infringing use of the Messaging and Notification functionality to receive and display messages.  ASUS Mobile Communication Devices including the Messaging and Notification functionality, are especially made or adapted to notify a user of an incoming communication that perform or facilitate performance of the steps that infringe the '131 patent.  Furthermore, ASUS provides user manuals describing the uses of its Mobile Communication Devices that infringe the '131 patent.  Because the functionality provided by ASUS's Messaging and Notification to notify a user of an incoming communication infringes the '131 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

72.    Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination,

23

or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others, Mobile Communication Devices with an operating system configured and installed by ASUS to support Message and Notification functionality.  ASUS installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

73.    At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management functionality, including the ASUS Galaxy S III, infringe at least claims 1 and 8 of the '591 Patent.  ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 1 and 8 of the '591 Patent.

74.    ASUS indirectly infringes the '591 patent by inducing infringement by others of at least claims 1 and 8, such as resellers, in accordance with 35 U.S.C. § 271(b)

in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices.  ASUS had actual notice of the '591 Patent at least by September 27, 2013 from a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

75.    ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's

24

manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '591 patent.  Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '591 patent; further, ASUS was aware that these normal and customary activities would infringe the '591 patent.  ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

76.    Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 patent in the United States because ASUS has knowledge of the '591 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

77.    The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management functionality as specified and intended by ASUS infringes at least claims 1 and 8 of the '591 Patent.  ASUS uses these products and thus directly infringes at least claims 1 and 8 of the '591 Patent.

78.    In addition, ASUS provides at least its Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management

25

functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least claims 1 and 8 of the '591 Patent.

79.    ASUS indirectly infringes the '591 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality.  ASUS received actual notice of the '591 Patent at least by September 27, 2013, from a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

80.    ASUS's affirmative acts of selling its Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '591 patent at least through using VPN management functionality. ASUS also provides instructions, including at least "Transformer User Manual TF201" available          on          ASUS's          web          site          at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf , for using the VPN management functionality.  Through its sales of ASUS Mobile Communication Devices with VPN management functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '591 patent; further, ASUS was aware that the normal and customary use of VPN management functionality would infringe the '591 patent.  ASUS also enticed its end-users to use the VPN management functionality by providing instruction manuals.  ASUS performed the

McKool 940072v1

acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

81.    Accordingly, it is a reasonable inference that ASUS actively induces infringement of the '591 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 Patent in the United States because ASUS had knowledge of the '591 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS's products in an infringing way.  Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf .  When resellers and end-use customers follow such instructions, they directly infringe the '591 Patent.  ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '591 Patent.  ASUS thus knows that its actions induce the infringement.

82.    ASUS indirectly infringes the '591 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality.  ASUS received actual notice of the '591 Patent at least by

McKool 940072v1

September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

83.    ASUS's VPN management functionality facilitates management of VPNs. The VPN management functionality is designed for management of VPNs and cannot function in a manner that does not utilize the VPN management functionality available to ASUS Mobile Communication Devices.  The VPN management functionality is designed upon information and belief to entice a user to manage VPNs.

84.    A reasonable inference to be drawn from the facts set forth is that the VPN functionality is especially made or especially adapted to operate on ASUS Mobile Communication Devices for providing VPN management functionality.

85.    A reasonable inference to be drawn from the facts set forth is that the VPN management functionality is not a staple article or commodity of commerce and that the use of the VPN management functionality of ASUS Mobile Communication Devices is for managing VPNs.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

86.    ASUS  Mobile  Communication  Devices  with  VPN  management functionality are each a material part of the invention of the '591 patent and especially made for the infringing use of the VPN functionality to receive call trace information. ASUS Mobile Communication Devices including the VPN management functionality, are especially made or adapted to provide VPN management functionality that perform or facilitate performance of the steps that infringe the '591 patent.  Furthermore, ASUS provides user manuals describing the uses of its Mobile Communication Devices that infringe the '591 patent.    Because  the  functionality  provided  by  ASUS's  VPN

28

management functionality infringes the '591 patent, ASUS's sales of its infringing Mobile Communication Devices have no substantial non-infringing uses.

87.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others, Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management functionality.  ASUS installs and configures on these products distinct and separate components, including software components, which are used only to infringe the '591 Patent.

88.     The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Location Services functionality, as intended by ASUS infringes at least method claim 17 of the '572 Patent. ASUS uses these Mobile Communication Devices and thus directly infringes at least method claim 17 of the '572 Patent.

89.     In addition, ASUS provides at least its Mobile Communication Devices with an operating system configured and installed by ASUS to support Location Services functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 17 of the '572 Patent.

90.     ASUS indirectly infringes by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District

and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Location Services functionality.  ASUS received actual notice of the '572 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

91.    ASUS's affirmative acts of selling its Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '572 patent at least through using Location Services functionality. ASUS also provides instructions, including at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf , for using the Location Services functionality.  Through its sales of ASUS Mobile Communication Devices with Location Services functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '572 patent; further, ASUS was aware that the normal and customary use of Location Services would infringe the '572 patent.  ASUS also enticed its end-users to use the Location Services by providing instruction manuals.  ASUS performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '572 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

30

92.    Accordingly, a reasonable inference is that ASUS actively induces infringement of the '572 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '572 Patent in the United States because ASUS had knowledge of the '572 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS's products in an infringing way.  Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf . When resellers and end-use customers follow such instructions, they directly infringe the '572 Patent.  ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '572 Patent.  ASUS thus knows that its actions induce the infringement.

93.    ASUS indirectly infringes the '572 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Locations Services functionality.  ASUS received actual notice of the '572 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

94.    ASUS's Location Services functionality provides call trace information, i.e., a geographic location of ASUS Mobile Communication Devices.  The Location

Services functionality is designed to notify the user of ASUS Mobile Communication Devices of call trace information, i.e., a geographic location of the Mobile Communication Devices, and cannot function in a manner that does not utilize the Location Services functionality available to the Mobile Communication Devices.  Upon information and belief, the Location Services functionality is designed to entice a user to access call trace information.

95.     A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is especially made or especially adapted to operate on ASUS Mobile Communication Devices for obtaining call trace information, i.e., a geographic location of the Mobile Communication Devices.

96.     A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is not a staple article or commodity of commerce and that the use of the Location Services functionality of ASUS Mobile Communication Devices is for providing call trace information.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

97.     ASUS Mobile Communication Devices with Location Services functionality are each a material part of the '572 patent and especially made for the infringing use of the Location Services functionality to receive call trace information, i.e., a geographic location of the Mobile Communication Devices.   The Mobile Communication Devices including the Location Services functionality are especially made or adapted to provide call trace information that perform or facilitate performance of the steps that infringe the '572 patent.  Furthermore, ASUS provides user manuals describing the uses of its products that infringe the '572 patent.  Because the functionality

32

provided by ASUS's Location Services to obtain call trace information, i.e., a geographic location of the Mobile Communication Devices, infringes the '572 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

98.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others, Mobile Communication Devices with an operating system configured and installed by ASUS to support Location Services functionality.  ASUS installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

99.     ASUS's acts of infringement have caused damage to Rockstar and MobileStar.  Rockstar and MobileStar are entitled to recover from ASUS the damages sustained by Rockstar and MobileStar as a result of ASUS's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of ASUS have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar and MobileStar for which there is no adequate remedy at law, and for which Rockstar and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

100.     ASUS received actual notice of its infringement of the '551, '937, '298, '973, '131, '591, and '572 Patents through at least letters sent by Rockstar and/or its

predecessors-in-interest, Nortel Networks Ltd. and/or Nortel Networks, Inc., to ASUS, and through meetings between employees of Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd., or Nortel Networks Inc. and ASUS.  ASUS also has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

101.    ASUS has willfully infringed and/or does willfully infringe the '551, '937, '298, '131, '591, and '572 Patents.

## DEMAND FOR JURY TRIAL

Rockstar and MobileStar hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Rockstar and MobileStar pray for the following relief:

1.    A judgment that ASUS has directly infringed the '551 Patent, contributorily infringed the '551 Patent, and/or induced the infringement of the '551 Patent.

2.    A judgment that ASUS has directly infringed the '937 Patent, contributorily infringed the '937 Patent, and/or induced the infringement of the '937 Patent.

3.    A judgment that ASUS has directly infringed the '298 Patent, contributorily infringed the '298 Patent, and/or induced the infringement of the '298 Patent.

4.    A judgment that ASUS has directly infringed the '131 Patent, contributorily infringed the '131 Patent, and/or induced the infringement of the '131 Patent.

McKool 940072v1

5.      A judgment that ASUS has directly infringed the '591 Patent, contributorily infringed the '591 Patent, and/or induced the infringement of the '591 Patent.

6.      A judgment that ASUS has directly infringed the '572 Patent, contributorily infringed the '572 Patent, and/or induced the infringement of the '572 Patent.

7.      A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '551 Patent;

8.      A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '937 patent;

9.      A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '298 patent;

10.     A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '973 patent;

35

11.     A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '131 patent;

12.     A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '591 patent;

13.     A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '572 patent;

14.     A judgment that ASUS's infringement of the '551, '937, '298, '131, '591, and '572 Patents has been willful;

15.     A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding Rockstar and MobileStar to its attorneys' fees incurred in prosecuting this action;

16.     A judgment and order requiring ASUS to pay Rockstar and MobileStar damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

17.     A judgment and order requiring ASUS to pay Rockstar and MobileStar the costs of this action (including all disbursements);

McKool 940072v1

**– A1433 –**

18.     A judgment and order requiring ASUS to pay Rockstar and MobileStar pre-judgment and post-judgment interest on the damages awarded;

19.     A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Rockstar and MobileStar be awarded a compulsory ongoing licensing fee; and

20.     Such other and further relief as the Court may deem just and proper.

37

DATED:  October 31, 2013.

Respectfully submitted,

**McKool Smith, P.C.**

/s/ Theodore Stevenson, III
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
**MCKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US,
LP AND MOBILESTAR
TECHNOLOGIES LLC**

McKool 940072v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0894-JRG |
| Plaintiffs, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| ASUSTEK COMPUTER, INC. AND ASUS COMPUTER INTERNATIONAL | § § § § | |
| Defendants. | § § § § | |

<u>**DEFENDANTS' MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO STAY**</u>

## Table of Contents

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .......................................................................................2

    A.     Apple and Others Obtain the Asserted Patents and Form Rockstar entities............2

    B.     Rockstar Consortium US LP and MobileStar File This Action..............................3

    C.     Rockstar's Principal Place of Business is in Canada, Not Texas ..........................4

ARGUMENT ...........................................................................................................5

I.     The Court Should Transfer to the Northern District of California .....................................5

    A.     This Action Could Have Been Filed in The Northern District of California...........6

    B.     Rockstar Has No Meaningful Connection to This Forum .......................................6

    C.     The Private Interest Factors Strongly Favor Transfer.............................................7

         1.     Documentary Sources of Proof Are Primarily Located in and Around the Northern District of California ...................................................7

         2.     The Cost of Attendance of Willing Witnesses in The Northern District of California is Lower Than in The Eastern District of Texas ......................................................................................................8

         3.     Availability of Compulsory Process Favors Transfer.................................9

         4.     There Are No Practical Problems With Transferring This Case to The Northern District of California or, Alternatively, to the Western District of Washington...............................................................11

    D.     The Public Interest Factors Similarly Favor Transfer or Are Neutral ..................11

         1.     The Northern District of California Have a Much Greater Interest in This Case...............................................................................................11

         2.     The Remaining Public Interest Factors Are Neutral.................................12

    E.     This Court Has Recently Transferred Cases on Similar Facts..............................12

II.     In the Alternative, the Court Should Stay This Action Pending Resolution of The Google Action.....................................................................................................13

Conclusion ...........................................................................................................14

i

## Table of Authorities

Page(s)

**Cases**

*Affinity Labs of Texas v. Samsung Electronics Co., Ltd.*
   2013 WL 5508122 (E.D. Tex.) .......................................................................... 13

*DataTern, Inc., v. Staples, Inc.*,
   No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185 ...................................... 16

*Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*,
   No. 08-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008) ......................... 15, 16

*In re Apple Inc.*,
   456 F. App'x 907 (Fed. Cir. 2012) ...................................................................... 7

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................................. 6, 7, 9

*In re Hoffman La-Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ................................................................. 10, 13

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) ............................................................................ 7

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) ........................................................................... 6

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ......................................................................... 14

*In re Volkswagen AG (Volkswagen I)*,
   371 F.3d 201 (5th Cir. 2004) .............................................................................. 9

*In re Volkswagen of America Inc. (Volkswagen II)*,
   545 F.3d 304 (5th Cir. 2008) .............................................................................. 6

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ...................................................................... 7, 12

*Invensense, Inc. v. STMicroelectronics, Inc.*,
   No. 13-cv-00405, 2014 WL 105627 (E.D. Tex. Jan. 10, 2014) ............................ 12

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*,
   No. 05-123, 2006 WL 2523137 (M.D. Fla. Aug. 30, 2006) ................................... 16

*Microlinc, LLC v. Intel Corp.*,
   No. 07-488, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ................................... 17

*Microsoft Corp. v. Geotag Inc.*,
   847 F. Supp. 2d 675 (D. Del. 2012) ................................................................... 15

ii

*On Semiconductor Corp v. Hynix Semiconductor, Inc.*,
    No. 09-390, 2010 WL 3855520 (E.D. Tex. Sep. 30, 2010) ....................................................... 8

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*,
    No. 11-53, (E.D. Tex. Feb. 10, 2012), Dkt. No. 106 ................................................. 8

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003) .......................................................................... 16

*Southwire Co. v. Cerro Wire, Inc.*,
    750 F. Supp. 2d 775 (E.D. Tex. 2010) ...................................................................... 17

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ........................................................................ 15, 16

*TransUnion Intelligence LLC v. Search Am., Inc.*,
    No. 10-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ......................................... 13

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ...................................................................................................... 6

## INTRODUCTION

Plaintiffs are litigation entities created by Apple and others for the purpose of manipulating venue to attack Google's Android platform in this District. Such a litigation shell game should not be tolerated and this case should be transferred to the Northern District of California, where Google has already filed a declaratory judgment action putting the Android platform and the same asserted patents at issue. Plaintiffs have made this case about Google and its Android platform because all of the Accused Products are those that have the Android platform.[1] Recognizing Plaintiffs' collateral attack on its product through lawsuits against Google's OEM's, Defendant Google Inc. filed a declaratory judgment that its Android platform does not infringe the patents asserted here (*Google Inc. v. Rockstar Consortium US LP*, Case No. 13-cv-5833 (N.D. Cal. filed December 23, 2013)) (the "Google Action").

The accused Android platform is owned, designed and developed by Google, which is headquartered in Mountain View, California. Asus's United States operations are based in the Northern District of California. Moreover, Apple Inc., who contributed the majority of the funds to acquire the asserted patents and has material information relating to the value and scope of assertion of these patents, is also based in California. Thus, the vast majority of witnesses and evidence and the convenience of the parties, favors transfer to the Northern District of California.

Should the Court determine that transfer is not warranted, it should stay this case under

---

[1] *See e.g.* Complaint, Dkt. No. 1 ¶14 (identifying accused products as "certain mobile communication devices having a version (or an adaption thereof) of Android operating system ("ASUS Mobile Communication Devices")"). Rockstar has brought six other separate actions in this District against fifteen defendants for infringement of the same patents asserted against Asus based on defendants' sale of only mobile devices that use Google Android OS. *See Rockstar Consortium US LP v. HTC Corp.*, Case No. 13-cv-895, Dkt. No. 23 ¶ 15; *Huawei Investment & Holding Co., Ltd.*, Case No. 13-cv-896, Dkt. No. 1 ¶ 22; *LG Electronics, Inc.*, Case No. 13-cv-898, Dkt. No. 1; *Pantech Co., Ltd.*, Case No. 13-cv-899, Dkt. No. 9 ¶ 15; *Samsung Electronics Co., Ltd.*, Case No. 13-cv-900, Dkt. No. 46 ¶¶ 25, 27; and *ZTE Corp.*, Case No. 13-cv-901, Dkt. No. 29 ¶ 15.

1

the customer suit exception due to the pending Google Action in the Northern District of

California ("NDCA").    Although Plaintiffs have moved to dismiss the Google Action, the

NDCA has indicated that it would deny the motion without prejudice and permit 90 days of

jurisdictional discovery.  The Google Action will at a minimum dispose of major questions at

issue in this case, and will likely moot this litigation entirely.

Consequently, Defendants ASUSTeK Computer, Inc. and Asus Computer International

(collectively, "Asus") hereby request that the Court to transfer this action to the NDCA, or, in the

alternative, stay this action—which is targeted at features of the Android platform developed by

Google—in light of Google's pending action.

## STATEMENT OF FACTS

### A.    Apple and Others Obtain the Asserted Patents and Form Rockstar entities

In January 2009, Nortel Networks and its affiliates (collectively "Nortel") filed for

bankruptcy in Canada and the United States.  *See* Declaration of Harold H. Davis ("Davis

Decl.") Exhibit 1 at ¶ 1.  In 2011, Nortel's patent portfolio, including the asserted patents, were

auctioned.  *Id.* at ¶¶ 14-16.  Five "Qualified Bidders" submitted bids for Nortel's portfolio

including - Ranger, Rockstar Bidco LP, Apple Inc., Intel, and Norpax LLC.  Rockstar Bidco LP

was a consortium of five of the world's largest technology companies, including Google

competitors, Blackberry, EMC, Ericsson, Microsoft, and Sony.  *Id.* at ¶ 17.  These companies,

including Apple, were provided access to the "electronic data room, and completed further due

diligence" on the Nortel Portfolio.  *Id.* at ¶ 18.

During the auction, Rockstar Bidco LP did not submit a bid after the fourth round of

bidding and thus was not permitted to submit further independent bids.  *Id.* at ¶ 27.  Ultimately,

in the nineteenth round of bidding, Apple, in partnership with Rockstar Bidco, submitted the

winning bid of $4.5 billion for the Nortel portfolio. *Id.* at ¶¶28-29  According to its filings with

2

the Securities and Exchange Commission, Apple contributed "approximately $2.6 billion," or 58% of the total bid price.  Davis Decl. Exhibit 2 ("Madigan Declaration")[2] at Ex. 4 thereto.  Presumably, the other companies comprising Rockstar Bidco contributed the balance.  Apple was responsible for contributing half of the "good faith deposit" upon submitting the winning bid in partnership with Rockstar Bidco.  Davis Decl. Ex. 1 at ¶ 34.  The Asset Purchase Agreement lists Rockstar Bidco LP, a Delaware Corporation, that was not registered in the state of Texas, as the "Purchaser" of the portfolio.  *Id.* (at Appendix B, p. 1).  The Asset Purchase Agreement was signed by Rockstar Bidco GP, LLC the purported "General Partner" of Rockstar Bidco, LP.  *Id.*  Rockstar Bidco GP, LLC is also a Delaware Corporation that is not registered to do business in Texas.  *See* Davis Decl. Exhibit 3.

To hold and assert these patents, Rockstar Bidco LP formed an interlocking and opaque network of companies including the two plaintiffs here, Rockstar Consortium US LP and MobileStar LLC (collectively, "Rockstar").  Madigan Decl. Exs. 1, 5-9.  Rockstar is admittedly a "patent licensing business" that produces no products and practices no patents.  *Id.* at Ex. 10.  Instead, Rockstar engineers examine other companies' successful products to develop infringement allegations, its licensing staff send demand letters to those companies, and Rockstar extracts licenses to its patents under threat of litigation.  Madigan Decl. at Exs. 1, 11.

**B.     Rockstar Consortium US LP and MobileStar File This Action**

On October 30, 2013, Rockstar Consortium US LP formed a wholly owned subsidiary, MobileStar LLC ("MobileStar").  Madigan Decl. Ex. 8.  The next day, on October 31, 2013, Rockstar Consortium US LP transferred to MobileStar ownership of five of the seven patents in suit.  Madigan Decl. Ex. 12.  That same day, Rockstar filed this action and six others accusing

---

[2] All references to the "Madigan Decl." are contained in Exhibit 2 to the Davis Declaration.

3

Android OEMs of infringement by "certain mobile communication devices having a version (or an adaption thereof) of Android operating system" developed by Google.  *See e.g.*, Dkt. No. 22 ¶ 14. Although it is well-known that Google is the author of the Android platform, Rockstar chose not to sue Google itself.  *Id.*

On December 23, 2013, Google filed a declaratory action in the Northern District of California, seeking judgment that Android does not infringe the same patents. *See Google Inc. v. Rockstar Consortium US LP*, N.D. Cal. Case No. 13-5833, Dkt. No. 1.

### C.    Rockstar's Principal Place of Business is in Canada, Not Texas

Each of Rockstar Consortium US LP and MobileStar LLC claims to have "its principal place of business" in Texas.[3] Am. Compl. ¶¶ 1-2.  Rockstar's own public records, however, reveal that its principal place of business actually is in Ottawa, Canada.

First, and foremost, Rockstar Consortium US LP's Texas Franchise Tax records lists its mailing address as 515 Legget Dr. Suite, 300, Ottawa, Ontario, Canada.  Davis. Decl. Ex. 4.

Second, Rockstar's website lists addresses in Canada and Texas; Canada comes first, and has the only phone number (a Canadian number).  Madigan Decl. at Ex. 10.  The same website links to Rockstar's LinkedIn page, which lists Rockstar's Canadian address as its "headquarters." *Id.* Exs. 13-14.  Rockstar also lists its employees on LinkedIn; there are 32 of them, with only five in Texas.  *Id.* at Exs. 14-15. The bulk of Rockstar's employees, including its senior management, work in Ontario, Canada.  *Id.* at Ex. 16.  Of these ten members of Rockstar's senior management, five work in Canada; one each in California, Colorado, Massachusetts, New York, and Pennsylvania; and none in Texas.  *Id.* at Exs. 15-19.  In addition to its senior management,

---

[3] Rockstar Consortium US LP and MobileStar are both Delaware entities claiming their "principal place of business" at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, Texas.  (Dkt. No. 23 ("Am. Compl.") ¶¶ 1-2.)

Rockstar lists on its website six "Corporate Leaders," none of whom are from Texas. *Id.* Ex. 20. Moreover, MobileStar is nothing more than a corporate shell created the day before this suit was filed for the purpose of holding ownership and licensing rights in some of the asserted patents.

Third, Rockstar's pre-suit communications confirm its Canadian nexus and lack of connection to Texas. Rockstar's initial correspondence to Asus was a letter that identified Rockstar Consortium US LP as located at 300-515 Legget Drive, Kanata, Ontario, K2K 3G4 Canada. Davis Decl. Ex. 5. The letter was sent by Afzal Dean, who provided an office telephone number, a mobile telephone number, and a facsimile number all in the 613 area code. *Id.* The 613 area code is for Ontario, Canada. *Id.* This is consistent with a March 12, 2012, press release that was sent with Mr. Dean's letter. That Rockstar Consortium US LP news release has an Ottawa, Canada dateline. *Id.*

The patent assignment of four asserted patents from Rockstar Consortium US LP to MobileStar further reveals Rockstar's true Canadian principal place of business.[4] Madigan Decl. Ex. 12. On the same day this suit was filed, this transaction was executed by two members of Rockstar's senior management, in Canada, and duly witnessed and notarized by Rockstar's Canadian corporate counsel. *Id.* Indeed, MobileStar did not even register with the Texas Secretary of State, as required by law, until more than a month later. *See* Dkt. No. 15 and Case No. 2:13-cv-900, Dkt. Nos. 26 and 33.

## ARGUMENT

### I. The Court Should Transfer to the Northern District of California

The NDCA is clearly a more convenient forum than the Eastern District of Texas, thus

---

[4] The following asserted patents were transferred in this transaction: U.S. Patent No. 6,037,937 ("the '937 Patent"); U.S. Patent No. 6,463,131 ("the '131 Patent"); U.S. Patent No. 6,765,591 ("the '591 Patent"); U.S. Patent No. 6,937,572 ("the '572 Patent").

5

warranting transfer. 28 U.S.C. § 1404(a) (for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).   In evaluating whether the proposed transferee forum is sufficiently more convenient, courts look to "private" and "public" interest factors.   *In re Volkswagen of America Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008).   The law requires an "individualized, case-by-case consideration of convenience and fairness" to the parties, *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964), and forbids "treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer for the convenience of the parties."   *In re Nintendo Co.*, 589 F.3d 1194, 1198, 1200 (Fed. Cir. 2009).

Here, Asus's US operations are in California, the accused instrumentality (the Android operating system) was authored by Google, who is based in California, Google has already filed a suit putting at issue the Android platform in California, and a critical witness, Apple, is also based in California.

**A.     This Action Could Have Been Filed in The Northern District of California**

Asus is subject to jurisdiction in NDCA, thus this action "'might have been brought' in the destination venue."   *Volkswagen II*, 545 F.3d at 312; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009); *see also* Declaration of Godwin Yan ("Yan Decl.") ¶¶ 4, 5, 8).

**B.     Rockstar Has No Meaningful Connection to This Forum**

Although both Rockstar Consortium LP and MobileStar claim their "principal place of business" is in this District, the facts prove otherwise.   (*See supra* Statement of Facts).   Thus, transfer is appropriate.   *See e.g. In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and stating that if "the record reveals attempts at manipulation" regarding the principal place of business, "take as the 'nerve center' the place of actual direction, control,

6

and coordination, in the absence of such manipulation."); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (noting that Courts should "ensure that the purposes of jurisdiction and venue laws are not frustrated by a party's attempts at manipulation," and finding the patentee's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation."). "Courts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'" *In re Apple Inc.*, 456 F. App'x 907, 908-09 (Fed. Cir. 2012).

### C.    The Private Interest Factors Strongly Favor Transfer

#### 1.    Documentary Sources of Proof Are Primarily Located in and Around the Northern District of California

This factor turns on "which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *On Semiconductor Corp v. Hynix Semiconductor, Inc.*, No. 09-390, 2010 WL 3855520, at *2 (E.D. Tex. Sep. 30, 2010). Although relevant documents may be "spread throughout the country and the world," including in Texas, this factor still favors transfer to the NDCA because it is closer to most of Defendants' documents and, "typically in a patent case, the defendant has the majority of relevant documents." *Id.* Here, Asus's documents are managed and maintained in Taiwan and Freemont, California. Declaration of Godwin Yan ("Yan Decl.") ¶¶ 8-10; *see also* Declaration of Marvin Hsu ("Hsu Decl.") ¶¶ 8-10.

The documents of crucial third-party witness Google also are located in NDCA (Case No. 2:13-cv-894, Dkt. No. 52-29, Dubey Decl.), as presumably are those of Rockstar investor Apple, which is based in California. "The volume of physical evidence located in, or closer to, the transferee forum" is significant "especially when no physical evidence is located in Texas."

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*, No. 11-53, at 4 (E.D. Tex. Feb. 10, 2012), Dkt. No.

106.  The location of relevant documents favors transfer to the NDCA.

> **2.    The Cost of Attendance of Willing Witnesses in The Northern District of California is Lower Than in The Eastern District of Texas**

Transfer to NDCA will serve the convenience of the witnesses, which is "probably the

single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343.

ASUSTeK Computer Inc. is headquartered in Taiwan (Hsu Decl. ¶3) and ASUS

Computer International is headquartered in Freemont, California (Yan Decl. ¶4).    ASUS's

potential witnesses, specifically identified, are located in Taiwan and California, including

employees responsible for the research, design, development, marketing and sales of the accused

products.  Hsu Decl. ¶¶ 3, 8-10 and Yan Decl. ¶¶ 8-10.  There are no relevant ASUS documents

or employees in the Eastern District of Texas.  Hsu Decl. ¶ 10, Yan Decl. ¶¶ 9-12.

In addition, the bulk of the technology at issue is contained in the Android operating

platform.  The history of Android is rooted in the Northern District, including former Android

employees and executives responsible for the research, design, and development of the accused

features.  *See* Case No. 2:13-cv-894, Dkt. No. 52, Dubey Decl. at ¶¶ 3-9, 12.

NDCA is more than 100 miles from this District, so the "factor of inconvenience to

witnesses increases in direct relationship to the additional distance to be traveled."  *In re*

*Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 204-05 (5th Cir. 2004).  NDCA is a shorter

average travel distance for the vast majority of potential witnesses, including Google's witnesses

in California, Apple's witnesses in California, and ASUS's witnesses in Taiwan and California.

But the Court must consider not only average distance, but also travel time.  *See Id.* at 205 n.3.

This also favors transfer to NDCA.

Witnesses traveling to NDCA can fly into Oakland or San Francisco airports in less than

two hours, 10 and 25 miles from the courthouse hearing the Google Action in Oakland, California, while witnesses traveling to this Court must drive 170 miles from Dallas, or take a connecting regional flight into Shreveport and drive back 35 miles.[5]

Alternatively, the location of the relevant witnesses favors the NDCA over this District. ASUS's likely witnesses are located in Taiwan and California.  Hsu Decl. ¶¶ 9-10; Yan Decl. ¶¶ 8-12.  Finally, NDCA is more convenient for the prior art inventors, the Google witness, and the Apple witnesses, all of whom reside primarily in Northern California.  *Id.*  By contrast, traveling from the Bay Area and Taiwan to Marshall, Texas is costlier and a greater inconvenience.

### 3.      Availability of Compulsory Process Favors Transfer

Although under the amended Federal Rule of Civil Procedure 45, both this Court and the Northern District may enforce a subpoena issued to any nonparty witness located outside of the district, the need for live testimony of potential third parties favors transfer.  *In re Hoffmann-La Roche Inc.*, 587 F. 3d 1333, 1338 (Fed. Cir. 2009) (ruling that transferee court with absolute subpoena power over third parties is a factor that favors transfer). Key third parties such as Google witnesses with knowledge of the Android platform, including former employees, remain heavily concentrated in the Northern District.  *See* Case No. 2:13-cv-894, Dkt. No. 52-29, Dubey Decl.  At least one named inventor resides in the Northern District, and dozens of relevant prior artists of record live in the Northern District.[6]

NDCA is also home to Apple witnesses whom ASUS has no control over.  Davis Decl. Ex. 1 at ¶ 30.  Apple witnesses and documents present in NDCA will figure prominently in this case.  During the bidding process for the Asserted Patents, Apple employees had an opportunity

---

[5] Witnesses traveling from Rockstar's Ottawa headquarters must travel a significant distance to either district and therefore do not affect the Court's venue consideration.  *Genentech*, 566 F.3d at 1344.

[6] Case No. 2:13-cv-894, Dkt. No. 52 (Jachlewski Decl. ¶ 3).

9

to review Nortel documents about the patents, and to place a value on each of the asserted patents. *Id.* at ¶ 18. The documents Apple reviewed and the valuations, along with Apple witnesses involved in the bidding process, will be important evidence in the case. Apple's decision to purchase a controlling interest in the Nortel patents, but not purchase them outright, will also be key evidence likely going to the overall value of the patents, including each of the asserted patents. Further, throughout the bidding process, Apple was represented by Kyle Krpata of Weil Gotshal & Manges in Redwood Shores, California, which is in NDCA. Davis Decl. Ex. 6.

Rockstar has put at issue in this action the valuation of the entire portfolio auctioned by Nortel. Should Rockstar introduce evidence of the value of Google's alleged bids on the total Nortel portfolio, Asus will require the Court's assistance in providing testimony from Apple. Moreover, Apple's evaluation of the value and the scope of the portfolio is relevant information that is discoverable by Asus.

In contrast, no relevant non-party witness appears to reside in the Eastern District. None of the prosecuting attorneys on the asserted patents appear to reside here. Case No. 2:13-cv-894, Dkt. No. 52 (Jachlewski Decl. ¶ 4). It does not appear that a single inventor named on the asserted patents apparently resides in the Eastern District of Texas. *Id.* The sale of Nortel's patent portfolio took place in New York, in which Nortel was represented by New York attorneys. *Rockstar v. Google*, No. 13-893 (E.D. Tex.), Docket No. 33-1 ¶ 14. The former Nortel licensing executives involved in the sale and Rockstar's acquisition of the patents-in-suit reside in Canada and Massachusetts. Madigan Decl. Exs. 24-25. The Court should grant transfer where, as here, the present District "is convenient only for [plaintiff]'s litigation counsel." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

10

This Court cannot compel live testimony from this large number of out-of-state witnesses.  Defendants would be inconvenienced by being deprived the opportunity of presenting these non-party witnesses live.  Live witnesses are, in many circumstances, more dynamic and powerful.  Moreover, if the case is not transferred and Google remains in the case, Plaintiffs could compel live testimony on Google's valuation of the patents, but not live testimony from similarly situated Apple witnesses.  Forcing defendants to preemptively give up the opportunity to design its defense in offering live testimony is prejudicial.  Because Defendants do not have control over these non-party witnesses, this factor weighs heavily in favor of transfer.  *See Invensense, Inc. v. STMicroelectronics, Inc.*, No. 13-cv-00405, 2014 WL 105627, at *6 (E.D. Tex. Jan. 10, 2014).

    **4.**    **There Are No Practical Problems With Transferring This Case to The Northern District of California or, Alternatively, to the Western District of Washington**

There are no practical problems with transferring the case.  This case is just beginning – ASUS has not answered, discovery has not started, and the parties have not exchanged initial disclosures or contentions.  *TransUnion Intelligence LLC v. Search Am., Inc.*, No. 10-130, 2011 WL 1327038, *5 (E.D. Tex. Apr. 5, 2011).

    **D.**    **The Public Interest Factors Similarly Favor Transfer or Are Neutral**

    **1.**    **The Northern District of California Have a Much Greater Interest in This Case**

The Android platform is at the core of Rockstar's claims. Dkt 22 at ¶14.   "The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley." *Affinity Labs of Texas v. Samsung Electronics Co., Ltd,.* 2013 WL 5508122 (E.D. Tex.) The Northern District's local interest is even stronger, however, because this action "calls into question the work and reputation of several individuals

residing in or near that district and who presumably conduct business in that community." *In re Hoffman La-Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). By contrast, this District's interest is much weaker. Rockstar alleges only a single connection to this District, its asserted "principal place of business;" but its principal place of business is actually in Canada. (*See supra* Statement of Facts).[7] This factor favors transfer to NDCA.

### 2.    The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral. All districts are familiar with and can apply the federal patent laws to this patent infringement case, and no conflict of laws problems are expected to arise in either district. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

### E.    This Court Has Recently Transferred Cases on Similar Facts

This Court has transferred cases under similar circumstances in at least three recent cases. *See e.g.* ***Blue Spike, LLC v. Texas Instruments, Inc***., No. 12-cv-558 (E.D. Tex. Mar. 13, 2014), Dkt. No. 16, at pp. 5, 10 (granting Google motion to transfer to NDCA because 1) "the location of Defendant's sources of proof far outweighs the presence of Plaintiff's documents and servers in Texas"; and 2) compulsory process and the costs of attendance of attendance of witnesses favored transfer); ***Ingeniador, LLC v. Adobe Systems Inc***., No. 12-cv-805, 2014 WL 105106, *1-3 (E.D. Tex. Jan. 10, 2014) (granting transfer to NDCA even though some evidence was located in Texas, because most of the evidence and witnesses were located in the NDCA, and the inconvenience of a few Texas witnesses was outweighed by the "substantially increased convenience of witnesses in California" where most of the witnesses would come from); and

---

[7] Additionally, the allegedly infringing devices are "sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue." *TS Tech*, 551 F.3d at 1321 (Fed. Cir. 2008).

*Touchscreen Gestures v. HTC*, No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17, at pp. 7, 10 (transferring case where a Texas LLC was formed shortly before filing a patent suit against an Android platform OEM and holding that Google's documents were more easily accessed in the NDCA, and that NDCA was a more convenient for Google witnesses).

Here, the grounds to transfer are just as compelling as in those cases, if not more so, because all or nearly all of Google's relevant witnesses and documents, Asus's US witnesses and documents, and Apple witnesses and documents are located in the NDCA.

## II.    In the Alternative, the Court Should Stay This Action Pending Resolution of The Google Action

Because the Google Action will answer many, if not all, of the central questions at issue here, the Court should stay this case and allow that action to proceed to judgment. In the interest of judicial efficiency and to guard against abuse, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The manufacturer's case need not resolve every issue in the customer suits; it "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum*, 657 F.3d at 1358. The Google Action meets this test.

The Android platform originates with Google, which supervises "the design and production" of Android and is thus "in the best position to defend its own products." *Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, No. 08-11048, 2008 WL 2941116, at *5 (E.D. Mich. July 25, 2008); *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 681 (D. Del. 2012) (finding "the real dispute" was between the patentee and defendants Microsoft and Google, rather than customers who featured Microsoft and Google mapping services on their websites). The Google

13

Action should resolve "major issues" and will simplify this litigation, and may obviate the need for it altogether. *Spread Spectrum*, 657 F.3d at 1358; *DataTern, Inc., v. Staples, Inc.*, No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185 (staying customer suits in favor of declaratory judgment action brought by software developers in New York because "'in all likelihood [the New York cases] will settle many [issues] and simplify them all.'" (alterations in original).

At a minimum, the Google Action should resolve whether Google's Android operating system infringes the asserted patents, which "will efficiently dispose of the infringement issues" present in this case, *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003), and should promote judicial economy by encouraging "global" resolution rather than "piecemeal litigation." *Delphi Corp.*, 2008 WL 2941116 at *5; *Ricoh*, 279 F. Supp. 2d at 557 ("it is more efficient for the dispute to be settled directly between the parties in interest"); *see also Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, No. 05-123, 2006 WL 2523137, at *2 (M.D. Fla. Aug. 30, 2006) (stay will "preserve judicial resources, prevent duplicative expenses, and prevent the possibility of inconsistent judgments"). The Court should stay this action pending resolution of the Google Action.[8]

## CONCLUSION

For the foregoing reasons, ASUS respectfully requests that this Court transfer this case to the NDCA pursuant to 28 U.S.C. § 1404(a) or, in the alternative, stay this case pending resolution of Google Action.

---

[8] This Court should also stay this action under its inherent authority because this case is in its early stages, a stay will simplify the issues, and will not prejudice Rockstar. *See Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 778-80 (E.D. Tex. 2010). Rockstar is a non-practicing entity that can be fully compensated with damages. *Microlinc, LLC v. Intel Corp.*, No. 07-488, 2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010).

