_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

### 2014-147

_____

## IN RE GOOGLE INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,

*Petitioners.*

_____

On Petition for a Writ of Mandamus to the United States District Court for the Eastern District of Texas in Case Nos. 2:13-cv-894 and 2:13-cv-900, Judge Rodney Gilstrap.

_____

## OPPOSITION TO
## PETITION FOR WRIT OF MANDAMUS

_____

Joel L. Thollander
Joshua W. Budwin
Leah Buratti
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
(512) 692-8700

Theodore Stevenson, III
*Principal Attorney*
David Sochia
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000

*Attorneys for Respondents Rockstar Consortium US LP and MobileStar Technologies, LLC*

Dated: August 22, 2014

## CERTIFICATE OF INTEREST

Counsel for Respondents Rockstar Consortium US LP and MobileStar Technologies, LLC certifies the following:

1.   The full name of every party represented by me is:

Rockstar Consortium US LP and MobileStar Technologies, LLC

2.   The names of the real parties in interest represented by me are:

Rockstar Consortium US LP and MobileStar Technologies, LLC

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

Rockstar Consortium US LP is the parent entity of MobileStar Technologies, LLC, and in turn Rockstar Consortium LLC is the general partner of Rockstar Consortium U.S. LP. The publicly-traded companies that directly or indirectly own 10% or more of Rockstar Consortium US LP are Apple Inc., BlackBerry Limited, Telefonaktiebolaget LM Ericsson (publ), and Microsoft Corporation.

4.   The names of all law firms and the partners or associates that appeared for the parties represented by me in the trial court or are expected to appear in this Court are:

Mike McKool, Jr.; Douglas A. Cawley; Theodore Stevenson, III; David Sochia; Ryan A. Hargrave
MCKOOL SMITH, P.C., Dallas, TX

Joel L. Thollander; Joshua W. Budwin; Leah Buratti
MCKOOL SMITH, P.C., Austin, TX

Samuel F. Baxter; Jennifer Leigh Truelove
MCKOOL SMITH, P.C., Marshall, TX

Dated:  August 22, 2014          /s/ Joel L. Thollander
                                 Joel L. Thollander

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................ ii

TABLE OF CONTENTS ................................................................. iii

TABLE OF AUTHORITIES ............................................................ v

I.      ISSUES PRESENTED ........................................................... 1

II.     INTRODUCTION ................................................................. 2

III.    STATEMENT OF FACTS ...................................................... 4

        A.    The Claims of the Patents-in-Suit Recite Hardware
              Limitations ................................................................. 4

        B.    The Accused Devices Use a Modified Version of
              Android Open Source, for Which Google Has Not
              Accepted Responsibility ............................................ 5

        C.    Rockstar Has Longstanding Ties to the EDTX .............. 7

        D.    The EDTX is Samsung's Home Forum. ...................... 9

        E.    Google Also Has Connections to the EDTX ................ 10

        F.    Rockstar Sues in the EDTX; Google Forum Shops to the
              NDCA ...................................................................... 11

IV.     STANDARD OF REVIEW .................................................... 12

V.      ARGUMENT:   REASONS WHY MANDAMUS SHOULD
        NOT ISSUE ...................................................................... 13

        A.    The District Court Committed No Error Regarding the
              First-to-File Rule—This Case, Not the NDCA Case, Was
              First Filed. ............................................................... 13

              1.    Rockstar sued Samsung in the EDTX in October;
                    Google forum shopped to the NDCA in December ... 14

              2.    Samsung is not a Google customer in the Texas
                    action—it is a manufacturer, not a reseller, of the

accused devices. ..................................................................16

3.    There is no threat to comity and judicial efficiency. ...............19

4.    The district court did not err in fully and fairly considering the proffered transfer arguments. ..........................21

B.    The District Court Properly Analyzed the Transfer-Related Public and Private Interest Factors. ......................................22

1.    The challenged private interest factors are either neutral or weigh against transfer. ...............................................23

2.    The challenged public interest factor is neutral. .......................26

3.    The district court committed no legal error with respect to Rockstar's Plano office. ...........................................27

C.    The District Court Did Not Err in Noting That Considerations of Judicial Efficiency Further Supported Its Transfer Analysis. .........................................................29

VI.    CONCLUSION..............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Elecs. for Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) ..........................................................14

*Eolas Tech. v. Adobe Sys.*, No. 6:09-CV-446,
   2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010)..............28

*In re Apple, Inc.*,
   743 F.3d 1377 (Fed. Cir. 2014) ..........................................................24

*In re EMC Corp.*,
   501 Fed. Appx. 973 (Fed. Cir. 2013)..................................................30

*In re Hoffman-La Roche*,
   587 F.3d 1333 (Fed. Cir. 2009) ..........................................................27

*In re Microsoft*,
   630 F.3d 1361 (Fed. Cir. 2011) ..........................................................28

*In re Nintendo Am.*, No. 14-132,
   2014 U.S. App. LEXIS 12707 (Fed Cir. June 25, 2014).............19, 21

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..........................................................13

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ..........................................................29

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................................12, 13

*In re Volkswagen of Am., Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009) ....................................................29, 30

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ..........................................................28

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) ....................................................................18, 23

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ..........................................................................17

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) .....................................................................passim

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008) ........................................................14, 22, 29, 30

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014) ............................................................................15

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011) ....................................................................16, 17

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988).............................................................................................20

