_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

## 2014-147

_____

IN RE GOOGLE INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,

*Petitioners.*

_____

On Petition for a Writ of Mandamus to the United States District Court for the Eastern District of Texas in Case Nos. 2:13-cv-894 and 2:13-cv-900, Judge Rodney Gilstrap.

_____

## APPENDIX IN SUPPORT OF OPPOSITION TO
## PETITION FOR WRIT OF MANDAMUS
## VOLUME I OF I, PAGES RA1 – RA128

_____

Joel L. Thollander                       Theodore Stevenson, III
Joshua W. Budwin                          *Principal Attorney*
Leah Buratti                             David Sochia
MCKOOL SMITH, P.C.                        MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700            300 Crescent Court, Suite 1500
Austin, TX 78701                         Dallas, TX 75201
(512) 692-8700                           (214) 978-4000


*Attorneys for Respondents Rockstar Consortium US LP and MobileStar Technologies, LLC*

Dated:  August 22, 2014

## TABLE OF CONTENTS

| Date Filed | Docket No. | Description | Page No. |
|---|---|---|---|
| 04/22/2014 | 72 | Order Granting Joint Motion for Extension of Time to File a Proposed Docket Control Order, Discovery Order and Notice of Mediator | RA1 |
| 04/23/2014 | 73 | Rockstar's Response to Google's Notice of Order [Dkt. 71] | RA2 |
| 05/12/2014 | 104 | Plaintiffs' Rockstar Consortium US LP's and MobileStar Technologies LLC's Notice of Filings | RA5 |
| 05/12/2014 | 104-1 | Exhibit A | RA8 |
| 05/12/2014 | 104-2 | Exhibit B | RA29 |
| 04/25/2014 | 28-43 | Declaration of Donald Powers in Support of Plaintiffs Rockstar Consortium US LP's and MobileStar Technologies LLC's Response in Opposition to Defendants' Motion to Transfer (*Rockstar, et al v. Pantech Co., et al*, Case No. 2:13-cv-00899-JRG E.D.Tex.) | RA64 |
| 06/26/2014 | 98 | Hearing Transcript on Motion to Transfer Venue (*Google Inc. v. Rockstar, et al*, No. 13-5933 N.D.Cal.) | RA72 |
| 03/24/2014 | -- | Correspondence from J. Budwin to Defendants regarding PR 3-1 and 3-2 Infringement Contentions and Attachment A | RA101 |
| 08/20/2014 | 104 | Order Deferring Ruling on Order to Transfer (*Google Inc. v. Rockstar, et al*, No. 13-5933 N.D.Cal.) | RA127 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|   |   |   |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § § | Civil Action No. 13-cv-0894-JRG |
| Plaintiffs, | § § | **LEAD CASE** |
| v. | § § § | |
| ASUSTEK COMPUTER, INC. AND ASUS COMPUTER INTERNATIONAL, INC. | § § § § | |
| Defendants. | § § § § | |

## ORDER GRANTING JOINT MOTION FOR EXTENSION OF TIME TO FILE A PROPOSED DOCKET CONTROL ORDER, DISCOVERY ORDER, AND NOTICE OF MEDIATOR

Before the Court is Plaintiffs' and Defendants' Joint Motion for Extension of Time to File a Proposed Docket Control Order, Discovery Order, and Notice of Mediator (Dkt. No. 69). Good cause appearing, the Court hereby GRANTS the Joint Motion.  It is therefore ORDERED that the time for the parties to submit a proposed docket control order, a proposed discovery order, and notice of mediator to the Court shall be extended through and including April 25, 2014.

So ORDERED and SIGNED this 21st day of April, 2014.

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC, | |
| **Plaintiffs,** | Civil Action No.  2:13-cv-00894-JRG |
| **vs.** | |
| ASUSTEK COMPUTER, INC. AND ASUS COMPUTER INTERNATIONAL, INC., | JURY TRIAL |
| **Defendants.** | |

## RESPONSE TO GOOGLE'S NOTICE OF ORDER [DKT. 71]

Plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Rockstar") submit this response to Defendant Google Inc.'s Notice of Order Denying Motion to Dismiss or, in the Alternative, to Transfer (Dkt. 71) to inform the Court that Rockstar intends to promptly move to transfer *Google Inc. v. Rockstar US LP*, 4:13-cv-05933-CW (N.D. Cal.) (the "NDCA Action") to this Court pursuant to 28 U.S.C. § 1404, or in the alternative to stay.[1] Rockstar also intends to move to certify the NDCA's Order Denying Motion to Dismiss or, in the Alternative, to Transfer for interlocutory appeal pursuant to 28 U.S.C. § 1292. Rockstar will promptly notify this Court upon filing these motions and will provide the Court with courtesy copies of these motions when they are filed.

---

[1] Rockstar's Motion to Dismiss or, in the Alternative, to Transfer in the NDCA Action only raised transfer under  28 U.S.C. § 1391.

1

**RA002**

Dated: April 23, 2014.

**MCKOOL SMITH, P.C.**

/s/ *Ted Stevenson III*

Mike McKool
Texas State Bar No. 13732100
mmckool@McKoolSmith.com
Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@McKoolSmith.com
Ted Stevenson III
LEAD ATTORNEY
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@McKoolSmith.com
Ryan A. Hargrave
Texas State Bar No. 24071516
rhargrave@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**ATTORNEYS FOR PLAINTIFF
ROCKSTAR CONSORTIUM US LP,
AND MOBILESTAR TECHNOLOGIES
LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 23, 2014.

*/s/ Joshua Budwin*

Joshua Budwin

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC,** | |
| **Plaintiffs,** | Civil Action No. 2:13-cv-00894-JRG |
| **vs.** | |
| **ASUSTEK COMPUTER, INC. AND ASUS COMPUTER INTERNATIONAL, INC.,** | JURY TRIAL |
| **Defendants.** | |

## PLAINTIFFS' ROCKSTAR CONSORTIUM US LP'S AND MOBILESTAR TECHNOLOGIES LLC'S NOTICE OF FILINGS

TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 9, 2014 Plaintiffs Rockstar Consortium US LP and Mobilestar Technologies LLC filed the following documents in the following matters and are attached hereto as follows:

*Google, Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) (Docket No. 66), Defendants' Motion for § 1292(b) Certification for Interlocutory Review; Memorandum of Points and Authorities attached hereto as Exhibit A.

*Google, Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) (Docket No. 67), Defendants' Motion to Transfer Under 28 USC § 1404 (a) or, in the Alternative, to Stay attached hereto as Exhibit B.  A hearing on the foregoing Motion has been set at 2:00 pm on June 26, 2014, before the Hon. Claudia Wilken, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, California 94612.

The date for the case management conference in the *Google, Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.) case has been continued from May 14, 2014 to June 26, 2014, also before the Hon. Claudia Wilken.

McKool 990674v1

Please note that due to the volume of the exhibits, and because none of the exhibits were filed under seal, Rockstar Consortium US LP and Mobilestar Technologies LLC do not attach the supporting declarations and exhibits to this notice.  Should the Court wish to examine some or all of the exhibits, Rockstar Consortium US LP and Mobilestar Technologies LLC would be pleased to file them or deliver courtesy copies to the Court.

Dated: May 12, 2014.

McKOOL SMITH, P.C.

*/s/ Ted Stevenson III*

Mike McKool
Texas State Bar No. 13732100
mmckool@McKoolSmith.com
Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@McKoolSmith.com
Ted Stevenson III
LEAD ATTORNEY
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@McKoolSmith.com
McKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
McKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**ATTORNEYS FOR PLAINTIFF
ROCKSTAR CONSORTIUM US LP,
AND MOBILESTAR TECHNOLOGIES
LLC**

Case 14-147   Document 20-2   Page 9   Filed 08/22/2014

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on May 12, 2014.

*/s/ Ted Stevenson III*
Ted Stevenson III

# EXHIBIT A

1   **Courtland L. Reichman (SBN 268873)**
  **creichman@mckoolsmithhennigan.com**

2   **McKool Smith Hennigan, P.C.**
  **255 Shoreline Drive Suite 510**

3   **Redwood Shores, CA 94065**
  **(650) 394-1400**

4   **(650) 394-1422 (facsimile)**

5   **ADDITIONAL COUNSEL LISTED ON**
  **SIGNATURE PAGE**

6

7   **Attorneys for Defendants**
  **Rockstar Consortium US LP and**
  **MobileStar Technologies LLC**

8

9               **UNITED STATES DISTRICT COURT**

10          **NORTHERN DISTRICT OF CALIFORNIA**

11                   **OAKLAND**

| | |
|---|---|
| 12   Google, Inc.                 ) | Case No. 13-cv-5933-CW |
| 13             Plaintiff,      ) | |
| 14       vs.                   ) | **DEFENDANTS' MOTION FOR § 1292(b) CERTIFICATION FOR INTERLOCUTORY REVIEW;** |
| 15   Rockstar Consortium U.S. LP and MobileStar   ) | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16   Technologies LLC             ) | |
| 17            Defendants.     ) | Date: June 19, 2014 |
| 18                     ) | Time: 2:00 p.m. |
| 19                     ) | Courtroom: 2, 4th Floor |
| 20                     ) | Judge: Hon. Claudia Wilken |

21

22

23

24

25

26

27

28

                                       Defendants' Motion for §1292(b) Certification
           for Interlocutory Review; Memorandum of Points and Authorities
                                          13-cv-5933-CW

McKool 986735v5

**<u>TABLE OF CONTENTS</u>**

I. The Court's Order Presents A Controlling Question Of Law .......................................................... 5

II. There Are Substantial Grounds For Reasonable Jurists To Reach Different Conclusions
    On These Important Legal Issues ................................................................................................ 6

    A.    Reasonable Jurists Might Disagree Over Whether A Limited Partnership Is
        Subject To Personal Jurisdiction In A Limited Partner's Home Forum Without
        Proving Alter Ego Or Veil-Piercing ............................................................................ 7

    B.    Reasonable Jurists Might Doubt That A Limited Partnership's "Obligations"
        To Enforce Patents In *Other* Jurisdictions Gives Rise To Personal Jurisdiction
        In *This* Jurisdiction ................................................................................................... 10

III. An Immediate Appeal May Advance The Ultimate Termination Of This Litigation ................. 11

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

McKool 986735v5

**RA010**

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

Cᴀꜱᴇꜱ

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998)...............................................................3, 7, 9

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009).............................................................4, 10, 11

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008)..................................................................10

*Campbell Pet Co. v. Miale*,
    542 F.3d 879 (Fed. Cir. 2008)....................................................................11

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ......................................................................9

*Donatelli v. Nat'l Hockey League*,
    893 F.2d 459 (1st Cir. 1990) .......................................................................6

*ESAB Group, Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) .......................................................................6

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012)....................................................11, 12

*Go-Video, Inc. v. Akai Elec. Co., Ltd.*,
    885 F.2d 1406 (9th Cir. 1989) .....................................................................6

*GTE New Media Serv. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000)....................................................................6

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) .....................................................................7

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1982)...................................................................5, 11

*In re Pintlar Corp. (Goodson v. Rowland)*,
    133 F.3d 1141 (9th Cir. 1997).......................................................................6

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981).......................................................................6

-ii-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

McKool 986735v5

**RA011**

*Kernan v. Kurz-Hastings, Inc.,*
  175 F.3d 236 (2d Cir. 1999)...........................................................6

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
  Amministrazione Straordinaria,*
  921 F.2d 21 (2d Cir. 1990)...........................................................12

*Kuehner v. Dickinson & Co.,*
  84 F.3d 316 (9th Cir. 1996) ..........................................................6

*Kuenzle v. HTM Sport-Und Freizeitgerate AG,*
  102 F.3d 453 (10th Cir. 1996) ......................................................6

*Microsoft Corp. v. DataTern, Inc.,*
  2014 U.S. App. LEXIS 6219 (Fed. Cir. Apr. 4, 2014) .................1

*Nehemiah v. Athletics Congress of the U.S.A.,*
  765 F.2d 42 (3d Cir. 1985)............................................................6

*Nuovo Pignone, SPA v. Storman Asia M/V,*
  310 F.3d 374 (5th Cir. 2002) ........................................................6

*Radaszewski v. Contrux, Inc.,*
  891 F.2d 672 (8th Cir. 1989) ........................................................6

*Radio Sys. Corp. v. Accession, Inc.,*
  638 F.3d 785 (Fed. Cir. 2011)......................................................10

*Reese v. BP Exploration (Alaska) Inc.,*
  643 F.3d 681 (9th Cir. 2011) .............................................1, 7, 11

*Ruhrgas AG v. Marathon Oil Co.,*
  526 U.S. 574 (1999)......................................................................5

*Walden v. Fiore,*
  134 S. Ct. 1115,1122 (2014)......................................................7, 9

*Wilson v. Humphreys (Cayman) Ltd.,*
  916 F.2d 1239 (7th Cir. 1990) ......................................................6

**STATUTES**

Del. C. § 17-303 .............................................................................9

28 U.S.C. § 1292(b) ............................................................. passim

Del. Code Ann. Title § 17-303 (2014) .....................................4, 8

-iii-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

McKool 986735v5

RA012

**<u>NOTICE OF MOTION AND MOTION FOR § 1292(b) CERTIFICATION FOR INTERLOCUTORY REVIEW</u>**

TO PLAINTIFF GOOGLE INC. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 19, 2014, at 2:00 p.m., Defendants Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Rockstar") will and hereby do respectfully move the Court to certify its Order denying Rockstar's motion to dismiss (Dkt. 58) for interlocutory review under 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(a)(3). Rockstar's motion is based on this notice, the accompanying memorandum of points and authorities, the pleadings on file, the record in this matter, and any other argument that the Court deems appropriate for consideration.

**<u>RELIEF REQUESTED</u>**

As explained below, Rockstar respectfully submits that the Court should amend its Order to certify its ruling on personal jurisdiction for interlocutory review:

Apple Inc. is a resident of the Northern District of California, and one of five limited partners in Rockstar Consortium US LP. By contrast, both Rockstar Consortium US LP (a Delaware limited-liability partnership) and MobileStar Technologies LLC (its wholly owned subsidiary) are residents of the Eastern District of Texas. The Court held that Rockstar is subject to personal jurisdiction in the Northern District of California based on "continuing obligations" that Google alleged Rockstar owed to Apple and that those "obligations" flowed from Apple's alleged status as a "majority shareholder" able to exert "control" over Rockstar. While the Court found that these "obligations" related to Rockstar's patents and enforcement activities, it did not pierce Rockstar's corporate veil, did not find that Rockstar was the alter ego of Apple and did not find any obligation owed by Rockstar to Apple (or any other entity) to enforce Rockstar's patents *in this forum* (as opposed to *other jurisdictions*). In light of the forgoing, Rockstar respectfully asserts that reasonable jurists might disagree over whether the Court's Order, which reflects threshold legal questions related to the bounds of personal jurisdiction, is contrary to the controlling law. Therefore, the standard for certifying the Court's Order for interlocutory review is met, and the Court should exercise its discretion to certify its Order and the question below for interlocutory review.

-iv-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

The question presented is:

Whether Rockstar US LP, a Delaware limited partnership resident in the Eastern District of Texas is subject to personal jurisdiction in the Northern District of California, due to its alleged "continuing obligations" to Apple, one of its five limited partners, without (a) piercing the corporate veil or establishing that Rockstar is the "alter ego" of Apple; or (b) proving that any "continuing obligation" Rockstar is alleged to owe Apple (or another forum resident) relates to enforcing the patents-in-suit in the Northern District of California, not other forums.

                                             Respectfully submitted,

Dated May 9, 2014.

                      By: */s/ Joshua W. Budwin*
                          Courtland L. Reichman (SBN 268873)
                          McKool Smith Hennigan, P.C.
                          255 Shoreline Drive Suite 510
                          Redwood Shores, CA 94065
                          (650) 394-1400
                          (650) 394-1422 (facsimile)

                          Mike McKool (Admitted *Pro Hac Vice*)
                          mmckool@mckoolsmith.com
                          Douglas A. Cawley (Admitted *Pro Hac Vice*)
                          dcawley@mckoolsmith.com
                          Ted Stevenson III (Admitted *Pro Hac Vice*)
                          tstevenson@mckoolsmith.com
                          David Sochia (Admitted *Pro Hac Vice*)
                          dsochia@mckoolsmith.com
                          McKool Smith, P.C.
                          300 Crescent Court Suite 1500
                          Dallas, TX 75201
                          (214) 978-4000
                          (214) 978-4044 (facsimile)

                          Joshua W. Budwin (Admitted *Pro Hac Vice*)
                          jbudwin@mckoolsmith.com
                          McKool Smith, P.C.
                          300 W. 6th Street, Suite 1700
                          Austin, TX 78701
                          (512) 692-8700
                          (512) 692-8744 (facsimile)

-v-

                    Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
                              13-cv-5933-CW

1

2

3

*Attorneys for Defendants*
*Rockstar Consortium US LP and*
*MobileStar Technologies LLC*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-vi-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(a)(3), Defendants Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Rockstar") respectfully move the Court to certify for interlocutory appeal its Order (Dkt. 58) denying Rockstar's motion to dismiss for lack of jurisdiction (Dkt. 19). The Court's Order resolved difficult, important legal questions related to the threshold question of personal jurisdiction. The Court's Order therefore presents a classic case for interlocutory review: if the Federal Circuit reaches a different conclusion, an immediate appeal of the Court's Order could dictate the outcome of this litigation and save the Court and the parties a substantial expenditure of time and resources. *See, e.g.*, *Microsoft Corp. v. DataTern, Inc.*, 2014 U.S. App. LEXIS 6219, at *18 (Fed. Cir. Apr. 4, 2014) (holding that the district court erred by denying a motion to dismiss as to one of the patents-in-suit and nullifying a non-infringement determination as to that patent). To mitigate this jurisdictional risk and conserve judicial and party resources, Rockstar respectfully requests that the Court certify its Order for interlocutory review. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 n.5 (9th Cir. 2011) (finding interlocutory review appropriate to avoid "unnecessary, protracted litigation," only to discover a jurisdictional defect upon final judgment).

This Court's Order resolved complex legal issues involving the threshold legal question of personal jurisdiction. In denying Rockstar's Motion, the Court found that Rockstar Consortium US LP, a Delaware limited partnership resident in the Eastern District of Texas (and by extension MobileStar Technologies LLC), was subject to specific jurisdiction in this forum. The Court found jurisdiction appropriate because Apple is a forum resident and Google alleged that Rockstar assumed "a substantial obligation to Apple related to the asserted patents." Order at 17 n.6. As the Court explained, "Google alleges that Apple is a majority shareholder of Defendants and exerts substantial control over them, and as a result Defendants are obliged to act on Apple's behalf." Order at 17. Thus, the Court held, Apple's alleged role as an influential "shareholder" in Rockstar was sufficient to "create[] continuing obligations" to a forum resident that make it reasonable to subject Rockstar to

-1-

Defendants' Motion for §1292(b) Certification for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

McKool 986735v5

RA016

suit in this forum. *Id.* at 19. In so holding, the Court specifically found that Rockstar's alleged

obligation included "marshal[ing] the asserted patents." *Id.*

Importantly however, the Court did not pierce the corporate veil, did not find Rockstar to be

the alter ego of Apple and did not find that Rockstar is "obliged" to Apple (or any other entity) to

enforce or defend the patents-in-suit *in this forum. See generally id.* at 17-20. Indeed, the only

"obligation" alleged by Google and found by the Court to be owed by Rockstar to Apple involving

the patents-in-suit related to "Defendants' litigation strategy of suing Google's customers in the

Halloween actions"—*in Texas. Id* at 19. Google did not offer, and the Court did not find, any

"obligation" owed by Rockstar to Apple (or any other entity) to enforce or defend its patents in any

California jurisdiction, including this one.

Accepting Google's pleaded allegations that the Court's factual findings rest on as true,

Rockstar respectfully submits that reasonable jurists *might* disagree over whether, as a matter of

controlling law, Rockstar is subject to personal jurisdiction in the Northern District of California. For

this reason, and as explained below, each element of § 1292(b) is met and the Court should exercise

its sound discretion in certifying its Order for interlocutory review.

*First*, Rockstar Consortium US LP is a Delaware limited partnership,[1] and Apple is one of

five limited partners holding a minority interest.[2] According to Google, Apple was a "majority

---

[1] As the Court recognized, Rockstar's general partner is Rockstar Consortium LLC. Dkt. 30 at 11-12; Order at 17. Google's Opposition to Rockstar's Motion, and the Court's Order, identified Kasim Alfahali, Ericsson's Chief Intellectual Property Officer, as the President of Rockstar Consortium LLC. *Id.* Mr. Alfahali works in the Eastern District of Texas at Ericsson's headquarters, which is across the street from Rockstar's Plano, Texas office. *See* Dkt. 57-1 at 1 n.2; *id.* at 2 n.3; *id.* at 9-10. However, Google's identification of Rockstar Consortium LLC's officers was incorrect. Rockstar Consortium LLC's CEO is John Veschi. Ex. 1 (identifying Rockstar Consortium LLC's officers).

[2] Google asserted that Apple is Rockstar's "majority shareholder," but that assertion is incorrect. *See, e.g.*, Dkt. 30 at 1 (Google referring to Apple as "majority owner"); *id.* at 11 (Google referring to Apple as "majority shareholder"); Order at 17 ("Google submits strong evidence that Apple is indeed the majority shareholder of Defendants based on Apple's majority investment in Rockstar's predecessor entity, Rockstar Bidco."). Rockstar Consortium US LP is a Delaware limited partnership made up of five limited partners, including Apple. Dkt. 19-6, Dean Dec. ¶ 35 (describing Apple as a "limited partner[]"); *see also* Dkt. 19 at 13-14. Although the concept of majority-minority is less relevant when discussing limited partnerships (as opposed to corporations), the record shows that

-2-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

McKool 986735v5

RA017

1   shareholder" that "exert[ed] substantial control over" Rockstar's decisions, "oblig[ing]" Rockstar "to

2   act on Apple's behalf…to attack Google's Android platform." Even accepting such allegations as

3   true—and they are not[3]—they fail as a matter of law to establish personal jurisdiction over Rockstar

4   in the Northern District of California. A plaintiff must establish jurisdiction over the defendant

5   *personally*, and the "corporate form is not . . . cast aside" unless a party can prove alter ego or pierce

6   the corporate veil. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380-81 (Fed. Cir. 1998).

7   Here, Google invited the Court to effectively pierce the corporate veil or find alter ego *without*

8   actually piercing the corporate veil or finding alter ego. The Court's Order, following Google's

9   urging, identified Apple's "shareholder" status with the alleged ability to "control" or influence the

10  litigation decisions of Rockstar, to be a "substantial obligation" related to the patents that is

11  sufficient to subject Rockstar to personal jurisdiction in Apple's home forum. *See* Order at 19, n.6

12  (veil piercing or alter ego not required, so long as a "substantial obligation to Apple related to the

---

Apple's limited partnership interest in Rockstar Consortium US LP is in fact a minority interest. Dkt. 31-12 at 1 (article cited by Google and referenced in the Court's Order identifying Apple as one of five "minority" owners of Rockstar); Order at 18 (citing to Madigan Declaration Exhibit 12). As the Court correctly recognized, Apple contributed "$2.6 billion or fifty-eight percent of the $4.5 billion total investment in Rockstar Bidco." Order at 17-18. The Court's finding however that no "ownership interests changed, nor do Defendants assert otherwise" was not correct. *Id.* As the record reflected, while Apple contributed more money than the other limited partners in forming Rockstar Bidco LP, a number of the patents acquired by Rockstar Bidco LP were transferred directly to Apple. *See* Dkt. 31-14 (evidence cited by Google establishing that Rockstar Bidco LP assigned at least 1,147 U.S. patents to Apple); Dkt. 31-12 at 1 (Apple has a "minority" interest in Rockstar); Dkt. 19-6, Dean Dec. ¶ 35 (Apple is a "limited partner" of Rockstar). And, as a result of the direct assignment of these 1,147 patents to Apple from Rockstar Bidco, when Rockstar Consortium US LP was formed, Apple became one of five limited partners in Rockstar Consortium US LP, with a minority ownership interest. *Id.*

[3] Dkt. 31-12 at 5 (article cited by Google and referenced in the Court's Order identifying Apple and Rockstar as having an "arms-length" relationship); *id.* at 4 (same article explaining that Rockstar's partners "cannot pick and choose who we will target"); Order at 18 (citing Madigan Declaration Exhibit 12); Dkt. 19-6, Dean Dec. ¶ 35 (confirming that Apple "neither direct[s] nor control[s] Rockstar's licensing efforts"). Dkt. 31-29 (article cited by Google reiterating that "[Rockstar] [C]onsortium, not the shareholder companies, ma[k]e the decision to sue").

-3-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

asserted patents" is shown). This finding impermissibly sweeps aside Rockstar's corporate form as a Delaware limited partnership, without engaging in veil-piercing or establishing alter ego.[4]

*Second*, under Federal Circuit law, it was not enough for Google to allege, and the Court to find, that Rockstar had general "obligations" to Apple to enforce the patents-in-suit. Rather, and because Rockstar is a foreign defendant, Google had to allege and the Court had to find Rockstar owed Apple (or another entity) an enforcement obligation *in the forum*. Unless the obligation involves "enforcement efforts *in the forum*," it is insufficient as a matter of controlling law to subject a foreign defendant to personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019-20 (Fed. Cir. 2009) (emphasis added). Thus, even if Google had identified a proper "obligation" alleged to be owed by Rockstar to Apple (separate and apart from Apple's status as a limited partner), Google's inability to identify any obligation related to enforcement activity *in this forum*, establishes that personal jurisdiction over Rockstar is improper here. Moreover, the type of "obligations" that Google alleged Rockstar owed Apple, and that the Court discussed in its Order— *e.g.*, updating Rockstar's limited partners on "progress" and telling them that "work is being done"[5]—are not the type of "obligations" that subject non-resident to jurisdiction in a foreign forum. *See Autogenomics*, 566 F.3d at 1019-20; Del. Code Ann. tit. § 17-303 (2014).

In light of these issues, Rockstar respectfully submits that § 1292(b) certification is warranted: (1) the Court's Order involves "a controlling question of law"—legal issues related to the

---

[4] This finding is especially troubling here, because under the Delaware limited liability partnership statute that Rockstar US LP is organized under, a limited partner may permissibly "act . . . [to] cause a general partner or any other person to take . . . *any action*" without being found to direct or control the limited partnership. Del. Code Ann. tit. § 17-303 (2014) (emphasis added) (also setting forth other permissible activities that a limited partner can engage in without being found to direct or control the limited partnership). Even if Apple could influence Rockstar's decision to litigate, and even if Rockstar owed Apple a "substantial obligation" related to the patents-in-suit, there has been no showing or allegation that, under the Delaware limited partnership statute, Apple exerted "control" over Rockstar to such an extent that Apple could not be considered a limited partner.

[5] Order at 18 (referring to "progress" reports, updates about "real work…being done," and references to "periodic calls and meetings with the owners"; noting that "it does appear telling that Veschi speaks directly and periodically with owners' intellectual property departments to demonstrate that 'work is being done,'" even though "they avoid talking about the details").

-4-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

RA019

1   dispositive principles for a proper jurisdictional analysis; (2) there is a "substantial ground for

2   difference of opinion" regarding how these legal issues should be resolved; and (3) an "immediate

3   appeal" may "materially advance the ultimate termination of the litigation," while mitigating the risk

4   of letting this case run its normal course, only to have these issues resolved on appeal, which may

5   result in the waste of party and judicial resources because a reversal would end the entire case. 28

6   U.S.C. § 1292(b); *see also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (listing

7   the certification requirements). Rockstar requests that the Court amend and reissue its Order to

8   include a statement certifying this matter for interlocutory review. *See* Fed. R. App. P. 5(a)(3).

9                                          **ARGUMENT**

10          Under 28 U.S.C. § 1292(b), the Court has discretion to certify to the Federal Circuit an

11  otherwise non-appealable order if: (1) the "order involves a controlling question of law"; (2) there is

12  "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may

13  materially advance the ultimate termination of the litigation." All of § 1292(b)'s requirements are

14  met, and an immediate appeal is appropriate.

15  **I.      The Court's Order Presents A Controlling Question Of Law**

16          Section 1292(b) requires that the Court's Order involve a "controlling question of law," a

17  requirement satisfied here. A question is "controlling" where its resolution could "materially affect

18  the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026 (citing

19  *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)). "Of course, if resolution of the

20  question being challenged on appeal will *terminate* the action in the district court, it is clearly

21  controlling." 19 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL § 203.31[2] (3d ed.