14

Dated:  March 25, 2014                    Respectfully submitted,

                                          /s/ Harold H. Davis_____
                                          *Attorneys for Defendants ASUStek Computer, Inc.
                                          and ASUS Computer International*

                                          Harold H. Davis, Jr., *Lead Attorney*
                                          California Bar No. 235552 (admitted in E.D. Tex.)
                                            harold.davis@klgates.com
                                          Rachel Maire (Pro Hac Vice)
                                          California Bar No. 292952
                                            rachel.maire@klgates.com
                                          K&L GATES LLP
                                          Four Embarcadero, Suite 1200
                                          San Francisco, CA 94111
                                          Telephone: 415.882.8200
                                          Facsimile: 415.882.8220

                                          Steven G. Schortgen
                                          Texas State Bar No. 00794603
                                            steve.schortgen@klgates.com
                                          Jennifer Klein Ayers
                                           Texas State Bar No. 24069322
                                            jennifer.ayers@klgates.com
                                          K&L GATES LLP
                                          1717 Main St.
                                          Suite 2800
                                          Dallas, Texas  75201
                                          214.939.5500
                                          214.939.5849 Facsimile

**– A1454 –**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed.   Harold H. Davis, on behalf of counsel for Asus Defendants, conferred in good faith with Josh Budwin, counsel for Plaintiffs by telephone on March 25, 2014.  The parties reached an impasse when Plaintiffs' Counsel stated that it opposes Defendants' Motion to Transfer, or in the Alternative to Stay, leaving an open issue for the Court to resolve.

*/s/    Harold H. Davis*
Harold H. Davis

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Harold H. Davis*

# EXHIBIT 4



# Franchise Tax Account Status

As of: 03/25/2014 12:16:47 PM

### This Page is Not Sufficient for Filings with the Secretary of State

| ROCKSTAR CONSORTIUM US LP | |
|---|---|
| Texas Taxpayer Number | 32048344538 |
| Mailing Address | 515 LEGGET DR STE 300<br>OTTAWA, ONTARIO, CANADA, K2K3G4 |
| Right to Transact Business in Texas | ACTIVE |
| State of Formation | DE |
| Effective SOS Registration Date | 08/01/2012 |
| Texas SOS File Number | 0801634459 |
| Registered Agent Name | NATIONAL CORPORATE RESEARCH, LTD. |
| Registered Office Street Address | 800 BRAZOS STE 400<br>AUSTIN, TX 78701 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § | Civil Action No. 13-cv-0895-JRG |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| HTC CORPORATION AND HTC AMERICA, INC. | § § § | |
| Defendants. | § § § § | |

## DEFENDANTS HTC CORPORATION'S AND HTC AMERICA, INC.'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO STAY

## TABLE OF CONTENTS

Page

STATEMENT OF RELEVANT FACTS ........................................................................2

    A.    The ND Cal Android Lawsuit...............................................................2

    B.    The Identical Patents and HTC Devices are at Issue in this Suit............................2

    C.    Google Android Witnesses and Documents are in N.D. Cal. ..................................3

    D.    Apple Witnesses and Documents are in N.D. Cal. ...................................................3

    E.    HTC's and Microsoft's Likely Witnesses and Documents are in Bellevue, Washington .....................................................................................................4

    F.    Rockstar's Principal Place of Business is in Canada, Not Texas ...........................5

ARGUMENT .......................................................................................................6

I.    The Most Convenient Forum for this Case is the Northern District of California. .............6

    A.    Judicial Economy Favors Transfer to N.D. Cal., Where the Real Parties in Interest Already Have a Case Pending Before the Forum With the Greatest Interest in the Issue Involved ........................................................................7

    B.    The Key Witnesses and Documents are Located in N.D. Cal. ...............................9

        1.    Google witnesses and documents ................................................9

        2.    Apple witnesses and documents ................................................10

        3.    HTC's and Microsoft's Witnesses in Bellevue, Washington ...................11

    C.    Rockstar Has no Meaningful Connection to This Forum ......................................12

II.    In the Alternative, the Court Should Stay This Action Pending Resolution of The ND Cal Android Lawsuit ...............................................................................13

Conclusion ........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 ............................................................................11

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
  Case No. 12-557, 2013 WL 5508122 (E.D. Tex. Sept. 18, 2013)........................................8, 9

*In re Apple Inc.*,
  456 F. App'x 907 (Fed. Cir. 2012) .........................................................13

*DataTern, Inc., v. Staples, Inc.*,
  Case No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185..............................14

*Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*,
  Case No. 08-11048, 2008 WL 2941116, (E.D. Mich. July 25, 2008) ...................14

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009).................................................................6, 9

*Google Inc. v. Rockstar Consortium US LP*,
  Case No. 13-5833 (N.D. Cal.).................................................1, 2, 8, 15

*Google Inc. v. Rockstar Consortium US LP et al.*,
  Case No. 13-cv-5933 ...................................................................................1

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)....................................................................................12, 13

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)..............................................................11

*Katz v. Lear Siegler, Inc.*,
  909 F. 2d 1459 (Fed. Cir. 1990)...........................................................13, 14

*Landis v. North Am. Co*,
  299 U.S. 248 (1936)..................................................................................14

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*,
  Case No. 05-123, 2006 WL 2523137 (M.D. Fla. Aug. 30, 2006) ...........................14

*Microlinc, LLC v. Intel Corp.*,
  Case No. 07-488, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ...........................15

ii

*In re Microsoft Corp.,*
    630 F.3d 1361 (Fed. Cir. 2011) ...................................................................12, 13

*Microsoft Corp. v. Geotag Inc.,*
    847 F. Supp. 2d 675 (D. Del. 2012) ...................................................................14

*On Semiconductor Corp v. Hynix Semiconductor, Inc.,*
    Case No. 09-390, 2010 WL 3855520 (E.D. Tex. Sep. 30, 2010) ......................9, 11

*Phil-Insul Corp. v. Reward Wall Sys., Inc.,*
    Case No. 11-53, at 4 (E.D. Tex. Feb. 10, 2012), Dkt. No. 106................................11

*Ricoh Company v. Aeroflex Inc.,*
    279 F. Supp. 2d 554, (D. Del. 2003) ...................................................................14

*Southwire Co. v. Cerro Wire, Inc.,*
    750 F. Supp. 2d 775 (E.D. Tex. 2010) .................................................................15

*Spread Spectrum Screening LLC v. Eastman Kodak Co.,*
    657 F.3d 1349 (Fed. Cir. 2011) .....................................................................13, 14

*Touchscreen Gestures v. HTC,*
    Case No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17.............................10

*TransUnion Intelligence LLC v. Search America, Inc.,*
    Case No. 10-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ............................8

*In re TS Tech,*
    551 F.3d 1315 (Fed. Cir. 2008)...........................................................................8

*In re Verizon Bus. Networking Servs. Inc.,*
    635 F.3d 559 (Fed. Cir. 2011)............................................................................9

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) (en banc) ......................................................6, 7, 11

*In re Zimmer Holdings, Inc.,*
    609 F.3d 1378 (Fed. Cir. 2010)...........................................................................13

**Statutes**

28 U.S.C. § 1404 ...........................................................................................1

28 U.S.C. § 1404(a) ...................................................................................6, 15

**Rules**

Fed. R. Civ. P. 45(b)(2)...................................................................................10

Fed. R. Civ. P. 45(c)(1)(B)(ii)..........................................................................................................10

Defendants HTC Corporation and HTC America, Inc. (collectively, "HTC") request, pursuant to 28 U.S.C. §1404, that this case be transferred to the Northern District of California for purposes of judicial economy and convenience to the witnesses.  The seven patents and the Android operating system accused  in this case are squarely at issue in *Google Inc. v. Rockstar Consortium US LP et al.,* Case No. 13-cv-5933, currently pending before Chief Judge Claudia Wilken in the Northern District of California (the "ND Cal Android Lawsuit").  The key witnesses in both cases will be Google engineers who develop the Android platform accused of infringing the asserted patents, and Apple witnesses who were involved in Apple investing 58% of the purchase price for the Nortel Networks ("Nortel") patent portfolio that included the asserted patents.  These key witnesses, and their documents, are located at Google in Mountain View, California, and at Apple, in Cupertino, California, both within the Northern District of California.  HTC  witnesses and documents are located in the Bellevue, Washington, which is a two-hour flight to the Northern District of California, allowing for a same-day roundrip to attend trial, rather than a four-hour flight, two-and-a-half hour rental car trip and overnight stay to the Eastern District of Texas.  Witnesses for plaintiffs Rockstar Consortium U.S. LLP and Mobilestar LLC (collectively "Rockstar") are based principally in Canada, which is equally inconvenient to Texas and California.

The issue in both this case and the pending ND Cal Android Lawsuit is whether the Android platform used in HTC devices infringes the seven asserted patents.  In view of this fact, at the very least, this case should be stayed under the customer suit exception until the ND Cal Android Lawsuit is finally resolved.

### STATEMENT OF RELEVANT FACTS

**A.      The ND Cal Android Lawsuit**

Google's Android platform used in HTC's devices is at the heart of the ND Cal Android Lawsuit.  The complaint specifically identifies HTC as one of Google's customers that uses the Android platform in its devices.  (Declaration of Curt Holbreich ("Holbreich Decl."), filed concurrently herewith, Ex. 1, ¶ 17 (*Google Inc. v. Rockstar Consortium US LP*, Case No. 13-5833 (N.D. Cal.), Complaint).)  The complaint asserts that no version of Google's Android platform directly or indirectly infringes any of United States Patent Nos. 5,838,551 (the "'551 patent"), 6,037,937 (the "'937 patent"), 6,128,298 (the "'298 patent"), 6,333,973 (the "'973 patent"), 6,463,131 (the "'131 patent"), 6,765,591 (the "'591 patent") and 6,937,572 (the "'572 patent").  (*Id.* at ¶¶ 25, 27-67.)

**B.      The Identical Patents and HTC Devices are at Issue in this Suit**

Google's Android platform is also at the heart of Rockstar's case against HTC.  In their Amended Complaint, plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Rockstar") allege that HTC makes, uses, tests, sells, offers to sell, imports, exports, supplies and/or distributes "HTC Mobile Communication Devices" in the United States. (Dkt. No. 23 ¶¶ 16, 18, 28, 32, 44, 48, 59, 65, 74, 79, 89, and 104.)  Rockstar defines these allegedly infringing HTC Mobile Communication Devices as "certain mobile communication devices having a version (or an adaptation thereof) of Android operating system."  (*Id.* at ¶ 15.) The accused HTC devises, using the Android platform, are accused of infringing the same seven patents at issue in the ND Cal Android Lawsuit – the '551 patent, the '937 patent, the '298 patent, the '973 patent, the '131 patent, the '591 patent and the '572 patent.  (*Id.* at ¶¶ 8-14.)

### C.    Google Android Witnesses and Documents are in the Northern District of California

As explained more fully in Google's separate motion to stay or to transfer this case to Northern District of California,[1] Google has been headquartered in Mountain View, California, since its founding in 1998.   (Holbreich Decl., Ex. 2, ¶¶ 4-6 (Declaration of Abeer Dubey ("Dubey Decl.")).)   The Android platform at issue originates with Google, which supervises "the design and production" of Android in Mountain View, California.  (*Id.* at ¶ 5.)  Google witnesses are concentrated in the San Francisco Bay Area, including engineers responsible for the research, design and development of the accused Android features.  (*Id.* at ¶¶ 7, 8.)  Google's design and development documents are managed and maintained from Google's headquarters in California. (*Id.* at ¶ 12.)

### D.    Apple Witnesses and Documents are in the Northern District of California

Apple is headquartered in Cupertino, California, also in the heart of the Northern District of California.   Apple paid the majority share of the purchase price for the 6,000+ patent portfolio sold by Nortel Networks in 2011 that included the asserted patents.   As Apple reported in its June 25, 2012 10-Q, Apple paid $2.6 billion of the total $4.5 billion purchase price, which is 58% of the total purchase price.  (Holbreich Decl., Ex. 3, p. 34 (Apple 10Q).)  Thus, information from Apple will be key to important issues in this case, such as license defenses and damages.

For example, during the bidding process, Nortel provided Apple access to Nortel's documents relating to the patents in suit.  (Holbreich Decl., Ex. 9, ¶¶ 17-18 (Seventy-First Report of the Monitor).)  Apple employees had an opportunity to review the documents and to place a value on each of the asserted patents.  (*Id.*)  The documents Apple reviewed and Apple's

---

[1] *Rockstar Consortium US LP et al. v. Samsung Electronics Co., LTD, et al.*, E.D. Tex. Case No. 13-cv-00900, Dkt. No. 52.

valuations, along with each of the Apple witnesses involved in the bidding process, will be important evidence in the case.

Throughout the bidding process, Apple was represented by Kyle Krpata of the Weil Gotshal law firm in Redwood Shores, California, which also is located within the Northern District of California.  (Holbreich Decl. Ex. 4 (Weil Gotshal web page).)  Pursuant to section 10.7 of the asset sale agreement, Mr. Krpata and his colleagues in Redwood Shores, California, were to receive all demands, notices, communications and reports provided for in the agreement. (Holbreich Decl. Ex. 9, section 10.7 (Appendix B to Seventy-First Report of the Monitor).)  Mr. Krpata and his colleagues in Redwood Shores, California, will be key witnesses on the value of the asserted patents and the transaction in which they were purchased from Nortel.  Documents maintained by Mr. Krpata and his colleagues in Redwood Shores, California, will figure prominently in the supposed valuation of the patents-in-suit.

### E.     HTC's Likely Witnesses and Documents are in Bellevue, Washington

HTC Corporation is a Taiwanese company with its principal place of business in Taiwan, ROC.  (Declaration of Stephanie Bariault in Support of Defendants' Motion to Transfer or, in the Alternative, Stay ("Bariault Decl."), filed concurrently herewith, ¶ 2.)  HTC America, Inc. is incorporated in the State of Washington and has its principal place of business in Bellevue, Washington. (*Id.*)  HTC's documents and witnesses related to the accused products are located in Bellevue, Washington; Seattle, Washington; San Francisco, California; and Taiwan, ROC.  (*Id.* at ¶¶ 8-11.)  There are no HTC documents and no HTC witnesses located in Texas.  (*Id.* at ¶¶ 9-10.)

It is less costly and more convenient for witnesses based in Bellevue, Washington, to travel two hours by air to the Northern District of California and return the same day, than to

4

travel four hours to Dallas / Fort Worth, then drive another two-and-a-half hours to the Eastern District of Texas, and have to stay overnight.  (Bariault Decl., at ¶¶ 17-19, 22-24, 27.)

### F.    Rockstar's Principal Place of Business is in Canada, Not Texas

Plaintiffs Rockstar Consortium US LP and MobileStar LLC claim to have their principal place of business in Texas. (Dkt. No. 23, ¶¶ 1-2.)  Rockstar Consortium's own public records reveal that its principal place of business actually is in Ottawa, Canada.

For instance, the bulk of Rockstar Consortium's employees, including its senior management, are based in Ontario, Canada:



(Holbreich Decl., Ex. 6, ¶ 16 (Declaration of Kristin J. Madigan ("Madigan Decl.")).)  Of these ten members, five work in Canada; one each in California, Colorado, Massachusetts, New York, and Pennsylvania; and none in Texas.  (*Id*. at ¶¶ 15-19.)  In addition to its senior management, Rockstar Consortium lists on its website six "Corporate Leaders," none of whom are in Texas. (*Id.* at ¶ 20.)

Rockstar Consortium's documents confirm its Canadian roots and lack of a Texas connection.  During pre-suit communications with HTC, Rockstar Consortium sent a letter on stationery that identified Rockstar Consortium as located at 300-515 Legget Drive, Kanata, Ontario, K2K 3G4 Canada.  (Holbreich Decl., Ex. 7 (Rockstar Consortium Correspondence).) The letter was sent by Afzal Dean, who provided an office telephone number, a mobile telephone

number, and a facsimile number all in the 613 area code.  (*Id.*)  The 613 area code is for Ontario,

Canada.  (*Id.*).  This is consistent with a March 12, 2012, Rockstar Consortium news release that

was included with Mr. Dean's letter.  The news release has an Ottawa, Canada dateline.

(Holbreich Decl., Ex. 8 (Rockstar Consortium Press Release).)

Rockstar Consortium's true Canadian principal place of business is further confirmed by

its transfer of five of the patents-in-suit from Rockstar Consortium to MobileStar.[2]  This critical

transaction was executed on the day this suit was filed by two members of Rockstar

Consortium's senior management *in Canada*—duly witnessed and notarized by Rockstar

Consortium's *Canadian* corporate counsel.  (Holbreich Decl., Ex. 6, ¶ 21 (Madigan Decl.).)

Plaintiff MobileStar did not even register with the Texas Secretary of State, as required

by law, until more than a month later.  (Dkt. No. 20, 2-4.)  Moreover, MobileStar has no known

employees.  It is nothing more than a corporate shell created the day before this suit was filed for

the sole purpose of holding certain ownership and licensing rights in the seven asserted patents.

## <u>ARGUMENT</u>

### I.    The Most Convenient Forum for this Case is the Northern District of California

The two critical factors in determining the most convenient forum in this case are judicial

economy and the location of key witnesses and documents.  Here, both of these factors point

decidedly in favor of the Northern District of California.

For "the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (citing *In re*

---

[2]    The following asserted patents were transferred from Rockstar Consortium to MobileStar:  the '937 patent; the '973 patent; the '131 Patent; the '591 Patent; and the '572 Patent.

*Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).   In

evaluating whether the proposed transferee forum is sufficiently more convenient, courts look to

"private" and "public" interest factors:

> The private interest factors are:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.   The public interest factors are:   (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Volkswagen II*, 545 F.3d 304, 315 (5th Cir. 2008) (citation omitted).   Prior to evaluating the

private and public interest factors the Court must first determine "whether a civil action 'might

have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312.

In this case, defendants HTC Corp. and HTC America both are subject to jurisdiction in

the Northern District of California, thereby satisfying this threshold issue.  (Bariault Decl., ¶¶ 9,

11, 12.)  On both of the critical factors for the transfer test – judicial economy (public interest

factor 1) and the location of witnesses and documents (private interest factors 1, 3, and 4) – the

Northern District of California is, by far, the clearly more convenient forum.[3]

**A.    Judicial Economy Favors Transfer to N.D. Cal., Where the Real Parties in Interest Have a Case Pending Before the Forum With the Greatest Interest in the Issues Involved**

This case is about the Android platform on which the HTC devices operate.  For each of

the seven asserted patents, Rockstar alleges that HTC makes, uses, tests, sells, offers to sell,

---

[3]  Public interest factor No. 2, having localized interests decided at home, is addressed in Section I.A., *supra,* which explains that the Northern District of California has a favored interest in resolving this issue.  Section I.C, *supra*, explains that Rockstar has no real interest in the Eastern District of Texas.  Public interest factors Nos. 3 and 4, familiarity with the governing law and conflicts of laws issues also are neutral.  Private interest factor No. 2, the availability of compulsory process favors transfer to the Northern District of California, as explained in Section I.B.2, *supra*.

imports, exports, supplies and/or distributes "HTC Mobile Communication Devices" within the United States.  (Dkt. No. 23, ¶¶ 16, 18, 28, 32, 44, 48, 59, 65, 74, 79, 89, and 104.)  Rockstar defines these allegedly infringing HTC Mobile Communication Devices as "certain mobile communication devices having a version (or an adaptation thereof) of Android operating system." (*Id.* at ¶ 15.)

Google, the designer of the accused Android platform, and Rockstar are currently engaged in a lawsuit in the Northern District of California involving the same Android platform and the same seven patents.  The complaint in the ND Cal Android Lawsuit specifically identifies HTC as a Google customer that uses the Android platform in its devices. (Holbreich Decl., Ex. 1, ¶ 17 (*Google Inc. v. Rockstar Consortium US LP*, Case No. 13-5833 (N.D. Cal.), Complaint).)  The complaint asserts that no version of Google's Android platform used in the HTC devices directly or indirectly infringes any of the seven asserted patents.  (*Id.* at ¶ 25.)  It would be an unnecessary waste of judicial resources to proceed with this case when the same patents and the same Android platform already are at issue between the real parties in interest in the Northern District of California.

As previously recognized by this Court, "[t]he Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley."  *Affinity Labs of Texas v. Samsung Elecs. Co.*, Case No. 12-557, 2013 WL 5508122, *3 (E.D. Tex. Sept. 18, 2013).  This includes the Android platform, which is designed and developed by Google in Mountain View, California.  (Holbreich Decl., Ex. 2,  ¶ 5 (Dubey Decl.).)  By contrast, this District's interest is much more tenuous.  Rockstar alleges only a single

connection to this District – its asserted principal place of business; but, as explained in Section I.C, *supra*, the real locus of its business is in Canada.[4]

This case has only just begun.  Transfer at this early stage would avoid the unnecessary waste of judicial resources.  *TransUnion Intelligence LLC v. Search America, Inc.*, Case No. 10-130, 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011).  Even if this case has progressed by the time the instant motion is heard, the Local Patent Rules of this District were patterned on the Local Patent Rules of the Northern District of California, meaning any work the parties have done in this District will not be wasted.  *Affinity Labs of Texas*, 2013 WL 5508122, *3.

### B.  The Key Witnesses and Documents are Located in N.D. Cal.

The pending ND Cal Android Lawsuit is a strong factor favoring transfer to the Northern District of California.  But there is more.  The key witnesses and documents are located in the Northern District of California.  The Federal Circuit has recognized that the convenience of the witnesses is "probably the single most important factor in transfer analysis."  *Genentech*, 566 F.3d at 1343; *In re Verizon Bus. Networking Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011); *Hynix*, 2010 WL 3855520, at *5 (citing *Genentech*, 566 F.3d 1343).  Here, the critical third-party Google and Apple witnesses and documents all are located in the Northern District of California.

### 1.  Google witnesses and documents

Rockstar focused its allegations on the Android platform by defining the allegedly infringing HTC Mobile Communication Devices as "certain mobile communication devices having a version (or an adaptation thereof) of *Android operating system*."  (Dkt. No. 23, ¶ 15)

---

[4] Additionally, the allegedly infringing devices are "sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue."  *In re TS Tech*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

(emphasis added.)    Virtually all of the documentary and testimonial evidence relevant to Rockstar's claims resides in the Northern District of California.

Google designs and produces the Android platform from its headquarters in in Mountain View, California.    (Holbreich Decl., Ex. 2, ¶¶ 4-6 (Dubey Decl.).)    The relevant Google witnesses are located in the San Francisco Bay Area, including engineers responsible for the research, design and development of the accused Android features.    (*Id.* at ¶¶ 7, 8.)    The relevant Google documents, including those pertaining to design and development of Android, are managed and maintained from Google's headquarters in Mountain View, California.    (*Id.* at ¶ 12.)    This Court recently ordered transfer to the Northern District of California on remarkably similar facts.    *Touchscreen Gestures v. HTC*, Case No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17 (granting motion to transfer in suit against Google OEM, HTC, where Court found that the Northern District of California was more convenient for Google's witnesses and Google's documents were more easily accessed in that forum).

### 2.    Apple witnesses and documents

Documents and witnesses from Apple – one of the two main founding entities behind Rockstar – will be key to important issues in this case.    Apple had a majority interest in the purchasing of the Nortel patent portfolio, including the asserted patents.    (Holbreich Decl., Ex. 3, p. 34 (Apple 10Q).)    Apple had access to Nortel's documents relating to the patents in suit. (Holbreich Decl., Ex. 9, ¶¶ 17-18 (Seventy-First Report of the Monitor).)    Most importantly, Apple employees had an opportunity to review the documents and to place a value on each of the asserted patents.    (*Id.*)    The documents Apple reviewed and Apple's valuations, along with each of the Apple witnesses involved in the bidding process, will be important evidence in the case. These documents presumably reside in Cupertino, California.    Apple's counsel during the bidding process, Mr. Krpata and his colleagues in Redwood Shores, California, also will be key

witnesses on the value of the asserted patents and the transaction in which they were purchased. (Holbreich Decl., Ex. 4 (Weil Gotshal web page).)

It is true that both this Court and the Northern District of California can issue nationwide deposition subpoenas under Fed. R. Civ. P. 45(b)(2).  But each Court can only compel the trial attendance of non-party witnesses residing within the state where the Court sits.  Fed. R. Civ. P. 45(c)(1)(B)(ii).  Only the court in the Northern District of California has the authority to compel live testimony at trial from important, but potentially unwilling, trial witnesses in Silicon Valley, such as non-party Apple and Google employees.  Live testimony from these witnesses at trial, rather than canned videotape clips, is a key strategic factor for HTC.[5]

### 3.    HTC's Witnesses in Bellevue, Washington

HTC's likely witnesses are located in Taiwan, and in Bellevue, Washington.  (Bariault Decl., ¶¶ 8, 10, 11, 14, 15, 16.)  These witnesses include employees responsible for the research, design, development, marketing and sales of the accused products.  (*Id.*)  There are no expected HTC witnesses located in the Eastern District of Texas.  (*Id.* at ¶ 10.)  The Northern District of California is a less costly and more convenient forum for HTC's Washington-based witnesses to travel to than the Eastern District of Texas.  (*Id.* ¶¶ 17-19, 22-24, 27.)

Additionally, HTC's relevant documents are managed and maintained in Taiwan, Washington State and San Francisco, California.  (*Id.* at ¶¶ 9, 11.)   By contrast, no relevant HTC or Rockstar documents are located in Texas.  (*Id.*); *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 872 (E.D. Tex. 2013 ("documents relocated in anticipation of litigation are not considered.") (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-7 (Fed. Cir. 2009)).

---

[5] Importantly, the court in Northern District of California also has the authority to compel live trial testimony from relevant prior art inventors, dozens of whom live in the Northern District.  (Holbreich Decl., Ex. 5,  ¶ 3 (Declaration of Dale Jachlewski ("Jachlewski Decl."))).

"The volume of physical evidence located in, or closer to, the transferee forum" is significant "especially when no physical evidence is located in Texas." *Phil-Insul Corp. v. Reward Wall Sys., Inc.*, Case No. 11-53, at 4 (E.D. Tex. Feb. 10, 2012), Dkt. No. 106; *On Semiconductor Corp v. Hynix Semiconductor, Inc*., Case No. 09-390, 2010 WL 3855520, at *2 (E.D. Tex. Sep. 30, 2010) (citing *Volkswagen II*, 545 F.3d at 314-15).

### C.    Rockstar Has no Meaningful Connection to This Forum

Although both Rockstar Consortium LP and MobileStar claim their principal place of business is in this District, the facts prove otherwise.  (Statement of Relevant Facts, *supra*, Section F)  Further, during pre-suit communications with HTC, Rockstar sent a letter on stationery that identified Rockstar Consortium US LP as located at 300-515 Legget Drive, Kanata, Ontario, K2K 3G4 Canada.  (Holbreich Decl., Ex. 7 (Rockstar Consortium Correspondence).)  The letter was sent by Afzal Dean, who provided an office telephone number, a mobile telephone number and a facsimile number all in the 613 area code.  (*Id.*)  The 613 area code is for Ontario, Canada.  (*Id.*)  This is consistent with a March 12, 2012, news release from Rockstar Consortium US LP that was included with Mr. Dean's letter.  That news release has an Ottawa, Canada dateline.  (Holbreich Decl. Ex. 8 (Rockstar Consortium Press Release).)

The Supreme Court has defined "principal place of business" as "the place where a corporation's officers direct, control, and coordinate the corporation's activities," also known as "the corporation's 'nerve center.'"  *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010).  Citing *Hertz Corp.*, the Federal Circuit has transferred similar cases out of this District.  *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and reminding that courts should, if "the record reveals attempts at manipulation" regarding the principal place of business, "take as the 'nerve center' the place of actual direction, control, and coordination, in the absence

12

of such manipulation."); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (noting that *Hertz Corp.* urges "courts to ensure that the purposes of jurisdiction and venue laws are not frustrated by a party's attempts at manipulation," and finding the patentee's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation."). "Courts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'" *In re Apple Inc*., 456 F. App'x 907, 908-09 (Fed. Cir. 2012) (quoting *In re Microsoft Corp., 630 F.3d 1361, 1364 (Fed. Cir. 2011)).

Moreover, no relevant non-party witnesses appear to reside in the Eastern District of Texas. The Court should grant transfer where, as here, the present District "is convenient only for [plaintiff]'s litigation counsel." *In re Zimmer Holdings, Inc*., 609 F.3d 1378, 1381 (Fed. Cir. 2010).

## II.    In the Alternative, the Court Should Stay This Action Under the Customer-Suit Exception, Pending Resolution of The ND Cal Android Lawsuit

Because the ND Cal Android Lawsuit will answer many, if not all, of the central questions at issue here, the Court should, in the alternative, stay this case under the customer-suit exception and allow that action to proceed to judgment. In the interest of judicial efficiency and to guard against abuse, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 F. 2d 1459, 1464 (Fed. Cir. 1990)). The manufacturer's case need not resolve every issue in the customer suits; it "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). The ND Cal Android Lawsuit meets this test.

13

The Android platform originates with Google, which supervises "the design and production" of Android and thus is "in the best position to defend its own products." *Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, Case No. 08-11048, 2008 WL 2941116, at *5 (E.D. Mich. July 25, 2008); *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 681 (D. Del. 2012) (finding "the real dispute" was between the patentee and defendants Microsoft and Google, rather than customers who featured Microsoft and Google mapping services on their websites). The ND Cal Android Lawsuit should resolve "major issues" and will simplify this litigation, and may obviate the need for it altogether. *Spread Spectrum*, 657 F.3d at 1358; *DataTern, Inc., v. Staples*, *Inc.*, Case No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185 (staying customer suits in favor of declaratory judgment action brought by software developers in New York because "'in all likelihood [the New York cases] will settle many [issues] and simplify them all.'" (quoting *Landis v. North Am. Co*, 299 U.S. 248, 256 (1936) (alterations in original)).

At a minimum, the ND Cal Android Lawsuit should resolve whether Google's Android platform infringes the asserted patents, which "will efficiently dispose of the infringement issues" present in this case, *Ricoh Company v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003), and should promote judicial economy by encouraging "global" resolution rather than "piecemeal litigation." *Delphi Corp.*, 2008 WL 2941116 at *5; *Ricoh*, 279 F. Supp. 2d at 557 ("it is more efficient for the dispute to be settled directly between the parties in interest"); *see also Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, Case No. 05-123, 2006 WL 2523137, at *2 (M.D. Fla. Aug. 30, 2006) (stay will "preserve judicial resources, prevent duplicative expenses,

and prevent the possibility of inconsistent judgments"). The Court should stay this action pending resolution of the ND Cal Android Lawsuit.[6]

## <u>CONCLUSION</u>

For the foregoing reasons, HTC respectfully requests that this Court transfer this case to the Northern District of California, pursuant to 28 U.S.C. § 1404(a) or, in the alternative, stay this case pending resolution of the *Google v. Rockstar* lawsuit currently pending in the Northern District of California.

Respectfully submitted,

Dated: March 26, 2014                    K&L GATES LLP

By: */s/ Michael J. Bettinger*

Michael J. Bettinger (*Pro Hac Vice*)
Lead Attorney
California State Bar No. 122196
mike.bettinger@klgates.com
Curt Holbreich
California State Bar No. 168053
curt.holbreich@klgates.com
**K&L Gates LLP**
4 Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone:  (415) 882-8200
Facsimile:  (415) 882-8220

Steven G. Schortgen
Texas State Bar No. 00794603
steve.schortgen@klgates.com
**K&L Gates LLP**

---

[6] This Court also should stay this action under its inherent authority because this case is in its early stages, a stay will simplify the issues, *see supra* at 5, and will not prejudice Rockstar. *See Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 778-80 (E.D. Tex. 2010). Rockstar is a non-practicing entity that can be fully compensated with damages. *Microlinc, LLC v. Intel Corp.*, Case No. 07-488, 2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010).

1717 Main St.
Suite 2800
Dallas, Texas  75201
214.939.5500
214.939.5849 Facsimile

Attorneys for Defendants
HTC CORPORATION and
HTC AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court in compliance with Local Rule CV-5(a).  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Michael J. Bettinger*
Michael J. Bettinger

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed.   Hal Davis, on behalf of counsel for HTC Defendants, conferred in good faith with Josh Budwin, counsel for Plaintiffs by telephone on March 25, 2014.  The parties reached an impasse when Plaintiffs' Counsel stated that it opposes Defendants' Motion to Transfer, or in the Alternative to Stay, leaving an open issue for the Court to resolve.

*/s/ Michael J. Bettinger*
Michael J. Bettinger

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, INC. and MOBILESTAR TECHNOLOGIES, LLC, | § § § | Civil Action No. 13-cv-0898-JRG |
| Plaintiffs, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., and LG ELECTRONICS MOBILECOMM USA INC., | § § § § § | |
| Defendants. | § § § § | |

## LG DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, <u>TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................2

    A.    The LG Action ...........................................................................................2

    B.    The Google Action And Rockstar's Subsequent Claims Against Google .............2

III.  LEGAL STANDARDS ........................................................................................3

    A.    A Court's Inherent Authority To Stay A Case ..........................................3

    B.    The Customer-Suit Exception ...................................................................3

    C.    Transfer Pursuant To 28 U.S.C. § 1404(a) ..............................................3

IV.   ARGUMENT .......................................................................................................4

    A.    The Court Should Stay This Action Pending The Resolution Of Google's
Declaratory Judgment Action In The Northern District Of California .................4

        1.    The Court Should Stay This Action Because It Will Simplify The
Issues And Preserve The Parties' And The Court's Resources,
Without Causing Any Prejudice To Rockstar ...........................................4

        2.    The Court Should Also Stay This Action Pursuant To The
Customer-Suit Exception ...........................................................................6

    B.    Alternatively, This Action Should Be Transferred Pursuant To
28 U.S.C. § 1404(a) To The Northern District Of California ...............................8

        1.    Rockstar Could Have Brought This Action In The Northern
District Of California ..................................................................................8

        2.    The Private Interest Factors Strongly Favor Transfer ...............................9

            i.    Cost Of Attendance For Willing Witnesses .....................................9

            ii.   Relative Ease Of Access To Sources Of Proof .............................12

            iii.  Availability Of Compulsory Process .............................................13

            iv.   There Are No Practical Problems Preventing Transfer ................14

        3.    The Public Interest Factors Favor Transfer To The Northern
District Of California Or Are Neutral........................................................14

          4.    This Court Has Recently Transferred Cases On Similar Facts ................. 15

V.    CONCLUSION ........................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adaptix, Inc. v. HTC Corp.*,
    937 F.Supp.2d 867 (E.D. Tex. 2013) ................................................................. 13

*Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*,
    No. 12-CV-557, 2013 WL 5508122 (E.D. Tex. Sept. 18, 2013) ........................... 14

*Blue Spike, LLC v. Texas Instruments, Inc.*,
    No. 12-cv-558 (E.D. Tex. Mar. 13, 2014), Dkt. No. 16 ........................................ 15

*Ciena Corp. v. Nortel Networks Inc.*,
    No. 2:05 CV 14, 2005 WL 1189881 (E.D. Tex. May 19, 2005) ............................. 7

*Clinton v. Jones*,
    520 U.S. 681 (1997) ............................................................................................... 3

*DataTern, Inc., v. Staples, Inc.*,
    No. 2:10-CV-133 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185 ................................... 7

*Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, No. 08-CV-11048, 2008 WL 2941116 (E.D. Mich. July
    25, 2008) ............................................................................................................. 7, 8

*In re Fusion-IO, Inc.*,
    Misc. Dkt. No. 139, 2012 U.S. App. Lexis 26311 (Fed. Cir. 2012) ..................... 15

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) .......................................................... 9, 10, 12, 13

*Google Inc. v. Rockstar Consortium US LP*,
    No. 13-cv-5933 (N.D. Cal.), Dkt. No. 1 ................................................................ 2

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ..................................................................... 13, 14

*In re Horseshoe Entm't*,
    337 F.3d 429 (5th Cir. 2003) ................................................................................ 15

*Ingeniador, LLC v. Adobe Systems Inc.*,
    No. 12-cv-805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) ............................... 15

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 2011) ..................................................................... 3, 6, 8

*Landis v. North American Co,*
    299 U.S. 248 (1936) ................................................................8

*Microlinc, LLC v. Intel Corp.,*
    No. 2:07-CV-488-TJW, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ................5

*In re Microsoft Corp.,*
    630 F. 3d 1361 (Fed. Cir. 2011) ......................................................11

*Microsoft Corp. v. Geotag Inc.,*
    847 F. Supp. 2d 675 (D. Del. 2012) ..................................................7

*In re Nintendo Co.,*
    589 F.3d 1194 (Fed. Cir. 2009) .......................................................4

*Phil-Insul Corp. v. Reward Wall Sys., Inc.,*
    No. 6:11-CV-53 (E.D. Tex. Feb. 10, 2012), Dkt. 106..............................12

*Ricoh Co., Ltd. v. Aeroflex Inc.,*
    279 F. Supp. 2d 554 (D. Del. 2003) ...............................................7, 8

*Rmail Ltd. v. Amazon.com, Inc.,*
    No. 10-cv-258, 2014 U.S. Dist. Lexis 25597 (E.D. Tex. Jan. 30, 2014)...........3, 4

*Southwire Co. v. Cerro Wire, Inc.,*
    750 F. Supp. 2d 775 (E.D. Tex. 2010) ...............................................6

*Soverain Software LLC v. Amazon.com, Inc.,*
    356 F. Supp. 2d 660 (E.D. Tex. 2005) ...............................................3

*Spread Spectrum Screening LLC v. Eastman Kodak Co.,*
    657 F. 3d 1349 (Fed. Cir. 2011) ...............................................3, 6, 7

*Touchscreen Gestures v. HTC,*
    No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17 ...........................15

*In re TS Tech,*
    551 F.3d 1315 (Fed. Cir. 2008) ......................................................15

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) .................................................................4

*In re Volkswagen AG (Volkswagen I),*
    371 F.3d 201 (5th Cir. 2004)......................................................4, 11

*In re Volkswagen of Am., Inc. (Volkswagen II),*
    545 F.3d 304 (5th Cir. 2008) (en banc) ..........................................4, 12

*Wolf Designs, Inc. v. Donald McEvoy, Ltd.*,
    341 F.Supp. 2d 639 (N.D. Tex. 2004) ...............................................................5, 7

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) .................................................................11, 13

**Federal Statutes**

28 U.S.C. §§ 1391 ...............................................................................................8, 9

28 U.S.C. § 1400 ...................................................................................................8

28 U.S.C. § 1404(a) .....................................................................................3, 4, 8, 16

35 U.S.C. § 1 *et seq.* .............................................................................................8

**Rules**

Fed. R. Civ. P. 1 ..................................................................................................1

Fed. R. Civ. P. 45(c)(1)(B)(ii) ...........................................................................13

## I.    INTRODUCTION

In light of Google Inc.'s ("Google") Northern District of California ("NDCAL") action for a declaratory judgment, that its Android Operating System ("Android OS") does not infringe the seven patents asserted here (the "Google Action"), Defendants LG Electronics, Inc. ("LKEKR"), LG Electronics U.S.A., Inc. ("LGEUS"), and LG Electronics MobileComm USA Inc. ("LGEMU")  (collectively, "LG") hereby request that the Court stay this action (the "LG Action") pursuant to the Court's inherent authority and the "customer-suit" exception.  The very *same* Google Android OS and seven patents at issue in the Google Action forms the basis under which Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC (collectively, "Rockstar") allege infringement by LG's mobile devices in the present action.  A stay here will provide Google the opportunity to eliminate the threat Rockstar's claims pose and to vindicate its interest in defending its technology—an interest that Google is by far best suited to defend. The Google Action will provide for the efficient resolution of Rockstar's claims against Google (and Google's customers) in a single forum, thereby likely mooting this action and promoting judicial and party economy.[1]  In contrast, Rockstar's multi-defendant and multi-action litigation strategy maximizes the burden on the defendants and the courts, risks the unnecessary duplication of effort and inconsistent results, and is further inconsistent with the "just, speedy, and inexpensive" resolution of Rockstar's claims.[2]  Alternatively, the Court should transfer this action to the NDCAL because the private and public interest factors weigh heavily in favor of transfer.