## STATUTES

35 U.S.C. § 299.......................................................................................................29

## OTHER AUTHORITIES

Matt Hamblen, *Google's Nexus lineup may not sell well, but still challenges*,
  COMPUTERWORLD, http://www.computerworld.com/s/article/9244477/ ...........16

Dan Levine, *Apple, Google settle smartphone patent litigation*, REUTERS,
  http://www.reuters.com/article/2014/05/16/us-apple-google-settlement-
  idUSBREA4F0S020140516 .............................................................................25

## I.    ISSUES PRESENTED

1. Whether Samsung and Google have an indisputable right to stay this Texas-based case or transfer it to California pursuant to either the discretionary "first-filed" rule or its discretionary "customer-suit" exception when: a) this Texas case was first filed two months *before* the California case; b) Texas-based Samsung is the *manufacturer*, not a *reseller*, of the accused mobile devices, and substantially modifies the Android open source software before installing it on those devices; and c) the district court in California recognized that it could be "*particularly helpful*" if this case remained in Texas and proceeded to claim construction prior to the case in California. RA98 (emphasis added).

2. Whether Samsung and Google have an indisputable right to transfer this Texas-based case to California when the district court fully and fairly considered their motion to transfer and reasonably concluded that—among other points, with defendant Samsung based in the Eastern District of Texas, and defendant Google in the Northern District of California—each of the challenged private and public interest factors was either neutral or weighed against transfer.

3. Whether Samsung and Google have an indisputable right to transfer this Texas-based case to California when the district court's transfer analysis and conclusion was further buttressed by the fact that five additional related actions involving the same patents were already consolidated in the Texas forum.

## II.    INTRODUCTION

This is not a customer suit. Samsung, based in the Eastern District of Texas, is accused of manufacturing and selling *mobile devices* that infringe the patents-in-suit. Google does not make these devices, and Samsung does not buy them from Google. While the accused devices use a customized version of the Android open source software, Samsung modifies this software substantially before installing it on the devices. And because of these modifications, a single suit against Google cannot and will not resolve infringement by Samsung. Samsung has not agreed to be bound by the resolution of the infringement case against Google, and Google has not agreed to indemnify Samsung against infringement. Nor has Google stated that it is jointly and severally liable for infringement by Samsung.

This is so because the patents-in-suit involve hardware elements, manufactured by Samsung, with which Google has no involvement. One patent covers electromagnetic shielding of components, which has no connection to Android whatsoever. The claims of other patents require hardware elements such as touch screens for displaying data and receiving input, memory for storing/maintaining data, antennas, transmitters and receivers for sending and receiving data, as well as processors for performing various functions—all of which are sourced and manufactured by Samsung. While Google vaguely refers to an adjudication of the "Android platform," in reality there is no single "platform"

used by Samsung or other manufacturers for which Google is legally responsible or even has standing to seek a noninfringement adjudication.

While not a customer suit, this action was the one first filed—in October 2013. It covered infringing mobile devices made by Samsung, including the Nexus branded devices that Samsung manufactured for Google. This suit thus placed at issue both Samsung mobile devices and Google Nexus devices manufactured by Samsung. Two months after this first suit was filed, Google filed a declaratory judgment action in the Northern District of California seeking a declaration that its Nexus devices (at issue in Texas) and the so-called "Android platform" do not infringe. This suit was expressly filed "because" of the first filed Texas action. Google's responsive NDCA case is plainly the second-filed suit.

The Eastern District of Texas is the logical focal point for the parties in this case. Rockstar and MobileStar are U.S. entities with their sole place of business in the EDTX, having succeeded to the patents that were owned by Nortel—which had its U.S. headquarters in Richardson, Texas. Many of the employees of Rockstar and MobileStar are ex-Nortel employees, including several who previously worked in Nortel's Richardson office. Defendant Samsung is also based in the EDTX. Samsung and Google conspicuously underplay Samsung's involvement in this case, but it cannot be ignored—Samsung manufactures the accused devices and was the initial defendant, and Samsung has its U.S. headquarters and develops the

accused devices (including the Nexus devices) in the EDTX.

## III. STATEMENT OF FACTS

### A. The Claims of the Patents-in-Suit Recite Hardware Limitations.

In October 2013, Rockstar and MobileStar (collectively, "Rockstar") asserted seven patents against Samsung in the home district of each of these parties: the EDTX. A12-55; A783-84. Rockstar's infringement allegations include assertions against mobile devices manufactured and sold under the Samsung brand, as well as mobile devices manufactured by Samsung and rebranded for Google under the Google Nexus brand. RA118-24.

The claims of the patents-in-suit cover various aspects of a mobile device. That means that neither this case, nor any other case, will adjudicate whether the "Android platform" infringes. Indeed, the Android platform has not been accused of infringing any patent. Of the patents-in-suit, none read solely on functions or features found in Android software. A942-63. All require either hardware alone or a mix of hardware and software. And critically, Samsung (like all of the manufacturers in these related cases) *modifies the Android software* in Texas. As a result, none of the cases filed by Rockstar and MobileStar will adjudicate infringement by all the various accused devices because, at the very least, they are different implementations of Android with different combinations of hardware.

The '551 patent, for example, covers *only* hardware (shielding of

components), which has nothing whatsoever to do with Android. A942-63; A322. Each of the other six patents covers a specific combination of hardware (designed by Samsung and the other original equipment manufacturers) with software. The hardware limitations are non-trivial, requiring hardware such as antennas, transmitters and receivers for "sending," "receiving," touch screens for "displaying" data, and "receiving" user input, as well as memory for "storing" and maintaining data—functionality that occurs solely within hardware. A696. Certain claim elements may be met by the custom Android operating system that has been modified and provided by Samsung, but these software elements are combined with the particularly claimed hardware elements or functionality provided by such hardware elements that are specified and sold by Samsung, not by Google.