22  1997) (emphasis added). The threshold question of personal jurisdiction fits comfortably within this

23  requirement. *Id.*

24          Personal jurisdiction is a "threshold" issue—it is "essential" to the Court's authority, and the

25  Court is "'powerless to proceed'" without it. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-

26  85 (1999). If the Court lacks jurisdiction over Rockstar, the entire suit must be dismissed, ending the

27

28                                              -5-
                                Defendants' Motion for §1292(b) Certification
                         for Interlocutory Review; Memorandum of Points and Authorities
                                                                        13-cv-5933-CW

litigation immediately. This is exactly the kind of "controlling" issue that Congress contemplated for § 1292(b): it permits immediate review of an issue that "could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).[6]

## II. There Are Substantial Grounds For Reasonable Jurists To Reach Different Conclusions On These Important Legal Issues

Respectfully, the Court's disposition of Rockstar's personal jurisdiction defense is subject to a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). These are legal issues "over which reasonable judges *might* differ," and uncertainty "provides a credible basis for a difference of

---

[6] For this reason, courts have repeatedly certified orders under § 1292(b) where questions of personal jurisdiction are implicated. *See, e.g.*, *Nuovo Pignone, SPA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) ("In its order denying the motion to dismiss, the district court, on [defendant's] motion, certified" the issue of "personal jurisdiction" for § 1292(b) "interlocutory appeal."); *see also GTE New Media Serv. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1345 (D.C. Cir. 2000) (accepting § 1292(b) appeal asking "whether the District Court may assert personal jurisdiction over the defendants"); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 239 (2d Cir. 1999) (accepting § 1292(b) appeal certified by district court after denying motion to dismiss "for lack of personal jurisdiction"); *In re Pintlar Corp. (Goodson v. Rowland)*, 133 F.3d 1141, 1143 (9th Cir. 1997) ("The district court certified its order [regarding personal jurisdiction] for interlocutory appeal and we granted…permission to appeal under 28 U.S.C. § 1292(b)."); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) (After the district court held "it had personal jurisdiction," both the district court and the circuit "granted leave to defendants to file an interlocutory appeal under 28 U.S.C. § 1292(b)."); *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 454 (10th Cir. 1996) (granting request for "leave to appeal the district court's denial of [the court's] motion to dismiss for lack of personal jurisdiction"); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1240 (7th Cir. 1990) (granting "application" to certify denial of motion to dismiss for lack of personal jurisdiction, among other issues); *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 461 (1st Cir. 1990) (certifying "refus[al] to dismiss the case for want of personal jurisdiction," because the order "'involve[d] a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal…might materially advance the ultimate termination of the litigation'"); *Radaszewski v. Contrux, Inc.*, 891 F.2d 672, 673 (8th Cir. 1989) (certifying personal-jurisdiction issue because "an immediate appeal might materially advance the ultimate termination of the litigation"); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1407-08 (9th Cir. 1989) (certification asking "whether it was error for the district court to exercise personal jurisdiction"); *Nehemiah v. Athletics Congress of the U.S.A.*, 765 F.2d 42, 44 (3d Cir. 1985) (At defendant's request, an order denying motion to dismiss "for lack of personal jurisdiction" was certified for § 1292(b) review.); *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1269 (9th Cir. 1981) (Defendant "secured permission to appeal, pursuant to 28 U.S.C. § 1292(b), from the district court's denial of a motion to dismiss" for lack of "personal jurisdiction.").

-6-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

opinion." *Reese*, 643 F.3d at 688 (emphasis added). While Rockstar believes the Court's Order is at odds with controlling law, the issues are (at a minimum) "novel and difficult"—and this factor is satisfied "where reasonable jurists *might* disagree on an issue's resolution, not merely where they have already disagreed." *Id.* (emphasis added).

### A. Reasonable Jurists Might Disagree Over Whether A Limited Partnership Is Subject To Personal Jurisdiction In A Limited Partner's Home Forum Without Proving Alter Ego Or Veil-Piercing

The Court found that Rockstar's "substantial" and "continuing obligations" to Apple "related to the asserted patents" and subjected Rockstar to jurisdiction in California—Apple's home forum. Order at 17 n.2. The Court determined that veil piercing or finding alter ego was not required because "Defendants have undertaken a substantial obligation to Apple related to the asserted patents . . . " *Id*. The Court also found that Apple had the ability to "exert[] substantial control over" Rockstar. *Id.* at 17.

Rockstar is unaware of *any* controlling authority which stands for the proposition that—absent veil piercing or finding alter ego—alleged "obligations" owed by a limited partnership to its limited partners (or a limited partner's ability to "exert control" or influence over the partnership's decisions) subjects the limited partnership to personal jurisdiction in the limited partner's home forum (unless, and as discussed below, those obligations can be shown to extend to enforcement actions in the forum). *See, e.g.*, *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (each corporate entity is a separate person with its own identity). As a general matter, a corporation or limited partnership is not subject to suit where its shareholders or partners reside. *Walden v. Fiore*, 134 S. Ct. 1115,1122 (2014). On the contrary, "the general rule [is] that the corporate entity should be recognized and upheld." *3D Sys.*, 160 F.3d at 1380. To avoid subjecting a limited partnership or corporation to suit in each jurisdiction where a limited partner or shareholder resides, the law requires that a plaintiff must establish jurisdiction over the defendant *personally*, and that the "corporate form is not…cast aside" unless a party can prove alter ego or pierce the corporate veil. *Id.* at 1380-81. In the limited-partnership context, and under Delaware law,

-7-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

1   a limited partner may permissibly "act…[to] cause a general partner or any other person to

2   take…*any action*" without being found to direct or control the limited partnership. Del. Code Ann.

3   tit. § 17-303 (2014) (emphasis added).

4          Even if Rockstar owed "substantial" and "continuing obligations" to its limited partners

5   (including Apple), and even if Apple could exert some modicum of "control" over Rockstar's

6   litigation decisions, under settled law courts should not look past the legal form without proving alter

7   ego or veil piercing. Every case Google cited in its opposition to Rockstar's Motion—and every case

8   relied upon in the Court's Order—involved non-resident entities who engaged with *independent*

9   third parties *in the forum* to undertake enforcement activities *in the forum* where personal

10  jurisdiction was upheld. Dkt. 34; Order at 16 n.5; *id.* at 16-18. Rockstar did not reach out and

11  identify Apple (or another forum resident) to participate in patent enforcement or defense in

12  California. Rather, it simply operated as any typical limited partnership with limited partners spread

13  around the country, and did so with a normal level of interaction between the limited partnership and

14  the limited partners. Dkt. 31-12 at 5 (article cited by Google and referenced in the Court's Order

15  identifying Apple and Rockstar as having an "arms-length" relationship); *id.* at 4 (explaining that

16  Rockstar's partners "cannot pick and choose who we will target"); Order at 18 (citing Madigan

17  Declaration Exhibit 12); Dkt. 19-6, Dean Dec. ¶ 35 (confirming that Apple "neither direct[s] nor

18  control[s] Rockstar's licensing efforts"). Dkt. 31-29 (article cited by Google reiterating that

19  "[Rockstar] [C]onsortium, not the shareholder companies, ma[k]e the decision to sue").

20         Accordingly, the types of "continuing" and "substantial obligations" that the Court identified

21  are the type of normal obligations that any limited partnership or corporation normally owes its

22  limited partners or shareholders. Order at 18 (referring to "progress" reports, updates about "real

23  work…being done," and references to "periodic calls and meetings with the owners"; noting that "it

24  does appear telling that Veschi speaks directly and periodically with owners' intellectual property

25  departments to demonstrate that 'work is being done,'" even though "they avoid talking about the

26  details"). No authority stands for the proposition that—absent veil piercing or finding alter ego (or a

27

28

-8-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

finding of enforcement actions in the forum)—updating a limited partner or a shareholder as to the ongoing activities of the limited partnership or corporation subjects the limited partnership or corporation to personal jurisdiction where the limited partner or shareholder resides. *Walden*, 134 S. Ct. at 1122. Similarly, no authority stands for the proposition that—absent veil piercing or finding alter ego (or a finding of enforcement actions in the forum)—the alleged ability of a limited partner or shareholder to "exert[] substantial control over" a limited partnership or corporation subjects the limited partnership or corporation to personal jurisdiction where the limited partner or shareholder resides. *3D Sys.*, 160 F.3d at 1380. This is especially true where, as here, the alleged action of the limited partner falls squarely within the scope of activities that Delaware law permits limited partners to take. Del. C. § 17-303 (among other activities, a limited partner may "act…[to] cause a general partner or any other person to take…any action" without being found to direct or control the limited partnership).

In the end, the only activity that Google alleged Rockstar "directed" at California was the fact that Rockstar Consortium US LP has Apple—one of five limited partners—resident in California and that Rockstar owed "obligations" to Apple *not* related to enforcement activities in the forum. Google thus invited (without directly asking) the Court to ignore the legal formation of Rockstar Consortium US LP as a Delaware limited partnership resident in the Eastern District of Texas. This departs from settled law, downplays the importance of Rockstar's legal form, conflicts with the Delaware limited partnership statute, and unduly expands the jurisdictional reach over all limited partnerships and corporations to encompass any forum where limited partners or shareholders may reside, so long that the partnership or corporation can be said to owe some substantial "obligation" to the limited partner or shareholder, unrelated to enforcement activities in the forum. *See, e.g.*, *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).

-9-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

**B.    Reasonable Jurists Might Doubt That A Limited Partnership's "Obligations" To Enforce Patents In *Other* Jurisdictions Gives Rise To Personal Jurisdiction In *This* Jurisdiction**

Under Federal Circuit law, to establish specific jurisdiction, it is insufficient to identify an "obligation" to enforce the relevant patents *unless* that obligation extends to "enforcement efforts *in the forum*." *Autogenomics*, 566 F.3d at 1019-20 (emphasis added). Jurisdiction exists "where such 'other activities' in some identifiable way 'relate to' enforcement of those patents *in the forum*." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) (emphasis added); *see id.* (stating that "'other activities' include initiating judicial or extrajudicial patent enforcement *within the forum*") (emphasis added); *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011) ("We made clear in *Avocent* that enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the form, and that decision is controlling here.").

Here, at most, Google has alleged, and the Court has found, that Apple resides in California, and may benefit from Rockstar's enforcement activities *in other forums* (such as the Eastern District of Texas, Rockstar's home forum). Google has not identified, nor has the Court found, any "continuing obligation" owed by Rockstar to Apple related to any enforcement activity *in this forum*.[7] However, under Federal Circuit law, the "continuing obligations" *must* relate to the enforcement of the patents-in-suit *in the forum* where personal jurisdiction is sought. *Avocent*, 552 F.3d at 1334; *Radio Sys.*, 638 F.3d at 792. Accordingly, absent veil piercing, a finding of alter ego,

---

[7] The Court's Order also noted that "Defendants' litigation strategy of suing Google's customers in the Halloween actions"—*in Texas*—"is consistent with Apple's particular business interests." Order at 19. Even if Rockstar's enforcement activity in other forums is "consistent" with a resident shareholder's "business interests," this does not justify subjecting Rockstar to suit in the shareholder's home forum in the absence of veil piercing or finding alter ego, especially when the enforcement activity in other forums would also be "consistent" with those "particular business interests." There is "no precedent that holds that the filing of a suit in a particular state subjects that party to specific personal jurisdiction everywhere else." *Avocent*, 552 F.3d at 1339. If Google wishes to use Rockstar's alleged "obligations" to limited partner Apple as a basis for grounding jurisdiction against Rockstar in California, it must identify "an exclusive license or other obligation *relating to the exploitation of the patent by such licensee or contracting party in the forum*," not in other forums. *Id.* (emphasis added).

-10-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

or a showing that Rockstar has undertaken or owes Apple obligations to enforce the patents-in-suit in California, Rockstar cannot be subject to personal jurisdiction here.[8]

### III. An Immediate Appeal May Advance The Ultimate Termination Of This Litigation

Finally, an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Rockstar is seeking review at the very outset of the proceeding (indeed before the case management conference, presently scheduled for May 14, 2014), long before substantial judicial and party resources are devoted to the case. If the Court lacks jurisdiction over Rockstar, it is pointless to await months or years of "unnecessary, protracted litigation," only to discover upon final judgment that there was never jurisdiction in the first place. *Reese*, 643 F.3d at 688 n.5. Immediate review here thus satisfies one of Congress's core objectives in § 1292(b): avoiding the potential waste of judicial and party resources by litigating a large and complex case to conclusion in a court without jurisdiction. *See In re Cement Antitrust Litig.*, 673 F.2d at 1026 (Section 1292(b) review is appropriate when "allowing an interlocutory appeal would avoid protracted and expensive litigation.").

In addition, "several district courts…have opined that certification may be particularly appropriate in complex litigation involving multiple coordinated actions." *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012). While Google wishes to use this matter as an anchor for dislodging all six suits from the Eastern District of Texas and transporting that

---

[8] The Court's Order also asserts that Rockstar engaged in a "'scare the customer and run' tactic" to "advance[] Apple's interest in interfering with Google's Android business." Order at 19 (citing *Campbell Pet Co. v. Miale*, 542 F.3d 879, 887 (Fed. Cir. 2008)). Respectfully, Rockstar did not engage in scare-and-run tactics. On the contrary, Rockstar did not "run" at all—it sued major infringers (not small mom and pop operations) for their independent conduct in the Eastern District of Texas where it resides, where Samsung (one of the Texas defendants resides) and it is prosecuting those suits with vigor. Moreover, *Campbell* did not "find[] jurisdiction where the patentee 'took steps to interfere with the plaintiff's business.'" Order at 19 (quoting *Campbell*, 542 F.3d at 887). Rather, *Campbell* upheld jurisdiction because those "steps" constituted extra-judicial enforcement *in the forum* where personal jurisdiction was found. *See Autogenomics*, 566 F.3d at 1020 ("In *Campbell Pet*, where the court held personal jurisdiction existed, the patentee had enlisted a third party to remove the defendant's products from a trade show that was being held in the forum state— *enforcement efforts in the forum*.") (emphasis added).

-11-

Defendants' Motion for §1292(b) Certification for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

McKool 986735v5

RA026

litigation here, and while this Court has found that this case is first-filed under the customer-suit exception to the first-filed rule, it makes little sense for this case to advance until it is clear that the threshold personal jurisdiction question is satisfied. If the Texas actions are stayed or transferred in deference to this action (*see* Order at 26), the disposition of *all* cases could be substantially affected or delayed if this case is ultimately found to suffer from a fatal jurisdictional defect. "Courts may properly consider such 'system-wide costs and benefits' in determining whether to permit interlocutory review." *UBS Ams.*, 858 F. Supp. 2d at 338 (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21 (2d Cir. 1990)). Conversely, and because no defendant in Texas has disputed personal jurisdiction, no similar threshold jurisdictional risk underlies Rockstar's Texas cases.

## CONCLUSION

Rockstar respectfully requests that this Court amend its Order under Fed. R. App. P. 5(a)(3) and certify these important questions for interlocutory appeal under 28 U.S.C. § 1292(b).

-12-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

Respectfully submitted,

Dated May 9, 2014.

By:    /s/ *Joshua W. Budwin*
           Courtland L. Reichman (SBN 268873)
           MCKOOL SMITH HENNIGAN, P.C.
           255 Shoreline Drive Suite 510
           Redwood Shores, CA 94065
           (650) 394-1400
           (650) 394-1422 (facsimile)

           Mike McKool (Admitted *Pro Hac Vice*)
           mmckool@mckoolsmith.com
           Douglas A. Cawley (Admitted *Pro Hac Vice*)
           dcawley@mckoolsmith.com
           Ted Stevenson III (Admitted *Pro Hac Vice*)
           tstevenson@mckoolsmith.com
           David Sochia (Admitted *Pro Hac Vice*)
           dsochia@mckoolsmith.com
           McKool Smith, P.C.
           300 Crescent Court Suite 1500
           Dallas, TX 75201
           (214) 978-4000
           (214) 978-4044 (facsimile)

           Joshua W. Budwin (Admitted *Pro Hac Vice*)
           jbudwin@mckoolsmith.com
           McKool Smith, P.C.
           300 W. 6th Street, Suite 1700
           Austin, TX 78701
           (512) 692-8700
           (512) 692-8744 (facsimile)

           ***Attorneys for Defendants***
           ***Rockstar Consortium US LP and MobileStar***
           ***Technologies LLC***

-13-

Defendants' Motion for §1292(b) Certification
for Interlocutory Review; Memorandum of Points and Authorities
13-cv-5933-CW

# EXHIBIT B

**Courtland L. Reichman (SBN 268873)**
creichman@mckoolsmithhennigan.com
**McKool Smith Hennigan, P.C.**
**255 Shoreline Drive Suite 510**
**Redwood Shores, CA 94065**
**(650) 394-1400**
**(650) 394-1422 (facsimile)**

**ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE**

**Attorneys for Defendants**
**Rockstar Consortium U.S. LP and**
**MobileStar Technologies LLC**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND

| | | |
|---|---|---|
| Google, Inc. | ) | Case No. 13-cv-5933 |
| Plaintiff, | ) ) ) | **DEFENDANTS' MOTION TO** |
| vs. | ) ) | **TRANSFER UNDER 28 USC §** |
| | ) | **1404(a) OR, IN THE** |
| Rockstar Consortium U.S. LP and MobileStar Technologies LLC | ) ) | **ALTERNATIVE, TO STAY** |
| | ) | Date: June 26, 2014 |
| Defendants. | ) ) | Time: 2:00 p.m. |
| | ) | Courtroom: TBD |
| | ) | Judge: Hon. Claudia Wilken |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   LEGAL STANDARD .................................................................................2

III.  STATEMENT OF FACTS ..........................................................................3

      A.    Nortel and Defendants' Longstanding Ties to the EDTX ................3

      B.    Google's Connections to the Eastern District of Texas ..................6

      C.    Defendants File the Texas Actions, Google Files This Case .................6

IV.   THE COURT'S PERSONAL JURISDICTION DECISION
      SHOULD NOT IMPACT THE TRANSFER ANALYSIS ..................7

V.    THE SECTION 1404 FACTORS WEIGH HEAVILY IN FAVOR
      OF TRANSFER .........................................................................................8

      A.    The Interests of Justice and Efficient Use of Judicial
            Resources Weigh Dispositively in Favor of Transfer ...............8

            1.    *Failure to Transfer Will Result In Waste of Judicial
                  Resources* .................................................................................9

            2.    *Denying Transfer Creates the Risk of Inconsistent
                  Judgments* ..............................................................................10

            3.    *The Texas Actions Can Resolve "Major Issues" Not
                  Before This Court* .................................................................11

      B.    Google's Choice of this Forum Amounts to Forum
            Shopping ...............................................................................15

      C.    Convenience of The Parties and Party Witnesses Favors
            Transfer ...............................................................................16

      D.    Convenience of Non-Party Witnesses Favors Transfer ...............17

      E.    Ease of Access To Evidence Weighs in Favor of Transfer ...............19

      F.    Feasibility of Consolidation Favors Transfer ...............................19

G.      Rockstar's Meaningful, Longstanding Connections to the
        EDTX.........................................................................................20

H.      Local Interest Is, At The Very Least, Neutral.......................................21

I.      Relative Court Congestion and Time to Trial Somewhat
        Favor Transfer...........................................................................22

J.      Difference in the Costs of Litigation Favor the EDTX..........................22

K.      Familiarity With Applicable Law Factor Is Neutral...............................23

VI.     IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS
        ACTION PENDING RESOLUTION OF THE TEXAS ACTION..................23

VII.    CONCLUSION ..............................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*,
   2006 U.S. Dist. LEXIS 75339 (N.D. Cal. Oct. 6, 2006) (Wilkens, J.) .............................17, 21

*Bite Tech, Inc. v. X2 Impact, Inc.*,
   2013 U.S. Dist. LEXIS 31791 (N.D. Cal. March 7, 2013) .....................................................19

*Cadence Design Sys. v. OEA Int'l, Inc.*,
   2011 U.S. Dist. LEXIS 106739 (N.D. Cal. Sept. 19, 2011) (Wilken, J.) ....................9, 14, 15

*Cisco Sys. v. TiVo, Inc.*,
   2012 U.S. Dist. LEXIS 112923 (N.D. Cal. Aug. 10, 2012)....................................................22

*Contentguard Holdings, Inc., v. Google, Inc.*,
   No. 2:14-cv-00061-JRG, Dkt. 38 at 11 (E.D. Tex. Apr. 16, 2014) ........................................21

*Continental Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960).....................................................................................................................9

*CoxCom, Inc. v. Hybrid Patents, Inc.*,
   2007 U.S. Dist. LEXIS 67168 (N.D. Cal. Aug. 30, 2007).....................................................20

*GLT Technovations, LLC v. Fownes Bros. & Co.*,
   2012 U.S. Dist. LEXIS 56028 (N.D. Cal. Apr. 20, 2012) ................................................20, 21

*Google, Inc. v. Contentguard Holdings, Inc.*,
   No. C 14-00498 WHA, Dkt. 42 at 2 (N.D. Cal. Apr. 15, 2014) ............................................23

*Hoover Grp. v. Custom Metalcraft*,
   84 F.3d 1408 (Fed. Cir. 1996)....................................................................................................3

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
   2009 U.S. Dist. LEXIS 10939 (N.D. Cal. Feb. 3, 2009) .......................................................23

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)................................................................................................18

*In re Apple Inc.*,
   456 F. App'x 907 (Fed. Cir. 2012) .........................................................................................10

*In re Eli Lilly & Co.*,
   541 Fed. App'x 993 (Fed. Cir. 2013)........................................................................................9

*In re Hoffman-La Roche,*
   587 F.3d 1333 (Fed. Cir. 2009)........................................................21

*In re Microsoft Corp.,*
   630 F.3d 1361 (Fed. Cir. 2011)........................................................21

*In re Microsoft Corp.,*
   No. 2014-123, slip op. (Fed. Cir. May 5, 2014) ...........................9

*In re Vistaprint Ltd.,*
   628 F.3d 1342 (Fed. Cir. 2010).........................................................9

*In re Zimmer Holdings, Inc.,*
   609 F.3d 1378 (Fed. Cir. 2010).................................................20, 21

*JACO Envtl. Inc. v. Appliance Recycling Ctrs. of Am.,*
   2007 U.S. Dist. LEXIS 27421 (N.D. Cal. Mar. 27, 2007)...................15

*Kahn v. Gen. Motors Corp.,*
   889 F.2d 1078 (Fed. Cir. 1989)........................................................11

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.,*
   2006 U.S. Dist. LEXIS 61944 (M.D. Fla. Aug. 30, 2006) ...................23

*London & Hull Mar. Ltd. v. Eagle Pac. Ins. Co.,*
   1996 U.S. Dist. LEXIS 22893 (N.D. Cal. Aug. 14, 1996) (Wilken, J.).............9, 10

*Mears Techs., Inc. v. Finisar Corp.,*
   2014 U.S. Dist. LEXIS 56880 (E.D. Tex. Apr. 24, 2014) ...................22

*MobileMedia Ideas LLC v. HTC Corp.,*
   2012 U.S. Dist. LEXIS 62153 (E.D. Tex. May 3, 2012) ...................16

*MTS Sys. Corp. v. Hy-Sitron, Inc.,*
   2006 U.S. Dist. LEXIS 66338 (N.D. Cal. Sept. 1, 2006) ...............2, 19

*Mycone Dental Supply Co. v. Creative Nail Design, Inc.,*
   No. C 12-747, Dkt. 52 at 5 (N.D. Cal. May 30, 2012) ...................12

*Nat'l Broom Co. of Cal. v. Brookstone Co.,*
   2009 U.S. Dist. LEXIS 69630 (N.D. Cal. July 30, 2009)...............14, 23

*Natural Wellness Ctrs. of Am., Inc. v. Golden Health Prods.,*
   2013 U.S. Dist. LEXIS 8658 (N.D. Cal. Jan. 22, 2013) (Wilkens, J.)...................17

*Panavision Int'l L.P v. Toeppen,*
   141 F.3d 1315 (9th Cir. 1998) ........................................................19

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

985328

*Proofpoint, Inc. v. InNova Patent Licensing, LLC,*
    2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct. 17, 2011)....................................................10

*Regents of the Univ. of California v. Eli Lilly & Co.,*
    119 F.3d 1559 (Fed. Cir. 1997).............................................................................................9

*Ricoh Company v. Aeroflex Inc.,*
    279 F. Supp. 2d 554 (D. Del. 2003).....................................................................................23

*Rockstar Consortium US LP v. Samsung Electronics. Co., Ltd.,*
    Civil Action No. 13-cv-0900-JRG, pending ...........................................................................1

*Secure Axcess, LLC v. Nintendo of Am., Inc.,*
    2014 U.S. Dist. LEXIS 30115 (E.D. Tex. Mar. 7, 2014) (Gilstrap, J.) ...........................14, 15

*Silverlit Toys Manufactory, LTD. v. Absolute Toy Mktg.,*
    2007 U.S. Dist. LEXIS 14538 (N.D. Cal. Feb. 15, 2007) .....................................................19

*Sorensen v. Phillips Plastics Corp.,*
    2008 U.S. Dist. LEXIS 81710 (N.D. Cal. Oct. 9, 2008).........................................................22

*Spread Spectrum Screening LLC v. Eastman Kodak Co.,*
    657 F.3d 1349 (Fed. Cir. 2011)...........................................................................................11

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988).........................................................................................................3, 8

*Synopsys Inc. v. Mentor Graphics Corp.,*
    2013 U.S. Dist. LEXIS 48544 (N.D. Cal. Apr. 3, 2013)...................................................17, 18

*TransPerfect Global, Inc. v. MotionPoint Corp.,*
    2010 U.S. Dist. LEXIS 99947 (N.D. Cal. Sept. 13, 2010) ...........................................2, 16, 17

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011)...........................................................................................15

*Virtualagility, Inc. v. Salesforce.com, Inc.,*
    2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014) .....................................................19

*Wi-Lan Inc. v. HTC Corp.,*
    2013 U.S. Dist. LEXIS 99635 (E.D. Tex. July 17, 2013).....................................................17

**STATUTES**

28 U.S.C. § 1391 ...................................................................................................2, 7

28 U.S.C. § 1404 ................................................................................................ passim

Del. Code Ann. Title § 17-303 (2014) ........................................................................8

# NOTICE OF MOTION

TO PLAINTIFF GOOGLE INC. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2014, at 2:00 p.m. or as soon thereafter as it may be heard, Defendants Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Defendants") will and hereby do respectfully move to transfer this case to the United States District Court for the Eastern District of Texas, or, in the alternative, stay this case pending the resolution of *Rockstar Consortium US LP v. Samsung Electronics. Co., Ltd.*, Civil Action No. 13-cv-0900-JRG, pending in the United States District Court for the Eastern District of Texas. Defendants' motion is based on this notice, the accompanying memorandum of points and authorities, the pleadings on file, the record in this matter, and any other argument that the Court deems appropriate for consideration.

# RELIEF REQUESTED

Defendants seek an order granting their motion to transfer this case to the United States District Court for the Eastern District of Texas, or, in the alternative, an order staying this case pending the resolution of *Rockstar Consortium US LP v. Samsung Electronics. Co., Ltd.*, Civil Action No. 13-cv-0900-JRG, pending in the United States District Court for the Eastern District of Texas.

Respectfully submitted,

Dated May 9, 2014.                    By: */s/ Joshua W. Budwin*

Courtland L. Reichman (SBN 268873)
McKool Smith Hennigan, P.C.
255 Shoreline Drive Suite 510
Redwood Shores, CA 94065
(650) 394-1400
(650) 394-1422 (facsimile)

Mike McKool (Admitted *Pro Hac Vice*)
mmckool@mckoolsmith.com
Douglas A. Cawley (Admitted *Pro Hac Vice*)
dcawley@mckoolsmith.com
Ted Stevenson III (Admitted *Pro Hac Vice*)
tstevenson@mckoolsmith.com
David Sochia (Admitted *Pro Hac Vice*)

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

985328

**RA037**                    13-cv-5933-CW

dsochia@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
(214) 978-4000
(214) 978-4044 (facsimile)

Joshua W. Budwin (Admitted *Pro Hac Vice*)
jbudwin@mckoolsmith.com
McKool Smith, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
(512) 692-8700
(512) 692-8744 (facsimile)

***Attorneys for Defendants***
***Rockstar Consortium U.S. LP and***
***MobileStar Technologies LLC***

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1404, Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC's ("MobileStar") (collectively "Defendants") respectfully move this Court for an order transferring this case to the U.S. District Court for the Eastern District of Texas ("EDTX"). Transfer is appropriate under 28 U.S.C. § 1404(a).[1] Defendants have deep ties to the EDTX, where cases against Google and five other Texas defendants are already pending. Rockstar's headquarters, witnesses, and evidence are all located in the EDTX. And Google does not argue that its declaratory judgment claim could not have been brought in the EDTX.