---

[1] Rockstar has brought *six* other separate actions in this District against *nineteen* defendants for infringement of the *same* seven patents asserted against LG based on defendants' sale of only mobile devices that use Google Android OS.  *See Rockstar Consortium US LP v. ASUSTeK Computer, Inc.*, No. 13-cv-894, Dkt. No. 22 ¶ 14; *HTC Corp.*, No. 13-cv-895, Dkt. No. 23 ¶ 15; *Huawei Investment & Holding Co., Ltd.*, No. 13-cv-896, Dkt. No. 1 ¶ 22; *Pantech Co., Ltd.*, No. 13-cv-899, Dkt. No. 9 ¶ 15; *Samsung Electronics Co., Ltd.*, No. 13-cv-900, Dkt. No. 46 ¶¶ 25, 27; and *ZTE Corp.*, No. 13-cv-901, Dkt. No. 29 ¶ 15.
[2] *See* Fed. R. Civ. P. 1.

## II.    STATEMENT OF FACTS

### A.    The LG Action

On October 31, 2013, Rockstar sued LG for infringement of seven patents: U.S. Patent Nos. 5,838,551; 6,037,937; 6,128,298; 6,333,973; 6,463,131; 6,765,591; and 6,937,572 (the "patents-in-suit."). (*See* Dkt. No. 1 ¶¶ 9-15.) Rockstar alleges that LG infringes the patents-in-suit by "making, using, selling and offering to sell . . . certain mobile communication devices having a version (or an adaptation thereof) of ***Android operating system*** [*sic*] ('LG Mobile Communication Devices.')." (*Id.* ¶ 16 (emphasis added).) By Rockstar's express definition, the only accused LG Mobile Communication Devices are devices using the Android OS. (*Id.* ¶ 16.) LGEKR is an Original Equipment Manufacturer ("OEM") of mobile devices incorporating the Android OS. (Son Decl., **Ex. 1** ¶¶ 3-5.)[3] LGEMU does sell other mobile devices that do not incorporate the Android OS (*id.* ¶ 2.), but those devices are not accused in this case.

### B.    The Google Action And Rockstar's Subsequent Claims Against Google

On December 23, 2013, Google filed an action against Rockstar in the NDCAL seeking a declaratory judgment that its Android OS does not infringe the *same* seven patents that Rockstar had previously asserted in this case against LG and other OEM defendants. (*See Google Inc. v. Rockstar Consortium US LP*, No. 13-cv-5933 (N.D. Cal.), Dkt. No. 1 ¶ 1; at Prayer for Relief ("Declaring that Google's Android platform . . . does not infringe")). Only ***after*** Google brought its action in the NDCAL, did Rockstar amend its complaint in the EDTX Samsung action (originally filed on October 31, 2013)[4] to include allegations of infringement against Google on the exact same seven patents-in-suit. (*See* Samsung Action, Dkt. Nos. 19 ¶ 27; 46 ¶ 27.)

---

[3] All exhibits to the Harris Decl. will be identified herein as **Ex. ___.**
[4] *See Rockstar Consortium US LP v. Samsung Electronics Co., Ltd.*, No. 13-cv-900 (E.D.Tex.) (the "Samsung Action"), Dkt. No. 1 ¶¶ 9-17.

### III.    LEGAL STANDARDS

#### A.    A Court's Inherent Authority To Stay A Case

A court has broad discretion to stay proceedings to avoid unnecessary effort and expense and to promote the interests of justice. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  In deciding whether to stay a litigation, a court should consider:  "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Rmail Ltd. v. Amazon.com, Inc.*, No. 10-cv-258, 2014 U.S. Dist. Lexis 25597, *25-*26 (E.D. Tex. Jan. 30, 2014) (quoting *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)).

#### B.    The Customer-Suit Exception

The customer-suit exception allows a court to stay an action against customers when the manufacturer brings a declaratory judgment action. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F. 3d 1349, 1357 (Fed. Cir. 2011).  In the interests of judicial efficiency and to guard against abuse, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Id.* (quoting *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 2011)).  The manufacturer's case need not resolve every issue in the customer suits; it "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Id.* at 1358 (citing *Katz*, 909 F.2d at 1464).

#### C.    Transfer Pursuant To 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

3

where it might have been brought." 28 U.S.C. § 1404(a). Courts are authorized to transfer venue to prevent a waste of time, energy, and money, and to protect litigants and witnesses against inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

A threshold determination is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). The court then weighs the relative conveniences of the current district against the transferee district by considering several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors are: "(1) the cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Id.*

## IV.  ARGUMENT

### A.  The Court Should Stay This Action Pending The Resolution Of Google's Declaratory Judgment Action In The Northern District Of California

#### 1.  The Court Should Stay This Action Because It Will Simplify The Issues And Preserve The Parties' And The Court's Resources, Without Causing Any Prejudice To Rockstar

Considering the totality of factors that weigh on the ultimate goal of promoting efficiency, limiting costs, and preventing prejudice, the Court should stay this action pending the resolution of the Google Action. *See Rmail Ltd.*, 2014 U.S. Dist. Lexis 25597, at *25-*26. A stay will not

unduly prejudice or present a clear tactical disadvantage to Rockstar, and Rockstar cannot credibly argue otherwise.    The Google Action was filed after Rockstar filed **seven separate lawsuits** in this District against **22 separate defendants**, including LG, based on the defendants' use of the accused Google Android OS in their mobile communication devices—but before Rockstar asserted independent infringement claims against Google.    Directing Rockstar to first litigate its claims against Google, the developer of the Android OS, will present no undue prejudice to Rockstar.    Further, because Rockstar is an entity (*see* Samsung Action, Madigan Decl., Dkt. No. 52-1 Ex. 10),    that "does not manufacture or sell any products, or otherwise practice the patent, there is no risk of customer losses or of injury to market share during a stay." *Microlinc, LLC v. Intel Corp.*, No. 2:07-CV-488-TJW, 2010 WL 3766655, *2 (E.D. Tex. Sept. 20, 2010) (staying patentee's infringement claims pending reexamination proceedings).    A stay would also not significantly delay Rockstar from litigating its patent rights, as Google filed its declaratory judgment action less than two months after Rockstar filed this action.

The second factor also weighs in favor of a stay.    A resolution in the Google Action, which involves all of the patents-in-suit and the same accused Android OS developed and provided by Google, will simplify and streamline the issues for trial in, or likely obviate, the LG Action.    There is simply no need for co-pending and duplicative litigations that will only unnecessarily exhaust judicial and party resources.    *See Wolf Designs, Inc. v. Donald McEvoy, Ltd.*, 341 F.Supp. 2d 639, 645 (N.D. Tex. 2004) (holding that a stay was warranted "to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues.").    In addition, a stay would reduce the burden on the parties and the Court, particularly because LG and the other defendants sued by Rockstar in this District are customers

of Google and only employ Google's Android OS in their accused mobile devices.  Rather than

defending its accused Android OS in piecemeal fashion and having to exhaust resources seeking

to intervene in six different infringement actions (one case has settled), Google can present a

streamlined defense of the Android OS that will bear fruit in all of the customer actions.

The third factor also favors a stay because neither Rockstar nor LG has answered the

complaint in the Google and LG Actions, discovery has not commenced,  both cases are in their

infancy, and trial dates have not been set. There has been no scheduling conference or discovery

whatsoever in either the Google Action or this action, so there are no pending deadlines that

would be disrupted.   Further, none of the parties nor the Court has yet to invest significant

resources in the litigation of either action.  Even in a case more advanced than this one, this

Court found in favor of a stay.   *Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 780

(E.D. Tex. 2010)  ("the *Markman* hearing has not occurred, expert reports have not been

exchanged, discovery is not completed, summary judgment motions have not been filed, and the

Court has not begun its claim construction.")

### 2.    The Court Should Also Stay This Action Pursuant To The Customer-Suit Exception

Separately, because Google is the true party in interest and the Google Action will

determine "major issues" regarding Rockstar's claims, the Court should also stay this action

pursuant the customer-suit exception.  *Spread Spectrum*, 657 F.3d at 1358.[5]  Google developed

the specific technology that Rockstar has accused in this action, *i.e.*, the Android OS.  LG

---

[5] An exact overlap of issues is not required.  To the extent certain issues might be left
unresolved, a stay is still the correct course of action by this Court because the Google Action
"need only have the potential to resolve the 'major issues' concerning the claims against the
customer—not every issue—in order to justify a stay of the customer-suits." *Spread Spectrum*,
657 F. 3d at 1358.  Even where "there may be additional issues involving defendants," the
substantial benefits of granting a stay prevail. *Katz*, 909 F. 2d at 1464 (Fed. Cir. 1990).

incorporates the accused Google Android OS on LG's mobile communication devices, which Android OS was provided by Google. Consequently, each of the Android OS features accused by Rockstar exclusively originates with Google.  Google is the true party in interest in this dispute because, as the primary developer of the Android OS, it "control[s] the design and production" of Android and is thus "in the best position to defend its own products." *Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, No. 08-CV-11048, 2008 WL 2941116, *5 (E.D. Mich. July 25, 2008) (finding the customer-suit exception weighed against transferring manufacturer's declaratory judgment action to venue of first-filed suit against customers); *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 681 (D. Del. 2012) (finding "the real dispute" was between the patentee and defendants Microsoft and Google, rather than customers who featured Microsoft and Google mapping services on their websites).  Thus, Google is the party in the best position to defend the Android OS against Rockstar's claims.  Indeed, Google admits it is the true party in interest and has filed a similar motion to stay and transfer.  (*See* Samsung Action, Dkt. No. 52.)    Further, because Rockstar has accused only LG's mobile devices employing the Google Android OS (*see* Complaint, Dkt. No. 1 ¶ 16), a judgment in the Google Action "will efficiently dispose of the infringement issues" presented here.  *Ricoh Co., Ltd. v. Aeroflex Inc.,* , 279 F. Supp. 2d 554, 558 (D. Del. 2003).[6]

Resolving Rockstar's claims in a single action—the Google Action—is the most efficient course and will greatly simplify this action, if not obviate it.  *Spread Spectrum*, 657 F. 3d at 1358 (Fed. Cir. 2011);  *DataTern, Inc., v. Staples, Inc.*, No. 2:10-CV-133, Slip Op., Dkt. No. 185 at 9

---

[6] Courts in this Circuit have recognized the benefits of staying infringement suits against a manufacturer's customers in favor of an action between the manufacturer and the patent holder. *See Wolf Designs,* 341 F.Supp. 2d at 645; *see also Ciena Corp. v. Nortel Networks Inc.*, No. 2:05 CV 14, 2005 WL 1189881 (E.D. Tex. May 19, 2005) (finding "the reasons to enjoin the action against [the customer] under the customer suit basis far outweigh [plaintiff's] arguments against doing so.").

(E.D. Tex. Feb. 12, 2012) (staying customer suits in favor of declaratory judgment action brought by software developers in New York because "in all likelihood [the New York cases] will settle many [issues] and simplify them all.'") (quoting *Landis v. North American Co*, 299 U.S. 248, 256 (1936); citing *Katz*, 909 F.2d at 1464) (alterations in original).

Importantly, Rockstar has also sued other customers of Google in five separately pending actions in this District for their use of the Android OS in their mobile devices.  In addition to obviating or simplifying this case against LG, the Google Action will have a similar impact on all the other customers Rockstar has sued.  The judicial efficiency of allowing one suit between Rockstar and the manufacturer to first run its course, rather than litigating a half dozen lawsuits against Google's customers cannot be overstated. The Court should stay this case (and the other pending cases) to promote judicial economy by encouraging a "global" resolution, rather than "piecemeal litigation."  *Delphi Corp.*, 2008 WL 2941116 at *5; *Ricoh*, 279 F. Supp. 2d at 557 ("[I]t is more efficient for the dispute to be settled directly between the parties in interest.").

**B.    Alternatively, This Action Should Be Transferred Pursuant To 28 U.S.C. § 1404(a) To The Northern District Of California**

**1.    Rockstar Could Have Brought This Action In The Northern District Of California**

Rockstar brought its patent infringement action against LG pursuant to 35 U.S.C. § 1 *et seq.*, and alleged that venue was proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).  (*See* Complaint, Dkt. No. 1 ¶¶ 7-8.)  In patent infringement cases, venue is proper in the judicial district "where the defendant resides" (*see* 28 U.S.C. § 1400), and, a corporation "resides" in any district in which it was subject to personal jurisdiction at the time the action was filed (*see* 28 U.S.C. § 1391 (c); *see also* 28 U.S.C. § 1391 (d) (for foreign corporations)).  The relevant inquiry is whether "such defendant is subject to the [transferee] court's personal jurisdiction with

respect to the civil action in question." *See* 28 U.S.C. § 1391(c)(2). Based on Rockstar's alleged assertions supporting personal jurisdiction and venue in this District (*see* Complaint, Dkt. No. 1 ¶ 8 (premised on placing mobile devices into stream of commerce in this District)), to the extent this action could have been brought in this District, it could also have been brought in the NDCAL for the same reasons. (*See* Son Decl., Ex. 1 ¶ 6 (mobile device sales in the NDCAL)).

### 2.    The Private Interest Factors Strongly Favor Transfer

#### i.    *Cost Of Attendance For Willing Witnesses*

Courts recognize that the costs of attendance for witnesses or the convenience of the parties and party witnesses factor, is "probably the single most important factor in transfer analysis." *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). This factor overwhelmingly supports a transfer to the NDCAL. Google, the developer of the accused Android OS, is headquartered in Mountain View, in the NDCAL. (*See* Samsung Action, Dubey Decl., Dkt. No. 52-29 ¶¶ 4-6.) Google witnesses are concentrated in Mountain View, including engineers responsible for the research, design, and development of the accused Android OS (*Id.* ¶ 7.) There are approximately 850 people in the Google group that develops the Android OS and of the approximately 630 U.S.-based employees in that group, more than 85% work in the San Francisco Bay area. (*Id.* ¶ 8.) This group is led by Hiroshi Lockheimer, Vice President of Engineering, who works in Mountain View, CA. (*Id.*) Jon Gold, a Finance Manager with knowledge of financial information related to Google's Android OS, also works there. (*Id.*) There are no relevant Google documents or employees in this District. (*Id.* ¶¶ 11-12.) LG Electronics MobileComm USA Inc. ("LGEMU") is based in San Diego, California. (Son Decl. , Ex. 1 ¶¶ 1, 11-12.) LGEMU is responsible for the marketing, selling and quality management of LG mobile communication devices. (*Id.* ¶ 6.) LGEMU's subsidiary, LG Electronics Mobile

Research U.S.A., LLC, also has a location in San Jose, California that is used for Google Android OS certification of LG mobile communication devices.  (*Id*. ¶¶ 1, 7-10.) There are no LG documents or employees relating to Android OS certification located in this District.  (*Id*. ¶¶ 13, 14; Alessi Decl. **Ex. 2** ¶¶ 6, 7.)[7]

Rockstar has no meaningful connection to this District.   Though Rockstar claims a principal place of business in Plano, Texas (Complaint, Dkt. No. 1 ¶¶ 1-2), the majority of its employees are based in Canada.   Rockstar purchased the patents-in-suit when they were auctioned during the bankruptcy of Nortel Networks ("Nortel").   (Samsung Action, Madigan Decl., Dkt. No. 52-1 Exs. 1-3.)[8]   Rockstar CEO John Veschi and his team remain based in Nortel's old headquarters town of Ottawa, Canada, and still form the core of Rockstar's executive ranks.  (*Id.* Ex. 10.)  A figure from an article in the July/Aug. 2013 issue of *Intellectual Asset Management*, produced with Rockstar's cooperation, shows Rockstar's senior management:



Figure 1. **Senior Rockstar management**

(*Id*. Ex. 16.)  Of these ten members of Rockstar's senior management, five work in Canada; one each in California, Colorado, Massachusetts, New York, and Pennsylvania; and none in Texas. (*Id*. Exs. 15-19.)  Further, Rockstar lists on its website six "Corporate Leaders," none of whom

---

[7] LGEUS is based in New Jersey and is only in the business of marketing non-mobile consumer products that are not at issue here.  (Alessi Decl. Ex. 2 ¶¶ 1, 4-5.)  LGEKR manufactures mobile devices (*see* Son Decl. Ex. 1 ¶ 4), and to the extent it has any relevant witnesses in Korea, their travel costs and expenses will be significant no matter where they testify.  Accordingly, their location does not affect the transfer analysis. *See In re Genentech*, 566 F.3d at 1344.
[8] Five companies make up Rockstar and together they purchased the Nortel patents.  (*Id*. Exs. 1-3.)  Apple, Inc. contributed 58% of the total price.  (*Id*. Ex. 4.)

are from Texas.  (*Id.* Ex. 20.)  Rockstar's website lists addresses in Canada and Texas but the Canada address comes first and has the only phone number.  (*Id.* Ex. 10.)  The same website links to Rockstar's LinkedIn page, which lists Rockstar's Canadian address as its "headquarters." (*Id.* Exs. 13-14.)   Rockstar's own licensing letters confirm this because they originate from Rockstar's headquarters in Canada and Rockstar's licensing executives in California.  (*Id.* Ex. 21; *see also* **Ex. 3**, 3/12/12 and 5/23/12 Ltrs. From A. Dean to J. Park.)[9]  MobileStar is a shell entity created for the sole purpose of litigation and there is no indication it has set foot in the State. Mobilestar did not register with the Texas Secretary of State until *after* the filing of its complaint, in violation of Texas Business and Organizations Code Section 9.051.   (*See* Dkt. No. 24.) Mobilestar's presence, if any, in this District is "recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). The Federal Circuit does not consider such attempts at venue manipulation.  *See In re Microsoft Corp.*, 630 F. 3d 1361, 1365 (Fed. Cir. 2011).

Because the NDCAL area is greater than 100 miles from this District, the "factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen I*, 371 F. 3d at 204-05.  Here, the NDCAL is a shorter average distance from the vast majority of potential witnesses than this District.  But the Court should also consider actual travel time.  *See id.* at 205 n.3.  Taking that into account, the NDCAL also prevails.  Witnesses traveling to the NDCAL can fly into any of the Oakland International, San Francisco International or San Jose International Airports; 10 miles, 25 miles and 40 miles,

---

[9] On October 30, 2013, Rockstar formed its wholly owned subsidiary MobileStar.  (Samsung Action, Madigan Decl., Dkt. No. 52-1 Ex. 8.)  The next day, MobileStar was assigned rights to the five of the asserted patents.  (*Id.* Ex. 12.)  That transaction was executed in Canada by two members of Rockstar's senior management located in Canada.  (*Id.*)  On that same day, Rockstar filed this action. (*See* Dkt. No. 1.)

respectively, from the District Court hearing the Google Action.  By contrast, out-of-town witnesses traveling to this District must usually drive 170 miles from the Dallas International Airport.  Further, if all of Google's and LG's witnesses who are located in the NDCAL were required to travel here, Google and LG would incur significant expense for airfare, meals, lodging and productivity loss.  (*See* Samsung Action, Dubey Decl., Dkt. No. 52-29 ¶¶ 4-9; Son Decl. Ex. 1 ¶¶ 3-10.) Those burdens would be avoided if this case was transferred to the NDCAL.

### ii.    *Relative Ease Of Access To Sources Of Proof*

This factor turns on "which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Volkswagen II*, 545 F. 3d at 314-15.[10]  As all of the relevant documents are located outside of this District, particularly in the NDCAL, the access to sources of proof factor weighs significantly in favor of transfer to the NDCAL.  Rockstar's allegations establish that the NDCAL is clearly more convenient, as the identified basis for infringement is the manufacture and sale of mobile devices using Google's Android OS (Complaint, Dkt. No. 1 ¶ 16.)  All or nearly all of the relevant Google documents and  records are located in or near its Mountain View offices.  (*See* Samsung Action, Dubey Decl., Dkt. No. 52-29 ¶ 12.)  In *Genentech*, the court found that transfer was warranted because the transporting of documents located in the NDCAL would "impose a significant and unnecessary burden on the petitioners." *Genentech*, 566 F.3d at 1346.  This burden is especially significant where, as here, no physical evidence is located in this District.  *Phil-Insul Corp. v. Reward Wall Sys., Inc.*, No. 6:11-CV-53, Dkt. 106 at 4 (E.D. Tex. Feb. 10, 2012).

---

[10] *See also Genentech,* 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.")

Rockstar admits that any purportedly relevant documents not located in Canada come from Nortel's former office, which was not in this District. *See Rockstar Consortium US LP v. Google Inc.*, No. 13cv893, E.D. Tex., Dkt. No. 33-1 ¶¶ 6, 24. Rockstar may have moved these documents into this District (*id.* ¶¶ 18, 24), "but documents relocated in anticipation of litigation are not considered." *Adaptix, Inc. v. HTC Corp.*, 937 F.Supp.2d 867, 872 (E.D. Tex. 2013) (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-7 (Fed. Cir. 2009)). Simply put the presence of any Rockstar documents in this District should not be considered because it is "recent, ephemeral, and an artifact of litigation." *Zimmer*, 609 F.3d at 1381.

### iii.    Availability Of Compulsory Process

The "availability of compulsory process to secure the attendance of witnesses" factor also strongly favors the NDCAL. Both this Court and the NDCAL may issue deposition subpoenas, but each court has different powers to require attendance at trial. This Court can compel only non-party witnesses residing within Texas, and the NDCAL only from within California. Fed. R. Civ. P. 45(c)(1)(B)(ii). In at least three highly relevant subject areas, the relevant witnesses are in the NDCAL. First, witnesses with knowledge of the Android OS, including former employees of Google and Android, Inc., remain heavily concentrated in the NDCAL. Second, at least one named inventor resides in the NDCAL (Samsung Action, Madigan Decl., Dkt. No. 52-1 Ex. 22), and dozens of relevant prior artists of record live in the NDCAL (Samsung Action, Jachlewski Decl., Dkt. No. 52-31 ¶ 3). Finally, the NDCAL is home to very likely and unwilling trial witnesses, employees of non-party Apple, Inc., the company that Rockstar alleges outbid Google for the Nortel portfolio. (*See* Samsung Action, Dkt. No. 19 ¶¶ 7-12.) Rockstar has put the valuation of the Nortel portfolio at issue and evidently intends to introduce that evidence at trial, unless precluded from doing so, evidence which Google can only counter by calling Apple

witnesses.  However, only the NDCAL and not this Court can compel those witnesses to attend

trial.  Such asymmetry of presentation on a major issue would be highly prejudicial to Google.

Google and LG should not be deprived of their ability to call non-party witnesses live, especially

where no relevant non-party witness appears to reside in this District.  For example, none of the

prosecuting attorneys reside here.  (*See* Samsung Action, Madigan Decl., Dkt. No. 52-1 Ex. 23.)

Not a single inventor named was located in Texas.  (*See generally*, patents-in-suit.)  Any former

Nortel licensing executives reside in Canada and Massachusetts.  (*Id.* Exs. 24-25.)

<div align="center">

*iv.        There Are No Practical Problems Preventing Transfer*

</div>

There are no practical problems with transferring this case because this case is just

beginning:    discovery  has  not  started,  the  parties  have  not  exchanged  initial

disclosures/contentions, and any such disclosures/contentions exchanged in the future can be

used in the NDCAL.  The Patent Rules of this District were patterned on the NDCAL's Rules, so

any work the parties have done in this District will not be wasted.  *Affinity Labs of Texas v.

Samsung Elecs. Co., Ltd.*, No. 12-CV-557, 2013 WL 5508122 (E.D. Tex. Sept. 18, 2013).

> **3.        The Public Interest Factors Favor Transfer To The Northern District
>              Of California Or Are Neutral**

The NDCAL has a greater interest in this case than this Court.  *See Affinity*, 2013 WL

5508122 ("The Northern District of California has an interest in protecting intellectual property

rights that stem from research and development in Silicon Valley.").  The Android OS developed

by Google is at the core of Rockstar's claims.  The NDCAL's local interest in this case is thus

strong, because it "calls into question the work and reputation of several individuals residing in

or near that district and who presumably conduct business in that community."  *Hoffman La-

Roche*, 587 F. 3d at 1336.  This District has a weaker interest, if any, in resolving this case.

Rockstar only alleges it has a place of business here, but that is actually Canada.  (*See* Sec. IV (B)

<div align="center">

14

**– A1498 –**

</div>

(2) (i), *supra*.)  The allegedly infringing devices are "sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue."  *In re TS Tech*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); *See also* Son Decl., Ex. 1 ¶ 6.  This factor likewise weighs in favor of transfer.[11]

### 4.    This Court Has Recently Transferred Cases On Similar Facts

This Court has recent granted transfer to the NDCAL on strikingly similar facts :

- *Touchscreen Gestures v. HTC*, No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17: A Texas LLC was formed shortly before filing a patent suit against an Android OS OEM. The court held that Google's documents were more easily accessed in the NDCAL and the NDCAL would be more convenient for Google witnesses.  *Id.* at 7 and 10.  The same holds true here.  (*See* Samsung Action, Dubey Decl., Dkt. No. 52-29 ¶ 3.);

- *Ingeniador, LLC v. Adobe Systems Inc*., No. 12-cv-805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014):  The defendant was based in the NDCAL and while some relevant documentary evidence was located in Texas, most of the evidence and witnesses were located in the NDCAL.  *Id.* at *1-*3.  The Court concluded that the inconvenience to the few witnesses residing in Texas was outweighed by the "substantially increased convenience of witnesses in California," and in particular "given that most witnesses will likely come from California."  *Id.*  Here the grounds to transfer are even more compelling because all or nearly all of Google's relevant witnesses and documents are located in the NDCAL.  (*See* Samsung Action, Dubey Decl., Dkt. No. 52-29 ¶¶ 4-6, 8, 11 and 12.); and

- *Blue Spike, LLC v. Texas Instruments, Inc*., No. 12-cv-558 (E.D. Tex. Mar. 13, 2014), Dkt. No. 16:  The court granted Google's motion to transfer to the NDCAL because "the location of Defendant's sources of proof far outweighs the presence of Plaintiff's documents and servers in Texas."  *Id.* at 5.  The court also found that compulsory process and the costs of attendance of attendance of witnesses favored transfer and that the NDCAL was "a clearly more convenient forum."  *Id.* at 10.  The same applies here.[12]

---

[11] The remaining public interest factors are neutral or weigh slightly in favor of transfer.  The NDCAL tends to resolve cases in nearly identical time.  (Samsung Action, Madigan Decl., Dkt. No. 52-1 Ex. 26.)  Both districts are familiar with and can apply the federal patent laws to this patent infringement case, and no conflict of laws problems are expected to arise in either district.

[12] Consistent with Federal and Fifth Circuit guidance, LG respectfully requests that the Court issue a ***temporary stay*** of this action pending the Court's decision on LG's Motion.  *See, e.g., In re Fusion-IO, Inc.*, Misc. Dkt. No. 139, 2012 U.S. App. Lexis 26311, *2-*3 (Fed. Cir. 2012) ("We fully expect, however, for Fusion-IO to promptly request transfer in the lead case along with a motion to stay proceedings pending disposition of the transfer motion, and for the district court to act on those motions before proceeding to any motion on the merits of the action."); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) ("As indicated earlier, Horseshoe filed its motion to transfer timely and before it filed its answer and in our view disposition of that motion should have taken a top priority in the handling of this case [.]").

15

## V.    CONCLUSION

For the foregoing reasons, LG respectfully requests that this Court stay this case pending resolution of the Google Action or, in the alternative, transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  Furthermore, pending the Court's decision on  this Motion, LG respectfully requests that the Court issue an interim order temporarily staying the case.

Dated:  March 25, 2014                        Respectfully submitted,

*/s/ Richard D. Harris*

*Attorneys for Defendants LG Electronics, Inc.,*
*LG Electronics U.S.A., Inc., and LG Electronics*
*MobileComm USA Inc.*

Mary-Olga Lovett
State Bar No. 00789289
Federal ID No. 17743
lovettm@gtlaw.com
Laura Gleen
State Bar No. 24085329
Federal ID No. 1673869
gleenl@gtlaw.com
GREENBERG TRAURIG LLP
1000 Louisiana, Suite 1800
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3501

Richard D. Harris, *Lead Attorney*
Illinois Bar No. 1137913 (admitted in E.D. Tex.)
harrisr@gtlaw.com
Jeffrey G. Mote
Illinois Bar No. 6243534 (admitted in E.D. Tex.)
motej@gtlaw.com
James J. Lukas, Jr.
Illinois Bar No. 6270189 (*Pro Hac Vice* to be filed)
lukasj@gtlaw.com
Eric J. Maiers
Illinois Bar No. 6286775 (admitted in E.D. Tex.)
maierse@gtlaw.com

Barry R. Horwitz
Illinois Bar No. 6286775 (*Pro Hac Vice*)
horwitzb@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 465-8400
Facsimile: (312) 456-8435

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Richard D. Harris*

Richard D. Harris

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on March 24, 2014, via telephone conference with the following participants:   Theodore Stevenson, III on behalf of Rockstar and Jeffrey Mote on behalf of Defendants.  No agreement could be reached because Rockstar would not agree to a stay or to the transfer this case.  Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Richard D. Harris*

Richard D. Harris

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |  |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, INC. and MOBILESTAR TECHNOLOGIES, LLC, | § § § | Civil Action No. 2:13-cv-00899 |
| Plaintiffs, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § § |  |
| PANTECH CO., LTD. AND PANTECH WIRELESS, INC., | § § § § |  |
| Defendants. | § § § |  |

## PANTECH DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................................... 2

    A.   The Pantech Action............................................................................................ 2

    B.   The Google Action and Rockstar's Subsequent Claims Against Google.............. 2

III.   LEGAL STANDARDS ............................................................................................ 3

    A.   A Court's Inherent Authority to Stay a Case ...................................................... 3

    B.   The Customer-Suit Exception............................................................................ 3

    C.   Transfer Pursuant to 28 U.S.C. § 1404(a).......................................................... 4

IV.    ARGUMENT ........................................................................................................... 5

    A.   The Court Should Stay This Action Pending The Resolution of Google's
       Declaratory Judgment Action in the Northern District of California .................. 5

       1.   The Court Should Stay This Action Because It Will Simplify the
           Issues and Preserve the Parties' and the Court's Resources,
           Without Causing Any Prejudice to Rockstar ............................................ 5

       2.   The Court Should Also Stay This Action Pursuant to the
           Customer-Suit Exception ......................................................................... 7

    B.   Alternatively, this Action Should Be Transferred Pursuant to 28 U.S.C. §
       1404(a) to the Northern District of California ...................................................... 9

       1.   Rockstar Could Have Brought This Action in the Northern District
           of California ............................................................................................. 9

       2.   The Private and Public Interest Factors Strongly Favor Transfer............ 10

V.     CONCLUSION...................................................................................................... 12

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ciena Corp. v. Nortel Networks Inc.*,
  No. 2:05 CV 14, 2005 WL 1189881 (E.D. Tex. May 19, 2005) ...............................................7

*Clinton v. Jones*,
  520 U.S. 681 (1997)..............................................................................................................3

*DataTern, Inc., v. Staples, Inc.*,
  No. 2:10-CV-133, Slip Op., Dkt. No. 185 at 9 (E.D. Tex. Feb. 12, 2012) ...............................8

*Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, No. 08-CV-11048, 2008 WL 2941116,
  (E.D. Mich. July 25, 2008) ..............................................................................................8, 9

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 2011)....................................................................................3, 4, 7, 8

*Landis v. North American Co*,
  299 U.S. 248 (1936)..............................................................................................................8

*Microlinc, LLC v. Intel Corp.*,
  No. 2:07-CV-488-TJW, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010)...................................5

*Microsoft Corp. v. Geotag Inc.*,
  847 F. Supp. 2d 675 (D. Del. 2012) .......................................................................................8

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)..............................................................................................4

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
  279 F. Supp. 2d 554 (D. Del. 2003) ....................................................................................7, 9

*Rmail Ltd. v. Amazon.com, Inc.*,
  No. 2:10-cv-00258, 2014 U.S. Dist. Lexis 25597 (E.D. Tex. Jan. 30, 2014)......................3, 5

*Southwire Co. v. Cerro Wire, Inc.*,
  750 F. Supp. 2d 775 (E.D. Tex. 2010) ....................................................................................6

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp. 2d 660 (E.D. Tex. 2005) ....................................................................................3

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F. 3d 1349 (Fed. Cir. 2011)............................................................3, 4, 7, 8

*In re TS Tech.*,
   551 F. 3d 1315 (Fed. Cir. 2008)..................................................................12

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)....................................................................................4

*In re Volkswagen AG (Volkswagen I)*,
   371 F.3d 201 (5th Cir. 2004) .....................................................................4

*In re Volkswagen of Am., Inc. (Volkswagen II)*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ....................................................4

*Wolf Designs, Inc. v. Donald McEvoy, Ltd.*,
   341 F.Supp. 2d 639 (N.D. Tex. 2004) ...................................................6, 7

**Statutes**

28 U.S.C. § 1391 ..............................................................................................9

28 U.S.C. § 1400 ..............................................................................................9

28 U.S.C. § 1404........................................................................................4, 9, 12

35 U.S.C. § 1 *et seq.*.......................................................................................9

**Other Authorities**

Fed. R. Civ. P. 1 ..............................................................................................1

## I.    INTRODUCTION

In light of Google Inc.'s ("Google") Northern District of California ("NDCAL") action for declaratory judgment, that its Android Operating System ("Android OS") does not infringe the seven patents asserted here (the "Google Action"), Defendants Pantech Co., Ltd. and Pantech Wireless, Inc. (collectively, "Pantech") hereby request that the Court stay this action (the "Pantech Action") pursuant to the Court's inherent authority and the "customer-suit" exception. In the present action, Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC (collectively, "Rockstar") assert that Pantech's mobile devices' use of the same Android OS, developed by Google, infringes the same patents-in-suit involved in the Google Action.  A stay of this action will provide Google the opportunity to eliminate the threat Rockstar's claims pose and to vindicate its interest in defending its technology—an interest that Google is by far best suited to defend.  The Google Action will provide for the efficient resolution of Rockstar's claims against Google (and Google's customers) in a single forum, thereby likely mooting this action and promoting judicial and party economy.[1]  In contrast, Rockstar's multi-defendant and multi-action litigation strategy maximizes the burden on the defendants and the courts, risks the unnecessary duplication of effort and inconsistent results, and is further inconsistent with the "just, speedy, and inexpensive" resolution of Rockstar's claims.   *See* Fed. R. Civ. P. 1.  Alternatively, the Court should transfer this action to the NDCAL because the private/public

---

[1] Rockstar has brought *six* other separate actions in this District against *nineteen* defendants for infringement of the *same* seven patents asserted against Pantech based on defendants' sale of only devices that use Google Android OS.  *See Rockstar Consortium US LP v. ASUSTeK Computer, Inc.*, No. 2:13-cv-00894, Dkt. No. 22 ¶ 14; *Rockstar Consortium US LP v. Rockstar Consortium US LP v. HTC Corp.*, No. 2:13-cv-00895, Dkt. No. 23 ¶ 15; *Rockstar Consortium US LP v. Huawei Inv. & Holding Co., Ltd.*, No. 2:13-cv-00896, Dkt. No. 1 ¶ 22; *Rockstar Consortium US LP v. LG Electronics, Inc.*, No. 2:13-cv-00898, Dkt. No. 16 ¶ 15; *Rockstar Consortium US LP v. Samsung Electronics Co., Ltd.*, No. 2:13-cv-00900, Dkt. No. 46 ¶¶ 25, 27; and *Rockstar Consortium US LP v. ZTE Corp.*, No. 2:13-cv-00901, Dkt. No. 29 ¶ 15.

1

interest factors heavily weigh in favor of transfer.

## II.    STATEMENT OF FACTS

### A.    The Pantech Action

On October 31, 2013, Rockstar sued Pantech for infringement of six U.S. patents.  (*See* Dkt. No. 1 ¶ 14.)  On November 13, 2013, Rockstar filed an amended complaint asserting infringement of an additional U.S. patent, thereby suing Pantech for infringement of seven patents:  U.S. Patent Nos. 5,838,551; 6,037,937; 6,128,298; 6,333,973; 6,463,131; 6,765,591; and 6,937,572 (the "patents-in-suit.").  (*See* Dkt. No. 9 ¶15.)  Rockstar alleges that Pantech infringes the patents-in-suit by "making, using, selling and offering to sell . . . certain mobile communication devices having a version (or an adaptation thereof) of ***Android operating system*** [*sic*] ('Pantech Mobile Communication Devices.')."  (*Id.* ¶ 15 (emphasis added).)  By Rockstar's express definition of the accused products, the only accused Pantech Mobile Communication Devices are devices using the Android OS.  (*Id.* ¶¶ 15, 16.)  Pantech is an Original Equipment Manufacturer ("OEM") of mobile devices incorporating the Android OS.   (Declaration of YongJin Kim ("Kim Decl."), **Ex. 1 ¶¶** 3-4.)  Pantech does sell other mobile devices that do not incorporate the Android OS (*Id.* ¶ 3), but those devices are not accused in this case.  (*see id.*)

### B.    The Google Action and Rockstar's Subsequent Claims Against Google

On December 23, 2013, Google filed an action against Rockstar in the NDCAL seeking a declaratory judgment that its Android OS does not infringe the *same* seven patents that Rockstar had previously asserted in this case against Pantech and other OEM defendants.  (*See Google Inc. v. Rockstar Consortium US LP*, No. 4:13-cv-05933 (N.D. Cal. Dec. 23, 2013), Dkt. No. 1 ¶ 1; at Prayer for Relief ("Declaring that Google's Android platform . . . does not infringe")).  ***After*** Google brought its action in the NDCAL, Rockstar amended its complaint in the Eastern District

2

of Texas ("EDTX") against Samsung Electronics ("Samsung action") (originally filed on October 31, 2013)[2] to include allegations of infringement against Google on the exact same seven patents-in-suit. (*See Rockstar Consortium US LP v. Samsung Electronics Co., Ltd*., No. 2:13-cv-00900, Dkt. Nos. 19 ¶ 27; 46 ¶ 27.)