## B. The Accused Devices Use a Modified Version of Android Open Source, for Which Google Has Not Accepted Responsibility.

Android is an open-source software project managed by Google, but contributed to by many other entities and individuals, including Samsung, other device manufacturers, and even members of the public. A9; A673-76; A936-37; A971-76; A987-91. Mobile device manufacturers modify the Android open source, which Google refers to as the "Android platform," to suit their needs and to include features and functions not found in the open source code. A9; A936-37; A971-76; A987-91. Like the manufacturers in the related cases, Samsung does not use Android open source in unmodified form. A9; A673-76; A936-37; A971-76;

A987-91. Rockstar's infringement contentions reveal considerable differences in the various custom implementations of the "Android platform." A977-83. Samsung's modifications are so extensive that it employs a team of Android engineers to customize the open source code. A984-86. Indeed, the extent of these modifications has been a source of contention with Google. A987-91.

Google does not charge companies to implement the Android operating system on their devices. Anyone may download the software for free, modify it extensively, and use it as deemed appropriate. Companies that download and use Android are not Google customers—they do not pay Google anything and they may modify and use the software as they deem fit. Given the wide-open nature of the Android source code, it is not surprising that Google has not accepted legal responsibility for patent infringement by Samsung's devices, or by the devices accused in the related cases. Nor has Google agreed to indemnify those who use or sell devices incorporating the Android operating system. RA75; RA85.

This case will not adjudicate the hypothetical question of whether Android open source infringes. Samsung, like the other mobile device manufacturers, uses a modified version of Android, and none of the manufacturers have agreed to be bound by any infringement findings against Google.[1] And the Android software,

---

[1] At a hearing in the NDCA case, the court asked Google whether the accused manufacturers would agree to be bound by the outcome of the NDCA suit. RA85-86. Google has failed to obtain consent from a single mobile device defendant.

6

standing alone, is not a product accused of infringement. The accused products are mobile devices with numerous hardware elements combined with software.[2]

### C.    Rockstar Has Longstanding Ties to the EDTX.

Rockstar and MobileStar are the assignees of patents that resulted from extensive research and development performed by Nortel Networks. A693. Although its worldwide headquarters was located in Canada, for twenty years the headquarters for Nortel's U.S. entity and its largest U.S. facility (with approximately 10,000 employees) was in Richardson, Texas. A729. Nortel conducted patent prosecution and licensing activities from Richardson. A720.

After confronting bankruptcy in 2009, in 2011 Nortel held an auction for its patents. A720. Google ultimately bid $4.4 billion for the Nortel portfolio, but lost the auction to Rockstar Bidco LP, which bid $4.5 billion. A720. Rockstar Bidco LP—an entity distinct from Rockstar—subsequently assigned a minority of the Nortel patents directly to some of its limited partners, and assigned the remaining Nortel patents (including the patents-in-suit) to Rockstar. RA41.

Rockstar is a Delaware limited partnership. Its limited partners are: Apple, BlackBerry, Ericsson, Microsoft, and Sony, each with a minority ownership percentage. A729. None of the above companies has a majority or controlling

---

[2] Google thus does not have standing to seek an adjudication of Android open source because there is no evidence that anyone, even Google, uses the Android open source in a mobile device without substantial modification.

interest in Rockstar. Two of the limited partners have strong Texas connections: Ericsson's U.S. headquarters are located within the EDTX, and BlackBerry's headquarters are in Irving. The other limited partners are scattered, with Microsoft in Washington, Apple in California, and Sony in New Jersey. A730; RA42.

After receiving the assignments from Rockstar Bidco LP, Rockstar created subsidiary entities for the purpose of licensing its intellectual property in different markets. A1288; RA71. Rockstar then assigned certain patents corresponding to different market segments and technology areas to those newly-created subsidiaries. A1288; RA71. For example, MobileStar focuses on licensing patents related to mobile device technology, NetStar Technologies focuses on internet search technology, Bockstar Technologies focuses on technology for network components, and Constellation Technologies focuses on network technologies for telecommunications service providers to deliver cable, telecommunications, and other multimedia services. Rockstar owns two of the patents-in-suit. A729; RA42. MobileStar owns five of the patents-in-suit and is the exclusive licensee (from Rockstar) of the other two patents, within its field of use. A729.

Rockstar is based in the EDTX. Rockstar initially leased Nortel's Richardson office space—where many of Nortel's patent files were located, including files relevant to the patents-in-suit. A731-33. In August 2012, after Nortel sold its Richardson campus, Rockstar was forced to move and leased its

current offices in nearby Plano, within the EDTX. A731. Rockstar and MobileStar still maintain their principal place of business in Plano. A729-31. The Plano office is Rockstar's only U.S. office, although some employees also work out of their homes. A731. The office contains 8,125 square feet, with 10 assigned offices, 2 guest offices, 4 conference rooms, 7 work areas, and storage space. A731.