Ultimately, the EDTX is the most convenient venue for this suit due to considerations of judicial economy: the EDTX Court is situated to resolve all of Defendants' claims against Google, as well as all of Defendants' related claims against the other Texas defendants. In its Texas case, Google has not moved to sever itself from Samsung, its EDTX-based co-defendant. Therefore, the *exact same* issues of patent infringement that are present before this Court as to Google and its Nexus devices are also present in the Texas Action. Google presents no reason— other than forum shopping—as to why it was forced to file its complaint for declaratory relief in this District as opposed to intervening in the Texas Action. Judicial economy is not served by conducting parallel proceedings in this District and the EDTX concerning Google's infringement of the patents-in-suit by the Google Nexus devices at-issue in both forums.[2]

---

[1] Google has alleged that Defendants previously raised transfer under § 1404 (Dkt. 30-4 at 23). Defendants have not. *See* Dkt. 39-4. In their Motion to Dismiss, Defendants asked the Court to decline to exercise jurisdiction—an argument that shares common factors with the § 1404(a) analysis. But Defendants have not previously moved to transfer under § 1404(a) or based on *forum non-conveniens*, nor have Defendants asked for a stay. As such, Defendants do not believe, and do not intend for this to be, a motion for reconsideration pursuant to L.R. 7-9.

[2] Google's complaint refers to and seeks an adjudication of non-infringement regarding what it terms the "Android Platform." However, that term is vague, not tied to any particular product offered by Google or any Texas defendant. *See e.g.,* Dkt. 61 at ¶ 31.

1

To the extent that the Court denies transfer, Defendants alternatively request that the Court stay this case pending the outcome of the related Texas Action. Google is a party to one of the Texas cases, Google's purported "customers" are parties to the other five Texas cases, and the EDTX court will be able to resolve all of the issues raised in Google's declaratory complaint, as well as the additional issues unique to each Texas defendant that are not before this Court. Additionally, the jurisdictional concerns presented in Defendants' Motion to Dismiss and request for certification for interlocutory review are not present in the Texas Action, where Defendants and each Texas defendant (including Google) are subject to personal jurisdiction.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *MTS Sys. Corp. v. Hy-Sitron, Inc.*, 2006 U.S. Dist. LEXIS 66338, at *5 (N.D. Cal. Sept. 1, 2006) (quoting 28 U.S.C. § 1404(a)). In addition to the three factors identified in § 1404(a), the Ninth Circuit provides other factors the Court may consider: ease of access to the evidence; familiarity of each forum with the applicable law; feasibility of consolidation of other claims; any local interest in the controversy; relative court congestion and time to trial in each forum; location where the relevant agreements were negotiated and executed; the parties' contacts with the forum; difference in the costs of litigation in the two forums; and availability of compulsory process to compel attendance of unwilling non-party witnesses. *TransPerfect Global, Inc. v. MotionPoint Corp.*, 2010 U.S. Dist. LEXIS 99947, at *4 (N.D. Cal. Sept. 13, 2010) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)). Another factor the Ninth Circuit has identified is the plaintiff's choice of forum. *Id.* (citing *Secs. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)).

Unlike the controlling standard for the motion to transfer venue under 28 U.S.C. § 1391 that was raised in Defendants' Motion to Dismiss—which required that this Court accept facts alleged in the complaint and resolve any conflicts in the allegations and evidence in the non-

2

movant's favor—the standard for a motion to transfer venue under 28 U.S.C. § 1404 permits fact-finding and does not require the Court to accept the allegations as plead by Google in its complaint as true. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors."); *Hoover Grp. v. Custom Metalcraft*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("Venue is based on the facts alleged in the well-pleaded complaint. . . . in deciding the question of the defendants' contacts with this district for venue purposes, the Court will accept as true the facts pleaded in plaintiffs' complaint") (citations omitted).

## III.   STATEMENT OF FACTS

### A.   Nortel and Defendants' Longstanding Ties to the EDTX

*Nortel, Defendants, and the Patents-in-Suit.* Defendants are the assignees of intellectual property that resulted from research and development performed by Nortel Networks Ltd. (Canada) and Nortel Networks Inc. (U.S.) (collectively "Nortel"). Nortel's worldwide headquarters was located in Ontario, Canada, while its largest R&D facility was in Ottawa, Canada. Powers Decl. ¶ 8. For twenty years, the headquarters for Nortel's U.S. entity and its largest U.S. facility (with approximately 10,000 employees) was in Richardson, Texas. *Id.* Nortel conducted patent prosecution and licensing activities from Richardson. *Id.* While Nortel maintained a satellite office in Santa Clara, California (that, unlike the Texas office, had no relation to the patents-in-suit), the Santa Clara office never served as Nortel's "primary" U.S. campus. *See id.* ¶ 38.

After confronting bankruptcy in 2009, in 2011 Nortel held an auction for its patents, including the patents-in-suit. In this auction, Google made an initial stalking horse bid of $900 million. *Id.* ¶ 21. Google ultimately lost the auction to Rockstar Bidco LP, which paid $4.5 billion to acquire Nortel's patents, including the patents-in-suit. *Id.* Rockstar Bidco LP—a distinct entity from Rockstar—assigned over 1,100 of the Nortel patents directly to Apple,

3

assigned some of Nortel's other patents directly to Rockstar's other limited partners, and assigned most of the remaining Nortel patents (including the patents-in-suit) to Rockstar. *Id.*

Rockstar is a Delaware limited partnership. Rockstar's limited partners are: Apple, BlackBerry, Ericsson, Microsoft, and Sony, each with a minority ownership percentage. *See* Dkt. 22; Powers Decl. ¶ 10 (setting forth the legal name of each). Ericsson's U.S. headquarters are located within the EDTX; BlackBerry is in the Dallas, Texas area, within just miles of the EDTX; Microsoft is in Seattle, Washington; Apple is in the Northern District of California ("NDCA"); and Sony is in New Jersey. *See* Exs. 1-2. Rockstar's general partner is Rockstar Consortium LLC, a Delaware limited liability corporation.[3] Dkt. 30-4 at 11-12; Dkt. 58 at 17.

After receiving the assignment of patents from Rockstar Bidco LP, Rockstar subsequently created subsidiary entities for the purpose of licensing its intellectual property in different markets, which generally relate to different technologies. Powers Decl. ¶ 36. Rockstar then assigned certain patents corresponding to different market segments and technology areas to those newly-created subsidiaries. *Id.* For example, MobileStar focuses on licensing patents related to mobile device technology, NetStar Technologies focuses on search engine technology, Bockstar Technologies focuses on technology for network and computer components, and Constellation Technologies focuses on technology for telecommunications service providers to deliver cable, telecommunications, and other multimedia services. *Id.* Today Rockstar owns two of the patents-in-suit. *Id.* ¶ 5. MobileStar owns five of the patents-in-suit and is the exclusive licensee (from Rockstar) of the other two patents, within its field of use. *Id.* ¶ 5.[4]

---

[3] Google's Opposition to Rockstar's Motion to Dismiss incorrectly identified Kasim Alfahali, Ericson's Chief Intellectual Property Officer, as the President of Rockstar Consortium LLC. Dkt. 30-4 at 11-12. Google's identification of Rockstar Consortium LLC's officers was incorrect. Rockstar Consortium LLC's CEO is John Veschi. Ex. 3.

[4] MobileStar was not created as a "sham entity" for the purpose of venue manipulation. MobileStar, like Rockstar, is resident in the EDTX (just like Nortel before) and both Rockstar and MobileStar are party to the Texas Actions. Had Rockstar created MobileStar as a "sham" entity for the purpose of evading personal jurisdiction or manipulating venue, Rockstar would have assigned all of the patents-in-suit to MobileStar and would not have made itself a party to

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

***Defendants' Roots in the EDTX.*** With the formation of Rockstar, which acquired the patents-in-suit from Rockstar Bidco LP, Rockstar also acquired many former Nortel employees responsible for licensing and prosecuting the Nortel patents, including the patents-in-suit. Powers Decl. at ¶ 22. Additionally, Rockstar leased Nortel's Richardson, Texas office space where many of Nortel's patent files were already located, including files relevant to the patents-in-suit. *Id.* ¶ 31. In August 2012, after Nortel sold its Richardson campus during its bankruptcy proceedings, Rockstar signed a seven-year lease for its current offices in nearby Plano, Texas, within the EDTX. *Id.* ¶ 23. Today both Rockstar and MobileStar are headquartered out of the Plano office. *Id.* ¶ 28. The office contains 8,125 square feet, with 10 assigned offices, 2 guest offices, 4 conference rooms, 7 work areas, and storage space. *Id.* ¶ 24. Rockstar has 15 full-time employees in the U.S., including five full-time employees in Plano and others who spend significant time there. *Id.* ¶ 25. No employees live or work in California.[5] *Id.* ¶ 29. Eight of Rockstar's U.S. employees have relevant information about the patents-in-suit; three of them work full-time out of the Plano office, one lives in Pennsylvania, one lives in Colorado, one lives in Massachusetts, one lives in North Carolina, and one lives in Florida.[6] *Id.* ¶ 30.

---

the Texas Actions. That Rockstar and MobileStar are both resident in the EDTX, Rockstar maintained ownership of certain of the patents-in-suit, and Rockstar made itself a party to the Texas Actions belies any suggestion that MobileStar's creation constitutes some jurisdiction or venue-driven machination. Additionally, Rockstar and MobileStar have jointly communicated with potential licensees regarding the patents-in-suit—sending correspondence to licensees regardless of location. *See* Ex. 4.

[5] Mark Wilson was previously an independent contractor of Rockstar who resided in California. Mr. Wilson had provided Rockstar with "licensing consulting services." Powers Dec. ¶ 37. Mr. Wilson never had any substantive involvement with any of the patents-in-suit or any of the Texas defendants. *Id.* In addition, Mr. Wilson never had any contact whatsoever with any potential licensees in California regarding Rockstar's patents. *Id.* His contract ended on March 31, 2014, was not renewed, and he no longer consults for Rockstar. *Id.*

[6] Additionally, two Rockstar board members live and work in EDTX or nearby. Kasim Alfalahi, a Rockstar Board member and Chief IP officer at Ericsson, works in the EDTX, across the street from Rockstar's Plano office. Powers Decl. ¶ 18. Randy Mishler, another Rockstar Board member and Senior Director of IP Licensing at BlackBerry, works in nearby Irving, Texas. *Id.* ¶ 28. Mr. Mishler is also a former Nortel patent attorney. *Id.*

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

### B.    Google's Connections to the Eastern District of Texas

Although in 2013 Google closed its EDTX office, Google still maintains at least two Texas offices, in Dallas (approximately 20 miles from the EDTX) and Austin. Exs. 5, 6. Google's Austin office focuses on developer relations and technical solutions, among other issues. Ex. 5. Google's Dallas office contains departments for design and engineering, as well as sales. Ex. 6. Publicly available information suggests that Google's Texas employees work on the development of the Android platforms. Specifically, Jeff Hamilton, a software engineer on Google's Android team who specializes in "[o]perating systems development for mobile devices," lives in Austin, Texas. Ex. 24.

### C.    Defendants File the Texas Actions, Google Files This Case

On October 31, 2013, Defendants filed lawsuits in the EDTX (the "Texas Actions") against mobile device manufacturers ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE (the "Texas defendants") alleging infringement of the patents at issue in this case. Ex. 7. The EDTX was the logical choice of forum because Defendants, along with Texas defendant Samsung, are each headquartered in the EDTX (and Texas defendant ZTE is also headquartered in Texas, only a few miles from the EDTX border). Exs. 8-11. Moreover, each of the Texas defendants sells infringing products within the EDTX and is subject to personal jurisdiction there. *See, e.g.,* Ex. 12 at 4-5. Rather than intervene in the Texas Action, however, Google filed this action. Dkt 1. On December 31, 2013, Defendants added Google as a co-defendant to the Texas Action involving EDTX-headquartered defendant Samsung, and subsequently added claims of infringement as to each of the patents-in-suit. Case No. 2:13-cv-00900, Dkt. 19; Ex. 12. As of this date, neither Google nor EDTX-based Samsung have moved to sever their joinder in a single action in the EDTX. *See* Ex. 13.

6

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

**RA044**

## IV. THE COURT'S PERSONAL JURISDICTION DECISION SHOULD NOT IMPACT THE TRANSFER ANALYSIS

The Court's decision regarding personal jurisdiction should not impact its transfer analysis.[7] The Court decided the personal jurisdiction question in the context of a motion to dismiss and/or transfer venue under 28 U.S.C. § 1391. *See* Dkt. 58 at 5-7. Its decision was therefore based on facts from Google's complaint, and the controlling standard required resolving any "conflicts in the allegations and evidence . . . in [Google's] favor." *Id*. at 5; *see also id*. at 19 ("with conflicts in the allegations and evidence resolved in its favor, Google has shown that it is likely that Defendants have created continuing obligations with a forum resident…"). As a result, the Court's personal jurisdiction decision accepted Google's pleaded allegations as true—including allegations that (as shown of the facts presented herein) are demonstrably false.

Three examples underscore the relevant errors in Google's pleadings which the Court was bound to accept as true in deciding Defendants' Motion to Dismiss. First, Google has "allege[d] that Apple is a majority shareholder of Defendants. . . ." Dkt. 58 at 17. Apple is not a majority shareholder of Defendants. Powers Dec. ¶ 35; *see also* Ex. 14 (article cited by Google and the Court referring to each Rockstar limited partner, including Apple, as a "minority" owner).[8] Second, Google "allege[d] that Rockstar created MobileStar solely to dodge jurisdiction. . . ." Dkt. 58 at 10. But the sworn facts, contrary to Google's unsupported pleadings, show that Rockstar formed MobileStar to function as its mobile device licensing entity, resident

---

[7] Nor should the Court's denial of Rockstar's Motion to Dismiss under 12(b)(2) and 12(b)(3) control here. Rockstar's Motion to Dismiss was based on the application of the first-to-file rule and the Court's discretionary power to entertain this declaratory action. Dkt. 19-4 at 17-23. Contrary to Google's contention, Defendants have not yet filed a motion to transfer venue under 28 U.S.C. § 1404(a) on the basis of *forum non conveniens* under § 1404(a). Dkt. 39-4 at 15.

[8] Rockstar is a Delaware limited partnership comprised of partners, not shareholders. Powers Decl. ¶ 10. Rockstar's limited partners each hold a minority ownership percentage. *Id*. Rockstar's general partner is Rockstar Consortium LLC, a Delaware limited liability corporation. Dkt. 58 at 17.

7

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

in the EDTX together with Rockstar. Powers Dec. ¶ 36. As explained above, Rockstar creates different legitimate business entities to license its intellectual property in different market and technology areas, including NetStar Technologies, Bockstar Technologies, and Constellation Technologies. Powers Dec. ¶ 34. Third, "Google allege[d] that Apple . . . exerts substantial control over [Defendants], and as a result Defendants are obliged to act on Apple's behalf in a campaign to attack Google's Android platform." Dkt. 58 at 17. But the facts, contrary to Google's allegations, show that Apple does not control Rockstar's litigation decisions, and that Rockstar consists of five minority limited partners of which Apple is only one. Powers Dec. ¶ 33. Rockstar has "an arm's length relationship" with its minority limited partners, including Apple. Ex. 14 at 66.[9] Unlike in the personal jurisdiction context—where the Court was required to accept Google's pleaded "facts" as true—the Court now has the benefit of weighing the sworn evidence before it. *Stewart*, 487 U.S. at 29.

## V.    THE SECTION 1404 FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER

This action "might have been brought" in the EDTX because there is no dispute that Defendants are subject to personal jurisdiction there. *See* 28 U.S.C. § 1404(a). In contrast, Defendants contest personal jurisdiction here (a question which the Court has resolved against Defendants). *See* Dkt. 58; Dkt. 66. Accordingly, the analysis will turn on the private and public interest factors. While a number of the factors weigh heavily in favor of transfer, ultimately consideration of efficient use of judicial resources should weigh dispositively in favor of transfer to the EDTX.

### A.    The Interests of Justice and Efficient Use of Judicial Resources Weigh Dispositively in Favor of Transfer

---

[9] Even if Apple could act to cause Rockstar to undertake certain litigation decisions, under the Delaware limited liability partnership statute that Rockstar is organized under, a limited partner may "act . . . [to] cause a general partner or any other person to take . . . any action" without being found to direct or control the limited partnership. Del. Code Ann. tit. § 17-303 (2014).

Here principles of judicial economy and comity weigh in favor of transfer of Google's declaratory judgment action to the EDTX. Indeed, these considerations should be determinative of the transfer analysis in this case. *See Cadence Design Sys. v. OEA Int'l, Inc.*, 2011 U.S. Dist. LEXIS 106739, at *10-12 (N.D. Cal. Sept. 19, 2011) (Wilken, J.). "The Supreme Court has emphasized that judicial economy should play a role in transfer matters." *In re Microsoft Corp.*, No. 2014-123, slip op. at 2 (Fed. Cir. May 5, 2014) (non-precedential) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 643-46 (1964)). As the Supreme Court said in *Continental Grain*, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). Accordingly, "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010); *see also In re Eli Lilly & Co.*, 541 Fed. App'x 993, 994 (Fed. Cir. 2013). Indeed, "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997); *see also London & Hull Mar. Ltd. v. Eagle Pac. Ins. Co.*, 1996 U.S. Dist. LEXIS 22893, at *12-13 (N.D. Cal. Aug. 14, 1996) (Wilken, J.) ("The 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way.").

### 1. *Failure to Transfer Will Result In Waste of Judicial Resources*

The Texas Action involving Google as a co-defendant with Samsung is one of six filed by Defendants in the EDTX involving the same patents and technologies, which the EDTX has already consolidated for all pretrial purposes (other than deciding the Texas defendants' respective challenges to venue). Ex. 15, Case 2:13-cv-00894, Dkt. 31. At a minimum, the six cases in the Texas Action will call for common information regarding claim construction, the

9

RA047

technology of the patents-in-suit, industry information regarding operating systems for mobile devices, the Nortel auction, as well as Nortel's and Rockstar's history and corporate structure. Powers Dec. ¶ 3. If both this Court and the EDTX decline to grant the motions to stay or transfer venue presently pending before them, Google and Defendants would continue to litigate duplicative claims in both places, in addition to Defendants' other claims in the EDTX against each of the Texas defendants.[10] The prospect of parallel litigation is a very real specter: Google has not moved to sever its case in the EDTX from the joinder with Samsung—whose headquarters, witnesses, and documents are located within the EDTX.

Entertaining Google's action in this Court will be a waste of judicial resources given the existence of the parallel Texas Actions and the overlap in the patents and the parties (Google, Rockstar, and MobileStar) between the actions. Google is a party to one of the Texas Actions, each of those actions has been consolidated for pre-trial purposes, and Google can raise its infringement concerns there as a counterclaim. *See Proofpoint, Inc. v. InNova Patent Licensing, LLC*, 2011 U.S. Dist. LEXIS 120343, *22-23 (N.D. Cal. Oct. 17, 2011) (encouraging the declaratory judgment plaintiff "to move to intervene in the Texas Action or bring a separate action for declaratory judgment in the Eastern District of Texas and seek to relate that claim to the Texas Action"). In contrast, none of the Texas defendants are party to this case, and Defendants' claims against the Texas defendants will not, for the reasons set forth below, be resolved here.

### 2. *Denying Transfer Creates the Risk of Inconsistent Judgments*

A related case involving the same parties as this case, issues, witnesses, and similar facts, is pending in the EDTX. Therefore, "[i]f this case is not transferred, inconsistent judgments

---

[10] More of the Texas defendants are closer to the EDTX than the NDCA. *See* Budwin Dec. ¶ 2. Here, as in *In re Apple*, "[a]s compared to those cases in which this court granted mandamus, here there are fewer defendants in the [NDCA] and potential evidence identified in the [EDTX], along with defendants and witnesses that will find it easier and more convenient to try this case in the Eastern District of Texas." *In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012).

10

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

could result, which could work an injustice." *London & Hull Mar. Ltd. v. Eagle Pac. Ins. Co.*, 1996 U.S. Dist. LEXIS 22893, at *12-13 (N.D. Cal. Aug. 14, 1996) (Wilken, J.). Under these circumstances, judicial economy mandates that this case be transferred to the EDTX. *See id*.

### 3. *The Texas Actions Can Resolve "Major Issues" Not Before This Court*

The EDTX may properly resolve all of the issues raised by Defendants and the Texas defendants (including Google). In contrast, even if the EDTX court were to grant a stay of the Texas Actions, this Court cannot resolve the "major issues" of infringement, invalidity, and damages raised in the Texas Actions. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011); Dkt. 65 at 3 (articulating Google's position that "whether the results of this action will bind parties to Rockstar's Halloween actions in the Eastern District of Texas . . . [is] not before this Court"). Accordingly, judicial economy dictates that the EDTX should resolve Defendants' claims against Google *and* the Texas defendants.

First and foremost, none of the Texas defendants have agreed to be bound by the resolution of this case (*i.e.* infringement). *See, e.g., Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1082 (Fed. Cir. 1989) (noting that GM had "not agreed to be bound by the Illinois decision or any injunction against Motorola"); *Pragmatus,* 2012 U.S. Dist. LEXIS 189149, at *8 (observing that "it appears there is still some indecision regarding agreements to be bound by the Google"). Nor would any Texas defendant agree to be bound by the infringement determinations in this case—because each Texas defendant's accused products reflect differences that are material to adjudicating infringement. Each of the accused devices in each of the Texas Actions are independently designed, manufactured, and imported into the U.S. by each Texas defendant. While the accused products use a version of the "Android" operating system, Android is only one part of the infringing devices and is an open-source software project with many non-Google contributors. Ex. 16; Ex. 17 at ¶ 4. Each of the Texas defendants develops and contributes to the source code to create its own, unique version of the Android code that is used in the products accused of infringement in the Texas actions. *See* Exs. 18-23, 25-26.

11

The Texas defendants do not use Android in the form that it "originates from Google." *See, e.g.,* Exs. 18-20. Defendants' infringement contentions (created without the benefit of discovery and served after this Court's ruling on Defendants' Motion to Dismiss) reveal considerable differences between each Texas defendants' implementation of Android in their accused products suggesting that each Texas defendant individually customizes Android for use in its accused products—and that those changes are material to the infringement allegations in the Texas Actions. *See, e.g.*, Exs. 21, 28-29; *see also* Ex. 22. Thus, none of the Texas defendants have conceded that they make use of Android or the "Android platform" (the term used in Google's Complaint) as that open-source software project is managed by Google, without making modifications material to Defendants' infringement claims in the Texas Actions. Indeed, many of the Texas defendants openly admit that they modify the open-source Android code and employ many people who have the sole job of modifying the open-source Android code for use in defendant-specific products.[11] *See, e.g.*, Exs. 23-26; *see also* Ex. 27, *Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. C 12-747, Dkt. 52 at 5 (N.D. Cal. May 30, 2012) (declining to find that claims against third-party "customers" would be "largely resolved" by claims against party-manufacturer where "there is at least some indication that the third-party defendants may alter the products they purchase from [manufacturer] before reselling them to consumers or retailers").

Google understands the reality that its so-called "customers" in the Texas Action independently modify the Android code to suit their own needs, and has sought to downplay its importance before the Court. In the Joint Case Management Statement, Google takes the position that "questions regarding whether the results of this action will bind parties to Rockstar's Halloween actions in the Eastern District of Texas . . . are not before this Court." Dkt. 65 at 3.

---

[11] Samsung's employment of many "Android" engineers, including those located at its EDTX headquarters, suggests the scope and importance of its work to customize Android for its own needs. *See* Ex. 25. Indeed, Samsung's extensive modifications to the open-source Android code has been an ongoing source of contention between Google and Samsung. Ex. 26.

12

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

RA050

Google also refused to ask this Court to require Google to explain whether Google's complaint has sufficiently identified the "Android Platform" or to identify any specific product using the "Android Platform." *Id*. at 4. This is an implicit admission that Google does not have access to the Android code used by each Texas defendant because each Texas defendant has its own unique source code and hardware configurations that are not supplied by Google, or shared by the Texas defendants with Google.

Absent each Texas defendant agreeing to be bound by this Court's determination of infringement, each Texas defendant being added to as a party to this case, or Google's ability to produce the code and hardware used by each Texas defendant's accused products for an infringement adjudication by this Court, there is no reason to believe that resolution of this case will resolve *any* of the infringement issues related to any of the Texas defendants other than Google. *Pragmatus*, 2012 U.S. Dist. LEXIS 189149, at *8.[12]

Second, this case cannot resolve the major, hardware-specific issues raised by Rockstar's infringement claims against the Texas defendants. While the devices accused of infringement in the Texas Action each run different versions of the Android operating system, the Texas Action is *not* about Android. Of the seven patents at-issue in this case and the Texas Action, *none* is alleged by Defendants, Google, or the Texas defendants to read solely on functions or features found in Android software. *See, e.g.,* Dkt. 1; Exs. 12, 28-29. As recognized by this Court, at least the '551 Patent is hardware specific with no tie to Android whatsoever alleged by any party. *See*

---

[12] Google represented in its Complaint and in its Opposition to Defendants' Motion to Dismiss that its Declaratory Complaint was proper because Defendants were suing its customers in Texas and that its Declaratory Complaint was first filed under the "manufacturer-customer" exception to the first-to-file rule. *See e.g.* dkt. 1 at 1 (Defendants have "filed seven lawsuits claiming that Google's customers infringe . . ."); dkt. 30-4 at 20 (Defendants have "sue[d] Google's customers, the Android manufacturers named in the Halloween actions"); *see also* dkt. 58 at 24 (Court finding "the relationship between Google and the Halloween defendants is one of manufacturer and customer."). If this case is truly a "manufacturer-customer lawsuit" then Google as the "manufacturer" should have access to the "Android" code used by its "customers" that forms the basis for its Declaratory Complaint of non-infringement before this Court—Google should have this information without having to join those "customers" to this case.

13

Dkt. 58 at 22 n.10; Exs. 28-29.[13] As to the other six patents at-issue, each covers the combination of hardware (designed solely by the Texas defendants and *not* Google) with software. These patents require "sending,"[14] "receiving,"[15] "displaying,"[16] and "storing"[17]—functionality that occurs within the Texas defendant-specific hardware.[18]

Third, Google has not pled invalidity of any of the patents-in-suit this case, whereas each of the Texas defendants will almost certainly file invalidity defenses and counterclaims. Even if Google adds invalidity claims to this case, no Texas defendant has agreed to be bound by the validity determination in this case nor has any Texas defendant agreed to be estopped from making any invalidity arguments that it or Google could have made before this Court.

Fourth, even if resolution of the claims against Google would resolve the issues of infringement and invalidity related to the Texas defendants and their unique products (which it would not), it would not resolve any of the Texas defendant-specific damages issues.[19] As

---

[13] Rockstar has attached selected examples of the 181 infringement contention claim charts and teardowns that it separately prepared for each product accused of infringing the '551 patent in the Texas Action. *See* Exs. 28-29. Should the Court wish to review some or all of the additional infringement contentions for the '551 patent to confirm that they all relate solely to hardware, Rockstar would be happy to file them or serve courtesy copies on chambers.

[14] Claims 14, 15, 19, 23, 24, 27, 28, and 31 of the '298; claims 1, and 5 of the '131.

[15] Claims 1, 2, 13 and 14 of the '937; claims 11, 12, 14, 15, 16, 19, 23, 24, 25, 27, 28, 29, 31, and 32 of the '298; claims 1, 4, 8, 21, and 33 of the '973; claims 1 and 5 of the '131; claim 17 of the '572; claim 1 of the '591.

[16] Claims 1-3, 8-11, 13-15, 19, and 20-23 of the '937; claims 1-6, 8-12, 21, and 24-26 of the '973; claim 1 of the '591; claim 17 of the '572.

[17] Claims 17, 19, 23, and 30 of the '298; claim 20 of the '572.

[18] *See Cadence Design Sys..,* 2011 U.S. Dist. LEXIS 106739, at *6 (citing *Microsoft Corp. v. Commonwealth Sci. & Indus. Res. Org.*, 2007 U.S. Dist. LEXIS 91550, at *10 (E.D. Tex. Dec. 13, 2007)) (the customer-suit exception is "inapplicable when a manufacturer makes but a component of an end product, where the end product is accused of infringement.").