## III.    LEGAL STANDARDS

### A.    A Court's Inherent Authority to Stay a Case

A court has broad discretion to stay proceedings to avoid unnecessary effort and expense and to promote the interests of justice. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In deciding whether to stay a litigation, a court should consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Rmail Ltd. v. Amazon.com, Inc*., No. 2:10-cv-00258, 2014 U.S. Dist. Lexis 25597, *25-*26 (E.D. Tex. Jan. 30, 2014) (quoting *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)).

### B.    The Customer-Suit Exception

The customer-suit exception allows a court to stay an action against customers when the manufacturer brings a declaratory judgment action. *Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F. 3d 1349, 1357 (Fed. Cir. 2011). In the interests of judicial efficiency and to guard against abuse, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Id.* (quoting *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 2011)). The manufacturer's case need not resolve every issue in the customer suits; it "need only have the potential to resolve the

---

[2] *See* Compl., *Rockstar Consortium US LP v. Samsung Electronics Co., Ltd*., No. 2:13-cv-00900 (E.D. Tex.), Dkt. No. 1 ¶¶ 9-17.

3

'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Id.* at 1358 (citing *Katz*, 909 F.2d at 1464).

### C. Transfer Pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts are authorized to transfer venue to prevent a waste of time, energy, and money, and to protect litigants and witnesses against inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

A threshold determination is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). The court then weighs the relative conveniences of the current district against the transferee district by considering several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors are: "(1) the cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Id.*

IV.    **ARGUMENT**

A.    **The Court Should Stay This Action Pending The Resolution of Google's Declaratory Judgment Action in the Northern District of California**

1.    **The Court Should Stay This Action Because It Will Simplify the Issues and Preserve the Parties' and the Court's Resources, Without Causing Any Prejudice to Rockstar**

Considering the totality of factors that weigh on the ultimate goal of promoting efficiency, limiting costs, and preventing prejudice, the Court should stay this action pending the resolution of the Google Action. *See Rmail Ltd.*, 2014 U.S. Dist. Lexis 25597, at \*25-\*26. A stay will not unduly prejudice or present a clear tactical disadvantage to Rockstar, and Rockstar cannot credibly argue otherwise. The Google Action was filed after Rockstar filed ***seven separate lawsuits*** in this District against ***22 separate defendants***, including Pantech, based on the defendants' use of the accused Google Android OS in their mobile communication devices—but before Rockstar asserted independent infringement claims against Google. Directing Rockstar to first litigate its claims against Google, the developer of the Android OS, will simplify and streamline the issues, and will present no undue prejudice to Rockstar. Further, because Rockstar is an entity (*see* Samsung Action, Madigan Decl., Dkt. No. 52-1 Ex. 10), that "does not manufacture or sell any products, or otherwise practice the patent, there is no risk of customer losses or of injury to market share during a stay." *Microlinc, LLC v. Intel Corp.*, No. 2:07-CV-488-TJW, 2010 WL 3766655, \*2 (E.D. Tex. Sept. 20, 2010) (staying patentee's infringement claims pending reexamination proceedings). A stay would also not significantly delay Rockstar from litigating its patent rights, as Google filed its declaratory judgment action less than two months after Rockstar filed this action.

The second factor also weighs in favor of a stay. A resolution in the Google Action, which involves all of the patents-in-suit and the same accused Android OS developed and

5

provided by Google, will simplify the issues for trial in, or likely obviate, the Pantech Action. There is simply no need for co-pending and duplicative litigations that will only unnecessarily exhaust judicial and party resources. *See Wolf Designs, Inc. v. Donald McEvoy, Ltd.*, 341 F.Supp. 2d 639, 645 (N.D. Tex. 2004) (holding that a stay was warranted "to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues."). In addition, a stay would reduce the burden on the parties and the Court, particularly because Pantech and the other defendants sued by Rockstar in this District are customers of Google and only employ Google's Android OS in their accused mobile devices. Rather than defending its accused Android OS in piecemeal fashion and having to exhaust resources seeking to intervene in six different infringement actions (one case has settled), Google can present a streamlined defense of the Android OS that will bear fruit in all of the customer actions.

The third factor also favors a stay because neither Rockstar nor Pantech has answered the complaint in the Google and Pantech Actions, discovery has not commenced, both cases are in their infancy, and trial dates have not been set. There has been no scheduling conference or discovery whatsoever in either the Google Action or this action, so there are no pending deadlines that would be disrupted. Further, none of the parties nor the Court has invested significant resources in the litigation of either action. In such a situation, a stay is favored because "the *Markman* hearing has not occurred, expert reports have not been exchanged, discovery is not completed, summary judgment motions have not been filed, and the Court has not begun its claim construction." *Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 780 (E.D. Tex. 2010).

**2.     The Court Should Also Stay This Action Pursuant to the Customer-Suit Exception**

Separately, because the Google Action will determine "major issues" regarding Rockstar's claims, the Court should also stay this action pursuant the customer-suit exception. *Spread Spectrum*, 657 F.3d at 1358.[3]  Courts in this Circuit have recognized the benefits of staying infringement suits against a manufacturer's customers in favor of an action between the manufacturer and the patent holder.  *See Wolf Designs,* 341 F.Supp. 2d at 645; *see also Ciena Corp. v. Nortel Networks Inc.*, No. 2:05 CV 14, 2005 WL 1189881 (E.D. Tex. May 19, 2005) (finding "the reasons to enjoin the action against [the customer] under the customer suit basis far outweigh [plaintiff's] arguments against doing so.").  Because Google developed and provides the specific technology that Rockstar has accused in this action, *i.e.*, the Android OS, Google is the party in the best position to fully defend the Android OS against Rockstar's claims.  Indeed, Google admits it is the true party in interest and has filed a similar motion to stay and transfer. (*See* Samsung Action, Dkt. No. 52.)  Because Rockstar has accused only Pantech's mobile devices employing the Google Android OS (*see* Dkt. No. 9 ¶ 15), a judgment in the Google Action "will efficiently dispose of the infringement issues" presented here.  *Ricoh Co., Ltd. v. Aeroflex Inc.,* , 279 F. Supp. 2d 554, 558 (D. Del. 2003).  At a minimum, the Google Action will resolve claim construction, validity issues, and whether the accused Android OS infringes.

---

[3] An exact overlap of issues is not required.  To the extent certain issues might be left unresolved, a stay is still the correct course of action by this Court because the Google Action "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer-suits." *Spread Spectrum*, 657 F. 3d at 1358.  Even where "there may be additional issues involving defendants," the substantial benefits of granting a stay prevail. *Katz*, 909 F. 2d at 1464 (Fed. Cir. 1990).

Resolving Rockstar's claims in a single action—the Google Action—is the most efficient course and will greatly simplify this action, if not obviate it. *Spread Spectrum*, 657 F. 3d at 1358 (Fed. Cir. 2011); *DataTern, Inc., v. Staples, Inc.*, No. 2:10-CV-133, Slip Op., Dkt. No. 185 at 9 (E.D. Tex. Feb. 12, 2012) (staying customer suits in favor of declaratory judgment action brought by software developers in New York because "in all likelihood [the New York cases] will settle many [issues] and simplify them all.'") (quoting *Landis v. North American Co*, 299 U.S. 248, 256 (1936); citing *Katz*, 909 F.2d at 1464) (alterations in original).  Pantech incorporates the accused Android OS as developed by Google on Pantech's mobile communication devices.  (Kim Decl., **Ex. 1 ¶¶** 3-4.)  Specifically, each of the Android OS features accused by Rockstar exclusively originates with Google.  (*Id*.)  Google is the true party in interest in this dispute because, as the primary developer of the Android OS, it "control[s] the design and production" of Android and is thus "in the best position to defend its own products." *Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, No. 08-CV-11048, 2008 WL 2941116, *5 (E.D. Mich. July 25, 2008) (finding the customer-suit exception weighed against transferring manufacturer's declaratory judgment action to venue of first-filed suit against customers); *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 681 (D. Del. 2012) (finding "the real dispute" was between the patentee and defendants Microsoft and Google, rather than customers who featured Microsoft and Google mapping services on their websites).

Importantly, Rockstar has also sued other customers of Google in five separately pending actions in this District for their use of the Android OS in their mobile devices.  In addition to obviating or simplifying this case against Pantech, the Google Action will have a similar impact on all the other customers Rockstar has sued.  The judicial efficiency of allowing one suit between Rockstar and the manufacturer to first run its course, rather than litigating a half dozen

lawsuits against Google's customers cannot be overstated.  The Court should stay this case (and the other pending cases) to promote judicial economy by encouraging a "global" resolution, rather than "piecemeal litigation."  *Delphi Corp.*, 2008 WL 2941116 at *5; *Ricoh*, 279 F. Supp. 2d at 557 ("[I]t is more efficient for the dispute to be settled directly between the parties in interest.").

**B.     Alternatively, this Action Should Be Transferred Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California**

**1.     Rockstar Could Have Brought This Action in the Northern District of California**

Rockstar brought its patent infringement action against Pantech pursuant to 35 U.S.C. § 1 *et seq.*, and alleged that venue was proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).  (*See* Dkt. No. 9 ¶¶ 6-7.)  In patent infringement cases, venue is proper in the judicial district "where the defendant resides," *see* 28 U.S.C. § 1400, and, a corporation "resides" in any district in which it was subject to personal jurisdiction at the time the action was filed.  S*ee* 28 U.S.C. § 1391 (c); 28 U.S.C. § 1391 (d) (for foreign corporations).  The relevant inquiry is whether "such defendant is subject to the [transferee] court's personal jurisdiction with respect to the civil action in question."  *See* 28 U.S.C. § 1391(c)(2).  Based on Rockstar's alleged assertions supporting personal jurisdiction and venue in this District (*see* Dkt. No. 9 ¶ 7 (premised on placing mobile devices into stream of commerce in this District)), to the extent this action could have been brought in this District, it could also have been brought in the NDCAL for the very same reasons.  (*See* Kim Decl., Ex. 1 ¶ 7.)  The Pantech-branded mobile communication devices having an Android operating system ("Android OS") that are accused by Plaintiffs in this case ("Pantech-branded Android Products") are sold in the Northern District of California.  (*Id.*)  In fact, Pantech is a party to a patent infringement lawsuit pending in the NDCAL that involves these same

products.  *See Map Tool Inc. v. Pantech Co., Ltd.*, No. 4:13-cv-04945-YGR (N.D. Cal. Oct. 24,

2013).  As a result, Pantech is subject to personal jurisdiction in the NDCAL, and this action

could have been brought there initially.

## 2.    The Private and Public Interest Factors Strongly Favor Transfer

To date, five motions to transfer venue have been filed with this Court.[4]  To minimize the

amount of briefing and to promote judicial economy, Pantech adopts and hereby incorporates by

reference the facts and arguments related to the private and public interest factors considered in

the 1404(a) analysis that are set forth in LG Electronics' Motion to Stay or, in the Alternative,

Motion to Change Venue ("LG's Motion").  *See* Mot. to Stay or, in the Alternative, Mot. to

Change Venue, *Rockstar Consortium US LP v. LG Electronics, Inc.*, No. 2:13-cv-00898 (E.D.

Tex. Mar. 25, 2014).  Indeed, as set forth in LG's Motion, those factors weigh heavily in favor of

transfer, and the location of Pantech's witnesses further support transfer to the Northern District

of California ("NDCAL").

In particular, Pantech sets forth the following facts as they relate to Pantech:

- As set forth above, based on Rockstar's alleged assertions supporting personal

   jurisdiction and venue in this District (*see* Dkt. No. 9 ¶ 7), to the extent this action could

   have been brought in this District, it could also have been brought in the NDCAL for the

   very same reasons.  (*See* Kim Decl., Ex. 1 ¶ 7.)

---

[4] Mot. to Stay or, Alternatively, to Transfer to the Northern District of California, *Rockstar Consortium US LP v. ZTE Corp.*, 2:13-cv-00901 (E.D. Tex. Mar. 28, 2014); Mot. to Transfer or, in the Alternative, to Stay, *Rockstar Consortium US LP v. HTC Corp.*, 2:13-cv-00895 (E.D. Tex. Mar. 28, 2014); Mot. to Stay or, in the Alternative, Mot. to Change Venue, *Rockstar Consortium US LP v. LG Electronics, Inc.*, No. 2:13-cv-00898 (E.D. Tex. Mar. 25, 2014); Mot. to Transfer or, in the Alternative, to Stay, *Rockstar Consortium US LP v. ASUSTeK Computer, Inc.*, No. 2:13-cv-00894 (E.D. Tex. Mar. 25, 2014); Mot. to Stay or, in the Alternative, to Transfer to the Northern District of California, *Rockstar Consortium US LP v. Samsung Electronics Co., Ltd.*, 2:13-cv-00900 (E.D. Tex. Mar. 21, 2014).

- Pantech Co., Ltd. ("PCT") is based in South Korea, and Pantech Wireless, Inc. ("PWI") is based in Atlanta, Georgia.  (*Id*. ¶ 2.)

- PCT manufactures the Pantech-branded Android Products.  To the extent PCT has relevant witnesses including research and development engineers, those employees reside in Korea.  (*Id*. ¶ 5.)  For the reasons stated in LG's Motion, travel to the NDCAL will be more efficient and less burdensome than to this District.  (*Id*. ¶ 5);  *see* Mot. to Stay or, in the Alternative, Mot. to Change Venue, *Rockstar Consortium US LP v. LG Electronics, Inc.*, No. 2:13-cv-00898, 9 (E.D. Tex. Mar. 25, 2014).

- PWI, which again is based in Atlanta, Georgia, is involved in marketing and selling the Pantech-branded Android Products.  (*Id*.)  For PWI employees residing in Atlanta, Georgia, it will be more cost effective and less burdensome for them to travel to NDCAL than to this District.  *See* Mot. to Stay or, in the Alternative, Mot. to Change Venue, *Rockstar Consortium US LP v. LG Electronics, Inc.*, No. 2:13-cv-00898, 11-12 (E.D. Tex. Mar. 25, 2014).

- Pantech-branded Android Products are sold in the NDCAL.  (Kim Decl. ¶ 7.)

- There are no Pantech employees or facilities relating to the research and development of the Pantech-branded Android Products located in this District or within 100 miles of Marshall, Texas.  (*Id*. ¶ 6.)

- If Pantech's witnesses were required to travel to this District, Pantech would incur greater expense for airfare, meals, lodging and productivity loss that would be avoided if this matter were transferred to the NDCAL.  (*See id*. ¶¶ 2, 5, 6.)

- The allegedly infringing devices are "sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection

to this case than any other venue." *In re TS Tech.*, 551 F. 3d 1315, 1321 (Fed. Cir. 2008);

*see also* (Kim Decl., Ex. 1 ¶ 7.)

**V.     CONCLUSION**

For the foregoing reasons and those set forth in LG's Motion, Pantech respectfully

request that this Court stay this case pending resolution of the Google Action or, in the

alternative, transfer this case to the Northern District of California pursuant to 28 U.S.C. §

1404(a).


Dated:  April 8, 2014                         Respectfully submitted,

                              By:     /s/ Lance Lee
                                      Lance Lee
                                      Texas Bar No. 24004762
                                      Attorney-at-Law
                                      5511 Plaza Drive
                                      Texarkana, Texas 75503
                                      Telephone:  (903) 223-0276
                                      Fax:  (903) 233-0210
                                      wlancelee@aol.com

                                      **Attorney for Defendants**


**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7, the undersigned has personally conferred by telephone
with Ted Stevenson, opposing counsel, on the 8th day of April, 2014, and he advised that the
relief requested in this Motion is opposed.

                                      /s/ Lance Lee
                                      Lance Lee

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy via email transmission, facsimile and/or U.S. Mail this 8th day of April, 2014.

  _/s/ Lance Lee_
  Lance Lee

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April __, 2014, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

_____

[PLEASE INSERT NAME]

### CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed. _____, on behalf of counsel for Pantech Defendants, conferred in good faith with _____, counsel for Plaintiffs by _____ on _____. The parties reached an impasse when Plaintiffs' Counsel stated that it opposes Defendants' Motion to Transfer, or in the Alternative to Stay, leaving an open issue for the Court to resolve.

_____

[PLEASE INSERT NAME]

14

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**ZTE CORPORATION, ZTE (USA) INC., AND ZTE SOLUTIONS, INC.,**<br><br>    **Defendants.** | **Civil Action No. 2:13-cv-901-JRG** |

**ZTE (USA) INC.'S MOTION TO STAY OR, ALTERNATIVELY,
<u>TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 1

        A.      Apple and Other Companies Form Rockstar and MobileStar ................................ 1

        B.      Rockstar and MobileStar Filed This Action ........................................................... 2

        C.      Rockstar's Principal Place of Business is in Canada, Not Texas ........................... 3

III.    ARGUMENT ....................................................................................................... 5

        A.      The Court Should Stay This Action Pending Resolution of the
                Google Action ......................................................................................................... 5

        B.      In the Alternative, the Court Should Transfer to the Northern
                District of California ................................................................................................ 7

IV.     CONCLUSION ................................................................................................... 11

## TABLE OF AUTHORITIES

*Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*,
    No. 12-557, 2013 WL 5508122 (E.D. Tex. Sept. 18, 2013)...................................... 9

*DataTern, Inc., v. Staples, Inc.*,
    No. 10-133 (E.D. Tex. Mar. 12, 2012) ................................................................. 6

*Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*,
    No. 08-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008) ................................ 6

*Google Inc. v. Rockstar Consortium US LP*,
    No. 13-5833 (E.D. Tex.) ............................................................................... 2-4

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)........................................................................................ 10

*In re Apple Inc.*,
    456 F. Appx. 907 (Fed. Cir. 2012)................................................................... 10

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009)......................................................................... 7

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)....................................................................... 10

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011)....................................................................... 10

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ........................................................... 7-8

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)....................................................................... 10

*Ingeniador, LLC v. Adobe Sys. Inc.*,
    No. 12-805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014)..................................... 8-9

*Katz v. Lear Siegler, Inc.*,
    909 F. 2d 1459 (Fed. Cir. 1990)..................................................................... 5-6

*Landis v. North Am. Co*,
    299 U.S. 248 (1936)........................................................................................ 6

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*,
    No. 05-123, 2006 WL 2523137 (M.D. Fla. Aug. 30, 2006)..................................... 6

*Microsoft Corp. v. Geotag Inc.*,
   847 F. Supp. 2d 675 (D. Del. 2012)........................................................ 6

*Ricoh Co., Ltd. V. Aeroflex Inc.*,
   279 F. Supp. 2d 554 (D. Del. 2003) ...................................................... 6

*Rockstar Consortium US LP v. ASUSTek Computer, Inc.*,
   No. 13-894 (E.D. Tex.) ......................................................................... 2

*Rockstar Consortium US LP v. HTC Corp.*,
   No. 13-895 (E.D. Tex.) ......................................................................... 2

*Rockstar Consortium US LP v. Huawei Investment & Holding Co.*,
   No. 13-896 (E.D. Tex.) ......................................................................... 2

*Rockstar Consortium US LP v. LG Electronics Inc.*,
   No. 13-898 (E.D. Tex.) ......................................................................... 2

*Rockstar Consortium US LP v. Pantech Co.*,
   No. 13-899 (E.D. Tex.) ......................................................................... 2

*Rockstar Consortium US LP v. Samsung Electronics Co.*,
   No. 13-0900 .................................................................................. *passim*

*Spread Spectrum Screening LLC v. Eastman Kodak*,
   657 F.3d 1349 (Fed. Cir. 2011)............................................................ 5

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)............................................................................. 8

## I.    INTRODUCTION

ZTE (USA) Inc. ("ZTE") requests that the Court stay this action pending resolution of Google's declaratory judgment action in the Northern District of California (involving the same seven patents at-issue here) given that the Northern District action will dispose of major questions at issue in this case, and may moot this litigation entirely.  In the alternative, ZTE requests that the Court transfer this action to the Northern District.  The ties to this District are scant – Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC accuse ZTE of infringing patents purchased from a former Canadian telephone company, and Plaintiffs' accusations are based on ZTE's sales of phones that have the Android operating system, which was designed and developed by Google Inc. in Mountain View, California, located in the Northern District of California.

## II.    STATEMENT OF FACTS

### A.    Apple and Other Companies Form Rockstar and MobileStar

In 2011, five companies including Apple, Blackberry, and Microsoft, together purchased patents auctioned following the bankruptcy of Nortel Networks ("Nortel").[1]  (Exs. 1-3.)  Their winning bid was $4.5 billion.  (Exs. 1-2.)  Apple contributed "approximately $2.6 billion," or 58% of the total.  (Ex. 4.)  To hold and assert these patents, the five new owners formed various companies including Plaintiffs Rockstar and MobileStar.  (Exs. 1, 5); *Rockstar Consortium US LP v. Samsung Electronics Co.*, No. 13-0900 (the "Samsung Action"), Dkt. No. 52, Declaration of Kristin Madigan, Exs. 5-8.  Plaintiffs are admittedly a "patent licensing business" that produce no products and practice no inventions.  (Ex. 6.)  Instead, Plaintiffs' engineers examine other

---

[1] Unless stated otherwise, all referenced exhibits are attached to the accompanying Declaration of Anup M. Shah.

companies' successful products to develop infringement allegations, then their licensing staff

send demand letters to those companies, and then Plaintiffs extract licensing fees under threat of

litigation.  (Exs. 1, 7.)

### B.     Rockstar and MobileStar Filed This Action

On October 30, 2013, Rockstar formed MobileStar as a wholly-owned subsidiary.

Samsung Action, Dkt. No. 52, Declaration of Kristin Madigan, Ex. 8.  Rockstar and MobileStar

are both Delaware entities claiming their "principal place of business" at Legacy Town Center 1,

7160 North Dallas Parkway, Suite No. 250, Plano, Texas.  (*See* Dkt. No. 29, ¶¶ 1-2

("Complaint").)  On October 31, 2013, the day after forming MobileStar, Rockstar transferred to

MobileStar ownership of five of the seven patents in suit.  Samsung Action, Dkt. No. 52,

Declaration of Kristin Madigan, Ex. 12.  That same day, Plaintiffs filed this action and six others

accusing Android Original Equipment Manufacturers ("OEMs"), such as ZTE, of infringement

by "certain mobile communication devices having a version (or an adaption [sic] thereof) of

Android operating system," (Dkt. No. 1, ¶ 15)[2] which is developed by Google.  *See* Samsung

Action, Dkt. No. 52, Declaration of Abeer Dubey, ¶ 12.

On December 23, 2013, Google filed a declaratory action in the Northern District of

California against Rockstar and MobileStar seeking judgment that its Android operating system

does not infringe the same seven patents.  *See Google Inc. v. Rockstar Consortium US LP*, No.

13-5833, Dkt. No. 1 (the "Google Action").  Thereafter, on December 31, 2013, Plaintiffs added

---

[2]  *See also Rockstar Consortium US LP v. ASUSTek Computer, Inc.*, No. 13-894, Dkt.
No. 1 ¶ 14; *Rockstar Consortium US LP v. HTC Corp.*, No. 13-895, Dkt. No. 1 ¶ 15; *Rockstar
Consortium US LP v. Huawei Investment & Holding Co.*, No. 13-896, Dkt. No. 1 ¶ 20; *Rockstar
Consortium US LP v. LG Electronics Inc.*, No. 13-898, Dkt. No. 1 ¶ 16; *Rockstar Consortium US
LP v. Pantech Co.*, No. 13-899, Dkt. No. 1 ¶ 14; and *Rockstar Consortium US LP v. Samsung
Electronics Co.*, No. 13-900, Dkt. No. 1 ¶ 16.

Google as a defendant in its Texas action against Samsung and initially accused Google of infringing three of the patents at-issue here. *See* Samsung Action, Dkt. No. 19. Plaintiffs later sought leave to add the remaining four patents. *See* Samsung Action, Dkt. No. 45. Google and Samsung moved to transfer the Samsung Action to the Northern District of California, which motion is currently pending. *Id.* at Dkt. No. 52.

On March 24, 2014, Plaintiffs provided ZTE with their Patent L.R. 3-1 infringement contentions. (Ex. 8.) Plaintiffs' infringement contentions confirm that Plaintiffs' allegations are directed to phones with the Android operating system, as they generally identify stock Android functionality and applications developed by Google. (*Id.*)

**C.      Rockstar's Principal Place of Business is in Canada, Not Texas**

Each of the two plaintiffs in this action claims to have "its principal place of business" in Texas. (Complaint, ¶¶ 1-2.) Public records reveal, however, that Rockstar's principal place of business is in Ottawa, Canada.

Rockstar's website lists addresses in Canada and Texas; Canada comes first, and is the only listed address with a phone number. (Ex. 6.) The same website links to Rockstar's LinkedIn page, which lists Rockstar's Canadian address as its "headquarters." (Exs. 9-10.) Rockstar also lists its employees on LinkedIn; there are 33 of them, with only five in Texas. (Ex. 10); Samsung Action, Dkt. No. 52, Declaration of Kristin Madigan, Ex. 15. Rockstar's own declarant, opposing transfer in Google's declaratory judgment action, averred only that the same five employees work in Rockstar's Texas office. *See* Google Action, Dkt. No. 33-1, ¶ 21. The bulk of Rockstar's employees, including its senior management, work in Ontario, Canada:



Figure 1. **Senior Rockstar management**

(Ex. 11.)  Of these ten members of Rockstar's senior management, five work in Canada; one

each in California, Colorado, Massachusetts, New York, and Pennsylvania; and none in Texas.

(Ex. 11); Samsung Action, Dkt. No. 52, Declaration of Kristin Madigan, Exs. 15, 17-19.  In

addition to its senior management, Rockstar lists on its website six "Corporate Leaders," none of

whom are from Texas.  (Ex. 12.)  None of Rockstar's declarants have averred that its

management, "senior" or otherwise, is in Texas.

None of Rockstar's licensing letters so far made public come from Texas.  (Ex. 13.)

Some came from Rockstar's headquarters in Canada, and others from Rockstar's licensing

executive in California.  (*Id.*)  But the most telling exposure of Rockstar's Canadian origin

comes from the document transferring five of the patents-in-suit from Rockstar to MobileStar.

Samsung Action, Dkt. No. 52, Declaration of Kristin Madigan, Ex. 12.  Although Rockstar

alleges that both buyer and seller have "Texas roots" (Google Action, Dkt. Nos. 20 at 5, 39-3 at

9), this critical transaction, which Rockstar alleges makes MobileStar indispensable, was

executed by two members of Rockstar's senior management, both Canadians, in Canada—duly

witnessed and notarized by Rockstar's Canadian corporate counsel.  Samsung Action, Dkt. No.

52, Declaration of Kristin Madigan, Ex. 12.  MobileStar did not even register with the Texas

Secretary of State, as required by law, until more than a month later.  (*See* Dkt. No. 23 at 5-7.)

4

III.    **ARGUMENT**

A.    **The Court Should Stay This Action Pending Resolution of the Google Action**

ZTE requests that the Court stay this case and allow the Google Action to proceed to judgment first.

Plaintiffs define ZTE's accused devices as those having a version of the Android operating system.  (*See* Dkt. No. 1, ¶ 15.)  Plaintiff's infringement contentions also identify only stock Android functionality as allegedly infringing six of the seven patents-in-suit.  (Ex. 8.) These contentions repeatedly and exclusively identify Android source code from Google's Android developer website in an attempt to establish infringement by ZTE's accused devices. (*Id.*)  Plaintiffs also repeatedly make the claim that "this feature is present on all Accused Products running Android versions 1.0 or above" or similar claims.  (*See, e.g., id.* at 1.)

Google manufactures Android (*see* Samsung Action, Dkt. No. 52, Declaration of Abeer Dubey, ¶ 12), while ZTE Corporation implements the Android operating system on the accused devices.  (Ex. 14.)  ZTE is therefore Google's customer, and the customer suit exception to the first-to-file rule applies.  *See generally Katz v. Lear Siegler, Inc.*, 909 F. 2d 1459 (Fed. Cir. 1990).

In the interest of judicial efficiency and to guard against abuse, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz*, 909 F. 2d at 1464.  The manufacturer's case need not resolve every issue in the customer suit; it "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits."  *Spread Spectrum Screening LLC v. Eastman Kodak*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464).  The Google Action clears this bar.

Given that Google developed Android (*see* Samsung Action, Dkt. No. 52, Declaration of Abeer Dubey, ¶ 12), it is "in the best position to defend its own products." *Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, No. 08-11048, 2008 WL 2941116, at *5 (E.D. Mich. July 25, 2008); *see also Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 675, 681 (D. Del. 2012) (finding "the real dispute" was between the patentee and the manufacturers, rather than the customers who implemented the manufacturers' software). The Google Action will resolve "major issues" in this litigation, simplifying many and likely obviating others. *Katz*, 909 F.2d at 1464; *see also DataTern, Inc., v. Staples, Inc.*, Case No. 10-133, Dkt. No. 185 at 9 (E.D. Tex. Mar. 12, 2012) (staying customer suits in favor of declaratory judgment action brought by software developers in New York because "'in all likelihood [the New York cases] will settle many [issues] and simplify them all.'" (quoting *Landis v. North Am. Co*, 299 U.S. 248, 256 (1936) (alterations in original)).

At a minimum, the Google Action will resolve the issues of the Android operating system's noninfringement of the patents-in-suit. Thus the Google Action "will efficiently dispose of the infringement issues" presented here. *Ricoh Co., Ltd. V. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003). Staying this litigation will also promote judicial economy by encouraging "global" resolution rather than "piecemeal litigation." *Delphi Corp.*, 2008 WL 2941116 at *5; *see also Ricoh*, 279 F. Supp. 2d at 557 ("it is more efficient for the dispute to be settled directly between the parties in interest"); *Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, No. 05-123, 2006 WL 2523137, at *2 (M.D. Fla. Aug. 30, 2006) (stay will "preserve judicial resources, prevent duplicative expenses, and prevent the possibility of inconsistent judgments"). The real dispute here, as shown by Plaintiffs' repeated identification of stock Android functionality and Android applications in its infringement contentions, is between the Plaintiffs

and Google.  ZTE therefore respectfully requests that the Court stay this action pending
resolution of the Google Action.[3]

### B.    In the Alternative, the Court Should Transfer to the Northern District of California

Should the Court decline to grant a stay, ZTE requests that the Court transfer this case to
the Northern District of California, the more convenient forum, for the reasons articulated in
Google's and the Samsung Defendants' Motion to Stay or, in the Alternative, to Transfer to the
Northern District of California in the Samsung Action.  *See* Samsung Action, Dkt. No. 52, at 6-
15.

The Court must first determine "whether a civil action 'might have been brought' in the
destination venue."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc)
("Volkswagen II")  This test is "only a requirement that the transferee court have jurisdiction
over the defendants in the transferred complaint."  *In re Genentech*, 566 F.3d 1338, 1346 (Fed.
Cir. 2009).  ZTE does not contest jurisdiction in the Northern District of California for this
action, thus resolving this issue.

Next, courts look to "private" and "public" interest factors in evaluating whether the
proposed transferee forum is sufficiently more convenient:

> The private interest factors are:  (1) the relative ease of access to
> sources of proof; (2) the availability of compulsory process to
> secure the attendance of witnesses; (3) the cost of attendance for
> willing witnesses; and (4) all other practical problems that make
> trial of a case easy, expeditious and inexpensive.  The public
> interest factors are:  (1) the administrative difficulties flowing from
> court congestion; (2) the local interest in having localized interests

---

[3]   This Court should also stay this action because this case is in its early stages, a stay
will simplify the issues, and a stay will not prejudice Plaintiffs. *See Southwire Co. v. Cerro Wire,
Inc.*, 750 F. Supp. 2d 775, 778-80 (E.D. Tex. 2010).  Plaintiffs are non-practicing entities that
can be fully compensated with monetary damages. *Microlinc, LLC v. Intel Corp.*, No. 07- 488,
2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010).

> decided at home; (3) the familiarity of the forum with the law that
> will govern the case; and (4) the avoidance of unnecessary
> problems of conflict of laws [or in] the application of foreign law.

*Volkswagen II*, 545 F.3d at 315 (internal citation omitted).  The law requires an "individualized, case-by-case consideration of convenience and fairness" to the parties.  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The private factors favor transfer because Plaintiffs have accused ZTE devices primarily based on the Android operating system, which Google designed and developed in Mountain View, California.  *See* Samsung Action, Dkt. No. 52, Declaration of Abeer Dubey, ¶ 12. Google's relevant technical evidence is either in the Northern District of California, or much closer to it than to this District.  *See* Samsung Action, Dkt. No. 52, at 6-14.  Further, Google witnesses, who may be crucial to ZTE's defense, are concentrated in Mountain View, California, including employees responsible for the research, design, and development of the accused Android features.  *See id.*, Declaration of Abeer Dubey, ¶ 6; *see also Ingeniador, LLC v. Adobe Sys. Inc.*, No. 12-805, 2014 WL 105106, at *3 (E.D. Tex. Jan. 10, 2014) (granting motion to transfer to N.D. Cal. due in part to the defendant's witnesses being located there).  According to Google, there are no relevant Google documents or employees in the Eastern District of Texas. *See* Samsung Action, Dkt. No. 52, Declaration of Abeer Dubey, ¶¶ 7-9.

As Google noted, at least three sets of relevant witnesses are located in the Northern District of California.  First, witnesses with knowledge of the Android platform, including former employees of Google and Android Inc., remain heavily concentrated in the Northern District.  Second, at least one named inventor resides in the Northern District (*See* Samsung Action, Dkt. No. 52, Declaration of Kristin Madigan, Ex. 22), and dozens of named inventors of

relevant prior art are listed as living in the Northern District.[4]   Finally, the Northern District is

home to important, but very likely unwilling, trial witnesses:  employees of Apple.  "[T]he focus

of this factor is on witnesses for whom compulsory process might be necessary."  *Ingeniador*,

2014 WL 105106, at *2.  Given that Apple was involved in the auction of Nortel's patent

portfolio, the valuation of which may be at issue in this case (Samsung Action, Dkt. No. 19 ¶¶ 7-

12), Apple's witnesses may be necessary trial witnesses.  Accordingly, this factor favors transfer.

    The public interest factors also either favor transfer or are neutral because the Northern

District of California has a greater interest in this case.  *See* Samsung Action, Dkt. No. 52, at 15.

"The Northern District of California has an interest in protecting intellectual property rights that

stem from research and development in Silicon Valley."  *Affinity Labs of Texas v. Samsung

Elecs. Co., Ltd.*, No. 12-557, 2013 WL 5508122, at *3 (E.D. Tex. Sept. 18, 2013).  The Northern

District's local interest is even stronger where the action "calls into question the work and

---

[4] The inventors include Robert Irribarren, named inventor on U.S. Patent No. 5,737,395, Ajay Gupta and Gregory Skinner, named inventors on U.S. Patent No. 5,781,550; Christopher D. Coley, named inventors on U.S. Patent No. 5,826,014; Snehal G. Karia and Dean C. Cheng, named inventors on U.S. Patent No. 6,643,267; Kamran Sistanizadeh and Masoud M. Kamali, named inventors on U.S. Patent No. 6,681,232; Ilan Raab, Ravi Manghirmalani, Ofer Doitel, and Lynne Marie Izbicki, named inventors on U.S. Patent No. 5,751,967; Judy Dere, Leon Leong, Daniel Simone, and Allan Thomson, named inventors on U.S. Patent No. 5,802,286; Tom Ziola and William Herman, named inventors on U.S. Patent No. 5,862,339; Nicolle Henneuse and Pete Billington, named inventors on U.S. Patent No. 5,963,913; John H. Hart and W. Paul Sherer, named inventors on U.S. Patent No. 6,041,166; Srikumar N. Chari, named inventor on U.S. Patent No. 6,046,742; Prakash C. Banthia, a named inventor on U.S. Patent No. 6,085,243; Umesh Muniyappa, Alampoondi Eswaran Natarajan, Nicholas Michael Brailas, and Micheal Terzich, named inventors on U.S. Patent No. 6,092,200; Keith McCloghrie, Bernard R. James, Christopher Young, and Norman W. Finn, named inventors on U.S. Patent No. 6,219,699; Leslie J. Arrow, Russell C. Jones, and Quentin C. Liu, named inventors on U.S. Patent No. 6,226,751; Michael C. Tchao, named inventor on U.S. Patent No. 5,563,996; Scott A. Jenson, named inventor on U.S. Patent No. 5,570,109; Mitchell D. Forcier, named inventor on U.S. Patent No. 5,590,257; Stephen P. Capps, named inventor on U.S. Patent No. 5,745,716; Thomas P. Moran and Patrick Chiu, named inventors on U.S. Patent No. 5,809,267; Edward H. Frank and James Arthur Gosling, and John C. Liu, named inventors on European Patent No. 0,605,945; and Ashish Thenawala, named inventor on European Patent No. 0,630,141.  Samsung Action, Dkt. No. 52, Declaration of Dale Jachlewski ¶ 3.

reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffman-La Roche Inc*., 587 F.3d 1333, 1336 (Fed. Cir. 2009).

This District's interest is much weaker. Although both Plaintiffs claim their "principal place of business" is in this District, their true principal place of business is in Canada. (*See supra* at 5-6.) The Supreme Court has defined "principal place of business" as "the place where a corporation's officers direct, control, and coordinate the corporation's activities," also known as "the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Citing *Hertz Corp.*, the Federal Circuit has favored transferring similar cases out of this District. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and reminding that courts should, if "the record reveals attempts at manipulation" regarding the principal place of business, "take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation.").

Plaintiffs' presence in Texas, as evidenced by its Canadian nerve center and MobileStar's late registration in this state, is "recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (noting that *Hertz Corp*. urges "courts to ensure that the purposes of jurisdiction and venue laws are not frustrated by a party's attempts at manipulation."). "Courts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'" *In re Apple Inc.*, 456 F. Appx. 907, 908-09 (Fed. Cir. 2012) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011)). The remaining public interest factors are neutral or weigh slightly in favor of transfer, because both districts are familiar with and can apply the federal patent laws, and no conflict of laws problems are expected in either district.