When Rockstar Bidco LP acquired the patents-in-suit from Nortel, the Rockstar entities also acquired former Nortel employees responsible for licensing and prosecuting the Nortel patents. A730-31. Rockstar now has 15 full-time employees in the U.S., including five full-time employees in Plano and others who spend significant time there. A731. No Rockstar or MobileStar executive or employee lives or works in California. A732. Eight of the U.S.-based employees likely have relevant information; three of them work full-time in the Plano office, one lives in Colorado, and the rest are on the east coast. A732-33. Additionally, two Rockstar board members are in the EDTX or nearby. Kasim Alfalahi (also Chief IP officer at Ericsson), works in the EDTX. A733. Randy Mishler (also Senior Director of IP Licensing at BlackBerry), works in nearby Irving. A733.

### D.    The EDTX is Samsung's Home Forum.

Samsung Telecommunications America, LLC has its headquarters in Richardson—within the EDTX. A783-84. From the EDTX, Samsung "researches, develops and markets a variety of personal and business products throughout North

America including handheld wireless phones, wireless communications infrastructure systems and enterprise communications systems." A785-86. The products developed in the EDTX by Samsung include the mobile devices at issue in this case. Samsung also has an office in Dallas, where its "Dallas Technology Labs (DTL) leads Samsung's standardization initiatives in the IEEE, ITU, 3GPP, WiMAX and other major forums." A787-88. These laboratories employ over 150 engineers, including Samsung's Android software engineers. A787-88. The DTL is "highly regarded" by Samsung "as the thought leader and innovation engine for its wireless business units." A787-88.

Because the EDTX is Samsung's home forum, Samsung is no stranger to litigating there. When Samsung sues on its patents, it frequently selects the EDTX as its preferred venue. A789-94. Samsung has even opposed previous motions to transfer from the EDTX to the NDCA on the grounds that the EDTX was a more convenient forum. A897-901. EDTX and NDCA courts have each recognized that the EDTX is a convenient forum for litigation involving Samsung. A902-18.

### E.    Google Also Has Connections to the EDTX.

In 2012, Google opened an office in Frisco (in the EDTX). A670-71. Google later relocated that office to Dallas (in the NDTX). A761-74. Today Google maintains at least two Texas offices, in Dallas (approximately 20 miles from the EDTX) and in Austin. A761-76. Google's Austin office focuses on developer

10

relations and technical solutions, among other issues. A777-79. Google's Dallas office contains departments for design and engineering, as well as sales. A780-82. Publicly available information suggests that Google's Texas employees work on the development of the Android platforms. Specifically, Jeff Hamilton, a software engineer on Google's Android team who specializes in "[o]perating systems development for mobile devices," lives in Austin, Texas. A1070-72.

**F.    Rockstar Sues in the EDTX; Google Forum Shops to the NDCA.**

On October 31, 2013, Rockstar and MobileStar filed patent infringement lawsuits in the EDTX against Samsung, ASUS, HTC, Huawei, LG, Pantech, and ZTE—all mobile device manufacturers. A919-32. The EDTX was a logical forum because Rockstar, MobileStar, and Samsung are each headquartered there. Samsung has a huge mobile-device presence in the EDTX, and ZTE is also headquartered in Texas, only a few miles from the EDTX border. The other defendants are scattered in different locations around the country: California, Washington, New Jersey, and Georgia. But given that the EDTX had the strongest ties to Rockstar, as well as to the defendants as a whole, the EDTX was a logical central venue for all the suits. On December 23, rather than intervene in the EDTX case, Google filed its action for declaratory judgment in the NDCA. A933-35. On December 31, Rockstar and MobileStar added Google as a defendant to the Samsung case in the EDTX. A69-135. Neither Google nor EDTX-based Samsung

moved to sever their joinder in a single action in the EDTX.

On January 23, 2014, Rockstar and MobileStar filed a motion to dismiss the NDCA action. They maintained that the NDCA lacked jurisdiction over MobileStar and argued for dismissal under the first-to-file rule. A298-328; RA2-4. In an order issued April 17, the NDCA court denied the motion to dismiss. A300-28. Rockstar then filed a motion to transfer the NDCA action to the EDTX. RA29-63. There was a hearing on June 26, during which the NDCA court expressed the view that this suit should precede the NDCA case so the court "would have the benefit of looking at what the Texas judge had done with claim construction." RA93. But in an order issued on August 20, the NDCA court reserved ruling on the motion to transfer pending the outcome of this mandamus proceeding, noting that if the EDTX court's discretionary ruling stands, the better course would be to send the NDCA case to Texas for consolidation and a single trial. RA127-28.

## IV.  STANDARD OF REVIEW

Three requirements must be met before a writ of mandamus may issue:

(1) the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires …; (2) the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable; and (3) even if the first two prerequisites have been met, the issuing court … must be satisfied that the writ is appropriate under the circumstances.

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (internal quotes omitted). To show a "clear and indisputable" right to the writ, the petitioner must

12

prove the existence of "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Id.* at 309. Thus, as this Court has explained, "[i]f this case were before the court as an ordinary appeal, we would review the district court's denial of transfer under the 'abuse of discretion' standard …. However, because [petitioner] is requesting extraordinary relief in the form of a petition for a writ of mandamus, it must meet an even higher burden of demonstrating that the denial was a 'clear' abuse of discretion such that refusing transfer produced a 'patently erroneous result.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *see Volkswagen*, 545 F.3d at 312 ("[I]n no case will we replace a district court's exercise of discretion with our own.").

## V.    ARGUMENT:  REASONS WHY MANDAMUS SHOULD NOT ISSUE

### A.    The District Court Committed No Error Regarding the First-to-File Rule—This Case, Not the NDCA Case, Was First Filed.