[19] "Damages is no less a core issue in a patent infringement case than the issues of infringement and validity." *Secure Axcess, LLC v. Nintendo of Am., Inc.*, 2014 U.S. Dist. LEXIS 30115, at *21 (E.D. Tex. Mar. 7, 2014) (Gilstrap, J.). *See also Nat'l Broom Co. of Cal. v. Brookstone Co.*, 2009 U.S. Dist. LEXIS 69630, at *8-9 (N.D. Cal. July 30, 2009) (ellipsis in original) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F. 2d 735, 738 n.6 (Fed. Cir. 1977)) ("[t]here may be situations,

14

required by the Federal Circuit, Defendants' damages model against each Texas defendant will necessarily be distinct, grounded in the specific facts relating to each defendant and based on an individualized analysis of the sales of the different accused products. *See Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1317-18 (Fed. Cir. 2011). Here, "as to the issue of damages, the claims against [the Texas defendants] are not peripheral to those of" Google. *Secure Axcess*, 2014 U.S. Dist. LEXIS 30115, at *21. As with Google's apparent inability to provide the code and schematics used by its purported "customers" in the Texas Action, Google has also refused to agree to provide damages information related to the products accused of infringement in the EDTX—implicitly confirming that it lacks access to such information. Budwin Dec. ¶ 7.

Finally, there is no dispute that Defendants and each Texas defendant are subject to personal jurisdiction in the EDTX. *See, e.g.*, Dkt. 9 ¶¶ 5-7. Defendants respectfully contest the Court's order denying its Motion to Dismiss and Defendants have asked the Court to certify the issue for review. Dkt. 66.

**B.     Google's Choice of this Forum Amounts to Forum Shopping**

If there is any indication that a plaintiff is forum shopping, its choice of forum will be given little deference. *JACO Envtl. Inc. v. Appliance Recycling Ctrs. of Am.*, 2007 U.S. Dist. LEXIS 27421, at *7 (N.D. Cal. Mar. 27, 2007). In light of the fact that Defendants filed the Texas Actions nearly two months before Google filed this action and that Google could have intervened in the Texas Actions, Google's declaratory judgment action can only be viewed as an attempt at forum shopping. Google "does not argue that its declaratory judgment claim could not have been brought in the Eastern District of Texas." *Cadence Design Sys.*, 2011 U.S. Dist. LEXIS 106739, at *10-12. Yet instead of intervening in the previously-pending Texas Actions to protect the interests of its alleged customers, Google first invited Rockstar to a meeting in

---

due to the prospects of recovery of damages or other reasons, in which the patentee has a special interest in proceeding against a customer itself, … and therefore, less weight should be given to the manufacturer's forum.").

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

**RA053**

California, which Rockstar and MobileStar accepted in good faith, and then six days later Google filed this case—using that meeting as a basis for venue and jurisdiction. Dkt. 19-6 at ¶ 12-13.

Rather than filing this declaratory judgment action in the NDCA, there is no dispute that Google could have moved to intervene in the Texas Actions. Encouraging such venue gamesmanship by Google would set a disturbing precedent—conduct that has been "knowingly undertaken to manipulate venue in this case . . . should not be rewarded." *MobileMedia Ideas LLC v. HTC Corp.*, 2012 U.S. Dist. LEXIS 62153, at *8 (E.D. Tex. May 3, 2012). It would also chill extra-judicial meetings between parties who may have adverse legal interests, as parties will be afraid to meet without unintended consequences related to venue or jurisdiction.

### C. Convenience of The Parties and Party Witnesses Favors Transfer

It would be inconvenient for Defendants to litigate this matter in this District. Defendants' only office is located in Plano, Texas. Powers Dec. ¶ 23; *see Transperfect*, 2010 U.S. Dist. LEXIS 99947, *7. Defendants have no ties to the NDCA. Rockstar employees with relevant knowledge live and work in the EDTX. The EDTX is also more convenient for those employees who are home-based (primarily on the East Coast) and regularly commute to Plano. Fako Dec. ¶ 4; Veschi ¶ 2; McColgan ¶ 3. Rockstar employees with relevant knowledge include Donald Powers, who works full-time in the Plano headquarters and has material information related to this suit, including knowledge of Nortel and Rockstar's corporate organization and structure, documents investigated for purposes of this suit, and employees and other parties with knowledge about the patents-in-suit. Powers Decl. ¶¶ 1-3, 30. Bernard Tiegerman, Rockstar's Senior Patent Counsel, and formerly Nortel's licensing counsel, possesses material information related to Defendants' licensing efforts and was involved in the prosecution of U.S. Patent No. 6,463,131. Tiegerman Decl. ¶¶ 3-4. Mr. Tiegerman works full-time out of Rockstar's Plano, Texas headquarters and lives in Dallas. *Id*. Erik Fako is Rockstar's Senior Patent Counsel for Assertion and Litigation and was formerly Nortel's in-house prosecution counsel involved in the prosecution of U.S. Patent No. 6,128,298. Fako Decl. ¶¶ 3-4. Mr. Fako routinely works out of

16

985328

**RA054**

13-cv-5933-CW

Rockstar's Plano, Texas headquarters. *Id*. Mark Hearn is currently Senior Licensing Counsel for Rockstar and for over 13 years was Senior Licensing counsel for Nortel (in its Richardson, Texas office). Hearn Decl. ¶ 1. He currently works full-time out of Rockstar's Plano, Texas office and lives in Dallas. *Id*.; *see also* McColgan Decl. and Veschi Decl.

### D. Convenience of Non-Party Witnesses Favors Transfer

The most important non-party witnesses will likely be located in the EDTX, on the East Coast, or in Canada. On balance, this factor cuts decisively in favor of transfer.[20]

*Prior Artists*. The *hundreds* of inventors on the prior art patents cited by the patents-in-suit are scattered throughout the world, including at least 12 in Texas, 91 on the East Coast, and 24 outside the U.S. Budwin Decl. ¶ 4. Of the prior art inventors residing in Texas, three appear to reside in the Dallas area—within the subpoena power of the EDTX court. *Id*. And importantly, inventors of prior art rarely, if ever, actually testify at trial, and therefore it is more important to examine other categories of witnesses.[21]

*Rockstar Limited Partners and Nortel Bidders Will Be Irrelevant.* Rockstar's limited partners do not direct or control Rockstar's licensing efforts, nor does any limited partner have a majority stake in Rockstar. Powers Dec. ¶¶ 34-35; *see also* Ex. 14 (each of Rockstar's limited partners act at "arm's length" and each limited partner, including Apple, owns a "minority" stake). Any focus on Apple as a non-party witness is inapposite because the parties do not dispute the amounts of the bids placed for the Nortel patent portfolio. In addition, any unidentified "witnesses from Apple" warrant no weight in the § 1404 analysis because such

---

[20] The convenience of witnesses includes "a separate but related concern, the availability of compulsory process to bring unwilling witnesses live before the jury." *Transperfect*, 2010 U.S. Dist. LEXIS 99947, *8. *See also Applied Elastomerics*, 2006 U.S. Dist. LEXIS 75339, at *16 (noting that "live testimony is preferable to depositions" and that "transfer of this action would allow for live testimony of important witnesses.") (citing *Geo. F. Martin Co. v. Royal Ins. Co. of Am.*, 2004 U.S. Dist. LEXIS 8927, at *3 (N.D. Cal. May 14, 2004)).

[21] *Synopsys Inc. v. Mentor Graphics Corp.*, 2013 U.S. Dist. LEXIS 48544, at *15 (N.D. Cal. Apr. 3, 2013) (explaining that it "it appears unlikely [prior art] witnesses would be needed, even if a claim of invalidity is based on any such prior art.").

17

assertions lack the required level of specificity.[22] However, to the extent that testimony from

Apple is relevant, testimony from the other Nortel bidders (such as Google)[23] and other Rockstar

limited partners would be equally relevant. Rockstar has two limited partners in Texas: Ericsson

in the EDTX and BlackBerry in the Dallas area, just a few miles from the EDTX. Exs. 1, 2.

*Inventors Across the Country*. The majority of the inventors of the patents-in-suit reside

in Canada or the East Coast (New York, Massachusetts, New Hampshire, North Carolina).

Budwin Decl. ¶ 3-5. Five named inventors of the patents-in-suit (two from Canada and subject to

the Hague Convention) have agreed to travel to EDTX to provide testimony.[24] *See* Wooten

Decl., Colvin Decl., Poisson Decl., St. George Decl., and Egan Decl. Each has declared that the

EDTX is a more convenient forum than the NDCA. *Id.* None have agreed to travel to the NDCA

to provide testimony, and none have agreed the NDCA is more convenient. *Id.*

*Prosecuting Attorneys.* The attorneys who prosecuted the patents-in-suit are likely to

have material information related to this case.[25] In addition to the prosecuting attorneys presently

employed by Rockstar, two of the third-party attorneys responsible for prosecuting the patents-

in-suit also live and work in Texas (one in Richardson, within the EDTX), three live in North

Carolina, one lives in New Jersey, and none live in California. Budwin Decl. ¶ 6.

*Former Nortel Employees.* Several third-party former Nortel employees who possess

material information reside in or near the EDTX. Art Fisher, Nortel's VP for IP Law from 1998–

---

[22] *See Natural Wellness Ctrs. of Am., Inc. v. Golden Health Prods.*, 2013 U.S. Dist. LEXIS 8658, at *16 (N.D. Cal. Jan. 22, 2013) (Wilkens, J.) (denying transfer where while Defendants "fail[ed] to explain adequately how these [non-party] witnesses' testimony is material to this dispute."); *see also Wi-Lan Inc. v. HTC Corp.*, 2013 U.S. Dist. LEXIS 99635, at *30 (E.D. Tex. July 17, 2013) ("Defendants are asking the Court to attribute more weight based on this assertion of a potential likelihood that an un-named and otherwise unidentified third-party witness may or may not be used for trial sometime in the future.").

[23] The former head of patent strategy for Google, who likely has relevant knowledge regarding Google's bidding for the patents-in-suit, now lives on the East Coast. Ex. 35.

[24] *Synopsys Inc.*, 2013 U.S. Dist. LEXIS 48544, at *14.

[25] *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (prosecuting attorneys are likely witnesses).

18

2004, resides in the Dallas area. Powers Decl. ¶ 33. Rich Weiss served as Nortel's Deputy IP Counsel from 1997–2008 and works in McKinney, in the EDTX. *Id.* Mr. Fisher and Mr. Weiss possess knowledge related to Nortel's licensing practices and policies during the years of their employment, which may in turn relate to the damages issues in this case. *Id.* No relevant former Nortel employee has been shown to reside within the NDCA.

### E.    Ease of Access To Evidence Weighs in Favor of Transfer

While the bulk of documents generally reside with the infringers, that evidence "cannot be the sole focus of this Court's venue analysis." *Virtualagility, Inc. v. Salesforce.com, Inc.*, 2014 U.S. Dist. LEXIS 12015, at *12 (E.D. Tex. Jan. 31, 2014); *see also Panavision Int'l L.P v. Toeppen*, 141 F.3d 1315, 1323 (9th Cir. 1998).[26] The location of Defendants' and non-parties' evidence weighs against transfer. Documents related to the patents-in-suit are stored at Defendants' Plano, Texas headquarters within the EDTX. Powers Decl. ¶ 31. Relevant documents in Plano also include historical Nortel files relating to patent licenses, patent licensing efforts, and payment of royalties. *Id.* Many of the documents concerning licensing and monetization of the patents-in-suit have resided in or near the EDTX since their time of creation in the Nortel era. Hearn Decl. ¶ 6.

Courts also routinely look to non-parties' documents. *Mts Sys.*, 2006 U.S. Dist. LEXIS 66338, at *7. Here those may include documents from the non-party inventors who reside outside of California; the patents-in-suits' prosecuting attorneys who reside in Richardson and Irving, Texas; the Texas defendants, including EDTX-headquartered Samsung, and ZTE, which is headquartered only a few miles from the EDTX. *See* Budwin Dec. at ¶ 2; Powers Dec. at ¶ 30.

### F.    Feasibility of Consolidation Favors Transfer

---

[26] *See also Silverlit Toys Manufactory, LTD. v. Absolute Toy Mktg.*, 2007 U.S. Dist. LEXIS 14538, at *31 (N.D. Cal. Feb. 15, 2007) (finding ease of access to evidence to weigh in favor of transfer because "the location of the evidence and witnesses . . . is no longer weighed heavily given the modern advances in communication and transportation.") (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)).

19

"The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *Bite Tech, Inc. v. X2 Impact, Inc.*, 2013 U.S. Dist. LEXIS 31791, at *16 (N.D. Cal. March 7, 2013) (quoting *A.J. Indus., Inc. v. U.S. Dist. Court for C.D. Cal*, 503 F.2d 384, 389 (9th Cir. 1974)). This case and Defendants' case against Google in the EDTX involve wholly overlapping issues as to infringement and damages, including whether and to what extent Google's products (including the Nexus 5, Nexus 7 and Nexus 10) infringe one or more claims of the patents-in-suit. (Defendants contest Google's identification of the "Android Platform.") Each of the claims in this case could be raised by Google as a defense in the Texas Action.

Defendants' claims of infringement against Google are pending in the EDTX. There the same infringement issues raised here as to Google's products are at issue, as well as the infringement claims brought by Rockstar against five other defendants. "Under such circumstances, it is more than simply 'feasible' that the Texas action and the instant action could be consolidated if they were pending in the same district; rather, such consolidation is highly likely." *CoxCom, Inc. v. Hybrid Patents, Inc.*, 2007 U.S. Dist. LEXIS 67168, at 5 (N.D. Cal. Aug. 30, 2007). These cases may be consolidated—indeed Google and EDTX-based Samsung are co-defendants in one action and that action has been consolidated with each of the other Texas Actions for all pre-trial purposes (with the exception of venue). *See id.*; *see also GLT Technovations, LLC v. Fownes Bros. & Co.*, Inc. 2012 U.S. Dist. LEXIS 56028, at *17 (N.D. Cal. April 20, 2012) (considering that "transfer will allow for better coordination with the action currently pending in New York, which involves substantially the same subject matter and parties" and granting transfer).

### G. Rockstar's Meaningful, Longstanding Connections to the EDTX

Defendants' principal place of business is in Plano, Texas, in the EDTX. The Plano office is a fully operational office with full-time employees doing substantial patent prosecution,

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

985328

**RA058**

13-cv-5933-CW

licensing, and litigation support work.[27] Powers Decl. at ¶ 26. For over a decade, Nortel had more than 10,000 employees in Texas, including those persons responsible for prosecuting patents and running programs to monetize patents (including the patents-in-suit) out of Richardson, Texas, less than a mile from the EDTX. Today, Rockstar employs five full-time employees in its Plano office, including three patent attorneys and an office administrator. *Id.* ¶ 25. Rockstar's licensing and litigation activities conducted in the Plano office are within Rockstar's normal course of business, and track Nortel's prior Texas-based activities. *Id.*¶¶ 26, 27. Additionally, Rockstar's in-person board meetings are held at the Plano office, as are its quarterly operations reviews and its annual strategy sessions. *Id.* ¶ 23. Like Nortel before it, Rockstar conducts its ordinary patent prosecution and monetization business out of Texas.

## H.    Local Interest Is, At The Very Least, Neutral

"Local interest arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community." *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Defendants run their business from the EDTX. Powers Decl. ¶ 26. In addition, the patents-in-suit are the result of Nortel's research, and Nortel's long-standing U.S. headquarters was in Richardson, Texas. *Id.* Thus, this factor either favors transfer to the EDTX or is neutral.[28]

---

[27] Rockstar's meaningful ties to the EDTX are a far cry from the type of presence that courts consider ephemeral or an artifact of litigation. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (suggesting that the record will reveal attempts at venue manipulation where a plaintiff's alleged place of business for purposes of the litigation "is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat . . ."). Unlike the venue manipulation facts of *In re Zimmer* and *In re Microsoft*, here Rockstar's licensing and patent prosecution employees in the EDTX are the successors to Nortel's long-standing Texas-based patent prosecution and licensing business. Like Nortel before it, Rockstar conducts its ordinary business out of Texas. Powers Decl. ¶ 26-37; *see In re Microsoft Corp.,* 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer*, 609 F.3d at 1381.

[28] *See Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*, 2006 U.S. Dist. LEXIS 75339, at *18-19 (N.D. Cal. Oct. 6, 2006) (Wilkens, J.); *GLT Technovations, LLC v. Fownes Bros. & Co.*, 2012 U.S. Dist. LEXIS 56028, at *18-19 (N.D. Cal. Apr. 20, 2012).

21

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

## I.    Relative Court Congestion and Time to Trial Somewhat Favor Transfer

The median time to trial for patent cases in this District is 2.72 years. Ex. 31; *see also* Ex. 32, *Contentguard Holdings, Inc., v. Google, Inc.*, No. 2:14-cv-00061-JRG, Dkt. 38 at 11 (E.D. Tex. Apr. 16, 2014). In contrast, the median time to trial in the EDTX is only 2.19 years. *Id.* The Texas Actions have been set for trial in July 2015—just over sixteen months from now, less than two years from their October 31, 2013 filing. Ex. 33. Thus, this factor favors transfer.

## J.    Difference in the Costs of Litigation Favor the EDTX

Litigating this case in the EDTX will be substantially less expensive than in the NDCA. First, the cost savings afforded by judicial economy alone weigh heavily in favor of transfer. This District has recognized that "[w]ith respect to . . . the difference in the costs of litigation in the two forums, logic and experience dictate that litigating two cases in the same forum, whether or not they are ultimately consolidated, will generally entail less expense than litigating two separate cases in widely separated forums." *Sorensen v. Phillips Plastics Corp.*, 2008 U.S. Dist. LEXIS 81710, at *13 (N.D. Cal. Oct. 9, 2008). As discussed above, six cases regarding infringement of the same patents-in-suit remain pending before Judge Gilstrap in the EDTX. Ex. 7 . It will be substantially less expensive for the EDTX to adjudicate Google's already-pending claims there than for both courts to proceed with duplicative, two-track parallel litigation of overlapping issues. *Sorensen*, 2008 U.S. Dist. LEXIS 81710, at *13. Second, regardless of where the trial is held, both parties will likely require witnesses to travel. *See, e.g.*, Ex. 35. "[O]nce such travel occurs, the other costs incurred by foreign and out-of-state witnesses (e.g. food and lodging) are substantially less expensive in Marshall, Texas as opposed to San Francisco, California." *Mears Techs., Inc. v. Finisar Corp.*, 2014 U.S. Dist. LEXIS 56880, at *10 (E.D. Tex. Apr. 24, 2014). Third, any travel required will be less burdensome on Google than on Rockstar, as Google is a "large and sophisticated compan[y], quite accustomed to operating - and litigating - all around the country, including in the E.D. Tex." *Cisco Sys. v. TiVo, Inc.*, 2012 U.S. Dist. LEXIS 112923, at *22 (N.D. Cal. Aug. 10, 2012). Thus, this factor favors transfer.

22

### K. Familiarity With Applicable Law Factor Is Neutral

Both this Court and the EDTX are well versed in patent law. Thus, this factor is neutral.

## VI. IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE TEXAS ACTION

The Texas Action will resolve "major issues" and will simplify this litigation, and may obviate the need for it altogether. Because the Texas Action will answer many, if not all, of the central questions at issue here, if the Court denies transfer then it should at least stay this case and allow the Texas Action to proceed to judgment. *See* Ex. 34, *Google, Inc. v. Contentguard Holdings, Inc.*, No. C 14-00498 WHA, Dkt. 42 at 2 (N.D. Cal. Apr. 15, 2014) (staying Google's declaratory judgment claim in the NDCA and allowing related EDTX cases against Google's alleged "customers" to proceed in the EDTX). This Court should stay this action under its inherent authority because this case is in its early stages (with a case management conference set for May 14, 2014), a stay will simplify the issues, and will not prejudice Google. *See Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2009 U.S. Dist. LEXIS 10939, at *15 (N.D. Cal. Feb. 3, 2009). "A stay may be the most efficient and fairest course when there are 'independent proceedings which bear upon the case.'" *Nat'l Broom Co. of Cal.*, 2009 U.S. Dist. LEXIS 69630, at *4-5 (citing *Levya v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863 (9th Cir. 1979)).

The Texas Actions will resolve each of the infringement claims presently before this Court as to Google's devices, will resolve the infringement of the '551 patent by each of the Texas defendants, and will also resolve whether and to what extent the proprietary modifications made by each Texas defendant to the open-source version of Android, together with the Texas defendant-specific hardware, infringe the other six patents-in-suit in the Texas Actions. This "will efficiently dispose of the infringement issues" present in this case. *Ricoh Company v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003); *see also Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, 2006 U.S. Dist. LEXIS 61944, at *5 (M.D. Fla. Aug. 30, 2006) (stay will "preserve judicial resources, prevent duplicative expenses, and prevent the possibility of

23

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

inconsistent judgments"). Therefore, in the absence of transfer of this case to the EDTX, the Court should stay this case pending resolution of the Texas Action.

## VII. CONCLUSION

For the reasons discussed above, the Court should transfer this action to the EDTX or, in the alternative, stay this case pending the resolution of Defendants' claims against Google in the Texas Action.

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

985328

**RA062**

13-cv-5933-CW

Respectfully submitted,

Dated May 9, 2014.

By:      /s/ *Joshua W. Budwin* _____
         Courtland L. Reichman (SBN 268873)
         MCKOOL SMITH HENNIGAN, P.C.
         255 Shoreline Drive Suite 510
         Redwood Shores, CA 94065
         (650) 394-1400
         (650) 394-1422 (facsimile)

         Mike McKool (Admitted *Pro Hac Vice*)
         mmckool@mckoolsmith.com
         Douglas A. Cawley (Admitted *Pro Hac Vice*)
         dcawley@mckoolsmith.com
         Ted Stevenson III (Admitted *Pro Hac Vice*)
         tstevenson@mckoolsmith.com
         David Sochia (Admitted *Pro Hac Vice*)
         dsochia@mckoolsmith.com
         McKool Smith, P.C.
         300 Crescent Court Suite 1500
         Dallas, TX 75201
         (214) 978-4000
         (214) 978-4044 (facsimile)

         Joshua W. Budwin (Admitted *Pro Hac Vice*)
         jbudwin@mckoolsmith.com
         McKool Smith, P.C.
         300 W. 6th Street, Suite 1700
         Austin, TX 78701
         (512) 692-8700
         (512) 692-8744 (facsimile)

         ***Attorneys for Defendants***
         ***Rockstar Consortium US LP and***
         ***MobileStar Technologies LLC***

25

DEFENDANTS' MOTION TO TRANSFER UNDER
28 USC §1404(A) OR, IN THE ALTERNATIVE, TO STAY

**RA063**

Case 14-147   Document 20-2   Page: 66   Filed: 08/26/2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC,** | |
| **Plaintiffs,** | **Civil Action No.  2:13-cv-00899-JRG** |
| **vs.** | |
| **PANTECH CO., LTD. AND PANTECH WIRELESS, INC.,** | **JURY TRIAL REQUESTED** |
| **Defendants.** | |

**DECLARATION OF DONALD POWERS IN SUPPORT OF PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S RESPONSE IN <u>OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER</u>**

## DECLARATION OF DONALD POWERS

I, Donald Powers, declare as follows:

1.      I have been a member in good standing of the State Bar of Texas since 1986 and am Litigation Counsel for Rockstar Consortium US LP ("Rockstar").  I submit this declaration in support of Rockstar's Response in Opposition to Defendants' Motion to Transfer, which is filed herewith in the case of *Rockstar Consortium US LP, et al v. Pantech Co., Ltd., et al*, Case No. 2:13-cv-00899-JRG.

2.      Prior to my employment with Rockstar, I worked for Nortel for over 13 years as Senior Counsel in the Richardson, Texas, office.  I began my employment with Nortel on February 2, 1998, and left the company in April 2011.  I joined Rockstar in January 2012.

3.      Based on my previous employment with Nortel and present employment with Rockstar, I have relevant knowledge regarding the instant suits, including knowledge of Nortel's corporate organization and structure, Rockstar's corporate organization and structure, documents investigated for purposes of this suit and locations of relevant documents and witnesses, and parties with first-hand knowledge about the patents-in-suit and activities related to those patents. I make this declaration based upon my own personal knowledge unless otherwise indicated herein, and if called as a witness, I could and would competently testify thereto.

4.      I currently reside in Richardson, Texas, in the Eastern District of Texas, where I have lived for 17 years.

5.      Rockstar and MobileStar Technologies LLC ("MobileStar") are the assignee and the exclusive licensee, respectively, of the patents-in-suit, which were previously held by Nortel. Rockstar owns two of the patents-in-suit and previously owned the others, before assigning them to MobileStar.

6.      Rockstar is a Delaware limited partnership.  Rockstar Consortium Inc. is a British Columbia (Canadian) corporation with its office in Ottawa.  The two companies are separate legal entities.

7.      MobileStar is a subsidiary of Rockstar.  MobileStar is based in Plano, Texas.

8.      At the time Nortel filed for bankruptcy, its international headquarters was located in Ontario, Canada, and Nortel's United States headquarters was located at 2221 Lakeside Boulevard in Richardson, Texas—less than one mile from the border of the Eastern District of Texas.  This location was referred to as the Lakeside campus.  On information and belief, the Lakeside campus was built in 1991 and encompassed over 800,000 square feet of office space, including two office buildings.  At its peak around the year 2000, a little fewer than 10,000 employees worked for Nortel in the Dallas area, many of whom lived in the Eastern District of Texas.

9.      In January 2009, at the time Nortel declared bankruptcy, over 2,000 employees worked at Nortel's office in Richardson, Texas.

10.     The equity owners of Rockstar are Apple Incorporated ("Apple"), BlackBerry Corporation ("BlackBerry"), Ericsson Incorporated ("Ericsson"), Microsoft Corporation ("Microsoft") and Sony IPLA Holdings Inc. ("Sony").

11.     BlackBerry's United States headquarters is in Irving, Texas.  Ericsson's United States headquarters is in Plano, Texas, within the Eastern District of Texas.

12.     Microsoft is headquartered in Redmond, Washington.

13.     Apple is headquartered in Cupertino, California.

14.     Sony's United States headquarters is in New York City, New York.  Its intellectual property operations are run from offices in New Jersey.

15.     Rockstar's equity owners do not direct or control Rockstar's licensing efforts.

16.     I understand that Lazard in New York and Global IP Law Group in Chicago advised Nortel in the auction process.  The lead Lazard employee working on the Nortel intellectual property deal was David Descoteaux, who still works for Lazard in New York. Other advisory team members were Justin Lux, who now works for Portfolio Advisors in the New York City area; Colin Keenan, who now works for Brightwood Capital Advisors in New York City; Edouard Gueyffier, who now lives in the United Kingdom and works for Estin & Co.; and Kshitij Bhatia, who now lives in India and works for Warburg Pincus.

17.     The United States Nortel representative is now in New York and the Canadian Nortel representative is in Ontario.

18.     Rockstar Bidco LP, a separate entity from Rockstar, having separate management, is also based in New York.

19.     When the sale of the patents-in-suit closed in 2011, many of the former Nortel employees who worked in the IP group were hired by Rockstar.  Several of Nortel's Canadian employees involved in intellectual property were hired by a Canadian entity, Rockstar Consortium Inc., which was created as a vehicle to hire those former Nortel employees.  The Canadian entity entered into a services agreement to provide various intellectual-property-support services to Rockstar.

20.     Rockstar originally conducted operations out of a portion of the former Nortel complex at the Lakeside campus that used to house the Nortel IP group.  The company upgraded its facilities in August 2012 when it signed a 7-year lease at its current offices at Legacy Town Center in Plano, Texas, a short drive away from the Lakeside campus.  In December 2012,

Rockstar finished the build-out of the new Plano, Texas, office and completed its move to the new facilities, which are located in the Eastern District of Texas.

21.     Rockstar's current offices are far more attractive and suitable than the former location, and Rockstar selected them to serve as a fully functional headquarters facility that would attract high-quality employees.  The office contains 8,125 square feet with 10 assigned offices, two guest offices, seven work areas, and four conference rooms, in addition to storage space.

22.     Rockstar has 15 full-time employees; five employees work full-time from the Plano, Texas, office, while the others spend significant time there.