Given that this action could have been brought in the Northern District of California, and the private and public interest factors all either weigh in favor of transfer or are neutral, the Court should transfer this case to the Northern District of California.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant ZTE (USA) Inc. respectfully requests that this Court stay this case pending resolution of the Google Action or, in the alternative, transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Date: March 28, 2014

Respectfully submitted,

  _/s/ Everett Upshaw_
Alexas D. Skucas
askucas@kslaw.com
Thomas Randall (*pro hac vice* to be filed)
trandall@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

Steven T. Snyder
ssnyder@kslaw.com
Anup M. Shah
ashah@kslaw.com
KING & SPALDING LLP
100 N. Tryon Street, Suite 3900
Charlotte, NC 28202
Tel: 704.503.2600
Fax: 704.503.2622

Everett Upshaw
everettupshaw@everettupshaw.com
LAW OFFICE OF EVERETT UPSHAW, PLLC
811 S. Central Expressway, Suite 307
Richardson, TX 75080
Tel: 214.680.6005
Fax: 214.865.6086

ATTORNEYS FOR DEFENDANT
ZTE (USA) INC.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed.  Steven T. Snyder and Anup M. Shah, on behalf of counsel for ZTE (USA) Inc., conferred in good faith with Josh Budwin, counsel for Plaintiffs by telephone on March 26, 2014.  The parties reached an impasse, leaving an open issue for the Court to resolve.


Dated: March 28, 2014                                       */s/ Anup M. Shah*_____
                                                            Anup M. Shah



## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 28, 2014.

                                                            */s/ Everett Upshaw*_____
                                                            Everett Upshaw

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, | § § § § | |
| *Plaintiff*, | § § | |
| *v.* | § § | CASE NO. 2:13-CV-00894-JRG |
| | § | **LEAD CASE** |
| ASUSTEK COMPUTER, INC. and ASUS COMPUTER INTERNATIONAL, | § § § | |
| *Defendants*. | § § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants ASUSStek Computer, Inc.'s and ASUS Computer International's  (collectively, "ASUS") Motion to Transfer (Dkt. No. 41), filed March 25, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

**I.        BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 67-47). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US

1

LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against ASUS on October 31, 2013, alleging that ASUS infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Dkt. No. 122).

In this motion, ASUS asks the Court to transfer this case to the NDCA. In the alternative, ASUS asks the Court to stay the case pending resolution of the NDCA suit.

## II.    <u>LEGAL STANDARDS</u>

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a

district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

3

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

## III.    TRANSFER

### A. Availability of the Transferee Venue

The parties appear to agree that this suit could originally have been brought in the Northern District of California. ASUS is a Taiwanese entity with its principal United States headquarters in Freemont, California, in the NDCA. Accordingly, the case could have been brought in the Northern District of California. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

### B. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

This being a patent case, it is likely that the bulk of the relevant evidence in this action will come from ASUS. *See In re Genentech*, 566 F.3d at 1345. ASUS "maintains its documents and information regarding its sales" in Freemont, but suggests that documents relating to the technical design of ASUS products are maintained in Taiwan (Dkt. No. 41-11). ASUS also

suggests that certain Google documents will prove relevant, but the Court has already found that there is no reason to believe that Google's documentary evidence is located on servers located at its Mountain View, California headquarters (Dkt. No. 122). Moreover, Rockstar's documentary evidence relating to the patents-in-suit is stored at its Plano, Texas headquarters—within the Eastern District of Texas (Dkt. No. 67-47).

The evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. Although some evidence relating to damages appears to be maintained in the Northern District of California, it also seems that the bulk of ASUS's evidence may come from Taiwan. The Court thus finds that this factor weighs against transfer. The Court notes, however, that given the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in its decision.

    2.  *Availability of Compulsory Process*

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a); *Ingeniador, LLC v. Adobe Systems Inc.*, 2014 WL 105106, No. 2:12-cv-805-JRG (E.D. Tex. Jan. 9, 2014). Rule 45, however, makes compulsory process for deposition effectively nationwide. Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. *See Ingeniador*, *supra*. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

ASUS suggests that "[k]ey third parties such as Google witnesses with knowledge of the Android platform, including former employees, remain heavily concentrated in the Northern District. At least one named inventor resides in the Northern district, and dozens of relevant prior artists of record live in the Northern District" (Dkt. No. 41, at 9). They also suggest that employees of Apple, one of Rockstar's corporate owners, may be compelled to testify in the Northern District.

ASUS does not, however, identify any particular nonparty witnesses who are expected to testify at trial. Nor does the Court give particular credence to the assertion that prior artists will be called to testify; this Court has previously noted that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs., LLC v. Target Brands, Inc.*, No. 6:11-cv-655-LED, Dkt. No. 74, at 15 n.13 (E.D. Tex. Mar. 21, 2013). Finally, though the Court views ASUS's asserted interest in Apple's testimony with some skepticism, it notes that other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas (Dkt. Nos. 67-8, 67-9).

In contrast, Rockstar identifies two prosecuting attorneys and two former Nortel employees, in or near the Eastern District of Texas whom it suggests might be called to testify (Dkt. No. 67, at 9-10). It also suggests that ASUS customers such as AT&T and Verizon might be called to prove damages. *Id.* The Court is not convinced that any of these witnesses will likely be called to testify, but their appearance in the case is at least plausible.

Weighing all considerations of available compulsory process, the Court finds that this factor is neutral. One inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas.

6

### 3. *Cost of Attendance for Willing Witnesses*

The cost of attendance for willing witnesses is another key factor in the Court's analysis. As noted above, ASUS's global headquarters is in Taiwan, and its U.S. headquarters is in Freemont, California. Many of the ASUS employees with information relevant to this case are located in or near the Northern District of California; others are located in Taiwan (Dkt. No. 41-11). ASUS also suggests that Google witnesses from the Northern District of California would testify as willing witnesses at trial (Dkt. No. 41, at 8). Rockstar's headquarters is in Plano, Texas, and Rockstar has identified several potential witnesses who work at its Plano office (Dkt. No. 67, at 7).

ASUS employees from northern California would face substantial costs in traveling to the Eastern District of Texas for trial. However, if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses. ASUS witnesses located in Taiwan, by contrast, will be subjected to substantial costs in either venue.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for willing witnesses. *Cf. Thomas Swan & Co., Ltd. v. Finisar Corp.*, 2014 WL 47343, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). Having considered the evidence, the Court finds that this factor weighs slightly against transfer.

### 4. *Other Practical Problems*

In this case, where multiple and parallel litigations in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). These considerations weigh against a transfer.

There are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes save venue (Dkt. No. 31). The cases will present common issues of claim construction and damages, and (most likely) validity.

C.  Public Interest Factors

*1.  Local Interest*

ASUS argues that "[t]he Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley" (Dkt. No. 41, at 11) (quoting *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 2013 WL 5508122, No. 1:12-cv-557-RC (E.D. Tex. Sept. 18, 2013). The Court has previously been highly skeptical of arguments that a particular jurisdiction has a "local interest" that amounts to a bias in its jury pool. *See Ingeniador*, 2014 WL 105106, at *3-4. A predisposition toward one party, independent of the merits of the case, cannot be the kind of "local interest" cognized by the federal rules, and this Court gives this consideration no weight in its analysis. The Court finds that this factor is neutral.

*2.  Other Public Interest Factors*

Both parties agree that other public interest factors are neutral. The Court sees no reason to disagree with this conclusion.

Having considered all appropriate factors, the Court finds that ASUS has not shown that it would be clearly more convenient to transfer this case to the Northern District of California. ASUS's request for a transfer must therefore be denied.

**IV.    STAY**

In the alternative, ASUS suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. Nos. 67-27, 67-28). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 67-24). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 67, at 13). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

ASUS's request for a stay, then, should be denied.

## V.    **CONCLUSION**

The Court finds that the Northern District of California is not clearly a more convenient venue for this case. The Court also finds that a stay of proceedings would not serve the interests

9

of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 41) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

**Jul 28, 2014**


RODNEY  GILSTRAP
UNITED  STATES  DISTRICT  JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, | § § § | |
| *Plaintiff*, | § § § | CASE NO. 2:13-CV-00894-JRG |
| | § | **LEAD CASE** |
| *v.* | § § | CASE NO. 2:13-CV-00901-JRG |
| ZTE CORPORATION, *et al.*, | § § | **MEMBER CASE** |
| *Defendants*. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants ZTE Corporation's, STE (USA) Inc.'s, and ZTE Solutions, Inc.'s (collectively, "ZTE") Motion to Transfer (Dkt. No. 44), filed March 28, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 46-51). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US

1

LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against ZTE on October 31, 2013, alleging that ZTE infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

In this motion, ZTE asks the Court to stay the case pending resolution of the NDCA suit. In the alternative, ZTE asks the Court to transfer this case to the NDCA.

## II.    **LEGAL STANDARDS**

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2)

3

the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *Volkswagen II*, 545 F.3d at 314-15.

### III.   STAY

ZTE suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. No. 46-22). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

4

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 46-16). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 1). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

ZTE's request for a stay, then, should be denied.

## IV.    <u>TRANSFER</u>

To support its argument for transfer, ZTE relies on arguments set forth in other defendants' transfer motions in a related case (Dkt. No. 44, at 7). The Court has denied that motion (Case No. 2:13-CV-00894, Dkt. No. 122). To the extent that it makes any argument of its own, ZTE relies on the presence of Google witnesses in the Northern District of California as favoring transfer. ZTE does not mention the presence of its own likely witnesses at its U.S. headquarters in Richardson, Texas—within the Eastern District (Dkt. No. 46-7).

ZTE's barebones argument does not hold up against Rockstar's detailed analysis of the party and nonparty witnesses and evidence in this case. *See* Dkt. No. 45. The Court finds, having analyzed each of the private and public interest factors enumerated above, that ZTE has failed to carry its burden of proving that the NDCA is clearly a more convenient venue than this Court.

## V.    <u>CONCLUSION</u>

The Court finds that a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved. The Court also finds that the Northern District of California is not clearly a more convenient venue for this case.

5

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt.

No. 35) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

**Jul 30, 2014**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, | § § § § | |
| *Plaintiff*, | § § | CASE NO. 2:13-CV-00894-JRG |
| | § § | **LEAD CASE** |
| *v.* | § § | CASE NO. 2:13-CV-00898-JRG |
| LG ELECTRONICS, INC., *et al.*, | § § | **MEMBER CASE** |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants LG Electronics, Inc.'s, LG Electronics U.S.A., Inc.'s, and LG Electronics Mobilecomm USA Inc.'s (collectively, "LG") Motion to Transfer (Dkt. No. 35), filed March 25, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

### I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 38-8). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in

1

Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against LG on October 31, 2013, alleging that LG infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

In this motion, LG asks the Court to stay the case pending resolution of the NDCA suit. In the alternative, LG asks the Court to transfer this case to the NDCA.

## II.    LEGAL STANDARDS

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

2

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2)

3

the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *Volkswagen II*, 545 F.3d at 314-15.

### III.    <u>STAY</u>

LG suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. No. 39-7). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 39-5). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 1). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

LG's request for a stay, then, should be denied.

## IV.    <u>TRANSFER</u>

A. <u>Availability of the Transferee Venue</u>

The parties agree that this suit could originally have been brought in the Northern District of California. The LG subsidiary responsible for importing and selling the accused products maintains its headquarters in San Diego, California. LG also maintains an office in San Jose, California, in the NDCA. Accordingly, the case could have been brought in the Northern District of California. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

B. <u>Private Interest Factors</u>

*1. Relative Ease of Access to Sources of Proof*

This being a patent case, it is likely that the bulk of the relevant evidence in this action will come from LG. *See In re Genentech*, 566 F.3d at 1345. LG avers that "[d]ocuments and records relating to LG-branded Android Products, such as sales agreements, marketing documents and marketing strategy reports, are either physically present or electronically accessible at the San Diego office" in the *Southern* District of California (Dkt. No. 34-13). Because modern document production is done electronically, there is no practical difference between the burden of producing documents from the Southern District of California to the NDCA and that of producing them to the Eastern District of Texas. Furthermore, LG's affidavit

5

in support of this motion pointedly does *not* make firm representations about the physical locations of its data (Dkt. No. 36). Rockstar, in contrast, avers that documentary evidence relating to the patents-in-suit is stored at its Plano, Texas headquarters—within the Eastern District of Texas (Dkt. No. 38-8). LG also suggests that Google retains documentary evidence at its headquarters in Mountain View, California, but the Court has already rejected that claim as insufficiently supported by evidence (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

The evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. The location of LG's documentary evidence is unclear, and, to the extent that the data is in San Diego, that data would be insubstantially more difficult to produce in this Court than the NDCA. The Court thus finds that this factor weighs against transfer. The Court notes, however, that given the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in its decision.

*2. Availability of Compulsory Process*

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a); *Ingeniador, LLC v. Adobe Systems Inc.*, 2014 WL 105106, No. 2:12-cv-805-JRG (E.D. Tex. Jan. 9, 2014). Rule 45, however, makes compulsory process for deposition effectively nationwide. Moreover, party witnesses do not require compulsory process for trial and are not given much

6

weight in this factor. *See Ingeniador*, *supra*. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

LG suggests that the case will require compulsory process for Google and Apple, Inc. witnesses and documents in or near Mountain View, California, and Cupertino, California, respectively. "[a]t least one named inventor resides in the [NDCA] . . . and dozens of relevant prior artists of record live in the [NDCA]" (Dkt. No. 35, at 13).

LG does not, however, identify any particular nonparty witnesses who are expected to testify at trial. Nor does the Court give particular credence to the assertion that prior artists will be called to testify; this Court has previously noted that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs., LLC v. Target Brands, Inc.*, No. 6:11-cv-655-LED, Dkt. No. 74, at 15 n.13 (E.D. Tex. Mar. 21, 2013). Finally, though the Court views LG's asserted interest in Apple's testimony with some skepticism, it notes that other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas (Dkt. Nos. 39-12, 39-13).

In contrast, Rockstar identifies two prosecuting attorneys and two former Nortel employees, in or near the Eastern District of Texas whom it suggests might be called to testify (Dkt. No. 37, at 11-12). It also suggests that LG customers such as AT&T and Verizon might be called to prove damages. *Id.* The Court is not convinced that any of these witnesses will likely be called to testify, but their appearance in the case is at least plausible.

Weighing all considerations of available compulsory process, the Court finds that this factor is neutral. One inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas.

*3.   Cost of Attendance for Willing Witnesses*

The cost of attendance for willing witnesses is another key factor in the Court's analysis. LG argues that its employees in San Jose, California and San Diego, California, will be relevant, but makes no particular assertions about its likely witnesses.[1] LG also suggests that Google witnesses from the Northern District of California would testify as willing witnesses at trial (Dkt. No. 35, at 9). Rockstar's headquarters is in Plano, Texas, and Rockstar has identified several potential witnesses who work at its Plano office (Dkt. No. 35, at 7-8).

LG employees from San Diego and San Jose would face somewhat lower costs in traveling to the NDCA rather than the Eastern District of Texas for trial. However, if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses. LG witnesses located overseas, by contrast, will be subjected to substantial costs in either venue.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for willing witnesses. *Cf. Thomas Swan & Co., Ltd. v. Finisar Corp.*, 2014 WL 47343, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). Having considered the evidence, the Court finds that this factor weighs slightly against transfer.

*4.   Other Practical Problems*

In this case, where multiple and parallel litigations in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis. *See In re*

---

[1] The Court notes that neither of LG's two US-based entities appear to design or manufacture the accused products. Common sense suggests that some LG witnesses might be traveling from overseas, which would make travel to this Court only marginally more inconvenient for those witnesses than a trip to the NDCA.

*Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). These considerations weigh against a transfer.

There are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes save venue (Dkt. No. 32). The cases will present common issues of claim construction and damages, and (most likely) validity.

C. <u>Public Interest Factors</u>

*1. Local Interest*

LG argues that "'the [NDCA] has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley'" (Dkt. No. 35, at 14 (quoting *Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*, No. 12-CV-557-RC (E.D. Tex. Sept. 18, 2013))). Rockstar also suggests that its location in the Eastern District of Texas should lead the Court to find a specialized local interest in resolving the case (Dkt. No. 37, at 14-15). The Court has previously been highly skeptical of arguments that a particular jurisdiction has a "local interest" that amounts to a bias in its jury pool. *See Ingeniador*, 2014 WL 105106, at *3-4. A predisposition toward one party, independent of the merits of the case, cannot be the kind of "local interest" cognized by the federal rules, and this Court gives this consideration no weight in its analysis. The Court finds that this factor is neutral.

*2. Other Public Interest Factors*

Both parties agree that other public interest factors are neutral. The Court sees no reason to disagree with this conclusion.

Having considered all appropriate factors, the Court finds that LG has not shown that it would be clearly more convenient to transfer this case to the Northern District of California. LG's request for a transfer must therefore be denied.

## V.    CONCLUSION

The Court finds that a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved. The Court also finds that the Northern District of California is not clearly a more convenient venue for this case.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 35) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

## Jul 30, 2014

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, | § § § | |
| *Plaintiff*, | § § § § | CASE NO. 2:13-CV-00894-JRG **LEAD CASE** |
| *v.* | § § § | CASE NO. 2:13-CV-00895-JRG |
| HTC CORPORATION, *et al.*, | § § § | **MEMBER CASE** |
| *Defendants*. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants HTC Corporation's, and HTC America, Inc.'s (collectively, "HTC") Motion to Transfer (Dkt. No. 34), filed March 28, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 36-41). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US

1

LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against HTC on October 31, 2013, alleging that HTC infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Dkt. No. 122).

In this motion, HTC asks the Court to transfer this case to the NDCA. In the alternative, HTC asks the Court to stay the case pending resolution of the NDCA suit.

## II.    LEGAL STANDARDS

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a

district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*).  In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.  *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319.  The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

3

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

### III.   TRANSFER

#### A. Availability of the Transferee Venue

The parties appear to agree that this suit could originally have been brought in the Northern District of California. HTC is a Taiwanese entity with its principal United States headquarters in Bellevue, Washington, in the NDCA. HTC has employees and conducts business in the NDCA, and admits that it would be subject to jurisdiction there. Rockstar does not dispute this. Accordingly, the case could have been brought in the Northern District of California. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

#### B. Private Interest Factors

##### 1. *Relative Ease of Access to Sources of Proof*

This being a patent case, it is likely that the bulk of the relevant evidence in this action will come from HTC. *See In re Genentech*, 566 F.3d at 1345. HTC "maintains business documents and records relating to the marketing and sales of [the] accused products" in

4

Bellevue, and maintains its research and development documents in Taiwan (Dkt. No. 34-13). HTC also suggests that certain Google documents will prove relevant, but the Court has already found that there is no reason to believe that Google's documentary evidence is located on servers located at its Mountain View, California headquarters (Case No. 2:13-CV-894, Dkt. No. 122). It also suggests that documents from Rockstar participant Apple, Inc. are maintained in the Northern District of California, but fails to mention the location of other documents from other Rockstar Partners—notably, Ericsson and Blackberry—in or near the Eastern District of Texas (Dkt. No. 36-11, 36-12). Moreover, Rockstar's documentary evidence relating to the patents-in-suit is stored at its Plano, Texas headquarters—within the Eastern District of Texas (Dkt. No. 36-41).

The evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. Defendants' sources of proof appear to be located in Washington and Taiwan, and would be insubstantially more difficult to produce in this Court than in the NDCA. The Court thus finds that this factor weighs against transfer. The Court notes, however, that given the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in its decision.

### 2. *Availability of Compulsory Process*

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a);

5

*Ingeniador, LLC v. Adobe Systems Inc.*, 2014 WL 105106, No. 2:12-cv-805-JRG (E.D. Tex. Jan. 9, 2014). Rule 45, however, makes compulsory process for deposition effectively nationwide. Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. *See Ingeniador*, *supra*. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

HTC suggests that the case will require compulsory process for Google and Apple, Inc. witnesses and documents in Mountain View, California, and Cupertino, California, respectively. At least one named inventor resides in the Northern district, and dozens of relevant prior artists of record live in the Northern District" (Dkt. No. 41, at 9).

HTC does not, however, identify any particular nonparty witnesses who are expected to testify at trial. Nor does the Court give particular credence to the assertion that prior artists will be called to testify; this Court has previously noted that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs., LLC v. Target Brands, Inc.*, No. 6:11-cv-655-LED, Dkt. No. 74, at 15 n.13 (E.D. Tex. Mar. 21, 2013). Finally, though the Court views HTC's asserted interest in Apple's testimony with some skepticism, it notes that other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas (Dkt. Nos. 36-11, 36-12).

In contrast, Rockstar identifies two prosecuting attorneys and two former Nortel employees, in or near the Eastern District of Texas whom it suggests might be called to testify (Dkt. No. 35, at 9-10). It also suggests that HTC customers such as AT&T and Verizon might be called to prove damages. *Id.* The Court is not convinced that any of these witnesses will likely be called to testify, but their appearance in the case is at least plausible.

Weighing all considerations of available compulsory process, the Court finds that this factor is neutral. One inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas.

### 3.  Cost of Attendance for Willing Witnesses

The cost of attendance for willing witnesses is another key factor in the Court's analysis. As noted above, HTC's global headquarters is in Taiwan, and its U.S. headquarters is in Bellevue, Washington. HTC also suggests that Google witnesses from the Northern District of California would testify as willing witnesses at trial (Dkt. No. 34, at 9-12). Rockstar's headquarters is in Plano, Texas, and Rockstar has identified several potential witnesses who work at its Plano office (Dkt. No. 35, at 7-8).

HTC employees from Bellevue would face somewhat lower costs in traveling to the NDCA rather than the Eastern District of Texas for trial. However, if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses. HTC witnesses located in Taiwan, by contrast, will be subjected to substantial costs in either venue.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for willing witnesses. *Cf. Thomas Swan & Co., Ltd. v. Finisar Corp.*, 2014 WL 47343, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). Having considered the evidence, the Court finds that this factor weighs slightly against transfer.

### 4.  Other Practical Problems

In this case, where multiple and parallel litigations in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis. *See In re*

7

*Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). These considerations weigh against a transfer.

There are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes save venue (Dkt. No. 32). The cases will present common issues of claim construction and damages, and (most likely) validity.

C. <u>Public Interest Factors</u>

1. *Local Interest*

HTC argues that "the Northern District of California has a favored interest in resolving" cases involving intellectual property developed within the district. The Court has previously been highly skeptical of arguments that a particular jurisdiction has a "local interest" that amounts to a bias in its jury pool. *See Ingeniador*, 2014 WL 105106, at *3-4. A predisposition toward one party, independent of the merits of the case, cannot be the kind of "local interest" cognized by the federal rules, and this Court gives this consideration no weight in its analysis. The Court finds that this factor is neutral.

2. *Other Public Interest Factors*

Both parties agree that other public interest factors are neutral. The Court sees no reason to disagree with this conclusion.

Having considered all appropriate factors, the Court finds that HTC has not shown that it would be clearly more convenient to transfer this case to the Northern District of California. HTC's request for a transfer must therefore be denied.

## IV.    STAY

In the alternative, HTC suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. Nos. 36-24, 36-26)). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (*See* Case No. 2:13-CV-894, Dkt. No. 67-24). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 1). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

HTC's request for a stay, then, should be denied.

## V.    CONCLUSION

The Court finds that the Northern District of California is not clearly a more convenient venue for this case. The Court also finds that a stay of proceedings would not serve the interests

of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 41) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

**Jul 29, 2014**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, | § § § § | |
| *Plaintiff*, | § § | CASE NO. 2:13-CV-00894-JRG |
| | § | **LEAD CASE** |
| *v.* | § § | CASE NO. 2:13-CV-00899-JRG |
| PANTECH CO., LTD. and PANTECH WIRELESS, INC., | § § § | **MEMBER CASE** |
| *Defendants*. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Pantech Co., Ltd.'s and Pantech Wireless, Inc.'s (collectively, "Pantech") Motion to Transfer (Dkt. No. 27), filed April 8, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 28-43). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US

1

LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against Pantech on October 31, 2013, alleging that Pantech infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

In this motion, Pantech asks the Court to stay the case pending resolution of the NDCA suit. In the alternative, Pantech asks the Court to transfer this case to the NDCA.

## II.    <u>LEGAL STANDARDS</u>

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2)

3

the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *Volkswagen II*, 545 F.3d at 314-15.

### III.    STAY

Pantech suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. No. 28-5). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 28-9). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 1). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

Pantech's request for a stay, then, should be denied.

## IV.     TRANSFER

To support its argument for transfer, Pantech relies on arguments set forth in other defendants' transfer motions in a related case (Dkt. No. 27, at 10-12). The Court has denied that motion (Case No. 2:13-CV-00898, Dkt. No. 44). Pantech recites certain facts relating to the location of its employees in Korea and Atlanta, Georgia. Pantech argues that it will be less convenient for these employees if the case is tried in the NDCA than in the Eastern District of Texas.

Pantech's barebones argument does not hold up against Rockstar's detailed analysis of the party and nonparty witnesses and evidence in this case. *See id.* The Court finds, having analyzed each of the private and public interest factors enumerated above, that Pantech has failed to carry its burden of proving that the NDCA is clearly a more convenient venue than this Court.

## V.     CONCLUSION

The Court finds that a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved. The Court also finds that the Northern District of California is not clearly a more convenient venue for this case.

5

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 27) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

**Aug 1, 2014**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

CONSOL,JURY,PATENT/TRADEMARK

# U.S. District Court [LIVE]
## Eastern District of TEXAS (Marshall)
## CIVIL DOCKET FOR CASE #: 2:13-cv-00900-JRG

| | |
|---|---|
| Rockstar Consortium US LP et al v. Samsung Electronics Co., LTD., et al | Date Filed: 10/31/2013 |
| Assigned to: Judge Rodney Gilstrap | Jury Demand: Both |
| Lead case: 2:13-cv-00894-JRG | Nature of Suit: 830 Patent |
| Member case: (View Member Case) | Jurisdiction: Federal Question |

Related Cases: 2:13-cv-00894-JRG
　　　　　　　2:13-cv-00895-JRG
　　　　　　　2:13-cv-00898-JRG
　　　　　　　2:13-cv-00899-JRG
　　　　　　　2:13-cv-00901-JRG

Cause: 35:271 Patent Infringement

**Plaintiff**

**Rockstar Consortium US LP**　　　　　　represented by **Theodore Stevenson , III**
　　　　　　　　　　　　　　　　　　　　　　　　McKool Smith PC - Dallas
　　　　　　　　　　　　　　　　　　　　　　　　300 Crescent Court
　　　　　　　　　　　　　　　　　　　　　　　　Suite 1500
　　　　　　　　　　　　　　　　　　　　　　　　Dallas, TX 75219
　　　　　　　　　　　　　　　　　　　　　　　　214/978-4974
　　　　　　　　　　　　　　　　　　　　　　　　Fax: 12149784044
　　　　　　　　　　　　　　　　　　　　　　　　Email: tstevenson@mckoolsmith.com
　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　**David Sochia**
　　　　　　　　　　　　　　　　　　　　　　　　McKool Smith
　　　　　　　　　　　　　　　　　　　　　　　　300 Crescent Court
　　　　　　　　　　　　　　　　　　　　　　　　Suite 1500
　　　　　　　　　　　　　　　　　　　　　　　　Dallas, TX 75201
　　　　　　　　　　　　　　　　　　　　　　　　214/978-4000
　　　　　　　　　　　　　　　　　　　　　　　　Email: dsochia@mckoolsmith.com
　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　**Douglas A Cawley**
　　　　　　　　　　　　　　　　　　　　　　　　McKool Smith - Dallas
　　　　　　　　　　　　　　　　　　　　　　　　300 Crescent Court
　　　　　　　　　　　　　　　　　　　　　　　　Suite 1500

Dallas, TX 75201
214/978-4972
Fax: 12149784044
Email: dcawley@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
McKool Smith, PC - Austin
300 West 6th St
Suite 1700
Austin, TX 78701
512-692-8700
Fax: 512-592-8744
Email: jbudwin@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
McKool Smith - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4000
Fax: 12149784044
Email: mmckool@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
McKool Smith PC - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75219
214-978-4000
Fax: 214-978-4044
Email: rhargrave@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mobilestar Technologies LLC**            represented by **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Samsung Electronics Co., LTD.,**                represented by **Andy Tindel**
Mann, Tindel & Thompson - Attorneys at
Law
112 E Line
Suite 304
Tyler, TX 75702
903/596-0900
Fax: 903/596-0909
Email: atindel@andytindel.com
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
Quinn Emanuel Urquhart & Sullivan LLP -
San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415/875-6600
Fax: 415/875-6700
Email:
charlesverhoeven@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
Mann Tindel & Thompson

– A1582 –

300 W. Main
Henderson, TX 75652
903/657-8540
Fax: 903-657-6003
Email: blake@themannfirm.com
*ATTORNEY TO BE NOTICED*

**James D Judah**
Quinn Emanuel Urquhart & Sullivan LLP -
San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415.875.6420
Fax: 415.875.6700
Email: jamesjudah@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
Mann Tindel & Thompson
300 W. Main
Henderson, TX 75652
903/657-8540
Fax: 9036576003
Email: mark@themannfirm.com
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
Quinn Emanuel Urquhart & Sullivan, LLP -
NY
51 Madison Ave
22nd Floor
New York, NY 10010
212/849-7225
Fax: 212/849-7100
Email: josephmilowic@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
Quinn Emanuel Urquhart & Sullivan -
Redwood
555 Twin Dolphin Dr
5th Floor
Redwood Shores, CA 94065
650/801-5015

Fax: 650/801-5100
Email: kevinjohnson@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
Quinn Emanuel Urquhart & Sullivan LLP -
San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415/875-6600
Fax: 415/875-6700
Email: seanpak@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Samsung Electronics America, Inc.**            represented by **Andy Tindel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**

**— A1584 —**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Samsung TeleCommunications America, LLC**                    represented by **Andy Tindel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Google, Inc.**                    represented by **Amy H Candido**
Quinn Emanuel Urquhart & Sullivan LLP - San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415/875-6600
Fax: 415/875-6700

– A1585 –

Email: amycandido@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Andy Tindel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erik C Olson**
Farella Braun & Martel LLP - San
Francisco
235 Montgomery St
17th Floor
San Francisco, CA 94104
415.954.4400
Fax: 415.954.4480
Email: eolson@fbm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eugene Y Mar**
Farella Braun & Martel LLP - San
Francisco
235 Montgomery St
17th Floor
San Francisco, CA 94104
415/954-4400
Fax: 415/954-4480
Email: emar@fbm.com
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Curran**
Quinn Emanuel Urquhart & Sullivan, LLP -
NY

– A1586 –

51 Madison Ave
22nd Floor
New York, NY 10010
212/849-7216
Fax: 212/849-7100
Email: patrickcurran@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Roderick M Thompson**
Farella Braun & Martel LLP - San
Francisco
235 Montgomery St
17th Floor
San Francisco, CA 94104
415/954-4400
Fax: 415/954-4480
Email: rthompson@fbm.com
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Samsung Electronics America, Inc.**                represented by  **Andy Tindel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Counter Claimant

**Samsung Electronics Co., LTD.,**          represented by **Andy Tindel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Counter Claimant

**Samsung TeleCommunications America,**        represented by **Andy Tindel**
**LLC**                                        (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Charles Kramer Verhoeven**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Gregory Blake Thompson**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **James D Judah**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **James Mark Mann**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Joseph Milowic , III**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Kevin P.B. Johnson**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Sean S Pak**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Mobilestar Technologies LLC**               represented by **Theodore Stevenson , III**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **David Sochia**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rockstar Consortium US LP**                    represented by   **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 10/31/2013 | 1 | COMPLAINT against Samsung Electronics America, Inc., Samsung Electronics Co., |

| | | |
|---|---|---|
| | | LTD.,, Samsung TeleCommunications America, LLC ( Filing fee $ 400 receipt number 0540-4385542.), filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet)(Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | | Judge Rodney Gilstrap added. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice of Consent to Proceed Before Magistrate Judge*. (ehs, ) (Entered: 10/31/2013) |
| 10/31/2013 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium LLC for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 3 | CORPORATE DISCLOSURE STATEMENT filed by Mobilestar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP for Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 11/02/2013 | 4 | NOTICE of Attorney Appearance by Mike McKool, Jr on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (McKool, Mike) (Entered: 11/02/2013) |
| 11/02/2013 | 5 | NOTICE of Attorney Appearance by David Sochia on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Sochia, David) (Entered: 11/02/2013) |
| 11/02/2013 | 6 | NOTICE of Attorney Appearance by Douglas A Cawley on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Cawley, Douglas) (Entered: 11/02/2013) |
| 11/05/2013 | 7 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 11/05/2013) |
| 11/06/2013 | 8 | SUMMONS Issued as to Samsung TeleCommunications America, LLC. (Attachments: # 1 Samsung Electronics America, Inc.)(ch, ) (Entered: 11/06/2013) |
| 11/25/2013 | 17 | SUMMONS Returned Executed by Rockstar Consortium US LP, Mobilestar Technologies LLC. Samsung TeleCommunications America, LLC served by Process Server on 11/6/2013. (ch, ) (Entered: 12/02/2013) |
| 11/25/2013 | 18 | SUMMONS Returned Executed by Rockstar Consortium US LP, Mobilestar Technologies LLC. Samsung Electronics America, Inc. served by Process Server on 11/6/2013. (ch, ) (Entered: 12/02/2013) |
| 11/26/2013 | 9 | NOTICE of Attorney Appearance by James Mark Mann on behalf of All Defendants (Mann, James) (Entered: 11/26/2013) |
| | | |