Samsung and Google open with the arguments that the district court "clearly erred by declining to defer to the first-filed action" in California and by "evaluat[ing] the convenience factors without first finding that its case was first filed." Pet.15. These arguments are meritless: the California action was filed *after* this one (and concerned products accused in the EDTX), and the district court's decision to base its ultimate conclusion on considerations of litigant convenience and judicial economy, rather than on any rigid and mechanical application of the first-to-file rule, is well supported by the controlling case law.

13

The first-to-file rule is a "doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). The date by which the first-filed action is determined "derives from the filing of the complaint." *Id.* This general rule is "not rigidly or mechanically applied"—district courts are provided with "an ample degree of discretion" to determine that considerations of litigant convenience or judicial economy override the rule in a given circumstance. *Id.*; *see also Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005). Factors that justifiably override the rule include "the convenience and availability of witnesses" or "the possibility of consolidation with related litigation." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).

### 1. Rockstar sued Samsung in the EDTX in October; Google forum shopped to the NDCA in December.

Samsung and Google proceed under the misrepresentation that the suit filed by Google in California is "the first-filed action regarding the same patents" at issue in this case. Pet.15. That is simply not true. The NDCA action was filed two months *after*, and expressly in response to, this first-filed action regarding the same patents (and some of the same products) in Texas. A12; A56-57.

Rockstar filed this suit against Samsung in the EDTX—Samsung's home

forum—in October of 2013. A12; A783-84; A897-901. Rockstar alleged that mobile devices manufactured and sold by Samsung (including the Nexus 10) infringe seven of Rockstar's patents. A12-54; RA118-24. Of these patents, one covers only hardware, and the others cover some combination of hardware and software functionality. A942-63; A696. Notwithstanding the allegations directed to devices manufactured by Samsung, Google took note that the accused devices each run a modified and customized version of the Android operating system—and decided to respond. But rather than simply intervening in this EDTX action, *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014), Google shopped for its own forum and filed suit against Rockstar in the NDCA, A56. Google's California suit sought a declaratory judgment that its "Nexus 5, Nexus 7, and Nexus 10" devices, as well as its "Android platform" do not infringe the same seven patents at issue in the Texas suit. A61-68. That responsive action—Google expressly "request[ed] relief because" Samsung had been sued, A57—was filed in December of 2013, A56, two months after this suit was filed in Texas, A12.

*Merial* holds that the relevant dates, for purposes of the first-to-file rule, are "derive[d] from the filing of the complaint." 681 F.3d at 1299. Review of those dates leaves no doubt that the December-initiated California suit cannot possibly be the first-filed action in relation to the October-initiated suit that Samsung and Google now seek to stay or transfer from Texas to California. A12; A56.

Significantly, the first-filed EDTX case accuses Samsung branded devices as well as Nexus branded devices manufactured by Samsung for Google. But the Nexus devices sold by Google and *manufactured* by Samsung have an extremely small market share. RA118-24.[3] Focusing on the subordinate claims against Google, rather than the primary claims against Samsung, would let the tail wag the dog. Adding Google to the principal suit against Samsung did not somehow transform that initial suit—the suit that Samsung and Google now seek to stay or transfer—into a second-filed action. A12; 56-57. To the extent that the first-to-file rule is relevant, it points to this litigation as the first-filed action.

### 2. Samsung is not a Google customer in the Texas action—it is a manufacturer, not a reseller, of the accused devices.

Samsung and Google also suggest that this action is "subject to the customer-suit doctrine." Pet.17. Again, that is not true.

The customer-suit doctrine constitutes an additional exception to the first-to-file rule, and provides that a second-filed action may take precedence "where the first suit is filed against a customer who is *simply a reseller* of the accused goods, while the second suit is a declaratory judgment action brought by the manufacturer of the accused goods." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (citation omitted and emphasis added). The

---

[3] Matt Hamblen, *Google's Nexus lineup may not sell well, but still challenges*, COMPUTERWORLD, http://www.computerworld.com/s/article/9244477/.

doctrine is triggered when "the manufacturer is the true defendant in the customer suit," *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990), and "the second action would resolve all charges against the customer[]," *Spread Spectrum*, 657 F.3d at 1358. The doctrine is not triggered when it is unlikely to "resolve the 'major issues' concerning the claims against the customer." *Id.*

Whether or not this discretionary exception to a discretionary rule could ever be an appropriate subject for mandamus, *see id.* at 1359, it certainly provides no basis for mandamus in this case, as none of the doctrine's requirements are met.

First, Samsung is not "simply a reseller" of its accused mobile devices: it manufactures those devices. A16. Google manufactures none of the accused hardware, which is an element of the patents-in-suit. *Supra* Part III.A. With respect to the software, Samsung has created its own, unique version of the Android operating system, making substantial modifications to the code before installing it on its mobile devices. A936-41; A971-76; A1114-19; A673-76; A9. Samsung is thus not "simply a reseller" of the Android software. Its modifications to the Android code are material to the claims of infringement in this case. A9; A977-83; A984-86; A987-91. And even the modified code, standing alone, is not accused of infringement—it meets certain elements but only in combination with hardware.

Second, Google is not the "true defendant" with respect to the claims against Samsung. Google has never accepted legal responsibility for patent infringement

17

by Android. The petition is deafeningly silent on this point. Google never asserts that it has agreed to indemnify Samsung for the accused infringement. Google never asserts that it is jointly and severally liable for infringement by Samsung's accused devices, with their modified version of Android. And Samsung has never agreed to be bound by an infringement judgment that might be rendered in the NDCA case. *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1082 (Fed. Cir. 1989).