23.     Rockstar's Plano, Texas, office is the only office for the company, although some employees work out of their homes in addition to working from offices in the Plano, Texas, facilities.  From the Plano, Texas, office, Rockstar employees engage in substantial licensing and litigation support work.  Additionally, Rockstar's regular board meetings are held at the Plano, Texas, office. Rockstar's annual strategy sessions, requiring the attendance of many Rockstar employees, including all of Rockstar and Rockstar Consortium Inc.'s management, are also conducted in Plano, Texas.

24.     Rockstar routinely sends licensing correspondence and executes contracts, including Non-Disclosure Agreements, from its Plano, Texas, office.  When Rockstar was initially formed, for a transitional period of time Rockstar would send licensing correspondence using Rockstar Consortium Inc.'s Ottawa address.  Since Rockstar re-located to its current Plano, Texas, location, it has sent licensing correspondence and entered into agreements from its Plano, Texas, office.  For example, since March 2012, Rockstar employees have signed non-disclosure and other agreements with a number of companies from its Plano, Texas, offices.

4

25.     No employees of Rockstar live in California.

26.     Of the eight Rockstar employees who likely have relevant information about this suit, three work full-time in the Plano office, one lives in Pennsylvania (John Veschi), one lives in Colorado (Chad Hilyard), one currently lives in North Carolina (Erik Fako), one lives in Massachusetts (Bruce Schofield), and one currently lives in Florida (Gillian McColgan).  The three full-time employees in Plano who likely have relevant knowledge about this suit are myself, Mark Hearn, and Bernard Tiegerman.  Mr. Tiegerman has lived in the Eastern District of Texas since 2000, when he started working for Nortel's Richardson, Texas office.  With the exception of Mr. Hilyard, all of us formerly were employed by Nortel.  I understand that Mr. Hearn has submitted his own declaration discussing his knowledge of facts and circumstances relevant to this suit.  The additional five employees (Ms. McColgan, Mr. Veschi, Mr. Hilyard, Mr. Schofield and Mr. Tiegerman) all have relevant information related to infringement, damages and monetization, including possible licensing or sale, of the patents-in-suit.  At least Messrs. Veschi and Hilyard also have relevant knowledge regarding Google's knowledge of the patents-in-suit.

27.     Kasim Alfalahi, a Rockstar Board member and Chief IP officer at Ericsson, works at Ericsson, very close to Rockstar's Plano, Texas, office.

28.     Randy Mishler, another Rockstar Board member and Senior Director of IP Licensing at BlackBerry, works in nearby Irving, Texas.  Mr. Mishler is also a former Nortel patent attorney.

29.     Rockstar's Plano, Texas, office contains hard drives from former Nortel and former Rockstar employees as well as boxes of hard copy documents pertaining to Nortel's licensing of the patents-in-suit, notes related to prior licensing meetings regarding the patents-in-

suit, and internal patent prosecution files for the patents-in-suit.  Additionally, the Plano office is equipped to access all electronic records at Rockstar Consortium Inc.'s Canada location.

30.     Rockstar Consortium Inc. employs 21 employees in Canada – 19 in its office in Ottawa and two in Toronto.  Certain of these employees routinely travel for work to Plano.  Approximately four of these employees have relevant information about the lawsuit.  It is significantly easier for these employees to travel from Ontario to the Eastern District of Texas than it is for them to travel to the Northern District of California, because the employees have support facilities in Texas and they are familiar with the Eastern District of Texas region by virtue of their routine travel there.

31.     Willing third-party witnesses in this suit include former Nortel employees, and five named inventors of the patents-in-suit.  The former Nortel employees include: Art Fisher, who was Nortel's Vice President of Intellectual Property Law from 1998-2004 and who currently resides in the Dallas area; and Richard Weiss, former Deputy Intellectual Property Counsel for Nortel, who currently resides in the Eastern District of Texas. Mr. Fisher and Mr. Weiss possess knowledge related to Nortel's licensing practices and policies during the years of their employment.  They can testify regarding what industries and technologies Nortel's patents, including the patents-in-suit, implicate.  In addition, I understand that five named inventors of the patents-in-suit, William Colvin, Bruce Anthony Wootton, Matthew W. Poisson, Brian B. Egan and Marilyn French-St.George, have agreed to travel to the Eastern District of Texas to provide testimony.

32.     Other cases filed by Rockstar in the Eastern District of Texas, including Case Nos. 2:13-cv-893, 894, 895, 896, 898, 900, and 901, as well as cases filed by Constellation Technologies and other subsidiaries of Rockstar, including Case Nos. 2:13-cv- 1079 and 1080,

will share certain facts with this case.  The other cases consolidated with this matter also involve the same patents-in-suit as in this case, all involve common facts related to the circumstances of the auction and the corporate structure of Rockstar and its subsidiaries and affiliated companies.

33.    Rockstar's equity owners, including Apple, neither direct nor control Rockstar's specific decisions regarding when, where, or who Rockstar litigates against. Instead, Rockstar's management directs Rockstar's litigation decisions.

34.    Apple is not a majority shareholder of either Rockstar or MobileStar.

35.    Rockstar created MobileStar to serve as its mobile device licensing entity. Rockstar created different business entities to license its intellectual property in other areas, such as NetStar Technologies, Bockstar Technologies, and Constellation Technologies.  These entities were created at the initiative of Rockstar management, without direction or input from the Rockstar equity holders.

36.    Mark Wilson is no longer consulting for Rockstar. Mr. Wilson never had any substantive involvement with any of the patents-in-suit or any of the EDTX Defendants. In addition, Mr. Wilson never had any contact whatsoever with any potential licensees in California regarding Rockstar's patents.

I declare under the penalty of perjury that the foregoing is true and correct.

Signed this 24TH day of April, 2014.

Donald Powers

PAGES 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


GOOGLE, INC.,                    )
                                 )
            PLAINTIFF,           )    NO. C-13-5933 CW
                                 )
   VS.                           )    THURSDAY, JUNE 26, 2014
                                 )
ROCKSTAR CONSORTIUM US LP,       )    OAKLAND, CALIFORNIA
ET AL.,                          )
                                 )
            DEFENDANTS.          )       MOTION TO TRANSFER
_____ )    CASE MANAGEMENT CONFERENCE



**BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE**


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**            QUINN, EMANUEL, URQUHART & SULLIVAN
                             50 CALIFORNIA STREET
                             SAN FRANCISCO, CALIFORNIA 94111
                      BY:  MATTHEW WARREN, ESQUIRE
                           CHARLES VERHOOVEN, ESQUIRE



**FOR DEFENDANTS:**          MCKOOL SMITH
                             300 CRESCENT COURT, SUITE 1500
                             DALLAS, TEXAS 75201
                      BY:  THEODORE STEVENSON, III, ESQUIRE
                           DAVID SOCHIA, ESQUIRE



**REPORTED BY:**             DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                             OFFICIAL COURT REPORTER

          TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1    THURSDAY, JUNE 26, 2014                              2:17 P.M.

2                        P R O C E E D I N G S

3        **THE CLERK:**  CALLING C-13-5933 GOOGLE, INC. VERSUS

4    ROCKSTAR CONSORTIUM, US LP, ET AL.

5        PLEASE STEP FORWARD AND STATE YOUR APPEARANCES.

6        **MR. WARREN:**  MATTHEW WARREN OF QUINN EMANUEL FOR

7    PLAINTIFF GOOGLE, INC., AND WITH ME IS CHARLES VERHOOVEN ALSO

8    OF QUINN EMANUEL.

9        **MR. STEVENSON:**  TED STEVENSON FOR ROCKSTAR AND

10   MOBILESTAR DEFENDANTS.  AND ALSO WITH ME IS DAVID SOCHIA OF

11   MCKOOL SMITH.

12       **THE COURT:**  GOOD AFTERNOON.

13       THIS IS ON FOR DEFENDANTS' MOTION TO TRANSFER OR STAY AND

14   ALSO FOR A CASE MANAGEMENT CONFERENCE.

15       SO YOU MAY ARGUE YOUR STAY MOTION BRIEFLY IF YOU WOULD

16   LIKE.

17       **MR. STEVENSON:**  THANK YOU, YOUR HONOR.  I WILL BE

18   ARGUING THE TRANSFER OR STAY ISSUES AND MR. SOCHIA WILL BE

19   HANDLING THE CASE MANAGEMENT CONFERENCE, IF THAT'S ALL RIGHT

20   WITH YOU.

21       **THE COURT:**  OKAY.

22       **MR. STEVENSON:**  THE WAY I WOULD LIKE TO PRESENT TO

23   YOU THE CASE IN FAVOR OF TRANSFER OR STAY IS TO FIRST GIVE

24   YOUR HONOR SOME BACKGROUND ON WHAT IS CURRENTLY THE STATUS OF

25   THE CASE AGAINST HANDSET MANUFACTURERS IN THE EASTERN DISTRICT

1    OF TEXAS.  THAT WILL BE FAIRLY BRIEF, AND THEN --

2          **THE COURT:**  YOU'VE -- THEY'VE ALL BEEN CONSOLIDATED

3    AND YOU'VE GOT MOTIONS TO TRANSFER UNDER SUBMISSION.

4          **MR. STEVENSON:**  YES, YOUR HONOR.

5          **THE COURT:**  YOU'VE GOT A CASE MANAGEMENT SCHEDULE --

6          **MR. STEVENSON:**  YES.

7          **THE COURT:**  -- WHICH INCLUDES A TRIAL IN ABOUT A YEAR

8    AND HAS CLAIM CONSTRUCTION WHEN?

9          **MR. STEVENSON:**  CLAIM CONSTRUCTION IS JANUARY 2015.

10          **THE COURT:**  OKAY.

11          **MR. STEVENSON:**  WE HAVE EXCHANGED CONTENTIONS AND WE

12    ARE DOING DOCUMENT PRODUCTION NOW.

13          **THE COURT:**  OKAY.

14          **MR. STEVENSON:**  AND IN THAT CASE, GOOGLE IS A

15    DEFENDANT AS WELL AS SIX HANDSET MANUFACTURERS.

16          **THE COURT:**  RIGHT.

17          **MR. STEVENSON:**  THAT CASE INVOLVES SEVEN PATENTS.

18    ONE PATENT IS HARDWARE ONLY, THE '551, SIX PATENTS ARE A MIX

19    OF SOFTWARE AND HARDWARE ELEMENTS.  AND THOSE ARE THE PATENTS

20    THAT GOOGLE IN THIS CASE HAS MOVED FOR DECLARATORY JUDGMENT

21    ON, THE SAME SET OF SEVEN, AND THAT'S THE OVERLAP BETWEEN THE

22    TWO CASES.

23      SO LET ME NOW TALK ABOUT TRANSFER AND WHY IT'S APPROPRIATE

24    HERE.

25      WHEN WE WERE INITIALLY SERVED WITH THE COMPLAINT, WE MOVED

1    FOR DISMISSAL FOR LACK OF PERSONAL JURISDICTION AND ALSO FOR

2    EITHER STAY OR TRANSFERRING THE FIRST FILED.  AND THE COURT

3    DENIED THAT, FINDING THAT ROCKSTAR AND MOBILESTAR, THE

4    PLAINTIFFS HERE, WERE SUBJECT TO PERSONAL JURISDICTION.

5        AND ONE OF THE ARGUMENTS THAT GOOGLE MADE THAT THE COURT

6    CITED IN ITS ORDER WAS THAT THIS IS A CUSTOMER SUIT, AND

7    GOOGLE'S INTEREST IS PROTECTING ITS CUSTOMERS.

8        WE ARE HERE TODAY BECAUSE SINCE YOUR HONOR'S ORDER, AS THE

9    CASE HAS UNFOLDED, IT HAS BECOME CLEAR THAT THIS ISN'T REALLY

10   A CUSTOMER SUIT EXCEPTION CASE; THAT THE HANDSET MANUFACTURERS

11   AREN'T REALLY CUSTOMERS OF GOOGLE AND THAT THEY AREN'T GOING

12   TO BE ABLE AND AREN'T WILLING TO EITHER INDEMNIFY THEM OR STEP

13   INTO THE SHOES TO PROTECT THEM.

14       AND THAT'S WHAT I WANT TO TALK ABOUT.

15       **THE COURT:**  GOOGLE ISN'T INDEMNIFYING THE DEFENDANTS

16   IN TEXAS; HOW DO YOU KNOW?

17       **MR. STEVENSON:**  WE HAVE ASKED THEM THAT.

18       **THE COURT:**  WHAT DID THEY SAY?

19       **MR. STEVENSON:**  THEY HAVE BEEN UNWILLING TO EITHER

20   ADMIT LEGAL RESPONSIBILITY FOR INFRINGEMENT AND --

21       **THE COURT:**  THAT'S NO SURPRISE, BUT DID THEY SAY THEY

22   WERE INDEMNIFYING THEIR CUSTOMERS OR NOT?

23       **MR. STEVENSON:**  NO, THEY DIDN'T.

24       **THE COURT:**  THEY DIDN'T SAY ONE WAY OR THE OTHER.

25       **MR. STEVENSON:**  THEY DIDN'T SAY ONE WAY OR THE OTHER.

1    IN FACT, WE UNDERSTAND THAT THE GOOGLE OPEN SOURCE ANDROID

2    PLATFORM, WHICH IS WHAT GOOGLE HAS PUT OUT INTO THE PUBLIC

3    DOMAIN, AND REMEMBER THIS DECLARATORY JUDGMENT CASE IS ABOUT

4    REALLY TWO DIFFERENT PRONGS.  ONE IS THE GOOGLE NEXUS PHONES,

5    THAT'S THE HARDWARE, AND WE DON'T DISPUTE GOOGLE'S LEGAL

6    INTEREST IN ADJUDICATING THE GOOGLE NEXUS.  BUT, THEY ALSO

7    HAVE ASKED FOR DECLARATORY JUDGMENT ON WHAT THEY VAGUELY TERM

8    THE ANDROID PLATFORM.

9        WE HAVE ASKED THEM, IN THIS CASE, WHAT IS THE ANDROID

10    PLATFORM?  WHAT ARE YOU ASKING FOR ADJUDICATION OF?  AND MORE

11    IMPORTANTLY, ARE YOU TAKING ON LEGAL RESPONSIBILITY FOR THE

12    ANDROID PLATFORM AS IT'S IMPLEMENTED IN HANDSETS?

13        AND THE PROBLEM IS, NUMBER ONE, ALL THE HANDSET

14    MANUFACTURERS THAT WE ARE LITIGATING WITH HAVE TAKEN THE

15    POSITION THAT THEY MODIFY THE GOOGLE OPEN SOURCE ANDROID

16    PLATFORM AND THAT IT'S DIFFERENT.  AND, IN FACT, IN EXHIBIT 22

17    TO OUR MOVING PAPERS, WE HAVE INCLUDED A REPRESENTATIVE LETTER

18    FROM ONE OF THE DEFENDANTS, LG, WHO BASICALLY TELLS US OUR

19    INFRINGEMENT CONTENTIONS ARE DEFICIENT BECAUSE WE CAN'T POINT

20    TO ANDROID OPEN SOURCE, WE HAVE TO POINT TO THEIR --

21        **THE COURT:**  I AM LOSING THE THREAD HERE.  WHY SHOULD

22    I TRANSFER THE CASE TO TEXAS?

23        **MR. STEVENSON:**  BECAUSE THIS CASE CAN'T ADJUDICATE

24    WHAT IS GOING ON WITH INFRINGEMENT OF THE HANDSET

25    MANUFACTURERS IN TEXAS.

```
1        SO WHAT'S HAPPENED IS, IT'S CREATED A PARALLEL,

2   ESSENTIALLY PARALLEL LITIGATION, WHERE WE HAVE A CASE AGAINST

3   SIX HANDSET MANUFACTURERS AND GOOGLE IN TEXAS OVER ACTUAL

4   HANDSET PRODUCTS, WE HAVE A GOOGLE D.J. OVER ITS NEXUS HERE IN

5   THIS COURT AS WELL AS A REQUEST FOR WHAT SEEMS TO BE AT MOST

6   AN ADVISORY OPINION ON A PIECE OF OPEN SOURCE SOFTWARE THAT WE

7   DON'T ACCUSE OF INFRINGEMENT.  IT'S -- IT'S JUST THE SOFTWARE.

8   OUR ALLEGATION OF INFRINGEMENT IS AGAINST HANDSETS, NOT -- NOT

9   SOFTWARE.  THAT'S WHAT THE CLAIMS COVER.

10       SO, MY POINT ON TRANSFER IS, I UNDERSTAND CASES CAN RUN IN

11  PARALLEL, AND SOMETIMES THERE ARE GOOD REASONS FOR THAT, BUT,

12  OBVIOUSLY, YOUR HONOR HAS TO MAKE A DECISION ABOUT JUDICIAL

13  ECONOMY AND DOES THIS NECESSARILY MAKE SENSE.

14       IN THIS CASE, I THINK HAVING PARALLEL PROCEEDINGS RISKS,

15  NUMBER ONE, INCONSISTENT RULINGS ON MARKMAN, SUMMARY JUDGMENT

16  INFRINGEMENT, NUMBER TWO, OBVIOUSLY USES UP A LOT OF RESOURCES

17  OF THIS COURT AND, NUMBER THREE, I THINK IS NOTHING MORE THAN

18  AN ATTEMPT BY GOOGLE TO TRY TO GET A FREE SHOT AT ADJUDICATION

19  WITHOUT REALLY TAKING ON ANY OF THE RISK OF LOSING.

20       HERE'S WHAT I MEAN BY THAT.  I EXPECT THAT GOOGLE IS GOING

21  TO SAY, IF THEY WIN INFRINGEMENT, AND THEY TRY TO -- THEY ARE

22  GOING TO TRY TO SAY THAT WE HAVE NOW PROVED THAT THE HANDSETS

23  THAT ARE BEING ACCUSED OF INFRINGEMENT DON'T INFRINGE BECAUSE

24  WE'VE ESTABLISHED NONINFRINGEMENT OF THE GOOGLE PLATFORM, THE

25  ANDROID PLATFORM.
```

```
1          BUT IF GOOGLE LOSES THE CASE AND LOSES INFRINGEMENT, I

2     EXPECT WHAT'S GOING TO HAPPEN IS THEY'RE GOING TO SAY WE ARE

3     NOT LEGALLY LIABLE FOR THE HANDSET MAKERS, WE DON'T INDEMNIFY

4     THEM, IF YOU WANT TO PROVE INFRINGEMENT, ROCKSTAR, YOU HAVE TO

5     GO AND PROVE INFRINGEMENT AGAINST EACH ONE OF THE HANDSET

6     MAKERS.

7          AND, IN FACT, WHAT WE HAVE LEARNED IN THIS CASE SINCE

8     THEN, IS WE HAVE ASKED GOOGLE TO PRODUCE THE CODE FOR THE

9     HANDSETS, THE TECHNICAL SPECIFICATIONS FOR THE HANDSETS IF

10    THEY WANT THEM ADJUDICATED IN THIS CASE, AND THEY CAN'T

11    PRODUCE THAT TO US.

12         SO, CANDIDLY, I'M NOT SURE WHAT WE CAN ADJUDICATE IN THIS

13    CASE UNDER DECLARATORY JUDGMENT THAT CAN POSSIBLY AFFECT THE

14    RIGHTS OF THE HANDSET MANUFACTURERS ESPECIALLY WHEN GOOGLE IS

15    UNWILLING TO STEP UP AND SAY WE ARE LEGALLY RESPONSIBLE,

16    WHETHER THERE'S INFRINGEMENT OR NOT WE ARE LEGALLY

17    RESPONSIBLE.

18              THE COURT:  THAT IS BETWEEN THEM AND THEIR CUSTOMERS,

19    I SUPPOSE.  I MEAN THEY COULD WELL BE INDEMNIFYING THEM AND

20    NOT WANT TO TELL YOU.  THAT WOULDN'T BE THE FIRST TIME.

21         AND IT'S KIND OF BETWEEN THEM AND THEIR CUSTOMERS WHETHER

22    THEY ARE GOING TO IN END.  AND IT DOESN'T REALLY AFFECT YOU IF

23    YOU WIN, SOMEBODY WILL PAY YOU WHETHER IT'S THE CUSTOMERS OR

24    THEM.  PRESUMABLY IT WILL BE SOMEBODY.

25              MR. STEVENSON:  BUT IT AFFECTS ARTICLE III STANDING.
```

1          **THE COURT:**  I'M NOT SURE HOW ALL PLAYS INTO IT.

2     SORRY?

3          **MR. STEVENSON:**  IT AFFECTS STANDING.

4          **THE COURT:**  AFFECTS STANDING.

5          **MR. STEVENSON:**  IF GOOGLE DOESN'T HAVE AN INDEMNITY

6     OR ANY JUSTICIABLE INTEREST --

7          **THE COURT:**  STANDING OF WHO WHERE?

8          **MR. STEVENSON:**  OF GOOGLE IN THIS CASE TO ASSERT --

9          **THE COURT:**  THIS IS A MOTION TO TRANSFER.  YOU ARE

10    MAKING A STANDING ARGUMENT NOW?

11         **MR. STEVENSON:**  NO, I AM NOT MAKING A STANDING

12    ARGUMENT NOW.  WHAT I'M SUGGESTING IS IT'S RELEVANT BECAUSE IF

13    GOOGLE ISN'T INDEMNIFYING OR TAKING RESPONSIBILITY FOR THE

14    MODIFIED ANDROID CODE ON THE HANDSETS, RIGHT, THEN --

15         **THE COURT:**  I DON'T KNOW IF THEY ARE OR NOT.

16         **MR. STEVENSON:**  I DON'T THINK THEY ARE.  AND WE HAVE

17    ASKED THEM IF THEY WILL AND THEY REFUSE TO ANSWER THAT

18    QUESTION.

19         **THE COURT:**  WE JUST WENT THROUGH THIS.

20       IS THERE ANYTHING ELSE?

21         **MR. STEVENSON:**  NO, YOUR HONOR.

22         **THE COURT:**  THAT'S ALL?

23         **MR. STEVENSON:**  MY -- MY REQUEST TO YOU, THOUGH, IS

24    IF WE TRANSFER THIS CASE TO TEXAS, WE WILL HAVE ONE CASE, NO

25    POSSIBILITY OF GOOGLE TRYING TO GET A FREE SHOT, WHERE THERE

```
1    WILL BE ONE ADJUDICATION OF INFRINGEMENT OR NONINFRINGEMENT

2    FOR EACH OF THE HANDSETS.

3         AND MY SUGGESTION TO YOUR HONOR IS THAT MAKES A LOT MORE

4    JUDICIAL ECONOMY SENSE THAN HAVING TWO CASES RUNNING IN

5    PARALLEL WHEN THIS CASE CAN AT MOST DETERMINE THE INFRINGEMENT

6    OF THE NEXUS, THE GOOGLE NEXUS HANDSET, WHICH IS A VERY SMALL,

7    YOU KNOW, LOW SINGLE DIGIT PERCENTAGE MARKET SHARE PRODUCT IN

8    THE MARKET.

9         THE COURT:  WELL, WE DON'T KNOW YET WHETHER JUDGE

10   GILSTRAP WILL BE TRANSFERRING HIS CASES HERE.

11         MR. STEVENSON:  WE DON'T.

12         THE COURT:  DID YOU WANT TO RESPOND?

13         MR. WARREN:  SURE.  A COUPLE QUICK THINGS, YOUR

14   HONOR.

15         FIRST OF ALL, AS YOU NOTED AT THE END, COUNSEL'S ENTIRE

16   ARGUMENT DEPENDS ON THE PREMISE THAT JUDGE GILSTRAP WILL DENY

17   THE TRANSFER MOTION AND THAT THOSE CASES ARE GOING TO STAY IN

18   TEXAS.  WE OBVIOUSLY HOPE THAT HE WILL GRANT THE TRANSFER

19   MOTION.

20         THE COURT:  DID ALL OF THE DEFENDANTS MOVE TO

21   TRANSFER?

22         MR. WARREN:  YES, YOUR HONOR.

23         THE COURT:  EVEN SAMSUNG?

24         MR. WARREN:  YES, YOUR HONOR.

25         ALL OF THE DEFENDANTS HAVE MOVED TO TRANSFER.  EVERYONE
```