– A1591 –

| 11/26/2013 | 10 | NOTICE of Attorney Appearance by Gregory Blake Thompson on behalf of All Defendants (Thompson, Gregory) (Entered: 11/26/2013) |
|---|---|---|
| 11/26/2013 | 11 | Unopposed MOTION for Extension of Time to File Answer by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. (Attachments: # 1 Text of Proposed Order Granting Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiffs' Complaint)(Mann, James) (Entered: 11/26/2013) |
| 11/26/2013 | 12 | ***DEFICIENT DOCUMENT, PLEASE IGNORE***Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC.( Mann, James) Modified on 11/26/2013 (sm, ). (Entered: 11/26/2013) |
| 11/26/2013 | 13 | NOTICE of Attorney Appearance by Andy Tindel on behalf of All Defendants (Tindel, Andy) (Entered: 11/26/2013) |
| 11/26/2013 | | NOTICE of DEFICIENCY regarding the #12 Application to extend time submitted by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. Violation of Local Rule 12 due to it exceeds 45 days. (sm, ) (Entered: 11/26/2013) |
| 11/26/2013 | 14 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Samsung Electronics America, Inc..( Mann, James) (Entered: 11/26/2013) |
| 11/26/2013 | 15 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Samsung TeleCommunications America, LLC.( Mann, James) (Entered: 11/26/2013) |
| 11/27/2013 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint is GRANTED pursuant to Local Rule CV-12 for Samsung Electronics America, Inc. to 1/10/2014; Samsung TeleCommunications America, LLC to 1/10/2014. 45 Days Granted for Deadline Extension.( sm, ) (Entered: 11/27/2013) |
| 11/27/2013 | 16 | ORDER granting 11 Motion for Extension of Time to Answer. Defendants Samsung Electronics Co, Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC shall have up to and including February 10,2014. Signed by Judge Rodney Gilstrap on 11/27/2013. (ch, ) (Entered: 11/27/2013) |
| 11/27/2013 | | Answer Due Deadline Updated for Samsung Electronics America, Inc. to 2/10/2014; Samsung Electronics Co., LTD., to 2/10/2014; Samsung TeleCommunications America, LLC to 2/10/2014. (ch, ) (Entered: 11/27/2013) |
| 12/31/2013 | 19 | AMENDED COMPLAINT against Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, Google, Inc., filed by Rockstar Consortium US LP, Mobilestar Technologies LLC.(Stevenson, Theodore) (Entered: 12/31/2013) |
| 01/02/2014 | 20 | SUMMONS Issued as to Google, Inc.. (sm, ) (Entered: 01/02/2014) |
| 01/14/2014 | 21 | NOTICE of Attorney Appearance by James Mark Mann on behalf of Google, Inc. (Mann, James) (Entered: 01/14/2014) |

| 01/14/2014 | 22 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Google, Inc..( Mann, James) (Entered: 01/14/2014) |
| 01/15/2014 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint is GRANTED pursuant to Local Rule CV-12 for Google, Inc. to 2/17/2014. 7 Days Granted for Deadline Extension.( sm, ) (Entered: 01/15/2014) |
| 01/15/2014 | 23 | NOTICE of Attorney Appearance by Gregory Blake Thompson on behalf of Google, Inc. (Thompson, Gregory) (Entered: 01/15/2014) |
| 01/15/2014 | 24 | NOTICE of Attorney Appearance by Andy Tindel on behalf of Google, Inc. (Tindel, Andy) (Entered: 01/15/2014) |
| 01/16/2014 | 25 | SUMMONS Returned Executed by Rockstar Consortium US LP, Mobilestar Technologies LLC. Google, Inc. served by Process Server on 1/3/2014. (ch, ) (Entered: 01/17/2014) |
| 02/10/2014 | 26 | MOTION to Dismiss *Plaintiffs' First Amended Complaint Pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1)* by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. (Attachments: # 1 Declaration of Joseph Milowic, # 2 Exhibits 1-8, # 3 Text of Proposed Order)(Mann, James) (Entered: 02/10/2014) |
| 02/12/2014 | 27 | NOTICE of Attorney Appearance - Pro Hac Vice by Joseph Milowic, III on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. Filing fee $ 100, receipt number 0540-4520323. (Milowic, Joseph) (Entered: 02/12/2014) |
| 02/13/2014 | 28 | NOTICE of Attorney Appearance - Pro Hac Vice by Kevin P.B. Johnson on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. Filing fee $ 100, receipt number 0540-4521936. (Johnson, Kevin) (Entered: 02/13/2014) |
| 02/13/2014 | 29 | NOTICE of Attorney Appearance - Pro Hac Vice by Sean S Pak on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. Filing fee $ 100, receipt number 0540-4523194. (Pak, Sean) (Entered: 02/13/2014) |
| 02/13/2014 | 30 | NOTICE of Attorney Appearance - Pro Hac Vice by Charles K Verhoeven on behalf of Google, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. Filing fee $ 100, receipt number 0540-4523213. (Verhoeven, Charles) (Entered: 02/13/2014) |
| 02/18/2014 | 31 | NOTICE of Attorney Appearance by Joshua Wright Budwin on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Budwin, Joshua) (Entered: 02/18/2014) |
| 02/18/2014 | 32 | NOTICE of Attorney Appearance by Amy H Candido on behalf of Google, Inc. (Candido, Amy) (Entered: 02/18/2014) |

| 02/18/2014 | 33 | MOTION to Dismiss *Google's Motion to Dismiss Rockstar's First Amended Complaint* by Google, Inc.. (Attachments: # 1 Declaration of Kristin J. Madigan In Support of Google's Motion To Dismiss Rockstar's First Amended Complaint, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Text of Proposed Order)(Mann, James) (Entered: 02/18/2014) |
|---|---|---|
| 02/19/2014 | 34 | CORPORATE DISCLOSURE STATEMENT filed by Google, Inc. (Mann, James) (Entered: 02/19/2014) |
| 02/19/2014 | 35 | CORPORATE DISCLOSURE STATEMENT filed by Samsung Electronics America, Inc. (Mann, James) (Entered: 02/19/2014) |
| 02/19/2014 | 36 | CORPORATE DISCLOSURE STATEMENT filed by Samsung Electronics Co., LTD., (Mann, James) (Entered: 02/19/2014) |
| 02/19/2014 | 37 | CORPORATE DISCLOSURE STATEMENT filed by Samsung TeleCommunications America, LLC (Mann, James) (Entered: 02/19/2014) |
| 02/19/2014 | 38 | NOTICE by Google, Inc. re 33 MOTION to Dismiss *Google's Motion to Dismiss Rockstar's First Amended Complaint - Notice of Filing of Google's Corrected Motion to Dismiss* (Attachments: # 1 Google's Corrected Motion to Dismiss Rockstar's First Amended Complaint)(Mann, James) (Entered: 02/19/2014) |
| 02/27/2014 | 39 | NOTICE by Mobilestar Technologies LLC, Rockstar Consortium US LP *NOTICE OF READINESS FOR SCHEDULING CONFERENCE* (Stevenson, Theodore) (Entered: 02/27/2014) |
| 02/28/2014 | 40 | RESPONSE in Opposition re 33 MOTION to Dismiss *Google's Motion to Dismiss Rockstar's First Amended Complaint filed by Mobilestar Technologies LLC, Rockstar Consortium US LP*. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 02/28/2014) |
| 02/28/2014 | 41 | RESPONSE in Opposition re 33 MOTION to Dismiss *Google's Motion to Dismiss Rockstar's First Amended Complaint filed by Mobilestar Technologies LLC, Rockstar Consortium US LP*. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 02/28/2014) |
| 03/04/2014 | 42 | NOTICE of Attorney Appearance by Ryan Abbott Hargrave on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Hargrave, Ryan) (Entered: 03/04/2014) |
| 03/07/2014 | 43 | Unopposed MOTION for Extension of Time to File Response/Reply *UNOPPOSED MOTION TO EXTEND DEADLINE* by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. (Attachments: # 1 Text of Proposed Order)(Mann, James) (Entered: 03/07/2014) |
| 03/07/2014 | 44 | Unopposed MOTION for Extension of Time to File Response/Reply as to 33 MOTION to Dismiss *Google's Motion to Dismiss Rockstar's First Amended Complaint*, 38 Notice (Other), by Google, Inc.. (Attachments: # 1 Text of Proposed Order)(Mann, James) (Entered: 03/07/2014) |

| 03/10/2014 | 45 | MOTION for Leave to File *A SECOND AMENDED COMPLAINT* by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Stevenson, Theodore) (Entered: 03/10/2014) |
|---|---|---|
| 03/10/2014 | 46 | AMENDED COMPLAINT against Google, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, filed by Rockstar Consortium US LP, Mobilestar Technologies LLC.(Stevenson, Theodore) (Entered: 03/10/2014) |
| 03/12/2014 | 47 | ORDER granting 43 Motion for Extension of Time to File Response/Reply. Signed by Judge Rodney Gilstrap on 03/12/2014. (nkl, ) (Entered: 03/12/2014) |
| 03/12/2014 | 48 | ORDER granting 44 Motion for Extension of Time to File Response/Reply. Replies due by 3/13/2014. Signed by Judge Rodney Gilstrap on 03/12/2014. (nkl, ) (Entered: 03/12/2014) |
| 03/13/2014 | 49 | REPLY to Response to Motion re 26 MOTION to Dismiss *Plaintiffs' First Amended Complaint Pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1)* filed by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. (Mann, James) (Entered: 03/13/2014) |
| 03/13/2014 | 50 | REPLY to Response to Motion re 33 MOTION to Dismiss *Google's Motion to Dismiss Rockstar's First Amended Complaint* filed by Google, Inc.. (Mann, James) (Entered: 03/13/2014) |
| 03/20/2014 | 51 | ORDER consolidating this case with 2:13cv894 (the LEAD CASE) for all pretrial issues, except venue. All parties are instructed to file any future filings (except relating to venue) in the LEAD CASE. Signed by Judge Rodney Gilstrap on 3/19/14. (bas, ) (Entered: 03/20/2014) |
| 03/21/2014 | 52 | MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California* by Google, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. (Attachments: # 1 Declaration of Kristin J. Madigan In Support of Defendants' Motion, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15 - Part 1 of 2, # 17 Exhibit 15 - Part 2 of 2, # 18 Exhibit 16, # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19, # 22 Exhibit 20, # 23 Exhibit 21, # 24 Exhibit 22, # 25 Exhibit 23, # 26 Exhibit 24, # 27 Exhibit 25, # 28 Exhibit 26, # 29 Declaration of Abeer Dubey In Support of Defendants' Motion, # 30 Declaration of B.J. Kang In Support of Defendants' Motion, # 31 Declaration of Dale Jachlewski in Support of Defendants' Motion, # 32 Text of Proposed Order)(Mann, James) (Entered: 03/21/2014) |
| 03/24/2014 | 53 | Additional Attachments to Main Document: 52 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California*.. (Mann, James) (Entered: 03/24/2014) |

| 03/24/2014 | 54 | **DEFICIENT DOCUMENT - FILED IN ERROR** <br><br> SUR-REPLY to Reply to Response to Motion re 33 MOTION to Dismiss *Google's Motion to Dismiss Rockstar's First Amended Complaint filed by Rockstar Consortium US LP*. (Stevenson, Theodore) Modified on 3/26/2014 (nkl, ). (Entered: 03/24/2014) |
| 03/24/2014 | 55 | **DEFICIENT DOCUMENT - FILED IN ERROR** <br><br> SUR-REPLY to Reply to Response to Motion re 26 MOTION to Dismiss *Plaintiffs' First Amended Complaint Pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) filed by Rockstar Consortium US LP*. (Stevenson, Theodore) Modified on 3/26/2014 (nkl, ). (Entered: 03/24/2014) |
| 03/26/2014 | | NOTICE of Deficiency regarding the PLAINTIFFS SUR-REPLY IN OPPOSITION TO GOOGLES REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS FIRST AMENDED COMPLAINT submitted document 54 this case is consolidated, please file in lead case. Correction should be made by one business day. (nkl, ) (Entered: 03/26/2014) |
| 03/26/2014 | | NOTICE of Deficiency regarding the PLAINTIFFS SUR-REPLY IN OPPOSITION TO SAMSUNG DEFENDANTS REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS FIRST AMENDED COMPLAINT submitted 55 this case is consolidated please file in the lead case. Correction should be made by one business day. (nkl, ) (Entered: 03/26/2014) |
| 03/28/2014 | 56 | RESPONSE in Opposition re 45 MOTION for Leave to File *A SECOND AMENDED COMPLAINT Google's Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint filed by Google, Inc.*. (Attachments: # 1 Madigan Declaration In Support of Google's Opposition, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6)(Mann, James) (Entered: 03/28/2014) |
| 04/02/2014 | 57 | Unopposed MOTION for Extension of Time to File Response/Reply as to 52 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California* by Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 04/02/2014) |
| 04/03/2014 | 58 | ORDER granting 57 Motion for Extension of Time to File Response re 52 *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California*. Responses due by 4/14/2014. Signed by Judge Rodney Gilstrap on 4/3/14. (mrm, ) (Entered: 04/03/2014) |
| 04/09/2014 | 59 | REPLY to Response to Motion re 45 MOTION for Leave to File *A SECOND AMENDED COMPLAINT filed by Mobilestar Technologies LLC, Rockstar Consortium US LP*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Stevenson, Theodore) (Attachment 4 replaced on 4/10/2014) (nkl, ). (Entered: 04/09/2014) |
| | | |

**– A1596 –**

| 04/14/2014 | 60 | NOTICE of Attorney Appearance - Pro Hac Vice by James D Judah on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. Filing fee $ 100, receipt number 0540-4611910. (Judah, James) (Entered: 04/14/2014) |
|---|---|---|
| 04/14/2014 | 61 | RESPONSE in Opposition re 52 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California filed by Mobilestar Technologies LLC, Rockstar Consortium US LP*. (Attachments: # 1 Declaration of William G. Colvin, # 2 Declaration of Brian B. Egan, # 3 Declaration of Erik Fako, # 4 Declaration of Mark Hearn, # 5 Declaration of Gilliam McColgan, # 6 Declaration of Matthew W. Poisson, # 7 Declaration of Donald Powers, # 8 Declaration Marilyn French-St. George, # 9 Declaration of Bernard Tiegerman, # 10 Declaration of John Veschi, # 11 Declaration of Bruce Anthony Wootton, # 12 Text of Proposed Order)(Stevenson, Theodore) (Entered: 04/14/2014) |
| 04/14/2014 | 62 | Additional Attachments to Main Document: 61 Response in Opposition to Motion,,... (Attachments: # 1 Declaration of Joshua W. Budwin, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10)(Stevenson, Theodore) (Entered: 04/14/2014) |
| 04/14/2014 | 63 | Additional Attachments to Main Document: 61 Response in Opposition to Motion,,... (Attachments: # 1 Exhibit 11, # 2 Exhibit 12, # 3 Exhibit 13, # 4 Exhibit 14, # 5 Exhibit 15, # 6 Exhibit 16, # 7 Exhibit 17, # 8 Exhibit 18 Part 1, # 9 Exhibit 18 Part 2, # 10 Exhibit 19, # 11 Exhibit 20, # 12 Exhibit 21, # 13 Exhibit 22, # 14 Exhibit 23, # 15 Exhibit 24, # 16 Exhibit 25, # 17 Exhibit 26, # 18 Exhibit 27, # 19 Exhibit 28, # 20 Exhibit 29, # 21 Exhibit 30)(Stevenson, Theodore) (Entered: 04/14/2014) |
| 04/14/2014 | 64 | Additional Attachments to Main Document: 61 Response in Opposition to Motion,,... (Attachments: # 1 Exhibit 31, # 2 Exhibit 32, # 3 Exhibit 33, # 4 Exhibit 34, # 5 Exhibit 35, # 6 Exhibit 36, # 7 Exhibit 37, # 8 Exhibit 38, # 9 Exhibit 39, # 10 Exhibit 40, # 11 Exhibit 41, # 12 Exhibit 42, # 13 Exhibit 43, # 14 Exhibit 44)(Stevenson, Theodore) (Entered: 04/14/2014) |
| 04/21/2014 | 65 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>SUR-REPLY to Reply to Response to Motion re 45 MOTION for Leave to File *A SECOND AMENDED COMPLAINT Google's Sur-Reply In Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint filed by Google, Inc.*. (Attachments: # 1 Declaration of Kristin J. Madigan In Support of Google's Sur-Reply, # 2 Exhibit A - Part 1 of 8, # 3 Exhibit A - Part 2 of 8, # 4 Exhibit A - Part 3 of 8, # 5 Exhibit A - Part 4 of 8, # 6 Exhibit A - Part 5 of 8, # 7 Exhibit A - Part 6 of 8, # 8 Exhibit A - Part 7 of 8, # 9 Exhibit A - Part 8 of 8, # 10 Exhibit B)(Mann, James) Modified on 4/22/2014 (nkl, ). (Entered: 04/21/2014) |
| 04/22/2014 | | NOTICE of Deficiency regarding the GOOGLES SUR-REPLY IN OPPOSITION TO PLAINTIFFS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT submitted document 65 this case is consolidated please file in the lead case. Correction should be made by one business day. (nkl, ) (Entered: 04/22/2014) |

**– A1597 –**

| 04/25/2014 | 66 | REPLY to Response to Motion re 52 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California filed by Google, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC.* (Attachments: # 1 Declaration of Kristin J. Madigan, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5 (part 1), # 7 Exhibit 5 (part 2))(Mann, James) (Entered: 04/25/2014) |
|---|---|---|
| 05/08/2014 | 67 | SUR-REPLY to Reply to Response to Motion re 52 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California filed by Mobilestar Technologies LLC, Rockstar Consortium US LP.* (Attachments: # 1 Declaration of Joshua W. Budwin, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Stevenson, Theodore) Modified on 5/9/2014 (nkl, ). (Entered: 05/08/2014) |
| 05/15/2014 | 68 | MEMORANDUM AND OPINION, Motions denied: 26 MOTION to Dismiss *Plaintiffs' First Amended Complaint Pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) filed by Samsung TeleCommunications America, LLC, Samsung Electronics Co., LTD., Samsung Electronics America, Inc.* Signed by Judge Rodney Gilstrap on 05/15/2014. (nkl, ) (Entered: 05/15/2014) |
| 07/01/2014 | 69 | ORDER granting 45 Motion for Leave to File a Second Amended Complaint. Signed by Judge Rodney Gilstrap on 07/01/2014. (nkl, ) (Entered: 07/01/2014) |
| 07/01/2014 | 70 | MEMORANDUM OPINION AND ORDER. Signed by Judge Rodney Gilstrap on 07/01/2014. (nkl, ) (Entered: 07/01/2014) |
| 07/18/2014 | 71 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>NOTICE of Attorney Appearance by Erik C Olson on behalf of Google, Inc. (Olson, Erik) Modified on 7/18/2014 (nkl, ). (Entered: 07/18/2014) |
| 07/18/2014 | 72 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>NOTICE of Attorney Appearance by Eugene Y Mar on behalf of Google, Inc. (Mar, Eugene) Modified on 7/18/2014 (nkl, ). (Entered: 07/18/2014) |
| 07/18/2014 | 73 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>NOTICE of Attorney Appearance by Roderick M Thompson on behalf of Google, Inc. (Thompson, Roderick) Modified on 7/18/2014 (nkl, ). (Entered: 07/18/2014) |
| 07/18/2014 |  | NOTICE of Deficiency regarding the Notice of Appearance submitted document 72 this case is consolidated please file in the lead case. Correction should be made by one business day. (nkl, ) (Entered: 07/18/2014) |
| 07/18/2014 |  | NOTICE of Deficiency regarding the Notice of Attorney Appearance submitted document 71 this case is consolidated please file in the lead case. Correction should be made by one business day. (nkl, ) (Entered: 07/18/2014) |

| | | |
|---|---|---|
| 07/18/2014 | | NOTICE of Deficiency regarding the Notice of Attorney Appearance submitted document 73 this case is consolidated please file in the lead case. Correction should be made by one business day. (nkl, ) (Entered: 07/18/2014) |
| 07/21/2014 | 74 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>*Samsung's* ANSWER to 46 Amended Complaint *Answer, Affirmative Defenses, and Counterclaims to Rockstar's Second Amended Complaint*, COUNTERCLAIM against Mobilestar Technologies LLC, Rockstar Consortium US LP by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC.(Mann, James) Modified on 7/21/2014 (nkl, ). (Entered: 07/21/2014) |
| 07/21/2014 | | NOTICE of Deficiency regarding the Answer submitted document 74 this case is consolidated please file in the lead case. Correction should be made by one business day. (nkl, ) (Entered: 07/21/2014) |
| 07/21/2014 | 75 | ORDER denying 33 Motion to Dismiss. Signed by Judge Rodney Gilstrap on July 21, 2014. (jml) (Entered: 07/21/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/12/2014 15:28:56 | | |
| **PACER Login:** | qe0001:2618656:0 | **Client Code:** | 01980-00011 |
| **Description:** | Docket Report | **Search Criteria:** | 2:13-cv-00900-JRG |
| **Billable Pages:** | 18 | **Cost:** | 1.80 |

**– A1599 –**

# U.S. District Court [LIVE]
## Eastern District of TEXAS (Marshall)
### CIVIL DOCKET FOR CASE #: 2:13-cv-00894-JRG

| | |
|---|---|
| Rockstar Consortium US LP et al v. ASUSTeK Computer, Inc. et al | Date Filed: 10/31/2013 |
| Assigned to: Judge Rodney Gilstrap | Jury Demand: Both |
| Related Cases: 2:13-cv-00898-JRG | Nature of Suit: 830 Patent |
| 2:13-cv-00895-JRG | Jurisdiction: Federal Question |
| 2:13-cv-00899-JRG | |
| 2:13-cv-00901-JRG | |
| 2:13-cv-00900-JRG | |

Cause: 35:271 Patent Infringement

**Mediator**

**David Folsom**                    represented by   **David Folsom**
                                                     Jackson Walker, LLP
                                                     6002-B Summerfield Drive
                                                     Texarkana, TX 75503
                                                     Email: dfolsom@jw.com
                                                     PRO SE

**Plaintiff**

**Rockstar Consortium US LP**        represented by   **Theodore Stevenson , III**
                                                     McKool Smith PC - Dallas
                                                     300 Crescent Court
                                                     Suite 1500
                                                     Dallas, TX 75219
                                                     214/978-4974
                                                     Fax: 12149784044
                                                     Email: tstevenson@mckoolsmith.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **David Sochia**
                                                     McKool Smith
                                                     300 Crescent Court
                                                     Suite 1500
                                                     Dallas, TX 75201
                                                     214/978-4000
                                                     Email: dsochia@mckoolsmith.com

*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
McKool Smith - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4972
Fax: 12149784044
Email: dcawley@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
McKool Smith - Marshall
P O Box O
104 East Houston St., Suite 300
Marshall, TX 75670
903-923-9000
Fax: 903-923-9099
Email: jtruelove@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
McKool Smith, PC - Austin
300 West 6th St
Suite 1700
Austin, TX 78701
512-692-8700
Fax: 512-592-8744
Email: jbudwin@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
McKool Smith - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4000
Fax: 12149784044
Email: mmckool@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
McKool Smith PC - Dallas
300 Crescent Court

Suite 1500
Dallas, TX 75219
214-978-4914
Fax: 214-978-4044
Email: nmathews@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
McKool Smith PC - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75219
214-978-4000
Fax: 214-978-4044
Email: rhargrave@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
McKool Smith - Marshall
P O Box O
104 East Houston St., Suite 300
Marshall, TX 75670
903/923-9000
Fax: 903-923-9099
Email: sbaxter@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Mobilestar Technologies LLC**          represented by **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ASUSTeK Computer, Inc.**          represented by  **Harold Davis Davis , Jr**
K&L Gates LLP - San Francisco
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
415/249-1008
Fax: 415/282-8202
Email: harold.davis@klgates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irene I Yang**
K&L Gates LLP - San Francisco
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
415-882-8226
Fax: 415-882-8220
Email: irene.yang@klgates.com
*ATTORNEY TO BE NOTICED*

**Jeffrey M Ratinoff**

K & L Gates LLP - Palo Alto
630 Hansen Way
Palo Alto, CA 94304
650/798-6700
Fax: 650/798-6701
Email: jeffrey.ratinoff@klgates.com
*ATTORNEY TO BE NOTICED*

**Jennifer Klein Ayers**
K&L Gates LLP - Dallas
1717 Main Street
Ste 2800
Dallas, TX 75201
214-939-5497
Fax: 214-939-5849
Email: jennifer.ayers@klgates.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Asus Computer International, Inc.**        represented by **Harold Davis Davis , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irene I Yang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey M Ratinoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Klein Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Consol Defendant**

**HTC Corporation**                          represented by **Michael J Bettinger**
*Consolidating Civil Action 2:13cv895*        K&L Gates LLP - San Francisco
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
415/882-8200

**— A1604 —**

Fax: 415/882-8220
Email: mike.bettinger@klgates.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Curt Holbreich**
K&L Gates LLP - San Francisco
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
Email: curt.holbreich@klgates.com
*ATTORNEY TO BE NOTICED*

<u>**Consol Defendant**</u>

**HTC America, Inc.**                 represented by **Michael J Bettinger**
*Consolidating Civil Action 2:13cv895*              (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Curt Holbreich**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

<u>**Consol Defendant**</u>

**LG Electronics Inc.**               represented by **Richard D Harris**
*Cosoliding Civil Action 2:13cv898*                 Greenberg Traurig LLP - Chicago
                                                   77 West Wacker Drive
                                                   Suite 3100
                                                   Chicago, IL 60601
                                                   312/456-6610
                                                   Fax: 312/456-8435
                                                   Email: harrisr@gtlaw.com
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Eric Jason Maiers**
                                                   Greenberg Traurig LLP - Chicago
                                                   77 West Wacker Drive
                                                   Suite 3100
                                                   Chicago, IL 60601
                                                   312-456-1036
                                                   Fax: 312-456-8435

Email: maierse@gtlaw.com
*ATTORNEY TO BE NOTICED*

**James J Lukas , Jr**
Greenberg Traurig LLP - Chicago
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
312/456-8400
Fax: 312/456-8435
Email: lukasj@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Jeffrey G Mote**
Greenberg Traurig LLP - Chicago
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
312/456-8400
Fax: 312/456-8435
Email: motej@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Mary-Olga Lovett**
Greenberg Traurig - Houston
1000 Louisiana
Suite 1000
Houston, TX 77002
713/374-3500
Fax: 7137547541
Email: lovettm@gtlaw.com
*ATTORNEY TO BE NOTICED*

<u>**Consol Defendant**</u>

**LG Electronics U.S.A., Inc.**                represented by **Richard D Harris**
*Consolidating Civil Action 2:13cv898*                      (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Eric Jason Maiers**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **James J Lukas , Jr**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey G Mote**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mary-Olga Lovett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**LG Electronics Mobilecomm USA Inc**      represented by  **Richard D Harris**
*Consolidating Civil Action 2:13cv898*               (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric Jason Maiers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James J Lukas , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey G Mote**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mary-Olga Lovett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Pantech Co Ltd**      represented by  **Weldon Barton Rankin**
*Consolidating Civil Action 2:13cv899*               Baker & McKenzie LLP - Dallas
2001 Ross Ave
Suite 2300
Dallas, TX 75201
214/978-3000
Fax: 214/9783088
Email: bart.rankin@bakermckenzie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

D James Pak
Baker & McKenzie LLP - San Francisco
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
415/576-3000
Fax: 415-576-3099
Email: d.james.pak@bakermckenzie.com
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Pantech Wireless Inc**                    represented by **Weldon Barton Rankin**
*Consolidating Civil Action 2:13cv899*                     (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **D James Pak**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Samsung Electronics Co., LTD.,**         represented by **Andy Tindel**
*Consolidating Civil Action 2:13cv900*                     Mann, Tindel & Thompson - Attorneys at
                                                           Law
                                                           112 E Line
                                                           Suite 304
                                                           Tyler, TX 75702
                                                           903/596-0900
                                                           Fax: 903/596-0909
                                                           Email: atindel@andytindel.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Charles Kramer Verhoeven**
                                                           Quinn Emanuel Urquhart & Sullivan LLP -
                                                           San Francisco
                                                           50 California Street
                                                           22nd Floor
                                                           San Francisco, CA 94111
                                                           415/875-6600
                                                           Fax: 415/875-6700
                                                           Email:
                                                           charlesverhoeven@quinnemanuel.com
                                                           *ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
Mann Tindel & Thompson
300 W. Main
Henderson, TX 75652
903/657-8540
Fax: 903-657-6003
Email: blake@themannfirm.com
*ATTORNEY TO BE NOTICED*

**James D Judah**
Quinn Emanuel Urquhart & Sullivan LLP -
San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415.875.6420
Fax: 415.875.6700
Email: jamesjudah@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
Mann Tindel & Thompson
300 W. Main
Henderson, TX 75652
903/657-8540
Fax: 9036576003
Email: mark@themannfirm.com
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
Quinn Emanuel Urquhart & Sullivan, LLP -
NY
51 Madison Ave
22nd Floor
New York, NY 10010
212/849-7225
Fax: 212/849-7100
Email: josephmilowic@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
Quinn Emanuel Urquhart & Sullivan -
Redwood
555 Twin Dolphin Dr
5th Floor

Redwood Shores, CA 94065
650/801-5015
Fax: 650/801-5100
Email: kevinjohnson@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Mark Yeh-Kai Tung**
Quinn Emanuel Urquhart & Sullivan - Redwood
555 Twin Dolphin Dr
5th Floor
Redwood Shores, CA 94065
650/801-5000
Fax: 650/801-5100
Email: marktung@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
Quinn Emanuel Urquhart & Sullivan LLP - San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415/875-6600
Fax: 415/875-6700
Email: seanpak@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Samsung Electronics America, Inc.**        represented by  **Andy Tindel**
*Consolidating Civil Action 2:13c900*                        (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Charles Kramer Verhoeven**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Gregory Blake Thompson**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **James D Judah**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Yeh-Kai Tung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Google, Inc.**
*Consolidating Civil Action 2:13cv900*

represented by **Eugene Y Mar**
Farella Braun & Martel LLP - San
Francisco
235 Montgomery St
17th Floor
San Francisco, CA 94104
415/954-4400
Fax: 415/954-4480
Email: emar@fbm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy H Candido**
Quinn Emanuel Urquhart & Sullivan LLP -
San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415/875-6600
Fax: 415/875-6700
Email: amycandido@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**

– A1611 –

(See above for address)
*ATTORNEY TO BE NOTICED*

**Erik C Olson**
Farella Braun & Martel LLP - San
Francisco
235 Montgomery St
17th Floor
San Francisco, CA 94104
415.954.4400
Fax: 415.954.4480
Email: eolson@fbm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristin J Madigan**
Quinn Emanuel Urquhart & Sullivan LLP -
San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415/875-6600
Fax: 415/875-6700
Email: kristinmadigan@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Matthew S Warren**
Quinn Emanuel Urquhart & Sullivan LLP -
San Francisco
50 California Street
22nd Floor
San Francisco, CA 94111
415/875-6600
Fax: 415/875-6700
Email: matthewwarren@courtpapers.info
*ATTORNEY TO BE NOTICED*

**Patrick Curran**
Quinn Emanuel Urquhart & Sullivan, LLP - NY
51 Madison Ave
22nd Floor
New York, NY 10010
212/849-7216
Fax: 212/849-7100
Email: patrickcurran@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Roderick M Thompson**
Farella Braun & Martel LLP - San Francisco
235 Montgomery St
17th Floor
San Francisco, CA 94104
415/954-4400
Fax: 415/954-4480
Email: rthompson@fbm.com
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**ZTE Corporation**                         represented by  **Alexas D Skucas**
*Consolidating Civil Action 2:131cv901*              King & Spalding, LLP - New York
                                            1185 Avenue of the Americas
                                            New York, NY 10036-4003
                                            212/827-4049
                                            Fax: 212/556-2222
                                            Email: askucas@kslaw.com
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Anup M Shah**
                                            King & Spalding LLP - Charlotte
                                            100 N. Tryon Street
                                            Ste 3900
                                            Charlotte, NC 28202
                                            704/503-2559
                                            Fax: 704/503-2622
                                            Email: ashah@kslaw.com

*ATTORNEY TO BE NOTICED*

**Everett McClyde Upshaw**
Law Office of Everett Upshaw, PLLC
811 S. Central Expressway
Suite 307
Richardson, TX 75080
214-680-6005
Fax: 214-865-6086
Email: everettupshaw@everettupshaw.com
*ATTORNEY TO BE NOTICED*

**Steven T Snyder**
King & Spalding LLP - Charlotte
100 N. Tryon Street
Ste 3900
Charlotte, NC 28202
704-503-2630
Fax: 704-503-2622
Email: ssnyder@kslaw.com
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Samsung TeleCommunications America, LLC**
*Consolidating Civil Action 2:13cv900*

represented by **Andy Tindel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Yeh-Kai Tung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

### Counter Defendant

**ZTE (USA) Inc.**                     represented by  **Alexas D Skucas**
*Consolidating Civil Action 2:13cv901*              (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Anup M Shah**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **David A Bailey**
                                                     Law Office of Everett Upshaw, PLLC
                                                     811 S. Central Expressway
                                                     Suite 307
                                                     Richardson, TX 75080
                                                     972.372.4235
                                                     Fax: 214.865.6086
                                                     Email: davidbailey@everettupshaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Everett McClyde Upshaw**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Steven T Snyder**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

### Counter Claimant

**Samsung Electronics America, Inc.**     represented by  **Andy Tindel**

*Consolidating Civil Action 2:13c900*

(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Yeh-Kai Tung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Counter Claimant

**Samsung Electronics Co., LTD.,**              represented by **Andy Tindel**
*Consolidating Civil Action 2:13cv900*                        (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**

**– A1616 –**

(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Yeh-Kai Tung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Samsung TeleCommunications America,**              represented by  **Andy Tindel**
**LLC**                                                             (See above for address)
*Consolidating Civil Action 2:13cv900*                             *ATTORNEY TO BE NOTICED*

**Charles Kramer Verhoeven**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Blake Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James D Judah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mark Mann**

**— A1617 —**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Milowic , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin P.B. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Yeh-Kai Tung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean S Pak**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Counter Defendant</u>**

**Mobilestar Technologies LLC**    represented by **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rockstar Consortium US LP**                    represented by    **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**ASUSTeK Computer, Inc.**          represented by **Harold Davis Davis , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irene I Yang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey M Ratinoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Klein Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Asus Computer International, Inc.**   represented by **Harold Davis Davis , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irene I Yang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey M Ratinoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Klein Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

| **Mobilestar Technologies LLC** | represented by | **Theodore Stevenson , III** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

| **Rockstar Consortium US LP** | represented by | **Theodore Stevenson , III** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**David Sochia**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**HTC America, Inc.**                    represented by **Michael J Bettinger**
*Consolidating Civil Action 2:13cv895*              (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Curt Holbreich**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**HTC Corporation**                      represented by **Michael J Bettinger**
*Consolidating Civil Action 2:13cv895*              (See above for address)
                                         *LEAD ATTORNEY*

**– A1622 –**

*ATTORNEY TO BE NOTICED*

**Curt Holbreich**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Mobilestar Technologies LLC**                represented by **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rockstar Consortium US LP**                    represented by **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LG Electronics Mobilecomm USA Inc**          represented by **Richard D Harris**
*Consolidating Civil Action 2:13cv898*          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Jason Maiers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James J Lukas , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey G Mote**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mary-Olga Lovett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LG Electronics U.S.A., Inc.**                     represented by **Richard D Harris**
*Consolidating Civil Action 2:13cv898*                            (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Eric Jason Maiers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James J Lukas , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey G Mote**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mary-Olga Lovett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LG Electronics Inc.**                              represented by **Richard D Harris**
*Cosolidating Civil Action 2:13cv898*                            (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**– A1625 –**

**Eric Jason Maiers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James J Lukas , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey G Mote**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mary-Olga Lovett**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Mobilestar Technologies LLC**                    represented by  **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**

– A1626 –

(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rockstar Consortium US LP**          represented by  **Theodore Stevenson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Leigh Truelove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M Mathews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Abbott Hargrave**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2013 | 1 | COMPLAINT against ASUSTeK Computer, Inc., Asus Computer International, Inc. ( Filing fee $ 400 receipt number 0540-4385206.), filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Attachments: # 1 Civil Cover Sheet)(Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 2 | CORPORATE DISCLOSURE STATEMENT filed by Rockstar Consortium US LP identifying Corporate Parent Rockstar Consortium LLC for Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 10/31/2013 | 3 | CORPORATE DISCLOSURE STATEMENT filed by Mobilestar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP for Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 10/31/2013) |
| 11/01/2013 | | Judge Rodney Gilstrap added. (ehs, ) (Entered: 11/01/2013) |
| 11/02/2013 | 4 | NOTICE of Attorney Appearance by Mike McKool, Jr on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (McKool, Mike) (Entered: 11/02/2013) |
| 11/02/2013 | 5 | NOTICE of Attorney Appearance by David Sochia on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Sochia, David) (Entered: 11/02/2013) |
| 11/02/2013 | 6 | NOTICE of Attorney Appearance by Douglas A Cawley on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Cawley, Douglas) (Entered: 11/02/2013) |
| 11/05/2013 | 7 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Stevenson, Theodore) (Entered: 11/05/2013) |
| 11/06/2013 | 8 | SUMMONS Issued as to Asus Computer International, Inc.. (ch, ) (Entered: 11/06/2013) |
| 11/25/2013 | 9 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 11/25/2013) |
| 11/26/2013 | 10 | ORDER granting 9 Motion for Extension of Time to Answer. Dft ASUSTeK Computer Inc and ASUS Computer International Inc deadline is 2/10/2014. Signed by Judge Rodney Gilstrap on 11/26/2013. (ch, ) (Entered: 11/26/2013) |
| 11/26/2013 | | Answer Due Deadline Updated for ASUSTeK Computer, Inc. to 2/10/2014; Asus |