Third, the second-filed action in California will not "resolve all charges" nor even the "major issues" concerning Rockstar's infringement claims against Samsung. The "Android platform" is not accused of infringement and will not be adjudicated in the abstract by this (or any other case) because the patents all cover hardware, not just software, and because there is no evidence that any company uses the Android open source without modification. The district court considered this point carefully and found that, while "each of the accused products uses some version of Android," Samsung "modifies and customizes the Android system to its own particular purposes." A9. The court thus reasonably concluded that it was unlikely that "resolving infringement issues as to Android *proper* will resolve issues relating to [Samsung's] various *implementations* of the Android system." A9. The court further noted that the Texas action presents "issues relating to [Samsung's] devices and hardware, which the California litigation does not." A9. This conclusion should not be controversial: Google has officially taken the

18

position that whether or not the results in the California action will bind Samsung is *not* an issue before the Northern District of California.[4] A1314-27.

The facts here are nothing like those in *In re Nintendo Am.*, No. 14-132, 2014 U.S. App. LEXIS 12707 (Fed Cir. June 25, 2014), where "Nintendo [was] the true defendant," *id.* at *5, and "Nintendo's liability [was] predicate to recovery from any of the defendants," *id.* at *7. This is not a customer suit. And as the district court reasonably concluded, "a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved." A10.

### 3.    There is no threat to comity and judicial efficiency.

Samsung and Google make much of purported conflicts between the decisions of the district courts in California and Texas, Pet.15, but in fact there is plainly no threat to the principles of comity and judicial efficiency that undergird the first-to-file rule and its numerous exceptions, *see Merial*, 681 F.3d at 1299.

As an initial matter, and notwithstanding the repeated suggestions of Samsung and Google to the contrary, Pet.15-17, the NDCA court never held that

---

[4] Samsung and Google suggest that the district court's finding that the many related cases may "present common issues of claim construction and damages" is "at war" with its finding that the California litigation will not "dispose of key issues in this case." Pet.18. That is obviously not true. Related cases regularly present common issues justifying pre-trial consolidation without overlapping to the extent that liability in one case disposes of liability issues in the others.

Google's declaratory judgment action was first-filed with respect to this action. Instead, it initially reasoned that, even if this Texas action were the first-filed suit, it could apply the customer-suit exception to keep the second-filed declaratory judgment action in California. A324. But the NDCA court's analysis arose in a procedural context different from this case, and was subject to the standards applicable for a motion to dismiss—that is, based on the allegations pled in Google's complaint and resolving any "conflicts in the allegations and evidence … in [Google's] favor." A305. The Texas district court, in contrast, had the benefit of proceeding on a more robust record and of weighing the evidence before it. A3-4; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

More importantly, the NDCA court never suggested that its initial decision to keep Google's California suit should control the EDTX court's decision to keep or transfer this case. To the contrary, the NDCA court noted that the Texas actions "might not and need not be transferred here." A326. The court went further at a subsequent case management conference and hearing on Rockstar's motion to transfer under § 1404, noting that it could be "particularly helpful" to push back the dates for claim construction because "that might mean that if the other cases stay in Texas, that the claim construction there would be done before we get to it here, and then I would have the benefit of looking at what the Texas judge had done with claim construction." RA93; RA98. And in an order filed just two days

ago, the NDCA court indicated that it is now disposed, if this action proceeds in the EDTX, to transfer Google's declaratory judgment action there. RA127-28.

The NDCA court fully expected not only that the EDTX court would make its own informed decision regarding stay and transfer, but that the EDTX court might reasonably decide to proceed with this action. In light of those expectations, the court structured the California suit so as to take advantage of the work done in the EDTX.[5] And upon hearing that the Texas court had decided that the related cases should proceed in the EDTX, the NDCA court indicated that it is disposed to transfer the NDCA case to that forum. This is federal comity and judicial efficiency in action, and provides no grounds for mandamus.

### 4. The district court did not err in fully and fairly considering the proffered transfer arguments.

Samsung and Google's argument that the district court "clearly erred" by "evaluat[ing] the convenience factors without first finding that its case was first filed," Pet.15, is also meritless. The first-to-file "rule is not rigidly or mechanically applied," *Merial*, 681 F.3d at 1299, and this discretionary rule, its "customer-suit exception, … and § 1404(a) are all designed to facilitate the just, convenient, efficient, and less expensive determination" of cases, *Nintendo*, 2014 U.S. App.

---

[5] While Google raises claims regarding certain of its Nexus mobile devices and the "Android platform" in California, none of Samsung's accused devices (with their customized versions of Android) are at issue there.

LEXIS 12707, at *5. This Court has thus held that district courts addressing first-to-file arguments "must consider the real underlying dispute: the convenience and suitability of competing forums," and thus should "weigh the factors used in a transfer analysis as for any other transfer motion." *Micron*, 518 F.3d at 905.

This black-letter law is entirely consistent with, and fully supports, the district court's observation that it "need not resolve the formalistic question of whether Rockstar's October complaint makes this suit the first-filed case" because—as the court concluded after a full and fair analysis—the "considerations of judicial economy that underlie the general first-filed rule, in this case, weigh against a transfer or stay." A8. This Court's holding in *Merial* is fully applicable: "even if the [California] action could be considered the first suit filed, the district court was well within its considerable discretion in concluding that principles of comity would not support a stay because the precise issues at stake differed between the proceedings, and a key party [Samsung] was absent from the [California] action." 681 F.3d at 1299.