1    HAS MOVED TO TRANSFER.  WE ALL HOPE THAT ALL OF THOSE CASES

2    WILL COME UP HERE.  THAT IS UNRESOLVED, BUT I THINK IT'S A

3    FALSE PREMISE FOR COUNSEL TO SAY THAT THE ONLY WAY FOR THE

4    CASES TO BE HEARD IN ONE PLACE WOULD BE FOR THIS COURT TO

5    TRANSFER THEM DOWN THERE.

6        MY VIEW PERSONALLY IS THAT IF THIS COURT DENIES TRANSFER,

7    I WOULD ARGUE FOR THE SECOND TIME, IF THIS COURT DENIES

8    TRANSFER I THINK JUDGE GILSTRAP WILL CERTAINLY TAKE THAT INTO

9    ACCOUNT.  AND I WOULD HOPE THAT HE WOULD EXERCISE COMITY AND

10   TRANSFER THE CASES UP HERE.  I OBVIOUSLY CAN'T GUARANTEE THAT,

11   BUT I THINK IT'S SOMETHING THAT YOUR HONOR SHOULD CONSIDER.

12       ANOTHER THING I WANT TO MENTION THAT COUNSEL SORT OF

13   ALIGHTED IS THAT, IN FACT, AS BETWEEN ROCKSTAR AND GOOGLE IN

14   TEXAS, ONLY THREE PATENTS ARE AT ISSUE.  THEY HAVE MOVED FOR

15   LEAVE TO AMEND THE OTHER FOUR.  THAT MOTION WAS PENDING THE

16   LAST TIME THAT WE WERE HERE TOGETHER.  THAT MOTION REMAINS

17   PENDING.

18       THE CURRENT STATE OF PLAY IS THERE'S ONLY THREE PATENTS AT

19   ISSUE BETWEEN ROCKSTAR AND GOOGLE IN TEXAS.  THERE ARE ALL

20   SEVEN ARE AT ISSUE UP HERE.

21       I WOULD ALSO NOTE THAT COUNSEL REFERRED SEVERAL TIMES TO

22   THIS CASE AS A DECLARATORY CASE.  IT STARTED OUT THAT WAY.

23   ROCKSTAR HAS COUNTERSUED US FOR INFRINGEMENT.  SO THIS IS JUST

24   AS MUCH AN INFRINGEMENT CASE, AS ANY OTHER CASE INCLUDING THE

25   CASE IN TEXAS.

1          I ALSO WANT TO RESPOND TO HIS POINT ABOUT THE CUSTOMER

2    SUIT.  YOUR HONOR HAS ALREADY DECIDED THIS IS A

3    MANUFACTURER/CUSTOMER SUIT.  THEY DON'T ACTUALLY CHALLENGE

4    THAT RULING.  THAT WAS A RULING THAT YOUR HONOR MADE IN THE

5    PERSONAL JURISDICTION CONTEXT.  THAT IS DONE.  THEY ARE

6    ESSENTIALLY TRYING TO RE-LITIGATE AN ISSUE UNDER THE GUISE OF

7    JUDICIAL EFFICIENCY IN THE VENUE CONTEXT.

8          I DON'T THINK IT REALLY BELONGS THERE, BUT THAT'S WHAT

9    THEY ARE TRYING DO.

10         TO CLEAR UP ANY MISCONCEPTIONS ABOUT THE ANDROID PLATFORM,

11   BY THE ANDROID PLATFORM WE DO MEAN THE ANDROID OPEN SOURCE

12   PRODUCTS THAT WE PUT OUT ON THE INTERNET.  COUNSEL HAS NOW

13   REPRESENTED TO THE COURT THAT THEY DON'T THINK THAT INFRINGES.

14   SO THAT'S GREAT.  THEN THAT WON'T BE AN ISSUE AT ALL.

15         **THE COURT:**  TO WHAT EXTENT DO THE TEXAS DEFENDANTS

16   USE THE ANDROID PLATFORM OUT OF THE BOX AND TO WHAT EXTENT DO

17   THEY MODIFY IT?

18         **MR. WARREN:**  SO THE SHORT ANSWER IS, IS THAT THERE

19   ARE SOME MODIFICATIONS, HOWEVER ROCKSTAR'S VIEW RIGHT NOW IS

20   THAT THOSE MODIFICATIONS ARE NOT MATERIAL TO ITS INFRINGEMENT

21   CONTENTIONS.

22         AND WE KNOW THIS BECAUSE THEY HAVE GIVEN US INFRINGEMENT

23   CONTENTIONS IN TEXAS.  AND ONE OF THE INFRINGEMENT CONTENTIONS

24   THAT THEY HAVE GIVEN US IS THE '973 AND EVERY -- THEY'VE GIVEN

25   SEPARATE INFRINGEMENT CONTENTIONS TO EACH OF THE TEXAS

1    DEFENDANTS.

2        EVERY SINGLE ONE CONTAINS THE FOLLOWING LANGUAGE:  THE

3    EXEMPLARY OPEN SOURCE CITATIONS HEREIN SHOW THAT THE CITED

4    FUNCTIONALITIES APPEAR IN ACCUSED PRODUCTS HAVING ANY VERSION

5    OR ADAPTATION THEREOF OF ANDROID OPERATING SYSTEM.  THE CITED

6    FUNCTIONALITIES OR EQUIVALENT FUNCTIONALITIES APPEAR IN ALL

7    ACCUSED PRODUCTS WITH ANY VERSION OF ANDROID OPERATION SYSTEM.

8        SO THAT'S THEIR RULE 11 BASIS FOR INFRINGEMENT IN TEXAS.

9    THEIR RULE 11 BASIS FOR INFRINGEMENT IN TEXAS IS EVERYTHING'S

10   THE SAME, THEY ONLY HAVE TO CITE TO THE OPEN SOURCE.  AND THEY

11   CLEARLY THINK THAT THEY HAVE A RULE 11 BASIS FOR INFRINGEMENT

12   ON THAT BASIS.  YOU KNOW, I THINK WE DON'T INFRINGE.  BUT I

13   THINK YOUR HONOR AND HOPEFULLY A JURY IN THIS COURTHOUSE WILL

14   FIGURE THAT OUT.

15       THEY -- THEY ARE SAYING RIGHT NOW THAT THERE ARE

16   MODIFICATIONS THAT ARE MATERIAL.  THE PROBLEM IS IS THAT THEIR

17   OFFICIAL INFRINGEMENT CONTENTIONS HAVE IDENTIFIED NO SUCH

18   MODIFICATIONS.

19       I WOULD ALSO NOTE THAT THE STANDARD FOR WHETHER OR NOT

20   THIS IS A MANUFACTURER/CUSTOMER SUIT, I THINK COUNSEL HAS

21   MISSTATED IT SLIGHTLY.  AGAIN, I DON'T THINK THAT MATTERS, BUT

22   IF YOUR HONOR IS INTERESTED IN TAKING THAT STANDARD INTO

23   ACCOUNT, WE FILED SOMETHING YESTERDAY WHERE THE FEDERAL

24   CIRCUIT RESTATED THAT STANDARD, AND THAT STANDARD IS, ALTHOUGH

25   THERE MAY BE ADDITIONAL ISSUES INVOLVING THE DEFENDANTS IN THE

1    CUSTOMER ACTION, THEIR PROSECUTION WILL BE ADVANCED IF THE

2    PLAINTIFF IS SUCCESSFUL ON THE MAJOR PREMISES BEING LITIGATED

3    IN THE MANUFACTURER LITIGATION AND MAY WELL BE MOOTED IF THE

4    PLAINTIFF IS UNSUCCESSFUL.  THAT'S THE FEDERAL CIRCUIT

5    YESTERDAY.

6        SO IF IT IS SUCCESSFUL ON THE MAJOR PREMISES.  I THINK

7    THAT THE COURT HAS ALREADY FOUND THAT MAJOR ISSUES ARE GOING

8    TO BE RESOLVED IN THIS LITIGATION.  WE HAVE ASKED FOR THE

9    OTHER CASES TO BE TRANSFERRED UP HERE.  FOR ALL THE REASONS WE

10    STATED IN OUR BRIEF, I AM HAPPY TO GO THROUGH THE TRANSFER

11    FACTORS, BUT I DOUBT YOUR HONOR WANTS ME TO.

12        I'M BEING TOLD TO SLOW DOWN.

13        THE LOCUS OF THE WITNESSES IS UP HERE.  TO THE EXTENT THAT

14    THEY HAVE WITNESSES, I THINK WE HAVE SHOWN CONVINCINGLY THAT

15    THOSE WITNESSES ARE EITHER IN CANADA -- THEY'RE CERTAINLY NOT

16    IN MARSHALL, TEXAS, AND ALL OF THE CONVENIENCE, THE PUBLIC AND

17    THE PRIVATE FACTORS MILITATE IN FAVOR OF A HEARING IN THIS

18    FORUM.

19        **THE COURT:**  ARE YOU ALLEGING INVALIDITY OF THEIR

20    PATENTS HERE?

21        **MR. WARREN:**  WE ARE, YOUR HONOR.

22        **THE COURT:**  YOU HAVE ALREADY?

23        **MR. WARREN:**  WE HAVE ALREADY, YOUR HONOR.

24        **THE COURT:**  YOU WEREN'T AWARE OF THAT?

25        **MR. STEVENSON:**  YES, THEY HAVE AFFIRMATIVE DEFENSE OF

```
 1    INVALIDITY.  THEY DON'T HAVE A DECLARATORY JUDGMENT CLAIM FOR

 2    INVALIDITY.

 3          THE COURT:  OH, BUT THEY RESPONDED TO YOUR

 4    COUNTERCLAIM BY CLAIMING INVALIDITY?

 5          MR. STEVENSON:  YES, YOUR HONOR.

 6          THE COURT:  SO DO YOU HAVE ANY COMMENT ABOUT WHETHER

 7    YOU'RE INDEMNIFYING THE TEXAS DEFENDANTS --

 8          MR. WARREN:  I THINK THAT THAT'S SOMETHING THAT MAY

 9    OR MAY NOT BE SUBJECT TO DISCUSSIONS BETWEEN OUR CLIENTS.  AND

10    I DON'T THINK THAT I HAVE TO REVEAL THAT UNTIL THE APPROPRIATE

11    TIME.  AND AS I THINK YOUR HONOR NOTED, IT DOESN'T MATTER.

12    WHO PAYS DOESN'T MATTER.

13          THE COURT:  DO YOU HAVE ANY INFORMATION AS TO WHETHER

14    THE TEXAS DEFENDANTS WOULD BE AGREEABLE TO BEING BOUND BY ANY

15    DETERMINATIONS MADE IN THIS COURT?

16          MR. WARREN:  I ASKED THEM THAT QUESTION THIS MORNING,

17    AND THEY ALL RESPONDED THAT ROCKSTAR NEVER ASKED THEM THAT.

18    AND SO OBVIOUSLY THAT'S SOMETHING THAT THEY WOULD HAVE TO TALK

19    TO THEIR CLIENTS ABOUT.

20       ROCKSTAR MAKES A BIG DEAL IN THEIR PAPERS ABOUT HOW THE

21    TEXAS DEFENDANTS HAVE NOT AGREED TO BE BOUND BY THE OUTCOME OF

22    THIS ACTION.  I THINK IF THEY REALLY CARED ABOUT THAT INSTEAD

23    OF TRYING TO MAKE A RHETORICAL POINT, THEY WOULD HAVE ASKED

24    THE TEXAS DEFENDANTS.  THE TEXAS DEFENDANTS ALL CONFIRMED TO

25    ME TODAY THAT THEY HAD NOT BEEN ASKED THAT QUESTION.
```

1        IN LIGHT OF THAT, I THINK THE COURT SHOULDN'T WORRY ABOUT

2    IT PARTICULARLY SINCE THE STANDARD IS NOT AGREEMENT TO BE

3    BOUND.  THE STANDARD IS RESOLUTION OF MAJOR ISSUES.  AGREEMENT

4    TO BE BOUND IS ONE WAY TO GET THERE.

5        I THINK WE HAVE SHOWN THAT THERE ARE LOTS OF OTHER WAYS TO

6    GET THERE, AND THAT WE ARE GOING TO GET THERE ANOTHER WAY.

7        **THE COURT:**  WELL, AGREEMENT TO BE BOUND WOULD BE

8    CERTAINLY COMPELLING.  AND IF THEY WERE TO MAKE SUCH AN

9    AGREEMENT AND LET THE TEXAS COURT KNOW THAT, IT MIGHT CHANGE

10   THE SITUATION.

11       SO, I'LL TAKE -- DID YOU WANT TO RESPOND?

12       **MR. STEVENSON:**  A COUPLE OF QUICK POINTS, YOUR HONOR.

13       ONE, ON THE ISSUE OF ANDROID OPEN SOURCE DOESN'T INFRINGE.

14   SO MY COMMENTS ARE VERY CLEAR AND THEY AREN'T EVER GOING TO BE

15   MISCONSTRUED, WHAT I'M SAYING IS THAT OUR PATENTS HAVE

16   HARDWARE AND SOFTWARE ELEMENTS TO THEM.  AND SO YOU CAN'T JUST

17   LOOK AT AN EXECUTABLE FILE OR A FLOPPY DISK AND SAY THAT MEETS

18   ALL OF THE ELEMENTS.  EVEN THOUGH IT MAY MEET SOME OF THEM,

19   YOU NEED HARDWARE ELEMENTS IN ADDITION.  THEY COVER HANDSETS.

20   THEY AREN'T JUST ABSTRACT SOFTWARE PATENTS.  THAT'S POINT

21   NUMBER ONE.

22       POINT NUMBER TWO, ON THE CUSTOMER SUIT EXCEPTION, THE

23   CUSTOMER SUIT CASES DEAL WITH A MANUFACTURER WHO, FOR

24   INSTANCE, MANUFACTURES A TV, SELLS IT THROUGH A RETAILER, AND

25   SOMEBODY SUES THE RETAILER AND/OR THE MANUFACTURER, BUT THE

1    DIFFERENCE IN THOSE CUSTOMER SUITS ARE, IN THOSE, THE

2    MANUFACTURER AND THE RETAILER ARE JOINT TORTFEASORS JOINTLY

3    AND SEVERALLY LIABLE.

4        HERE, ALTHOUGH GOOGLE IS TRYING TO INVOKE THE CUSTOMER

5    SUIT EXCEPTION, THE REALITY IS, THEY ARE NOT SAYING IF THERE'S

6    INFRINGEMENT WE ARE JOINTLY AND SEVERALLY LIABLE WITH THE

7    HANDSET MAKERS.  WHAT THEY ARE TRYING TO DO IS SAY WE WANT AN

8    ADJUDICATION.  THAT'S THE FREE SHOT.  AND IF WE LOSE --

9        **THE COURT:**  I'M SORRY, WE, GOOGLE, WANT AN

10   ADJUDICATION OF?

11       **MR. STEVENSON:**  GOOGLE WANTS AN ADJUDICATION OF

12   ANDROID IN THE ABSTRACT.  THEN THEY WANT TO BE ABLE TO SAY IF

13   THEY WIN, WE HAVE NOW PROVEN HANDSETS DON'T INFRINGE ANY OF

14   ROCKSTAR'S PATENTS.  BUT IF THEY LOSE, THEY WANT TO BE ABLE TO

15   SAY THIS RULING DOESN'T APPLY TO THE HANDSETS.  GO AND PROVE

16   YOUR CASE, ROCKSTAR, INDIVIDUALLY AGAINST EACH OF THE HANDSET

17   MAKERS.

18       IN FACT, ALTHOUGH MR. WARREN POINTED TO INFRINGEMENT

19   CONTENTIONS, WE DON'T HAVE THE SOURCE CODE YET.  AS SOON AS WE

20   GET THE SOURCE CODE, WE ARE GOING TO CUSTOMIZE THE

21   INFRINGEMENT CONTENTIONS FOR EACH ONE OF THE DEFENDANTS.

22       SO WHAT THAT LEADS TO IS A SITUATION WHERE, YOUR HONOR,

23   GOOGLE WANTS TO GET AN ADJUDICATION HERE THAT IF IT WINS IT

24   CAN SAY BROADLY EXEMPTS THE INDUSTRY, BUT IT IF IT LOSES,

25   GOOGLE WANTS TO BE ABLE TO SAY, WELL, THIS IS JUST AN

1    ADJUDICATION OF GOOGLE.  ROCKSTAR, IF YOU WANT TO SHOW NOW

2    INFRINGEMENT BY HTC OR LG, YOU'VE GOT TO GO PROVE AN

3    INFRINGEMENT CASE AGAINST THEM.

4        SO THEY WOULD GET -- IF THERE'S A TRIAL HERE AND A TRIAL

5    IN TEXAS, GOOGLE WOULD GET TWO BITES AT THE NONINFRINGEMENT

6    APPLE IN THEIR VIEW.  THAT'S WHY THIS BECOMES AN IMPORTANT

7    ISSUE FOR THE COURT TO ADDRESS BECAUSE IF WE ARE GOING TO HAVE

8    PARALLEL PROCEEDINGS, I THINK ONE THING AT LEAST YOUR HONOR

9    OUGHT TO TAKE INTO ACCOUNT IN EXERCISING YOUR DISCRETION IS

10   THE FAIRNESS OF PARALLEL PROCEEDINGS.

11       I THINK THAT'S PROBABLY WHAT UNDERLIED YOUR QUESTION ABOUT

12   WOULD THE TEXAS DEFENDANTS AGREE TO BE BOUND BY INVALIDITY.

13   IT'S THE SAME CONCEPT HERE AS TO INFRINGEMENT.

14           **MR. WARREN:**  YOUR HONOR, IF I CAN RESPOND VERY

15   BRIEFLY TO THAT.

16       I DON'T THINK ANY CLIENT HAS EVER DESCRIBED MAJOR FEDERAL

17   PATENT LITIGATION AS A FREE SHOT.  OBVIOUSLY IT'S INCREDIBLY

18   DISRUPTIVE.  GOOGLE, AS YOU KNOW, WAS NOT SUED BY ROCKSTAR IN

19   THE HALLOWEEN CASES.  WE BROUGHT THIS CASE BECAUSE WE WANTED

20   TO BE INVOLVED.  THAT WAS A SIGNIFICANT DECISION BY THE

21   CLIENT.  IT IS THE OPPOSITE OF A FREE SHOT.

22       I WOULD ALSO NOTE THAT WE ARE NOT ASKING FOR SEPARATE

23   TRIALS IN THIS COURT AND IN TEXAS.  WE ARE ASKING FOR ONE

24   TRIAL IN THIS COURT.  SO, TO THE EXTENT THAT COUNSEL SAYS WE

25   ARE TRYING TO, IN SOME WAY, HAVE IT BOTH WAYS, I DON'T FULLY

1   UNDERSTAND THAT.  BUT THAT'S NOT ACTUALLY WHAT WE WANT.

2      WE WANT EVERYTHING TO BE RESOLVED HERE IN THIS COURTROOM

3   IN A TRIAL BEFORE YOUR HONOR.  THAT'S WHAT WE ARE SEEKING.

4      AND, YOU KNOW, TO THE EXTENT THAT, YOU KNOW, COUNSEL IS

5   NOW CHANGING WHAT HE SAYS ABOUT THE ANDROID PLATFORM, I THINK

6   THAT IS AN EXTREMELY IMPORTANT REASON WHY THAT ISSUE, WHICH IS

7   AT ISSUE HERE AND IS NOT IN TEXAS, SHOULD BE RESOLVED.  WE

8   WANT COMPLETE RESOLUTION AS TO THE FULL SCOPE OF THEIR

9   INFRINGEMENT CONTENTIONS AGAINST GOOGLE, AND IT SOUNDS LIKE WE

10  ARE GOING TO GO GET IT IN THIS COURTROOM ON SEVEN PATENTS.  WE

11  ARE NOT GOING TO GET IT IN TEXAS EVEN ON THREE PATENTS.

12          **THE COURT:**  OKAY.

13      WELL, WE'LL GO AHEAD AND HAVE THE CASE MANAGEMENT

14  CONFERENCE.  I'M INCLINED TO DENY THE MOTION TO TRANSFER AND I

15  MIGHT ADD THAT I'M ALSO INCLINED TO DENY THE MOTION TO CERTIFY

16  AN INTERLOCUTORY APPEAL, WHICH I HAVEN'T GOTTEN OUT YET.

17      SO LET'S ASSUME WE ARE GOING FORWARD.  I WILL TAKE INTO

18  ACCOUNT THE TEXAS SCHEDULE BECAUSE WHO KNOWS IF THAT CASE

19  ISN'T TRANSFERRED HERE, WHICH IT MAY NOT BE, YOU MAY END UP

20  WITH CASES IN BOTH COURTS.  AND IF THAT HAPPENS, ONE MIGHT

21  CALL THE OTHER'S BLUFF.  AND IF THAT DOESN'T HAPPEN, THEN

22  WE'LL TRY TO ORGANIZE IT IN A WAY WHERE YOU'LL -- WE WILL HAVE

23  CLAIM CONSTRUCTION IN ONE PLACE FIRST, AND TRY TO COORDINATE

24  IT A LITTLE BIT.

25      SO, IN TERMS OF SETTLEMENT -- IN TERMS OF DISCOVERY, YOU

1  HAVE A DISPUTE ABOUT THIS 150 HOURS OF DEPOS.  I'M JUST GOING

2  TO -- RATHER THAN TRY TO RESOLVE THAT, I'M GOING TO TAKE A

3  WILD GUESS AND FIGURE THAT YOU WILL HAVE MORE DISCOVERY

4  DISPUTES IN THE FUTURE, AND I'M GOING TO REFER YOU TO A

5  MAGISTRATE JUDGE TO TRY TO COME UP WITH A DISCOVERY PLAN THAT

6  WOULD ADDRESS HOURS OF DEPOSITION, WOULD ADDRESS COORDINATION

7  WITH THE TEXAS CASES IN THE EVENT THAT THOSE DO STAY IN TEXAS,

8  AND ANY OTHER DISPUTES THAT MIGHT COME ALONG.  SO WE WILL SEND

9  YOU A REFERRAL.

10      I WOULD LIKE YOU TO MEET AND CONFER AGAIN AND SEE IF YOU

11  CAN COME UP WITH AN AGREEMENT.  IF YOU CAN'T, THEN WHOEVER

12  WANTS SOMETHING OTHER THAN WHAT'S IN THE FEDERAL RULES OF

13  CIVIL PROCEDURE, CAN FILE A MOTION FOR THAT TO GET YOURSELVES

14  IN FRONT OF A MAGISTRATE JUDGE.  THERE'S A PROCEDURE FOR DOING

15  IT IN MY PRETRIAL PREP ORDER, WHICH YOU CAN GET RIGHT THERE.

16  THERE'S A SCHEDULING ORDER, PRETRIAL PREP ORDER ATTACHED.  YOU

17  FILE A LETTER BRIEF, SORT OF GENERIC LETTER BRIEF AND THEN

18  THAT GETS YOU TO A MAGISTRATE JUDGE, AND THEN THAT PERSON WILL

19  HANDLE THIS AS WELL AS OTHER MATTERS.

20      YOU PUT IN A STIPULATION FOR ALTERNATIVE DISPUTE

21  RESOLUTION TO TAKE PLACE BY PRIVATE MEDIATION 60 DAYS FROM A

22  CLAIM CONSTRUCTION ORDER.  THAT'S WAY TOO LATE.  I DIDN'T SIGN

23  IT BECAUSE I DON'T AGREE WITH IT.  I WOULD LIKE YOU TO GO TO A

24  PRIVATE MEDIATOR, AND WHAT I WOULD LIKE YOU TO DO -- YOU CAN

25  ORGANIZE ALL YOUR FRIENDS IN TEXAS, AND I WOULD LIKE ALL OF

1    YOU ALL TO GET TOGETHER AND HAVE AN ALTERNATIVE DISPUTE

2    RESOLUTION PROCEDURE WITH A PRIVATE MEDIATOR THAT WILL COVER

3    BOTH THE TEXAS CASES AND THIS CASE.  AND I CAN ORDER YOU TO DO

4    THAT BECAUSE YOU ARE IN BOTH CASES, AND I CAN ASK -- I CAN

5    ORDER YOU TO DO IT AND ASK YOU TO ROUND UP ALL YOUR FRIENDS

6    AND GET THEM TO COME TOO.

7         **MR. WARREN:**  I WILL CERTAINLY MAKE MY BEST EFFORTS TO

8    DO THAT, YOUR HONOR.  I'M CONFIDENT THAT I CAN.

9         **THE COURT:**  YEAH.

10        **MR. SOCHIA:**  WE HAVE --

11        **THE COURT:**  HOLD ON JUST A SECOND.  I DON'T WANT YOU

12   TO FIGHT ABOUT WHERE THE MEDIATION IS.  YOU CAN GET SOMEBODY

13   HERE, YOU CAN GET SOMEBODY IN TEXAS IF THEY HAVE PEOPLE IN

14   TEXAS.  YOU CAN GET SOMEBODY IN CHICAGO, OR DENVER, OR

15   SOMETHING LIKE THAT, BUT I WOULD LIKE FOR ALL OF YOU TO

16   PARTICIPATE IN THAT.

17     WHAT DID YOU WANT TO SAY?

18        **MR. SOCHIA:**  WE HAVE AN AGREED MEDIATOR IN THE TEXAS

19   ACTIONS.  SO I WOULD ASK MR. WARREN IF WE CAN JUST USE JUDGE

20   FOLSOM.

21        **MR. WARREN:**  AS LONG AS YOU WON'T HOLD IT AGAINST ME

22   AND SAY THAT THE TEXAS ACTION IS PROGRESSING FASTER THAN THIS

23   ONE AS A RESULT OF THAT AGREEMENT.

24        **MR. SOCHIA:**  I WON'T.

25        **THE COURT:**  WHO IS THAT, A RETIRED JUDGE IN TEXAS?

1      **MR. SOCHIA:**  YES, YOUR HONOR.

2      **THE COURT:**  THAT'S FINE.  THEN DO THAT.  I WOULD LIKE

3  YOU TO DO IT IN 90 DAYS.

4      **THE CLERK:**  SEPTEMBER 24TH.

5      **THE COURT:**  FOR STARTERS.  AND IF YOU DON'T SETTLE IN

6  90 DAYS, YOU CAN KEEP ON HIS SCHEDULE AND COME AGAIN WHEN

7  YOU'VE GOT MORE INFORMATION.

8      **MR. WARREN:**  MY LEAD COUNSEL, MR. VERHOOVEN, HAS

9  REMINDED ME THAT I'M ACTUALLY NOT TOTALLY AUTHORIZED TO AGREE

10  TO JUDGE FOLSOM, SO WE WILL MEET AND NEVER ABOUT THAT AT A

11  LATER TIME.

12      **THE COURT:**  IF YOU CAN'T AGREE ON HIM, THEN TRY TO

13  AGREE ON SOMEBODY.  IF YOU CAN'T AGREE ON ANYBODY, THEN EACH

14  OF YOU GIVE ME THREE NAMES AND I'LL PICK SOMEBODY.

15      **MR. VERHOOVEN:**  I'M CONFIDENT WE WILL REACH

16  AGREEMENT, YOUR HONOR.

17      **THE COURT:**  WITH RESPECT TO THE SCHEDULING, YOUR

18  THING IS SO COMPLICATED I CAN'T REALLY FOLLOW IT.  YOU EACH

19  HAVE A STATEMENT OF WHAT IT SHOULD BE AND THEN SOMEONE ELSE

20  HAS ADDITIONAL DATES.

21                    (SIMULTANEOUS COLLOQUY)

22      **THE COURT:**  I HAVEN'T HAD A CHANCE TO COMPARE THE TWO

23  TO EACH OTHER.  WHAT I WILL SAY IS THAT I DON'T -- WELL, I

24  OFTEN DO CLAIM CONSTRUCTION AND CASE DISPOSITIVE MOTIONS

25  TOGETHER AS OPPOSED TO DOING CLAIM CONSTRUCTIONS ON ONE DATE

1    AND SUMMARY JUDGMENT MOTIONS LATER.  I PREFER THAT.

2         THE ONLY REASON I WOULDN'T DO THAT WOULD BE IF THERE WERE

3    REALLY CLAIM CONSTRUCTION ISSUES THAT WERE REALLY QUITE

4    SEPARATE FROM THE MERITS, THAT DIDN'T NEED MUCH DISCOVERY,

5    THAT WOULD BE SOMEHOW MORE EFFICIENT TO DO SEPARATELY.  AND IF

6    THAT WERE THE CASE AND YOU BOTH AGREED TO THAT, I WOULD

7    CONSIDER IT.  BUT GENERALLY SPEAKING, I FOUND IT MORE HELPFUL

8    TO DO THEM ALL AT ONCE.

9         THE OTHER ADVANTAGE TO DOING THEM ALL AT ONCE IN THIS

10   PARTICULAR CASE WOULD BE THAT MIGHT MEAN THAT IF THE OTHER

11   CASES STAY IN TEXAS, THAT THE CLAIM CONSTRUCTION THERE WOULD

12   BE DONE BEFORE WE GET TO IT HERE, AND THEN I WOULD HAVE THE

13   BENEFIT OF LOOKING AT WHAT THE TEXAS JUDGE HAD DONE WITH CLAIM

14   CONSTRUCTION.

15        SO I DON'T KNOW IF YOU HAVE THOUGHTS AT THE MOMENT AS TO

16   WHETHER THERE'S SOME STRONG ADVANTAGE HERE TO DOING CLAIM

17   CONSTRUCTION SEPARATELY OR WHETHER IT'S AGREEABLE TO DO IT

18   TOGETHER.

19             **MR. WARREN:**  YOUR HONOR, AS A PRELIMINARY MATTER, I

20   HAVE A HAND-UP THAT SUMMARIZES THE PROPOSALS AND LOCAL RULES.

21             **THE COURT:**  OH, OKAY.

22             **MR. SOCHIA:**  FROM ROCKSTAR'S PERSPECTIVE, WE ARE FINE

23   CONSOLIDATING CLAIM CONSTRUCTION WITH SUMMARY JUDGMENT.

24             **MR. WARREN:**  SO, OUR VIEW IS A LITTLE DIFFERENT.  I

25   KNOW YOUR HONOR IS SURPRISED BY THAT.

1     OUR VIEW IS THAT ACTUALLY HAVING A CLAIM CONSTRUCTION

2     HEARING THAT JUST TALKS ABOUT THE CLAIMS OFTEN SEPARATELY FROM

3     THE ACCUSED PRODUCTS CAN SIGNIFICANTLY NARROW THE ISSUES AND

4     IS OFTEN ABLE TO RESOLVE THINGS AND POTENTIALLY CAUSE MULTIPLE

5     PATENTS TO DROP OUT BEFORE YOU GET TO DISPOSITIVE MOTIONS,

6     WHICH HELPS EVERYBODY BECAUSE WE -- I DON'T THINK ANYONE

7     THINKS WE ARE GOING TO TRIAL ON SEVEN PATENTS.

8          **THE COURT:**  THAT CAN HAPPEN, BUT MY DEFAULT IS TO DO

9     THEM TOGETHER.  SO I WOULD NEED TO HEAR SOMETHING THAT WOULD

10    TELL ME, WELL, IN THIS CASE WE HAVE THESE ISSUES THAT REALLY

11    ARE SEPARATE AND THAT AREN'T -- IT'S NOT GOING TO HELP YOU TO

12    KNOW WHAT THE ACCUSED PRODUCTS ARE, AND SO ON.

13    SO, IF YOU HAVE SOMETHING TAILORED TO THIS CASE, THAT

14    WOULD BE OF INTEREST.  BUT AS A DEFAULT MODE, THAT MAY BE YOUR

15    DEFAULT, BUT IT'S NOT MY DEFAULT.

16         **MR. WARREN:**  AND I THINK YOUR DEFAULT CLEARLY

17    PREVAILS, YOUR HONOR.  I DON'T -- I DON'T HAVE THAT AT THIS

18    TIME.  I WOULD LIKE A BRIEF AMOUNT OF TIME TO --

19         **MR. VERHOOVEN:**  IF I COULD JUST SAY ONE THING, YOUR

20    HONOR.

21         **MR. WARREN:**  YEAH.

22         **MR. VERHOOVEN:**  AS I UNDERSTAND IT, THERE'S SEVEN

23    PATENTS.

24         **MR. WARREN:**  SEVEN PATENTS.