**– A1628 –**

| | | Computer International, Inc. to 2/10/2014. (ch, ) (Entered: 11/26/2013) |
|---|---|---|
| 12/04/2013 | 11 | SUMMONS Returned Executed by Rockstar Consortium US LP, Mobilestar Technologies LLC. Asus Computer International, Inc. served by Process Server on 11/6/2013. (ch, ) (Entered: 12/04/2013) |
| 02/07/2014 | 12 | NOTICE of Attorney Appearance by Irene I Yang on behalf of ASUSTeK Computer, Inc., Asus Computer International, Inc. (Yang, Irene) (Entered: 02/07/2014) |
| 02/07/2014 | 13 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, *Second Unopposed Motion for Extension of Time to Respond to Complaint* by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Attachments: # 1 Text of Proposed Order)(Yang, Irene) (Entered: 02/07/2014) |
| 02/11/2014 | 14 | ORDER denying 13 DEFENDANTS UNOPPOSED SECOND MOTION FOR AN EXTENSION OF TIME TO RESPOND TO PLAINTIFFS COMPLAINT. Signed by Judge Rodney Gilstrap on 02/10/2014. (nkl, ) (Entered: 02/11/2014) |
| 02/13/2014 | 15 | MOTION to Dismiss *COMPLAINT PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 12(b)(1), AND 12(f)* by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order Granting Motion to Dismiss)(Davis, Harold) (Entered: 02/13/2014) |
| 02/14/2014 | 16 | NOTICE of Attorney Appearance - Pro Hac Vice by Jeffrey M Ratinoff on behalf of ASUSTeK Computer, Inc., Asus Computer International, Inc.. Filing fee $ 100, receipt number 0540-4524345. (Ratinoff, Jeffrey) (Entered: 02/14/2014) |
| 02/18/2014 | 17 | NOTICE of Attorney Appearance by Joshua Wright Budwin on behalf of Rockstar Consortium US LP (Budwin, Joshua) (Entered: 02/18/2014) |
| 02/18/2014 | 18 | NOTICE of Attorney Appearance by Joshua Wright Budwin on behalf of Mobilestar Technologies LLC (Budwin, Joshua) (Entered: 02/18/2014) |
| 02/18/2014 | 19 | CORPORATE DISCLOSURE STATEMENT filed by ASUSTeK Computer, Inc., Asus Computer International, Inc. identifying Corporate Parent ASUSTeK Computer, Inc. for Asus Computer International, Inc.. (Davis, Harold) (Entered: 02/18/2014) |
| 02/27/2014 | 20 | NOTICE by Mobilestar Technologies LLC, Rockstar Consortium US LP *NOTICE OF READINESS FOR SCHEDULING CONFERENCE* (Stevenson, Theodore) (Entered: 02/27/2014) |
| 02/28/2014 | 21 | RESPONSE in Opposition re 15 MOTION to Dismiss *COMPLAINT PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 12(b)(1), AND 12(f)* filed by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 02/28/2014) |
| 02/28/2014 | 22 | AMENDED COMPLAINT against ASUSTeK Computer, Inc., Asus Computer International, Inc., filed by Rockstar Consortium US LP, Mobilestar Technologies LLC. (Stevenson, Theodore) (Entered: 02/28/2014) |

| 03/04/2014 | 23 | NOTICE of Attorney Appearance by Ryan Abbott Hargrave on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Hargrave, Ryan) (Entered: 03/04/2014) |
|---|---|---|
| 03/07/2014 | 24 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>STIPULATION *JOINT MOTION TO DEEM DOCKET NO. 15 AND DOCKET NO. 21 RELATED TO PLAINTIFFS AMENDED COMPLAINT* by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Attachments: # 1 Text of Proposed Order)(Ratinoff, Jeffrey) Modified on 3/10/2014 (nkl, ). (Entered: 03/07/2014) |
| 03/07/2014 | 25 | MOTION for Extension of Time to File Response/Reply *DEFENDANTS UNOPPOSED MOTION FOR AN EXTENSION OF TIME TO FILE THEIR REPLY IN SUPPORT OF DEFENDANTS MOTION TO DISMISS* by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Attachments: # 1 Text of Proposed Order)(Ratinoff, Jeffrey) (Entered: 03/07/2014) |
| 03/10/2014 | | NOTICE of Deficiency regarding the JOINT MOTION TO DEEM DOCKET NO. 15 AND DOCKET NO. 21 RELATED TO PLAINTIFFS AMENDED COMPLAINT submitted document 24 was filed using the wrong docket event. Correction should be made by one business day. (nkl, ) (Entered: 03/10/2014) |
| 03/10/2014 | 26 | Joint MOTION DEEM DOCKET NO. 15 AND DOCKET NO. 21 RELATED TO PLAINTIFFS AMENDED COMPLAINT by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Attachments: # 1 Text of Proposed Order)(Ratinoff, Jeffrey) (Entered: 03/10/2014) |
| 03/12/2014 | 27 | ORDER granting 25 Motion for Extension of Time to File Response/Reply. Replies due by 3/13/2014. Signed by Judge Rodney Gilstrap on 03/12/2014. (nkl, ) (Entered: 03/12/2014) |
| 03/12/2014 | 28 | ORDER granting 26 Motion to Deem Docket No. 15 and Docket No. 21 Related to Plaintiffs Amended Complaint. Signed by Judge Rodney Gilstrap on 03/12/2014. (nkl, ) (Entered: 03/12/2014) |
| 03/13/2014 | 29 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>REPLY to Response to Motion re 15 MOTION to Dismiss *COMPLAINT PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 12(b)(1), AND 12(f)* filed by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Davis, Harold) Modified on 3/14/2014 (nkl, ). (Entered: 03/13/2014) |
| 03/14/2014 | 30 | REPLY to Response to Motion re 15 MOTION to Dismiss *COMPLAINT PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 12(b)(1), AND 12(f)* filed by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Davis, Harold) (Entered: 03/14/2014) |
| 03/14/2014 | | NOTICE of Deficiency regarding the DEFENDANTS REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT |

| | | |
|---|---|---|
| | | PURSUANT TO RULES 12(b)(6) AND 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE submitted document 29 was entered in the wrong case. Correction should be made by one business day. (nkl, ) (Entered: 03/14/2014) |
| 03/20/2014 | 31 | ORDER consolidating this case (the LEAD CASE) with 2:13cv895; 2:13cv898; 2:1cv899; 2:13cv900; and 2:13cv901 for all pretrial issues, except venue. All parties are instructed to file any future filings (except relating to venue) in the LEAD CASE. Signed by Judge Rodney Gilstrap on 3/19/14. (bas, ) (Entered: 03/20/2014) |
| 03/21/2014 | 32 | ORDER - Scheduling Conference set for 4/7/2014 02:30 PM in Ctrm 106 (Marshall) before Judge Rodney Gilstrap and Magistrate Judge Roy Payne. Signed by Judge Rodney Gilstrap on 03/20/2014. (nkl, ) (Entered: 03/21/2014) |
| 03/21/2014 | 33 | NOTICE of Attorney Appearance by David A Bailey on behalf of ZTE (USA) Inc. (Bailey, David) (Entered: 03/21/2014) |
| 03/21/2014 | 34 | NOTICE of Attorney Appearance by Everett McClyde Upshaw on behalf of ZTE (USA) Inc. (Upshaw, Everett) (Entered: 03/21/2014) |
| 03/21/2014 | 35 | NOTICE of Attorney Appearance by James Mark Mann on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Mann, James) (Entered: 03/21/2014) |
| 03/21/2014 | 36 | NOTICE of Attorney Appearance by Gregory Blake Thompson on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Thompson, Gregory) (Entered: 03/21/2014) |
| 03/24/2014 | 37 | NOTICE of Attorney Appearance by Gregory Blake Thompson on behalf of Google, Inc. (Thompson, Gregory) (Entered: 03/24/2014) |
| 03/24/2014 | 38 | NOTICE of Attorney Appearance by James Mark Mann on behalf of Google, Inc. (Mann, James) (Entered: 03/24/2014) |
| 03/24/2014 | 39 | SUR-REPLY to Reply to Response to Motion re 15 MOTION to Dismiss *COMPLAINT PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 12(b)(1), AND 12(f) filed by Rockstar Consortium US LP, and Mobilestar Technologies LLC.* (Stevenson, Theodore) Modified on 3/26/2014 (mrm, ). (Entered: 03/24/2014) |
| 03/25/2014 | 40 | NOTICE of Attorney Appearance by Steven T Snyder on behalf of ZTE (USA) Inc. (Snyder, Steven) (Entered: 03/25/2014) |
| 03/25/2014 | 41 | MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California* by ASUSTeK Computer, Inc., Asus Computer International, Inc.. (Attachments: # 1 Declaration of H.Davis In Support of Defendants Motion, # 2 Exhibit 1, # 3 Exhibit 2 pt 1, # 4 Exhibit 2 pt 2, # 5 Exhibit 2 pt 3, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Declaration of M.Hsu In Support of Defendants Motion, # 11 Declaration of G.Yan In Support of Defendants Motion, # 12 Text of Proposed Order)(Davis, Harold) (Attachment 2 replaced on 3/28/2014) (nkl, ). (Entered: 03/25/2014) |

| 03/25/2014 | 42 | NOTICE of Attorney Appearance by Curt Holbreich on behalf of HTC America, Inc., HTC Corporation (Holbreich, Curt) (Entered: 03/25/2014) |
|---|---|---|
| 03/26/2014 | 43 | *SUR-REPLY IN OPPOSITION TO GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Cause No. 2:13-cv-900; DKT. 33)* by Rockstar Consortium US LP, and Mobilestar Technologies LLC. (Stevenson, Theodore) Modified on 3/26/2014 (mrm, ). (Entered: 03/26/2014) |
| 03/26/2014 | 44 | *PLAINTIFFS' SUR-REPLY IN OPPOSITION TO HTC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (Cause No. 2:13-cv-895; Dkt. 20)* by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Stevenson, Theodore) Modified on 3/26/2014 (mrm, ). (Entered: 03/26/2014) |
| 03/26/2014 | 45 | *PLAINTIFFS' SUR-REPLY IN OPPOSITION TO LG DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Cause No. 2:13-cv-898; Dkt. 24)* by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Stevenson, Theodore) Modified on 3/26/2014 (mrm, ). (Entered: 03/26/2014) |
| 03/26/2014 | 46 | *PLAINTIFFS' SUR-REPLY IN OPPOSITION TO PANTECH DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Cause No. 2:13-cv-899; Dk. 15)* by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Stevenson, Theodore) Modified on 3/26/2014 (mrm, ). (Entered: 03/26/2014) |
| 03/26/2014 | 47 | *PLAINTIFFS' SUR-REPLY IN OPPOSITION TO SAMSUNG DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Cause No. 2:13-cv-894; Dkt. 26)* by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Stevenson, Theodore) Modified on 3/26/2014 (mrm, ). (Entered: 03/26/2014) |
| 03/26/2014 | 48 | *PLAINTIFFS' SUR-REPLY IN OPPOSITION TO ZTE (USA) INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (Cause No. 2:13-cv-901; Dkt. 23)* by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Stevenson, Theodore) Modified on 3/26/2014 (mrm, ). (Entered: 03/26/2014) |
| 03/26/2014 | 49 | NOTICE of Attorney Appearance by Joseph Milowic, III on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Milowic, Joseph) (Entered: 03/26/2014) |
| 03/26/2014 | 50 | NOTICE of Attorney Appearance by Mark Yeh-Kai Tung on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Tung, Mark) (Entered: 03/26/2014) |
| 03/26/2014 | 51 | NOTICE of Attorney Appearance by Kristin J Madigan on behalf of Google, Inc. |

| | | (Madigan, Kristin) (Entered: 03/26/2014) |
|---|---|---|
| 03/26/2014 | 52 | NOTICE of Attorney Appearance by Charles K Verhoeven on behalf of Google, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Verhoeven, Charles) (Entered: 03/26/2014) |
| 03/26/2014 | 53 | NOTICE of Attorney Appearance by Sean S Pak on behalf of Google, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Pak, Sean) (Entered: 03/26/2014) |
| 03/26/2014 | 54 | NOTICE of Attorney Appearance by Patrick Curran on behalf of Google, Inc. (Curran, Patrick) (Entered: 03/26/2014) |
| 03/26/2014 | 55 | NOTICE of Attorney Appearance by Matthew S Warren on behalf of Google, Inc. (Warren, Matthew) (Entered: 03/26/2014) |
| 03/27/2014 | 56 | NOTICE of Attorney Appearance by D James Pak on behalf of Pantech Co Ltd, Pantech Wireless Inc (Pak, D) (Entered: 03/27/2014) |
| 03/27/2014 | 57 | NOTICE of Attorney Appearance by Kevin P.B. Johnson on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Johnson, Kevin) (Entered: 03/27/2014) |
| 03/28/2014 | 58 | NOTICE of Attorney Appearance by Anup M Shah on behalf of ZTE (USA) Inc. (Shah, Anup) (Entered: 03/28/2014) |
| 03/28/2014 | 59 | NOTICE by Mobilestar Technologies LLC, Rockstar Consortium US LP *NOTICE OF COMPLIANCE WITH P.R. 3-1 AND P.R. 3-2* (Stevenson, Theodore) (Entered: 03/28/2014) |
| 03/31/2014 | 60 | NOTICE of Attorney Appearance by Jeffrey G Mote on behalf of LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc. (Mote, Jeffrey) (Entered: 03/31/2014) |
| 03/31/2014 | 61 | NOTICE of Attorney Appearance by Mary-Olga Lovett on behalf of LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc. (Lovett, Mary-Olga) (Entered: 03/31/2014) |
| 04/02/2014 | 62 | NOTICE of Attorney Appearance by Jennifer Klein Ayers on behalf of ASUSTeK Computer, Inc., Asus Computer International, Inc. (Ayers, Jennifer) (Entered: 04/02/2014) |
| 04/03/2014 | 63 | NOTICE of Attorney Appearance by Eric Jason Maiers on behalf of LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc. (Maiers, Eric) (Entered: 04/03/2014) |
| 04/04/2014 | 64 | Unopposed MOTION for Extension of Time to File Response/Reply as to 41 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California* by Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 04/04/2014) |

| 04/04/2014 | 65 | NOTICE of Attorney Appearance by Jennifer Leigh Truelove on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Truelove, Jennifer) (Entered: 04/04/2014) |
|---|---|---|
| 04/07/2014 | | Minute Entry for proceedings held before Judge Rodney Gilstrap and Judge Roy Payne: Scheduling Conference held on 4/7/14. Counsel for the parties appeared and were asked if they consented to a trial before Judge Payne. The parties were then given Markman and jury selection dates. The parties were directed to meet and confer regarding any changes to the Court's scheduling order and discovery order, and the parties are to submit the proposed orders within 14 days of the conference. (Court Reporter Shelly Holmes, CSR.)(jml) (Entered: 04/10/2014) |
| 04/07/2014 | | Minute Entry for proceedings held before Judge Rodney Gilstrap and Judge Roy Payne: Scheduling Conference held on 4/7/14. Counsel for the parties appeared and were asked if they consented to a trial before Judge Payne. The parties were then given Markman and jury selection dates. The parties were directed to meet and confer regarding any changes to the Courts scheduling order and discovery order, and the parties are to submit the proposed orders within 14 days of the conference. (Court Reporter Shelly Holmes.) (bga, ) (Entered: 04/11/2014) |
| 04/08/2014 | 66 | ORDER granting 64 Motion for Extension of Time to File Response re 41 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California*. Responses due by 4/14/2014. Signed by Judge Rodney Gilstrap on 4/8/14. (mrm, ) (Entered: 04/08/2014) |
| 04/14/2014 | 67 | RESPONSE in Opposition re 64 Unopposed MOTION for Extension of Time to File Response/Reply as to 41 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California ,* 41 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California filed* by Mobilestar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Declaration of Joshua W. Budwin, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33, # 35 Exhibit 34, # 36 Exhibit 35, # 37 Exhibit 36, # 38 Exhibit 37, # 39 Exhibit 38, # 40 Exhibit 39, # 41 Declaration of William G. Colvin, # 42 Declaration of Brian B. Egan, # 43 Declaration of Erik Fako, # 44 Declaration of Mark Hearn, # 45 Declaration of Gillian McColgan, # 46 Declaration of Matthew W. Poisson, # 47 Declaration of Donald Powers, # 48 Declaration of Marilyn French-St. George, # 49 Declaration of Bernard Tiegerman, # 50 Declaration of John Veschi, # 51 Declaration of Anthony Wootton)(Stevenson, Theodore) (Entered: 04/14/2014) |
| 04/14/2014 | 68 | Additional Attachments to Main Document: 67 Response in Opposition to Motion,,,,,,,.. (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: |

| | | |
|---|---|---|
| | | 04/14/2014) |
| 04/17/2014 | 69 | Joint MOTION for Extension of Time to File *a Proposed Docket Control Order, Discovery Order and Notice of Mediator* by ASUSTeK Computer, Inc., Asus Computer International, Inc., Google, Inc., HTC America, Inc., HTC Corporation, LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., Mobilestar Technologies LLC, Pantech Co Ltd, Pantech Wireless Inc, Rockstar Consortium US LP, Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, ZTE (USA) Inc. (Attachments: # 1 Text of Proposed Order)(Mann, James) (Entered: 04/17/2014) |
| 04/17/2014 | 70 | NOTICE of Attorney Appearance by James D Judah on behalf of Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC (Judah, James) (Entered: 04/17/2014) |
| 04/21/2014 | 71 | NOTICE by Google, Inc. *Google's Notice of Order Denying Motion to Dismiss or, In the Alternative, to Transfer* (Attachments: # 1 Exhibit A)(Mann, James) (Entered: 04/21/2014) |
| 04/22/2014 | 72 | ORDER granting 69 Motion for Extension of Time to File a Proposed Docket Control Order, Discovery Order, and Notice of Mediator. Signed by Judge Rodney Gilstrap on 4/21/14. (mrm, ) (Entered: 04/22/2014) |
| 04/23/2014 | 73 | RESPONSE to 71 Notice (Other) by Rockstar Consortium US LP. (Stevenson, Theodore) (Entered: 04/23/2014) |
| 04/24/2014 | 74 | RESPONSE to *Docket No. 45 in Case No. 2:13-cv-00900-JRG; Google's Sur-Reply In Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint filed by Google, Inc.*. (Attachments: # 1 Declaration of Kristin J. Madigan In Support of Google's Sur-Reply, # 2 Exhibit A - Part 1 of 8, # 3 Exhibit A - Part 2 of 8, # 4 Exhibit A - Part 3 of 8, # 5 Exhibit A - Part 4 of 8, # 6 Exhibit A - Part 5 of 8, # 7 Exhibit A - Part 6 of 8, # 8 Exhibit A - Part 7 of 8, # 9 Exhibit A - Part 8 of 8, # 10 Exhibit B)(Mann, James) (Entered: 04/24/2014) |
| 04/25/2014 | 75 | REPLY to Response to Motion re 41 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California filed by ASUSTeK Computer, Inc., Asus Computer International, Inc.*. (Attachments: # 1 Supplement Declaration of H.Davis In Support of Defendants Motion, # 2 Exhibit 7, # 3 Exhibit 8)(Davis, Harold) (Entered: 04/25/2014) |
| 04/25/2014 | 76 | NOTICE of Designation of Mediator, Honorable David Folsom, filed by ASUSTeK Computer, Inc., Asus Computer International, Inc., Google, Inc., HTC America, Inc., HTC Corporation, LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., Mobilestar Technologies LLC, Pantech Co Ltd, Pantech Wireless Inc, Rockstar Consortium US LP, Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, ZTE (USA) Inc., ZTE Corporation. *Joint Notice Regarding Mediator* (Attachments: # 1 Text of Proposed Order)(Mann, James) (Entered: 04/25/2014) |

| | | |
|---|---|---|
| 04/25/2014 | 77 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>Submission of Proposed Agreed Docket Control/Scheduling order by ASUSTeK Computer, Inc., Asus Computer International, Inc., Google, Inc., HTC America, Inc., HTC Corporation, LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., Mobilestar Technologies LLC, Pantech Co Ltd, Pantech Wireless Inc, Rockstar Consortium US LP, Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, ZTE (USA) Inc., ZTE Corporation . (Attachments: # 1 Proposed Docket Control Order) (Mann, James) Modified on 4/28/2014 (nkl, ). (Entered: 04/25/2014) |
| 04/25/2014 | 78 | **DEFICIENT DOCUMENT - FILED IN ERROR**<br><br>Submission of Proposed Agreed Discovery order by ASUSTeK Computer, Inc., Asus Computer International, Inc., Google, Inc., HTC America, Inc., HTC Corporation, LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., Mobilestar Technologies LLC, Pantech Co Ltd, Pantech Wireless Inc, Rockstar Consortium US LP, Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, ZTE (USA) Inc., ZTE Corporation . (Attachments: # 1 Proposed Discovery Order, # 2 Exhibit B - Plaintiffs' Briefing, # 3 Exhibit C - Defendants' Briefing)(Mann, James) Modified on 4/28/2014 (nkl, ). (Entered: 04/26/2014) |
| 04/28/2014 | | NOTICE of Deficiency regarding the JOINT MOTION FOR ENTRY OF DOCKET CONTROL ORDER submitted 77 was filed using the wrong docket event. Correction should be made by one business day. (nkl, ) (Entered: 04/28/2014) |
| 04/28/2014 | | NOTICE of Deficiency regarding the JOINT MOTION FOR ENTRY OF DISCOVERY ORDER submitted 78 was filed using the wrong docket event. Correction should be made by one business day. (nkl, ) (Entered: 04/28/2014) |
| 04/28/2014 | 79 | NOTICE of Discovery Disclosure by HTC America, Inc., HTC Corporation *Initial Disclosure* (Bettinger, Michael) (Entered: 04/28/2014) |
| 04/28/2014 | 80 | Joint MOTION *for Entry of Docket Control Order* by ASUSTeK Computer, Inc., Asus Computer International, Inc., Google, Inc., HTC America, Inc., HTC Corporation, LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., Mobilestar Technologies LLC, Pantech Co Ltd, Pantech Wireless Inc, Rockstar Consortium US LP, Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, ZTE (USA) Inc., ZTE Corporation. (Attachments: # 1 Proposed Docket Control Order) (Mann, James) (Entered: 04/28/2014) |
| 04/28/2014 | 81 | ORDER APPOINTING MEDIATOR re 76 Notice of Designation of Mediator,, filed by Pantech Co Ltd, LG Electronics Mobilecomm USA Inc, Google, Inc., Samsung Electronics Co., LTD.,, Asus Computer International, Inc., Samsung Electronics America, Inc., Samsung TeleCommunications America, LLC, ASUSTeK Computer, Inc., LG Electronics U.S.A., Inc., ZTE Corporation, Pantech Wireless Inc, Mobilestar |

| | | |
|---|---|---|
| | | Technologies LLC, ZTE (USA) Inc., LG Electronics Inc., HTC America, Inc., HTC Corporation, Rockstar Consortium US LP. Signed by Judge Rodney Gilstrap on 04/28/2014. (nkl, ) (Entered: 04/28/2014) |
| 04/28/2014 | 82 | Joint MOTION *for Entry of Discovery Order* by ASUSTeK Computer, Inc., Asus Computer International, Inc., Google, Inc., HTC America, Inc., HTC Corporation, LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., Mobilestar Technologies LLC, Pantech Co Ltd, Pantech Wireless Inc, Rockstar Consortium US LP, Samsung Electronics America, Inc., Samsung Electronics Co., LTD,,, Samsung TeleCommunications America, LLC, ZTE (USA) Inc., ZTE Corporation. (Attachments: # 1 Proposed Discovery Order, # 2 Exhibit B Plaintiffs' Briefing in Support of Entry of a Discovery Order, # 3 Exhibit C Defendants' Briefing in Support of Entry of a Docket Control Order and Discovery Order)(Mann, James) (Entered: 04/28/2014) |
| 04/28/2014 | 83 | Joint MOTION for Extension of Time to File *PROPOSED PROTECTIVE ORDER* by Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Sochia, David) (Entered: 04/28/2014) |
| 04/28/2014 | 84 | NOTICE of Discovery Disclosure by ASUSTeK Computer, Inc., Asus Computer International, Inc. (Davis, Harold) (Entered: 04/28/2014) |
| 04/28/2014 | 85 | NOTICE of Discovery Disclosure by LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc. *Notice of Service of Initial Disclosures* (Maiers, Eric) (Entered: 04/28/2014) |
| 04/28/2014 | 86 | NOTICE of Discovery Disclosure by Samsung Electronics America, Inc., Samsung Electronics Co., LTD,,, Samsung TeleCommunications America, LLC (Mann, James) (Entered: 04/28/2014) |
| 04/28/2014 | 87 | NOTICE of Discovery Disclosure by Rockstar Consortium US LP (Stevenson, Theodore) (Entered: 04/28/2014) |
| 04/28/2014 | 88 | NOTICE of Discovery Disclosure by Pantech Co Ltd, Pantech Wireless Inc *(Initial Disclosures)* (Rankin, Weldon) (Entered: 04/28/2014) |
| 04/28/2014 | 89 | NOTICE of Discovery Disclosure by Google, Inc. (Mann, James) (Entered: 04/28/2014) |
| 04/29/2014 | 90 | NOTICE of Discovery Disclosure by ZTE (USA) Inc. (Shah, Anup) (Entered: 04/29/2014) |
| 04/29/2014 | 91 | DOCKET CONTROL ORDER: re 80 Joint MOTION *for Entry of Docket Control Order*. Pretrial Conference set for 6/1/2015 09:00 AM in Ctrm 106 (Marshall) before Judge Rodney Gilstrap., Amended Pleadings due by 10/23/2014., Joinder of Parties due by 4/14/2014., Jury Selection set for 7/13/2015 09:00 AM in Ctrm 106 (Marshall) before Judge Rodney Gilstrap., Mediation Completion due by 2/5/2015., Markman Hearing set for 1/8/2015 09:00 AM in Ctrm 106 (Marshall) before Judge Rodney Gilstrap., Motions in Limine due by 5/14/2015., Proposed Pretrial Order due by 5/25/2015. Signed by Judge Rodney Gilstrap on 04/28/2014. (nkl, ) (Entered: |

| | | |
|---|---|---|
| | | 04/29/2014) |
| 04/29/2014 | 92 | ORDER granting 83 Motion for Extension of Time to File Protective Order. Signed by Judge Rodney Gilstrap on 4/29/2014. (ch, ) (Entered: 04/29/2014) |
| 05/05/2014 | 93 | SUR-REPLY to Reply to Response to Motion re 41 MOTION to Change Venue *Defendants' Motion to Stay or, in the Alternative, to Transfer to the Northern District of California* filed by Rockstar Consortium US LP. (Attachments: # 1 Declaration of Joshua W. Budwin, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(Stevenson, Theodore) (Entered: 05/05/2014) |
| 05/06/2014 | 94 | Joint MOTION for Extension of Time to File *Proposed E-DIscovery Order* by Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Sochia, David) (Additional attachment(s) added on 5/8/2014: # 2 Revised Proposed Order) (nkl, ). (Entered: 05/06/2014) |
| 05/07/2014 | 95 | NOTICE of Attorney Appearance by James J Lukas, Jr on behalf of LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc. (Lukas, James) (Entered: 05/07/2014) |
| 05/07/2014 | | NOTICE of Hearing: Markman Hearing RESET for 1/8/2015 01:30 PM in Ctrm 106 (Marshall) before Judge Rodney Gilstrap. *Please note that only the time has changed.* (jml) (Entered: 05/07/2014) |
| 05/08/2014 | 96 | DISCOVERY ORDER re 82 Joint MOTION *for Entry of Discovery Order* filed by Pantech Co Ltd, LG Electronics Mobilecomm USA Inc, Google, Inc., Samsung Electronics Co., LTD.,, Asus Computer International, Inc., Samsung Electronics America, Inc., Samsung TeleCommunications America, LLC, ASUSTeK Computer, Inc., LG Electronics U.S.A., Inc., ZTE Corporation, Pantech Wireless Inc, Mobilestar Technologies LLC, ZTE (USA) Inc., LG Electronics Inc., HTC America, Inc., HTC Corporation, Rockstar Consortium US LP. Signed by Judge Rodney Gilstrap on 05/06/2014. (nkl, ) (Entered: 05/08/2014) |
| 05/08/2014 | 97 | ORDER granting 94 Motion for Extension of Time to File - the parties are hereby ORDERED to file a proposed E-Discovery Order by May 27, 2014. Signed by Judge Rodney Gilstrap on 05/08/2014. (nkl, ) (Entered: 05/08/2014) |
| 05/09/2014 | 98 | NOTICE of Attorney Appearance by Alexas D Skucas on behalf of ZTE Corporation (Skucas, Alexas) (Entered: 05/09/2014) |
| 05/09/2014 | 99 | NOTICE of Attorney Appearance by Anup M Shah on behalf of ZTE Corporation (Shah, Anup) (Entered: 05/09/2014) |
| 05/09/2014 | 100 | NOTICE of Attorney Appearance by Steven T Snyder on behalf of ZTE Corporation (Snyder, Steven) (Entered: 05/09/2014) |
| 05/09/2014 | 101 | MOTION to Dismiss *Plaintiffs' Original Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure* by ZTE Corporation. (Attachments: # 1 Text of Proposed Order)(Upshaw, Everett) (Entered: 05/09/2014) |

| 05/09/2014 | 102 | CORPORATE DISCLOSURE STATEMENT filed by ZTE Corporation identifying Other Affiliate HKSCC Nominees Limited for ZTE Corporation. (Upshaw, Everett) (Entered: 05/09/2014) |
| --- | --- | --- |
| 05/12/2014 | 103 | Joint MOTION for Extension of Time to File *Proposed Protective Order* by ASUSTeK Computer, Inc., Asus Computer International, Inc., Google, Inc., HTC America, Inc., HTC Corporation, LG Electronics Inc., LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., Mobilestar Technologies LLC, Pantech Co Ltd, Pantech Wireless Inc, Rockstar Consortium US LP, Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC, ZTE (USA) Inc.. (Attachments: # 1 Text of Proposed Order on Joint Motion to Extend Deadline to File Proposed Protective Order)(Mann, James) (Entered: 05/12/2014) |
| 05/12/2014 | 104 | NOTICE by Rockstar Consortium US LP *NOTICE OF FILINGS* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Baxter, Samuel) (Entered: 05/12/2014) |
| 05/14/2014 | 105 | RESPONSE in Opposition re 101 MOTION to Dismiss *Plaintiffs' Original Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure filed by Mobilestar Technologies LLC, Rockstar Consortium US LP.* (Attachments: # 1 Text of Proposed Order)(Stevenson, Theodore) (Entered: 05/14/2014) |
| 05/15/2014 | 106 | MEMORANDUM AND OPINION. Signed by Judge Rodney Gilstrap on 05/15/2014. (nkl, ) (Entered: 05/15/2014) |
| 05/16/2014 | 107 | ORDER granting 103 Motion for Extension of Time to File a proposed Protective Order by May 19, 2014. Signed by Judge Rodney Gilstrap on 05/16/2014. (nkl, ) (Entered: 05/16/2014) |
| 05/19/2014 | 108 | Joint MOTION for Protective Order by Rockstar Consortium US LP. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Sochia, David) (Additional attachment(s) added on 5/20/2014: # 5 Revised Proposed Order) (nkl, ). (Entered: 05/19/2014) |
| 05/20/2014 | 109 | NOTICE of Attorney Appearance by Samuel Franklin Baxter on behalf of Mobilestar Technologies LLC, Rockstar Consortium US LP (Baxter, Samuel) (Entered: 05/20/2014) |
| 05/20/2014 | 110 | CORPORATE DISCLOSURE STATEMENT filed by Pantech Co Ltd, Pantech Wireless Inc identifying Corporate Parent Pantech Co., Ltd. for Pantech Wireless Inc. (Rankin, Weldon) (Entered: 05/20/2014) |
| 05/21/2014 | 111 | NOTICE of Discovery Disclosure by ZTE Corporation *Initial Disclosure* (Shah, Anup) (Entered: 05/21/2014) |
| 05/27/2014 | 112 | Joint MOTION for Extension of Time to File *PROPOSED E-DISCOVERY ORDER* by Rockstar Consortium US LP. (Attachments: # 1 Text of Proposed Order)(Sochia, David) (Entered: 05/27/2014) |
| 05/29/2014 | 113 | RESPONSE to *Docket No. 19, Civil Action No. 2:13-cv-00900-JRG: Samsung's* |

| | | |
|---|---|---|
| | | *Answer, Affirmative Defenses, and Counterclaims to (First) Amended Complaint* by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. (Mann, James) (Entered: 05/29/2014) |
| 05/29/2014 | 114 | NOTICE by Google, Inc. *Google's Notice of Filing of Oppositions to Rockstar's Renewed Motion to Transfer and Motion for Interlocutory Review* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Mann, James) (Entered: 05/29/2014) |
| 06/03/2014 | 115 | ORDER granting 112 Motion for Extension of Time to File a proposed E-Discovery Order by June 6, 2014. Signed by Judge Rodney Gilstrap on 06/03/2014. (nkl, ) (Entered: 06/03/2014) |
| 06/06/2014 | 116 | Joint MOTION for Entry of E-Discovery Order by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order) (Mann, James) (Entered: 06/06/2014) |
| 06/09/2014 | 117 | NOTICE of Attorney Appearance by Nicholas M Mathews on behalf of Rockstar Consortium US LP (Mathews, Nicholas) (Entered: 06/09/2014) |
| 06/09/2014 | 118 | NOTICE of Attorney Appearance by Nicholas M Mathews on behalf of Mobilestar Technologies LLC (Mathews, Nicholas) (Entered: 06/09/2014) |
| 06/10/2014 | 119 | PROTECTIVE ORDER. Signed by Judge Rodney Gilstrap on 06/10/2014. (nkl, ) (Entered: 06/10/2014) |
| 06/17/2014 | 120 | ORDER REGARDING E-DISCOVERY AND AGREEMENT REGARDING THE FORMAT OF DOCUMENT PRODUCTIONS. Signed by Judge Rodney Gilstrap on 6/17/2014. (ch, ) (Entered: 06/17/2014) |
| 06/23/2014 | 121 | RESPONSE to 113 Response to Non-Motion, *ANSWER TO COUNTERCLAIMS OF SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC* by Rockstar Consortium US LP. (Budwin, Joshua) (Entered: 06/23/2014) |
| 07/01/2014 | 122 | MEMORANDUM OPINION AND ORDER. Signed by Judge Rodney Gilstrap on 07/01/2014. (nkl, ) (Entered: 07/01/2014) |
| 07/17/2014 | 123 | NOTICE of Attorney Appearance - Pro Hac Vice by Erik C Olson on behalf of Google, Inc.. Filing fee $ 100, receipt number 0540-4751571. (Olson, Erik) (Entered: 07/17/2014) |
| 07/17/2014 | 124 | NOTICE of Attorney Appearance - Pro Hac Vice by Eugene Y Mar on behalf of Google, Inc.. Filing fee $ 100, receipt number 0540-4751610. (Mar, Eugene) (Entered: 07/17/2014) |
| 07/18/2014 | 125 | NOTICE of Attorney Appearance - Pro Hac Vice by Roderick M Thompson on behalf of Google, Inc.. Filing fee $ 100, receipt number 0540-4752245. (Thompson, Roderick) (Entered: 07/18/2014) |
| | | |

| | | |
|---|---|---|
| 07/21/2014 | 126 | *Samsung's* ANSWER to Complaint *Answer, Affirmative Defenses, and Counterclaims to Rockstar's Second Amended Complaint (Dkt. 13-cv-900, Dkt. No. 45)*, COUNTERCLAIM against Mobilestar Technologies LLC, Rockstar Consortium US LP by Samsung Electronics America, Inc., Samsung Electronics Co., LTD.,, Samsung TeleCommunications America, LLC.(Mann, James) (Entered: 07/21/2014) |
| 07/22/2014 | 127 | ANSWER to Complaint *Answer and Affirmative Defenses of Defendant Google Inc. to Claims for Patent Infringement of Rockstar Consortium US LP and MobileStar Technologies LLC (Civil Action No. 13-cv-0900-JRG, Docket No. 45, Rockstar's Second Amended Complaint* by Google, Inc..(Mann, James) (Entered: 07/22/2014) |
| 07/25/2014 | 128 | ORDER denying 15 Motion to Dismiss. Signed by Judge Rodney Gilstrap on 07/25/2014. (nkl, ) (Entered: 07/25/2014) |
| 07/28/2014 | 129 | MEMORANDUM OPINION AND ORDER. Signed by Judge Rodney Gilstrap on 07/28/2014. (nkl, ) (Entered: 07/28/2014) |
| 07/30/2014 | 130 | MEMORANDUM OPINION AND ORDER. Signed by Judge Rodney Gilstrap on 7/30/2014. (ch, ) (Entered: 07/30/2014) |
| 07/30/2014 | 131 | MEMORANDUM OPINION AND ORDER. Signed by Judge Rodney Gilstrap on 07/30/2014. (nkl, ) (Entered: 07/30/2014) |
| 08/08/2014 | 132 | ANSWER to 126 Answer to Complaint, Counterclaim,, by Rockstar Consortium US LP.(Stevenson, Theodore) (Entered: 08/08/2014) |
| 08/08/2014 | 133 | ANSWER to 22 Amended Complaint , COUNTERCLAIM against Mobilestar Technologies LLC, Rockstar Consortium US LP by ASUSTeK Computer, Inc., Asus Computer International, Inc..(Davis, Harold) (Entered: 08/08/2014) |
| 08/11/2014 | 134 | ANSWER to Complaint *(Amended)*, COUNTERCLAIM *and Affirmative Defenses* against Mobilestar Technologies LLC, Rockstar Consortium US LP by HTC America, Inc., HTC Corporation.(Bettinger, Michael) (Entered: 08/11/2014) |
| 08/12/2014 | 135 | ANSWER to 1 Complaint, *and Affirmative Defenses*, COUNTERCLAIM against Mobilestar Technologies LLC, Rockstar Consortium US LP by LG Electronics Mobilecomm USA Inc, LG Electronics U.S.A., Inc., LG Electronics Inc..(Harris, Richard) (Entered: 08/12/2014) |

<div align="center">

**PACER Service Center**

**Transaction Receipt**

08/12/2014 16:11:38

</div>

| | | | |
|---|---|---|---|
| **PACER Login:** | qe0001:2618656:0 | **Client Code:** | 01980-00011 |
| **Description:** | Docket Report | **Search Criteria:** | 2:13-cv-00894-JRG |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

<div align="center">

**– A1641 –**

</div>

ADRMOP,AO279,PRVADR

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:13-cv-05933-CW

Google Inc. v. Rockstar Consortium US LP et al          Date Filed: 12/23/2013
Assigned to: Hon. Claudia Wilken                         Jury Demand: Both
Cause: 35:271 Patent Infringement                        Nature of Suit: 830 Patent
                                                         Jurisdiction: Federal Question

**Plaintiff**

**Google Inc.**                    represented by   **Matthew S. Warren**
                                                    Quinn Emanuel Urquhart & Sullivan, LLP
                                                    50 California Street
                                                    22nd Floor
                                                    San Francisco, CA 94111
                                                    415-875-6600
                                                    Fax: 415-875-6700
                                                    Email: matthewwarren@courtpapers.info
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Charles Kramer Verhoeven**
                                                    Quinn Emanuel Urquhart Oliver & Hedges
                                                    L
                                                    50 California Street, 22nd Floor
                                                    San Francisco, Ca 94111
                                                    415-875-6600
                                                    Email:
                                                    charlesverhoeven@quinnemanuel.com
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Erik Christopher Olson**
                                                    Farella Braun Martel LLP
                                                    235 Montgomery Street
                                                    San Francisco, CA 94104
                                                    415-954-4400
                                                    Email: eolson@fbm.com
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Eugene Y. Mar**
                                                    Farella Braun & Martel LLP
                                                    235 Montgomery Street, 17th Floor

**— A1642 —**

San Francisco, CA 94104
(415) 954-4927
Fax: (415) 954-4480
Email: emar@fbm.com
*ATTORNEY TO BE NOTICED*

**Kristin J. Madigan**
Quinn Emanuel Urquhart & Sullivan
San Francisco Office
50 California Street
22nd Floor
San Francisco, CA 94104
(415) 875-6600
Fax: (415) 875-6700
Email: kristinmadigan@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Patrick Daniel Curran**
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
212-849-7000
Fax: 212-849-7100
Email: patrickcurran@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Roderick Manley Thompson**
Farella Braun & Martel LLP
235 Montgomery Street
17th Floor
San Francisco, CA 94104
415-954-4400
Fax: 415-954-4480
Email: rthompson@fbm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rockstar Consortium US LP**               represented by **Courtland Lewis Reichman**
McKool Smith Hennigan PC.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065
650-394-1401

Fax: 650-394-1422
Email: creichman@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**David Sochia**
McKool Smith PC,
300 Crescent Court
Suite 1600
Dallas, TX 75201
214-978-4909
Fax: 214-978-4044
Email: dsochia@mckoolsmith.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Douglas A. Cawley**
McKool Smith Hennigan
A Professional Corporation
300 Crescent Court
Suite 1500
Dallas, TX 75201
214-978-4000
Fax: 214-978-4044
Email: dcawley@mckoolsmith.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, TX 78701
512-692-8700
Fax: 512-692-8744
Email: jbudwin@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Mike McKool**
McKool Smith, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
214-978-4002
Email: mmckool@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
McKool Smith, PC
300 Crescent Court
Suite 1500
Dallas, TX 75201
214-978-4000
Email: tstevenson@mckoolsmith.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MobileStar Technologies LLC**          represented by **Courtland Lewis Reichman**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **David Sochia**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

                                         **Douglas A. Cawley**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

                                         **Joshua Wright Budwin**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Mike McKool**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Theodore Stevenson , III**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

**Counter-claimant**

**MobileStar Technologies LLC**          represented by **Courtland Lewis Reichman**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **David Sochia**
                                         (See above for address)

*ATTORNEY TO BE NOTICED*

**Douglas A. Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter-claimant**

**Rockstar Consortium US LP**          represented by **Courtland Lewis Reichman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Sochia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas A. Cawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Wright Budwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike McKool**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Stevenson , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter-defendant**

**Google Inc.**                        represented by   **Charles Kramer Verhoeven**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Matthew S. Warren**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kristin J. Madigan**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Patrick Daniel Curran**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2013 | 1 | COMPLAINT *for Declaratory Judgment of Non-Infringement* against All Defendants ( Filing fee $ 400, receipt number 0971-8252154.). Filed byGoogle Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Civil Cover Sheet)(Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 2 | Proposed Summons. (Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 3 | Proposed Summons. (Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 4 | Certificate of Interested Entities by Google Inc. (Warren, Matthew) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/23/2013 | 5 | Case assigned to Magistrate Judge Paul Singh Grewal.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. (tsh, COURT STAFF) (Filed on 12/23/2013) (Entered: 12/23/2013) |