## B.    The District Court Properly Analyzed the Transfer-Related Public and Private Interest Factors.

Samsung and Google suggest that the district court also "committed clear error in evaluating the convenience factors and denying transfer." Pet.24. Their analysis, however, is infected with two fatal flaws. First, Samsung and Google repeatedly ignore *Samsung's contacts* with the EDTX. Pet.22-30. Samsung is the

principal defendant in this action, the manufacturer of the accused devices (including the Nexus devices it manufactures for Google), and a party with deep ties to the EDTX. An analysis that ignores these critical contacts is virtually worthless. Second, Samsung and Google repeatedly ignore that, as the court found, they principally supported their motion with vague generalizations, rather than with specific evidence. A5-6. It could never be a clear abuse of discretion to find that a party offering vague generalizations has failed to carry its burden to make a "clearly more convenient" showing. In any event, the district court properly analyzed the transfer-related public and private interest factors.

### 1. The challenged private interest factors are either neutral or weigh against transfer.

*Cost of Attendance of Willing Witnesses.* The district court found that Google employees in California would face substantial costs traveling to Texas, Samsung and Rockstar employees in Texas would face substantial costs traveling to California, and Samsung employees in Korea would face substantial costs traveling to either venue. A7. "Transferring this case would" thus, "at best, merely redistribute the inconvenience of travel among the parties." A7. That finding was well supported, A984-86; A1073-75; A727-34; A715-17; A718-20, and fully justifies the court's conclusion that this factor "weighs slightly against transfer," A8. *Kahn*, 889 F.2d at 1083.

Samsung and Google complain that the court "noted" Rockstar's specific

identification of "several potential witnesses who work at its Plano office," but did not "note" Google's reference to "*several hundred* Android engineers who work in the San Francisco Bay Area." Pet.24-25. The vague reference to hundreds of engineers, however, did not identify *any* potential witnesses, and thus did little to advance their position. *In re Apple, Inc.*, 743 F.3d 1377, 1378-79 (Fed. Cir. 2014). Regardless, the court considered not only Google's California-based witnesses, but *also* Samsung's Texas-based witnesses—who will have knowledge of the devices that Samsung manufactures for itself as well as those it manufactures for Google.

*Compulsory Process.* The district court again pointed out that, while Google failed to "identify any former employees who are expected to testify at trial," Rockstar "specifically identifie[d] two prosecuting attorneys, two former Nortel employees, and one former Samsung employee in or near the Eastern District of Texas whom it suggests might be called to testify." A6. After weighing the submitted evidence, the court noted that "[o]ne inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas." A7. Again, that finding was well supported, A748-58; A727-34; A1024-29; A1043-49, and fully justifies the court's conclusion that "this factor is neutral," A7.

Samsung and Google argue that, in addition to the one named inventor in California, the court should have given weight to the possibility that some

unidentified employee of Apple (as a minority equity owner of Rockstar) might be called to testify. Pet.27. It is true that the California district court, operating under the markedly different standards governing motions to dismiss, credited Google's Apple-related hypothesizing. A318. But having reviewed the evidence here (which demonstrated that Rockstar's equity owners do not direct or control Rockstar's licensing efforts, A727-34), the district court "view[ed] Google's asserted interest in Apple's testimony with some skepticism,"[6] and further noted "that other Rockstar parents—notably Ericsson and BlackBerry—maintain U.S. headquarters in Texas." A6; A1024-29. Even if Google's conspiracy theory had merit (and if it were accompanied with the specific identification of a potential Apple witness), that would not impact the neutrality of this factor.

*Ease of Access to Sources of Proof.* The district court noted that while Google averred that its documents were "accessible from Google's headquarters in the Northern District," Google was "pointedly silent on the physical location where said documents are stored." A5. It further noted that Samsung maintains its U.S. headquarters in the EDTX as well as a laboratory in Dallas that is "significantly involved in the development of the accused products," and that Rockstar's

---

[6] It is worth noting that, after the NDCA court's ruling on the motion to dismiss, Apple and Google settled their high-profile dispute. Dan Levine, *Apple, Google settle smartphone patent litigation*, REUTERS, http://www.reuters.com/article /2014/05/16/us-apple-google-settlement-idUSBREA4F0S020140516.

"documentary evidence relating to the patents-in-suit is stored at its Plano, TX headquarters—also within the Eastern District." A5. In short, the "evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. In contrast, it is unclear whether and how much relevant information actually exists within the Northern District of California." A5; A727-34; A718-20. The court thus found that this factor weighed against transfer, but noted that it was "not dominant in its ultimate decision." A5.

Samsung and Google argue that "typically," the "defendant has the majority of relevant documents," and quibble with the district court's interpretation of Google's declaration. Pet.28-29. Not once do they challenge the finding that *Samsung's documents* are located in the EDTX. A5. As Samsung is the initial and primary defendant in this case—the defendant the manufactures the accused devices both for itself and for Google—that fact alone dooms their analysis.

### 2.    The challenged public interest factor is neutral.

*Local Interest.* The district court reasoned that "the products here accused are so ubiquitous throughout the nation that no single community can establish an exceptional link that rightly makes any venue preferable to any other," and so reasonably found the local-interest factor neutral. A10.