25         **MR. VERHOOVEN:**  DIFFERENT PATENT FAMILIES, SO THEY

```
1    ARE NOT ALL PART OF THE SAME PATENT.  SO THE AMOUNT OF

2    BRIEFING YOUR HONOR IS GOING TO GET IF WE DO A SINGLE MARKMAN

3    JUST BECAUSE THERE'S SO MANY PATENTS AND DIFFERENT FAMILIES,

4    IS GOING TO BE A HUGE AMOUNT --

5         THE COURT:  EXCEPT YOU WILL BE LIMITED BY THE NUMBER

6    OF CLAIMS THAT YOU CAN PURSUE.

7         MR. VERHOOVEN:  BUT IF THAT'S THE CASE, IF WE ARE

8    LIMITED -- THAT'S A GOOD POINT, YOUR HONOR.

9        BUT I STILL FEEL THAT IN MY EXPERIENCE, WITH THAT MANY

10   PATENTS AND THAT MANY DIFFERENT PATENT FAMILIES, IF YOU

11   COMBINE THE TWO, SUMMARY JUDGMENT AND CLAIM CONSTRUCTION, THE

12   NUMBER OF ISSUES THAT YOU'RE GOING TO GET IS GOING TO BE MUCH

13   LARGER THAN IF YOU DID IT IN A STAGED PROCESS WHERE YOU KNOW

14   YOU ARE GOING TO GET ALL THE CLAIM CONSTRUCTION ISSUES, BUT

15   YOU'RE PROBABLY GOING TO GET A LOT LESS ON THE SUMMARY

16   JUDGMENT SIDE AS A RESULT OF DOING THEM IN A STAGED PROCESS.

17       WHEREAS IF WE DO IT TOGETHER, WE ARE NOT GOING TO KNOW THE

18   RESULTS OF ALL THE CLAIM CONSTRUCTIONS.  AND IN A SMALLER CASE

19   WITH ONE, TWO, OR THREE PATENTS, THAT'S FINE.  IF YOU ARE

20   TALKING ABOUT SEVEN DIFFERENT PATENT, SEVEN DIFFERENT PATENT

21   FAMILIES, A HEAVILY LITIGATED CASE, I CAN SEE EITHER A LARGE

22   BRIEFING OR US BEING IN A SITUATION WHERE WE DON'T HAVE THE

23   PAGES TO BRIEF ALL THE DIFFERENT ISSUES THAT ARE GOING TO BE

24   COMING UP.

25       SO THAT'S JUST MY TWO CENTS, YOUR HONOR.
```

1    **THE COURT:**  I WILL USE THIS CHART THEN.  DID YOU GIVE

2    HIM ONE?

3    **MR. WARREN:**  I DID.

4    **MR. SOCHIA:**  YES.  IT'S THE FIRST TIME I'VE SEEN IT,

5    YOUR HONOR, BUT WE WILL WALK THROUGH IT, I SUPPOSE.

6    **THE COURT:**  IT'S A COMPILATION OF WHAT'S IN THE CASE

7    MANAGEMENT STATEMENT, I GUESS --

8    **MR. WARREN:**  UNLESS WE HAVE MADE A TERRIBLE ERROR,

9    THAT'S ALL IT IS, YOUR HONOR.

10    **THE COURT:**  IN A MORE READABLE WAY.

11    LET'S GO WITH JULY 24TH FOR INFRINGEMENT CONTENTIONS.

12    AUGUST 25TH FOR INVALIDITY CONTENTIONS.

13    SEPTEMBER 8TH FOR PROPOSED TERMS.

14    SEPTEMBER 29TH FOR PRELIMINARY CLAIM CONSTRUCTIONS.

15    YOU WANTED TO FILE AMENDED PLEADINGS ON JANUARY 8TH.

16    THAT'S WAY TOO LATE.  LET'S SAY 60 DAYS FOR AMENDED

17    PLEADINGS -- YOU KNOW, SOMETHING NEW COMES UP THAT YOU

18    COULDN'T ANTICIPATE, YOU CAN ALWAYS MOVE FOR LEAVE TO AMEND,

19    BUT AS THE DEFAULT 60 DAYS.

20    **MR. WARREN:**  OF COURSE, YOUR HONOR.

21    **THE CLERK:**  AUGUST 25TH.

22    **THE COURT:**  AUGUST 25TH.

23    AND THE FACT DISCOVERY, WHAT'S THE END OF FACT DISCOVERY

24    IN THE TEXAS CASE?

25    **MR. WARREN:**  I HAVE THAT, YOUR HONOR.  HANG ON.

1          (PAUSE IN THE PROCEEDINGS.)

2      THE CLOSE OF FACT DISCOVERY IN THE TEXAS CASE IS

3  JANUARY 23RD OF 2015.

4          **THE COURT:**  OKAY.  SO WE WILL GO WITH THAT, TOO.

5  JANUARY 23RD OF 2015, CLOSE OF FACT DISCOVERY.

6      INITIAL EXPERT REPORTS JANUARY 29TH.

7      RESPONSIVE EXPERT REPORTS FEBRUARY 19TH.

8      CLOSE OF EXPERT DISCOVERY MARCH 6TH.

9      WE'LL HEAR CLAIM CONSTRUCTION AND CASE DISPOSITIVE MOTIONS

10  AROUND ABOUT APRIL 30TH, BUT ON A THURSDAY.  SO LET'S -- THAT

11  IS A THURSDAY, APRIL 30TH.

12          **MR. WARREN:**  WE DID READ YOUR HONOR'S STANDING ORDER

13  ABOUT THE THURSDAYS.

14          **THE COURT:**  AND THE TRIAL CAN'T BE ANY SOONER THAN 90

15  DAYS AFTER THAT, AND EVEN 90 DAYS WOULD BE PUSHING IT.

16      SO, LET'S SAY -- WELL, YOU HAVE YOUR TRIAL IN TEXAS IN

17  JULY, SO LET'S SAY SEPTEMBER FOR TRIAL.

18      AND THEN GOING BACK TO THE CLAIM CONSTRUCTION AND CASE

19  DISPOSITIVE MOTIONS, WE'LL HAVE THE PLAINTIFF FILE -- NO,

20  WELL, YOU'RE REALLY SORT OF THE DEFENDANT.  SO WE WILL CALL

21  YOU THE PLAINTIFF.  YOU FILE SIX WEEKS BEFORE THE 30TH ALL OF

22  YOUR PROPOSED CLAIM CONSTRUCTIONS AS WELL AS ANY CASE

23  DISPOSITIVE MOTIONS THAT YOU HAVE.

24      FOUR WEEKS BEFORE APRIL 30TH, YOU FILE YOUR CLAIM

25  CONSTRUCTIONS, YOUR OPPOSITION TO THEIR SUMMARY JUDGMENT

```
1    MOTION AND YOUR OWN SUMMARY JUDGMENT CLAIMS ALL IN A SINGLE

2    BRIEF, PRESUMPTIVELY OF 25 PAGES, ALTHOUGH YOU CAN ASK FOR

3    MORE IF YOU NEED THEM.

4        A WEEK AFTER THAT, YOU HAVE YOUR REPLY ON YOUR CLAIM

5    CONSTRUCTION, YOUR REPLY ON YOUR MOTION, AND YOUR OPPOSITION

6    TO THEIR MOTION.

7        AND A WEEK AFTER THAT, YOU HAVE YOUR REPLY ON YOUR CROSS

8    MOTION.

9        AND THAT HOPEFULLY WILL END UP WITH TWO WEEKS UNTIL THE

10   HEARING DATE, AND THEN WE WILL HEAR IT ALL.

11       NOW, IF YOU BOTH SHOULD HAPPEN TO AGREE THAT THERE REALLY

12   ARE THINGS THAT COULD BE PRODUCTIVELY DONE ON A CLAIM

13   CONSTRUCTION ORDER DIVORCED FROM SUMMARY JUDGMENT AND YOU WANT

14   TO AGREE ON A DATE FOR THAT ON A BRIEFING SCHEDULE FOR THAT, I

15   WOULD -- YOU CAN WRITE TO ME AND ASK TO DO IT THAT WAY.  IF

16   YOU BOTH AGREE TO IT, I WOULD BE FAR MORE LIKELY THAN IF I GOT

17   ONE OF THESE I'M SURE I'LL WIN SO PLEASE DO IT EARLY KINDS OF

18   THINGS.

19       FAILING THAT, WE WILL DO IT ALTOGETHER.  AS I SAY, IN THIS

20   CASE IT IS PARTICULARLY HELPFUL TO DO IT THAT WAY BECAUSE THAT

21   WILL LEAVE YOU TO DO YOUR CLAIM CONSTRUCTION IN TEXAS IN

22   JANUARY AND GIVE A COUPLE OF MONTHS AFTER THAT TO SEE IF THAT

23   HELPS ANYTHING WITH THIS CASE.

24       MR. WARREN:  I'M CONFIDENT THERE WON'T BE A HEARING

25   IN TEXAS, YOUR HONOR, BECAUSE THE CASES WILL BE TRANSFERRED UP
```

```
1    HERE.

2            THE COURT:  WE'LL SEE.  IN TERMS OF THE TRIAL IN

3    SEPTEMBER, I IMAGINE SOMEONE HAS MADE A JURY DEMAND?

4            MR. WARREN:  YES, YOUR HONOR.

5            MR. SOCHIA:  YES, YOUR HONOR.

6            THE COURT:  AND DID YOU HAVE A TIME ESTIMATE?

7            MR. WARREN:  WE ESTIMATED 20 DAYS, YOUR HONOR.

8            MR. SOCHIA:  AND ROCKSTAR, THE DEFENDANTS, REQUESTED

9    TEN DAYS.

10           THE COURT:  OKAY.  WE WILL GO WITH TEN THEN.

11       AND WE WILL START IT ON SEPTEMBER 14TH.  AND WE WILL HAVE

12   A PRETRIAL CONFERENCE ON SEPTEMBER 2ND AT 2:00 O'CLOCK.

13       AND THE PRETRIAL PREP ORDER THAT YOU GOT WILL TELL YOU ALL

14   THE PAPERWORK THAT NEEDS TO BE FILED IN ADVANCE OF THE

15   PRETRIAL CONFERENCE.

16       AND I THINK THAT'S ALL I HAVE UNLESS YOU ALL HAVE

17   SOMETHING ELSE.

18           MR. WARREN:  NO, YOUR HONOR.

19           MR. SOCHIA:  THAT'S ALL FROM US.

20           THE COURT:  OKAY.

21           MR. WARREN:  THANK YOU.

22           MR. SOCHIA:  THANK YOU, YOUR HONOR.

23               (PROCEEDINGS CONCLUDED AT 2:50 P.M.)

24

25
```

## CERTIFICATE OF REPORTER

      I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

*Diane E. Skillman*

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

THURSDAY, JULY 10, 2014

# McKool Smith

Joshua W. Budwin
Direct Dial: (512) 692-8727
jbudwin@McKoolSmith.com

300 W. 6th Street
Suite 1700
Austin, TX 78701

Telephone: (512) 692-8700
Facsimile: (512) 692-8744

March 24, 2014

**VIA EMAIL (W/O ENCLOSURES) AND FTP (W/ ENCLOSURES)**

Harold H. Davis
K&L Gates LLP
4 Embarcadero Center, Suite 5200
San Francisco, CA 94111

Jay F. Utley
Baker & McKenzie, LLP
2001 Ross Avenue, Suite 2300
Dallas, TX 75201

Michael L. Bettinger
K&L Gates LLP
4 Embarcadero Center, Suite 5200
San Francisco, CA 94111

J. Mark Mann
Mann Tindal Thompson
300 West Main Street
Henderson, TX 75652

Mathew S. Warren
Quinn Emanuel & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

Alex Skucas
King & Spalding
1184 Avenue of the Americas
New York, NY 10036

Richard D. Harris
Greenberg Traurig, LLP
77 West Wacker Drive, Suit 3100
Chicago, IL 60601

RE:    *Rockstar Consortium US LP, et al. v. ASUSTek Computer, Inc., et al.*; Consolidated Lead Case No. 2:13-cv-894; United District Court of Texas; Eastern District.

**Rockstar's/MobileStar's P.R. 3-1 and 3-2 Disclosures**

Dear Counsel for Defendants:

In compliance with P.R. 3-1 and 3-2, Rockstar Consortium US LP and MobileStar Technologies LLC (collectively referred to as "Rockstar") hereby submit their "Disclosure of Asserted Claims and Infringement Contentions" and accompanying document production.

Where it states herein that the infringement contentions and/or documents are available via FTP, the following FTP information should be used:

March 24, 2014
Page 2

Host:       sftp://ftp.mckoolsmith.com
Username:   rockstar_oppco
Password:   rck7000
Directory:  P.R. 3-1 and 3-2 Disclosures

I.    <u>Disclosures Pursuant to P.R. 3-1</u>

      <u>(a) Asserted Claims and Priority Dates</u>

      U.S. Patent No. 5,838,551: claims 1-3.  Each asserted claim is entitled to a priority date at least as early as December 21, 1995.

      U.S. Patent No. 6,037,937: claims 1-5, 7, 9-17, 19, 21-24.  Each asserted claim is entitled to a priority date at least as early as December 4, 1997.

      U.S. Patent No. 6,128,298: claims 11-19 and 22-32.  Each asserted claim is entitled to a priority date at least as early as August 18, 1995.

      U.S. Patent No. 6,333,973: claims 1-13, 21-26 and 33.  Each asserted claim is entitled to a priority date at least as early as April 23, 1997.

      U.S. Patent No. 6,463,131: claims 1-8.  Each asserted claim is entitled to a priority date at least as early as December 22, 1997.

      U.S. Patent No. 6,765,591: claims 1, 4, 7, and 8.  Each asserted claim is entitled to a priority date at least as early as April 2, 1999.

      U.S. Patent No. 6,937,572: claims 17-20.  Each asserted claim is entitled to a priority date at least as early as December 9, 2000.

      <u>(b) Accused Instrumentalities</u>

      For each of the asserted patents other than U.S. Patent No. 5,838,551, Rockstar has identified each accused instrumentality in the attached "Attachment A" and in the claim charts found on the provided FTP site.  For U.S. Patent No. 5,838,551, and as set forth in the claim charts found on the provided FTP site, Rockstar identifies the following accused instrumentalities (including any additional instrumentality of any defendant that makes use of the same infringing components):

| Defendant | Accused Instrumentality |
|-----------|-------------------------|
| ASUSTek | Asus Eee Pad Slider |
| ASUSTek | Asus EEE Slate B121 ar58195 |
| ASUSTek | Asus Memo Pad 8  kool |
| ASUSTek | ASUS MEMO Pad FHD10 K00A(ME302C) |
| ASUSTek | ASUS MEMO Pad K001 |
| ASUSTek | Asus Nexus 7 2012 |
| ASUSTek | Asus Nexus 7 LTE 2013 |

March 24, 2014
Page 3

| | |
|---|---|
| ASUSTek | Asus Transformer Pad Infinity |
| ASUSTek | Asus VivoTab Smart |
| ASUSTek | ASUS VivoTab tf810c |
| Google | Google Nexus |
| Google | Google Nexus 10 |
| Google | Google Nexus 4 |
| Google | Google Nexus 5 |
| Google | Google Nexus 7 2012 |
| Google | Google Nexus 7 LTE 2013 |
| HTC | HTC 8XT |
| HTC | HTC Amaze |
| HTC | HTC Butterfly X920d |
| HTC | HTC Desire 200 102e |
| HTC | HTC Desire 500 |
| HTC | HTC Desire 700 |
| HTC | HTC Droid DNA 6435LVW |
| HTC | HTC EVO 4G LTE |
| HTC | HTC Hero S |
| HTC | HTC One SV Boost |
| HTC | HTC ONE V Virgin |
| HTC | HTC ONE VX White 4G LTE A PM36100 |
| HTC | HTC ONE X+ S728e |
| HTC | HTC Radar C110e |
| HTC | HTC TITAN II X825a |
| HTC | HTC Windows Phone 8S a620E |
| LG | LG Escape p870 |
| LG | LG G Flex ls995 |
| LG | LG G pad 8.3 lg-v500 |
| LG | LG G2 verizon |
| LG | LG Intuition 4g lg-vs950 |
| LG | LG Lucid 2 vs870 |
| LG | LG Lucid 4G lg-vs840 |
| LG | LG Motion 4g lgms770 |
| LG | LG Nexus 5 |
| LG | LG Nitro HD P930 |
| LG | LG Optimus Elite VM696 |
| LG | LG Optimus G E970 |
| LG | LG Optimus G pro Att lg-e980 |
| LG | LG Optimus L9 P769 znfp769 |
| LG | LG Optimus Net lgl45c |
| LG | LG Spectrum 2 LG-VS930 |

March 24, 2014
Page 4

| LG | LG Spectrum VS920 lg-vs920 |
| --- | --- |
| LG | LG Splendor us730 |
| LG | LG Venice lg730 |
| LG | LG Viper 4gLTE ls840 |
| LG | Nexus 4 LG-E960 |
| Pantech | Pantech Discover p9090 |
| Pantech | Pantech Flex p8010 |
| Pantech | Pantech Perception adr930lvw |
| Samsung | Samsung Ativ S Neo sph-i800 |
| Samsung | Samsung Convoy 3 Sch-u680 |
| Samsung | Samsung FOCUS 2 1667 sgh-i667 |
| Samsung | Samsung Galaxy Appeal sgh-i827 |
| Samsung | Samsung Galaxy Exhilarate sgh-i577 |
| Samsung | Samsung Galaxy Express sgh-i437p |
| Samsung | Samsung Galaxy Mega sgh-i527 ud |
| Samsung | Samsung Galaxy Nexus GT-19250 |
| Samsung | Samsung Galaxy Note 10.1 2014 Edition |
| Samsung | Samsung Galaxy Note 10.1 gt-n8013ea |
| Samsung | Samsung Galaxy Note 3 SM-N900V UD |
| Samsung | Samsung Galaxy Note 8.0 gt-n5110 |
| Samsung | Samsung Galaxy Note II SGH-1317 |
| Samsung | Samsung Galaxy Rugby Pro SGH-I547 |
| Samsung | Samsung Galaxy S Blaze SGH-T769 |
| Samsung | Samsung Galaxy S LIGHTRAY 4G SCH-R940 |
| Samsung | Samsung Galaxy S Relay sgh-t699 |
| Samsung | Samsung Galaxy S4 Active sgh-i537 |
| Samsung | Samsung Galaxy S4 SGH-M919 |
| Samsung | Samsung Galaxy S4 zoom Camera |
| Samsung | Samsung Galaxy SII sph-d710 |
| Samsung | Samsung Galaxy Stellar i200 aga |
| Samsung | Samsung Galaxy Stratosphere II sch-i415 |
| Samsung | Samsung Galaxy Tab 2 10.1 P5113TS |
| Samsung | Samsung Galaxy Tab 3 10.1 P5210 |
| Samsung | Samsung Galaxy Tab 7.7 sch-1815 |
| Samsung | Samsung Galaxy Victory 4g LTE sph-l300 |
| Samsung | Samsung Nexus 10 |
| Samsung | Samsung Replenish sph-m580 |
| Samsung | Samsung Rugby 3 sgh-a997 |
| Samsung | Samsung T159 sgh-t159 |
| Samsung | Samsung T359 Smiley sgh-t359 |
| ZTE | Boost Max zte n9520 |

**RA104**

March 24, 2014
Page 5

| ZTE | ZTE Altair Z431 |
| ZTE | ZTE Aspect zte f555 |
| ZTE | ZTE Avail 2 z992 |
| ZTE | ZTE AWE zte n800 |
| ZTE | ZTE Boost Warp 4g zte n9510 |
| ZTE | ZTE Cricket Engage MT n8000 |
| ZTE | ZTE Flash ZTE N9500 |
| ZTE | ZTE Grand S |
| ZTE | ZTE Imperial zten9101 |
| ZTE | ZTE Majesty z796c |
| ZTE | ZTE Midnight z768g |
| ZTE | ZTE Nubia 5 |
| ZTE | ZTE Optik  v55 |
| ZTE | ZTE Prelude z993 |
| ZTE | ZTE Radiant z740 |
| ZTE | ZTE REEF zte n810 |
| ZTE | ZTE Solar z795g |
| ZTE | ZTE Source 4g LTE zte n9511 |
| ZTE | ZTE Sprint Vital zte m9810 |
| ZTE | ZTE Unico LTE z930l |
| ZTE | ZTE Valet z665c |
| ZTE | ZTE Z222 |
| ZTE | ZTE Z998 |

(c) Infringement Contentions

The infringement theories for each defendant and for each of the accused instrumentalities are identified in the claim charts on the provided FTP site. Rockstar alleges that each of the accused instrumentalities infringes each asserted claim literally and directly. Alternatively, based upon the evidence set forth in the claim charts provided on the FTP site and for the reasons set forth in Rockstar's complaint as to each defendant, Rockstar contends that each of the accused instrumentalities infringes each asserted claim of each asserted patent via indirect infringement, both induced and contributory. Rockstar notes that the contentions provided on the FTP site include those for U.S. Patent Nos. 5,838,551 ("the '551 patent"), 6,037,937 ("the '937 patent"), 6,128,298 ("the '298 Patent"), 6,333,973 ("the '973 Patent"), 6,463,131 ("the '131 Patent"), 6,765,591 ("the '591 Patent"), and 6,937,572 ("the '572 Patent").

(d) Doctrine of Equivalents

Rockstar contends that each of the accused instrumentalities for each defendant infringes each of the asserted claims literally and directly. In the alternative, Rockstar contends that any element found not to be literally infringed is infringed under the doctrine of equivalents because the differences between the claimed inventions and the accused instrumentalities, if any, are

March 24, 2014
Page 6

insubstantial.  Rockstar also contends that defendants directly infringe the asserted claims by making, using, offering for sale, selling, and importing in to the United States the accused instrumentalities as well as indirectly infringe each of the asserted claims by contributing to and/or inducing others (*e.g.*, defendants' customers or its customers' customers) to directly infringe those claims.  Rockstar further contends that defendants' infringement is deliberate and willful entitling Rockstar to an injunction, enhanced damages, and attorneys' fees.

(e) Priority dates:

See section (a) supra.

(f) Software as Infringing Instrumentalities

Because Rockstar accuses software of infringing some elements of some of the asserted claims of some of the asserted patents, Rockstar will, once defendants' source code production is complete, supplement its contentions as permitted by Patent Rule 3-1(g) or as otherwise appropriate.

(g)  Reservation of rights:

Rockstar reserves the right, consistent with the local Patent Rules, the Federal Rules and other applicable authority, to revise its infringement theories and to identify additional accused instrumentalities as the case progresses (e.g., through discovery, claim construction, etc.).

II.    Document Production Pursuant to P.R. 3-2

In addition to containing the claim charts discussed above, the provided FTP contains Rockstar's document production pursuant to P.R. 3-2.  The following lists the specific documents that correspond to each category of P.R. 3-2:

P.R. 3-2(a) Documents:  RKS_EDTEX_0001289 to RKS_EDTEX_0001299.

P.R. 3-2(b) Documents:  RKS_EDTEX_0001283 to RKS_EDTEX_0001288.

P.R. 3-2(c) Documents:   RKS_EDTEX_0000001 to RKS_EDTEX_0001282.

Rockstar has used its best efforts to identify responsive P.R. 3-2.  However, as discovery progresses, Rockstar reserves the right to supplement its document production to identify additional responsive documents.  To the extent additional responsive documents are identified during the course of discovery, Rockstar will promptly supplement its production.

If you have any questions, please do not hesitate to contact me.

Regards,

*/s/ Josh W. Budwin*

Josh W. Budwin
**RA106**

March 24, 2014
Page 7

cc:    Via Email - All Other Counsel of Record.

**INFRINGEMENT CONTENTIONS:  ATTACHMENT A**

**Asus Accused Instrumentalities:**

| Model Number (if known) | Common Name |
|---|---|
| SL101 | Eee Pad Slider |
| TF101A1 | Eee Pad Transformer |
| TF201 | Eee Pad Transformer Prime TF201 32GB |
| TF201 | Eee Pad Transformer Prime TF201 64GB |
| ME172V | Memo Pad |
| ME180A | MeMO Pad 8 |
| ME302C | MeMO Pad FHD 10 |
| ME173X | MeMO Pad HD 7 |
| ME172V | MeMO Pad |
| ME301T | MeMO Pad Smart 10 |
| TF101 | Transformer |
| TF300TL | Transformer Pad |
| TF300TG | Transformer Pad |
| TF700T | Transformer Pad |
| TF300T | Transformer Pad |
| TF701T | Transformer Pad |
| TF300 | Transformer Pad 300 |
| TF701T | Transformer Pad Infinity |
| TF201 | Transformer Prime |
| ME370T | Nexus 7 |
| ME571KL | Nexus 7 (2013) |
| ME571KL | Google Nexus 7 Cellular |
|  | Zenfone 4 |
|  | Zenfone 5 |
|  | Zenfone 6 |
|  | Padone Infinity |
|  | Padfone X |

**Google Accused Instrumentalities:**

| Model Number (if known) | Common Name |
|---|---|
| I9250 | Galaxy Nexus |
| LG-E960 | Nexus 4 |
| LD-D820 | Nexus 5 |
| | Nexus 7 |
| | Nexus 7 (WiFi + Cellular) |
| | Nexus 7 (2013) |
| | Nexus 7 (2013) (WiFi + Cellular) |
| | Nexus 10 |
| | Nexus One |
| I9020A | Nexus S |
| SPH-D720 | Nexus S 4G Sprint |
| I9020T | Nexus S T-Mobile |

**HTC Accused Instrumentalities:**

| Model Number (if known) | Common Name |
|---|---|
| 6435W | HTC DROID DNA,HTC DLX, HTC 6435LVW, HTC DROID Incredible X, HTC One X 5, HTC DIx |
| 6500LVW | HTC One |
| 801A | HTC One |
| A310E | HTC Explorer (Pico) |
| A320A | HTC Wildfire C, HTC Golf, HTC Desire C |
| A3333 | HTC Widfire/Buzz |
| A6277 | HTC Hero 200,Hero CDMA |
| A6363 | HTC Legend |
| A6365 | HTC Legend US 3G(Bell) |
| A6366 | HTC Aria, Liberty, Intruder |
| A6380 | HTC Gratia, HTC Aria |
| A7275 | HTC Desire US |
| A8182 | HTC Bravo/Triumph/Desire |
| A9192 | HTC Inspire 4G |
| ADR6200 | HTC Desire |
| ADR6225 | HTC Wildfire,HTC Bee |
| ADR6230 | HTC Wildfire S |
| ADR6275US | HTC Bravo C |
| ADR6285 | HTC Hero S |
| ADR6290 | HTC One V CDMA |
| ADR6300 | HTC Droid Incredible |
| ADR6325 | HTC Merge |
| ADR6330VW | HTC Rhyme,HTC Bliss, HTC S510b |
| ADR6350 | HTC Droid Incredible 2 |
| ADR6400L | HTC ThunderBolt,HTC Incredible HD, HTC Thunderbolt 4G, HTC Droid Thunderbolt |
| ADR6410 | HTC DROID Incredible 4G LTE,HTC ADR6410L, HTC Fireball |
| ADR6425 | HTC Rezound,HTC ADR6425, HTC ThunderBolt 2, HTC Droid Incredible HD, HTC Vigor |

| | |
|---|---|
| ADR6435 | HTC DROID DNA,HTC DLX, HTC 6435LVW, HTC DROID Incredible X, HTC One X 5, HTC DIx |
| APA7373KT | HTC EVO Shift 4G,HTC Speedy, HTC Knight |
| APA9292KT | HTC EVO 4G,HTC Supersonic, HTC PC36100 |
| APC715CKT | HTC EVO Design 4G,HTC Hero 4G, HTC Kingdom |
| APX325CKT | HTC -Evo 4G LTE |
| APX515CKT | HTC EVO 3D,HTC Shooter, HTC EVO V 4G |
| ATP515CKIT | HTC EVO View 4G |
| Acquire | HTC Evo Design 4G |
| Amaze 4G | HTC Amaze(Ruby) |
| Bahamas | |
| C525C | HTC One SV |
| S510B | HTC Rhyme, HTC Bliss |
| T326E | HTC Desire SV, HTC Magni, HTC One SV |
| PLS7373ADR | HTC Detail, HTC Evo Shift |
| | HTC Magic, myTouch 3G |
| myTouch 4G Slide | HTC DoubleShot |
| | Dream, Dream 210 |
| PG86100 | Evo 3D, HTC Shooter |
| PG41200 | Evo View 4G |
| | HTC Espresso, myTouch2 3G slide |
| Z520E | HTC One S, HTC Ville |
| | HTC First, HTC Myst |
| P510E | HTC Flyer |
| G2 | HTC Vision |
| | HTC Glacier, myTouch 4G, myTouch HD, HTC Panache |
| H1000c | HTC Wildfire C, HTC Golf, HTC Desire C |
| H2000C | HTC One V, HTC Primo |
| H3000c | HTC One SV |
| A6288 | Hero 100(Dopod) |
| PG86310 | Evo 3D or Inspire 3D |
| PD98120 | Inspire 4G |
| PJ83100 | HTC One X |
| P715A | HTC Jetstream |

|  |  |
|---|---|
|  | HTC Lancaster, HTC Memphis |
|  | HTC Sapphire, T-Mobile myTouch 3G |
| T320E | HTC One V, HTC Primo |
| P512 | HTC Flyer WiFi |
| PB99400 | HTC Desire |
| PC36100 | Evo 4G |
| PG06100 | Evo Shift 4G |
| PG09410 | Jetstream |
| PG58130 | Sensation 4G |
| PG762 | HTC Wildfire S CDMA |
| PH06130 | Status |
| PH39100 | Vivid |
| PM36100 | HTC One VX, HTC Totem C2 |
| PM63100 | HTC One X+, HTC Tattoo,HTC Click |
| PN07120 | One |
|  | Panache, HTC Glacier |
|  | Passion |
| Z710A | Sensation 4G, HTC Sensation, HTC Pyramid |
| X710A | HTC Vivid, HTC Holiday, HTC Raider |
|  | Rider, Evo 4G+ |
| X315 | HTC Sensation XL, HTC Runnymede |
| S510E | HTC Saga, HTC Desire S, HTC Desire 2 |
| S720E | HTC One X |
| C510e | HTC Salsa, HTC One SV CDMA |
| T320A | HTC One V, HTC Primo |
| X315E | HTC Sensation XL, HTC Runnymede |
| X325A | HTC One X+, HTC Evita, HTC Evitaire, PM63100 |
| X325C | HTC Evo 4G LTE, APX325CKT, APX325CWH |
| X515A | HTC EVO 3D,HTC Shooter, HTC EVO V 4G |
| X515C | HTC EVO 3D |
| X515E | HTC Rider, HTC 4G+ |
| X515M | HTC Shooter, HTC EVO V 3D, HTC EVO 3D |

| | |
|---|---|
| X525A | HTC One X+ |
| Z520M/Z520E | HTC One S, HTC Ville |
| Z560E | HTC Ville C, HTC One S,HTC Ville |
| Z710E | HTC Sensation, HTC Pyramid, HTC One V |
| HTC M7 | HTC One |
| HTC M7 | One LTE NA 32GB ( M7),HTC M7 |
| HTC M7 | One LTE NA 64GB ( M7),HTC M7 |
| HTC T6 | HTC One Max |
| HTC T6 | HTC One Max803s LTE 32GB |
| HTC T6 | HTC One Max LTE NA 16GB |
| HTC M4 | HTC One Mini |
| | HTC Desire CDMA |
| | HTC Flyer CDMA |
| | HTC One X AT&T,HTC Endeavor, HTC Supreme, HTC Edge, HTC One XL |
| ADR6400 | HTC ThunderBolt,HTC Incredible HD, HTC Thunderbolt 4G, HTC Droid Thunderbolt |
| S728E | HTC One X+, HTC Endevour C2 |
| | HTC Lead |
| A6376 | Droid Eris |
| | HTC Flyer CDMA |
| | Desire 300,HTC Z3 |
| | Desire 601, HTC Zara |
| | Desire 601 CDMA, HTC Zara |