**– A1647 –**

| 12/23/2013 | 6 | Summons Issued as to MobileStar Technologies LLC. (cv, COURT STAFF) (Filed on 12/23/2013) (Entered: 12/23/2013) |
|---|---|---|
| 12/23/2013 | 7 | Summons Issued as to Rockstar Consortium US LP. (cv, COURT STAFF) (Filed on 12/23/2013) (Entered: 12/23/2013) |
| 12/24/2013 | 8 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 4/1/2014. Case Management Conference set for 4/8/2014 10:00 AM in Courtroom 5, 4th Floor, San Jose. (cv, COURT STAFF) (Filed on 12/24/2013) (Entered: 12/24/2013)** |
| 01/06/2014 | 9 | SUMMONS Returned Executed by Google Inc.. Rockstar Consortium US LP served on 12/26/2013, answer due 1/16/2014. (Warren, Matthew) (Filed on 1/6/2014) (Entered: 01/06/2014) |
| 01/06/2014 | 10 | SUMMONS Returned Executed by Google Inc.. MobileStar Technologies LLC served on 12/26/2013, answer due 1/16/2014. (Warren, Matthew) (Filed on 1/6/2014) (Entered: 01/06/2014) |
| 01/06/2014 | 11 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Google Inc... (Warren, Matthew) (Filed on 1/6/2014) (Entered: 01/06/2014) |
| 01/06/2014 | 12 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge: All matters presently set before Magistrate Judge Paul S. Grewal are hereby vacated. Clerk to reassign case. (ofr, COURT STAFF) (Filed on 1/6/2014) (Entered: 01/06/2014) |
| 01/07/2014 | 13 | **ORDER REASSIGNING CASE. Case reassigned to Hon. Claudia Wilken for all further proceedings. Magistrate Judge Paul Singh Grewal no longer assigned to the case. Reassignment Order signed by Executive Committee on 1/7/2014. (bw, COURT STAFF) (Filed on 1/7/2014) (Entered: 01/07/2014)** |
| 01/07/2014 | 14 | **CASE MANAGEMENT SCHEDULING ORDER FOR REASSIGNED CIVIL CASE: Case Management Statement due by 4/2/2014. Case Management Conference set for 4/9/2014 02:00 PM. Signed by Judge Claudia Wilken on 1/7/2014. (Attachments: # 1 Standing Order)(ndr, COURT STAFF) (Filed on 1/7/2014) (Entered: 01/07/2014)** |
| 01/07/2014 | 15 | CERTIFICATE OF SERVICE by Google Inc. re 14 Case Management Scheduling Order, (Warren, Matthew) (Filed on 1/7/2014) (Entered: 01/07/2014) |
| 01/08/2014 | 16 | REPORT on the filing of an action regarding patent (cc: form mailed to register). (cpS, COURT STAFF) (Filed on 1/8/2014) (Entered: 01/08/2014) |
| 01/14/2014 | 17 | STIPULATION *EXTENDING TIME FOR DEFENDANTS' RESPONSE TO GOOGLE'S COMPLAINT* filed by MobileStar Technologies LLC, Rockstar Consortium US LP, Google Inc. (Reichman, Courtland) (Filed on 1/14/2014) Modified on 1/15/2014 (cpS, COURT STAFF). (Entered: 01/14/2014) |
| 01/23/2014 | 18 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 305, receipt number 0971-8317159.) filed by MobileStar Technologies LLC, Rockstar Consortium US LP. |

| | | |
|---|---|---|
| | | (Sochia, David) (Filed on 1/23/2014) (Entered: 01/23/2014) |
| 01/23/2014 | 19 | Administrative Motion to File Under Seal *certain portions of Defendant's Motion to dismiss and supporting declaration* filed by MobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Declaration OF JOSHUA BUDWIN, # 2 Proposed Order, # 3 REDACTED Motion to Dimiss, # 4 UNREDACTED Motion to Dismiss, # 5 REDACTED Declaration of Afzal Dean, # 6 UNREDACTED Declaration of Afzal Dean)(Reichman, Courtland) (Filed on 1/23/2014) (Entered: 01/23/2014) |
| 01/23/2014 | 20 | MOTION to Dismiss for Lack of Jurisdiction *UNDER FED. R. CIV. P. 12(b)(2) AND 12(b)(3) FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT* filed by MobileStar Technologies LLC, Rockstar Consortium US LP. Motion Hearing set for 3/13/2014 02:00 PM in Courtroom 2, 4th Floor, Oakland before Hon. Claudia Wilken. Responses due by 2/6/2014. Replies due by 2/13/2014. (Attachments: # 1 Declaration of Afzal Dean, # 2 Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H)(Reichman, Courtland) (Filed on 1/23/2014) (Entered: 01/23/2014) |
| 01/23/2014 | 21 | Certificate of Interested Entities by MobileStar Technologies LLC (Reichman, Courtland) (Filed on 1/23/2014) (Entered: 01/23/2014) |
| 01/23/2014 | 22 | Certificate of Interested Entities by Rockstar Consortium US LP (Reichman, Courtland) (Filed on 1/23/2014) (Entered: 01/23/2014) |
| 01/24/2014 | | Electronic filing error. Names of interested entities or person were not entered. Please re-file in its entirety. Re: 22 Certificate of Interested Entities filed by Rockstar Consortium US LP, 21 Certificate of Interested Entities filed by MobileStar Technologies LLC (cpS, COURT STAFF) (Filed on 1/24/2014) (Entered: 01/24/2014) |
| 01/24/2014 | 23 | **Order granting 18 Motion for Pro Hac Vice entered by Hon. Claudia Wilken. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 01/24/2014)** |
| 01/24/2014 | 24 | Certificate of Interested Entities by Rockstar Consortium US LP identifying Other Affiliate Microsoft Corporation, Other Affiliate Blackberry Limited, Other Affiliate ICA IPLA Holdings Inc. (Sony), Other Affiliate Telefonaktiebolaget LM Ericsson (publ), Other Affiliate Apple Inc. for Rockstar Consortium US LP. (Reichman, Courtland) (Filed on 1/24/2014) (Entered: 01/24/2014) |
| 01/24/2014 | 25 | Certificate of Interested Entities by MobileStar Technologies LLC identifying Corporate Parent Rockstar Consortium US LP, Other Affiliate Microsoft Corporation, Other Affiliate Blackberry Limited, Other Affiliate ICA IPLA Holdings Inc. (Sony), Other Affiliate Telefonaktiebolaget LM Ericsson (publ), Other Affiliate Apple Inc. for MobileStar Technologies LLC. (Reichman, Courtland) (Filed on 1/24/2014) (Entered: 01/24/2014) |

| 01/27/2014 | 26 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 305, receipt number 0971-8324215.) filed by MobileStar Technologies LLC, Rockstar Consortium US LP. (Stevenson, Theodore) (Filed on 1/27/2014) (Entered: 01/27/2014) |
| --- | --- | --- |
| 01/27/2014 | 27 | Declaration of Kristin J. Madigan in Support of 19 Administrative Motion to File Under Seal *certain portions of Defendant's Motion to dismiss and supporting declaration* filed byGoogle Inc.. (Related document(s) 19 ) (Madigan, Kristin) (Filed on 1/27/2014) (Entered: 01/27/2014) |
| 01/28/2014 | 28 | **Order granting 26 Motion for Pro Hac Vice entered by Hon. Claudia Wilken. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 01/28/2014)** |
| 01/28/2014 | 29 | Certificate of Interested Entities by Google Inc. identifying Other Affiliate LG Electronics Inc., Other Affiliate Samsung Electronics America, Inc., Other Affiliate HTC Corporation, Other Affiliate HTC America, Inc., Other Affiliate Samsung Telecommunications America, LLC, Other Affiliate Samsung Electronics Co., Ltd., Other Affiliate Huawei Technologies Co., Ltd., Other Affiliate ZTE Corporation, Other Affiliate Futurewei Technologies, Inc., Other Affiliate Asus Computer International, Inc., Other Affiliate Huawei Technologies USA, Inc, Other Affiliate Asustek Computer, Inc., Other Affiliate Huawei Device USA, Inc., Other Affiliate LG Electronics U.S.A., Inc., Other Affiliate LG Electronics Mobilecomm U.S.A., Inc., Other Affiliate Huawei Device Co., Ltd., Other Affiliate Pantech Co., Ltd., Other Affiliate Pantech Wireless, Inc., Other Affiliate Huawei Investment & Holding Co., Ltd., Other Affiliate Huawei Technologies Coperatief U.A., Other Affiliate ZTE (USA) Inc., Other Affiliate ZTE Solutions for Google Inc.. (Warren, Matthew) (Filed on 1/28/2014) (Entered: 01/28/2014) |
| 02/06/2014 | 30 | Administrative Motion to File Under Seal *Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer* filed by Google Inc.. (Attachments: # 1 Declaration of Kristin J. Madigan In Support of Administrative Motion to File Under Seal, # 2 Proposed Order, # 3 Redacted Version of Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer, # 4 Unredacted Version of Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer, # 5 Declaration of Abeer Dubey In Support of Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer)(Warren, Matthew) (Filed on 2/6/2014) (Entered: 02/07/2014) |
| 02/07/2014 | 31 | Declaration of Kristin J. Madigan in Support of 30 *Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer* filed byGoogle Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19 - Part 1 of 3, # 20 Exhibit 19 - Part 2 of 3, # 21 Exhibit 19 - Part 3 of 3, # 22 Exhibit 20, # 23 Exhibit 21 - Part 1 of 2, # 24 Exhibit 21 - Part 2 of 2, # 25 Exhibit 22, # 26 Exhibit 23, # 27 Exhibit 24, # 28 Exhibit 25, # 29 Exhibit 26, # 30 Exhibit 27, # 31 Exhibit 28, # 32 Exhibit 29, # 33 Exhibit 30, # 34 Exhibit 31, # 35 Exhibit 32, # 36 Exhibit 33, # 37 Exhibit 34, # 38 Exhibit 35, # 39 Exhibit 36, # |

**— A1650 —**

| | | |
|---|---|---|
| | | 40 Exhibit 37)(Related document(s) 30 ) (Warren, Matthew) (Filed on 2/7/2014) Modified on 2/10/2014 (cpS, COURT STAFF). (Entered: 02/07/2014) |
| 02/07/2014 | 32 | CERTIFICATE OF SERVICE by Google Inc. re 31 Declaration in Support,,,, 30 Administrative Motion to File Under Seal *Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer* (Warren, Matthew) (Filed on 2/7/2014) (Entered: 02/07/2014) |
| 02/07/2014 | 33 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 305, receipt number 0971-8360222.) filed by MobileStar Technologies LLC, Rockstar Consortium US LP. (Cawley, Douglas) (Filed on 2/7/2014) (Entered: 02/07/2014) |
| 02/07/2014 | 37 | EXHIBIT 11 and 30 **(CD)** re 31 Declaration of Kristin J. Madigan filed byGoogle Inc.. (Related document(s) 31 ) (cp, COURT STAFF) (Filed on 2/7/2014) (Entered: 02/13/2014) |
| 02/10/2014 | 34 | **Order granting 33 Motion for Pro Hac Vice entered by Hon. Claudia Wilken. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 02/10/2014)** |
| 02/13/2014 | 35 | Declaration of David Sochia in Support of 30 Administrative Motion to File Under Seal *Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer* filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Related document(s) 30 ) (Sochia, David) (Filed on 2/13/2014) (Entered: 02/13/2014) |
| 02/13/2014 | 36 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 305, receipt number 0971-8376372.) filed by MobileStar Technologies LLC, Rockstar Consortium US LP. (McKool, Mike) (Filed on 2/13/2014) (Entered: 02/13/2014) |
| 02/13/2014 | 38 | First Amended Declaration of DAVID SOCHIA in Support of 30 Administrative Motion to File Under Seal *Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer* filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Related document(s) 30 ) (Sochia, David) (Filed on 2/13/2014) Modified on 2/14/2014 (cpS, COURT STAFF). (Entered: 02/13/2014) |
| 02/13/2014 | 39 | Administrative Motion to File Under Seal filed by MobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Proposed Order, # 2 Declaration of David Sochia, # 3 REDACTED Reply re Motion to Dismiss, # 4 UNREDACTED Reply re Motion to Dismiss)(Reichman, Courtland) (Filed on 2/13/2014) (Entered: 02/13/2014) |
| 02/13/2014 | 40 | REPLY (re 20 MOTION to Dismiss for Lack of Jurisdiction *UNDER FED. R. CIV. P. 12(b)(2) AND 12(b)(3) FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT* ) *REDACTED VERSION* filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Reichman, Courtland) (Filed on 2/13/2014) (Entered: 02/13/2014) |
| 02/17/2014 | 41 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 305, receipt number 0971-8381619.) filed by MobileStar Technologies LLC, Rockstar Consortium US LP. |

**– A1651 –**

| | | |
|---|---|---|
| | | (Budwin, Joshua) (Filed on 2/17/2014) (Entered: 02/17/2014) |
| 02/18/2014 | 42 | **Order granting 41 Motion for Pro Hac Vice entered by Hon. Claudia Wilken. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 02/18/2014)** |
| 02/18/2014 | 43 | **Order granting 36 Motion for Pro Hac Vice entered by Hon. Claudia Wilken. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 02/18/2014)** |
| 03/13/2014 | 44 | Minute Entry: Motion Hearing held on 3/13/2014 before Claudia Wilken (Date Filed: 3/13/2014). (Court Reporter Diane Skillman.) (ndr, COURT STAFF) (Date Filed: 3/13/2014) (Entered: 03/17/2014) |
| 03/17/2014 | 45 | TRANSCRIPT ORDER by Google Inc. for Court Reporter Diane Skillman. (Warren, Matthew) (Filed on 3/17/2014) (Entered: 03/17/2014) |
| 03/21/2014 | 46 | NOTICE by Google Inc. *Notice of Filing of Motion to Stay or, In the Alternative, to Transfer to the Northern District of California* (Attachments: # 1 Exhibit A, # 2 Exhibit B - Part 1, # 3 Exhibit B - Part 2, # 4 Exhibit B - Part 3, # 5 Exhibit B - Part 4, # 6 Exhibit B - Part 5, # 7 Exhibit B - Part 6, # 8 Exhibit B - Part 7, # 9 Exhibit B - Part 8, # 10 Exhibit C, # 11 Exhibit D, # 12 Exhibit E, # 13 Exhibit F)(Warren, Matthew) (Filed on 3/21/2014) (Entered: 03/21/2014) |
| 03/25/2014 | 47 | Transcript of Proceedings held on March 13, 2014, before Judge Claudia Wilken. Court Reporter Diane E. Skillman, Telephone number 510-451-2930, Diane_Skillman@cand.uscourts.gov, diane.transcripts@aol.com. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 6/23/2014. (Related documents(s) 45 ) (Skillman, Diane) (Filed on 3/25/2014) (Entered: 03/25/2014) |
| 03/25/2014 | 48 | NOTICE by Google Inc. *Notice of Filing of Motions to Stay or, In the Alternative, to Transfer to the Northern District of California* (Attachments: # 1 Exhibit A, # 2 Exhibit B - Part 1, # 3 Exhibit B - Part 2, # 4 Exhibit B - Part 3, # 5 Exhibit B - Part 4, # 6 Exhibit B - Part 5, # 7 Exhibit B - Part 6, # 8 Exhibit B - Part 7, # 9 Exhibit B - Part 8, # 10 Exhibit B - Part 9, # 11 Exhibit C, # 12 Exhibit D, # 13 Exhibit E, # 14 Exhibit F, # 15 Exhibit G, # 16 Exhibit H, # 17 Exhibit I)(Warren, Matthew) (Filed on 3/25/2014) (Entered: 03/25/2014) |
| 03/28/2014 | 49 | ADR Clerks Notice re: Non-Compliance with Court Order. (tjs, COURT STAFF) (Filed on 3/28/2014) (Entered: 03/28/2014) |
| 03/28/2014 | 50 | NOTICE by Google Inc. *Notice of Filing of Motions to Stay or, In the Alternative, to Transfer to the Northern District of California* (Attachments: # 1 Exhibit A, # 2 Exhibit B - Part 1, # 3 Exhibit B - Part 2, # 4 Exhibit B - Part 3, # 5 Exhibit B - Part 4, |

| | | |
|---|---|---|
| | | # 6 Exhibit B - Part 5, # 7 Exhibit B - Part 6, # 8 Exhibit C, # 9 Exhibit D)(Warren, Matthew) (Filed on 3/28/2014) (Entered: 03/28/2014) |
| 03/28/2014 | 51 | NOTICE by Google Inc. *Notice of Filing of Motion to Stay or, Alternatively, to Transfer to the Northern District of California* (Attachments: # 1 Exhibit A, # 2 Exhibit B - Part 1, # 3 Exhibit B - Part 2, # 4 Exhibit B - Part 3, # 5 Exhibit B - Part 4, # 6 Exhibit B - Part 5, # 7 Exhibit B - Part 6, # 8 Exhibit B - Part 7, # 9 Exhibit B - Part 8, # 10 Exhibit B - Part 9, # 11 Exhibit B - Part 10, # 12 Exhibit C)(Warren, Matthew) (Filed on 3/28/2014) (Entered: 03/28/2014) |
| 04/02/2014 | 52 | STIPULATION WITH PROPOSED ORDER *TO CONTINUE CASE MANAGEMENT CONFERENCE* filed by MobileStar Technologies LLC, Rockstar Consortium US LP, Google Inc. (Reichman, Courtland) (Filed on 4/2/2014) Modified on 4/3/2014 (cpS, COURT STAFF). (Entered: 04/02/2014) |
| 04/04/2014 | 53 | **ORDER by Judge Claudia Wilken Granting 52 Stipulation TO CONTINUE CASE MANAGEMENT CONFERENCE. (ndr, COURT STAFF) (Filed on 4/4/2014) (Entered: 04/04/2014)** |
| 04/04/2014 | | Reset Deadline/Hearing (See Docket No. 53 ): Case Management Statement due by 4/23/2014. Case Management Conference set for 5/7/2014 02:00 PM. (ndr, COURT STAFF) (Filed on 4/4/2014) (Entered: 04/04/2014) |
| 04/08/2014 | 54 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Exhibit A - MICROSOFT CORPORATION v. DATATERN, INC.)(Related document(s) 20 ) (Budwin, Joshua) (Filed on 4/8/2014) (Entered: 04/08/2014) |
| 04/08/2014 | 55 | NOTICE by Google Inc. *Notice of Filing of Motion to Stay or, In the Alternative, to Transfer to the Northern District of California* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Warren, Matthew) (Filed on 4/8/2014) (Entered: 04/08/2014) |
| 04/17/2014 | 56 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Exhibit A - Order Denying Motion to Consolidate Cases, # 2 Exhibit B - Order Denying Motion to Transfer, # 3 Exhibit C - Order Granting Motion to Stay)(Related document(s) 20 ) (Budwin, Joshua) (Filed on 4/17/2014) (Entered: 04/17/2014) |
| 04/17/2014 | 57 | NOTICE of Filings of Responses to Motions to Stary Or, In the Alternative, To Transfer to the Northern District of California by MobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Exhibit A - Rockstar Response to Samsung Motion to Transfer, # 2 Exhibit B - Rockstar Response to ASUSTek Motion to Transfer, # 3 Exhibit C - Rockstar Response to HTC Motion to Transfer, # 4 Exhibit D - Rockstar Response to LG Motion to Transfer, # 5 Exhibit E - Rockstar Response to ZTE Motion to Transfer)(Budwin, Joshua) (Filed on 4/17/2014) Modified on 4/18/2014 (kcS, COURT STAFF). (Entered: 04/17/2014) |
| 04/17/2014 | 58 | **ORDER DENYING MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER by Judge Claudia Wilken denying 20 Motion to Dismiss for** |

| | | |
|---|---|---|
| | | Lack of Jurisdiction (cwlc2, COURT STAFF) (Filed on 4/17/2014) (Entered: 04/17/2014) |
| 04/23/2014 | 59 | CLERKS NOTICE. Notice is hereby given that the Case Management Conference, previously set for May 7, 2014, is continued to May 14, 2014, at 2:00 p.m., in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA 94612. Case Management Statement due by May 7, 2014. **(This is a text only docket entry, there is no document associated with this notice.)** (ndr, COURT STAFF) (Filed on 4/23/2014) (Entered: 04/23/2014) |
| 05/01/2014 | 60 | STIPULATION *FOR EXTENSION OF TIME FOR DEFENDANTS TO RESPOND TO COMPLAINT* filed by MobileStar Technologies LLC, Rockstar Consortium US LP, Google Inc. (Budwin, Joshua) (Filed on 5/1/2014) Modified on 5/2/2014 (cpS, COURT STAFF). (Entered: 05/01/2014) |
| 05/05/2014 | 61 | ANSWER to Complaint with Jury Demand , COUNTERCLAIM against Google Inc. byMobileStar Technologies LLC, Rockstar Consortium US LP. (Budwin, Joshua) (Filed on 5/5/2014) (Entered: 05/05/2014) |
| 05/07/2014 | 62 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *filed by Rockstar Consortium US LLP and MobileStar Technologies LLC* (Budwin, Joshua) (Filed on 5/7/2014) (Entered: 05/07/2014) |
| 05/07/2014 | 63 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Warren, Matthew) (Filed on 5/7/2014) (Entered: 05/07/2014) |
| 05/07/2014 | 64 | STIPULATION and Proposed Order selecting Private ADR by Google Inc. filed by Google Inc., Rockstar Consortium US LP, MobileStar Technologies LLC. (Warren, Matthew) (Filed on 5/7/2014) Modified on 5/8/2014 (cpS, COURT STAFF). (Entered: 05/07/2014) |
| 05/07/2014 | 65 | JOINT CASE MANAGEMENT STATEMENT filed by Google Inc., Rockstar Consortium US LP, MobileStar Technologies LLC. (Warren, Matthew) (Filed on 5/7/2014) Modified on 5/8/2014 (cpS, COURT STAFF). (Entered: 05/07/2014) |
| 05/09/2014 | 66 | MOTION for Certificate of Interlocutory Appeal filed by MobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Declaration of Joshua Budwin, # 2 Exhibit 1, # 3 Proposed Order)(Budwin, Joshua) (Filed on 5/9/2014) Modified on 5/12/2014 (cpS, COURT STAFF). (Entered: 05/09/2014) |
| 05/09/2014 | 67 | MOTION to Transfer Case *or, in the Alternative to Stay* filed by MobileStar Technologies LLC, Rockstar Consortium US LP. Motion Hearing set for 6/26/2014 02:00 PM in Courtroom 2, 4th Floor, Oakland before Hon. Claudia Wilken. Responses due by 5/23/2014. Replies due by 5/30/2014. (Attachments: # 1 Declaration of Joshua Budwin, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, |

| | | |
|---|---|---|
| | | # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33, # 35 Exhibit 34, # 36 Exhibit 35, # 37 Declaration of William Colvin, # 38 Declaration of Brian Egan, # 39 Declaration of Erik Fako, # 40 Declaration of Mark Hearn, # 41 Declaration of Gillian Mccolgan, # 42 Declaration of Matthew Poisson, # 43 Declaration of Donald Powers, # 44 Declaration of Marilyn French-St. George, # 45 Declaration of John Veschi, # 46 Declaration of Bruce Anthony Wootton, # 47 Proposed Order)(Budwin, Joshua) (Filed on 5/9/2014) (Entered: 05/09/2014) |
| 05/12/2014 | 68 | CLERKS NOTICE. Notice is hereby given that the case management conference, previously set for May 14, 2014, is continued to June 26, 2014, at 2:00 p.m., to be heard along with the 67 motion to transfer, in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA 94612. Case Management Statement due by June 19, 2014.<br><br>**(This is a text only docket entry, there is no document associated with this notice.)**<br><br>(ndr, COURT STAFF) (Filed on 5/12/2014) (Entered: 05/12/2014) |
| 05/15/2014 | 69 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Exhibit A)(Related document(s) 67 ) (Budwin, Joshua) (Filed on 5/15/2014) (Entered: 05/15/2014) |
| 05/23/2014 | 70 | **ORDER by Judge Claudia Wilken ON ( 19 , 30 , 39 ) MOTIONS TO SEAL. (ndr, COURT STAFF) (Filed on 5/23/2014) (Entered: 05/23/2014)** |
| 05/23/2014 | 71 | RESPONSE (re 66 MOTION for Certificate of Interlocutory Appeal ) *Opposition of Google Inc. to Rockstar's Motion for §1292(b) Certification for Interlocutory Review* filed byGoogle Inc.. (Warren, Matthew) (Filed on 5/23/2014) (Entered: 05/23/2014) |
| 05/23/2014 | 72 | RESPONSE (re 67 MOTION to Transfer Case *or, in the Alternative to Stay* ) *Opposition of Google Inc. to Rockstar's Renewed Motion to Transfer or Stay This Action* filed byGoogle Inc.. (Attachments: # 1 Declaration of Kristin J. Madigan, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18)(Warren, Matthew) (Filed on 5/23/2014) (Entered: 05/23/2014) |
| 05/27/2014 | 73 | ANSWER TO COUNTERCLAIM 61 Answer to Complaint, Counterclaim *Answer of Google Inc. to Counterclaims for Patent Infringement of Rockstar Consortium US LP and MobileStar Technologies LLC* byGoogle Inc.. (Warren, Matthew) (Filed on 5/27/2014) (Entered: 05/27/2014) |

| 05/30/2014 | 74 | REPLY (re 66 MOTION for Certificate of Interlocutory Appeal ) *in Support of Motion for 1292(b) Certification for Interlocutory Review* filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Budwin, Joshua) (Filed on 5/30/2014) (Entered: 05/30/2014) |
| --- | --- | --- |
| 05/30/2014 | 75 | *Refiled REDACTED Motion to Dismiss* pursuant to re 70 Order filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Related document(s) 70 ) (Reichman, Courtland) (Filed on 5/30/2014) Modified on 6/2/2014 (cpS, COURT STAFF). (Entered: 05/30/2014) |
| 05/30/2014 | 76 | *Refiled REDACTED Declaration of Afzal Dean* pursuant to 70 Order filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Related document(s) 70 ) (Reichman, Courtland) (Filed on 5/30/2014) Modified on 6/2/2014 (cpS, COURT STAFF). (Entered: 05/30/2014) |
| 05/30/2014 | 77 | *Refiled REDACTED Reply Re Motion to Dismiss* pursuant to re 70 Order filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Related document(s) 70 ) (Reichman, Courtland) (Filed on 5/30/2014) Modified on 6/2/2014 (cpS, COURT STAFF). (Entered: 05/30/2014) |
| 05/30/2014 | 78 | REPLY (re 67 MOTION to Transfer Case *or, in the Alternative to Stay* ) filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Declaration (Supplemental) of Joshua Budwin, # 2 Exhibit 36, # 3 Exhibit 37, # 4 Exhibit 38, # 5 Exhibit 39, # 6 Exhibit 40, # 7 Exhibit 41, # 8 Exhibit 42, # 9 Exhibit 43, # 10 Declaration (Supplemental) of Donald Powers, # 11 Declaration (Supplemental) of John Veschi)(Budwin, Joshua) (Filed on 5/30/2014) (Entered: 05/30/2014) |
| 05/30/2014 | 79 | *Google Inc.'s Opposition to Defendants' Motion to Dismiss or Transfer [Revised Redacted Version of Document Sought to be Sealed]* re 70 Order filed byGoogle Inc.. (Related document(s) 70 ) (Warren, Matthew) (Filed on 5/30/2014) Modified on 6/2/2014 (cpS, COURT STAFF). (Entered: 05/30/2014) |
| 06/04/2014 | 80 | *Refiled REDACTED Declaration of Afzal Dean in support of Motion to Dismiss* (pursuant to re 70 Order on Administrative Motion to File Under Seal) filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Related document(s) 70 ) (Budwin, Joshua) (Filed on 6/4/2014) Modified on 6/5/2014 (cpS, COURT STAFF). (Entered: 06/04/2014) |
| 06/19/2014 | 81 | JOINT CASE MANAGEMENT STATEMENT filed by Google Inc., Rockstar Consortium US LP, MobileStar Technologies LLC. (Warren, Matthew) (Filed on 6/19/2014) Modified on 6/20/2014 (cpS, COURT STAFF). (Entered: 06/19/2014) |
| 06/25/2014 | 82 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d *regarding In re Nintendo of America, Inc., et al., No. 2014-132 (Fed. Cir. June 25, 2014)* filed byGoogle Inc.. (Attachments: # 1 Exhibit A)(Warren, Matthew) (Filed on 6/25/2014) (Entered: 06/25/2014) |
| 06/26/2014 | 83 | NOTICE of Appearance by Charles Kramer Verhoeven (Verhoeven, Charles) (Filed on 6/26/2014) (Entered: 06/26/2014) |

| 06/26/2014 | 84 | NOTICE of Appearance by Patrick Daniel Curran (Curran, Patrick) (Filed on 6/26/2014) (Entered: 06/26/2014) |
| 06/26/2014 | 87 | Minute Entry: Motion Hearing held on 6/26/2014 before Claudia Wilken (Date Filed: 6/26/2014). (Court Reporter Diane Skillman.) (ndr, COURT STAFF) (Date Filed: 6/26/2014) (Entered: 06/30/2014) |
| 06/26/2014 | 88 | Minute Entry and Case Management Order: Initial Case Management Conference held on 6/26/2014 before Claudia Wilken (Date Filed: 6/26/2014)\.Case referred to mediation; Amended Pleadings due by 8/25/2014; Further Case Management Conference/ Claims Construction Hearing/ Motion Hearing set for 4/30/2015 02:00 PM before Hon. Claudia Wilken; Final Pretrial Conference set for 9/2/2015 02:00 PM; Jury Selection /Jury Trial (10 day) set for 9/14/2015 08:30 AM before Hon. Claudia Wilken. (Court Reporter Diane Skillman.) (ndr, COURT STAFF) (Date Filed: 6/26/2014) (Entered: 06/30/2014) |
| 06/27/2014 | 85 | TRANSCRIPT ORDER by MobileStar Technologies LLC, Rockstar Consortium US LP for Court Reporter Diane Skillman. (Sochia, David) (Filed on 6/27/2014) (Entered: 06/27/2014) |
| 06/27/2014 | 86 | TRANSCRIPT ORDER by Google Inc. for Court Reporter Diane Skillman. (Warren, Matthew) (Filed on 6/27/2014) (Entered: 06/27/2014) |
| 07/01/2014 | 89 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Exhibit A)(Related document(s) 67 ) (Budwin, Joshua) (Filed on 7/1/2014) (Entered: 07/01/2014) |
| 07/01/2014 | 90 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byMobileStar Technologies LLC, Rockstar Consortium US LP. (Attachments: # 1 Exhibit A)(Related document(s) 67 ) (Budwin, Joshua) (Filed on 7/1/2014) (Entered: 07/01/2014) |
| 07/07/2014 | | CASE REFERRED to Private ADR 88 . (af, COURT STAFF) (Filed on 7/7/2014) (Entered: 07/07/2014) |
| 07/18/2014 | 91 | NOTICE of Appearance by Erik Christopher Olson (Olson, Erik) (Filed on 7/18/2014) (Entered: 07/18/2014) |
| 07/18/2014 | 92 | NOTICE of Appearance by Eugene Y. Mar (Mar, Eugene) (Filed on 7/18/2014) (Entered: 07/18/2014) |
| 07/18/2014 | 93 | NOTICE of Appearance by Roderick Manley Thompson (Thompson, Roderick) (Filed on 7/18/2014) (Entered: 07/18/2014) |
| 07/18/2014 | 94 | STIPULATION WITH PROPOSED ORDER *Extending Time for Proposed E-Discovery Order* filed by Google Inc., Rockstar Consortium US LP, MobileStar Technologies LLC. (Warren, Matthew) (Filed on 7/18/2014) Modified on 7/21/2014 (cpS, COURT STAFF). (Entered: 07/18/2014) |

| | | |
|---|---|---|
| 07/21/2014 | 95 | **Order granting 94 Stipulation entered by Hon. Claudia Wilken. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 07/21/2014)** |
| 07/28/2014 | 96 | STIPULATION WITH PROPOSED ORDER *Extending Time for Proposed E-Discovery Order* filed by Google Inc., Rockstar Consortium U.S. LP, MobileStar Technologies LLC. (Warren, Matthew) (Filed on 7/28/2014) Modified on 7/29/2014 (cpS, COURT STAFF). (Entered: 07/28/2014) |
| 07/29/2014 | 97 | **Order granting 96 Stipulation entered by Hon. Claudia Wilken. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 07/29/2014)** |
| 08/04/2014 | 98 | Transcript of Proceedings held on June 26, 2014, before Judge Claudia Wilken. Court Reporter Diane E. Skillman, Telephone number 510-451-2930, Diane_Skillman@cand.uscourts.gov, diane.transcripts@aol.com. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 86 Transcript Order, 85 Transcript Order ) Release of Transcript Restriction set for 11/3/2014. (Related documents(s) 86 , 85 ) (Skillman, Diane) (Filed on 8/4/2014) (Entered: 08/04/2014) |
| 08/04/2014 | 99 | STIPULATION WITH PROPOSED ORDER *Regarding Discovery of Electronically Stored Information* filed by Google Inc., Rockstar Consortium U.S. LP, MobileStar Technologies LLC. (Warren, Matthew) (Filed on 8/4/2014) Modified on 8/5/2014 (cpS, COURT STAFF). (Entered: 08/04/2014) |
| 08/04/2014 | 100 | STIPULATION WITH PROPOSED ORDER *Regarding Discovery of Electronically Stored Information for Patent Litigation* filed by Google Inc., Rockstar Consortium U.S. LP, MobileStar Technologies LLC. (Warren, Matthew) (Filed on 8/4/2014) Modified on 8/5/2014 (cpS, COURT STAFF). (Entered: 08/04/2014) |
| 08/05/2014 | 101 | **ORDER by Judge Claudia Wilken Granting 99 Stipulation Regarding Discovery of Electronically Stored Information. (ndr, COURT STAFF) (Filed on 8/5/2014) (Entered: 08/05/2014)** |
| 08/05/2014 | 102 | **ORDER by Judge Claudia Wilken Granting 100 Stipulation Regarding Discovery of Electronically Stored Information for Patent Litigation. (ndr, COURT STAFF) (Filed on 8/5/2014) (Entered: 08/05/2014)** |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 08/12/2014 14:31:30 |

**– A1658 –**

CAND-ECF

| PACER Login: | qe0001:2618656:0 | Client Code: | 01980-00011 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 4:13-cv-05933-CW |
| Billable Pages: | 14 | Cost: | 1.40 |

**– A1659 –**

# CERTIFICATE OF SERVICE

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
Misc. No. _____
-----------------------------------------------------------------------------
IN RE GOOGLE INC., SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC., AND
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC
                              Petitioners.
-----------------------------------------------------------------------------

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by QUINN EMANUEL URQUHART & SULLIVAN, LLP, attorneys for Petitioners to print this document. I am an employee of Counsel Press.

On the **14th Day of August, 2014**, I served the within **Appendix in Support of Petition for Writ of Mandamus** upon:

Mike McKool *(via FedEx)*
mmckool@McKoolSmith.com
Douglas A. Cawley
dcawley@McKoolSmith.com
Ted Stevenson III
tstevenson@mckoolsmith.com
David Sochia
dsochia@McKoolSmith.com
Ryan Hargrave
rhargrave@McKoolSmith.com
Nicholas M. Mathews
nmathews@McKoolSmith.com
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Jennifer Leigh Truelove
jtruelove@McKoolSmith.com
Samuel Franklin Baxter
sbaxter@McKoolSmith.com
MCKOOL SMITH, P.C.
P.O. Box O
104 East Houston St., Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Joshua W. Budwin
jbudwin@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Attorneys for Rockstar Consortium US LP and MobileStar Techs. LLC

Harold H. Davis, Jr. *(via FedEx)*
harold.davis@klgates.com
Irene I Yang
irene.yang@klgates.com
K&L GATES LLP
Four Embarcadero, Suite 1200
San Francisco, California  94111
(415) 882-8200
(415) 882-8220 facsimile

Jeffrey M. Ratinoff
jeffrey.ratifnoff@klgates.com
K&L GATES LLP
630 Hansen Way
Palo Alto, California  94304
(650) 798-6700
(650) 798-6701 facsimile

Jennifer Klein Ayers
jennifer.ayers@klgates.com
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas  75201
(214) 939-5500
(214) 939-5849 facsimile

<u>Attorneys for Defendants ASUStek Computer, Inc.
and ASUS Computer International</u>

Richard D. Harris  *(via FedEx)*
harrisr@gtlaw.com
Jeffrey G. Mote
motej@gtlaw.com
Eric J. Maiers
maierse@gtlaw.com
James J. Lukas, Jr.
lukasj@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
(312) 456-8400
(312) 456-8435 facsimile

Mary-Olga Lovett
lovettm@gtlaw.com
GREENBERG TRAURIG LLP
1000 Louisana, Suite 1800
Houston, Texas  77002
(713) 374-3500
(713) 374-3501

<u>Attorneys for Defendants LG Electronics, Inc., LG Electronics U.S.A.,
Inc., and LG Electronics MobileComm USA Inc.</u>

Michael J. Bettinger *(via FedEx)*
mike.bettinger@klgates.com
Curt Holbreich
curt.holbreich@klgates.com
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California  94111
(415) 882-8200
(415) 882-8220 facsimile

<u>Attorneys for Defendants HTC Corporation and HTC America, Inc.</u>

Alexas D. Skucas (*via FedEx*)          Everett Upshaw
askucas@kslaw.com                        everettupshaw@everettupshaw.com
KING & SPALDING LLP                      David A. Bailey
1185 Avenue of the Americas              davidbailey@everettupshaw.com
New York, New York  10036                LAW OFFICE OF EVERETT
(212) 556-2100                           UPSHAW, PLLC
(212) 556-2222 facsimile                 811 South Central Expressway
                                         Suite 307
Steven T. Snyder                         Richardson, Texas 75080
ssnyder@kslaw.com                        (972) 372-4235
Anup M. Shah                             (214) 865-6086 facsimile
ashah@kslaw.com
KING & SPALDING LLP
100 North Tryon Street, Ste. 3900
Charlotte, North Carolina 28202
(704) 503-2600
(704) 503-2622 facsimile

<u>Attorneys for Defendants ZTE (USA) Inc. and ZTE Corp.</u>

W. Barton Rankin  *(via FedEx)*          D. James Pak
bart.rankin@bakermckenzie.com            d.james.pak@bakermckenzie.com
BAKER & MCKENZIE LLP                     BAKER & MCKENZIE LLP
2300 Trammel Crow Center                 Two Embarcadero Center, 11th Floor
2001 Ross Avenue, Suite 2300             San Francisco, California  94111
Dallas, Texas  75201                     (415) 576-3000
(214) 978-3000                           (415) 576-3099 facsimile
(214) 978-9099 facsimile

<u>Attorneys for Defendants Pantech Co., Ltd., and Pantech Wireless, Inc</u>

via E-mail and also via Overnight Delivery to the lead counsel indicated above.

Additionally, a copy will be sent to these U.S. District Judges:

> The Honorable Rodney Gilstrap
> U.S. District Court, District Judge
> Sam B. Hall, Jr. Federal Building
> and United States Courthouse
> 100 East Houston Street
> Marshall, Texas 75670
> Tel:  (903) 935-3868
> Fax:  (903) 935-2295

**via Express Mail,** by causing a true copy of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been hand-delivered to the Court on the same date as above.

August 14, 2014

John C. Kruesi, Jr.
Counsel Press