Samsung and Google argue that this finding contravenes this Court's observation that local interest can arise when a district is home to a party because

the suit may call "into question the reputation of … individuals that work in the community." *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); Pet.25-26. Samsung and Google suggest that the claims against Google might call into question the reputation of Google's employees in the NDCA. Pet.26. But they ignore that, by the same logic, the claims against Samsung would even more certainly call into question the reputation of Samsung's employees in the EDTX— where the devices actually accused of infringing are "research[ed], develop[ed], and market[ed]." A785-86. To the extent that this proposed local-interest analysis has merit, it thus suggests that this factor weighs *against* transfer. A10.

But the cite to *Hoffman-La Roche* is instructive, because in that case, as in so many where this Court has granted mandamus, it was "undisputed that th[e] case has no relevant factual connection to the Eastern District of Texas." 587 F.3d at 1338. Here it is undisputed that the case has deep factual connections to the EDTX, including the dispositive fact that the first-sued manufacturer of the accused devices (including the Nexus 10) makes its home there.

### 3.    The district court committed no legal error with respect to Rockstar's Plano office.

Samsung and Google also suggest that the district court's analysis "relied heavily on Rockstar's satellite office in Plano, Texas." Pet.22-23. The above analysis disproves this suggestion. Even discounting Rockstar's Texas presence, Samsung's Texas presence and Google's failure to meet its burden with specific

evidence doom the motion to transfer. In any event, the Plano office is not recent, ephemeral, or an artifact of litigation. Nor is it a "satellite." It is Rockstar's fully operational (and only) U.S. office with full-time employees doing patent prosecution, licensing, and litigation support. A727-34. For over a decade, Nortel prosecuted patents and ran programs to monetize patents (including the patents-in-suit) less than a mile from the EDTX border. A727-34. Today, Rockstar employs five full-time employees in the Plano office, including three patent attorneys and an office administrator. A727-34. The patent-related activities conducted in the Plano office are within Rockstar's normal course of business, and Rockstar holds its board meetings and annual strategy sessions at the Plano office. A727-34.

In short, the Plano office is a real office, and nothing like those at issue in *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010), and *In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011). The district court reasonably concluded that Samsung and Google had failed to prove the longstanding connection between Nortel, Rockstar, and the EDTX was nothing but an artifact designed "to game the Court's transfer analysis." A5; *Eolas Tech. v. Adobe Sys.*, No. 6:09-CV-446, 2010 U.S. Dist. LEXIS 104125, at *20-22 (E.D. Tex. Sept. 28, 2010), *aff'd sub nom. In re Google*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011).[7]

---

[7] Samsung and Google point to the NDCA court's assumption, based on Google's allegations, that Rockstar is actually headquartered in Canada. Pet.24. But the evidence and sworn testimony before the EDTX established otherwise. A727-34.

### C.    The District Court Did Not Err in Noting That Considerations of Judicial Efficiency Further Supported Its Transfer Analysis.

In addition to the private and public interest factors discussed above, the district court also considered the impact of transfer on judicial economy: "there are six Rockstar litigations currently pending in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes except venue." A8. Because these cases will present "common issues of claim construction and damages, and (most likely) validity," the court concluded that judicial efficiency also counseled against transfer. A8-9. Such a conclusion is fully supported by the case law. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010); *see also Micron*, 518 F.3d at 904-05 (approving consideration of "the possibility of consolidation with related litigation").

Samsung and Google nevertheless argue, as their second issue presented, that this analysis constituted clear error because considering the judicial efficiencies promised by the possibility of consolidation for pre-trial purposes allegedly contravenes the new joinder provision of the America Invents Act ("AIA"). Pet.20-21; 35 U.S.C. § 299. As an initial matter, Samsung and Google never presented this AIA-related issue to the district court. It is thus not preserved and cannot form the basis for mandamus. The issue is also ultimately irrelevant because the district court's transfer analysis did not turn on considerations of

29

judicial economy—*none* of the factors weighs in favor of transfer.

The argument further fails on the merits. The new AIA provision applies only to joinder "in one action" or "consolidat[ion] for trial." *Id.* § 299. It does not prohibit consolidation of separate but related matters for discovery and pre-trial purposes, and most certainly does not prohibit considerations of judicial efficiency in a transfer analysis under §1404. On the other hand, it is black-letter law that judicial economy—including the economies associated with consolidating related cases for pre-trial purposes—can and should be considered in a transfer analysis. *Volkswagen*, 566 F.3d at 1351; *Micron*, 518 F.3d at 904-05. Samsung and Google suggest that this Court's unpublished opinion in *In re EMC Corp.* suggests otherwise, Pet.22, but that opinion expressly provides that "the copendency of cases involving the same patent [is a] permissible consideration[] in ruling on a motion to transfer venue." 501 Fed. Appx. 973, 976 (Fed. Cir. 2013). The district court committed no error in following the black-letter law of this Court.

## VI.    CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny the petition for mandamus.

30

Dated:  August 22, 2014                Respectfully submitted,


/s/ Theodore Stevenson, III
Theodore Stevenson, III
  *Principal Attorney*
David Sochia
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000

Joel L. Thollander
Joshua W. Budwin
Leah Buratti
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX  78701
(512) 692-8700

*Attorneys for Respondents Rockstar*
*Consortium US LP and MobileStar*
*Technologies, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing OPPOSITION TO PETITION FOR WRIT OF MANDAMUS was served on August 22, 2014, by operation of the Court's CM/ECF system per FED. R. APP. P. 25.

Date: August 22, 2014

/s/ Joel L. Thollander
Joel L. Thollander