**LG Accused Instrumentalities:**

| Model Number (if known) | Common Name |
|---|---|
| LG VS740 | Ally |
| US740 US Cellular, US740 | Apex |
| US740 Alltel | Axis |
| LG Genesis  US Cellular, LG US760 | Genesis |
| VS910 | Revolutino |
| LW690 | Optimus C |
| MS690 | Optimus M Cricket |
| MS690 | Optimus M MetroPCS |
| P504 | Optimus One |
| LG Optimus S Ting | Optimus S |
| LG Optimus S Sprint | Optimus S |
| LS670 PURPLE | Optimus S |
| LS670 GRAY | Optimus S |
| LG P509 | Optimus T |
| P509 BLACK | Optimus T |
| P509 TITANIUM | Optimus T |
| P509 BURGUNDY | Optimus T |
| LG Optimus S US Cellular, US670 | Optimus U |
| LG Optimus S Virgin Mobile, VM670 | Optimus V |
| LG Phoenix AT&T, P505 | Phoenix |
| P506 AT&T | Thrive |
| VS660 | Vortex |
| VS660 VIOLET | Vortex |
| MS840 | Connect 4G |
| LS696 | Elite |
| VS700 Verizon | Enlighten |
| LG MS910 MetroPCS | Esteem, Bryce |
| LGC800VL | MyTouch Q |
| AS695 | Optimus Plus |
| LG855 | Marquee |
| LS855 Ting | Marquee |
| LS855 Boost Mobile | Marquee |
| LGE739BK | MyTouch |
| LGC800DG | MyTouch Q |

| | |
|---|---|
| LG AS680, LG L45C | Optimus 2 Alltel |
| MS695 | Optimus M+ |
| MS695 Alltel | Optimus plus |
| LGL55C | Optimus Q |
| VM701 | Optimus Slider |
| VS700 Tracfone | Optimus Zip |
| LS840 | Viper |
| LG V900 | Optimus Pad |
| LG G-Slate | T-Mobile G-Slate |
| LG Optimus Pad LTE | Optimus Pad LTE |
| VS840 | Lucid,  Cayman, Optimus Exceed |
| LS860 Ting | Mach , Cayenne |
| LS860 Boost Mobile | Mach , Cayenne |
| LS860 | Mach , Cayenne |
| MS770 | Motion 4G |
| P930 | Nitro |
| LW770 | Optimus Regard |
| VS920 | Spectrum, Revolution 2 |
| MS870 | Spirit 4G |
| LG Splendor US Cellular | Splendor |
| US730 | Splendor, Snapshot |
| P925 | Thrill 4G |
| VS950 | Intuition, Optimus Vu Verizon |
| VS930 | Spectrum 2 ,Revolution 2 |
| LS840 Ting | Viper, Viper 4G LTE |
| LG C729 | Flip II, Doubleplay |
| LS696 Sprint | Optimus Elite |
| LS696 Ting | Optimus Elite |
| P700 | Optimus Select Alltel |
| P760 MetroPCS | Optimus L9 |
| VS890 | Enact |
| P870 | Escape |
| P769 | Optimus L9 |
| VS870 | Lucid2 |
| LS720 TITANIUM SILVER | Optimus F3 |
| LS720 PURPLE | Optimus F3 |
| MS659 T-mobile | Optimus F3 |
| MS659 MetroPCS | Optimus F3 |
| VM720 Virgin | Optimus F3 |
| AS870 | Optimus F5 |
| D500 | Optimus F6 |

| | |
|---|---|
| LG D500 MetroPCS | Optimus F6 |
| LG870 | Optimus F7 |
| US780 | Optimus F7 |
| LS970 | Optimus G |
| E970 | Optimus G |
| E980 | Optimus G Pro |
| E980 WHITE | Optimus G Pro |
| P970 | Optimus Black |
| LG730 | Venice |
| LS995 | G Flex Sprint |
| D800 | G2 AT&T |
| D800 WHITE | G2 AT&T |
| LS980 | G2 Sprint |
| LS980 WHITE | G2 Sprint |
| D801 | G2 T-Mobile |
| D801 WHITE | G2 T-Mobile |
| VS980 | G2 Verizon |
| VS980 WHITE | G2 Verizon |
| V500 BLACK | G Pad 8.3 Black |
| V500 WHITE | G Pad 8.3 White |
| LGE960W | Nexus 4 |
| LGE960 | Nexus 4 |
| D820 SPRINT BLACK | Nexus 5 |
| D820 SPRINT WHITE | Nexus 5 |
| D820 T-MOBILE BLACK | Nexus 5 |
| LN272 | Rumor Reflex |
| LN272S RED | Rumor Reflex S |

**Pantech Accused Instrumentalities:**

| Model Number (if known) | Common Name |
|---|---|
| ADR930L | Perception |
| P9090 | Discover |
| P8010 | Flex |
| ADR910L | Marauder |
| P9070 | Burst |
| P9060 | Pocket |
| P8000 | Crossover |
| ADR8995VW | Breakout |
| P4100 | Element |

**Samsung Accused Instrumentalities:**

| Model Number (if known) | Common Name |
|---|---|
| SCH-R930DSAUSC | Galaxy S Aviator |
| SCH-S950RKATFN | Galaxy S Showcase |
| SCH-I800BKAVZW | Galaxy Tab |
| SPH-P100ZKASPR | Galaxy Tab |
| SCH-I800NSAUSC | Galaxy Tab |
| SCH-I705MKAVZW | Galaxy Tab |
| SCH-I705PWAVZW | Galaxy Tab |
| SPH-P500TSASPR | Galaxy Tab |
| SCH-I915SAAVZW | Galaxy Tab |
| SCH-R880MBAUSC | Acclaim |
| SCH-R720ZAAMTR | Admire |
| SCH-R720ZRAXAR | Admire |
| SPH-D600ZKASPR | Conquer |
| SCH-I400ZKAVZW | Continuum i400 |
| SCH-I510RAAVZW | Droid Charge |
| SPH-D700ZKASPR | Epic |
| SCH-I500RKAVZW | Fascinate |
| SCH-R820ZWAMTR | Galaxy Admire |
| SCH-R830ZSACRI | Galaxy Admire |
| SCH-R920DSAMTR | Galaxy Attain |
| SCH-R830ZSAUSC | Galaxy Axiom |
| SCH-S738YBATFN | Galaxy Centura |
| SCH-R740YBACRI | Galaxy Discover |
| SCH-R910ZKAMTR | Galaxy Indulge |
| SCH-I405BAAUSC | Galaxy Metrix |
| SCH-I515MSAVZW | Galaxy Nexus |
| SPH-L700ZKASPR | Galaxy Nexus |
| SCH-I925EAAVZW | Galaxy Note 10.1 |
| SCH-I925EAAUSC | Galaxy Note 10.1 |
| SCH-I605TSAVZW | Galaxy Note2 |
| SCH-I605ZWAVZW | Galaxy Note2 |
| SCH-R950TSAUSC | Galaxy Note2 |
| SPH-L900TSASPR | Galaxy Note2 |
| SPH-L900ZWASPR | Galaxy Note2 |
| SCH-M828CAATFN | Galaxy Precedent |
| SPH-M820ZKABST | Galaxy Prevail |

| | |
|---|---|
| SPH-M840UWABST | Galaxy Prevail |
| SCH-S720ZKATFN | Galaxy Proclaim |
| SPH-M950DAAVMU | Galaxy Reverb |
| SPH-M840MBAVMU | Galaxy Ring |
| SPH-M830ZKABST | Galaxy Rush |
| SPH-L710RWBVMU | Galaxy S III |
| SPH-L710RWBBST | Galaxy S III |
| SCH-R940DSAMTR | Galaxy S Lightray |
| SCH-I405LKAVZW | Galaxy S Stratosphere |
| SCH-I405ZWBVZW | Galaxy S Stratosphere |
| SCH-R760IBAXAR | Galaxy S2 |
| SCH-R760IBAUSC | Galaxy S2 |
| SPH-D710ZWASPR | Galaxy S2 |
| SPH-D710ZKAVMU | Galaxy S2 |
| SPH-D710ZWAVMU | Galaxy S2 |
| SPH-D710ZWABST | Galaxy S2 |
| SPH-D710AAABST | Galaxy S2 |
| SCH-R530MBBCRI | Galaxy S3 |
| SCH-R530RWBCRI | Galaxy S3 |
| SCH-R530RWBMTR | Galaxy S3 |
| SCH-I535ZKBVZW | Galaxy S3 |
| SCH-I535MBBVZW | Galaxy S3 |
| SCH-I535RWBVZW | Galaxy S3 |
| SCH-I535ZNBVZW | Galaxy S3 |
| SPH-L710MBBSPR | Galaxy S3 |
| SPH-L710RWBSPR | Galaxy S3 |
| SPH-L710ZPBSPR | Galaxy S3 |
| SCH-R530MBBUSC | Galaxy S3 |
| SCH-R530RWBUSC | Galaxy S3 |
| SCH-S960RWBTFN | Galaxy S3 |
| SCH-L710MBBXAR | Galaxy S3 |
| SCH-L710RWBXAR | Galaxy S3 |
| SCH-R970ZWACRI | Galaxy S4 |
| SCH-R970ZKACRI | Galaxy S4 |
| SPH-L720ZWASPR | Galaxy S4 |
| SPH-L720ZKASPR | Galaxy S4 |
| SCH-I545ZWAVZW | Galaxy S4 |
| SCH-I545ZKAVZW | Galaxy S4 |
| SCH-R970ZWAUSC | Galaxy S4 |
| SCH-R970ZKAUSC | Galaxy S4 |
| SCH-R970ZWACSP | Galaxy S4 |

| | |
|---|---|
| SCH-R970ZKACSP | Galaxy S4 |
| SGH-M919N | Galaxy S4 |
| SPH-L720ZPASPR | Galaxy S4 |
| SCH-I545ZNAVZW | Galaxy S4 |
| SCH-I545ZKBVZW | Galaxy S4 |
| SCH-R970ZWACSP | Galaxy S4 |
| SGH-I337ZRAATT | Galaxy S4 |
| SCH-I200ZKAVZW | Galaxy Stellar |
| SCH-I415SAAVZW | Galaxy Stratosphere II |
| SPH-L300ZSASPR | Galaxy Victory |
| SPH-L300ZSAVMU | Galaxy Victory |
| SCH-I100ZKAXAR | Gem |
| SCH-I100ZKAVZW | Gem |
| SCH-I100ZKAUSC | Gem |
| SCH-I110ZKAVZW | Illusion |
| SCH-R915ZKACRI | Indulge |
| SCH-I500RKAUSC | Mesmerize |
| SPH-M900ZKASPR | Moment |
| SPH-D720ZKASPR | Nexus S |
| SPH-M580ZKABST | Replenish |
| SCH-R680WRAXAR | Repp |
| SCH-R680WRAUSC | Repp |
| SCH-R730NBACRI | Transfix |
| SPH-M920ZKASPR | Transform |
| SPH-M930ZKASPR | Transform Ultra |
| SPH-M930ZKABST | Transform Ultra |
| SCH-R720ZRACRI | Vitality |
| EK-GC100ZWAATT | Galaxy Camera |
| SGH-T959HABTMB | Galaxy S |
| SGH-T849ZKATMB | Galaxy Tab |
| SGH-I987ZKAATT | Galaxy Tab |
| SGH-T869MABTMB | Galaxy Tab |
| SGH-I497ZSAATT | Galaxy Tab |
| SGH-T779TSBTMB | Galaxy Tab |
| SGH-T939MNATMB | Behold II |
| SGH-I897ZKAATT | Captivate |
| SGH-I927ZKAATT | Captivate Glide |
| SGH-T499MABTMB | Dart |
| SGH-I857ZAAATT | DoubleTime |
| SGH-T759ZKBTMB | Exhibit |
| SGH-I407ZKAATT | Galaxy Amp |

| | |
|---|---|
| SGH-I827ZSAATT | Galaxy Appeal |
| SGH-S730HKATFN | Galaxy Discover |
| SGH-T679DBBTMB | Galaxy Exhibit |
| SGH-T599DAATMB | Galaxy Exhibit |
| SGH-I577YKAATT | Galaxy Exhilarate |
| SGH-I437MBZATT | Galaxy Express |
| SGH-I437ZSAATT | Galaxy Express |
| SGH-T879ZBBTMB | Galaxy Note |
| SGH-I717ZBAATT | Galaxy Note |
| SGH-I717RWAATT | Galaxy Note |
| SGH-T889TSATMB | Galaxy Note2 |
| SGH-T889PSATMB | Galaxy Note2 |
| SGH-I317TSAATT | Galaxy Note2 |
| SGH-I317ZWAATT | Galaxy Note2 |
| SGH-I547ZKAATT | Galaxy Rugby Pro |
| SGH-T769NKBTMB | Galaxy S Blaze |
| SGH-T699DABTMB | Galaxy S Relay |
| SGH-S959ZKATFN | Galaxy S2 |
| SGH-I777ZKAATT | Galaxy S2 |
| SGH-T989ZWBTMB | Galaxy S2 |
| SGH-T989ZKBTMB | Galaxy S2 |
| SGH-I727ZWAATT | Galaxy S2 |
| SGH-T999MBATMB | Galaxy S3 |
| SGH-T999RWATMB | Galaxy S3 |
| SGH-T999ZAATMB | Galaxy S3 |
| SGH-T999ZWATMB | Galaxy S3 |
| SGH-I747MBBATT | Galaxy S3 |
| SGH-I747RWBATT | Galaxy S3 |
| SGH-I747ZRBATT | Galaxy S3 |
| SGH-I337ZWAATT | Galaxy S4 |
| SGH-I337ZKAATT | Galaxy S4 |
| SGH-M919ZWATMB | Galaxy S4 |
| SGH-M919ZKATMB | Galaxy S4 |
| SGH-I337ZWAATT | Galaxy S4 |
| SGH-I537ZBAATT | Galaxy S4 |
| SGH-I537 | Galaxy S4 |
| SGH-T589HBBTMB | Gravity SMART |
| SGH-I997ZKAATT | Infuse |
| GT-I9020PWAATT | Nexus S from Google |
| SGH-I847ZKAATT | Rugby |
| SGH-T839HABTMB | Sidekick |

| | |
|---|---|
| SGH-T959ZKATMB | Vibrant |
| EK-GC120BKAVZW | Galaxy Camera |
| EK-GC120ZWAVZW | Galaxy Camera |
| SGH-I437ZSPATT | Galaxy Express |
| SCH-I815LSAVZW | Galaxy Tab |
| SGH-I467ZWAATT | Galaxy Note |
| SGH-T999NBATM | Galaxy S III |
| SCH-R530RWBMTR | Galaxy S3 |
| SGH-M919RWATMB | Galaxy S4 |
| SGH-I537ZAAATT | Galaxy S4 |
| SGH-I537ZBAATT | Galaxy S4 |
| SGH-T599EAATMB | Galaxy Exhibit |
| SCH-R830ZSACRI | Galaxy Admire 2 |
| SCH-S738YBATFN | Galaxy Centura |
| SGH-S730HKATFN | Galaxy Discover |
| SGH-I437MBZATT | Galaxy Express |
| SGH-I437ZSPATT | Galaxy Express GoPhone |
| SCH-R760IBAXAR | Galaxy S2 |
| SCH-I200ZKPVZW | Galaxy Legend |
| SGH-M819ZKATMB | Galaxy Mega |
| SPH-L600ZKASPR | Galaxy Mega |
| SCH-I405BAAUSC | Galaxy Metrix |
| SM-N900AZKEATT | Galaxy Note 3 |
| SM-N900PZKESPR | Galaxy Note 3 |
| SM-N900RZKEUSC | Galaxy Note 3 |
| SM-N900TZKETMB | Galaxy Note 3 |
| SM-N900VZKEVZW | Galaxy Note 3 |
| SCH-S720ZKATFN | Galaxy Proclaim |
| SCH-S968MBBTFN | Galaxy S3 |
| SM-G730VMBAVZW | Galaxy S3 |
| SCH-R530RWBXAR | Galaxy S3 |
| SM-G730AMBAATT | Galaxy S3 |
| SCH-R530RWBMTR | Galaxy S3 |
| SGH-I337ZKZAIO | Galaxy S4 |
| SCH-R970ZWACRI | Galaxy S4 |
| SCH-R890ZKAUSC | Galaxy S4 Mini |
| SCH-I435ZKAVZW | Galaxy S4 Mini |
| SPH-L520ZKASPR | Galaxy S4 Mini |
| SM-C105AZWAATT | Galaxy S4 Zoom |
| SM-T2105GYYXAR | Galaxy Tab 3 7.0 |
| SM-P6000ZKYXAR | Galaxy Note 10.1 |

| | |
|---|---|
| SM-P6000ZKVXAR | Galaxy Note 10.1 |
| SM-T210RZWYXAR | Galaxy Tab 3 7.0 |
| SM-T3100ZWYXAR | Galaxy Tab 3 8.0 |
| GT-P5210ZWYXAR | Galaxy Tab 3 10.1 |
| GT-N5110ZWYXAR | Galaxy Note 8.0 |
| GT-N8013EAVXAR | Galaxy Note 10.1 |
| GT-P3113TSYXAR | Galaxy Tab 2 7.0 |
| GT-P5113ZWYXAR | Galaxy Tab 2 10.1 |
| GT-P5113TSYXAR | Galaxy Tab 2 10.1 |
| SM-T217AZKAATT | Galaxy Tab 3 7.0 |
| SM-T217SZKASPR | Galaxy Tab 3 7.0 |
| SM-T217SZWASPR | Galaxy Tab 3 7.0 |
| SM-N900AZWEATT | Galaxy Note 3 |
| SM-N900PZWESPR | Galaxy Note 3 |
| SM-N900TZWETMB | Galaxy Note 3 |
| SM-N900VZWEVZW | Galaxy Note 3 |
| GT-N8013EAYXAR | Galaxy Note 10.1 |
| SM-P6000ZWYXAR | Galaxy Note 10.1 |
| EK-GC110ZWAXAR | Galaxy Camera WiFi |
| SM-T520NZWAXAR | Galaxy Tab Pro 10.1 |
| SM-T520NZKAXAR | Galaxy Tab Pro 10.1 |
| SM-T520 | Galaxy Tab Pro 10.1 |
| SM-T525 | Galaxy Tab Pro 10.1 LTE |
| SM-T525 | Galaxy Tab Pro 10.1 LTE |
| SM-T900 | Galaxy Tab Pro 12.2 |
| SM-T900 | Galaxy Tab Pro 12.2 |
| SM-T905 | Galaxy Tab Pro 12.2 LTE |
| SM-T905 | Galaxy Tab Pro 12.2 LTE |
| SM-T320 | Galaxy Tab Pro 8.4 |
| SM-T320NZWAXAR | Galaxy Tab Pro 8.4 |
| SM-T320NZKAXAR | Galaxy Tab Pro 8.4 |
| SM-T110NYKAXAR | Galaxy Tab3 Lite |
| SM-T110NDWAXAR | Galaxy Tab3 Lite |
| SM-T325 | Galaxy Tab Pro 8.4 |
| SM-T325 | Galaxy Tab Pro 8.4 |
| GT-I5800 | Galaxy Taos |
| S7580 | Samsung Galaxy Trend Plus |
| S7582 | Samsung Galaxy S Duos 2 |
| B5510 | Samsung Galaxy Y Pro/ Galaxy Txt |
| SPH-L300ZSASPR | Samsung Galaxy Victory™ 4G LTE |

| SPH-L300ZSAVMU | Samsung Galaxy Victory™ 4G LTE |
|---|---|
| GT-I8550 | Galaxy Win |
| GT-I8552 | Galaxy Win |
| SCH-I869 | Galaxy Win |
| GT-I9250TSGGEN | Nexus |
| S5690 | Galaxy Xcover/ Xtreme |
| GT-S7710 | Galaxy Xcover 2 |
| GT-i9010 | Galaxy S |
| GT-P8110HAEXAR | Nexus 10 |
| GT-P8110 | Nexus 10 |
| SPH-M910ZKASPR | Intercept |
| SM-N750 | Note 3 Neo |
| SM-N7505 | Note 3 Neo |
| SM-N7502 | Note 3 Neo |
| SCH-i899 | i899 CDMA |
| SM-T315 | Galaxy Tab 3 |
| SM-T311 | Galaxy Tab 3 |

**ZTE Accused Instrumentalities:**

| Model Number (if known) | Common Name |
|---|---|
| Z740G | ZTE Sonata 4G™ |
| Z768G | ZTE Midnight™ |
| N8000 | Cricket Engage MT |
| Z795G | ZTE Solar™ |
| Z740 | AT&T Radiant™ |
| N9511 | ZTE Source™ |
| V988 | ZTE Grand S™ |
| NX501 | ZTE nubia 5 |
| N9510 | Boost Warp 4G |
| Z660G | ZTE Whirl |
| Z665C | ZTE Valet™ |
| N9810 | Virgin Mobile Supreme™ |
| N800 | Virgin Mobile Awe™ |
| Z796C | ZTE Majesty |
| Z750C | ZTE Savvy |
| N810 | Virgin Mobile Reef™ |
| Z998 | AT&T Z998 |
| Z995 | ZTE Overture™ |
| N9101 | ZTE Imperial™ |
| Z992 | AT&T Avail™ 2 |
| N9810 | Sprint Vital™ |
| Z993 | ZTE Prelude™ |
| Z788G | ZTE Illustra™ |
| N850L | ZTE Director™ |
| N8000 | Cricket Engage LT |
| N9100 | Boost Force |
| N9100 | Sprint Force™ |
| ZTE V768 (GoSmart Mobile) | ZTE Concord |
| N9120 | ZTE Avid™ 4G |
| X501 | Cricket Groove |
| N9500 | Sprint Flash™ |
| V8000 | Cricket Engage |
| N910 | ZTE Anthem™ 4G |
| N861 | ZTE Warp Sequent |
| ZTE V768 | T-Mobile Concord™ |
| Z990G | ZTE Merit |

| | |
|---|---|
| X500M | ZTE Score™ M |
| N850 | ZTE Fury |
| N860 | ZTE Warp |
| Z990 | AT&T Avail |
| X500 | Cricket Score™ |
| V72C | Sprint Optik™ 2 |
| V72A | ZTE Velox™ |
| V55 | ZTE Optik |
| P940 | ZTE Grand X |
| Z930L | ZTE Unico LTE |
| V880+ | ZTE Blade 2 |
| | ZTE T-Mobile 4G Hotspot |
| | ZTE T-Mobile 4G LTE Hotspot |
| N9520 | Boost® MAX |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GOOGLE INC.,                                        No. C 13-5933 CW

          Plaintiff,                                ORDER DEFERRING
                                                    RULING ON MOTION
     v.                                             TO TRANSFER

ROCKSTAR CONSORTIUM U.S. LP,                        (Docket No. 67)
MOBILESTAR TECHNOLOGIES, LLC,

          Defendants.

_____/

     In this declaratory judgment action, Defendants Rockstar

Consortium US LP and MobileStar Technologies, LLC filed a renewed

motion to transfer this case to the Eastern District of Texas.[1]

Defendants contend that this action should be combined with

several of their actions asserted against Plaintiff Google Inc.

and Google's customers in the Eastern District of Texas.  Google

opposes the motion as both procedurally improper because

Defendants previously moved to transfer, and substantively

deficient because the § 1404 convenience factors weigh in favor of

retaining this action in the Northern District of California.  At

the June 26, 2014 hearing, the Court indicated it was inclined to

deny the motion to transfer.  See Docket No. 98 at 18:12-16.

_____

     [1] This motion is essentially identical to the one brought in
conjunction with Defendants' motion to dismiss.  To decline
declaratory judgment jurisdiction over a case in favor of another
identical one is equivalent to transferring the case; thus, "the
transfer analysis essentially mirrors the considerations that
govern whether the [] court could decline to hear the case."
Micron Technology, Inc. v. Mosaid Technologies, Inc., 518 F.3d
897, 903 (Fed. Cir. 2008).

United States District Court
For the Northern District of California

Subsequently, the Texas court denied Google and its customers' motions to transfer those actions to this district. See, e.g., Rockstar Consortium US LP et al. v. Samsung Electronics Co., Ltd. et al., Case No. 13-00900-JRG, Docket No. 70 (E.D. Tex. July 1, 2014). It would not make sense to require the parties to engage in parallel litigation in two separate fora. In the interests of judicial economy, if the customer suits were to proceed in Texas, the Court would likely transfer this action there. See 28 U.S.C. § 1404. However, on August 14, 2014, Google and its customers filed a petition for a writ of mandamus regarding the Texas court's order denying transfer. See Docket Nos. 103, 104. There is a possibility that the customer suits might not proceed in the Eastern District of Texas. See In re Nintendo of Am., Inc., 2014 WL 2889911, at *2-3 (Fed. Cir. June 25, 2014). Accordingly, the Court DEFERS RULING on the motion to transfer until the Federal Circuit rules on the petition for writ of mandamus. If the customer suits were transferred to the Northern District of California, this Court would relate them to the above-entitled case. Google shall file updates regarding its petition for writ of mandamus on the present case's docket.

IT IS SO ORDERED.

Dated: 8/20/2014

CLAUDIA WILKEN
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing APPENDIX TO OPPOSITION TO PETITION FOR WRIT OF MANDAMUS was served on August 22, 2014, by operation of the Court's CM/ECF system per FED. R. APP. P. 25.

Date: August 22, 2014

/s/ Joel L. Thollander
Joel L. Thollander